# EXHIBIT 9



March 15, 2024

**BY HAND DELIVERY AND EMAIL**

777 Partners LLC
600 Brickell Ave, 19th Floor
Miami, FL 33131,
Attention: Legal Department
Email: legalnotices@777part.com

600 Partners LLC
600 Brickell Ave, 19th Floor
Miami, FL 33131,
Attention: Legal Department
Email: legalnotices@777part.com

SPLCSS III LLC
600 Brickell Ave, 19th Floor
Miami, Florida 33131
Attention: Legal Department
Email: legalnotices@777part.com

Dorchester Receivables II LLC
600 Brickell Ave, 19th Floor
Miami, Florida 33131
Attention: Legal Department
Email: legalnotices@777part.com

Insurety Agency Services LLC
600 Brickell Ave, 19th Floor
Miami, Florida 33131
Attention: Legal Department
E-Mail: legalnotices@777part.com

Signal SML 4 LLC
600 Brickell Ave, 19th Floor
Miami, Florida 33131
Attention: Legal Department
E-Mail: legalnotices@777part.com

**Re:    Notice of Acceleration of all Loans, and Demand for Immediate Repayment**

Ladies/Gentlemen:

I write on behalf of Leadenhall Capital Partners, LLP ("Leadenhall") and the Lenders pursuant to the (i) Loan and Security Agreement (the "Master Loan Agreement"); (ii) Pledge Agreements ("Pledge Agreements"); and (iii) Guaranty Agreement each dated May 7, 2021 ("Guaranty Agreement," and together with the Master Loan Agreement and Pledge Agreements, collectively, the "Agreements").[1]

As you know and as detailed in that certain Notice of Events of Default and Trigger Events; Reservation of Rights Letter dated March 12, 2024 and attached hereto as <u>Exhibit C</u>, certain Events of Default have occurred and are continuing under the Agreements and Transaction Documents as of the date hereof, including, without limitation, the Events of Default identified as "Facility Events of Default" on <u>Exhibit A</u> attached hereto (collectively, the "Facility Events of Default") and the Events of Default identified as "Borrower Group Events of Default" on Exhibit A attached hereto (collectively, the "Borrower Group Events of Default" and together with the Facility Events of Default, the "Specified Events of Default").

---

[1] Unless otherwise defined, capitalized terms shall have the same meanings as set forth in the respective Agreements.

March 15, 2024

As a result of the Specified Events of Default, "Facility Events of Default" have occurred under Section 7.01 of the Master Loan Agreement, "Borrower Group Events of Default" have occurred under Section 7.02 of the Master Loan Agreement, and a "Trigger Event" (as defined in the Guaranty Agreement) has occurred. Accordingly, pursuant to Sections 7.01 and 7.02 of the Master Loan Agreement, Leadenhall hereby accelerates and declares all Obligations under the Agreements immediately due and payable. As of the date hereof, the total amount due under the Transaction Documents, inclusive of fees and Interest charged at the Default Interest Rate, is in an amount that is not less than $609,529,966.82 (the "Accelerated Amount") as shown on Schedule I attached hereto and incorporated herein. Please be further advised that as a result of the Specified Events of Default pursuant to Section 2.08 of the Master Loan Agreement, a Default Interest Period began on March 17, 2023, and the Accelerated Amount and other Obligations continue to bear Interest at the Default Interest Rate.

Please be advised that Leadenhall will continue to evaluate its position on a day-by-day basis. We also reserve the right to, among other things, (i) declare any additional Facility Events of Default and/or Borrower Group Events of Default, whether now existing or arising hereafter, in addition to the Specified Events of Default, and (ii) bring any additional claims or causes of action against the Borrowers', the Borrowers' affiliates, and the Borrowers' principals, whether arising under the Master Loan Agreement or otherwise. Nothing contained in this letter nor any delay or failure by Leadenhall in exercising any rights or remedies under the Master Loan Agreement, the other Transaction Documents, or applicable law shall be deemed to constitute: (i) a waiver of any Default or Event of Default now existing or hereafter arising or a waiver of compliance with any term or provision in the Master Loan Agreement or any other Transaction Document; (ii) a waiver of any rights, claims, and remedies under the Transaction Documents or applicable law; or (iii) a course of dealing among the parties.

