# KING & SPALDING

King & Spalding LLP
1185 Avenue of the Americas, 34th Floor
New York, NY 10036-4003
Tel: +1 212 556 2100
Fax: +1 212 556 2222
www.kslaw.com

Leigh M. Nathanson
Partner
Direct Dial: +1 212 790 5359
lnathanson@kslaw.com

May 17, 2024

**VIA ECF**

Hon. John G. Koeltl
United States District Court for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007-1312

  Re: *Leadenhall Capital Partners et al. v. Wander et al.*,
     Case No. 24-cv-3453 (S.D.N.Y.).

Dear Judge Koeltl:

  I write on behalf of Plaintiffs Leadenhall Capital Partners LLP and Leadenhall Life Insurance Linked Investments Fund plc ("Leadenhall") in the above-refenced action to provide the status update ordered by the Court at the hearing on May 14, 2024 (the "Hearing") concerning Leadenhall's application for emergency injunctive relief. ECF No. 71.

  Leadenhall requested emergency relief because, in the time immediately preceding the filing of the Complaint, Defendant 777 Partners LLC ("777 Partners")[1] repeatedly represented that it did not have even modest sums of money to repay more than $600 million of debt owed to Leadenhall. ECF No. 58 (Declaration of Craig Gillespie) ¶¶ 13-14, 18-21; ECF No. 60 (Declaration of Luca Albertini) ¶¶ 5-6. Over this same time period, 777 Partners expressly informed Leadenhall that it was running down its business and disposing of assets to repay creditors, ECF No. 58 ¶ 24; ECF No. 60 ¶¶ 6-8, while dissipating more than $100 million on professional football teams, ECF No. 57 (Memorandum of Law) 12-13. Leadenhall's application was necessary to pause this dissipation of assets and prevent other Defendants, including Advantage Capital Holdings LLC ("A-CAP"), from using its control and undue influence over 777 Partners to foreclose upon and exercise remedies against 777 Partners' assets and thereby strip the remaining value from 777 Partners. *See, e.g.*, *Quantum Corp. Funding, Ltd. v. Assist You Home Health Care*, 144 F. Supp. 2d 241, 242, 243-49 (S.D.N.Y. 2001); *Dong v. Miller*, 2018 WL 1445573, at *3, 6-13 (E.D.N.Y. Mar. 23, 2018).

---

[1] "777 Partners" refers to all affiliates of 777 Partners, including 600 Partners LLC.

At the Hearing, the Court observed the exigency underpinning Leadenhall's application for emergency relief but recognized that the parties had not had a chance to confer regarding whether they could reach a consensual resolution to address the irreparable harm posed to Leadenhall by the continued dissipation of 777 Partners' assets. The parties agreed that 777 Partners would provide a proposal by close of business on Thursday, May 16, 2024, to allow Leadenhall to assess whether it would be necessary to pursue its application for emergency relief.

Leadenhall subsequently had, through counsel, what it believed to be constructive conversations with 777 Partners and A-CAP with the goal of obviating further proceedings on Leadenhall's application. In that vein, Leadenhall explained to 777 Partners and A-CAP via telephone and e-mail that the Court's intervention would be necessary absent agreement by Defendants to provide transparency and submit to judicial oversight with regard to the administration, protection, and preservation of 777 Partners' remaining assets. Unfortunately, Leadenhall has not received a proposal from either 777 Partners or A-CAP that even purports to address its concerns regarding the dissipation of assets and the threat of A-CAP's exercise of remedies against those assets with no visibility into those transactions or assurance that such transactions are value maximizing to the 777 Partners enterprise. In fact, Defendants' promise of a good-faith proposal to address Leadenhall's concerns appears to have been yet another delay tactic to prevent Leadenhall from taking legal recourse. Leadenhall therefore requests that the Court enter the proposed Order to Show Cause immediately pursuant to Federal Rule of Civil Procedure 65(b) or, in the alternative, set a briefing schedule on its application for a Temporary Restraining Order permitting five days for Defendants' response and two days for Leadenhall's reply.

As evidenced by the allegations in the Complaint and application for injunctive relief, Leadenhall's desire has always been to obtain the relief it seeks through agreement between the parties rather than judicial intervention. To that end, Leadenhall is transparent below with the Court and the Defendants as to the necessary elements of any agreement that would obviate the need for a Temporary Restraining Order.

*First*, Leadenhall understands that 777 Partners engaged a restructuring firm, B. Riley Financial, Inc. ("B. Riley"), in the immediate wake of this lawsuit to assist with 777 Partners' operational and financial challenges. Leadenhall, through counsel, had a teleconference with representatives of B. Riley and 777 Partners on May 15, 2024, and the conversation appeared to be encouraging. B. Riley represented to Leadenhall's counsel during the teleconference and in its subsequent proposal that it is acting as an independent fiduciary, but admitted that it had been referred to 777 Partners by an advisor to A-CAP; that it may be removed by 777 Partners at any time; and that 777 Partners continues to sit in the organizational structure under the personal shareholding vehicles of Josh Wander and Steven Pasko. Critically, B. Riley's proposal offered no reporting or oversight to Leadenhall or the Court to ensure that its treatment of 777 Partners' assets in light of the pending lawsuit is appropriate. As 777 Partners' counsel candidly put it during the parties' caucus at the Hearing, B. Riley perceives Leadenhall as "a pimple on the ass" of the sprawling 777 Partners operation—consistent with the utter disregard with which 777 Partners and A-CAP have treated Leadenhall and its contractual and collateral rights for over a year.

