**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LEADENHALL CAPITAL PARTNERS LLP and LEADENHALL LIFE INSURANCE LINKED INVESTMENTS FUND PLC, <br><br> Plaintiffs, <br><br> vs. <br><br> JOSH WANDER, STEVEN PASKO, KENNETH KING, 777 PARTNERS LLC, 600 PARTNERS LLC, SPLCSS III LLC, SIGNAL SML 4 LLC, INSURETY AGENCY SERVICES LLC, DORCHESTER RECEIVABLES II LLC, SUTTONPARK CAPITAL LLC, SIGNAL MEDICAL RECEIVABLES LLC, INSURETY CAPITAL LLC, SUTTONPARK SERVICING LLC, SIGNAL SERVICING LLC, INSURETY SERVICING LLC, and ADVANTAGE CAPITAL HOLDINGS LLC, <br><br> Defendants. | Civil Action No. 1:24-cv-03453 |

**A-CAP'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS'**
**APPLICATION FOR (1) A TEMPORARY RESTRAINING ORDER, AND**
**(2) AN ORDER TO SHOW CAUSE FOR A RECEIVER OR,**
**ALTERNATIVELY, A PRELIMINARY INJUNCTION**

## <u>**TABLE OF CONTENTS**</u>

Page

PRELIMINARY STATEMENT ............................................................................................. 1

BACKGROUND ................................................................................................................. 3

STANDARD OF REVIEW .................................................................................................. 8

ARGUMENT ..................................................................................................................... 9

I.      Because Leadenhall Brings No Motion Against A-CAP, it Cannot Enjoin A-CAP ............ 9

II.     There Are No Substantive Grounds To Enjoin A-CAP. ............................................... 9

        A.      Leadenhall Has Not Shown a Likelihood of Success on Any Claim Against A-CAP ................................................................................................................. 9

        B.      Because A-CAP Is Solvent, Leadenhall Cannot Show Irreparable Harm. ....................... 10

III.    The Unsecured Guarantee Cannot Support An Injunction, And The Relief Requested Would Be Inequitable And Contrary To The Public Interest. .......................... 12

        A.      Leadenhall's Unsecured Guarantee Cannot Support Injunctive Relief. ........................... 12

        B.      Leadenhall's Requested Injunctive Relief Would Inequitably Harm Other Creditors, Including A-CAP. ............................................................................... 14

CONCLUSION ................................................................................................................. 16

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Bank of Am., N.A. v. Won Sam Yi,*
    294 F. Supp. 3d 62 (W.D.N.Y. 2018)...........................................................................12

*BigStar Ent., Inc. v. Next Big Star, Inc.,*
    105 F. Supp. 2d 185 (S.D.N.Y. 2000) ..........................................................................9

*Candelaria v. Coughlin,*
    787 F. Supp. 368 (S.D.N.Y. 1992), *aff'd* 979 F.2d 845 (2d Cir. 1992)........................9

*CapLOC, LLC v. McCord,*
    17-CV-5788, 2019 WL 1236415 (S.D.N.Y. Mar. 18, 2019)........................................11

*In re CE Elec. Contractors, LLC,*
    No. 21-BR-20211, 2022 WL 952776 (Bankr. D. Conn. Mar. 29, 2022)........................15

*In re Celsius Network LLC,*
    642 B.R. 497 (Bankr. S.D.N.Y. 2022) .........................................................................15

*Corporative Grupo R SA de C.V. v. Marfield Ltd.,*
    606 F. Supp. 3d 502 (S.D. Tex. 2022)...........................................................................6

*In re DBSD N. Am., Inc.,*
    634 F.3d 79 (2d Cir. 2011) ..........................................................................................15

*In re First Republic Grp. Realty, LLC.,*
    421 B.R. 659 (Bankr. S.D.N.Y. 2009) .........................................................................11

*Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.,*
    527 U.S. 308 (1999) .....................................................................................................12

*Haymount Urgent Care PC v. Gofund Advance, LLC,*
    No. 22-CV-1245, 2022 WL 836743 (S.D.N.Y. Mar. 21, 2022).................................9, 10

*Helios Int'l S.A.R.L. v. Cantamessa USA, Inc.,*
    No. 12-CV-8205, 2013 WL 3943267 (S.D.N.Y. July 31, 2013).....................................2

*JBR, Inc. v. Keurig Green Mountain,*
    618 F. App'x 31 (2d Cir. 2015).....................................................................................9

*Leslie v. Minson,*
    No. 84-CV-8579, 1984 WL 1316 (S.D.N.Y. Dec. 12, 1984).......................................11

