*1301 Avenue of the Americas*
*21st Floor*
*New York, New York 10019*
*Tel: 212-907-9700*
*www.sgrlaw.com*

*John G. McCarthy*
*Direct Tel: 212-907-9703*
*Direct Fax: 212-907-9803*
*jmccarthy@sgrlaw.com*

**VIA ECF**

Honorable John G. Koeltl
United States District Judge
500 Pearl Street
New York, NY 10007

June 3, 2024

> The parties are directed to appear for a telephone pre-motion conference regarding the pending motion to dismiss on **June 14, 2024** at **4:30 p.m.**
>
> Dial-<u>in</u>: 888-363-4749, with access code 8140049.
>
> <u>SO</u> ORDERED.
>
> Dated June 5, 2024          /s/ John G. Koeltl
> New York, New York          John G. Koeltl, U.S.D.J.

Re:   *Leadenhall Capital Partners LP, et ano. v. Wander, et al.,* 24 Civ. 3453 (JGK)

Dear Judge Koeltl:

    We write on behalf of 777 Partners LLC, 600 Partners LLC (together, "HoldCos"), SPLCSS III LLC, Dorchester Receivables II LLC, Insurers Agency Services LLC, Signal SML 4 LLC, SuttonPark Capital LLC, Signal Medical Receivables LLC, Insurety Capital LLC, SuttonPark Servicing LLC, Signal Servicing LLC, and Insurety Servicing LLC (collectively, the "777 Entity Defendants")[1] in the above-entitled action. We write to respectfully request a pre-motion conference regarding the 777 Entity Defendants' proposed motion to dismiss the complaint of Plaintiffs Leadenhall Capital Partners LLP, Leadenhall Life Insurance and Linked Investments Fund PLC (collectively, "Leadenhall" or "Plaintiffs").

    **Background.** This Action concerns a lender/borrower relationship governed by a Loan and Security Agreement ("LSA") where Leadenhall made loans to defendants SPLCSS III LLC and Dorchester Receivables II LLC secured by collateral consisting of tens of thousands of payment obligations representing revenue streams. Leadenhall alleges that after two years of audits, investigation, and other work, it has determined that of those tens of thousands of instruments, some were not "free and clear" of other interests, had not been purchased or had been removed from the borrowing base. Leadenhall has only provided generalizations and has not identified specific instruments, how they were insufficient and why. But, even more substantively, there are no allegations describing fraud in connection with the inception of these loans. In fact, the parties specifically contemplated, and the LSA and related contracts specifically address, the parties' rights and remedies in the event collateral is impaired. (See ECF 1, ¶¶ 42-48).

    Notwithstanding this lack of detail, Leadenhall's complaint attempts to elevate contract issues involving a series of agreements (the LSA, Sale Agreements, Servicing Agreements, Pledge Agreements and Guaranty Agreement) with respective rights and remedies into a fraud and RICO case without satisfying the heightened specificity requirements under Rule 9(b).

---

[1] Individual defendants Josh Wander and Steven Pasko are currently seeking separate counsel.

Honorable John G. Koeltl
June 3, 2024
Page 2

The remaining state law claims, including the contract claims against the borrowers and servicers that Leadenhall alleges pledged and serviced impaired collateral, should be dismissed for another reason: complete diversity does not exist, and with the RICO claims dismissed, the Court should decline to exercise supplemental jurisdiction over any state-law claim.

**Lack of Subject-Matter Jurisdiction.** The diversity statute provides for federal court jurisdiction over claims between citizens of a state and citizens of a foreign state, provided such diversity is complete. 28 U.S.C. § 1332(a)(2). Here, both Plaintiffs are subjects of a foreign state and, at least, one member of defendant 777 Partners is also a subject of a foreign state. This results in incomplete diversity and deprives the Court of diversity subject matter jurisdiction. *See Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.*, 500 F.3d 171, 179 (2d Cir. 2007) (discussing *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 213, 553 (2005)).

When diversity of citizenship is challenged, "[t]he party seeking to invoke jurisdiction under 28 U.S.C. § 1332 bears the burden of demonstrating that the grounds for diversity exist and that diversity is complete." *Advani Enter., Inc. v. Underwriters at Lloyds*, 140 F.3d 157, 160 (2d Cir.1998). Plaintiffs cannot meet this burden since diversity does not exist in this case.

If this Court dismisses the RICO claims, it should decline to exercise supplemental jurisdiction over Plaintiffs' state law claims. *Weaver v. James*, CV 10-6609, 2011 WL 4472062, at *5 (E.D.N.Y. Sep. 27, 2011); *Gross v. Waywell,* 628 F.Supp.2d 475, 497 (S.D.N.Y. 2009). Stated more generally, where all federal-law claims have dropped out of a lawsuit at an early stage, the court should decline to exercise supplemental jurisdiction over remaining state law claims. *See Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006).

