*1301 Avenue of the Americas*
*21st Floor*
*New York, New York 10019*
*Tel: 212-907-9700*
*www.sgrlaw.com*



*John G. McCarthy*
*Direct Tel: 212-907-9703*
*Direct Fax: 212-907-9803*
*jmccarthy@sgrlaw.com*

July 7, 2024

*VIA ECF*

Honorable John G. Koeltl
United States District Judge
500 Pearl Street
New York, New York 10007

Re:   *Leadenhall Capital Partners, et ano. v. Wander, et al.*,
       24 Civ. 3453 (JGK)

Dear Judge Koeltl:

We write, on behalf of the 777 Entity Defendants[1] and in accordance with the Court's June 20, 2024, Order (ECF No. 135), to inform the Court that the Parties have been unable to agree on the form of a Proposed Order Granting Preliminary Injunction on Consent and to propose a form of Order that tracks the TRO (ECF No. 114), with changes aimed at making the scope of injunctive relief explicit in two respects.[2]

---

[1] We refer to Defendants 777 Partners LLC, 600 Partners LLC, Splcss III LLC, Dorchester Receivables II LLC, Insurers Agency Services LLC, Signal SML 4 LLC, Suttonpark Capital LLC, Signal Medical Receivables LLC, Insurety Capital LLC, Suttonpark Servicing LLC, Signal Servicing LLC, and Insurety Servicing LLC (the "777 Entity Defendants"), which we represent in defense of claims by Plaintiffs Leadenhall Capital Partners LLP, Leadenhall Life Insurance and Linked Investments Fund PLC ("Leadenhall," and together with the 777 Entity Defendants, the "Parties").

[2] We enclose a Proposed Order Granting Preliminary Injunction on Consent as well as a redline comparing that document to the TRO. The redline also shows language specific to Plaintiffs' request for the appointment of a receiver having been deleted or modified. In addition to what is shown in the redline, paragraph 1 of the TRO relating only to the request for appointment of a receiver has been deleted in its entirety.

Honorable John G. Koeltl
July 7, 2024
Page 2

First, we propose revisions to Paragraph (E) of the TRO to make explicit that, as discussed at the June 7 hearing, that paragraph "doesn't prevent . . . actions," but only requires that Borrowers and Guarantors "provide[] notice" in certain circumstances. (*See* 6/724 Hr'g Tr. at 43:17-20 ("All that Paragraph E does is to provide notice . . . ."); *id.* at 44:10-11 ("Yes, we read it as your Honor reads it. Or I should say we wrote it as your Honor reads it.").) The provision now appears as its own ORDERED paragraph and is substantively the same as the language in the TRO.

Second, we propose adding a safe harbor provision to Paragraph (D) to give Borrowers and Guarantors comfort that they may engage in good faith transactions that sell assets for fair value (and are thus outside the scope of the TRO) so long as the transactions meet certain subjective and objective criteria:

> Borrowers and/or Guarantors will not violate this Paragraph (D) by transferring assets of one or more Borrower or Guarantor for fair and equivalent value, where the Borrower and/or Guarantor receives equivalent value through receipt of assets of an equivalent value, reduction of the indebtedness of the transferring Borrower(s) and/or Guarantor(s) in an amount equivalent to the value of the assets transferred, or any combination of the two in which the value of the assets received and the amount of the indebtedness reduced is together equivalent to the value of the assets transferred, so long as:
>
> (i) Borrower(s) and/ Guarantor(s) make any such transfer in good faith;
>
> (ii) Borrower(s) and/or Guarantor(s) make the transfer for a legitimate business purpose and with the genuinely held belief of the Guarantors' Independent Managers and/or the Chief Operating Officer (the "B. Riley Professionals") that the transfer is in the best interests of the transferring Borrower(s) and/or Guarantor(s); and
>
> (iii) the fair value of the assets transferred is determined (a) by at least one reputable and independent valuation professional; (b) through a fair and open sales process in which the assets are exposed to the relevant market for at least 30 days; or (c) otherwise fairly and reasonably determined by the transferring Borrower(s) and/or Guarantor(s)

This proposed provision comprises both subjective requirements that reflect our understanding of the purpose of the TRO and its intended reach, as well as an objective requirement aimed to reflect Your Honor's guidance about transactions for fair value. Asset transfers under Paragraph (2)(D)

of the TRO[3] were the subject of much discussion at the June 7 hearing, and Your Honor offered guidance that we understand to indicate that the Court's Order is not aimed at sales of assets "for fair value," but at transactions that unfairly "strip" assets for "less than fair value":

- Your Honor said: "I think that [a transaction at fair market value] would be incorporated in 'the normal and ordinary course of business.' So a transaction which is for less than fair value would not be in the ordinary course of business." (6/7/24 Hr'g Tr. at 62:12-19.)

- In response to my follow-up query about "the sale of a subsidiary [] for fair value," Your Honor stated that "yes," such a transaction "would appear to be" in the ordinary and normal course of business under the TRO. (*Id.* at 62:20-63:3.)

- Your Honor described the then-contemplated TRO as preventing "assets" being "stripped" at "less than fair value," and thus one "which appears to be a fairly limited TRO." (*Id.* at 28:4-8.)

- Your Honor said that, under the then-contemplated TRO, "the borrowers and the guarantors are allowed to continue their business in the normal and ordinary course of business," but "*if assets are stripped or disposed of **other than at fair value**, then they would be violating the TRO*, and someone eventually would have to own up to that and suffer the consequences." (*Id.* at 28:21-29:3 (emphasis added).)

- We understand Your Honor to have conveyed, in an exchange with counsel, that "transactions . . . for fair value" are "in the ordinary course of business," as that phrase is used in the TRO, while those that "strip" assets "for less than fair value" are not. (*Id.* at 32:10-33:25.) [4]

We propose adding a safe harbor to Paragraph (D) so that Borrowers and Guarantors (and their counterparties) may comfortably proceed with transactions (on the timeline the circumstances demand) that we understand the Court intends to allow to continue. Without this addition, the preliminary injunction could chill such transactions, the timely closing of which are crucial to the 777 Entity Defendants' efforts to optimize the value of their assets, including those that have been pledged as collateral to lienholders, and to faithfully fulfill their duties to all

---

[3] Paragraph (2)(D) of the TRO prohibits, "***other than in the normal and ordinary course of business*** . . . Borrowers and Guarantors from taking any action to ***dissipate the value*** of their assets, including by transferring assets to any Defendant." (ECF 114 at 3-4 (Paragraph 2(D)) (emphasis added).)

[4] Your Honor also observed that "[t]he parties understand what the purpose of the TRO is," and reinforced that "[i]t's intended to allow the ordinary course of the – of business of borrowers and the Guarantors to continue." (6/7/24 Hr'g Tr. at 64:12-16.)

Honorable John G. Koeltl
July 7, 2024
Page 4

stakeholders. Indeed, we are deeply concerned that such an unintended chilling effect threatens to gravely harm the 777 Entity Defendants and their creditors.

*   *   *

Should the Court wish to convene a conference, the 777 Entity Defendants will be available at the Court's convenience.

We appreciate the Court's attention to this matter.

Respectfully yours,

John G. McCarthy

Enclosures

cc:   All Counsel of Record (via ECF only)