UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LEADENHALL CAPITAL PARTNERS LLP and LEADENHALL LIFE INSURANCE LINKED INVESTMENTS FUND PLC,<br><br>Plaintiffs,<br><br>vs.<br><br>JOSH WANDER, STEVEN PASKO, KENNETH KING, 777 PARTNERS LLC, 600 PARTNERS LLC, SPLCSS III LLC, SIGNAL SML 4 LLC, INSURETY AGENCY SERVICES LLC, DORCHESTER RECEIVABLES II LLC, SUTTONPARK CAPITAL LLC, SIGNAL MEDICAL RECEIVABLES LLC, INSURETY CAPITAL LLC, SUTTONPARK SERVICING LLC, SIGNAL SERVICING LLC, INSURETY SERVICING LLC, and ADVANTAGE CAPITAL HOLDINGS LLC,<br><br>Defendants. | Civil Action No. 1:24-cv-03453 |

**HAYMARKET AND ACM DELEGATE'S MEMORANDUM OF LAW
IN SUPPORT OF THEIR MOTION TO INTERVENE**

i

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... iii
PRELIMINARY STATEMENT ............................................................................................... 1
STATEMENT OF FACTS ........................................................................................................ 3
    A.    The Proposed Intervenors ............................................................................. 3
    B.    The HoldCo Loan Agreement ...................................................................... 3
    C.    Procedural History ........................................................................................ 4
ARGUMENT .............................................................................................................................. 6
I.    HAYMARKET SHOULD BE PERMITTED TO INTERVENE AS OF RIGHT UNDER RULE 24(A) .................................................................................................................... 6
    A.    Haymarket's Motion Is Timely. .................................................................... 7
    B.    Haymarket Has a Legally Protectable Interest in the Subject of This Action. ......... 8
    C.    The Disposition of this Action May Impair Haymarket's Interests. ............ 9
    D.    The Existing Parties Do Not Adequately Represent Haymarket's Interests. ............ 9
II.    ALTERNATIVELY, THIS COURT SHOULD ALLOW PERMISSIVE INTERVENTION UNDER RULE 24(B). .......................................................................... 10
CONCLUSION ........................................................................................................................ 12

## **TABLE OF AUTHORITIES**

<div align="right">**Page(s)**</div>

**Cases**

*1199 SEIU United Healthcare Workers E. v. Alaris Health at Hamilton Park*,
   No. 18-CV-3336 (JSR), 2018 WL 9651077 (S.D.N.Y. Sept. 4, 2018), *aff'd*,
   786 Fed. App'x 298 (2d Cir. 2019) ........................................................................................11

*Aristocrat Leisure Ltd. v. Deutsche Bank Tr. Co. Americas*,
   262 F.R.D. 348 (S.D.N.Y. 2009) ..........................................................................................6, 7

*In re Bank of N.Y. Deriv. Litig.*,
   320 F.3d 291 (2d Cir. 2003) .................................................................................................7, 11

*In re Blackwood Assocs. LP*,
   153 F.3d 61 (2d Cir. 1998) ........................................................................................................8

*In re BM Brazil 1 Fundo de Investimento em Participacoes Multistrategia*,
   No. 23MISC208JGLCGS, 2024 WL 555780 (S.D.N.Y. Jan. 18, 2024) .................................11

*BNP Paribas v. Kurt Orban Partners LLC*,
   No. 19CIV9616ALCSLC, 2021 WL 355136 (S.D.N.Y. Feb. 2, 2021) ...................................12

*Bridgeport Guardians v. Delmonte*,
   602 F.3d 469 (2d Cir. 2010) ......................................................................................................8

*Butler, Fitzgerald & Potter v. Sequa Corp.*,
   250 F.3d 171 (2d Cir. 2001) ......................................................................................................9

*CBS Inc. v. Snyder*,
   136 F.R.D. 364 (S.D.N.Y. 1991) ............................................................................................10

*Czyzewski v. Jevic Holding Corp.*,
   580 U.S. 451 (2017) ..................................................................................................................8

*E.E.O.C. v. Rekrem, Inc.*,
   199 F.R.D. 526 (S.D.N.Y. 2001) ..............................................................................................7

*Kirby v. Coastal Sales Assocs., Inc.*,
   199 F.R.D. 111 (S.D.N.Y. 2001) ............................................................................................10

