UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

LEADENHALL CAPITAL PARTNERS LLP
and LEADENHALL LIFE INSURANCE
LINKED INVESTMENTS FUND PLC,

|  |  |
|---|---|
| Plaintiffs, | No. 24-CV-03453 (JGK) |
| | |
| | Hon. John G. Koeltl |
| v. | |
| | |
| JOSH WANDER, STEVEN PASKO, | ORAL ARGUMENT REQUESTED |
| KENNETH KING, 777 PARTNERS LLC, | |
| 600 PARTNERS LLC, SPLCSS III LLC, | |
| SIGNAL SML 4 LLC, INSURETY AGENCY | |
| SERVICES LLC, DORCHESTER | |
| RECEIVABLES II LLC, SUTTONPARK | |
| CAPITAL LLC, SIGNAL MEDICAL | |
| RECEIVABLES LLC, INSURETY CAPITAL | |
| LLC, SUTTONPARK SERVICING LLC, | |
| SIGNAL SERVICING LLC, INSURETY | |
| SERVICING LLC, and ADVANTAGE | |
| CAPITAL HOLDINGS LLC, | |

Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
## STEVEN PASKO'S MOTION TO DISMISS

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ....................................................................................................1

STATEMENT OF RELEVANT FACTS ....................................................................................3

    A.    Plaintiffs Rely on the LSA's New York Forum Selection Clause to Support the Exercise of Personal Jurisdiction over the 777 Entity Defendants ...............................3

    B.    Plaintiffs' Factual Allegations Are Insufficient to Render Mr. Pasko Subject to the LSA's Forum Selection Clause ......................................................................................4

    C.    Plaintiffs Do Not Allege a Single Contact Between Mr. Pasko and New York, Much Less a Contact Out of Which Their Claims Arise .....................................................5

ARGUMENT.............................................................................................................................7

    I.    PLAINTIFFS' CLAIMS AGAINST MR. PASKO FAIL FOR LACK OF PERSONAL JURISDICTION ...........................................................................................7

        A. Plaintiffs' Allegations of Supposed Domination and Control Are Conclusory ........8

        B. By Signing the LSA in His Corporate Capacity, Mr. Pasko Did Not Render Himself Subject to the LSA's Forum Selection Clause ..........................................................11

            1. Non-Signatories to a Contract Generally Are Not Subject to Its Forum Selection Clause……………...…………………………………………………11

            2. The Narrow Exception to the General Rule Against Subjecting Non-Signatories to Forum Selection Clauses Is Inapplicable Here…………………………….12

            3. Other Cases Finding that Non-Signatories Are Subject to a Contract's Forum Selection Clause Are Distinguishable or Incompatible with Due Process………17

    II.    PLAINTIFFS' CLAIMS SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM.............................................................................................................................20

CONCLUSION........................................................................................................................22

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                          **Page(s)**

*Agency Rent a Car Sys., Inc. v. Grand Rent a Car Corp.*,
   98 F.3d 25 (2d Cir. 1996) .................................................................................... 9

*Arcadia Biosciences, Inc. v. Vilmorin & Cie*,
   356 F. Supp. 3d 379 (S.D.N.Y. 2019) ......................................................... Passim

*Beskrone v. Berlin*,
   656 F. Supp. 3d 496 (S.D.N.Y. 2023) .................................................. 13, 14, 15,20

*Best Van Lines, Inc. v. Walker*,
   490 F.3d 239 (2d Cir. 2007) .................................................................................. 8

*Bonnant v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
   467 F. App'x 4 (2d Cir. 2012) ............................................................................. 11

*Bracken v. MH Pillars Inc.*,
   2016 WL 7496735 (S.D.N.Y. Dec. 29, 2016) ....................................................... 9

*Brodie v. Green Spot Foods, LLC*,
   2020 WL 7027594 (S.D.N.Y. Nov. 30, 2020) ..................................................... 10

*Broumand v. Joseph*,
   522 F. Supp. 3d 8 (S.D.N.Y. 2021) ...................................................................... 7

*Charles Schwab Corp. v. Bank of Am. Corp.*,
   883 F.3d 68 (2d Cir. 2018) .................................................................................... 7

*Clarke v. TRIGO U.S., Inc.*,
   2023 WL 2456814 (S.D.N.Y. Mar. 10, 2023) ................................................13, 14

*Daimler AAG v. Bauman*,
   571 U.S. 117 (2014) .............................................................................................. 7

*Dragon State International Limited v. Keyuan Petrochemicals, Inc.*,
   2016 WL 439022 (S.D.N.Y. Feb. 3, 2016) ....................................................20, 21

*Firefly Equities LLC v. Ultimate Combustion Co.*,
   736 F. Supp. 2d 797 (S.D.N.Y. 2010) ................................................................. 18

*Gater Assets Ltd. v. AO Moldovagaz*,
   2 F.4th 42 (2d Cir. 2021) .................................................................................... 11

i

*Gen. Elec. Int'l, Inc. v. Thorco Shipping Am., Inc.*,
  2022 WL 1748410 (S.D.N.Y. May 31, 2022) ........................................................ 15

*GlaxoSmithKline LLC v. Laclede, Inc.*,
  2019 WL 293329 (S.D.N.Y. Jan. 23, 2019) .......................................................... 18

*HSM Holdings, LLC v. Mantu I.M. Mobile Ltd.*,
  2021 WL 918556 (S.D.N.Y. Mar. 10, 2021) .................................................. Passim

*In re SSA Bonds Antitrust Litig.*,
  420 F. Supp. 3d 219 (S.D.N.Y. 2019) ................................................................... 7

*Italian Exhibition Grp. USA, Inc. v. Bartolozzi*,
  2023 WL 7301810 (S.D.N.Y. Nov. 6, 2023) ........................................................ 18

*Koh v. Koo*,
  2023 WL 5352786 (S.D.N.Y. Aug. 21, 2023) .................................. 13, 14, 15, 20

*Leviton Mfg. Co. v. Reeve*,
  942 F. Supp. 2d 244 (E.D.N.Y. 2013) ................................................................. 18

*Liberty Highrise Pvt. Ltd. v. Praxis Energy Agents DMCC*,
  632 F. Supp. 3d 562 (S.D.N.Y. 2022) ............................................................15, 16

