UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

LEADENHALL CAPITAL PARTNERS LLP   :
and LEADENHALL LIFE INSURANCE
LINKED INVESTMENTS FUND PLC,     :  24 Civ. 3453 (JGK)

          Plaintiffs,  :

    v.            :

JOSH WANDER, STEVEN PASKO,     :
KENNETH KING, 777 PARTNERS LLC,
600 PARTNERS LLC, SPLCSS III LLC, SIGNAL :
SML 4 LLC, INSURETY AGENCY SERVICES
LLC, DORCHESTER RECEIVABLES II LLC,  :
SUTTONPARK CAPITAL LLC, SIGNAL
MEDICAL RECEIVABLES LLC, INSURETY  :
CAPITAL LLC, SUTTONPARK SERVICING LLC,
SIGNAL SERVICING LLC, INSURETY    :
SERVICING LLC, and ADVANTAGE CAPITAL
HOLDINGS LLC,          :

         Defendants. :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

## THE 777 ENTITY DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT

SMITH, GAMBRELL & RUSSELL, LLP
*Attorneys for the 777 Entity Defendants*
1301 Avenue of the Americas, 21st Floor
New York, New York 10019
(212) 907-9700

*Of counsel*
John G. McCarthy
David A. Pellegrino
Katie L. Schwartz
Ryan J. Solfaro

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ................................................................................. iii-vii

PRELIMINARY STATEMENT ............................................................................ 1

FACTUAL BACKGROUND ................................................................................ 2

ARGUMENT ......................................................................................................... 7

I.   THE COMPLAINT SHOULD BE DISMISSED FOR LACK OF SUBJECT
     MATTER JURISDICTION PURSUANT TO RULE 12(b)(1) ........................ 7

     A.   There Is Incomplete Diversity ........................................................... 8

     B.   There Is No Original Jurisdiction Over the State Law Claims ................ 9

II.  PLAINTIFFS' RICO CLAIMS SHOULD BE DISMISSED FOR
     FAILURE TO STATE A CLAIM UNDER RULE 12(b)(6) .......................... 10

     A.   Legal Standard ................................................................................ 11

     B.   Plaintiffs Cannot Demonstrate Standing Because It Fails To
          Plead Damages That Are Clear And Definite ..................................... 12

     C.   Plaintiffs Fail To Sufficiently Allege That The 777 Entity
          Defendants Undertook Any Predicate Acts Pursuant to § 1962(c) ......... 13

          i.    Plaintiffs Fail To Plead Commission of Predicate Acts Under
                Rules 12(b)(6) and 9(b) ........................................................... 14

          ii.   Plaintiffs' Impermissible Group Pleading In Order To Manufacture
                Fraudulent Intent Attributable to 777 Entity Defendants Fails As A
                Matter of Law ........................................................................ 19

          iii.  Plaintiffs Also Fail To Satisfy Rule 9(b) By Weaponizing
                Allegations Under Information And Belief ................................. 22

          iv.   Plaintiffs Also Fail To Allege An Open-Ended Pattern Of
                RICO Activity ....................................................................... 23

     D.   Plaintiffs Cannot Demonstrate Proximate Causation ......................... 24

     E.   Plaintiffs Cannot Demonstrate An Enterprise ................................... 25

i

F.    Plaintiffs' RICO Conspiracy Claim Also Fails........................................................... 27

III.  PLAINTIFFS' REMAINING CLAIMS SHOULD BE DISMISSED
      FOR FAILURE TO STATE A CLAIM UNDER RULE
      12(b)(6) AND LACK OF SUBJECT MATTER JURISDICTION
      UNDER RULE 12(b)(1) ................................................................................................ 28

CONCLUSION ........................................................................................................................ 30

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*4 K & D Corp. v. Concierge Auctions, LLC*,
    2 F. Supp. 3d 525 (S.D.N.Y. 2014) ...............................................................14, 22

*Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*,
    404 F.3d 566 (2d Cir. 2005)...........................................................................29

*Allen v. Credit Suisse Sec. (USA) LLC*,
    895 F.3d 214 (2d Cir. 2018)...........................................................................11

*Angermeir v. Cohen*,
    14 F. Supp. 3d 134 (S.D.N.Y. 2014).........................................................14, 17

*Atuahene v. City of Hartford*,
    10 Fed. App'x 33 (2d Cir. 2001).....................................................................20

*Beck v. Manhattan College*
    537 F. Supp. 3d 584 (S.D.N.Y. 2021).............................................................29

*Blue Cross and Blue Shield of New Jersey v. Philip Morris, Inc.*,
    113 F. Supp. 2d 345 (E.D.N.Y. 2000) .............................................................25

*Broccoli v. Ashworth*,
    21 Civ. 6931, 2023 WL 2664770 (S.D.N.Y. Mar. 28, 2023) ........................ *passim*

*Carden v. Arkoma Assocs.*,
    494 U.S. 185 (1990).........................................................................................8

*Carnegie-Mellon Univ. v. Cohill*,
    484 U.S. 343 (1988).......................................................................................10

*Cohen v. S.A.C. Trading Corp.*,
    711 F.3d 353 (2d Cir. 2013)...........................................................................14

*Crabhouse of Douglaston Inc. v. Newsday Inc.*,
    801 F. Supp. 2d 64 (E.D.N.Y. 2011) ...............................................................26

*Democratic Nat'l Comm.*,
    392 F. Supp. 3d 410, 445 (S.D.N.Y. 2019)......................................................23

*Denney v. Deutsche Bank AG*,
    443 F.3d 253 (2d Cir. 2006)..............................................................9-10, 12-13

*Discon, Inc. v. NYNEX Corp.*,
93 F.3d 1055 (2d Cir. 1996), *vacated on antitrust grounds,* 525 U.S. 128
(1998) ............................................................................................................25

*DiVittorio v. Equidyne Extractive Indus., Inc.*,
822 F.2d 1242 (2d Cir.1987)........................................................................22

*Emergency Physician Servs. of N.Y. v. UnitedHealth Grp., Inc.*,
2021 WL 4437166 (S.D.N.Y. Sept. 28, 2021).............................................24

*Exxon Mobil Corp. v. Allapattah Servs., Inc.*,
545 U.S. 213 (2005)........................................................................................8

*First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.*,
385 F.3d 159 (2d Cir. 2004)..............................................................12, 16, 28

*First Interregional Advisors Corp. v. Wolff*,
956 F. Supp. 480 (S.D.N.Y. 1997)...............................................................22

*First Nationwide Bank v. Gelt Funding Corp.*,
27 F.3d 763 (2d Cir. 1994)......................................................................12, 24

*Goldfine v. Sichenzia*,
118 F. Supp. 2d 392 (S.D.N.Y. 2000).............................................. 11-12, 19

*Gross v. Waywell*,
628 F. Supp. 2d 475 (S.D.N.Y. 2009)...........................................................10

*Gutman v. Equidyne Extractive Indus. 1980 Petro/ Coal Program I*,
86 Civ. 9173 (KTD), 1990 WL 113193 (S.D.N.Y. July 27, 1990) .......................................14

*H.J. Inc. v. Nw. Bell Tel. Co.*,
492 U.S. 229 (1989)......................................................................................23

*Handelsman v. Bedford Village Associates Ltd. Partnership*,
213 F.3d 48 (2d Cir. 2000)..............................................................................9

*Harbinger Cap. Partners Master Fund I, Ltd. v. Wachovia Cap. Markets, LLC*,
347 F.App'x 711 (2d Cir. 2009) ...................................................................11

*Herrick Co. v. SCS Commc'n, Inc.*,
251 F.3d 315 (2d Cir. 2001)............................................................................8

*Historical Truth Productions, Inc. v. Sony Pictures Entertainment, Inc.*,
1995 WL 693189 (S.D.N.Y. 1995)...............................................................10

*Holmes v. Sec. Inv. Prot. Corp.*,
503 U.S. 258 (1992)......................................................................................24

*Hughes v. Ester C Co.*,
  330 F. Supp. 3d 862 (E.D.N.Y. 2018) ..................................................................29

*Jordan v. Tilzer*,
  21-1938, 2022 WL 16544335 (2d. Cir. Oct. 31, 2022) ..........................................27

*Kalimantano GmbH v. Motion in Time, Inc.*,
  939 F. Supp.2d 392 (S.D.N.Y. 2013)....................................................................11

*Karmilowicz v. Hartford Fin. Servs. Grp.*,
  2011 WL 2936013 (S.D.N.Y. July 14, 2011) *aff'd*, 494 F.App'x 153 (2d Cir.
  2012) .....................................................................................................................29

*Katzman v. Victoria's Secret Catalogue*,
  167 F.R.D. 649 (S.D.N.Y.1996) ...........................................................................26

*Knoll v. Schectman*,
  275 F.App'x 50 (2d Cir. 2008) ..............................................................................28

*Kolari v. N.Y.-Presbyterian Hosp.*,
  455 F.3d 118 (2d Cir. 2006)...................................................................................10

*Manchanda v. Navient Student Loans*,
  2020 WL 5802238 (S.D.N.Y. Sept. 29, 2020)) .....................................................20

*McKevitt v. Mueller*,
  689 F. Supp. 2d 661 (S.D.N.Y. 2010).....................................................................8

*McLaughlin v. Anderson*,
  962 F.2d 187 (2d Cir. 1992)...................................................................................12

*Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.*,
  500 F.3d 171 (2d Cir. 2007).....................................................................................8

*Moss v. Morgan Stanley, Inc.*,
  719 F.2d 5 (2d Cir. 1983).......................................................................................10

*Motorola Credit Corp. v. Uzan*,
  322 F.3d 130 (2nd Cir. 2003).................................................................................27

*Nasik Breeding & Rsch. Farm Ltd. v. Merck & Co.*,
  165 F. Supp. 2d 514 (S.D.N.Y. 2001)..............................................................11, 28

*Nebraska Security Bank v. Dain Bosworth Inc.*,
  838 F. Supp. 1362 (D.Neb. 1993)..........................................................................26

*Nomura Home Equity Loan, Inc.*,
  30 N.Y.3d 572, 581 (2017) ....................................................................................30

*Paul Hobbs Imports Inc. v. Verity Wines, LLC*,
    21 Civ. 10597 (JPC), 2023 WL 374120 (S.D.N.Y. Jan. 24, 2023).......................................26-27

*Piccirilli v. Yonaty*,
    204 A.D.3d 1322 (3d Dept. 2022) ...............................................................................30

*R.C.M. Exec. Gallery Corp. v. Rols Cap. Co.*,
    1997 WL 27059 (S.D.N.Y. Jan. 23, 1997) ....................................................................28

*Rio Tinto PLC v. Vale S.A.*,
    14 Civ. 3042, 2015 WL 7769534 (S.D.N.Y. Nov. 20, 2015) ..........................................23

*Schmidt v. Fleet Bank*,
    16 F. Supp. 2d 340 (S.D.N.Y. 1998)............................................................................19

*Sedima, S.P.R.L v. Imrex Co., Inc.*,
    473 U.S. 479 (1985)..................................................................................................10

*Singh v. Deloitte LLP*,
    650 F. Supp. 3d 259 (S.D.N.Y. 2023)............................................................................8

*Spool v. World Child Intern. Adoption Agency*,
    520 F.3d 178 (2d Cir. 2008)......................................................................................14

*United States v. Strock*,
    982 F.3d 51 (2d Cir. 2020)........................................................................................20

*United States Fire Ins. Co. v. United Limousine Serv., Inc.*,
    303 F. Supp. 2d 432 (S.D.N.Y. 2004)..........................................................................19

*Universal Reinsurance Co. v. St. Paul Fire & Marine Ins. Co.*,
    312 F.3d 82 (2d Cir. 2002)..........................................................................................9

*VAM Check Cashing Corp. v. Federal Ins. Co.*,
    699 F.3d 727 (2d Cir. 2012)......................................................................................30

*Wade Park Land Holdings, LLC v. Kalikow*,
    589 F. Supp. 3d 335 (S.D.N.Y. 2022)..........................................................................28

*Weaver v. James*,
    CV 10-6609, 2011 WL 4472062 (E.D.N.Y. Sep. 27, 2011)..............................................10

*Wight v. Bankamerica Corp.*,
    219 F.3d 79 (2d Cir. 2000)........................................................................................22

*Wild Edibles Inc. v. Indus. Workers of World Loc. 460/640*,
    No. 07 Civ. 9558 (LLS), 2008 WL 4548392 (S.D.N.Y. Oct. 9, 2008)................................26

*Williams v. Affinion Group, LLC,*
    889 F.3d 116 (2d Cir. 2018) ........................................................................10

*Zamora v. FIT Int'l Grp. Corp.,*
    834 F. App'x 622 (2d Cir. 2020) ..................................................................13

**STATUTES**

18 U.S.C. § 1961(1) ..........................................................................................10

18 U.S.C. § 1961(3) ..........................................................................................21

18 U.S.C. § 1962(c) ...................................................................................*passim*

18 U.S.C. § 1962(d) ......................................................................................27-28

28 U.S.C. § 1332(a)(2) .....................................................................................8, 9

28 U.S.C. § 1367 ...........................................................................................9-10

United States Code Title 18 ..............................................................................10

**RULES**

**Fed. R. Civ. Proc.**

Rule 8 ...............................................................................................................20

Rule 9(b) ...................................................................................................*passim*

Rule 12(b)1 ....................................................................................................7, 28

Rule 12(b)(6) ............................................................................................*passim*

Defendants 777 Partners LLC ("777 Partners"), 600 Partners LLC (together, "HoldCos"), SPLCSS III LLC, Dorchester Receivables II LLC, Insurers Agency Services LLC, Signal SML 4 LLC (together, "Borrowers"), SuttonPark Capital LLC, Signal Medical Receivables LLC, Insurety Capital LLC (together, "Sellers"), SuttonPark Servicing LLC, Signal Servicing LLC, and Insurety Servicing LLC (together, "Servicers" and collectively with the HoldCos, Borrowers, and Sellers, the "777 Entity Defendants") respectfully submit this memorandum of law in support of their motion to dismiss the complaint (the "Complaint") of Plaintiffs Leadenhall Capital Partners LLP, Leadenhall Life Insurance and Linked Investments Fund PLC (collectively, "Leadenhall" or "Plaintiffs").

## PRELIMINARY STATEMENT

Plaintiffs' causes of action against the 777 Entity Defendants, a poorly concealed effort to shoehorn state law claims into federal court, should be dismissed. Complete diversity is absent, as both plaintiffs and the 777 Entity Defendants have citizenships attributable to same foreign states – Bermuda and the United Kingdom. Absent complete diversity, this Court is deprived of diversity jurisdiction and the only claims to which the Court does have subject matter jurisdiction are Plaintiffs' RICO claims. However, Plaintiffs fail to adequately plead either a conspiracy to violate RICO or a substantive RICO violation. Nonetheless, Plaintiffs' state law claims are independently dismissible because they either do not exist under New York law, they are impermissibly duplicative, or Plaintiffs' allegations are too vague to be cognizable for the same reasons they fail under RICO, or they ignore the laws of contract construction.

Apparently dissatisfied with the prospect of recovery limited to potential contractual remedies for alleged breaches of the underlying agreements, as contemplated and addressed by the parties prior to execution of same, Plaintiffs endeavor to argue a sprawling fraudulent scheme allegedly perpetrated by the 777 Entity Defendants without a basis in law or facts. Worse yet,

Plaintiffs did not, and could not, fully commit to disguising their otherwise routine breach of contract claims as claims sounding in fraud. At most, Plaintiffs' allegations are inconsistent, inaccurate, incomplete and ultimately insufficient under Rule 9(b) because they, among other things, do not allege: (i) standing, because Plaintiffs fail to plead damages that are clear and definite; (ii) that the 777 Entity Defendants engaged in any predicate acts, including the requirement that they acted with fraudulent intent or knowledge of the false statements; (iii) that the 777 Entity Defendants engaged in racketeering activity distinct from the "enterprise."

For all of the Complaint's inconsistencies that are ultimately fatal to its ability to survive the instant motion, Plaintiffs are at the very least consistent in their strategy of group pleading the identities of the 777 Entity Defendants themselves and the racketeering activity to which they are alleged to have engaged. The 777 Entity Defendants cannot, as alleged, be at the mercy and control of Josh Wander such that they are characterized as mere alter-egos without regard to corporate and legal formalities *while at the same time* be capable of independently committing intentional acts sounding in mail and wire fraud. Plaintiffs cannot have it both ways. Likewise, the 777 Entity Defendants cannot be RICO defendants distinct from the enterprise where Plaintiffs have not alleged that the enterprise exists separately from the defendants' alleged racketeering activity beyond rhetorical and conclusory statements on mere "information and belief."

## FACTUAL BACKGROUND

Plaintiffs allege nine causes of action. First, for Breach of the Loan and Security Agreement ("LSA") against two of the Borrowers, SPLCSS III LLC and Dorchester Receivables II LLC. *Id.* ¶¶ 212-218. Second, for breach of the Servicing Agreement against the Servicers. *Id.* ¶¶ 219-229. Third, for breach of Guaranty Agreement against the HoldCos. *Id.* ¶¶ 230-236. Fourth, for fraudulent misrepresentation against Wander, SuttonPark Servicing LLC, SPLCSS III, and

Dorchester Receivables II LLC. *Id.* ¶¶ 237-246. Fifth, for civil conspiracy against all defendants. *Id.* ¶¶ 247-254. Sixth, for aiding and abetting fraud against HoldCos, SuttonPark Capital LLC, Pasko, Advantage Capital Holdings LLC ("A-CAP"), and King. *Id.* ¶¶ 255-260. Seventh, for a civil Racketeer Influenced and Corrupt Organizations Act ("RICO") cause of action against all defendants. *Id.* ¶¶ 261-270. Eighth, for civil RICO conspiracy against all defendants. *Id.* ¶¶ 271-277. Finally, tenth[1], for unjust enrichment against all defendants. *Id.* ¶¶ 278-281. Plaintiffs cling to their seventh and eighth causes of actions to bestow this Court with jurisdiction as the other causes of actions are state law claims. Even still, the eighth cause of action cannot stand without the seventh. Therefore, Plaintiffs' civil RICO claim is the lone cause of action vesting this Court with jurisdiction. Notably, of the 777 Entity Defendants, the Complaint does not specifically allege wrongdoing on the part of Signal SML 4 LLC, Insurety Agency Services LLC, Signal Medical Receivables, Insurety Capital LLC, Signal Servicing LLC, or Insurety Servicing LLC. They are included solely because of their alleged "affiliate" or "alter ego" status with other defendants. *Id.* ¶ 2, 21.

