O81DLeaC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

LEADENHALL CAPITAL PARTNERS
LLP, et al.,

           Plaintiffs,

    v.                24 Civ. 03453 (JGK)

NATIONAL FOUNDERS LP,
        Movant,

    v.

JOSH WANDER, et al.,
        Defendants.

------------------------------x

                            New York, N.Y.
                            August 1, 2024
                            4:00 p.m.

Before:

                HON. JOHN G. KOELTL,

                           District Judge

                  APPEARANCES

KING & SPALDING LLP
    Attorney for Plaintiff
BY:  LEIGH M. NATHANSON

SIDLEY AUSTIN LLP
    Attorney for Movant Nat. Founders
BY:  NICHOLAS P. CROWELL

SMITH GAMBRELL & RUSSELL LLP
    Attorney for Defendant 777 Partners (entities)
BY:  DAVID A. PELLEGRINO

O81DLeaC

1  APPEARANCES CONTINUED:

2  CADWALADER WICKERSHAM & TAFT LLP
        Attorney for Defendant Advantage Cap. and King
3  BY:  JONATHAN M. WATKINS

4  MORGAN LEWIS & BOCKIUS LLP
        Attorneys for Intervenor ING
5  BY:  ANDREW GALLO

6  MORVILLO ABRAMOWITZ GRAND IASON & ANELLO PC
        Attorneys for Defendant Pasko
7  BY:  JENNA JONES

8  KRAMER, LEVIN, NAFTALIS & FRANKEL, LLP
        Attorney for Defendant Wander
9  BY:  JORDAN ESTES

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1              (The Court and all parties present telephonically)
 2              (Case called)
 3              THE COURT:  Good afternoon.
 4              Who is here on behalf of Leadenhall?
 5              MS. NATHANSON:  Good afternoon, your Honor.  Leigh
 6      Nathanson from King & Spalding for Leadenhall.
 7              THE COURT:  All right.  Let's see.  Who's on the line
 8      for A-CAP?
 9              MR. WATKINS:  Good afternoon, your Honor.  This is
10      Jonathan Watkins.
11              THE COURT:  Okay.  The reason for the conference is
12      A-CAP's proposed order to show cause to modify the preliminary
13      injunction.  So I imagine that there are other parties on the
14      phone.  So, let me see.
15              Just from the docket sheet, National Founders?
16              MR. CROWELL:  Yes, your Honor.  Nick Crowell from
17      Sidley Austin for National Founders.
18              THE COURT:  Okay.  Mr. Wander?
19              MR. ESTES:  Yes.  Good afternoon, your Honor.  Jordan
20      Estes for Mr. Wander.
21              THE COURT:  Okay.  Mr. Pasko?
22              MS. JONES:  Yes.  Good afternoon, your Honor.  This is
23      Jenna Jones from Morvillo Abramowitz for Mr. Pasko.
24              THE COURT:  Mr. King?
25              MR. WATKINS:  Good afternoon, your Honor.  Jonathan
```

O81DLeaC

1  Watkins from Cadwalader again for Mr. King.
2          THE COURT:  Okay.  777 Partners?
3          MR. PELLEGRINO:  Yes.  David Pellegrino, from Smith,
4  Gambrell for all the 777 entity defendants.
5          THE COURT:  Okay.  Yes.  Lots of defendants.
6          Advantage Capital?
7          MR. WATKINS:  Yes, your Honor.  Jonathan Watkins from
8  Cadwalader for all of the Advantage Capital entities, Mr. King,
9  and Haymarket, intervenor Haymarket.
10         THE COURT:  Okay.  ING Capital?
11         MR. GALLO:  Yes, your Honor.  Andrew Gallo from Morgan
12 Lewis for ING Capital.
13         THE COURT:  Okay.  I think that's everyone.
14         The reason for the call was the order to show cause to
15 modify the preliminary injunction that A-CAP filed, and it was
16 brought on by an order to show cause, but there's no
17 explanation about what the time urgency is or suggestion as to
18 timing, so I thought I would listen to the parties on that.
19         Mr. Watkins.
20         MR. WATKINS:  Yes, your Honor.  This is Jonathan
21 Watkins, and I did submit a declaration along with the order to
22 show cause and the parties did confer regarding a briefing
23 schedule.  And the exigency here is the general chilling effect
24 in the market as a result of the PI as it stands now.
25         I think -- when I think about the exigency at least, I

think that if we're wrong and this motion is denied -- well, of course there is no exigency for that, but if we happen to be right and the current PI exceeds the scope of the Court's authority, then those whose assets are restrained beyond the Court's authority are impacted. And that's why, for example, when one moves for a PI, one posts a bond.

And, as it so happened here, the PI has been reported on, it has been misunderstood in the press, and misunderstood, and the PI does have a general chilling effect on commercial activity, thus the exigency. The transactions are -- pardon me, I realize, I say just the -- the exigency, and I mentioned the chilling effect but don't mention that there are transactions that there are -- there's commercial activity in the market that but for the chilling effect would be moving more quickly.

THE COURT: You said there have been discussions about what the timing should be on this motion.

MR. WATKINS: Yes, your Honor.

THE COURT: Any resolution?

MR. WATKINS: We have narrowed the gap, your Honor, where our last proposal is that the defendant -- pardon me, the plaintiffs, Leadenhall, would have nine days to oppose, so oppose next Friday, the 9th, and that we would submit a reply by the 15th. And Leadenhall has indicated that they would like the full 14 days, as if we had moved under a notice of motion.

1            THE COURT:  Okay.  I mean, isn't that difference
2   hardly a reason to bring this on by an order to show cause,
3   five days difference between the parties and an order to show
4   cause, which studiously doesn't mention any specific
5   transaction that's being prevented?  All of this could have
6   been avoided if A-CAP had set out what's the specific
7   transaction that it thinks is being chilled and what the timing
8   of that transaction is.  That would have made the timing of --
9   sort of front and center, because you could make some
