## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LEADENHALL CAPITAL PARTNERS LLP and LEADENHALL LIFE INSURANCE LINKED INVESTMENTS FUND PLC,<br><br>Plaintiffs,<br><br>vs.<br><br>JOSH WANDER, STEVEN PASKO, KENNETH KING, 777 PARTNERS LLC, 600 PARTNERS LLC, SPLCSS III LLC, SIGNAL SML 4 LLC, INSURETY AGENCY SERVICES LLC, DORCHESTER RECEIVABLES II LLC, SUTTONPARK CAPITAL LLC, SIGNAL MEDICAL RECEIVABLES LLC, INSURETY CAPITAL LLC, SUTTONPARK SERVICING LLC, SIGNAL SERVICING LLC, INSURETY SERVICING LLC, and ADVANTAGE CAPITAL HOLDINGS LLC,<br><br>Defendants. | Civil Action No. 1:24-cv-03453 |

## A-CAP'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS RULE 59(e) MOTION TO MODIFY THE PRELIMINARY INJUNCTION

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................ 1

ARGUMENT ................................................................................................. 2

I.   A LIEN CANNOT SUPPORT AN INJUNCTION BEYOND THE
     PARTICULAR ASSETS PLEDGED AS COLLATERAL. .................................... 2

II.  LEADENHALL HAS NO EQUITABLE INTEREST IN ANY SPECIFIC
     ASSET OF GUARANTORS. ...................................................................... 3

     A. The Prayer to Enjoin Breaches Confers No Equitable Interest in
        Any Particular Asset. ...................................................................... 4

        1. No agreement requires Guarantors to pledge anything. .................. 4

        2. Even an imagined obligation to pledge "sufficient assets" cannot
           support a restraint on any particular asset. .................................. 5

        3. The Complaint asks for damages, not a pledge of Collateral. ........... 6

     B. Leadenhall's Shifting Theories of Fraud Create No Equitable
        Interest in Any Particular Asset. ...................................................... 7

III. LEADENHALL'S OTHER ARGUMENTS ARE INAPT. ................................... 10

CONCLUSION ............................................................................................. 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bank of Am., N.A. v. Won Sam Yi,*
  294 F. Supp. 3d 62 (W.D.N.Y. 2018) ............................................................. 3, 9, 10

*Dong v. Miller,*
  2018 WL 1445573 (E.D.N.Y. Mar. 23, 2018) .................................................*passim*

*Gordon & Breach Sci. Publishers S.A. v. Am. Inst. of Physics,*
  905 F. Supp. 169 (S.D.N.Y. 1995) ............................................................. 1

*Great–W. Life & Annuity Ins. Co. v. Knudson,*
  534 U.S. 204 (2002) ..................................................................... 6, 8, 10

*Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.,*
  527 U.S. 308 (1999) .................................................................... 1, 0

*Gucci Am., Inc. v. Weixing Li,*
  768 F.3d 122 (2d Cir. 2014) ................................................................ 10

*III Fin. Ltd. v. Aegis Consumer Funding Grp., Inc.,*
  1999 WL 461808 (S.D.N.Y. July 2, 1999) ................................................... 3

*Paradigm BioDevices, Inc. v. Centinel Spine, Inc.,*
  2013 WL 1915330 (S.D.N.Y. May 9, 2013) .................................................. 3, 8

*Quantum Corp. Funding, Ltd. v. Assist You Home Health Care Servs.*
  *of Va.,* 144 F. Supp. 2d 241 (S.D.N.Y. 2001) ............................................ 3

## PRELIMINARY STATEMENT

Leadenhall's concessions make resolving this motion straightforward. It admits that it has no lien on any asset of Guarantors. It admits that it sought preliminary relief based only on its contract claims, which seek an accelerated lump sum of damages. It does not deny that it prays for no final equitable relief aside, it argues, from enjoining future breaches of contract. And it embraces the purpose of the preliminary injunction: "to preserve assets as security for a potential monetary judgment," (ECF 172 at 5).

Against that backdrop, Leadenhall leads with an argument that betrays the weakness of its position: it asks the Court to stop short of the merits. But A-CAP's motion is about the limits of the Court's "authority," *Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 333 (1999), and the Court's inherent ability to "modify its interlocutory orders," *Gordon & Breach Sci. Publishers S.A. v. Am. Inst. of Physics*, 905 F. Supp. 169, 177–78 (S.D.N.Y. 1995), surely extends to narrowing an injunction that exceeds the Court's authority.

