UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

LEADENHALL CAPITAL PARTNERS LLP            :
and LEADENHALL LIFE INSURANCE
LINKED INVESTMENTS FUND PLC,               :        24 Civ. 3453 (JGK)

                                  Plaintiffs,    :

                    v.                    :

JOSH WANDER, STEVEN PASKO,                 :
KENNETH KING, 777 PARTNERS LLC,
600 PARTNERS LLC, SPLCSS III LLC, SIGNAL   :
SML 4 LLC, INSURETY AGENCY SERVICES
LLC, DORCHESTER RECEIVABLES II LLC,        :
SUTTONPARK CAPITAL LLC, SIGNAL
MEDICAL RECEIVABLES LLC, INSURETY          :
CAPITAL LLC, SUTTONPARK SERVICING LLC,
and ADVANTAGE CAPITAL HOLDINGS LLC,        :

                           Defendants.    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

## THE 777 ENTITY DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE AMENDED COMPLAINT

SMITH, GAMBRELL & RUSSELL, LLP
*Attorneys for the 777 Entity Defendants*
1301 Avenue of the Americas, 21st Floor
New York, New York 10019
(212) 907-9700

*Of counsel*
John G. McCarthy
David A. Pellegrino
Katie L. Schwartz
Ryan J. Solfaro

**TABLE OF CONTENTS**

**Page(s)**

TABLE OF AUTHORITIES ...................................................................................................ii-vi

PRELIMINARY STATEMENT............................................................................................... 1

FACTUAL BACKGROUND ................................................................................................... 3

ARGUMENT ........................................................................................................................... 6

    I.    THE COMPLAINT SHOULD BE DISMISSED FOR LACK OF SUBJECT
        MATTER JURISDICTION PURSUANT TO RULE 12(b)(1)...................................... 6

        A.    There Is Incomplete Diversity................................................................... 6

        B.    There Is No Original Jurisdiction Over The State Law Claims .............................. 8

    II.    PLAINTIFFS' RICO CLAIMS SHOULD BE DISMISSED FOR FAILURE
        TO STATE A CLAIM ................................................................................................ 8

        A.    Legal Standard.................................................................................... 10

        B.    Plaintiffs Cannot Demonstrate Standing Because They Fail To Plead
        Damages That Are Clear And Definite................................................... 11

        C.    Plaintiffs Cannot Demonstrate An Enterprise........................................ 12

           i.  No Enterprise Is Alleged To Be Distinct From The 777 RICO Defendants .................... 12

          ii.  No Enterprise Is Alleged That Is Distinct From The Underlying
            Pattern Of Racketeering ................................................................ 16

        D.    Plaintiffs Fail To Plead Commission Of Predicate Acts Under
        Rules 12(b)(6) And 9(b)............................................................... 17

           i.  Plaintiffs Also Fail To Allege An Open-Ended Pattern Of
            RICO Activity ............................................................................ 21

        E.    Plaintiffs Cannot Demonstrate Proximate Causation............................ 22

        F.    Plaintiffs' RICO Conspiracy Claim Also Fails For The Same Reasons As Its RICO Claim 23

    III.    PLAINTIFFS' REMAINING CLAIMS SHOULD BE DISMISSED FOR
        FAILURE TO STATE A CLAIM UNDER RULE 12(b)(6) AND LACK
        OF SUBJECT MATTER JURISDICTION UNDER RULE 12(b)(1) ......................................... 24

        A.    Plaintiffs' Claims For Fraudulent Misrepresentation, Civil Conspiracy,
        Aiding And Abetting, And Unjust Enrichment Should Be Dismissed........................ 25

        B.    Plaintiffs Fail To Plead Claims For Fraudulent Conveyance Against 777 Partners As A
        Matter of Law ...................................................................... 25

        C.    Plaintiffs' Breach Of Contract Claims Should Be Dismissed............................ 27

           i.  Plaintiffs Fail To Plead The Neccesary Condition Precedent Under The Guaranty .............27

          ii.  Plaintiffs Fail To Plead A Breach Of The LSA, Sale Agreement, And The Servicing
            Agreement ........................................................................ 28

CONCLUSION ...................................................................................................... 30

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*4 K & D Corp. v. Concierge Auctions, LLC*,
2 F. Supp. 3d 525 (S.D.N.Y. 2014) ........................................................................18

*Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*,
404 F.3d 566 (2d Cir. 2005)...................................................................................25

*Allen v. Credit Suisse Sec. (USA) LLC*,
895 F.3d 214 (2d Cir. 2018)...................................................................................10

*Amusement Industry, Inc. v. Midland Avenue Associates*, LLC,
820 F.Supp.2d 510 (S.D.N.Y. 2011) ......................................................................26

*Appalachian Enters., Inc. v. ePayment Sols. Ltd.*,
No. 01 Civ. 11502 (GBD), 2004 WL 2813121 (S.D.N.Y. Dec. 8, 2004) ...............23

*Beck v. Manhattan College*,
537 F. Supp. 3d 584 (S.D.N.Y. 2021) ....................................................................25

*Bernstein v. Citibank, N.A.*,
No. 06 Civ. 15203 (DAB), 2008 WL 11516014 (S.D.N.Y. Dec. 1, 2008)........................ 28-29

*Brenner v. Philips, Appel & Walden, Inc.*,
No. 93 Civ. 7838 (JFK), 1997 WL 33471053 (S.D.N.Y. July 22, 1997) ...............26

*Brittingham v. Mobil Corp.*,
943 F.2d 297 (3d Cir. 1991)...................................................................................13

*Broccoli v. Ashworth*,
No. 21 Civ. 6931 (DAB), 2023 WL 2664770 (S.D.N.Y. Mar. 28, 2023) ........................18, 20,

*Carnegie-Mellon Univ. v. Cohill*,
484 U.S. 343 (1988).................................................................................................8

*DeFalco v. Bernas*,
244 F.3d 286 (2d Cir. 2001)...................................................................................20

*Democratic Nat'l Comm. v. Russian Federation*,
392 F. Supp. 3d 410 (S.D.N.Y. 2019) ....................................................................21

*Denney v. Deutsche Bank AG*,
443 F.3d 253 (2d Cir. 2006)........................................................................... 8-9, 11

*Discon, Inc. v. NYNEX Corp.*,
 93 F.3d 1055 (2d Cir. 1996), *judgment vacated on other grounds, NYNEX
 Corp. v. Discon, Inc.*, 525 U.S. 128 (1998) ........................................................................13, 24

*DiVittorio v. Equidyne Extractive Indus., Inc.*,
 822 F.2d 1242 (2d Cir.1987)............................................................................................18

*Emergency Physician Servs. of N.Y. v. UnitedHealth Grp., Inc.*,
 No. 20 Civ. 9183 (AJN), 2021 WL 4437166 (S.D.N.Y. Sept. 28, 2021) ................................22

*Exxon Mobil Corp. v. Allapattah Servs., Inc.*,
 545 U.S. 213 (2005)..........................................................................................................7

*First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.*,
 385 F.3d 159 (2d Cir. 2004).................................................................................. 10, 17, 23-24

*First Interregional Advisors Corp. v. Wolff*,
 956 F. Supp. 480 (S.D.N.Y. 1997) ...................................................................................18

*First Nationwide Bank v. Gelt Funding Corp.*,
 27 F.3d 763 (2d Cir. 1994)................................................................................................11

*Friedlander v. Rhoades*,
 962 F. Supp. 428 (S.D.N.Y. 1997) ...................................................................................14

*Geo-Group Communications, Inc. v. Chopra, et al.*,
 No. 15 Civ. 1756 (KPF), 2018 WL 3632498 (S.D.N.Y. July 30, 2018) ...............................26

*Goldfine v. Sichenzia*,
 118 F. Supp. 2d 392 (S.D.N.Y. 2000) ............................................................................9, 11

*Gross v. Waywell*,
 628 F. Supp. 2d 475 (S.D.N.Y. 2009) ...............................................................................8

*H.J. Inc. v. Nw. Bell Tel. Co.*,
 492 U.S. 229 (1989)..........................................................................................................21

*Handelsman v. Bedford Village Associates Ltd. Partnership*,
 213 F.3d 48 (2d Cir. 2000).................................................................................................7

*Heinrich v. Dean*,
 655 F. Supp. 3d 184 (S.D.N.Y. 2023) ...............................................................................12

*Herrick Co. v. SCS Commc'n, Inc.*,
 251 F.3d 315 (2d Cir. 2001)...............................................................................................6

*Historical Truth Productions, Inc. v. Sony Pictures Entertainment, Inc.*,
 No. 93 Civ. 5529 (MBM), 1995 WL 693189 (S.D.N.Y. 1995)...............................................8

*Holmes v. Sec. Inv. Prot. Corp.*,
    503 U.S. 258 (1992)............................................................................................................22

*Hughes v. Ester C Co.*,
    330 F. Supp. 3d 862 (E.D.N.Y. 2018) ................................................................................25

*Kalimantano GmbH v. Motion in Time, Inc.*,
    939 F. Supp. 2d 392 (S.D.N.Y. 2013) ..................................................................................9

*Karmilowicz v. Hartford Fin. Servs. Grp.*,
    No. 11 Civ. 539 (CM) (DCF), 2011 WL 2936013 (S.D.N.Y. July 14, 2011) ........................27

