UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

LEADENHALL CAPITAL PARTNERS LLP
and LEADENHALL LIFE INSURANCE
LINKED INVESTMENTS FUND PLC,

|  |  |
|---|---|
| Plaintiffs, | No. 24-CV-03453 (JGK) |
| v. | Hon. John G. Koeltl |
| JOSH WANDER, STEVEN PASKO, KENNETH KING, 777 PARTNERS LLC, 600 PARTNERS LLC, SPLCSS III LLC, SIGNAL SML 4 LLC, INSURETY AGENCY SERVICES LLC, DORCHESTER RECEIVABLES II LLC, SUTTONPARK CAPITAL LLC, SIGNAL MEDICAL RECEIVABLES LLC, INSURETY CAPITAL LLC, SUTTONPARK SERVICING LLC, SIGNAL SERVICING LLC, INSURETY SERVICING LLC, and ADVANTAGE CAPITAL HOLDINGS LLC, | ORAL ARGUMENT REQUESTED |
| Defendants. | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT STEVEN PASKO'S MOTION TO DISMISS

i

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................................... 1

BACKGROUND ................................................................................................................... 3

    A.  Plaintiffs Rely on the LSA's Forum Selection Clause to Support the Exercise of Personal Jurisdiction over the 777 Entity Defendants ....................................................... 3

    B.  Plaintiffs' Allegations Are Insufficient to Render Mr. Pasko Subject to the LSA's Forum Selection Clause ........................................................................................... 4

    C.  The Alleged Contacts Between Mr. Pasko and New York are Conclusory and Untethered to Plaintiffs' Claims .......................................................................... 5

ARGUMENT ....................................................................................................................... 6

    I.    PLAINTIFFS' CLAIMS AGAINST MR. PASKO FAIL FOR LACK OF PERSONAL JURISDICTION ...................................................................................................... 5

    A.  Plaintiffs Have Failed to Satisfy Either Prong of the New York Long-Arm Statute ....... 7

    B.  Plaintiffs Cannot Cure Their Failure to Plead Long-Arm Jurisdiction Through Conclusory Allegations of Supposed Domination and Control ...................................... 8

    C.  By Signing the LSA in His Corporate Capacity, Mr. Pasko Did Not Render Himself Subject to the LSA's Forum Selection Clause ............................................................. 10

        1.  Non-Party Signatories to a Contract Generally Are Not Subject to Its Forum Selection Clause .............................................................................................. 10

        2.  The Narrow Exception to the General Rule Against Subjecting Non-Parties to Forum Selection Clauses Is Inapplicable Here ...................................................... 11

        3.  Other Cases Finding that Non-Parties Are Subject to a Contract's Forum Selection Clause Are Distinguishable or Incompatible with Due Process ................................. 19

    II.   PLAINTIFFS' CLAIMS SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM ................................................................................................................ 21

CONCLUSION .................................................................................................................. 23

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                      **Page(s)**

*Agency Rent a Car Sys., Inc. v. Grand Rent a Car Corp.*,
98 F.3d 25 (2d Cir. 1996) ................................................................................... 8

*Arcadia Biosciences, Inc. v. Vilmorin & Cie*,
356 F. Supp. 3d 379 (S.D.N.Y. 2019) ..................................................... 12, 20, 21

*Bentivoglio v. Event Cardio Grp., Inc.*,
2019 WL 6341130 (S.D.N.Y. Nov. 27, 2019) ...................................................... 16

*Beskrone v. Berlin*,
656 F. Supp. 3d 496 (S.D.N.Y. 2023) ...................................................... 7, 12, 20

*Best Van Lines, Inc. v. Walker*,
490 F.3d 239 (2d Cir. 2007) ................................................................................. 6

*Bonnant v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
467 F. App'x 4 (2d Cir. 2012) ............................................................................ 10

*Bracken v. MH Pillars Inc.*,
2016 WL 7496735 (S.D.N.Y. Dec. 29, 2016) ....................................................... 7

*Brodie v. Green Spot Foods, LLC*,
2020 WL 7027594 (S.D.N.Y. Nov. 30, 2020) ...................................................... 7

*Broumand v. Joseph*,
522 F. Supp. 3d 8 (S.D.N.Y. 2021) ..................................................................... 6

*Centauro Liquid Opportunities Master Fund, L.P. v. Bazzoni, et al.*,
2016 WL 5719793 (S.D.N.Y. Sept. 30, 2016) .................................................... 19

*Charles Schwab Corp. v. Bank of Am. Corp.*,
883 F.3d 68 (2d Cir. 2018) ................................................................................... 6

*Clarke v. TRIGO U.S., Inc.*,
2023 WL 2456814 (S.D.N.Y. Mar. 10, 2023) ............................................ 12, 13, 20

*Curtis & Assocs., P.C. v. Law Offices of David M. Bushman, Esq.*,
758 F. Supp. 2d 153 (E.D.N.Y. 2010) ............................................................... 21

*Daimler AAG v. Bauman*,
571 U.S. 117 (2014) ............................................................................................. 6

*Dragon State International Limited v. Keyuan Petrochemicals, Inc.*,
2016 WL 439022 (S.D.N.Y. Feb. 3, 2016) ................................................................. 21

*Firefly Equities LLC v. Ultimate Combustion Co.*,
736 F. Supp. 2d 797 (S.D.N.Y. 2010) ....................................................................... 20

*Firefly Equities LLC v. Ultimate Combustion Co.*,
2010 WL 5174358 (S.D.N.Y. Dec. 14, 2010) ............................................................ 20

*GlaxoSmithKline LLC v. Laclede, Inc.*,
2019 WL 293329 (S.D.N.Y. Jan. 23, 2019) ............................................................... 20

*Glob. Network Commc'ns, Inc. v. City of New York*,
458 F.3d 150 (2d Cir. 2006) ............................................................................... 17, 18

*HSM Holdings, LLC v. Mantu I.M. Mobile Ltd.*,
2021 WL 918556 (S.D.N.Y. Mar. 10, 2021)........................................................*Passim*

*Island Seafood Co. v. Golub Corp.*,
303 A.D.2d 892 (3d Dep't 2003)................................................................................. 9

*In re JMK Constr. Grp., Ltd.*,
502 B.R. 396 (Bankr. S.D.N.Y. 2013)......................................................................... 9

*Italian Exhibition Grp. USA, Inc. v. Bartolozzi*,
2023 WL 7301810 (S.D.N.Y. Nov. 6, 2023).............................................................. 19

*JSC Foreign Econ. Ass'n Technostroyexport v. Intn'l Dev. & Trade Servs., Inc.*,
306 F. Supp. 2d 482 (S.D.N.Y. 2004) ....................................................................... 18

*Koh v. Koo*,
2023 WL 5352786 (S.D.N.Y. Aug. 21, 2023)................................................. 12, 13, 21

*Leviton Mfg. Co. v. Reeve*,
942 F. Supp. 2d 244 (E.D.N.Y. 2013) ....................................................................... 19

