**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| LEADENHALL CAPITAL PARTNERS LLP, LEADENHALL LIFE INSURANCE LINKED INVESTMENTS FUND PLC,<br><br>Plaintiffs,<br><br>vs.<br><br>JOSH WANDER, STEVEN PASKO, KENNETH KING, 777 PARTNERS LLC, 600 PARTNERS LLC, SPLCSS III LLC, SIGNAL SML 4 LLC, INSURETY AGENCY SERVICES LLC, DORCHESTER RECEIVABLES II LLC, SUTTONPARK CAPITAL LLC, SIGNAL MEDICAL RECEIVABLES LLC, INSURETY CAPITAL LLC, SUTTONPARK SERVICING LLC, ADVANTAGE CAPITAL HOLDINGS LLC,<br><br>Defendants. | Civil Action No.  1:24-cv-03453-JGK |

**PLAINTIFFS LEADENHALL CAPITAL PARTNERS LLP AND LEADENHALL LIFE INSURANCE LINKED INVESTMENTS FUND PLC'S OPPOSITION TO DEFENDANTS' MOTIONS TO STAY DISCOVERY**

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT .................................................................................................... 1

BACKGROUND ...................................................................................................................... 2

LEGAL STANDARD ................................................................................................................ 5

ARGUMENT .......................................................................................................................... 6

I.  DEFENDANTS' MOTIONS TO DISMISS DO NOT PROVIDE GOOD
    CAUSE TO STAY DISCOVERY BECAUSE THERE IS NO DISPUTE THAT
    LEADENHALL'S CASE WILL PROCEED. .................................................................. 6

II. LEADENHALL'S DISCOVERY REQUESTS ARE PROPORTIONAL TO
    THE NEEDS OF THE CASE. ........................................................................................ 12

III. EVEN A BRIEF STAY OF DISCOVERY WILL PREJUDICE LEADENHALL
     GIVEN DEFENDANTS' EXTENSIVE DELAY AND THE RISK OF
     SPOLIATION. ............................................................................................................... 15

CONCLUSION ...................................................................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*777 Partners LLC v. Leadenhall Capital Partners LLP*,
No. 9:24-cv-81143-DMM ...................................................................................................5

*Advantage Cap. Holdings, LLC v. Arciniegas*,
No. 24-cv-22621 (S.D. Fla.) ............................................................................................17

*Advantage Cap. Holdings, LLC v. Beruff*,
No. 24-cv-22620 (S.D. Fla.) ............................................................................................18

*Allen ex rel. Allen v. Devine*,
726 F. Supp. 2d 240 (E.D.N.Y. 2010) ...............................................................................9

*Am. Exp. Fin. Advisors, Inc. v. Zito*,
45 F. Supp. 2d 230 (E.D.N.Y. 1999) ...............................................................................14

*Bennett v. Cuomo*,
No. 22-CV-7846, 2023 WL 2021560 (S.D.N.Y. Feb. 15, 2023)..................................7, 12

*Boyle v. United States*,
556 U.S. 938 (2009)............................................................................................................9

*Brooks v. Macy's, Inc.*,
No. 10 CIV 53042010, 2010 WL 5297756 (S.D.N.Y. Dec. 21, 2010) ....................5, 12, 15

*Cambridge Cap. LLC v. Ruby Has LLC*,
No. 20-cv-11118, 2021 WL 2413320 (S.D.N.Y. June 10, 2021) .....................................11

*Charles Schwab Corp. v. Bank of Am. Corp.*,
883 F.3d 68 (2d Cir. 2018)...............................................................................................11

*Conservation L. Found., Inc. v. Shell Oil Co.*,
No. 3:21-CV-00933, 2023 WL 5434760 (D. Conn. Aug. 22, 2023)..................................13

*Consumer Fin. Prot. Bureau v. Manseth*,
No. 22-CV-29-LJV, 2024 WL 805628 (W.D.N.Y. Feb. 26, 2024)....................................17

*First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.*,
385 F.3d 159 (2d Cir. 2004).........................................................................................7, 10

*Florida v. Davis*,
Case No. 50-2024-CF-007929 (Fla. 15th Cir. Ct.) .............................................................5

*Guiffre v. Maxwell*,

No. 15 CIV. 7433, 2016 WL 254932 (S.D.N.Y. Jan. 20, 2016).................................................7

*Gym Door Repairs, Inc. v. Young Equipment Sales, Inc.*,
206 F. Supp. 3d 869 (S.D.N.Y. 2016)...................................................................................10

*Hollins v. U.S. Tennis Ass'n*,
469 F. Supp. 2d 67 (E.D.N.Y. 2006) ...................................................................................11

*Hong Leong Fin. Ltd. (Singapore) v. Pinnacle Performance Ltd.*,
297 F.R.D. 69 (S.D.N.Y. 2013) ..........................................................................................7

*Idle Media, Inc. v. Create Music Grp., Inc.*,
No. 1:24-CV-00805, 2024 WL 2946248 (S.D.N.Y. June 11, 2024) ...............................11, 13

*Kaplan v. Lebanese Canadian Bank, SAL*,
610 F. Supp. 3d 533 (S.D.N.Y. 2022)..................................................................................17

*Kirschner v. J.P. Morgan Chase Bank, N.A.*,
No. 17CIV6334PGGSLC, 2020 WL 230183 (S.D.N.Y. Jan. 15, 2020) .........................11, 15

*Louis Vuitton Malletier S.A. v. LY USA, Inc.*,
676 F.3d 83 (2d Cir. 2012)..................................................................................................16

