**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

LEADENHALL CAPITAL PARTNERS LLP
and LEADENHALL LIFE INSURANCE
LINKED INVESTMENTS FUND PLC,

                Plaintiffs,                No. 24-CV-03453 (JGK)

        v.                                Hon. John G. Koeltl

JOSH WANDER, STEVEN PASKO,
KENNETH KING, 777 PARTNERS LLC,
600 PARTNERS LLC, SPLCSS III LLC,
SIGNAL SML 4 LLC, INSURETY AGENCY
SERVICES LLC, DORCHESTER
RECEIVABLES II LLC, SUTTONPARK
CAPITAL LLC, SIGNAL MEDICAL
RECEIVABLES LLC, INSURETY CAPITAL
LLC, SUTTONPARK SERVICING LLC,
SIGNAL SERVICING LLC, INSURETY
SERVICING LLC, and ADVANTAGE
CAPITAL HOLDINGS LLC,

                Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x


**MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT**
**<u>STEVEN PASKO'S MOTION TO DISMISS</u>**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................... ii

ARGUMENT ................................................................................................................... 2

    I.    Plaintiffs' Claims Against Mr. Pasko Fail for Lack of Personal Jurisdiction ..................... 2

      A.    Plaintiffs Have Not Satisfied New York's Long-Arm Statute ........................................ 2

      B.    Plaintiffs' Alter Ego and "Closely Related" Allegations Are Insufficient ..................... 3

      C.    Plaintiffs' "Co-Conspirator" Theory Also Fails ................................................. 5

    II.    Plaintiffs Fail to State a Claim Against Mr. Pasko......................................................... 6

CONCLUSION.................................................................................................................. 9

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*HSM Holdings, LLC v. Mantu I.M. Mobile Ltd.*,
    2021 WL 918556 (S.D.N.Y. Mar. 10, 2021)...............................................................3

*Saidnia v. Nimbus Mining LLC*,
    2023 WL 7005037 (S.D.N.Y. Oct. 24, 2023) ...........................................................5

*Shift Markets Grp., Inc. v. Alkemi AI Inc.*,
    2024 WL 4337451 (S.D.N.Y. Sept. 27, 2024) ..........................................................6

*Transient Path, LLC v. Stones S. Bay Corp.*,
    2024 WL 3730113 (S.D.N.Y. Aug. 8, 2024)..............................................................5

*Weyant v. Phia Grp. LLP*,
    2021 WL 5998400 (S.D.N.Y. Dec. 20, 2021)............................................................9

*Yehuda v. Zuchaer*,
    2023 WL 8888584 (2d Cir. Dec. 26, 2023) ..............................................................3

Plaintiffs seek to sidestep the fatal defects of their claims against Steven Pasko by (i) mischaracterizing their allegations against him to try to make it appear that he engaged in wrongful conduct when their actual allegations support no such inference, (ii) lumping him in with other Defendants and making general assertions about him based on alleged conduct that the Complaint attributes to others, and (iii) making conclusory assertions about him that are unsupported by any allegations in the Complaint.[1]

As to personal jurisdiction, Plaintiffs cannot invoke the New York long-arm statute because none of the allegations on which they rely involves a New York-based transaction in which Mr. Pasko (or any entity associated with him) allegedly engaged, much less one from which Plaintiffs' claims could be said to arise.  Nor do Plaintiffs come close to meeting the standards required to show that Mr. Pasko is (i) an alter ego of the 777 Entity Defendants, (ii) "closely related" to them in the ways necessary to subject him to the LSA's forum selection clause, or (iii) subject to having the alleged New York contacts of other Defendants applied to him under a "co-conspirator" theory.

In arguing otherwise, Plaintiffs rely on (i) alter ego allegations that Mr. Pasko demonstrated in his moving brief are deficient, allegations that have no relevance to the alter ego analysis (like those regarding the JARM loan), and allegations that are made against other Defendants, not Mr. Pasko; (ii) case law for the "closely related" theory that is inapplicable (because Mr. Pasko is not alleged to have had an active role either in negotiating the LSA or in the transactions underlying Plaintiffs' claims); and (iii) case law for the "co-conspirator" theory

---

[1] Mr. Pasko hereby joins in the 777 Entity Defendants' diversity jurisdiction argument (having previously joined in their other arguments).

that also is inapplicable (because the purported acts by other Defendants in New York are not alleged to have been at the direction, on behalf, or with the awareness of Mr. Pasko).

