UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
LEADENHALL CAPITAL PARTNERS LLP          :
and LEADENHALL LIFE INSURANCE
LINKED INVESTMENTS FUND PLC,             :       24 Civ. 3453 (JGK)

                                 Plaintiffs,          :

           v.          :

JOSH WANDER, STEVEN PASKO,               :
KENNETH KING, 777 PARTNERS LLC,
600 PARTNERS LLC, SPLCSS III LLC, SIGNAL :
SML 4 LLC, INSURETY AGENCY SERVICES
LLC, DORCHESTER RECEIVABLES II LLC,      :
SUTTONPARK CAPITAL LLC, SIGNAL
MEDICAL RECEIVABLES LLC, INSURETY        :
CAPITAL LLC, SUTTONPARK SERVICING LLC,
and ADVANTAGE CAPITAL HOLDINGS LLC,      :

                             Defendants.   :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X


**THE 777 ENTITY DEFENDANTS' REPLY MEMORANDUM OF LAW IN
SUPPORT OF THEIR MOTION TO DISMISS THE AMENDED COMPLAINT**

SMITH, GAMBRELL & RUSSELL, LLP
*Attorneys for the 777 Entity Defendants*
1301 Avenue of the Americas, 21st Floor
New York, New York 10019
(212) 907-9700

*Of counsel*
John G. McCarthy
David A. Pellegrino
Katie L. Schwartz
Ryan J. Solfaro

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ....................................................................................ii-iv

PRELIMINARY STATEMENT ................................................................................1

FACTUAL BACKGROUND ......................................................................................2

LEGAL STANDARD..................................................................................................2

ARGUMENT ...............................................................................................................3

    I.     PLAINTIFFS' FAILED TO PROVE THAT
            DIVERSITY JURISDICTION EXISTS ................................................3

    II.    PLAINTIFFS' RICO CLAIMS MUST BE DISMISSED,
            REQUIRING DISMISSAL OF THE CASE FOR LACK
            OF SUBJECT MATTER JURISDICTION .........................................5

           A.     Plaintiffs' Reliance on Acceleration as a Substitute for
                  Exhaustion of State-Law Remedies Fails Under Established Precedent .....5

           B.     Plaintiffs' Allegations Fail To Demonstrate Distinctness
                  between RICO Defendants and RICO Enterprise.......................................7

           C.     Plaintiffs' Failure to Establish Proximate Cause is
                  Fatal to Their RICO Claim ........................................................................8

           D.     Plaintiffs Fail to Adequately Allege a RICO Conspiracy Claim ...............10

           E.     Plaintiffs' Reliance on Unpled Allegations and
                  Mischaracterizations Highlights the Deficiencies of Their Claims ...........10

    III.   PLAINTIFFS' REMAINING CLAIMS FAIL UNDER
            RULE 12(B)(6) AND RULE 12(B)(1) AND SHOULD BE DISMISSED..........11

CONCLUSION...........................................................................................................14

# TABLE OF AUTHORITIES

**Cases**                                                                   **Page(s)**

*Ajinomoto Co. v. CJ CheilJedang Corp.,*
  No. 16 Civ. 3498 (MKV), 2021 WL 4430200 (S.D.N.Y. Sept. 27, 2021) ................................. 3

*Allen ex rel. Allen* v. *Devine,*
  726 F. Supp. 2d 240 (E.D.N.Y. 2010) ....................................................................... 8

*Amusement Industry, Inc. v. Midland Avenue Associates*, *LLC,*
  820 F.Supp.2d 510 (S.D.N.Y. 2011) ........................................................................ 12

*Aurecchione v. Schoolman Transp. Sys. Inc.,*
  426 F.3d 635 (2d Cir. 2015) ................................................................................. 3

*Baisch v. Gallina,*
  346 F.3d 366 (2d Cir. 2003) ................................................................................. 10

*Bourbia v. S.C. Johnson & Son, Inc.,*
  375 F. Supp. 3d 454 (S.D.N.Y. 2019) ...................................................................... 11

*Brenner v. Philips, Appel & Walden, Inc*.,
  No. 93 Civ. 7838 (JFK), 1997 WL 33471053 (S.D.N.Y. July 22, 1997) ......................... 12, 13

*Burke v. Dowling,*
  944 F. Supp. 1036 (E.D.N.Y. 1995) ........................................................................ 6

*D'Addario v. D'Addario,*
  901 F.3d 80 (2d Cir. 2018) .................................................................................. 6

