# Exhibit A

| | |
|---|---|
| **From:** | Schwartz, Roger G. |
| **To:** | Mark Shapiro |
| **Cc:** | Ian Ratner; EXT - Christopher Jarvinen; jguso@bergersingerman.com; King, Geoff; Leigh Nathanson; Brian Donovan; Pellegrino, David; Shelly A. DeRousse (sderousse@sgrlaw.com); jmccarthy@sgrlaw.com |
| **Subject:** | RE: More TAMI Details |
| **Date:** | Sunday, July 7, 2024 11:27:52 AM |
| **Attachments:** | image001.png<br>image002.jpg |

**CAUTION: MAIL FROM OUTSIDE THE FIRM**

Mark:

Thank you for your response below. Unfortunately, it does little to assuage the real and serious concerns (not "misconceptions") Leadenhall has concerning the proposed TAMI transaction and does not address a number of the issues about both the transaction and the process around the transaction previously and repeatedly highlighted to B. Riley and its counsel. More specifically, we would note the following, among other facts (again, not "misconceptions"), concerning the transaction and not satisfactorily addressed:

- 777 is receiving virtually no cash or other consideration at the closing of the transaction and the "upside" B. Riley "heavily negotiated" through the "earn out" is earmarked for payment of ACAP debt that is being reallocated from 777 to TAMI and to otherwise repay other ACAP claims.
- Because the debt forgiveness associated with this transaction is illusory -- ACAP's ultimate claim against 777 and its affiliates is not being reduced in any true sense – the transaction results in no real benefit to any other creditors of 777, including Leadenhall, and is most certainly a dissipation of the value of 777.
- Your response appears to confirm that no review, analysis and investigation of the asserted liens and claims purportedly encumbering both the TAMI assets and 777's ownership of TAMI, as well as the circumstances giving rise to such liens and claims, has been commenced, much less completed, by B. Riley, its counsel and/or any independent fiduciary of 777. In the absence of such an assessment, how is it possible for B. Riley to conclude that the proposed TAMI transaction – which no matter how labelled is in fact a friendly foreclosure by ACAP – is appropriate and a sound exercise of B. Riley's independent, fiduciary responsibilities and duties?
- Notwithstanding our request from weeks ago, Leadenhall has not been provided the opportunity to conduct diligence and speak with the TAMI principals concerning among other things, the status of TAMI operations, the TAMI business plans and their own views and perspectives as to the best manner to maximize the value of TAMI, including through a marketing process that you assert is "not feasible".
- The characterization of TAMI as constituting one of the most valuable assets owned by 777 came directly from B. Riley, not Leadenhall.
- The current challenges facing the TAMI business are not the product of Leadenhall commencing suit to enforce its rights and remedies in response to being defrauded; they are the direct result of actions taken by 777 and the other defendants.

Separately and with respect to Leadenhall's pending information and access requests, while we appreciate your stated intention to be cooperative and transparent, the fact remains that responses to basic information requests and access to books and records related to the remaining collateral purportedly securing Leadenhall's existing loans to four separate 777-affiliated borrowers have been pending for months and continue to be frustrated and delayed for no discernable appropriate reason. As has been discussed on multiple occasions with B. Riley and its counsel, these requests are not in furtherance of the litigation and could not be reasonably construed to have that purpose; rather, they are part of the ongoing collateral and loan monitoring and administration that Leadenhall is obligated to perform for its own investors. Accordingly, the suggestion that some complicated "balancing" needs to take place in order to satisfy these requests is very troubling especially since all parties should be aligned on wanting to ensure the existence and integrity of Leadenhall's remaining collateral. Nonetheless, hopefully we will be able to advance these requests collectively on the call scheduled for Monday.

Best,
Roger



**Roger G. Schwartz** | **Partner**
Paul Hastings LLP | 200 Park Avenue, New York, NY 10166 |
**Direct:** +1.212.318.6358 | **Mobile:** +1.917.242.2718 |
rogerschwartz@paulhastings.com | www.paulhastings.com

**From:** Mark Shapiro <mshapiro@brileyfin.com>
**Sent:** Friday, July 5, 2024 9:43 PM
**To:** Schwartz, Roger G. <rogerschwartz@paulhastings.com>

**Cc:** Ian Ratner <iratner@brileyfin.com>; Christopher Andrew Jarvinen (cjarvinen@bergersingerman.com) <cjarvinen@bergersingerman.com>; jguso@bergersingerman.com; King, Geoff <geoffking@paulhastings.com>; Leigh Nathanson <lnathanson@kslaw.com>; Brian Donovan <bdonovan@kslaw.com>; Pellegrino, David <dpellegrino@sgrlaw.com>; Shelly A. DeRousse (sderousse@sgrlaw.com) <sderousse@sgrlaw.com>; jmccarthy@sgrlaw.com
**Subject:** [EXT] RE: More TAMI Details

