# Exhibit G

*1301 Avenue of the Americas*
*15th Floor*
*New York, New York  10019*
*Tel: 212-907-9700*
*www.sgrlaw.com*



*John G. McCarthy*
*Direct Tel: 212-907-9703*
*Direct Fax: 212-907-9803*
*JMCCARTHY@sgrlaw.com*

February 10, 2025

**VIA EMAIL**

Leigh M. Nathanson, Esq.
King & Spalding LLP
1185 Avenue of the Americas, 34th Floor
New York, New York 10036

Re:   *Leadenhall Capital Partners LLC, et ano. v. Wander, et al.*, 24 Civ. 3453 (JGK)

Dear Leigh:

      We write in response to your letter dated January 22, 2025, with respect to the above-entitled civil action as well as to share certain additional information with you and the other parties.  As an initial matter, we do not accept Leadenhall's characterization of the Preliminary Injunction or any discussions that have occurred with anyone on behalf of our clients.  Suffice it to say, the Borrowers and the Guarantors have been careful to comply with the language of the Preliminary Injunction since it was issued on July 8, 2024.  They also fully complied with the Temporary Restraining Order (the "TRO") while it was in effect.

TAMI Transaction

      We dispute your characterization of the information provided to Leadenhall last spring about TAMI.   As you know based on the information in your letter, TAMI was sold to an affiliate of A-CAP last summer.  The purchase price, which includes cash consideration, is to be determined by valuations to be conducted post-sale, which is currently underway.  This transaction complied with the Preliminary Injunction and was disclosed to Leadenhall in advance.

Everton Football Club

      As you letter correctly notes, ACM Delegate LLC exercised proxy rights to take control of Nutmeg Acquisition LLC.  Any questions that Leadenhall has with respect to particulars concerning the Everton FC transaction should be directed to ACM Delegate.

Leigh M. Nathanson, Esq.
February 10, 2025
Page 2

When you request information as to "[t]he book equity value of Nutmeg" we interpret that to mean the value reflected on 600 Partners LLC balance sheet for its ownership of Nutmeg. 600 Partners has not undertaken the costly and time-consuming process of determining whether it needs to adjust the amount reflected on its balance sheet for its investment in Nutmeg. We do not see any reason to undertake such an endeavor at this time.

Cash and Cash Equivalents of the Borrowers and Guarantors

As you know, Leadenhall has been receiving monthly reports concerning its collateral from our clients' affiliates. In addition, SuttonPark Capital LLC provided Saiph Consulting LLC, Leadenhall's agent, with access to its MP Fin system to conduct an audit of Leadenhall's collateral. If Leadenhall is interested in calculating the fair market value of its collateral under the LSA, it should undertake the valuation process itself.

Your letter is incorrect as to its description of the Preliminary Injunction concerning cash or cash equivalents of the Borrowers and Guarantors. The Preliminary Injunction provides as follows with respect to cash or cash equivalents:

> … other than in the normal and ordinary course of business:
> (B) … prohibits the expenditure or dissipation of any cash or cash equivalents owned by the Borrowers and Guarantors sufficient to cover the full amount of the Accelerated Debt;
> (C) … prohibits the expenditure or dissipation by the Borrowers and Guarantors of any cash or cash equivalents received from any sale or transaction up to the full amount of the Accelerated Debt

The Borrowers and Guarantors are not obligated, as Leadenhall contends, to "maintain" cash; they are simply prohibited from expending cash other than in the normal and ordinary course of business. Since the TRO was entered on June 7, 2024, out of an abundance of caution, the Borrowers and Guarantors have been operating under the assumption that the value of Leadenhall's collateral plus the value of their cash and cash equivalents do not exceed the alleged amount of the Accelerated Debt. During that time, no Borrower or Guarantor has expended any cash or cash equivalents other than in the normal and ordinary course of its business.

Term of B. Riley

On or about December 23, 2024, one of the other attorneys representing our clients informed one of the other attorneys representing Leadenhall that B. Riley would be continuing after December 31, 2024. The appointments of B. Riley professionals have been extended indefinitely and those appointments cannot be terminated without B. Riley's consent. Also, in the topic of B. Riley professionals, Ronald Glass resigned as a manager and member of the board of managers of both Guarantors last year. He has been replaced by Mark Shapiro.

Confirmation Concerning Other Transactions

First, the B. Riley professionals at 777 Partners have not suggested that "there is little value remaining at the Guarantors, inclusive of the Guarantors' portfolio companies." I understand that they have expressed the concern that whatever value does exist among the 777 group of companies will be destroyed by the ongoing hostilities.

Second, Leadenhall has no right to "ensure that … MCAG and Uown remain assets of the Guarantors." The Preliminary Injunction only requires that assets of the Guarantors are not dissipated for less than fair value and that any cash generated as a result of a transaction is not expended other than in the normal counsel of business. As mentioned earlier, the Guarantors have fully complied with the Preliminary Injunction.

