# Exhibit M

**BEFORE THE UTAH INSURANCE COMMISSIONER**

| | |
|---|---|
| In re:<br><br>SENTINEL SECURITY LIFE INSURANCE COMPANY; HAYMARKET INSURANCE COMPANY; and JAZZ REINSURANCE COMPANY. | **EMERGENCY ORDER**<br><br><br>Docket No. 2024-4699 |

Jonathan T. Pike, Utah Insurance Commissioner ("Commissioner") hereby enters this Emergency Order against SENTINEL SECURITY LIFE INSURANCE COMPANY ("Sentinel"), HAYMARKET INSURANCE COMPANY ("Haymarket"), and JAZZ REINSURANCE COMPANY ("Jazz Re") (collectively the "Companies"), pursuant to Utah Code §§ 31A-2-201(4)(a) and 63G-4-502(1) and Utah Admin. Code R.590-265-5(2).

The Commissioner finds, based on knowledge and belief, that the Companies are in a Hazardous Financial Condition and that such condition presents an immediate and significant danger to the public health, safety, or welfare, and that immediate action is necessary and in the public interest. To mitigate this danger, the Companies are hereby ordered to cease writing new business by or before December 31, 2024.

In support of this Emergency Order, the Commissioner makes the following Findings of Fact and Conclusions of Law:

**FINDINGS OF FACT**

1.      Sentinel is a Utah domiciled life insurance company, retaining company code number 68802.  Sentinel's address is 257 E. 200 S. Suite 725, Salt Lake City, Utah 84111.

2.    Haymarket is a Utah domiciled reinsurance company, retaining company code number 15828.  Haymarket's address is 257 E. 200 S. Suite 725, Salt Lake City, Utah 84111.

3.    Jazz Re is a Utah Captive, retaining company code number 16156.  Jazz Re's address is 257 E. 200 S. Suite 725, Salt Lake City, Utah 84111.

**The Commissioner's Ongoing Examination of the Companies' Financial Condition**

4.    The Commissioner conducts regular financial examinations of Utah's domestic insurers to help assure that they can fulfill their obligations to policyholders.  Utah Code §§ 31A-2-203 and 204.

5.    Under this authority, the Commissioner ordered a full scope financial examination of the Companies on May 9, 2023, for the period January 1, 2020, through December 31, 2022. The Commissioner later extended the examination period to December 31, 2023.

6.    To facilitate the examination, and as authorized by law, the Commissioner retained an independent contractor to serve as the Examiner-in-Charge (the "EIC") of the examination.

7.    During the examination, the EIC uncovered the following impairments in the Companies' financial condition:

    a.    More than 10% of the Companies' investments are in a single entity in violation of Utah Code § 31A-18-106(2)(a);

    b.    Sentinel's assuming reinsurers, Haymarket and Jazz Re, are in a hazardous financial condition;

    c.    The Companies' risk-based capital ("RBC") ratio, a key indicator of financial health, has declined; and

    d.    The Companies are owned by a holding company, Advantage Capital Partners ("ACAP"), in which affiliated companies engaged in high-risk investments.

8.     The impairments demonstrate that the Companies were and are in a hazardous financial condition under Utah Admin. Code R.590-265-4 ("Hazardous Financial Condition").

9.     As the examination continued, the EIC found that the Companies' investment portfolios included a disproportionately large number of high-risk investments.

10.     In response to those risks, and pursuant to governing standards, the EIC performed substantive testing to ensure that the Companies adhered to statutory accounting principles and legal requirements.

11.     The Companies hold investments in more than thirty (30) loans or loan packages.

12.     The EIC also engaged an independent valuation specialist, Harvest Investments ("Harvest"), to value the Companies' investments.

13.     Harvest has performed its valuation work and issued valuations of some of the Companies' investments, specifically loans to third parties that the Companies claimed as assets.

14.     To date, Harvest reviewed three specific loans or loan packages to Flair Airlines, PAC Wagon/Phoenix Aviation, and JARM.

15.     Harvest's valuation of loans that the Companies made to Flair Airlines indicate that the expected recovery for the Flair loans is approximately zero to eleven cents on the dollar.

16.     Harvest's valuation of a package of non-performing loans that are collectively referred to as PAC Wagon indicates that the expected recovery for the PAC Wagon loans is between 23.79 and 27.14 cents on the dollar.

17.     Harvest's third valuation, which focused on the Companies' loan to a business entity called JARM, indicates that the expected recovery for the loan is 17.338 cents on the dollar.

18.     Harvest's valuations of the Flair Airlines, PAC Wagon, and JARM loans are lower than the Companies' internal valuations of these loans.

19.    Relying on Harvest's valuations, the EIC adjusted the assessment of the Companies' financial condition.

20.    The adjustments, issued on September 27, 2024, resulted in the following reductions to the Companies' capital and surplus:

   a.  Sentinel's capital and surplus fell from $130,478,003 to ($143,106,666);

   b.  Haymarket's capital and surplus fell from $63,471,407 to ($239,660,592); and

   c.  Jazz Re's capital and surplus fell from $3,083,242 to ($138,740,748).

21.    After learning of the adjustments, the Companies criticized Harvest's work and submitted alternative valuations of the Flair and PAC Wagon loans.