2

Sincerely,

**LEADENHALL CAPITAL PARTNERS LLP**,
as administrative agent

By:_____
Name: Craig Gillespie
Title:   Head of Life & Alternative Credit
         Portfolio Management

cc:    Josh Wander
       Steve Pasko
       Joe Metzger
       Aaron Levy
       Kenneth King
       Michael Saliba
       John Wells
       Luca Albertini
       Craig Gillespie
       Phil Kane
       Peter Clark
       Leigh Nathanson
       Roger Schwartz
Enclosures

## EXHIBIT A

### Specified Events of Default

<u>Facility Events of Default</u>

1. The Administrative Agent declares that a Facility Event of Default has occurred and is continuing under Section 7.01(c) of the Master Loan Agreement as a result of the Borrowing Base Deficiency and other material breaches set forth in the Notice of Breach of Parties' Agreements delivered to the Guarantors, SPLCSS Borrower, and Dorchester Borrower on November 29, 2023 and attached hereto as <u>Exhibit B</u> and incorporated herein (the "Notice of Breach").[2]

2. Certain Facility Events of Default have occurred and are continuing under Section 7.01(a)(ii) of the Master Loan Agreement as a result of the Borrowers' and/or Servicers' failure to deliver Compliance Certificates on or prior to certain Distribution Dates, and the continuance of such failures for two Business Days after the applicable Distribution Dates therefor.

3. Certain Facility Events of Default have occurred and are continuing under Section 7.01(b)(ii) of the Master Loan Agreement as a result of the failure of certain Borrowers to pay interest on the Distribution Date for which it became due and payable in violation of Section 2 of the Master Loan Agreement, and the continuance of such failures for 30 days after the applicable Distribution therefor.

4. A Facility Event of Default has occurred and is continuing under Section 7.01(d) of the Master Loan Agreement as a result of the security interest created pursuant to Section 2.15 of the Master Loan Agreement ceasing to be a valid and perfected first priority security interest in the Collateral.

5. A Facility Event of Default has occurred and is continuing under Section 7.01(g) of the Master Loan Agreement as a result of the aggregate Tangible Net Worth of 777 Partners LLC and 600 Partners LLC falling below $75,000,000.

<u>Borrower Group Events of Default</u>

1. The Administrative Agent declares that a Borrower Group Event of Default has occurred and is continuing under Section 7.01(g) of the Master Loan Agreement as a result of the Borrowing Base Deficiency and other material breaches set forth in the Notice of Breach.

2. Certain Borrower Group Events of Default have occurred and are continuing under Section 7.02(a)(ii) of the Master Loan Agreement as a result of the Borrowers' and/or Servicers' failure to deliver Compliance Certificates on or prior to certain Distribution Dates, and the continuance of such failures for two Business Days after the applicable Distribution Dates therefor.

3. Certain Borrower Group Events of Default have occurred and are continuing under Section 7.02(b)(ii) of the Master Loan Agreement as a result of the failure of certain Borrowers to pay interest on the Distribution Date for which it became due and payable in violation of

---

[2] As of February 29, 2024, the Borrowing Base Deficiency exists in the estimated amount of at least $300 million with respect to the SPLCSS Borrower and at least $44 million with respect to the Dorchester Borrower.

Section 2 of the Master Loan Agreement, and the continuance of such failures for two Business Days after the applicable Distribution therefor.

4. Certain Borrower Group Events of Default have occurred and are continuing under Section 7.02(d) of the Master Loan Agreement as a result of (a) each Borrower's failure to provide an annual audited financial statement of such Borrower and the Related Seller within 150 days after the end of the fiscal years ended December 31, 2021 and December 31, 2022, in violation of Section 5.01(j)(iii) of the Master Loan Agreement, (b) the Insurety Borrower executing a loan agreement with Balanced Management and incurring debt which is not permitted pursuant to the Master Loan Agreement or other Transaction Documents in violation of Section 5.01(o) of the Master Loan Agreement, and (c) the Insurety Borrower's failure to obtain updated actuarial models and persistency rates on an annual basis for the fiscal years ended December 31, 2021 and December 31, 2022 in violation of Section 5.01(x) of the Master Loan Agreement.

5. Certain Borrower Group Events of Default have occurred and are continuing under Section 7.02(e) of the Master Loan Agreement as a result of the Borrowers' failure to pay interest on outstanding Debt in a principal amount of at least $25,000 in the aggregate when due and payable, in violation of Section 2 of the Master Loan Agreement.

6. Certain Borrower Group Events of Default have occurred and are continuing under Section 7.01(g) of the Master Loan Agreement as a result of the Borrowing Base Deficiency and other material breaches set forth in the Notice of Breach.