If 777 Partners' position is that B. Riley is an adequate substitute for the receiver Leadenhall seeks to be appointed by the Court, it should have no objection to the following terms at minimum: (i) formalization of B. Riley's role as a court-appointed receiver or the functional equivalent thereof, including appropriate judicial oversight; (ii) production of B. Riley's engagement agreement with 777 Partners and information on the source(s) of payment for its fees; (iii) advance reporting to Leadenhall on any monetization or other transactions that may provide value to Leadenhall and other creditors; (iv) periodic financial reporting and projections provided to Leadenhall and other creditors; and (v) a plan for the distribution of any assets and protection of any collateral. If B. Riley and 777 Partners are unwilling to agree to such safeguards, Leadenhall asks that the Court appoint a receiver or, in the alternative, order the other asset-protective measures that Leadenhall has outlined in the proposed Order to Show Cause.

*Second*, neither 777 Partners nor A-CAP has made any proposal to place any controls on the foreclosure or exercise of remedies against 777 Partners' assets. Without any transparency into A-CAP's enforcement actions against 777 Partners—such as a description of the assets on which A-CAP is foreclosing, the basis for any default, a description of the loan and the extent to which the foreclosure will reduce the value of the loan, and confirmation that B. Riley has assessed the economic terms of the transactions and determined that such transactions are value-maximizing to the various stakeholders of 777 Partners, including Leadenhall—A-CAP may use its control and undue influence over 777 Partners to seize assets on non-commercial terms and thereby strip assets to the detriment of other creditors. A-CAP's counsel has emphasized that A-CAP has alleged "contractual" rights vis-à-vis 777 Partners to do what it will with 777 Partners' assets. But as Leadenhall's Complaint alleges, A-CAP obtained those rights through interested-party, non-arm's-length transactions that enriched A-CAP at the expense of 777 Partners and its creditors, and so A-CAP's exercise of remedies pursuant to those rights poses the same irreparable harm to Leadenhall as 777 Partners' direct efforts at dissipation.

If A-CAP is truly acting as an arm's-length senior lender exercising remedies, A-CAP should have no objection to the following terms at minimum: (i) advance notice of any attempt by A-CAP to foreclose on or exercise remedies against 777 Partners' assets, including disclosure of the economic terms of those transactions so that they may be assessed and/or challenged by other creditors; (ii) disclosure of A-CAP's investment and credit exposure across 777 Partners; (iii) disclosure of A-CAP's current plan to exercise remedies against 777 Partners' assets, the anticipated timing of those actions, and the economic terms of the transactions; and (iv) a written representation as to the role A-CAP is currently playing with respect to 777 Partners and/or B. Riley's governance, management, funding, and operations. Leadenhall continues to have serious concerns about A-CAP's influence over 777 Partners and B. Riley in light of A-CAP's historic control over 777 Partners' operations; the fact that A-CAP referred B. Riley to 777 Partners; and that B. Riley will likely be dependent on A-CAP for funding—which may not be an issue if the consideration for and terms of such funding is appropriate and disclosed.[2]

---

[2] These concerns are intensified by the fact that the law firm serving as counsel for A-CAP in this litigation also serves as counsel for so-called independent directors of a 777 Partners' subsidiary, 777 Re Ltd.

Page 4

      The safeguards set forth above for any resolution are prerequisites to avoid irreparable harm to Leadenhall by ensuring that B. Riley is truly acting as an independent fiduciary and A-CAP is not using its control and undue influence to strip 777 Partners' remaining assets.[3]  To the extent Defendants argue that Leadenhall's proposed safeguards are overly burdensome, the Court may—as requested in Leadenhall's proposed Order to Show Cause—appoint its own independent and disinterested receiver, which may obviate the need for some or all of these safeguards.

      It is beyond time for 777 Partners and A-CAP to stop treating Leadenhall like a minor annoyance to be swatted away while razing 777 Partners and rendering it judgment-proof in the process.  Leadenhall provided funding as a secured lender, and 777 Partners and A-CAP must face up to the fact they first unlawfully removed Leadenhall's collateral security and have now pushed 777 Partners to the brink of insolvency, exposing Leadenhall's investors to irreparable harm in the process.  Leadenhall now respectfully asks the Court to step in expeditiously.

      Respectfully submitted,

      */s/ Leigh M. Nathanson*

      Leigh M. Nathanson

---

[3] The safeguards set forth above are not necessarily exhaustive, and Leadenhall reserves the right to negotiate for and seek additional information and controls from Defendants.