*Nanjing Textiles IMP/EXP Corp. v. NCC Sportswear Corp.,*
    No. 06-CV-52, 2006 WL 2337186 (S.D.N.Y. Aug. 11, 2006) (Koeltl, J.) ...................*passim*

*New Hope Fam. Servs., Inc. v. Poole*,
    966 F.3d 145 (2d Cir. 2020) ................................................................................................ 9

*Pivotal Payments, Inc. v. Phillips*,
    No. 14-CV-4910, 2014 WL 6674621 (E.D.N.Y. Nov. 25, 2014) ....................................... 11

*Roku Inc. v. Individuals, Corps., Ltd. Liab. Companies, Partnerships & Unincorporated*
    *Associations Identified on Schedule A Hereto*,
    No. 22-CV-0850, 2022 WL 1598208 (S.D.N.Y. May 20, 2022) ....................................... 10

*Petition of Smouha*,
    136 B.R. 921 (S.D.N.Y. 1992) ......................................................................................... 15

*U.S. Bank Nat. Ass'n v. Nesbitt Bellevue Prop. LLC*,
    859 F. Supp. 2d 602 (S.D.N.Y. 2012) ............................................................................... 8

*United States v. N.Y. Fish, Inc.*,
    10 F. Supp. 3d 355 (E.D.N.Y. 2014) ............................................................................... 10

*Wilmington Trust, N.A. v. Winta Asset Mgmt. LLC*,
    20-cv-5309, 2024 WL 1700032 (S.D.N.Y. Apr. 18, 2024) (Koeltl, J.) ............................... 6

**Statutes & Other Authorities**

7 C.F.R. § 4287.156 ...................................................................................................................... 6

Restatement (Third) of Property § 2.2 ........................................................................................ 7

Restatement (Third) of Restitution and Unjust Enrichment § 24, Illustration 17 ................... 6-7

WestLaw Practical Law Finance, *Due Diligence Checklist* ........................................................ 6

Wright & Miller, FEDERAL PRACTICE AND PROCEDURE § 2983 (3d ed.) ...................................... 13

Leadenhall Capital Partners LLP and Leadenhall Life Insurance Linked Investments Fund PLC (collectively, "Leadenhall") does not bring its application, ECF 56, against Advantage Capital Holdings LLC and Kenneth King (collectively, "A-CAP"). Even so, the relief Leadenhall seeks would enjoin (and materially harm) A-CAP, and it therefore submits this opposition.

## PRELIMINARY STATEMENT

Leadenhall is in a bind of its own creation. It made risky, rate-sensitive loans to four special purpose vehicles (the "SPV Borrowers") comprising a small corner of 777's Structured Settlement business.[1] When rates spiked, Leadenhall's debt became impaired. Leadenhall's own gross negligence then compounded its predicament—even the most cursory diligence would have revealed whether the SPV Borrowers' pledged assets had been double pledged or purchased in the first place. Nor does its Unsecured Guarantee[2] of those loans, if triggered, offer any solace to Leadenhall: because it is unsecured (ECF 1 ¶ 93), that guarantee cannot support injunctive relief and has no priority over other creditors' liens.

For the past eighteen months, Leadenhall has assertedly gone to the negotiating table to try to improve its position. But with rights inferior to those of other creditors and little bargaining power, its efforts did not bear the fruit for which it hoped. It now resorts to litigation, complete

---

[1] The "SPV Borrowers" are SPLCSS III LLC, Signal SML 4 LLC, Insurety Agency Services, LLC, and Dorchester Receivables II LLC. "777," "777 Partners," and "Partners" refer broadly to businesses of 777 Partners LLC and 600 Partners LLC.

[2] The "Unsecured Guarantee" refers to the contract filed at ECF 58-2.

with "thermonuclear"[3] claims against the proverbial "deep pockets," to try to manufacture leverage that its loan documents cannot deliver.

In its opening litigation gambit, Leadenhall faced a dilemma:  it has no basis to enjoin A-CAP, yet A-CAP has what Leadenhall is after—deep pockets and the prioritized rights that come with A-CAP's senior secured liens.  Leadenhall's solution:  sleight of hand.  Leadenhall moves against only 777-affiliated Defendants—and even then, only on its contract claims—and its Proposed Order (ECF 56) avoids mentioning A-CAP by name.  Yet by the third page of that Proposed Order, it becomes clear that Leadenhall has A-CAP in its sights; the relief it seeks would broadly enjoin not just the subjects of its motion (and all their affiliates, (*id.* at p. 2 n.1)), but A-CAP too:

- Leadenhall asks the Court to enjoin *all "Defendants,"* including A-CAP, from agreeing to purchase any asset from any 777 affiliate, even those in unrelated lines of business over which A-CAP, but not Leadenhall, has perfected liens.  (*Id.* ¶¶ (1)(D), (2)(D).)