**Leadenhall's Allegations Fall Woefully Short of the Applicable Pleading Standards.** To plead a viable RICO claim, the "plaintiff must show '(1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an "enterprise" (7) the activities of which affect interstate or foreign commerce.'" *Williams v. Affinion Group, LLC*, 889 F.3d 116, 123-24 (2d Cir. 2018) quoting *Moss v. Morgan Stalet, Inc.*, 719 F.2d 5, 17 (2d Cir. 1983). "Racketeering activity" includes "any act which is indictable" under specified provisions of Title 18 of the United States Code, including mail and wire fraud. 18 U.S.C. § 1961(1); *see Sky Med. Supply Inc.*, 17 F. Supp. 3d 207, 228 (E.D.N.Y. 2014).

"Allegations of mail [or wire] fraud must be made with the particularity required by Federal Rule of Civil Procedure 9(b)." *McLaughlin v. Anderson*, 962 F.2d 187, 191 (2d Cir. 1992). *Gutman v. Equidyne Extractive Indus. 1980 Petro/ Coal Program I*, No. 86 Civ. 9173 (KTD), 1990 WL 113193, at *7 (S.D.N.Y. July 27, 1990) ("[A]ll of the concerns that dictate that fraud be pleaded with particularity exist with even greater urgency in civil RICO actions."). Among other things, the plaintiff must "give particulars as to the respect in which [it] contend[s] the [defendant's] statements were fraudulent." *Id.* In other words, the plaintiff must establish, with sufficient factual detail, "that the mailings [or wires] were in furtherance of a fraudulent scheme." *Lundy v. Cath. Health Sys. of Long Is. Inc.*, 711 F.3d 106, 119 (2d Cir. 2013).

Honorable John G. Koeltl
June 3, 2024
Page 3

      Here, the allegations do not remotely satisfy Rule 9(b)'s heightened pleading standard. Leadenhall primarily contends that the respective servicers presented reports that concealed the absence of impairment to collateral. No other 777 Entity Defendants are asserted to have made misrepresentations. There are no allegations as to how the impaired collateral became part of the loan structure. The Complaint itself is curiously silent on when Leadenhall made the defective loans to the respective borrowers and whether there could have been any justifiable reliance. For instance, why were no issues raised and addressed when Leadenhall's secured interests were being perfected? Certainly, if there was more than one secured interest Leadenhall should have immediately known there was an issue. Given the "inevitable stigmatizing effect" of RICO claims on the defendants, Leadenhall should not be permitted to move forward based on mere conjecture. *United States Fire Ins. Co. v. United Limousine Serv., Inc.*, 303 F.Supp.2d 432, 443 (S.D.N.Y. 2004) *quoting Schmidt v. Fleet Bank*, 16 F.Supp.2d 340, 346 (S.D.N.Y. 1998).

      The Complaint at best describes a lending relationship governed by contracts, not an "enterprise" or RICO claim. In similar situations, courts have required the contract claims to be adjudicated as a predicate to ripeness and standing to determine whether there was an injury under RICO. *See e.g., Goldfine v. Sichenzia*, 118 F. Supp. 2d 392, 398 (S.D.N.Y. 2000); *Harbinger Cap. Partners Master Fund I, Ltd. v. Wachovia Cap. Markets, LLC*, 347 F. App'x 711, 713 (2d Cir. 2009). Moreover, Plaintiffs do not allege any ongoing wrongful conduct. They know the 777 Entity Defendants are not originating new transactions from Plaintiffs, or other lenders, and no basis is provided to support the premonition that any new loan could be similarly impaired.

      Leadenhall's other causes of action – which rest on the same flawed allegations – also fail as a matter of law. Because Leadenhall does not plead a viable substantive RICO claim, its cause of action for RICO conspiracy should also be dismissed. *First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 182 (2d Cir. 2004). Likewise, the allegations are insufficient to sustain a fraudulent misrepresentation claim, which is subject to the same heightened pleading standard of Rule 9(b). *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Archway Ins. Servs. LLC*, No. 11 Civ. 1134, 2012 WL 1142285, at *3 (S.D.N.Y. Mar. 23, 2012). Leadenhall's cause of action for unjust enrichment must be dismissed as duplicative of its contract claims. *See Hughes v. Ester C Co.*, 330 F. Supp. 3d 862, 877 (E.D.N.Y. 2018). There is no cause of action for civil conspiracy under New York law. *Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 591 (2d Cir. 2005). Finally, Leadenhall has not adequately alleged the condition precedent for any potential liability under the Guaranty. *Karmilowicz v. Hartford Fin. Servs. Grp.*, 2011 WL 2936013, at *10 (S.D.N.Y. July 14, 2011) *aff'd*, 494 F.App'x 153 (2d Cir. 2012).

      For the foregoing reasons, the 777 Entity Defendants respectfully request that a pre-motion conference is held.

                              Respectfully yours,

                              John G. McCarthy

cc:     Attorneys of Record (via ECF)