*LNC Invs. Inc. v. First Fid. Bank*,
   247 B.R. 38 (S.D.N.Y. 2000) ....................................................................................................9

*Lopez v. Eventbrite*,
   No. 1:24-CV-1544-GHW, 2024 WL 2979311 (S.D.N.Y. June 12, 2024) ................................6

Case 1:24-cv-03453-JGK   Document 140   Filed 07/08/24   Page 4 of 17

*New York News, Inc. v. Kheel*,
   972 F.2d 482 (2d Cir. 1992)..................................................................................6

*Olin Corp. v. Lamorak Ins. Co.*,
   325 F.R.D. 85 (S.D.N.Y. 2018) .............................................................................7

*Onewoo Corp. v. Hampshire Brands, Inc.*,
   No. 16-CV-4623 (PKC), 2016 WL 11779677 (S.D.N.Y. Nov. 15, 2016) ..........8, 9

*Rodriguez v. It's Just Lunch Int'l*,
   No. 07 CIV. 9227 SHS KNF, 2012 WL 1228243 (S.D.N.Y. Apr. 6, 2012),
   *report and recommendation rejected*,
   No. 07 CIV. 9227 SHS, 2013 WL 1749590 (S.D.N.Y. Apr. 23, 2013) ...............10

*In re Treco*,
   240 F.3d 148 (2d Cir. 2001)..................................................................................8

*United States v. Pitney Bowes, Inc.*,
   25 F.3d 66 (2d Cir. 1994) ................................................................................7, 11

*Up State Tower Co., LLC v. Town of Cheektowaga*,
   No. 1:19-CV-280, 2019 WL 4452413 (W.D.N.Y. Sept. 17, 2019).....................10

*Williston v. Feliz*,
   No. 04 Civ. 4454 (RWS), 2005 WL 1669008 (S.D.N.Y. July 14, 2005) ..............7

*Windsor v. United States*,
   797 F. Supp. 2d 320 (S.D.N.Y. 2011)....................................................................7

**Statutes and Rules**

Fed. R. Civ. P. 24(a) .........................................................................................................6

Fed. R. Civ. P. 24(b)(1)(B) and (3).............................................................................10–11

N.Y. U.C.C. Law §§ 9-315 (McKinney) ..........................................................................8

N.Y. U.C.C. Law §§ 9-601–9-624 (McKinney) ..............................................................8

**Other Authorities**

Charles Alan Wright & Arthur R. Miller, FED. PRAC. & PRO. CIV. § 1909
   (3d ed. 2012) .........................................................................................................6

-iv-

Proposed Intervenors Haymarket Insurance Company and ACM Delegate LLC ("ACM Delegate," and together, "Intervenors") respectfully submit this Memorandum of Law in support of their motion to intervene pursuant to Federal Rule of Civil Procedure 24 for the purpose of filing a limited opposition to the motion for a preliminary injunction filed by Plaintiffs.

## PRELIMINARY STATEMENT

Haymarket Insurance Company, an affiliate of A-CAP, is the senior secured lender to Defendants 777 Partners and 600 Partners under the HoldCo Loan Agreement. Saliba Decl., Dkt. 87 ¶ 7. Hundreds of millions of dollars, secured by specific assets, are outstanding under that Agreement, far exceeding any sums due to Leadenhall from 777 Partners and 600 Partners. *Id.* And Haymarket's position is senior. ACM Delegate, the administrative and collateral agent under the HoldCo Loan Agreement, holds a first-priority security interest in all assets of both 777 Partners and 600 Partners—assets pledged by those borrowers for the benefit and protection of Haymarket. *Id.*

As the 777 Entity Defendants have acknowledged and the Court has found, 777 Partners and 600 Partners have failed to pay even modest debts, much less the hundreds of millions of dollars they owe Haymarket under the HoldCo Loan Agreement. Haymarket thus seeks to intervene at this time to address the substance of the Court's forthcoming preliminary injunction order, and thereby protect its senior collateral right, and its ability to maximize its recovery under the HoldCo loan and its collateral—whether by exercising its rights on collateral, reaching agreements to take its collateral at fair value, or otherwise. And this Court has recognized the propriety of allowing interested creditors to intervene to protect their interests: as the Court said in granting Leadenhall's request for a temporary restraining order ("TRO"), "if other . . . creditors[]

1

come in and file other claims, then those claims will have to be resolved" as well. (June 7, 2024 Hr'g Tr. at 35:21–23.)