*McKee Elec. Co. v. Rauland-Borg Corp.*,
  20 N.Y.2d 377 (1967) .......................................................................................... 8

*Mersen USA EP Corp. v. TDK Electronics Inc.*,
  594 F. Supp. 3d 570 (S.D.N.Y. 2022) ......................................................... Passim

*Mueller v. Michael Janssen Gallery Pte. Ltd.*,
  225 F. Supp. 3d 201 (S.D.N.Y. 2016) .................................................................. 22

*Oasis Capital, LLC v. Connexa Sports Technologies*,
  2023 WL 8435310 (S.D.N.Y. Dec. 5, 2023) ........................................................ 15

*Pilates, Inc. v. Current Concepts Kenneth Endelman*,
  1996 WL 599654 (S.D.N.Y. Oct. 18, 1996) .......................................................... 9

*RedHawk Holdings Corp. v. Craig Invs., LLC*,
  2016 WL 6143355 (S.D.N.Y. Oct. 19, 2016) ....................................................... 18

*Roxx Allison Ltd. v. Jewelers Inc.*,
  385 F. Supp. 3d 377 (S.D.N.Y. 2019) .................................................................. 4

*Sandoval v. Abaco Club on Winding Bay*,
  507 F. Supp. 2d 312 (S.D.N.Y. 2007) .................................................................. 4

*SNS Bank, N.V. v Citibank, N.A.*,
   7 AD3d 352 (1st Dep't 2004).................................................................. 9

*Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*,
   2023 WL 4159358 (S.D.N.Y. June 2, 2023).................................................11, 19

*Waldman v. Palestine Liberation Org.*,
   835 F.3d 317 (2d Cir. 2016).................................................................. 8

**Rules**

CPLR 302(a)(1) .................................................................................7, 8

Federal Rule of Civil Procedure 12(b)(2)...........................................................1, 2, 4

Federal Rule of Civil Procedure 12(b)(6)............................................................ 1

Defendant Steven Pasko submits this memorandum of law in support of his motion to dismiss the claims against him in Plaintiffs' Complaint for lack of personal jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(2). Mr. Pasko also joins in the 777 Entity Defendants'[1] motion to dismiss the same claims for failure to state a claim, pursuant to Rule 12(b)(6).

## PRELIMINARY STATEMENT

Plaintiffs' claims arise out of a Loan Security Agreement ("LSA"), and in particular, misrepresentations that Plaintiffs allege were made to them about certain assets that were pledged as collateral under the LSA. Plaintiffs entered the LSA with the 777 Entity Defendants, and among the provisions of the LSA is a New York forum selection clause binding on the parties to that agreement: Plaintiffs and the 777 Entity Defendants. Plaintiffs have overreached, however, by relying on the LSA's New York forum selection clause to assert claims here against Mr. Pasko in his personal capacity. In addition to failing to state a claim for the reasons set forth in the 777 Entity Defendants' separate motion to dismiss, Plaintiffs' claims against Mr. Pasko also fail for lack of personal jurisdiction because (i) other than signing the LSA in his official capacity as an authorized signatory of the 777 Entity Defendants, Plaintiffs have not alleged a single contact between Mr. Pasko and New York, much less a contact from which any of their claims could be said to arise, and therefore neither general nor specific jurisdiction exists over Mr. Pasko, and (ii) Plaintiffs have not alleged that Mr. Pasko is an alter ego of the 777 Entity Defendants or any other fact that could justify exercising jurisdiction over Mr. Pasko based on

---

[1] The 777 Entity Defendants are 777 Partners LLC, 600 Partners LLC, SPLCSS III LLC, Dorchester Receivables II LLC, Insurers Agency Services LLC, Signal SML 4 LLC, SuttonPark Capital LLC, Signal Medical Receivables LLC, Insurety Capital LLC, SuttonPark Servicing LLC, Signal Servicing LLC, and Insurety Servicing LLC.

his having signed the LSA (to which he was not a party) solely in his capacity as an authorized signatory of the 777 Entity Defendants.

General and specific jurisdiction is lacking because Plaintiffs do not allege that Mr. Pasko is domiciled in New York, resides in New York, undertook any act on behalf of the 777 Entity Defendants in New York, undertook any act on behalf of the 777 Entity Defendants directed at New York, or otherwise engaged in conduct touching New York. With respect to Mr. Pasko, Plaintiffs allege only that in his capacity as an authorized signatory of the 777 Entity Defendants, he signed the LSA, as well as a handful of reports that per the terms of the LSA, the 777 Entity Defendants provided to Plaintiffs. Although Plaintiffs allege that problems existed with those reports, Plaintiffs do not allege that Mr. Pasko was aware of, or had reason to be aware of, the purported problems. More importantly for jurisdictional purposes, Plaintiffs do not allege that Mr. Pasko signed the LSA or the reports in New York, that he sent the LSA or the reports to Plaintiffs in New York, or that his execution of the LSA or the reports otherwise had any connection to New York.

In short, other than signing a contract on behalf of the 777 Entity Defendants with a New York forum selection clause, Plaintiffs have not alleged a single contact between Mr. Pasko and New York — much less a single contact out of which any of Plaintiffs' claims in this action could be said to arise. Accordingly, Plaintiffs have not provided a basis for this Court to exercise jurisdiction over Mr. Pasko, and the claims against him therefore should be dismissed pursuant to Rule 12(b)(2).

Plaintiffs cannot cure their jurisdictional pleading failure in either of the two ways they have tried: (i) by alleging in wholly conclusory fashion that Mr. Pasko exercised "domination and control" over two of the 777 Entity Defendants (777 Partners and 600 Partners), or (ii) by

seeking to hold Mr. Pasko personally subject to the LSA's forum selection clause. (Compl. ¶ 39.) Plaintiffs' allegation of "domination and control" properly is rejected on the ground it is wholly conclusory, but even if it were not rejected, the allegation still would be insufficient to establish jurisdiction over Mr. Pasko, because Plaintiffs have not alleged that any of the purported acts on the part of the 777 Entity Defendants from which their claims arise occurred in or was directed at New York — much less that Mr. Pasko was involved in any such act.