Plaintiffs' Complaint argues a farfetched fraudulent scheme allegedly perpetrated by the 777 Entity Defendants, at the direction of both Wander and Pasko. *Id.* ¶ 13. According to Plaintiffs, Defendants induced Plaintiffs to loan money under the operative credit facility by falsely representing that the assets pledged as collateral pursuant to the underlying agreements were owned free and clear by Signal SML 4 LLC and Dorchester Receivables II LLC. *Id.* ¶ 5. However, Plaintiffs' Complaint is inconsistent and does not properly allege a RICO claim, in part because it does not (and cannot) allege any non-conclusory fraudulent intent or knowledge of the allegedly

---

[1] Plaintiffs designate their last cause of action as its tenth, but the Complaint is missing a "ninth" cause of action.

false statements attributable to specific 777 Entity Defendants. Rather, it presents state law claims sounding in fraud that are also subject to heightened pleading standards (which Plaintiffs have failed to meet), despite Plaintiffs' extraordinary – and insufficient – desire to litigate the action in this Court absent subject matter jurisdiction.

Plaintiffs repeatedly allege the identities of each of the 777 Entity Defendants' members "upon information and belief." *Id.* ¶¶ 24-25; 29-32. With respect to Defendants SPLCSS III LLC, SuttonPark Servicing LLC, SuttonPark Capital LLC, Dorchester Receivables II LLC, Signal SML 4 LLC, Signal Medical Receivables LLC, Signal Servicing LLC, Insurety Agency Services LLC and Insurety Servicing LLC, Plaintiffs make the specific representation that, upon information and belief, none of the members of those defendants is a citizen of the United Kingdom, Bermuda, Ireland or Japan such that the adverse parties are completely diverse from one another. *Id.* ¶¶ 29-32. Notwithstanding, Plaintiffs spend a great deal of the Complaint discussing the role of 777 Re Ltd. ("777 Re") and its alleged importance to the 777 Entity Defendants, but curiously, do not allege any facts about its diversity-destroying corporate citizenship or that it is a member of both HoldCos. 777 Re's citizenship is attributable to each of the 777 Entity Defendants and makes diversity incomplete for each of these entities. *See* ECF No. 120 (the 777 Entity Defendants Rule 7.1 Statement). As such, there is no subject matter jurisdiction based on diversity.[2]

Plaintiffs allege that Borrowers and Servicers were contractually required to intermittently re-affirm that those respective borrowers owned the assets pledged as collateral to Leadenhall (the "Reports"). *Id.* ¶¶ 56-57. Plaintiffs nevertheless repeatedly mischaracterize these allegations as factual support for the commission of the predicate acts of mail and wire fraud by all of the 777

---

[2] *See* O'Reilly Dec. ¶¶ 3-4, Exs. 1-3 (agreements memorializing 777 Re's membership interests in 777 Partners and 600 Partners) and *see* May 24, 2024, Declaration of John G. McCarthy (ECF No. 86-1), Ex. 1 (ECF No. 86-2) (777 Re's entity registration with Bermuda's Registrar of Companies).

Entity Defendants. *Id.* ¶¶ 70-71; 85; 90-92, 136-137; 222-223; 226; 238-240-241; 243-244; 249-2511 264-265. Plaintiffs then allege that, in September 2022, a mysterious and anonymous source tipped off Leadenhall that assets were not owned free and clear by "Wander", rendering 40 instances of servicer Reports false. *Id.* ¶ 7, 136. Following this tip, Leadenhall exercised its right under the contracts to audit various defendants. *Id.* ¶ 8. Wander allegedly admitted it was an embarrassing mistake and that he would work to correct it. *Id.* ¶¶ 11, 112. Still, Plaintiffs allege that they accelerated the debt. *Id.* ¶ 172. At best, Plaintiffs allege breach of contract. Plaintiffs' allegations fail to stitch together state law claims sounding in fraud, let alone a RICO claim.

In support of its deficient and implausible RICO claim, Plaintiffs allege that Wander, SPLCSS III LLC, and SuttonPark Servicing LLC "encouraged and enabled" fraud. *Id.* ¶ 264. Plaintiffs also allege that the same defendants committed mail and wire fraud through transmission of the Reports. *Id.* Then, Plaintiffs allege Pasko, SuttonPark Capital LLC, 777 Partners LLC, and 600 Partners LLC "encouraged and enabled fraud" by "facilitating and encouraging the SuttonPark and Dorchester Borrowers" to transmit the Reports. *Id.* ¶ 265. Even accepting as true, these allegations do not pass muster as they are conclusory and lack specific detail as to fraudulent intent. Missing from Plaintiffs' RICO cause of action are any cognizable allegations about Signal SML 4 LLC, Insurety Agency Services LLC, Signal Medical Receivables LLC, Insurety Capital LLC, Signal Servicing LLC, and Insurety Servicing LLC. Absent specific allegations as to those defendants, Plaintiffs resort to group pleading by lumping together the defendants under the guise that they are alter egos, or with no details, that they "encouraged" and "facilitated" fraud. As such, Plaintiffs have not properly alleged a RICO enterprise. Plaintiffs' Complaint includes numerous allegations that the 777 Entity Defendants are a non-distinct collection of alter ego entities under Josh Wander's control. *Id.* ¶¶ 2,4, 26 38-39, 42, 45(d)-(f), 48, 108, 116, 126, 137, 142 n.5, 146,

199-200, and 239. Indeed, all of Leadenhall's inquiries and requests for information were through Wander. *Id.* ¶¶ 11, 108, 116. Missing from Plaintiffs' Complaint, however, is the detail required to state a RICO claim. When it suits them best, Plaintiffs later vaguely and rhetorically allege that each of the 777 Entity Defendants exist separately and independently, contradicting their earlier allegations that they are merely alter egos of Wander. *Id.* ¶ 263. Plaintiffs readily concede in the Complaint that the RICO claim against various defendants is merely because they are "affiliated." *Id.* ¶ 21.

Even with respect to the few 777 Entity Defendants against whom Plaintiffs attempt to allege a RICO claim, the allegations presented upon "information and belief" are not sufficient. Indeed, Plaintiffs' allegations made "upon information and belief" are their most salient attempt to jam the puzzle pieces in place. The allegations made "upon information and belief" reveal that Plaintiffs' RICO claim is nothing more than an empty husk. The allegations include:

- Wander and Pasko are operating a "shell game" or "Ponzi scheme." *Id.* ¶ 19;

- Pasko controls and manages the entities acting as Sellers, Servicers, and Borrowers under the LSA. *Id.* ¶ 28;

- Wander and 777 Partners made "misrepresentations" and had "full knowledge" that employees had worked to "alter data." *Id.* ¶ 100;

- Wander uses the 777 corporate system to freely transfer assets among a web of trade names without regard to corporate or legal formalities. *Id.* ¶ 142, n.5;

- Wander "directed" SPLCSS III LLC and Dorchester Receivables II LLC to "pledge" to Plaintiffs already pledged collateral or collateral that was never purchased. *Id.* ¶ 239;

- SPLCSS III LLC and Dorchester Receivables II LLC "directed" SuttonPark Servicing LLC to prepare and submit reports to Plaintiffs falsely claiming the receivables were owned free and clear. *Id.* ¶ 240; and

- The 777 Entity Defendants continue to borrow from third-party lenders, "in addition to Plaintiffs" against collateral that has been "fraudulently pledged to multiple lenders." *Id.* ¶ 269.

Plaintiffs also allege that an insider, on an unknown date and on an unknown platform, warned that Reports were "photoshopped." *Id.* ¶ 162. This allegation is integral to Plaintiffs RICO and fraud claims because, the allegation, for the first time, assertedly renders a Report fraudulent as opposed to mistaken or a breach of an agreement as it relates to SPLCSS III LLC. *Id.* ¶ 164. However, the allegation lacks the specificity required and does not convert allegations that the Reports were incorrect as transmitted by the servicers into a cause of action against all of the 777 Entity Defendants — nor is it sufficient to deem every Report fraudulent. *Id.* ¶ 136. Plaintiffs' Complaint alleges they discovered that two Reports were incorrect after an "anonymous tip" and following the audits. *Id.* ¶ 98. Wander acknowledged the mistake and promised to correct same. *Id.* ¶ 11. Contrary to Plaintiffs' characterization as a wide-ranging fraudulent scheme, the Complaint actually presents a narrative in which the 777 Entity Defendants were actively working with Plaintiffs during its audits and corrected records when identified as inaccurate, rather than taking pains to conceal the errors. *Id.* ¶¶ 112, 118, 121-123. These allegations do not constitute fraud let alone a RICO claim against all of the 777 Entity Defendants. Plaintiffs' Complaint should be dismissed in its entirety.