10  determination about the timing of the transaction and it would
11  allow Leadenhall to explain why the alleged transaction, in
12  fact, justifiably came within the preliminary injunction.
13           MR. WATKINS:  Your Honor, this is Jonathan Watkins
14  again.  There is no particular transaction.  The misreporting
15  in the press and the general perception by non-lawyers has
16  caused a general chilling effect such that transactions that
17  may otherwise have progressed to the point of -- progressed
18  farther at least, have not materialized and are not -- do not
19  exist.  They're not -- there's nothing to present in terms of a
20  particular transaction, and --
21           THE COURT:  I'm sorry.  I don't mean to interrupt you.
22           MR. WATKINS:  There are many sorts of transactions,
23  much conduct -- commercial activity that is lawful, and if we
24  are right, should not be subject to this restraint that is
25  being impacted.

1    THE COURT:  A-CAP is not itself enjoined under the
2 injunction, right?
3    MR. WATKINS:  Right.  Correct, your Honor.
4    THE COURT:  Wouldn't it be odd for me to amend the
5 injunction not because it's wrong and not because it's
6 hindering any particular transaction but because it's being
7 misrepresented in the press?
8    I would have thought the way to correct misreporting
9 is with accurate reporting, right?  Isn't that sort of a basic
10 principle of First Amendment law, the way in which you correct
11 misinformation is with accurate information?
12    MR. WATKINS:  Your Honor, this is Jonathan Watkins
13 again.
14    For better or worse, I'm a litigator, not a PR
15 specialist, and, to be sure, I assume that there could be a PR
16 campaign about -- insisting on accurate reporting about a legal
17 order, but the basis of this motion is not -- is not about
18 practicalities.  It's not about a particular transaction.  It
19 is about the law that we believe is controlling and we believe
20 is clear.
21    THE COURT:  Go ahead.
22    MR. WATKINS:  If I may, to your Honor's question
23 about, well, a few days difference, is that a reason to move by
24 order to show cause, that is a point well taken.  I can say
25 that the -- I've presented the current state, the bid and ask.

That is -- that is a recent development just before we got on the phone with your Honor at 4:00 here today.  And so -- and what we have tried to do is come to some middle ground between the time that was spent on the TRO, which of course was from a stop, to -- and explored a number of different issues, and the full 14 and seven days for standard notice of motion.  And we believe that that is a middle ground, as of -- the type we propose is appropriate, when, if we're right, assets are being restrained beyond the Court's authority to do so.

THE COURT:  Okay.  So, Ms. Nathanson.

MS. NATHANSON:  Thank you, your Honor.

Our position is that there is no exigency here, let alone a showing sufficient under the rules why normal motion practice would not suffice here, and so we are not looking to forego our 14 days under the rules.  And we think we can respond in that time and explain why the motion that's been brought here under Rule 59 doesn't present any new facts or law that would disturb the basis for the injunction here.

As your Honor mentioned, the Court provided procedures for assessing certain transactions and the implications, if any, of the preliminary injunction on those transactions if there's any confusion either in the press or among the parties or otherwise.  No such application has been made.  For what it's worth, no relief -- or notification to Leadenhall has been made that would enable Leadenhall to assess any prospective

1  transaction and potentially agree to the terms of the action if
2  there's something that's fair or not otherwise disturbed by the
3  preliminary injunction.
4          So at this point, we think we're under normal motion
5  practice.  We can respond in due course, but there's no reason
6  to disturb the normal procedure here.
7          THE COURT:  One gets the impression that there is some
8  shadow boxing going on between or among the parties.  I mean,
9  it is unusual to have an application for a TRO by a party that
10 wasn't even the object of the preliminary injunction worrying
11 about transactions undisclosed that are being chilled based on
12 the misreporting of the preliminary injunction.
13         One has to wonder if, in fact, the accurate
14 preliminary injunction is not so detrimental to any parties to
15 the preliminary injunction, how it comes about that A-CAP,
16 which is not a party to the injunction, feels so chilled by
17 misreporting what the actual injunction did so that the
18 injunction should be modified.  That's I think -- I mean, put
19 that way, it hardly cries out for urgency.
20         Just so it's clear, and I've said this before, if
21 there is a transaction, it were better that the transaction be
22 disclosed and brought to the attention of the other side and to
23 the Court.  And if there is no problem in terms of the
24 injunction with the transaction, one would think the
25 transaction would go forward.  But A-CAP hasn't done that.

O81DLeaC

1     So I'll certainly consider all of the arguments.  I've
2  read the papers, including the supporting declarations.
3     Give me a moment to look at the calendar.
4     Opposition papers are due August 15.
5     Response due August 26.
6     I'll take the motion under submission then.  If I
7  think I need argument, I'll set it for argument.
8     Okay.  Good to talk to you all.
9     Anything further from anyone?
10    MS. NATHANSON:  Not from plaintiffs.  Thank you, your
11 Honor.
12    THE COURT:  Thank you for being available on short
13 notice.  Good afternoon, all.
14    MS. NATHANSON:  Likewise.  Thank you, your Honor.
15    MR. WATKINS:  Thank you, your Honor.
16    (Adjourned)