Narrowing is what the law compels here. Under clear and controlling authority, when, as here, an asset freeze is based on a lien, only the particular assets in which the creditor asserts a security interest may be restrained. A-CAP knows of no other case since *Grupo Mexicano* in which a court froze *unencumbered*[1] assets based on a security interest in *separate* assets (whether held by the same obligor or,

---

[1] Throughout, we refer to assets "unencumbered" by any lien of Leadenhall. Guarantors' assets are encumbered by A-CAP's and its affiliates' senior liens.

as here, a different one), and Leadenhall cites none. That is true even in cases of alleged fraud or "absconding" with collateral—neither of which, in any event, Leadenhall has attempted to demonstrate in support of its motion for a preliminary injunction.

When it eventually addresses "whether Leadenhall has an equitable interest in assets not previously specifically designated by Defendants as Collateral," (ECF 172 at 20), Leadenhall seeks to rewrite its Complaint: Leadenhall says it seeks not only $609 million in damages, but also for Guarantors to "set aside sufficient assets" and pledge them as "substitute Collateral." (*Id.* at 21–22.) But the Complaint seeks no such thing and, at any rate, no agreement obligates Borrowers or Guarantors to pledge any "substitute Collateral." Moreover, even an imagined prayer for a debtor to pledge "sufficient assets" provides no basis to restrain any *specific* asset.

## ARGUMENT

### I. A LIEN CANNOT SUPPORT AN INJUNCTION BEYOND THE PARTICULAR ASSETS PLEDGED AS COLLATERAL.

Leadenhall crafts a "simple" "rule" that it wishes were the law: it says that courts "may issue a preliminary injunction preventing defendants from disposing of [any and all] assets where a plaintiff asserts a lien as to specific assets and the injunction is a reasonable measure to preserve the status quo." (ECF 172 at 20.) But that is not the law, and Leadenhall still cites no case in which a lender parlayed a lien on only certain assets into a restraint on unencumbered assets (much less the unencumbered assets of a different obligor).

Leadenhall relies on *Dong* and *Paradigm* for its "rule." (*Id.*) But neither case even *involves* a secured creditor, much less announces a special "rule" for them.[2] And, *without exception*, the cases that *do* involve a secured creditor confine the Court's authority to those assets in which plaintiff has a security interest, (*see* ECF 155 at 13–15 (collecting cases)), including every case cited by Leadenhall, *see Quantum Corp. Funding, Ltd. v. Assist You Home Health Care Servs. of Va.*, 144 F. Supp. 2d 241, 250 & n.9 (S.D.N.Y. 2001) (enjoining "only a portion of" receivables pledged by borrowers: the "*specific* funds" in which plaintiff "possess[ed] a security interest"); *III Fin. Ltd. v. Aegis Consumer Funding Grp., Inc.*, 1999 WL 461808, at *1, *4 n.1 (S.D.N.Y. July 2, 1999) (determining whether a particular asset was "collateral" and thus within "the power" of the Court to restrain); *Bank of Am., N.A. v. Won Sam Yi*, 294 F. Supp. 3d 62, 83 (W.D.N.Y. 2018) (enjoining *only* conduct "substantially impairing the value of any and all of *the Collateral*"). *See infra* Part II.B (discussing *Won Sam Yi*).

## II. LEADENHALL HAS NO EQUITABLE INTEREST IN ANY SPECIFIC ASSET OF GUARANTORS.

Neither Leadenhall's prayer to "enjoin[] Defendants [from] violating their obligations under the Agreements," (ECF 1 ¶ 282(b)), nor its shifting, unsubstantiated accusations of fraud supply it with an "equitable interest."

---

[2] Rather than allow "reasonable" expansions, *Dong* and *Paradigm* strictly limit restraints on assets to those in which plaintiff shows an equitable interest. *See infra* Part II.B.

A.  <u>The Prayer to Enjoin Breaches Confers No Equitable Interest in Any Particular Asset.</u>

Leadenhall now theorizes that it "has an 'equitable interest' in the specific assets that the Guarantors are bound to pledge to perform the Borrowers' guaranteed obligations," one that it says it "seeks to enforce" through its prayer to enjoin future breaches.  (ECF 172 at 22.)  For several reasons, that is wrong.