*Kolari v. N.Y.-Presbyterian Hosp.*,
    455 F.3d 118 (2d Cir. 2006)..................................................................................................8

*Marshall v. Hyundai Motor Am.*,
    51 F. Supp. 3d 451 (S.D.N.Y. 2014) ...................................................................................28

*McKevitt v. Mueller*,
    689 F. Supp. 2d 661 (S.D.N.Y. 2010) ...................................................................................6

*McLaughlin v. Anderson*,
    962 F.2d 187 (2d Cir. 1992)................................................................................................10

*Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.*,
    500 F.3d 171 (2d Cir. 2007)..................................................................................................7

*Motorola Credit Corp. v. Uzan*,
    322 F.3d 130 (2d Cir. 2003)................................................................................................11

*Moy v. Terranova*,
    No. CV 87-1578 (SJ), 1999 WL 118773 (E.D.N.Y. Mar. 2, 1999)........................................15

*Nahtel Corp. v. W. Virginia Pulp & Paper Co.*,
    141 F.2d 1 (2d Cir. 1944)....................................................................................................28

*Nasik Breeding & Rsch. Farm Ltd. v. Merck & Co.*,
    165 F. Supp. 2d 514 (S.D.N.Y. 2001) ..............................................................................9, 23

*Nomura Home Equity Loan, Inc.*,
    30 N.Y.3d 572, 581 (2017).................................................................................................27

*Physicians Mut. Ins. Co. v. Greystone Servicing Corp., Inc.*,
    No. 07 Civ. 10490 (NRB), 2009 WL 855648 (S.D.N.Y. Mar. 25, 2009)................................14

*Piccirilli v. Yonaty*,
    204 A.D.3d 1322 (3d Dep't 2022)........................................................................................27

iv

*R.C.M. Exec. Gallery Corp. v. Rols Cap. Co.*,
   No. 93 Civ. 8571 (JGK), 1997 WL 27059 (S.D.N.Y. Jan. 23, 1997)......................................24

Red Rock Sourcing LLC v. JGX LLC,
   No. 21 Civ. 1054 (JPC), 2024 WL 1243325 (S.D.N.Y. Mar. 22, 2024) .................................26

*Riverwoods Chappaqua v. Marine Midland Bank*,
   30 F.3d 339 (2d Cir. 1994).....................................................................................................13

*Roberts v. CR England, Inc.*,
   318 F.R.D. 457 (D. Utah 2017) ..............................................................................................15

*Schmidt v. Fleet Bank*,
   16 F. Supp. 2d 340 (S.D.N.Y. 1998) .........................................................................................9

*Sedima, S.P.R.L v. Imrex Co., Inc.*,
   473 U.S. 479 (1985)..................................................................................................................9

*Singh v. Deloitte LLP*,
   650 F. Supp. 3d 259 (S.D.N.Y. 2023) .......................................................................................6

*Sluka v. Estate of Herink*,
   No. CV 94-4999 (ARR), 1996 WL 612462 (E.D.N.Y. Aug. 13, 1996).................................15

*United States v. Strock*,
   982 F.3d 51 (2d Cir. 2020)......................................................................................................20

*Tinto PLC v. Vale S.A.*,
   No. 14 Civ. 3042 (RMB) (AJP), 2015 WL 7769534 (S.D.N.Y. Nov. 20, 2015) ...................21

*TheECheck.com, LLC v. NEMC Fin. Servs. Grp. Inc.,*
   No. 16 Civ. 8722 (PKC), 2017 WL 2627912 (S.D.N.Y. June 16, 2017)  ...............................23

*U1IT4Less, Inc. v. FedEx Corp.*,
   871 F.3d 199 (2d Cir. 2017)....................................................................................................12

*United States Fire Ins. Co. v. United Limousine Serv., Inc.*,
   303 F. Supp. 2d 432 (S.D.N.Y. 2004) .......................................................................................9

*Universal Reinsurance Co. v. St. Paul Fire & Marine Ins. Co.*,
   312 F.3d 82 (2d Cir. 2002).......................................................................................................7

*VAM Check Cashing Corp. v. Federal Ins. Co.*,
   699 F.3d 727 (2d Cir. 2012)....................................................................................................27

*Wade Park Land Holdings, LLC v. Kalikow*,
   589 F. Supp. 3d 335 (S.D.N.Y. 2022) ....................................................................................23

v

*Weaver v. James*,
No. CV 10-6609 (NRB), 2011 WL 4472062 (E.D.N.Y. Sept. 27, 2011)..................................8

*Wight v. Bankamerica Corp.*,
219 F.3d 79 (2d Cir. 2000)....................................................................................................18

*Williams v. Affinion Group, LLC*,
889 F.3d 116 (2d Cir. 2018)............................................................................................. 8-9

*WorldCom, Inc. v. Segway Marketing Ltd.*,
262 A.D.2d 164 (1st Dep't 1999) .........................................................................................28

*Zurich Am. Life Ins. Co. v. Nagel*,
590 F. Supp. 3d 702 (S.D.N.Y. 2022), *reconsideration denied*, 2022 WL
1173885 (S.D.N.Y. Apr. 20, 2022).......................................................................................22

**Statutes**

18 U.S.C. § 1961(1) ...............................................................................................................9

18 U.S.C. § 1962(c) ..........................................................................................2, 12, 15, 20, 23

18 U.S.C. § 1962(d) .............................................................................................................23

28 U.S.C. § 1332(a)(2)...................................................................................................... 6-7

28 U.S.C. § 1367....................................................................................................................8

DCL § 273..............................................................................................................................25

DCL § 274..............................................................................................................................25

DCL § 279..............................................................................................................................25

Fed R. Civ. P. 9(b) ........................................................................................................ 10, 17-18

Fed R. Civ. P. 12(b)(1)......................................................................................................6, 24

Fed R. Civ. P. 12(b)(6)...................................................................................................10, 17, 24

Defendants 777 Partners LLC ("777 Partners"), 600 Partners LLC ("600 Partners") (together, "HoldCos"), SPLCSS III LLC, Dorchester Receivables II LLC, Insurety Agency Services LLC, Signal SML 4 LLC (together, "Borrowers"), SuttonPark Capital LLC, Signal Medical Receivables LLC, Insurety Capital LLC (together, "Sellers"), and SuttonPark Servicing LLC ("Servicer"[1] and collectively with HoldCos, Borrowers, and Sellers, the "777 Entity Defendants") respectfully submit this memorandum of law in support of their motion to dismiss the Corrected Amended Complaint (ECF No. 187) (the "Complaint") of Plaintiffs Leadenhall Capital Partners LLP, Leadenhall Life Insurance and Linked Investments Fund PLC (collectively, "Leadenhall" or "Plaintiffs"). In support of this motion, the 777 Entity Defendants reference the October 10, 2024, declaration of Christopher J. O'Reilly ("O'Reilly Dec.") and the May 24, 2024, declaration of John G. McCarthy (ECF No. 86-1) ("McCarthy Dec.").

## PRELIMINARY STATEMENT

Plaintiffs' causes of action against the 777 Entity Defendants, a poorly concealed effort to shoehorn state law claims into federal court, should be dismissed. Complete diversity is absent, as both plaintiffs and the 777 Entity Defendants have citizenships attributable to foreign states. Absent complete diversity, this Court is deprived of diversity jurisdiction and the only claims over which the Court does have subject matter jurisdiction are Plaintiffs' RICO claims. However, Plaintiffs fail to adequately plead either a substantive RICO claim or a RICO conspiracy claim. Nonetheless, Plaintiffs' state law claims are independently dismissible because they either do not

---

[1] Plaintiffs impermissibly dropped from the Corrected Amended Complaint two defendants (Signal Servicing LLC and Insurety Servicing LLC) who were characterized as servicers, without making a motion pursuant to Fed. R. Civ. P. 21.

exist under New York law, are impermissibly duplicative, are too vague to be cognizable for the same reasons as the RICO claims, or they are contrary to the laws of contract construction.

Apparently dissatisfied with the prospect of recovery limited to contractual remedies for alleged breaches of the underlying agreements, Plaintiffs argue that a sprawling fraudulent scheme allegedly perpetrated by the 777 Entity Defendants exists without a basis in law or facts. Plaintiffs' allegations directly contradict what they would otherwise need to plead to allege a substantive RICO claim under section 1962(c). Plaintiffs do not allege: (i) standing, because Plaintiffs fail to plead damages that are clear and definite; (ii) that HoldCos, SuttonPark Capital LLC, the Servicer, SPLCSS III LLC, and Dorchester Receivables II LLC (collectively, the "777 RICO Defendants") engaged in any independent predicate acts, including the requirement that they each acted with fraudulent intent or knowledge of the false statements in the commission of the predicate acts; or (iii) that the 777 RICO Defendants engaged in racketeering activity distinct from the "enterprise."

For all the Complaint's contradictions that are ultimately fatal to its ability to survive the instant motion, Plaintiffs are committed to the theory that the 777 Entity Defendants are alter egos of one another, yet allegedly have distinct roles in the greater RICO enterprise. However, the 777 Entity Defendants cannot, as alleged, be at the mercy and control of Josh Wander and Steven Pasko and be characterized as mere alter egos without regard to corporate and legal formalities, *while at the same time* be capable of independently committing intentional acts of mail and wire fraud. Plaintiffs cannot have it both ways. Likewise, Plaintiffs' alter ego theory extinguishes the argument that the 777 RICO Defendants are distinct from the enterprise where each defendant's alleged racketeering acts are pled no differently from the collective activities of the members of the enterprise, of which the 777 RICO Defendants are also members.