*Liberty Highrise Pvt. Ltd. v. Praxis Energy Agents DMCC*,
632 F. Supp. 3d 562 (S.D.N.Y. 2022) ....................................................................... 13

*LiquidX Inc. v. Brooklawn Cap., LLC*,
254 F. Supp. 3d 609 (S.D.N.Y. 2017) ....................................................................... 16

*Long Side Ventures LLC v. Hempacco Co.*,
2023 WL 6386888 (S.D.N.Y. Sept. 29, 2023) ..................................................... 13, 18

*Megna v. Biocomp Lab'ys Inc.*,
166 F. Supp. 3d 493 (S.D.N.Y. 2016) ......................................................................... 7

iv

*Mersen USA EP Corp. v. TDK Electronics Inc.*,
  594 F. Supp. 3d 570 (S.D.N.Y. 2022) ........................................................................ 12, 13, 21

*Miller v. Lazard, Ltd.*,
  473 F. Supp. 2d 571 (S.D.N.Y. 2007) ........................................................................ 17

*Mueller v. Michael Janssen Gallery Pte. Ltd.*,
  225 F. Supp. 3d 201 (S.D.N.Y. 2016) ........................................................................ 23

*Nebraskaland, Inc. v. Ryan*,
  2022 WL 4486736 (Bankr. E.D.N.Y. Sept. 27, 2022) ................................................ 14

*Ng v. Adler*,
  467 B.R. 279 (Bankr. E.D.N.Y. 2012) ........................................................................ 14

*OOO v. Empire United Lines Co.*,
  557 F. App'x 40 (2d Cir. 2014) .................................................................................. 13

*Palazzo v. Corio*,
  232 F.3d 38 (2d Cir. 2000) ........................................................................................ 6

*Physicians Mut. Ins. Co. v. Greystone Servicing Corp., Inc.*,
  2009 WL 855648 (S.D.N.Y. Mar. 25, 2009) .............................................................. 22

*Pilates, Inc. v. Current Concepts Kenneth Endelman*,
  1996 WL 599654 (S.D.N.Y. Oct. 18, 1996) ................................................................ 8

*RedHawk Holdings Corp. v. Craig Invs., LLC*,
  2016 WL 6143355 (S.D.N.Y. Oct. 19, 2016) .............................................................. 20

*Roxx Allison Ltd. v. Jewelers Inc.*,
  385 F. Supp. 3d 377 (S.D.N.Y. 2019) ........................................................................ 4

*Schwartz v. Sensei, LLC*,
  2020 WL 5817010 (S.D.N.Y. Sept. 30, 2020) ........................................................... 9, 18

*SNS Bank, N.V. v Citibank, N.A.*,
  7 A.D.3d 352 (1st Dep't 2004) .................................................................................. 8

*Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*,
  2023 WL 4159358 (S.D.N.Y. June 2, 2023) .............................................................. 10

*SungChang Interfashion Co. v. Stone Mountain Accessories, Inc.*,
  2013 WL 5366373 (S.D.N.Y. Sept. 25, 2013) ........................................................... 23

*United Feature Syndicate, Inc. v. Miller Features Syndicate, Inc.*,
  216 F. Supp. 2d 198 (S.D.N.Y. 2002) ...................................................................... 15

*V'Soske, Inc. v. Vsoske.Com*,
  2001 WL 546567 (S.D.N.Y. May 23, 2001) .......................................................... 10

*Waldman v. Palestine Liberation Org.*,
  835 F.3d 317 (2d Cir. 2016) ..................................................................................... 6

*Walkovszky v. Carlton*,
  223 N.E.2d 6 (1966) ............................................................................................... 18

*World Trade Centers Ass'n, Inc. v. Port Auth.*,
  2018 WL 6628840 (S.D.N.Y. Dec. 18, 2018) ........................................................ 14

*Worldwide Fun Ltd. v. Sanuk Enterprises, Inc.*,
  2017 WL 11616418 (S.D.N.Y. Oct. 30, 2017)........................................................... 9

**Rules**

CPLR 302(a)(1) ............................................................................................................ 6

Federal Rule of Civil Procedure 12(b)(2) .................................................................... 1

Federal Rule of Civil Procedure 12(b)(6) .................................................................... 1

Defendant Steven Pasko submits this memorandum of law in support of his motion to dismiss the claims against him in Plaintiffs' Amended Complaint (hereinafter, "Complaint") for lack of personal jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(2), and for failure to state a claim, pursuant to Rule 12(b)(6).

## PRELIMINARY STATEMENT

Plaintiffs' claims arise out of a Loan Security Agreement ("LSA"), and in particular, misrepresentations that Plaintiffs allege were made to them about certain assets that were pledged as collateral under the LSA. Plaintiffs entered the LSA with the 777 Entity Defendants,[1] and among the LSA's provisions is a New York forum selection clause binding on the parties to that agreement: *i.e.*, Plaintiffs and the 777 Entity Defendants. Plaintiffs have overreached, however, by relying on that forum selection clause to assert claims against Mr. Pasko in his personal capacity. In addition to failing to state a claim for the reasons detailed herein and in the 777 Entity Defendants' separate motion to dismiss (which Mr. Pasko joins), Plaintiffs' claims against Mr. Pasko also fail for lack of personal jurisdiction.

General jurisdiction over Mr. Pasko is lacking because Plaintiffs acknowledge that he is domiciled in Florida. Under settled law, Plaintiffs' allegation that, at an unspecified time, he supposedly "resided . . . in part" on Staten Island is insufficient. Specific jurisdiction likewise is lacking because Plaintiffs do not allege that Mr. Pasko engaged in a single act in New York, much less one that is tied to their claims. Plaintiffs' conclusory allegation that Mr. Pasko "carried

---

[1] The 777 Entity Defendants are 777 Partners LLC, 600 Partners LLC, SPLCSS III LLC, Dorchester Receivables II LLC, Insurers Agency Services LLC, Signal SML 4 LLC, SuttonPark Capital LLC, Signal Medical Receivables LLC, Insurety Capital LLC, SuttonPark Servicing LLC, Signal Servicing LLC, and Insurety Servicing LLC.

1

out" unspecified "business of 777 Partners and 600 Partners at least in part from his [supposed Staten Island] home and from 777 Partners' offices located in New York" also is insufficient as a matter of law.

Plaintiffs therefore are left with only their allegation that jurisdiction exists because, in his capacity as an authorized signatory of the 777 Entity Defendants, Mr. Pasko signed (i) the LSA and (ii) a handful of reports that, per the terms of the LSA, the 777 Entity Defendants provided to Plaintiffs. Although Plaintiffs allege that the reports contained false statements, and that co-Defendant Joshua Wander purportedly knew the statements were false and directed others to include the allegedly false statements in the reports, Plaintiffs do not allege that Mr. Pasko knew (or had reason to know) of the alleged misconduct. Per the Complaint, Mr. Pasko therefore did nothing wrong: he signed a handful of corporate documents in his capacity as an authorized corporate signatory that others—but not him—supposedly knew were fraudulent.