*Malt Family Trust v. 777 Partners LLC*,
C.A. No. 2022-0652 (Del. Ch.)............................................................................................17

*McSweeney v. Cohen*,
No. 24-CV-1503, 2024 WL 4108539 (S.D.N.Y. Sept. 5, 2024)......................................11, 18

*Mirra v. Jordan*,
No. 15CV4100ATKNF, 2016 WL 889559 (S.D.N.Y. Mar. 1, 2016) ..............................12, 15

*Morgan Art Found. Ltd. v. McKenzie*,
No. 18-CV-4438, 2020 WL 6135113 (S.D.N.Y. Oct. 18, 2020)............................................6

*Obra Cap. Mgmt., LLC v. 777 Partners LLC*,
Index No. 651220/2024 (Sup. Ct. N.Y. Cty.) ......................................................................17

*OMG Fid., Inc. v. Sirius Techs., Inc.*,
239 F.R.D. 300 (N.D.N.Y. 2006) ........................................................................................16

*In re Platinum & Palladium Antitrust Litig.*,
61 F.4th 242 (2d Cir. 2023) ................................................................................................11

*RBG Mgmt. Corp. v. Vill. Super Mkt., Inc.*,
No. 22-CV-07996, 2023 WL 1996920 (S.D.N.Y. Jan. 24, 2023) ......................................6, 12

*Republic of Turkey v. Christie's, Inc.*,
 316 F. Supp. 3d 675 (S.D.N.Y. 2018) ................................................................5, 6

*Robbins v. Candy Digital*
 No. 23-cv-10619, 2024 WL 2221362 (S.D.N.Y. May 15, 2024) .............................13

*Simpson-Quin v. Montejano*,
 No. 23-CV-08113, 2024 WL 3347040 (S.D.N.Y. July 9, 2024) .............................12

*United States v. Gershman*,
 31 F.4th 80 (2d Cir. 2022), *cert. denied*, 143 S. Ct. 816 (2023)..............................9

**Statutes**

Computer Fraud and Abuse Act .....................................................................................4

Uniform Voidable Transactions Act ...........................................................................10

**Other Authorities**

Federal Rule of Civil Procedure 26(f) ..............................................................3, 4, 12

SDNY Local Rule 37.2 and Rule II.B .............................................................................4

Hon. John G. Koeltl Individual Practices II.B ..............................................................4

Plaintiffs Leadenhall Capital Partners LLP and Leadenhall Life Insurance Linked Investments Fund PLC (together, "Leadenhall") submit the following consolidated memorandum in opposition to the motions to stay discovery filed by (1) the 777 Entity Defendants,[1] (2) Steven Pasko, (3) Josh Wander, and (4) Advantage Capital Holdings LLC ("A-CAP") and Kenneth King.

## PRELIMINARY STATEMENT

Defendants' motions to stay discovery are the latest in a series of attempts to delay the inevitable revelation of the full scope of their scheme to defraud Leadenhall out of hundreds of millions of dollars. This is not a case in which commencing discovery prior to the adjudication of motions to dismiss risks a waste of the parties' resources; Defendants have admitted to breaching their contracts with Leadenhall, and the Court has already found, in the context of granting a temporary restraining order and then a preliminary injunction, that Leadenhall is more than likely to succeed on the merits of its breach of contract claims. Defendants' motions to dismiss rely primarily on challenges to the Court's jurisdiction rather than the merits—disputing that this Court is the appropriate *forum* for Leadenhall to litigate its claims but essentially acknowledging that the claims will be subjected to discovery *somewhere* and thereby undermining any good cause for a stay.

Further, Defendants have expressly used this litigation as a basis for denying Leadenhall its information rights under the contracts Defendants breached—including withholding information that Leadenhall believes would substantiate violations of the preliminary injunction in this matter—taking the position that Leadenhall's only option is to obtain this information through discovery while simultaneously seeking to prevent that discovery from proceeding.

---

[1] If not otherwise defined herein, capitalized terms are used as defined in Plaintiffs' Corrected Amended Complaint (ECF No. 187, "Am. Compl.").

Defendants do not identify any undue burden associated with responding to Leadenhall's requests, which are proportionate to the needs of the case (and less voluminous than the requests served by Defendants thus far), particularly when measured against Defendants' sprawling fraud. A stay would prejudice Leadenhall, which is owed hundreds of millions of dollars and has well-founded concerns about spoliation. For the reasons set forth below, a stay under these circumstances would be both unjustified and inequitable.

## <u>BACKGROUND</u>

Leadenhall filed this action on May 3, 2024 after discovering Defendants' fraudulent scheme to induce Leadenhall to extend hundreds of millions of dollars in debt financing—on false pretenses—to the 777 Partners enterprise. Am. Compl. ¶¶ 99-162. As explained in prior submissions, Defendants admitted, both on phone calls recorded with their permission and in writing, that they breached contractual obligations underlying the secured credit facility that is memorialized in the May 2021 Loan and Security Agreement ("LSA") and other related contracts by, among other things, double-pledging or failing to own the collateral securing the debt provided by Leadenhall. *See* ECF No. 57 at 5–7; ECF No. 128, June 7, 2024 Hr'g Tr. 54:25–55:3 ("[T]he defendants do not dispute any of Leadenhall's allegations of breaches by the defendants or provide any evidence of . . . wrongdoing on the part of Leadenhall[.]"). Defendants went to great lengths to pretend that the double-pledging was a "mistake" and even "prolonged negotiations by representing to Leadenhall that the debts could be repaid." *See* Am. Compl. ¶¶ 123-34; ECF No. 128, June 7, 2024 Hr'g Tr. 57:11-15. It is also undisputed that the 777 Entity Defendants are teetering on the brink of financial collapse—as demonstrated by their inability to make even a modest $15 million payment on their debt, ECF No. 57 at 9, their appointment of restructuring professionals from B. Riley to oversee the management of the 777 Partners enterprise, ECF No.