As to their merits claims, in a familiar pattern, Plaintiffs attempt to defend them by (i) relying on allegations involving other Defendants but not Mr. Pasko, and (ii) mischaracterizing their handful of allegations that actually involve him (including those relating to the JARM loan and a November 2023 email, which do not, as Plaintiffs now assert, support characterizing Mr. Pasko as "the primary cash beneficiary of the [allegedly] fraudulent schemes" or as having taken steps "to avoid exposing the [supposed] fraud." (Dkt. 248 ("Opp'n") at 41-42.) Because Plaintiffs have not provided a basis for personal jurisdiction over Mr. Pasko and have not stated a viable claim against him, the claims against him should be dismissed.

## **ARGUMENT**

### I. **Plaintiffs' Claims Against Mr. Pasko Fail for Lack of Personal Jurisdiction**

#### A. *Plaintiffs Have Not Satisfied New York's Long-Arm Statute*

Plaintiffs argue that long-arm jurisdiction exists because their claims "arise out of Wander and Pasko's" purported "transaction of business in New York" (Opp'n at 101), but the allegations to which Plaintiffs then point do not involve Mr. Pasko. (*See id.*) When it comes to Mr. Pasko, Plaintiffs rely exclusively on three insufficient allegations: that (i) he previously "owned a home" in New York (Compl. ¶43), which Plaintiffs now mischaracterize as an allegation that he "lived in New York" (Opp'n at 102), which in any event is insufficient because Plaintiffs do not identify a single act in which Mr. Pasko engaged in New York, much less one with a nexus to their claims (*see id.* at 103-05); (ii) the address of Mr. Pasko's supposed New York "home" was listed as the "business address of MTCP LLC" (*id.* at 102), which likewise is insufficient, as

2

Plaintiffs do not identify any relevant act in which MTCP LLC engaged in New York; and (iii) Mr. Pasko signed reports on behalf of SuttonPark Servicer, which Plaintiffs vaguely assert "has or had its principal place of business in New York" (*id.*), but which Plaintiffs acknowledged in their Complaint "has operations in Florida and may have moved its principal office to [Florida]" (Compl. ¶33), and which in any event is insufficient, as Plaintiffs do not identify a relevant act in which SuttonPark Servicer engaged in New York.  These allegations thus do not support an inference that Mr. Pasko (or any entity associated with him) transacted business in New York, or that a nexus exists between such (non-existent) "business transacted and the cause of action sued upon."  *Yehuda v. Zuchaer*, 2023 WL 8888584, at *2 (2d Cir. Dec. 26, 2023).

    B.   *Plaintiffs' Alter Ego and "Closely Related" Allegations Are Insufficient*

       Plaintiffs likewise have failed to plead facts sufficient to support an inference that Mr. Pasko is an alter ego of the 777 Entity Defendants.  Personal jurisdiction based on supposed alter ego status is a threshold issue for which Plaintiffs bear the burden and is properly addressed at the pleadings stage.  *See HSM Holdings, LLC v. Mantu I.M. Mobile Ltd.*, 2021 WL 918556, at *16 (S.D.N.Y. Mar. 10, 2021) (dismissing claims because plaintiff failed to satisfy the "heavy burden" necessary to establish alter ego status).

       In trying to justify their alter ego claim as to Mr. Pasko, Plaintiffs point to the same allegations from their Complaint that Mr. Pasko already showed are insufficient in his moving brief:  that (i) the 777 Entity Defendants "trace their ownership and control to Wander and Pasko" (which is legally insufficient to establish alter ego status, *see* Dkt. 212 at 13-19, and as to control by Mr. Pasko, unsupported by the factual allegations in the Complaint (which speak to control by others, not Mr. Pasko, *e.g.*, Compl. ¶¶182-84, 199, 219)), (ii) "Wander and Pasko" wrote the June 2023 memo (which included statements that are legally irrelevant to the alter ego

inquiry, Dkt. 212 at 14-15, 17), and (iii) "Wander and Pasko" reorganized 600 Partners to make it wholly owned by Mr. Pasko and made SuttonPark Capital a wholly-owned subsidiary of 600 Partners (which also is irrelevant to the alter ego inquiry because Plaintiffs do not allege that Mr. Pasko thereafter used 600 Partners to hide assets, avoid liabilities, or engage in any other act relevant to the alter ego analysis, *see id.* at 16).  (*See* Opp'n at 69-70.)