*Federal Deposit Ins. Corp. v. Porco,*
  75 N.Y.2d 840, 522 N.E.2d 158, 552 N.Y.S.2d 910 (1990) .................................... 13

*First Nationwide Bank v. Gelt Funding Corp.,*
  27 F.3d 763 (2d Cir. 1994) .................................................................................. 5

*Geo-Group Communications, Inc. v. Chopra, et al.,*
  No. 15 Civ. 1756 (KPF), 2018 WL 3632498 (S.D.N.Y. July 30, 2018) ...............................12

*Goldfine v. Sichenzia,*
  118 F. Supp. 2d 392 (S.D.N.Y. 2000) ....................................................................... 5

*Grupo Dataflux v. Atlas Glob. Grp. LP,*
  541 U.S 567 (2004) ............................................................................................ 4

*Harty v. W. Point Realty, Inc.,*
  28 F.4th 435 (2d Cir. 2022) .................................................................................. 5

*Hildene Capital Mgmt., LLC v. Friedman, Billings, Ramsey Grp., Inc.,*
  No. 11 Civ. 5832 (AJN), 2012 WL 3542196 (S.D.N.Y. Aug. 15, 2012) .................................. 6

*In re Livent, Inc. Noteholders Sec. Litig.,*
  151 F. Supp. 2d 371 (S.D.N.Y. 2001) ................................................................................... 2, 3

*Jordan v. Pierre,*
  No. 18 Civ. 8528 (JGK), 2021 WL 2581444 (S.D.N.Y. June 22, 2021) *aff'd* No. 21-1938,
  2022 WL 16544335 (2d Cir. Oct. 31, 2022), *cert. denied* 144 S. Ct. 158 (2023) ................... 10

*Makarova v. United States,*
  201 F.3d 110 (2d Cir. 2000) ..................................................................................................... 5

*Moses v. Martin,*
  360 F. Supp. 2d 533 (S.D.N.Y. 2004) ...................................................................................... 7

*Motorola Credit Corp. v. Uzan,*
  322 F.3d 130 (2d Cir. 2003) ..................................................................................................... 6

*Platinum-Montaur Life Scis., LLC v. Navidea Biopharmaceuticals, Inc.,*
  943 F.3d 613 (2d Cir. 2019) ..................................................................................................... 4

*Premium Merchant Funding 18, LLC v. Honan,*
  No. 24 Civ. 1199 (CM), 2024 WL 4931940 (S.D.N.Y. Dec. 2, 2024) ....................................... 6

*Red Rock Sourcing LLC v. JGX LLC,*
  No. 21 Civ. 1054 (JPC), 2024 WL 1243325 (S.D.N.Y. Mar. 22, 2024) ........................... 12, 13

*Salinas v. United States,*
  522 U.S. 52 (1997) ................................................................................................................. 10

*SD Protection, Inc. v. Del Rio,*
  498 F. Supp. 2d 576 (E.D.N.Y. 2007) .................................................................................. 4, 5

*Stochastic Decisions, Inc. v. DiDomenico,*
  995 F.2d 1158 (2d Cir. 1993) ................................................................................................. 12

*Tasini v. New York Times Co.,*
  184 F. Supp. 2d 350 (S.D.N.Y. 2002) .................................................................................... 11

*Techno-TM, LLC v. Fireaway, Inc.,*
  928 F.Supp.2d 694 (S.D.N.Y. 2013) ........................................................................................ 3

*U.S. v. Altman*,
  48 F.3d 96 (2d Cir. 1995) ......................................................................................................... 9

*United Food & Com. Workers Union, Loc. 919, AFL-CIO v. CenterMark Properties Meriden Square, Inc.,*
  30 F.3d 298 (2d Cir. 1994).................................................................................. 4

*Vicon Fiber Optics Corp. v. Scrivo,*
  201 F. Supp. 2d 216 (S.D.N.Y. 2002).................................................................. 8

**Statutes**

18 U.S.C. § 1962(d) ........................................................................................... 10

BCL § 1312(a) ..................................................................................................... 5

DCL § 273............................................................................................................ 12, 13

DCL § 274............................................................................................................ 12, 13

Fed R. Civ. P. 8 .................................................................................................... 3

Fed R. Civ. P. 12(b)(1)......................................................................................... 5, 11

Fed R. Civ. P. 12(b)(6)......................................................................................... 2, 11

The 777 Entity Defendants respectfully submit this memorandum of law[1] in reply to Plaintiffs' opposition to the Motion to Dismiss (ECF No. 236) ("Opposition") and in further support of their Motion to Dismiss.