Roger,

Thank you for your note.  As Ian and I have expressed on previous telephone calls, 777 and B Riley want to be cooperative with respect to transparency and the sharing of documents however, the litigation brought by Leadenhall requires that we also balance our interest in transparency against each party's rights, obligations (including with respect to discovery), claims and defenses in the litigation.  Accordingly, the obligors to Leadenhall will endeavor to honor their reporting obligations under the Leadenhall loan documents and also endeavor to respond to any other commercially reasonable information request made by Leadenhall.  In fact, we have made great progress over the past few weeks completing financial closings and providing information so that CBiz can engage with Signal on its collateral audit.  Those efforts will continue but we need to run any document requests through counsel.  With regard to TAMI, let me address some of your concerns and hopefully, clear up some misconceptions:

1. TAMI is a small company in the United Kingdom that originates equity release mortgages ("ERMs"). ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████
2. ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████
3. As currently structured, the sale of TAMI is not dissipating the value of 777.  The TAMI business is being sold for Fair Market Value to be determined in a valuation process using independent, nationally recognized valuation professionals.  The valuation process was developed by us and used in other transactions we have participated in.
4. The assets are not being "handed over to ACAP" and this is certainly not a "friendly foreclosure" as this transaction has been heavily negotiated over a 6 to 7 week period.  We have caused the buyer to redevelop its contemplated structure several times since we insisted on a commercial transaction at Fair Market Value.  Additionally, we were able to negotiate an earn out – over and above the Fair Market Value of the equity at the closing date -- to provide some upside and monetize any hidden future value.
5. This transaction helps Leadenhall.  To the extent Leadenhall has a claim against the guarantor, this TAMI sale transaction results in debt forgiveness that will make it easier for Leadenhall to collect on its claim.
6. In the circumstances of the pending Leadenhall litigation, the limited liquidity available to TAMI, the need to securitize the portfolio of ERMs and the inability to obtain an investment grade rating from Moody's, a marketing process for TAMI is not feasible and the passage of additional time may lead to loss of value.

Let us know if you have any further questions or comments.

Best regards,
Mark

---

**From:** Schwartz, Roger G. <rogerschwartz@paulhastings.com>
**Sent:** Wednesday, July 3, 2024 6:47 PM
**To:** Mark Shapiro <mshapiro@brileyfin.com>
**Cc:** Ian Ratner <iratner@brileyfin.com>; Christopher Andrew Jarvinen (cjarvinen@bergersingerman.com)

2

<cjarvinen@bergersingerman.com>; jguso@bergersingerman.com; King, Geoff <geoffking@paulhastings.com>; Leigh Nathanson <lnathanson@kslaw.com>; Brian Donovan <bdonovan@kslaw.com>
**Subject:** RE: More TAMI Details

**[EXTERNAL]**
Mark:

Thank you for the below update on the status of the TAMI transaction.  Given that the proposed transaction contemplates handing over to ACAP one of the most valuable assets owned by 777 (TAMI) for virtually no consideration or value to 777, it is deeply troubling on a host of levels and squarely evidences B. Riley's inability and/or unwillingness to act as an independent fiduciary for all creditors of 777.  More specifically, I would note the following in connection with the proposed transaction and the process by which B. Riley has sought to facilitate ACAP's intent to obtain ownership of TAMI to the detriment of other stakeholders:

- Neither B. Riley nor its counsel have responded in any manner to the serious concerns and questions raised in my email dated June 21 (included in the chain below).  Specifically, to date there have been no diligence calls with the TAMI principal(s) and no answers to the numerous substantive and process-related issues detailed in my email concerning, among other things, (i) the lack of virtually any consideration or value to be received by 777 from the proposed transaction, (ii) the lack of an independent third-party marketing process with respect to the sale or financing of TAMI, (iii) the illusory reduction of ACAP's ultimate claim against 777 and its affiliates, and (iv) the absence of any review and analysis of the asserted liens and claims purportedly encumbering both the TAMI assets and 777's ownership of TAMI by B. Riley, its counsel and/or any independent fiduciary of 777.
- B. Riley's decision to move forward with the TAMI transaction is a complete reversal of position from what you conveyed the last week of June and your purported explanation for doing so cites factors that existed last week when you decided to pause the transaction in light of the TRO that is currently in place.  Given that, it would appear that your about face is being driven by other factors and/or parties not disclosed in your email below.
- While at the same time pressing forward to effectuate this related-party transaction for the benefit and seemingly at the direction of ACAP, the 777 entities continue to delay providing basic access and information to Leadenhall concerning, among other things, the status and validation of its collateral, a summary of 777's assets, and a schedule of liens and claims against 777's assets.  Much of this information was promised by B. Riley to Leadenhall back in May.  Such delays have frustrated and obstructed Leadenhall's efforts to protect and preserve its collateral and also made it impossible to progress any good faith settlement discussions.
- Given your lack of response as to noticing other litigation parties of your intent to effectuate this transaction, we will be contacting counsel for Credigy and ING directly and sharing with them our significant concerns about both the substance and process-related aspects of the proposal.