By Uown, I believe you are referring to Mollie LLC, which has never been an asset of either Guarantor. Thus, the Preliminary Injunction is not implicated. Additionally, I understand that Leadenhall was one of the potential buyers that B. Riley instructed the broker to contact about a potential transaction involving Uown. We also understand that Leadenhall's representatives participated in a call with the broker and with Uown's management. Leadenhall chose not to submit a purchase offer. Finally, the broker reported to management that more than 20 entities signed non-disclosure agreements and were provided access to information about Uown from the data room set up for potential purchasers. Leadenhall is not entitled to any additional information about Uown.

Managed Care Advisory Group, LLC ("MCAG") is currently being managed by an independent director. MCAG's lender (which is not a Defendant or even affiliated with a Defendant) exercised a proxy, removed the board, put in place an independent director, and removed 777's equity voting rights. The lender has scheduled an asset sale auction for February 28th. Leadenhall is free to make a bid.

As to your request for confirmation about potential release of claims by either Guarantor, we have inquired and undertook an investigation. As a result, I can confirm that the Guarantors have not released any claims against Advantage Capital Holdings LLC or any entity known to be affiliated with it.

As I said earlier, the Borrowers and Guarantors have complied with the TRO and the Preliminary Injunction. The Guarantors are not willing to provide any other information to Leadenhall but confirm that they will continue to abide by the terms of the Preliminary Injunction as long as it remains in effect.

Exercises of Proxies

On December 18, 2024, ACM Delegate LLC delivered to 777 Partners LLC and 600 Partners LLC, as borrowers, and SuttonPark Acquisition LLC and SPA II LLC, as corporate guarantors, a Notice of Exercise of Irrevocable Proxy, pursuant to which ACM Delegate LLC

Leigh M. Nathanson, Esq.
February 10, 2025
Page 4

exercised its Irrevocable Proxy to make resolutions revoking the rights of Josh Wander and Steve Pasko to act on behalf of or otherwise as an authorized signatory of 777 Partners LLC or 600 Partners LLC, affirming and confirming the appointment of Ian Ratner of B. Riley with the rights, privileges and obligations of a manager and member of the board of managers, respectively, of 600 Partners LLC and 777 Partners LLC, and continuing the appointment of Mark Shapiro of B. Riley as interim chief operating officer of 600 Partners LLC and 777 Partners LLC.  With the above proxy, ACM Delegate LLC also delivered a Notice of Exercise of Irrevocable Proxy and an Omnibus Written Consent of the Members of SuttonPark Acquisition LLC, appointing Ian Ratner as manager of SuttonPark Acquisition LLC and Mark Shapiro as interim chief operating officer of SuttonPark Acquisition LLC.

On December 19, 2024, Leadenhall Life SMA III ICAV, as Subordinated Collateral Agent for Leadenhall Capital Partners LLP (collectively, "Leadenhall") sent a letter to 777 Partners LLC and Brickell Insurance Holdings, LLC ("BIH"), among others, notifying 777 Partners and MTCP LLC that all of their respective rights to exercise the voting and consensual rights and powers they are entitled to exercise on account of their shares of stock in BIH have ceased, and all such rights have vested in Leadenhall subject to an Intercreditor Agreement with BMO Harris Bank N.A.  Attached to that letter was a Written Consent of the Members of BIH, exercised via Leadenhall's proxy, to revoke all authority of any existing officer, employee or agent of BIH to act on behalf of the company, amending BIH's operating agreement with an amended and restated operating agreement attached to the letter, and appointing a new Manager of BIH.  That same day, Leadenhall also sent a Notice of Events of Default and Acceleration of the debt secured by the equity in BIH.

While neither of these exercises implicate the Preliminary Injunction, our clients believe that it is prudent to inform everyone getting a copy of this letter about them.  We have evaluated the various documents involved with the proxy rights and believe that our clients and their affiliates have no basis to challenge either exercise.

Upcoming Foreclosure By ING

There is another matter that does not implicate the Preliminary Injunction but that our clients believe should be disclosed to everyone.  At the June 7, 2024 TRO hearing, counsel for Intervenor National Founders inquired whether the transfer of servicing responsibilities would be prohibited by the TRO.  ECF No. 128, Tr. at 41-42.  Leadenhall agreed that it would not be affected by the TRO because "I don't think it entails the movement of assets."  *Id*. at 42.  ING Capital has been working to transition servicing for its portfolio (known as Sierra 2016) from SuttonPark Servicing LLC to a new servicer.  During a recent transition meeting with the new servicer and SuttonPark Servicing, LLC, ING stated that once servicing has been transitioned, it intends to foreclose on the assets in the Sierra 2016 portfolio.  Those assets are property of SuttonPark Capital LLC.

Leigh M. Nathanson, Esq.
February 10, 2025
Page 5

Very truly yours,

John G. McCarthy

cc:  Jonathan M. Watkins, Esq.
Nicholas P. Crowell, Esq.
Christopher B. Harwood, Esq.
Jordan L. Estes, Esq.
Alex Rossmiller. Esq.
Matthew C.R. Ziegler, Esq.
David A. Pellegrino, Esq.