22.    After considering the Companies' input, the EIC did not alter the adjustments.

23.    Harvest continues its valuation of the Companies' high-risk assets/investments.

24.    The examination is ongoing.

### The Companies Are In a Hazardous Financial Condition

25.    The Companies are in a Hazardous Financial Condition for the following reasons:

   a.  With negative capital and surplus in the hundreds of millions of dollars, the Companies' admitted assets are less than their liabilities; and

   b.  The Companies are using funds from new premiums and/or liquidating investments other than the impaired investments to pay their obligations as they become due.

26.    An insurer is in a Hazardous Financial Condition if its "reinsurance program does not provide sufficient protection for [its] remaining surplus after considering: (a) the insurer's cash flow; (b) the classes of business written; and (c) the financial condition of the assuming reinsurer." Utah Admin. Code R.590-265-4(4).

27.    Sentinel's reinsurance plan uses Haymarket and Jazz Re as its reinsurers.

28.     Based on information available from the examination, Haymarket's admitted assets are less than its liabilities.

29.     Based on information available from the examination, Jazz Re's admitted assets are less than its liabilities.

30.     As a result, Sentinel's reinsurance program does not meet the requirements of Utah Admin. Code R.590-265-4(4).

31.     The Companies are in a Hazardous Financial Condition.  Utah Admin. Code R.590-265-4.

32.     Because they are in a Hazardous Financial Condition, the Companies pose a risk of irreparable harm to themselves and their policyholders, creditors, or the public.

### An Emergency Order to Cease Writing New Business is Required

33.     The Commissioner may issue an emergency order if: "(a) [t]he facts known by or presented to the [Commissioner] show that an immediate and significant danger to the public health, safety, or welfare exists; and (b) the threat requires immediate action by the Commissioner. Utah Code § 63G-4-502(1).

34.     The Commissioner has considered the required standards, including items and issues that may impact the solvency of the Companies. Utah Admin. Code R.590-265-5.  See also Utah Code § 31A-1-301(95).

35.     The Companies have been and are in a Hazardous Financial Condition.

36.     Because the Companies are in a Hazardous Financial Condition, if they continue to write business, a consumer who buys a policy may not obtain the financial protection that the policy would otherwise provide. This threat is an immediate danger to the public welfare.

37.     Even though the examination is ongoing the Commissioner has determined that this Emergency Order is necessary to protect policyholders and protect against immediate and significant danger to the public health, safety, and welfare.

## CONCLUSIONS OF LAW

38.     The Commissioner has jurisdiction pursuant to Utah Code §§ 31A-1-105, 31A-2-201 and 31A-2-308.

39.     The Commissioner regulates the business of insurance in Utah pursuant to Title 31A of the Utah Code.

40.     Pursuant to Utah Code § 31A-2-201(4)(a), the Commissioner is authorized to issue prohibitory orders to secure compliance with Title 31A.

41.     The Commissioner may issue emergency orders against entities regulated by the Utah Insurance Department when the facts known by or presented to the Commissioner show that an immediate and significant danger to the public health, safety, or welfare exists; and that the threat requires the Commissioner's immediate action. Utah Code §§ 63G-4-502 and 31A-2-201(4); Utah Admin. Code R.590-265-5.

42.     The Commissioner may issue an order prohibiting the Companies from writing new business when the Commissioner determines that the continued operation of the insurer may be hazardous to its policyholders, creditors or the general public. Utah Admin. Code R.590-265-5(2)(b).

43.     The Companies are in a Hazardous Financial Condition under Utah Admin. Code R.590-265-4, that poses a risk of an immediate and significant danger to the public health, safety, or welfare and requires the Commissioner's immediate action.

## ORDER

Based upon the Findings of Fact and Conclusions of Law, effective immediately, it is

ordered that:

1.      The Companies shall cease writing all new business by December 31, 2024;

2.      The Companies shall cancel all new policies and new annuities issued after December 31, 2024;

3.      The Companies shall return to the purchaser of a policy or annuity described above, within five (5) business days, all money received from the purchaser in connection with the transaction;

4.      This Order does not affect renewal policies;

5.      The Department shall send this Emergency Order in its entirety, including the findings of fact and conclusions of law, to other state insurance regulators as directed by the National Association of Insurance Commissioners Troubled Insurer Company Handbook (2023);

6.      The Companies shall complete and return an affidavit stating that they have sent a copy of this Emergency Order in its entirety, including the Findings of Fact and Conclusions of Law, to all producers who sell the Companies' products;

7.      In addition, Sentinel shall obtain and return to the Department a written acknowledgement, signed by the president of AmeriLife, stating that AmeriLife received a copy of this Emergency Order in its entirety, including the findings of fact and conclusions of law;

8.      This Emergency Order does not stay the examination;

9.      This Emergency Order shall not be construed to limit the ability of the Commissioner to take other action against the Companies, including placing any of the Companies into rehabilitation, liquidation, or other delinquency proceedings; and

10.      The Utah Insurance Department shall commence a formal adjudicative proceeding in this matter in accordance with Utah Administrative Procedures Act.

DATED this 2nd day of December, 2024.

_____
JONATHAN T. PIKE
Utah Insurance Commissioner

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this date a true and correct copy of the foregoing

Order to Suspend Writing New Business, was emailed to:

Mark Gaylord
gaylord@ballardspahr.com

Kenneth King
kking@acap.com

Jill Gettman
jgettman@acap.com

DATED this 2nd day of December, 2024.

_/s/ Jeanine Couser_____
Jeanine Couser
Utah Insurance Department
4315 S. 2700 W., Suite 2300
Taylorsville, UT 84129
801-957-9321