**<u>EXHIBIT B</u>**

**Notice of Breach**

[See Attached]



November 29, 2023

**BY HAND DELIVERY AND E-MAIL**

777 Partners LLC
600 Brickell Ave, 19th Floor
Miami, FL 33131,
Attention: Steven W. Pasko
Email: spasko@777part.com

600 Partners LLC
600 Brickell Ave, 19th Floor
Miami, FL 33131,
Attention: Steven W. Pasko
Email: spasko@777part.com

SPLCSS III LLC
600 Brickell Ave, 19th Floor
Miami, Florida 33131
Attention: Steven W. Pasko
Email: spasko@777part.com

Dorchester Receivables II LLC
600 Brickell Ave, 19th Floor
Miami, Florida 33131
Attention: Steven W. Pasko
Email: spasko@777part.com

**Re:    Notice of Breach of Parties' Agreements**

Dear Mr. Pasko:

I write on behalf of Leadenhall Capital Partners, LLP ("Leadenhall") and the Lenders pursuant to the (i) Loan and Security Agreement (the "Master Loan Agreement"); (ii) Pledge Agreements ("Pledge Agreements"); and (iii) Guaranty Agreement each dated May 7, 2021 ("Guaranty Agreement," and collectively, the "Agreements").[1] Based on our current investigation, the Borrowers have materially breached the Agreements by double-pledging Collateral to both the Lenders and to a separate third-party lender, pledging Collateral to the Lenders which was never purchased by the Borrowers (and therefore which the Borrowers did not own), and selling and/or removing Collateral pledged to the Lenders without a corresponding reduction in the Principal Amount of all Loans in breach of the Borrowing Base Limitation. A Borrowing Base Deficiency presently exists in the amount of an estimated $310 million with respect to the SPLCSS Borrower and $41 million with respect to the Dorchester Borrower.

Below we set forth the details of the Borrowers' material breaches and expressly reserve all rights under the Agreements, including without limitation the right to declare an Event of Default, issue a demand for Indemnification, declare a Trigger Event with respect to the Guaranteed Obligations, and terminate the Agreements. *See* Master Loan Agreement §§ 4.01, 5.01, 7.01, 9.01; Pledge Agreements §§ 2, 5.2; Guaranty Agreement § 2. We also reserve the right to bring a claim for damages on the contractual breaches specified herein, any additional breaches, or for any other legal claim such as fraud.

---

[1] Unless otherwise defined, capitalized terms have the same meaning as set forth in the Agreements.

Leadenhall Capital Partners LLP Level 15, 70 Mark Lane, London EC3R 7NQ
Registered in England and Wales No.: OC336969
Leadenhall Capital Partners LLP is authorised and regulated in the UK by the Financial Conduct Authority No.: 486112

November 29, 2023

***The Agreements.***  On May 7, 2021, the parties entered into the Master Loan Agreement whereby the Borrowers pledged Collateral to secure Loans pursuant to a secured credit facility. *See* Master Loan Agreement §§ 2.01; 2.02.  To secure the performance of the Borrowers, the Borrowers pledged for the benefit of the Lenders a "first-priority security interest in the Collateral," where "Collateral" is defined as "all of such Borrower's right, title and interest in, to and under all assets of such Borrower," inclusive of all of the Borrowers' assets and Receivables. Master Loan Agreement §§ 1.01; 2.15.  Executed on the same date as the Master Loan Agreement, the Pledge Agreements further grant the Lenders "100% of the membership interests in the Borrower."  Pledge Agreements § 2.1.  To guarantee the Borrowers' obligations, the Guaranty Agreement specifies that 777 Partners LLC and 600 Partners LLC "unconditionally and irrevocably guarantee[]" the "full and punctual payment and performance when due" of the obligations.  Guaranty Agreement § 2(a).

Fundamental to the credit facility is that the Borrowers have full ownership of the Collateral pledged for the benefit of the Lenders and that the Collateral remain free and clear from any other security interest.    The Agreements provide that, on the Effective Date, any Borrowing Date, and the date of each Monthly Report and Compliance Report, each Borrower "***is the legal and beneficial owner of the applicable Collateral free and clear of any Adverse Claim***," where Adverse Claim is defined as "a lien, security interest or other charge or encumbrance, or any other type of preferential arrangement."  Master Loan Agreement §§ 1.01; 4.01(h).  The Agreements also provide that throughout the term of the Borrower's Commitments, the Borrowers "***shall not sell, assign (by operation of law or otherwise) or otherwise dispose of, or create or suffer to exist any Adverse Claim upon or with respect to any Collateral***."  Master Loan Agreement § 5.01(d). Finally, the Agreements obligate the Borrowers to comply with the Borrowing Base Limitations, which are calculated in accordance with a formula to ensure that the loans are sufficiently collateralized.  *See* Master Loan Agreement § 2.01.