- Leadenhall also seeks to "prevent *any Defendant* from foreclosing on, repossessing, or exercising remedial actions against the assets" of any 777 affiliate.  (*Id.* ¶¶ (1)(E), (2)(E).)

Leadenhall also asks the Court to order $609 million to be aside and earmarked just for Leadenhall (*id.* ¶¶ (1)(B), (1)(C), (2)(B), (2)(C))—no matter Borrowers', Guarantors', and their affiliates' obligations to dozens of other creditors—and to thus leapfrog Leadenhall to the front of the line, past *all* other creditors of *all* 777-affiliated businesses, including A-CAP.  For three main

---

[3] *Helios Int'l S.A.R.L. v. Cantamessa USA, Inc.*, No. 12-CV-8205, 2013 WL 3943267, at *5 (S.D.N.Y. July 31, 2013) ("RICO allegations are often . . . garden variety fraud or breach of contract cases that some Plaintiff has attempted to transform into . . . 'the litigation equivalent of a thermonuclear device'") (cleaned up).

reasons, there is no basis for any relief of the sort, and Leadenhall's attempt to enjoin A-CAP should be summarily rejected.

*First*, because Leadenhall's application is not directed to A-CAP, it cannot yield relief that enjoins A-CAP.  *See infra* Part I.

*Second*, there are, in any event, no substantive grounds to enjoin A-CAP.  Leadenhall has not shown (and cannot show) a likelihood of success on any claim against A-CAP.  In fact, it moves on only its contract claims—claims that are not directed at A-CAP.  *See infra* Part II.A. And because Leadenhall does not (and cannot credibly) suggest that A-CAP is insolvent, it cannot show that any action taken by A-CAP would harm Leadenhall irreparably.  *See infra* Part II.B.

*Third*, Leadenhall's Unsecured Guarantee cannot support an injunction, *see infra* Part III.A, and for that reason and others, the relief sought by Leadenhall would be inequitable in the extreme—especially for the dozens of creditors with rights senior to Leadenhall's, *see infra* Part III.B.

## BACKGROUND

***Indebtedness of Partners to A-CAP, Leadenhall, and Others.***  A-CAP is an insurance holding company and the ultimate parent of multiple long-tenured insurance companies.  (Saliba Decl. ¶ 3.)  Its focus is on fulfilling its fiduciary obligation to protect the investments of its policyholders.  (*Id.* ¶ 4.)

A-CAP has loaned substantial sums to Partners HoldCo[4] ("the Holdco Loan"). (*Id.* ¶ 7.) The Holdco Loan is secured not just by a first-priority, perfected senior lien on the assets of Partners HoldCo, but also through senior, secured corporate guarantees from several subsidiary operating and intermediate holding companies across several of Partners' lines of business

---

[4] "HoldCo" refers to 777 Partners LLC and 600 Partners LLC, collectively.

("Partners OpCos"), which include Aviation; Specialty Finance (investing in industries like aviation finance and motorcycle leasing); Litigation Finance; Sustainable (ESG) Investment; Insurance; Sports, Media, and Entertainment; and Structured Settlements. (*Id.* ¶¶ 6,7.)



A-CAP does, through its senior, secured HoldCo Loan and its senior, secured Partners OpCo guarantees, have several contractual rights with respect to Partners—rights of exactly the sort one might expect a significant senior creditor to have. (*Id.* ¶ 10.)  Given the recent recaptures, A-CAP's subsidiary insurance companies also have contractual rights befitting its creditor-debtor relationship with Partners OpCos and affiliated SPVs.  A-CAP's and its insurance company subsidiaries' rights are essential to protecting the interests of not just A-CAP, but also its insurance companies.  A-CAP does not otherwise "control" Partners.  (*Id.* ¶ 9.)

A-CAP has invoked those rights in connection with requests of and proposals made to

Partners.  (*Id.* ¶ 10.)  Every such request and proposal has been made by A-CAP to fulfill its duties and serve the interests of both A-CAP and its insurance companies' policyholders.  (*Id.*)

Leadenhall's loans are smaller in scale and scope; it asserts that it has one loan facility that made loans to the four SPV Borrowers in Partners' Structured Settlement line of business.  (ECF 1 ¶ 42; Saliba Decl. ¶ 10.)  Leadenhall's only security interest is in pooled receivables (receivables related to, e.g., lottery tickets and medical debt) of those SPV Borrowers.  (ECF 58-1 § 2.15(c), (f).)  That interest is apparently subordinate to National Founders' liens on around $185 million of Structured Settlement assets.  (ECF 68.)