There is a "well recognized public interest in enforcing contracts between sophisticated parties and upholding the rule of law," as Leadenhall argued and the Court has held. (June 7, 2024 Hr'g Tr. at 58:22–25.) Haymarket's contract rights concerning the assets of 777 Partners and 600 Partners are superior to those of Leadenhall and all other creditors. Of all the potentially interested creditors, only Haymarket's interest in 777 Partners' and 600 Partners' assets is secured by a first-priority, all-assets lien. Its interests thus take priority over those of Leadenhall—a subordinated creditor with no collateral rights in the assets of 777 Partners or 600 Partners.[1] Intervenors seek to prevent any dilution of their senior rights, including any attempt by Leadenhall to jump the line or extract holdup value by threatening to impede Haymarket's swift exercise of its rights as the senior secured lender, should such exercise be necessary or appropriate. Given the magnitude of its HoldCo loan, the stakes are high for Haymarket and its policyholders.

This motion to intervene is timely; no answers have been filed and no discovery has commenced. Intervention will not risk prejudice to the existing parties. Two other creditors—National Founders LP and ING Capital LLC—have already been permitted to intervene for purposes of preliminary proceedings, and Haymarket's intervention is appropriate for the same reasons.

---

[1] Leadenhall claims "first-priority security interests" only "in all of the assets of each Borrower, defined as SPLCSS III LLC, Dorchester Receivables II LLC, Signal SML 4 LLC, and Insurety Agency Services LLC." *See* Dkt. 1 ¶ 51 (Leadenhall Complaint, citing LSA § 2.15; *id.* art. I, "Collateral"); *id.* ¶¶ 29–32 (identifying Borrowers under LSA).

## STATEMENT OF FACTS

Haymarket has been a senior secured creditor of 600 Partners and 777 Partners since 2020. Intervenors and 600 Partners and 777 Partners executed the most recent amended and restated HoldCo Loan Agreement on November 2, 2023,[2] which amended and restated a February 27, 2020 Loan and Security Agreement between 777 Partners and Haymarket. Under the terms of the HoldCo Loan Agreement, the Borrowers owe hundreds of millions of dollars in principal and interest. Dkt. 87 ¶ 7.

A. **The Proposed Intervenors**

Haymarket is an insurance company and a lender under the HoldCo Loan Agreement. ACM Delegate is a Delaware limited liability company and the Administrative Agent and Collateral Agent for the lenders under the HoldCo Loan Agreement.

B. **The HoldCo Loan Agreement**

Since 2020, Haymarket has engaged in a series of lending transactions under continuing agreements with 777 Partners and 600 Partners. As is typical with such high-value commercial transactions between sophisticated parties, Haymarket's agreement to extend credit to 777 Partners and 600 Partners was conditioned on receipt of a valid and continuing first-priority security interest and lien on all of the Borrowers' assets. *See* Dkt. 87 ¶ 7.[3] Leadenhall admits the existence of this senior, "all asset lien" repeatedly throughout its complaint. Dkt. 1 ¶ 12, 119, 139. In March 2020—well before Leadenhall obtained its guaranty from 777 Partners and 600 Partners in May 2021 (*see*

---

[2] Exhibits cited herein are annexed to the Declaration of Jonathan Watkins.

[3] Portions of the HoldCo loan were transferred to two Haymarket affiliates. The Collateral Agent is authorized to act on behalf of all of the lenders under the HoldCo Loan Agreement in pursuing remedies with respect to the Collateral.

Dkt. 58-2)—Haymarket filed UCC-1 financing statements perfecting its security interests in 777 Partners' and 600 Partners' respective assets. *See* Ex. A.