Plaintiffs also have not alleged facts sufficient to hold Mr. Pasko subject to the LSA's forum selection clause. Recent decisions by multiple courts in this district have made clear that (i) to exercise jurisdiction over a non-party to a contract (like Mr. Pasko here) based on the contract's New York forum selection clause, the exercise of jurisdiction must comport with due process, and (ii) exercising jurisdiction over a non-party to a contract who (like Mr. Pasko here) is not alleged to have had any relevant contacts with New York would not comport with due process. Plaintiffs' claims against Mr. Pasko therefore should be dismissed.

## STATEMENT OF RELEVANT FACTS

### A. Plaintiffs Rely on the LSA's New York Forum Selection Clause to Support the Exercise of Personal Jurisdiction over the 777 Entity Defendants

The 777 Entity Defendants all are non-New York entities, and only one is alleged to have its principal place of business in New York. (Compl. ¶¶ 24-25, 29-32.) However, with respect to that one 777 Entity Defendant, SuttonPark Servicing, LLC, (*id.* ¶ 29), Plaintiffs do not allege a single act in which it supposedly engaged in New York or any other fact to support the

conclusory allegation.[2] Accordingly, to establish personal jurisdiction over the 777 Entity

Defendants, Plaintiffs necessarily rely on the forum selection clause in the LSA, pursuant to

which the parties to the LSA — Plaintiffs and the 777 Entity Defendants — agreed to submit to

the "jurisdiction of courts sitting in New York." (*Id.* ¶ 37.)

### B. Plaintiffs' Factual Allegations Are Insufficient to Render Mr. Pasko Subject to the LSA's Forum Selection Clause

Plaintiffs and the 777 Entity Defendants are the only parties to the LSA; Mr. Pasko is not

alleged to have been a party, and was not a party. (*See* Pasko Decl. Ex. 1 (excerpts of the LSA).)[3]

Rather, Mr. Pasko's only alleged connection to the LSA is that, acting in his official capacity as

an authorized signatory of the 777 Entity Defendants, he signed the LSA on behalf of the 777

Entity Defendants, as well as a handful of reports that the 777 Entity Defendants provided to

---

[2] The allegation thus properly is rejected and, in any event, has no relevance to whether personal

jurisdiction exists over Mr. Pasko in New York. To the extent that the case proceeds, the

allegation is incorrect and will be proven wrong.

[3] Although the LSA is not attached to the Complaint, the Court may consider it in deciding Mr.

Pasko's motion to dismiss both because it is incorporated by reference in the Complaint and

because the Court may consider materials extraneous to the Complaint in addressing a motion to

dismiss for lack of jurisdiction. *See Roxx Allison Ltd. v. Jewelers Inc.*, 385 F. Supp. 3d 377, 379

(S.D.N.Y. 2019) ("In reviewing a motion to dismiss pursuant to Fed. R. Civ. P. 12 (b)(2), a court

may look to evidence outside the pleadings." (quoting *Sandoval v. Abaco Club on Winding Bay*,

507 F. Supp. 2d 312, 315 (S.D.N.Y. 2007))). Citations in the form "Pasko Decl.__" refer to the

Declaration of Steven Pasko submitted herewith.

Plaintiffs pursuant to the LSA. (Compl. ¶¶ 39, 48, 58, 68, 137.)

Plaintiffs nonetheless seek to use Mr. Pasko's act of signing the LSA in his official capacity to expand the reach of the forum selection clause to render him subject to it. (*Id.* ¶ 39.) Plaintiffs have not, however, alleged facts sufficient to do so.

For one, Plaintiffs have not alleged facts to support an inference that Mr. Pasko is the alter ego of any of the 777 Entity Defendants. Although the Complaint alleges that "777 Partners and 600 Partners are the trade names and alter egos of . . . Steven Pasko, who [is] the founder[] and so-called Managing Partner[] of 777 Partners and 600 Partners" (*id.* ¶ 4), the Complaint lacks any factual support for the "alter ego[]" allegation. Plaintiffs do not allege, for example, that Mr. Pasko failed to observe corporate formalities with respect to any of the 777 Entity Defendants, intermingled corporate and personal funds, or undercapitalized the 777 Entity Defendants.

Plaintiffs also do not allege that Mr. Pasko had any involvement in negotiating the terms of the LSA — whether the forum selection clause or otherwise. Nor do Plaintiffs allege that Mr. Pasko had any connection to the LSA in his personal capacity. Plaintiffs do not allege, for example, that the LSA afforded him any personal rights or obligations. In short, Plaintiffs do not allege any of the types of facts that courts have observed are necessary to render a corporate agent subject to a forum selection clause in the agent's personal capacity.

### C. Plaintiffs Do Not Allege a Single Contact Between Mr. Pasko and New York, Much Less a Contact Out of Which Their Claims Arise

Plaintiffs also do not allege a single purported contact between Mr. Pasko and New York. Plaintiffs do not allege that Mr. Pasko undertook any act for any 777 Entity Defendant in New York — whether related to the negotiation or performance of the LSA or otherwise. Nor do Plaintiffs allege that any of Mr. Pasko's alleged conduct in the Complaint had any connection to

New York. They do not, for example, allege that he signed the LSA or any of the reports referenced in the Complaint in New York (*id.* ¶¶ 48, 58, 68, 137), or sent any of those documents to Plaintiffs in New York (*see id.*). In short, the Complaint does not purport to link a single alleged act of Mr. Pasko to New York. Thus, the only inferences that the Complaint supports with respect to Mr. Pasko and New York are that, at all relevant times, he did not (i) reside in New York, (ii) work in New York, (iii) undertake any relevant conduct in New York, (iv) undertake any relevant conduct directed at New York, or (v) otherwise have any relevant contacts with New York.

Plaintiffs therefore resort to alleging that Mr. Pasko is subject to jurisdiction in New York because "upon information and belief," he supposedly "control[ed] and manage[d]" and exercised "domination and control over [777 Entity Defendants]." (Compl. ¶¶ 28, 39.) The Complaint, however, does not plead facts sufficient to support an inference that Mr. Pasko in fact exercised "control and manage[ment]" or "domination and control" over the 777 Entity Defendants — whether in connection with the alleged acts in the Complaint or otherwise.