## ARGUMENT

## I.    THE COMPLAINT SHOULD BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION PURSUANT TO RULE 12(b)(1)

When confronted with motions to dismiss for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted, a court will first analyze the Rule 12(b)(1) motion to determine whether the court has the subject matter jurisdiction necessary to consider the merits of the action. *See Singh v. Deloitte LLP*, 650 F. Supp. 3d 259, 264 (S.D.N.Y. 2023). *See also McKevitt v. Mueller*, 689 F. Supp. 2d 661, 664 (S.D.N.Y. 2010). Moreover, in defending a

motion to dismiss for lack of subject matter jurisdiction, the plaintiff bears the burden of proving that the court in question has jurisdiction by a preponderance of the evidence. *Id.* at 664-665. Where jurisdictional facts are disputed, a court has the power to consider matters external to the pleadings in order to determine whether jurisdiction indeed exists, such as affidavits, documents and testimony. *Id.* at 665.

### A.    There Is Incomplete Diversity

The diversity statute provides for federal court jurisdiction over claims between citizens of a state and citizens of a foreign state, provided such diversity is complete between adverse parties. 28 U.S.C. § 1332(a)(2); *see also Herrick Co. v. SCS Commc'n, Inc.*, 251 F.3d 315, 322 (2d Cir. 2001). Here, both Plaintiffs are subjects of a foreign state and at least one member of both HoldCos is also a subject of the same foreign state. *See* O'Reilly Dec. ¶¶ 3-4, Ex. 1 and *see* May 24, 2024, Declaration of John G. McCarthy (ECF No. 86-1), Ex. 1 (ECF No. 86-2) (777 Re's entity registration with Bermuda's Registrar of Companies). Because each 777 Entity Defendant is an LLC, and an LLC's citizenship is the same as the citizenship of its members, each 777 Entity Defendants' citizenship is attributable to Bermuda and/or the United Kingdom. *See* ECF No. 120 (777 Entity Defendants Rule 7.1 Statement). The result is incomplete diversity, depriving the Court of diversity subject matter jurisdiction. *See Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.*, 500 F.3d 171, 179 (2d Cir. 2007) (discussing *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 213, 553 (2005)).

As applied, Plaintiffs allege in the Complaint that plaintiff Leadenhall Capital is organized as a limited liability partnership under the laws of England whose partners include a domiciliary of the United Kingdom, Bermuda and Japan. *See* Complaint ¶ 22. Like limited liability companies, the citizenship of a limited liability partnership is attributed to that of its partners or members. *See*

*Handelsman v. Bedford Village Associates Ltd. Partnership*, 213 F.3d 48, 52 (2d Cir. 2000) (*citing Carden v. Arkoma Assocs.*, 494 U.S. 185, 195-196 (1990)). Likewise, with respect to the HoldCos' citizenship, complete diversity does not exist because one if the members is a Bermuda based corporation – 777 Re Ltd. ("777 Re"), which is treated as a citizen or subject of the United Kingdom. *See Universal Reinsurance Co. v. St. Paul Fire & Marine Ins. Co.*, 312 F.3d 82, 86 (2d Cir. 2002) ("Universal [Ltd., a Bermuda-based corporation] must be considered a citizen or subject of the United Kingdom for purposes of federal jurisdiction under Section 1332(a)(2).") With Leadenhall's citizenship based in the United Kingdom and Bermuda, there is no diversity. *See* Complaint ¶ 22 and O'Reilly Dec. ¶¶ 3-4, Ex. 1.

On September 20, 2021, 777 Re purchased 15,000 Preferred Units of HoldCos for $15,000,000 by Subscription Agreement. *Id.* On September 20, 2021, HoldCos accepted the subscription by 777 Re to 15,000 Preferred Units. *Id.* The membership interests were memorialized in amendments to the HoldCos' respective operating agreements. *Id.* at Exs. 2-3. As a result of the transactions consummated under the Subscription Agreement, the adverse parties in this matter are not completely diverse from each other. *See* O'Reilly Dec. ¶¶ 3-4, Ex. 1.

**B.    There Is No Original Jurisdiction Over The State Law Claims**

As demonstrated further below, Plaintiffs' RICO claims are insufficient and should be dismissed at this early stage of the litigation. Under 28 U.S.C. § 1367, a court may decline to exercise supplemental jurisdiction over state law claims regardless of whether it has sustained or dismissed a purported claim to which it has subject matter jurisdiction. *See* 28 U.S.C. § 1367. *Denney v. Deutsche Bank AG*, 443 F.3d 253, 266 (2d Cir. 2006) ("A district court usually should decline the exercise of supplemental jurisdiction when all federal claims have been dismissed at the pleading stage.") Accordingly, this Court should exercise its discretion and decline to exercise

supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367 because of the early posture of this action. This is particularly the case where a court has dismissed the sole claim that provided subject matter jurisdiction. *See Weaver v. James*, CV 10-6609, 2011 WL 4472062, at *5 (E.D.N.Y. Sep. 27, 2011). *See also Gross v. Waywell,* 628 F. Supp. 2d 475, 497 (S.D.N.Y. 2009); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988); *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006); *Historical Truth Productions, Inc. v. Sony Pictures Entertainment, Inc.*, 1995 WL 693189 (S.D.N.Y. 1995) (Mukasey J.) (supplemental jurisdiction declined where federal claim was dismissed at a relatively early stage in the litigation).

## II.    PLAINTIFFS' RICO CLAIMS SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM UNDER RULE 12(b)(6)

Plaintiffs' RICO claims are a transparent attempt to shoehorn routine (and deeply flawed) common law claims into an inapposite federal statutory regime enacted to address criminal syndicates. To plead a viable RICO claim, the "plaintiff must show: '(1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce." *Williams v. Affinion Group, LLC*, 889 F.3d 116, 123-24 (2d Cir. 2018) (quoting *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir. 1983)). "Racketeering activity" includes "any act which is indictable" under specified provisions of Title 18 of the United States Code, including mail and wire fraud. 18 U.S.C. § 1961(1). *Sedima, S.P.R.L v. Imrex Co., Inc.*, 473 U.S. 479 (1985). Additionally, a plaintiff can only recover under RICO when his or her actual loss becomes clear and definite. *Denney*, 443 F.3d at 266.

Courts approach RICO claims with skepticism and have cautioned that "courts should strive to flush out frivolous RICO allegations at an early stage of the litigation. *Kalimantano GmbH v.*

*Motion in Time, Inc.*, 939 F. Supp.2d 392, 407 (S.D.N.Y. 2013); *see Nasik Breeding & Rsch. Farm Ltd. v. Merck & Co.*, 165 F. Supp. 2d 514, 537 (S.D.N.Y. 2001) ("[C]ourts must always be on the lookout for the putative RICO case that is really nothing more than an ordinary fraud case clothed in the Emperor's trendy garb." (citation omitted)). In similar situations, courts have required the contract claims to be adjudicated as a predicate to ripeness and standing to determine whether there was an injury under RICO. *Harbinger Cap. Partners Master Fund I, Ltd. v. Wachovia Cap. Markets, LLC*, 347 F.App'x 711, 713 (2d Cir. 2009); *see Goldfine v. Sichenzia*, 118 F. Supp. 2d 392, 398 (S.D.N.Y. 2000). Plaintiffs' RICO claims against the 777 Entity Defendants precisely warrant such early scrutiny and must be dismissed because Plaintiffs have failed to adequately and plausibly allege, amongst other things, that the 777 Entity Defendants engaged in any predicate acts, that are ongoing, that the alleged violation(s) were proximate causes of any cognizable injury to Plaintiffs under RICO, or that the 777 Entity Defendants constitute a distinct enterprise. Plaintiffs' deficient RICO claims are transparently alleged solely in an effort to improperly bring this action into federal court. Accordingly, they should be dismissed.

### A.    Legal Standard

Under Rule 12(b)(6), a district court is required to "accept[] the alleged facts as true and draw[] all reasonable inferences in plaintiffs' favor" but that "bald assertions and conclusions of law will not suffice" and "nor will factual allegations that are wholly conclusory" *Allen v. Credit Suisse Sec. (USA) LLC*, 895 F.3d 214, 222 (2d Cir. 2018). Next, Rule 9(b) provides a heightened pleading standard that applies, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Rule 9(b) applies to mail and wire fraud and requires a plaintiff not only to "alleg[e] the particular details of [the] fraud,"

but also to "allege facts that give rise to a strong inference of fraudulent intent." *First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 178-79 (2d Cir. 2004) (citations omitted). "Allegations of mail [or wire] fraud must be made with the particularity required by Federal Rule of Civil Procedure 9(b)." *McLaughlin v. Anderson*, 962 F.2d 187, 191 (2d Cir. 1992). Plaintiffs' Complaint fails to satisfy either standard.

## B. Plaintiffs Cannot Demonstrate Standing Because It Fails To Plead Damages That Are Clear And Definite

A plaintiff can recover under RICO only when his or her actual loss becomes clear and definite. *Denney v. Deutsche Bank AG*, 443 F.3d 253, 266 (2d Cir. 2006); *First Nationwide Bank v. Gelt Funding Corp.,* 27 F.3d 763, 767–69 (2d Cir. 1994) (a RICO defendant is only liable for losses "actually suffered, only after the lender has exhausted the bargained-for remedies available to it ... , and then only to the extent of the deficiency."); *Motorola Credit Corp. v. Uzan,* 322 F.3d 130, 135 (2nd Cir. 2003) ("[A] cause of action does not accrue under RICO until the amount of damages becomes clear and definite."). Thus, "creditor Plaintiffs" like Leadenhall "must pursue" their state law claims, including those based on "their admitted contractual rights," before they can "allege 'clear and definite' damages" under RICO. *Goldfine,* 118 F. Supp. 2d at 398–99 ("holding that adjudication "of the State law claims" was "a necessary predicate to ripeness and standing" under RICO").