1.  *No agreement requires Guarantors to pledge anything.*

Guarantors guarantee Borrowers' Obligations,[3] but there is no Obligation for Borrowers or Guarantors to pledge "replacement" or additional collateral in the event of a Borrowing Base Deficiency.  None.  Leadenhall's contractual remedy is instead the usual one:  to foreclose on its Collateral and seek a money judgment for any deficiency.

The provisions of the LSA on which Leadenhall relies are the same ones it invoked when arguing for an "equitable interest" based on an imaginary prayer for specific performance.  (ECF 100 at 11.)  While Leadenhall now concedes that it does not pray for specific performance, it repeats its conclusory distortions of the LSA.  But Sections 7.01(c) and 7.02(g) still merely say that a Borrowing Base Deficiency can trigger an Event of Default, (ECF 173-1 at 25, 28); neither obliges Borrowers "to acquire and pledge sufficient Collateral,"  (ECF 172 at 21.)  Rather than obliging Borrowers to purchase substitute Collateral, newly filed Section 2.07 gives them "the

---

[3] The Guaranty limits certain of Guarantors' potential liabilities to 15% of the aggregate commitment of the lenders.  (*See* ECF 58-2 at 2–3.)

***right***, at any time, to prepay the Loans in whole or in part without penalty; <u>provided</u> that" certain conditions are met.  (ECF 173-1 at 28 (emphasis added).)  Section 5.01(i) remains the section under which Borrowers provide "Further Assurances," and Leadenhall does not dispute that it alleges no breach of that section.  (*Cf.* ECF 155 at 22.)  And Section 2(a) of the Guaranty says nothing about any "obligation[] to set aside sufficient assets to secure Leadenhall's debt,"  (ECF 172 at 21.)

Instead, the core "Obligation" of each Borrower under the LSA is "the punctual payment when due of all obligations and indebtedness of such Borrower."  (Watkins Decl. Ex. A (LSA) at 17.)  The "Covenants" of Section V supply Borrowers' other Obligations.  Pledging collateral is not one of them.

Under the part of the LSA that deals with Collateral, Section 2.15, Borrower "***hereby grants*** . . . a first-priority security interest in the Collateral" "***[t]o secure the performance*** by the Borrowers ***of all of the Obligations***."  (*Id.* § 2.15(a) (emphasis added).)  And the Pledge Agreements underscore that the pledging of collateral occurred *upon execution* of the LSA and is *not itself an Obligation*, but a means of "securi[ng] the prompt and complete payment or performance . . . of all Obligations."  (Watkins Decl. Exs. B–E (Pledge Agreements), § 2.2.)

> 2. *Even an imagined obligation to pledge "sufficient assets" cannot support a restraint on any particular asset.*

Even in Leadenhall's alternate reality, Guarantors would still have no obligation to pledge *specific* assets as substitute collateral.  Leadenhall imagines that the LSA and Guaranty require Guarantors to "set aside ***sufficient*** assets."  (ECF 172 at 21 (emphasis added).)  But only an interest "with respect to ***particular*** assets"

can support a preliminary restraint. *Dong v. Miller*, 2018 WL 1445573, at *8 (E.D.N.Y. Mar. 23, 2018) (emphasis added). By contrast, Leadenhall's imagined "contractual[] entitle[ment] to" the pledging of "*some* funds" is "not equitable . . . but legal." *Great–W. Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 214 (2002).

### 3. The Complaint asks for damages, not a pledge of Collateral.

Notwithstanding Leadenhall's new theory, this remains a case about $609 million of Accelerated Debt. Leadenhall does not dispute that "the final paragraph of every claim for relief demands money and nothing else," (ECF 155 at 16), and its application for preliminary relief mentions no other form of final relief, (*see* ECF 57; *cf.* ECF 58-8 ¶ 2 (describing the "Remaining Obligations" as repaying "the aggregate principal balance . . . of the outstanding Obligations").) Leadenhall thus brings no "truly equitable claims that might support the issuance of a preliminary injunction," *Dong*, 2018 WL 1445573, at *8, much less a preliminary injunction to "prevent the Borrowers and Guarantors from dissipating their remaining assets to frustrate collection of a final judgment," (ECF 172 at 8; *see also* ECF 155 at 19).