2

## FACTUAL BACKGROUND

Plaintiffs allege twelve causes of action as to the 777 Entity Defendants. First, for Breach of the Loan and Security Agreement ("LSA") against HoldCos, Borrowers, Signal Medical Receivables LLC, and Insurety Capital LLC. Compl. ¶¶ 313-323. Second, for breach of the sale agreement ("Sale Agreement") against HoldCos, SuttonPark Capital LLC, Signal Medical Receivables LLC, Signal SML 4 LLC, Insurety Agency Services LLC, and Insurety Capital LLC. *Id.* ¶¶ 324-332. Third, for breach of the servicing agreement ("Servicing Agreement") and the LSA against 600 Partners, SuttonPark Capital LLC, and the Servicer. *Id.* ¶¶ 333-345. Fourth, for breach of the guaranty agreement ("Guaranty Agreement") against HoldCos. *Id.* ¶¶ 346-355. Fifth, for a civil Racketeer Influenced and Corrupt Organizations Act ("RICO") cause of action against the "777 RICO Defendants. *Id.* ¶¶ 356-371. Sixth, for civil RICO conspiracy against all defendants. *Id.* ¶¶ 372-383. Seventh, for fraudulent misrepresentation against HoldCos, SuttonPark Capital LLC, the Servicer, SPLCSS III LLC, and Dorchester Receivables II LLC. *Id.* ¶¶ 384-388. Eighth, for civil conspiracy to commit fraud against all defendants. *Id.* ¶¶ 389-393. Ninth, for aiding and abetting against HoldCos and SuttonPark Capital LLC. *Id.* ¶¶ 394-398. Tenth, for unjust enrichment against all defendants. *Id.* ¶¶ 399-402. Eleventh, for actual fraudulent transfer against 777 Partners. *Id.* ¶¶ 403-408. Twelfth, for constructive fraudulent transfer against 777 Partners. *Id.* ¶¶ 409-416.

Plaintiffs rely on their fifth and sixth causes of actions to confer this Court with jurisdiction as the other causes of actions are state law claims. However, the sixth cause of action cannot stand without the fifth. Therefore, Plaintiffs' civil RICO claim is the lone cause of action vesting this Court with jurisdiction. Plaintiffs' Complaint alleges a farfetched fraudulent scheme allegedly perpetrated by defendants. *Id.* ¶ 1. According to Plaintiffs, defendants induced Plaintiffs to loan money under the operative credit facility by falsely representing that the assets pledged as

3

collateral pursuant to the underlying agreements were owned free and clear by the Borrowers. *Id.* ¶ 6.

Plaintiffs repeatedly allege the identities of each of the 777 Entity Defendants' members "upon information and belief." *Id.* ¶¶ 25-26; 33-36. With respect to Defendants SPLCSS III LLC, SuttonPark Servicing LLC, SuttonPark Capital LLC, Dorchester Receivables II LLC, Signal SML 4 LLC, Signal Medical Receivables LLC, and Insurety Agency Services LLC, Plaintiffs make the specific representation that, upon information and belief, none of the members of those defendants is a citizen of the United Kingdom, Bermuda, Ireland or Japan such that the adverse parties are completely diverse from one another. *Id.* ¶¶ 33-36. However, 777 Re Ltd.'s ("777 Re") Bermudian and United Kingdom citizenship is attributable to each of the 777 Entity Defendants and makes diversity incomplete as to each of these entities. *See* O'Reilly Dec. ¶¶ 3-5, Exs. 1-3 (agreements memorializing 777 Re's membership interests in 777 Partners and 600 Partners); McCarthy Dec., Ex. 1 (777 Re's entity registration with Bermuda's Registrar of Companies).

Plaintiffs then allege that Borrowers and Servicer were contractually required to intermittently re-affirm that those respective borrowers owned the assets pledged as collateral to Leadenhall (the "Reports"). *Id.* ¶¶ 62-64. Plaintiffs nevertheless repeatedly mischaracterize these allegations as factual support for the commission of the predicate acts of mail and wire fraud by all the 777 RICO Defendants. Plaintiffs then allege that, in September 2022, an anonymous source tipped off Leadenhall that Wander allegedly did not own the pledged collateral free and clear. *Id.* ¶¶ 8 and 160. Following this tip, Leadenhall exercised its right under the contracts to audit various defendants. *Id.* ¶ 9. Wander allegedly admitted it was an embarrassing mistake and that he would work to correct it. *Id.* ¶¶ 12 and 127. Still, Plaintiffs allege that they accelerated the debt on March 15, 2024. *Id.* ¶ 177.

Plaintiffs' Complaint includes numerous allegations that the 777 Entity Defendants are a non-distinct collection of alter ego entities. *Id.* ¶¶ 2, 5, 231, 257-258, 322, 345, 354, 360, 363. These allegations create tension with Plaintiffs' theory of the case that the 777 RICO Defendants exist independently and are capable of committing acts of mail and wire fraud. However, Plaintiffs readily concede in the Complaint that the RICO claim against various defendants is merely because they are "affiliated." *Id.* ¶ 22.

Moreover, with respect to the 777 RICO Defendants and the 777 Entity Defendants that serve as members of the RICO Enterprise against whom Plaintiffs attempt to allege a RICO claim, the allegations are conclusory and presented upon "information and belief" and include:

- Pasko and Wander are operating a "giant shell game at best, and an outright Ponzi scheme at worst" to "shuffle" amongst its "alter-ego" entities. *Id.* ¶ 20;

- Pasko controls the entities acting as HoldCos, Sellers, Servicer, and Borrowers under the LSA. *Id.* ¶ 28;

- Wander and 777 Partners made "misrepresentations" and had "full knowledge that their employees had worked to alter data." *Id.* ¶ 115;

- Wander uses the 777 corporate system to freely transfer assets among a web of trade names without regard to corporate or legal formalities. *Id.* ¶ 212, n.10;

- 777 Partners and its "affiliates" owe A-CAP entities over $2 billion. *Id.* ¶ 241.

- Leadenhall is "yet another lender caught in this massive web of fraudulent enterprise." *Id.* ¶ 265.

In support of their assertion that each Report was fraudulent (*see id.* ¶160), Plaintiffs also allege that an insider, on an unknown date and on an unknown platform, warned that Reports were "photoshopped." *Id.* ¶ 163. Plaintiffs' Complaint then alleges they discovered that two Reports were incorrect after an "anonymous tip" and following the audits. *Id.* ¶ 105. Wander acknowledged the mistake and promised to correct same. *Id.* ¶ 12. The Complaint describes a scenario in which the 777 Entity Defendants cooperated with Plaintiffs during their audits and corrected any

inaccuracies as they were identified, rather than attempting to hide the errors. *Id.* ¶¶ 127, 133, 136-138. These allegations do not constitute fraud let alone a RICO claim or RICO conspiracy against each of the 777 RICO Defendants and the 777 Entity Defendants.

## **ARGUMENT**

### I.    THE COMPLAINT SHOULD BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION PURSUANT TO RULE 12(b)(1)

When confronted with motions to dismiss for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted, a court will first analyze the Rule 12(b)(1) motion to determine whether the court has the subject matter jurisdiction necessary to consider the merits of the action. *See Singh v. Deloitte LLP*, 650 F. Supp. 3d 259, 264 (S.D.N.Y. 2023); *McKevitt v. Mueller*, 689 F. Supp. 2d 661, 664 (S.D.N.Y. 2010). Moreover, the plaintiff bears the burden of proving that the court in question has jurisdiction by a preponderance of the evidence. *Id.* at 664-665. Where jurisdictional facts are disputed, a court has the power to consider matters external to the pleadings to determine whether jurisdiction indeed exists, such as affidavits, documents, and testimony. *Id.* at 665.

### A.    There Is Incomplete Diversity

The diversity statute provides for federal court jurisdiction over claims between citizens of a state and citizens of a foreign state, provided such diversity is complete between adverse parties. 28 U.S.C. § 1332(a)(2); *Herrick Co. v. SCS Commc'n, Inc.*, 251 F.3d 315, 322 (2d Cir. 2001). Complete diversity is destroyed where "on one side there are citizens and aliens and on the opposite side there are only aliens." *Universal Licensing Corp. v. Paolo del Lungo S.p.A.*, 293 F.3d 579, 580-581 (2d Cir. 2002). Here, Plaintiffs are subjects of foreign states as are HoldCos. *See* O'Reilly Dec. ¶¶ 3-4, Ex. 1; McCarthy Dec., Ex. 1. Considering each 777 Entity Defendant is a limited liability company ("LLC"), and an LLC's citizenship is determined by the citizenship of its

6

members, each 777 Entity Defendants' citizenship is attributable to Bermuda and/or the United Kingdom. *See* O'Reilly Dec. ¶ 5. The result here is incomplete diversity, depriving the Court of diversity subject matter jurisdiction. *See Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.*, 500 F.3d 171, 179 (2d Cir. 2007) (discussing *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 213, 553 (2005)).