Plaintiffs' allegations regarding the LSA and reports thus fail to state a claim against Mr. Pasko, and they are equally deficient for jurisdictional purposes. Plaintiffs do not allege that Mr. Pasko signed the LSA or the reports in New York, that he sent the LSA or the reports to Plaintiffs in New York, that his execution of the LSA or the reports otherwise had any connection to New York, or that any factor relevant to an alter ego analysis justifies holding him personally subject to the LSA's forum selection clause. Accordingly, Plaintiffs have not provided a basis for this Court to exercise jurisdiction over Mr. Pasko, and the claims against him should be dismissed.

## BACKGROUND

The Complaint repeatedly refers to Messrs. Wander and Pasko when making conclusory assertions of misconduct (*e.g.*, Compl. ¶¶193, 197, 219, 247), but when it comes to alleging facts to show who supposedly was responsible for the alleged misconduct, the Complaint omits Mr. Pasko. At most, Plaintiffs purport to allege what Mr. Wander did (*e.g.*, *id.* ¶¶12, 107, 153, 158, 212), said (*e.g.*, *id.* ¶¶12, 115, 126, 182, 268), admitted (*e.g.*, *id.* ¶¶2, 12, 132), caused others to do (*e.g.*, ¶¶109, 113, 158), and was accused of doing by others (*e.g.*, *id.* ¶¶10, 105).

Plaintiffs seek to tie Mr. Pasko to Mr. Wander's alleged conduct exclusively through various reports that Mr. Pasko was asked to sign, but that Plaintiffs allege were prepared by others, *i.e.*, Nicholas Bennett and Alexander Adnani. (*E.g.*, *id.* ¶¶101, 202.) Plaintiffs further allege that Messrs. Bennett and Adnani (i) reported directly to Mr. Wander, (ii) "carri[ed] out Wander's wishes in allocating assets . . . and preparing [the r]eports," and (iii) "did not act without being personally directed to do so by Wander." (*Id.* ¶¶202, 363(d); *e.g.*, *id.* ¶¶101, 109, 113, 204.) The Complaint lacks any factual allegations suggesting that Mr. Pasko knew (or had reason to know) about any of the alleged issues with the reports.

Plaintiffs' pleading deficiencies with respect to Mr. Pasko also extend to their jurisdictional allegations.

### A. Plaintiffs Rely on the LSA's Forum Selection Clause to Support the Exercise of Personal Jurisdiction over the 777 Entity Defendants

The 777 Entity Defendants all are non-New York entities, with only one—SuttonPark Servicing, LLC ("SuttonPark Servicing")—alleged to have any connection to New York. (*Id.* ¶¶25-26, 33-36.) With respect to SuttonPark Servicing, Plaintiffs allege that, at some unidentified time and place, it "represented to Leadenhall that its principal place of business was [in New York] as of May 2021," but Plaintiffs acknowledge that it "may have moved its

3

principal office to [Florida]." (*Id.* ¶33.) Importantly, Plaintiffs do not allege that SuttonPark

Servicing engaged in any act in New York. Therefore, to establish personal jurisdiction over the

777 Entity Defendants, Plaintiffs rely on the LSA's New York forum selection clause. (*Id.* ¶41.)

### B. Plaintiffs' Allegations Are Insufficient to Render Mr. Pasko Subject to the LSA's Forum Selection Clause

Plaintiffs and the 777 Entity Defendants are the only parties to the LSA. (Pasko Decl. Ex.

1 (excerpts of the LSA).)[2] Acting in his official capacity as an authorized signatory of the 777

Entity Defendants, Mr. Pasko signed both the LSA and a handful of reports that the 777 Entity

Defendants provided to Plaintiffs pursuant to the LSA. (Compl. ¶¶43, 52, 55, 64, 76, 121, 161.)

Plaintiffs, however, allege no other connection between Mr. Pasko and the LSA. They do not

allege, for example, that Mr. Pasko had any involvement in negotiating the terms of the LSA, or

that he was afforded any personal rights or obligations under the LSA.

Nor have Plaintiffs alleged any facts sufficient to support an inference that Mr. Pasko is

the alter ego of any 777 Entity Defendant. Plaintiffs have not alleged that Mr. Pasko failed to

observe corporate formalities with respect to any 777 Entity Defendant, intermingled his

personal funds with corporate assets, engaged in conduct to render any 777 Entity Defendant

---

[2] Citations to "Pasko Decl.__" refer to the Declaration of Steven Pasko submitted herewith. The

Court may consider the LSA, another document attached to Mr. Pasko's declaration (*i.e.*, a

memo referenced in the Complaint), and factual statements in Mr. Pasko's declaration because

the LSA and the memo are incorporated by reference in the Complaint and because the Court

may consider materials extraneous to the Complaint in addressing a motion to dismiss for lack of

jurisdiction. *E.g.*, *Roxx Allison Ltd. v. Jewelers Inc.*, 385 F. Supp. 3d 377, 379 (S.D.N.Y. 2019).

undercapitalized, or otherwise used any 777 Entity Defendant to further his personal interests rather than corporate ends. In short, Plaintiffs have not alleged any of the types of facts that courts have observed are necessary to render a corporate agent subject to a forum selection clause in the agent's personal capacity.

### C. The Alleged Contacts Between Mr. Pasko and New York are Conclusory and Untethered to Plaintiffs' Claims

Plaintiffs' remaining jurisdictional allegations are equally deficient because the only alleged contacts between Mr. Pasko and New York are conclusory and untethered to Plaintiffs' claims. Plaintiffs allege that Mr. Pasko owned a home on Staten Island, and that "[u]pon information and belief," he "resided and carried out the business of 777 Partners and 600 Partners at least in part from [that] home, and from 777 Partners' [New York] offices." (*Id.* ¶43.) Plaintiffs do not, however, allege that Mr. Pasko undertook any specific act for any 777 Entity Defendant in New York. Nor do Plaintiffs allege that any of Mr. Pasko's alleged conduct in the Complaint had any connection to New York: they do not allege that he signed the LSA or any of the reports referenced in the Complaint in New York, or sent any of those documents to Plaintiffs in New York. (*See id.* ¶¶48, 58, 68, 137.)

Plaintiffs remaining jurisdictional allegation—that, "upon information and belief," Mr. Pasko supposedly "control[ed] and manage[d]" and exercised "domination and control over [the 777 Entity Defendants]" (*id.* ¶¶30, 32, 43)—also lacks factual support. The Complaint alleges only that Mr. Pasko had a membership interest in several of the 777 Entity Defendants (*id.* ¶¶24-30), periodically signed documents as an "authorized signatory" on their behalf (*id.* ¶¶52, 55, 64, 76, 121, 161), and was a "100% owner[] of 777 Partners" (*id.* ¶29).