86 at 5-7, and, most recently, eviction notices for unpaid rent on their office space in both California and Florida, Am. Compl. ¶ 309(n)-(o).

Recognizing the strength of Leadenhall's claims and the fact that the 777 Entity Defendants lack the assets to repay Leadenhall the hundreds of millions of dollars it is owed, this Court entered a temporary restraining order ("TRO") and later a preliminary injunction to prevent the Borrower and Guarantor entities from dissipating assets to frustrate a judgment by Leadenhall.  *See* ECF Nos. 114, 135, 146.  Last month, the Court denied a motion to modify the preliminary injunction—again crediting Leadenhall's allegations that the Borrowers and Guarantors "were dissipating or preparing to dissipate assets in which [Leadenhall] holds a security interest."  ECF No. 201, Oct. 2, 2024 Hr'g Tr. 55:23-24; *see also* ECF No. 199 (order denying motion to amend preliminary injunction).

On August 19, 2024, the parties jointly submitted a Federal Rule of Civil Procedure 26(f) report and proposed scheduling order, which the Court entered on August 20, 2024.  *See* ECF No. 175.  Shortly thereafter, in early September 2024, the 777 Entity Defendants began taking the position that because Leadenhall had initiated a lawsuit, Leadenhall would have to seek any basic information to which it is entitled through the LSA—including information on liens against 777 Partners' assets—through the "formal litigation process."  *See* Declaration of Leigh Nathanson ("Nathanson Decl.") ¶ 3, Ex. A; ¶ 4, Ex. B ("Accordingly, we are forced to address Leadenhall's demands through the formal litigation process and will do so in response to any properly served and permissible requests for documents and information, in the event that any claims survive defendants' renewed motions to dismiss.").

After filing an Amended Complaint following the filing of Defendants' initial motions to dismiss, Leadenhall served Defendants with one set of 46 requests for the production of documents on September 28, 2024.  *See* ECF No. 207-1 (the "RFPs").  Leadenhall has not served any other

discovery requests, nor has it noticed any depositions.  Leadenhall's RFPs seek relevant information concerning the issues identified by the parties in their joint Rule 26(f) report, including (1) the collateral pledged to secure Leadenhall's loans under the LSA, (2) Defendants' financial condition and dealings with one another, (3) the relationship between the 777 Entity Defendants and A-CAP, (4) information about the governance, structure, and ownership of the corporate defendants, and (5) facts showing that the corporate Defendants are alter egos and/or dominated by the individual Defendants.  Two days after Leadenhall served its RFPs, on September 30, 2024, Defendants A-CAP and King served 70 document requests on Leadenhall.  *See* Declaration of Leigh Nathanson ¶ 5, Ex. C.

On October 10, 2024, each set of Defendants separately moved to dismiss Leadenhall's Amended Complaint.  ECF Nos. 203, 209, 211, 214.  On the same day, more than five months after this action was filed and nearly two months after the Rule 26(f) report was entered, the 777 Entity Defendants filed the first motion to stay discovery.  ECF No. 206.  A week later, on October 17, 2024, Defendants Pasko and Wander submitted their own requests to stay via letter motions.  ECF Nos. 216, 217.  Despite having served their own requests for production on September 30, Defendants A-CAP and King also sought a stay of discovery by letter motion shortly thereafter.  ECF No. 224.[2]

As litigation in this Court proceeded, two of the 777 Entity Defendants—777 Partners and SuttonPark Capital—filed suit against Leadenhall in the Southern District of Florida (the "Florida Action") on September 17, 2024, asserting claims for violation of the federal Computer Fraud and

---

[2] Contrary to Local Rule 37.2 and Rule II.B. of this Court's Individual Rules of Practice, the 777 Entities chose to file their motion to stay discovery as a non-discovery motion.  The remaining Defendants filed letter motions; Leadenhall elects to respond to all motions in a single brief.

Abuse Act ("CFAA") and various common-law claims. *See 777 Partners LLC v. Leadenhall Capital Partners LLP*, No. 9:24-cv-81143-DMM, ECF No. 1. The Florida Action is the 777 Entity Defendants' frivolous attempt to hold Leadenhall accountable for the conduct of their own disgruntled former employee, Noah Davis. Davis, who previously served as SuttonPark Capital's Chief Technology Officer, was arrested for burglary after breaking into and stealing electronic devices from SuttonPark Capital's offices in September 2024. *Id.*, ECF Nos. 48, 48-13. The Florida State Attorney has thus far failed to file charges against Davis. *See Florida v. Davis*, Case No. 50-2024-CF-007929 (Fla. 15th Cir. Ct.). SuttonPark Capital and 777 Partners also allege that Davis gained unauthorized access to unspecified information in their computer systems and that "the systems and information of Plaintiffs' that Davis accessed (some of which was likely altered) would clearly be considered by Leadenhall as useful in prosecuting the Leadenhall Litigation against Plaintiffs." *See* Florida Action, ECF No. 1 ¶ 22. The Complaint in the Florida Action provides no basis whatsoever tying Leadenhall to Davis' conduct other than the coincidental fact that Davis performed contract work for Saiph Consulting LLC—the company Leadenhall engaged to conduct an audit of collateral pledged to secure Leadenhall's loans. *See id.*, ECF No. 48 at 10–15. Leadenhall denies the allegations made in the Florida Action and intends to seek sanctions over its filing.