The other allegations to which Plaintiffs point are equally deficient, as they (i) are directed at other Defendants, not Mr. Pasko (*e.g.*, "*777 Partners* [allegedly] placed airplanes on 777 Re's balance sheet for no consideration . . . [and] agreed to up-tier the loan A-CAP had previously made to [JARM], Wander's personal shareholding vehicle" (*id.* at 71 (emphasis added)), or (ii) relate to transactions that have no relevance to the alter ego inquiry (*e.g.*, A-CAP providing the aforementioned loan to JARM, and Messrs. Wander and Pasko personally guaranteeing the loan, *id.* at 72)).  With respect to the JARM loan, the Complaint makes clear that Plaintiffs' issue with it was not its initially being made or being personally guaranteed by Messrs. Wander and Pasko, but rather that "King [later] caus[ed] Wander to agree that *777 Partners* — not Wander's personal vehicle — would take on the JARM loan obligation and back that obligation with a purported first-priority position on the assets of 777 Partners," thereby "ensur[ing] that [the] . . . loan would be senior to 777 Partners' obligations to non-affiliated secured creditors like Leadenhall."  (Compl. ¶¶225-26 (emphasis in original).)

In addition to rehashing their existing alter ego allegations (without addressing the deficiencies Mr. Pasko previously identified) and referencing other allegations that have no relevance to the alter ego inquiry (like the JARM loan), Plaintiffs misleadingly refer to Messrs. Wander and Pasko collectively to try to make it appear that allegations relate to Mr. Pasko when they do not.  For example, Plaintiffs allege that "Wander and Pasko have admitted numerous

'mistakes'" (Opp'n at 72), when Plaintiffs' allegations are directed solely at Mr. Wander.

Similarly, when alleging intentional undercapitalization, Plaintiffs assert that "Wander and

Pasko" used the 777 Entities to fund "passion projects" (Opp'n at 71), but then cite as support

"projects" involving only Mr. Wander:  Mr. Wander's wife's ice cream business, the purchase of

Mr. Wander's Miami home, and Mr. Wander's leasing airplanes (*id.* at 71-72.)  Plaintiffs thus

have not met their burden of establishing Mr. Pasko's alter ego status.

Plaintiffs also argue incorrectly that Mr. Pasko is independently subject to jurisdiction

because he is "closely related" to the LSA's signatories.  (Opp'n at 96-100.)  As Mr. Pasko

demonstrated in his moving brief, recent decisions have rejected the "closely related" theory as

incompatible with due process, but even when courts have endorsed the theory, the cases

(including those Plaintiffs cite) involved non-signatories who were alleged to have had an active

role in negotiating the relevant agreements or in the underlying transactions, and did not (like

Mr. Pasko here) merely passively sign (in his capacity as a corporate signatory) a handful of

documents that others prepared (allegedly at the direction of Mr. Wander).  *See, e.g.*, *Transient

Path, LLC v. Stones S. Bay Corp.*, 2024 WL 3730113, at *8 (S.D.N.Y. Aug. 8, 2024) (finding

non-signatory closely related to signatories where non-signatory responded to emails addressing

substantive matters related to the relevant agreements); *Saidnia v. Nimbus Mining LLC*, 2023 WL

7005037, at *7 (S.D.N.Y. Oct. 24, 2023) (finding non-signatories closely related to signatory

where non-signatories were shown to have "structured the terms of the Contract to specifically

include the[] jurisdiction and venue provisions").  *See also* Dkt. 212 at 19-21 (citing cases).