## PRELIMINARY STATEMENT

Plaintiffs' Complaint (ECF No. 187) is built on unsupported allegations and legal conclusions that collapse under scrutiny. Their Opposition is an attempt to rewrite deficient claims. Despite having two chances to plead, Plaintiffs rely on a scattershot Opposition filled with unpled allegations.

Plaintiffs fail to establish this Court's jurisdiction. First, the evidence is clear: Bermudan entity 777 Re Ltd. is a member of both Guarantors, making all 777 Entity Defendants citizens of Bermuda and/or the United Kingdom, which destroys diversity jurisdiction. Plaintiffs' mischaracterizations cannot change this fact. Second, Plaintiffs' RICO claims are flawed destroying federal question jurisdiction. Plaintiffs' RICO claims are not ripe because they rest on speculative and contingent damages rather than the clear and definite losses required by Second Circuit precedent. Having bypassed essential contractual remedies like foreclosure, Plaintiffs cannot transform unripe, unresolved claims into actionable harm under RICO. Plaintiffs' claims fail to establish proximate cause, as their alleged injuries do not stem from the purported wire fraud, and their attempt to allege a distinct RICO enterprise collapses under well-settled law

---

[1] To the extent arguments made in Plaintiffs' Opposition are not addressed in this reply memorandum, the 777 Entity Defendants rely on the arguments set forth in their moving brief. ECF No. 248. Additionally, if not otherwise defined herein, capitalized terms are used as defined in the 777 Entity Defendants' moving brief.

requiring true distinctness between the enterprise and its participants. Ultimately, Plaintiffs' claims rely on speculation, not the direct causal relationship required for RICO.    Finally, Plaintiffs' remaining claims, including fraudulent transfer and unjust enrichment, are meritless. They seek sweeping liability against improper defendants while duplicating claims already governed by valid contracts. The Complaint should be dismissed in its entirety.

## FACTUAL BACKGROUND

On the day Plaintiffs commenced this case, May 3, 2024, the Guarantors had members holding preferred equity units which are explicitly identified in Schedule B of their respective operating agreements. *See* Declaration of Jonathan Walder executed on December 19, 2024 ("Walder Dec.") ¶ 6. These agreements specify that preferred units carry no voting rights. *Id.* ¶ 11. Plaintiffs falsely allege that on April 19, 2023, Walder certified in writing that certain documents "were 'true and correct copies of the operating agreements governing each entity as of [that] date.'" ECF No. 187, Complaint ¶ 27. However, the certification actually involved "extracts." ECF No. 249-2, Declaration of Tom Spreutels (ECF No. 249), Ex. B. Those extracts included only Schedule A, which lists the common members with voting rights. Walder Dec. ¶ 15. Plaintiffs also allege that an updated organizational chart excluded 777 Re as a member, but the chart omitted preferred equity ownership as it tracked voting rights. *Id.* ¶ 16. 777 Re purchased preferred equity units in both Guarantors in 2021 and held those units on May 3, 2024. *Id.* ¶ 17.

## LEGAL STANDARD

While well-pled factual assertions are accepted as true on a motion to dismiss pursuant to Rule 12(b)(6), pleadings expressing legal conclusions, speculation and unsubstantiated allegations that are broad and conclusory are not accorded the same treatment. *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 405-406 (S.D.N.Y. 2001) ("Thus, a court need not feel constrained

to accept as truth conflicting pleadings that make no sense, or that would render a claim incoherent, or that are contradicted either by statements in the complaint itself or by documents upon which its pleadings rely.") Further, Rule 8(e), which allows a complaint to incorporate alternative statements of a claim, as well as separate claims regardless of consistency, "is not an invitation to incoherent, self-contradictory pleadings." *Id.* Accordingly, plaintiffs do not have license, pursuant to Rule 8, "to plead inconsistent assertions of facts within the allegations that serve as the factual predicates for an independent, unitary claim." *Ajinomoto Co. v. CJ CheilJedang Corp.*, No. 16 Civ. 3498 (MKV), 2021 WL 4430200, at *3 (S.D.N.Y. Sept. 27, 2021) (quoting *In re Livent, Inc. Noteholders Sec. Litig.*, *supra*, at 407 (emphasis omitted)). In their fact section purporting to support each claim, Plaintiffs plead facts that are contradictory. Accordingly, several of its claims must be dismissed as containing inconsistent assertions of fact.