While we are available to discuss the TAMI transaction further at any point over the extended holiday weekend, to the extent the proposed terms and conditions are consistent with those summarized in David's June 18 email, we believe the transaction cannot be justified as maximizing value for 777 and its stakeholders (other than ACAP) and/or as the product of the exercise of independent business judgment by B. Riley.  To be clear, Leadenhall does not consent to the proposed TAMI transaction and expressly reserves all rights and claims against all parties involved in the transaction and those enabling, approving, and facilitating it.

I have copied Leigh Nathanson and Brian Donovan from K&S on this response as they can provide Leadenhall's position with respect to how the proposed TAMI transaction implicates the existing TRO governing 777's disposition of its assets.

Best,
Roger



**Roger G. Schwartz** | **Partner**
Paul Hastings LLP | 200 Park Avenue, New York, NY 10166 |
Direct: +1.212.318.6358 | Mobile: +1.917.242.2718 |
rogerschwartz@paulhastings.com | www.paulhastings.com

**From:** Mark Shapiro <mshapiro@brileyfin.com>
**Sent:** Wednesday, July 3, 2024 12:17 PM
**To:** Schwartz, Roger G. <rogerschwartz@paulhastings.com>
**Cc:** Ian Ratner <iratner@brileyfin.com>; Christopher Andrew Jarvinen (cjarvinen@bergersingerman.com) <cjarvinen@bergersingerman.com>; jguso@bergersingerman.com
**Subject:** [EXT] RE: More TAMI Details

Roger,

The last time we spoke, I mentioned that the TAMI share sale (as described by David below) was being put on hold and that we were only pursuing the current securitization.   Given some personnel issues and continued concerns by Moody's related to 777 ownership, the current plan is to revert back to the share sale and to consummate that sale as soon as possible.  Our primary concern is that further delays will impair the value of the current portfolio and the ability of TAMI to continue as a viable entity, in turn, impacting returns to creditors.    Christopher will be contacting you shortly about the Leadenhall information requests but I wanted to advise you of this course change as well.   We will be available later today and over the weekend to discuss further.

Best regards,
Mark


Mark Shapiro
B. Riley Advisory Services
(M) 303.482.7218


**From:** Schwartz, Roger G. <rogerschwartz@paulhastings.com>
**Sent:** Friday, June 21, 2024 5:14 PM
**To:** Pellegrino, David <dpellegrino@sgrlaw.com>; Mark Shapiro <mshapiro@brileyfin.com>; Jordi Guso <jguso@bergersingerman.com>; Ian Ratner <iratner@brileyfin.com>; McCarthy, John G. <JMCCARTHY@sgrlaw.com>; DeRousse, Shelly <sderousse@sgrlaw.com>; Christopher Andrew Jarvinen (cjarvinen@bergersingerman.com) <cjarvinen@bergersingerman.com>
**Cc:** King, Geoff <geoffking@paulhastings.com>; Leigh Nathanson <lnathanson@kslaw.com>; Brian Donovan <bdonovan@kslaw.com>
**Subject:** RE: More TAMI Details

**[EXTERNAL]**
David:
Thank you again for sharing details concerning the general framework of the proposed TAMI transaction.  As you know, to better understand and consider the proposed transaction, LCP requested diligence calls with the TAMI principal(s) concerning, among other things, the status of TAMI operations, the TAMI business plans and the warehouse finance and distributor panels.  Unfortunately, to date those diligence calls have not occurred.  While waiting for those calls to happen, and to avoid undue delay in responding to your email summarizing the proposed transaction, we wanted to share a number of concerns and questions about whether and how the proposed transaction maximizes value for 777 and its stakeholders (other than ACAP) and if entry into the transaction is the product of the exercise of independent business judgment.  More specifically, we note the following concerns and questions, among others:

- As structured, the proposed transaction is essentially a "friendly foreclosure" by ACAP with 777's consent and cooperation for virtually no consideration -- 777 receives no cash consideration at the closing of the transaction and the future cash flow, if any, payable to 777 is to be allocated primarily to payment of ACAP debt that is being reallocated from 777 to TAMI.
- While the description of the proposed transaction suggests a reduction of the debt owed by 777 to ACAP by virtue of TAMI's "assumption" of an amount of HoldCo debt, such debt reduction is illusory as 777 remains obligated to repay such assumed debt via the future cash flow, if any, 777 is receiving from the transaction.  Put differently, ACAP's ultimate claim against 777 and its affiliates is not being reduced in any real sense.
- Given B. Riley's view that TAMI is one of the most valuable assets owned by 777, the lack of an independent third-party marketing process with respect to the sale of TAMI is of material concern.  While the summary of the transaction suggests time is of the essence because the management team is a flight risk, LCP is interested in understanding whether any discussions have been had with management concerning, among other things, (i) incentivizing them to remain with TAMI through a sale process, (ii) partnering them with potential third-party purchasers, (iii) having them identify potential other interested acquisition and/or funding parties, and/or (iv) exploring with them alternative sale and/or financing structures?  Moreover, providing for "retroactive" debt "reduction" sized by accounting firms after the transfer of TAMI to ACAP is consummated is in no way the equivalent of a full and independent marketing and sale process intended to maximize the value of the TAMI business.
- Has the proposed transaction been discussed with ▮▮▮▮▮▮▮▮ (the alleged secured priority debt holder at TAMI) and have they consented to the terms and conditions of the transaction, including waiting for repayment of their obligations until after

4

the TAMI entity has been transferred to ACAP?
- Has any review and analysis of the asserted liens and claims purportedly encumbering both the TAMI assets and 777's ownership of TAMI been conducted by B. Riley, its counsel and/or any independent fiduciary of 777?
- Have you informed Credigy and ING (the intervenors in the current litigation) of the proposed transaction and have they consented?

We would welcome the opportunity to discuss these concerns and questions with you, Berger Singerman and B. Riley, and would also appreciate your assistance in scheduling the requested diligence calls. In the interim, we expect that 777 will abide by the terms and conditions of the existing TRO in all respects. Thank you for your cooperation.

Best,
Roger



**Roger G. Schwartz | Partner**
Paul Hastings LLP | 200 Park Avenue, New York, NY 10166 |
Direct: +1.212.318.6358 | Mobile: +1.917.242.2718 |
rogerschwartz@paulhastings.com | www.paulhastings.com

---

**From:** Pellegrino, David <dpellegrino@sgrlaw.com>
**Sent:** Tuesday, June 18, 2024 8:51 AM
**To:** Schwartz, Roger G. <rogerschwartz@paulhastings.com>
**Cc:** Mark Shapiro <mshapiro@brileyfin.com>; Jordi Guso <jguso@bergersingerman.com>; Ian Ratner <iratner@brileyfin.com>; McCarthy, John G. <JMCCARTHY@sgrlaw.com>; DeRousse, Shelly <sderousse@sgrlaw.com>; Christopher Andrew Jarvinen (cjarvinen@bergersingerman.com) <cjarvinen@bergersingerman.com>
**Subject:** [EXT] More TAMI Details

FOR SETTLEMENT PURPOSES ONLY
NOT ADMISSIBLE IN ANY PROCEEDING

Roger –

Thanks for taking the time to speak with us last week about the transaction involving [REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]



We raise this with you in good faith and to err on the side of "talking to Plaintiffs" about asset sales by Guarantors and Borrowers. Please let us know if LPC has any additional questions

Thank you,

David

**David A. Pellegrino**
*Partner*
Smith, Gambrell & Russell, LLP

p | 646-887-9575
f | 646-887-8165
e | dpellegrino@sgrlaw.com
1301 Avenue of the Americas | 21st Floor | New York, NY 10019
www.sgrlaw.com



*******************************************************************************
This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments. If you reply to this message, Paul Hastings may collect personal information including your name, business name and other contact details, and IP address. For more information about Paul Hastings' information collection, privacy and security principles please click HERE. If you have any questions, please contact Privacy@paulhastings.com.

PLEASE VISIT <https://brileyfin.com/disclosures/> FOR LEGAL DISCLOSURES.

PLEASE VISIT <https://brileyfin.com/disclosures/> FOR LEGAL DISCLOSURES.