***Breaches in Connection with the Lenders' Collateral.***  Over the last year, Leadenhall and the Lenders became aware that assets pledged as Collateral under the Agreements may have been double-pledged to another third-party lender.  On a March 28, 2023, conference call between Leadenhall representatives and Josh Wander, Managing Partner of 777 Partners LLC—which was recorded with Mr. Wander's permission—Mr. Wander expressly acknowledged that Collateral pledged to the Lenders by the SPLCSS Borrower was double-pledged to Credigy, a third-party lender.  Mr. Wander further admitted on the call that double-pledging the Lenders' Collateral was a "mistake" that he would remedy.

Since the March 28, 2023 conference call, Leadenhall has conducted an investigation in order to obtain additional information concerning the Lenders' Collateral.  Over the course of this investigation, Leadenhall has learned that the SPLCSS and Dorchester Borrowers pledged Receivables to the Lenders that the Borrowers may have never purchased in the first place and therefore did not own.  Leadenhall has also learned that the Borrowers may have sold and/or

2

November 29, 2023

removed Collateral pledged to the Lenders in breach of the Borrowing Base Limitation. Our current understanding is that a Borrowing Base Deficiency exists in the amount of at least $310 million with respect to the SPLCSS Borrower and at least $41 million with respect to the Dorchester Borrower.

In addition to uncovering these material breaches, we also have reason to believe that the Borrowers have made false statements on which the Lenders have relied. In particular, the SPLCSS Borrower has falsely represented that certain Receivables existed on Lenders' Borrowing Base while separately representing to Credigy that the same Receivables had been released from the Lenders' Borrowing Base. We continue to investigate the facts concerning these breaches and representations, including the extent to which other third-party lenders to the Borrowers not only had knowledge of any material breaches and false statements but benefitted from those breaches and false statements to the detriment of the Lenders.

In light of the Borrowers' undisputed, uncured, material breaches, we request that the Borrowers promptly provide the following information:

(i)     a full accounting of any Collateral that has been double-pledged to the Lenders and to any third-party, inclusive of a full identification of any such third-parties which also have an interest in the Lenders' Collateral;

(ii)    a full accounting of any Collateral pledged for the benefit of the Lenders which is not owned in full by the Borrowers, inclusive of a full identification of any parties which do own or otherwise have an interest in such Collateral);

(iii)   revised Compliance Reports amending any misrepresentations in previously delivered Compliance Reports, including any representations as to the Borrowing Base calculations;

(iv)    for each of the assets double-pledged to the Lenders and a third party, an audit trail providing, at minimum, the name of any individuals who were responsible for allocating the assets and timestamps showing each time in which the assets were allocated since inception;

(v)     a full accounting of any and all "unfunded" or "unallocated" assets which may now be allocated as Collateral to the Lenders;

(vi)    a detailed description of how, to the extent there is a shortfall in value between any "unfunded" assets which may now be allocated to the Lenders

3

November 29, 2023

and the value of the agreed-upon Collateral, the Borrowers intend to make up for that shortfall in value;

(vii)    a detailed description of any and all reconciliation procedures the Borrowers will implement to ensure that assets are owned by the Borrowers, do not exist on any other lenders' borrowing base, and are not double-pledged going forward; and

(viii)    any reporting obligations you have (whether to investors, deal targets, regulators, or otherwise) that there is has been a material breach and Event of Default as to the Agreements.

Please be advised that Leadenhall will continue to evaluate its position on a day-by-day basis. Nothing contained in this letter nor any delay or failure by Leadenhall in exercising any rights or remedies under the Master Loan Agreement, the other Transaction Documents, or applicable law shall be deemed to constitute: (i) a waiver of any Default or Event of Default now existing or hereafter arising or a waiver of compliance with any term or provision in the Master Loan Agreement or any other Transaction Document; (ii) a waiver of any rights, claims, and remedies under the Transaction Documents or applicable law; or (iii) a course of dealing among the parties.

Leadenhall hereby advises that it requires strict compliance with all of the terms and conditions of the Master Loan Agreement and the other Transaction Documents. To that end, it should be expressly understood that the parties are not entering into a mutual disregard of the terms and provisions of the Master Loan Agreement and any other Transaction Documents or any course of dealing at variance with the terms and provisions of the Master Loan Agreement and any other Transaction Documents. For the avoidance of doubt, Leadenhall fully expect you to comply with all aspects of the Master Loan Agreement and the other Transaction Documents.