Partners Holdco guarantees Leadenhall's loan to the SPV Borrowers, but that guarantee is *unsecured*.  (ECF 1 ¶¶ 45, 93.)  Leadenhall thus also has contractual rights with respect to Partners, but the terms negotiated and agreed to by Leadenhall are inferior to those of other creditors.

Partners has dozens of creditors across the several industries in which it operates.  (Saliba Decl. ¶ 11; *see also, e.g.*, ECF 61-2 at ¶ 1; ECF 61-3 at ¶¶ 50(b), 67 (g); ECF 61-6 at ¶ 11; ECF 61-7 at ¶ 12; ECF 61-9 at ¶ 1.)

*Leadenhall's Negligent Failure to Protect Its Interests in Its Collateral.*  Lenders customarily perform diligence on the collateral that they intend to finance, especially when (as here) the transaction involves a borrowing base secured by specific assets, including by:

- asking for details about the subject assets, including detailed descriptions of receivables, contracts, inventory or other assets;

- auditing borrowing-base assets, work comprising a detailed review of assets, procedures, books and records, and financial reporting systems; and

- ensuring that its security interest in the collateral is perfected through filing a financing statement or taking possession or control of the assets, *see generally* UCC Article 9, Part 3 (Perfection and Priority).

*See, e.g.*, WestLaw Practical Law Finance, *Due Diligence Checklist*.  The diligence process

continues throughout the life of the loan.  Regular inspections, audits, and reviews are customary.

It is apparent that, if its allegations about borrowing-based defects are to be believed, Leadenhall did not conduct reasonable or customary diligence, whether before closing the facility in May 2021 or any time since (as part of ongoing reviews or audits that Leadenhall was entitled to conduct under the LSA (ECF 58-1 § 5.02))—at least not until it learned of the alleged collateral defects in *November 2023* (ECF 1 ¶ 126).  What is more, despite allegedly being warned of borrowing-base fraud in September 2022 and soon after allegedly receiving confirmation of as much—if true, giving Leadenhall rights to accelerate and pursue all available remedies against the SPV Borrowers (ECF 58-1, p. 24)—Leadenhall did not so much as deliver a notice of default until fourteen months after being warned of the fraud, (ECF 1 ¶¶ 7, 126).

***A-CAP's Efforts To Protect Value in Partners' Businesses.***  Leadenhall makes much of "protective advances," a term that refers to an existing lender providing additional financing to a borrower when confronted with a "threat [to the] lender's collateral"—a practice that "is common when a lender's collateral is in jeopardy." *Corporative Grupo R SA de C.V. v. Marfield Ltd.*, 606 F. Supp. 3d 502, 512 (S.D. Tex. 2022) (explaining that such additional financing "is termed 'protective advances'").  The legitimacy of such protective advances is broadly accepted.  *See, e.g., Wilmington Trust, N.A. v. Winta Asset Mgmt. LLC*, 20-cv-5309, 2024 WL 1700032 (S.D.N.Y. Apr. 18, 2024) (Koeltl, J.) (adopting report and recommendation that allowed plaintiff lender to recover protective advances made for operating expenses related to mortgaged commercial property); 7 C.F.R. § 4287.156 (in the context of agricultural loans, explaining that "[p]rotective advances are advances made by the lender for the purpose of preserving and protecting the collateral where the debtor has failed to, will not, or cannot meet its obligations"); Restatement (Third) of Restitution and Unjust Enrichment § 24, Illustration 17; Restatement (Third) of Property

§ 2.2.

███████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████

***The Appointment of a CRO at Partners.***   Last month, concerned about the risks to its investments in Partners, A-CAP recommended that Joshua Wander and Steven Pasko resign their positions and that Partners appoint an independent and reputable professional as chief restructuring officer with complete authority over Partners' decisionmaking (the "CRO").  (*Id.* ¶ 17.)  A-CAP's primary concern was identifying a truly independent, cost-efficient CRO with a sterling industry reputation and experience with large, challenging projects.  (*Id.* ¶ 18.)  A-CAP hired an outside firm (with which A-CAP had no previous relationship) to help identify potential candidates who satisfied all the criteria.  (*Id.* ¶ 18.)