Shortly after executing the Amended and Restated HoldCo Loan Agreement, ACM Delegate, as Collateral Agent, took the necessary steps to further perfect its security interest, for the benefit of the lenders under the HoldCo Loan Agreement, in substantially all of the assets of 777 Partners and 600 Partners by filing the required UCC financing statements. *See* Exs. B, C; *see also* Dkt. 87 ¶ 7. Several affiliates of 600 Partners and 777 Partners agreed to guaranty 600 Partners' and 777 Partners' obligations under the HoldCo Loan Agreement, including Signal Medical Receivables LLC and Signal Servicing LLC, both of which are named as defendants by Leadenhall in this action. Dkt. 87 ¶ 7.[4]

    C.    **Procedural History**

Leadenhall initiated its action on May 3, 2024. Dkt. 1. Ten days later, it sought a TRO—based only on its contract claims—that would prohibit dissipation of the assets held by the borrowers on the loans Leadenhall made under a Loan and Security Agreement ("LSA"). Leadenhall also sought preliminary relief with respect to the assets of 777 Partners and 600 Partners, which were not borrowers under the Leadenhall LSA but guaranteed those loans upon

---

[4] By contrast, Leadenhall has claimed in its UCC filings only a narrow, subordinated security interest in one asset of 777 Partners or 600 Partners: 777 Partners' equity interest in its partially owned reinsurance subsidiary, Brickell Insurance Holdings LLC. See Ex. D (July 12, 2022 UCC-1 financing statement). Leadenhall, in its UCC filings, claims no security interest in the assets of 777 Partners or 600 Partners arising from the LSA that is the subject of its lawsuit. Notably, the single Leadenhall UCC filing identified with respect to 777 Partners names Leadenhall Life SMA III ICAV—not one of the plaintiffs in this action—as the secured party, and merely as a "Second Lien Collateral Agent," not a first-priority lienholder.

occurrence of certain triggers and, as to the guaranty, on an unsecured basis. Dkt. 56. Leadenhall sought preliminary relief to freeze specified collateral, or, if the collateral was insufficient, cash and cash equivalents of 777 Partners and 600 Partners up to the amount of its claim for accelerated debt. *Id.* Following this application for emergency relief, two other creditors—National Founders LP and ING Capital LLC—intervened to protect their respective interests. Dkts. 67, 109.[5]

Following briefing and a June 7, 2024 hearing, the Court granted Leadenhall's request for a TRO, but modified the proposed order in important respects. It found that Leadenhall had shown a likelihood of success on its contract claims against 600 Partners and 777 Partners and their affiliates. The Court further determined there was a risk of irreparable harm based on 600 Partners' and 777 Partners' probable inability to satisfy an award of substantial damages and intent "to frustrate any judgment on the merits by making an award uncollectible." (June 7, 2024 Hr'g Tr. at 56:6–7). Unlike Leadenhall's proposed order, the TRO permits transactions occurring in the normal and ordinary course of business. Dkt. 114. The Court also made clear that the TRO was not directed at, and did not restrain, A-CAP. *See, e.g.*, June 7, 2024 Hr'g Tr. at 5:17–19 ("[I]t's not at all clear to me why the plaintiff would be entitled to a TRO against ACAP, which is not a borrower or a guarantor."); *id.* at 34:20–21 ("This is a case about the debts from the borrowers and the guarantors, which is not A-CAP."). Rather, the TRO stems only from Leadenhall's contract claims against its borrowers and guarantors. *Cf. id.* at 31:15–16 (striking proposed footnotes that would have inappropriately extended TRO through broadly defined terms); Dkt. 114 (entering TRO).

At the TRO hearing, the Court acknowledged that other creditors may "come in looking for relief" and "file other claims." (June 7, 2024 Hr'g Tr. at 35:22–36:2.) The Court indicated that

---

[5] To date, neither National Founders LP nor ING Capital LLC has filed a proposed pleading.

those claims, if and when they arose, would have to be accounted for and addressed by the Court. *Id.*

# ARGUMENT

When considering a motion to intervene under Rule 24, courts "accept as true the non-conclusory allegations of the motion." *Aristocrat Leisure Ltd. v. Deutsche Bank Tr. Co. Americas*, 262 F.R.D. 348, 352 (S.D.N.Y. 2009) (cleaned up). A motion to intervene as of right "should not be dismissed unless it appears to a certainty that the intervenor is not entitled to relief under any set of facts. . . ." *Lopez v. Eventbrite,* No. 1:24-CV-1544-GHW, 2024 WL 2979311, at *3 n.3 (S.D.N.Y. June 12, 2024) (cleaned up). The court should resolve all "reasonable doubts" in favor of intervention. 7C Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Pro. Civ. § 1909 (3d ed. 2012).