The Complaint alleges only that Mr. Pasko had a membership interest in several of the 777 Entity Defendants (*id.* ¶¶ 24-32), and periodically signed documents as an "authorized "signatory" on their behalf (*id.* ¶¶ 58, 68, 137). It does not, however, allege facts to support an inference that by virtue of his purported membership interest and authorized signatory status, Mr. Pasko exercised control over the 777 Entity Defendants, much less in connection with any of the alleged conduct out of which Plaintiffs' claims arise.

More importantly, even if the Complaint adequately alleged that Mr. Pasko "dominat[ed] and control[led]" the 777 Entity Defendants, it still would not support an inference that the supposed "domination and control" manifested in a single relevant act on the part of Mr. Pasko

touching New York.

## ARGUMENT

Because the Complaint lacks allegations sufficient to hold Mr. Pasko personally subject to the LSA's forum selection clause, or to support an inference that he engaged in relevant conduct in or directed at New York, the claims against him should be dismissed for lack of personal jurisdiction. The claims also should be dismissed for the reasons set forth in the 777 Entity Defendants' motion to dismiss, which Mr. Pasko joins.

## I.    PLAINTIFFS' CLAIMS AGAINST MR. PASKO FAIL FOR LACK OF PERSONAL JURISDICTION

Because Plaintiffs concede that Mr. Pasko is domiciled in Florida (Compl. ¶ 28), general jurisdiction over him does not exist, *see, e.g.*, *Daimler AAG v. Bauman*, 571 U.S. 117, 137 (2014), and therefore, to avoid dismissal of their claims against him, Plaintiffs must establish that this Court has specific jurisdiction over him. *See, e.g.*, *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 81, 83 (2d Cir. 2018). To carry their burden, Plaintiffs "may not rely on conclusory statements without any supporting facts." *In re SSA Bonds Antitrust Litig.*, 420 F. Supp. 3d 219, 229 (S.D.N.Y. 2019).

To establish specific jurisdiction over Mr. Pasko — per the relevant New York long-arm statute, CPLR 302(a)(1) — Plaintiffs must demonstrate that Mr. Pasko has specific contacts with New York, and that their claims "arise out of or relate to [those specific] contacts." *Id.* (internal quotation marks omitted); *see Broumand v. Joseph*, 522 F. Supp. 3d 8, 16-17 (S.D.N.Y. 2021) (a plaintiff must establish a statutory basis for specific jurisdiction, which in New York requires that the plaintiff demonstrate that its claims arise out of the defendant's alleged contacts with New York).

To establish specific jurisdiction, Plaintiffs also must show that "the exercise of . . .

jurisdiction . . . [would] comport with constitutional due process." *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 327 (2d Cir. 2016) (quotation omitted). The due process analysis has two components: "minimum contacts" and "reasonableness." *Id.* at 331. "The minimum contacts inquiry requires that the court determine whether a defendant has sufficient minimum contacts with the forum to justify the court's exercise of personal jurisdiction over the defendant." *Id.* "The reasonableness inquiry requires the court to determine whether the assertion of personal jurisdiction over the defendant comports with traditional notions of fair play and substantial justice under the circumstances of the particular case." *Id.* (internal quotation marks and citation omitted).

Plaintiffs' allegations seeking to establish specific jurisdiction — that Mr. Pasko (i) "upon information and belief" supposedly "control[led] and manage[d]" and exercised "domination and control" over the 777 Entity Defendants, and (ii) signed the LSA on behalf of the 777 Entity Defendants (Compl. ¶¶ 28, 39) — are insufficient.

### A. Plaintiffs' Allegations of Supposed Domination and Control Are Conclusory

Under the relevant New York long-arm statute, specific jurisdiction exists over a non-domiciliary, out-of-state defendant like Mr. Pasko only if (i) he "transact[ed] any business" in New York, and (ii) the plaintiffs' claims "aris[e] from such a business transaction." *E.g.*, *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007) (internal quotation omitted); *see* CPLR 302(a)(1). To "transact business" in New York, the defendant must engage in "'some act by which [he] purposefully avails [him]self of the privilege of conducting activities within [New York].'" *Id.* (quoting *McKee Elec. Co. v. Rauland-Borg Corp.*, 20 N.Y.2d 377, 382 (1967)).

Plaintiffs do not allege *any* acts by Mr. Pasko in (or directed at) New York (business or otherwise), and thus do not satisfy even the first prong of the long-arm analysis. Indeed, Plaintiffs do not allege any act by any of the 777 Entity Defendants in New York, let alone any

by Mr. Pasko. Although Plaintiffs allege that one of the 777 Entity Defendants — SuttonPark Servicing — has its principal place of business in New York (Compl. ¶ 29), they do not allege any act that it transacted in New York. In any event, even if Plaintiffs had adequately alleged that SuttonPark Servicing transacted business in New York, Plaintiffs still would not have alleged that Mr. Pasko engaged in a relevant act in New York. *See Bracken v. MH Pillars Inc.*, 2016 WL 7496735, at *5 (S.D.N.Y. Dec. 29, 2016) (plaintiff must allege specific acts that could constitute transaction of business, and vague allegation that defendant business is located in New York is insufficient to satisfy "transact[ing] business" prong).

Having failed to allege that Mr. Pasko transacted business in New York, Plaintiffs necessarily also have failed to allege facts sufficient to satisfy the second prong of the long-arm analysis: that "a substantial nexus [exists] between the business transacted and the cause of action sued upon." *Agency Rent a Car Sys., Inc. v. Grand Rent a Car Corp.*, 98 F.3d 25, 31 (2d Cir. 1996); *see SNS Bank, N.V. v Citibank, N.A.*, 7 A.D.3d 352, 353 (1st Dep't 2004) (affirming lack of personal jurisdiction over non-resident directors who attended a board meeting in New York because plaintiff did not allege a substantial nexus between the meeting and the cause of action).