The Second Circuit's decision in *First Nationwide Bank* is similar to the instant action. That action involved a RICO claim premised on allegations that defendants misrepresented the value of pledged collateral to obtain loans. 27 F.3d at 765. The plaintiff argued its RICO claim was ripe even though it had not foreclosed on those loans because, it contended, "it suffered immediate quantifiable injury when the loans were made because the loans were undersecured." *Id.* at 768. The Second Circuit rejected the plaintiff's argument and dismissed the claim. *Id.* at 768.

Indeed, in a borrower/lender relationship, such as here, a secured lender must foreclose on the assets before having standing to sue under RICO. *See Denney*, 443 F.3d at 266. Plaintiffs spend a lot of time alleging that millions were double pledged without any specificity, but all it amounts to is "an amount to be determined at trial …" *See* Complaint ¶ 270. Plaintiffs do not allege they foreclosed on the assets or that they suspended their servicing relationship with SuttonPark Servicing LLC, Signal Servicing LLC, or Insurety Servicing LLC, the servicing entities included in the 777 Entity Defendants. Likewise, Plaintiffs only alleged damages are contract damages and Plaintiffs do not allege they will not be paid. Plaintiffs' allegations, here again, do not pass muster as they are not clear and definite as required in the Second Circuit. Therefore, Plaintiffs' RICO claims must be dismissed.

### C.    Plaintiffs Fail To Sufficiently Allege That The 777 Entity Defendants Undertook Any Predicate Acts Pursuant to § 1962(c)

Plaintiffs' RICO claims fail because they have not adequately pled the commission of predicate acts by the 777 Entity Defendants. Not only do the allegations sounding in wire and mail fraud fail the strict pleading requirements of Rule 9(b), but also the allegations constitute impermissible group pleading that fail to distinguish each individual defendant's conduct necessary to sustain a civil RICO claim. Rule 9(b) requires that allegations of fraud "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Zamora v. FIT Int'l Grp. Corp.*, 834 F. App'x 622, 626 (2d Cir. 2020) (upholding dismissal of RICO and fraud claims because plaintiff failed to meet relative pleading standards); *Broccoli v. Ashworth*, 21 Civ. 6931, 2023 WL 2664770, at *15 (S.D.N.Y. Mar. 28, 2023) (dismissing RICO claims against defendants for failure to plead the predicate acts of mail or wire fraud pursuant to 1962(c)); *Gutman v. Equidyne Extractive Indus. 1980 Petro/ Coal Program I*, 86 Civ. 9173

13

(KTD), 1990 WL 113193, at *7 (S.D.N.Y. July 27, 1990) ("[A]ll of the concerns that dictate that fraud be pleaded with particularity exist with even greater urgency in civil RICO actions.").

### i.    Plaintiffs Fail To Plead Commission of Predicate Acts Under Rules 12(b)(6) and 9(b)

It is well-established that a plaintiff may plead predicate acts under Section 1962(c) in two different ways. On one hand, a plaintiff may allege specific false statements made by a particular RICO defendant, which will be analyzed under the Rule 9(b) pleading standard. *See Broccoli*, 2023 WL 2664770, at *15 (quotations omitted) (*citing Spool v. World Child Intern. Adoption Agency*, 520 F.3d 178, 185 (2d Cir. 2008)). "To satisfy this requirement, a complaint must specify the time, place, speaker, and content of the alleged misrepresentations, explain how the misrepresentations were fraudulent and plead those events which give rise to a strong inference that the defendant had an intent to defraud, knowledge of the falsity, or a reckless disregard for the truth." *Broccoli*, 2023 WL 2664770, at *14 (citing *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013)). Alternatively, in lieu of pleading specific false statements made by a RICO defendant, a plaintiff may allege that the RICO defendant committed mail and wire fraud through its actions in furtherance of a master plan to defraud. *Id.* at *16 (citing *Angermeir v. Cohen*, 14 F. Supp. 3d 134, 145 (S.D.N.Y. 2014)). When this standard is applied, plaintiff must "delineate with adequate particularity in the body of the complaint, the specific circumstances constituting the overall fraudulent scheme." *Cohen*, 711 F.3d at 145-46. To state a RICO claim against each of the 777 Entity Defendants, Leadenhall "must allege, at a minimum," for each and every defendant, how it violated RICO through its own conduct. *4 K & D Corp. v. Concierge Auctions, LLC*, 2 F. Supp. 3d 525, 537 (S.D.N.Y. 2014).

Ultimately fatal to their claims, Plaintiffs try to have it both ways – a strategy explicitly rejected by the *Broccoli* court resulting in the dismissal of a RICO claim against a RICO

defendant predicated on mail and wire fraud. *See Broccoli*, 2023 WL 2664770, at *15-16. Plaintiffs seek to allege, albeit in a conclusory way, a master plan to defraud Plaintiffs in which Wander exercises dominion and control over the 777 Entity Defendants and directs and controls their actions, (*see* Complaint ¶¶ 1-2, 26-28, 35-39, 42, 45(d)-(f), 48, 58, 68, 106, 108, 116, 126, 137, 142 n.5, 146, 199, 239), in lieu of alleging specific false statements as required under Rule 9(b). Plaintiffs then inconsistently allege, for example, that "Wander, the SuttonPark Borrower, Dorchester Borrower, and SuttonPark Servicer committed mail and wire fraud [ ] by misrepresenting the value of their Collateral including in multiple reports sent to Plaintiffs through interstate wires." *Id.* ¶ 264. If Plaintiffs are committed to pleading that each of the 777 Entity Defendants made false statements as they attempt to do in paragraphs 264 and 265, then they must be specific as to the contours of the false statements and may not rely on their other allegations that the 777 Entity Defendants were at the mercy of Wander and that he directed and controlled their actions. As in *Broccoli*, this is irreconcilable for purposes of pleading predicate acts under RICO and necessitates dismissal of these claims because Plaintiffs have not sufficiently pled any predicate acts undertaken by the 777 Entity Defendants and do not satisfy the required heightened pleading standards to sustain a RICO claim.

Plaintiffs allege that Wander, SPLCSS III LLC, Dorchester Receivables II LLC, and SuttonPark Servicing delivered the reports to Leadenhall containing a list of the Borrowers' assets and an accurate calculation of the Borrowing Base. *See* Complaint ¶¶ 70-71; 85; 91-92; 264. Plaintiffs also allege that these particular defendants made a representation about the status of the Collateral each month upon the Reports' transmission to Leadenhall based on the terms of the underlying agreements. *Id.* ¶¶ 79-80; 90-99; 264. These are the only defendants encompassing Plaintiffs' alleged predicate acts. *Id.* at 264. At most, these allegations are meant to suggest, but

fall short of explicitly alleging as required by Rule 9(b), that these defendants were aware that the reports being tendered to Plaintiffs (the putative mail and wire fraud) allegedly contained misrepresentations and constituted false statements made with fraudulent intent or knowledge of the falsity as required. *First Cap. Asset Mgmt.,* 385 F.3d at 178-79 (2d Cir. 2004). Given Plaintiffs inability to concretely articulate how these defendants committed mail and wire fraud without any allegations of fraudulent intent[3] attributable to them, Plaintiffs instead rely upon murky allegations in proximity to generalized allegations of misconduct in the form of unspecific instances of "encouragement" and "enabling" the enterprise. *Id.* ¶ 264. Ultimately, Plaintiffs' inability to directly plead the 777 Entity Defendants' participation in the allegedly fraudulent enterprise reveals that the 777 Entity Defendants are not the active participants Plaintiffs want this Court to believe they are. For example, when describing what constitutes a "Facility Event of Default" under the LSA, Plaintiffs invoke the language of the LSA, which does not assign any fraudulent intent or culpability to the Borrowers. "[A] Facility Event of Default occurs whenever the security interest in the Collateral "shall for any reason cease to be a valid and perfected first priority security interest." *Id.* ¶ 83 (emphasis omitted). Absent detailed allegations that Wander, SPLCSS III LLC, Dorchester Receivables II LLC, and SuttonPark Servicing intentionally affected Plaintiffs' security interest in the Collateral by way of their allegedly nefarious conduct, it appears that ***any*** action (or omission) that resulted in the dilution of the Plaintiffs' security interest constitutes a Facility Default. In other words, the conduct does not have to be actionable or even traceable to the borrower for the borrower to be in default. This throws a wrench in

---

[3] Merely stating that certain of the RICO defendants "made these fraudulent statements" and "knew them to be false" with "an intent to defraud" and "conceal[ed]" the issues with the collateral, without more, does not satisfy the heightened pleading requirement as they are just conclusory allegations. *See* Complaint at ¶¶ 244-245. It is worth noting that these bare allegations were made in support of the cause of action for fraudulent misrepresentation – not the RICO claims.

Plaintiffs' plan to escalate alleged breaches of contract (i.e. being in default) in order to manufacture a substantive RICO claim. *Id.* ¶ 88 ("…[I]f at any time there was insufficient Collateral available free and clear to secure all outstanding obligations, the Borrowers would be in default….").