Nor can Leadenhall manufacture an equitable claim through a prayer to enjoin future breaches. Courts are wise to that "facile trick." (ECF 155 at 18.) *See Great–W. Life*, 534 U.S. at 210, 211 n.1 (noting that while "any claim for legal relief can, with lawyerly inventiveness, be phrased in terms of an injunction," "[a]lmost invariably," when, as here, plaintiffs' "suits seek[] (whether by judgment, injunction, or declaration) to compel the defendant to pay a sum of money to the plaintiffs are suits for 'money damages'" sounding in law).

B. <u>Leadenhall's Shifting Theories of Fraud Create No Equitable Interest in Any Particular Asset.</u>

Leadenhall's shifting theories of fraud, which now focus on accusations of absconding with Collateral, cannot support the preliminary injunction.

*First*, Leadenhall concedes that it sought preliminary relief "based on Leadenhall's breach of contract claims" alone. (ECF 172 at 8.) It has not even tried to demonstrate fraud in support of a preliminary injunction.

*Second*, even those claims accuse 777 not of absconding with its Collateral, but of fraudulent "*misrepresentations*"—overstating, in Monthly Reports, the present value of receivables that didn't exist or were owned by Credigy's Volans facility. (*See,* ECF 1 ¶¶ 89–138 ("Knowing Misrepresentations Concerning Its Collateral").) And it does not dispute that its fraud claims are "legal claims for which it seeks monetary relief," (ECF 155 at 17). Those claims cannot support any restraint on assets. *See, e.g.*, *Dong*, 2018 WL 1445573, at *9 (refusing, despite the "extensive history of documented fraudulent conduct," to freeze assets based on contract and fraud claims for money damages).

If a lender believes that its borrower absconded with particular collateral, to freeze assets, it must bring an equitable claim alleging as much; seek equitable relief over specific assets allegedly absconded with; and request preliminary relief ancillary to that final equitable relief. As A-CAP has explained, there is no exception to those requirements, and Leadenhall meets none of them. (ECF 155 at 21.)

The case Leadenhall relies on most, *Dong*, is instructive. There, unlike here, plaintiff brought "fraudulent-conveyance claims." 2018 WL 1445573, at *1. Plaintiff

"[did] not, however, request[] equitable relief with respect to" those claims by "seek[ing] to have any of the alleged fraudulent conveyances invalidated or set aside." *Id.* at *10. Instead, much like here, he sought money damages and "an asset-freezing preliminary injunction . . . with respect to <u>all</u> Defendants' assets . . . and, critically, d[id] so for the express purpose of preventing Defendants from 'frustrat[ing] enforcement of [the requested money] Judgment against them," *id.* Because those "fraudulent-conveyance claims . . . sound in law, not equity," the court refused to freeze all assets allegedly fraudulently transferred. *Id.*

Yet the plaintiff in *Dong* also brought "equitable-lien claims" seeking "equitable relief . . . in the form of liens on specific assets that are currently in Defendants' possession but, according to Plaintiff, 'belonging in good conscience to [him].'" *Id.* (quoting *Great–W. Life*, 534 U.S. at 213). And the court properly issued a preliminary injunction limited to "those assets that are the subject of Plaintiff's equitable-lien claims." *Id.*

Even then, creditors' "equitable interest is limited to those assets" that are the subject of the final equitable remedy, and even then to assets not "dissipated" but "remaining 'in the defendant's possession." *Paradigm BioDevices, Inc. v. Centinel Spine, Inc.*, 2013 WL 1915330, at *5 (S.D.N.Y. May 9, 2013) (freezing particular assets based on claim for "rescission of" transactions in which those "assets [were] fraudulently transferred").

*Third*, Leadenhall is wrong that A-CAP cites no case in which "a court ruled that an asset-freezing injunction extended only to the collateral with which the

borrowers did not abscond." (ECF 172 at 17.) Take *Won Sam Yi*, where, much like here, Bank of America's credit-facility "loans were secured by" a lien on "all assets" of defendants, "Collateral" largely comprising "accounts receivable and equipment" that the Bank "specifically identified," 294 F. Supp. 3d at 72, 73. Dr. Yi guaranteed the repayment of the loans up to $4.3 million.[4]  *See* 294 F. Supp. 3d at 69. Like Leadenhall, Bank of America sent an "Acceleration Notice" declaring "the entire outstanding balance" "due and payable," (*id.* at 69; *Bank of Am., N.A. v. Won Sam Yi*, No. 17-cv-01283 (W.D.N.Y), ECF 16-15 at 4 (Acceleration Notice)), and demanded $4.3 million from Dr. Yi to satisfy his "Guarantied Obligations," (*Won Sam Yi*, ECF 16-2 (Franco Aff.) ¶¶ 30, 35)).