As applied, plaintiff Leadenhall Capital Partners LLP is alleged to be organized as a limited liability partnership under the laws of England whose partners include a domiciliary of the United Kingdom, Bermuda, and Japan. Compl. ¶ 23. Like LLCs, the citizenship of a limited liability partnership is determined by the domicile of its partners. *Handelsman v. Bedford Village Associates Ltd. Partnership*, 213 F.3d 48, 52 (2d Cir. 2000). Likewise, with respect to HoldCos' citizenship, complete diversity does not exist because a member is a Bermuda based corporation – 777 Re, which is treated as a citizen or subject of the United Kingdom. *See Universal Reinsurance Co. v. St. Paul Fire & Marine Ins. Co.*, 312 F.3d 82, 86 (2d Cir. 2002) ("Universal [Ltd., a Bermuda-based corporation] must be considered a citizen or subject of the United Kingdom for purposes of federal jurisdiction under Section 1332(a)(2).")

On September 20, 2021, 777 Re purchased preferred units of 700 Partners and 600 Partners which was memorialized by a subscription agreement. *See* O'Reilly Dec. ¶¶ 3-4, Ex. 1. The membership interests were also memorialized in amendments to HoldCos' respective operating agreements. *Id.* at Exs. 2-3. As a result of the transactions consummated under the subscription agreement, the adverse parties in this matter are not completely diverse from each other. With Plaintiffs' and the 777 Entity Defendants' alien citizenship, diversity is destroyed.

7

B.    **There Is No Original Jurisdiction Over The State Law Claims**

As demonstrated further below, Plaintiffs' RICO claims are insufficient and should be dismissed at this early stage of the litigation. Under 28 U.S.C. § 1367, a court may decline to exercise supplemental jurisdiction over state law claims regardless of whether it has sustained or dismissed a purported claim to which it has original subject matter jurisdiction. *See Denney v. Deutsche Bank AG*, 443 F.3d 253, 266 (2d Cir. 2006) ("A district court usually should decline the exercise of supplemental jurisdiction when all federal claims have been dismissed at the pleading stage."). Accordingly, this Court should decline to exercise supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367 because of the early posture of this action. This is particularly the case where a court has dismissed the sole claim that provided subject matter jurisdiction. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988); *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006); *Weaver v. James*, No. CV 10-6609 (NRB), 2011 WL 4472062, at *5 (E.D.N.Y. Sept. 27, 2011); *Gross v. Waywell,* 628 F. Supp. 2d 475, 497 (S.D.N.Y. 2009); *Historical Truth Productions, Inc. v. Sony Pictures Entertainment, Inc.*, No. 93 Civ. 5529 (MBM), 1995 WL 693189 (S.D.N.Y. 1995) (supplemental jurisdiction declined where federal claim was dismissed at a relatively early stage in the litigation).

II.    **PLAINTIFFS' RICO CLAIMS SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM**

Plaintiffs' RICO claims are a transparent attempt to shoehorn routine (and deeply flawed) common law claims into an inapposite federal statutory regime enacted to address criminal syndicates. To plead a viable RICO claim, the "plaintiff must show: '(1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce." *Williams v. Affinion*

8

*Group, LLC*, 889 F.3d 116, 123-24 (2d Cir. 2018) (citations omitted). "Racketeering activity" includes "any act which is indictable" under specified provisions of Title 18 of the United States Code, including mail and wire fraud. 18 U.S.C. § 1961(1); *Sedima, S.P.R.L v. Imrex Co., Inc.*, 473 U.S. 479 (1985). In addition, a plaintiff can only recover under RICO when his or her actual loss becomes clear and definite. *Denney v. Deutsche Bank AG*, 443 F.3d 253, 266 (2d Cir. 2006).

Courts approach RICO claims with skepticism and have cautioned that "courts should strive to flush out frivolous RICO allegations at an early stage of the litigation. *Kalimantano GmbH v. Motion in Time, Inc.*, 939 F. Supp. 2d 392, 407 (S.D.N.Y. 2013); *Nasik Breeding & Rsch. Farm Ltd. v. Merck & Co.*, 165 F. Supp. 2d 514, 537 (S.D.N.Y. 2001) ("[C]ourts must always be on the lookout for the putative RICO case that is really nothing more than an ordinary fraud case clothed in the Emperor's trendy garb." (citation omitted)). In similar situations, courts have required the contract claims to be adjudicated first resolve the threshold issues of ripeness and standing prior to determining whether there was an injury under RICO. *See Goldfine v. Sichenzia*, 118 F. Supp. 2d 392, 398 (S.D.N.Y. 2000). Given the inevitable stigmatizing effect of RICO claims on defendants and the preference to have contract claims adjudicated prior to evaluating whether there is injury under the RICO framework (*Goldfine,* 118 F. Supp. 2d at 398), Leadenhall should not be permitted to move forward based on mere conjecture. *See United States Fire Ins. Co. v. United Limousine Serv., Inc.*, 303 F. Supp. 2d 432, 443 (S.D.N.Y. 2004) (quoting *Schmidt v. Fleet Bank*, 16 F. Supp. 2d 340, 346 (S.D.N.Y. 1998) (holding courts should flush out frivolous RICO claims at early stage of litigation)). Here, Plaintiffs allege all sorts of inactionable allegations, including about contemplated purchases of soccer clubs, news articles (Compl. ¶ 269), and other litigations (*id.* ¶ 243) to stigmatize defendants and distract from their failure to sufficiently plead a RICO claim.

Plaintiffs' RICO claims against the 777 RICO Defendants specifically warrant early scrutiny and must be dismissed for myriad reasons. These include Plaintiffs' failure to allege adequately and plausibly, among other things, clear and definite damages, that the 777 RICO Defendants engaged in any predicate acts that are ongoing, that the alleged violation(s) were proximate causes of any cognizable injury to Plaintiffs under RICO, or that the 777 RICO Defendants are distinct from the RICO enterprise and the alleged racketeering activity. Plaintiffs' deficient RICO claims are transparently alleged solely to improperly bring this action into federal court. Accordingly, they should be dismissed.

### A.  Legal Standard

Under Rule 12(b)(6), a district court is required to "accept[] the alleged facts as true and draw[] all reasonable inferences in plaintiffs' favor" but "bald assertions and conclusions of law will not suffice" and "nor will factual allegations that are wholly conclusory" *Allen v. Credit Suisse Sec. (USA) LLC*, 895 F.3d 214, 222 (2d Cir. 2018). Moreover, Rule 9(b) imposes a heightened pleading standard instructing that: "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Rule 9(b) applies to mail and wire fraud and requires a plaintiff not only to "alleg[e] the particular details of [the] fraud," but also to "allege facts that give rise to a strong inference of fraudulent intent." *First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 178-179 (2d Cir. 2004) (citations omitted). "Allegations of mail [or wire] fraud must be made with the particularity required by Federal Rule of Civil Procedure 9(b)[;]" *McLaughlin v. Anderson*, 962 F.2d 187, 191 (2d Cir. 1992). Plaintiffs' Complaint fails to satisfy both standards.

10

**B.      Plaintiffs Cannot Demonstrate Standing Because They Fail To Plead Damages That Are Clear And Definite**

A plaintiff can recover under RICO only when his or her actual loss becomes clear and definite. *Denney v. Deutsche Bank AG*, 443 F.3d 253, 266 (2d Cir. 2006); *First Nationwide Bank v. Gelt Funding Corp.,* 27 F.3d 763, 767–69 (2d Cir. 1994) (a RICO defendant is only liable for losses "actually suffered, only after the lender has exhausted the bargained-for remedies available to it... , and then only to the extent of the deficiency"); *Motorola Credit Corp. v. Uzan,* 322 F.3d 130, 135 (2d Cir. 2003) ("[A] cause of action does not accrue under RICO until the amount of damages becomes clear and definite."). Thus, "creditor Plaintiffs" like Leadenhall "must pursue" their state law claims, including those based on "their admitted contractual rights," before they can "allege 'clear and definite' damages" under RICO. *Goldfine,* 118 F. Supp. 2d at 398–99 ("holding that adjudication "of the State law claims" was "a necessary predicate to ripeness and standing" under RICO").

The Second Circuit's decision in *First Nationwide Bank* is similar to this action. It involved a RICO claim premised on allegations that defendants misrepresented the value of pledged collateral to obtain loans. 27 F.3d at 765. The plaintiff argued its RICO claim was ripe even though it had not foreclosed on those loans because, it contended, "it suffered immediate quantifiable injury when the loans were made because the loans were undersecured." *Id.* at 768. The Second Circuit rejected the plaintiff's argument and dismissed the claim. *Id.* at 768. Indeed, in a borrower/lender relationship, such as here, a secured lender must foreclose on the assets comprised of the collateral under the loan before having standing to sue under RICO. *Denney*, 443 F.3d at 266; *see also Motorola Credit Corp. v. Uzan*, 322 F.3d 130, 136 (2d Cir. 2003) ("In *First Nationwide,* this Court considered a bank's RICO claim arising out of fraudulently induced loans. We held that 'to the extent [the bank's] complaint is predicated on loans that have not been

11

foreclosed, its claims are not ripe for adjudication because it is uncertain whether [the bank] will sustain any injury cognizable under RICO.'")