## <u>ARGUMENT</u>

### I.    PLAINTIFFS' CLAIMS AGAINST MR. PASKO FAIL FOR LACK OF PERSONAL JURISDICTION

Because Plaintiffs concede that Mr. Pasko is domiciled in Florida (*id.* ¶32), general jurisdiction over him does not exist in New York. *See Daimler AAG v. Bauman*, 571 U.S. 117, 137 (2014). Plaintiffs' conclusory allegation that Mr. Pasko "resided . . . in part" on Staten Island at some unidentified time (Compl. ¶43) is insufficient. *See Palazzo v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000) (Domicile is the "place where a person has his true fixed home and principal establishment").

To avoid dismissal of their claims against Mr. Pasko, Plaintiffs therefore must establish specific jurisdiction over him in New York. *See Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 81, 83 (2d Cir. 2018). Per the relevant New York long-arm statute, CPLR 302(a)(1), to establish specific jurisdiction, Plaintiffs must demonstrate that (i) Mr. Pasko "transact[ed] . . . business" in New York, and (ii) their claims "aris[e] from such a business transaction." *E.g.*, *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007) (quotation marks omitted); *see Broumand v. Joseph*, 522 F. Supp. 3d 8, 16-17 (S.D.N.Y. 2021) (specific jurisdiction exists when the plaintiff's claims arise out of the defendant's alleged contacts with New York). To "transact business" in New York, the defendant must engage in "'some act by which [he] purposefully avails [him]self of the privilege of conducting activities within [New York].'" *Best Van Lines, Inc.*, 490 F.3d at 246 (quotation marks omitted).

Plaintiffs also must show that "the exercise of . . . jurisdiction . . . [over Mr. Pasko would] comport with constitutional due process." *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 327 (2d Cir. 2016) (quotation marks omitted). The due process analysis has two components: "minimum contacts" and "reasonableness." *Id.* at 331. "The minimum contacts inquiry requires

6

that the court determine whether a defendant has sufficient minimum contacts with the forum," whereas "[t]he reasonableness inquiry requires the court to determine whether the assertion of personal jurisdiction over the defendant comports with traditional notions of fair play and substantial justice under the circumstances." *Id.* (quotation marks omitted).

### A. Plaintiffs Have Failed to Satisfy Either Prong of the New York Long-Arm Statute

The allegation on which Plaintiffs seek to rely to satisfy the first prong of the long-arm statute—that, "[u]pon information and belief," Mr. Pasko "carried out the business of 777 Partners and 600 Partners . . . from his [Staten Island] home and from 777 Partners' [New York] offices" (Compl. ¶43)—is deficient because (i) Plaintiffs do not identify a single act that Mr. Pasko supposedly "carried out" in New York, and therefore, (ii) the allegation is conclusory and insufficient to carry Plaintiffs' jurisdictional burden. *See Beskrone v. Berlin*, 656 F. Supp. 3d 496, 513-515 (S.D.N.Y. 2023) ("allegations or evidence of activity constituting the basis of jurisdiction must be non-conclusory and fact-specific" (quotation marks omitted)); *Megna v. Biocomp Lab'ys Inc.*, 166 F. Supp. 3d 493, 496 (S.D.N.Y. 2016) ("conclusory allegations are not enough to establish personal jurisdiction"). "Courts in this Circuit look unfavorably upon [such] conclusory pleadings made on information and belief." *Brodie v. Green Spot Foods, LLC*, 2020 WL 7027594, at *13 (S.D.N.Y. Nov. 30, 2020).

Plaintiffs' allegation that (i) Mr. Pasko "represented" SuttonPark Servicing in signing certain reports and (ii) SuttonPark Servicing "has or had" its principal place of business in New York (Compl. ¶43) likewise is insufficient because Plaintiffs do not identify a single act that SuttonPark Servicing transacted in New York, much less one that Mr. Pasko undertook on its behalf. *See Bracken v. MH Pillars Inc.*, 2016 WL 7496735, at *5 (S.D.N.Y. Dec. 29, 2016) (plaintiff must allege specific acts that constitute transaction of business; allegation that

7

defendant business is located in New York is insufficient to satisfy "transact[ing] business" prong).

Having failed to allege that Mr. Pasko transacted any business in New York, Plaintiffs necessarily also have failed to satisfy the second prong of the long-arm statute: that "a substantial nexus [exists] between the business transacted and the cause of action sued upon." *Agency Rent a Car Sys., Inc. v. Grand Rent a Car Corp.*, 98 F.3d 25, 31 (2d Cir. 1996); *see SNS Bank, N.V. v Citibank, N.A.*, 7 A.D.3d 352, 353 (1st Dep't 2004) (affirming lack of personal jurisdiction over non-resident directors who attended a board meeting in New York because plaintiff did not allege a substantial nexus between the meeting and the cause of action).

### B. Plaintiffs Cannot Cure Their Failure to Plead Long-Arm Jurisdiction Through Conclusory Allegations of Supposed Domination and Control

Plaintiffs cannot cure their failure to allege long-arm jurisdiction through their allegations that, "upon information and belief," Mr. Pasko supposedly "control[led] and manage[d]" and exercised "domination and control" over the 777 Entity Defendants (Compl. ¶¶30, 32, 43) because the allegations lack sufficient factual support. *See Pilates, Inc. v. Current Concepts Kenneth Endelman*, 1996 WL 599654, at *3 (S.D.N.Y. Oct. 18, 1996) ("[A] general allegation that an officer controls a corporation is not sufficient to establish personal jurisdiction.").

That Mr. Pasko signed the LSA and various reports as an "authorized signatory" of the 777 Entity Defendants (Compl. ¶¶52, 55, 64, 76, 121, 161) is insufficient to demonstrate domination or control because agents of companies routinely execute corporate documents on behalf of the companies without control over or involvement in the matters to which those documents relate. *See HSM Holdings, LLC v. Mantu I.M. Mobile Ltd.*, 2021 WL 918556, at *14 (S.D.N.Y. Mar. 10, 2021) ("Corporate representatives are asked to sign corporate documents in numerous different circumstances. There will be occasions when a representative is asked to sign

8

on behalf of a large corporation simply because she possesses the relevant signatory authority and is available even though she had no involvement in the negotiation of the agreement and will have no involvement in its execution."). Indeed, that is precisely what Plaintiffs allege here: Mr. Wander allegedly instructed others to prepare the relevant reports and how to prepare them. (*E.g.*, Compl. ¶¶101, 109, 113, 202, 204.)

Plaintiffs' allegation that Mr. Pasko was a "100% owner[] of 777 Partners" (Compl. ¶29) likewise is insufficient, as being a sole owner, director and/or officer is "insufficient proof of complete domination and control." *Worldwide Fun Ltd. v. Sanuk Enterprises, Inc.*, 2017 WL 11616418, at *5 (S.D.N.Y. Oct. 30, 2017) (defendant's status as "the sole stockholder, director, and officer of both corporations . . . in and of itself . . . insufficient proof of complete domination and control which permit a corporate veil to be pierced" (citing *Island Seafood Co. v. Golub Corp.*, 303 A.D.2d 892, 895 (3d Dep't 2003)); *see In re JMK Constr. Grp., Ltd.*, 502 B.R. 396, 410 (Bankr. S.D.N.Y. 2013) (third-party defendant's status as president and sole shareholder insufficient to pierce corporate veil).