**LEGAL STANDARD**

The filing of a dispositive motion does not automatically stay discovery. *Brooks v. Macy's, Inc.*, No. 10 CIV 5304, 2010 WL 5297756, at *1 (S.D.N.Y. Dec. 21, 2010). Rather, the Court may stay discovery only for "good cause" upon application of counsel. *Republic of Turkey v. Christie's, Inc.*, 316 F. Supp. 3d 675, 677 (S.D.N.Y. 2018) (citation omitted). Courts have "considerable" discretion in determining whether a stay of discovery is appropriate; in doing so, courts should

assess "multiple factors, including the breadth of discovery sought, the burden of responding to it, the prejudice that would result to the party opposing the stay, and the strength of the pending motion forming the basis of the request for stay." *Id.* Of course, "no one factor is dispositive of a discovery stay motion." *Morgan Art Found. Ltd. v. McKenzie*, No. 18-CV-4438, 2020 WL 6135113, at *3 (S.D.N.Y. Oct. 18, 2020).

## ARGUMENT

Defendants cannot show that even a single factor favors a finding of good cause. Their burden arguments hold no water in light of Leadenhall's decision to seek only appropriately tailored document discovery. Defendants fail to show that Leadenhall would not suffer prejudice. And Leadenhall's meritorious claims will survive Defendants' motion to dismiss arguments. Even in the unlikely event that certain Defendants could escape this Court's jurisdiction, they will be required to provide discovery to Leadenhall—whether as parties or non-parties and whether in this forum or another. For these, reasons, Defendants' motions to stay discovery should be denied.

**I.    Defendants' Motions to Dismiss Do Not Provide Good Cause to Stay Discovery Because There Is No Dispute That Leadenhall's Case Will Proceed.**

Because a motion to dismiss does not itself constitute good cause to stay discovery, "the 'strength of the motion' factor contemplates whether the party seeking the stay has substantial arguments for dismissal, or whether the plaintiff's claim is unmeritorious." *RBG Mgmt. Corp. v. Vill. Super Mkt., Inc.*, No. 22-CV-07996, 2023 WL 1996920, at *2 (S.D.N.Y. Jan. 24, 2023) (citation omitted). Where there are "strong arguments on both sides," this factor does not favor a

stay. *Id.* at *3 (quoting *Guiffre v. Maxwell*, No. 15 CIV. 7433, 2016 WL 254932, at *2 (S.D.N.Y. Jan. 20, 2016)).[3]

Defendants cannot raise a credible argument for dismissal of Leadenhall's claims, let alone show that Leadenhall's claims are "so meritless as to warrant a stay." *Bennett v. Cuomo*, No. 22-CV-7846, 2023 WL 2021560, at *2 (S.D.N.Y. Feb. 15, 2023). To the contrary, there is no real dispute that most, if not all, of Leadenhall's claims will proceed.[4]

*First*, this Court has subject matter jurisdiction over Leadenhall's claims several times over. No Defendant disputes that, when Leadenhall's RICO claims proceed, this Court has federal question jurisdiction and supplemental jurisdiction over the state law claims. *See generally* ECF Nos. 205, 210, 212, 215. While some Defendants argue there is no diversity because of a supposed 2021 acquisition of membership interests in 777 Partners and 600 Partners by a foreign affiliate, ECF No. 205 at 6–7, they cannot account for their contrary representations to Leadenhall in September 2022 and April 2023, Am. Compl. ¶¶ 27–28, which suggest that acquisition never happened or was later unwound. This Court has correctly cast doubt on Defendants' jurisdictional arguments. ECF No. 128, June 7, 2024 Hr'g Tr. 54:6-20 ("The plaintiffs have made sufficient

---

[3] The 777 Entity Defendants appear to suggest that to justify a stay, they need only show that their arguments for dismissal are not "without foundation in law." ECF No. 208 at 4. That is not the correct legal standard. *See Hong Leong Fin. Ltd. (Singapore) v. Pinnacle Performance Ltd.*, 297 F.R.D. 69, 72 (S.D.N.Y. 2013) (declining to "use the 'not without foundation in law' standard" and instead requiring that the motion to dismiss have "substantial grounds").

[4] Leadenhall here briefly describes some of the reasons why Defendants' motions to dismiss lack merit, but expressly reserves the right to raise additional arguments in opposition to those motions.

allegations of diversity jurisdiction … [and] have alleged sufficient plausible federal claims. Accordingly, the defendants' jurisdictional argument is without merit at this time."). And, even if these arguments had any merit whatsoever (which they do not), that would be no reason to stay discovery, since Leadenhall's case would simply proceed in another court.