C. *Plaintiffs' "Co-Conspirator" Theory Also Fails*

Plaintiffs' assertion that Mr. Pasko alternatively is "subject to personal jurisdiction in

New York because the minimum contacts of [his supposed] agents and co-conspirators are

attributed to [him]" (Opp'n at 102) fails because Plaintiffs do not allege that any Defendant engaged in a relevant act in New York on behalf of Mr. Pasko or that Mr. Pasko was aware of the effects in New York of any such act.  To establish personal jurisdiction over a co-conspirator under an agency theory of jurisdiction, a plaintiff must allege, among other things, that "the co-conspirators acting in New York acted at the direction or under the control, or at the request of or on behalf of the out-of-state defendant" and "the defendant had an awareness of the effects in New York of [the] activity."  *Shift Markets Grp., Inc. v. Alkemi AI Inc.*, 2024 WL 4337451, at *4 (S.D.N.Y. Sept. 27, 2024).  The Complaint lacks any facts to suggest that any alleged act of any other Defendant in New York was undertaken "at the direction or under the control, or at the request of or on behalf of" Mr. Pasko, or that Mr. Pasko had an "awareness of the effects in New York" of any such act.  *Id.*

## II. <u>Plaintiffs Fail to State a Claim Against Mr. Pasko</u>

Plaintiffs' claims against Mr. Pasko also should be dismissed for failure to state a claim. First, the contract claims fail because Mr. Pasko was not a party to the relevant agreements and Plaintiffs have not alleged facts to support that he is an alter ego of the signatories.  *See supra*.

Second, the RICO claims fail because they are not supported by allegations that Mr. Pasko "participated" in the alleged scheme.  None of the allegations cited by Plaintiffs supports an inference that Mr. Pasko knew or had reason to know of the alleged fraud:  that (i) he supposedly received an unspecified portion of the funds that A-CAP loaned to Mr. Wander "so that Wander could purchase Pasko's and other minority early-stage shareholders' shares in 777 Partners" (Compl. ¶222); (ii) in his capacity as a corporate signatory, over a period of years he signed (a) seven compliance reports prepared by others allegedly at the direction of Mr. Wander that contained incorrect statements, (b) an assignment of receivables by SuttonPark Capital to SuttonPark Borrower, which due to alleged conduct by Mr. Wander, already had been pledged to

Credigy, and (c) borrowing requests to Leadenhall, which, again, due to alleged conduct by Mr. Wander, incorrectly stated that the collateral was "free and clear" (*id.* ¶¶55, 76, 363(f), 397(d)); and (iii) in November 2023, Mr. Pasko sent an email to Leadenhall with the following innocuous text: "At the request of A-CAP, I wanted to reiterate our original concerns regarding your request to use Paul Kosinski to perform an asset review of SuttonPark" on the grounds that "Kosinski had departed for a 'direct competitor'" and the review "would violate [Kosinski's] severance agreement" (*id.* ¶¶216-17). (*See* Opp'n at 41-42.)

Plaintiffs mischaracterize these allegations to try to create the impression of knowing involvement by Mr. Pasko. For example, Plaintiffs miscite the first allegation as supporting their characterization of Mr. Pasko as "the primary cash beneficiary of the fraudulent schemes." (*Id.* at 41.) Similarly, Plaintiffs miscite the last allegation as supporting their characterization that Mr. Pasko "blocked Leadenhall from reviewing pledged receivables, to avoid exposing the fraud." (*Id.* at 42.)

None of Plaintiffs' actual allegations supports Mr. Pasko's "participation" in any fraud. That Mr. Wander allegedly used money that A-CAP loaned to him to "purchase Pasko's and other minority early-stage shareholders' shares in 777 Partners" (Compl. ¶222) does not support an inference that Mr. Pasko participated in an improper transaction, much less that he was the "primary cash beneficiary" of the alleged "fraudulent schemes" (Opp'n at 41). Even if true, the allegation would support only that Mr. Pasko participated in a typical corporate transaction in which he and others each sold an unspecified number of shares to Mr. Wander for an unspecified

amount.[2]  As noted above, the problem the Complaint identifies with the loan was not its initial purpose or use, but rather, that "King [later] caused Wander to agree that 777 Partners . . . would take on the JARM loan obligation and back that obligation with a purported first-priority position on the assets of 777 Partners."  (Compl. ¶225.)  Moreover, although irrelevant, Plaintiffs' assertion that Mr. Pasko was "the primary cash beneficiary" of the loan not only is unsupported (*see id.*), but so is the conclusion Plaintiffs seek to draw from it (that his supposed receipt of an unspecified amount of the loan proceeds somehow renders him the "primary cash beneficiary of the fraudulent schemes").