## **ARGUMENT**

## I.    **PLAINTIFFS' FAILED TO PROVE THAT DIVERSITY JURISDICTION EXISTS**

Plaintiffs, as the party invoking federal jurisdiction, bears the burden of proving it exists by a preponderance of the evidence. *See Techno-TM, LLC v. Fireaway, Inc.*, 928 F.Supp.2d 694, 696 (S.D.N.Y. 2013) (citing *Aurecchione v. Schoolman Transp. Sys. Inc.*, 426 F.3d 635, 638 (2d Cir. 2015)). Plaintiffs have not established diversity jurisdiction exists in this case. Instead of addressing the dispositive jurisdictional facts, Plaintiffs resort to accusing the 777 Entity Defendants of misrepresentation and distorting facts to fit their narrative. The reality, however, is straightforward: Bermudan entity 777 Re Ltd. was a member of both Guarantors on May 3, 2024. O'Reilly Dec. ¶ 3; Walder Dec. ¶ 6. Under established law, this renders each 777 Entity Defendant a citizen of Bermuda and/or the United Kingdom, destroying diversity jurisdiction. Plaintiffs do not contest 777 Re's Bermudan citizenship or the principle that such citizenship, if attributable to

the 777 Entity Defendants, would destroy diversity jurisdiction because of Plaintiffs' foreign citizenship. Instead, they only dispute the attribution itself, asserting—incorrectly—that Guarantors previously confirmed their membership composition without 777 Re. This factually flawed assertion is legally irrelevant, as subject matter jurisdiction cannot be waived by express consent, conduct, or estoppel. *United Food & Com. Workers Union, Loc. 919, AFL-CIO v. CenterMark Properties Meriden Square, Inc.*, 30 F.3d 298, 303-04 (2d Cir. 1994) (reaffirming "the settled rule that the parties cannot concede jurisdictional facts").

Plaintiffs' allegations of misrepresentation (including claims that 777 Re's membership interests were excluded from an organizational chart), speculation that 777 Re relinquished its membership, or assertions that the 777 Entity Defendants fabricated its existence, are entirely baseless. The competent evidence shows unequivocally that 777 Re has been a member of both Guarantors since prior to the commencement of this lawsuit. Walder Dec. ¶ 17; O'Reilly Dec. ¶ 3. The facts existing at the time the lawsuit commenced are those that matter for purposes of determining diversity jurisdiction. *See Grupo Dataflux v. Atlas Glob. Grp. LP*, 541 U.S 567, 571 (2004).

Contrary to Plaintiffs' argument, a factual dispute over diversity jurisdiction does not constitute a ground to deny a motion to dismiss. Instead, this Court must resolve the jurisdictional question before addressing the merits of the case. *Platinum-Montaur Life Scis., LLC v. Navidea Biopharmaceuticals, Inc.*, 943 F.3d 613, 619 (2d Cir. 2019) ("[A] district court may not proceed to the merits without first determining whether it has subject-matter jurisdiction."). Plaintiffs' reliance on the Eastern District's *SD Protection, Inc. v. Del Rio*, 498 F. Supp. 2d 576 (E.D.N.Y. 2007), is misleading. That case did not involve a challenge to the court's subject matter jurisdiction; the court specifically observed that "it is well-settled that this statute does not raise a

jurisdictional bar." *Id.* at 581 (discussing NY BCL § 1312(a) which precludes foreign corporations that are doing business in the state from suing here until they become licensed). The *SD Protection* case is wholly irrelevant.

Under Rule 12(b)(1), the Court may consider evidence outside the pleadings to resolve the issue. *Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 442 (2d Cir. 2022); *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). The competent evidence conclusively demonstrates that 777 Re's citizenship is attributable to the 777 Entity Defendants, destroying diversity jurisdiction. For these reasons, this Court must rule that diversity jurisdiction is absent.

## II.    PLAINTIFFS' RICO CLAIMS MUST BE DISMISSED, REQUIRING DISMISSAL OF THE CASE FOR LACK OF SUBJECT MATTER JURISDICTION

### A.    Plaintiffs' Reliance on Acceleration as a Substitute for Exhaustion of State-Law Remedies Fails Under Established Precedent

As set forth in the 777 Entity Defendants' Motion to Dismiss, Plaintiffs RICO claim is not ripe for a host of reasons. As explained in greater detail in A-CAP's reply memorandum of law, which the 777 Entity Defendants expressly adopt and incorporate by reference herein, Plaintiffs failed to refute those arguments.[2]

Plaintiffs' reliance on acceleration as a substitute for exhausting their state-law remedies is unsupported by precedent. *See First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 768 (2d Cir. 1994) (holding that RICO damages are unripe until it is determined that contractual remedies, such as foreclosure, cannot satisfy the claimed losses); *Goldfine v. Sichenzia*, 118 F.