Sincerely,

John Wells

CC (via e-mail):        Josh Wander
Kenneth King
Michael Saliba
Luca Albertini
Craig Gillespie
Phil Kane

4

## **EXHIBIT C**

**Notice of Events of Default and Trigger Events; Reservation of Rights Letter**

[See Attached]



March 12, 2024

**BY HAND DELIVERY AND EMAIL**

777 Partners LLC
600 Brickell Ave, 19th Floor
Miami, FL 33131,
Attention: Legal Department
Email: legalnotices@777part.com

600 Partners LLC
600 Brickell Ave, 19th Floor
Miami, FL 33131,
Attention: Legal Department
Email: legalnotices@777part.com

SPLCSS III LLC
600 Brickell Ave, 19th Floor
Miami, Florida 33131
Attention: Legal Department
Email: legalnotices@777part.com

Dorchester Receivables II LLC
600 Brickell Ave, 19th Floor
Miami, Florida 33131
Attention: Legal Department
Email: legalnotices@777part.com

Insurety Agency Services LLC
600 Brickell Ave, 19th Floor
Miami, Florida 33131
Attention: Legal Department
E-Mail: legalnotices@777part.com

Signal SML 4 LLC
600 Brickell Ave, 19th Floor
Miami, Florida 33131
Attention: Legal Department
E-Mail: legalnotices@777part.com

Re:    Notice of Events of Default and Trigger Event; Reservation of Rights

Ladies/Gentlemen:

I write on behalf of Leadenhall Capital Partners LLP ("Leadenhall") and the Lenders pursuant to the (i) Loan and Security Agreement (the "Master Loan Agreement"); (ii) Pledge Agreements ("Pledge Agreements"); and (iii) Guaranty Agreement each dated May 7, 2021 ("Guaranty Agreement," and together with the Master Loan Agreement and Pledge Agreements, collectively, the "Agreements").[1]

As you know, certain Events of Default have occurred and are continuing under the Agreements and Transaction Documents as of the date hereof, including, without limitation, the Events of Default identified as "Facility Events of Default" on Exhibit A attached hereto (collectively, the "Facility Events of Default") and the Events of Default identified as "Borrower Group Events of Default" on Exhibit A attached hereto (collectively, the "Borrower Group Events of Default" and together with the Facility Events of Default, the "Specified Events of Default").

As a result of the Specified Events of Default, "Facility Events of Default" have occurred under Section 7.01 of the Master Loan Agreement, "Borrower Group Events of Default" have occurred under Section 7.02 of the Master Loan Agreement, and a "Trigger Event" (as defined in the Guaranty Agreement) has occurred.  Please be further advised that, pursuant to Section 2.08 of

---

[1] Unless otherwise defined, capitalized terms shall have the same meanings as set forth in the respective Agreements.

March 12, 2024

the Master Loan Agreement, interest on the Obligations under the Agreements has been accruing at the Default Interest Rate as of March 17, 2023, as a result of the Specified Events of Default.

Please be advised that Leadenhall will continue to evaluate its position on a day-by-day basis.  Leadenhall expressly reserves all rights under the Agreements, including without limitation the right to (i) declare any additional Facility Events of Default and/or Borrower Group Events of Default, whether now existing or arising hereafter, in addition to the Specified Events of Default, (ii) accelerate and declare all Obligations under the Agreements immediately due and payable and (iii) bring any additional claims or causes of action against the Borrowers, the Borrowers' affiliates, and the Borrowers' principals, whether arising under the Master Loan Agreement or otherwise.   Nothing contained in this letter nor any delay or failure by Leadenhall in exercising any rights or remedies under the Master Loan Agreement, the other Transaction Documents, or applicable law shall be deemed to constitute: (i)  a waiver of any Default or Event of Default now existing or hereafter arising or a waiver of compliance with any term or provision in the Master Loan Agreement or any other Transaction Document; (ii) a waiver of any rights, claims, and remedies under the Transaction Documents or applicable law; or (iii) a course of dealing among the parties.

2

Sincerely,

**LEADENHALL CAPITAL PARTNERS LLP**,
as administrative agent

By: _____
Name: Craig Gillespie
Title:   Head of Life & Alternative Credit
           Portfolio Management

cc:      Josh Wander
         Steve Pasko
         Joe Metzger
         Aaron Levy
         Kenneth King
         Michael Saliba
         John Wells
         Luca Albertini
         Craig Gillespie
         Phil Kane
         Leigh Nathanson
         Roger Schwartz
Enclosures

## EXHIBIT A

### Specified Events of Default

Facility Events of Default

1. The Administrative Agent declares that a Facility Event of Default has occurred and is continuing under Section 7.01(c) of the Master Loan Agreement as a result of the Borrowing Base Deficiency and other material breaches set forth in the Notice of Breach of Parties' Agreements delivered to the Guarantors, SPLCSS Borrower, and Dorchester Borrower on November 29, 2023 and attached hereto as Exhibit B and incorporated herein (the "Notice of Breach").[2]

2. Certain Facility Events of Default have occurred and are continuing under Section 7.01(a)(ii) of the Master Loan Agreement as a result of the Borrowers' and/or Servicers' failure to deliver Compliance Certificates on or prior to certain Distribution Dates, and the continuance of such failures for two Business Days after the applicable Distribution Dates therefor.