That firm identified four candidates, and A-CAP proposed them to Partners. (*Id.* ¶ 19.)  All four candidates are highly qualified.  None had any prior personal or professional relationship with A-CAP or its leaders.  (*Id.*)

After interviewing candidates (interviews in which A-CAP did not participate), Partners retained GlassRatner Advisory & Capital Group, LLC dba B. Riley Advisory Services in May 2024.  (*Id.* ¶¶ 20, 21.)  Ian Ratner serves as CRO with ultimate responsibility, and Mark Shapiro serves as Interim COO.  (*Id.* ¶ 21.)  A-CAP is not supervising or directing Mr. Ratner's work; he and his firm are entirely independent of A-CAP.  (*Id.*)

*Leadenhall's Motion for Temporary Restraining Order Against Partners.*  Despite learning of the facts it now alleges no later than March 2023, (ECF 1 ¶¶ 104–05), Leadenhall waited until this month to sue.  On top of its claims against Partners, Leadenhall sues A-CAP because it says that "A-CAP must have been well aware" of alleged fraud committed by Partners. (*Id.* ¶ 142; *cf.* ECF 81 (National Founders disputing that any collateral has been double-pledged).) After waiting ten more days, Leadenhall moved for urgent and extraordinary relief to "prevent Wander from rendering Defendants judgment-proof and irreparably harming Leadenhall's ability to ever recover what it is owed."  (ECF 57, p. 5.)

*Leadenhall's Attempt To Enjoin A-CAP.*  While Leadenhall's application is not directed at A-CAP, the relief it seeks would broadly enjoin A-CAP and its affiliates from exercising its contractual rights across all of Partners' several businesses and dozens of affiliates.  Leadenhall's unilateral "Status Report" underscores Leadenhall's desire to enjoin A-CAP. (ECF No. 73, p. 1 ("Leadenhall's application was necessary to . . . prevent other Defendants, including [A-CAP], from using its control and undue influence over 777 Partners to foreclose upon and exercise remedies against 777 Partners' assets.").  In all, "A-CAP" appears 23 times in that "Status Report" about an application that is ostensibly not directed at A-CAP.

## STANDARD OF REVIEW

Movants face a high bar when seeking the "appointment of a receiver," which is "an extraordinary remedy" to be "employed cautiously and granted only when clearly necessary to protect plaintiff's interests in the property."  *U.S. Bank Nat. Ass'n v. Nesbitt Bellevue Prop. LLC*, 859 F. Supp. 2d 602, 610 (S.D.N.Y. 2012).

The bar is also high for TROs and preliminary injunctions.  Each is an "extraordinary and drastic remedy," that "should not be granted unless the movant, by a *clear showing*, carries the burden of persuasion."  *JBR, Inc. v. Keurig Green Mountain*, 618 F. App'x 31, 33 (2d Cir. 2015).

Movants bear "the burden of proving each element requisite" for the requested injunctive relief. *BigStar Ent., Inc. v. Next Big Star, Inc.*, 105 F. Supp. 2d 185, 191 (S.D.N.Y. 2000).  And unlike with motions to dismiss, plaintiffs' well-pleaded facts are not accepted as true and plaintiffs' showings are not viewed in the light most favorable to them.  *New Hope Fam. Servs., Inc. v. Poole*, 966 F.3d 145, 181 (2d Cir. 2020).

## ARGUMENT

### I.    BECAUSE LEADENHALL BRINGS NO MOTION AGAINST A-CAP, IT CANNOT ENJOIN A-CAP.

The first reason to reject any injunction against A-CAP is straightforward:  Leadenhall brings no motion against A-CAP.  (*See, e.g.*, ECF 56, pp. 1-2; ECF 57, pp. 16, 18 n.17.)  It thus has no vehicle to seek *any* relief against A-CAP, much less the "extraordinary and drastic" relief it requests.  *Candelaria v. Coughlin*, 787 F. Supp. 368, 378 (S.D.N.Y. 1992), aff'd, 979 F.2d 845 (2d Cir. 1992) (denying motion to enjoin parties against whom the motion was not directed, and suggesting the proper way to seek the desired relief:  by suing and moving for injunctive relief against those parties).

### II.    THERE ARE NO SUBSTANTIVE GROUNDS TO ENJOIN A-CAP.

Because Leadenhall has not shown a likelihood of success on any claim against A-CAP, *see infra* Part II.A, or that A-CAP could cause it irreparable harm, *see infra* Part II.B, Leadenhall has no basis to enjoin A-CAP in any way.