### I. HAYMARKET SHOULD BE PERMITTED TO INTERVENE AS OF RIGHT UNDER RULE 24(A).

Rule 24(a) provides in relevant part:

> On timely motion, the court must permit anyone to intervene who: . . . (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a).

To intervene as of right, the movant must "(1) timely file an application, (2) show an interest in the action, (3) demonstrate that the interest may be impaired by the disposition of the action, and (4) show that the interest is not protected adequately by the parties to the action." *New York News, Inc. v. Kheel*, 972 F.2d 482, 485 (2d Cir. 1992) (citation omitted). These factors are "flexible"; courts consider "all four factors as a whole rather than focusing narrowly on any one

of the criteria." *Windsor v. United States,* 797 F. Supp. 2d 320, 323–24 (S.D.N.Y. 2011) (cleaned up).

      A.      **<u>Haymarket's Motion Is Timely.</u>**

The requirement of timeliness is "flexible" and "the decision is one entrusted to the district judge's sound discretion." *Aristocrat Leisure Ltd.*, 262 F.R.D. at 352 (cleaned up). The timeliness of a motion to intervene "must be evaluated against the totality of the circumstances before the court." *Id.* (cleaned up). Relevant factors include: "(1) how long the applicant had notice of the interest before it made the motion to intervene; (2) prejudice to existing parties resulting from any delay; (3) prejudice to the applicant if the motion is denied; and (4) any unusual circumstances militating for or against a finding of timeliness." *In re Bank of N.Y. Deriv. Litig.*, 320 F.3d 291, 300 (2d Cir. 2003) (quoting *United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 70 (2d Cir. 1994)).

Intervenors have moved to intervene about a month before motions to dismiss (or a responsive pleading) are due. Courts have routinely permitted intervention when longer periods elapsed between notice and the motion. *See, e.g., Olin Corp. v. Lamorak Ins. Co.*, 325 F.R.D. 85, 88 (S.D.N.Y. 2018) (listing cases where courts "found motions to intervene timely" that were "brought a 'few months' after the claims").

Intervenors' intervention risks no prejudice or undue delay to existing parties. No answers have been filed and no discovery has been taken. The action is still "in its nascent phase." *E.E.O.C. v. Rekrem, Inc.*, 199 F.R.D. 526, 528 (S.D.N.Y. 2001) (finding no prejudice where the motion to intervene "was filed before the defendant filed its answer and before the initiation of any discovery"); *see also Williston v. Feliz*, No. 04 Civ. 4454 (RWS), 2005 WL 1669008, at *2 (S.D.N.Y. July 14, 2005) (finding that a proposed intervention caused no prejudice to existing parties or undue delay where "no answers have been filed").

B.       **<u>Haymarket Has a Legally Protectable Interest in the Subject of This Action.</u>**

In determining whether intervenors have a sufficient interest to intervene as of right, the Second Circuit uses a "direct, substantial, and legally protectable" interest standard. *Bridgeport Guardians v. Delmonte*, 602 F.3d 469, 473 (2d Cir. 2010). Intervenors have such an interest. As with the intervenors that have come before them, Intervenors have a direct (indeed, superior) interest in and contractual claim over the assets of 600 Partners and 777 Partners. This interest arises from the HoldCo Loan Agreement, the outstanding amounts owed to Intervenors, and the collateral by which the loan is secured. In fact, as the holder of an "all assets" lien on the assets of 700 Partners and 600 Partners, Intervenors have the most significant interest of any actual or prospective creditor before the Court. *See Onewoo Corp. v. Hampshire Brands, Inc.*, No. 16-CV-4623 (PKC), 2016 WL 11779677, at *1 (S.D.N.Y. Nov. 15, 2016) (finding that intervenor's status as a secured creditor whose interest was senior to the existing plaintiff was sufficient).