Plaintiffs cannot cure their failure to allege facts that could support the exercise of long-arm jurisdiction through their allegations that, "upon information and belief," Mr. Pasko supposedly "control[led] and manage[d]" and exercised "domination and control" over the 777 Entity Defendants. (Compl. ¶¶ 28, 39.) The allegations are wholly conclusory; Plaintiffs do not allege a single fact that could support an inference that Mr. Pasko in fact exercised "domination and control" over the 777 Entity Defendants — either generally or in connection with any of the alleged acts from which their claims arise. *See Pilates, Inc. v. Current Concepts Kenneth*

*Endelman*, 1996 WL 599654, at *3 (S.D.N.Y. Oct. 18, 1996) ("[A] general allegation that an officer controls a corporation is not sufficient to establish personal jurisdiction."). "Courts in this Circuit look unfavorably upon [such] conclusory pleadings made on information and belief." *Brodie v. Green Spot Foods, LLC*, 2020 WL 7027594, at *13 (S.D.N.Y. Nov. 30, 2020).

That Mr. Pasko allegedly signed the LSA and various other documents as an "authorized signatory" of the 777 Entity Defendants (Compl. ¶¶ 39, 48, 58, 68, 137) is insufficient; agents of companies routinely execute corporate documents on behalf of the companies without involvement in or control over the matters to which those documents relate. *See HSM Holdings, LLC v. Mantu I.M. Mobile Ltd.*, 2021 WL 918556, at *14 (S.D.N.Y. Mar. 10, 2021) ("Corporate representatives are asked to sign corporate documents in numerous different circumstances. There will be occasions when a representative is asked to sign on behalf of a large corporation simply because she possesses the relevant signatory authority and is available even though she had no involvement in the negotiation of the agreement and will have no involvement in its execution.").

In any event, even if Plaintiffs' allegations were sufficient to demonstrate Mr. Pasko's supposed "domination and control" over the 777 Entity Defendants, Plaintiffs' allegations still would be insufficient to establish jurisdiction over him, because Plaintiffs have not alleged that any of the alleged acts on the part of the 777 Entity Defendants from which their claims arise occurred in or was directed at New York, much less that Mr. Pasko was involved in any such act. *See, e.g.*, *id.* (finding allegations insufficient to establish specific jurisdiction because "Plaintiff has failed to make specific allegations that would allow th[e] Court to conclude that [defendants] purposefully availed themselves of the benefits and protections of New York").

Further, because Plaintiffs have not alleged any act by which Mr. Pasko purposefully availed himself of the privilege of conducting activities within New York, exercising jurisdiction over him not only would be contrary to the long-arm statute, but also due process. *Gater Assets Ltd. v. AO Moldovagaz*, 2 F.4th 42, 53 (2d Cir. 2021) ("Due process protects a party from being subject to personal jurisdiction in a forum with which it has no connection."); *Mersen USA EP Corp. v. TDK Electronics Inc.*, 594 F. Supp. 3d 570, 584 (S.D.N.Y. 2022) ("Because Plaintiff does not contend that [defendant] has *any* contacts with New York . . . [exercising] personal jurisdiction . . . would not comport with due process." (emphasis in original)).

## B. By Signing the LSA in His Corporate Capacity, Mr. Pasko Did Not Render Himself Subject to the LSA's Forum Selection Clause

Plaintiffs also cannot cure their failure to allege long-arm jurisdiction by pointing to Mr. Pasko's signing of the LSA on behalf of the 777 Entity Defendants. (Compl. ¶ 39.)

### 1. Non-Signatories to a Contract Generally Are Not Subject to Its Forum Selection Clause

Although a court "may [] exercise personal jurisdiction over a defendant who has consented to jurisdiction . . . through [a] forum-selection clause[] in [a] contract[]," *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co*., 2023 WL 4159358 at *7 (S.D.N.Y. June 2, 2023), a person like Mr. Pasko — who is not a party to the contract and signed only in his official capacity on behalf of the actual parties to the contract — is considered a non-signatory and generally is not bound by the provisions in the contract, including any forum selection clause. *See, e.g.*, *Bonnant v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 467 F. App'x 4, 10 (2d Cir. 2012) ("[I]t is well-established that an agent will not be personally bound unless there is clear and explicit evidence of the agent's intention to substitute or superadd his personal liability for,

or to, that of his principal. For a corporate representative to be personally bound by a contract, the officer must sign both in a representative and in an individual capacity.").

Here, no dispute can exist that Mr. Pasko signed the LSA in his official capacity as an agent of the 777 Entity Defendants, not his individual capacity, and thus is a non-signatory. (*See* LSA at Signature Pages.) The LSA's forum selection clause expressly is limited to the "parties" to the LSA (LSA § 10.09 ("Each *Party* hereto hereby irrevocably submits to the non-exclusive jurisdiction of any New York state or federal court sitting in New York City." (emphasis added))), and the LSA's first page makes clear that the "parties" are Plaintiffs and the 777 Entity Defendants (*id.* at 1). The LSA further makes clear that the signatories are the "parties" (Plaintiffs and the 777 Entity Defendants), as it states, immediately above the signature lines, "the parties have caused this [LSA] to be executed by their respective officers thereunto duly authorized." (LSA at Signature Page 1.) Mr. Pasko thus presumptively is not subject to the forum selection clause.

2.  The Narrow Exception to the General Rule Against Subjecting Non-Signatories to Forum Selection Clauses Is Inapplicable Here

Although a narrow exception exists to the general rule against holding a non-signatory subject to a contract's forum selection clause, the exception is inapplicable here because Plaintiffs have not alleged (i) that Mr. Pasko was an alter ego of the 777 Entity Defendants on whose behalf he signed, (ii) that Mr. Pasko had any relevant contacts with this jurisdiction, or (iii) any other fact from which this Court could conclude that exercising personal jurisdiction over Mr. Pasko based on the LSA's forum selection clause would comport with due process.