Plaintiffs cannot have it both ways – either they must commit to alleging the specific false statements transmitted by each of the RICO Defendants to Plaintiffs with the requisite fraudulent intent **or** they have to "delineate with adequate particularity in the body of the complaint, the specific circumstances constituting the overall fraudulent scheme." *Angermeir*, 14 F. Supp. 3d at 145-146. The Complaint accomplishes neither because it ultimately relies on vague and conclusory accusations that Wander and Pasko controlled the 777 Entity Defendants (*see* Complaint ¶¶ 1-2, 26-28, 35-39, 42, 45(d)-(f), 48, 58, 68, 106, 108, 116, 126, 137, 142 n.5, 146, 199, 239) and that Wander and Pasko's own insufficiently alleged fraudulent intent should be imputed to the 777 Entity Defendants. Plaintiffs allege that some of the 777 Entity Defendants, Pasko, SuttonPark Capital, 777 Partners, and 600 Partners, "encouraged and enabled fraud by facilitating and encouraging the SuttonPark and Dorchester Borrowers to fraudulently inflate the amount of their Collateral to Plaintiffs and misrepresent [ ] facts to Plaintiff to conceal their fraud." *See* Complaint ¶ 265. No detail as required by Rule 9(b) is provided in the Complaint demonstrating commission of at least two predicate acts by each of the defendants.

According to the Complaint, the "SuttonPark and Dorchester Servicers continued to deliver Monthly Reports and Compliance Reports to [Plaintiffs] containing a list of Borrowers' assets and a calculation of the Borrowing Base [ ]." Complaint ¶¶ 91-92. First, Plaintiffs do not define "Dorchester Servicer," in fact, the SuttonPark Servicing LLC (SuttonPark Servicer) is the corresponding servicer for the Dorchester Borrower, Dorchester Receivables II LLC. *See id.* ¶

46(b) ("The Dorchester Borrower Group consisted of the Dorchester Borrower as Borrower, SuttonPark Capital as Seller, and SuttonPark Servicer as Servicer"). Second, in yet another instance of Plaintiffs' perpetual contradictions, they allege that "[o]ver the period May 2021 to November 2023, the SuttonPark and Dorchester ***Borrowers*** delivered approximately 60 Compliance Reports to Leadenhall…" *See* Complaint ¶ 136 (emphasis added). However, based on the allegations contained in Plaintiffs' RICO cause of action, it appears Plaintiffs are actually referring to SuttonPark Servicing LLC (SuttonPark Servicer), and Dorchester Receivables II LLC (Dorchester Borrower) and SPLCSS III LLC (SuttonPark Borrower) but the Complaint is not clear and it cannot be ascertained which defendants are alleged to have delivered allegedly false Reports.

Notwithstanding, the Complaint also alleges that over a period of years, Plaintiffs repeatedly audited the 777 Entity Defendants due to a "tip." *Id.* ¶ 94. Contrary to Plaintiffs' description of a wide-ranging fraudulent scheme, the Complaint tells a tale of the 777 Entity Defendants working with Plaintiffs during its audits and immediately correcting records when they were inaccurate, not concealing. *Id.* ¶¶ 112, 118, 121-123. Indeed, the Complaint alleged that Wander admitted the same. *Id.* ¶ 110. Moreover, the Complaint alleges that the "SuttonPark Servicer" began correcting its own records and reporting same without Plaintiffs' assistance. *Id.* ¶¶ 121-123. Most shockingly, the Complaint alleges that an unnamed "insider" who worked at a not-to-be-named subsidiary for 777 Partners "admitted" that "Borrowers photoshopped financial statements submitted to Leadenhall." *Id.* ¶¶ 161-162. Plaintiffs then attempt to compare two uniquely distinct documents to prove their point. *Id.* ¶¶ 163-169. However, Plaintiffs do not allege SuttonPark Borrower has an obligation to submit reports to them. No other 777 Entity Defendants are asserted to have made misrepresentations.

Given the "inevitable stigmatizing effect" of RICO claims on the defendants and the preference to have contract claims be adjudicated as a predicate to ripeness and standing (*Goldfine,* 118 F. Supp. 2d at 398), Leadenhall should not be permitted to move forward based on mere conjecture. *See United States Fire Ins. Co. v. United Limousine Serv., Inc.*, 303 F. Supp. 2d 432, 443 (S.D.N.Y. 2004) (quoting *Schmidt v. Fleet Bank*, 16 F. Supp. 2d 340, 346 (S.D.N.Y. 1998)). Plaintiffs allege all sorts of inactionable allegations, including about contemplated purchases of soccer clubs, news articles (*see* Complaint ¶ 184), and other litigations (*id.* ¶ 210) to stigmatize defendants and distract from their failure to sufficiently plead a RICO claim. Plaintiffs' cause of action alleging fraudulent misrepresentation should also be dismissed for these reasons. Accordingly, Plaintiffs fail to properly allege the necessary predicate acts and their RICO claim fails.

> ii.    **Plaintiffs' Impermissible Group Pleading In Order To Manufacture Fraudulent Intent Attributable to 777 Entity Defendants Fails As A Matter of Law**

Despite representing that Plaintiffs uncovered a "pattern of knowing misrepresentations concerning its collateral" (*id.* at p. 27), nowhere in the Complaint do Plaintiffs allege, as required, that SPLCSS III LLC, Dorchester Receivables II LLC, or SuttonPark Servicing had any fraudulent intent or knowledge that the content of the Reports were allegedly fraudulent. The *Broccoli* court was clear that attributing fraudulent intent to a RICO defendant as part of pleading its commission of a predicate act requires "alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Broccoli,* 2023 WL 2664770, at *16 (citing *United States v. Strock*, 982 F.3d 51, 66 (2d Cir. 2020)). A complaint may not simply "lump[ ] all the defendants together in each claim and provid[e] no factual basis to distinguish their

conduct." *Atuahene v. City of Hartford*, 10 Fed. App'x 33, 34 (2d Cir. 2001) (noting that Rule 8 "requires, at a minimum, that a complaint give each defendant 'fair notice of what the plaintiff's claim is and the ground upon which it rests'"); *Soter Techs., LLC v. IP Video Corp.*, 523 F. Supp. 3d 389, 411 (S.D.N.Y. 2021) ("Where a complaint names multiple defendants, that complaint must provide a plausible factual basis to distinguish the conduct of each of the defendants." (quoting *Manchanda v. Navient Student Loans*, 2020 WL 5802238 at *2 (S.D.N.Y. Sept. 29, 2020))).

The sole allegation that purports to assign fraudulent intent to Borrowers is pled in a conclusory way at best: "[t]he Borrowers made each of these false misrepresentations to induce the Lenders and Leadenhall to continue allowing the Borrowers to take out debt notes under the credit facility." *Id.* ¶ 138. The same is true for the few allegations meant to impart knowledge of falsity onto the Servicers. "The SuttonPark Servicer engaged in this pattern of fraud by preparing and submitting reports to Plaintiffs falsely claiming that each Borrower owned the aforementioned Collateral 'free and clear of any Adverse Claims.' As alleged, by engaging in this pattern of fraudulently inflating the Borrowers' Borrowing Bases, SuttonPark Servicer fraudulently inflated its servicing fees, which Plaintiffs paid but would not have done [ ] had they known the truth." *Id.* ¶ 241. Rather than expand upon the bare allegations, Plaintiffs resort to juxtaposing the terms of the underlying agreements (i.e. the LSA or Servicing Agreements) whereby the Servicers and Borrowers agreed to routinely ratify and certify the truth and accuracy of the contents of the reports transmitted to Plaintiffs (*id.* ¶¶ 56-57; 71; 73), with the allegedly fraudulent conduct of both Wander and Pasko in order to impute fraudulent intent to the 777 Entity Defendants. *Id.* ¶¶ 56-58; 70-71; 79-82; 89-92; 136-138; 226-227; 238-246.

These allegations still fall short of alleging the requisite knowledge of falsity that the

Servicers and Borrowers would need to possess in order for the transmission of the Reports to be considered false statements beyond being "directed" by the other entities and/or Wander by virtue of his dominion and control over the 777 Entity Defendants. *Id.* ¶¶ 239-40. The Plaintiffs simply lumped all the defendants together into its cause of action. *Id.* ¶¶ 77-79 (seventh Claim For Relief … Against All Defendants). Lacking any specific facts to support their allegations that all Borrowers, Sellers, or Servicers were involved in the alleged fraud, Plaintiffs resort to group pleading. In particular, they describe the various alleged wrongful acts as having been committed by the "enterprise" rather than by specifically describing what each defendant allegedly did wrong and what the common objective was. This runs afoul of the well-established principle that "the focus of section 1962(c) is on the individual pattern of racketeering engaged in by a defendant, rather than the collective activities of the members of the enterprise…." *Broccoli,* 2023 WL 2664770 at *13 (citing *DeFalco v. Bernas*, 244 F.3d 286, 306 (2d Cir. 2001)). Indeed, there are no allegations as to how the impaired collateral became part of the loan structure or whether any other external factors account for the borrowing base deficiency, such as a spike in interest rates. The Complaint itself is curiously silent on when Leadenhall made the allegedly defective loans to the respective borrowers and whether there could have been any reliance. Certainly, if there was more than one secured interest, Leadenhall should have immediately known there was an issue given its routine and continuing audits.