Unlike here Bank of America showed that Dr. Yi improperly and "purposefully used [Collateral], which Plaintiff held in security, in order to keep his business 'afloat,'" 294 F. Supp. 3d at 80, dissipating the value of the Collateral to around $11 million, *id.* at 81—well short of the $17 million Accelerated Debt, (*see Won Sam Yi*, ECF 16-15 (Acceleration Notice) at 5).

Even so, unlike Leadenhall, Bank of America did not seek to restrain unencumbered assets. And that was crucial to the outcome: the court stressed that the "application for injunctive relief is not a request to prevent dissipation or disposal of Defendants' *general* assets in order to eliminate the risk of never receiving a money

---

[4] Unlike here, Dr. Yi's guaranty was "secured," *id.* at 68, by his pledge of collateral of his own. (*Won Sam Yi*, No. 17-cv-01283, ECF 16-7 (Limited Guaranty ¶ 6).)

judgment," but a request to restrain only the Bank's Collateral. *Id.* at 80. While the court lamented that the "preliminary injunction w[ould] likely not fully compensate Plaintiff for its losses," *id.* at 67, it nevertheless ruled that **the asset-freezing injunction extended only to the collateral with which Dr. Yi did not abscond**, enjoining *only* conduct "substantially impairing the value of any and all of *the Collateral* outside the ordinary cour[se] of Defendants' operations," *id.* at 83.

*Fourth*, as Leadenhall admits, courts are authorized to preliminarily restrain unencumbered assets only "'where such relief was *traditionally available* in courts of equity," not any time the Court, in its discretion, predicts that a court of equity "would [have]" issued such a restraint, (ECF 172 at 20 (emphasis altered)). *See Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 131 (2d Cir. 2014); *Great–W. Life*, 534 U.S. at 210 (explaining that "equitable relief" means "those categories of relief that were *typically* available in equity"). Yet Leadenhall does not and cannot cite authority for the proposition that courts of equity "traditionally" or typically restrained assets based on the hodgepodge of equitable concepts invoked by Leadenhall.

## III.  LEADENHALL'S OTHER ARGUMENTS ARE INAPT.

Leadenhall's remaining points are irrelevant to the issue presented. It again raises attachment in a responsive brief, but doing so remains "improper[]" and irrelevant. (6/7/24 Hr'g Tr., 59:13–17.) It asserts (inaccurately) that the preliminary injunction has been functioning as intended and argues (wrongly) that modifying the injunction would be inequitable. But A-CAP's motion presents an issue of law over the Court's authority, not one hinging on "grand aims of equity." *Grupo Mexicano*, 527 U.S. at 321.

Leadenhall also devotes the final section of its argument to asserting that "the Collateral valuations . . . **would have** continued to remain steady . . . **if** properly hedged" and that a failure to hedge would have breached the Guaranty. (ECF 172 at 24.) That, it seems, concedes that much of Leadenhall's alleged $351 million Borrowing Base Deficiency, (ECF 1 ¶ 129), was caused by a failure to hedge as contractually required—not alleged fraud. That illustrates A-CAP's point: because it moved on only its contract claims, Leadenhall has not, despite all its accusations, demonstrated whether and to what extent the alleged deficiency is attributable to fraud (an issue conspicuously unaddressed by Mr. Gillespie).

## CONCLUSION

A-CAP requests that the Court enter a modified preliminary injunction that restrains only the Collateral.

Dated: New York, New York
      August 26, 2024

CADWALADER, WICKERSHAM & TAFT LLP

By: /s/ *Jonathan M. Watkins*
Jonathan M. Watkins
Michael E. Petrella
Matthew M. Karlan
Mark A. Singer
200 Liberty Street
New York, NY 10281
Telephone: (212) 504-6000
Fax: (212) 504-6666
jonathan.watkins@cwt.com
michael.petrella@cwt.com
matthew.karlan@cwt.com
mark.singer@cwt.com

*Counsel for Advantage Capital Holdings LLC and Kenneth King*

## <u>CERTIFICATION OF COMPLIANCE</u>

I hereby certify, under Section II.D of Judge Koeltl's individual practices, that

this memorandum contains 2,778 words, exclusive of the caption, table of contents,

table of authorities, and this certification.


By: <u>/s/ *Jonathan M. Watkins*</u>
Jonathan M. Watkins