Plaintiffs spend a great deal of time alleging that millions were double pledged without any specificity, but ultimately plead the accelerated debt available under contract as damages. Compl. ¶ 417. Here, Plaintiffs do not allege they foreclosed on the assets, which include the existing collateral that has not been alleged to have been double pledged. Likewise, Plaintiffs' only alleged damages are contract damages. Plaintiffs' allegations, here again, do not pass muster as they are not clear and definite as required in the Second Circuit. Therefore, Plaintiffs' RICO claims must be dismissed.

### C.    Plaintiffs Cannot Demonstrate An Enterprise

A RICO enterprise must (1) "be distinct from the person conducting the affairs of the enterprise" and (2) "exist separate and apart from the pattern of activity in which it engages." *Heinrich v. Dean*, 655 F. Supp. 3d 184, 190 (S.D.N.Y. 2023) (quotations omitted). Plaintiffs fail to allege an enterprise that is both distinct from the 777 RICO Defendants and the underlying alleged racketeering activity.

### i.    No Enterprise Is Alleged To Be Distinct From The 777 RICO Defendants

Plaintiffs' inability to allege an enterprise distinct from the person conducting the affairs, known as the culpable person, is fatal and incurable. Plaintiffs' attempts to elevate their allegations to fit within the RICO framework are unsuccessful because Plaintiffs' allegations directly contradict what is required to plead a substantive RICO claim under section 1962(c), including the distinct enterprise. The Second Circuit, like other circuits, has grown increasingly reluctant to tolerate evasion of the enterprise/culpable person distinctness requirement under section 1962. *See U1IT4Less, Inc. v. FedEx Corp.*, 871 F.3d 199, 205-206 (2d Cir. 2017) (rejecting plaintiff's

attempt to avoid the distinctness issue by alleging that the enterprise is a discrete, separately incorporated subsidiary of FedEx, in favor of finding that mere fact of separate legal incorporation does not satisfy the distinctness requirement because a corporate person cannot violate the statute by corrupting itself); *Riverwoods Chappaqua v. Marine Midland Bank*, 30 F.3d 339, 344-345 (2d Cir. 1994) (distinctness requirement may not be circumvented by alleging an enterprise that consists merely of a corporate defendant associated with its own employees or agents carrying on the regular affairs of the organization); *Discon, Inc. v. NYNEX Corp.*, 93 F.3d 1055 (2d Cir. 1996), *vacated on other grounds, NYNEX Corp. v. Discon, Inc.*, 525 U.S. 128 (1998) (declining to impose RICO liability on three legally separate entities [and putative RICO defendants] that operate within the scope of a unified corporate structure and are guided by a single corporate consciousness); *Brittingham v. Mobil Corp.*, 943 F.2d 297, 302 (3d Cir. 1991) ("When a defendant is itself a collective entity, it is more likely that the alleged enterprise is in reality no different from the association of individuals or entities that constitute the defendant or carry out its actions. Unlike individual defendants, a corporation can act only through its employees and agents.").

The 777 RICO Defendants, every other defendant in the action, and Wander and Pasko's shareholding vehicles through which they wholly own and supposedly control 777 Partners and 600 Partners, non-parties, JARM Capital LLC, MTCP LLC, SuttonPark Acquisition LLC, and SPA II LLC, are alleged to be members of a RICO association-in-fact enterprise (the "RICO Enterprise"). *Id.* ¶ 358. However, the RICO Defendants consist of King, Wander, Pasko, A-CAP, and the 777 RICO Defendants (collectively with the 777 RICO Defendants, the "RICO Defendants"). Plaintiffs attempt to evade the distinctness requirement between the 777 RICO Defendants and the RICO Enterprise by circularly alleging that the enterprise is distinct from any "defendant or group of affiliated defendants" and that each "person and entity in the enterprise"

13

plays a distinct role in the hierarchy. *Id.* ¶ 360. However, Plaintiffs are bound by their allegations characterizing the parties as alter egos. Plaintiffs allege that Borrowers, Sellers, Servicer, and Guarantors are alter egos of their owners, shareholders, and one another. *Id*. ¶¶ 42-43, 100, 231, 247-248, 250, 322, 332, 345, 354, 360, 363(c)-(f), 375, 377, 396. Plaintiffs also are bound by their conclusory allegations that the 777 Entity Defendants are controlled and dominated by Wander and Pasko who in turn are funded, controlled, and dominated by A-CAP and King, and exist as a part of a unified corporate structure that is guided by a single corporate consciousness. *Id.* ¶¶ 5, 20, 30, 42-43, 100, 194, 196-197, 199, 202, 207, 212 n.10, 212, 219-220, 230, 246 n.18, 247-248, 250, 276, 297, 299, 322, 332, 345, 354, 359-360, 361, 363-364, 371, 375, 396-397.

In contravention of well-established law, Plaintiffs allege: (i) an impermissible overlap between the 777 RICO Defendants and the RICO Enterprise; and (ii) that members of the RICO enterprise are merely "associating" with alleged alter egos and agents of themselves to form an enterprise that is not sufficiently distinct from itself. *See U1IT4Less, Inc.,* 871 F.3d at 205-206 ("A corporation can act only through its employees, subsidiaries, or agents. If a corporate defendant can be liable for participating in an enterprise comprised only of its agents—even if those agents are separately incorporated legal entities—then RICO liability will attach to any act of corporate wrongdoing and the statute's distinctness requirement will be rendered meaningless"); *Physicians Mut. Ins. Co. v. Greystone Servicing Corp., Inc.*, No. 07 Civ. 10490, 2009 WL 855648 (NRB), at *7 (S.D.N.Y. Mar. 25, 2009) (dismissing RICO claim where the enterprise on one hand, and the RICO defendants consisting of individual defendants and a corporate defendant on the other, were not distinct from one another where plaintiffs alleged that they: (i) were all alter egos and agents of one another; and (ii) were affiliated companies that shared common ownership and employees); *Friedlander v. Rhoades*, 962 F. Supp. 428, 431-432 (S.D.N.Y. 1997) (dismissing RICO claim and

14

determining that the lack of distinction was fatal where the alleged RICO enterprise and the individual RICO defendants were alter egos of one another); *Moy v. Terranova*, No. CV 87-1578 (SJ), 1999 WL 118773, at *4-5 (E.D.N.Y. Mar. 2, 1999) (dismissing 1962(c) claim because RICO person and RICO enterprise were one in the same); *Sluka v. Estate of Herink*, No. CV 94-4999 (ARR), 1996 WL 612462, at *5-8 (E.D.N.Y. Aug. 13, 1996) (dismissing RICO claim where association-in-fact enterprise consisting of several interrelated corporate defendants, individual shareholders, officers and agents was not distinct from the corporate defendants who were alleged to be alter egos of one another and the individual defendant); *Roberts v. CR England, Inc.*, 318 F.R.D. 457, 487-488 (D. Utah 2017) (discussing and applying case law within the Second Circuit in holding that culpable persons that are corporate entities are not distinct from members of an association-in-fact enterprise that is comprised of the same corporate entities via alter ego theory in a single corporate family).

Plaintiffs may not rely on their conclusory efforts to distinguish the corporate entities and individuals alleged to be part of the RICO Enterprise (Compl. ¶ 360 (a)-(e)) in light of their myriad allegations that 10 of the enterprise members are 777 Entity Defendants, which are allegedly alter egos of one another and are simultaneously alleged alter egos of Wander and Pasko. Compl. ¶¶ 247-248, 250. The facts in *Sluka v. Estate of Henrik* are similar. 1996 WL 612462, at *6. Here, and in *Sluka*, Plaintiffs allege that the RICO defendants conducted the affairs of the association-in-fact on behalf of all the enterprise members, both individual and corporate. *Id.*; Compl. ¶¶ 360-367. In both cases, however, the corporate defendants allegedly are "merely separate entities on paper" and are "merely alter egos of one another." 1996 WL 612462, at *6. This led to the *Sluka* court's conclusion that, as alleged: (i) either the individual defendants were conducting the affairs of each of the alter ego corporate defendants through a pattern of racketeering activity; or (ii) that

15

the individual defendants were conducting the affairs of an association-in-fact comprised of all the corporate defendants. *Id.* The court determined that in either scenario, the enterprise is not sufficiently distinct from any individual corporation or person. *Id.* The same analysis is appropriate here because Plaintiffs allege that the association-in-fact RICO Enterprise is comprised of a group of interrelated corporations, agents, subsidiaries and alter egos of King, Wander and Pasko.

Fundamentally, Plaintiffs cannot satisfy the enterprise element of the RICO claim in reliance on any purported distinction among the members of the RICO Enterprise. As a result, the members of the RICO Enterprise are impermissibly associating with a group of interrelated entities:

> Collectively, 777 Partners and 600 Partners own 100% of the equity of the entities acting as Sellers and Servicers under the LSA, and the Seller entities in turn own 100% of the equity of each of the entities acting as Borrowers [ ] under the LSA. While Josh Wander and Steven Pasko have designed their web of separate legal entities to obscure their domination over the entire structure, Wander and Pasko, in consultation with—and with the approval and indulgence of—King and A-CAP as discussed herein, control 777 Partners, 600 Partners, and each of their subsidiaries and affiliates [ ].

Compl. ¶ 30.