Rather than support a claim that Mr. Pasko exercised "domination and control" over the 777 Entity Defendants, the Complaint supports the contrary conclusion through its (i) lack of supporting factual allegations as to Mr. Pasko, and (ii) focus on what others did and caused the 777 Entity Defendants to do. *See also Schwartz v. Sensei, LLC*, 2020 WL 5817010, at *9 (S.D.N.Y. Sept. 30, 2020) (declining to credit certain allegations that one individual defendant dominated an entity when the allegations as a whole indicated that the other individual defendant dominated the entity).

In any event, even if Plaintiffs' allegations demonstrated "domination and control" by Mr. Pasko, they still would be insufficient to establish long-arm jurisdiction over him, because

Plaintiffs have not alleged that any of the alleged acts on the part of the 777 Entity Defendants from which their claims arise occurred in or were directed at New York, much less that Mr. Pasko was involved in any such act. *See HSM Holdings*, 2021 WL 918556, at \*13 (finding allegations insufficient to establish specific jurisdiction because "Plaintiff has failed to make specific allegations that would allow th[e] Court to conclude that [defendants] purposefully availed themselves of the benefits and protections of New York").

Further, because Plaintiffs have not alleged any act by which Mr. Pasko purposefully availed himself of the privilege of conducting activities within New York, exercising jurisdiction over him not only would be contrary to the long-arm statute, but also due process. *See V'Soske, Inc. v. Vsoske.Com*, 2001 WL 546567, at \*5 (S.D.N.Y. May 23, 2001) ("[M]inimal contact with the state does not rise to the level of purposeful availment required by the Due Process Clause.")

C. **By Signing the LSA in His Corporate Capacity, Mr. Pasko Did Not Render Himself Subject to the LSA's Forum Selection Clause**

Plaintiffs also cannot cure their failure to allege long-arm jurisdiction by pointing to Mr. Pasko's signing of the LSA on behalf of the 777 Entity Defendants.

1. <u>Non-Party Signatories to a Contract Generally Are Not Subject to Its Forum Selection Clause</u>

Although a court "may [] exercise personal jurisdiction over a defendant who has consented to jurisdiction . . . through [a] forum-selection clause[] in [a] contract[]," *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, 2023 WL 4159358 at \*7 (S.D.N.Y. June 2, 2023), a person like Mr. Pasko—who is not a party to the contract and signed only in his official capacity on behalf of the actual parties to the contract—generally is not bound by the contract, including any forum selection clause. *See Bonnant v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 467 F. App'x 4, 10 (2d Cir. 2012) ("[I]t is well-established that an agent will not be personally bound

10

unless there is clear and explicit evidence of the agent's intention to substitute or superadd his personal liability for, or to, that of his principal. For a corporate representative to be personally bound by a contract, the officer must sign both in a representative and in an individual capacity.").

Here, Mr. Pasko signed the LSA in his official capacity as an agent of the 777 Entity Defendants, and thus is a non-party. (*See* LSA at Signature Pages.) The LSA's forum selection clause expressly is limited to its parties (LSA § 10.09 ("Each *Party* hereto hereby irrevocably submits to the non-exclusive jurisdiction of any New York state or federal court sitting in New York City." (emphasis added))), and the LSA's first page makes clear that the parties are Plaintiffs and the 777 Entity Defendants (*id.* at 1). The LSA later expressly distinguished between "the parties" to it and the individuals (like Mr. Pasko) who signed it on their behalf. (*See* LSA at Signature Page 1 (stating immediately above the signature lines, "the parties have caused this [LSA] to be executed by their respective officers thereunto duly authorized.").) Mr. Pasko thus presumptively is not subject to the forum selection clause.

2. The Narrow Exception to the General Rule Against Subjecting Non-Parties to Forum Selection Clauses Is Inapplicable Here

Although a narrow exception exists to the general rule against holding a non-party subject to a contract's forum selection clause, the exception is inapplicable here because Plaintiffs have not alleged (i) facts sufficient to support a finding that Mr. Pasko was the alter ego of any 777 Entity Defendant, (ii) that Mr. Pasko had any relevant contacts with this jurisdiction, or (iii) any other fact from which this Court could conclude that exercising jurisdiction over Mr. Pasko based on the LSA's forum selection clause would comport with due process.

11

Recent decisions by courts in this district have found that (i) to exercise jurisdiction over a non-party to a contract based on the contract's forum selection clause, the exercise of jurisdiction must comport with due process, and (ii) the exercise of jurisdiction over a non-party who (like Mr. Pasko here) is not alleged to have had any relevant contacts with New York and is not shown to be the alter ego of a signatory would not comport with due process. *See, e.g.*, *Clarke v. TRIGO U.S., Inc.*, 2023 WL 2456814, at \*5-6 (S.D.N.Y. Mar. 10, 2023); *Beskrone*, 656 F. Supp. 3d at 513-515; *Mersen USA EP Corp. v. TDK Electronics Inc.*, 594 F. Supp. 3d 570, 583-84 (S.D.N.Y. 2022); *HSM Holdings*, 2021 WL 918556, at \*13-14; *Arcadia Biosciences, Inc. v. Vilmorin & Cie*, 356 F. Supp. 3d 379, 394-95 (S.D.N.Y. 2019); *see also Koh v. Koo*, 2023 WL 5352786, at \*3 (S.D.N.Y. Aug. 21, 2023) (characterizing the approach to personal jurisdiction in *HSM Holdings* and *Arcadia* as "persuasive" and "the better view"). To the extent decisions exist in which jurisdiction over a non-party signatory is based solely on allegations that the non-party is "closely related to th[e] . . . signatories" (Compl. ¶43), the above courts appropriately rejected those decisions as incompatible with due process.

The above courts reasoned that (i) "[t]here is no separate law applicable to persons who affix their signature onto corporate documents in their official capacity only," and therefore, (ii) when (as here) an individual signs a document with a forum selection clause in his official capacity, "a court may exercise jurisdiction over [the] individual only after ensuring that exercise is consistent with the personal jurisdiction granted to the courts of the forum state by its legislature and consistent with federal due process principles." *HSM Holdings*, 2021 WL 918556, at \*9; *see also Beskrone*, 656 F. Supp. 3d at 514 (finding no personal jurisdiction over the defendants because the plaintiff did "not . . . identif[y] any connection between defendants and New York other than provisions in contracts to which defendants are not parties"); *Clarke*,

12

2023 WL 2456814, at *5 ("The Court joins those . . . that have concluded that personal jurisdiction premised on the 'closely related to' or other theory of constructive consent must still satisfy the requirements of due process of law."); *Mersen*, 594 F. Supp. 3d at 583-84 (concluding that "constitutional concerns" prohibited enforcement of a forum selection clause against a non-party signatory when the signatory was not alleged to have had any contacts with New York).