*Second*, on the merits of Leadenhall's contract claims, the 777 Entity Defendants do not dispute the occurrence of nine of the ten "Trigger Events" that give rise to liability for the Guarantors under the Guaranty Agreement. *Compare* ECF No. 205 at 27–28 *with* Am. Compl. ¶ 351. This Court already addressed the 777 Entity Defendants' argument on the tenth Trigger Event and found that Leadenhall had a likelihood of success on the merits. ECF No. 128, June 7, 2024 Hr'g Tr. 52:14–55:22. That argument—that even though the 777 Entity Defendants breached the LSA, the Borrowers and Guarantors were not "solely" responsible for it—is not a pleadings-phase argument at all; rather, it underscores the need for discovery to determine whether any other causes exist (or whether any other Defendants, like A-CAP, were partly responsible), since Defendants have certainly never suggested one. The 777 Entity Defendants also halfheartedly argue that Leadenhall has not specified which provisions of the other contracts were breached, but that is demonstrably untrue. ECF No. 205 at 27–29. Leadenhall's Complaint ties detailed factual allegations to the specific contractual terms that were breached. *See* Am. Compl. ¶¶ 53–174, 316––45. Nor will Wander, Pasko, King, or A-CAP evade contract liability. Wander and Pasko are subject to alter ego liability for turning the 777 Entity Defendants into grossly undercapitalized, personal piggy-banks for their and their family members' money-losing passion projects. *Id.* ¶¶ 247–48, 279–80, 286, 308. And A-CAP and King are subject to lender liability for exercising a degree of control over the 777 Entity Defendants that would be unheard of for any legitimate lender, including formally memorializing their control over 777 Partners' operations, *id.* ¶ 201;

establishing a "Steering Committee to ensure that every investment decision ran through King," *id.*; funding and controlling 777 Partners' payroll, *id.* ¶¶ 205-06; and moving their deputies into 777 Partners' offices to tighten their grip over the scheme to defraud Leadenhall, *id.* ¶¶ 202-18.

*Third*, Leadenhall has alleged a "prototypical" RICO claim, to which Defendants have no serious counterargument. *See Allen ex rel. Allen v. Devine*, 726 F. Supp. 2d 240, 251 (E.D.N.Y. 2010). Leadenhall starts by alleging a classic association-in-fact enterprise, led by three individuals—King, Wander, and Pasko—and the two distinct corporate families they control. The enterprise exhibits far more structure, and a clearer common purpose, than the law requires, as the members' relationships were formalized in a "Steering Committee," and their common purpose to defraud Leadenhall and others was even carried out from the same office space. Am. Compl. ¶¶ 20, 100–01, 201–06, 208–29, 257, 287. Even at this early stage of the case, prior to discovery, the enterprise members' symbiotic relationship is apparent, in which A-CAP and King, on one hand, and the 777 Defendants, on the other, mutually benefit from perpetuating the enterprise as a tool to commit fraud. *Id.* ¶¶ 193–94, 197, 230–38, 244–45. The Supreme Court and Second Circuit have recognized association-in-fact enterprises based on *far* less. *See, e.g.*, *Boyle v. United States*, 556 U.S. 938, 946 (2009) (holding that an enterprise needs only "three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose"); *United States v. Gershman*, 31 F.4th 80, 96 (2d Cir. 2022), *cert. denied*, 143 S. Ct. 816 (2023). This enterprise meets both open-ended and closed-ended continuity because it persisted for years—and continues to persist; over that period, each RICO Defendant committed several predicate acts of racketeering in a pattern of *dozens* of such acts, in furtherance of the enterprise's fraudulent purpose. *See* Am. Compl. ¶¶ 46–51, 55–56, 61–64, 76–81, 85, 89, 97, 99–174, 191–227, 230–311. Finally, the RICO Defendants'

years-long pattern of fraud directly caused Leadenhall clear and definite damages including the sum certain of $609,529,966.82, which is accruing interest and will be trebled at the conclusion of this case.  As Leadenhall will explain in more detail in its forthcoming opposition to Defendants' motions to dismiss, Defendants' arguments for dismissal are all meritless attempts to obfuscate and distract from the detailed allegations supporting Leadenhall's RICO claims.

*Fourth*, Leadenhall has sufficiently alleged a RICO conspiracy claim, which carries an "even more relaxed" standard than the substantive RICO claim described above, *First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 178 (2d Cir. 2004), easily satisfied by the direct participation of King, A-CAP, and their employees in the fraudulent conduct by 777 Partners via the formal memo exercising control, Steering Committee, office-sharing, funding of payroll, and otherwise.  And for similar reasons that the RICO and RICO conspiracy claims will survive, Leadenhall adequately alleges both common-law fraud and a civil conspiracy to commit the underlying tort of common-law fraud.  *See Gym Door Repairs, Inc. v. Young Equipment Sales, Inc.*, 206 F. Supp. 3d 869, 913 (S.D.N.Y. 2016) (explaining that where an "underlying, actionable tort is established," a "plaintiff may plead the existence of a conspiracy in order to demonstrate that each defendant's conduct was part of a common scheme").

*Fifth*, Leadenhall's unjust enrichment and fraudulent transfer claims are sufficiently pled as well.  Leadenhall's unjust enrichment claim is not duplicative of its breach-of-contract claim where, as here, Defendants either (1) dispute the applicability of the relevant contracts, or (2) are not parties to those contracts.  And Leadenhall's fraudulent transfer claims are meritorious—no matter which state's version of the Uniform Voidable Transactions Act applies—because 777 Partners was unquestionably insolvent at the time A-CAP intentionally stripped assets from it.

*Sixth*, Wander and Pasko are subject to personal jurisdiction in New York, whether by virtue of alter ego status, described above; their close relationship to and control of the 777 Entity Defendants, which consented to jurisdiction; direct participation in the fraud from their homes and/or offices in New York; or by imputation of the acts of their agents and co-conspirators, including New York domiciliaries A-CAP and King. *See In re Platinum & Palladium Antitrust Litig.*, 61 F.4th 242, 271 (2d Cir. 2023); *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 85 (2d Cir. 2018).