That Mr. Pasko was a corporate signatory on various documents that he is not alleged to have had reason to suspect contained problems also is insufficient to support an inference that he participated in any fraud.  The same is true of Plaintiffs' allegations regarding the November 2023 email, which they mischaracterize as evidencing a supposed attempt "to avoid exposing the fraud."  (Opp'n at 42; *see also id.* at 23 & 86.)  Plaintiffs' actual allegations about the email support no such thing (Compl. ¶¶216-17), and thus their RICO claims against Mr. Pasko fail.

Plaintiffs' fraud claims against Mr. Pasko fail because Plaintiffs base them on actions that the Complaint attributes to Mr. Wander.  (*See* Opp'n 83-84.)  Indeed, the only reference they make to an alleged act by Mr. Pasko — that "SuttonPark Capital and Pasko assigned 1,600 receivables to the SuttonPark Borrower, worth approximately $185 million, which had already been pledged to Credigy" (*id.* at 84) — was allegedly problematic because, according to

---

[2] Although accepted as true at this stage, Plaintiffs' allegation that Mr. Pasko received funds in connection with the JARM loan is incorrect.

Plaintiffs, "SuttonPark Capital employees, *acting at Wander's direction*, pledged assets to Leadenhall before they were ever purchased" (*id.* at 83 (emphasis added)).

With respect to the aiding and abetting claim, Plaintiffs cite the same deficient allegations addressed above (regarding the JARM loan, the documents Mr. Pasko signed in his capacity as a corporate signatory without any reason to suspect they contained incorrect statements, and the November 2023 email) and incorrectly characterize them as supporting that Mr. Pasko "provided the imprimatur of legitimacy to the fraudulent scheme and helped carry it out." (*Id.* at 84.)

Finally, Plaintiffs incorrectly argue that *Weyant v. Phia Grp. LLP* allows them to pursue their unjust enrichment claim against Mr. Pasko because *Weyant* "limits" the rule that "a valid, enforceable contract bars [unjust enrichment] claims even against third parties" to circumstances where allowing the claim to proceed would enable the plaintiff to "'circumvent the contractual limitations to which he agreed.'" (*Id.* at 81 (quoting *Weyant*, 2021 WL 5998400, at *3 (S.D.N.Y. Dec. 20, 2021).) Here, allowing the unjust enrichment claim to proceed would do precisely that, as Plaintiffs seek to recover against Mr. Pasko despite having (i) entered into an enforceable contract with the 777 Entity Defendants, (ii) no basis to pursue recovery against Mr. Pasko under an alter ego or fraud-based theory, and (iii) unlike in *Weyant*, no basis to allege that Mr. Pasko received funds that, under Plaintiffs' contract with the 777 Entity Defendants, should have gone to them.

## **CONCLUSION**

The claims against Mr. Pasko thus should be dismissed.

Dated:  New York, New York          Respectfully Submitted,
        December 19, 2024

                                     MORVILLO ABRAMOWITZ GRAND
                                     IASON & ANELLO P.C.


                                     By:   */s/Christopher B. Harwood*
                                           Christopher B. Harwood

                                     565 Fifth Avenue
                                     New York, New York 10017
                                     Tel. 212.856.9600
                                     Fax. 212.856.9494

                                     *Attorney for Steven Pasko*

## <u>CERTIFICATE OF WORD COUNT COMPLIANCE</u>

I certify that this memorandum of law complies with II.D. of the Individual Practices of Judge John G. Koeltl and according to Microsoft Word contains 2,792 words exclusive of the caption, tables, and signature blocks.

Dated:  New York, New York
        December 19, 2024

MORVILLO ABRAMOWITZ GRAND
IASON & ANELLO P.C.

By:  ____*/s/ Christopher B. Harwood*____
        Christopher B. Harwood

565 Fifth Avenue
New York, New York 10017
Tel. 212.856.9600
Fax. 212.856.9494

*Attorney for Steven Pasko*

11