---

[2]The 777 Entity Defendants also expressly adopt and incorporate A-CAP and King's arguments regarding Plaintiffs' failure to sufficiently allege distinctness, continuity, proximate cause, predicate acts, and racketeering activity as required to support a RICO claim.

Supp. 2d 392, 398 (S.D.N.Y. 2000) (finding that plaintiffs lacked standing under RICO where they failed to pursue contractual remedies to recover alleged losses); *Burke v. Dowling*, 944 F. Supp. 1036, 1051 (E.D.N.Y. 1995) (stating that creditors must show that their contractual rights to payment have been frustrated, such as through foreclosure or other efforts to enforce repayment, before bringing a RICO claim); *Premium Merchant Funding 18, LLC v. Honan*, No. 24 Civ. 1199 (CM), 2024 WL 4931940, at *1–2 (S.D.N.Y. Dec. 2, 2024) (holding that plaintiffs failed to exhaust contractual remedies, rendering their RICO claims speculative and unripe); *Hildene Capital Mgmt., LLC v. Friedman, Billings, Ramsey Grp., Inc.*, No. 11 Civ. 5832 (AJN), 2012 WL 3542196, at *7–9 (S.D.N.Y. Aug. 15, 2012) (dismissing RICO claims where alleged damages were contingent and unripe). Plaintiffs' assertion that pursuing contractual claims alongside RICO claims in the same action cures its deficiencies would circumvent established precedent and is fundamentally flawed. Courts have consistently dismissed RICO claims where parallel contractual or legal remedies remain ongoing. *See D'Addario v. D'Addario*, 901 F.3d 80, 96 (2d Cir. 2018) (holding that claims for "lost debt" damages under RICO were unripe where probate proceedings concerning the estate were ongoing, making the alleged losses speculative and contingent); *Motorola Credit Corp. v. Uzan*, 322 F.3d 130, 135–36 (2d Cir. 2003) (dismissing RICO claims as unripe because plaintiffs had not foreclosed on the collateral securing the loans or completed other contractual remedies, making their damages speculative); *Goldfine,* 118 F. Supp. 2d 392 at 398.

Leadenhall does not dispute that there is approximately $225 million of existing collateral to which it asserts rights under the LSA (Complaint ¶¶ 146, 148, ECF 187-10 at 23) together with approximately $185 million of alleged double pledged collateral under the LSA in which it claims

an interest.  *Id.* ¶¶ 11, 120. These contractual claims or remedies are required to be fully exhausted before Plaintiffs may assert and pursue any purported RICO claims.[3]

### B.    Plaintiffs' Allegations Fail To Demonstrate Distinctness between RICO Defendants and RICO Enterprise

Plaintiffs claim they have alleged a prototypical RICO case in which the RICO Defendants conduct and participate in the affairs of the association-in-fact enterprise, arguing that the enterprise is distinct from the RICO Defendants because it is not composed solely of their corporate parents, subsidiaries, employees, or agents—which, according to Plaintiffs, is only one of two scenarios in which courts will find a lack of distinctness. *See* Opp. 21, 30-31. However, Plaintiffs repeatedly allege that the enterprise *is* comprised entirely of corporate parents, subsidiaries, employees, and agents of the RICO Defendants, rendering it indistinct and precluding a RICO claim. *See* Complaint ¶¶ 5; 30; 201-03; 215; 223; 238; 250; 299; 322; 332; 345; 357-358; 360; 375; 396; Opp. 26-27, 32-33; 77-78. Among these allegations, Plaintiffs assert (albeit in a conclusory manner) that A-CAP and King were not legally distinct from the 777 Entity Defendants, which is fatal to Plaintiffs' RICO claim, as courts consistently require a RICO enterprise to involve a distinct legal entity. *See Moses v. Martin*, 360 F. Supp. 2d 533, 546–47 (S.D.N.Y. 2004).

---

[3]Similarly, Plaintiffs repeatedly discuss $609 million in Accelerated Debt but that includes amounts that have nothing to do with the alleged fraudulent transmissions, including a combined $124.4 million Plaintiffs lent under the LSA to two 777 affiliates—against collateral, the value of which Plaintiffs have never alleged to be inflated or otherwise deficient.  (Complaint, Ex. 1 [ECF 187-10] at 23 (showing principal amounts for Insurety Agency Services LLC and Signal SML 4 LLC).)