3. Certain Facility Events of Default have occurred and are continuing under Section 7.01(b)(ii) of the Master Loan Agreement as a result of the failure of certain Borrowers to pay interest on the Distribution Date for which it became due and payable in violation of Section 2 of the Master Loan Agreement, and the continuance of such failures for 30 days after the applicable Distribution therefor.

4. A Facility Event of Default has occurred and is continuing under Section 7.01(d) of the Master Loan Agreement as a result of the security interest created pursuant to Section 2.15 of the Master Loan Agreement ceasing to be a valid and perfected first priority security interest in the Collateral.

5. A Facility Event of Default has occurred and is continuing under Section 7.01(g) of the Master Loan Agreement as a result of the aggregate Tangible Net Worth of 777 Partners LLC and 600 Partners LLC falling below $75,000,000.

Borrower Group Events of Default

1. The Administrative Agent declares that a Borrower Group Event of Default has occurred and is continuing under Section 7.01(g) of the Master Loan Agreement as a result of the Borrowing Base Deficiency and other material breaches set forth in the Notice of Breach.

2. Certain Borrower Group Events of Default have occurred and are continuing under Section 7.02(a)(ii) of the Master Loan Agreement as a result of the Borrowers' and/or Servicers' failure to deliver Compliance Certificates on or prior to certain Distribution Dates, and the continuance of such failures for two Business Days after the applicable Distribution Dates therefor.

3. Certain Borrower Group Events of Default have occurred and are continuing under Section 7.02(b)(ii) of the Master Loan Agreement as a result of the failure of certain Borrowers to pay interest on the Distribution Date for which it became due and payable in violation of

---

[2] As of February 29, 2024, the Borrowing Base Deficiency exists in the estimated amount of at least $300 million with respect to the SPLCSS Borrower and at least $44 million with respect to the Dorchester Borrower.

Section 2 of the Master Loan Agreement, and the continuance of such failures for two Business Days after the applicable Distribution therefor.

4. Certain Borrower Group Events of Default have occurred and are continuing under Section 7.02(d) of the Master Loan Agreement as a result of (a) each Borrower's failure to provide an annual audited financial statement of such Borrower and the Related Seller within 150 days after the end of the fiscal years ended December 31, 2021 and December 31, 2022, in violation of Section 5.01(j)(iii) of the Master Loan Agreement, (b) the Insurety Borrower executing a loan agreement with Balanced Management and incurring debt which is not permitted pursuant to the Master Loan Agreement or other Transaction Documents in violation of Section 5.01(o) of the Master Loan Agreement, and (c) the Insurety Borrower's failure to obtain updated actuarial models and persistency rates on an annual basis for the fiscal years ended December 31, 2021 and December 31, 2022 in violation of Section 5.01(x) of the Master Loan Agreement.

5. Certain Borrower Group Events of Default have occurred and are continuing under Section 7.02(e) of the Master Loan Agreement as a result of the Borrowers' failure to pay interest on outstanding Debt in a principal amount of at least $25,000 in the aggregate when due and payable, in violation of Section 2 of the Master Loan Agreement.

6. Certain Borrower Group Events of Default have occurred and are continuing under Section 7.01(g) of the Master Loan Agreement as a result of the Borrowing Base Deficiency and other material breaches set forth in the Notice of Breach.

**<u>EXHIBIT B</u>**

**Notice of Breach**

[See Attached]



November 29, 2023

**BY HAND DELIVERY AND E-MAIL**

777 Partners LLC
600 Brickell Ave, 19th Floor
Miami, FL 33131,
Attention: Steven W. Pasko
Email: spasko@777part.com

600 Partners LLC
600 Brickell Ave, 19th Floor
Miami, FL 33131,
Attention: Steven W. Pasko
Email: spasko@777part.com

SPLCSS III LLC
600 Brickell Ave, 19th Floor
Miami, Florida 33131
Attention: Steven W. Pasko
Email: spasko@777part.com

Dorchester Receivables II LLC
600 Brickell Ave, 19th Floor
Miami, Florida 33131
Attention: Steven W. Pasko
Email: spasko@777part.com

Re:    Notice of Breach of Parties' Agreements

Dear Mr. Pasko:

I write on behalf of Leadenhall Capital Partners, LLP ("Leadenhall") and the Lenders pursuant to the (i) Loan and Security Agreement (the "Master Loan Agreement"); (ii) Pledge Agreements ("Pledge Agreements"); and (iii) Guaranty Agreement each dated May 7, 2021 ("Guaranty Agreement," and collectively, the "Agreements").[1] Based on our current investigation, the Borrowers have materially breached the Agreements by double-pledging Collateral to both the Lenders and to a separate third-party lender, pledging Collateral to the Lenders which was never purchased by the Borrowers (and therefore which the Borrowers did not own), and selling and/or removing Collateral pledged to the Lenders without a corresponding reduction in the Principal Amount of all Loans in breach of the Borrowing Base Limitation. A Borrowing Base Deficiency presently exists in the amount of an estimated $310 million with respect to the SPLCSS Borrower and $41 million with respect to the Dorchester Borrower.

Below we set forth the details of the Borrowers' material breaches and expressly reserve all rights under the Agreements, including without limitation the right to declare an Event of Default, issue a demand for Indemnification, declare a Trigger Event with respect to the Guaranteed Obligations, and terminate the Agreements. *See* Master Loan Agreement §§ 4.01, 5.01, 7.01, 9.01; Pledge Agreements §§ 2, 5.2; Guaranty Agreement § 2. We also reserve the right to bring a claim for damages on the contractual breaches specified herein, any additional breaches, or for any other legal claim such as fraud.

---

[1] Unless otherwise defined, capitalized terms have the same meaning as set forth in the Agreements.

Leadenhall Capital Partners LLP Level 15, 70 Mark Lane, London EC3R 7NQ
Registered in England and Wales No.: OC336969
Leadenhall Capital Partners LLP is authorised and regulated in the UK by the Financial Conduct Authority No.: 486112

November 29, 2023

***The Agreements.***  On May 7, 2021, the parties entered into the Master Loan Agreement whereby the Borrowers pledged Collateral to secure Loans pursuant to a secured credit facility. *See* Master Loan Agreement §§ 2.01; 2.02.  To secure the performance of the Borrowers, the Borrowers pledged for the benefit of the Lenders a "first-priority security interest in the Collateral," where "Collateral" is defined as "all of such Borrower's right, title and interest in, to and under all assets of such Borrower," inclusive of all of the Borrowers' assets and Receivables. Master Loan Agreement §§ 1.01; 2.15.  Executed on the same date as the Master Loan Agreement, the Pledge Agreements further grant the Lenders "100% of the membership interests in the Borrower."  Pledge Agreements § 2.1.  To guarantee the Borrowers' obligations, the Guaranty Agreement specifies that 777 Partners LLC and 600 Partners LLC "unconditionally and irrevocably guarantee[]" the "full and punctual payment and performance when due" of the obligations.  Guaranty Agreement § 2(a).

Fundamental to the credit facility is that the Borrowers have full ownership of the Collateral pledged for the benefit of the Lenders and that the Collateral remain free and clear from any other security interest.    The Agreements provide that, on the Effective Date, any Borrowing Date, and the date of each Monthly Report and Compliance Report, each Borrower "***is the legal and beneficial owner of the applicable Collateral free and clear of any Adverse Claim***," where Adverse Claim is defined as "a lien, security interest or other charge or encumbrance, or any other type of preferential arrangement."  Master Loan Agreement §§ 1.01; 4.01(h).  The Agreements also provide that throughout the term of the Borrower's Commitments, the Borrowers "***shall not sell, assign (by operation of law or otherwise) or otherwise dispose of, or create or suffer to exist any Adverse Claim upon or with respect to any Collateral***."  Master Loan Agreement § 5.01(d). Finally, the Agreements obligate the Borrowers to comply with the Borrowing Base Limitations, which are calculated in accordance with a formula to ensure that the loans are sufficiently collateralized.  *See* Master Loan Agreement § 2.01.

***Breaches in Connection with the Lenders' Collateral.***  Over the last year, Leadenhall and the Lenders became aware that assets pledged as Collateral under the Agreements may have been double-pledged to another third-party lender.  On a March 28, 2023, conference call between Leadenhall representatives and Josh Wander, Managing Partner of 777 Partners LLC—which was recorded with Mr. Wander's permission—Mr. Wander expressly acknowledged that Collateral pledged to the Lenders by the SPLCSS Borrower was double-pledged to Credigy, a third-party lender.  Mr. Wander further admitted on the call that double-pledging the Lenders' Collateral was a "mistake" that he would remedy.