### A.    Leadenhall Has Not Shown a Likelihood of Success on Any Claim Against A-CAP.

To enjoin A-CAP, Leadenhall must show a likelihood of success on a claim ***against A-CAP.  See, e.g.***, *Haymount Urgent Care PC v. Gofund Advance, LLC*, No. 22-CV-1245, 2022 WL 836743, at *1 (S.D.N.Y. Mar. 21, 2022) (holding that to enjoin a group of defendants, plaintiffs must demonstrate a likelihood of success on at least "one claim against ***each*** defendant")

(emphasis added).  Leadenhall makes no attempt to do so.  Its motion "does not rest" on any claim against A-CAP (ECF 57, p. 18 n.17), but on its "claims arising from contractual agreements with the Borrowers and Guarantors" (*id.* at 16)—contract claims against only Partners entities, not A-CAP.  That precludes any relief that enjoins A-CAP in any way.  *See, e.g.*, *Roku Inc. v. Individuals, Corps., Ltd. Liab. Companies, Partnerships & Unincorporated Associations Identified on Schedule A Hereto*, No. 22-CV-0850, 2022 WL 1598208, at *6 (S.D.N.Y. May 20, 2022) (denying motion for preliminary injunction where plaintiff had "not carried its burden to show a likelihood of success on the merits" as to certain defendants because it "put in no evidence and made no arguments" on its claims against them).[5]

B.    Because A-CAP Is Solvent, Leadenhall Cannot Show Irreparable Harm.

In this case over money damages, Leadenhall's only asserted basis for injunctive relief is the suggestion that Josh Wander and 777 Partners HoldCo are insolvent or might frustrate the collection of money damages.  (ECF 57, pp. 18 (relying on cases in which *all* defendants were insolvent or had repeatedly tried to frustrate the collection of money judgments), 22.)  Leadenhall does not, however, assert that *A-CAP* might do so or that *A-CAP* is insolvent—nor could it.  *Cf.*

---

[5] *See also United States v. N.Y. Fish, Inc.*, 10 F. Supp. 3d 355, 382 (E.D.N.Y. 2014) (denying motion seeking "to enjoin *all* defendants" given "the absence of findings as to [certain defendants' alleged] liability," and there thus being "no legal authority justifying an injunction" as to those defendants).  *Cf. Nanjing Textiles IMP/EXP Corp. v. NCC Sportswear Corp.*, No. 06-CV-52, 2006 WL 2337186, at *5, *6 (S.D.N.Y. Aug. 11, 2006) (Koeltl, J.) (rejecting order of attachment against certain defendants because movant had "not offered any evidence" of a conspiracy among all defendants).

*CapLOC, LLC v. McCord,* 17-CV-5788, 2019 WL 1236415, at \*3 (S.D.N.Y. Mar. 18, 2019) (explaining that movants must "proffer evidence to meet the high standard required" to make such a showing).[6]  Any imagined harm that A-CAP could cause Leadenhall would thus be redressable by money damages.  That lack of irreparable harm is, by itself, another reason to decline Leadenhall's invitation to enjoin A-CAP.

Incidentally, Leadenhall's failure to make any showing about A-CAP also precludes injunctive relief against all other Defendants.  *Leslie v. Minson*, No. 84-CV-8579, 1984 WL 1316, at \*2 (S.D.N.Y. Dec. 12, 1984) (denying motion for preliminary injunction based on a lack of irreparable harm because plaintiffs only "point[ed] to the insolvency of [one defendant]" but had also "sued a number of defendants" not shown to be insolvent); *Pivotal Payments, Inc. v. Phillips*, No. 14-CV-4910, 2014 WL 6674621, at \*4 (E.D.N.Y. Nov. 25, 2014) (holding that movant failed to meet its burden to establish irreparable harm where "there has been no showing that [the allegedly insolvent entity's] co-defendants . . . face any threat of financial difficulties"); *Nanjing Textiles*, 2006 WL 2337186, at \*5 (Koeltl, J.) (rejecting order of attachment against certain defendants because movant "offered no evidence to suggest that [those defendants] have been shifting assets with the intent to defraud creditors or frustrate the enforcement of a judgment"); *In re First Republic Grp. Realty, LLC.*, 421 B.R. 659, 678–79 (Bankr. S.D.N.Y. 2009) (explaining that "even if the defendant in a particular action is insolvent, if the plaintiff has monetary recourse stemming from the same transaction or occurrence against a third-party defendant that would

---

[6] What is more, A-CAP has not caused and cannot cause Leadenhall harm of *any* kind through the only claims on which it moves—alleged breaches of contracts to which A-CAP is not a party.

relieve the same harm that the plaintiff is seeking to enjoin, the plaintiff has an alternate monetary remedy and the harm is not irreparable").

### III. THE UNSECURED GUARANTEE CANNOT SUPPORT AN INJUNCTION, AND THE RELIEF REQUESTED WOULD BE INEQUITABLE AND CONTRARY TO THE PUBLIC INTEREST.