The law "affords strong protection to secured creditors and treats those protections very seriously"; indeed "security interests have been recognized as property rights protected by our Constitution's prohibition against takings without just compensation." *In re Treco*, 240 F.3d 148, 159–60 (2d Cir. 2001). These protections are reflected in, for example, the UCC provisions safeguarding a creditor's interest in collateral,[6] as well as the priority afforded to secured creditors in bankruptcy. *See Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 457 (2017) ("Secured creditors are highest on the priority list, for they must receive the proceeds of the collateral that secures their debts."); *In re Blackwood Assocs. LP*, 153 F.3d 61, 68 (2d Cir. 1998) (secured creditors have

---

[6] *See, e.g.*, N.Y. U.C.C. Law §§ 9-601–9-624 (McKinney) (providing remedies with respect to collateral); N.Y. U.C.C. Law §§ 9-315 (McKinney) (generally, "a security interest … continues in collateral notwithstanding sale, lease, license, exchange, or other disposition thereof").

"superpriority" status). By contrast, unsecured creditors—including Leadenhall with respect to the assets of 600 Partners and 777 Partners—"take[] last among all creditors in the distribution of the debtor's assets." *LNC Invs. Inc. v. First Fid. Bank*, 247 B.R. 38, 43 (S.D.N.Y. 2000).

### C. The Disposition of this Action May Impair Haymarket's Interests.

The assets securing amounts owed to Intervenors overlap with those sought by Plaintiffs and are among those that are the subject of the TRO issued on June 7, 2024 by this Court. Dkt. 114 (restraining assets of "Guarantors"; *i.e.*, 600 Partners and 777 Partners, including with respect to the "expenditure" of "cash or cash equivalents owned by … Guarantors"). The Court found in granting the TRO that those assets are such that 600 Partners and 777 Partners "would be unable to satisfy a substantial damage award." (June 7, 2024 Hr'g Tr. at 56:13–15.)

As such, disposition of this action without accounting for Haymarket's interests would impair or impede Intervenors' interests as the senior secured creditor seeking recovery from the same pool of assets. *See Onewoo Corp.*, 2016 WL 11779677, at *1 (holding "the senior secured creditor" had an "an interest in this action" that "may be impaired by the disposition in this action because an order of attachment may prevent it from receiving full payment under its agreements with the Hampshire defendants"). Moreover, any temporary or permanent injunctive relief must take into account Haymarket's senior secured position with respect to the assets of 777 Partners and 600 Partners. *Id.* at *8 ("Given that [intervenor] appears to have perfected a security interest in the assets of the Hampshire defendants and related entities, [plaintiff's] motion [for attachment] is granted without prejudice to [intervenor's] right to enforce its lien.").

### D. The Existing Parties Do Not Adequately Represent Haymarket's Interests.

The burden of showing that an applicant's interest will not be adequately represented by existing parties is "generally speaking 'minimal.'" *Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 179 (2d Cir. 2001) (citation omitted). It is enough to show that representation "may be"

-9-

inadequate. *CBS Inc. v. Snyder*, 136 F.R.D. 364, 368 (S.D.N.Y. 1991). The party opposing intervention bears the burden of demonstrating the adequacy of the representation. *Id.*

Aside from Defendant A-CAP, Intervenors' interests are actively *at odds with* the interests of the current Plaintiffs, Defendants, and other intervenors, all of whom seek to retain or recover assets from a single pool. And while A-CAP is an affiliate of Intervenors, A-CAP is not a party to the HoldCo Loan Agreement, is not the lien holder, and thus cannot adequately represent the interests of Intervenors by asserting their contract claims and security interests. *See Kirby v. Coastal Sales Assocs., Inc.*, 199 F.R.D. 111, 117 (S.D.N.Y. 2001) (finding that intervenor-corporation's interests were not adequately protected by corporation's president, because he lacked standing with respect to certain of intervenor's contract claims); *Rodriguez v. It's Just Lunch Int'l,* No. 07 CIV. 9227 SHS KNF, 2012 WL 1228243, at *3 (S.D.N.Y. Apr. 6, 2012) (finding that named plaintiffs could not adequately represent intervenor's interest because they lacked standing to assert the same claim as the intervenor, but that the motion to intervene was untimely), *report and recommendation rejected*, No. 07 CIV. 9227 SHS, 2013 WL 1749590 (S.D.N.Y. Apr. 23, 2013) (granting the motion to intervene after concluding it was timely); *Up State Tower Co., LLC v. Town of Cheektowaga*, No. 1:19-CV-280, 2019 WL 4452413, at *3 (W.D.N.Y. Sept. 17, 2019) (finding existing parties did not adequately represent intervenor's interests because they were not parties to intervenor's conveyance and so "may not have standing to enforce the [conveyance's] restrictive covenant").