Recent decisions by courts in this district have found that (i) to exercise jurisdiction over a non-signatory to a contract based on the contract's forum selection clause, the exercise of jurisdiction must comport with due process, and (ii) the exercise of jurisdiction over a non-

signatory who (like Mr. Pasko here) is not alleged to have had any relevant contacts with New York would not comport with due process. *See, e.g.*, *Clarke v. TRIGO U.S., Inc.*, 2023 WL 2456814, at *5-6 (S.D.N.Y. Mar. 10, 2023); *Beskrone v. Berlin*, 656 F. Supp. 3d 496, 513-515 (S.D.N.Y. 2023); *Mersen USA EP Corp. v. TDK Electronics Inc.*, 594 F. Supp. 3d 570, 583-84 (S.D.N.Y. 2022); *HSM Holdings*, 2021 WL 918556, at *13-14 (S.D.N.Y. Mar. 10, 2021); *Arcadia Biosciences, Inc. v. Vilmorin & Cie*, 356 F. Supp. 3d 379, 394-95 (S.D.N.Y. 2019); *see also Koh v. Koo*, 2023 WL 5352786, at *3 (S.D.N.Y. Aug. 21, 2023) (characterizing the approach to personal jurisdiction in *HSM Holdings* and *Arcadia* as "persuasive" and "the better view"). To the extent decisions exist in which jurisdiction over a non-signatory is based solely on allegations that the non-signatory is "closely related to th[e] . . . signatories" — the basis on which Plaintiffs seek to hold Mr. Pasko subject to the LSA's forum selection clause here (Compl. ¶ 39) — the above courts appropriately have rejected those decisions as incompatible with due process. *See id.*

The above courts reasoned that (i) "[t]here is no separate law applicable to persons who affix their signature onto corporate documents in their official capacity only," and therefore, (ii) when (as here) an individual signs a document with a forum selection clause in his official capacity, "a court may exercise jurisdiction over [the] individual only after ensuring that exercise is consistent with the personal jurisdiction granted to the courts of the forum state by its legislature and consistent with federal due process principles." *HSM Holdings*, 2021 WL 918556, at *9; *see also Beskrone*, 656 F. Supp. 3d at 514 (finding no personal jurisdiction over the defendants because the plaintiff did "not . . . identif[y] any connection between defendants and New York other than provisions in contracts to which defendants are not parties"); *Clarke*, 2023 WL 2456814, at *5 ("The Court joins those . . . that have concluded that personal

13

jurisdiction premised on the 'closely related to' or other theory of constructive consent must still satisfy the requirements of due process of law."); *Mersen*, 594 F. Supp. 3d at 583-84 (concluding that "constitutional concerns" prohibited enforcement of a forum selection clause against a non-party signatory when, as here, the non-party signatory was not alleged to have had any contacts with New York).

Based on the above reasoning, the courts concluded that the exercise of personal jurisdiction over a non-signatory to be appropriate only when the plaintiff has alleged facts sufficient to establish that "the non-party [to the agreement] is . . . bound to the agreement, as for example under the ordinary law of . . . alter ego" or the non-signatory has sufficient contacts with the forum to satisfy due process. *HSM Holdings*, 2021 WL 918556, at *9; *see also Clarke*, 2023 WL 2456814, at *5-6; *Mersen*, 594 F. Supp. 3d at 583-84; *Koh v. Koo*, 2023 WL 5352786, at *3.

For example, in *Arcadia*, Judge Rakoff found that a court cannot exercise personal jurisdiction over a non-signatory (like Mr. Pasko) premised on a forum selection clause without ensuring that the exercise comports with due process, including the requisite "minimum contacts." 356 F. Supp. 3d at 394-95. Judge Rakoff emphasized that due process principles — that "a court cannot exercise personal jurisdiction unless the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws . . . [—] caution against a liberal application of forum selection clauses to non-signatory defendants." *Id.* (internal quotation marks and citation omitted).

Judge Rakoff went on to explain that (i) "due process requires that a defendant have 'minimum contacts' with the forum," and (ii) when (as here) a plaintiff has "shown no connection between [the non-signatory] and New York," exercising personal jurisdiction would not comport with due process. *Id.* at 395; *see also Beskrone*, 656 F. Supp. 3d at 514

("[E]nforcing the personal-jurisdiction clause against defendants would not comport with either New York law or federal due process" when, as here, none of the non-signatory defendants had any relevant contacts with New York).

Following *Arcadia*, in *HSM Holdings*, Judge Liman found that for the exercise of jurisdiction over a non-signatory to comport with due process, a court must satisfy itself that (i) "the non-party is otherwise bound to the agreement, as for example under the ordinary law of successor liability and alter ego applicable to all other contractual provisions," or (ii) the non-party engaged in "acts sufficient to satisfy long-arm jurisdiction and due process." 2021 WL 918556, at *9-13. Thereafter, Judges Engelmayer, Castel, Furman, and Vyskocil reached similar conclusions in *Beskrone*, *Clarke*, *Koh* and *Mersen*.[4]

Plaintiffs do not purport to allege that Mr. Pasko is a successor of any of the 777 Entity Defendants, and they make only a single, conclusory allegation regarding alter ego status. (Compl. ¶ 4 ("777 Partners and 600 Partners are the . . . alter egos of . . . Steven Pasko.").) In determining whether an entity is an alter ego of an individual, courts evaluate the following factors: (i) the intermingling of corporate and personal funds, (ii) undercapitalization of the corporation, and (iii) failure to maintain separate books and records or other formal legal

---

[4] Instead of dismissing claims outright based on the reasoning of the above cases, some courts have allowed jurisdictional discovery. *See Oasis Capital, LLC v. Connexa Sports Technologies*, 2023 WL 8435310, at *4 (S.D.N.Y. Dec. 5, 2023); *Gen. Elec. Int'l, Inc. v. Thorco Shipping Am., Inc.*, 2022 WL 1748410, at *6 (S.D.N.Y. May 31, 2022). Here, however, Plaintiffs' pleading — in particular, their failure to allege any facts to support alter ego status or a relevant contact with New York — does not justify such discovery.

requirements for the corporation. *Liberty Highrise Pvt. Ltd. v. Praxis Energy Agents DMCC*, 632 F. Supp. 3d 562, 571 (S.D.N.Y. 2022). Evidence of "financial commingling is particularly important," and "the Second Circuit has found clear error where district courts have held an individual principal to be an alter ego absent such evidence of financial comingling." *Id.* at 571-72.

Here, the Complaint lacks factual allegations sufficient to support a finding that any alter ego factor is satisfied with respect to Mr. Pasko and any of the 777 Entity Defendants. Moreover, Plaintiffs' failure to allege a single contact between Mr. Pasko and New York, *see supra* I.A, means that exercising jurisdiction over Mr. Pasko would not satisfy either long-arm jurisdiction or due process, *see, e.g.*, *HSM Holdings*, 2021 WL 918556, at *13-14; *Mersen*, 594 F. Supp. 3d at 583-84.