Plaintiffs are also required to identify the culpable persons under 18 U.S.C. § 1961(3) and they fail to do so, not just with respect to the 777 Entity Defendants explicitly mentioned by name in paragraphs 264 and 265 of the Complaint, but also the rest of the 777 Entity Defendants — Insurety Agency Services LLC, Signal SML 4 LLC, Signal Medical Receivables LLC, Insurety Capital LLC or Signal Servicing LLC, and Insurety Servicing LLC. While Plaintiffs try to cobble

together an argument sounding in RICO as to the other 777 Entity Defendants, Plaintiffs do not bother alleging any specific conduct on behalf of the Insurety and Signal Defendants on an individual basis, as required. At bottom, the RICO claims should be dismissed as to these Defendants.

### iii.    Plaintiffs Also Fail To Satisfy Rule 9(b) By Weaponizing Allegations Under Information And Belief

Although matters peculiarly within a defendant's knowledge may be pled "on information and belief," this does not mean that those matters may be pled lacking any detail at all and require sufficient support. *DiVittorio v. Equidyne Extractive Indus., Inc.,* 822 F.2d 1242, 1247 (2d Cir.1987) ("[T]he allegations must be accompanied by a statement of the facts upon which the belief is based."). Nor do allegations of motive and opportunity alone suffice. While "the requisite intent of the alleged [perpetrator of the fraud] need not be alleged with great specificity," "the actual ... fraud alleged must be stated with particularity." *Wight v. Bankamerica Corp.,* 219 F.3d 79, 91 (2d Cir. 2000) (internal quotation marks omitted). In *Broccoli*, the court examined the breadth of the allegations against each individual defendant where, like here, plaintiff lumped them together. 2023 WL 2664770 at *12. Most of the defendants were dismissed because of the lack of specific allegations against particular defendants. *Id.; see also, 4 K & D Corp.*, 2 F. Supp. 3d at 540 n.10 (dismissing RICO claim against two defendants where plaintiff only made conclusory allegations against them and failed to identify "any specific act" of those defendants committing or assisting wire fraud); *First Interregional Advisors Corp. v. Wolff*, 956 F. Supp. 480, 485 (S.D.N.Y. 1997) (granting motion to dismiss RICO claim as to certain defendants where the complaint failed to "sufficiently allege mail and wire fraud as to *all* of the named defendants").

Plaintiffs' most consequential RICO allegations are made upon information and belief:

- Wander "directed" SPLCSS III LLC and Dorchester Receivables II LLC to "pledge" to Plaintiffs already pledged collateral. *Id.* ¶ 239;

- SPLCSS III LLC and Dorchester Receivables II LLC "directed" SuttonPark Servicing LLC to prepare and submit reports to Plaintiffs falsely claiming the receivables were owned free and clear. *Id.* ¶ 240; and

- The 777 Entity Defendants continue to borrow from third-party lenders, "in addition to Plaintiffs" against collateral that has been "fraudulently pledged to multiple lenders." *Id.* ¶ 269.

These allegations are insufficient as to related entities without allegations of specific conduct or to imply continuing conduct. Indeed, the Complaint does not specifically allege wrongdoing on the part of Signal SML 4 LLC, Insurety Agency Services LLC, Signal Medical Receivables, Insurety Capital LLC, Signal Servicing LLC, or Insurety Servicing LLC.

### iv.    Plaintiffs Also Fail To Allege An Open-Ended Pattern Of RICO Activity

Even if Plaintiffs plausibly alleged a predicate act—and they have not—their RICO claims would still be deficient because they have not alleged a *pattern* of racketeering activity.  To prove a "pattern," a plaintiff must show that the predicate acts "amount to or pose a threat of continued criminal activity."   *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989).  The continuity requirement refers "either to a closed period of repeated conduct, or to past conduct that by its [open-ended] nature projects into the future with a threat of repetition." *Id.* at 241. Under an open-ended theory of continuity, there must be plausible allegations of "a future threat of repetition"— not alleged misconduct that is "terminal in nature." *Democratic Nat'l Comm.*, 392 F. Supp. 3d 410, 445 (S.D.N.Y. 2019) (RICO claims dismissed); *see also Rio Tinto PLC v. Vale S.A.*, 14 Civ. 3042, 2015 WL 7769534, at *10 (S.D.N.Y. Nov. 20, 2015) (where the alleged scheme has "terminated" there can be no finding of open-ended continuity.)

Plaintiffs do not allege any ongoing wrongful conduct nor do they allege a substantial

period of predicate acts. Plaintiffs meekly assert that, again, *upon information and belief*, "Defendants continue to borrow from third-party lenders … against collateral that has been fraudulently pledged to multiple lenders." *See* Complaint ¶ 269. Instead, Plaintiffs allege that Wander acknowledged the mistake, promised to correct it, and took steps to do so. *Id.* ¶ 11. Plaintiffs' RICO claims fail because they fail to allege a pattern of RICO activity.

### D.     Plaintiffs Cannot Demonstrate Proximate Causation

In addition to satisfying the substantive elements of a RICO claim, a plaintiff must have standing to assert the claim.  RICO standing requires a threshold showing that the defendant's alleged violation of Section 1962 was "a proximate cause of the plaintiff's injury." *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 767, 769 (2d Cir. 1994) ("RICO provides a civil remedy only to those persons injured 'by reason of' the defendant's predicate acts.") (quoting 18 U.S.C. § 1964(c)). A plaintiff does not have standing to assert a RICO claim unless he can allege a "direct relation between the injury asserted and the injurious conduct alleged." *Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 268 (1992).  Plaintiffs also fail to satisfy proximate causation because they have not sufficiently alleged, as they must, that *someone* relied on the allegedly fraudulent representations. *See Emergency Physician Servs. of N.Y. v. UnitedHealth Grp., Inc.*, 2021 WL 4437166, at *6 (S.D.N.Y. Sept. 28, 2021) (observing that "[t]he complete absence of reliance may prevent the plaintiff from establishing proximate cause." (citation omitted)).

Here again, Plaintiffs conflate the 777 Entity Defendants. Missing from Plaintiffs' RICO cause of action is any cognizable allegations about Signal SML 4 LLC, Insurety Agency Services LLC, Dorchester Receivables II LLC, Signal Medical Receivables LLC, Insurety Capital LLC, Signal Servicing LLC, or Insurety Servicing LLC. Instead, Plaintiffs are relying on injury resulting from the transmission of Reports supplied from **certain** borrowers or servicers, but plead as if it is

all the borrowers and servicers. "Leadenhall would not have continued to allow the Borrowers to borrow debt under the LSA had it known that hundreds of millions of dollars in security for the debt had in fact been double-pledged to another lender and/or did not exist." Complaint ¶ 138. Even still, Plaintiffs do not allege that they justifiably relied on the Reports - they affirmatively audited various defendants for years and were given each and every record and access they requested. *See* Complaint ¶ 94. Plaintiffs' RICO claims fail because they fail to allege proximate causation. *Cf.* ¶ 138.

### E.    Plaintiffs Cannot Demonstrate An Enterprise

The Complaint at best describes a lending relationship governed by contracts, not an "enterprise" or a basis for a RICO claim. Once a pattern of racketeering has been established (it has not), an actionable claim under civil RICO against a particular defendant still requires proof that: (1) the particular defendant was distinct from the alleged RICO enterprise; (2) the defendant was "employed by or associated with [the] enterprise;" and (3) the defendant "conduct[ed] or participat[ed], directly or indirectly, in the conduct of such enterprises affairs through [the] pattern of racketeering activity[.]" 18 U.S.C. § 1962(c). Subsidiaries and other affiliates of a parent corporation—alone or together with the parent corporation—do not constitute a RICO enterprise distinct from the parent corporation. *See Blue Cross and Blue Shield of New Jersey v. Philip Morris, Inc.*, 113 F. Supp. 2d 345, 366 (E.D.N.Y. 2000); *see also Discon, Inc. v. NYNEX Corp.,* 93 F.3d 1055, 1063–64 (2d Cir. 1996), *vacated on antitrust grounds,* 525 U.S. 128 (1998) (distinctiveness requirement not satisfied where the three corporate defendants constituted the alleged enterprise; though three separate legal entities, the three affiliates "operated within a unified corporate structure" and were "guided by a single corporate consciousness"); *Katzman v. Victoria's Secret Catalogue,* 167 F.R.D. 649, 658 (S.D.N.Y. 1996) (association-in-

25

fact enterprise consisting of parent company, subsidiaries, and their employees "ignores the required distinction between the culpable 'person' and the RICO 'enterprise'"); *Nebraska Security Bank v. Dain Bosworth Inc.,* 838 F. Supp. 1362, 1368 (D.Neb. 1993) ("a parent corporation and its wholly owned subsidiary ... cannot together or alone form a RICO enterprise for § 1962(c) purposes when one or both are also the defendant 'person'"); *Crabhouse of Douglaston Inc. v. Newsday Inc.*, 801 F. Supp. 2d 64, 78 (E.D.N.Y. 2011) (acknowledging that distinctiveness would be satisfied had there been "three separate companies and three distinct sets of employees/agents," but noting that the companies in that case were all "wholly owned subsidiaries" of the parent defendant and thus "not distinct from their parent company for the purposes of alleging a RICO enterprise"); *see Paul Hobbs Imports Inc. v. Verity Wines, LLC*, 21 Civ. 10597 (JPC), 2023 WL 374120, at *9 (S.D.N.Y. Jan. 24, 2023) (finding that the distinctiveness requirement was not satisfied where plaintiff alleged existence of three legal entities that purport to satisfy the definition of an enterprise under the statute, but ultimately cannot because those same three entities are also the RICO defendants – something the RICO statutory framework precludes); *Wild Edibles Inc. v. Indus. Workers of World Loc. 460/640*, No. 07 Civ. 9558 (LLS), 2008 WL 4548392, at *1 (S.D.N.Y. Oct. 9, 2008) (finding that a "conclusory naming of a string of entities" is insufficient to allege an enterprise absent specific information describing the "hierarchy, organization and activities of the alleged enterprise.")