Ultimately, Plaintiffs' allegations that members of the enterprise, which include the RICO Defendants, are alter egos of one another and/or are dominated and controlled by each other preempts any argument that the RICO Enterprise is distinct from the RICO Defendants, much less the 777 RICO Defendants. *See id.* ¶¶ 194, 196, 197, 297, 299, 361 and 363(h).

### ii.     No Enterprise Is Alleged That Is Distinct From The Underlying Pattern of Racketeering

Finally, Plaintiffs cannot allege that the RICO Enterprise is sufficiently distinct from the alleged pattern of racketeering. Plaintiffs' attempt to allege that the RICO Enterprise exists independently is speculative, circular, and contradictory to other allegations, and thus fails. *See*

*First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 176 (2d Cir. 2004) (failure to detail any course of fraudulent or illegal conduct separate and distinct from the alleged predicate racketeering acts is fatal to RICO claim). Plaintiffs allege:

> The enterprise exists independent from its acts of racketeering activity because the 777 Entity Defendants exist as a family of corporate entities managed by Wander and Pasko, most of which predate the signing of the LSA here and that, at least in theory, carry on legitimate business in addition to acts of racketeering, and A-CAP and King's role as the funders and effective controllers predates and transcends the acts of racketeering at issue here.

Compl. ¶ 361.

It is impossible to reconcile Plaintiffs' putative theory of enterprise independence with the allegations scattered elsewhere that the enterprise is defined as an innately corrupt corporate structure whose ongoing business is defined by the underlying racketeering activity with the pervasive goal of enriching the individual defendants at the top. *Id.* ¶ 366 "Defendants' racketeering acts were a regular way of conducting their ongoing business with Plaintiffs and of conducting or participating in the ongoing RICO enterprise…" *Id.* Plaintiffs do not allege that the RICO Enterprise is engaged in any legitimate business ventures separate from the alleged fraudulent scheme. *Id.* ¶¶ 229, 257, 362, 364. Therefore, Plaintiffs' allegations are insufficient to allege an enterprise that is separate and apart from the pattern of activity in which it allegedly engages.

D.     **Plaintiffs Fail To Plead Commission Of Predicate Acts Under Rules 12(b)(6) And 9(b)**

Even if Plaintiffs are not bound by their alter ego allegations, Plaintiffs' RICO claims still fail because they have not adequately pled the commission of predicate acts by any of the 777 RICO Defendants. To state a RICO claim against each of the 777 RICO Defendants, Leadenhall "must allege, at a minimum," for each defendant, how it violated RICO through its own conduct.

17

*4 K & D Corp. v. Concierge Auctions, LLC*, 2 F. Supp. 3d 525, 537 (S.D.N.Y. 2014). Further, to allege fraud pursuant to Rule 9(b), a complaint must specify the time, place, speaker, and content of the alleged misrepresentations, explain how the misrepresentations were fraudulent and plead those events which give rise to a strong inference that the defendant had an intent to defraud, knowledge of the falsity, or a reckless disregard for the truth." *Broccoli v. Ashworth*, No. 21 Civ. 6931 (DAB), 2023 WL 2664770, at \*14 (S.D.N.Y. Mar. 28, 2023) (citations omitted). Although matters peculiarly within a defendant's knowledge may be pled "on information and belief," this does not mean that those matters may be pled without any detail at all; they require sufficient support. *DiVittorio v. Equidyne Extractive Indus., Inc.,* 822 F.2d 1242, 1247 (2d Cir. 1987) ("[T]he allegations must be accompanied by a statement of the facts upon which the belief is based."). Nor do allegations of motive and opportunity alone suffice as "the actual ... fraud alleged must be stated with particularity." *Wight v. Bankamerica Corp.,* 219 F.3d 79, 91 (2d Cir. 2000) (internal quotation marks omitted).

In *Broccoli*, this court examined the breadth of the RICO allegations against each individual defendant where plaintiff lumped them together. 2023 WL 2664770 at \*12. Most of the defendants were dismissed because of the lack of specific allegations against them. *Id.; see also 4 K & D Corp.*, 2 F. Supp. 3d at 540 n.10 (dismissing RICO claim against two defendants where plaintiff only made conclusory allegations against them and failed to identify "any specific act" of those defendants committing or assisting wire fraud); *First Interregional Advisors Corp. v. Wolff*, 956 F. Supp. 480, 485 (S.D.N.Y. 1997) (granting motion to dismiss RICO claim as to certain defendants where the complaint failed to "sufficiently allege mail and wire fraud as to *all* of the named defendants"). "Where a complaint names multiple defendants, that complaint must provide a plausible factual basis to distinguish the conduct of each of the defendants." *Soter Techs., LLC*

18

*v. IP Video Corp.*, 523 F. Supp. 3d 389, 411 (S.D.N.Y. 2021) (citations omitted).

Plaintiffs fail to adequately plead wire and mail fraud as to each 777 RICO Defendant because Plaintiffs do not (and cannot) allege each 777 RICO Defendant's required fraudulent intent in connection with their alleged commission of predicate acts. If, as Plaintiffs repeatedly allege, the entities are one in the same (*see supra* C.i.), the 777 RICO Defendants cannot act distinctly from one another and allegedly perform discrete actions in furtherance of a fraudulent scheme. Taken to its logical extreme, this would imply at the very least that any knowledge of falsity or fraudulent intent maintained by one 777 RICO Defendant in the commission of a predicate act, much less the act itself, can be imputed to another *ad infinitum*.

Plaintiffs impermissibly plead the predicate acts commissioned by the 777 RICO Defendants in reliance on the alter ego allegations. For example, SuttonPark Capital and HoldCos are alleged to have participated in and directed transmission of false and fraudulent Compliance Reports through the actions of their joint employees, Adnani and Bennett, by virtue of them having "received information from the SuttonPark Servicer that certain receivables were not eligible to be pledged as Collateral…." *Id.* ¶ 363(c). Further, Plaintiffs allege that:

> 777 Partners and 600 Partners participated in and directed the transmission of the false and fraudulent Compliance Reports described above, *including because Bennett and Adnani acted in part in their capacity as employees of 777 Partners' and 600 Capital Markets groups in taking the actions [described above in 363(a)-(c)], while they were also employees of SuttonPark Capital, and Bennett and Adnani did not act without being personally directed to do so by Wander, who jointly controlled 777 Partners and 600 Partners' with Pasko. Further, SuttonPark Capital, the SuttonPark Servicer, and the SuttonPark and Dorchester Borrowers were alter egos of 777 Partners and 600 Partners during the relevant period* [ ].

*Id.* ¶ 363(d) (emphasis added). Moreover, Plaintiffs allege that "Wander participated in and directed the transmission of the false and fraudulent Compliance Reports … because 777 Partners,

19

600 Partners, SuttonPark Capital, the SuttonPark Servicer, and then SuttonPark and Dorchester Borrowers were alter egos of Wander during the relevant period …". *Id.* ¶ 363(e). Plaintiffs are relying on the alleged fraudulent intent or knowledge of falsity that SuttonPark Capital and HoldCo employees, Adnani and Bennett, allegedly maintained when transmitting the false and fraudulent Compliance Reports to apply to the other 777 RICO Defendants. Apparently, as Plaintiffs further allege, this fraudulent intent originated with Wander who personally directed Adnani and Bennett's actions. *Id.* ¶ 363(d). Certainly, this is just one example of Plaintiffs' pleading overlap in fraudulent intent among the 777 RICO Defendants. *Id.* ¶ 363(f-h). Nowhere in the Complaint is any non-conclusory description of the distinct and fraudulent intent required by each RICO Defendant in conducting the predicate acts. *See*, *e.g., id.* ¶¶ 17, 396.

The *Broccoli* court was clear that attributing fraudulent intent to a RICO defendant as part of pleading its commission of a predicate act requires "alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Broccoli,* 2023 WL 2664770, at \*16 (citing *United States v. Strock*, 982 F.3d 51, 66 (2d Cir. 2020)). Contrary to this well-established law, Plaintiffs' bare allegations run afoul of the principle that "the focus of section 1962(c) is on the individual pattern of racketeering engaged in by a defendant, rather than the collective activities of the members of the enterprise…." *Broccoli,* 2023 WL 2664770, at \*13 (citing *DeFalco v. Bernas*, 244 F.3d 286, 306 (2d Cir. 2001)). If Plaintiffs are permitted to impute predicate acts to any defendant by weaponizing their alter ego allegations to satisfy the requirement that the 777 RICO Defendants must perform multiple predicate acts, it creates an impermissible end-run around the requirement to plead the commission of predicate acts by each RICO defendant. Further, Plaintiffs' most consequential RICO allegations are made upon information

20

and belief. Compl. ¶¶ 20, 28, 115, 212, n.10, 265, 395; *see supra* Factual Background. Plaintiffs fail to satisfy the highly specific and exacting framework that comprises the RICO statutory structure because their inherently contradictory allegations do not satisfy the elements of a RICO claim.