Accordingly, exercising personal jurisdiction over a non-party signatory to an agreement (like Mr. Pasko here) is appropriate only when the plaintiff has alleged facts sufficient to establish that "the non-party is . . . bound to the agreement, as for example under the ordinary law of . . . alter ego," or the non-party has sufficient contacts with the forum to satisfy due process. *HSM Holdings*, 2021 WL 918556, at *9; *see also Clarke*, 2023 WL 2456814, at *5-6; *Mersen*, 594 F. Supp. 3d at 583-84; *Koh*, 2023 WL 5352786, at *3.

As demonstrated above, the Complaint here does not allege that Mr. Pasko has any relevant contacts with New York, much less contacts sufficient to satisfy due process. Nor does the Complaint allege facts sufficient to support a finding that Mr. Pasko was the alter ego of any 777 Entity Defendant.

In evaluating an alter ego claim, courts focus on whether the complaint alleges that the individual: (i) failed to maintain separate books and records or other corporate formalities, (ii) intermingled corporate and personal funds, (iii) undercapitalized the corporation, or (iv) otherwise used the corporation to further his personal interests rather than corporate ends. *See, e.g.*, *OOO v. Empire United Lines Co.*, 557 F. App'x 40, 45-46 (2d Cir. 2014); *Long Side Ventures LLC v. Hempacco Co.*, 2023 WL 6386888, at *8 (S.D.N.Y. Sept. 29, 2023); *Liberty Highrise Pvt. Ltd. v. Praxis Energy Agents DMCC*, 632 F. Supp. 3d 562, 571 (S.D.N.Y. 2022).

13

Here, the Complaint advances six allegations aimed at establishing alter ego status as to Mr. Pasko, but whether viewed individually or collectively, the allegations fall short.[3]

*First*, Plaintiffs cite a June 2023 memo that describes SuttonPark Capital as (i) "lack[ing] an active Board of Managers," and (ii) "lack[ing] a loan or asset accounting system able to track and report on assets," "written processes to manage the operations when turnover occurs," and "sufficiently trained staffing to manage operations." (Compl. ¶¶248(a), 250.) Taking the allegations in turn, SuttonPark Capital is a member-managed LLC, with Mr. Pasko as its sole manager (Pasko Decl. ¶2), a structure that courts have observed "is not uncommon and thus represents a neutral factor in the alter ego analysis." *See World Trade Centers Ass'n, Inc. v. Port Auth.*, 2018 WL 6628840, at *14 (S.D.N.Y. Dec. 18, 2018).

Similarly, the lack of specific types of accounting systems, written policies, and training are not "items that are part and parcel of corporate existence, such as issuance of stock and maintenance of corporate records," and thus also are deemed non-factors in the alter-ego analysis. *Nebraskaland, Inc. v. Ryan*, 2022 WL 4486736, *12 (Bankr. E.D.N.Y. Sept. 27, 2022); *cf. Ng v. Adler*, 467 B.R. 279, 287 (Bankr. E.D.N.Y.2012) (finding relevant factors to include "fail[ure] to exercise even the most basic corporate formalities of contemporaneous bookkeeping, maintenance of financial records, issuance of income tax forms to employees . . . , and the filing of timely tax returns," none of which Plaintiffs allege here). Plaintiffs declined to attach the June 2023 memo to their Complaint, presumably because it demonstrates the opposite

_____

[3] Tellingly, the Complaint fails to keep its alter ego theory straight with respect to Mr. Pasko, as it frequently refers to the 777 Entity Defendants exclusively as Mr. Wander's alter egos. (*E.g.*, Compl. ¶¶2, 118, 141, 257.)

14

of Mr. Pasko ignoring corporate formalities; it shows him and Mr. Wander responding to the "Internal Control Issues" referenced in the memo by implementing specific "Corrective Actions." (Pasko Decl. Ex. 2)

*Second*, Plaintiffs allege that (i) Messrs. Pasko and Wander reorganized certain of their businesses to make one—Sutton National Insurance Company ("Sutton National")—wholly owned by Mr. Pasko, but (ii) a news article subsequently reported Sutton National as being listed for sale by 777 Partners rather than Mr. Pasko. (Compl. ¶248(b).) As an initial matter, Sutton National is not a 777 Entity Defendant, and thus the allegation about it is irrelevant. Regardless, Plaintiffs do not allege why the transfer of ownership was done, much less that it was done for a reason bearing on any alter ego factor. *See United Feature Syndicate, Inc. v. Miller Features Syndicate, Inc.*, 216 F. Supp. 2d 198, 224 (S.D.N.Y. 2002) ("It is not enough for [plaintiff] simply to assert the conclusion that the [individual defendants] . . . 'fraudulently' transferred funds from the corporate entity to themselves for their own benefit. Rather, [plaintiff] must assert specific facts showing that the [individual defendants] were doing business in their individual capacities without regard to corporate formalities.").

Moreover, that one news outlet apparently reported Sutton National as later listed for sale by 777 Partners rather than Mr. Pasko is insufficient to support the inference Plaintiffs apparently seek to draw from it: that the transfer of ownership was a sham. No fact is alleged to support such an inference.

*Third*, Plaintiffs allege that "777 Partners" (not Mr. Pasko specifically, but "777 Partners" generally) "placed airplanes as financial assets on 777 Re's balance sheet—for no consideration—in order to assist 777 Re in meeting certain regulatory capital requirements," and then took the planes off the balance sheet after "they had served their purpose." (Compl.

¶248(c).) The allegation is irrelevant because Plaintiffs do not allege that Mr. Pasko was involved in or aware of the alleged transaction. Even if they had, the allegation still would be insufficient because (i) moving assets from one company to another itself is not suggestive of undercapitalization or any other alter ego consideration, and (ii) the Complaint pleads no facts about the transaction, much less facts from which an improper motive could be inferred. *See Bentivoglio v. Event Cardio Grp., Inc.*, 2019 WL 6341130, at \*6 (S.D.N.Y. Nov. 27, 2019) ("A transfer of assets is not a basis for piercing the corporate veil where [as here] the plaintiff fails to plead details about the allegedly fraudulent transfer without consideration.").[4] Plaintiffs' assertion that the transaction was done to "conceal[] regulatory deficiencies" (Compl. ¶248(c)) is conclusory.

*Fourth*, Plaintiffs allege that to address a concern raised by Wells Fargo regarding Mr. Wander being associated with SuttonPark Capital, Messrs. Wander and Pasko undertook a corporate reorganization that, per Plaintiffs' own allegations, has no relevance to any alter ego factor. Specifically, Plaintiffs allege that Messrs. Wander and Pasko (i) created 600 Partners and made it wholly owned by Mr. Pasko and (ii) made SuttonPark Capital a wholly-owned subsidiary of 600 Partners. (Compl. ¶248(d).) Plaintiffs do not allege that Mr. Pasko used the newly-created 600 Partners to hide personal assets, avoid personal liabilities, or engage in any other act relevant to the alter ego analysis.