Because Defendants do not meaningfully dispute that at least some claims will proceed, there is no risk that discovery will be unnecessary here and no good cause for a stay. Indeed, several courts have found that a motion to dismiss that is unlikely to completely dispose of the matter weighs *against* granting a stay. *McSweeney v. Cohen*, No. 24-CV-1503, 2024 WL 4108539, at *1 (S.D.N.Y. Sept. 5, 2024) (refusing to grant a stay where the motion to dismiss would not "dispose of the entire action"); *Kirschner v. J.P. Morgan Chase Bank, N.A.*, No. 17CIV6334PGGSLC, 2020 WL 230183, at *2-3 (S.D.N.Y. Jan. 15, 2020) (same); *see also Cambridge Cap. LLC v. Ruby Has LLC*, No. 20-cv-11118, 2021 WL 2413320, at *3 (S.D.N.Y. June 10, 2021) (denying motion for stay where defendant admitted that counterclaims would require discovery even if the complaint was dismissed).

Here, even in the unlikely event that, after the Court's finding of likelihood of success on the merits in the context of injunctive relief, some claims or parties were dismissed from the case, Leadenhall would continue to seek discovery from these Defendants as parties or non-parties in whichever forum its case will proceed. *Hollins v. U.S. Tennis Ass'n*, 469 F. Supp. 2d 67, 79 (E.D.N.Y. 2006) (rejecting stay request because "[e]ven assuming the moving defendants[] are dismissed, it is likely that the plaintiffs will continue to conduct discovery regarding these

defendants as non-parties"); *see also Idle Media, Inc. v. Create Music Grp., Inc.*, No. 1:24-CV-00805, 2024 WL 2946248, at *3 (S.D.N.Y. June 11, 2024) ("In any event, Plaintiffs will likely be entitled to discovery from Reilly by third-party subpoena should the motion to dismiss be granted."). Stated differently, "a stay is unlikely to substantially simplify the resolution of this case by reducing the number of parties." *Bennett*, 2023 WL 2021560, at *3. Because Defendants cannot escape the fact that this case will proceed to discovery—in one forum or another—a stay is not appropriate. *See Brooks*, 2010 WL 5297756, at *2 ("[I]t is probably inevitable that the discovery will be conducted at some time, and there does not seem to be any valid reason why it should not be conducted now.").

## II.    Leadenhall's Discovery Requests Are Proportional to the Needs of the Case.

To justify a stay based on the breadth of discovery sought and the burden of responding to it, Defendants must offer more than "vague and conclusory contentions" that Leadenhall's discovery requests are "voluminous and burdensome." *Mirra v. Jordan*, No. 15CV4100ATKNF, 2016 WL 889559, at *2 (S.D.N.Y. Mar. 1, 2016). "Conclusory statements about broad discovery and numerous high-level depositions" do not suffice because such platitudes do not "move beyond generally describing the costs of participating in standard civil discovery." *RBG Mgmt. Corp.*, 2023 WL 1996920, at *2. Despite this standard, not a single Defendant explains how Leadenhall's RFPs—which are narrowly tailored to a three-year period and relate to topics Defendants themselves identified as relevant in the parties' joint Rule 26(f) statement—are "overbroad or disproportionate" to the needs of this case. *Simpson-Quin v. Montejano*, No. 23-CV-08113, 2024 WL 3347040, at *1 (S.D.N.Y. July 9, 2024) (denying motion to stay where the discovery listed was "entirely consistent with the claims at issue in this case").

Nor can they. Courts in this district have rejected similar attempts to stymie discovery. In *Mirra*, the court refused to stay discovery where the plaintiff issued 119 document requests (more

than double the 46 RFPs Leadenhall now seeks) because the mere fact "[t]hat the plaintiff made 119 document demands, by itself, does not demonstrate that the plaintiff's document requests are voluminous and burdensome." 2016 WL 889559, at *2. Likewise, in *Robbins v. Candy Digital*, complaints of overbreadth did not convince the court to stay discovery—the court instead described the plaintiff's 34 document demands, and seven interrogatories, which spanned an approximately three-year period, as "not exceptional." No. 23-cv-10619, 2024 WL 2221362, at *2 (S.D.N.Y. May 15, 2024). And in *Idle Media*, the court rejected the defendant's claim that "he would be burdened by discovery of highly confidential and burdensome financial records . . . for a period of at least two years" because the defendant entirely failed to explain "why producing these records, available electronically, would prove burdensome." 2024 WL 2946248, at *3.

Leadenhall's outstanding discovery requests are similarly "not exceptional." The demands are tailored to the needs of this case and tethered to the allegations in the Complaint. *See, e.g.*, ECF No. 207-1 at RFP No. 11 (seeking documents "concerning the calculation of the Collateral shortfall related to the LSA"); *id.* at RFP No. 13 (seeking documents "concerning the February 21, 2024 agreement between the 777 Entity Defendants and Leadenhall described in Paragraph 214 of the Complaint, including any payments in connection therewith"). Defendants do not identify any particular reason, as opposed to conclusory assertions, that responding to Leadenhall's RFPs would be unduly burdensome.