It is also of no moment that Plaintiffs argue that control of one RICO Defendant by another does not defeat distinctness. *See* Opp. 32-33. Not only is this inconsistent with its previously cited case law, which confirms that agency relationships defeat distinctness (*id.* at 30-31), but the case law it cites for the contrary proposition is inapposite. Specifically, the portion of *Allen ex rel. Allen v. Devine*, relied on by Leadenhall, discusses "control" in the context of a RICO defendant controlling the broader enterprise, not control of another RICO Defendant. 726 F. Supp. 2d 240, 251 (E.D.N.Y. 2010). Consequently, even accepting Leadenhall's allegations as true and applying its own arguments and case law, Plaintiffs' allegations demonstrate a lack of distinctness between the enterprise and the RICO Defendants, which is fatal to those claims.

### C.    Plaintiffs' Failure to Establish Proximate Cause is Fatal to Their RICO Claim

Plaintiffs' argument regarding proximate cause is flawed and fatal to their RICO claim. *See* Opp. 51 ("Leadenhall adequately alleges the RICO Defendants' pattern of wire fraud proximately caused Leadenhall's injury"). Plaintiffs fail to sufficiently allege predicate acts, particularly as to each RICO Defendant, and thus cannot establish proximate cause. *See Vicon Fiber Optics Corp. v. Scrivo*, 201 F. Supp. 2d 216, 219 (S.D.N.Y. 2002). Even assuming, arguendo, that Plaintiffs have adequately alleged a predicate act by any RICO Defendant, their argument still fails because it is not plausible that the alleged racketeering activity (alleged wire fraud by SuttonPark Servicer and Borrowers) was the proximate cause of Plaintiffs' injuries. In *Vicon Fiber Optics Corp. v. Scrivo*, the plaintiff-employer alleged that its officers and directors engaged in a fraudulent reimbursement scheme by submitting false expense reports and looting corporate funds. 201 F. Supp. 2d at 218. To conceal their misconduct, the defendants allegedly engaged in predicate acts of wire fraud, including misleading proxy solicitations and fraudulent SEC filings. The court dismissed the RICO claims because the wire fraud did not proximately

cause the plaintiff's financial losses—the fraudulent expense reports directly caused the injury instead. *Id.* at 219.

Similarly, in this case, Plaintiffs themselves allege that their injuries stem from the pledging of assets that allegedly did not exist or were already pledged to another lender, which induced the various contracts. Complaint ¶ 2. By Plaintiffs' own admission, this alleged conduct—not the purported wire fraud that is alleged as concealment (*Id.* ¶ 117)—is the cause of their injuries. Because Plaintiffs fail to adequately allege proximate cause, their RICO claim must be dismissed.

Plaintiffs falsely argue in their opposition that "Leadenhall Has Sufficiently Pled Predicate Acts of 'Racketeering Activity,' Including but Not Limited to 60+ Fraudulent Communications Lying About Leadenhall's Collateral." (Opp. 34.) Plaintiffs allege that "[t]he first periodic reports delivered by the SuttonPark Servicer on behalf of the SuttonPark and Dorchester Borrowers covering May 2021 reflected that the SuttonPark and Dorchester Borrowers had already taken "Outstanding Borrowings" of approximately $300 million and $80 million, respectively, in the first month the credit facility was effective." (Complaint ¶ 102.) According to Plaintiffs' list of alleged predicate acts, those reports were transmitted by Alexander Adnani on June 21, 2021. (*Id.*, Ex. 6, ECF 187-6 at 2 & 5.) The Complaint also alleges that the last draw request was made on June 30, 2021 and was funded shortly thereafter. (Complaint ¶ 55.) Thus, any "wires" allegedly transmitted by the 777 Entity Defendants after early July 2021, as laid out by Plaintiffs in Ex. 6, would have occurred *after* the alleged scheme had already reached fruition. *Id.*; *U.S. v. Altman*, 48 F.3d 96, 103 (2d Cir. 1995) ("A mailing cannot be said to be in furtherance of a scheme to defraud when it occurs after the scheme has reached fruition."). At most, the period of alleged racketeering activity involved two transmissions sent over three days (June 21, 2021 to June 24, 2021). Complaint, Ex. 6, ECF 187-6 at 4.)