Since the March 28, 2023 conference call, Leadenhall has conducted an investigation in order to obtain additional information concerning the Lenders' Collateral.  Over the course of this investigation, Leadenhall has learned that the SPLCSS and Dorchester Borrowers pledged Receivables to the Lenders that the Borrowers may have never purchased in the first place and therefore did not own.  Leadenhall has also learned that the Borrowers may have sold and/or

2

November 29, 2023

removed Collateral pledged to the Lenders in breach of the Borrowing Base Limitation. Our current understanding is that a Borrowing Base Deficiency exists in the amount of at least $310 million with respect to the SPLCSS Borrower and at least $41 million with respect to the Dorchester Borrower.

In addition to uncovering these material breaches, we also have reason to believe that the Borrowers have made false statements on which the Lenders have relied. In particular, the SPLCSS Borrower has falsely represented that certain Receivables existed on Lenders' Borrowing Base while separately representing to Credigy that the same Receivables had been released from the Lenders' Borrowing Base. We continue to investigate the facts concerning these breaches and representations, including the extent to which other third-party lenders to the Borrowers not only had knowledge of any material breaches and false statements but benefitted from those breaches and false statements to the detriment of the Lenders.

In light of the Borrowers' undisputed, uncured, material breaches, we request that the Borrowers promptly provide the following information:

(i)     a full accounting of any Collateral that has been double-pledged to the Lenders and to any third-party, inclusive of a full identification of any such third-parties which also have an interest in the Lenders' Collateral;

(ii)    a full accounting of any Collateral pledged for the benefit of the Lenders which is not owned in full by the Borrowers, inclusive of a full identification of any parties which do own or otherwise have an interest in such Collateral);

(iii)   revised Compliance Reports amending any misrepresentations in previously delivered Compliance Reports, including any representations as to the Borrowing Base calculations;

(iv)    for each of the assets double-pledged to the Lenders and a third party, an audit trail providing, at minimum, the name of any individuals who were responsible for allocating the assets and timestamps showing each time in which the assets were allocated since inception;

(v)     a full accounting of any and all "unfunded" or "unallocated" assets which may now be allocated as Collateral to the Lenders;

(vi)    a detailed description of how, to the extent there is a shortfall in value between any "unfunded" assets which may now be allocated to the Lenders

3

November 29, 2023

and the value of the agreed-upon Collateral, the Borrowers intend to make up for that shortfall in value;

(vii)   a detailed description of any and all reconciliation procedures the Borrowers will implement to ensure that assets are owned by the Borrowers, do not exist on any other lenders' borrowing base, and are not double-pledged going forward; and

(viii)  any reporting obligations you have (whether to investors, deal targets, regulators, or otherwise) that there is has been a material breach and Event of Default as to the Agreements.

Please be advised that Leadenhall will continue to evaluate its position on a day-by-day basis. Nothing contained in this letter nor any delay or failure by Leadenhall in exercising any rights or remedies under the Master Loan Agreement, the other Transaction Documents, or applicable law shall be deemed to constitute: (i) a waiver of any Default or Event of Default now existing or hereafter arising or a waiver of compliance with any term or provision in the Master Loan Agreement or any other Transaction Document; (ii) a waiver of any rights, claims, and remedies under the Transaction Documents or applicable law; or (iii) a course of dealing among the parties.

Leadenhall hereby advises that it requires strict compliance with all of the terms and conditions of the Master Loan Agreement and the other Transaction Documents. To that end, it should be expressly understood that the parties are not entering into a mutual disregard of the terms and provisions of the Master Loan Agreement and any other Transaction Documents or any course of dealing at variance with the terms and provisions of the Master Loan Agreement and any other Transaction Documents. For the avoidance of doubt, Leadenhall fully expect you to comply with all aspects of the Master Loan Agreement and the other Transaction Documents.

Sincerely,

John Wells

CC (via e-mail):     Josh Wander
                     Kenneth King
                     Michael Saliba
                     Luca Albertini
                     Craig Gillespie
                     Phil Kane

4

**SCHEDULE I[3]**

**Calculation of Accelerated Amount**

| Borrower | Principal ($) | Interest ($) | Accelerated Amount Due ($) |
|---|---|---|---|
| SPLCSS III LLC | 366,795,056.26 | 29,075,119.81 | 395,870,176.07 |
| Dorchester Receivables II LLC | 83,151,602.71 | 5,408,953.45 | 88,560,556.16 |
| Insurety Agency Services LLC | 50,562,721.62 | 274,131.88 | 50,836,853.50 |
| Signal SML 4 LLC | 73,790,592.01 | 471,789.09 | 74,262,381.09 |
| **TOTAL** | **574,299,972.60** | **35,229,994.22** | **609,529,966.82** |

---

[3] These amounts are exclusive of attorneys' fees and other fees or charges that are due or may become due under the Transaction Documents.