Leadenhall's request to enjoin A-CAP can be cast aside for each of the reasons above. Even so, it warrants highlighting two other reasons that the relief sought by Leadenhall is inappropriate. *First*, while nearly all the relief Leadenhall seeks hinges on the purported Unsecured Guarantee, unsecured instruments cannot support injunctive relief in cases over money damages. *Second*, the equities cut sharply against the relief sought by Leadenhall.

#### A. Leadenhall's Unsecured Guarantee Cannot Support Injunctive Relief.

Leadenhall alleges to have made only one secured loan: the money it loaned to the SPV Borrowers under the LSA. (ECF 1 ¶¶ 5, 42, 49; *see* ECF 58-1.) As a general matter, and when (unlike here) when the movant otherwise meets its burden on all fronts, security agreements can support injunctions on the transfer of the assets—and ***only*** those assets—that have been pledged as collateral. *See, e.g.*, *Bank of Am., N.A. v. Won Sam Yi*, 294 F. Supp. 3d 62, 78 (W.D.N.Y. 2018) (relying on *Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 313 (1999), and limiting injunction to prohibition against transferring or impairing the value of "any and all of the Collateral," i.e., certain defined assets "that were subject to the parties' security agreement"). Put the other way around, the "Court's equitable power to issue a preliminary injunction to prevent a defendant from transferring assets does not extend to an action for money damages where the plaintiff claims no lien or equitable interest ***in the assets sought to be enjoined***." *Nanjing Textiles*, 2006 WL 2337186, at *7.

Here, then, no hypothetical injunction stemming from the SPV Borrowers' alleged breach of the LSA could properly go beyond enjoining the transfer of the assets pledged as collateral

under the LSA, *see id.*  And those assets are narrow and discrete:  the asserts of the SPV Borrowers, which comprise only certain, clearly identified, pooled structured settlement, health care, and lottery receivables of the SPV Borrowers.  (ECF 58-1 § 2.15(f); *see also id.* § 2.15(c) (noting that financing statements may "describe the property being secured as 'all assets' or 'all personal property' of **such Borrower**").

Leadenhall, however, seeks to enjoin the transfer of, foreclosure on, repossession of, and "other remedial actions" against assets that have nothing at all to do with assets that allegedly are collateral for Leadenhall's loans under the LSA—the scope of the requested relief is overbroad in the extreme.  Leadenhall asks the Court to enjoin, at least until $609 million is set aside for Leadenhall, the transfer or disposition of *every* asset of *every* affiliate of the Borrowers, across *all* of Partners' many lines of business.  (ECF 56 ¶¶ (1)(B), (1)(C), (2)(B), (2)(C).)  Yet because Leadenhall is an unsecured creditor with no security interest in those extensive and unrelated assets (*see* ECF 1 ¶ 93 ("your investment is unsecured")), the Court is powerless to do so.  *See, e.g.*, *Nanjing Textiles*, 2006 WL 2337186, at *7 (holding, in a "legal action for breach of contract . . . primarily seeking monetary relief," that when "Plaintiff stands in the position of an unsecured creditor[] seeking satisfaction in the form of money judgment for a debt owed," the "Court has no power to grant a preliminary injunction . . . .").[7]

---

[7] *Cf.* Wright & Miller, FEDERAL PRACTICE AND PROCEDURE § 2983 (3d ed.) ("[A] receiver ordinarily will not be appointed at the insistence of a simple contract creditor, even if he demonstrates the inadequacy of his remedy at law, because he has no substantive right, legal or equitable, in or to the property of his debtor.").

B.   Leadenhall's Requested Injunctive Relief Would Inequitably Harm Other Creditors, Including A-CAP.

Leadenhall's requested relief would also be grossly inequitable and against the public interest—and Leadenhall has not met its burden of clearly showing to the contrary.   Instead, Leadenhall asks the Court to catapult its contract claims to the front of the line without even showing what other creditors have what sorts of claims over what assets, much less how those creditors would be affected by such a Court-ordered game of leapfrog.   And Leadenhall asks to cut in front of not just other creditors of the SPV Borrowers, but creditors of *every* 777 affiliate portfolio-wide.