## II. ALTERNATIVELY, THIS COURT SHOULD ALLOW PERMISSIVE INTERVENTION UNDER RULE 24(B).

Alternatively, this Court should grant Intervenors permissive intervention under Federal Rule of Civil Procedure 24(b). Rule 24(b) provides in relevant part:

> On timely motion, the court may permit anyone to intervene who: . . . (B) has a claim or defense that shares with the main action a common question of law or fact . . . . In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.

Fed. R. Civ. P. 24(b)(1)(B) and (3). The factors considered by a court on a motion for permissive intervention are "[s]ubstantially the same" as those considered on a motion to intervene as of right. *In re Bank of N.Y. Deriv. Litig.*, 320 F.3d 291, 300 n.5 (2d Cir. 2003). And the analysis of the motion's timeliness remains the same as for a motion to intervene as of right. *See Pitney Bowes, Inc.*, 25 F.3d at 74. However, "Rule 24(b) does not require a finding that party representation [will] be inadequate." *In re BM Brazil 1 Fundo de Investimento em Participacoes Multistrategia*, No. 23MISC208JGLCGS, 2024 WL 555780, at *7 (S.D.N.Y. Jan. 18, 2024) (citation omitted). Thus, even if the Court concludes that A-CAP could adequately represent Intervenors' interests, permissive intervention is still appropriate.

The "claims and defenses" of Intervenors share questions of law and fact with claims brought by Plaintiffs in this matter. In this context, the terms "claim" or "defense" should not be read in a technical sense, but only to necessitate some interest on the part of the applicant. *See 1199 SEIU United Healthcare Workers E. v. Alaris Health at Hamilton Park*, No. 18-CV-3336 (JSR), 2018 WL 9651077, at *3 (S.D.N.Y. Sept. 4, 2018), *aff'd*, 786 Fed. App'x 298 (2d Cir. 2019). Intervenors and Leadenhall both assert entitlement to overlapping assets from 600 Partners and 777 Partners on the basis of loan and guaranty agreements. Moreover, Leadenhall appears to take the position that its claim is somehow senior in priority to that of Intervenors, despite the Intervenors' perfected security interest. Given the financial position of 600 Partners and 777 Partners, one plaintiff's ability to recover the amounts owed to it is likely to preclude, or at a minimum impede, any other's ability to do so; hence Intervenors' clear interest in this matter.

No prejudice or undue delay will result from permitting intervention at this early phase of the litigation. In fact, permitting Intervenors to participate at the preliminary injunction phase is consistent with this Court's invitation to entertain the claims of competing creditors (June 7, 2024 Hr'g Tr. at 35:21–23), will "help to provide the Court with a full picture of the issues to be decided[,] and will permit the issues to be fully and thoroughly evaluated in an efficient, just, and speedy manner." *BNP Paribas v. Kurt Orban Partners LLC,* No. 19CIV9616ALCSLC, 2021 WL 355136, at *4 (S.D.N.Y. Feb. 2, 2021) (citation omitted).

## CONCLUSION

For these reasons, Intervenors respectfully request that the Court grant their motion to intervene.

Dated: New York, New York  
July 8, 2024

CADWALADER, WICKERSHAM & TAFT LLP

By: /s/ *Jonathan M. Watkins*  
Jonathan M. Watkins  
Michael E. Petrella  
Matthew M. Karlan  
Mark A. Singer  
200 Liberty Street  
New York, NY 10281  
Telephone: (212) 504-6000  
Fax: (212) 504-6666  
jonathan.watkins@cwt.com  
michael.petrella@cwt.com  
matthew.karlan@cwt.com  
mark.singer@cwt.com

*Counsel for Intervenors Haymarket Insurance Company and ACM Delegate LLC*

-13-

## CERTIFICATION OF COMPLIANCE

I hereby certify under Section II.D of Judge Koeltl's individual practices that this memorandum contains 3,628 words, exclusive of the caption, table of contents, table of authorities, and this certification.

<div style="text-align:right">

By: /s/ *Jonathan M. Watkins*
Jonathan M. Watkins

</div>