*HSM Holdings* is particularly instructive, as its fact pattern is closely analogous to that here. In *HSM Holdings*, the "co-CEO, founder, director, and major shareholder" of the company that was a party to the agreement with the forum selection clause, as well as the other "co-CEO, founder, chairman of the board, and major shareholder," signed the agreement in their representative capacity on behalf of the company. 2021 WL 918556, at *1. There, as here, "[t]he signature block [made] clear that [the individuals signed] solely in their respective capacities as corporate officers of [the company] and not in their individual capacities," and there was "no reflection in the body of the Agreement that the two individuals signed in anything other than a corporate capacity." *Id.* at *9. Judge Liman rejected the plaintiff's argument that it was foreseeable that the individual defendants would be subject to the forum selection clause based on their positions with the signatory entity, holding "[u]nder federal law, the exercise of jurisdiction by a court does not turn just on whether the defendant could anticipate being sued in

the forum, but on whether the defendant has taken some act that either evinces its consent to being sued in the forum or that gives rise to the court's power to assert jurisdiction in the absence of consent." *Id.* at *13. Judge Liman concluded that that was not the case, as the plaintiffs had failed to allege alter ego status between the defendant and the signatory entity or minimum contacts between the defendant and New York. *See id.*

The same reasoning applies here. Plaintiffs allege in only the most conclusory fashion that "777 Partners and 600 Partners are the . . . alter egos of . . . Steven Pasko." (Compl. ¶ 4.) They do not plead any fact from which this Court could infer that Mr. Pasko was "abusing the corporate form" or that any other circumstance exists to support a finding of alter ego status. *HSM Holdings*, 2021 WL 918556, at *13. Mr. Pasko is not alleged to have disregarded corporate formalities in his alleged role as "co-founder and Managing Partner of 777 Partners or 600 Partners" (Compl. ¶ 28), to have comingled personal finances with any of the 777 Entity Defendants, or to have undertaken steps to render any of the 777 Entity Defendants so intertwined with his individual actions as to merit treating them as "one entity." *See HSM Holdings*, 2021 WL 918556.

Because the Complaint does not allege any facts from which this Court could conclude that Mr. Pasko (i) appropriately "is . . . bound to the [LSA's forum selection clause]," or (ii) has sufficient contacts with New York in connection with Plaintiffs' claims to satisfy New York's long-arm statute and due process, Plaintiffs have provided an insufficient basis to justify the exercise of personal jurisdiction over him.

3. <u>Other Cases Finding that Non-Signatories Are Subject to a Contract's Forum Selection Clause Are Distinguishable or Incompatible with Due Process</u>

To the extent that courts have determined that a non-signatory appropriately is bound by a forum selection clause based on the non-signatory being closely related to a signatory (the

basis on which Plaintiffs' rely here), "[t]he vast majority of [those] cases . . . have done so where the non-signatory [was alleged to have] had a far more active role in the transaction" than here — where Mr. Pasko, in his corporate capacity, merely is alleged to have signed on the dotted line as an authorized signatory. *Leviton Mfg. Co. v. Reeve*, 942 F. Supp. 2d 244, 259 (E.D.N.Y. 2013); *see also Italian Exhibition Grp. USA, Inc. v. Bartolozzi*, 2023 WL 7301810, at *1 (S.D.N.Y. Nov. 6, 2023) (finding it was not foreseeable for executive who signed an agreement on behalf of company to be personally bound by contracts that company entered into, and that "the cases embracing the 'closely related' doctrine for corporate executives have required a connection more specific to the claims").

Indeed, courts typically have deemed a non-signatory bound by a contract's forum selection clause when either (i) the individual was actively involved in negotiating the contract or the underlying transactions, or (ii) when the individual was afforded personal rights or obligations under the contract. For instance, in *GlaxoSmithKline LLC v. Laclede, Inc.*, 2019 WL 293329, at *1 (S.D.N.Y. Jan. 23, 2019), the non-party signatories were personally bound by provisions in the relevant agreement. In *Firefly Equities LLC v. Ultimate Combustion Co*., the non-party signatory met with plaintiff on numerous occasions and was actively involved in negotiating the agreement. 736 F. Supp. 2d 797, 800 (S.D.N.Y. 2010).[5] *See also, e.g., RedHawk*

---

[5] Additionally, in *Firefly*, "significant evidence" existed that the non-signatory may have been using the corporate entity as an alter ego; he routinely transferred his own money into and out of the company, even though the company was undercapitalized, and the entity observed few corporate formalities. *See Firefly Equities LLC v. Ultimate Combustion Co.*, 2010 WL 5174358, at *5 (S.D.N.Y. Dec. 14, 2010).

*Holdings Corp. v. Craig Invs., LLC*, 2016 WL 6143355, at *5 (S.D.N.Y. Oct. 19, 2016) (finding corporate agent bound by a forum selection clause where agent was alleged to have "played a key role in the drafting, negotiation, and preparation of the [relevant agreement], including communicating [about] the terms [of the agreement]").

Here, unlike the above cases, Plaintiffs have not alleged that Mr. Pasko negotiated the terms of the LSA, personally was afforded any rights or obligations under the LSA, or engaged in conduct that might reasonably have suggested to him (at the time he signed or otherwise) that he could personally be bound by the LSA's New York forum selection clause. That after executing the LSA in his official capacity as an authorized signatory of the 777 Entity Defendants, Mr. Pasko allegedly signed a handful of reports that were provided to Plaintiff under the LSA also in his official capacity as an "authorized signatory" of the 777 Entity Defendants (*see* Compl. ¶¶ 58, 68, 137) does not alter the analysis. Plaintiffs have not alleged any facts to suggest that Mr. Pasko was involved in the preparation of the reports or was aware that any issue existed with respect to any of the reports. In fact, all of Plaintiffs' alleged communications regarding the reports — and alleged issues regarding the reports — were with defendant Joshua Wander. (*See id.* ¶¶ 108-120.) Mr. Pasko merely is alleged to have signed corporate documents in his capacity as a corporate agent without any reason to believe any issues existed with the documents. Such conduct is insufficient to render it foreseeable to Mr. Pasko that he could potentially personally be rendered subject to the LSA's New York forum selection clause. *See Spectrum Dynamics*, 2023 WL 4159358, at *7-8 (citing *Arcadia* approvingly, and finding the exercise of jurisdiction over the non-signatory inconsistent with due process because, under the circumstances there, as here, being sued in New York would not have been foreseeable to the non-signatory).