Here, Plaintiffs attempt to plead the existence of an associate-in-fact enterprise by, among other things, pleading that the racketeering acts were part of a pattern in furtherance of a common goal to fraudulently inflate the collateral value. *See* Complaint ¶¶ 263; 287-268. Plaintiffs allege "Defendants' racketeering acts were a regular way of conducting their own business with Plaintiffs and of conducting or participating in the ongoing RICO enterprise." *Id.*¶ 268. However, Plaintiffs

fail to demonstrate any structure or organization of the enterprise and, again, resort to impermissible group pleading certain activity of the 777 Entity Defendants as constituting an enterprise within the meaning of RICO. *Paul Hobbs Imports Inc.*, 2023 WL 374120, at *9 ("Nonetheless, the Complaint's allegations as to that enterprise are insufficiently separate from the pattern of racketeering activity alleged to adequately plead the existence of a RICO enterprise."); *Jordan v. Tilzer*, 21-1938, 2022 WL 16544335, at *2 (2d. Cir. Oct. 31, 2022) (determining that plaintiff failed to plead the existence of an enterprise with sufficient particularity to establish a RICO claim on this because plaintiff's allegations conflated the alleged RICO enterprise with the alleged pattern of racketeering activity and were "too conclusory to plausibly allege the existence of an association-in-fact enterprise"). Ultimately, fatal to their claim that there is an enterprise distinct from the RICO defendants, is Plaintiffs' allegation elsewhere in the Complaint that the 777 Entity Defendants are "alter ego entities." *See* Complaint ¶¶ 2, 4, 19, 146, and 182. Therefore, Plaintiffs' RICO claims fail because they do not allege an enterprise that is distinct from each of the RICO defendants.

### F.    Plaintiffs' RICO Conspiracy Claim Also Fails

Plaintiffs' have not plausibly alleged a RICO conspiracy — an agreement entered into by the 777 Entity Defendants to commit predicate acts nor have they plausibly alleged a violation of RICO. Plaintiffs' Section 1962(d) claim against the 777 Entity Defendants based on a supposed conspiracy to violate other subsections of Section 1962 must also be dismissed. Where a plaintiff fails to plead a substantive RICO violation, he cannot maintain a RICO conspiracy claim. *See Wade Park Land Holdings, LLC v. Kalikow*, 589 F. Supp. 3d 335, 384 (S.D.N.Y. 2022) ("In this Circuit, when the allegations of a complaint fail to establish a substantive RICO violation, they also do not establish a RICO conspiracy claim."); *Nasik*, 165 F. Supp. 2d at 540 ("Because [plaintiff]

has not asserted facts sufficient to plead a claim under Section 1962(c), its claim under Section 1962(d) must also be dismissed."); *First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 182 (2d Cir. 2004); *R.C.M. Exec. Gallery Corp. v. Rols Cap. Co.*, 1997 WL 27059, at *10 (S.D.N.Y. Jan. 23, 1997); *First Capital Asset Mgmt.*, 385 F.3d at 164; *Knoll v. Schectman*, 275 F.App'x 50, 51 (2d Cir. 2008) (a RICO conspiracy claim "necessarily must fail" if the substantive RICO claims are deficient).

Because Plaintiffs do not adequately allege a substantive RICO violation by the 777 Entity Defendants, their RICO conspiracy claim fails with their substantive RICO claim.

## III.    PLAINTIFFS' REMAINING CLAIMS SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM UNDER RULE 12(b)(6) AND LACK OF SUBJECT MATTER JURISDICTION UNDER RULE 12(b)(1)

Plaintiffs' remaining claims include breach of the LSA against SPLCSS III LLC and Dorchester Receivables II LLC (*see* Complaint ¶¶ 212-218), breach of the Servicing Agreement against SuttonPark Servicing LLC, Signal Medical Receivables LLC, and Insurety Servicing LLC (*id.* ¶¶ 219-229), breach of Guaranty Agreement against 777 Partners and 600 Partners (*id.* ¶¶ 230-236), fraudulent misrepresentation against Wander, SuttonPark Servicing LLC, SPLCSS III, and Dorchester Receivables II LLC (*id.* ¶¶ 237-246), civil conspiracy against all defendants (*id.* ¶¶ 247-254), aiding and abetting fraud against 777 Partners, 600 Partners, SuttonPark Capital LLC, Pasko, A-Cap, and King (*id.* ¶¶ 255-260), and unjust enrichment against all defendants (*id.* ¶¶ 278-281).

Plaintiffs' state law claims fail for independent reasons. First, Leadenhall's cause of action for fraudulent misrepresentation must be dismissed because it fails to allege fraud for the reasons discussed herein. *See supra* II.C.i. Second, there is no cause of action for civil conspiracy under New York law. *See Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 591 (2d Cir.

2005). In any event, Leadenhall fails to plausibly allege an agreement to conspire. *See supra* II.F. Third, Leadenhall's cause of action for aiding and abetting fraud must be dismissed because it fails to plausibly allege how 777 Partners, 600 Partners, and SuttonPark Capital LLC assisted in fraud beyond vague and inapplicable allegations of "domination" and "direction." *See* Complaint ¶¶ 255-260. *See also supra II.C.i.* Fourth, Leadenhall's cause of action for unjust enrichment must be dismissed as duplicative of its contract claims. *Hughes v. Ester C Co.*, 330 F. Supp. 3d 862, 877 (E.D.N.Y. 2018). Under New York law, where an unjust enrichment claim duplicates a claim for breach of a valid, enforceable contractual obligation, the unjust enrichment claim must be dismissed. *Beck v. Manhattan College*, 537 F. Supp. 3d 584 (S.D.N.Y. 2021).

Fifth, Leadenhall has not adequately alleged the condition precedent for any potential liability under the Guaranty. *Karmilowicz v. Hartford Fin. Servs. Grp.*, 2011 WL 2936013, at *10 (S.D.N.Y. July 14, 2011), *aff'd*, 494 F.App'x 153 (2d Cir. 2012) ("Conditions precedent must be literally observed when a contract's language unmistakably expresses them."). Here, the condition precedent to eligibility for relief under the Guaranty requires the occurrence of a particular "Trigger Event" under the Guaranty and its continuing occurrence. *See* Complaint ¶ 233. The alleged "Trigger Event" is based on "any failure of a Borrower to own the Collateral pledged by such Borrower pursuant to the Loan and Security Agreement, in each case free and clear of all liens, security interests, or encumbrances [ ] ***solely as a result of the action or inaction*** of such Borrower or a Guarantor…..") (emphasis added). *Id.* But the Complaint does not allege such exclusive action or inaction of a Borrower or Guarantor and is therefore deficient. *Compare* Complaint ¶ 83 (LSA at § 7.01(d)) and Complaint ¶ 233 (Guaranty Agreement § 2(a)).

Moreover, to ignore the requirement under the Guaranty that the condition precedent must be satisfied to be eligible for relief would be contrary to well-established law that a court should

not adopt a construction of a contract which will operate to leave a provision of a contract without force and effect. *See VAM Check Cashing Corp. v. Federal Ins. Co.*, 699 F.3d 727, 731 (2d Cir. 2012); *Nomura Home Equity Loan, Inc.*, 30 N.Y.3d 572, 581 (2017); *Piccirilli v. Yonaty*, 204 A.D.3d 1322, 1324-1325 (3d Dept. 2022). In other words, reading the requirement to satisfy the condition precedent out of the Guaranty would be an unreasonable interpretation of the Guaranty and against well-settled law.

The remaining state claims should also be dismissed because complete diversity is absent and the Court should decline to exercise supplemental jurisdiction over them.

## **CONCLUSION**

For all of these reasons, Plaintiffs' Complaint should be dismissed in its entirety.

Dated:  New York, New York
        August 9, 2024

SMITH, GAMBRELL & RUSSELL LLP


By:*/s/ John G. McCarthy*
    John G. McCarthy
    David A. Pellegrino
    Katie L. Schwartz
    Ryan J. Solfaro
1301 Avenue of the Americas, 21st Floor
New York, New York 10019
(212) 907-9700
jmcarthy@sgrlaw.com
dpellegrino@sgrlaw.com

*Attorneys for the 777 Entity Defendants*

30

## <u>CERTIFICATE OF WORD COUNT COMPLIANCE</u>

We certify that this memorandum of law complies with II.D. of the Individual Practices of Judge John G. Koeltl and according to Microsoft Word contains 9,422 words exclusive of the caption, tables, and signature blocks.

Dated:  New York, New York
       August 9, 2024

By: <u>*/s/ John G. McCarthy*</u>
      John G. McCarthy