> **i.** **Plaintiffs Also Fail To Allege An Open-Ended Pattern Of RICO Activity**

Even if Plaintiffs plausibly alleged that the 777 RICO Defendants alleged commission of predicate acts—and they have not—their RICO claims would still be deficient because they have not alleged a *pattern* of racketeering activity. To prove a "pattern," a plaintiff must show that the predicate acts "amount to or pose a threat of continued criminal activity." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989). The continuity requirement refers "either to a closed period of repeated conduct, or to past conduct that by its [open-ended] nature projects into the future with a threat of repetition." *Id.* at 241. Under an open-ended theory of continuity, there must be plausible allegations of "a future threat of repetition"— not alleged misconduct that is "terminal in nature." *Democratic Nat'l Comm. v. Russian Federation*, 392 F. Supp. 3d 410, 445 (S.D.N.Y. 2019) (RICO claims dismissed); *Rio Tinto PLC v. Vale S.A.*, No. 14 Civ. 3042 (RMB) (AJP), 2015 WL 7769534, at *10 (S.D.N.Y. Nov. 20, 2015) (where the alleged scheme has "terminated" there can be no finding of open-ended continuity.)

Plaintiffs do not allege any ongoing wrongful conduct, nor do they allege a substantial period of predicate acts. Plaintiffs meekly assert that, again, *upon information and belief*, Leadenhall is "yet another lender caught in this massive web of fraudulent enterprise." *Id.* ¶ 265. Plaintiffs' RICO claims fail because they fail to allege a pattern of RICO activity.

### E.  Plaintiffs Cannot Demonstrate Proximate Causation

In addition to satisfying the substantive elements of a RICO claim, a plaintiff must have standing to assert the claim.  RICO standing requires a threshold showing that the defendant's alleged violation of Section 1962 was "a proximate cause of the plaintiff's injury." *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 767, 769 (2d Cir. 1994). A plaintiff does not have standing to assert a RICO claim unless he can allege a "direct relation between the injury asserted and the injurious conduct alleged."  *Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 268 (1992). Plaintiffs fail to satisfy proximate causation because they have not sufficiently alleged, as they must, that they relied on the alleged misrepresentations. *See Emergency Physician Servs. of N.Y. v. UnitedHealth Grp., Inc.*, No. 20 Civ. 9183 (AJN), 2021 WL 4437166, at *6 (S.D.N.Y. Sept. 28, 2021). Courts consider a variety of factors in evaluating whether a plaintiff's reliance was reasonable, including "whether the plaintiff received any 'clear and direct' signs of falsity, whether the plaintiff had access to relevant information, whether the plaintiff received a written (purported) confirmation of the truthfulness of the representations at issue, and whether the plaintiff is 'sophisticated.'" *Zurich Am. Life Ins. Co. v. Nagel*, 590 F. Supp. 3d 702, 724 (S.D.N.Y. 2022), *reconsideration denied*, 2022 WL 1173885 (S.D.N.Y. Apr. 20, 2022) (citations omitted).

Plaintiffs do not adequately allege that they reasonably relied on the Reports. Plaintiffs repeatedly audited the 777 Entity Defendants due to a "tip." *Id.* ¶ 106. Contrary to Plaintiffs' description of a wide-ranging fraudulent scheme, the Complaint tells a story of the 777 Entity Defendants collaborating with Plaintiffs during its audits and immediately correcting records when they were inaccurate, not concealing. *Id.* ¶¶ 127, 133, 136-138. Moreover, the Complaint alleges that the Servicer began correcting its own records and reporting same without Plaintiffs' intervention. *Id.* ¶¶ 136-138. Plaintiffs' RICO claims fail because they fail to allege proximate

22

causation and because they have not properly alleged predicate acts from which to trace alleged injury.

**F.      Plaintiffs' RICO Conspiracy Claim Also Fails For The Same Reasons As Its RICO Claim**

Plaintiffs' have not plausibly alleged a RICO conspiracy — an agreement allegedly entered by each of the 777 Entity Defendants to commit predicate acts nor have they plausibly alleged a substantive violation of section 1962(c) by each. Instead, Plaintiffs rely on improper group pleading. In the Second Circuit, a plaintiff violates Rule 8 when it engages in "group pleading"— *i.e.*, making allegations against a group of defendants generally instead of pleading the specifics of a claim against each of the defendants individually. *TheECheck.com, LLC v. NEMC Fin. Servs. Grp. Inc.,* No. 16 Civ. 8722 (PKC), 2017 WL 2627912, at *2 (S.D.N.Y. June 16, 2017) (dismissing claims based on the complaint's group pleading allegations); *Appalachian Enters., Inc. v. ePayment Sols. Ltd.,* No. 01 Civ. 11502 (GBD), 2004 WL 2813121, at *7 (S.D.N.Y. Dec. 8, 2004) (dismissing complaint where plaintiff "lump[ed] all the defendants together and fail[ed] to distinguish their conduct" (internal quotation marks omitted).) Plaintiffs impermissibly group plead by virtue of subsidiary status, "…Insurety Borrower, Signal Borrower, Insurety Capital, and Signal Medical were also parties to the agreement that constitutes this conspiracy, because all of those entities were controlled by Wander and Pasko…" Compl. ¶ 375.

Further, where a plaintiff fails to plead a substantive RICO violation, he cannot maintain a RICO conspiracy claim. *Wade Park Land Holdings, LLC v. Kalikow*, 589 F. Supp. 3d 335, 384 (S.D.N.Y. 2022) ("In this Circuit, when the allegations of a complaint fail to establish a substantive RICO violation, they also do not establish a RICO conspiracy claim."); *Nasik*, 165 F. Supp. 2d at 540 ("Because [plaintiff] has not asserted facts sufficient to plead a claim under Section 1962(c), its claim under Section 1962(d) must also be dismissed."); *First Cap. Asset Mgmt., Inc. v.*

23

*Satinwood, Inc.*, 385 F.3d 159, 182 (2d Cir. 2004); *R.C.M. Exec. Gallery Corp. v. Rols Cap. Co.*, No. 93 Civ. 8571 (JGK), 1997 WL 27059, at *10 (S.D.N.Y. Jan. 23, 1997); *First Capital Asset Mgmt.*, 385 F.3d at 164; *Discon, Inc.*, 93 F.3d at 1064 (a RICO conspiracy claim "necessarily must fail" if the substantive RICO claims are deficient). Because Plaintiffs do not adequately allege a substantive RICO violation by each of the 777 Entity Defendants, their RICO conspiracy claim fails as to the 777 Entity Defendants with their substantive RICO claim.

### III. PLAINTIFFS' REMAINING CLAIMS SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM UNDER RULE 12(b)(6) AND LACK OF SUBJECT MATTER JURISDICTION UNDER RULE 12(b)(1)

Having addressed Plaintiffs' two federal claims, Plaintiffs' remaining state law claims include: (1) breach of the LSA against HoldCos, Borrowers, Signal Medical Receivables LLC, and Insurety Capital LLC (Compl. ¶¶ 313-323); (2) breach of the Sale agreement against HoldCos, SuttonPark Capital LLC, Signal Medical Receivables LLC, Signal SML 4 LLC, Insurety Agency Services LLC, and Insurety Capital LLC (*Id.* ¶¶ 324-332); (3) breach of the Servicing Agreement and the LSA against 600 Partners, SuttonPark Capital LLC, and the Servicer (*Id.* ¶¶ 333-345); (4) breach of the Guaranty Agreement against HoldCos (*Id.* ¶¶ 346-355); (5) fraudulent misrepresentation against HoldCos, SuttonPark Capital LLC, the Servicer, SPLCSS III LLC, and Dorchester Receivables II LLC (*Id.* ¶¶ 384-388); (6) civil conspiracy to commit fraud against all defendants (*Id.* ¶¶ 389-393); (7) aiding and abetting fraud against HoldCos and SuttonPark Capital LLC (*Id.* ¶¶ 394-398); (8) unjust enrichment against all defendants (*Id.* ¶¶ 399-402); (9) actual fraudulent transfer against 777 Partners (*Id.* ¶¶ 403-408); and (10) constructive fraudulent transfer against 777 Partners. *Id.* ¶¶ 409-416.

Complete diversity is absent, and the Court should decline to exercise supplemental jurisdiction over the remaining claims. Plaintiffs' state law claims also fail for independent

24

reasons.

**A. Plaintiffs' Claims For Fraudulent Misrepresentation, Civil Conspiracy, Aiding And Abetting, And Unjust Enrichment Should Be Dismissed**

First, Leadenhall's cause of action for fraudulent misrepresentation should be dismissed because it fails to allege fraud for the reasons discussed herein. *See supra* II.D. Second, there is no cause of action for civil conspiracy under New York law. *Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 591 (2d Cir. 2005). In any event, Leadenhall fails to plausibly allege an agreement to conspire. *See supra* II.F. Third, Leadenhall's cause of action for aiding and abetting fraud should be dismissed because it fails to plausibly allege how 777 Partners, 600 Partners, and SuttonPark Capital LLC assisted in fraud beyond vague and inapplicable allegations of "domination" and "direction." *See supra* II.C.i. Fourth, Leadenhall's cause of action for unjust enrichment should be dismissed as duplicative of its contract claims. *See Hughes v. Ester C Co.*, 330 F. Supp. 3d 862, 877 (E.D.N.Y. 2018). Under New York law, where an unjust enrichment claim duplicates a claim for breach of a valid, enforceable contractual obligation, the unjust enrichment claim should be dismissed. *Beck v. Manhattan College*, 537 F. Supp. 3d 584 (S.D.N.Y. 2021).