---

[4] While the court in *Bentivoglio* applies Delaware law, New York and Delaware "employ[] substantially the same analysis to determine whether a corporation is the alter ego of an owner or of another corporation." *LiquidX Inc. v. Brooklawn Cap., LLC*, 254 F. Supp. 3d 609, 616 (S.D.N.Y. 2017).

*Fifth*, citing the above-referenced June 2023 memo, Plaintiffs allege that "777 Partners" (again not Mr. Pasko specifically, but "777 Partners" generally) "raided the assets of several of its other subsidiaries." (Compl. ¶249.) In fact, however, the June 2023 memo reflects that (i) for a short time, three credit facilities were undercollateralized (for benign reasons that the memo explains), (ii) "Corrective Actions" were taken to cure the issues, and (iii) the "Corrective Actions" included 777 Partners and 600 Partners "borrow[ing] funds, s[elling] aircraft and us[ing] excess cash." (*See* Pasko Decl. Ex. 2.) That three credit facilities were under*collateralized* (for benign reasons) does not support the conclusion that *the entities using those facilities* were under*capitalized*, particularly when the collateral issues were addressed by the entities either through the use of "excess cash" or other typical capital raise activities. (*See id.*)

Indeed, the Complaint lacks any well-pleaded allegations of undercapitalization. As an initial matter, to the extent it cites allegations from other lawsuits and conclusory statements from new articles, such allegations and statements are not properly accepted for their truth. *See Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) ("A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings."); *Miller v. Lazard, Ltd.*, 473 F. Supp. 2d 571, 586 (S.D.N.Y. 2007) ("[N]ews articles cited still must indicate particularized facts about Defendants' conduct in order to support the Plaintiffs' claims."). In any event, taken together, Plaintiffs' allegations and citations reflect that, in the period leading up to this lawsuit, the 777 Entity Defendants were able to address their capital needs in ways typical of appropriately capitalized companies—by "refinanc[ing] or

17

sell[ing] assets," "borrow[ing] funds," and "us[ing] excess cash" (*e.g.*, Pasko Decl. Ex. 2), or "reallocat[ing] assets among different borrower vehicles" (*e.g.*, Compl. ¶76).

More fundamentally, however, Plaintiffs' allegations aimed at establishing undercapitalization are insufficient to establish alter ego status as to Mr. Pasko because (i) the alter ego inquiry focuses on whether the relevant individual (here, Mr. Pasko) intentionally stripped assets from the relevant entities, kept the entities insolvent, or engaged in other conduct to render the entities judgment proof, and (ii) the Complaint lacks factual allegations sufficient to support such an inference as to Mr. Pasko. *See Schwartz*, 2020 WL 5817010, at *10 (disregarding allegation that an individual defendant "purposely undercapitalized the company" where the plaintiff provided "no facts giving rise to an inference of [the individual defendant's] intent," such as facts suggesting an "effort to render [the entity] judgment proof"); *see also JSC Foreign Econ. Ass'n Technostroyexport v. Intn'l Dev. & Trade Servs., Inc.*, 306 F. Supp. 2d 482, 486 (S.D.N.Y. 2004) ("The stripping of corporate assets by shareholders to render the corporation judgment proof constitutes a fraud or wrong justifying piercing the corporate veil."); *Walkovszky v. Carlton*, 223 N.E.2d 6, 9 (1966) ("The corporate form may not be disregarded merely because the assets of the corporation . . . are insufficient to assure [plaintiff] the recovery sought.").

Plaintiffs' remaining allegations—that Mr. Pasko was "an active participant in Defendants' scheme" and "was willing to take personal ownership of cash-rich subsidiaries in order to shield those subsidiaries from creditors"—are conclusory and, by Plaintiffs' own admission, were made "[u]pon information and belief" based entirely on allegations from another lawsuit (Compl. ¶309(d)), and thus properly are disregarded. *See Glob. Network Commc'ns, Inc.*, 458 F.3d at 157; *see also Long Side*, 2023 WL 6386888, at *8 (finding

18

insufficient plaintiffs' claims of fraudulent transfers where plaintiffs did "not detail how Defendants cooperated to transfer assets fraudulently, or why their only intent was to render [the entity] 'judgment-proof'"); *Centauro Liquid Opportunities Master Fund, L.P. v. Bazzoni, et al.*, 2016 WL 5719793, at \*5 (S.D.N.Y. Sept. 30, 2016) ("[Plaintiff's] further, unsupported allegation that these transfers were done with an intent to defraud is conclusory, and cannot itself support this claim.").

Because the Complaint does not allege any facts from which this Court could conclude that Mr. Pasko (i) appropriately is bound to the LSA's forum selection clause as an alter ego of the 777 Entity Defendants, or (ii) has sufficient contacts with New York in connection with Plaintiffs' claims to satisfy New York's long-arm statute and due process, Plaintiffs have provided an insufficient basis to exercise personal jurisdiction over him.

3.  Other Cases Finding that Non-Parties Are Subject to a Contract's Forum Selection Clause Are Distinguishable or Incompatible with Due Process

To the extent that courts have determined that a non-party appropriately is bound by a forum selection clause based on the non-party being closely related to a signatory (the only other basis on which Plaintiffs' rely here, *see* Compl. ¶43), "[t]he vast majority . . . have done so where the non-signatory [was alleged to have] had a far more active role in the transaction" than Mr. Pasko here—where, in his corporate capacity, Mr. Pasko merely is alleged to have signed on the dotted line as an authorized signatory. *Leviton Mfg. Co. v. Reeve*, 942 F. Supp. 2d 244, 259 (E.D.N.Y. 2013); *see also Italian Exhibition Grp. USA, Inc. v. Bartolozzi*, 2023 WL 7301810, at \*1 (S.D.N.Y. Nov. 6, 2023) (finding it was not foreseeable for executive who signed an agreement on behalf of company to be personally bound by contracts that company entered into, and that "the cases embracing the 'closely related' doctrine for corporate executives have required a connection more specific to the claims").

19

Indeed, courts typically have deemed a non-party bound by a contract's forum selection clause when either (i) the individual was actively involved in negotiating the contract or the underlying transactions, or (ii) the individual was afforded personal rights or obligations under the contract. *See, e.g.*, *GlaxoSmithKline LLC v. Laclede, Inc.*, 2019 WL 293329, at *1 (S.D.N.Y. Jan. 23, 2019) (non-party signatories were personally bound by provisions in the relevant agreement); *Firefly Equities LLC v. Ultimate Combustion Co.*, 736 F. Supp. 2d 797, 800 (S.D.N.Y. 2010) (non-party met with plaintiff numerous times and was actively involved in negotiating agreement[5]); *RedHawk Holdings Corp. v. Craig Invs., LLC*, 2016 WL 6143355, at *5 (S.D.N.Y. Oct. 19, 2016) (non-party was alleged to have "played a key role in the drafting, negotiation, and preparation of the [relevant agreement], including communicating [about] the terms [of the agreement]"). Here, Plaintiffs have not alleged that Mr. Pasko negotiated the terms of the LSA, personally was afforded any rights or obligations under the LSA, or engaged in conduct that might reasonably have suggested to him (at the time he signed or otherwise) that he could personally be bound by the LSA's forum selection clause.