For example, the 777 Entity Defendants characterize as "enormous" Leadenhall's request for "documents dating back to 2021" that are "sufficient to show" the date, amount, and purpose of payments the 777 Entity Defendants made between or on behalf of A-CAP, the individual Defendants, and their families. ECF No. 208 at 7–8. But that RFP's "sufficient to show" formulation is a recognized way of *narrowing* the scope of a request. *See Conservation L. Found.,*

*Inc. v. Shell Oil Co*., No. 3:21-CV-00933, 2023 WL 5434760, at *19 (D. Conn. Aug. 22, 2023) (noting that use of the "'sufficient to show' formulation" defeated "any claim of burden or lack of proportionality").  To take another example, Defendants A-CAP and King challenge RFPs seeking information about investments they made in the 777 Entity Defendants—including their ability to exercise remedies against assets owed by the 777 Entities—arguing that such RFPs have "no bearing on" any of Leadenhall's claims.  *See* ECF No. 224 at 2–3 (discussing RFPs 20-22).  But these RFPs go to a central feature of Leadenhall's theory: proof that A-CAP was not an "arm's-length" lender to the 777 Entity Defendants but rather a controlling co-conspirator that "funds Wander and Pasko's businesses at wildly above-market interest rates in conjunction with essentially unlimited rights with respect to those entities' assets."  Am. Compl. ¶ 194.  That A-CAP and King chose to serve their own discovery requests—which contain 70 separate RFP, *see* Nathanson Decl. ¶ 5, Ex. C—also undermines their current position that discovery should be stayed.  *See Am. Exp. Fin. Advisors, Inc. v. Zito*, 45 F. Supp. 2d 230, 235 (E.D.N.Y. 1999) ("In view of the fact that the parties have already been engaging in discovery, the court sees no reason t[o] delay the action by imposing a stay of discovery.").[5]

---

[5] Wander and Pasko argue burden only in passing, asserting that responding to discovery "would be particularly burdensome for Mr. Wander as an individual defendant," ECF No. 217 at 2, or amount to "a fishing expedition" as to Pasko, ECF No. 216 at 3.  But there is no *per se* rule exempting individual defendants from discovery, and the discovery Leadenhall seeks relates directly to its allegations about Wander's and Pasko's conduct in their individual capacities and as alter egos of the 777 Entity Defendants.  *See generally* Am. Compl. ¶¶ 247–56.

To the extent that certain RFPs seek broad categories of information or may yield voluminous responses, that merely reflects the sprawling nature of Defendants' fraud and factual questions raised by their own defenses, such as the contention that the 777 Entity Defendants were not "solely" responsible for breaching their obligations to Leadenhall.  And in any event, "[t]here is no reason that any objections to individual requests cannot be dealt with through the meet-and-confer process."  *Kirschner*, 2020 WL 230183, at *3.  Although Defendants have not shown any entitlement to a stay, Leadenhall will work with Defendants to avoid any unnecessary expansion or duplication of efforts from proceeding with discovery in parallel to their motions to dismiss— for example, forgoing party depositions until the Court rules on Defendants' motions to dismiss to avoid having to call witnesses more than once.  *See, e.g.*, *Brooks*, 2010 WL 5297756, at *2 (permitting document requests and interrogatories pending motions to dismiss).  Allowing written discovery to proceed will also enable the parties to prepare for depositions and advance this case more efficiently once the motions to dismiss are decided.

In sum, Defendants cannot show good cause simply by "asserting that the plaintiff's requests seek extensive documents related to a wide variety of issues."  *Mirra*, 2016 WL 889559, at *2.  Because that is all Defendants do, this factor does not favor granting a stay.

### III.    Even a Brief Stay of Discovery Will Prejudice Leadenhall Given Defendants' Extensive Delay and the Risk of Spoliation.

Defendants recite in unison that a stay of discovery would not prejudice Leadenhall, and curiously, they cite Leadenhall's supposed delay in filing suit as evidence.  *See, e.g.*, ECF No. 217 at 3 (stating that "Leadenhall has known of the alleged fraud since at least March 2023" but "bided its time" to file this action); ECF No. 208 at 6 (similar).  Defendants have this exactly backwards. As alleged in the Amended Complaint, the reason Leadenhall initially waited to bring suit was because Wander insisted that the collateral shortfall that breached the LSA was the result of a

"recording glitch" that could be remedied.  *See, e.g.*, Am. Compl. ¶ 12.  Leadenhall was then strung along by Defendants, who pantomimed negotiating a "Forbearance Agreement" and repeatedly promised to pay down some of the outstanding debt—which they had either no intention or no ability to perform.  *See id.* ¶¶ 177–90; *see also* ECF No. 58, Declaration of Craig Gillespie ¶¶ 16–24 (describing negotiations with Wander and Wander's repeated unfulfilled promises in the spring of 2024); ECF No. 60, Declaration of Luca Albertini ¶¶ 2–7 (same).  Indeed, in granting the TRO, this Court observed that "attempts by plaintiffs to resolve a dispute before litigation weigh against finding delay . . ..  In this case, Leadenhall attempted to negotiate and brought suit when those negotiations failed.  During that time, it was the defendants that prolonged negotiations by representing to Leadenhall that the debts could be repaid."  ECF No. 128, June 7, 2024 Hr'g Tr. 57:6-15.  Defendants' stay motions are yet another attempt to delay the inevitable exposure of the full extent of their fraudulent scheme.

Additionally, prior to and during the pendency of this litigation, Leadenhall has repeatedly sought to exercise its undisputed and ongoing contractual rights to information regarding its collateral pursuant to § 5.02 of the LSA.[6]  But the 777 Entity Defendants have refused to provide information responsive to Leadenhall's information requests, citing the existing litigation and the availability of the discovery process, among other things.  *See* Nathanson Decl. ¶ 4, Ex. B.  In other words, the 777 Entity Defendants have used the availability of discovery to stymie Leadenhall's contractual right to information while simultaneously seeking to stay discovery and stonewall Leadenhall entirely.