**D.      Plaintiffs Fail to Adequately Allege a RICO Conspiracy Claim**

In order to allege civil liability for a RICO conspiracy pursuant to Section 1962(d), a plaintiff must allege that the defendant "knew about and agreed to facilitate the scheme." *Baisch v. Gallina*, 346 F.3d 366, 377 (2d Cir. 2003) quoting *Salinas v. United States*, 522 U.S. 52, 65 (1997). As applied to the 777 Entity Defendants, Plaintiffs fail to allege that they knew about, much less agreed to facilitate the allegedly fraudulent scheme, because the 777 Entity Defendants were not capable, as corporate defendants, of having scienter and agreeing to engage in RICO violations. Plaintiffs' conclusory statements that an agreement existed between A-CAP, Wander, Pasko, and the 777 Entity Defendants to commit the predicate acts of racketeering "is not entitled to the presumption of truth applied to factual pleadings." *Jordan v. Pierre*, No. 18 Civ. 8528 (JGK), 2021 WL 2581444, at * 5 (S.D.N.Y. June 22, 2021), *aff'd* No. 21-1938, 2022 WL 16544335 (2d Cir. Oct. 31, 2022), *cert. denied* 144 S. Ct. 158 (2023).

**E.      Plaintiffs' Reliance on Unpled Allegations and Mischaracterizations Highlights the Deficiencies of Their Claims**

Having already amended their Complaint after the initial motions to dismiss, Plaintiffs now improperly rely on new, unpled allegations to mask the fundamental deficiencies of their pleading. Plaintiffs routinely mischaracterize or supplement facts from their Complaint, often without providing supporting citations. For example, Plaintiffs claim a steering committee, consisting of the enterprise members, pursued a "common goal" of fraud and cite to a purported allegation in the Complaint to argue that a memorandum formalized an agreement to commit fraud. *See* Opp. 23 (citing Complaint ¶ 201). The cited paragraph contains no such allegation. Similarly, Plaintiffs argue that crimes were committed against others by citing vague and conclusory assertions that "777 Partners, Wander, Pasko, and A-CAP acted with actual intent to defraud 777 Partners' other creditors." *Compare* Complaint ¶ 407 *with* Opp. 28. This conclusory allegation fails to meet the

specificity required for RICO in distinguishing racketeering activity from the enterprise. Plaintiffs further argue that they have alleged sufficient predicate acts against each RICO Defendant, claiming the "RICO Defendants pledged assets they never purchased." Opp. 35. Even accepting that this would constitute a predicate act, which it does not, their Complaint alleges that only a few defendants pledged assets to Plaintiffs, not all – thus exposing a disconnect between Plaintiffs' allegations and their arguments in opposition. *Compare id. with* Complaint ¶¶ 151–58.

Plaintiffs also allege Dorchester Borrower double-pledged receivables, relying on a claim that $7 million in value was "no longer available." Complaint ¶ 114; Opp. 38. Yet, the Complaint fails to provide any factual basis linking this alleged loss to Dorchester Borrower's actions. Similarly, Plaintiffs' claim of "clear and definite damages" hinges on allegations that they can merely accelerate debt. *Compare* Complaint ¶ 67 *with* Opp. 50. Plaintiffs also assert that "the 777 Entity Defendants do not seriously dispute that Leadenhall did, in fact, rely on the Compliance Reports," but provide no supporting citation. Opp. 53. This approach, emblematic of their Opposition, relies on unsupported assertions and gamesmanship. *See, e.g.*, Opp. 66–88. The Court should not allow Plaintiffs to amend their Complaint through their Opposition. *Tasini v. New York Times Co.*, 184 F. Supp. 2d 350 (S.D.N.Y. 2002). Such tactics only highlight the inherent weaknesses in their claims.

## III.    PLAINTIFFS' REMAINING CLAIMS FAIL UNDER RULE 12(B)(6) AND RULE 12(B)(1) AND SHOULD BE DISMISSED

The 777 Entity Defendants agree with Plaintiffs: the unjust enrichment claims against the 777 Entity Defendants should be dismissed due to its duplicity of a breach of contract claim. *See* Opp. 80. Under Plaintiffs' alter ego theory, every 777 Entity Defendant is allegedly a party to the contract and Plaintiffs' unjust enrichment claim should be dismissed in its entirety. *Bourbia v. S.C. Johnson & Son, Inc.*, 375 F. Supp. 3d 454, 466 (S.D.N.Y. 2019) ("where an unjust enrichment

claim is duplicative of other causes of action, it should be dismissed…[t]o the extent any of Plaintiff's other claims succeed, the unjust enrichment claim would be duplicative; to the extent they do not succeed, the unjust enrichment claim would not remedy the defects.")