Leadenhall's filings provide only a narrow window into Partners' credit landscape—the tip of the tip of the iceberg.   But even that glimpse is enough to reveal that Leadenhall is seeking relief that would produce gravely unjust results.   Leadenhall asserts that certain of its collateral was "double-pledged" to National Founders, a Credigy affiliate.   (ECF 1 ¶ 10; ECF 68, p. 3; *see also* ECF 1 ¶ 9 (alleging that Credigy brought the issue to Leadenhall's attention).)   It attaches complaints filed by 16 alleged creditors of 777 Partners.   (ECF 61 & Exs A-P.)   And it says that A-CAP has a "first priority 'all asset lien' over all of the assets of 777 Partners."   (ECF 1 ¶ 12.  *See also* Saliba Decl. ¶ 7.)[8]   But Leadenhall makes no showing just how putting Leadenhall's interest ahead of National Founders' would be equitable.   It makes no such showing with respect to the sixteen creditors whose lawsuits it invokes.   And it does not begin to explain how Leadenhall's alleged interest in the assets of the SPV Borrowers or its alleged Unsecured Guarantee might trump A-CAP's several senior secured liens.   Nor can Leadenhall point to its fanciful RICO and

---

[8] As described above, A-CAP's security interests in the assets of Partners affiliates go far beyond the Holdco Lien.

conspiracy claims to cast A-CAP's superior rights aside—Leadenhall's motion rests on its contract claims and nothing else.

Leadenhall opts to show nothing on these points because it has nothing good to show.  As with all similar freezes, Leadenhall's requested "freeze would decidedly thwart the efforts of" the several creditors, including A-CAP, "who [have] a perfected security in [debtors'] assets to exercise [their] rights." *Nanjing Textiles*, 2006 WL 2337186, at *7; *see In re CE Elec. Contractors, LLC*, No. 21-BR-20211, 2022 WL 952776, at *3 (Bankr. D. Conn. Mar. 29, 2022) (denying injunction that would have "significantly impact[ed] the independent contractual rights" of other creditors). (*See also* ECF 81 pp. 3, 5 (National Founders describing some of the ways the "overbroad and improper" relief requested would interfere with the rights of other creditors).)  The equities "clearly disfavor" a movant who seeks to "cut in line" ahead of other creditors, *Petition of Smouha*, 136 B.R. 921, 928–29 (S.D.N.Y. 1992).  *Cf. In re DBSD N. Am., Inc.*, 634 F.3d 79, 88 (2d Cir. 2011) (Bankruptcy's "absolute priority rule" bars "the holders of any junior claims or interests" from receiving any property of the estate until "all classes of senior claims either receive the full value of their claims or give their consent.").  That is particularly so when, as here,[9] there are many other "unsecured creditors similarly situated" to Leadenhall, *In re Celsius Network LLC*, 642 B.R. 497, 504 (Bankr. S.D.N.Y. 2022).  And that says nothing of Leadenhall's attempt to

---

[9] Several of the creditor-plaintiffs identified by Leadenhall assertedly have an unsecured guarantee from 777 Partners LLC, 600 Partners LLC, or both.  (*See, e.g.*, ECF 61-2 at ¶ 1; ECF 61-3 at ¶¶ 50(b), 67 (g); ECF 61-6 at ¶ 11; ECF 61-7 at ¶ 12; ECF 61-9 at ¶ 1.)  It is likely that many other creditors do too.

leapfrog several other creditors' *secured* liens. *See supra* Background (outlining A-CAP's and citing National Founders' security interests).

## **CONCLUSION**

For these reasons, A-CAP requests that the Court deny Leadenhall's motion to the extent it seeks to enjoin A-CAP in any way or appoint a receiver empowered to prohibit any action of A-CAP or agreement with A-CAP, including, without limitation, the relief regarding A-CAP's ability to agree to purchase any asset from any 777 affiliate or to foreclose on, repossess, or exercise remedial actions against the assets of any 777 affiliate, that Leadenhall requests in paragraphs (1)(D), (1)(E), (2)(D), and (2)(E) of its proposed Order to Show Cause and Temporary Restraining Order (ECF 56).

Dated: New York, New York
      May 24, 2024

CADWALADER, WICKERSHAM & TAFT LLP

By: _/s/ Jonathan M. Watkins_
Jonathan M. Watkins
Michael E. Petrella
Mark A. Singer
200 Liberty Street
New York, NY 10281
Telephone: (212) 504-6000
Fax: (212) 504-6666
jonathan.watkins@cwt.com
michael.petrella@cwt.com
mark.singer@cwt.com

*Counsel for Advantage Capital Holdings LLC and Kenneth King*

## **CERTIFICATION OF COMPLIANCE**

I hereby certify under Section II.D of Judge Koeltl's individual practices that this memorandum contains 4,690 words, exclusive of the caption, table of contents, table of authorities, and this certification.


By:  /s/ *Jonathan M. Watkins*
Jonathan M. Watkins