A handful of cases exist where courts in this district have found a non-signatory to be bound by a forum selection clause based solely on the individual's position within the signatory entity, but consistent with the finding of the courts in *Arcadia*, *HSM Holdings*, *Beskrone*, *Clarke*, *Koh*, and *Mersen*, those cases are incompatible with due process and therefore should not be followed. *See, e.g.*, *Koh v. Koo*, 2023 WL 5352786, at *3 n.4 (stating "[t]o the extent [the Court's prior decision cannot be reconciled with *Arcadia* and *HSM Holdings*], the Court is persuaded by the later reasoning [in those cases]"); *Dragon State International Limited v. Keyuan Petrochemicals, Inc.*, 2016 WL 439022 (S.D.N.Y. Feb. 3, 2016), at *3 n.3 (declining to follow holding from another case "that a company's CFO was bound by a forum selection clause simply because she was the company's CFO," because "in light of the due process concerns implicated by exerting personal jurisdiction over non-parties to a contract based on a term in that contract, something more than mere status as a company executive must be alleged").

Because the Complaint fails to allege any facts to support a finding that Mr. Pasko consented to this Court's jurisdiction by his signing the LSA, and because he is not alleged to have minimum contacts with New York, Mr. Pasko is not subject to the forum selection clause.

## II.  PLAINTIFFS' CLAIMS SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM

Mr. Pasko joins the 777 Entity Defendants' motion to dismiss for failure to state a claim, as Plaintiffs' claims against him — civil RICO, civil RICO conspiracy, conspiracy to commit fraud, aiding and abetting fraud, and unjust enrichment (claims 5-10) — fail for the same reasons they fail against the 777 Entity Defendants. Mr. Pasko incorporates by reference Points II and III of the 777 Entity Defendants' moving brief.

With regard to the RICO claims, the Complaint does not sufficiently plead that Mr. Pasko engaged in any predicate acts. (777 Brief, Section II.B.) As the 777 Entity Defendants' point out, with respect to each Defendant, Plaintiffs must allege that the Defendant "personally committed or aided and abetted the commission of two predicate acts." (*Id.*) As to Mr. Pasko, Plaintiffs make only the following conclusory allegation: that he purportedly was a "willing and critical participant[] in the [alleged] scheme" because he supposedly "facilitat[ed] and encourag[ed] the SuttonPark and Dorchester Borrowers to fraudulently inflate the amount of their Collateral to Plaintiffs and misrepresent[ed] facts to Plaintiffs." (Compl. ¶ 265.) As noted above, however, Plaintiffs allegations support only the inference that Mr. Pasko signed a handful of corporate documents in his capacity as an "authorized signatory" without any reason to believe that any issues existed with the documents. (*See* Compl. ¶¶ 48, 58, 68, 137 (alleging that, in his capacity as an "authorized signatory" of the 777 Entity Defendants, Mr. Pasko signed reports with allegedly inflated collateral figures, but without alleging a single fact to suggest that Mr. Pasko knew or had reason to believe the figures were inflated).) Plaintiffs' allegations as to Mr. Pasko thus do not support the underlying premise of their RICO claims against him: that he engaged in an act with a "fraudulent[]" purpose or an intent to "misrepresent[]." Plaintiffs also fail to allege a pattern of racketeering activity and an enterprise.[6] (777 Brief, Section II.B.)

Plaintiffs' fraud claims against Mr. Pasko are based on the same conclusory allegations as their RICO claims (Compl. ¶ 251), and therefore fail because they do not meet Rule 9(b)'s

---

[6] Because diversity is lacking, if the RICO claims are dismissed, the Court should decline to exercise supplemental jurisdiction over the fraud and unjust enrichment claims. (*See* 777 Brief, Section I.)

heightened pleading standard. (777 Brief, Section II.) In addition, the conspiracy to commit fraud

claim also fails because it is not cognizable. (777 Brief, Section II.B.) Finally, the unjust

enrichment claim fails because it is duplicative of Plaintiffs' breach of contract claims. (777

Brief, Section III.) *See Mueller v. Michael Janssen Gallery Pte. Ltd.*, 225 F. Supp. 3d 201, 207

(S.D.N.Y. 2016) (a claim for unjust enrichment "is barred if there is a valid contract governing

the subject matter of the dispute, even if one of the parties to the claim is not a party to that

contract." (quotation marks and citation omitted)).

## <u>CONCLUSION</u>

For the reasons set forth above, the claims against Mr. Pasko should be dismissed in their

entirety.

Dated: New York, New York               Respectfully Submitted,
       August 9, 2024

                                       MORVILLO ABRAMOWITZ GRAND
                                       IASON & ANELLO P.C.

                                     By: _____/s/ Christopher B. Harwood_____
                                          Christopher B. Harwood
                                          Jenna Jones

                                     565 Fifth Avenue
                                     New York, New York 10017
                                     Tel. 212.856.9600
                                     Fax. 212.856.9494

                                     *Attorneys for Steven Pasko*

## <u>CERTIFICATE OF WORD COUNT COMPLIANCE</u>

We certify that this memorandum of law complies with II.D. of the Individual Practices of Judge John G. Koeltl and according to Microsoft Word contains 6,850 words exclusive of the caption, tables, and signature blocks.

Dated:  New York, New York
        August 9, 2024

                                MORVILLO ABRAMOWITZ GRAND
                                IASON & ANELLO P.C.

                                By: ____/s/ Christopher B. Harwood____
                                        Christopher B. Harwood
                                        Jenna Jones

                                565 Fifth Avenue
                                New York, New York 10017
                                Tel. 212.856.9600
                                Fax. 212.856.9494

                                *Attorneys for Steven Pasko*