**B. Plaintiffs Fail To Plead Claims For Fraudulent Conveyance Against 777 Partners As A Matter of Law**

Plaintiffs have asserted two causes of action against 777 Partners (among other defendants) for actual fraudulent transfer pursuant to New York Debtor and Creditor Law ("DCL") § 273(a) and constructive fraudulent transfer under New York Debtor and Creditor Law §§ 273(a)(2) and 274, respectively. Both claims arise out of the same transaction. The claims seek to avoid a payment obligation of 777 Partners owed to A-CAP to repay a loan made by A-CAP to an entity named JARM Capital LLC ("JARM") and liens granted by 777 Partners in favor of A-CAP to

25

secure that obligation, and to rescind payments made by JARM to A-CAP to satisfy that obligation. Compl. ¶¶ 225-229, 403-416. The Complaint seeks no relief *from 777 Partners* with respect to these causes of action.

Although the 777 Entity Defendants dispute that any claim exists under New York Law (*see* DCL § 279), it is well-settled that under New York law that "the transferor of the property— that is, the debtor—is not the proper defendant in a fraudulent conveyance claim. Nor may a claim be brought against parties who merely participated in the transfer but did not benefit from it." *Amusement Industry, Inc. v. Midland Avenue Associates*, LLC, 820 F.Supp.2d 510, 527 (S.D.N.Y. 2011) (citing *Brenner v. Philips, Appel & Walden, Inc*., No. 93 Civ. 7838 (JFK), 1997 WL 33471053, *5 (S.D.N.Y. July 22, 1997) (holding that "a cause of action for fraudulent conveyances does not lie against a party who is neither a transferee nor a beneficiary of the alleged fraudulent conveyance."); *See Red Rock Sourcing LLC v. JGX LLC,* No. 21 Civ. 1054 (JPC), 2024 WL 1243325, at *40 (S.D.N.Y. Mar. 22, 2024). New York "fraudulent conveyance statutes are aimed at the improperly-transferred funds, not at the alleged malefactors who made the transfers*." Geo-Group Communications, Inc. v. Chopra, et al*., No. 15 Civ. 1756 (KPF), 2018 WL 3632498, *9 (S.D.N.Y. July 30, 2018). Accordingly, a party may not be held liable for a constructive or intentional fraudulent transfer in which he was neither the transferee nor the beneficiary of the transfer. *Id*.

The transfers Leadenhall seeks to avoid are (1) 777 Partners's obligation to pay the loan from Haymarket to JARM, (2) liens granted by 777 Partners to secure the loan made to JARM, and (3) payments made by JARM to repay Haymarket's loan to JARM. Compl. ¶¶ 227, 407, 416. The Complaint contains no allegations that 777 Partners were either transferees or beneficiaries of the allegedly fraudulent transfers and, in fact, alleges that 777 Partners made the transfers for no

26

consideration. *Id*. ¶¶ 225, 407, 411. Because 777 Partners was the transferor, not the transferee or alleged beneficiary of the transfers, it must be dismissed as a defendant from Counts Eleven and Twelve as a matter of law.

### C.    Plaintiffs' Breach Of Contract Claims Should Be Dismissed

#### i.    Plaintiffs Fail To Plead The Necessary Condition Precedent Under The Guaranty

Leadenhall has not adequately alleged the condition precedent for any potential liability under the Guaranty. *See Karmilowicz v. Hartford Fin. Servs. Grp.*, No. 11 Civ. 539 (CM) (DCF), 2011 WL 2936013, at *10 (S.D.N.Y. July 14, 2011) ("Conditions precedent must be literally observed when a contract's language unmistakably expresses them."). Here, the condition precedent to eligibility for relief under the Guaranty requires the occurrence of a particular "Trigger Event" under the Guaranty and its continuing occurrence. Compl. ¶¶ 86, 97. The alleged "Trigger Event" is based on "any failure of a Borrower to own the Collateral pledged by such Borrower pursuant to the Loan and Security Agreement, in each case free and clear of all liens, security interests, or encumbrances [ ] *solely as a result of the action or inaction* of such Borrower or a Guarantor….") (emphasis added). *Id*. ¶ 86. But the Complaint does not allege such exclusive action or inaction of a Borrower or Guarantor and is therefore deficient. *Id*. ¶¶ 349, 351. *Compare id*. ¶ 93 (LSA at § 7.01(d)) and *id*. ¶ 349 (Guaranty Agreement § 2(a)).

Moreover, to ignore the requirement under the Guaranty that the condition precedent must be satisfied to be eligible for relief would be contrary to well-established law that a court should not adopt a construction of a contract which will operate to leave a provision of a contract without force and effect. *VAM Check Cashing Corp. v. Federal Ins. Co.*, 699 F.3d 727, 731 (2d Cir. 2012); *Nomura Home Equity Loan, Inc.*, 30 N.Y.3d 572, 581 (2017); *Piccirilli v. Yonaty*, 204 A.D.3d 1322, 1324-1325 (3d Dep't 2022). In other words, reading the requirement to satisfy the condition

27

precedent out of the Guaranty would be an unreasonable interpretation of the Guaranty and against well-settled law.

### ii.    Plaintiffs Fail To Plead A Breach Of The LSA, Sale Agreement, And The Servicing Agreement

Finally, the remaining claims for breach of the LSA, Sale Agreement, and Servicing Agreement should be dismissed, as the Plaintiffs' allegations of alter ego liability are merely conclusory. Notably, Plaintiffs have even asserted alter ego liability against defendants who are already parties to the respective contract. The Complaint must "set forth the terms of the agreement upon which liability is predicated." *Marshall v. Hyundai Motor Am.*, 51 F. Supp. 3d 451, 469 (S.D.N.Y. 2014). Failing to allege which provisions of which contracts were breached is fatal to a breach of contract claim. *See Bernstein v. Citibank, N.A.*, No. 06-Civ-15203 (DAB), 2008 WL 11516014, at *3 (S.D.N.Y. Dec. 1, 2008) (dismissing breach of contract claim when plaintiff did not set forth the terms of the agreement upon which liability was based and did not identify what the obligations of the parties were). Absent abuse of the corporate form, a non-signatory will not be bound by the contract. *See WorldCom, Inc. v. Segway Marketing Ltd.*, 262 A.D.2d 164, 693 (1st Dep't 1999). Alter ego liability is a theory for recovery against non-signatories. *See Nahtel Corp. v. W. Virginia Pulp & Paper Co.,* 141 F.2d 1 (2d Cir. 1944).

First, with respect to the LSA, Plaintiffs allege "[t]he LSA is a … agreement between Plaintiffs and Borrowers, as well as Sellers, and servicers." *Id.* ¶ 314. However, Plaintiffs allege alter ego liability as to the HoldCos and Sellers. *Id.* First Claim For Relief. Notably absent are any allegations about the Servicer at all. *Id.* ¶ 313-323. Second, with respect to the Sale Agreement, Plaintiffs allege "[t]he Sale Agreements … are between … the Borrowers and … Sellers." *Id.* ¶ 325. Here again, Plaintiffs allege alter ego liability as to the HoldCos and Borrowers (*id.* ¶ 322) and intended third-party beneficiary status as to Plaintiffs (*Id.* ¶ 325). Third, with respect to the

28

Servicing Agreement, Plaintiffs do not allege that the 600 Partners or SuttonPark Capital are parties and do not mention SuttonPark Capital at all. *Id.* ¶ 336. Plaintiffs again allege alter ego liability as to 600 Partners. Plaintiffs' allegations are incognizable.

Like Plaintiffs' fatal alter ego allegations with respect to its RICO claim (*see supra* C.i.), Plaintiffs' distinctiveness allegations foreclose on their ability to claim alter ego liability under the contracts. *Id.* ¶ 360 ("…together all Defendants and the shareholding vehicles form a RICO enterprise alleged here distinct from any Defendant or group of affiliated Defendants…"). Plaintiffs also fail to specify which provisions of which contracts the defendants allegedly breached as recognized in *Bernstein*. 2008 WL 11516014, at *3. Indeed, unsatisfied with the agreed obligations of the defendants who are parties to the respective contract, Plaintiffs fatally rely on alter ego liability instead. While all the contract claims should be dismissed, at a minimum, the alter ego liability defendants and defendants for which no allegations are made at all should be dismissed. Breach of the Sale Agreement should be dismissed in its entirety because Leadenhall does not properly allege its status as an intended third-party beneficiary.

## **CONCLUSION**

For the foregoing reasons, the 777 Entity Defendants respectfully request that the Court

grant their motion and enter an order dismissing the Complaint in its entirety.

Dated:  New York, New York
           October 10, 2024

SMITH, GAMBRELL & RUSSELL LLP

By: /s/ John G. McCarthy
        John G. McCarthy
        David A. Pellegrino
        Katie L. Schwartz
        Ryan J. Solfaro
1301 Avenue of the Americas, 21st Floor
New York, New York 10019
(212) 907-9700
jmcarthy@sgrlaw.com
dpellegrino@sgrlaw.com

*Attorneys for the 777 Entity Defendants*

30

## CERTIFICATE OF WORD COUNT COMPLIANCE

We certify that this memorandum of law complies with II.D. of the Individual Practices

of Judge John G. Koeltl and according to Microsoft Word contains 9,206 words exclusive of the

caption, tables, and signature blocks.

Dated:  New York, New York
        October 10, 2024

                                        By: */s/ John G. McCarthy*
                                            John G. McCarthy