A handful of cases exist where courts in this district have found a non-party to be bound by a forum selection clause based solely on the individual's position within the signatory entity, but consistent with the finding of the courts in *Arcadia*, *HSM Holdings*, *Beskrone*, *Clarke*, *Koh*,

---

[5] Additionally, in *Firefly*, "significant evidence" existed that the non-party may have been using the corporate entity as an alter ego; he routinely transferred his own money into and out of the company, even though the company was undercapitalized, and the entity observed few corporate formalities. *See Firefly Equities LLC v. Ultimate Combustion Co.*, 2010 WL 5174358, at *5 (S.D.N.Y. Dec. 14, 2010).

20

and *Mersen*, those cases are incompatible with due process and therefore should not be followed. *See, e.g.*, *Koh v. Koo*, 2023 WL 5352786, at \*3 n.4 (stating "[t]o the extent [the Court's prior decision cannot be reconciled with *Arcadia* and *HSM Holdings*], the Court is persuaded by the later reasoning [in those cases]"); *Dragon State International Limited v. Keyuan Petrochemicals, Inc.*, 2016 WL 439022 (S.D.N.Y. Feb. 3, 2016), at \*3 n.3 (declining to follow holding from another case "that a company's CFO was bound by a forum selection clause simply because she was the company's CFO," because "in light of the due process concerns implicated by exerting personal jurisdiction over non-parties to a contract based on a term in that contract, something more than mere status as a company executive must be alleged").

## II.    PLAINTIFFS' CLAIMS SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM

Plaintiffs' claims against Mr. Pasko also should be dismissed for failure to state a claim for the reasons set forth below, as well as for the additional reasons in Sections 2 and 3 of the 777 Entity Defendants' moving brief (which Mr. Pasko joins).

As to the RICO claims, the Complaint does not sufficiently plead that Mr. Pasko engaged in any predicate acts. (*See* 777 Brief, Section II.D.) With respect to each Defendant, Plaintiffs must allege "at a minimum . . . how [he] violated RICO through [his] own conduct." (*Id.*) To do so, Plaintiffs must allege that each Defendant acted with scienter. *See Curtis & Assocs., P.C. v. Law Offices of David M. Bushman, Esq.*, 758 F. Supp. 2d 153, 179 n.26 (E.D.N.Y. 2010) ("[M]ail and wire fraud are 'specific intent crimes' requiring proof of defendant's 'conscious knowing intent to defraud.'" (citation omitted)).

As to Mr. Pasko, Plaintiffs seek to carry their burden by alleging that he "participated in and directed the transmission of the false and fraudulent Compliance Reports" and "personally

21

signed the Compliance Reports." (Compl. ¶363(f).) Plaintiffs have not alleged, however, facts sufficient to support an inference that Mr. Pasko knew (or had reason to know) that any issues existed with the reports. (*See supra* at 2.) Plaintiffs' RICO claims against Mr. Pasko thus fail.[6] (*See* 777 Brief, Section II (identifying additional defects with RICO claims).)

Plaintiffs' fraud claims against Mr. Pasko fail for the same reason: Plaintiffs have not alleged that he undertook any relevant act with the intent to defraud. With respect to the claims for fraudulent misrepresentation, conspiracy to commit fraud, and aiding and abetting fraud, Plaintiffs rely on Mr. Pasko's signing of the above-referenced reports (*see* Compl. ¶¶384-98), which, again, Plaintiffs have not alleged he did with any degree of scienter (*supra* p.2). As to the fraudulent transfer claims, Mr. Pasko is not alleged to have had any involvement in the underlying alleged conduct (the alleged modification of the terms of the "JARM loan"), much less to have undertaken a relevant act with fraudulent intent. (*See* Compl. ¶¶225, 403-416.) Nor is Mr. Pasko an alleged transferee or beneficiary of the underlying alleged conduct. (*See* 777 Brief, Section III.B.)

Plaintiffs' breach of contract claims fail (along with any of their other claims against Mr. Pasko that may be based on an alter ego theory) because, as detailed above, Plaintiffs have not alleged facts sufficient to treat Mr. Pasko as the alter ego of any 777 Entity Defendant. *See Physicians Mut. Ins. Co. v. Greystone Servicing Corp., Inc.*, 2009 WL 855648, at *3 (S.D.N.Y. Mar. 25, 2009) (dismissing breach of contract claims against individual defendants who were not parties to the relevant agreements where plaintiff did not sufficiently allege that the individual

---

[6] If the RICO claims are dismissed, the Court should decline to exercise supplemental jurisdiction over the remaining claims. (*See* 777 Brief, Section I.B.)

defendants were the alter egos of the signatory entity); *SungChang Interfashion Co. v. Stone Mountain Accessories, Inc.*, 2013 WL 5366373, at *12 (S.D.N.Y. Sept. 25, 2013) (dismissing fraudulent conveyance claims against a CEO where the plaintiff did not sufficiently allege that he dominated and controlled the relevant entity such that it would be appropriate to pierce the corporate veil).

Finally, the conspiracy to commit fraud claim also fails because it is not cognizable (777 Brief, Section III.A), and the unjust enrichment claim fails because it is duplicative of Plaintiffs' breach of contract claims (*Id.*). *See Mueller v. Michael Janssen Gallery Pte. Ltd.*, 225 F. Supp. 3d 201, 207 (S.D.N.Y. 2016) (a claim for unjust enrichment "is barred if there is a valid contract governing the subject matter of the dispute, even if one of the parties to the claim is not a party to that contract." (quotation marks and citation omitted)).

## CONCLUSION

For the reasons set forth above, the claims against Mr. Pasko should be dismissed.

Dated:  New York, New York
        October 10, 2024

Respectfully Submitted,

MORVILLO ABRAMOWITZ GRAND
IASON & ANELLO P.C.

By:  ___/s/ Christopher B. Harwood___
        Christopher B. Harwood
        Jenna Jones

565 Fifth Avenue
New York, New York 10017
Tel. 212.856.9600
Fax. 212.856.9494

*Attorneys for Steven Pasko*

23

## CERTIFICATE OF WORD COUNT COMPLIANCE

We certify that this memorandum of law complies with II.D. of the Individual Practices of Judge John G. Koeltl and according to Microsoft Word contains 6,995 words exclusive of the caption, tables, and signature blocks.

Dated:  New York, New York
October 10, 2024

MORVILLO ABRAMOWITZ GRAND
IASON & ANELLO P.C.

By:  /s/ Christopher B. Harwood
Christopher B. Harwood
Jenna Jones

565 Fifth Avenue
New York, New York 10017
Tel. 212.856.9600
Fax. 212.856.9494

*Attorneys for Steven Pasko*

24