A stay would result in significant prejudice to Leadenhall for at least three reasons.  First, Leadenhall is indisputably owed over $600 million dollars of accelerated debt under the LSA in

---

[6] A redacted version of the LSA is filed at ECF No. 184-1.

the face of the 777 Entity Defendants' dwindling assets, *see* Am. Compl. ¶ 177, and thus has "a compelling interest in prompt resolution" of this case. *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 103–04 (2d Cir. 2012); *see also OMG Fid., Inc. v. Sirius Techs., Inc.*, 239 F.R.D. 300, 306 (N.D.N.Y. 2006) (noting that "the interjection of delay into litigation for the mere sake of delay serves no useful purpose").

Second, it is well established that, as more time passes, there is a higher risk that relevant evidence will be lost. *See Kaplan v. Lebanese Canadian Bank, SAL*, 610 F. Supp. 3d 533, 535 (S.D.N.Y. 2022); *Consumer Fin. Prot. Bureau v. Manseth*, No. 22-CV-29, 2024 WL 805628, at *4 (W.D.N.Y. Feb. 26, 2024) (observing that a stay of discovery would "allow[] memories to fade and risk[] the loss of evidence"). That risk is heightened here, where many custodians of information relevant to this action have left the employment of Defendants or purportedly been removed from their positions and replaced with interim officers with no prior experience with Defendants and their information systems or retention policies. *See, e.g.*, ECF No. 86 at 1–2 (explaining that restructuring professionals from B. Riley are "now responsible for the 777 Defendants' various lines of business").

Third, the risk that evidence relevant to Leadenhall's claims will be destroyed or altered or otherwise become unavailable has already materialized. The 777 Entity Defendants have demonstrated a pattern of altering and falsifying financial records to obfuscate their wrongdoing. *See, e.g.*, Am. Compl. ¶¶ 159, 163–74. And as their financial condition deteriorates, 777 Partners has received eviction notices for its office spaces in Miami and California, further increasing the risk that Defendants will fail to preserve documents or data as materials are relocated. Am. Compl. ¶ 309(n)-(o). Moreover, the 777 Entity Defendants are embroiled in a number of disputes with

former employees and business partners,[7] which have or could put their electronic data, computer systems, and physical data at risk. Defendants allege that SuttonPark Capital's former Chief Technology Officer, Noah Davis, stole company laptops, attempted to access and transfer data from its computer systems, and "likely altered" information that "would clearly be considered by Leadenhall as useful in prosecuting" its claims. *See generally* Florida Action, ECF No. 1 ¶¶ 4–5, 21–24. As a result, allowing discovery to proceed expeditiously is necessary to "protect against any prejudice to Plaintiff from potential spoliation of evidence." *McSweeney*, 2024 WL 4108539, at *2.

Finally, Defendants' contention that any stay would be in place only for a short period given the motion to dismiss briefing schedule is not a representation they can fairly make. *See, e.g.*, ECF No. 208 at 6–7; ECF No. 216 at 3. This case is complex; Leadenhall has asserted numerous claims against numerous Defendants in a lengthy and detailed Complaint, and Defendants elected to file four separate motions to dismiss asserting overlapping—and at times conflicting—arguments. The resolution of Defendants' various motions to dismiss may understandably take time.[8]

---

[7] These lawsuits include *Obra Cap. Mgmt., LLC v. 777 Partners LLC*, Index No. 651220/2024 (Sup. Ct. N.Y. Cty.); *Malt Family Trust v. 777 Partners LLC*, C.A. No. 2022-0652 (Del. Ch.); *Advantage Cap. Holdings, LLC v. Arciniegas*, No. 24-cv-22621 (S.D. Fla.) (ECF 1-1); *Advantage Cap. Holdings, LLC v. Beruff*, No. 24-cv-22620 (S.D. Fla.) (ECF 1-1)).

[8] Certain Defendants also argue that no prejudice would result to Leadenhall "because a preliminary injunction has been ordered," ECF No. 208 at 1; *see also* ECF No. 216 at 3, but preserving assets is not the same as preserving evidence.

## **CONCLUSION**

Not a single factor favors a stay of discovery.  Leadenhall has asserted meritorious claims at least some of which will undisputedly proceed; sought tailored discovery; and demonstrated the prejudice that it would suffer if a stay were granted.  Defendants offer no reason why reasonable discovery cannot—or should not—proceed expeditiously.  Leadenhall therefore respectfully requests that the Court deny Defendants' motions to stay discovery.

Dated:  New York, New York
        November 8, 2024

                            KING AND SPALDING LLP

                            */s/ Leigh M. Nathanson*
                            Craig Carpenito
                            Leigh M. Nathanson
                            Brian Donovan
                            Michael S. Taintor
                            1185 Avenue of the Americas
                            New York, NY 10036
                            (212) 556-2100
                            ccarpenito@kslaw.com
                            lnathanson@kslaw.com
                            bdonovan@kslaw.com
                            mtaintor@kslaw.com

                            *Attorneys for Plaintiffs*

<u>**CERTIFICATION OF COMPLIANCE**</u>

I hereby state that the foregoing Memorandum of Law was prepared on a computer using Microsoft Word.  Pursuant to the word count system in Microsoft Word, the total number of words in the Memorandum of Law, excluding the caption, table of contents, table of authorities, signature block, and this certification is 5,802.  The foregoing Memorandum of Law complies with the formatting rules set forth in the § II.D of the Court's Individual Practices.

Dated: New York, New York
          November 8, 2024

                                  KING AND SPALDING LLP

                                  */s/ Leigh M. Nathanson*
                                  Leigh M. Nathanson

                                  *Attorneys for Plaintiffs*