The fraudulent transfer claims must also be dismissed against 777 Partners, because it is not a proper defendant. The Motion to Dismiss cites well established case law holding that a transferor or other party who did not benefit from a transaction is not a proper defendant to claims for recovery or avoidance brought pursuant to New York law. *Amusement Industry, Inc. v. Midland Avenue Associates*, LLC, 820 F.Supp.2d 510, 527 (S.D.N.Y. 2011) (citing *Brenner v. Philips, Appel & Walden, Inc*., No. 93 Civ. 7838 (JFK), 1997 WL 33471053, *5 (S.D.N.Y. July 22, 1997) (holding that "a cause of action for fraudulent conveyances does not lie against a party who is neither a transferee nor a beneficiary of the alleged fraudulent conveyance."); *see Red Rock Sourcing LLC v. JGX LLC,* No. 21 Civ. 1054 (JPC), 2024 WL 1243325, at *40 (S.D.N.Y. Mar. 22, 2024) (citing *Stochastic Decisions, Inc. v. DiDomenico*, 995 F.2d 1158, 1172 (2d Cir. 1993)). New York "fraudulent conveyance statutes are aimed at the improperly-transferred funds, not at the alleged malefactors who made the transfers*." Geo-Group Communications, Inc. v. Chopra, et al*., No. 15 Civ. 1756 (KPF), 2018 WL 3632498, *9 (S.D.N.Y. July 30, 2018). The Opposition cites no cases to contradict that established law.

Instead, Leadenhall half-heartedly attempts to distinguish that case law, by pointing out that it is trying to avoid an *obligation incurred by 777 Partners*, not an *asset transferred by 777 Partner*s. Opp. 90. Leadenhall does not even cite one case to support its illogical conclusion that the distinction between "transferor" or "obligor" makes the well-established New York and Second Circuit case law inapplicable. The Complaint relies on §§ 273(a)(1), 273(a)(2), and 274 of the New York Debtor and Creditor Law ("DCL") for the allegations of avoidance and recovery of

actual and constructive fraudulent transfers. Those sections use the same terms to allow for voidability of a "transfer made" or "obligation incurred" by a debtor. DCL §§273(a) and 274(a). It follows then that if the "transferor" who made the transfer is not a proper defendant under those sections, then neither can the "obligor" who incurred the obligation.

A commonsense reading of the caselaw cited by 777 Partners is that it is precisely on point. The cases clearly state that the DCL does not create a cause of action against a party who is neither a *transferee* nor a *beneficiary* of a transaction. *Brenner,* 1997 WL 33471053 at *5; *see also Red Rock Sourcing LLC,* 2024 WL 1243325 at *39-41 (DCL provides a remedy for fraudulent transfer only against a *transferee* or *beneficiary*); *Federal Deposit Ins. Corp. v. Porco*, 75 N.Y.2d 840, 842, 522 N.E.2d 158, 159, 552 N.Y.S.2d 910, 911 (1990) (holding that the DCL "did not, explicitly or implicitly, create a creditor's remedy for money damages against parties who … were neither transferees of the assets nor beneficiaries of the conveyance."). In the case of an asset transferred, the cause of action would be brought against the *transferee* of that asset and in the case of an obligation incurred, it would be brought against the *beneficiary* of that obligation. At the very least, the well-established law holding that a "transferor "is not a proper defendant is directly analogous to a finding that the "obligor" is not a proper defendant. Leadenhall has offered no theory to find otherwise. Therefore, fraudulent transfer claims against 777 Partners must be dismissed.

## **CONCLUSION**

For the foregoing reasons, the 777 Entity Defendants respectfully request that the Court grant their motion and enter an order dismissing the Complaint in its entirety.

Dated:  New York, New York
       December 19, 2024

                         SMITH, GAMBRELL & RUSSELL LLP


                         By:  /s/ John G. McCarthy
                            John G. McCarthy
                            David A. Pellegrino
                            Katie L. Schwartz
                            Ryan J. Solfaro
                       1301 Avenue of the Americas, 21st Floor
                       New York, New York 10019
                       (212) 907-9700
                       jmcarthy@sgrlaw.com
                       dpellegrino@sgrlaw.com

                       *Attorneys for the 777 Entity Defendants*

14

## <u>CERTIFICATE OF WORD COUNT COMPLIANCE</u>

We certify that this memorandum of law complies with II.D. of the Individual Practices of Judge John G. Koeltl and according to Microsoft Word contains 3,986 words exclusive of the caption, tables, and signature blocks.

Dated:  New York, New York
        December 19, 2024

By: <u>  /s/ John G. McCarthy        </u>
        John G. McCarthy