# Exhibit Y

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

WEST PALM BEACH DIVISION


777 PARTNERS LLC and
SUTTONPARK CAPITAL LLC,

       Plaintiffs,

                          CASE NO.
    vs.                    24-81143-CIV-DMM

LEADENHALL CAPITAL
PARTNERS LLP, LEADENHALL
LIFE INSURANCE LINKED
INVESTMENTS FUND PLC, NOAH
DAVIS, SAIPH CONSULTING LLC
and PAUL KOSINSKI,

       Defendants.

~~~~~~~~~~~~~~~~~~~~~~~~~

VIDEOTAPED VIDEOCONFERENCE DEPOSITION OF

MARK DAVID SHAPIRO


March 5, 2025

9:52 a.m.


1180 Peachtree Street NE

Suite 1700

Atlanta, Georgia


Nicole Limoncelli, RPR, CCR-5799-5142-5014-9888



**UNIVERSAL COURT REPORTING**

**Office Phone:** 954-712-2600
**Email:** info@ucrinc.com
**Website:** ucrinc.com

**777 PARTNERS LLC and SUTTONPARK CAPITAL LLC vs LEADENHALL CAPITAL**
Shapiro, Mark on 03/05/2025          Pages 2..5

Page 2

```
 1              APPEARANCES OF COUNSEL:
 2  On behalf of the Plaintiffs:
 3     DAVID A. PELLEGRINO, Esquire
       JOHN G. MCCARTHY, Esquire - via Zoom
 4     Smith Gambrell & Russell, LLP
       1301 Avenue of the Americas
 5     21st Floor
       New York, New York 10019
 6     (212) 907-9700
       (646) 887-8165 - (facsimile)
 7     dpellegrino@sgrlaw.com
       jmccarthy@sgrlaw.com
 8
       SHELLY A. DEROUSSE, Esquire - via Zoom
 9     Smith Gambrell & Russell, LLP
       311 South Wacker Drive
10     Suite 3000
       Chicago, Illinois 60606
11     (312) 360-6000
       (312) 360-6520 - (facsimile)
12     sderousse@sgrlaw.com
13
14  On behalf of the Defendants Leadenhall Capital
    Partners LLP and Leadenhall Life Insurance Linked
15  Investments Fund PLC:
16     PETER STARR, Esquire
       King & Spalding, LLP
17     1180 Peachtree Street NE
       Suite 1600
18     Atlanta, Georgia 30309
       (404) 572-4600
19     pstarr@kslaw.com
20     LEIGH M. NATHANSON, Esquire - via Zoom
       King & Spalding, LLP
21     1185 Avenue of the Americas
       34th Floor
22     New York, New York 10036
       (212) 556-2100
23     lnathanson@kslaw.com
24
25
```

Page 3

```
 1           APPEARANCES OF COUNSEL (continued):
 2  On behalf of the Defendant Noah Davis:
 3     LEONARD S. FEUER, Esquire - via Zoom
       Leonard Feuer, P.A.
 4     500 South Australian Avenue
       Suite 500
 5     West Palm Beach, Florida 33401
       (561) 659-1360
 6     (561) 249-4100 - (facsimile)
       lfeuer@feuerlawfirm.com
 7
 8
 9  On behalf of the Defendants Saiph Consulting LLC and
    Paul Kosinski:
10
       HAROLD E. MORLAN, III, Esquire - via Zoom
11     300 South Orange Avenue
       Shutts & Bowen, LLP
12     300 South Orange Avenue
       Suite 1600
13     Orlando, Florida 32801
       (407) 423-3200
14     (407) 425-8316 - (facsimile)
       hmorlan@shutts.com
15
16
17  Also Present:
18     Brian Stephens - Videographer
19     Ian Ratner - via Zoom
20     Paul Kosinski - via Zoom
21
22
23          -    -    -
24
25
```

Page 4

```
 1             INDEX OF EXAMINATION
 2  WITNESS:  MARK DAVID SHAPIRO
 3
 4  CROSS-EXAMINATION                          PAGE
 5     By Mr. Starr                            9
 6
 7  CROSS-EXAMINATION
 8     By Mr. Morlan                           154
 9
10  RECROSS-EXAMINATION
11     By Mr. Starr                            278
12
13
14          -    -    -
15
16
17
18
19
20
21
22
23
24
25
```

Page 5

```
 1             INDEX OF EXHIBITS
 2
    SHAPIRO
 3  EXHIBITS       DESCRIPTION                 PAGE
 4  Exhibit 1      Declaration of Mark Shapiro 51
 5                 in Opposition to Application
 6                 For Temporary Restraints and
 7                 the Appointment of a Receiver
 8  Exhibit 2      An e-mail chain dated        83
 9                 June 20, 2024
10                 Bates stamp
11                 777(PL-FL)_00004886 through
12                 777(PL-FL)_00004889
13  Exhibit 3      An e-mail chain dated        86
14                 July 2024
15                 Bates stamp
16                 777(PL-FL)_00004890 through
17                 777(PL-FL)_00004895
18  Exhibit 4      Eric Mazur's initial report  118
19                 and supplemental report
20
21
22
23
24
25
```



**UNIVERSAL COURT REPORTING**

**Office Phone:** 954-712-2600
**Email:** info@ucrinc.com
**Website:** ucrinc.com

777 PARTNERS LLC and SUTTONPARK CAPITAL LLC vs LEADENHALL CAPITAL
Shapiro, Mark on 03/05/2025        Pages 6..9

Page 6

1           INDEX OF EXHIBITS (continued)

2

  SHAPIRO

3 EXHIBITS      DESCRIPTION            PAGE

4 Exhibit 5     Plaintiff's Responses and    140

5               Objections to Defendant

6               Leadenhall Capital Partners

7               LLP and Leadenhall Life

8               Insurance Linked Investments

9               Fund PLC's First Requests

10              For Admission

11 Exhibit 6    Plaintiff's Responses and    143

12              Objections to Defendant

13              Leadenhall Capital Partners

14              LLP and Leadenhall Life

15              Insurance Linked Investments

16              Fund PLC's First Set of

17              Interrogatories

18 Exhibit 7    Declaration of Mark Shapiro  198

19              In Opposition to Motion to

20              Compel

21

22

23 (Original Exhibits 1 through 7 have been attached to

24 the original transcript.)

25              - - - - -

Page 7

1        Videotaped Videoconference Deposition of
2               Mark David Shapiro
3                 March 5, 2025
4        THE VIDEOGRAPHER:  Okay.  We are on the
5    record.
6        Today's date is March 5th, 2025, and the
7    time is approximately 9:52 a.m.
8        This will be the videotaped deposition of
9    Mark Shapiro in the matter of 777 Partners LLC, et
10   al. versus Leadenhall Capital Partners LLP, et al.
11       Will the attorneys present please state
12   their names and whom they represent, starting with
13   those online.
14       MR. MORLAN:  Harold E. Morlan, III with
15   Shutts & Bowen here on behalf of Saiph Consulting
16   LLC and Paul Kosinski.
17       MR. FEUER:  Good morning.  Leonard Feuer,
18   The First of Leonard Feuer, P.A. on behalf of Noah
19   Davis.
20       MS. NATHANSON:  Good morning.  Leigh
21   Nathanson, King & Spalding on behalf of the
22   Leadenhall defendants.
23       MR. PELLEGRINO:  David Pellegrino of Smith
24   Gambrell & Russell on behalf of the plaintiffs 777
25   Partners and Suttonpark Capital.

Page 8

1        I just want to mention that I expect Ian
2    Ratner to be joining at some point.
3        MR. STARR:  In person or...?
4        MR. PELLEGRINO:  Online, yeah.
5        MR. STARR:  Peter Starr, King & Spalding,
6    LLP on behalf of the Leadenhall defendants.
7        THE VIDEOGRAPHER:  Thank you.
8        And will the court reporter please swear in
9    the witness.
10            MARK DAVID SHAPIRO,
11   having been first duly sworn, was examined and
12   testified as follows:
13       MR. PELLEGRINO:  Nicole, can I just ask you
14   a question?  Do I have to tap on something before
15   it engages?  Because it hasn't already started or
16   you haven't started.
17       THE COURT REPORTER:  It hasn't gone?  Yours
18   is going, right?
19       MR. STARR:  Mine is going.
20       MR. PELLEGRINO:  I -- I suspect I need to
21   hit something.
22       MR. STARR:  Hit "follow realtime."
23       MR. PELLEGRINO:  It's checked, but it's
24   still stuck on "United States."
25       THE VIDEOGRAPHER:  Do you want to hop off

Page 9

1    the record real quick?
2        MR. STARR:  Yes.
3        THE VIDEOGRAPHER:  Going off the record at
4    9:54.
5        (A recess was taken.)
6        THE VIDEOGRAPHER:  Okay.  We're back on the
7    record at 9:54.
8            CROSS-EXAMINATION
9  BY MR. STARR:
10       Q.  Okay.  Mr. Shapiro, could you please state
11   your full name for the record?
12       A.  Mark David Shapiro.
13       Q.  And you've been deposed before?
14       A.  Yes.
15       Q.  Many times?
16       A.  Many times.
17       Q.  Okay.  You've testified in open court?
18       A.  Yes.
19       Q.  Many times?
20       A.  Many times.
21       Q.  So I won't go over the ground rules today,
22   but I will just ask if there's anything that would
23   interfere with your ability to give complete and
24   accurate testimony?
25       A.  There is not.



**Office Phone:** 954-712-2600
**Email:** info@ucrinc.com
**Website:** ucrinc.com

777 PARTNERS LLC and SUTTONPARK CAPITAL LLC vs LEADENHALL CAPITAL
Shapiro, Mark on 03/05/2025                           Pages 10..13

Page 10

1    Q.  Okay.  Just for clarity, during today's
2  deposition, when I refer to "Leadenhall," I'll be
3  referring to both of the Leadenhall entities that I
4  represent unless I specify otherwise.
5    A.  Okay.
6    Q.  If I use term "plaintiffs," I'm referring to
7  both 777 Partners and Suttonpark.  And when I refer to
8  the "New York action," I'm referring to the litigation
9  Leadenhall commenced in the Southern District of New
10  York.
11    A.  Understood.
12    Q.  Okay.
13      MR. STARR:  Before we get into the
14    questions, I do want to make a record that
15    custodial documents from your files -- from
16    Mr. Shapiro's files were not produced to us until
17    about 1:00 a.m. last night.  So we have not had a
18    chance to review those and will reserve the right
19    to re-call Mr. Shapiro depending on the contents
20    of that production and -- and also depending on
21    whether the production of the B. Riley files is
22    complete.
23  BY MR. STARR:
24    Q.  Do you know whether the production of -- of
25  your documents is complete?

Page 11

1    A.  I mean, I believe it is.  We -- we did the
2  search terms per the -- per the -- per the agreed-upon
3  search terms.  And I personally went through my
4  e-mails and hopefully it's complete.
5    Q.  What were the agreed-upon search terms?
6    A.  I can't recite them off the fact, there's a
7  document that has the search terms.
8    Q.  Okay.  You received a document with search
9  terms?
10    A.  Yes.
11    Q.  From whom did you receive that?
12    A.  Counsel.
13    Q.  Which counsel?
14    A.  Smith Gambrell.
15    Q.  Okay.  Does Smith Gambrell represent you in
16  this matter?
17    A.  They represent the company.  I'm here on
18  behalf of the company.
19    Q.  Do you have separate counsel in this matter?
20    A.  I don't.
21    Q.  Is it true that B. Riley retained
22  BakerHostetler to review your documents and the
23  documents of Mr. Ratner?
24    A.  Yes.  They were engaged to assist to help B.
25  Riley because it was on fairly short-term notice that

Page 12

1  we had or had to produce, so we had to beef up the
2  staff.
3    Q.  So what was BakerHostetler's role?
4    A.  Their role was to review -- essentially do a
5  preliminary review of the files.  And then ultimately
6  hand those over to Smith Gambrell for the final
7  review.
8    Q.  Did BakerHostetler also collect the B. Riley
9  documents in this case?
10    A.  I'm not sure if B. Riley extracted the data
11  for Baker or if Baker did it themselves.  I -- I'm not
12  sure how that ended up being done.  And it was
13  discussed --
14      MR. MORLAN:  Peter, I need to hop over to
15    the Bennett deposition.
16      MR. STARR:  Okay.  Off the record.
17      MR. FEUER:  I'm doing the same.
18      THE VIDEOGRAPHER:  Going off the record.
19    The time is 9:58.
20      (Mr. Morlan and Mr. Feuer exited the
21    proceedings.)
22      (A recess was taken.)
23      (Mr. Morlan and Mr. Feuer returned to the
24    proceedings.)
25      THE VIDEOGRAPHER:  Okay.  We're back on the

Page 13

1  record.  It's 10:20.
2  BY MR. STARR:
3    Q.  Okay.  Mr. Shapiro, before the break we were
4  discussing your document production.
5      MR. STARR:  And I just wanted to note
6    Mr. Pellegrino represented that the production of
7    B. Riley documents is not complete at this time.
8      MR. PELLEGRINO:  That's correct.
9  BY MR. STARR:
10    Q.  And I believe you testified that there was a
11  short turnaround time?
12    A.  Correct.
13    Q.  To produce?
14    A.  Yes.
15    Q.  When were you notified that you needed to
16  produce documents?
17      MR. PELLEGRINO:  I'm just going to warn you
18    not to disclose communications, the sum and
19    substance of the communications with counsel.
20      THE WITNESS:  Well, I was notified of the
21    timing with counseling.
22  BY MR. STARR:
23    Q.  Yeah.  When?
24      THE WITNESS:  Is that okay to answer?
25      MR. PELLEGRINO:  You may answer.

UNIVERSAL
COURT REPORTING

**Office Phone:** 954-712-2600
**Email:** info@ucrinc.com
**Website:** ucrinc.com

777 PARTNERS LLC and SUTTONPARK CAPITAL LLC vs LEADENHALL CAPITAL
Shapiro, Mark on 03/05/2025             Pages 14..17

Page 14

1   THE WITNESS: A week ago Friday.
2 BY MR. STARR:
3   **Q. 1 week ago?**
4   A. Or Thursday. I mean, I knew there was
5 document production required, but I was made aware of
6 the expedited timeline after the hearing on Thursday.
7 I'm not sure if I knew it Thursday night or Friday.
8   **Q. So -- okay. So last -- just last Friday --**
9 **last Thursday or Friday?**
10   A. Correct.
11   **Q. Understood.**
12   **And --**
13   MR. MORLAN: Hey, Brian, can we turn up the
14 microphone output levels from the deponent and
15 Mr. Pellegrino? I'm having a little trouble
16 hearing them.
17   THE VIDEOGRAPHER: That's -- that's the room
18 mics. Is there any way to boost those?
19   MR. STARR: Can we go off the record?
20   THE VIDEOGRAPHER: Going off the record.
21 The time is 10:22.
22   (Discussion ensued off the record.)
23   THE VIDEOGRAPHER: Okay. We're back on.
24 The time is 10:24.
25 BY MR. STARR:

Page 15

1   **Q. And so I believe you testified that B. Riley**
2 **retained BakerHostetler for first line review of the**
3 **documents?**
4   A. Correct.
5   **Q. Did you have any --**
6   MR. STARR: Withdraw the question.
7 BY MR. STARR:
8   **Q. Did you retain BakerHostetler specifically**
9 **for that purpose or were they already on retainer?**
10   A. I'm not sure if they were on retainer. They
11 were working for B. Riley on another small matter
12 related to, I believe, a 401(k) payment payout, but it
13 was very small matter they were working on.
14   **Q. Did you have any confidentiality concerns**
15 **about allowing Smith Gambrell to conduct the first**
16 **line review of documents?**
17   MR. PELLEGRINO: Objection to form.
18 BY MR. STARR:
19   **Q. Go ahead.**
20   A. No.
21   **Q. In your work for 777, you used your own B.**
22 **Riley e-mail address, right?**
23   A. For my e-mail?
24   **Q. Do you have a 777 Partners e-mail address?**
25   A. I don't.

Page 16

1   **Q. Do you use your B. Riley e-mail address for**
2 **your work with 777 Partners?**
3   A. Yes.
4   **Q. Why is that?**
5   A. We're -- we've -- we've just never
6 established e-mails on the 777 server. Sometimes with
7 clients we do, other times we don't. But we just
8 never did on this one.
9   **Q. That's what I was going to ask, whether**
10 **that's your normal practice.**
11   A. Most of the time we don't use the client's
12 e-mail.
13   **Q. Okay. Mr. Shapiro, did you prepare for**
14 **today's deposition?**
15   A. I did.
16   **Q. What did you do to prepare?**
17   A. I reviewed my e-mails files related to 777.
18 I reviewed the pleadings in this matter, as well as to
19 a lesser extent the New York matter. Had
20 conversations with counsel. I had conversations with
21 some of the folks who were working on the 777 matter
22 from B. Riley. So that's all I can recall at this
23 point.
24   **Q. Well, let's -- let's start with the last**
25 **thing you said.**

Page 17

1   **Who at B. Riley did you discuss today's**
2 **deposition with?**
3   A. Ian Ratner.
4   **Q. Anyone else?**
5   A. Just in general about, you know, I'm being
6 deposed, probably Mike Thatcher (phonetic) who's
7 working on the case with me. That's about it.
8   **Q. Not Jim Howard?**
9   A. I don't think I talked to Jim about the
10 deposition.
11   **Q. What did you discuss with Mr. Ratner?**
12   MR. PELLEGRINO: I'm just going to warn --
13 to the extent counsel was present, I'm warning you
14 not to reveal the substance of conversations.
15   MR. STARR: Hold on. I don't -- just
16 because counsel was present in a meeting, that
17 doesn't mean he can't testify about what he
18 discussed with a nonlawyer.
19   MR. PELLEGRINO: Not -- not if it was with
20 counsel.
21   MR. STARR: No, that's not how it works.
22 BY MR. STARR:
23   **Q. Go ahead. What were you going to say?**
24   THE WITNESS: Well, should I disclose
25 conversations when you were there?



**Office Phone:** 954-712-2600
**Email:** info@ucrinc.com
**Website:** ucrinc.com

777 PARTNERS LLC and SUTTONPARK CAPITAL LLC vs LEADENHALL CAPITAL
Shapiro, Mark on 03/05/2025                              Pages 18..21

Page 18

1        MR. PELLEGRINO:  If I -- if there was no
2   counsel present, you can disclose the
3   conversation.
4        THE WITNESS:  Okay.  Noncounsel
5   conversations with Ian were mostly about
6   scheduling.  Really no real in-depth
7   conversations.  The conversation I had with Ian,
8   if anything, had to do with testimony would have
9   been with -- with David.
10  BY MR. STARR:
11       Q.   Okay.  So did Mr. Pellegrino direct you to
12  speak to Mr. Ratner about this deposition?
13       MR. PELLEGRINO:  I'm just going to object
14  because it's -- that's the sub- -- sum and
15  substance of --
16       MR. STARR:  No, no, no.  I'm testing -- I'm
17  testing your privilege objection.  Because you
18  appear to take the position by walking into a
19  room, nothing that's said in that room can be
20  disclosed due to privilege.
21       MR. PELLEGRINO:  Correct.
22       MR. STARR:  That's your position?
23       MR. PELLEGRINO:  It is.
24       MR. STARR:  Okay.  That's not how it works.
25  BY MR. STARR:

Page 19

1        Q.   Did Mr. Pellegrino direct you to discuss
2   today's deposition with Mr. Ratner?
3        MR. PELLEGRINO:  I'm -- I'm going to object,
4   direct him not to answer.  The substance --
5   substance of our conversations based on privilege.
6   BY MR. STARR:
7        Q.   So you had no substantive with Mr. --
8   substantive discussions, excuse me, with Mr. Ratner
9   outside of the presence of counsel?
10       A.   No.
11       Q.   So you said that you met with counsel to
12  prepare for today's deposition as well?
13       A.   Yes.
14       Q.   Which counsel?
15       A.   Mr. Pellegrino.
16       Q.   Anyone else?
17       A.   At times with John McCarthy.
18       Q.   Okay.  And anyone from BakerHostetler?
19       A.   No.
20       Q.   When did you discuss today's deposition with
21  the Smith Gambrell folks?
22       A.   Yesterday and some on Monday.
23       Q.   For about how long?
24       A.   I would say maybe 6 to 8 hours with counsel.
25       Q.   6 to 8 hours of meetings altogether for

Page 20

1   today's deposition?
2        A.   Yes.
3        Q.   Okay.  Did you meet with anyone who would be
4   considered a legacy 777 employee?
5        A.   No.
6        Q.   Okay.  You said that you reviewed some
7   e-mails; is that right?
8        A.   Correct.
9        Q.   Did those refresh your recollection?
10       A.   Yes.
11       Q.   Okay.  Which e-mails did you review?
12       A.   I tried to look at the e-mails that would've
13  come up in a search under Florida litigation,
14  Leadenhall, Saiph, data intrusion, things like that.
15       Q.   Do you recall any -- any particular e-mails
16  that you reviewed?
17       A.   No.
18       Q.   You can't think of a single e-mail you
19  reviewed yesterday?
20       A.   I -- I mean, I -- nothing spectacular.
21       Q.   Did you bring any documents with you today?
22       A.   I did not.
23       Q.   Okay.  Don't have any notes with you?
24       A.   None.
25       Q.   All right.  You've been at B. Riley for

Page 21

1   about 9 years; is that right?
2        A.   September of '16, so about 8 and a half
3   years.
4        Q.   Okay.  I've reviewed your bio.
5            And you're a CPA?
6        A.   Inactive.
7        Q.   Okay.  Do you have any other professional
8   certification?
9        A.   No.
10       Q.   Do you have any legal training?
11       A.   No.
12       Q.   How would you describe your role or area of
13  expertise at B. Riley?
14       A.   I'm primarily a -- I work primarily
15  company-side financial advisor work for distressed
16  situations, in and out of court.  Sometimes as a
17  financial advisor.  Sometimes as a CRO.  Sometimes as
18  a receiver.  Sometimes as a trustee.
19       Q.   Okay.  And which of those services are you
20  providing to 777 Partners?
21       A.   Technically I'm the chief -- interim chief
22  operating officer, but functioning as a chief
23  restructuring officer.
24       Q.   Okay.  Do you normally --
25       MR. STARR:  Well, withdraw that question.


**UNIVERSAL**
**COURT REPORTING**

**Office Phone:** 954-712-2600
**Email:** info@ucrinc.com
**Website:** ucrinc.com

777 PARTNERS LLC and SUTTONPARK CAPITAL LLC vs LEADENHALL CAPITAL
Shapiro, Mark on 03/05/2025                    Pages 22..25

Page 22

1 BY MR. STARR:
2     Q.   Is a greater percentage of your work done
3 internally at a company as a restructuring officer or
4 externally as an advisor?
5     A.   I would say equal.  They -- well, I consider
6 them both external.  It's whether I'm taking an
7 officer position or not.  It's very similar roles.
8     Q.   That's what I mean.
9     A.   Yeah.
10    Q.   When you step into a management position,
11 even if on a interim basis?
12    A.   Probably I'm a CRO versus an advisor
13 probably half the time.
14    Q.   Okay.  And what is your understanding of 777
15 Partners' business?
16    A.   777 is a portfolio of industry -- businesses
17 in different industries.  They started out in
18 specialty finance and structured finance.  But they
19 also are into diverse industries, such as owning
20 football clubs around the world, airlines, airline
21 technology companies, movie studios, film finance
22 studios, sports agencies.  A lot of difficult types of
23 companies.
24    Q.   And one of their lines of business is in
25 investigating in receivables from structured

Page 23

1 settlements or lottery winnings?
2     A.   Correct, structured settlements and -- and
3 medical receivables, lottery winnings, reverse life
4 mortgages, thing -- things like that.
5     Q.   How does that all work?  I mean, how does
6 777 identify people who have won the lottery?
7     A.   I don't know.  That is a business that
8 preceded me.
9     Q.   Have you or has your team created a cap
10 table for 777 Partners?
11    A.   By what do you mean "a gap table"?
12    Q.   Sorry, a cap.  A capitalization table.
13    A.   A cap table, yes.  To the -- yes, we have
14 attempted to create a cap table for the various
15 entities.
16    Q.   And you understand what I mean when I
17 refer --
18    A.   Yes.
19    Q.   Okay.  So you -- you have created one or you
20 have attempted to create one?
21    A.   Well, we have org charts from -- that were
22 prepared by the company.  Each individual business has
23 different ownerships, so it would be cap tables as
24 opposed to cap table.  Getting our arms around debt
25 levels has been a little bit of a challenge.  I think

Page 24

1 we have a better -- better handle on equity as opposed
2 to debt levels.  We know who the lenders are, but to
3 get a proper cap table, we'd probably have to confirm
4 debt levels with a lot of different folks, which we --
5     Q.   Why have --
6     A.   -- which we have not done.
7     Q.   Okay.  Why has it been a challenge to
8 establish the debt levels?
9     A.   The books and records are behind when we
10 first got in there.  I think the books -- when we were
11 in in -- in May of 2024, the books and records were --
12 some of them were -- had not been closed for the year.
13 They're still behind in certain instances of -- of
14 closing the books.
15    Q.   For the prior -- for fiscal 2023?
16    A.   Yeah, for fiscal '23.  We haven't closed the
17 books for '24 yet, but.  It's a pretty thin -- thinly
18 staffed accounting department and they were behind.
19    Q.   Is there an operative balance sheet that
20 you're working off of now for 777?
21    A.   Again, each portfolio company has separate
22 balance sheets.
23    Q.   You don't have a consolidated --
24    A.   No.
25    Q.   -- balance sheet?  Okay.

Page 25

1     So for Suttonpark, do you have an operative
2 balance sheet?
3     A.   I haven't looked at it lately.  I don't know
4 how up to date it is.
5     Q.   Okay.  Were you asked to provide that cap
6 table that you mentioned to Leadenhall?
7     A.   I believe in one of their document requests
8 they've asked for cap tables.
9     Q.   Did you decline to provide it?
10    A.   I don't remember if we provided or not
11 provided that cap table.
12    Q.   Do you have any concerns about providing it?
13    A.   There's a lot of litigation in this matter
14 and I run all document requests through -- through
15 counsel.
16    Q.   How many corporate affiliates does 777
17 Partners have?
18    A.   Hundreds.
19       MR. PELLEGRINO:  Objection to form.
20       THE WITNESS:  Hundreds.
21 BY MR. STARR:
22    Q.   Are you ultimately responsible for
23 overseeing the operations of those hundreds of
24 companies?
25    A.   Ultimately, yes, I am.

UNIVERSAL
COURT REPORTING

Office Phone: 954-712-2600
Email: info@ucrinc.com
Website: ucrinc.com

777 PARTNERS LLC and SUTTONPARK CAPITAL LLC vs LEADENHALL CAPITAL
Shapiro, Mark on 03/05/2025                                    Pages 26..29

---

**Page 26**

1    Q.  I understand that Josh Wander and Steven
2  Pasko resigned as managing partners of the company in
3  May of 2024, right?
4    A.  Yes.
5    Q.  That was after B. Riley was retained?
6    A.  Just after we were retained, yes.
7    Q.  Okay.  After B. Riley was retained,
8  Mr. Wander made a statement to the press in which he
9  said "Steve Pasko and I maintain our active roles
10  at -- at 777 Partners."  Is that an accurate
11  statement?
12    A.  I can't opine on what was -- what he said
13  to -- I don't know what he said to the press.
14    Q.  Is it accurate that Josh Wander and Steve
15  Pasko maintained their active roles at 777 Partners?
16    A.  No, it's not correct.
17    Q.  Okay.  So what is Mr. Wander's role now?
18    A.  He is a consultant.  He and Steve are
19  consultants to the company.  They're consultants.
20    Q.  So they are not employed -- they are
21  consultants, not -- not employees?
22    A.  Correct.  They were terminated as employees
23  in September of 2024.
24    Q.  In September?
25    A.  Yes.

**Page 27**

1    Q.  Did -- are there -- excuse me.
2        Are there consulting agreements in writing?
3    A.  There are.
4    Q.  Okay.  And who are the parties to those
5  contracts?
6    A.  There's one with Steve and one with Josh.
7    Q.  And who's the counterparty?
8    A.  I don't -- can't recall which
9  counterpart- -- which entity is the counterparty.
10    Q.  Would it be 777 Partners or 600 Partners?
11    A.  I would think it would be, but I can't
12  verify which one it is.
13    Q.  Are they paid for their consulting services?
14    A.  They've been paid something.  They haven't
15  been paid all their consulting services.  They're owed
16  money.
17    Q.  They are owed money?
18    A.  Yes.
19    Q.  How much are they paid for their consulting
20  services?
21    A.  I -- I don't know.  I -- I was going to look
22  before this because I knew I'd be asked the question
23  and I didn't.  I -- I can find out.
24    Q.  Okay.  Do you confer with Mr. Wander before
25  making business decisions for the company?

**Page 28**

1    A.  Typically, no.
2    Q.  Are there some issues on which you do confer
3  with him?
4    A.  Josh has -- and -- and what -- what Josh and
5  Steve have is historical knowledge of these -- these
6  deals and these companies.  And if I have questions as
7  to how they operate or how we ended up requiring a
8  company like this because sometimes it doesn't make
9  sense that 777 would own a typical company or a --
10  just a company.  I'll have a conversation with Josh
11  and he's good for history.
12        He has an opinion on value, always, and I
13  like to hear his opinions on value.  They're probably
14  very different than mine, but it's always good to run
15  it by him to get -- get his idea on how he bought
16  companies, what the value is.  That's pretty much what
17  I talk about with Josh.
18    Q.  Do you discuss with Mr. Wander prospective
19  course of action with respect to a given company?
20    A.  He has a -- his opinions on mostly
21  surrounding football clubs, which we don't control, as
22  you know right now.  Perceived value of those football
23  clubs.  But, no, I typically don't talk to him about
24  taking actions on certain companies.
25    Q.  Why don't you control the football clubs?

**Page 29**

1    A.  In June of -- I believe it was June of 2024,
2  777 -- not 777, A-CAP exercised their proxy over the
3  equity of Nutmeg, which is the owner of the football
4  clubs.  And the A-CAP affiliate ACM -- I forget the
5  name of that company, ACM Delegate is the manager of
6  those football clubs.  They're the manager of Nutmeg
7  and the associated football clubs.
8    Q.  Got it.
9        So you mentioned that you and Mr. Wander
10  sometimes have different views on the value of a given
11  portfolio company --
12    A.  Yes.
13    Q.  -- is that right?
14    A.  Yes.
15    Q.  Does that affect --
16        MR. STARR:  Well, withdraw that.
17  BY MR. STARR:
18    Q.  I assume you take into account the value of
19  a given company when deciding whether to liquidate or
20  retain that company?
21    A.  Correct.
22    Q.  And so if you're making a decision with
23  respect to the future of a given company, do you
24  discuss that decision with Mr. Wander?
25    A.  I let him know what companies are -- are --

---

**UNIVERSAL**
**COURT REPORTING**

**Office Phone:** 954-712-2600
**Email:** info@ucrinc.com
**Website:** ucrinc.com

777 PARTNERS LLC and SUTTONPARK CAPITAL LLC vs LEADENHALL CAPITAL
Shapiro, Mark on 03/05/2025                    Pages 30..33

Page 30

1  we're -- we're contemplating monetizing, yes.
2    **Q.  And you ask for his input on that decision?**
3    A.  Whether I ask for it or not, he gives it.
4    **Q.  Is the same true for Mr. Pasko or are there**
5  **any differences between the way you describe**
6  **Mr. Wander's, you know, role now and Mr. Pasko's role?**
7    A.  I would -- I would -- Steve is much more of
8  an operator and has less an opinion on value.
9    **Q.  So what sorts of decisions do you run by**
10 **Mr. Pasko?**
11   A.  I -- I don't --
12     MR. PELLEGRINO:  Objection to form.
13     THE WITNESS:  Yeah, I wouldn't say I run
14   decisions past Steve.
15 BY MR. STARR:
16   **Q.  Okay.  Well, what do you discuss with --**
17   A.  We discuss with him, again, the -- the
18 status of the companies, what's going on at the
19 portfolio companies.  He has a pretty good handle on
20 the people who run those portfolio companies.
21 Sometimes if they're contemplating either a deal or
22 they need funding or things like that, they'll --
23 they'll go through Steve.  Steve has a good
24 relationship with -- with those portfolio companies.
25 And, again, he's much more of an operator than Josh

Page 31

1  is.
2    **Q.  Are there any portfolio companies that**
3  **you're planning to monetize?**
4    A.  Okay.  We are -- there's been discussions
5  about a few companies.  One is a company called MLH,
6  which is a -- a company in -- I believe MLH is in -- I
7  get some of these mixed up.  It's either in litigation
8  financial or medical liens receivables.  I'm --
9      THE COURT REPORTER:  Or what?  I'm sorry.
10     THE WITNESS:  Medical lien receivables.
11   I'm -- I'm drawing a blank as to which one that
12   one is.
13     We are contemplating or we're discussing
14   with SILAC their ability to foreclose on a company
15   called -- or the assets on a company called CSG,
16   which is a litigation funding company.
17     There's another company that the Matt
18   portfolio company is looking at, trying to put a
19   deal together for a company called CDC or Deed --
20   Deed Street.  I believe that's a structured
21   settlement company.
22 BY MR. STARR:
23   **Q.  Deed Street?**
24   A.  Deed Street.
25   **Q.  Okay.**

Page 32

1    A.  And CDC.
2    **Q.  Mm-hmm.**
3    A.  We are discussing a potential sale of the
4  equity in the movie studio STX.  The film finance
5  company FFI filed for bankruptcy.  That sale is either
6  closing or just closed.  I know it had not closed as
7  of last week, so that one is -- is up.
8      There is -- in the most near term, there is
9  a foreclosure action in a company called MCAG, which
10 is a -- I believe a tribal lending company I
11 believe -- no.  MCAG is in claims -- Blue Cross Blue
12 Shield claims and Visa MasterCard claims.  That one is
13 up for foreclosure.  We actually talked to Leadenhall
14 about that one.  They chose not to participate in
15 that.  And, again, it's near foreclosure.  I'm not
16 sure if it closed or not.
17     There is a technology company in -- in
18 Europe somewhere called Stars I believe is -- is the
19 name, Star something.  There is a sale of that.  It's
20 small.  It's a few hundred thousand dollars in that
21 one.
22     Again, small ones here and there.  I think
23 those -- I think I recall those are the ones that
24 we're currently in discussion on in the near term,
25 yes.

Page 33

1      I'll tell you one we just closed because --
2    **Q.  Mm-hmm.**
3    A.  -- is a group of technology companies in the
4  airline business.  They supported the Flair Business
5  and a company called Aero CRS and Air Black Box.  They
6  go under the trade name of GO7, you may have heard of.
7  And that one we actually sold and closed last week to
8  a third party for some cash.  It was about a million
9  dollars.  But more importantly, yeah, it was the
10 assumption of 25-plus million dollars of liabilities.
11 We avoided a bankruptcy.  And those are the types of
12 deals that we're doing.  All of these companies are
13 fully levered by the way.
14   **Q.  Mm-hmm.**
15     **So when you do monetize these companies, for**
16 **what purpose are you doing that?**
17   A.  To either raise cash or rid ourselves of
18 debt.  Those are our two -- two -- two things we're
19 looking towards.
20   **Q.  Where does the cash that you raise go?**
21   A.  Operations.
22   **Q.  For which company?**
23   A.  The general pool payroll.  I mean, most of
24 the portfolio companies are cash -- close to cash
25 neutral.  When we first got in there, we were feeding

**UNIVERSAL**
**COURT REPORTING**

**Office Phone:** 954-712-2600
**Email:** info@ucrinc.com
**Website:** ucrinc.com

777 PARTNERS LLC and SUTTONPARK CAPITAL LLC vs LEADENHALL CAPITAL
Shapiro, Mark on 03/05/2025                    Pages 34..37

Page 34

1 losses at the portfolio companies. We've stent most
2 of those losses. So most of the cash that's coming in
3 is going to come in and be used for the payroll at the
4 hold -- HoldCo level and the cadre of advisors and
5 attorneys who are currently at 777.
6    Q. Mm-hmm.
7       Okay. So in the declaration that you
8 submitted in the New York action, you -- there was a
9 statement that -- that Wander and Pasko's continued
10 assistance is critical with respect to certain issues.
11 Are the issues that you covered those that you're
12 referring to there or are there other critical issues
13 on which you need their -- or would you have gotten
14 their assistance?
15    A. Back then in May, we were drinking from a
16 fire hose. There was a lot going on. And we know a
17 lot more today than we did back then. It was very
18 critical to keep those two around, just -- just to
19 learn for a period of time so that we can -- we can
20 operate the companies.
21    Q. Mm-hmm.
22       So today, who's in charge of making
23 decisions at 777 Partners, ultimate decision making
24 authority?
25    A. Well, I have operating decisions. And the

Page 35

1 two managers are Ian Ratner and myself. We make all
2 the decisions or have ultimate responsibility for
3 decisions.
4    Q. The same is true with 600 --
5    A. Yes.
6    Q. -- Partners?
7    A. Yes.
8    Q. Okay. And what is Suttonpark Capital?
9    A. Suttonpark Capital is a structured
10 settlement company. That is -- 777 serviced their
11 portfolio of -- of receivables. Leadenhall is a
12 lender to Suttonpark Capital, amongst other folks.
13 And currently we are in transition of -- or we're in
14 the process of transition servicing because of the
15 various litigations away from 777 to third parties.
16    Q. Did 777 Partners and Suttonpark have any
17 shared bank accounts?
18    A. No.
19    Q. And who owns Suttonpark?
20    A. I'd have to look at the org chart.
21    Q. Who's in charge of making decisions at
22 Suttonpark?
23    A. Ultimately Ian and I are decision makers
24 there, but we have our -- we have two B. Riley folks
25 there, Jim Howard and Teresa Licamora. They are

Page 36

1 operating the day-to-day. Jim's a very senior member,
2 recently retired. Teresa as well. But they are
3 running the day-to-day of Suttonpark.
4    Q. Is it true that there's only a handful of
5 employees at Suttonpark?
6    A. I don't know how many. I know it's
7 dramatically reduced.
8    Q. Are you in the process of winding Suttonpark
9 down?
10    A. No. I don't think we can wind Suttonpark
11 down. I think we're transitioning the servicing to
12 others, but the entity Suttonpark has assets that
13 ultimately have to be monetized.
14    Q. Is Suttonpark insolvent at the moment?
15       MR. PELLEGRINO: Objection to form.
16       THE WITNESS: The last time I looked,
17    Suttonpark's debt was more than their -- what we
18    believe the asset values to be. However, they are
19    paying their bills as they're due.
20 BY MR. STARR:
21    Q. Okay. So if you could just explain at a
22 high level what B. Riley was brought in to do for 777
23 Partners?
24    A. B. Riley was brought in to be an independent
25 operator of 777 Partners. Our engagement is -- will

Page 37

1 look very similar to a traditional CRO engagement
2 where we're responsible for cash flow and budgeting
3 and looking at forecasts and restructuring
4 alternatives and operating the business and making
5 hiring and firing decisions, all those types of
6 things.
7       What's a little bit different in our
8 engagement is that originally Ian Ratner and Ron Glass
9 were installed as managers of the company. Ultimately
10 Ron was taken off in September and I was put on as the
11 second manager. So as of now, Ian and myself are the
12 managers of the company. That's what makes this one a
13 little bit different than our traditional CRO roles.
14    Q. And why was Mr. Glass taken off the
15 engagement?
16    A. It was really just a decision because I was
17 there every day. I had more knowledge of the -- of
18 the business, and it just didn't -- it was just more
19 efficient to have me as a manager as well, as opposed
20 to Ron.
21    Q. And you said that B. Riley's independent?
22    A. Yes.
23    Q. Would you consider yourself an independent
24 fiduciary?
25    A. I would.

Office Phone: 954-712-2600
Email: info@ucrinc.com
Website: ucrinc.com



777 PARTNERS LLC and SUTTONPARK CAPITAL LLC vs LEADENHALL CAPITAL
Shapiro, Mark on 03/05/2025    Pages 38..41

Page 38

1    Q.  Okay.  To whom do you own fiduciary duties?
2    A.  The classic, to all stakeholders.  We owe
3  fiduciary duties to -- to owners, to creditors, to
4  employees, to vendors, to all.
5        THE COURT REPORTER:  To what?
6        THE WITNESS:  To all stakeholders.
7  BY MR. STARR:
8    Q.  If you could just try to keep it up a tad.
9    A.  Yeah, I'm sorry.
10   Q.  Thank you.
11   A.  I feel like I'm talking in the room, but
12  I'll try to keep it up.
13   Q.  I can hear you just fine.  It's I'm worried
14  about the folks watching at home.
15       Okay.  Why is it important that
16  restructuring advisors be independent?
17   A.  Well, we're brought in for a purpose to look
18  out for stakeholders.  And many times in this -- in
19  these types of situations, in this one as well,
20  there's push and pull between equity and creditors and
21  everybody is trying to take out their own position.
22  There's litigation.  There's sometimes a mess,
23  sometimes mistrust.  And we need to be viewed as
24  independent parties so that people can trust us and
25  what we're saying make sense and that we're looking

Page 39

1  out for -- doing our best to look out for everybody.
2    Q.  Is part of B. Riley's charge here to resolve
3  outstanding litigation?
4    A.  I believe a component of our engagement is
5  to either -- it's worded as either work through
6  litigation, resolve litigation.  Our -- our role is to
7  manage or hopefully manage the litigation to a
8  resolution.
9    Q.  Did you produce that engagement agreement by
10  the way?
11   A.  I believe I did.
12   Q.  Okay.
13   A.  Well, most of the scope of the engagement
14  agreement is in my declaration.  So the scope is
15  there.  I don't know if we produced it.  We -- we can
16  check.
17   Q.  Do you have a scope of work and an
18  engagement agreement?
19   A.  All total, one.
20   Q.  That's the -- so --
21   A.  Correct.
22   Q.  -- if there's a document called "scope of
23  work," that is the engagement agreement?
24   A.  The engagement -- the engagement agreement
25  has a scope of services in it.

Page 40

1    Q.  Okay.
2    A.  The scope of services was, I believe, cut
3  and paste into the declaration.
4    Q.  Okay.  How did B. Riley come to be hired for
5  this engagement?
6    A.  Ian was -- Ian Ratner was contacted by an
7  attorney at Goldstein McClintock, I think in Chicago,
8  who -- yes, that's -- I believe how it -- Ian -- Ian
9  would know exactly how -- how we got their -- the
10  referral.  But that's my belief, it came through --
11  through that law firm in Chicago.
12   Q.  Is it the case that A-CAP requested that
13  Wander and Pasko resign from their positions at 777?
14   A.  I don't know who made that request.  I know
15  everybody wanted them to resign, including your
16  clients.
17   Q.  And that law firm that you've identified,
18  what -- what was the law firm again?
19   A.  Goldstein McClintock.
20   Q.  Who retained them?
21   A.  I believe they're working for A-CAP in a
22  restructuring role.
23   Q.  And why do you think Leadenhall wanted
24  Wander and Pasko to resign?
25   A.  I don't want to be flippant, but read the

Page 41

1  allegations in the litigation.  I -- I think it's
2  obvious they -- they wanted them out.
3    Q.  Did you hear that anywhere else?
4    A.  In conversations that we've had with
5  counsel, Roger Schwartz who's now at Paul Hastings.
6  He always questioned why -- why Josh and Steve were
7  still on the payroll.  I shouldn't say always.
8  Frequently asked the question.
9    Q.  Okay.  Anywhere -- any other source for
10  that?  Just thinking, I don't know that our New York
11  complaint says Leadenhall wanted them out.
12   A.  It doesn't.
13   Q.  Okay.
14   A.  I -- I received that from counsel.
15   Q.  Okay.
16       Okay.  So A-CAP retained this Chicago law
17  firm.  Your understanding is that that law firm
18  reached out to Mr. Ratner?
19   A.  And others.  They were interviewing
20  potential CROs, COO.
21   Q.  They were like a search firm?
22   A.  Correct.  They're a law firm.
23   Q.  Okay.  But their task was to identify
24  restructuring --
25   A.  Correct.

**Office Phone:** 954-712-2600
**Email:** info@ucrinc.com
**Website:** ucrinc.com

Page 42

1    Q.   -- professionals?
2    A.   Correct.
3    Q.   Okay.  Were you involved in the --
4        MR. STARR:  Well, withdrawn.
5 BY MR. STARR:
6    Q.   Were there interviews to decide who would be
7 hired as restructuring advisors?
8    A.   I was not part of those interviews.
9    Q.   Okay.  Do you know who was?
10    A.   I believe Ian.  I don't know who Ian spoke
11 to, but he was part of the interview process.
12    Q.   Okay.  And which entity or person actually
13 retained B. Riley for this engagement?
14    A.   I believe it's 777 Partner and its
15 affiliates, but I would -- I would have to go back and
16 look at the engagement letter.
17    Q.   Okay.  You mentioned there is an engagement
18 agreement.  When was that signed?
19    A.   May 3rd, 2024.
20    Q.   Has it been renewed?
21    A.   There's no end date to it.
22    Q.   That initial agreement wasn't set to expire
23 in December of last year?
24    A.   No.
25    Q.   And when did you personally get involved

Page 43

1 with this particular engagement?
2    A.   I believe I showed up -- I think May 3rd was
3 a Friday, and I showed up at the offices of 777 of
4 Wednesday of the following week.  It might have
5 been -- I think that's the 8th, somewhere around
6 there.
7    Q.   Were you involved in negotiating any of the
8 terms of the engagement agreement or the scope of
9 services?
10    A.   I believe I was -- helped put together the
11 engagement letter, so it would have been probably in
12 that last week prior to getting engaged that I would
13 have been involved in putting that together.
14    Q.   And who were you working with that on or who
15 was your -- your counterparts or colleagues on that?
16    A.   It would have been Ian Ratner.
17    Q.   And on the other side?
18    A.   I don't recall who was on the other side
19 working on it.
20    Q.   How is your compensation or B. -- let me
21 break --
22        MR. STARR:  Withdraw that question.
23 BY MR. STARR:
24    Q.   How is your compensation structured from 777
25 Partners?

Page 44

1    A.   We're paid hourly, similar to the law firms.
2    Q.   Okay.  And what's your rate?
3    A.   My rack rate is 850.  I know we discounted
4 it for this.  I'm -- I forget.  It's either 775 or
5 795.
6    Q.   How many hours do you think you've got into
7 this thing?
8    A.   More now.  Currently I'm probably at about
9 100 hours billable a month.  Obviously I'm working
10 more than that, but earlier on it was more.
11    Q.   Okay.  How many B. Riley professionals are
12 working for 777 and its affiliates?
13    A.   Currently?
14    Q.   Yes, currently.
15    A.   I'll preface to say working on the
16 engagement as opposed to working for 777.  They're B.
17 Riley employees.
18        I'm just estimating.  Probably 10 to 12 per
19 month, ranging from 5 hours a week to 140 hours a
20 week.  Not a week, a month.  Sorry.
21    Q.   Okay.  And was the number of employees
22 and/or hours higher at the beginning of the
23 engagement?
24    A.   Yes, it was.
25    Q.   Could you estimate about how much activity

Page 45

1 was happening there?
2    A.   Double the hours.  Maybe 50 percent more
3 people.
4    Q.   So like 17 to 20 people --
5    A.   Correct.
6    Q.   -- something?  Okay.
7    A.   Again, those are just estimates.
8    Q.   So in a typical month, what would your
9 invoice for this engagement be?
10    A.   We're currently running around 350 to
11 400,000 a month.
12    Q.   And who pays those invoices?
13    A.   777 pays and Suttonpark pays.
14    Q.   Are they being reimbursed by any other
15 entity?
16    A.   No.
17    Q.   And that's always been -- have they always
18 paid your bills?
19    A.   Most of the time 777 has paid the bills.
20 Now that Suttonpark has stabilized, Suttonpark pays
21 part of it.
22    Q.   These companies are cash -- are or have been
23 cash strapped, correct?
24    A.   They've been cash strapped to originate new
25 business.  Structured settlement with finance --

UNIVERSAL
COURT REPORTING

Office Phone: 954-712-2600
Email: info@ucrinc.com
Website: ucrinc.com

777 PARTNERS LLC and SUTTONPARK CAPITAL LLC vs LEADENHALL CAPITAL
Shapiro, Mark on 03/05/2025                    Pages 46..49

**Page 46**

1 specialty finance companies need a big balance sheet
2 to -- to originate new business. So in that regard
3 they've been cash strapped. Certain portfolios
4 companies are actually -- were actually generating
5 cash and others were losing cash. It's a mixed bag.
6    **Q. Didn't you testify earlier that you had to**
7 **stabilize being able to make payroll?**
8    A. Correct.
9    **Q. So how were they getting the money to pay B.**
10 **Riley's bills? What was the source of that funding?**
11    A. Some were -- some came through asset sales
12 and other times A-CAP is funding the business as a
13 senior lender -- has funded the business as a senior
14 lender and continues to fund the business as a senior
15 lender.
16    **Q. How does that arrangement with A-CAP work?**
17    A. We have a funding agreement up to
18 $25 million. We prepare cash forecasts. We are
19 trying to manage the cash. You know, like any other
20 engagement we have, we -- it's a push and a pull with
21 senior lenders as to try to minimize disbursements and
22 cash flows. And we work with them like we would with
23 any other senior lender. It's a -- it's a weekly
24 occurrence of drawing money. Do we need money? Do we
25 not need money? Is anything being sold this week?

**Page 47**

1 It's a -- it's -- it's a constant effort.
2    **Q. So is A-CAP involved in business decisions**
3 **that B. Riley makes at 777?**
4    A. No.
5    **Q. Do they have any rights to direct B. Riley's**
6 **decisions in this matter?**
7    A. It's a good question whether they have
8 right -- I don't know. That would probably be a legal
9 conclusion. They don't. I don't know if they have
10 the right to. And I say that only because of the
11 exercise of their proxies.
12    **Q. Have you communicated with folks from A-CAP?**
13    A. Yes.
14    **Q. Regularly?**
15    A. Periodically.
16    **Q. Who have you spoken with from A-CAP?**
17    A. Kenny King. Jill Gittleman (phonetic).
18 Carson, I forget who Carson's last name is. Those are
19 my primary contacts if I'm speaking with A-CAP.
20    **Q. And what do you -- what have you discussed**
21 **with Mr. King?**
22    A. Mostly funding.
23    **Q. Have you discussed any particular business**
24 **decisions with Mr. King?**
25    A. If they have an interest in a business, you

**Page 48**

1 know, we've sold certain businesses. For instance,
2 FFI was a bankruptcy that had a stocking horse that
3 was a joint venture of SILAC and A-CAP. So I would've
4 talked to Kenny about that potential sale. Most of
5 the time spent with Kenny is discussed about how to
6 cut costs and if he's funding businesses, why are we
7 still funding these businesses. It's taken a while to
8 sell some of those businesses. And most of those
9 discussions are, when are you going to sell it? Why
10 is it not sold yet? Why isn't this person terminated?
11 Those types of things.
12    **Q. Okay. And what have you discussed with Jill**
13 **Gittleman?**
14    A. My most recent conversations was -- with
15 Jill was over our insurance policies, to make sure
16 that we had sufficient insurance. It's very
17 expensive. It's $3 million for insurance policies and
18 they wanted -- I think it -- she wanted to understand
19 why it was so high, what we were doing. So we had
20 that discussion with her.
21    **Q. Why was Ms. Gettman involved in an insurance**
22 **policy discussion?**
23    A. Probably she was referred to by Mr. King,
24 that essentially maybe he didn't accept my explanation
25 as to why insurance was too -- so high and he wanted a

**Page 49**

1 second opinion.
2    **Q. Well, why is A-CAP involved at all in**
3 **insurance policies?**
4    A. It -- it came in the discussion of cash
5 flows and cash forecasts and putting in a line item
6 for $3 million for insurance it stands out to any
7 senior lender and sometimes warrants a discussion.
8    **Q. Do they have to -- sorry, does A-CAP have to**
9 **approve cash outlays?**
10    A. No.
11    **Q. Never?**
12    A. No.
13    **Q. And then you missed -- mentioned a Carson**
14 **from A-CAP?**
15    A. Carson was -- is their analyst who had
16 worked on some of the portfolio companies from their
17 perspective, under -- trying to get their
18 understanding with -- of -- of the operations, the
19 values, things like that, what they could potentially
20 be worth. Similar to what Province is now doing for
21 Leadenhall. They -- they don't have an outside
22 advisor. Carson tends to fill that role.
23    **Q. And what do you discuss with Carson?**
24    A. Oh, I haven't talked to Carson in a while.
25 We talked to him about -- about the Tammy transaction.

**UNIVERSAL COURT REPORTING**

**Office Phone:** 954-712-2600
**Email:** info@ucrinc.com
**Website:** ucrinc.com

777 PARTNERS LLC and SUTTONPARK CAPITAL LLC vs LEADENHALL CAPITAL
Shapiro, Mark on 03/05/2025                                Pages 50..53

Page 50

1 We talked to Carson about Uown. They had a -- you
2 know, A-CAP wanted to -- was interested in -- in
3 potentially purchasing Uown. We ended up hiring a
4 banker, a third-party banker to -- to market those
5 companies. A-CAP did buy it, but we marketed it
6 through a banker. But those -- I probably -- I had
7 some discussions early on with Carson about Uown and
8 their proposal and why I may have thought it wasn't
9 sufficient or things like that.
10    Q.   Do you know whether B. Riley notified
11 Leadenhall the Tammy transaction in advance?
12    A.   Yes, they did. We did.
13    Q.   Did the terms of the transaction change
14 after Leadenhall was notified?
15    A.   They were changing. I think we had one
16 discussion where it was going to be -- it -- this --
17 the overall structure I don't think changed
18 dramatically, but it got more specific. And as we got
19 more information, we were able to -- it morphed a
20 little bit. I mean, it took a while to put that
21 transaction together. I think in the end we were able
22 to enhance the value considerably from where it
23 started out. But I do know it -- it changed a few
24 times.
25    Q.   All right.

Page 51

1         MR. STARR: Mark this as -- let's just do
2 Shapiro Exhibit 1. We can -- I don't want to keep
3 number sequentially.
4         Shapiro Exhibit 1.
5         (Shapiro Exhibit 1 was marked for
6 identification.)
7 BY MR. STARR:
8    Q.   Okay. Mr. Shapiro, you've been given
9 Shapiro Exhibit 1. Do you recognize that document?
10    A.   (Perusing.)
11         Yes, I believe this is my declaration in the
12 New York matter.
13    Q.   Yes.
14         And you submitted that last year, right?
15    A.   Correct.
16    Q.   If you turn to Paragraph 9 of this document.
17    A.   (Complying.)
18    Q.   Do you see the paragraph that lists your --
19 the scope of your documents --
20    A.   Yes (perusing).
21    Q.   -- there?
22    A.   Yes.
23    Q.   Is that copied and pasted from the scope of
24 work?
25    A.   I believe it is. I'm not -- I'm not sure if

Page 52

1 everything was pulled, but I know these bullet points
2 would have come from the scope of work (perusing).
3    Q.   And this is a complete and accurate list of
4 your duties, or is it?
5    A.   I believe it is, yes.
6    Q.   Okay. So you've been in control of 777 for
7 almost a year, right?
8    A.   10 months, yes.
9    Q.   Yes.
10         What are the most significant changes or
11 decisions you've made in that time period?
12    A.   Well, I think the -- the first part of the
13 engagement was essentially to stabilize the cash flows
14 and -- and manage the risk and manage the -- you know,
15 essentially stop the bleeding. There was a lot going
16 on. I think after that we're -- we were in the
17 assessment phase of -- of various portfolio companies,
18 trying to figure out exactly what things are worth,
19 have a plan of attack for what we're going to do with
20 some of these entities, start to act on some of those
21 entities, raise cash, and then hopefully work with the
22 professionals and attorneys to hopefully bring some
23 settlement to these -- this litigation. But that -- I
24 don't think we've been successful in that.
25         But if you look at this -- this list of

Page 53

1 duties, we definitely have our arms around the
2 operating results. We've -- we've managed cash.
3 We've developed financial projections. I think we've
4 actually given a long-time cash flow forecast to -- to
5 Leadenhall. We're analyzing the various business
6 seg- -- segments. That's an ongoing exercise.
7 Looking at, again, cash forecasts, restructuring
8 alternatives. You know, this is -- these are things
9 that we're working on every day.
10    Q.   And if you go to Paragraph 3 here, do you
11 see where it says that B. Riley was retained to, among
12 other things, "resolve outstanding disputes involving
13 the 777 Entities, including the instant dispute"?
14    A.   Yes (perusing).
15    Q.   And so that would be within the scope of B.
16 Riley's work as well, right?
17    A.   Yes.
18    Q.   Okay.
19    A.   We are trying.
20    Q.   And you've served in a similar capacity for
21 other distressed companies, right?
22    A.   Yes, I have.
23    Q.   Many times?
24    A.   Yes, I have.
25    Q.   Could you ballpark about how many companies

**UNIVERSAL**
**COURT REPORTING**

Office Phone: 954-712-2600
Email: info@ucrinc.com
Website: ucrinc.com

777 PARTNERS LLC and SUTTONPARK CAPITAL LLC vs LEADENHALL CAPITAL
Shapiro, Mark on 03/05/2025                              Pages 54..57

Page 54

1 you've done that for?
2      A.   Probably close to two dozen companies.
3      Q.   When you come into a distressed company, is
4 there a playbook that you typically involve -- you
5 typically follow?
6      A.   It -- it's not a formalized playbook, but I
7 like to say 80 percent of what we see is consistent
8 from company to company.
9      Q.   Mm-hmm.
10     A.   There is -- there is distress.  There's
11 issues with cash flows.  There's some sort of mistrust
12 going on between lenders and -- and owners.  Whether
13 it's a public company or private company, whether it's
14 private equity or whether it's an entrepreneur, all
15 those things differ.  But the industries are
16 different.  Your revenue control is different.  Your
17 regulations are different.  But a lot of what we see
18 is the same.
19     Q.   And are there similar steps -- although
20 different industries, are there similar steps that you
21 take just to assess what needs to be done from the
22 get-go?
23     A.   I would say so, yes.
24     Q.   What do you do?
25     A.   Get our arms around the cash is number one.

Page 55

1 Figure out -- try and put together a cash forecast as
2 quick as possible.  Identify key personnel, who are --
3 who are the folks.  You're coming in blind.
4      Q.   Yep.
5      A.   And there are good people and bad people at
6 every company, and trying to assess who you can -- who
7 you can trust, who you can use, who you can work with
8 is very critical to -- to engagements like this.
9 Understanding the politics, if you will, of the owners
10 and the lenders and where -- just how much anxiety is
11 there, that plays into the -- the steps as well.  I
12 would say those are my -- my top three.
13     Q.   Have you advised or managed a company where
14 there were allegations of fraud against the company's
15 management?
16     A.   Yes.
17     Q.   How many times?
18     A.   I think it's three or four.
19     Q.   And what do you do when you're in that
20 position?  Do you try to assess whether fraud has been
21 perpetrated by management?
22     A.   Ultimately -- most of the times that is
23 later on down the road.  It depends on how things go.
24 We -- we -- we come in fresh.  We try not to make a
25 judgment whether or not who's right, who's wrong.

Page 56

1 I think we come in with a little bit of juandicide
2 (phonetic), just to say, hey, there's something's
3 here.  Let's -- let's watch out and see if we see
4 anything.
5      But if we're making that determination,
6 that's more of a forensic exercise.  And depending on
7 the case, whether it's in bankruptcy, whether it's out
8 of bankruptcy.  At some point that -- that examination
9 will be done and it'll be different in each case.  But
10 most of the time that's not day one.
11     Q.   And -- and when you get around to it, that's
12 a forensic accounting exercise?
13     A.   A lot of times it's forensics.
14     Q.   Okay.  Do you interview employees?
15     A.   Sometimes it's me.  A lot of times I'll
16 bring in our forensic -- we have -- half of our firm
17 does forensic litigation support type work.  And I'll
18 bring in the people who do that every day for a
19 living.
20     Q.   So would -- would you or someone on your
21 team interview former management --
22     A.   Yes.
23     Q.   -- for instance, to assess whether fraud has
24 been committed?
25     A.   Yes.  And a lot of times that's done with

Page 57

1 counsel, with company counsel.
2      Q.   Do you retain outside counsel for B. Riley
3 or do you use the company's preexisting outside
4 counsel?
5      A.   We would typically use the counsel that was
6 engaged to help us on the company side.
7      Q.   So like Smith Gambrell?
8      A.   Typically it would be the firm, like Smith
9 Gambrell.
10     Q.   I just mean in this -- in this scenario,
11 Smith Gambrell is --
12     A.   Mostly likely if we -- if we were going to
13 do a fraud information, there are -- there are --
14 there are two restructuring firms working for us right
15 now.  There's Smith Gambrell and Berger Singerman.  It
16 would likely be one of those firms doing the forensic
17 exercise.
18     Q.   Mm-hmm.
19     And when you're attempting to determine
20 whether fraud has occurred, do you or does your team
21 review pending litigation?
22     A.   Yes.  We look at all the facts and
23 circumstances.
24     Q.   Do you or your team use any specialized
25 accounting software to analyze financial data?

**UNIVERSAL**
**COURT REPORTING**

**Office Phone:** 954-712-2600
**Email:** info@ucrinc.com
**Website:** ucrinc.com

777 PARTNERS LLC and SUTTONPARK CAPITAL LLC vs LEADENHALL CAPITAL
Shapiro, Mark on 03/05/2025                                    Pages 58..61

Page 58

1    A.  I -- yes, they do.
2    Q.  Do you know what that software is?
3    A.  I don't.  I know we have various packages.
4    Q.  Have you ever served as a restructuring
5 officer or advisor for a company where the allegations
6 of fraud on the part of management were found to be
7 credible?
8    A.  Yes.
9    Q.  When was that?
10    A.  I was in a case in Utah in 2017 and '18
11 called Alliance Health.  We came in after the DOJ
12 raided the offices and took all their laptops and
13 servers.
14    Q.  So how did you determine that fraud had
15 occurred?
16    A.  (No verbal response given.)
17    Q.  Was it the DOJ raid?
18    A.  I think it was the DOJ raid.
19    Q.  Did you make an independent assessment and
20 reach an independent conclusion?
21    A.  I don't think we had to on that one.  That
22 was a bankruptcy and we were selling the -- the assets
23 at a 363 sale.  Ultimately -- yeah, I don't think we
24 made a determination.  There weren't too many funds to
25 do an independent investigation.

Page 59

1    Q.  Is that the only time that you can think of
2 in your career?
3    A.  There was another one called Lockwood, that
4 there were allegations of fraud back and forth between
5 Wells Fargo and the owner of the company.  We were
6 never able to determine what -- what happened there.
7 Again, it was in bankruptcy.  It went to the trustee.
8 I wasn't the trustee, so I don't know what happened
9 there.
10    Q.  Okay.  In situations where there are
11 allegations of fraud on the part of management or
12 former management, who would B. Riley typically be
13 hired by in such situations?  And what I mean by -- is
14 it, you know, by the company -- by the company's old
15 management?  By the company's new management?  By
16 creditors?  By outside counsel?
17    A.  It's different.  Sometimes -- sometimes
18 existing management in the -- is there and you're
19 retained by existing management.  That's a little bit
20 of a difficult situation when they're -- the
21 allegations are against them.  Sometimes management
22 has been replaced and we're -- we're brought in by new
23 management.  Other times there's independent directors
24 who are put in with existing management and a
25 committee or an independent manager would bring us in

Page 60

1 in situations like that.
2    Q.  And does your approach to ferreting out
3 fraud differ depending on who retains you?
4    A.  Typically no.
5    Q.  Okay.  Have you investigated the allegations
6 of fraud at 777 or Suttonpark?
7    A.  777, no.  At Suttonpark, we've attempted --
8 we haven't made a determination on fraud or what
9 happened.  We're trying to look at the collateral
10 basis in determining whether or not there's shortfall.
11 So kind of half of an investigation.
12    Q.  Okay.
13    A.  We haven't gone back and figured out how it
14 happened and why it happened and who did what.
15    Q.  So what have you done then to investigate
16 the alleged fraud at Suttonpark?
17    A.  To find out what happened and who did what?
18    Q.  Yes.  I'm asking what have you -- what have
19 you done --
20    A.  We've done -- we've -- we've --
21    Q.  -- investigatively?
22    A.  Investigatively we've tried to validate
23 the -- the record -- books and records of the company
24 to determine whether assets either exist or purchased
25 or double pledged.  Jim Howard and Teresa are the --

Page 61

1 Teresa Licamora are -- they're point on that and --
2 and they are the ones who are running that --
3        MR. MORLAN:  Audio cut off.
4        THE WITNESS:  Audio cut off.
5        MS. NATHANSON:  Sounds fine to me.
6        MR. STARR:  Jim Howard -- he said Jim Howard
7    and Teresa Licamora were running point.
8 BY MR. STARR:
9    Q.  Can you please continue?  Sorry.
10    A.  They -- they were the ones actually doing
11 the investigation, so it's a little bit of secondhand
12 information from me.  They -- but I'm -- they report
13 up, and I understand that that's the -- the -- what
14 they have been doing is trying to validate the -- the
15 bar and basis.
16    Q.  And why haven't you investigated fraud at
17 777?
18    A.  It's priorities.  It's -- it's cost.  You
19 know, we're trying to manage costs.  At some point,
20 you know, if -- if those -- if those investigations
21 are to be funded, we'll do those investigations.
22 We're starting to do more actually.  We were actually
23 starting to ramp up the investigations in 777 Re prior
24 to Leadenhall exercising their proxy.  I assume
25 Leadenhall is going to take over that investigation.



Office Phone: 954-712-2600
Email: info@ucrinc.com
Website: ucrinc.com

777 PARTNERS LLC and SUTTONPARK CAPITAL LLC vs LEADENHALL CAPITAL
Shapiro, Mark on 03/05/2025                    Pages 62..65

Page 62

1    But to the extent we're needed on that, that
2 was something that we were -- that was actually the
3 number one priority of where we were going to with the
4 investigation was 777 Re.
5    Q.   Who sets the priorities in terms of whether
6 to investigate or not or focus on some other project?
7    A.   Ian and me in collaboration with counsel.
8    Q.   You're aware that creditors have filed
9 lawsuits asserting fraud claims against 777 other than
10 just Leadenhall, right?
11    A.   Yes.  ING.
12    Q.   I'm sorry, are there any others?  Are you
13 aware of any others?
14    A.   I'm -- I'm sure there are others out there.
15 I -- I can't recall at this point in time.
16    Q.   Have you heard of Obra Capital Management?
17 Obra Capital, O-B-R-A Capital Management?
18    A.   No, I have not.
19    Q.   Have you heard of the MALT Family Trust
20 case?
21    A.   Yes.
22    Q.   Okay.  What's your understanding of that
23 case?
24    A.   That involves assets that are -- a company
25 called Phoenicia.  I mentioned before that ass- --

Page 63

1 assets of the GO7 entities were -- were sold.  Timothy
2 O'Neil-Dunne was a principal.  And he's the -- I think
3 the beneficiary of the MALT Family Trust.  And there
4 were allegations of -- of breach of fiduciary duties,
5 I believe, related to 777 and how they managed that
6 company and allegedly destroyed value after he sold
7 the company to 777.  It's a tech -- airline technology
8 company.
9    Q.   And you haven't investigated the accusations
10 in any of those cases --
11    A.   No.
12    Q.   -- right?  Okay.
13    If there were funding for an investigation
14 of fraud at 777 Partners, would you agree that it --
15 an investigation should be done?
16    A.   Yes.
17    Q.   And why is that?
18    A.   Again, we're fiduciaries.  We're supposed to
19 look out for all stakeholders.  There's allegations of
20 fraud.  I think we have a duty to explore those
21 allegations.
22    Q.   Have you or has your team investigated any
23 claims that 777 may have against A-CAP?
24    A.   That would've been part of the investigation
25 into 777 Re, which now that investigation is

Page 64

1 controlled by Leadenhall.
2    Q.   The investigations are controlled --
3    MR. MORLAN:  Can you speak up, please, sir?
4 I'm having trouble hearing you.  You're trailing
5 off at the end.
6    THE WITNESS:  We don't control -- Leadenhall
7 exercised their proxy on 777 Re.  We were hoping
8 to take back that company so we would have access
9 to the books and records to try and figure out
10 what exactly happened when the recapture was done.
11 BY MR. STARR:
12    Q.   So when you say Leadenhall controls that
13 investigation, you mean the -- the -- the books and
14 records that --
15    A.   Correct, they control the books and records.
16    Q.   Okay.  So setting aside 777 Re, has you or
17 your team investigated any claims 777 may have against
18 A-CAP -- 777 Partners may have against A-CAP?
19    A.   Not at this time.
20    Q.   No?
21    Do you plan to?
22    A.   I don't know right now.  We've looked at the
23 documents and how they've exercised their rights, and
24 so far we haven't made -- at least counsel has looked
25 through those, and we haven't seen anything that

Page 65

1 they'd done that they -- since we've been in -- they
2 haven't done anything since we've been in here that
3 counsel doesn't believe they were entitled to do.
4    Q.   Who is counsel in this instance?
5    A.   Smith Gambrell.
6    Q.   Okay.  Turning back to Suttonpark, the
7 Suttonpark investigation rather.  Do you know whether,
8 as part of that investigation, records in the MPFin
9 system have been reviewed?
10    A.   I believe they have.
11    Q.   Do you know what the MPFin system is?
12    A.   Yes.  It's an enterprise system for
13 Suttonpark.
14    Q.   It's for tracking --
15    A.   Tracking -- for tracking assets in -- in the
16 various entities.
17    Q.   Okay.  And receivables --
18    A.   Yes.
19    Q.   -- and collateral securing loans?
20    A.   Correct.
21    Q.   Okay.  And in connection with that
22 investigation, was counsel involved in that
23 investigation?
24    A.   Again, Jim was running that.  I don't know
25 to what extent he was -- he had counsel involved.



Office Phone: 954-712-2600
Email: info@ucrinc.com
Website: ucrinc.com

777 PARTNERS LLC and SUTTONPARK CAPITAL LLC vs LEADENHALL CAPITAL
Shapiro, Mark on 03/05/2025                                    Pages 66..69

Page 66

1    Q.  Have the findings -- have any findings of
2 that investigation been memorialized?
3    A.  I don't know.
4    Q.  Well, have you learned of any findings?
5    A.  Yes.
6    Q.  How did you learn of those findings?
7    A.  Through e-mails, conversations informally.
8 I don't know if there's a -- I don't believe
9 there's been a formal report done.
10   Q.  Okay.  Who are those e-mails between?
11   A.  It would vary.  It would be Jim Howard, Ian
12 Ratner, myself, counsel, Teresa Licamora, Chris --
13 internal counsel Chris O'Reilly, Mollie Wander, Jon
14 Walder.
15   Q.  Is anyone from Cadwalader, Wickersham & Taft
16 on those mails?
17   A.  I don't -- I don't know.
18   Q.  What about Jill Gettman, was she on any of
19 those e-mails?
20   A.  Yeah, I don't know.
21   Q.  Well, you received them, right?
22   A.  I would have received them, yes.
23   Q.  But you can't recall?
24   A.  I can't recall.
25   Q.  Okay.  Did you ever have any discussions

Page 67

1 about the scope of -- or how to conduct that
2 investigation into fraud at Suttonpark?
3    A.  No.  Jim would have run it.  Jim's a former
4 banker and has done many fraud examinations.
5    Q.  So you didn't participate in those
6 discussions?
7    A.  I don't believe I did.
8    Q.  Okay.  Do you know whether any investigation
9 was done into an alteration or deletion of data in the
10 MPFin system prior to August 2024?
11   A.  I don't know.
12   Q.  Okay.  Are you aware of any investigations
13 into 777 by federal or state authorities?
14   A.  Yes.
15   Q.  Which government agencies are you --
16   MR. STARR:  Withdrawn.
17 BY MR. STARR:
18   Q.  Which government agencies are investigating
19 777 to your knowledge?
20   A.  Directly, I believe the Department of
21 Justice.  Indirectly, potentially the SEC.
22   Q.  Okay.  Have you had any contact with anyone
23 from the DOJ or SEC?
24   A.  I have not.
25   Q.  Okay.

Page 68

1    MR. STARR:  Do y'all want to take a break?
2    THE WITNESS:  I would love to.
3    MR. PELLEGRINO:  Sure.  Thank you.
4    MR. STARR:  Off the record.
5    THE VIDEOGRAPHER:  Okay.  Going off the
6 record.  The time is 11:38.
7    (A recess was taken.)
8    THE VIDEOGRAPHER:  Okay.  We're back on the
9 record.  The time is now 11:54.
10 BY MR. STARR:
11   Q.  Okay.  Mr. Shapiro, when did you first hear
12 of Saiph Consulting?
13   A.  It would have been when Leadenhall wanted to
14 retain Saiph for the collateral audit on the
15 Suttonpark collateral.
16   Q.  When was that?
17   A.  I believe it was June of 2024, somewhere
18 around June.  Might have been late May.
19   Q.  So you're not aware that Leadenhall tried to
20 hire Saiph in 2023?
21   A.  I've heard that after the fact, but I wasn't
22 aware at the time.
23   Q.  Okay.  Have you determined whether -- well,
24 what have you heard after the fact about that?
25   A.  I've just seen in the -- in the pleadings

Page 69

1 and documents in this case that Leadenhall attempted
2 to retain Saiph back in 2023.
3    Q.  Okay.  And did you ever work directly with
4 Saiph yourself?
5    A.  No.
6    Q.  In addition to the audit that Saiph
7 performed for Leadenhall, Saiph also performed a
8 collateral audit for Northwestern Mutual; is that...
9    THE COURT REPORTER:  Sorry, say it again.
10 BY MR. STARR:
11   Q.  In addition to the audit Saiph performed for
12 Leadenhall, Saiph also performed a collateral audit
13 for Northwestern Mutual Life, right?
14   A.  What time period?
15   Q.  In the same time period, summer 2024.
16   MR. PELLEGRINO:  I'm going to object to
17 form.
18   THE WITNESS:  I know they were engaged to
19 perform that audit.
20 BY MR. STARR:
21   Q.  Do you know whether it went forward?
22   A.  It went forward.  I'm not sure if it was
23 completed.
24   Q.  Okay.  Do you know Paul Kosinski?
25   A.  I've never met Paul.

**UNIVERSAL**
**COURT REPORTING**

**Office Phone:** 954-712-2600
**Email:** info@ucrinc.com
**Website:** ucrinc.com

777 PARTNERS LLC and SUTTONPARK CAPITAL LLC vs LEADENHALL CAPITAL
Shapiro, Mark on 03/05/2025                    Pages 70..73

Page 70

1    Q.   Have you ever communicated with
2 Mr. Kosinski?
3    A.   I believe we may have been on e-mails
4 together, but I'm not sure if I've ever been on a
5 phone call with him.
6    Q.   Do you know Lauren Boersig (phonetic)?
7    A.   I do not.
8    Q.   Do you know how many sets of credentials
9 were issued to Saiph by 777 Partners in connection
10 with the Leadenhall audit?
11        MR. PELLEGRINO:  Objection to form.
12 BY MR. STARR:
13   Q.   You can answer.
14   A.   I understand there were two credentials
15 provided.
16   Q.   Do you know which Saiph personnel were
17 provided credentials?
18   A.   Paul Kosinski and Lauren, I -- I don't know
19 her --
20   Q.   Boersig.
21   A.   Boersig.
22   Q.   And where did you get that understanding?
23 Where do you learn those facts?
24   A.   I learned those facts from some of the
25 pleadings in this case and the expert report.

Page 71

1    Q.   Were you aware of those facts -- so you
2 weren't aware of those facts before the case was
3 filed?
4    A.   Before which case was filed?
5    Q.   This case, the case 777 and Suttonpark had
6 filed against Leadenhall.
7    A.   No, I was not aware of that.
8    Q.   Do you know when Davis resigned from 777
9 Partners?
10   A.   I understand he resigned in April of 2024.
11   Q.   That was before B. Riley was retained,
12 right?
13   A.   Correct.
14   Q.   Did you ever meet Mr. Davis?
15   A.   I have not.
16   Q.   Have you ever communicated with Mr. Davis?
17   A.   No.
18   Q.   Was it your idea to name Leadenhall in this
19 lawsuit?
20   A.   It was a group decision.
21   Q.   Whose idea was it?
22   A.   It would have been myself, Ian Ratner,
23 external counsel at Smith Gambrell, and internal
24 counsel at 777.
25   Q.   So which counsel at Smith Gambrell

Page 72

1 specifically?
2    A.   It would have been David Pellegrino, John
3 McCarthy, Shelly DeRousse.
4    Q.   But you provided input on the decision to
5 name Leadenhall in this lawsuit?
6    A.   Yes, amongst others.
7    Q.   How did you make that decision if you didn't
8 know any of the facts of this case before it was
9 filed?
10        MR. PELLEGRINO:  Objection to form.
11 BY MR. STARR:
12   Q.   You can answer.
13   A.   Can you say that again?
14   Q.   Yeah.
15        How did you make that decision to name
16 Leadenhall in this lawsuit if you didn't know any
17 facts about the case before it was filed?
18        MR. PELLEGRINO:  Same objection.
19        THE WITNESS:  But we did know the facts
20 before.  I didn't say...
21 BY MR. STARR:
22   Q.   Well, I -- I --
23   A.   If I said I didn't know the facts before the
24 case, I -- I must have misspoke, but we didn't -- I
25 did know the facts for the case before it filed.

Page 73

1    Q.   I asked you earlier where you got your
2 understanding of the facts regarding credentials
3 issued to Saiph and Mr. Davis's resignation, and you
4 said that you learned those facts from some of the
5 pleadings in this case, correct?
6    A.   Correct.  But you asked me about two items.
7    Q.   Okay.  So -- so you investigated the
8 allegation -- did you investigate the allegations made
9 in this complaint before it was filed?
10   A.   I mean, I spoke to the company and I spoke
11 to -- either spoke to or on e-mails and correspondence
12 with the advisors who were hired to do the
13 investigation.
14   Q.   So who at the company did you speak to about
15 the allegations made in this complaint?
16   A.   It would have been the same three.  It would
17 have been Chris O'Reilly, Jon Walder, Mollie Wander,
18 Shawn Taheri, potentially JC Mendoza.
19   Q.   And who is Chris O'Reilly?
20   A.   Senior counsel.  He's -- he's senior --
21 general counsel at 777.
22   Q.   So just so I'm clear, did you personally
23 investigate the claims made in this case or were they
24 investigated by others?
25   A.   They were investigated by others, and they

**UNIVERSAL COURT REPORTING**

Office Phone: 954-712-2600
Email: info@ucrinc.com
Website: ucrinc.com

777 PARTNERS LLC and SUTTONPARK CAPITAL LLC vs LEADENHALL CAPITAL
Shapiro, Mark on 03/05/2025                    Pages 74..77

Page 74

1 reported up their findings.
2    Q.   So on the company side, it was those
3 individuals you just mentioned?
4    A.   Correct.
5    Q.   And then you referred to some outside
6 advisors as well?
7    A.   That would have been Eric Mazur, who was the
8 expert in this engagement, and then outside counsel.
9    Q.   And that would be Smith Gambrell?
10    A.   Correct.
11    Q.   And inside counsel?
12    A.   Correct.
13    Q.   Mollie Wander?
14    A.   Chris O'Reilly, Jon Walder. I think Mollie
15 was in some of those conversations.
16    Q.   And so on the company side, what did they
17 tell you about their investigation?
18        MR. PELLEGRINO: Objection. I'm just going
19    to warn you not to reveal the substance of
20    communications with counsel, but not everyone you
21    listed is counsel, so. And -- and to the extent
22    they provided information in connection with
23    consultation with counsel, I have to direct you
24    not to answer.
25        THE WITNESS: I...

Page 75

1        MR. PELLEGRINO: I also want to assert a
2    work product privilege.
3        MR. STARR: On what basis?
4        MR. PELLEGRINO: To the extent they were
5    conducting an investigation under direction of
6    counsel.
7        MR. STARR: Under direction of counsel?
8        MR. PELLEGRINO: Yes.
9        MR. STARR: Okay.
10 BY MR. STARR:
11    Q.   So the question is: What did you learn from
12 the nonlawyers employed by the company about the
13 claims made in the complaint?
14    A.   Well, if the investigation -- the entire
15 investigation was done at the request of counsel,
16 what -- how does -- I mean, just --
17        THE WITNESS: Should I answer? Should I not
18    answer? I don't know.
19        MR. PELLEGRINO: Let's take a break to
20    discuss privilege.
21        MR. STARR: No, let's do it -- let's do it
22    on -- let's do it on the record.
23        MR. PELLEGRINO: No, we're going to -- we're
24    going to discuss the potential for privilege. I
25    have that right, so --

Page 76

1        MR. STARR: You mean with your -- with your
2    client or with Mr. Shapiro?
3        MR. PELLEGRINO: Yes.
4        MR. STARR: Because I want to have the
5    discussion of privilege about what he's going to
6    answer on the record. But if you want to discuss
7    with him separately, that's okay.
8        I'm putting your position about privilege
9    and work product on the record is what I'm saying.
10        MR. PELLEGRINO: Right.
11        MR. STARR: So what do you want to do?
12        MR. PELLEGRINO: I would like to speak with
13    Mr. Shapiro about the possibility of privilege.
14        MR. STARR: Okay.
15        THE VIDEOGRAPHER: Okay. Going off the
16    record. The time is 12:06.
17        (A recess was taken.)
18        THE VIDEOGRAPHER: Okay. We're back on the
19    record. The time is now 12:15.
20        MR. PELLEGRINO: Mr. Starr, would you mind
21    re-asking your question?
22        MR. STARR: I'm going to ask a different
23    question.
24        MR. PELLEGRINO: Okay.
25 BY MR. STARR:

Page 77

1    Q.   So, Mr. Shapiro, earlier you testified that
2 Mr. Davis resigned or left 777 Partners before you
3 were engaged by them, right?
4    A.   Correct.
5    Q.   Do you know anything about the circumstances
6 of Davis's departure?
7    A.   Given the investigation, I checked into the
8 payroll records and talked with people at the company,
9 and they weren't aware of any disputes or reason he
10 resigned. And I wasn't able to -- no one heard of any
11 reason as to why he resigned.
12    Q.   And who did you speak with on those
13 subjects?
14    A.   It would have been the same three attorneys,
15 Chris O'Reilly, Mollie Wander, and Jon Walder who --
16 and -- and JC Mendoza who had the historical knowledge
17 of -- of his employment and his resignation.
18    Q.   And how about Mr. Taheri?
19    A.   I don't think I talked to Shawn about that
20 one.
21    Q.   Okay. Did Mr. Mendoza mention a performance
22 review that he gave to Mr. Davis prior to his
23 resignation?
24    A.   Yes.
25    Q.   What did he tell you about that?



**UNIVERSAL**
**COURT REPORTING**

Office Phone: 954-712-2600
Email: info@ucrinc.com
Website: ucrinc.com

777 PARTNERS LLC and SUTTONPARK CAPITAL LLC vs LEADENHALL CAPITAL
Shapiro, Mark on 03/05/2025                        Pages 78..81

Page 78

1    A.  I don't recall.  I -- I remember there was
2 something about an employment review, but I don't
3 remember what it was.
4    Q.  Did he say it was a negative performance
5 review?
6    A.  I don't recall.
7    Q.  Okay.  If an employer failed to pay an
8 employee a bonus that the employee felt entitled to,
9 would you describe that as a payment dispute?
10    A.  If he felt he was entitled to a bonus?
11    Q.  And got no bonus.
12    A.  I -- I would assume that would be a payroll
13 dispute.
14    Q.  A payment dispute is what I said.
15        Okay.  Do you know whether Mr. -- Mr. Davis
16 was paid a bonus in the spring of 2024?
17    A.  I don't believe it was.
18    Q.  He was not?  Okay.
19        Do you know whether Mr. Davis was an
20 employee of -- an employee of Saiph or an independent
21 contractor?
22        MR. PELLEGRINO:  Objection to form.
23        THE WITNESS:  I don't know.
24 BY MR. STARR:
25    Q.  Do you know what Mr. Davis was working on

Page 79

1 for Saiph?
2    A.  No, I don't.
3    Q.  Earlier we discussed that Leadenhall sought
4 to retain Saiph for the collateral audit back in the
5 summer of 2023.  Do you know why the audit was
6 delayed?
7    A.  I don't.
8    Q.  Okay.  Do you have an opinion on whether
9 Saiph is a competitor of 777 Partners?
10    A.  I have no opinion.
11    Q.  Do you -- do you think they are a
12 competitor?
13    A.  I really don't know what Saiph does.  I just
14 know that they were engaged for a collateral audit.
15    Q.  Okay.  Were you yourself involved in the
16 decision of whether to -- whether plaintiffs would
17 give Saiph access to its computer systems to conduct
18 the audit?
19    A.  I was.
20    Q.  And who else was involved in that decision?
21    A.  From the B. Riley side, it was myself and
22 Jim Howard primarily.
23    Q.  Okay.  Anyone from 777?
24    A.  Well, 777 was against letting Saiph be
25 retained for the audit.

Page 80

1    Q.  And who at 777 was involved in that
2 decision?
3    A.  Basically everybody.  Chris O'Reilly, Jon
4 Walder, Mollie Wander, Josh Wander, Steve Pasko, Shawn
5 Taheri, JC Mendoza.  I think that's it.
6    Q.  And what was your position on that issue,
7 whether to give Saiph access for the collateral audit?
8    A.  I'll say it's myself and Jim Howard, our
9 position.  We wanted to be supportive.  We took the
10 position that Leadenhall was entitled to information
11 in conjunction with a traditional collateral audit.
12 We believed that 777 could put the controls in place
13 to prevent Saiph from accessing data they weren't
14 otherwise entitled to, which they all expressed
15 reserv-- -- reservations about.  But Jim and I pushed
16 the issue and allowed them to have the access.  Did
17 not -- did not end up too well, but we were the ones
18 who pushed it.  Everybody at the company was against
19 letting them coming in.
20    Q.  And what kind of access did Saiph have for
21 the Northwestern Mutual audit?
22    A.  I don't know technically what access they
23 had.
24    Q.  Do you know technically what access Saiph
25 had for the Leadenhall audit?

Page 81

1    A.  I don't.  Shawn would be a better position
2 than me.
3    Q.  What's the nature of the business
4 relationship between Northwestern Mutual and
5 Suttonpark?
6    A.  Suttonpark is a servicer of a Northwest
7 Mutual portfolio, similar to what Suttonpark doing
8 for Leadenhall.
9    Q.  And what was the purpose of Northwestern
10 Mutual's audit?
11    A.  It's totally separate from Leadenhall's.
12 They were doing their own collateral audit.
13    Q.  Yes.
14        What was the purpose of North -- of that
15 collateral audit, Northwestern Mutual's?
16    A.  I don't know the specifics of what that -- I
17 haven't seen the engagement letter for that one.
18    Q.  Was Northwestern Mutual concerned about a
19 collateral shortfall?
20    A.  I don't know.  I didn't speak with
21 Northwestern Mutual.
22    Q.  Well, do you know what prompted their audit?
23    A.  I don't.
24    Q.  Are you aware of any other audits --
25 collateral audits done by other business partners of

**UNIVERSAL**
**COURT REPORTING**

Office Phone: 954-712-2600
Email: info@ucrinc.com
Website: ucrinc.com

777 PARTNERS LLC and SUTTONPARK CAPITAL LLC vs LEADENHALL CAPITAL
Shapiro, Mark on 03/05/2025                    Pages 82..85

Page 82

1 777 or Suttonpark other than Northwestern Mutual and
2 Leadenhall?
3      A.   I can't say.  Jim Howard would be a better
4 position than me to -- and Teresa to say whether or
5 not -- which audits have been done and which ones have
6 not been done.
7      Q.   Okay.  With respect to Northwestern Mutual's
8 audit, did anyone at 777 Partners object to
9 Northwestern Mutual's retention of Saiph for that
10 audit?
11     A.   I'm not aware of it.
12     Q.   So they objected to Leadenhall's --
13          MR. STARR:  Withdraw that question.
14 BY MR. STARR:
15     Q.   So 777 Partners' employees objected to
16 Leadenhall's retention of Saiph for the collateral
17 audit but not to Northwestern Mutual's retention of
18 Saiph?
19     A.   I don't know if they did or not.
20     Q.   Okay.  You're only aware of the
21 objections --
22     A.   Correct.
23     Q.   -- as to Leadenhall?
24     A.   Correct.
25     Q.   Okay.

Page 83

1          MR. STARR:  Can we mark this one as Shapiro
2 Exhibit 2.
3          (Shapiro Exhibit 2 was marked for
4 identification.)
5 BY MR. STARR:
6      Q.   Okay.  Mr. Shapiro, you've been given a
7 document marked as Shapiro Exhibit 2.  Do you
8 recognize this document?
9      A.   (Perusing.)
10     Q.   I'll -- I'll note that you are involved in
11 the thread earlier in this chain.
12     A.   (Perusing.)
13          MR. MORLAN:  I don't believe I have a copy
14 of Exhibit 2.
15          MR. STARR:  It is a document with the Bates
16 number 777(PL-FL)0000 and then 48 -- excuse me,
17 4886.  It is an e-mail thread with the subject
18 line "Noah working on MPFin?" from June 2024.
19 This was introduced at the deposition of Shawn
20 Taheri as well, if you have those exhibits handy.
21          THE WITNESS:  I'm on -- I've seen portions
22 of this string, not the whole thing.
23 BY MR. STARR:
24     Q.   And so this -- this -- this is an e-mail
25 chain.  And it -- so it starts -- the earliest e-mail

Page 84

1 is in the back, on the back page, right?
2      A.   Yes (perusing).
3      Q.   And it begins with an e-mail from
4 Mr. Taheri, right?  He's -- he's stating that -- and
5 you're copied on this part of the e-mail, right?
6      A.   Yes (perusing).
7      Q.   And Mr. Taheri says that Paul Kosinski and
8 Noah Davis just walked into his office and he's asking
9 about access for Mr. Davis.  Do you see that?
10     A.   Yes, I do (perusing).
11     Q.   If you go to the next page.
12     A.   (Complying.)
13     Q.   A few e-mails up, there's one from
14 Mr. Howard, middle of the page.  Mr. Howard says that
15 Davis is "here to generate a list of payees for all
16 the checks going to Wells."  Do you see that?
17     A.   Yes (perusing).
18     Q.   What is Mr. Howard referring to, "list of
19 all payees for checks going Wells"?  Do you know?
20     A.   I don't know.  It was part of the collateral
21 audit that was needed.
22     Q.   And he says that's "what we need to give M&T
23 to fix that problem."
24          What -- do you know what that means?
25     A.   No.

Page 85

1      Q.   Do you know what M&T is?
2      A.   No.
3      Q.   Okay.  And then in the next e-mail up,
4 Mr. Mendoza -- Mr. Mendoza says that Mr. Davis "left
5 on not so favorable terms."  Do you see that?
6      A.   I do (perusing).
7      Q.   And he says that "Granting access to former
8 employees that left unhappy is risky," right?
9      A.   Yes (perusing).
10     Q.   Okay.  Do you know -- and you mentioned you
11 spoke with JC Mendoza about this case, correct?
12     A.   I did.
13     Q.   Okay.  And he worked for 777 Partners in
14 April 2024 when Davis left, right?
15     A.   Yes.
16     Q.   In fact, Mr. Davis reported to Mr. Mendoza,
17 right?
18     A.   I believe he did.
19     Q.   Well, he gave him a performance review?
20     A.   Yes.
21     Q.   Okay.  Do you have any reason to doubt that
22 Mr. Davis left unhappy as Mr. Mendoza says here?
23     A.   That's what JC's saying.
24     Q.   Do you have any reason to doubt that?
25     A.   No, I don't.

UNIVERSAL
COURT REPORTING

Office Phone: 954-712-2600
Email: info@ucrinc.com
Website: ucrinc.com

Page 86

1    Q.   On the following page, which is 4887,
2  there's an e-mail from Mr. Taheri at the bottom.  Do
3  you see that?
4    A.   Yes (perusing).
5    Q.   And Mr. Taheri says that he's "weary" of
6  giving Mr. Davis access.  Do you see that?
7    A.   Yes (perusing).
8    Q.   At the end of that sentence, "I'm still
9  weary of doing this"?
10   A.   Yes (perusing).
11   Q.   Okay.  So Mr. Taheri was deposed in this
12 case.  And I'll represent to you that he testified
13 Mr. Davis was disgruntled when he quit.  Do you have
14 any reason to doubt Mr. Taheri's testimony on that
15 point?
16   A.   I don't.
17   Q.   Do you know -- do you know whether Mr. Davis
18 was given the access he was requesting in this e-mail
19 chain?
20   A.   I don't believe he was.
21   Q.   Okay.
22       MR. STARR:  I'd like to mark this as Shapiro
23 Exhibit 3.
24       (Shapiro Exhibit 3 was marked for
25 identification.)

Page 87

1        MR. MORLAN:  What document is that, Peter?
2        MR. STARR:  This is an e-mail from
3  July 24th, 2024, from Jim Howard to Mark Shapiro.
4  It's ending in Bates number 4890.  This was also
5  an exhibit at the Taheri declaration -- excuse me,
6  the Taheri deposition.
7 BY MR. STARR:
8    Q.   Do you recognize this document, Mr. Shapiro?
9    A.   (Perusing.)
10       MR. MORLAN:  Peter, can you send me a copy
11 of this exhibit, please?
12       MR. STARR:  All right.  Can we go off the
13 record for a second?
14       THE VIDEOGRAPHER:  Going off the record.
15 The time is 12:31.
16       (A recess was taken.)
17       THE VIDEOGRAPHER:  We're back on the record.
18 The time is 12:33.
19 BY MR. STARR:
20   Q.   Okay.  I think the question pending,
21 Mr. Shapiro, is just whether you recognize this
22 document.
23   A.   I do.
24   Q.   Okay.  Could you identify it for us, please?
25   A.   It's an e-mail string.  It starts with

Page 88

1  counsel from Northwestern Mutual writing to formally
2  request access for Saiph Consulting to do their
3  collateral audit.  In the middle there is some back
4  and forth between Shawn Taheri, Jim Howard, myself, JC
5  Mendoza about how we shouldn't let -- we shouldn't
6  have him or Paul doing this work.  And as I mentioned
7  before, Jim Howard and I were pretty much the ones who
8  are telling them that, hey, they're entitled to this
9  information.  We have the controls, there's not too
10 much damage they can do, let them do the audit.
11   Q.   Yeah.
12       And so on -- on the page ending in 894,
13 there's an e-mail from John Gatmaitan.  That's a
14 Northwestern Mutual guy, right?
15   A.   Yes (perusing).
16   Q.   Okay.  And he says that this request -- in
17 the first paragraph it says, "This request is in
18 connection with the previous notice of inspection we
19 provided to you by e-mail on June 20, 2024."
20   A.   Yes (perusing).
21   Q.   Right?
22       And this e-mail here is in July 2024,
23 correct?
24   A.   Which e-mail?
25   Q.   The e-mail that Mr. Gatmaitan sent.

Page 89

1    A.   Yes, July 10th (perusing).
2    Q.   Okay.  So would you agree the Northwestern
3  Mutual audit is occurring -- overlapping with the
4  Leadenhall collateral audit?
5    A.   Yes, it is.
6    Q.   Okay.  At the bottom of the -- the first
7  page of this document, you say that "Jim is the
8  authorized approver."  Jim Howard?
9    A.   Yes (perusing).
10   Q.   Did you have to authorize Mr. Howard to
11 serve as the approver for these requests?
12   A.   No.  But Shawn -- in the e-mail prior, Shawn
13 is saying -- there was an e-mail from Shawn here, "I
14 continue to struggle with determining who should be
15 approving requests like this one."  So what's in
16 response to Shawn's e-mail.
17   Q.   Mm-hmm.
18   A.   And, again, Jim was running the day-to-day
19 over Suttonpark.  He'd be in a better position than I
20 would be to approve these requests.
21   Q.   And then when -- when Mr. Howard responds in
22 the top e-mail there, one of the reasons he gives for
23 granting the access is this -- the need to comply with
24 legal requirements, right?
25   A.   Yes (perusing).


UNIVERSAL
COURT REPORTING

Office Phone: 954-712-2600
Email: info@ucrinc.com
Website: ucrinc.com

777 PARTNERS LLC and SUTTONPARK CAPITAL LLC vs LEADENHALL CAPITAL
Shapiro, Mark on 03/05/2025                                    Pages 90..93

Page 90

1    Q.  Okay.  So is it the case that Northwestern
2  Mutual had rights to information under whatever
3  contract governs that arrangement?
4    A.  Every lending agreement, lenders have
5  certain rights on audits and review and things like
6  that.  I assume Northwestern had similar type
7  provisions.
8    Q.  Was -- was Mr. Davis granted access to
9  plaintiffs' systems for the Northwestern Mutual audit?
10   A.  I don't believe they -- I don't believe he
11  was.
12   Q.  So what access is being granted here by
13  Mr. Howard?
14   A.  (Perusing.)
15       I mean, from the e-mail string, he's
16  granting Paul Kosinski access.
17   Q.  Okay.
18   A.  To data within MPFin.
19   Q.  And when did you first learn of the
20  intrusions -- the alleged intrusions by Mr. Davis?
21   A.  I believe it was August of 2024.  Somewhere
22  around -- I think it was August 9th.
23   Q.  Who did you learn about that from?
24   A.  Oh, I don't know specifically who I heard it
25  from.  I'm not sure if it was from Jim Howard or Shawn

Page 91

1  directly.
2    Q.  And what did they tell you?
3    A.  We had a data intrusion.  We got an -- an
4  alarm through CrowdStrike.  And it appears that the
5  consultants have been -- well, they didn't know what
6  was going on.  They basically said we got an alarm, we
7  have to check, and we got to find out what's going on.
8  But there's a potential data -- data intrusion.
9  That's pretty much what it was.
10   Q.  And how did you respond to that?
11   A.  I don't remember specifically, but we
12  decided that we had to retain a forensic advisor to be
13  able to go through and figure out what went on.
14   Q.  And that was Mr. Mazur?
15   A.  Yes.
16   Q.  Okay.  Did you direct Mr. Mazur to
17  investigate the intrusions?
18   A.  It was probably more Jim than me.  I mean, I
19  was aware Eric was going to be retained, but I wasn't
20  directly involved in -- in the scope or his
21  engagement.  I was kept in the loop on everything that
22  was going on.
23   Q.  So Mr. Mazur was handing the -- handling the
24  technical forensic cyber investigation; is that right?
25   A.  Yes.

Page 92

1    Q.  Have you read Mr. Mazur's report in this
2  case?
3    A.  I have.  I believe there was a supplement
4  too.
5    Q.  Yeah.
6        Did Mr. Mazur link Davis's intrusions to
7  Leadenhall?
8    A.  I'm not sure if he specifically mentioned
9  Leadenhall.  It was mostly timing on -- on his report.
10   Q.  So Mr. Mazur is handling the technical
11  investigation.  What other investigation was done in
12  response to the intrusions?
13   A.  That was the primary investigation was going
14  through Eric to figure -- we had to figure out what
15  happened.  And he was the primary source, he and
16  Shawn.  I think Brian Keith (phonetic) from our team
17  may have done some work on it as well.  But they
18  were -- they were essentially challenged with the task
19  of finding out what happened.
20   Q.  But Mr. Mazur didn't link the intrusions to
21  Leadenhall, correct?
22   A.  I believe I said I think he mentioned timing
23  but not Leadenhall.
24   Q.  So who first raised the possibility that
25  perhaps Leadenhall was behind all this?

Page 93

1    A.  Well, I think it came from -- I don't
2  remember who exactly raised it the first time, but
3  it -- it -- when we started looking at what was --
4  what was -- what was -- what files were looked at and
5  when they were done and who did it, the fact that the
6  MPFin databases were copied, the fact that Steve
7  Pasko's e-mails were copied, the fact that Jen Logee's
8  e-mails and someone going after Jen Logee's
9  e-mails and OneDrive and the various files.
10       And then ultimately a copy of the
11  September 2022 MPFin file was copied.  Those are all
12  directly, coincidentally, whatever you want to call it
13  linked to timeframes and -- and aspects that affect --
14  that could affect the New York litigation.
15   Q.  How could they affect the New York
16  litigation?
17   A.  I don't know.  That's -- ultimately I'm
18  not -- I'm not the -- you know, the gather of
19  evidence.  I don't know how it -- it can be -- affect
20  the New York litigation.
21   Q.  Well, no.  But you testified that these
22  sources of information are relevant to the New York
23  litigation and that's why -- that's what made you
24  think it was Leadenhall.  So I'm asking --
25   A.  Well, let's go --

**UNIVERSAL COURT REPORTING**

Office Phone: 954-712-2600
Email: info@ucrinc.com
Website: ucrinc.com

777 PARTNERS LLC and SUTTONPARK CAPITAL LLC vs LEADENHALL CAPITAL
Shapiro, Mark on 03/05/2025                                    Pages 94..97

Page 94

1    Q.  -- how.
2    A.  Let's go to the September '22 copy of the
3  MPFin database.  I think it's in the New York
4  complaint, it is right around that timeframe,
5  September of '22, that Leadenhall gets a tip that
6  there's something going on at 777 and they have to
7  investigate what's going on.  I would think if -- if
8  they had a copy of -- and I don't know -- I don't know
9  what's in the September '22 MPFin database, but I
10 would think if they got a copy of the September
11 2022 -- we're not talking September 2023 or 2024.
12 We're talking September 2022 database, it's
13 specifically called out in the Leadenhall complaint as
14 to that's when they found out something was going on.
15       All the allegations.  Why on earth would --
16 would -- would Noah Davis and Paul Kosinski have any
17 interest in Steve Pasko -- I mean, they're IT guys.
18 Why would they have any interest in Steve Pasko's
19 e-mails?  Why -- why would they have any -- why would
20 they -- why would Noah Davis have any interest in Jen
21 Logee's files and e-mails?
22       She happens to be working on BIH, which
23 happens to be the entity that houses Sutton Capital
24 and -- and the proxy that was just -- I mean, there's
25 too many connections in the data.  I -- I don't know

Page 95

1  what can happen, but there's a lot of coincidences in
2  the timing of these files.
3    Q.  So let's -- so let's -- let's break that
4  down just a bit.
5       So -- so the MPFin system, you identified
6  that as a factor, right?
7    A.  (No verbal response given.)
8    Q.  So the MPFin system houses data about
9  collateral for many different creditors, right?
10   A.  I'm -- I'm not an expert on the MPFin
11 system.  I know it's the enterprise system that houses
12 the detail on the -- on the various receivable
13 portfolios for the companies.
14   Q.  How many creditors does Suttonpark have?
15   A.  I don't know.
16   Q.  More than one?  At least it's got
17 Northwestern Mutual and Leadenhall, right?
18   A.  Yes.
19   Q.  How about Credigy?
20   A.  Yes.
21   Q.  Anybody else you can think of?
22   A.  No.
23   Q.  Okay.  In the complaint, MPFin system is
24 described as the "proprietary application used by
25 Suttonpark to manage receivables and other assets

Page 96

1  securing loans."  Okay?
2    A.  Mm-hmm.
3    Q.  Does that sound accurate to you?
4    A.  Yes.
5    Q.  Okay.  Receivables and asset -- and other
6  asset securing loans not just those limited to
7  Leadenhall, right?
8    A.  Correct.
9    Q.  And isn't it true that Mr. Davis accessed
10 the entirety of the MPFin system?
11   A.  My understanding is he took a whole copy of
12 it.
13   Q.  Took a copy -- a whole copy of it?
14   A.  Yes.
15   Q.  So not just the portions of MPFin relevant
16 to Leadenhall, correct?
17   A.  It's my understanding.
18   Q.  Okay.  What -- can you identify any
19 information in MPFin, other than collateral in
20 Leadenhall's portfolio, that would be relevant to
21 Leadenhall?
22   A.  I'm not an expert on MPFin.  I couldn't tell
23 you.
24   Q.  And you testified that Davis made a copy of
25 the September 2022 version of MPFin in particular?

Page 97

1    A.  Among others, yes.
2    Q.  Which other copies did he make?
3    A.  There are other dates.  I'm not sure of
4  those dates.
5    Q.  Okay.  Do any of those, in your view, have
6  special relevance to Leadenhall?
7    A.  I think one was the most current file.  I
8  don't know.
9    Q.  Does that have any special relevance to
10 Leadenhall?
11   A.  It could.
12   Q.  How?
13   A.  I don't know.  It could.  I'm -- I -- I
14 don't know what's in the data base.  Could.
15   Q.  It could, it could not?
16   A.  Could.
17       MR. PELLEGRINO:  Objection to form.
18 BY MR. STARR:
19   Q.  Is it equally plausible that it does not?  I
20 mean, you -- you don't know, right?
21   A.  I don't know.
22   Q.  Okay.  That's all I'm trying to get at.
23       You mentioned Mr. Pasko, his e-mails were
24 targeted?
25   A.  That's my understanding, yes.

UNIVERSAL
COURT REPORTING

Office Phone: 954-712-2600
Email: info@ucrinc.com
Website: ucrinc.com

777 PARTNERS LLC and SUTTONPARK CAPITAL LLC vs LEADENHALL CAPITAL
Shapiro, Mark on 03/05/2025                                    Pages 98..101

Page 98

1    Q.  Okay.  Mr. Pasko was the former managing
2  partner.  He had oversight responsibilities for all of
3  the portfolio companies, right?
4    A.  Correct.
5    Q.  And you said 777 Partners had dozens of
6  portfolio companies?
7    A.  Yes.
8    Q.  And I assume those portfolio companies have
9  loans and business dealings with entities other than
10 Leadenhall, right?
11   A.  Yes.
12   Q.  Okay.  You testified earlier that 777
13 Partners has been sued in other lawsuits not involving
14 Leadenhall, right?
15   A.  Yes.
16   Q.  And that it's under investigation by the
17 DOJ?
18   A.  Yes.
19   Q.  Okay.  So the plaintiffs allege that Davis
20 targeted Pasko's entire mailbox, right?
21   A.  Yes.
22   Q.  Meaning it contains all of his e-mails?
23   A.  It's my understanding.
24   Q.  Okay.  Can you identify any specific e-mails
25 that Davis targeted in particular?

Page 99

1    A.  I can't.
2    Q.  Okay.  Would -- would you agree that not all
3  of the e-mails in Pasko's mailbox relate to
4  Leadenhall?
5    A.  Some were, some were not.
6    Q.  Right.
7        And you don't know any anything about
8  Mr. Pasko's relationship with Mr. Davis?
9    A.  I don't.
10   Q.  Okay.  You don't know whether Mr. Davis had
11 bad blood with Mr. Pasko?
12   A.  I don't.
13   Q.  Okay.  So why -- why is the targeting of
14 Pasko's mailbox linked to Leadenhall?
15   A.  It's a combination of everything.  It's --
16 it's Leadenhall's consultants are going in there
17 and -- and going -- going in specifically and
18 targeting data that everybody at the company was
19 fearful of.  Everybody, except for -- Jim Howard and I
20 overruled it.  And it turns out that they went after
21 data that wasn't part of the collateral audit, which
22 they were engage for -- engaged for.
23   Q.  And when you say "they," who are you
24 referring to?
25   A.  Saiph.

Page 100

1    Q.  Saiph.
2        Are you aware of anyone at Saiph, other than
3  Mr. Davis, who made any intrusions?
4    A.  I believe Mr. Davis made the intrusions.  He
5  was working for Saiph.
6    Q.  Do you know which credentials he used to
7  make the intrusions?
8    A.  I can't recall.  It's in the report.
9    Q.  Do you know that for 9 out of 10 intrusions
10 he used his own former 777 Partners credentials?
11   A.  Yes.  And I also understand he had some
12 backdoor access.
13   Q.  What kind of backdoor access?
14   A.  Supposedly there's scripts and -- and
15 programs that he knew about that could circumvent the
16 standard credentials of the 777 systems.  He -- he ran
17 IT.
18   Q.  Right.
19       So you're -- he had inside knowledge of 777
20 Partners' systems?
21   A.  Correct.
22   Q.  Or Suttonpark systems?
23   A.  (No verbal response given.)
24   Q.  Are you assuming -- are you assuming that
25 Saiph -- that others at Saiph knew that Davis was

Page 101

1  accessing information without authorization?
2    A.  It's a distinct possibility.
3    Q.  Okay.  Where did you get that assumption
4  from?
5    A.  It's an assumption that is part -- is
6  essentially part of the litigation, that -- that
7  Leadenhall engaged Saiph, who engaged Davis, and it
8  was all geared towards going after information that
9  they otherwise weren't entitled to.
10   Q.  That's in the complaint, right?
11   A.  Yes.
12   Q.  But the complaint didn't write itself.  Who
13 raised that possibility first?
14   A.  I don't remember who raised it.
15   Q.  Okay.  Was it you?
16   A.  I don't remember who raised it.
17   Q.  Was it you though?
18   A.  I don't remember if I raised it first or
19 last.  I don't.
20   Q.  Okay.  Can you identify any information --
21 so --
22       MR. STARR:  Withdrawn.
23 BY MR. STARR:
24   Q.  You also cited the access or targeting of
25 Ms. Logee's laptop as a -- as a factor in your view,

**UNIVERSAL**
**◉ COURT REPORTING**

Office Phone: 954-712-2600
Email: info@ucrinc.com
Website: ucrinc.com

777 PARTNERS LLC and SUTTONPARK CAPITAL LLC vs LEADENHALL CAPITAL
Shapiro, Mark on 03/05/2025                           Pages 102..105

Page 102

1 right?
2     A.  Correct.
3     Q.  Okay.  Can you identify any specific files
4 on Ms. Logee's laptop that were targeted?
5     A.  I can't right now, no.
6     Q.  Okay.  Any specific information at all that
7 was targeted?
8     A.  I can't right now.
9     Q.  So you don't know what on Ms. Logee's laptop
10 was accessed and yet you think that's a factor that
11 points at Leadenhall?
12     A.  Could be.
13     Q.  Okay.  It could be and it --
14     A.  It's a factor.
15     Q.  Is it more likely than not in your view?
16     A.  I don't know how to measure it.  It's a --
17 it's a factor.  Everything's a factor.
18     Q.  Why is it a factor that points to Leadenhall
19 if you don't know what was on her laptop?
20         MR. PELLEGRINO:  Objection to form.
21         THE WITNESS:  Jen Logee was directly
22 involved with Brickell Holdings, the owner of
23 Suttonpark, and was named in -- I don't remember
24 which -- which pleading, but she's -- she was
25 definitely well aware of and integrated into

Page 103

1 Brickell Holdings and Suttonpark.  She could have
2 information that Leadenhall was -- was looking
3 for.
4 BY MR. STARR:
5     Q.  So Leadenhall alleges fraud in the New York
6 case, right?
7     A.  Yes.
8     Q.  Is -- are you aware of any evidence of fraud
9 on any of the systems that Mr. Davis allegedly
10 targeted?
11     A.  Can you say that again?
12     Q.  Do you believe there's evidence of fraud in
13 the systems and information that were targeted by
14 Mr. Davis?
15         MR. PELLEGRINO:  Objection to form.
16         THE WITNESS:  I wouldn't --
17 BY MR. STARR:
18     Q.  You can answer.
19     A.  I wouldn't know.  I haven't -- I wouldn't
20 know if there's any fraud in the systems.
21     Q.  Evidence of fraud in the systems that
22 Mr. Davis targeted?
23     A.  I'm not sure I understand the question there
24 maybe.
25     Q.  Okay.  So Leadenhall is alleging fraud in

Page 104

1 the New York action, right?
2     A.  Correct.
3     Q.  Plaintiffs' contention in this case is that
4 Leadenhall put Noah Davis up to this so that it could
5 get information it could use in New York, information
6 that would be useful in a fraud case is evidence of
7 fraud.  So do you believe there is evidence of fraud
8 in the systems that Mr. Davis targeted?
9         MR. PELLEGRINO:  Objection to form.
10         THE WITNESS:  I don't think I'd be in a
11 position to know or -- either know or not know
12 whether there was evidence of fraud in the
13 systems.  Sounds like it's an IT issue.
14 BY MR. STARR:
15     Q.  Well, what systems were accessed?
16     A.  Steve Pasko's e-mail.
17     Q.  Mm-hmm.
18     A.  Jen Logee's OneDrive.
19     Q.  Okay.  Let's stop there.
20         Is there evidence of fraud in Steve Pasko's
21 e-mail to your knowledge?
22     A.  I don't know.
23     Q.  Okay.  Is there evidence of fraud in
24 Ms. Logee's -- whatever portion of her laptop that he
25 accessed?

Page 105

1     A.  I don't know.
2     Q.  Okay.  The MPFin system was accessed, right?
3     A.  Correct.
4     Q.  Is there evidence of fraud in the MPFin
5 system?
6     A.  I don't know.
7     Q.  Okay.  You're an independent executive with
8 fiduciary obligations, right?
9     A.  Yes.
10     Q.  Would you feel compelled to disclose
11 evidence of fraud if you were aware of it?
12     A.  Yes.
13     Q.  Okay.  Can you identify any information that
14 Davis obtained that Leadenhall subsequently used in
15 the New York case?
16     A.  No, I can't.
17     Q.  Okay.  And you mentioned Pasko and -- and
18 Logee.  Have you discussed with Mr. Pasko what was in
19 his e-mails?
20     A.  No, I have not.
21     Q.  Have you discussed with Mr. Pasko whether he
22 thought Leadenhall directed Mr. Davis's conduct?
23     A.  Yes.
24     Q.  What did he say?
25     A.  He believes they did.

UNIVERSAL
COURT REPORTING

Office Phone: 954-712-2600
Email: info@ucrinc.com
Website: ucrinc.com

777 PARTNERS LLC and SUTTONPARK CAPITAL LLC vs LEADENHALL CAPITAL
Shapiro, Mark on 03/05/2025                          Pages 106..109

Page 106

1    Q.   Why?
2    A.   Because he thought they were looking for
3  information that -- that doesn't even exist but they
4  think we committed fraud here.
5    Q.   So did he have any factual basis?  Did he
6  identify any factual basis to conclude that Leadenhall
7  directed these intrusions?
8    A.   Just coincidence.
9    Q.   Coincidence.  Okay.
10        Did you speak with Ms. Logee?
11   A.   I did not.
12   Q.   No, you haven't spoken with her?
13   A.   I have not.
14   Q.   When -- have you ever spoken with her?
15   A.   No.
16   Q.   Okay.  Have you reviewed any information
17 that was on Ms. Logee's laptop?
18   A.   No.
19   Q.   So was it Mr. Pasko's idea to name
20 Leadenhall as a defendant in this case?
21   A.   No.
22   Q.   Whose idea was it?
23   A.   Again, I don't know whose idea.  It was a
24 live discussion amongst another people -- a lot of
25 people.  I don't know who first came up with the idea.

Page 107

1    Q.   Okay.  Was Mr. Wander involved in that
2  discussion?
3    A.   I don't remember.  I don't recall if he was
4  or not.
5    Q.   Was Mr. Pasko involved in that discussion?
6    A.   He was involved in some discussions.
7    Q.   Which discussions?
8    A.   Preliminary discussions.  Not the discussion
9  whether or not to file suit against Leadenhall.
10   Q.   Who directed Smith Gambrell to draft a
11 complaint?
12   A.   That would have been Ian Ratner and myself.
13   Q.   Okay.  And when was that decision made?
14   A.   I don't know the exact date.
15   Q.   Okay.  What made you decide that filing a
16 complaint against Leadenhall in federal court was
17 warranted here?
18        MR. PELLEGRINO:  I'm going to object based
19     on work product.
20 BY MR. STARR:
21   Q.   Okay.  You can answer.
22        MR. PELLEGRINO:  I'm just going to direct
23     you not to -- not to reveal the sum and substance
24     of conversations with counsel regarding the
25     decision to file the complaint.

Page 108

1        MR. STARR:  No, no, no.  I'm not asking
2  about communications with counsel.
3  BY MR. STARR:
4    Q.   You said you directed Smith Gambrell to
5  draft a complaint, and I'm asking you:  Based on what?
6    A.   It would have been based on discussions with
7  Smith Gambrell.  I don't know how you separate the
8  two.
9    Q.   Well, Smith --
10   A.   We made -- didn't make the discussion -- we
11 didn't make the decision in a vacuum.
12   Q.   Well, Smith Gambrell didn't direct itself to
13 draft a complaint, right?  You did?
14   A.   No, but it was based on conversations that
15 we had prior to making -- at some point you make a
16 decision, but it's based on feedback and information
17 that absolutely the attorneys had input into, whether
18 there was a legal basis or anything like that.  We're
19 not going to make a decision to file a complaint
20 without understanding or hearing from them the issues
21 involved in it.
22   Q.   So you understand what I'm trying to ask?
23   A.   Of course I do.
24   Q.   Which is that:  Who at the client decided to
25 file this complaint?

Page 109

1    A.   I said it.  It -- it was Ian and myself, but
2  it was done in collaboration with attorneys and input
3  from -- and feedback from attorneys.
4    Q.   Okay.  In your view --
5    A.   You can't -- you can't separate the two.
6    Q.   Sorry, sir.  Go ahead.
7    A.   I'm just saying, you can't separate the two.
8    Q.   Okay.
9    A.   Or I can't.
10   Q.   In your view, what facts warranted filing a
11 complaint against Leadenhall?
12   A.   It's the factors that we put in the
13 complaint.  I mean, do you have the complaint?  I can
14 just read off all the factors that were listed in
15 that.  I mean, I --
16   Q.   I just want to hear from you.
17   A.   I -- I mentioned three of them.  There's
18 probably 9 or 10 of them in the complaint.
19   Q.   Okay.  And Smith Gambrell drafted the
20 complaint?
21   A.   Yes.
22   Q.   Did you review a draft of the complaint?
23   A.   Yes.
24   Q.   Who else reviewed a draft of the complaint?
25   A.   I don't know.  I don't know specifically,

UNIVERSAL
COURT REPORTING

Office Phone: 954-712-2600
Email: info@ucrinc.com
Website: ucrinc.com

777 PARTNERS LLC and SUTTONPARK CAPITAL LLC vs LEADENHALL CAPITAL
Shapiro, Mark on 03/05/2025                                    Pages 110..113

Page 110

1 but it was -- it would have been Ian Ratner, myself,
2 Jon Walder, Chris O'Reilly. I'm not sure if Mollie
3 Wander would have been in the review of the complaint.
4 Definitely would have been us four.
5    Q. And who --
6    A. I'm not sure -- I'm not sure if there was
7 something else on there.
8    Q. Who verified whether the allegations in the
9 complaint were accurate?
10    A. Eric Mazur and Shawn went through and -- to
11 make sure that the facts were accurate. So, yes, I
12 believe -- I don't know if they -- they saw the --
13 they must have seen the complaint because they
14 definitely had input into or making sure that the
15 facts were accurate.
16    Q. Okay. So in the lead up to filing the
17 complaint, which would have -- was in September, I believe.
18 Is that -- do you recall?
19    A. I believe so.
20    Q. September 2024.
21       So and the -- you learned of the intrusions
22 in August, right?
23    A. Yes.
24    Q. Okay. So in that period, there were --
25 there were discussions among a group of people you

Page 111

1 said?
2    A. Yes.
3    Q. Was anyone -- any lawyer from Cadwalader
4 involved in any of those discussions?
5       MR. PELLEGRINO: I'm going object based on
6 work product and potentially common interest.
7 BY MR. STARR:
8    Q. Okay. You can answer.
9    A. I don't recall being on any -- in any
10 conversations with Cadwalader on it.
11    Q. Was anyone from A-CAP involved in those
12 discussions?
13    A. Again, I don't recall anybody from A-CAP
14 being involved in discussions where I was present.
15    Q. You don't recall or they were not involved?
16    A. I don't believe they were.
17    Q. Okay.
18    A. I don't.
19    Q. Have you discussed this lawsuit with Kenneth
20 King?
21    A. I don't believe I have.
22    Q. Have you discussed this lawsuit with anyone
23 from A-CAP at all?
24    A. I don't believe I have.
25    Q. Okay. Are you certain about that?

Page 112

1    A. Pretty sure.
2    Q. Okay. Who, to your knowledge, reviewed a
3 copy of this complaint before it was filed?
4    A. I think I just answered that. It would have
5 been myself and Ian Ratner, Chris O'Reilly, Jon
6 Walder, and I'm not sure if Mollie Wander would have
7 been there. I believe Eric Mazur, probably Shawn
8 O'Taheri -- Shawn Taheri. Maybe Jim Howard. Those
9 would be the folks.
10    Q. In the course of your investigation --
11 like --
12       MR. STARR: Withdraw that.
13 BY MR. STARR:
14    Q. Did Mollie Wander resign from her position
15 when B. Riley was retained?
16       MR. PELLEGRINO: Objection to form.
17       THE WITNESS: Yeah. She was a manager of, I
18 think, 600, and she resigned as a manager.
19 BY MR. STARR:
20    Q. But she remained involved?
21    A. She's still an employee.
22    Q. In what capacity?
23    A. She's an attorney. She handles a lot of the
24 employee claims.
25    Q. Okay. In the course of your investigation

Page 113

1 of the claims underlying this complaint, did you ever
2 look into or consider whether Northwestern Mutual Life
3 could have been behind the intrusions?
4    A. No.
5    Q. Did you ever look into or consider whether
6 Mr. Davis acted alone?
7    A. I mean, it was considered. We were -- the
8 question is why would he -- why would he act alone in
9 that regard? We don't know. Ultimately the evidence
10 is going to be there or it won't be. But was it
11 considered, yes.
12    Q. So what factors led you to rule that
13 possibility out?
14    A. It's too circumstantial. There's too much
15 circumstantial evidence that points to exact
16 information that's relevant to the Leadenhall New York
17 case.
18    Q. The exact information? What exact
19 information is relevant to the Leadenhall New York
20 case?
21    A. Again, the timing we talked about. I --
22 I...
23    Q. Well, you just said you couldn't identify
24 any specific information. So if that's a factor, I
25 want to know what information.

UNIVERSAL
COURT REPORTING

Office Phone: 954-712-2600
Email: info@ucrinc.com
Website: ucrinc.com

777 PARTNERS LLC and SUTTONPARK CAPITAL LLC vs LEADENHALL CAPITAL
Shapiro, Mark on 03/05/2025                    Pages 114..117

Page 114

1        MR. PELLEGRINO: Objection to form.
2        THE WITNESS: I believe I said it was the
3    timing and -- and the information. I don't know
4    whether the information exists in those files. It
5    could exist. It may not exist. And I think we
6    already said that.
7 BY MR. STARR:
8        Q.  Okay.  So it's the timing and the existence
9 of information that you're not sure whether it exists,
10 that's -- that's what led to Leadenhall's named --
11 naming as a defendant?
12       A.  Yes.
13       Q.  The Northwestern Mutual audit had the same
14 timing as the Leadenhall audit, right?
15       A.  It had overlapped, yes.
16       Q.  Okay.  But you didn't consider whether --
17 you didn't investigate whether Northwestern Mutual was
18 behind this?
19       A.  No.
20       Q.  Why not?
21       A.  There's no litigation going on with
22 Northwestern Mutual.  There's no complaints going on
23 with Northwestern Mutual.
24       Q.  What is the status of the Northwestern
25 Mutual relationship now?

Page 115

1        A.  They're transition -- I believe they're
2 transitioning off of 777 like everybody else.
3 That's -- that's in process.
4        Q.  And so Leadenhall was named as a defendant
5 because it's involved in litigation with 777?
6        A.  Leadenhall was named as a defendant because
7 we believe that they were behind the data intrusion.
8        Q.  Mm-hmm.
9           To your knowledge, did Mr. Davis
10 successfully transfer any data outside of the 777
11 network?
12       A.  I thought -- I thought he was able to
13 transfer data to hard drives, but I'm not sure of
14 that.  It's -- again, it's in the report.
15       Q.  Do you have any factual basis to conclude
16 that Leadenhall has benefitted from Mr. Davis's
17 intrusions?
18       A.  Not as of now, no.
19       Q.  Okay.
20          MR. STARR: Do you want to take a break? We
21 can --
22          Off the record.
23          THE VIDEOGRAPHER:  Okay.  Going off the
24 record.  The time is 1:12.
25          (A lunch recess was taken.)

Page 116

1        THE VIDEOGRAPHER:  Okay.  We're back on the
2    record.  The time is 2:03.
3 BY MR. STARR:
4        Q.  Okay.  Welcome back, Mr. Shapiro.
5        A.  Thank you.
6        Q.  Okay.  Did you have an opportunity to confer
7 with your counsel during the break?
8        A.  Not about the case.  Just we chatted and had
9 a nice lunch.
10       Q.  All right.  So before the break we were
11 discussing some of the factors that led you to
12 conclude that Leadenhall was behind the alleged
13 intrusions, right?
14       A.  Yes.
15       Q.  And I believe you testified that Davis
16 obtained a copy of the MPFin system as of September
17 2022?
18       A.  Yes.
19       Q.  And that was important to your decision to
20 name Leadenhall as a defendant?
21       A.  No.  That was found -- that was later on
22 that that was found actually.  It was -- it was -- we
23 knew about the earlier or the more recent databases
24 early on.  We found out about the September '22 which
25 essentially just confirmed what we were thinking or

Page 117

1 could confirm what we were thinking earlier on.  But
2 we didn't have the '22 until there was some exchange
3 of documents, actually recently.
4        Q.  Okay.  So you're saying that you learned
5 about a September 2022 copy of MPFin not at the time
6 of the filing of the lawsuit but more recently?
7        A.  Correct.
8        Q.  And how did -- and what was the exchange of
9 documents you learned that through?
10       A.  It came through Shawn Taheri.  I spoke with
11 Eric Mazur.  It -- it was in some -- some of the
12 documents that happened I -- I think in exchange in
13 some of the discovery that it came up.  Eric -- I --
14 it was a discussion with Eric Mazur where I found it
15 out.
16       Q.  And was it in Eric Mazur's supplemental
17 report?
18       A.  No, I don't it -- no, I don't think it was.
19 I think it was after his supplemental report.
20       Q.  Well, so are you aware that Saiph provided
21 information in this case, exchanged information in
22 discovery indicating that certain copies of MPFin were
23 found on a Saiph device issued to Mr. Davis?
24       A.  If -- if that's what we're talking -- I -- I
25 understand --

UNIVERSAL
COURT REPORTING

Office Phone: 954-712-2600
Email: info@ucrinc.com
Website: ucrinc.com

777 PARTNERS LLC and SUTTONPARK CAPITAL LLC vs LEADENHALL CAPITAL
Shapiro, Mark on 03/05/2025                                    Pages 118..121

Page 118

1    Q.  That's what you're referring to?
2    A.  -- the transfer of documents.  There --
3 there were shared documents that came from either
4 Leadenhall or Saiph.  I don't know where they came
5 from.  And that's where that was found.
6    Q.  And as for the -- you said you had
7 knowledge -- prior knowledge of other copies of the
8 MPFin database?
9    A.  Correct.  When we initiated the lawsuit,
10 there were other copies of the MPFin database.  I
11 don't know what dates they were, but they were more
12 recently than September of '22.  But, again, it was
13 the same -- it was the same issue.  What -- what --
14 you know, why is Noah Davis making copies of MPFin.
15    Q.  As to these earlier -- sorry.
16       As to the more recently dated copies but the
17 ones you knew about earlier, were those covered in
18 Mr. Mazur's report?
19    A.  I believe they were.
20    Q.  Okay.
21       MR. STARR:  Let's mark Mr. Mazur's report.
22 This will be Shapiro Exhibit 4.
23       (Shapiro Exhibit 4 was marked for
24       identification.)
25 BY MR. STARR:

Page 119

1    Q.  Okay.  Mr. Shapiro, Exhibit 4 is a copy of
2 Mr. Mazur's -- well, there's a Mr. Mazur initial
3 report and then toward the end, his supplemental
4 report.
5       Just to identify for the record, the initial
6 report is dated September 27, 2024, and the
7 supplemental is dated January 2nd, 2025.
8       So --
9       MR. STARR:  What, Mr. Pellegrino?
10      MR. PELLEGRINO:  Yes.  Are these all three
11 reports or just two?
12      MR. STARR:  What is the -- what are the
13 three reports?
14      MR. PELLEGRINO:  There's the original, the
15 supplemental, and then a February 12th.
16      MR. STARR:  February 12th report relating
17 to?
18      MR. PELLEGRINO:  It's a -- the February 12th
19 Mazur report.
20      MR. STARR:  Max Davis?
21      MR. MORLAN:  Yes.
22      MR. PELLEGRINO:  Some of the context.  Yeah,
23 sure.
24      MR. STARR:  So this is the first two.
25      MR. PELLEGRINO:  Okay.  Thank you.

Page 120

1       MR. STARR:  So the original and the
2    supplemental.
3 BY MR. STARR:
4    Q.  So, Mr. Shapiro, can you identify where in
5 Mr. Mazur's initial report any copy of the MPFin
6 system as of any date is mentioned?
7    A.  (Perusing.)
8    Q.  And I will tell you that to my
9 understanding, the initial report just details what --
10 ten of what he refers to as intrusion events.
11   A.  I -- I'm seeing that now (perusing).
12   Q.  And if you would, please turn toward --
13      MR. STARR:  Well, withdraw that question
14 actually.
15 BY MR. STARR:
16   Q.  Does this refresh your recollection that
17 plaintiffs not know about any MPFin copies at the time
18 of this report?
19   A.  No, it doesn't.  I mean, it's not in the
20 report, but I can't say -- I won't say for sure that
21 we didn't know about it when -- when we -- back in
22 September.
23   Q.  Well, let's go to the end of this report,
24 kind of the last 15 pages.
25   A.  (Complying.)

Page 121

1    Q.  It's really the end of this document.  It's
2 the second -- the start of the second -- the
3 supplemental report dated January 2nd, 2025.
4    A.  Okay (complying).
5    Q.  Are you there?
6    A.  I am (perusing).
7       MR. PELLEGRINO:  What -- I'm...
8 BY MR. STARR:
9    Q.  Okay.  On Page Number 4, there's a section
10 titled "Recovered Breached Data."  Are you with me?
11   A.  I am (perusing).
12   Q.  Okay.  In there, Mr. Mazur explains that (as
13 read) "Pursuant to court order, Saiph Consulting
14 conducted an internal investigation to identify
15 potential 777 data," right?
16   A.  (Perusing.)
17   Q.  And here he says he (as read) "received a
18 copy of the files that were returned by Saiph
19 Consulting."  And that "within that production of 24
20 files, there appears to be copies/archives of the
21 MPFin Database which contains highly sensitive
22 financial information."
23      Do you see that?
24   A.  Yep, I do (perusing).
25   Q.  And he further says that his understanding

UNIVERSAL
COURT REPORTING

Office Phone: 954-712-2600
Email: info@ucrinc.com
Website: ucrinc.com

Page 122

1  is that "these files were recovered from a Saiph
2  Consulting device issued to Noah Davis."
3        Do you see that?
4     A.  Yes (perusing).
5     Q.  The final paragraph -- excuse me.
6        The final sentence of that paragraph says
7  that "Attached to this report as Exhibit C is a
8  complete listing of all files identified by Saiph
9  Consulting."
10       So now I direct you to Exhibit C.
11    A.  (Complying.)
12    Q.  Are you there?
13    A.  Yes.
14    Q.  Okay.  So the top row there, do you see the
15 top row file name says "202405-MPFin"?
16    A.  Right.  Created -- Modified June 3rd.
17 Created 8/22.  Access date 8/22.
18    Q.  8/22/2024?
19    A.  Right.
20    Q.  Yep.
21       And the file name appears to be
22 202405-MPFin, meaning May 2024, correct?
23    A.  Right (perusing).
24    Q.  The next row down is the same thing, right?
25    A.  (Perusing.)

Page 123

1        Yes.
2     Q.  There is no copy of the MPFin database as of
3  September 20 -- 2022 among this list of files, is
4  there?
5        MR. PELLEGRINO:  Objection to form.
6        THE WITNESS:  I don't see it on this sheet.
7  BY MR. STARR:
8     Q.  Does that refresh your recollection as to
9  whether there was ever a copy of the September 2022 --
10    A.  No.
11       MR. PELLEGRINO:  Objection to form.
12 BY MR. STARR:
13    Q.  -- MPFin system?
14    A.  No, it doesn't.
15    Q.  So you --
16    A.  It's not -- it's not on this list.
17    Q.  Do you maintain that there is a copy of the
18 MPFin system as of September 2022?
19       MR. PELLEGRINO:  Objection to form.
20       THE WITNESS:  My recollection is there was.
21 If I'm wrong or if I'm misunderstanding what I've
22 seen, then, you know, maybe -- maybe Shawn and
23 Eric have better information than I do.  But
24 that's my recollection that it was there.
25 BY MR. STARR:

Page 124

1     Q.  Where was it found?
2     A.  I don't -- I don't know where it was found.
3     Q.  Do you know when was it -- when was it
4  found?
5     A.  Not specific date, no.
6        MR. PELLEGRINO:  Objection to form.
7        MR. STARR:  What is the objection to "do you
8        know when it was found?"
9        MR. PELLEGRINO:  I don't think there is an
10    understanding as to what you are asking him.
11       MR. STARR:  Okay.
12 BY MR. STARR:
13    Q.  To clarify, when I ask "when it was found,"
14 the "it" refers to a copy of the MPFin database as of
15 September 2022.
16       Do you understand the question?
17    A.  Yes.  I don't know when that was identified.
18    Q.  Okay.
19    A.  We -- we got -- we -- the September '22
20 database copy, which was -- which we just discovered
21 recently, no, I don't -- I don't know when it was --
22 when it was created.
23    Q.  Who is "we"?
24    A.  Me.  I don't know when -- I don't know when
25 it was created.

Page 125

1     Q.  Oh, I'm sorry.  You said that "we just
2  discovered it recently"?
3     A.  "We" meaning the company and B. Riley.
4  Remember you said that --
5     Q.  Yes.
6     A.  -- there was information that was passed
7  over and that's where we found it.
8     Q.  Well --
9     A.  Because it was produced by Saiph.
10    Q.  My impression was that you were referring to
11 this information that's covered in the supplemental
12 report.
13       But, I guess, can you give me all the
14 information that you have about a September 2022 copy
15 of the MPFin database?
16    A.  I don't have the information.  Eric Mazur
17 has the information.  He's a better person to talk to
18 than I am.  He told me he had a copy of the
19 September '22 database.  I can't tell you right now
20 when it was created.
21    Q.  When did he tell you that?
22    A.  Over the past week.
23    Q.  Has this been disclosed to any other party
24 in this litigation?
25    A.  I don't know.



Office Phone: 954-712-2600
Email: info@ucrinc.com
Website: ucrinc.com

777 PARTNERS LLC and SUTTONPARK CAPITAL LLC vs LEADENHALL CAPITAL
Shapiro, Mark on 03/05/2025                           Pages 126..129

Page 126

1      Q.   What did he tell you about how he came to
2  learn of this copy?
3      A.   He told me he learned of the copy from
4  information that was provided from either Leadenhall
5  or Saiph.
6          MR. STARR:  Mr. Pellegrino, has this been
7  disclosed?  This copy, has it been disclosed to
8  the other parties in this case?
9          MR. PELLEGRINO:  It came from the other
10         parties in the case.
11         MR. STARR:  It came from the other parties
12         in the case?
13         MR. PELLEGRINO:  That's correct.  We were
14  unaware of it until disclosures.
15         MR. STARR:  From Saiph?
16         MR. PELLEGRINO:  Correct.
17  BY MR. STARR:
18     Q.   Was this covered in any of Mr. Mazur's
19  reports?
20         MR. PELLEGRINO:  You, not me.
21  BY MR. STARR:
22     Q.   Sorry.  Yeah, I'm asking -- sorry.  Back to
23  Mr. Shapiro.
24         Was this covered in any of Mr. Mazur's
25  reports?

Page 127

1      A.   No.  It was subsequent to Mr. Mazur's
2  reports.
3      Q.   And no information about a September 2022
4  copy of MPFin came from Leadenhall, correct?
5          MR. PELLEGRINO:  Objection to form.
6          THE WITNESS:  Say that again.
7  BY MR. STARR:
8      Q.   There was no information from Leadenhall
9  about the existence of a September 2022 copy of the
10  database, right?
11     A.   It came from Saiph.
12     Q.   And so this September 2022 copy, whether or
13  not it exists, that did not inform your decision
14  about -- or your thinking about Leadenhall's
15  involvement at the time of filing of suit, right?
16     A.   No, we didn't know about it.
17         MR. PELLEGRINO:  Objection to form.
18  BY MR. STARR:
19     Q.   And why did you testify earlier that it did?
20         MR. PELLEGRINO:  Objection to form.
21         THE WITNESS:  I shouldn't've -- it -- it
22  impacts it.  It wasn't the -- it wasn't there at
23  the time we were making the decision.  There were
24  other -- as I said, there were other copies that
25  we are aware of when we were making the decision.

Page 128

1      It wasn't the September '22 copy.
2  BY MR. STARR:
3      Q.   So these other copies, where did information
4  about them come from?
5      A.   I thought it was from the Mazur report.
6  Evidently it -- if -- if it's not in the report, I
7  don't know where it came from.
8      Q.   One second.  I'm having a tech issue.
9          So earlier today, Mr. Shapiro, when we were
10  discussing the factors that in your view linked the
11  intrusions to Leadenhall, you said that these were all
12  coincidentally linked to timeframes and aspects that
13  could affect the New York litigation.
14         And so I want to ask again about any factual
15  basis you have to link Leadenhall to the intrusions.
16  And I really want to ask you in terms of facts, not
17  coincidental, you know, circumstances, but -- but
18  facts and whether that's an e-mail or a phone call
19  communication, a document that you've seen, something
20  specific and concrete.  A specific concrete reason for
21  believing that something did or did not take place.
22  Do you understand what I'm looking for?
23         MR. PELLEGRINO:  Objection to form.
24         THE WITNESS:  Yes.
25  BY MR. STARR:

Page 129

1      Q.   Could you identify for me any and all
2  factual bases you have for the assertion that
3  Leadenhall directed Noah Davis to gain unauthorized
4  access to 777's systems?
5      A.   Other than the factors I had talked about,
6  which are circumstantial evidence and the evidence
7  that's listed in the complaint, I don't have any other
8  evidence.
9      Q.   Okay.  So how are plaintiffs funding this
10  lawsuit?
11     A.   Through funds that we discussed before.  We
12  pay attorneys out of corporate funds.  It's paid --
13  they're paid from asset sales and funding from A-CAP.
14     Q.   Could you estimate the amount of legal fees
15  and costs that plaintiffs have incurred in this
16  litigation?
17     A.   In this litigation?
18     Q.   Yes.  Just -- just Florida, not New York.
19     A.   Yeah.  The last number I saw was less -- it
20  was 370,000, something like that.  It's probably more.
21  That was maybe a month old.
22     Q.   And plaintiffs have also hired another law
23  firm to represent them in this matter; is that right?
24  Gunster?
25     A.   Local, yeah.  That would have been SGR.  So

**UNIVERSAL**
**COURT REPORTING**

**Office Phone:** 954-712-2600
**Email:** info@ucrinc.com
**Website:** ucrinc.com

Page 130

1 Gunster would be additional to that, yes.
2    Q.  Was Gunster hired by --
3       MR. STARR:  Well, withdraw that.
4 BY MR. STARR:
5    Q.  Who approved the retention of Gunster as
6 counsel?
7    A.  I guess that would be Ian, Ian Ratner.
8    Q.  Okay.  Did they require a retainer?
9    A.  Yes, but I don't know the amount.
10    Q.  Can you identify the claims that plaintiffs
11 are asserting in this lawsuit?
12       MR. PELLEGRINO:  Objection to form.
13 BY MR. STARR:
14    Q.  The actual legal claims.
15    A.  The legal claims?  I'd have to look at the
16 complaint.
17    Q.  Okay.  And it's your position -- well, is it
18 your position that plaintiffs have suffered damages as
19 a result of the conduct alleged in the complaint?
20    A.  Yes.
21    Q.  Could you measure those damages in terms --
22 in monetary terms?
23    A.  I think the last -- last compilation we put
24 together was approximately 200,000 of essentially
25 detect and remediate; 200,000 in attorneys, which is

Page 131

1 now higher, so put that at 4 or 500,000; and then the
2 advisors and managers and things like that.  The old
3 number we had was around 600,000 and growing with
4 attorneys' fees.
5    Q.  So you said 200,000 initially.  What was
6 that for?
7    A.  Basically Eric Mazur detect -- you know,
8 hiring people to fix -- you know, fix the systems and
9 essentially detect and remediate the -- the IT
10 systems.  That's my understanding.
11    Q.  Okay.  So one category of damages is the
12 cost of forensic experts to -- to remediate and -- and
13 scope the damage or the -- of the alleged intrusions?
14    A.  Investigate, scope, and remediate.  Put it
15 that way.
16    Q.  And Mr. Mazur is involved in that?
17    A.  Yes, some of that.
18    Q.  He also submitted an expert report?
19    A.  Yes.
20    Q.  Could you estimate and ballpark how much of
21 that category of damages is attributable to expert
22 witness work versus remediation and...?
23    A.  I can't.
24    Q.  Okay.  And then the other category --
25 categories of damages, is -- is that simply attorneys'

Page 132

1 fees?
2    A.  Which is now 400,000.  And then you have the
3 additional work that our people were doing at
4 Suttonpark.  That's pretty much the last.  It -- when
5 we came up with the estimate of 600,000, it was 200,
6 200, 200.
7    Q.  Okay.  So --
8    A.  Now I would say the attorneys' fees are
9 probably higher.
10    Q.  So -- so categories two and three then are
11 attorneys' fees and the cost -- hourly cost of B.
12 Riley personnel's attention to this matter?
13    A.  B. -- B. Riley and any other people that we
14 have to put on the -- on the case to monitor what's
15 going on down there, yeah.
16    Q.  So if you hadn't brought this litigation,
17 you wouldn't have incurred these fees, right?  So are
18 there any independent damages, independent of the
19 hiring of outside advisors?
20    A.  We don't know.
21       MR. PELLEGRINO:  Objection to form.
22       THE WITNESS:  We don't know.
23       MR. PELLEGRINO:  You've got to pause for a
24 second.
25       THE WITNESS:  Yeah.

Page 133

1       We don't know.  We don't know what -- if
2 there's been damage to the system.  We don't --
3 you know, that's still to be determined.  We
4 know -- you know, we don't know what's out there
5 right now and whether there's been damage to the
6 system that -- that could occur.  We don't know.
7 BY MR. STARR:
8    Q.  Do you think that pursuing this lawsuit is a
9 good use of funds for a cash strapped company?
10    A.  I do.  If -- if it wasn't a good use of
11 funds, we wouldn't be doing it.
12    Q.  And you want to keep pursuing the
13 litigation?
14    A.  Ultimately settlement is always -- always
15 good, but if we have to pursue it, we'll pursue it.
16    Q.  And why do you think that it's a good use of
17 funds?
18    A.  The company was damaged.  It's -- it's --
19 you have to -- I mean, there's -- there's -- if -- if
20 indeed that -- there's significant litigation going on
21 in New York.  If indeed there was data that was
22 extracted that is impacting our ability to defend that
23 case in New York, then we have to pursue it.  There's
24 a lot of money at stake up there.
25    Q.  Do you contend that there was data extracted



UNIVERSAL
COURT REPORTING

Office Phone: 954-712-2600
Email: info@ucrinc.com
Website: ucrinc.com

777 PARTNERS LLC and SUTTONPARK CAPITAL LLC vs LEADENHALL CAPITAL
Shapiro, Mark on 03/05/2025                      Pages 134..137

Page 134

1 that's impacting your ability to defend the case in
2 New York?
3    A.  I think I answered before.  I don't know
4 what was taken.  We don't know.  It's still to be
5 determined.
6    Q.  Okay.  How are you going to determine that?
7    A.  I'd have to ask the IT folks.
8    Q.  Expert work?
9    A.  Is that a question?
10    Q.  Would that be through expert work?  Sorry.
11        MR. PELLEGRINO:  Objection.
12        THE WITNESS:  Probably continued forensic
13    work, yes.
14 BY MR. STARR:
15    Q.  On top of the 400,000 you've already spent
16 to investigate?
17    A.  We have to find out what exactly was taken,
18 yeah.
19    Q.  Okay.  And in your view, all of that -- that
20 whole -- all those categories of damages are
21 recoverable in this case?
22        MR. PELLEGRINO:  Objection to form.
23        THE WITNESS:  Should be.
24 BY MR. STARR:
25    Q.  What do you know Agent Max Davis?

Page 135

1    A.  Just what I've read in -- in Eric's report.
2 He's the other Davis's son.
3    Q.  And he also --
4    A.  Noah -- he's Noah Davis's son.
5    Q.  Do you know whether he also worked for 777
6 Partners?
7    A.  I believe he did, yes.
8    Q.  Do you know what -- in what capacity?
9    A.  No.
10    Q.  What is your view or what do you think he
11 was trying to do with respect to plaintiffs' systems?
12        MR. PELLEGRINO:  Objection to form.
13        THE WITNESS:  I believe the report indicates
14    that they don't -- they don't -- it may not have
15    been Max, that it could have been Noah just using
16    Max's credentials and name for access.
17 BY MR. STARR:
18    Q.  Do you have concerns about 777 Partners'
19 cyber security practices with respect to old
20 credentials?
21        MR. PELLEGRINO:  Objection to form.
22        THE WITNESS:  Yes.  Obviously I think Shawn,
23    even in his -- I wouldn't say it's in his
24    deposition because I haven't seen his deposition,
25    but he believed that he turned off the credentials

Page 136

1 for Noah Davis and there were -- was access points
2 in either CrowdStrike or in the systems that --
3    that he didn't know about.  And so, yes, I do have
4    concerns that, you know, they should be
5    remediated.
6 BY MR. STARR:
7    Q.  And as to Max Davis, were his credentials
8 also left active?
9    A.  I believe they were terminated.
10    Q.  Then how did Max or someone using Max
11 Davis's credentials gain access?
12        MR. PELLEGRINO:  Objection to form.
13        THE WITNESS:  I don't know.
14 BY MR. STARR:
15    Q.  So are you -- have you been involved in the
16 discovery efforts in this case?
17    A.  What -- can you be more specific?
18    Q.  Yeah.
19        Have you been involved in responding to
20 discovery?
21    A.  Which discovery?
22    Q.  Any discovery.  Have you been involved in
23 responding to any discovery requests from Leadenhall
24 in this case?
25    A.  "In this case" you mean the Florida case?

Page 137

1    Q.  Yes.
2    A.  Just in this recent e-mail production.  I
3 was on the phone calls with -- with Smith Gambrell and
4 BakerHostetler last weekend.
5    Q.  Okay.  So you weren't involved in any -- you
6 weren't involved in any decisions about litigation
7 holds, for instance?
8    A.  No.
9        MR. PELLEGRINO:  Objection.
10        THE WITNESS:  Sorry.
11 BY MR. STARR:
12    Q.  Do you know who was?
13    A.  No, I don't.
14    Q.  And you weren't involved in responding to
15 any interrogatories?
16    A.  Yes, I was -- I was involved in that.
17    Q.  What was the nature of your involvement?
18    A.  I believe I signed the response, so I had to
19 understand them.
20    Q.  What do you mean you "had to understand
21 them"?
22    A.  I mean, I -- I'm responding on behalf of the
23 company.  I'm not responding personally, so I had to
24 run through them, agree with them.  If -- if any I --
25 I didn't understand or -- or agree, I thought

UNIVERSAL
COURT REPORTING

Office Phone: 954-712-2600
Email: info@ucrinc.com
Website: ucrinc.com

777 PARTNERS LLC and SUTTONPARK CAPITAL LLC vs LEADENHALL CAPITAL
Shapiro, Mark on 03/05/2025                    Pages 138..141

Page 138

1 something was wrong, I would have had to review those
2 with counsel.
3    Q.  And did you conduct any investigation to be
4 able to verify those responses?
5    A.  If I didn't know what the response was
6 about, yes, I did.
7    Q.  Did anyone assist you on that investigation?
8    A.  I don't recall on specifics who I would have
9 spoken to.  I don't know which response we're talking
10 about.
11    Q.  Did you consult with anyone in connection
12 with responding to any interrogatory?
13    A.  I spoke with counsel.
14    Q.  Okay.
15    A.  I don't believe I had to talk with anyone
16 else, just counsel.
17    Q.  All right.  Is your data, your --
18       MR. STARR:  Withdraw that.
19 BY MR. STARR:
20    Q.  Are any of your documents and communications
21 currently being preserved for purposes of this
22 litigation?
23    A.  Yeah, I'm not -- I've not delete anything.
24 Yes, they're being preserved.
25    Q.  And you were -- were you instructed at a

Page 139

1 particular point to preserve data?
2    A.  I don't know if it was or not.  I understand
3 litigation holds and I would've done it naturally.
4    Q.  So, yeah, I am referring to a litigation
5 hold.
6       When did a litigation hold come into effect?
7    A.  I don't know.  I don't know when it was
8 issued.
9    Q.  Okay.  Is there a litigation -- litigation
10 hold in place for this case at B. Riley?
11    A.  I'm not sure.  Our legal -- if it went to --
12 if there was a litigation hold, it would have gone to
13 our legal team in -- in New York.
14    Q.  Who at B. Riley is running point on this
15 litigation?  Is that you?
16    A.  Well, depends on what -- what area you're --
17 you're talking about.
18    Q.  Who's the primary client contact for this
19 litigation at B. Riley?
20       MR. PELLEGRINO:  Objection to form.
21       THE WITNESS:  Are you talking in relation to
22    B. Riley and preservation of documents or are you
23    talking about B. Riley as it relates to the goings
24    on at 777?
25 BY MR. STARR:

Page 140

1    Q.  Yeah.  See, so I'm talking about this
2 litigation that plaintiffs have filed, so 777 Partners
3 and Suttonpark being the plaintiffs.
4       What I'm asking is whether -- whether you
5 are the primary contact -- contact person within B.
6 Riley for this litigation?
7    A.  I would say it's both Ian Ratner and me
8 equally.
9    Q.  Do you direct the litigation or does
10 Mr. Ratner direct the litigation?
11    A.  We both do.
12       MR. STARR:  Can we mark that as -- what are
13    we at, 5?  Shapiro Exhibit 5, please.
14       (Shapiro Exhibit 5 was marked for
15    identification.)
16       MR. STARR:  For the folks on remotely, this
17    is Plaintiffs' Responses to Leadenhall's Request
18    For Admission.
19       THE WITNESS:  (Perusing.)
20 BY MR. STARR:
21    Q.  Have you ever seen this document before,
22 Mr. Shapiro?
23    A.  (Perusing.)
24    Q.  Did you assist in responding to these

Page 141

1 requests for admission?
2    A.  Yes.
3    Q.  I'll direct you to Request Number 7.
4    A.  (Complying.)
5    Q.  Let me know when you're there.
6    A.  I'm there.
7    Q.  Earlier today you testified that you have no
8 evidence that Leadenhall, in fact, received any
9 information obtained through Davis's unauthorized
10 intrusions, correct?
11       MR. PELLEGRINO:  Objection to form.
12       THE WITNESS:  No.  If -- if I -- I don't
13    believe that's what I said.
14 BY MR. STARR:
15    Q.  Okay.
16    A.  I said that the evidence is circumstantial.
17 You've taken that to mean there's no evidence.
18    Q.  Okay.  What evidence do you have that
19 Leadenhall received any information obtained through
20 Davis's alleged --
21       MR. PELLEGRINO:  Objection.
22 BY MR. STARR:
23    Q.  -- unauthorized intrusions?
24       MR. PELLEGRINO:  Objection to form.
25       THE WITNESS:  I think we've said frequently

**UNIVERSAL**
**COURT REPORTING**

**Office Phone:** 954-712-2600
**Email:** info@ucrinc.com
**Website:** ucrinc.com

777 PARTNERS LLC and SUTTONPARK CAPITAL LLC vs LEADENHALL CAPITAL
Shapiro, Mark on 03/05/2025                          Pages 142..145

Page 142

1    that the evidence is circumstantial.  You may not
2    agree that that's evidence, but it is
3    circumstantial.  We were talking about the copies
4    of the database, the Pasko e-mails, the Logee
5    e-mails, the other 9 or 10 factors that are listed
6    in the complaint.
7  BY MR. STARR:
8      Q.  So I think earlier when we discussed that,
9  that was in relation to a question I posed about
10 whether Leadenhall directed Davis's actions -- alleged
11 actions.  I'm now asking whether you have any evidence
12 that Leadenhall received any information that was
13 allegedly obtained by Davis.
14     A.  (Perusing.)
15         I believe this says that "substantial
16 circumstantial evidence exists demonstrating that
17 Leadenhall directed, encouraged, or induced Davis's
18 intrusions and may at some point have received,
19 reviewed, or possessed" --
20     THE COURT REPORTER:  Wait.
21     THE WITNESS:  -- "property or information
22 wrongfully obtained by Davis."
23     That's what it says in Number 7.
24     MR. PELLEGRINO:  Do you need him to read it
25 back?

Page 143

1    THE COURT REPORTER:  Yes.
2    MR. PELLEGRINO:  Go slow, please.
3    THE WITNESS:  "Substantial circumstantial
4  evidence exists demonstrating that Leadenhall
5  directed, encouraged, or induced Davis's
6  intrusions and may at some point have received,
7  reviewed, or possessed property or information
8  wrongfully obtained by Davis."
9  BY MR. STARR:
10     Q.  "May at some point have received," right?
11     A.  Correct.
12     Q.  Okay.
13     MR. STARR:  Let's mark this exhibit, please.
14     (Shapiro Exhibit 6 was marked for
15 identification.)
16 BY MR. STARR:
17     Q.  This will be Shapiro Exhibit 6.
18     A.  (Perusing.)
19     MR. PELLEGRINO:  Do you have a copy for me?
20     MR. STARR:  Yeah, I do.  But I have too many
21 things out.  One second.
22     MR. PELLEGRINO:  Thank you.
23 BY MR. STARR:
24     Q.  Mr. Shapiro, do you recognize this document?
25     A.  I do (perusing).

Page 144

1      Q.  This is --
2      MR. PELLEGRINO:  I'm sorry.
3  BY MR. STARR:
4      Q.  -- Plaintiffs' Responses --
5      MR. STARR:  Do you have the wrong one?
6      MR. PELLEGRINO:  Yeah.
7      MR. STARR:  Okay.
8      MR. PELLEGRINO:  They're the same document.
9      MR. STARR:  Oh, my bad.
10     THE WITNESS:  That's what I thought.
11     MR. PELLEGRINO:  Do you have the right one?
12     It's something different than the admissions.
13 BY MR. STARR:
14     Q.  Does yours say "interrogatories" or "request
15 for admission"?
16     A.  "First set of interrogatories."
17     No, I have the interrogatories.
18     Q.  Okay.
19     A.  The first one was because --
20     Q.  I just gave your counsel the wrong --
21     A.  Got it.
22     Q.  -- document is all.
23     Okay.  So these are "Plaintiffs' Responses
24 and Objections to Leadenhall's First Interrogatories,"
25 correct?

Page 145

1      A.  Correct.
2      MR. MORLAN:  And this is 6, right?
3      MR. STARR:  This is Exhibit Number 6, yes.
4  BY MR. STARR:
5      Q.  So I just want to direct you to
6  Interrogatory Number 4.
7      A.  (Complying.)
8      Q.  So this interrogatory refers back to Request
9  For Admission Number 7, which we just discussed --
10     A.  Yes (perusing).
11     Q.  -- right?
12     A.  Yes.
13     Q.  Okay.  This says -- Interrogatory Number 4
14 says "If You deny Request for Admission Number 7,
15 explain in detail the basis for Your denial and
16 identify with specificity what information Leadenhall
17 received from Davis, when and how Leadenhall received
18 such information, and how You learned of such facts,"
19 right?
20     A.  Yes (perusing).
21     Q.  Okay.  Could you please read the response to
22 Interrogatory Number 4 carefully?
23     And once you do, my question will be:  Does
24 it identify any information that Leadenhall received
25 from Davis?

**UNIVERSAL
COURT REPORTING**

Office Phone: 954-712-2600
Email: info@ucrinc.com
Website: ucrinc.com

777 PARTNERS LLC and SUTTONPARK CAPITAL LLC vs LEADENHALL CAPITAL
Shapiro, Mark on 03/05/2025                    Pages 146..149

Page 146

1    A.  (Perusing.)
2        Okay.
3    Q.  Okay.  So my question again:  Does it
4  identify -- does that response to Interrogatory Number
5  4 identify any information Leadenhall, in fact,
6  received from Davis?
7    A.  So it -- it lists the factors.  And then the
8  paragraph before says "Subject to and without waiving
9  any of the foregoing objection, Plaintiffs are aware,
10 at minimum, of the following facts, obtained from
11 managing Plaintiffs, access to records, current
12 employees, and information sufficient to be reasonably
13 informed, the investigation of counsel, and the
14 forensic investigation conducted by Eric Mazur,
15 supporting the inference that Leadenhall may have
16 received or reviewed some or all of the information
17 that Davis improperly accessed or obtained from
18 Plaintiffs' systems."
19        And then it goes into and lists the facts.
20   Q.  So it says "supporting the inference,"
21 right?
22   A.  Yes, it does.
23   Q.  Would you agree that there are no facts
24 cited that indicate Leadenhall actually received any
25 information?

Page 147

1        MR. PELLEGRINO:  Objection to form.
2        THE WITNESS:  I think the document speaks
3    for itself.  It lists the facts and says the facts
4    support the inference that they may have received
5    and reviewed some of the information.
6  BY MR. STARR:
7    Q.  Okay.  Do you think Request For Admission
8  Number 7 was properly denied or should it have been
9  admitted?
10       MR. PELLEGRINO:  Objection to form.
11       THE WITNESS:  I'd ask my counsel whether
12   that should have been admitted or not.
13 BY MR. STARR:
14   Q.  Did you provide input to responding to -- on
15 the responses to request for admission?
16   A.  Yes.
17   Q.  So I'm just asking in your view whether
18 Request For Admission Number 7 should have been
19 admitted or denied?
20       MR. PELLEGRINO:  Objection to form.
21       THE WITNESS:  It was denied.  I'm okay with
22   that.
23 BY MR. STARR:
24   Q.  One of the -- one of the items mentioned in
25 response to Interrogatory Number 4 is the forensic

Page 148

1  investigation conducted by Eric Mazur, right?
2    A.  Yes.
3    Q.  Do you know that Mazur testified he had no
4  evidence inculpating Leadenhall?
5    A.  I'm not aware of that.
6    Q.  Well, and earlier today you said that
7  Mr. Mazur's report did not link any intrusions to
8  Leadenhall, right?
9        MR. PELLEGRINO:  Objection to form.
10       THE WITNESS:  I did.
11 BY MR. STARR:
12   Q.  Okay.  So how would Mr. Mazur's report
13 demonstrate that Leadenhall received any information
14 allegedly obtained by Davis's intrusions?
15       MR. PELLEGRINO:  Objection to form.
16       THE WITNESS:  I -- I think there's mixed up
17   questions there.  Could you repeat the question?
18 BY MR. STARR:
19   Q.  Yeah.
20       So how would Mr. Mazur's report provide
21 evidence that Leadenhall received information obtained
22 by Davis through the intrusions?
23   A.  Let me answer it this way:  I'm aware that
24 the report didn't have any links to Leadenhall.  I
25 believe your question was did you know that Eric Mazur

Page 149

1  said he had no information.  He could have had more
2  information than was in the report.  I just said I --
3  I'm not aware that Eric said he had no information.
4    Q.  And so my question is:  How would
5  Mr. Mazur's report, which is what's -- the
6  investigation conducted by Mr. Mazur, how would that
7  support the response given to this interrogatory?
8        MR. PELLEGRINO:  Objection to form.
9        THE WITNESS:  (Perusing.)
10       It supports the facts that we listed.
11 BY MR. STARR:
12   Q.  Which facts are those?
13   A.  Many of these facts came from Mazur's
14 report.  I'm not sure exactly which ones were and
15 which ones weren't.
16   Q.  Okay.  So you can't identify which facts
17 came from Mr. Mazur?
18   A.  No, I can't.
19   Q.  Okay.
20       MR. PELLEGRINO:  Objection to form.
21       MR. STARR:  Let's take a quick break.  I may
22   be just about done, although the friends on screen
23   may have some questions for you, so...
24       THE VIDEOGRAPHER:  Sure.
25       Going off the record.  The time is 2:52.

UNIVERSAL
COURT REPORTING

Office Phone: 954-712-2600
Email: info@ucrinc.com
Website: ucrinc.com

777 PARTNERS LLC and SUTTONPARK CAPITAL LLC vs LEADENHALL CAPITAL
Shapiro, Mark on 03/05/2025                           Pages 150..153

Page 150

1        (A recess was taken.)
2        THE VIDEOGRAPHER: We're back on the record.
3    The time is 3:08.
4    BY MR. STARR:
5    Q.    Okay.  Mr. Shapiro, earlier today in your
6    testimony, Mr. Pasko was one person you specifically
7    identified as someone who believed Leadenhall was
8    behind Davis's intrusions, right?
9    A.    Yes.
10    Q.    Mr. Pasko is a former managing partner who
11    had to resign, right?
12    A.    Correct.
13    Q.    And he resigned the same weekend that
14    Leadenhall filed its complaint in New York?
15    A.    It might have been the next week, depending
16    on -- no, I think it was the same week.  You're right.
17    Q.    We filed our complaint on Friday, May 3rd.
18    A.    Then it would have been the following week
19    he resigned.
20    Q.    Okay.  And B. Riley was on the ground?
21    A.    Following week.
22    Q.    Okay.  Within days.
23        And he is accused of fraud in the New York
24    case, correct?
25    A.    Correct.

Page 151

1    Q.    Would you agree that Mr. Pasko therefore has
2    an interest in derailing the New York litigation?
3    A.    Yes.
4    Q.    So why would you take Mr. Pasko's word that
5    Leadenhall was behind it?
6    A.    I didn't say I took Pasko's word.  I said he
7    was one of many who said that Leadenhall was behind
8    this.  It wasn't just Steve Pasko.
9    Q.    So who else said that Leadenhall was behind
10    this?
11    A.    It was a group.  I don't think there was
12    anybody who didn't think Leadenhall was behind this.
13    Q.    Okay.  Can you identify all of the persons
14    who believed that Leadenhall was behind this?
15    A.    Chris O'Reilly, Ian Ratner, Mark Shapiro,
16    Jon Walder, Mollie Wander -- yes, she's Josh Wander's
17    sister -- Shawn Taheri, Jim Howard.  Hopefully I
18    didn't misrepresent their positions.
19    Q.    So all of those individuals, with the
20    exception of Mr. Howard, were employed by 777 Partners
21    over the period of time relevant to Leadenhall's New
22    York complaint, right?
23        MR. PELLEGRINO: Objection to form.
24    BY MR. STARR:
25    Q.    Well, let me ask it this way.

Page 152

1    A.    I'm not sure Chris O'Reilly was.  He would
2    be the one that I'm thinking of.
3    Q.    Okay.  Everyone else --
4    A.    I believe so.
5    Q.    -- you would agree?
6    A.    I believe so.
7    Q.    Okay.
8    A.    And Ian Ratner and myself.
9    Q.    Yes, I meant to refer only to the 777 folks.
10    A.    Well, Jim -- Jim Howard works for B. Riley.
11    Q.    Yeah.
12        So -- and B. Riley wasn't involved at 777
13    Partners until after Mr. Davis resigned?
14    A.    Correct.
15    Q.    Right.
16        So what did or did the B. Riley team do
17    anything to verify the beliefs of the 777 employees
18    you just identified?
19    A.    Well, we hired Eric Mazur to do the forensic
20    investigation, to aggregate the evidence.  Again, much
21    of the evidence is circumstantial, which you don't
22    agree is evidence, but it is circumstantial evidence.
23    We assess the evidence, discussed it with counsel, we
24    came to our decision.
25    Q.    Okay.  At the time that you decided to file

Page 153

1    this lawsuit, did you have any hope that it would slow
2    the progress or distract from the New York litigation?
3    A.    That wasn't -- that wasn't my belief or
4    hope.
5    Q.    Was that a factor discussed amongst the
6    nonlawyers that you identified?
7    A.    I don't recall that being discussed.
8    Q.    But you would agree that the 777 Partners
9    team, which is implicated in the fraud alleged by
10    Leadenhall in New York, would have an interest in
11    slowing down or derailing the New York litigation?
12        MR. PELLEGRINO: Objection to form.
13        THE WITNESS: No, I don't agree with that.
14    BY MR. STARR:
15    Q.    Why not?
16    A.    I -- I don't -- I don't think there's --
17    look, I can't -- I can't speak -- maybe I shouldn't
18    say I do not.  I can't speak for them.  I don't know
19    what they believe.  Let me restate that.
20    Q.    Okay.
21        MR. STARR: No further questions for
22    Leadenhall at this time.
23        Does counsel for Saiph or Davis have?
24    MR. MORLAN: Yes.
25        CROSS-EXAMINATION

UNIVERSAL
COURT REPORTING

Office Phone: 954-712-2600
Email: info@ucrinc.com
Website: ucrinc.com

777 PARTNERS LLC and SUTTONPARK CAPITAL LLC vs LEADENHALL CAPITAL
Shapiro, Mark on 03/05/2025                     Pages 154..157

Page 154

1 BY MR. MORLAN:
2    Q.   Mr. Ratner, my name is Hal Morlan.  I'm an
3 attorney representing Saiph Consulting LLC and Paul
4 Kosinski in this litigation.
5        Are you familiar with who my clients are?
6    A.   I am.  And I'm -- I'm Mr. Shapiro.  Tomorrow
7 is Mr. Ratner.
8    Q.   Did I call you Mr. Ratner?  I'm --
9    A.   Yeah.
10    Q.   I'm sorry, Mr. Shapiro.
11        So, Mr. Shapiro, have you ever met Paul
12 Kosinski?
13    A.   I don't believe I have.
14    Q.   Have you ever met Noah Davis?
15    A.   No.
16    Q.   Have you ever met Kenneth King?
17    A.   Yes.
18    Q.   How did you meet Kenneth King?
19    A.   We had a settlement conference in New York.
20 He was at the settlement conference.
21    Q.   Okay.  Have you spoken with Mr. King about
22 the litigation that we're here on today?
23    A.   I don't believe so.
24    Q.   Have you spoken with Mr. King about the
25 litigation in New York between Leadenhall and 777?

Page 155

1    A.   Just in -- my only conversations with him
2 are can we please find a way to settle this.  We don't
3 go into specifics.
4    Q.   Okay.  And when you said -- I believe you
5 said earlier that you didn't believe you talked to
6 Mr. King about the litigation that we're here today;
7 is that correct?
8    A.   I don't -- I don't think so.  I -- I mean,
9 he -- I may have talked to him and said I'm going for
10 a deposition.  I -- I don't -- I mean, I want to be
11 factually correct.  We really -- we haven't spoken
12 about the case, but I can't say that I might not have
13 said, oh, I'm going into a deposition in the
14 litigation in Florida and he could have said, you
15 know -- you know, I -- I don't know what he said.
16    Q.   Okay.
17    A.   But -- but it -- it wouldn't be in detail
18 about the case if I spoke about anything with him.
19    Q.   When was the last time you spoke to Shawn
20 Taheri about the subject matter of the litigation that
21 we're here on today?
22    A.   It's -- it's been some time, months.
23    Q.   When was the last time that you spoke with
24 Mr. Mazur about the litigation that we're here on
25 today?

Page 156

1    A.   I spoke with him a couple of days ago.
2    Q.   And what did you learn during your
3 conversation with Mr. Mazur a couple days ago?
4        MR. PELLEGRINO:  Objection to form.
5        THE WITNESS:  We talked about the
6    September 2022 copy of the MPFin.  I wanted to
7    understand how he discovered more detail about how
8    he discovered that and how he came to be aware of
9    it.
10 BY MR. MORLAN:
11    Q.   Okay.  And how did he discover it?
12    A.   I don't want to speak for him.  I'll -- I'll
13 tell you what my understanding is.  He found it -- he
14 found out about it from documents that were pro- --
15 that were produced by Saiph as part of this
16 litigation.
17    Q.   And are you saying that he found an actual
18 copy of the September of 2022 MPFin database?
19        MR. PELLEGRINO:  Objection to form.
20        THE WITNESS:  I believe he found reference
21    to it, that it was copied.  I can't tell you
22    whether or not he's actually seen the copy.  You'd
23    have to talk to him.
24 BY MR. MORLAN:
25    Q.   So Mr. Mazur told you that he found a

Page 157

1 reference to an MPFin backup from September '22 being
2 copied?
3    A.   I don't want to -- I don't want to mix words
4 or misrepresent what Eric told me.  My understanding
5 was that there are references to a 9/22 copy of the
6 MPFin database.  Eric would know in specific technical
7 terms what he saw, how it was referenced, whether he
8 saw a copy.  He would be better at it than I would.
9    Q.   And is it your understanding that Mr. Mazur
10 found this reference to the 2022 MPFin database by
11 looking at forensic data?
12    A.   No.
13    Q.   This was just in some of the documents that
14 Saiph produced?
15    A.   That's my understanding.
16    Q.   Okay.  Have you seen the document at -- at
17 issue?
18    A.   I have not.
19    Q.   But it's your testimony that this issue with
20 respect to the September 22nd [sic] MPFin file
21 reference is important to this litigation?
22        MR. PELLEGRINO:  Objection to form.
23        THE WITNESS:  Could you repeat that?
24 BY MR. MORLAN:
25    Q.   Sure.



**UNIVERSAL**
**COURT REPORTING**

Office Phone: 954-712-2600
Email: info@ucrinc.com
Website: ucrinc.com

777 PARTNERS LLC and SUTTONPARK CAPITAL LLC vs LEADENHALL CAPITAL
Shapiro, Mark on 03/05/2025    Pages 158..161

Page 158

1    Is it your testimony that what you learned
2 from Eric Mazur about references to a September 2022
3 version of MPFin is a significant fact in this
4 litigation?
5    A.  That was -- if -- if it was important to
6 Eric.  I -- I believe if it's important to Eric, then
7 it's important to me.
8    Q.  Okay.  How did Eric explain the importance
9 of it to you?
10    MR. PELLEGRINO:  Objection to form.
11    THE WITNESS:  It was the importance of the
12    timing and how it relates to the original
13    Leadenhall complaint.  The -- if I remember my
14    dates correctly, the original tip to Leadenhall
15    of -- of suspected fraud at 777 was in September
16    of 2022.
17 BY MR. MORLAN:
18    Q.  Did -- has Eric Mazur uncovered any forensic
19 evidence of where the September 2022 MPFin file that
20 you're referencing came from?
21    A.  You'd have to talk to Eric.  I don't know.
22    Q.  Okay.  Other than the coincidence of the
23 timing of the date of that MPFin file and some
24 allegations in a complaint, are there any -- is there
25 any other significance as to the reference to the 2022

Page 159

1 MPFin file with respect to your views in this
2 litigation?
3    A.  Well --
4    MR. PELLEGRINO:  Objection to form.
5    THE WITNESS:  Well, just the fact that they
6    would copy a file of -- of the data for a client
7    that is in litigation with the company that
8    they're in -- they're -- they're doing the audit
9    on is -- I think is important.  Regardless of the
10    date.  I think September '22 is a very important
11    date, but just any date I think regardless if
12    they're making copies of the data files.
13 BY MR. MORLAN:
14    Q.  Okay.  So one aspect of the significance of
15 it, I believe you're testifying to, is the timing; is
16 that correct?
17    A.  Yes.
18    Q.  Okay.
19    MR. PELLEGRINO:  I'm going to object to
20    form.  I'm sorry.
21 BY MR. MORLAN:
22    Q.  And then the other aspect that you said is
23 important is the fact that they are making copies of
24 it. Is that what -- that what you stated just now?
25 Did I understand you correctly?

Page 160

1    A.  I mean, stated making copies.  I mean,
2 having access, possibly changing -- you know, I don't
3 want to limit it to just making a copy.  It's
4 basically accessing the data, making copies of the
5 data, potentially uploading it to -- there's a whole
6 host of things that could happen.  It was unauthorized
7 intrusion and who knows what was done in there.
8 It's -- it's all important.
9    Q.  And -- and when you said "they," who is
10 they?
11    A.  When I say "they," I mean Saiph and Noah and
12 to the extent Paul is Saiph -- Saiph, Paul.
13    Q.  You mentioned intrusions.  There's not
14 actually any forensic evidence tying this 2022 MPFin
15 file to any of the intrusions, is there?
16    MR. PELLEGRINO:  Objection to form.
17    THE WITNESS:  I don't know.  You'd have to
18    ask Eric.
19 BY MR. MORLAN:
20    Q.  Okay.  Have you read Mr. Mazur's reports?
21    A.  I have.
22    Q.  Okay.  And you've spoken with Mr. Mazur
23 about this case, correct?
24    A.  Yes.
25    Q.  Okay.  And has Mr. Mazur been available to

Page 161

1 answer any questions you have about this case to you
2 as a resource?
3    A.  Yes.
4    Q.  Has Mr. Mazur refused to answer any of your
5 questions about this case?
6    A.  No.
7    Q.  Did you ask Mr. Mazur if he had any forensic
8 evidence tying the purported 2022 MP file to any of
9 the intrusions he identified in any of his reports?
10    A.  Did I personally ask him that question?
11    Q.  Correct.
12    A.  No.
13    Q.  Why not?
14    A.  There's a lot going on.  There's a lot of
15 people involved in the investigation.  I've talked to
16 Eric a few times during the investigation, but there's
17 other people involved as well.  Just not me.
18    Q.  Okay.  Who else is involved in the
19 investigation?
20    A.  I think I represented before that it would
21 be Shawn Taheri, Jim Howard, probably to a lesser
22 extent Teresa Licamora, Chris O'Reilly, Jon Walder,
23 possibly Mollie Wander.  Quite a few people.  But the
24 people actually doing the investigation primarily are
25 Eric and -- and Shawn.

**UNIVERSAL**
**COURT REPORTING**

**Office Phone:** 954-712-2600
**Email:** info@ucrinc.com
**Website:** ucrinc.com

777 PARTNERS LLC and SUTTONPARK CAPITAL LLC vs LEADENHALL CAPITAL
Shapiro, Mark on 03/05/2025      Pages 162..165

Page 162

1   Q.   Okay. Yes, because I was just going to ask
2 when I -- when I asked Mr. Taheri who was involved in
3 the investigation, he told me that it was him and
4 Mr. Mazur. Do you have any reason to disagree with
5 him on that?
6   A.   No. That's why I was just saying when it
7 comes to the actual investigation, it was him and
8 Eric.
9   Q.   Okay. Have there been any other cyber
10 security incidents or breaches during your tenure at
11 Suttonpark and 777?
12     MR. PELLEGRINO: Subjection -- or objection
13 to form.
14     THE WITNESS: I'm not aware of any. Shawn
15 may, but I don't.
16 BY MR. MORLAN:
17   Q.   And what information -- what additional
18 information did you ask Mr. Mazur about this
19 September 22nd [sic] MPFin file?
20     MR. PELLEGRINO: Objection to form.
21     THE WITNESS: It was just general questions
22 to understand where he found -- what he found --
23 how he found it and where it was located.
24 BY MR. MORLAN:
25   Q.   Where was it located?

Page 163

1   A.   I'm saying in the documents that came from
2 Saiph. How he -- how he discovered it.
3   Q.   How did he discover it?
4   A.   I just said, from the documents. He -- it
5 was listed in the documents that came from Saiph. I
6 can't tell you any more than -- I don't know context.
7 It was a technical file that he looked at or whether
8 it was just a reference to a file.
9   Q.   Have you reviewed any documentation about
10 this 2022 MPFin file?
11   A.   No.
12   Q.   Besides Shawn Taheri and Mr. Mazur, is there
13 anyone at 777 or B. Riley that's more knowledgeable
14 about the investigations relevant to this case than
15 you and Mr. Ratner?
16   A.   Jim Howard may be more up to speed on the
17 investigations than me and Mr. Ratner from the B.
18 Riley side.
19   Q.   So what were the questions that you asked
20 Mr. Mazur about the 2022 MPFin file referenced?
21   A.   How did you find out about it.
22   Q.   Okay. And -- and his answer was --
23   A.   And when -- and when -- and when did --
24   Q.   -- it was in some documents produced by
25 Saiph?

Page 164

1   A.   Correct.
2   Q.   And did you ask any follow-up question
3 besides that?
4   A.   I don't recall in detail. It was, you know,
5 when did -- when did you find it? When did you get
6 the documents? That's most of the questioning.
7   Q.   And when did he get the documents?
8   A.   It was in the documents that were produced
9 from Saiph. Fairly recently, I believe it was over
10 the past few weeks.
11   Q.   So not the exchange of potential 777 data,
12 those files that were provided?
13   A.   I don't -- I don't know.
14   Q.   I want to understand your role at 777 and --
15 and B. Riley just a little bit better. I don't want
16 to belabor it, but am I correct that you're the acting
17 chief operating officer of 777?
18   A.   I believe the title is --
19   Q.   Is that right?
20   A.   -- interim chief operating officer.
21   Q.   And big picture, what are your areas of
22 responsibilities as the chief operating officer?
23   A.   I think I listed our duties in the -- in the
24 declaration, but it's typical of a chief restructuring
25 officer in other engagements. You're managing the

Page 165

1 finances. You're doing budgets and forecasts. You're
2 working with the lenders.
3     In this particular instance, we're -- we're
4 charged with trying to resolve litigation disputes.
5 We're -- we're, for better or for worse, running the
6 company and trying to monetize the assets.
7   Q.   And when you are referring to your
8 declaration, are you referring to declaration in this
9 matter or are you referring to your declaration in the
10 New York matter?
11   A.   In the New York matter.
12   Q.   And I believe that --
13     MR. MORLAN: Did we mark the New York
14 declaration as an exhibit earlier?
15     MR. STARR: I think that was Number 1, yeah.
16     MR. MORLAN: Okay.
17 BY MR. MORLAN:
18   Q.   And have you done any declarations in this
19 litigation? And you understand when I say "this
20 litigation," I'm referring to the case that we're here
21 on that's pending in the Southern District of Florida,
22 correct?
23   A.   Correct. I did -- I did make a declaration
24 in the -- in the Florida litigation.
25   Q.   And are all the statements contained within

UNIVERSAL COURT REPORTING

Office Phone: 954-712-2600
Email: info@ucrinc.com
Website: ucrinc.com

777 PARTNERS LLC and SUTTONPARK CAPITAL LLC vs LEADENHALL CAPITAL
Shapiro, Mark on 03/05/2025                                    Pages 166..169

Page 166

1 that declaration true and accurate?
2    A.   To the best and to my knowledge, yes.
3    Q.   And did you review the complaint that was
4 filed in this action in September prior to its being
5 filed?
6    A.   Yes.
7    Q.   And at the time you reviewed that complaint,
8 did you understand all of the allegations in that
9 complaint to be true?
10    A.   It's my under- -- well, the allegations to
11 be true, yes.
12    Q.   You hesitated there for a second.  Is -- is
13 there a reason?  Is there some that you're unsure
14 about now?
15    A.   No.
16    Q.   Okay.  So as part of your duties as the
17 chief operating officer, you listed several different
18 things.  But -- but one of them that's particularly
19 important here is, as I understand it, you're
20 responsible for managing 777 litigation, correct?
21    A.   (Perusing.)
22    Q.   May I ask what you're looking at?
23    A.   I'm looking at the declaration.
24    Q.   Okay.  Exhibit 1.
25        If you could -- if you're going to refer to

Page 167

1 a document, please let me know.
2    A.   (Perusing.)
3    Q.   We can go off the record if you need some
4 time to review that declaration.
5    A.   No, I'm just looking for the language.  I'm
6 looking for the language on -- on what we're doing
7 with the litigation.  I want to make sure that I'm --
8 I'm reading it correctly.
9    Q.   So you don't know without reference to a
10 document what your role is with respect to 777
11 litigation?
12    A.   Yes, I do.  But I'm in a deposition and I
13 want to make sure I represent it accurately and don't
14 contradict anything that's in a declaration.
15    Q.   Okay.  Well, we'll go off the record while
16 you read that.  And you can just let the court
17 reporter know when you're ready.
18    A.   Okay.
19        THE VIDEOGRAPHER:  Going off the record.
20    The time is 3:34.
21        (A recess was taken.)
22        THE VIDEOGRAPHER:  Okay.  We're back on the
23    record.  The time is 3:37.
24        THE WITNESS:  Could -- could -- could you
25    repeat the question?

Page 168

1 BY MR. MORLAN:
2    Q.   Mr. Shapiro, have you had an opportunity to
3 review the -- your declaration in the New York
4 litigation?
5    A.   I did.  It -- it's not -- what I was looking
6 for isn't in there.  But it's okay.  Could you repeat
7 the question?
8    Q.   Yes.
9        My -- my question is:  What is your role
10 with respect to managing litigation for 777?
11    A.   Both Ian Ratner and myself, one of our
12 duties is to manage the litigation and trying to
13 resolve the litigation conflicts wherever we can.
14    Q.   And when you say "litigation conflicts,"
15 what do you mean by conflicts there?
16    A.   Well, there's a lot of conflicts in the
17 litigation.  Maybe it's -- it's redundant, you know,
18 superfluous words.  But there's a lot of litigation, a
19 lot of matters, and we're trying to resolve wherever
20 we can.
21    Q.   And one of the lawsuits that you're trying
22 to resolve is the one that we're here on today,
23 correct?
24    A.   Correct.
25    Q.   Okay.  And another one that you're trying to

Page 169

1 resolve is what we're referring to as the New York
2 litigation between Leadenhall, 777, 777's principals,
3 and others; is that correct?
4    A.   Correct.
5    Q.   And how does your -- the fiduciary duties
6 that you have that you talked about earlier, how did
7 those inform and affect your role with respect to
8 managing litigation in your role as the COO for 777?
9        MR. PELLEGRINO:  Objection to form.
10        THE WITNESS:  I think like any decision,
11    it's you're a fiduciary.  You have business
12    judgment.  You have to listen to your counsel,
13    assess the -- the claims, and -- and determine --
14    make a determination whether it makes sense to go
15    forward or not.
16 BY MR. MORLAN:
17    Q.   And what does it mean to you when you say
18 you need to exercise business judgment?
19    A.   Well, there's costs of litigations.
20 There's -- there's potential claims in litigation.
21 You have to assess risk.  You know, ultimately much of
22 this is a business decision.
23    Q.   And when you say it's "a business decision,"
24 do you mean it comes down to a -- largely a dollars
25 and cents cost benefit analysis?

**UNIVERSAL**
**COURT REPORTING**

**Office Phone:** 954-712-2600
**Email:** info@ucrinc.com
**Website:** ucrinc.com

777 PARTNERS LLC and SUTTONPARK CAPITAL LLC vs LEADENHALL CAPITAL
Shapiro, Mark on 03/05/2025                           Pages 170..173

Page 170

1   A.  That's part of it, yes.
2   Q.  Besides the litigation that we're here on
3   today, has 777 or Suttonpark brought any other
4   lawsuits during the time that you've been an officer?
5   A.  I'm aware of other law enforcements where
6   we're plaintiffs, but I don't know whether -- I can't
7   recall whether they were brought -- I think they were
8   all brought before we were in as opposed to after.
9   Q.  Approximately how many lawsuits are you
10  managing where 777 and/or Suttonpark or their
11  affiliates as a plaintiff?
12  A.  I don't -- I don't have a total.  It's
13  not -- not a lot.  It's single digits.  I just don't
14  know a total.
15  Q.  Are there any other lawsuits where 777 and
16  Suttonpark are suing their lender?
17  A.  I don't believe so.  There may be, but I --
18  I -- I don't know of any.
19  Q.  Okay.  Are there any other lenders to 777 or
20  Suttonpark that are suing 777 or Suttonpark?
21  A.  Yes.
22  Q.  And is one of those plaintiffs Obra?
23  A.  I've heard that name before in this
24  deposition.  I'm not aware of Obra.
25  Q.  Okay.  So you're not familiar with any

Page 171

1   litigation between Obra and 777?
2   A.  I am not.
3   Q.  And in fairness to you, it sounds like you
4   have more responsibilities than just monitoring the
5   litigation, correct?
6   A.  Yes.
7   Q.  And as part of exercising your business
8   judgment, you have to constantly set priorities; is
9   that right?
10  A.  Correct, yes.
11  Q.  Would you say that's an important part of
12  your job as the chief operating officer for 777 and
13  Suttonpark?
14  A.  It's a part of it.  I don't know if it's
15  most important, but it's -- it's important.
16  Q.  So you would agree that it is -- that --
17  that setting priorities is an important part of your
18  job?  Not necessarily the most important, but it is an
19  important part of your job?
20  A.  Yes.
21  Q.  Okay.  What litigation, if any, is among the
22  highest priority cases that you're managing right now
23  for 777 and Suttonpark?
24  A.  Wow.  It's a difficult question.  Well, the
25  Leadenhall litigation in New York is -- is always out

Page 172

1   there.  That's an important one.  But there are other
2   cases, smaller cases that are -- constantly have
3   deadlines, either monies due for arbitration or
4   deadlines coming up that we have to show for.  So it's
5   quite -- quite a few of -- maybe not as large as
6   Leadenhall, but cases.  And I can't -- I can't say
7   right now which ones they are, but there -- there's --
8   they're -- they're constant.  There's a lot of
9   litigation here.
10  Q.  For purposes of your cost benefit assessment
11  in managing the New York litigation, have you
12  accessed -- I'm sorry, have you assessed the potential
13  exposure of 777 and Suttonpark?
14  A.  How do you mean?
15  Q.  Do you not understand what I mean when I ask
16  if you've assessed the company's exposure in
17  litigation?
18  A.  Well, I know what exposure in litigation
19  means.  But which specifically -- how do you mean it
20  with -- relating to -- is that the New York matter
21  you're talking about?
22  Q.  Yes, I'm -- I'm -- I'm asking you:  Have you
23  assessed the potential exposure of 777 and Suttonpark
24  in the New York litigation?
25  A.  Well, the exposure, Leadenhall's complaint

Page 173

1   is for 600-plus million.
2   Q.  Okay.  And what does it mean to you in terms
3   of assessing exposure?  How do you go about assessing
4   exposure in a lawsuit?
5   A.  Well, much of it has to do with working with
6   counsel and trying to get their assessment of risk
7   and -- and possibilities of outcome.  I think it's a
8   little bit too early in this -- this stage for real
9   risk assessment on -- on Leadenhall right now on the
10  New York matter.
11  Q.  But their claim, I believe you testified to,
12  is for $600 million?
13  A.  That's their claim, yes.  More than
14  $600 million.
15  Q.  Whose claim?
16  A.  Leadenhall's.
17  Q.  Oh, that's not my claim.  I just want to be
18  clear on that.  I represent Saiph and Kosinski.
19  A.  No, we're talk -- I -- wait.  Now -- now
20  I'm real confused.  Sorry, let's backtrack for a
21  second.  I thought you were talking about the New York
22  matter.
23  Q.  I am talking about the New York matter.  I'm
24  asking you about the New York matter.
25  A.  Okay.  In the New York matter, Leadenhall's

UNIVERSAL
COURT REPORTING

Office Phone: 954-712-2600
Email: info@ucrinc.com
Website: ucrinc.com

777 PARTNERS LLC and SUTTONPARK CAPITAL LLC vs LEADENHALL CAPITAL
Shapiro, Mark on 03/05/2025                          Pages 174..177

Page 174

1 claim against the 777 parties and the individuals is
2 more than $600 million.
3    **Q.   And does their claim include any potential**
4 **treble damages based on what their allegations are?**
5    A.   Right.  There's RICO claims in there, yes.
6    **Q.   Okay.  So does that $600 million exposure**
7 **you stated earlier, did it -- does that include the**
8 **treble damages or is that before the treble damages?**
9    A.   It's -- it's before the treble damages.
10    **Q.   Okay.  So if they're alleging 600 million in**
11 **actual damages and they're alleging treble damages,**
12 **would it be Saiph to say that the exposure then is**
13 **$1.8 billion?**
14    A.   If you assume that the RICO claims are
15 legitimate, yes, it would be $1.8 million --
16 1.8 billion.
17    **Q.   Okay.  Do you have a view as you sit here**
18 **today as to whether or not the RICO claims have any**
19 **merit?**
20        MR. PELLEGRINO:  Objection to form.
21        THE WITNESS:  Our counsel have a view, and
22    I'm not sure I can talk about our counsel's views.
23 BY MR. MORLAN:
24    **Q.   I'm not asking about your counsel's views.**
25 **I'm asking about your views as the chief operating**

Page 175

1 officer and a manager of the litigation on what you've
2 identified as one of the most significant pieces of
3 litigation that you're managing that has $1.8 billion
4 in potential exposure that you've acknowledged.
5        MR. PELLEGRINO:  Objection to form.
6 BY MR. MORLAN:
7    **Q.   So what is your view as to the merits or**
8 **non-merits of the RICO claim in the New York**
9 **litigation?**
10        MR. PELLEGRINO:  Objection to form.
11        THE WITNESS:  I'm not an attorney.  And on
12    that particular issue, I'm taking the advice of
13    counsel.
14        MR. MORLAN:  Okay.  Move to strike,
15    nonresponsive.
16 BY MR. MORLAN:
17    **Q.   My question is:  What is your view as to the**
18 **merits of the RICO claim in that case?**
19        MR. PELLEGRINO:  Objection to form.
20        THE WITNESS:  I thought I -- I'm -- I
21    thought any conversations with my -- my counsel
22    are privileged.
23        MR. PELLEGRINO:  They are.  And he's not
24    asking for any --
25 BY MR. MORLAN:

Page 176

1    **Q.   I'm asking your view.**
2    A.   I don't believe they're legitimate.
3    **Q.   Okay.  And what is that based on?**
4    A.   Based on discussions with my counsel.
5    **Q.   Okay.  And do you have any independent**
6 **factual basis or specific pieces of evidence that**
7 **you've considered in forming the opinion that those**
8 **allegations do not have merit?**
9        MR. PELLEGRINO:  Other than the sum and
10    substance of what you've discussed with counsel.
11        MR. MORLAN:  I'm asking him what his views
12    are.
13        THE WITNESS:  Nothing other than what I've
14    discussed with counsel.
15 BY MR. MORLAN:
16    **Q.   Okay.  So to the extent that you learned**
17 **about a -- a fact or a piece of evidence that is**
18 **relevant to your view and you learned that from**
19 **counsel, you think that you don't have to testify as**
20 **to that?**
21    A.   I don't have any --
22    **Q.   Is that what you're saying?**
23    A.   I don't have any other facts other than what
24    I've discussed with counsel.
25    **Q.   Okay.  So my question is, just to be clear:**

Page 177

1 **What facts do you rely upon in exercising your**
2 **independent professional judgment and overseeing this**
3 **litigation to conclude that the RICO allegations do**
4 **not have merit?  I'm not asking for legal arguments.**
5 **I'm just asking for facts.**
6    A.   I'm not an attorney.  I don't have any other
7 facts other than what I've discussed with my counsel.
8    **Q.   Okay.**
9        MR. MORLAN:  Are you instructing the witness
10    not to answer the question as to what facts that
11    he relies upon for that conclusion?  Are you
12    asserting that that's privileged, Mr. Pellegrino?
13        MR. PELLEGRINO:  No.  He just answered the
14    question.
15        MR. MORLAN:  Well, no.  He refused to answer
16    the question.  He -- he basically invoked
17    privilege himself.
18        MR. PELLEGRINO:  I believe that's his right.
19        MR. MORLAN:  Okay.  So just to be clear
20    then, you are not instructing the witness not to
21    answer my question; is that correct?
22        MR. PELLEGRINO:  That's correct.
23 BY MR. MORLAN:
24    **Q.   Okay.  So, Mr. Shapiro, are you refusing to**
25 **answer my question on grounds of privilege?**

**UNIVERSAL**
**COURT REPORTING**

**Office Phone:** 954-712-2600
**Email:** info@ucrinc.com
**Website:** ucrinc.com

777 PARTNERS LLC and SUTTONPARK CAPITAL LLC vs LEADENHALL CAPITAL
Shapiro, Mark on 03/05/2025                            Pages 178..181

Page 178

1    A.  No.  I've responded to your question.  I
2 don't have any other facts other than what I've talked
3 about with my counsel.  There are no other facts.
4    **Q.  That's not privileged.  That's not**
5 **privileged and he's not instructing you not to answer.**
6 **So I'm going to ask you again one last time and you**
7 **either state the facts or you refuse to answer.  But**
8 **if you refuse to answer, we're going to go before the**
9 **court and we're going to have to come back and do this**
10 **again and you're going to have to answer the question.**
11 **So -- but it's totally up to you.**
12       **So what facts have you relied upon in**
13 **forming your conclusion that the RICO allegations in**
14 **the New York matter lack merit?**
15       MR. PELLEGRINO:  Objection to form.
16       THE WITNESS:  I'll say it again.  I don't
17    have any other facts other than what I've told you
18    and what I've discussed with my counsel.
19 BY MR. MORLAN:
20    **Q.  So you have told me all of the facts or not?**
21    A.  I don't have any other facts.
22    **Q.  You haven't told me any facts as to why**
23 **you've concluded the allegations in the New York**
24 **action lack merit.**
25    A.  Do we have -- do you have the New York

Page 179

1 complaint?
2    **Q.  I -- I'm -- I'm asking you what facts you're**
3 **relying on.  So you don't know as you sit here today?**
4    A.  I would like to look at our objection to the
5 New York complaint.  Is that document available?
6    **Q.  Okay.  You may get to do that in a minute,**
7 **but right now I'm asking you what you know now without**
8 **looking at the complaint.  You said you knew it lacked**
9 **information.  You said you had facts that was based**
10 **on.  You refused to answer for a while.  And then when**
11 **pressed on it you've said now that you don't know.  So**
12 **if you don't know, you don't know.  But if you know**
13 **and you have some facts that you've relied on, I would**
14 **like to know what those are.  And then if you want to**
15 **look at the complaint afterwards, that's fine.  But**
16 **you told me that it lacked merit and you were basing**
17 **that on facts and I would like for you to testify as**
18 **to what those facts are.**
19    A.  The facts are what's listed in the re- --
20 the objection to the complaint in New York.  That's
21 what I'm relying upon.
22    **Q.  The objection?  What is the objection to the**
23 **case in New York?**
24       MR. PELLEGRINO:  Objection to form.
25       MR. MORLAN:  What's your objection to form?

Page 180

1       MR. PELLEGRINO:  You're -- you're asking him
2    for a legal conclusion where he --
3       MR. MORLAN:  No, I'm not.
4       MR. PELLEGRINO:  Well, he's --
5       MR. MORLAN:  That's -- that's you.
6       MR. PELLEGRINO:  He's not a lawyer.
7 BY MR. MORLAN:
8    **Q.  Did you understand my question?**
9    A.  No, I did not.
10    **Q.  Okay.  I believe you just told me that the**
11 **facts that you're relying on are in the objection to**
12 **the complaint; is that correct?**
13    A.  The response to the complaint.  Is it called
14 the response to the complaint or the -- our response
15 to the Leadenhall complaint.  The defendants' response
16 has --
17    **Q.  Do you mean the -- the answer and**
18 **affirmative defenses?**
19    A.  I -- I -- if that's what it's called, yes.
20 And I believe there are responses that address the
21 RICO claims.  If I could look -- look at that
22 document.  Is that available?
23    **Q.  Okay.  And so you can't think of any facts**
24 **that support your conclusion as to the RICO**
25 **allegations without reference to an external document;**

Page 181

1 is that correct?
2    A.  I'd like to look at the document.
3    **Q.  Okay.**
4       MR. STARR:  Just to --
5 BY MR. MORLAN:
6    **Q.  Would you like me to repeat the question**
7 **or -- I understand that you'd like to -- to look at**
8 **the document.  But I'm asking you right now, without**
9 **the document, are there any facts that you can give me**
10 **that support your conclusion that the RICO claim lacks**
11 **merit?**
12       MR. PELLEGRINO:  Objection.
13 BY MR. MORLAN:
14    **Q.  It's a yes or no question.  It's real easy.**
15       MR. PELLEGRINO:  Objection to form.  And,
16    Hal, you're harassing --
17       MR. MORLAN:  Stop.  Stop.  Stop with the
18    speaking objections.  I'm not harassing him.
19    I'm --
20       MR. PELLEGRINO:  You are harassing.  Your
21    voice is raised and you're harassing him.  Just --
22    just please --
23       MR. MORLAN:  I'm not.  I'm not harassing
24    him.
25       MR. PELLEGRINO:  Just please be

**UNIVERSAL**
**COURT REPORTING**

**Office Phone:** 954-712-2600
**Email:** info@ucrinc.com
**Website:** ucrinc.com

777 PARTNERS LLC and SUTTONPARK CAPITAL LLC vs LEADENHALL CAPITAL
Shapiro, Mark on 03/05/2025                          Pages 182..185

Page 182

1    professional.
2        MR. MORLAN: David, if you tell me I'm
3    harassing the witness again, we're going to stop
4    the deposition and we're going to seek relief from
5    the court --
6        MR. PELLEGRINO: Okay.
7        MR. MORLAN: -- because I take that very
8    seriously --
9        MR. PELLEGRINO: You are harassing the
10   witness.
11       MR. MORLAN: -- and I'm not harassing the
12   witness. No.
13       MR. PELLEGRINO: You're voice is raised.
14       MR. MORLAN: Well, we're not going to argue
15   about it. Because, David, either --
16       MR. PELLEGRINO: You are -- you are arguing
17   about it.
18       MR. MORLAN: -- because I'm harassing him or
19   stop doing speaking objections in my deposition.
20       MR. PELLEGRINO: I'm not doing speaking
21   objections.
22       MR. MORLAN: You heard the judge on it.
23   We're going to bring this in front of him if you
24   keep doing it. I have a right --
25       MR. PELLEGRINO: Yeah, the issue will be

Page 183

1    your harassment, not -- not my objections.
2        MR. MORLAN: Okay. Thank you.
3    BY MR. MORLAN:
4        Q. So, Mr. Ratner [sic], are there any facts
5    that you can give me that support your statement that
6    the RICO allegations lack merit? Are there any that
7    you can give me right now without reference to another
8    document?
9        MR. PELLEGRINO: Objection to form.
10       THE WITNESS: Without referencing the other
11   document, no. I want to look at the document and
12   I'll -- I'll tell you what -- what -- what I'm
13   relying upon.
14   BY MR. MORLAN:
15       Q. Okay. Thank you.
16       And the document that you're referring to,
17   you believe is the answer and affirmative defenses?
18       MR. STARR: Can I just interject that
19   there's been no answer filed. There's been a
20   motion to dismiss filed.
21   BY MR. MORLAN:
22       Q. Did you bring with you the motion to
23   dismiss? Do you have a copy of that, Mr. Shapiro?
24       A. I do not. I didn't bring any documents with
25   me.

Page 184

1        Q. Did you produce any documents in advance of
2    your deposition today?
3        A. No.
4        Q. Okay. Did your counsel produce any
5    documents in advance of your deposition today?
6        A. I believe some documents were produced this
7    morning. I think there were some e-mails.
8        Q. When you say "this morning," when do you
9    mean?
10       A. Like early this morning, like 1:00 a.m. this
11   morning.
12       Q. Oh, okay. So you're talking about the --
13   the production that was made at approximately
14   1 o'clock in the morning Eastern time in advance of
15   this deposition?
16       A. That's the only production I know was made.
17       Q. And so you understand that myself and the
18   other lawyers have only theoretically had access to
19   those documents from the time that we were able to
20   download and process them, starting with receipt of
21   notification at approximately 1 o'clock in the
22   morning?
23       MR. PELLEGRINO: Objection to form.
24       THE WITNESS: I understand that.
25   BY MR. MORLAN:

Page 185

1        Q. Okay. And do you think that's a reasonable
2    amount of time for us to digest and understand those
3    documents?
4        MR. PELLEGRINO: Objection to form.
5        THE WITNESS: No, I don't. I -- I --
6    BY MR. MORLAN:
7        Q. Thank you for your candor.
8        So we talked about -- and I don't want to
9    belabor it, but I want to talk briefly about what you
10   knew when you decided or participated in the decision
11   to go forward with this litigation, that's -- that's
12   one issue. And I believe you said that you were
13   involved in that decision along with a group of
14   people, correct?
15       A. Correct.
16       Q. And is that the -- the group that you had
17   said before? I just want to make sure this is the
18   right group for the right decision. I think you said
19   it was Chris O'Reilly, Mollie Wander, Josh Walder
20   [sic], Shawn Taheri, and Jim Howard?
21       A. It would be Jon Walder, Ian Ratner.
22       Q. I forgot Ratner, Mr. Ratner. Okay.
23       How do spell -- is it W-A-L-D-E-R? Is that
24   Mr. Jon Walder's last name or is it --
25       A. Yes. Yes. Yes, it is.

**UNIVERSAL**
**COURT REPORTING**

Office Phone: 954-712-2600
Email: info@ucrinc.com
Website: ucrinc.com

777 PARTNERS LLC and SUTTONPARK CAPITAL LLC vs LEADENHALL CAPITAL
Shapiro, Mark on 03/05/2025                                Pages 186..189

Page 186

1    Q.  Okay.  What about Josh Wander, did he share
2  any views as to any of the facts or allegations
3  alleged in the complaint in this case?
4    A.  When it came time to whether or not to file,
5  no, did not.
6    Q.  Okay.  When has Mr. Wander expressed to you
7  any views on the allegations or underlying factual
8  basis in this lawsuit?
9    A.  I don't know when he did.  I -- I think I
10  mentioned before that he was absolutely against
11  letting Saiph and Paul do the collateral audit for
12  fear that they were going to be looking at data they
13  weren't otherwise entitled to for a traditional
14  collateral audit.  That was -- he and others were very
15  vocal upfront.  I don't believe he was involved in any
16  of the decisions when it came to filing suit or not
17  filing suit.
18    Q.  So when you say "he and others," the "he"
19  there you were referring to Josh Wander, correct?
20    A.  Correct.
21    Q.  Okay.  And who are the others to whom you
22  refer?
23    A.  Again, I testified before.  I want to make
24  sure I don't contradict it.  I believe the group was
25  Chris O'Reilly -- Chris O'Reilly, Jon Walder, Mollie

Page 187

1  Wander, JC Mendoza, Shawn Taheri, Josh Wander, Steve
2  Pasko.  I think I got everybody.
3    Q.  And what were Mr. Wander's concerns with
4  respect to Paul Kosinski and Saiph having access to
5  any 777 or Suttonpark data?
6    A.  He -- they all thought that it was a bad
7  idea, that Paul would be looking at all sorts of
8  things throughout the system other than what
9  Leadenhall was legally entitled to in a collateral
10  audit.  They had history.  You know, none of us at B.
11  Riley had any history with Paul Kosinski.  We didn't
12  know about Noah Davis at the time, but there -- there
13  obviously was history and they didn't -- they didn't
14  want them in the systems.
15    Q.  And what did they tell you about the
16  history?
17    A.  I -- none.  Just can't -- can't -- can't be
18  trusted.  He's going to do stuff.  You're asking for
19  trouble.
20    Q.  And did you make any further inquiry?
21    A.  No, because Jim Howard and I ultimately
22  overrode everybody.  We -- we took the position that
23  this is a collateral audit, that we should have the
24  controls in place to be able to protect data, that
25  Leadenhall is entitled to the information, and if

Page 188

1  Saiph is the one that they want to use, then we're
2  going to use them.  So it was just Jim Howard and
3  myself who overrode everybody.
4    Q.  And that was because Leadenhall had a
5  contractual right to review data regarding its -- its
6  collateral; is that correct?
7    A.  Correct.
8    Q.  Okay.  And that -- that data was contained
9  within the MPFin system, correct?
10      MR. PELLEGRINO:  Objection to form.
11      THE WITNESS:  Yeah, could you repeat that?
12  BY MR. MORLAN:
13    Q.  Sure.
14      The data regarding the Leadenhall
15  collateral, that is generally and supposed to be kept
16  within the MPFin database; is that right?
17      MR. PELLEGRINO:  Objection to form.
18      THE WITNESS:  I believe so.  I think there
19    may be paper files as well, but yes.
20  BY MR. MORLAN:
21    Q.  But the MPFin database is not just limited
22  to information about Leadenhall, correct?
23    A.  Correct.
24    Q.  Okay.  But there's nothing in the MPFin
25  database about Leadenhall's collateral that they

Page 189

1  wouldn't be allowed to access, correct?
2      MR. PELLEGRINO:  Objection, form.
3      THE WITNESS:  I don't -- I don't know that.
4    I -- I assume there was data out there that they
5    didn't want.  I -- I -- I don't know.  I just -- I
6    don't know what's in the database.  I think you'd
7    have to talk to either Shawn Taheri and probably
8    others to -- to understand what's in that
9    database.
10  BY MR. MORLAN:
11    Q.  But you were the one who made the decision
12  to allow Leadenhall to access that database?
13      MR. PELLEGRINO:  Objection to form.
14      THE WITNESS:  Yes.  My -- our comments were
15    if there's data that they shouldn't see, then you
16    should have the security and ability to be able to
17    wall that off.
18  BY MR. MORLAN:
19    Q.  And have you identified any evidence that
20  any person from Saiph, other than Noah Davis, accessed
21  any data that they weren't entitled to view?
22    A.  I mean, there were a couple of other user
23  logins used.  I think everybody attributes all of
24  those to Noah Davis.  But other than the ones
25  identified in the reports, no, I don't.

UNIVERSAL
COURT REPORTING

Office Phone: 954-712-2600
Email: info@ucrinc.com
Website: ucrinc.com

777 PARTNERS LLC and SUTTONPARK CAPITAL LLC vs LEADENHALL CAPITAL
Shapiro, Mark on 03/05/2025                          Pages 190..193

Page 190

1      Q.  Okay.  So as you sit here today, you don't
2  have any evidence that Mr. Kosinski went in using his
3  credentials and asked for data that he wasn't entitled
4  to; is that correct?
5      A.  That's correct.
6      Q.  And the same question with respect to Lauren
7  Boersig; is that correct?
8      A.  I believe her -- her credentials were used
9  in one of the intrusions.  But, again, I think they
10  attributed that to Noah Davis based on the location of
11  the -- the connection or -- I don't know the technical
12  term.  But it was south Florida versus northeast.
13     Q.  Okay.  And I think you also said that you've
14  been relying on Mr. Mazur to provide you information
15  that you've used in your decision making with respect
16  to this case; is that correct?
17     A.  Correct.
18     Q.  Okay.  And have you had any occasion to
19  disagree with any of Mr. Mazur's analysis or opinions?
20     A.  No, I have not.
21     Q.  Okay.  And would you disagree with
22  Mr. Mazur's statement that there was no forensic
23  evidence that any of the login credentials provided to
24  Saiph were used to obtain or seek to obtain any
25  unauthorized information?

Page 191

1          MR. PELLEGRINO:  Objection to form.
2          THE WITNESS:  Yeah, I'm not sure.  Is
3      that -- is that what Eric said?  I -- I mean,
4      you're saying that.  I don't know if that's what
5      Eric actually said.  Is there a portion of the
6      report or is that direct quote?  Is that a
7      paraphrase?  I just don't know.
8  BY MR. MORLAN:
9      Q.  Well, are -- are you aware of any evidence
10  or any statement from Mr. Mazur that stated that any
11  of the specific intrusions and data that you talked
12  about were tied to Saiph credentials as opposed to the
13  credentials that Mr. Davis retained from his time at
14  777?
15         MR. PELLEGRINO:  Objection to form.
16         THE WITNESS:  Only the one to Lauren, who
17     was a Saiph employee.  But, again, he attributed
18     that to somebody else.
19  BY MR. MORLAN:
20     Q.  Okay.  But was there any evidence in his
21  report that stated that during that login, using those
22  credentials, that -- that facilitated Mr. Davis's
23  access across the rest of the system?
24         MR. PELLEGRINO:  Objection to form.
25         THE WITNESS:  I'm not sure you finished the

Page 192

1      question.  I'm not trying to be difficult.  I
2      don't think you finished that one.  Could just
3      repeat that question?
4  BY MR. MORLAN:
5      Q.  Sure.
6          Was there any evidence in Mr. Mazur's report
7  or even his conclusions that Mr. Davis used Lauren
8  Boersig's credentials to access or attempt to access
9  data to which Leadenhall was not entitled?
10     A.  Yes.  He did say that he used Lauren
11  Boersig's credentials.  I believe he did.
12     Q.  My question was not whether or not he
13  attributed a login by Noah Davis using Lauren
14  Boersig's credentials.
15         My question was:  As to the intrusion that
16  he identified, was Mr. Mazur able to identify any
17  access or attempted access to any unauthorized data
18  via Davis's use of Boersig's credentials?
19         MR. PELLEGRINO:  Objection to form.
20         THE WITNESS:  I don't know.  I -- I -- as we
21     sit here right now, I -- again, I'm not trying to
22     be difficult, but the report's not in front of me.
23     I don't know what he attributed to that
24     credential.  There's quite a few intrusions.
25  BY MR. MORLAN:

Page 193

1      Q.  I understand.
2          So looking at Mr. Mazur's report might
3  refresh your recollection in that record; is that
4  correct?
5      A.  Yes.
6      Q.  Okay.  So we may get to that in a little
7  bit, but we have a limit amount of time here.
8          Do you know whether Mr. Mazur's report
9  identifies any specific forensic evidence linking Paul
10  Kosinski to Noah Davis's alleged intrusions?
11     A.  I haven't seen any.
12     Q.  Okay.  Do you know whether Mr. Mazur has
13  identified any evidence in any of his reports that
14  links Leadenhall or Saiph to any of the intrusions
15  other than the fact that Mr. Davis worked for them?
16     A.  I haven't seen any.
17     Q.  And have you -- did you have an opportunity
18  to speak with Mr. Mazur after his deposition was taken
19  in this matter?
20     A.  I did, but we didn't talk about his
21  deposition.
22     Q.  What did you talk about?
23     A.  The September 2022 file, that's when I spoke
24  with him.
25     Q.  Okay.  And -- and that was -- would that be

**UNIVERSAL COURT REPORTING**

Office Phone: 954-712-2600
Email: info@ucrinc.com
Website: ucrinc.com

777 PARTNERS LLC and SUTTONPARK CAPITAL LLC vs LEADENHALL CAPITAL
Shapiro, Mark on 03/05/2025                                    Pages 194..197

Page 194

1  closer to 1 week or 6 months?
2      A.  1 week.
3      Q.  1 week?
4      A.  Yeah.
5      Q.  We're having some problems with the mic.
6      A.  1 week.
7      Q.  Okay.  There's a little bit of a delay.
8          But all you recall about that conversation
9  was that there was a reference somewhere to an MPFin
10 file from 2022; is that correct?
11     A.  Yes.  And he would have more details than I
12 do.
13     Q.  I understand that.
14         But -- but are there any other details,
15 other than what I just said, that you have about this
16 MPFin file from 2022 or do we need to rely on
17 Mr. Mazur for that?
18     A.  I think you'd have to rely on Mr. Mazur for
19 that.
20     Q.  Okay.  Is there anyone else that has any
21 special information about that MPFin 2022 file besides
22 Mr. Mazur?
23     A.  I don't know.
24     Q.  Did you say you don't know?
25     A.  I don't know.

Page 195

1          MR. MORLAN:  I'm going to go off the record
2  for a second.  I may log off and log back in
3  because there's a delay and I'm having trouble
4  hearing your answers, so I'm going to first try
5  something with the sound and see if that works.
6          MR. PELLEGRINO:  Hal, do you mind if we take
7  a 10-minute break while you're doing that?
8          MR. MORLAN:  That's perfectly fine.  Great
9  idea.
10         MR. PELLEGRINO:  Thank you.
11         THE VIDEOGRAPHER:  Okay.  Going off the
12 record.  The time is 4:12.
13         (A recess was taken.)
14         THE VIDEOGRAPHER:  Okay.  We're back on the
15 record, and the time is now 4:54.
16 BY MR. MORLAN:
17     Q.  Mr. Shapiro, do you have a copy of your
18 declaration that was filed in this case handy or do
19 you -- do you want me to share a copy with you over
20 Zoom?
21     A.  Let me check (perusing).
22         MR. STARR:  If you don't have one, I think I
23 do.
24 BY MR. MORLAN:
25     Q.  I can also give you a digital one if it's

Page 196

1  easier for you to look at on your -- on the laptop.
2  Whatever you would prefer.
3          THE WITNESS:  Do you have one?
4          MR. STARR:  (Handing.)
5          THE WITNESS:  Do we have to -- exhibits?
6          MR. STARR:  Oh, yeah.
7          Do you want to mark it?  Might as well.  We
8  got stickers here.
9          Actually, Hal --
10         MR. MORLAN:  If it's not marked, then I'm
11 going to do it electronically.  I thought it was
12 already marked.
13         MR. PELLEGRINO:  It's not marked.
14         MR. STARR:  It is not marked.
15         MR. MORLAN:  Okay.
16         MR. STARR:  So why don't we introduce the
17 exhibit, Hal, but he can look at the paper copy.
18         MR. MORLAN:  Got it.  Okay.
19         THE WITNESS:  (Perusing.)
20         MR. MORLAN:  What number are we on?
21         THE COURT REPORTER:  7.
22         THE WITNESS:  I have it.
23         MR. MORLAN:  Do you guys have file sharing
24 in the group chat disabled?
25         THE VIDEOGRAPHER:  No, I don't think so.

Page 197

1          MR. MORLAN:  Seems like it to me.  Can
2  anybody else stick a file in there?
3          MR. STARR:  Why don't we just --
4          MR. MORLAN:  Can we check the permissions.
5          MR. STARR:  Why don't we just mark the
6  exhibit here manually so that it can be part of
7  the transcript and scanned in and -- and, Hal, you
8  can work off the digital copy.
9          MR. MORLAN:  All right.  Well, we'll try to
10 do that.  But -- but I'm going to ask before we go
11 back on maybe you guys could get your office to --
12 to fix that or look into that because I may have
13 some -- some other exhibits that we don't have
14 paper copies of and I was under the impression
15 that we were going to be able to introduce
16 documents electronically.  Is there some other
17 method that's available besides the Zoom chat?
18         MR. STARR:  I believe we are on the record,
19 by the way.
20         MR. MORLAN:  Oh.  Well, let's go off the
21 record and -- and let's strike that part of it
22 because I don't think we...
23         THE VIDEOGRAPHER:  Going off the record.
24 The time is 4:57.
25         (A recess was taken.)



UNIVERSAL
COURT REPORTING

Office Phone: 954-712-2600
Email: info@ucrinc.com
Website: ucrinc.com

777 PARTNERS LLC and SUTTONPARK CAPITAL LLC vs LEADENHALL CAPITAL
Shapiro, Mark on 03/05/2025                    Pages 198..201

Page 198

1    (Shapiro Exhibit 7 was marked for
2    identification.)
3       THE VIDEOGRAPHER:  Okay.  We're back on the
4    record again.  It's 5:10.
5  BY MR. MORLAN:
6    Q.  Mr. Shapiro, with respect to the fiduciary
7  duties that you testified to earlier and your role as
8  the COO of 777 and Suttonpark, what's your
9  understanding of your responsibilities as it relates
10  to cyber security?
11       MR. PELLEGRINO:  Object to form.
12       THE WITNESS:  You know, I -- I would
13    think -- I wouldn't call it fiduciary duty.  Part
14    of my management role is to try and maintain cyber
15    security.  I mean, I don't -- that's kind of a
16    necessary evil nowadays.
17  BY MR. MORLAN:
18    Q.  And what are the steps that you take to
19  fulfill that duty with respect to cyber security?
20    A.  Oh, I -- I wouldn't do anything personally.
21  That's really the head of IT who'd normally be
22  monitoring the cyber security and taking care of that.
23    Q.  And is that person Shawn Taheri?
24    A.  Yes.
25    Q.  And you have oversight responsibility as COO

Page 199

1  for Mr. Taheri; is that correct?
2    A.  He was reporting to JC Mendoza, who reported
3  to me.  But over -- over -- ultimately, it would -- he
4  would report up to me, yes.
5    Q.  Would you have any reason to doubt
6  Mr. Taheri if he had testified that he had completed
7  his investigation as to the intrusions that are
8  alleged in this case?
9       MR. PELLEGRINO:  Objection to form.
10       THE WITNESS:  I would not have any reason to
11    doubt what Mr. Taheri said, no.
12  BY MR. MORLAN:
13    Q.  And are you aware of any current problems
14  with the functioning of the MPFin system?
15    A.  I haven't heard of anything.  I don't know
16  if there is or not.
17    Q.  And if you wanted to find out if there were
18  any problems with the data integrity or usability of
19  MPFin system, is Mr. Taheri who you would ask?
20    A.  Either -- either Mr. Taheri or -- or Teresa
21  Licamora who's our B. Riley rep over Suttonpark.
22    Q.  Okay.  What are Ms. Licamora's
23  qualifications and credentials with respect to cyber
24  security?
25    A.  As far as cyber security?  She's not an IT

Page 200

1  person.  She's -- she's --
2    Q.  Okay.  And I believe you testified earlier
3  that Mr. Mazur and Mr. Taheri were the ones conducting
4  the investigation for the companies as to the
5  intrusions; is that correct?
6    A.  Correct.
7    Q.  Okay.  And you mentioned Ms. Licamora.
8  Is -- is that because she has special responsibility
9  for data or does she have an oversight role or -- or
10  what's her role in this?
11    A.  She has an oversight role on the operations
12  of Suttonpark at that point.
13    Q.  Okay.
14    A.  She's sort of filling in where Jim Howard
15  was -- was -- was working over Suttonpark.
16    Q.  Okay.  Would it be fair to say that the
17  MPFin system is an important system that is essential
18  for the operations of Suttonpark?
19    A.  That's how it's been -- it's been
20  represented to me that way, yes.
21    Q.  Okay.  But that's your understanding as the
22  COO of the company?
23    A.  Yes.
24    Q.  Okay.  And as you sit here today, are you
25  aware of any problems with the integrity of the data

Page 201

1  or the usability of the MPFin system?
2    A.  I'm not aware of any, no.
3    Q.  And in terms of any investigation as to the
4  intrusions alleged in -- in -- in your complaint --
5  and -- and let's leave to the side for a moment the
6  Max Davis intrusion from December.  We can talk about
7  that separately.  I don't know how much you know about
8  that, but we can kind of put that off to the side.
9       But with respect to the other intrusions, is
10  there anything from your perspective or that Mr. Mazur
11  or Mr. Taheri has told you that needs to happen in
12  order to complete those investigations?
13    A.  I'm -- I'm not aware of what -- what is
14  necessary.
15    Q.  Do you know whether any additional
16  investigative steps need to be taken?
17    A.  I don't know.
18    Q.  Okay.  And the -- leaving aside the December
19  alleged incursion, isn't the last date of the alleged
20  incursion August 9th, 2024?
21    A.  Yeah, I think -- I believe so, other than
22  the one in December because that's what triggered the
23  Crowd -- the Crowd -- CrowdStrike notification.
24    Q.  Well, is it your understanding that the one
25  on December 22nd is the only one that triggered a

UNIVERSAL
COURT REPORTING

Office Phone: 954-712-2600
Email: info@ucrinc.com
Website: ucrinc.com

777 PARTNERS LLC and SUTTONPARK CAPITAL LLC vs LEADENHALL CAPITAL
Shapiro, Mark on 03/05/2025                              Pages 202..205

Page 202

1 CrowdStrike notification?
2    MR. PELLEGRINO:  Objection to form.
3    THE WITNESS:  No, the August 9th one was the
4 one that triggered a CrowdStrike notification.
5 BY MR. MORLAN:
6    Q.  Okay.  Is your understanding that the
7 December 22nd one did or did not trigger a CrowdStrike
8 warning?
9    A.  I believe it did.
10    Q.  Okay.  And do you know what CrowdStrike is?
11    A.  From a very high level layman's perspective.
12    Q.  Okay.  Can you give me your very high level
13 layman's perspective?
14    A.  It's essentially a monitoring tool and a
15 protection tool to prevent against cyber intrusions
16 and cyber -- data breaches.
17    Q.  Do you know how many people at Suttonpark
18 have credentials for the CrowdStrike system?
19    A.  No, I don't.
20    Q.  If I told you that there were four, would
21 you have reason to doubt that?
22    A.  You could tell me there were ten, I wouldn't
23 have any reason to doubt.  I -- I just don't know how
24 many there are.
25    Q.  Okay.  And is -- is it your understanding

Page 203

1 that 9 out of the 10 intrusions identified in
2 Mr. Mazur's initial two reports were performed using
3 Mr. Davis's CrowdStrike credentials?
4    A.  That's my understanding.
5    Q.  And do you know whether or not those
6 CrowdStrike credentials of Mr. Davis have been
7 deactivated?
8    A.  They've been represented to me that they've
9 been deactivated.
10    Q.  Okay.  Do you have any reason to doubt
11 they've been deactivated?
12    A.  No, I don't.
13    Q.  Would you be upset if they weren't
14 deactivated at this point?
15    A.  It would -- it would -- it would be a
16 problem if they weren't deactivated at this point.
17    Q.  As a manager with fiduciary responsibilities
18 to the stakeholders, if you found out they hadn't been
19 deactivated, you would consider taking some action in
20 light of that information, would you not?
21    A.  I have to take the facts and circumstances
22 into consideration, but I -- I would definitely
23 investigate it.
24    Q.  Do you -- have you ever been in a similar
25 executive type of role where you are now for a

Page 204

1 company, a different company that experienced a cyber
2 security breach?
3    A.  Not to this extent.  I've worked for
4 internet retailers before who are constantly being
5 battered for, you know, cyber breaches and things like
6 that.  But nothing like this.
7    Q.  Okay.  Have you ever dealt with the
8 notification options -- obligations, excuse me, that
9 are required with respect to a cyber security data
10 breach?
11    A.  I have, but I couldn't recite the
12 responsibilities to you.  I know there are certain
13 things you have to do and report when there's a cyber
14 security breach.
15    Q.  Okay.  And who at Suttonpark or 777 would be
16 ultimately responsible for meeting those obligations
17 with respect to a cyber security breach?
18    A.  I'm not sure.  The initial reporting would
19 probably start with IT and then probably funnel
20 through the legal department.
21    Q.  Okay.  To your knowledge, has 777 provided
22 any data breach notifications in connection with the
23 incursions alleged in your complaint or the reports
24 during your expert?
25    A.  I know it was reported to law enforcement.

Page 205

1 I don't know what other notifications were made or
2 required to be made.
3    Q.  If you wanted to find out what notifications
4 would be made -- would have been made, how would you
5 find that out?
6    A.  I believe someone in legal would know what
7 has to be reported and -- and how.
8    Q.  Okay.  My -- my question -- I think your --
9 and admittedly, maybe it was a little unclear.
10    I'm not asking about who would know what the
11 obligations are.  I'm just asking who would know
12 whether or not any date -- data breach notifications
13 were sent out.
14    A.  I don't know.  I would only be speculating.
15    Q.  Okay.  And as you sit here today, you're not
16 aware of any data breach notifications that have been
17 sent out to any individuals regarding their personal
18 data being involved in a data breach; is that correct?
19    A.  That's my understanding.  Yes, I'm unaware.
20    Q.  And as part of your investigation, did you
21 identify any other potential attack vectors besides
22 Noah Davis?
23    A.  Shawn and -- and Eric Mazur were the ones
24 who did the investigation.  And I don't believe they
25 saw anybody -- other suspects other than Noah.

**UNIVERSAL**
**COURT REPORTING**

**Office Phone:** 954-712-2600
**Email:** info@ucrinc.com
**Website:** ucrinc.com

777 PARTNERS LLC and SUTTONPARK CAPITAL LLC vs LEADENHALL CAPITAL
Shapiro, Mark on 03/05/2025                    Pages 206..209

Page 206

1    Q.  Okay.  Do you know if any suspects, other
2 than Noah, were even considered?
3    A.  I don't know.
4    Q.  Do you know whether any suspects, other than
5 Noah, were ruled out?
6    A.  I don't know.
7    Q.  Do you know if there are any other
8 disgruntled former 777 or Suttonpark employees besides
9 Noah Davis?
10    A.  I believe there are.
11    Q.  Okay.  And do you know whether or not any of
12 those people were considered a potential suspect or
13 ruled out from consideration?
14    A.  I don't -- I don't know.
15    Q.  You've provided a declaration in this
16 litigation; is that correct?
17    A.  Correct.
18    Q.  Okay.  And you've provided a lot of
19 declarations in a lot of litigation; would that be
20 fair to say?
21    A.  I'm not certain litigation, but if you
22 include bankruptcy as litigation, yes, I provide
23 declarations.
24    Q.  Over 100?
25    A.  No, I don't think that many.  Maybe --

Page 207

1    Q.  Around 50?
2    A.  Probably around 50.
3    Q.  Okay.  And what's the purpose, generally
4 speaking, your understanding of why you would provide
5 a declaration as an officer of any particular company?
6    A.  Well, I think it's to give -- I don't want
7 to say -- well, I guess a personal context and -- and
8 personal responsibility over -- and having somebody --
9 for lack of better term, certify their belief in -- in
10 what's been filed, as opposed to it just being
11 blanket.  There's probably other legal reasons for it,
12 but that's how I view it, that --
13    Q.  Okay.
14    A.  -- you're making a personal statement about
15 these filings.
16    Q.  And it's a document that is intended to be
17 something that the court can rely on, correct?
18    A.  Correct.
19    Q.  Okay.  And it's something that should be
20 carefully considered by the parties, correct?
21    A.  Correct.
22    Q.  And it's something that you actually have --
23 have sworn is -- is true; is that correct?
24    A.  Correct.
25    Q.  Okay.  And with respect to this specific

Page 208

1 declaration that we've marked as Shapiro 7 --
2 Exhibit 7, all of the statements that you made in
3 there are true and correct; is that right?
4    A.  To the best of my knowledge, yes.
5    Q.  Okay.  And if somebody were evaluating this
6 litigation and evaluating the evidence, they would
7 be --
8        MR. MORLAN:  Strike that.
9 BY MR. MORLAN:
10    Q.  Have you reviewed any other declarations in
11 this case?
12    A.  For purposes of this deposition, I reviewed
13 Shawn Taheri's declaration and then my declarations.
14 Those were the only ones I looked at.
15    Q.  Okay.  But through the course of this
16 litigation, have you reviewed any other declarations?
17    A.  I'm sure I reviewed them at some point in
18 time.
19    Q.  In reviewing Mr. Taheri's declaration, did
20 you see any information in there that you were
21 concerned about or that you disagreed with?
22    A.  I did not.
23    Q.  Okay.  Did you review Mr. Kosinski's
24 declaration that was filed in opposition to the motion
25 for preliminary injunction?

Page 209

1    A.  I don't believe I did.
2    Q.  Okay.  Do you think that reviewing a party's
3 sworn statement and testimony would have some value to
4 your exercise of business judgment in terms of how you
5 manage this particular litigation?
6    A.  I mean, information is good.  I -- I
7 frequently look at pleadings.  And I don't -- I don't
8 think I looked at Paul's declaration, but, you know,
9 I -- I don't look at every -- every file -- every
10 filing in every case.
11    Q.  Okay.  Did you review any declarations of
12 any witnesses for Leadenhall?
13    A.  No.
14    Q.  Did you review Mr. Mazur's declaration?
15    A.  I don't think I looked at his declaration.
16    Q.  But in fairness to you, you did review all
17 of his reports carefully; is that correct?
18    A.  I did look at his reports, yes.
19    Q.  Okay.  Well, let's take a look at your
20 declaration.
21        Am I correct in concluding, based on this
22 declaration, that Steve Pasko and Josh Wander retained
23 you to serve as chief operating officer?
24    A.  Yes.  On May 3rd (perusing).
25    Q.  And Paragraph 5, would it be accurate to say



**Office Phone:** 954-712-2600
**Email:** info@ucrinc.com
**Website:** ucrinc.com

777 PARTNERS LLC and SUTTONPARK CAPITAL LLC vs LEADENHALL CAPITAL
Shapiro, Mark on 03/05/2025                                    Pages 210..213

Page 210

1 that you and Mr. Ratner were appointed -- I'm sorry,
2 Mr. Glass and Mr. Ratner were appointed effective
3 March 6th, 2024 [sic], as managers of 777 and
4 Suttonpark?
5     A. May 6th, 2024 (perusing).
6     Q. Okay. And I believe you testified that you
7 replaced Mr. Glass as a manager of both of the
8 entities at issue, correct?
9     A. Correct, in mid September.
10    Q. Okay. But prior to mid September, you were
11 still intimately involved in the operations of the
12 entities as issue, correct?
13    A. Correct.
14    Q. And other than your active involvement and
15 knowledge, was -- was there any other reason that you
16 replaced Mr. Glass as a manager?
17    A. No, no other reason.
18    Q. Mr. Glass didn't retire?
19    A. No. He's -- I saw him last night. Still
20 around.
21    Q. Okay. Didn't get sick?
22    A. No.
23    Q. So it was purely just a matter of the way
24 things worked out, you kind of had more day-to-day
25 active involvement and -- and -- and knew what was

Page 211

1 going on more than he did ultimately?
2     A. I think so.
3     Q. And other than you and Mr. Ratner, does
4 anyone else actually exercise any ultimate control or
5 authority over the management of 777 and Suttonpark?
6     A. No.
7     Q. And do you and Mr. Ratner sort of have a --
8 particular areas that you might be more responsible
9 for than others, areas of focus?
10    A. I'm there more now. Ian's -- Ian's there
11 less. He's -- you know, as this case has matured,
12 it's taken less of our time. So he -- he spends time
13 on -- well, he could tell you directly, but he
14 probably spends more time on -- on litigation matters
15 and I'm spending probably more time on operations. He
16 does as well, but we just -- I'm there and spending
17 more time on the case than he is at this point.
18    Q. Okay. And -- and when you say "the case,"
19 do you mean this specific litigation or are you
20 referring to case like as a broad sense of the -- the
21 goings on at the -- at the entities at issue?
22    A. The latter, the -- the broad goings on at
23 the entities.
24    Q. Okay. So the activity in this litigation
25 has not declined recently to your knowledge, has it?

Page 212

1     A. No.
2     Q. And when was the first time that you
3 collected documents for this -- for purposes of this
4 litigation?
5     A. In what -- for what purpose?
6     Q. Any purpose.
7     A. Collected documents for this litigation?
8 I -- I'm not the one responsible for collecting
9 documents.
10    Q. Who is responsible for collecting documents?
11    A. The legal team is. If -- if there's
12 discovery and documents being collected, it's being
13 coordinated through legal.
14    Q. Does the legal team report to you?
15    A. They do.
16    Q. Okay. And do you supervise and direct the
17 legal team?
18    A. They're pretty self-sufficient, but, you
19 know, they're -- as -- as the COO, ultimately
20 everybody is reporting to me.
21    Q. Okay. But -- but there's nobody else that
22 has the right to or the authority to direct the legal
23 team besides you and Mr. Ratner; is that right?
24    A. That is correct.
25    Q. When you say in Paragraph 7 of your

Page 213

1 declaration that B. Riley "performed a triage of all
2 assets and liabilities," I'm familiar with the word
3 "triage," especially in a medical context. But tell
4 me as a recon- -- restructuring professional and a
5 chief operating officer, what triage of all assets and
6 liabilities means?
7     A. So if -- you remember my earlier testimony,
8 we talked about focusing on cash flow. It's a fairly
9 sprawling operation. And when you're triaging, you're
10 trying to find out where -- where the bleeding is and
11 trying to stop the bleeding. I mean, we like to think
12 of ourselves as a doctor and that's pretty sad. But
13 it is -- you know, there -- there are certain
14 companies that are bleeding cash and others that are
15 making cash and some that are being sued and
16 litigation all over and some are leveraged to the hilt
17 and you're just trying to get your arms around the
18 situation. Because this really isn't a consolidating
19 entity. It's a -- it's a portfolio of very dispert
20 companies and you have to get your arms around it.
21 That's what -- that's what we spent our time on.
22    Q. Okay. And as part of triaging assets and
23 liabilities, do you tend to focus on the largest
24 assets and the largest liabilities as part of that
25 process?



Office Phone: 954-712-2600
Email: info@ucrinc.com
Website: ucrinc.com

777 PARTNERS LLC and SUTTONPARK CAPITAL LLC vs LEADENHALL CAPITAL
Shapiro, Mark on 03/05/2025                      Pages 214..217

Page 214

1   A.  Sometimes.  Sometimes it's -- you know, the
2  problem child is the small one, you know, but it's --
3  it's -- it's all over the board.  But traditionally
4  the -- you'd focus on the biggest problems first and
5  then deal with the smaller problems later.
6   Q.  Okay.  So what were the biggest problems
7  that you dealt with first when you came in in May 2024
8  and needed to perform a triage?
9   A.  Cash, use of cash.  A lot of these companies
10  took a lot of -- a lot of money.  And it was trying to
11  figure out what companies we needed to stop funding
12  and what companies we could still fund, if there were
13  any immediate sales, liquidations, monetizations, any
14  easy wins that we could get.  But it really focused on
15  litigation and burning of cash and where -- where were
16  each of those things.
17   Q.  Are there any active litigation cases right
18  now in which 777 and Suttonpark face greater exposure
19  than the New York litigation with Leadenhall?
20       MR. PELLEGRINO:  Objection to form.
21       THE WITNESS:  I don't believe there's any
22   litigation greater than the New York suit with
23   Leadenhall, no.
24 BY MR. MORLAN:
25   Q.  Is there any other litigation where there's

Page 215

1  more than $10 million at stake in the litigation?
2   A.  Yes.
3   Q.  Okay.  How many other cases?
4   A.  I couldn't -- I couldn't tell you the exact
5  number.
6   Q.  Okay.  Can you estimate?
7   A.  Oh, no, I don't want to give you a bad
8  number.  I really don't.  It's -- it's --
9   Q.  Okay.
10   A.  It's not dozens.  It's, you know, less than
11  ten.  I just don't know if it's five or ten or, you
12  know, $10 million a threshold and I just don't know an
13  exact number.
14   Q.  Okay.  That's fair.
15       What about 20 million?
16   A.  Probably -- probably a similar number.
17   Q.  Okay.  What about 50 million?
18   A.  Those would be few.
19   Q.  Okay.  Can you name any other active
20  litigation where the liabilities are $50 million or
21  greater?
22   A.  I couldn't -- I couldn't name you the case
23  right now.  I think there's a couple around.
24   Q.  How about any other cases over 100 million?
25  Are there any over 100 million?

Page 216

1   A.  I don't think so.
2   Q.  And I think that -- turning back to the --
3  the instant litigation that we're -- that we're here
4  on, what is your assessment of your total -- the
5  company's total current damages that are potentially
6  recoverable in litigation?
7   A.  Well, I think I said before, there's --
8  there's the -- you know, the outside, you know,
9  out-of-pocket cost damages.  We don't know if there
10  are other damages.  You know, you asked before whether
11  the investigation is continuing.  I think we have to
12  keep looking and seeing if there's any other potential
13  damages out there.  But the number I gave before was
14  600 -- 600,000 and growing.  But, you know, I'm not --
15  I'm not sure if that's the end of it.
16   Q.  Okay.  What do you need to do to keep
17  looking?
18   A.  Well, I think Shawn and Eric need to still
19  assess the -- if there's anything to be done with
20  information that was stolen or -- or is there any
21  remnant damage to the system.  I just don't know.
22   Q.  Would you agree with Mr. Taheri and
23  Mr. Mazur that there is no forensic evidence that any
24  data was actually obtained during the ten incursions
25  identified in Mr. Mazur's report?

Page 217

1       MR. PELLEGRINO:  Objection to form.
2       THE WITNESS:  Yeah, I -- I don't want to
3   speak for them.  I'm not sure if they said there
4   was never any data obtained.  I don't -- I
5   don't -- I don't know if they've actually said
6   that.  You know, I have no reason to doubt
7   anything that Shawn and Eric are saying.  I just
8   don't know what they've said.
9 BY MR. MORLAN:
10   Q.  But if they're -- if there was forensic
11  evidence that specifically showed that 777 or
12  Suttonpark data was actually obtained during any of
13  these alleged incursions referenced in Mazur's report,
14  that that would be an important fact in this case,
15  right?
16   A.  Yes.
17   Q.  And that would be something that would be
18  important for you to know as the manager and decision
19  maker overseeing and exercising business judgment on
20  behalf of the stakeholders with respect to this
21  litigation, correct?
22   A.  Yes.  Goes into the -- all the information,
23  the facts and circumstances, yes.
24   Q.  And that would also be important information
25  that Mr. Mazur would have included in his report based

UNIVERSAL
COURT REPORTING

Office Phone: 954-712-2600
Email: info@ucrinc.com
Website: ucrinc.com

777 PARTNERS LLC and SUTTONPARK CAPITAL LLC vs LEADENHALL CAPITAL
Shapiro, Mark on 03/05/2025                    Pages 218..221

Page 218

1 on his scope of work and what you asked him to do as I
2 understand it; is that correct?
3    A.  I don't want to speak for Mr. Mazur.
4    Q.  I'm sorry?
5    A.  I said I don't want to speak for Mr. Mazur
6 as to what he's going to be putting in his report.
7 It's his report.
8    Q.  Well, you hired Mr. Mazur and he ultimately
9 reports to you.  Do you have an expectation that he
10 would provide you with -- if he had information that
11 proved that 777 or Suttonpark's data was actually
12 obtained during those incursions, that wouldn't you
13 expect him to provide you with that?
14    A.  I would think so.  I think -- I would think
15 any material information he would put in his report,
16 yes.
17    Q.  Okay.  And as you sit here today, do you
18 recall reading in Mr. Mazur's report that any
19 information was actually obtained or did he say that
20 he was unable to determine whether and what
21 information was actually obtained, if at all, during
22 those incursions?
23        MR. PELLEGRINO:  Objection to form.
24        THE WITNESS:  Yeah, without looking at the
25     report right now, I couldn't quote what he said.

Page 219

1 BY MR. MORLAN:
2    Q.  Okay.  But you're familiar with the report?
3    A.  Yes, I am.
4    Q.  It's just -- it's just not right in front of
5 you right now?
6    A.  Correct.
7    Q.  Okay.  So do you think looking at the report
8 would then refresh your recollection in fairness to
9 you?
10    A.  Yes.
11    Q.  Okay.  So I am going to send a --
12 Mr. Mazur's report and give you a chance to look at
13 it.  And if you'll just -- we'll go off the record
14 while I send that and you have a chance to look at it.
15 And then let me know when you've had a chance to look
16 at it adequately and refresh your recollection and
17 then we'll proceed.
18        MR. STARR:  One -- one second.  One second,
19     Hal.  He -- if it's one of -- if it's the initial
20     report or the January supplemental report, that's
21     already been introduced.
22        THE WITNESS:  It's -- it's 4, Number 4.
23        MR. MORLAN:  Okay.
24        MR. STARR:  It's Exhibit 4.
25        MR. MORLAN:  That's Exhibit 4?  Okay.  All

Page 220

1    right.  Well, let me give you a chance to take a
2    look at that.  And we're going to go off the
3    record.  And just let me know once you've had a
4    chance to look at that so we don't interrupt you
5    while you're trying to take a look at it.
6        Off the record.
7        THE VIDEOGRAPHER:  Okay.  Going off the
8    record at 5:45.
9        (A recess was taken.)
10        THE VIDEOGRAPHER:  Back on the record at
11    5:47.
12 BY MR. MORLAN:
13    Q.  Mr. Shapiro, did you have an opportunity to
14 refresh your recollection by reviewing Mr. Mazur's
15 September 2024 report, as well as his January 2nd,
16 2025, supplemental report, which we've marked as
17 Exhibit 4 for purposes of this deposition?
18    A.  I did.
19    Q.  Okay.  And you've seen these documents
20 before?
21    A.  Yes, I have.
22    Q.  Okay.  And are these documents that you've
23 carefully considered in the exercise of your business
24 judgment in managing this litigation?
25    A.  Yes.

Page 221

1    Q.  Okay.  And did you have access to the
2 information in the report dated September 2024 prior
3 to the filing of the complaint in this action?
4    A.  I did.
5    Q.  Did -- I'm sorry, I didn't hear you.  Did
6 you answer?
7    A.  Yes.  I did.
8    Q.  Oh, you did?
9    A.  Yes.
10    Q.  You did have access to this --
11    A.  Yes.
12    Q.  -- to Mr. Mazur's initial report prior to
13 the litigation being filed?
14    A.  Yes.
15    Q.  Okay.  And what is the date of Mr. Mazur's
16 initial report?
17    A.  September 27th (perusing).
18    Q.  And am I correct that that report identifies
19 ten potential intrusions?
20    A.  Yes.
21    Q.  Okay.  And does the report identify any data
22 that was definitively obtained during the incursions?
23        MR. PELLEGRINO:  Objection to form.
24        THE WITNESS:  It does not.
25 BY MR. MORLAN:

UNIVERSAL COURT REPORTING          Office Phone: 954-712-2600
Email: info@ucrinc.com
Website: ucrinc.com

777 PARTNERS LLC and SUTTONPARK CAPITAL LLC vs LEADENHALL CAPITAL
Shapiro, Mark on 03/05/2025                    Pages 222..225

Page 222

1    Q.   Is there a different report or different
2  materials that you would rely on to provide evidence
3  that data was obtained during the incursions?
4    A.   If it was there, it would be supplied by
5  Mr. Taheri and Mr. Mazur.
6    Q.   And did you also have an opportunity to look
7  at the supplemental report that Mr. Mazur did on
8  January -- dated January 2nd --
9    A.   I did.
10   Q.   -- 2025?
11   A.   I did.
12   Q.   Okay.  And does that similarly lack any
13 definitive forensic evidence tying any data actually
14 obtained to any particular incursion?
15        MR. PELLEGRINO:  Objection to form.
16        THE WITNESS:  Yes.  And in the supplement, I
17    think Eric concludes (as read) "Our investigation
18    is ongoing to determine what changes/modifications
19    were made to these records and whether any
20    additional records were accessed and/or modified
21    without authorization.  Due to the volume of data
22    and the substantial number of records contained,
23    it is unclear at this point how many records were
24    accessed or altered during the data breaches."
25 BY MR. MORLAN:

Page 223

1    Q.   Okay.  Can you tell me what -- what page
2  you're on?
3    A.   That was Page 3 of -- at the bottom of
4  Page 3 of the supplement.
5    Q.   Okay.  Can -- can you just tell me where on
6  Page 3 it -- it specifically says that data was
7  obtained?
8    A.   No, it just says the work is ongoing.  It
9  doesn't say data is obtained.
10   Q.   Okay.  But with respect to Page 3, when it
11 says that the investigation is ongoing, isn't it
12 referring to changes and modifications to data, not
13 data that was stolen or otherwise obtained?
14   A.   Okay.  May -- maybe I acquaint the two, but
15 that's his wording here, changes and modifications.
16   Q.   Okay.  Do you need some more time with the
17 report?
18   A.   No, no.  It is what it is.
19   Q.   Okay.  So isn't this -- this whole Page 3
20 and these charts, this is about whether or not
21 particular files within MPFin were modified, isn't it?
22   A.   Accessed, modified, changed, yes.
23   Q.   Okay.  And I believe you testified earlier
24 that there were several members of 777/Suttonpark
25 legacy employees that had serious concerns about

Page 224

1  providing access to Saiph, Kosinski, and Davis for
2  purposes of the audit, correct?
3    A.   Correct.
4    Q.   But you overruled those objections based on
5  your business judgment that Leadenhall was entitled to
6  review its data pursuant to the contractual agreements
7  that it had with the companies, correct?
8    A.   Correct.  Both Jim Howard and me, yes.
9    Q.   And as part of a safeguard though, however,
10 given those concerns, the credentials that were
11 provided to Saiph limited their access to basically
12 read access of the Leadenhall files within the MPFin
13 database, correct?
14   A.   That was my understanding of the
15 credentials, yes.
16   Q.   And with respect to the --
17   A.   Actually, let me -- let me correct that.
18 It's read only.  I don't even think it was read/write.
19 I think it's read only.
20   Q.   Oh, okay.  Thank you for that, for that
21 correction.  I -- I meant read only.
22   A.   Yeah.
23   Q.   If I said write, there should not have been
24 write access --
25   A.   Right.

Page 225

1    Q.   -- correct?
2    A.   Correct.
3    Q.   Okay.  And on Page 3, there's some records
4  that are identified by a record ID number, correct?
5    A.   The supplement?  Of the -- the --
6    Q.   Yes, the supplemental report.
7    A.   Yes (perusing).
8    Q.   That we were just looking at, Page 3.
9        And I don't believe that I've seen any
10 information, but maybe there's some new information
11 that -- that -- that you have.
12       But Mr. Taheri or Mr. Mazur have not
13 provided any information that the particular records
14 listed on this page were actually compromised, have
15 they?
16       MR. PELLEGRINO:  Objection to form.
17       THE WITNESS:  No.  And at the bottom he says
18    they have to keep looking to determine whether or
19    not they've been modified (perusing).
20 BY MR. MORLAN:
21   Q.   And one of the intrusions that I think
22 you're aware of involved alleged access to Steve
23 Pasko's e-mail files; is that right?
24   A.   Yes.
25   Q.   And I believe you testified that you believe



**Office Phone:** 954-712-2600
**Email:** info@ucrinc.com
**Website:** ucrinc.com

777 PARTNERS LLC and SUTTONPARK CAPITAL LLC vs LEADENHALL CAPITAL
Shapiro, Mark on 03/05/2025              Pages 226..229

Page 226

1 that there might be information in Steve Pasko's
2 e-mails that might be useful to Leadenhall's
3 litigation in New York alleging fraud; is that right?
4     A.  No, I don't think I testified that there is
5 information that could allege fraud.  I think some --
6 someone may think that there's information there that
7 could prove fraud.  I'm not saying it's there.
8     Q.  But is it your position that -- well, let me
9 ask you:  Have -- have you done any kind of -- given
10 that there are allegations of -- of fraud and given
11 the company's position that -- well, let me ask you
12 this --
13        MR. MORLAN:  Strike that.
14 BY MR. MORLAN:
15     Q.  Before we get to that, is it the company's
16 position that Leadenhall directed Mr. Davis to seek
17 Mr. Pasko's e-mails in order to gain relevant
18 information for the New York litigation?
19     A.  It's our position that they -- can you say
20 that question again?
21     Q.  Sure.
22        Well, actually let me let you say it.
23        What is your position with regard to
24 Leadenhall's role, if any, in the access to
25 Mr. Pasko's e-mails?

Page 227

1     A.  Our position is that Saiph and Noah Davis
2 accessed Steve Pasko's e-mails to support their
3 litigation, the Leadenhall litigation in New York.
4 That's our position.
5     Q.  So as you sit here today, you don't know
6 whether or not there's any information in Steve
7 Pasko's e-mail box that would be relevant to the New
8 York litigation?
9     A.  Correct.
10     Q.  And you haven't done any investigation to
11 determine the answer to that question, have you?
12     A.  No.
13     Q.  And you've managed or been involved in
14 managing a lot of litigation and potential litigation,
15 correct?
16     A.  Correct.  Correct.
17     Q.  I'm sorry, I'm having trouble hearing you.
18 I'm not sure what's going on.
19     A.  Correct.  Is that better?
20     Q.  Yes.  Thank you.
21        And you're familiar with what a litigation
22 hold is, correct?
23     A.  Yes.
24     Q.  And you're familiar with document
25 preservation obligations and best practices, correct?

Page 228

1     A.  Yes.
2     Q.  Okay.  And I believe Mr. Taheri testified
3 that there's an indefinite hold on all of the
4 Suttonpark e-mails, including Mr. Pasko's, for -- for
5 preservation purposes that's been in place long before
6 the particular litigation that we're here on.  Is that
7 your understanding?
8     A.  That is my understanding.
9     Q.  What information could possibly be on
10 Mr. Pasko's laptop that would be useful and relevant
11 to Leadenhall in the New York litigation but not
12 accessible to them by virtue of discovery?
13     A.  I can't -- I don't know.
14        MR. PELLEGRINO:  Objection to form.
15        THE WITNESS:  I don't know.
16 BY MR. MORLAN:
17     Q.  So you don't have any idea what on there
18 could be potentially useful.  You just think something
19 could be?
20     A.  Something could be.  Privileged documents
21 could be.  That's one thing.
22     Q.  And is there any evidence that any
23 privileged documents were obtained from Mr. Pasko's
24 computer?
25     A.  No.

Page 229

1     Q.  But you would agree with me that if there
2 were relevant documents that were not privileged in
3 Mr. Pasko's e-mail box, that those would be
4 discoverable in the New York litigation, correct?
5        MR. PELLEGRINO:  Objection to form.
6        THE WITNESS:  I would think so.
7 BY MR. MORLAN:
8     Q.  So then there wouldn't really be any reason
9 for Leadenhall to seek the documents from Mr. Pasko's
10 e-mail box, according to your theory, unless they were
11 specifically targeting privileged documents, correct?
12        MR. PELLEGRINO:  Objection to form.
13        THE WITNESS:  I don't know what's in Steve
14 Pasko's mail -- e-mail.  I -- I just -- I don't
15 know.  There -- there could be anything out there.
16 BY MR. MORLAN:
17     Q.  Well, do you think that you might have a
18 duty to inquire as to what could be in there?
19     A.  Well, I think --
20        MR. PELLEGRINO:  Objection to form.
21        THE WITNESS:  I -- I think -- look,
22 there's -- there's a lot of litigation going on.
23 There's a lot of discovery going on.  You know,
24 I -- I testified before at some point in time
25 if -- if we have to look at claims, you know,



UNIVERSAL
COURT REPORTING

Office Phone: 954-712-2600
Email: info@ucrinc.com
Website: ucrinc.com

777 PARTNERS LLC and SUTTONPARK CAPITAL LLC vs LEADENHALL CAPITAL
Shapiro, Mark on 03/05/2025                                    Pages 230..233

Page 230

1    that's something that we may do or it's just going
2    to be part of the litigation. It's -- you know, I
3    don't think we have a duty today to go investigate
4    these claims. It's part of the litigation. It's
5    going to be investigated.
6 BY MR. MORLAN:
7    Q.  Well, what's your understanding of your
8 duties to investigate, particularly as a restructuring
9 consultant, when allegations of fraud are made against
10 a principal who has had to resign from the company?
11   A.  Well, our -- our responsibility is to make
12 sure that it's not happening today. You know,
13 investigations cost money. They take time. There's
14 litigation going on. You're right, there's
15 preservation of documents. But our responsibility is
16 to make sure in -- in -- and that it's not happening
17 today.
18       So he is resigned as a manager. He's no
19 longer an employee. He's no longer making decisions.
20 I don't believe there's any fraud going on with Steve
21 Pasko today. I can opine on what happened in the
22 past, but ultimately that's going to be resolved.
23 We're here to run the company today, not necessarily
24 to do investigations into the past. They will happen.
25 It may be on our watch, it may not be on our watch.

Page 231

1 It could be people after us who are going to do
2 those -- those investigations. You know, each -- each
3 matter has a life. And -- and we're here now. We're
4 running the company.
5    Q.  So then your testimony is that your only
6 duty with respect to reports of allegations of fraud
7 is to make sure there's no ongoing fraud, but there's
8 no other duty to investigate whether fraud happened in
9 the past? Is that your testimony, sir?
10   A.  That's not --
11       MR. PELLEGRINO:  Objection to form.
12       THE WITNESS:  That's not my testimony. My
13   testimony is you're prioritizing what we're doing
14   today. There's a lot of things going on. At this
15   point in time we're not doing an investigation
16   into the allegations in the Leadenhall litigation.
17   There's enough discovery going on that what
18   happened then is going to come out. So where do
19   we put our efforts right now? We're putting our
20   efforts in to look at the current assets, the
21   current cash flows, the current employees, and
22   making sure that we -- we're -- we're -- we're
23   trying to get to a -- a good place on value and
24   maximizing value and -- and ultimately settling
25   some of this litigation.

Page 232

1        But if you're asking me are we doing an
2    investigation into the past right now on these
3    matters, right now we're not doing it. We may in
4    the future, but we're not doing it today. Every
5    matter is different.
6 BY MR. MORLAN:
7    Q.  Have you done any investigation into any
8 allegations of fraud that Leadenhall's made?
9    A.  I'd have to go to the complaint and look at
10 each of the allegations.
11       MR. PELLEGRINO:  And I'm just going to
12   object based on work product privilege and what's
13   going on in the southern district litigation. I
14   don't know everything, but it could be based on
15   that.
16       MR. MORLAN:  What -- so you think my
17   question of have you done any investigation is --
18   are you instructing him not to answer?
19       MR. PELLEGRINO:  I'm not. I'm -- I'm --
20       MR. MORLAN:  Okay.
21       MR. PELLEGRINO:  I'm warning him that --
22       MR. MORLAN:  Then I don't really understand
23   the purpose of the objection other than a speaking
24   coaching objection. Prepare your witnesses before
25   the deposition, not during, please. And please

Page 233

1    let me continue.
2 BY MR. MORLAN:
3    Q.  I'm sorry, we got interrupted. I think
4 your -- my question and your answer was the
5 allegations that Leadenhall has made, you're not aware
6 of any investigation that has been performed as to the
7 allegations of fraud with respect to the New York
8 litigation involving Leadenhall; is that correct?
9    A.  I think to properly answer that I'd have to
10 look at the complaint and look at all the allegations.
11 I mean, do we -- I mean, if you want me to do that, I
12 can go through it. I -- I don't -- right now, I don't
13 know every allegation of fraud. I know there's
14 allegations of fraud. I mean, do you want me to go
15 through each one?
16   Q.  No, I'm not asking which allegations have
17 been investigated. I'm just asking: Have -- have any
18 of the allegation -- any, has there been any alle- --
19 any investigation of any allegations of fraud made in
20 the New York litigation?
21   A.  I don't believe so. There may have been,
22 but I don't believe so.
23   Q.  Would you consider Mr. Kosinski audit an
24 investigation related to the allegations of fraud in
25 the New York litigation?

**UNIVERSAL**
**COURT REPORTING**

**Office Phone:** 954-712-2600
**Email:** info@ucrinc.com
**Website:** ucrinc.com

Page 234

1    A.   Well, let me -- le me restate what I said.
2  Actually, not Mr. Kosinski's allegations.  But I think
3  what Jim Howard and Teresa Licamora were doing at
4  Suttonpark was an investigation to -- into the alleged
5  fraud at Suttonpark to determine -- help determine
6  what the shortfall and the collateral and the
7  borrowing base is.  What Mr. Kosinski was retained to
8  do was what Suttonpark is entitled to, the collateral
9  audit -- or what Leadenhall is entitled to, a
10  collateral audit on their collateral.  You know, it's
11  the company doing a separate investigation.  I would
12  say that, yeah, we -- we definitely were -- do -- did
13  some investigative work there.
14    Q.   And did you review Mr. Kosinski's report?
15    A.   I did not.
16    Q.   Are you familiar with the conclusions of
17  Mr. Kosinski's report?
18    A.   I am not.
19    Q.   Are there any collateral shortfalls with
20  respect to any of the credit facilities provided by
21  Leadenhall to 777 or Suttonpark?
22    A.   Yes.
23    Q.   And what are those collateral shortfalls?
24    A.   I don't know the exact numbers.  It -- it --
25  it varies.  You know, we -- we had some worksheets

Page 235

1  done up on them.  And Jim -- I -- Jim Howard is
2  probably better to testifying to than I am.  I
3  don't know what the exact estimates are today.
4    Q.   Are the estimates material?
5    A.   Yes.
6    Q.   Are they more than $100 million?
7    A.   I don't believe so.
8    Q.   And would it be safe to say that the
9  shortfalls in collateral subject Suttonpark and/or 777
10  to potential liability?
11    A.   In that the allegations in the New York
12  complaint?
13    Q.   Well, I'm asking you.  If those allegations
14  are -- are -- are proven, would that be bad for 777
15  and Suttonpark?
16    A.   Yes.
17    MR. PELLEGRINO:  Objection to form.
18  BY MR. MORLAN:
19    Q.   I'm sorry, did you say yes?
20    A.   Yes.
21    MR. MORLAN:  What's your objection to the
22  form?
23    MR. PELLEGRINO:  I -- I believe you're
24  asking him for a legal conclusion.  The outcome of
25  the lawsuit.

Page 236

1    MR. STARR:  I think he said "would it be
2  bad."
3    MR. MORLAN:  Yeah, that -- that -- that's
4  not a legal term that I'm legally familiar with,
5  but I -- I --
6    MR. PELLEGRINO:  We use it all the time.
7  BY MR. MORLAN:
8    Q.   Okay.  So is it your belief and a basis for
9  bringing this lawsuit that Mr. Kosinski was somehow
10  complicit in Mr. Davis's or the intrusions that you
11  allege that Mr. Davis made?
12    A.   It's definitely possible.
13    Q.   Okay.  My question was whether or not that
14  was your conclusion and whether or not that was your
15  position, not whether or not it was possible.
16    Are -- are you stating as part of your
17  position in this litigation that Mr. Kosinski was, to
18  use another legal term, in cahoots with Mr. Davis with
19  respect to the intrusions that Mr. Mazur has
20  identified in his report?
21    A.   Yes.
22    Q.   But you have not even read Mr. Kosinski's
23  report, correct?
24    A.   Correct.
25    Q.   Do you know whether Mr. Kosinski's report

Page 237

1  was good or bad for 777 and Suttonpark?
2    A.   I haven't read the report.
3    Q.   That wasn't my question.
4    My question is just:  Do you know as you sit
5  here today whether the information and conclusions
6  contained in Mr. Kosinski's report were good or bad
7  for 777 and Suttonpark?
8    A.   I don't know.  I haven't read the report.
9    Q.   Have you discussed the report with anybody?
10    A.   No.
11    Q.   Are you aware of any forensic evidence that
12  demonstrates that Mr. Kosinski had any involvement in
13  Mr. Davis's intrusion?
14    A.   Mr. Davis was working for Saiph.
15    Q.   When you say "Mr. Davis was working for
16  Saiph," do you know whether Mr. Davis was an
17  independent contractor for Saiph or an employee?
18    A.   No, I don't.  He represented himself as part
19  of Saiph.
20    Q.   He represented himself as part of Saiph?
21    A.   He had a Saiph e-mail.
22    Q.   Other than having a Saiph e-mail address,
23  was there any other way in which Mr. Davis represented
24  himself as part of Saiph?
25    A.   I wasn't dealing with Mr. Davis.  That would


UNIVERSAL
COURT REPORTING

Office Phone: 954-712-2600
Email: info@ucrinc.com
Website: ucrinc.com

777 PARTNERS LLC and SUTTONPARK CAPITAL LLC vs LEADENHALL CAPITAL
Shapiro, Mark on 03/05/2025                           Pages 238..241

Page 238

1 be either -- that would be Shawn Taheri and Jim
2 Howard.
3     Q.  So you don't know as you sit here today
4 whether Mr. Davis was an employee or a contractor of
5 Saiph?
6     A.  No.
7     Q.  Okay.  Is that an allegation that's repeated
8 in the -- both the complaint and the amended
9 complaint?
10    A.  I don't know.
11    Q.  But you reviewed the complaint and the
12 amended complaint before they were filed, correct?
13    A.  Correct.  And I can't recall it right now.
14    Q.  And what was the purpose of reviewing the
15 complaint and the amended complaint before they were
16 filed?
17    A.  To review it for my understanding and
18 accuracies.
19    Q.  Okay.  And are you aware of any sworn
20 information in this case that bears on the question of
21 whether or not Mr. Davis was an independent contractor
22 or an employee of Saiph?
23    A.  Not that I recall.
24    Q.  Okay.  Well, in fairness to you, you said
25 you didn't read Mr. Kosinski's declaration and -- and

Page 239

1 I think it may have been in there.
2       Have you seen the consulting agreement
3 between Saiph and Noah Davis's company, The Tyler
4 Durden Group?
5     A.  No, I have not.
6     Q.  If you were to see such an agreement and
7 that agreement were authenticated and sworn to as the
8 relationship between Saiph and Mr. Davis, would that
9 have any potential bearing on whether or not
10 Mr. Davis -- your understanding of whether Mr. Davis
11 is an employee or a contractor?
12       MR. PELLEGRINO:  Objection to form.
13       THE WITNESS:  I think it would.
14 BY MR. MORLAN:
15    Q.  And was Mr. Davis an employee or a
16 contractor for 777 and Suttonpark when he was the
17 director of IT before his resignation?
18    A.  I believe he was an employee.
19    Q.  And do you know approximately how long
20 Mr. Davis worked for Suttonpark?
21    A.  I -- I knew it at one point.  I -- I can't
22 recall.
23    Q.  Was it more than 5 years?
24    A.  I don't know.
25    Q.  I'm sorry, there's a little bit of delay.

Page 240

1 Did you say you don't know?
2     A.  I don't know.
3     Q.  But you do understand that Mr. Davis was
4 working for 777 or Suttonpark up until his resignation
5 that I believe you testified was effective some time
6 in late April of 2024, correct?
7     A.  April 2024, yes.
8     Q.  Okay.  And do you have an understanding as
9 to whether or not Mr. Davis -- Mr. Davis's company is
10 still under contract with Saiph?
11    A.  I don't know.
12    Q.  Well, if I were to represent to you that
13 Mr. Davis was let go as soon as Saiph found out
14 information about the alleged physical intrusion,
15 that -- would you have any reason to doubt that?
16       MR. PELLEGRINO:  Objection to form.
17       THE WITNESS:  No, I wouldn't.
18 BY MR. MORLAN:
19    Q.  And if Mr. Kosinski also swore to that in
20 his sworn declaration submitted to the court, would
21 that have some bearing on your understanding of that
22 issue?
23       MR. PELLEGRINO:  Objection to form.
24       THE WITNESS:  Yes.
25 BY MR. MORLAN:

Page 241

1     Q.  What factual information do you have about
2 Mr. Davis, besides the Mazur report and information
3 from Mr. Taheri, that relates to whether or not
4 Mr. Davis performed the intrusions at issue in this
5 litigation?
6       MR. PELLEGRINO:  Objection to form.
7       THE WITNESS:  No other data.
8 BY MR. MORLAN:
9     Q.  And with respect to Mr. Kosinski, other than
10 the information contained in Mr. Mazur's report and
11 any of the forensic evidence identified or looked at
12 by Mr. Taheri, is there any -- is there any
13 information that you're aware of that reflects
14 Mr. Kosinski's involvement in any of the incursions
15 that have been alleged in this litigation?
16       MR. PELLEGRINO:  Objection to form.
17       THE WITNESS:  No, there is not.
18 BY MR. MORLAN:
19    Q.  And with respect to Leadenhall, other than
20 the information contained in Mr. Mazur's report and
21 any forensic evidence that Mr. Taheri might have
22 uncovered, is there any other evidence of Leadenhall's
23 involvement or role in any of the intrusions alleged
24 to have been committed by Mr. Davis in this
25 litigation?

UNIVERSAL
COURT REPORTING

Office Phone: 954-712-2600
Email: info@ucrinc.com
Website: ucrinc.com

777 PARTNERS LLC and SUTTONPARK CAPITAL LLC vs LEADENHALL CAPITAL
Shapiro, Mark on 03/05/2025                    Pages 242..245

Page 242

1      MR. PELLEGRINO: Objection to form.
2      THE WITNESS: We're relying on the data
3  from -- from those reports from Leadenhall.
4  BY MR. MORLAN:
5      Q.  Okay.  But as we sit here today, you're not
6  aware of any forensic data that links Leadenhall to
7  the incursions that Mr. Mazur identified, correct?
8      A.  No, no.
9      Q.  I mean -- do you mean, no, I'm incorrect,
10  or, no, there's no other information?
11     A.  No, there's no other information.
12     Q.  Okay.  And did you have an opportunity to
13  review Saiph's and Kosinski's expert, Mr. Rohr's
14  report in this matter?
15     A.  Yes, I did.
16     Q.  Okay.  Was there anything in Mr. Rohr's
17  report that Mr. Mazur disagreed with that you're aware
18  of?
19     A.  Not that I'm aware of.
20     Q.  Okay.  Do you know whether he testified to
21  as much in his deposition?
22     A.  I do not know that.
23     Q.  Are there any conclusions with respect to
24  Mr. Rohr's report that you disagree with?
25     A.  I have no reason to disagree with Mr. Rohr.

Page 243

1      Q.  And I believe that you said when Mr. Davis
2  left 777 and Suttonpark, there was an effort to revoke
3  Mr. Davis's credentials so that he would no longer
4  have access to 777 and Suttonpark systems; is that
5  right?
6      A.  I don't think I testified that.  That might
7  have been Mr. Taheri.  I know they --
8      Q.  Well, is that your understanding?
9      A.  Yes, that's my understanding, yes.
10     Q.  Okay.  I apologize if I conflated yours with
11  Mr. Taheri's.
12     MR. MORLAN:  Let's -- let's take a quick
13  break.
14     MR. PELLEGRINO:  Sure.
15     MR. MORLAN:  Unless somebody needs more,
16  just 5 minutes.  I need to use the restroom.
17     MR. PELLEGRINO:  Sure.
18     THE VIDEOGRAPHER:  Okay.  Going off the
19  record.  The time --
20     MR. MORLAN:  Does anybody need more than 5
21  or are we good?
22     MR. STARR:  5 is fine.
23     THE WITNESS:  5's fine.
24     THE VIDEOGRAPHER:  Going off the record.
25  The time is 6:23.

Page 244

1      (A recess was taken.)
2      THE VIDEOGRAPHER:  Okay.  We're back on the
3  record.  The time is 6:38.
4  BY MR. MORLAN:
5      Q.  Are you aware of any searchs that were done
6  to see if there was any communication with Noah Davis
7  and 777 or Suttonpark after the conclusion of his
8  employment?
9      MR. PELLEGRINO:  Objection to form.
10     THE WITNESS:  I'm not aware of any.
11  BY MR. MORLAN:
12     Q.  And -- and by the way, for purposes of
13  this -- although it's a little late, but when I say
14  "the companies" or when I say "777 or Suttonpark,"
15  we're talking about it collectively as it relates to
16  this litigation and that's the understanding.  But if
17  for some reason you think that there's need to make a
18  distinction between Suttonpark and 777 as to a
19  particular issue, you'll let me know.  Fair
20  enough?
21     A.  Fair.
22     Q.  Okay.  Have you personally had any
23  communications with Noah Davis ever?
24     A.  No.
25     Q.  Do you know anything about Mr. Davis's last

Page 245

1  performance review?
2      A.  No.
3      Q.  Okay.  Do you know how long 777 retains
4  copies of the MPFin backup system?
5      MR. PELLEGRINO:  Objection to form.
6      MR. MORLAN:  What's your objection?
7      MR. PELLEGRINO:  So there's -- there's -- as
8  you know, there's various systems that maintain
9  backups and in different formats.  And in order
10  for Mr. Shapiro to understand it, you might need
11  to be more specific.
12     MR. MORLAN:  I said MPFin.
13  BY MR. MORLAN:
14     Q.  All right.
15     MR. PELLEGRINO:  That's not --
16  BY MR. MORLAN:
17     Q.  I'm going to try this, and just tell me if
18  you don't understand.
19     You know what I mean what I say "MPFin,"
20  right?
21     A.  I do.
22     Q.  Okay.  And you understand that backup files
23  are made of the data in MPFin, correct?
24     A.  Correct.
25     Q.  Okay.  And those backup files are one of the

**UNIVERSAL**
**COURT REPORTING**

**Office Phone:** 954-712-2600
**Email:** info@ucrinc.com
**Website:** ucrinc.com

777 PARTNERS LLC and SUTTONPARK CAPITAL LLC vs LEADENHALL CAPITAL
Shapiro, Mark on 03/05/2025                    Pages 246..249

Page 246

1 things that happens to those backup files is they are
2 transmitted to a company called Vervent (phonetic),
3 right?
4     A.   Correct.
5     Q.   Do you know how long Vervent keeps backup
6 copies of MPFin?
7     A.   I don't.
8     Q.   Okay.  Do you know how long 777 and
9 Suttonpark keep backup copies of MPFin?
10    A.   I do not.
11    Q.   Okay.  As you sit here today, do you know
12 whether 777 and Suttonpark have in their possession
13 any copies of MPFin from 2022?
14    A.   I don't know.
15    Q.   Who would -- how would you find out that
16 information if you wanted to know?
17    A.   I would probably ask Shawn Taheri.
18    Q.   Okay.  Is there anyone else you would ask
19 besides Mr. Taheri?
20    A.   At this point, probably not.
21    Q.   Okay.  Do you know of any efforts that were
22 made in this litigation to prevent potentially
23 relevant files from being deleted?
24    A.   I do not.
25    Q.   Okay.  Do you know of any modifications to

Page 247

1 any company retention policies were made for the
2 purposes of this litigation?
3     A.   I do not.
4     Q.   Do you know whether the company has any
5 retention policies?
6     A.   I believe they do.  I don't know the
7 specifics.
8     Q.   Okay.  So as you sit here today, you're not
9 aware of the -- any retention policies with respect to
10 the MPFin backup data, correct?
11    A.   Correct.
12    Q.   And are you familiar with what's actually
13 contained within an MPFin backup?
14    A.   I'm not.
15    Q.   Are you familiar with any previous issues
16 with the stability or operability or integrity of the
17 MPFin system?
18    A.   I'm not aware of any.
19    Q.   I believe you said that you think that
20 damages in this matter that you're aware of so far to
21 your client are about $600,000?
22    A.   600 and growing.
23    Q.   Okay.  And that essentially involves
24 attorneys' fees, expert costs, and the costs for B.
25 Riley personnel who are investigating or otherwise

Page 248

1 dealing with this, correct?
2     A.   And any -- that plus any remediation cost to
3 remediate the system, yes.
4     Q.   Okay.  What -- what have been the
5 remediation costs to remediate the system?
6     A.   I wouldn't know, but I believe there were
7 some.
8     Q.   What -- what has been done to actually
9 remediate the system?
10    A.   That would be in Shawn -- you'd have to ask
11 Shawn.
12    Q.   Okay.  So if Shawn testified that nothing
13 had been done specifically to remediate the system,
14 would you have any reason to disagree with that?
15    MR. PELLEGRINO:  Objection to form.
16    THE WITNESS:  I would not.
17 BY MR. MORLAN:
18    Q.   Have you ever discussed with anyone at 777
19 or Suttonpark the data integrity of the MPFin system?
20    A.   In general terms with Jim Howard and Teresa
21 Licamora.  But it had more to do with the validity of
22 the data that's in the system as opposed to the system
23 itself.
24    Q.   Okay.  Tell me what you mean when you say
25 the validity of the data and the system?

Page 249

1     A.   This goes into the investigation of -- of
2 the portfolio at Suttonpark, whether assets exist or
3 not.  So those would be the discussions I had with Jim
4 Howard.  If there's an asset listed in -- in MPFin in
5 one database, is it also included in another base --
6 database.  You know, the things that were alleged in
7 the -- in the -- in the Leadenhall investigation.
8     Q.   Okay.  Are you familiar with any
9 discrepancies that were uncovered between any data in
10 MPFin and the company's accounting records that were
11 identified during the course and scope of the audit?
12    A.   I'm unaware.  I mean, I -- I don't know.
13    Q.   Okay.
14    A.   There could -- there could have been.
15    Q.   If there were some evidence of that, is that
16 something that you think should be investigated
17 further?
18    MR. PELLEGRINO:  Objection to form.
19    THE WITNESS:  Yes.  It -- it really depends
20 on whether it's a system issue or whether it's a
21 timing issue or reconciliation issue.  It'd have
22 to -- I'd have -- probably have to know more facts
23 about what would cause the differences.
24 BY MR. MORLAN:
25    Q.   Okay.  And are you aware of any information



Office Phone: 954-712-2600
Email: info@ucrinc.com
Website: ucrinc.com

777 PARTNERS LLC and SUTTONPARK CAPITAL LLC vs LEADENHALL CAPITAL
Shapiro, Mark on 03/05/2025                    Pages 250..253

Page 250

1 in -- that came out of the audit that suggested that
2 there was evidence of a divergence between accounting
3 data and MPFin data?
4         MR. PELLEGRINO:  Objection to form.
5         THE WITNESS:  I'm not -- I'm not aware of
6    the specifics, no.
7 BY MR. MORLAN:
8    Q.  But you are aware of it generally, just not
9 the specifics?
10   A.  Yes, correct.
11   Q.  Okay.  Can you tell me what you -- what you
12 are aware of with respect to any conflicts between the
13 accounting data and the MPFin system?
14   A.  What I've -- what I've heard is historically
15 there's been difficulties in reconciling the MPFin
16 data to the accounting data.  It's actually sometimes
17 not unusual that operating systems don't easily
18 reconcile to financial systems.  We've seen that in
19 other companies as well.
20   Q.  Okay.  And -- and when that's a problem, is
21 it typically that the accounting records need to be
22 changed or the operating system needs to be changed or
23 what's your experience in that regard?
24   A.  It could be either.  It -- it -- it goes
25 both ways.

Page 251

1    Q.  Okay.  And with respect to the MPFin and
2 accounting records, reconciliation with respect to
3 777/Suttonpark, does that look more like an MPFin
4 issue or an accounting records issue?
5    A.  I don't -- I don't know.
6    Q.  Okay.  If you wanted to find out more about
7 that, who would you talk to?
8    A.  Most likely Teresa Licamora.  Kevin Cronin,
9 who's the controller at 777.  Could be one of the
10 other accountants that are responsible for reconciling
11 those systems.
12   Q.  Okay.  So you -- you would definitely want
13 to talk to somebody in a controller or accounting type
14 of function to be able to provide additional
15 information and insight into issues like that?
16   A.  Correct.
17   Q.  But you haven't had those discussions yet at
18 this point, have you?
19   A.  I have not.
20   Q.  Did you say no?  I'm sorry.  I couldn't hear
21 you.
22   A.  I have not.
23   Q.  Thanks.
24      Are you aware of any pending criminal
25 proceedings or investigations involving Josh Wander?

Page 252

1    A.  I'm aware that there are proceedings.  I'm
2 not aware of the details.
3    Q.  Same question with respect to Steve Pasko?
4    A.  Same answer.  I'm aware of -- aware of
5 the -- the proceedings, not aware of the details.
6    Q.  Okay.  Are you aware of any criminal
7 proceedings or investigations that relate to 777 or
8 Suttonpark that do not involve Josh Wander or Steve
9 Pasko?
10   A.  No.
11   Q.  Are you -- is there anyone, other than Josh
12 Wander or Steve Pasko, that you have any reason to
13 believe may be the subject of any criminal -- pending
14 criminal proceedings or investigations?
15   A.  No.  Again, I don't know who the targets
16 are.
17   Q.  So as you sit here today, other than Josh
18 Wander and Steve Pasko, you're not aware of any other
19 potential targets at 777 or Suttonpark, including
20 former employees; is that correct?
21   A.  Correct.
22   Q.  Were you involved in any discussions with
23 law enforcement concerning Noah Davis's entry into --
24 alleged entry into (Zoom interference)?
25   A.  I was not.

Page 253

1        THE COURT REPORTER:  I'm sorry, I missed the
2    last word.  Alleged entry into what?
3        MR. MORLAN:  Suttonpark's office.
4        THE COURT REPORTER:  Thank you.
5        And what was your answer?
6        THE WITNESS:  I was not.
7 BY MR. MORLAN:
8    Q.  Okay.  Have -- have any of your
9 investigations or the police investigation revealed
10 any evidence that Kosinski, Saiph, or Leadenhall had
11 anything to do with the alleged physical intrusion of
12 Noah Davis into Suttonpark's office?
13   A.  Not that I'm aware.
14   Q.  Is there anybody who would have better
15 information about that than you?
16   A.  I don't know.  Maybe someone in the legal
17 department.  I don't know.
18   Q.  Do you have any information regarding any --
19 anything that Davis might have done to assist
20 Suttonpark, 777, or any employee following his
21 resignation?
22   A.  Can you say that again?
23   Q.  Yeah.
24      Do you have any information regarding any
25 assistance that Davis might have provided to any

**UNIVERSAL**
○ **COURT REPORTING**

**Office Phone:** 954-712-2600
**Email:** info@ucrinc.com
**Website:** ucrinc.com

777 PARTNERS LLC and SUTTONPARK CAPITAL LLC vs LEADENHALL CAPITAL
Shapiro, Mark on 03/05/2025              Pages 254..257

Page 254

1 Suttonpark or 777 employee following his separation of
2 employment with the companies?
3        MR. PELLEGRINO: Objection to form.
4        THE WITNESS: What kind of assistance?
5 BY MR. MORLAN:
6    Q. Any sort of assistance, business type
7 assistance.
8    A. No, I am not.
9    Q. Do you know whether Mr. Taheri ever
10 contacted Mr. Davis for help with any issues with
11 respect to Mr. Taheri performing his job functions?
12   A. I do not, no.
13   Q. Do you know whether Mr. Davis has done any
14 work for any 777 portfolio companies since the
15 separation of his formal employment back in April of
16 2024?
17   A. I do not.
18   Q. Is there a portfolio company called Sutton
19 Place or something to that effect?
20   A. No. Sutton Place? No, I don't know that
21 one.
22   Q. Sutton Point?
23   A. No, don't know that one.
24   Q. Are there any entities with Sutton in the
25 name besides the entity in this lawsuit, Suttonpark?

Page 255

1    A. There's an -- there's an insurance company
2 called Sutton National.
3    Q. Ah, Sutton National. Okay.
4        What does Sutton National do, and does it
5 have anything to do with this case?
6    A. No, it does not.
7    Q. Okay. What does it do?
8    A. It's an insurance company.
9    Q. What kind of insurance?
10   A. I think it's life insurance.
11   Q. Okay. And do you know whether Mr. Davis has
12 performed any work for Sutton National since the
13 formal separation of his employment with the
14 companies?
15   A. I do not. I don't know.
16   Q. If you wanted to find out information about
17 whether Mr. Davis had performed any work for any 777
18 portfolio companies, including Sutton National, how
19 would you go about finding that information?
20   A. If it was technology driven, I would ask
21 Shawn Taheri. I could look -- talk to accounting to
22 see if he was paid or how he was paid, consulting or
23 payroll. A few different area -- avenues I would go.
24   Q. Okay. And as you sit here today, you don't
25 have any reason to doubt that Mr. Davis did some work

Page 256

1 for Sutton National?
2        MR. PELLEGRINO: Objection to form.
3        THE WITNESS: I don't have any reason to
4     believe that he did or he didn't.
5 BY MR. MORLAN:
6    Q. Okay. Would it concern you if Mr. Davis had
7 done some work for Sutton National?
8    A. I'd have to understand the timing. Was it
9 right after he left. You know, who hired him. What
10 was the -- I -- it -- it would really depend.
11   Q. Mm-hmm.
12       Did Sutton National have anything to do
13 with Leadenhall?
14   A. I don't believe so.
15   Q. And do you have any information that
16 suggests that Saiph or Kosinski attempted to conceal
17 Mr. Davis's involvement from Suttonpark and 777 with
18 respect to his role as an IT consultant with The Tyler
19 Durden Group under contract with Saiph?
20   A. I have no reason to believe he hid anything.
21   Q. And with respect to Mr. Mazur's third
22 report, does that -- have you reviewed that third
23 report dated on or about February 12th of 2025?
24   A. Briefly, yes.
25   Q. Okay. And does that concern an intrusion

Page 257

1 that's alleged to have occurred on or about
2 December 22nd, 2024?
3    A. Yes, correct.
4    Q. Okay. And when did you learn about that
5 December 22nd, 2024, potential intrusion?
6    A. Pretty close to that date.
7    Q. Okay. And do you know why Mr. Mazur did not
8 reference that incident in his report dated 10 days
9 later, January 2nd, 2025?
10   A. I don't know.
11   Q. Do you know whether he was instructed by
12 anybody to keep that out of his report?
13   A. I don't know that.
14   Q. Do you have any reason to believe that Saiph
15 or Kosinski had anything to do with the December 22nd,
16 2024, alleged incursion?
17   A. No, I don't.
18   Q. Do you have any reason to believe that
19 Leadenhall was involved in any way with respect to the
20 alleged December 22, 2024, incursion?
21   A. I do not.
22   Q. Do you know of any data that was actually
23 obtained during the 2024 -- December 22 of 2024
24 alleged incursion?
25   A. I do not.



Office Phone: 954-712-2600
Email: info@ucrinc.com
Website: ucrinc.com

777 PARTNERS LLC and SUTTONPARK CAPITAL LLC vs LEADENHALL CAPITAL
Shapiro, Mark on 03/05/2025                                    Pages 258..261

Page 258

1    Q.   What information was available to you at the
2  time of the decision that was made to suspended
3  Saiph's access to the MPFin data for the audit
4  purposes on or about August 14th, 2024?
5    A.   Well, we knew the CrowdStrike notice was
6  triggered on that.  It showed that the intrusion was
7  made by -- I believe it was Noah Davis at that point
8  in time with -- with the credentials.  He was -- based
9  on your -- what you're saying, he was a consultant for
10  Saiph.  The audit was going on.  And at that point we
11  didn't know the extent of anything.  So the decision
12  was made to pull the credentials and let's do an
13  investigation and try and figure out what happened.
14    Q.   But you would consider that CrowdStrike
15  notification pretty compelling evidence, wouldn't you?
16    A.   Yes.
17    Q.   Because the -- the -- the CrowdStrike update
18  I believe specifically said that Noah Davis's old
19  CrowdStrike credentials were used as part of the
20  intrusion, correct?
21    A.   Correct.
22    Q.   Okay.  So at that point, is it your
23  testimony that you had a good faith basis to suspect
24  that Mr. Davis was the one responsible for that
25  intrusion?

Page 259

1    A.   We had good faith basis that he was
2  responsible for that intrusion, but we didn't know
3  what other intrusions there were and who did anything.
4  That was kind of the initial point of -- you know, we
5  knew something happened and Noah did something.  We
6  didn't know who did what, when they did it, and to the
7  extent what was done.
8    Q.   But you felt like in the exercise of your
9  business judgment and acting in good faith, that you
10  had sufficient reason to prevent Noah Davis from
11  having access -- further access to any of your systems
12  at that point, correct?
13    A.   I think our decision was to prevent Saiph in
14  general from having any access to our systems at that
15  point in time.
16    Q.   Okay.  But that was based on an incursion
17  that you allege was performed by Noah Davis using Noah
18  Davis's credentials, correct?
19    A.   Correct.
20    Q.   When did you first notify Saiph and
21  Leadenhall that you suspected that Noah Davis was a
22  security risk?
23    A.   I don't know the exact date.  I remember
24  seeing some e-mails going back and forth on when to
25  notify, how to notify.  It was mid August when it --

Page 260

1  when they were notified.  So probably a week later or
2  so.  I don't know the exact dates, but it was shortly
3  after the -- the CrowdStrike notification.
4    Q.   Well, if I were to represent to you that I
5  am unaware of any notification to Saiph or Leadenhall
6  that Mr. Davis was a security risk and was suspected
7  of being the vector for these intrusions, that no
8  information was shared as to that until the filing of
9  the lawsuit.  Would you have any reason to disagree
10  with that?
11    A.   Well, what I was talking about was the
12  notification that we have -- you know, we have a
13  problem.  There -- I -- I think the original e-mail,
14  we have some technical issues.  There were some
15  e-mails back and forth, what does that really mean.
16  But we were trying to figure out what exactly
17  happened.
18    Q.   So but you didn't actually say -- you didn't
19  notify Saiph that Davis was a potential security risk
20  at that point, did you?
21    A.   I don't know when we notified them of that.
22    Q.   Okay.  Are you aware of any evidence that
23  you notified Saiph or Leadenhall that Mr. Davis was
24  responsible for the intrusions prior to filing the
25  lawsuit?

Page 261

1    A.   I haven't seen any, no.
2    Q.   I'm sorry?
3    A.   I haven't seen any, no.  I'm not aware of
4  any.
5    Q.   You haven't seen any?
6    A.   I'm not aware of any.
7    Q.   Would you consider it standard in a cyber
8  security investigation that -- would you identify a
9  security vulnerability that that information may need
10  to be shared with other parties?
11    A.   I think we want to share the information
12  once we knew exactly what happened.  I think there was
13  an investigation going on and we weren't exactly aware
14  of what happened.  Probably still aren't aware of
15  everything that happened.
16    Q.   I understand that what you're saying is the
17  investigation wasn't finished.  But I think you told
18  me that you had some compelling direct evidence that
19  somebody using Davis's credentials and Davis's IP
20  address was responsible for the incursions, correct?
21    A.   For that one incursion.  All we knew was
22  that one incursion at that point.
23    Q.   Okay.
24    A.   On August 9th.
25    Q.   When did you learn of the other incursions?

**UNIVERSAL COURT REPORTING**

Office Phone: 954-712-2600
Email: info@ucrinc.com
Website: ucrinc.com

777 PARTNERS LLC and SUTTONPARK CAPITAL LLC vs LEADENHALL CAPITAL
Shapiro, Mark on 03/05/2025                    Pages 262..265

Page 262

1    A.  The investigation went on. I don't know the
2  exact dates of when they discovered the other
3  incursions, but that followed from that August 9th
4  trigger.
5    Q.  I mean, did it take more than a week to
6  identify the other potential Davis intrusions?
7    A.  I don't know. I don't recall the timeline
8  at this point.
9    Q.  So as you sit here today, do you have a view
10 as to whether or not it would be appropriate to notify
11 Saiph and Leadenhall that Davis was a suspect?
12   A.  I don't have -- I don't have a view on that
13 right now. It really depends on the facts and
14 circumstances and the timing and what we knew. And I
15 just don't have an opinion on that.
16   Q.  Okay. What information would you need in
17 order to have an opinion on that?
18   A.  More information on exactly what happened, a
19 more robust investigation. You know, it --
20 ultimate -- ultimately we need more information.
21   Q.  So it's been at least 6 months since the
22 last intrusion, correct?
23      MR. PELLEGRINO: Objection to form.
24      THE WITNESS: No, the last intrusion was
25 December. So it's been --

Page 263

1 BY MR. MORLAN:
2    Q.  Okay. Leaving aside the December one that I
3  believe you testified that you don't have any reason
4  to believe Leadenhall or Paul. We're talking about
5  the last alleged intrusion by Mr. Davis. I believe
6  that was August 9th, 2024; is that correct?
7    A.  I'm not sure it was the last one. It would
8  be on or around then, yes.
9    Q.  Okay. So would you agree with me or
10 disagree with me that it's been approximately 6 months
11 since August 9th, 2024, until today?
12   A.  Correct.
13   Q.  Okay. So having had 6 months to investigate
14 this alleged major data security breach, is your
15 testimony that further investigative steps are needed
16 at this point?
17      MR. PELLEGRINO: Objection to form.
18      THE WITNESS: I'd have to talk to Eric about
19 that. In his report he was saying he -- there's
20 more investigation that would have to happen to
21 determine, you know, exactly what happened to the
22 data. I don't know -- I haven't talked to him
23 about what the next steps would be, if any.
24 BY MR. MORLAN:
25   Q.  Have you directed him to perform any

Page 264

1 additional work?
2    A.  At this point, no.
3    Q.  Have you directed Mr. Taheri to do any
4  additional investigation?
5    A.  No.
6    Q.  What additional information do you think you
7  would need as far as any additional investigation?
8    A.  Well, I'd have to know what -- what they
9  think they could find and how much it's going to cost.
10   Q.  What they think they could find where?
11   A.  On the systems. What would -- what would
12 additional forensics -- what could they possibly find.
13 You'd have to talk to them.
14   Q.  Okay. So was it -- so it's your
15 understanding then that 6 months after the last
16 intrusion, that you're not sure as you sit here today
17 whether the companies have thoroughly investigated
18 their own systems for evidence relevant to this case?
19   A.  I'm not sure if there's additional forensics
20 that need to be done. That's my testimony.
21   Q.  And if -- do you have any idea what
22 additional forensics would need to be done, other
23 places that need to be looked at on 777 or
24 Suttonpark's data, rocks that need to be turned over?
25 Any of that?

Page 265

1    A.  No, I do not.
2    Q.  Okay. Who would have better information
3  about that than you?
4    A.  Shawn and Eric.
5    Q.  Shawn and Eric?
6    A.  Yeah.
7    Q.  Yes?
8    A.  Yes.
9    Q.  And has anybody provided you with any
10 factual information about the circumstances involving
11 Mr. Kosinski departure from 777/Suttonpark?
12   A.  No, they have not.
13   Q.  Okay. And other than a stray comment by
14 somebody saying they didn't trust Mr. Kosinski, do you
15 have any factual basis to determine whether or not
16 Mr. Kosinski is trustworthy or not?
17   A.  No, I don't, which is why Jim and I allowed
18 Saiph to do the original audit.
19   Q.  And do you know whether Mr. Kosinski was
20 competent to perform the audit?
21   A.  I've heard he's a very competent individual.
22   Q.  Okay. So the -- in terms of the complaints
23 about -- or the objections to Mr. Kosinski and Saiph
24 being the ones to do the audit, was there anyone who
25 questioned his ability to properly perform the audit?

UNIVERSAL COURT REPORTING

Office Phone: 954-712-2600
Email: info@ucrinc.com
Website: ucrinc.com

777 PARTNERS LLC and SUTTONPARK CAPITAL LLC vs LEADENHALL CAPITAL
Shapiro, Mark on 03/05/2025                    Pages 266..269

Page 266

1    A.  No.  Just that he'd be looking at
2 information that he's not entitled to look at because
3 he's working for Leadenhall.
4    **Q.  And that was the impression that the legacy**
5 **employees of 777 and Suttonpark informed you of; is**
6 **that correct?**
7    A.  Current employees, legacy employees, yes.
8 The -- the -- they're current and legacy employees,
9 yes.
10   **Q.  Okay.  And they were the people that were**
11 **working for 777 and Suttonpark during the events that**
12 **Leadenhall alleges caused the damage in the New York**
13 **litigation; is that right?**
14   A.  I think I said before most of them were.  I
15 don't believe Chris O'Reilly was.
16   **Q.  But Chris O'Reilly said that he had a reason**
17 **not to trust -- trust Paul Kosinski?**
18   A.  I don't remember Chris's opinion of -- of
19 what it went.  But I do believe he was in the mix of
20 saying it's not a good idea to have Paul in here.
21   **Q.  So all of these people seemingly unanimous**
22 **that it wasn't a good idea to have this competent,**
23 **knowledgeable auditor audit the books.  It sounds like**
24 **that may have given you some pause; is that right?**
25   A.  I don't say give us -- gave us pause.  It's

Page 267

1 we were -- you know, Jim and I looked at it as what is
2 Leadenhall -- you know, one of our -- one of your
3 mandates is to try to manage litigation.  And
4 Leadenhall, per the loan and security agreement, is
5 entitled to collateral audits and a traditional scope
6 of collateral audit.  And Jim and I were emphatic
7 that, you know, they're entitled to it.  This is what
8 they're going to get.
9    **Q.  Okay.  And do you know as you sit here today**
10 **whether that collateral audit was favorable or**
11 **unfavorable to Leadenhall's possession?**
12   A.  I think I said before I haven't seen the
13 results of the collateral audit.
14   **Q.  Do you think that's something that's**
15 **important that you might want to find out a little**
16 **more about?**
17   A.  I -- I will.  I mean, it's -- it --
18 everything kind of is.  I -- I understand the
19 shortfall and -- and the -- the -- the condition of
20 the portfolio, I'm -- I'm pretty aware of.
21   **Q.  As you sit here today, do you think that the**
22 **condition of the portfolio is going to result in**
23 **financial loss to Leadenhall?**
24   A.  Yes, I do.
25   **Q.  I'm sorry?**

Page 268

1    A.  Yes, I do.
2    **Q.  And is it your -- and what is your**
3 **assessment of the approximate amount of financial loss**
4 **that's -- that's at play here?  And feel free to give**
5 **a range.**
6    A.  I don't -- I don't want to give a range on
7 it right now.  Leadenhall's --
8    **Q.  All right.  Well, give me your best guess.**
9    A.  I mean, Leadenhall thinks they're --
10       MR. PELLEGRINO:  Objection to form.
11       THE WITNESS:  Leadenhall thinks they're
12    short 300 some-odd million dollars.  You know,
13    it's -- it -- I think our number is less than
14    that, but I don't want to give a number.
15 BY MR. MORLAN:
16   **Q.  Well, I mean, are they off by like serious**
17 **orders of magnitude or are we talking about the**
18 **difference between 300 and 287?**
19   A.  It's probably more than that difference, but
20 it's still a large number.
21   **Q.  Over $100 million?**
22   A.  Probably.
23   **Q.  Okay.  There's been allegations that**
24 **Leadenhall has done something improper or overly**
25 **aggressive in the New York litigation.  Is that**

Page 269

1 **something that you have any specific information**
2 **about?**
3       MR. PELLEGRINO:  Objection to form.
4       THE WITNESS:  I mean, it's my own opinion.
5    It's -- they've been very aggressive.  The
6    litigation itself has impaired value dramatically.
7    I mean, it was a pretty dramatic step to file a
8    litigation, and the public allegations have
9    affected their own -- their own portfolio values
10    in addition to the rest of 777's.  I would say
11    it's extremely aggressive what they did.
12 BY MR. MORLAN:
13   **Q.  What -- what is it that they've done that's**
14 **extremely aggressive from your perspective?**
15       MR. PELLEGRINO:  Objection to form.
16       THE WITNESS:  The public allegations that
17    they filed suit has impacted value in the 777
18    portfolio and their own portfolios tremendously.
19    Potential investors walk away.  Potential
20    purchasers of assets walk away.  It's impacted
21    every -- every assets we have it's impacted.  And
22    it's old -- I'm not saying they're right or
23    they're wrong.  I'm saying the filing of the suit
24    has caused a lot of this.
25 BY MR. MORLAN:



**UNIVERSAL**
**COURT REPORTING**

**Office Phone:** 954-712-2600
**Email:** info@ucrinc.com
**Website:** ucrinc.com

777 PARTNERS LLC and SUTTONPARK CAPITAL LLC vs LEADENHALL CAPITAL
Shapiro, Mark on 03/05/2025                                    Pages 270..273

Page 270

1    Q.  But let me ask you -- I mean, you have a lot
2  of experience as a manager of -- of companies and
3  managing litigation and -- and triaging assets and
4  liabilities.  Do you think if -- if a company you were
5  in charge of potentially lost $100 million or more
6  based on misrepresentations as to collateral that it's
7  overly aggressive to -- to file suit?
8    A.  If it's going to hurt your own portfolio and
9  to try and resolve it out of court without filing it,
10 yes, I do think it's aggressive.  I'm not a litigator.
11 Okay?  I'm trying to come up with commercial reason --
12 commercially -- commercial settlements.  I don't
13 believe --
14   Q.  Okay.
15   A.  I don't believe --
16   Q.  How long should they wait?  How long --
17 what's a reasonable amount of time to wait from the
18 time that you receive information suggesting that you
19 could be experiencing a half a billion dollar loss,
20 what -- what's a reasonable amount of time before you
21 bring a lawsuit?  What would you in --
22   A.  Look --
23   Q.  -- circumstance --
24   A.  Look, I'm well -- I'm --
25       MR. PELLEGRINO:  Objection to form.

Page 271

1       THE WITNESS:  I'm well aware that they were
2    negotiating a forbearance agreement for probably
3    18 months or 2 years.  I'm well aware of that.
4    Everybody is saying each other -- each party was
5    unreasonable.  And all I'm saying is you asked me
6    a question, is it aggressive.  It's -- it's
7    impacted the businesses tremendously, long before
8    I got in.  So, you know, a lot of the negotiation
9    and the delay was before we got there.  You asked
10   me a question and, yes, it's aggressive.
11 BY MR. MORLAN:
12   Q.  Okay.
13   A.  I don't want to say -- I can't tell anybody
14 how long they should wait.
15   Q.  I -- I -- I guess my question would be:  Do
16 you consider it overly aggressive?
17       MR. PELLEGRINO:  Objection to form.
18       THE WITNESS:  It's -- we're talking
19   wordsmithing here.  It's aggressive.
20 BY MR. MORLAN:
21   Q.  Well, I think it says in the complaint that
22 it was overly aggressive.  I don't think it just says
23 aggressive.  Is that your understanding?
24   A.  The complaint speaks for itself.  If the
25 complaint says overly aggressive, that's our position.

Page 272

1  It's overly aggressive.
2    Q.  Wait.  So you'll just change your position
3  from what you told me 30 seconds ago if it contradicts
4  what's in the complaint?
5    A.  Yes, I will.  It's very aggressive.  I --
6  I -- whether it's aggressive, very aggressive, overly
7  aggressive, you know, it's aggressive.
8    Q.  Okay.  But you said that you are aware of
9  negotiations to try to resolve that issue that went on
10 for 18 to 24 months?
11   A.  Yes, I am.
12   Q.  Okay.  And how long did -- before you were
13 involved -- in fairness to you, you did the right
14 thing.
15       But before you were involved, how long were
16 the companies thwarting Leadenhall's contractual
17 asset -- access to information about the collateral?
18   A.  I'm sorry, what was the question?
19   Q.  The question was:  Prior to -- I understand
20 that we're not talking about you because you made the
21 determination, as I understand it, that Leadenhall was
22 entitled to access, and that happened on or about May
23 of 2024, right?
24   A.  Yes.
25   Q.  Okay.  Essentially at the inception of your

Page 273

1  tenure --
2    A.  Correct.
3    Q.  -- right?
4    A.  Correct.
5    Q.  Okay.  So nobody can, at least logically to
6  me and I don't think anybody has, can -- can really
7  blame B. Riley for Leadenhall not having access to
8  collateral information prior to May of 2024, correct?
9    A.  Correct.
10   Q.  But you are aware that Leadenhall was
11 attempting to get access to that information prior to
12 your involvement, correct?
13   A.  Yes.  I don't know how long, but I do know
14 that there was a lack of data.
15   Q.  Okay.  And that the companies, prior to your
16 good faith involvement and -- and your and
17 Mr. Ratner's decision to do the right thing, they were
18 preventing Leadenhall from having the access that you
19 believed was appropriate under their contract with the
20 companies; is that correct?
21   A.  That's my understand --
22       MR. PELLEGRINO:  Objection to form.
23       THE WITNESS:  That's my understanding.
24       MR. MORLAN:  All right.  I will take a quick
25   break here, and then probably wrap it up.  I don't

**UNIVERSAL**
**COURT REPORTING**

**Office Phone:** 954-712-2600
**Email:** info@ucrinc.com
**Website:** ucrinc.com

777 PARTNERS LLC and SUTTONPARK CAPITAL LLC vs LEADENHALL CAPITAL
Shapiro, Mark on 03/05/2025                                        Pages 274..277

Page 274

1  know if anybody else has anything right now.
2       What --
3       Let's go off the record.
4       THE VIDEOGRAPHER:  Going off the record.
5  The time is 7:21.
6       (A recess was taken.)
7       THE VIDEOGRAPHER:  We're back on the record,
8  and the time is now 7:35.
9  BY MR. MORLAN:
10      Q.  Mr. Shapiro, I want to thank you for your
11  patience and equanimity today.  I know this has been a
12  long deposition.  And I'm going to try to wrap it up
13  here in just a second.
14      I don't necessarily want to belabor the
15  stuff that -- that has already been covered, but I
16  just want to make sure that I understand.
17      In terms of any evidence linking Saiph,
18  anyone with Kosinski, Leadenhall to Davis's
19  intrusions, is there any evidence that we haven't
20  talked about today?  Is there any other evidence
21  that -- that you rely on for that connection or your
22  assessment that -- that you're aware of that you could
23  testify to --
24      A.  Not --
25      Q.  -- today?

Page 275

1       A.  Not that I can recall right now.
2       Q.  Okay.  Do you need to take a second to
3  refresh your recollection?
4       A.  No.
5       Q.  Okay.  Other than -- I think you -- you
6  mentioned something that -- that was new to me today,
7  which was the -- something about an MPFin from 2022
8  reference?
9       A.  Correct.
10      Q.  Okay.  And just so that I'm -- I'm clear,
11  that wasn't an actual file that you saw, correct?
12      A.  Not me, no.
13      Q.  Okay.  But it was information that Mr. Mazur
14  gave to you in a conversation?
15      A.  Correct.
16      Q.  Okay.  And you believe that was information
17  that was produced recently by Saiph in -- in this
18  litigation?
19      A.  That's my understanding, yes.
20      Q.  And are you aware that Mr. Kosinski's
21  declaration contains a list of all of the files that
22  were accessed as part of the audit?  Were you aware of
23  that?
24      MR. PELLEGRINO:  Objection to form.
25      THE WITNESS:  Well, I haven't read his

Page 276

1  declaration.
2  BY MR. MORLAN:
3       Q.  Well, that's -- okay.
4       Well, if you'll take a look at Exhibit E
5  when you have a chance.  I'm not going to subject you
6  to -- to looking at it right now because it's big,
7  it's going to be hard to share, and -- and we don't
8  have a lot of time.
9       But I will represent to you that what was
10  recently received is those audit materials and there
11  has been a list of those audit materials as part of
12  the declaration.  And so to the extent that you would
13  like to inform yourself about that, that might be a
14  place to -- to start.
15      Is there any other information that you have
16  about the 2022 MPFin September backup file that we
17  talked about earlier that -- that we haven't covered?
18      A.  No other information, no.
19      Q.  Okay.  And other than that, has there been
20  any significant information that you've learned in
21  this lawsuit through course of discovery, through the
22  course of the lawsuit other than what is reflected in
23  the complaint and the amended complaint, your
24  responses to the interrogatories, and what you told us
25  today about this new MPFin 2022 file?

Page 277

1       A.  No.  I don't believe there's any other
2  information.
3       Q.  Okay.  All right.  Well, in fairness to you,
4  I'm not sure you had anything to do with it, but as we
5  said earlier, that we did get a whole bunch of files
6  and -- and information and documents at about
7  1 o'clock in the morning last night.  So I'm going to
8  reserve the right to ask questions about that if
9  necessary, but that may or may not be necessary.  But
10  I'm going to just suspend this deposition and not
11  conclude it pending a final decision on that.  And
12  also pending -- I'm also given to understand, based on
13  representations from counsel, that all of the B. Riley
14  documents have also not been produced.
15      Is that all -- is that your understanding as
16  well, that the -- all of the B. Riley documents have
17  not been produced?
18      A.  I believe that's in process right now.
19      Q.  Okay.
20      MR. MORLAN:  All right.  So with that, I
21  have nothing further at this time.  Subject to my
22  earlier comments and I will suspend the deposition
23  for now, unless anybody else has anything.
24      MR. STARR:  I just have one or two more
25  questions.

**UNIVERSAL**
**COURT REPORTING**

Office Phone: 954-712-2600
Email: info@ucrinc.com
Website: ucrinc.com

777 PARTNERS LLC and SUTTONPARK CAPITAL LLC vs LEADENHALL CAPITAL
Shapiro, Mark on 03/05/2025                    Pages 278..281

Page 278

1    RECROSS-EXAMINATION
2  BY MR. STARR:
3    Q.  Okay.  Mr. Shapiro, you testified earlier
4  that you're familiar with the condition of
5  Leadenhall's collateral portfolio?
6    A.  Yes.
7    Q.  How much collateral is left?
8    A.  I don't know that number right now.
9    Q.  Can you give a ballpark figure?
10   A.  No, I can't.
11   Q.  And is --
12   A.  I can find it out, but right now I can't do
13 that.
14   Q.  You said over $100 million earlier?
15   A.  Yes.
16   Q.  I'm sorry, when you -- when you testified
17 over $100 million, were you saying that that is the
18 shortfall or that's how much is left?
19   A.  That was the shortfall.
20   Q.  Okay.  Who would know?  You said you could
21 find out the exact number.  Who would you find that
22 out from?
23   A.  I would work with Jim Howard and Teresa
24 Licamora to get our best guess as to what the
25 shortfall would be.  I think we presented earlier

Page 279

1  numbers to Leadenhall when -- at the mediation
2  conference, but we can get updated numbers.
3    Q.  Okay.
4      MR. STARR:  Thank you for your time.  I have
5  no further questions.
6      THE WITNESS:  Thank you.
7      THE VIDEOGRAPHER:  Anything else?
8      MR. PELLEGRINO:  I have nothing.  Thank you.
9      THE VIDEOGRAPHER:  Okay.  Going off the
10 record.  The time is 7:42.
11     MR. STARR:  Thanks, everybody.
12     (Discussion ensued off the record.)
13     THE COURT REPORTER:  Are you ordering the
14 transcript?
15     MR. STARR:  Yes.
16     THE COURT REPORTER:  Mr. Pellegrino, are you
17 ordering a copy?
18     MR. PELLEGRINO:  Can I let you know?
19     THE COURT REPORTER:  Yes.
20     Mr. Morlan, are you ordering the transcript?
21     MR. MORLAN:  I'll let you know.
22     (Pursuant to Rule 30(e) of the Federal Rules
23 of Civil Procedure and/or O.C.G.A. 9-11-30(e),
24 signature of the witness has been reserved.)
25     (Deposition adjourned at 7:45 p.m.)

Page 280

1                    CERTIFICATE
2  STATE OF GEORGIA:
3  COUNTY OF DeKALB:
4
5        I hereby certify that the foregoing
6    transcript was reported, as stated in the caption,
7    and the questions and answers thereto were reduced
8    to typewriting under my direction; that the
9    foregoing pages represent a true, complete and
10   correct transcript of the evidence given upon said
11   hearing, and I further certify that I am not of
12   kin or counsel to the parties in the case; am not
13   in the employ of counsel for any of said parties;
14   nor am I in any way interested in the result of
15   said case.
16
17
18
19
20   Nicole Limoncelli, RPR, CCR-5799-5142-5014-9888
21
22
23
24
25

Page 281

1              DISCLOSURE OF NO CONTRACT
2
3      I, Nicole Limoncelli, do hereby disclose
   pursuant to Article 10.B of the Rules and
4  Regulations of the Board of Court Reporting of the
   Judicial Council of Georgia that Gallo Legal
5  Services was contacted by the party taking the
   deposition to provide court reporting services for
6  this deposition and there is no contract that is
   prohibited by O.C.G.A. 15-14-37(a) and (b) or
7  Article 7.C of the Rules and Regulations of the
   Board for the taking of this deposition.
8
9      There is no contract to provide court
   reporting services between Gallo Legal Services or
10 any person with whom Gallo Legal Services has a
   principal and agency relationship nor any attorney
11 at law in this action, party to this action, party
   having a financial interest in this action, or
12 agent for an attorney at law in this action, party
   to this action, or party having a financial
13 interest in this action.  Any and all financial
   arrangements beyond our usual and customary rates
   have been disclosed and offered to all parties.
14
15 This 5th day of March, 2025.
16
17
18
19   Nicole Limoncelli, RPR, CCR-5799-5142-5014-9888
20
21
22
23
24
25



Office Phone: 954-712-2600
Email: info@ucrinc.com
Website: ucrinc.com

**777 PARTNERS LLC and SUTTONPARK CAPITAL LLC vs LEADENHALL CAPITAL**
Shapiro, Mark on 03/05/2025                          Pages 282..285

Page 282

```
1       777 Partners LLC, et al. v.
2              Leadenhall Capital Partners LLP, et al.
3              The preceding deposition was taken in
4       the matter, on the date and at the time and
5       place set out on the title page hereof.
6
7              It was requested that the deposition be
8       taken by the reporter and that same be reduced
9       to typewritten form.
10
11             It was agreed by and between counsel and
12      the parties that the deponent will read and
13      sign the transcript of said deposition.
14
15             Said jurat is to be returned within 30
16      days following receipt of the transcript to
17      the following address:
18
19             Universal Court Reporting
20             888 East Las Olas Boulevard, Suite 508
21             Fort Lauderdale, FL 33301
22
23
24
25
```

Page 283

```
1                      CERTIFICATE
2       STATE OF_____
        COUNTY/CITY OF_____
3
4       Before me this day personally appeared
        Mark David Shapiro who, being duly sworn, states
5       that the foregoing transcript of his/her
        deposition, taken in the matter, on the date
6       and at the time and place set out on the title
        page hereof, constitutes a true and accurate
7       transcript of said deposition.
8
9              _____
10
11      SUBSCRIBED and SWORN to before me this
12      _____day of _____2024 in the
13      jurisdiction aforesaid.
14
15      _____  _____
16      My Commission Expires      Notary Public
17
18
19             [ ] No changes made to the Errata Sheet;
20      therefore, I am returning only this signed,
21      notarized certificate.
22
23             [ ] I am returning this signed, notarized
24      certificate and Errata Sheet with changes
25      noted.
```

Page 284

```
1               DEPOSITION ERRATA SHEET
2       Deponent:  Mark David Shapiro
3       Deposition Date:  3/5/2025
4       To Reporter:
5       I have read the entire transcript of my
6       deposition taken in the captioned matter or
7       the same has been read to me.  I request that
8       the following changes be entered upon the
9       record for the reasons indicated.  I have
10      signed my name to the Errata Sheet and
11      appropriate certificate and authorize you to
12      attach both to the original transcript.
13
14      Page No._____ Line No._____
15      Change to:_____
16      Reason for Change:_____
17
18      Page No._____ Line No._____
19      Change to:_____
20      Reason for Change:_____
21
22      Page No._____ Line No._____
23      Change to:_____
24      Reason for Change:_____
25
```

Page 285

```
1            Deposition of Mark David Shapiro
2
3       Page No._____ Line No._____
4       Change to:_____
5       Reason for Change:_____
6
7       Page No._____ Line No._____
8       Change to:_____
9       Reason for Change:_____
10
11      Page No._____ Line No._____
12      Change to:_____
13      Reason for Change:_____
14
15      Page No._____ Line No._____
16      Change to:_____
17      Reason for Change:_____
18
19      Page No._____ Line No._____
20      Change to:_____
21      Reason for Change:_____
22
23
24      Signature:_____  Date:_____
25              Mark David Shapiro
```



**UNIVERSAL**
**COURT REPORTING**

**Office Phone:** 954-712-2600
**Email:** info@ucrinc.com
**Website:** ucrinc.com

777 PARTNERS LLC and SUTTONPARK CAPITAL LLC vs LEADENHALL CAPITAL
Shapiro, Mark on 03/05/2025

## $

**$1.8**
174:13,15 175:3

**$10**
215:1,12

**$100**
235:6 268:21
270:5 278:14,17

**$25**
46:18

**$3**
48:17 49:6

**$50**
215:20

**$600**
173:12,14 174:2,6

**$600,000**
247:21

## 1

**1**
14:3 51:2,4,5,9
165:15 166:24
184:14,21 194:1,2,
3,6 277:7

**1.8**
174:16

**10**
44:18 52:8 100:9
109:18 142:5
203:1 257:8

**10-minute**
195:7

**100**
44:9 206:24
215:24,25

**10:20**
13:1

**10:22**
14:21

**10:24**
14:24

**10th**
89:1

**11:38**
68:6

**11:54**
68:9

**12**
44:18

**12:06**
76:16

**12:15**
76:19

**12:31**
87:15

**12:33**
87:18

**12th**
119:15,16,18
256:23

**140**
44:19

**14th**
258:4

**15**
120:24

**16**
21:2

**17**
45:4

**18**
58:10 271:3
272:10

**1:00**
10:17 184:10

**1:12**
115:24

## 2

**2**
83:2,3,7,14 271:3

**20**
45:4 88:19 123:3
215:15

**200**
132:5,6

**200,000**
130:24,25 131:5

**2017**
58:10

**2022**
93:11 94:11,12
96:25 116:17
117:5 123:3,9,18
124:15 125:14
127:3,9,12 156:6,
18 157:10 158:2,
16,19,25 160:14
161:8 163:10,20
193:23 194:10,16,
21 246:13 275:7
276:16,25

**2023**
24:15 68:20 69:2
79:5 94:11

**2024**
24:11 26:3,23 29:1
42:19 67:10 68:17
69:15 71:10 78:16
83:18 85:14 87:3
88:19,22 90:21
94:11 110:20
119:6 122:22
201:20 210:3,5

214:7 220:15
221:2 240:6,7
254:16 257:2,5,16,
20,23 258:4 263:6,
11 272:23 273:8

**202405-mpfin**
122:15,22

**2025**
7:3,6 119:7 121:3
220:16 222:10
256:23 257:9

**22**
94:2,5,9 116:24
117:2 118:12
124:19 125:19
128:1 157:1
159:10 257:20,23

**22nd**
157:20 162:19
201:25 202:7
257:2,5,15

**23**
24:16

**24**
24:17 121:19
272:10

**24th**
87:3

**25-plus**
33:10

**27**
119:6

**27th**
221:17

**287**
268:18

**2:03**
116:2

**2:52**
149:25



**UNIVERSAL COURT REPORTING**

**Office Phone:** 954-712-2600
**Email:** info@ucrinc.com
**Website:** ucrinc.com

777 PARTNERS LLC and SUTTONPARK CAPITAL LLC vs LEADENHALL CAPITAL
Shapiro, Mark on 03/05/2025

**2nd**
119:7 121:3
220:15 222:8
257:9

---

**3**

---

**3**
53:10 86:23,24
223:3,4,6,10,19
225:3,8

**30**
272:3

**30(e)**
279:22

**300**
268:12,18

**350**
45:10

**363**
58:23

**370,000**
129:20

**3:08**
150:3

**3:34**
167:20

**3:37**
167:23

**3rd**
42:19 43:2 122:16
150:17 209:24

---

**4**

---

**4**
118:22,23 119:1
121:9 131:1 145:6,
13,22 146:5
147:25 219:22,24,

25 220:17

**400,000**
45:11 132:2
134:15

**401(k)**
15:12

**48**
83:16

**4886**
83:17

**4887**
86:1

**4890**
87:4

**4:12**
195:12

**4:54**
195:15

**4:57**
197:24

---

**5**

---

**5**
7:3 44:19 140:13,
14 209:25 239:23
243:16,20,22

**5's**
243:23

**50**
45:2 207:1,2
215:17

**500,000**
131:1

**5:10**
198:4

**5:45**
220:8

**5:47**
220:11

**5th**
7:6

---

**6**

---

**6**
19:24,25 143:14,
17 145:2,3 194:1
262:21 263:10,13
264:15

**600**
27:10 35:4 112:18
174:10 216:14
247:22

**600,000**
131:3 132:5
216:14

**600-plus**
173:1

**6:23**
243:25

**6:38**
244:3

**6th**
210:3,5

---

**7**

---

**7**
141:3 142:23
145:9,14 147:8,18
196:21 198:1
208:1,2 212:25

**775**
44:4

**777**
7:9,24 10:7 15:21,
24 16:2,6,17,21
20:4 21:20 22:14,

16 23:6,10 24:20
25:16 26:10,15
27:10 28:9 29:2
34:5,23 35:10,15,
16 36:22,25 40:13
42:14 43:3,24
44:12,16 45:13,19
47:3 52:6 53:13
60:6,7 61:17,23
62:4,9 63:5,7,14,
23,25 64:7,16,17,
18 67:13,19 70:9
71:5,8,24 73:21
77:2 79:9,23,24
80:1,12 82:1,8,15
85:13 94:6 98:5,12
100:10,16,19
115:2,5,10 121:15
135:5,18 139:24
140:2 151:20
152:9,12,17 153:8
154:25 158:15
162:11 163:13
164:11,14,17
166:20 167:10
168:10 169:2,8
170:3,10,15,19,20
171:1,12,23
172:13,23 174:1
187:5 191:14
198:8 204:15,21
206:8 210:3 211:5
214:18 217:11
218:11 234:21
235:9,14 237:1,7
239:16 240:4
243:2,4 244:7,14,
18 245:3 246:8,12
248:18 251:9
252:7,19 253:20
254:1,14 255:17
256:17 264:23
266:5,11 269:17

**777's**
129:4 169:2



**UNIVERSAL COURT REPORTING**

Office Phone: 954-712-2600
Email: info@ucrinc.com
Website: ucrinc.com

777 PARTNERS LLC and SUTTONPARK CAPITAL LLC vs LEADENHALL CAPITAL
Shapiro, Mark on 03/05/2025

269:10

**777(PL-FL)0000**
83:16

**777/suttonpark**
223:24 251:3
265:11

**795**
44:5

**7:21**
274:5

**7:35**
274:8

**7:42**
279:10

**7:45**
279:25

---

**8**

**8**
19:24,25 21:2

**8/22**
122:17

**8/22/2024**
122:18

**80**
54:7

**850**
44:3

**894**
88:12

**8th**
43:5

---

**9**

**9**
21:1 51:16 100:9
109:18 142:5

203:1

**9-11-30(e)**
279:23

**9/22**
157:5

**9:52**
7:7

**9:54**
9:4,7

**9:58**
12:19

**9th**
90:22 201:20
202:3 261:24
262:3 263:6,11

---

**A**

**A-CAP**
29:2,4 40:12,21
41:16 46:12,16
47:2,12,16,19 48:3
49:2,8,14 50:2,5
63:23 64:18
111:11,13,23
129:13

**a.m.**
7:7 10:17 184:10

**ability**
9:23 31:14 133:22
134:1 189:16
265:25

**able**
46:7 50:19,21 59:6
77:10 91:13
115:12 138:4
184:19 187:24
189:16 192:16
197:15 251:14

**about**
10:17 15:15 17:5,

7,9,17 18:5,12
19:23 21:1,2 25:12
28:17,23 31:5
32:14 33:8 38:14
44:8,25 48:4,5
49:25 50:1,7 53:25
66:18 67:1 68:24
72:17 73:6,14
74:17 75:12 76:5,
8,13 77:5,18,19,25
78:2 80:15 81:18
84:9 85:11 88:5
90:23 95:8,19 99:7
100:15 108:2
111:25 113:21
116:8,23,24 117:5
118:17 120:17,21
125:14 126:1
127:3,9,14,16
128:4,14 129:5
135:18 136:3
137:6 138:6,10
139:17,23 140:1
142:3,9 149:22
154:21,24 155:6,
12,18,20,24 156:5,
7,14 158:2 160:23
161:1,5 162:18
163:9,14,20,21
166:14 169:6
172:21 173:3,21,
23,24 174:22,24,
25 176:17 178:3
182:15,17 184:12
185:8,9 186:1
187:12,15 188:22,
25 191:12 193:20,
22 194:8,15,21
201:6,7 205:10
207:14 208:21
213:8 215:15,17,
24 223:20,25
240:14 241:1
244:15,25 247:21
249:23 251:6
253:15 255:16,19

256:23 257:1,4
258:4 260:11
263:4,18,23 265:3,
10,23 267:16
268:17 269:2
272:17,20,22
274:20 275:7
276:13,16,17,25
277:6,8

**absolutely**
108:17 186:10

**accept**
48:24

**access**
64:8 79:17 80:7,
16,20,22,24 84:9
85:7 86:6,18 88:2
89:23 90:8,12,16
100:12,13 101:24
122:17 129:4
135:16 136:1,11
146:11 160:2
184:18 187:4
189:1,12 191:23
192:8,17 221:1,10
224:1,11,12,24
225:22 226:24
243:4 258:3
259:11,14 272:17,
22 273:7,11,18

**accessed**
96:9 102:10
104:15,25 105:2
146:17 172:12
189:20 222:20,24
223:22 227:2
275:22

**accessible**
228:12

**accessing**
80:13 101:1 160:4

**according**
229:10


**UNIVERSAL**
**COURT REPORTING**

Office Phone: 954-712-2600
Email: info@ucrinc.com
Website: ucrinc.com

account
29:18

accountants
251:10

accounting
24:18 56:12 57:25
249:10 250:2,13,
16,21 251:2,4,13
255:21

accounts
35:17

accuracies
238:18

accurate
9:24 26:10,14 52:3
96:3 110:9,11,15
166:1 209:25

accurately
167:13

accusations
63:9

accused
150:23

acknowledged
175:4

ACM
29:4,5

acquaint
223:14

across
191:23

act
52:20 113:8

acted
113:6

acting
164:16 259:9

action
10:8 28:19 32:9

34:8 104:1 166:4
178:24 203:19
221:3

actions
28:24 142:10,11

active
26:9,15 136:8
210:14,25 214:17
215:19

activity
44:25 211:24

actual
130:14 156:17
162:7 174:11
275:11

actually
32:13 33:7 42:12
46:4 53:4 61:10,22
62:2 116:22 117:3
120:14 146:24
156:22 160:14
161:24 191:5
196:9 207:22
211:4 216:24
217:5,12 218:11,
19,21 222:13
224:17 225:14
226:22 234:2
247:12 248:8
250:16 257:22
260:18

addition
69:6,11 269:10

additional
130:1 132:3
162:17 201:15
222:20 251:14
264:1,4,6,7,12,19,
22

address
15:22,24 16:1
180:20 237:22

261:20

adequately
219:16

adjourned
279:25

admission
140:18 141:1
144:15 145:9,14
147:7,15,18

admissions
144:12

admitted
147:9,12,19

admittedly
205:9

advance
50:11 184:1,5,14

advice
175:12

advised
55:13

advisor
21:15,17 22:4,12
49:22 58:5 91:12

advisors
34:4 38:16 42:7
73:12 74:6 131:2
132:19

Aero
33:5

affect
29:15 93:13,14,15,
19 128:13 169:7

affected
269:9

affiliate
29:4

affiliates
25:16 42:15 44:12

170:11

affirmative
180:18 183:17

after
14:6 26:5,6,7
50:14 52:16 58:11
63:6 68:21,24 93:8
99:20 101:8
117:19 152:13
170:8 193:18
231:1 244:7 256:9
260:3 264:15

afterwards
179:15

again
24:21 30:17,25
32:15,22 40:18
45:7 53:7 59:7
63:18 65:24 69:9
72:13 89:18
103:11 106:23
111:13 113:21
115:14 118:12
127:6 128:14
146:3 152:20
178:6,10,16 182:3
186:23 190:9
191:17 192:21
198:4 226:20
252:15 253:22

against
55:14 59:21 62:9
63:23 64:17,18
71:6 79:24 80:18
107:9,16 109:11
174:1 186:10
202:15 230:9

agencies
22:22 67:15,18

Agent
134:25

aggregate

UNIVERSAL
COURT REPORTING

Office Phone: 954-712-2600
Email: info@ucrinc.com
Website: ucrinc.com

777 PARTNERS LLC and SUTTONPARK CAPITAL LLC vs LEADENHALL CAPITAL
Shapiro, Mark on 03/05/2025

152:20

**aggressive**
268:25 269:5,11,
14 270:7,10 271:6,
10,16,19,22,23,25
272:1,5,6,7

**ago**
14:1,3 156:1,3
272:3

**agree**
63:14 89:2 99:2
137:24,25 142:2
146:23 151:1
152:5,22 153:8,13
171:16 216:22
229:1 263:9

**agreed-upon**
11:2,5

**agreement**
39:9,14,18,23,24
42:18,22 43:8
46:17 90:4 239:2,
6,7 267:4 271:2

**agreements**
27:2 224:6

**Ah**
255:3

**ahead**
15:19 17:23 109:6

**Air**
33:5

**airline**
22:20 33:4 63:7

**airlines**
22:20

**al**
7:10

**alarm**
91:4,6

**all**
16:22 20:25 23:5
25:14 27:15 33:12
35:1 37:5 38:2,4,6
39:19 49:2 50:25
54:14 57:22 58:12
63:19 80:14 84:15,
19 87:12 92:25
93:11 94:15 97:22
98:2,22 99:2 101:8
102:6 109:14
111:23 116:10
119:10 122:8
125:13 128:11
129:1 134:19,20
138:17 144:22
146:16 151:13,19
160:8 165:25
166:8 170:8
178:20 187:6,7
189:23 194:8
197:9 208:2
209:16 213:1,5,16
214:3 217:22
218:21 219:25
228:3 233:10
236:6 245:14
261:21 266:21
268:8 271:5
273:24 275:21
277:3,13,15,16,20

**alle-**
233:18

**allegation**
73:8 233:13,18
238:7

**allegations**
41:1 55:14 58:5
59:4,11,21 60:5
63:4,19,21 73:8,15
94:15 110:8
158:24 166:8,10
174:4 176:8 177:3
178:13,23 180:25
183:6 186:2,7

226:10 230:9
231:6,16 232:8,10
233:5,7,10,14,16,
19,24 234:2
235:11,13 268:23
269:8,16

**allege**
98:19 226:5
236:11 259:17

**alleged**
60:16 90:20
116:12 130:19
131:13 141:20
142:10 153:9
186:3 193:10
199:8 201:4,19
204:23 217:13
225:22 234:4
240:14 241:15,23
249:6 252:24
253:2,11 257:1,16,
20,24 263:5,14

**allegedly**
63:6 103:9 142:13
148:14

**alleges**
103:5 266:12

**alleging**
103:25 174:10,11
226:3

**Alliance**
58:11

**allow**
189:12

**allowed**
80:16 189:1
265:17

**allowing**
15:15

**almost**
52:7

**alone**
113:6,8

**along**
185:13

**already**
8:15 15:9 114:6
134:15 196:12
219:21 274:15

**also**
10:20 12:8 22:19
69:7,12 75:1 87:4
100:11 101:24
129:22 131:18
135:3,5 136:8
190:13 195:25
217:24 222:6
240:19 249:5
277:12,14

**alteration**
67:9

**altered**
222:24

**alternatives**
37:4 53:8

**although**
54:19 149:22
244:13

**altogether**
19:25

**always**
28:12,14 41:6,7
45:17 133:14
171:25

**am**
25:25 121:6,11
125:18 139:4
154:6 164:16
171:2 173:23
209:21 219:3,11
221:18 234:18
235:2 254:8 260:5



**UNIVERSAL COURT REPORTING**

**Office Phone:** 954-712-2600
**Email:** info@ucrinc.com
**Website:** ucrinc.com

777 PARTNERS LLC and SUTTONPARK CAPITAL LLC vs LEADENHALL CAPITAL
Shapiro, Mark on 03/05/2025

272:11

**amended**
238:8,12,15
276:23

**among**
53:11 97:1 110:25
123:3 171:21

**amongst**
35:12 72:6 106:24
153:5

**amount**
129:14 130:9
185:2 193:7 268:3
270:17,20

**analysis**
169:25 190:19

**analyst**
49:15

**analyze**
57:25

**analyzing**
53:5

**and/or**
44:22 170:10
222:20 235:9
279:23

**another**
15:11 31:17 59:3
106:24 129:22
168:25 183:7
236:18 249:5

**answer**
13:24,25 19:4
70:13 72:12 74:24
75:17,18 76:6
103:18 107:21
111:8 148:23
161:1,4 163:22
177:10,15,21,25
178:5,7,8,10
179:10 180:17

183:17,19 221:6
227:11 232:18
233:4,9 252:4
253:5

**answered**
112:4 134:3
177:13

**answers**
195:4

**anxiety**
55:10

**any**
14:18 15:5,14
20:15,21,23 21:7,
10 25:12 30:5 31:2
35:16 41:9 43:7
45:14 46:19,23
47:5,23 49:6 57:24
62:12,13 63:10,22
64:17 66:1,4,18,25
67:8,12,22 72:8,16
77:9,10 81:24
85:21,24 86:14
94:16,18,19,20
96:18 97:5,9 98:24
99:7 100:3 101:20
102:3,6 103:8,9,20
105:13 106:5,6,16
111:3,4,9 113:24
115:10,15 120:5,6,
17 125:23 126:18,
24 128:14 129:1,7
132:13,18 136:22,
23 137:5,6,15,24
138:3,12,20 141:8,
19 142:11,12
145:24 146:5,9,24
148:7,13,24 153:1
158:18,24,25
159:11 160:14,15
161:1,4,7,8,9
162:4,9,14 163:6,9
164:2 165:18
169:10 170:3,15,

18,19,25 171:21
174:3,18 175:21,
24 176:5,21,23
177:6 178:2,17,21,
22 180:23 181:9
183:4,6,24 184:1,4
186:2,7,15 187:5,
11,20 189:19,20,
21 190:2,18,19,23,
24 191:9,10,20
192:6,16,17 193:9,
11,13,14,16
194:14,20 199:5,
10,13,18 200:25
201:2,3,15 202:23
203:10 204:22
205:12,16,17,21
206:1,4,7,11 207:5
208:10,16,20
209:11,12 210:15
211:4 212:6
214:13,17,21,25
215:19,24,25
216:12,20,23
217:4,12 218:15,
18 221:21 222:12,
13,14,19 225:9,13
226:9,24 227:6,10
228:17,22 229:8
230:20 232:7,17
233:6,17,18,19
234:19,20 237:11,
12,23 238:19
239:9 240:15
241:11,12,14,21,
22,23 242:6,23
244:5,6,10,22
246:13,21,25
247:1,4,9,15,18
248:2,14 249:8,9,
25 250:12 251:24
252:6,12,13,18,22
253:8,10,18,20,24,
25 254:6,10,13,14,
24 255:12,17,25
256:3,15 257:14,

18,19,25 171:21
174:3,18 175:21,
24 176:5,21,23
177:6 178:2,17,21,
22 180:23 181:9
183:4,6,24 184:1,4
186:2,7,15 187:5,
11,20 189:19,20,
21 190:2,18,19,23,
24 191:9,10,20
192:6,16,17 193:9,
11,13,14,16
194:14,20 199:5,
10,13,18 200:25
201:2,3,15 202:23
203:10 204:22
205:12,16,17,21
206:1,4,7,11 207:5
208:10,16,20
209:11,12 210:15
211:4 212:6
214:13,17,21,25
215:19,24,25
216:12,20,23
217:4,12 218:15,
18 221:21 222:12,
13,14,19 225:9,13
226:9,24 227:6,10
228:17,22 229:8
230:20 232:7,17
233:6,17,18,19
234:19,20 237:11,
12,23 238:19
239:9 240:15
241:11,12,14,21,
22,23 242:6,23
244:5,6,10,22
246:13,21,25
247:1,4,9,15,18
248:2,14 249:8,9,
25 250:12 251:24
252:6,12,13,18,22
253:8,10,18,20,24,
25 254:6,10,13,14,
24 255:12,17,25
256:3,15 257:14,

18,19,22 259:11,
14 260:5,9,22
261:1,3,4,5,6
263:3,23,25 264:3,
7,21,25 265:9,15
269:1 274:17,19,
20 276:15,20
277:1

**anybody**
95:21 111:13
151:12 197:2
205:25 237:9
243:20 253:14
257:12 265:9
271:13 273:6
274:1 277:23

**anyone**
17:4 19:16,18 20:3
66:15 67:22 79:23
82:8 100:2 111:3,
11,22 138:7,11,15
163:13 194:20
211:4 246:18
248:18 252:11
265:24 274:18

**anything**
9:22 18:8 46:25
56:4 64:25 65:2
77:5 99:7 108:18
138:23 152:17
155:18 167:14
198:20 199:15
201:10 216:19
217:7 229:15
242:16 244:25
253:11,19 255:5
256:12,20 257:15
258:11 259:3
274:1 277:4,23
279:7

**anywhere**
41:3,9

**apologize**
243:10

**UNIVERSAL**
**COURT REPORTING**

**Office Phone:** 954-712-2600
**Email:** info@ucrinc.com
**Website:** ucrinc.com

777 PARTNERS LLC and SUTTONPARK CAPITAL LLC vs LEADENHALL CAPITAL
Shapiro, Mark on 03/05/2025

**appear**
18:18

**appears**
91:4 121:20
122:21

**application**
95:24

**appointed**
210:1,2

**approach**
60:2

**appropriate**
262:10 273:19

**approve**
49:9 89:20

**approved**
130:5

**approver**
89:8,11

**approving**
89:15

**approximate**
268:3

**approximately**
7:7 130:24 170:9
184:13,21 239:19
263:10

**April**
71:10 85:14 240:6,
7 254:15

**arbitration**
172:3

**area**
21:12 139:16
255:23

**areas**
164:21 211:8,9

**aren't**
261:14

**argue**
182:14

**arguing**
182:16

**arguments**
177:4

**arms**
23:24 53:1 54:25
213:17,20

**around**
22:20 23:24 34:18
43:5 45:10 53:1
54:25 56:11 68:18
90:22 94:4 131:3
207:1,2 210:20
213:17,20 215:23
263:8

**arrangement**
46:16 90:3

**aside**
64:16 201:18
263:2

**ask**
8:13 9:22 16:9
30:2,3 76:22
108:22 124:13
128:14,16 134:7
147:11 151:25
160:18 161:7,10
162:1,18 164:2
166:22 172:15
178:6 197:10
199:19 226:9,11
246:17,18 248:10
255:20 270:1
277:8

**asked**
25:5,8 27:22 41:8
73:1,6 162:2
163:19 190:3
216:10 218:1
271:5,9

**asking**
60:18 84:8 93:24
108:1,5 124:10
126:22 140:4
142:11 147:17
172:22 173:24
174:24,25 175:24
176:1,11 177:4,5
179:2,7 180:1
181:8 187:18
205:10,11 232:1
233:16,17 235:13,
24

**aspect**
159:14,22

**aspects**
93:13 128:12

**ass-**
62:25

**assert**
75:1

**asserting**
62:9 130:11
177:12

**assertion**
129:2

**assess**
54:21 55:6,20
56:23 152:23
169:13,21 216:19

**assessed**
172:12,16,23

**assessing**
173:3

**assessment**
52:17 58:19
172:10 173:6,9
216:4 268:3
274:22

**asset**
36:18 46:11 96:5,6

129:13 249:4
272:17

**assets**
31:15 36:12 58:22
60:24 62:24 63:1
65:15 95:25 165:6
213:2,5,22,24
231:20 249:2
269:20,21 270:3

**assist**
11:24 138:7
140:25 253:19

**assistance**
34:10,14 253:25
254:4,6,7

**associated**
29:7

**assume**
29:18 61:24 78:12
90:6 98:8 174:14
189:4

**assuming**
100:24

**assumption**
33:10 101:3,5

**Attached**
122:7

**attack**
52:19 205:21

**attempt**
192:8

**attempted**
23:14,20 60:7 69:1
192:17 256:16

**attempting**
57:19 273:11

**attention**
132:12

**attorney**
40:7 112:23 154:3

**UNIVERSAL**
**COURT REPORTING**

Office Phone: 954-712-2600
Email: info@ucrinc.com
Website: ucrinc.com

777 PARTNERS LLC and SUTTONPARK CAPITAL LLC vs LEADENHALL CAPITAL
Shapiro, Mark on 03/05/2025

175:11 177:6

**attorneys**
7:11 34:5 52:22
77:14 108:17
109:2,3 129:12
130:25

**attorneys'**
131:4,25 132:8,11
247:24

**attributable**
131:21

**attributed**
190:10 191:17
192:13,23

**attributes**
189:23

**Audio**
61:3,4

**audit**
68:14 69:6,8,11,
12,19 70:10 79:4,
5,14,18,25 80:7,
11,21,25 81:10,12,
15,22 82:8,10,17
84:21 88:3,10
89:3,4 90:9 99:21
114:13,14 159:8
186:11,14 187:10,
23 224:2 233:23
234:9,10 249:11
250:1 258:3,10
265:18,20,24,25
266:23 267:6,10,
13 275:22 276:10,
11

**auditor**
266:23

**audits**
81:24,25 82:5 90:5
267:5

**August**

67:10 90:21,22
110:22 201:20
202:3 258:4
259:25 261:24
262:3 263:6,11

**authenticated**
239:7

**authorities**
67:13

**authority**
34:24 211:5
212:22

**authorization**
101:1 222:21

**authorize**
89:10

**authorized**
89:8

**available**
160:25 179:5
180:22 197:17
258:1

**avenues**
255:23

**avoided**
33:11

**aware**
14:5 62:8,13 67:12
68:19,22 71:1,2,7
77:9 81:24 82:11,
20 91:19 100:2
102:25 103:8
105:11 117:20
127:25 146:9
148:5,23 149:3
156:8 162:14
170:5,24 191:9
199:13 200:25
201:2,13 205:16
225:22 233:5
237:11 238:19

241:13 242:6,17,
19 244:5,10 247:9,
18,20 249:25
250:5,8,12 251:24
252:1,2,4,5,6,18
253:13 260:22
261:3,6,13,14
267:20 271:1,3
272:8 273:10
274:22 275:20,22

**away**
35:15 269:19,20

---

**B**

**back**
9:6 12:25 14:23
34:15,17 42:15
59:4 60:13 64:8
65:6 68:8 69:2
76:18 79:4 84:1
87:17 88:3 116:1,4
120:21 126:22
142:25 145:8
150:2 167:22
178:9 195:2,14
197:11 198:3
216:2 220:10
244:2 254:15
259:24 260:15
274:7

**backdoor**
100:12,13

**backtrack**
173:20

**backup**
157:1 245:4,22,25
246:1,5,9 247:10,
13 276:16

**backups**
245:9

**bad**
55:5 99:11 144:9

187:6 215:7
235:14 236:2
237:1,6

**bag**
46:5

**Baker**
12:11

**Bakerhostetler**
11:22 12:8 15:2,8
19:18 137:4

**Bakerhostetler's**
12:3

**balance**
24:19,22,25 25:2
46:1

**ballpark**
53:25 131:20
278:9

**bank**
35:17

**banker**
50:4,6 67:4

**bankruptcy**
32:5 33:11 48:2
56:7,8 58:22 59:7
206:22

**bar**
61:15

**base**
97:14 234:7 249:5

**based**
19:5 107:18 108:5,
6,14,16 111:5
174:4 176:3,4
179:9 190:10
209:21 217:25
224:4 232:12,14
258:8 259:16
270:6 277:12

**bases**

**UNIVERSAL**
**COURT REPORTING**

Office Phone: 954-712-2600
Email: info@ucrinc.com
Website: ucrinc.com

777 PARTNERS LLC and SUTTONPARK CAPITAL LLC vs LEADENHALL CAPITAL
Shapiro, Mark on 03/05/2025

129:2

**basically**
80:3 91:6 131:7
160:4 177:16
224:11

**basing**
179:16

**basis**
22:11 60:10 61:15
75:3 106:5,6
108:18 115:15
128:15 145:15
176:6 186:8 236:8
258:23 259:1
265:15

**Bates**
83:15 87:4

**battered**
204:5

**bearing**
239:9 240:21

**bears**
238:20

**because**
8:15 11:25 17:16
18:14,17 27:22
28:8 33:1 35:14
37:16 47:10 76:4
106:2 110:13
115:5,6 125:9
135:24 144:19
162:1 182:7,15,18
187:21 188:4
195:3 197:12,22
200:8 201:22
213:18 258:17
266:2 272:20
276:6

**beef**
12:1

**before**

8:14 9:13 10:13
13:3 27:22,24
62:25 71:2,4,11
72:8,17,20,23,25
73:9 77:2 88:7
112:3 116:10
129:11 134:3
140:21 146:8
161:20 170:8,23
174:8,9 178:8
185:17 186:10,23
197:10 204:4
216:7,10,13
220:20 226:15
228:5 229:24
232:24 238:12,15
239:17 266:14
267:12 270:20
271:7,9 272:12,15

**beginning**
44:22

**begins**
84:3

**behalf**
7:15,18,21,24 8:6
11:18 137:22
217:20

**behind**
24:9,13,18 92:25
113:3 114:18
115:7 116:12
150:8 151:5,7,9,
12,14

**belabor**
164:16 185:9
274:14

**belief**
40:10 153:3 207:9
236:8

**beliefs**
152:17

**believe**

11:1 13:10 15:1,12
25:7 29:1 31:6,20
32:10,11,18 36:18
39:4,11 40:2,8,21
42:10,14 43:2,10
51:11,25 52:5 63:5
65:3,10 66:8 67:7,
20 68:17 70:3
78:17 83:13 85:18
86:20 90:10,21
92:3,22 100:4
103:12 104:7
110:12,17,19
111:16,21,24
112:7 114:2 115:1,
7 116:15 118:19
135:7,13 136:9
137:18 138:15
141:13 142:15
148:25 152:4,6
153:19 154:13,23
155:4,5 156:20
158:6 159:15
164:9,18 165:12
170:17 173:11
176:2 177:18
180:10,20 183:17
184:6 185:12
186:15,24 188:18
190:8 192:11
197:18 200:2
201:21 202:9
205:6,24 206:10
209:1 210:6
214:21 223:23
225:9,25 228:2
230:20 233:21,22
235:7,23 239:18
240:5 243:1 247:6,
19 248:6 252:13
256:4,14,20
257:14,18 258:7,
18 263:3,4,5
266:15,19 270:13,
15 275:16 277:1,
18

**believed**
80:12 135:25
150:7 151:14
273:19

**believes**
105:25

**believing**
128:21

**beneficiary**
63:3

**benefit**
169:25 172:10

**benefitted**
115:16

**Bennett**
12:15

**Berger**
57:15

**besides**
163:12 164:3
170:2 194:21
197:17 205:21
206:8 212:23
241:2 246:19
254:25

**best**
39:1 166:2 208:4
227:25 268:8
278:24

**better**
24:1 81:1 82:3
89:19 123:23
125:17 157:8
164:15 165:5
207:9 227:19
235:2 253:14
265:2

**between**
30:5 38:20 54:12
59:4 66:10 81:4
88:4 154:25 169:2

**UNIVERSAL**
**COURT REPORTING**

Office Phone: 954-712-2600
Email: info@ucrinc.com
Website: ucrinc.com

777 PARTNERS LLC and SUTTONPARK CAPITAL LLC vs LEADENHALL CAPITAL
Shapiro, Mark on 03/05/2025

171:1 239:3,8
244:18 249:9
250:2,12 268:18

**big**
46:1 164:21 276:6

**biggest**
214:4,6

**BIH**
94:22

**billable**
44:9

**billion**
174:13,16 175:3
270:19

**bills**
36:19 45:18,19
46:10

**bio**
21:4

**bit**
23:25 37:7,13
50:20 56:1 59:19
61:11 95:4 164:15
173:8 193:7 194:7
239:25

**Black**
33:5

**blame**
273:7

**blank**
31:11

**blanket**
207:11

**bleeding**
52:15 213:10,11,
14

**blind**
55:3

**blood**

99:11

**Blue**
32:11

**board**
214:3

**Boersig**
70:6,20,21 190:7

**Boersig's**
192:8,11,14,18

**bonus**
78:8,10,11,16

**books**
24:9,10,11,14,17
60:23 64:9,13,15
266:23

**boost**
14:18

**borrowing**
234:7

**both**
10:3,7 22:6 140:7,
11 168:11 210:7
224:8 238:8
250:25

**bottom**
86:2 89:6 223:3
225:17

**bought**
28:15

**Bowen**
7:15

**box**
33:5 227:7 229:3,
10

**breach**
63:4 204:2,10,14,
17,22 205:12,16,
18 263:14

**Breached**

121:10

**breaches**
162:10 202:16
204:5 222:24

**break**
13:3 43:21 68:1
75:19 95:3 115:20
116:7,10 149:21
195:7 243:13
273:25

**Brian**
14:13 92:16

**Brickell**
102:22 103:1

**briefly**
185:9 256:24

**bring**
20:21 52:22 56:16,
18 59:25 182:23
183:22,24 270:21

**bringing**
236:9

**broad**
211:20,22

**brought**
36:22,24 38:17
59:22 132:16
170:3,7,8

**budgeting**
37:2

**budgets**
165:1

**bullet**
52:1

**bunch**
277:5

**burning**
214:15

**business**

22:15,24 23:7,22
27:25 33:4 37:4,18
45:25 46:2,12,13,
14 47:2,23,25 53:5
81:3,25 98:9
169:11,18,22,23
171:7 209:4
217:19 220:23
224:5 254:6 259:9

**businesses**
22:16 48:1,6,7,8
271:7

**buy**
50:5

**C**

**cadre**
34:4

**Cadwalader**
66:15 111:3,10

**cahoots**
236:18

**call**
70:5 93:12 128:18
154:8 198:13

**called**
31:5,15,19 32:9,18
33:5 39:22 58:11
59:3 62:25 94:13
180:13,19 246:2
254:18 255:2

**calls**
137:3

**came**
40:10 46:11 49:4
58:11 93:1 106:25
117:10,13 118:3,4
126:1,9,11 127:4,
11 128:7 132:5
149:13,17 152:24
156:8 158:20

**UNIVERSAL**
**COURT REPORTING**

Office Phone: 954-712-2600
Email: info@ucrinc.com
Website: ucrinc.com

163:1,5 186:4,16
214:7 250:1

**can**
8:13 14:13,19
16:22 18:2,19
27:23 34:19 36:10
38:13,24 39:15
51:2 55:6,7 59:1
61:9 64:3 70:13
72:12,13 83:1
87:10,12 88:10
93:19 95:1,21
96:18 98:24
101:20 102:3
103:11,18 105:13
107:21 109:13
111:8 115:21
120:4 125:13
130:10 136:17
140:12 151:13
155:2 167:3,16
168:13,20 174:22
181:9 183:5,7,18
195:25 196:17
197:1,4,6,8 201:6,
8 202:12 207:17
215:6,19 223:1,5
226:19 230:21
233:12 250:11
253:22 273:5,6
275:1 278:9,12
279:2,18

**can't**
11:6 17:17 20:18
26:12 27:8,11
62:15 66:23,24
82:3 99:1 100:8
102:5,8 105:16
109:5,7,9 120:20
125:19 131:23
149:16,18 153:17,
18 155:12 156:21
163:6 170:6 172:6
180:23 187:17
228:13 238:13

239:21 271:13
278:10,12

**candor**
185:7

**cap**
23:9,12,13,14,23,
24 24:3 25:5,8,11

**capacity**
53:20 112:22
135:8

**Capital**
7:10,25 35:8,9,12
62:16,17 94:23

**capitalization**
23:12

**care**
198:22

**career**
59:2

**carefully**
145:22 207:20
209:17 220:23

**Carson**
47:18 49:13,15,22,
23,24 50:1,7

**Carson's**
47:18

**case**
12:9 17:7 40:12
56:7,9 58:10
62:20,23 69:1
70:25 71:2,4,5
72:8,17,24,25
73:5,23 85:11
86:12 90:1 92:2
103:6 104:3,6
105:15 106:20
113:17,20 116:8
117:21 126:8,10,
12 132:14 133:23
134:1,21 136:16,

24,25 139:10
150:24 155:12,18
160:23 161:1,5
163:14 165:20
175:18 179:23
186:3 190:16
195:18 199:8
208:11 209:10
211:11,17,18,20
215:22 217:14
238:20 255:5
264:18

**cases**
63:10 171:22
172:2,6 214:17
215:3,24

**cash**
33:8,17,20,24 34:2
37:2 45:22,23,24
46:3,5,18,19,22
49:4,5,9 52:13,21
53:2,4,7 54:11,25
55:1 133:9 213:8,
14,15 214:9,15
231:21

**categories**
131:25 132:10
134:20

**category**
131:11,21,24

**cause**
249:23

**caused**
266:12 269:24

**CDC**
31:19 32:1

**cents**
169:25

**certain**
24:13 28:24 34:10
46:3 48:1 90:5
111:25 117:22

204:12 206:21
213:13

**certification**
21:8

**certify**
207:9

**chain**
83:11,25 86:19

**challenge**
23:25 24:7

**challenged**
92:18

**chance**
10:18 219:12,14,
15 220:1,4 276:5

**change**
50:13 272:2

**changed**
50:17,23 223:22
250:22

**changes**
52:10 223:12,15

**changes/
modifications**
222:18

**changing**
50:15 160:2

**charge**
34:22 35:21 39:2
270:5

**charged**
165:4

**chart**
35:20

**charts**
23:21 223:20

**chat**
196:24 197:17


**UNIVERSAL**
**COURT REPORTING**

**Office Phone:** 954-712-2600
**Email:** info@ucrinc.com
**Website:** ucrinc.com

chatted
116:8

check
39:16 91:7 195:21
197:4

checked
8:23 77:7

checks
84:16,19

Chicago
40:7,11 41:16

chief
21:21,22 164:17,
20,22,24 166:17
171:12 174:25
209:23 213:5

child
214:2

chose
32:14

Chris
66:12,13 73:17,19
74:14 77:15 80:3
110:2 112:5
151:15 152:1
161:22 185:19
186:25 266:15,16

Chris's
266:18

circumstance
270:23

circumstances
57:23 77:5 128:17
203:21 217:23
262:14 265:10

circumstantial
113:14,15 129:6
141:16 142:1,3,16
143:3 152:21,22

circumvent

100:15

cited
101:24 146:24

Civil
279:23

claim
173:11,13,15,17
174:1,3 175:8,18
181:10

claims
32:11,12 62:9
63:23 64:17 73:23
75:13 112:24
113:1 130:10,14,
15 169:13,20
174:5,14,18
180:21 229:25
230:4

clarify
124:13

clarity
10:1

classic
38:2

clear
73:22 173:18
176:25 177:19
275:10

client
76:2 108:24
139:18 159:6
247:21

client's
16:11

clients
16:7 40:16 154:5

close
33:24 54:2 257:6

closed
24:12,16 32:6,16

33:1,7

closer
194:1

closing
24:14 32:6

clubs
22:20 28:21,23,25
29:4,6,7

coaching
232:24

coincidence
106:8,9 158:22

coincidences
95:1

coincidental
128:17

coincidentally
93:12 128:12

collaboration
62:7 109:2

collateral
60:9 65:19 68:14,
15 69:8,12 79:4,14
80:7,11 81:12,15,
19,25 82:16 84:20
88:3 89:4 95:9
96:19 99:21
186:11,14 187:9,
23 188:6,15,25
234:6,8,10,19,23
235:9 267:5,6,10,
13 270:6 272:17
273:8 278:5,7

colleagues
43:15

collect
12:8

collected
212:3,7,12

collecting
212:8,10

collectively
244:15

combination
99:15

come
20:13 34:3 40:4
52:2 54:3 55:24
56:1 128:4 139:6
178:9 231:18
270:11

comes
162:7 169:24

coming
34:2 55:3 80:19
172:4

commenced
10:9

comment
265:13

comments
189:14 277:22

commercial
270:11,12

commercially
270:12

committed
56:24 106:4
241:24

committee
59:25

common
111:6

communicated
47:12 70:1 71:16

communication
128:19 244:6



Office Phone: 954-712-2600
Email: info@ucrinc.com
Website: ucrinc.com

777 PARTNERS LLC and SUTTONPARK CAPITAL LLC vs LEADENHALL CAPITAL
Shapiro, Mark on 03/05/2025

**communications**
13:18,19 74:20
108:2 138:20
244:23

**companies**
22:21,23 25:24
28:6,16,24 29:25
30:18,19,20,24
31:2,5 33:3,12,15,
24 34:1,20 45:22
46:1,4 49:16 50:5
52:17 53:21,25
54:2 95:13 98:3,6,
8 200:4 213:14,20
214:9,11,12 224:7
244:14 250:19
254:2,14 255:14,
18 264:17 270:2
272:16 273:15,20

**company**
11:17,18 22:3
23:22 24:21 26:2,
19 27:25 28:8,9,
10,19 29:5,11,19,
20,23 31:5,6,14,
15,16,17,18,19,21
32:5,9,10,17 33:5,
22 35:10 37:9,12
54:3,8,13 55:6,13
57:1,6 58:5 59:5,
14 60:23 62:24
63:6,7,8 64:8
73:10,14 74:2,16
75:12 77:8 80:18
99:18 125:3 133:9,
18 137:23 159:7
165:6 200:22
204:1 207:5
230:10,23 231:4
234:11 239:3
240:9 246:2 247:1,
4 254:18 255:1,8
270:4

**company's**
55:14 57:3 59:14,

15 172:16 216:5
226:11,15 249:10

**company-side**
21:15

**compelled**
105:10

**compelling**
258:15 261:18

**compensation**
43:20,24

**competent**
265:20,21 266:22

**competitor**
79:9,12

**compilation**
130:23

**complaint**
41:11 73:9,15
75:13 94:4,13
95:23 101:10,12
107:11,16,25
108:5,13,19,25
109:11,13,18,20,
22,24 110:3,9,13,
17 112:3 113:1
129:7 130:16,19
142:6 150:14,17
151:22 158:13,24
166:3,7,9 172:25
179:1,5,8,15,20
180:12,13,14,15
186:3 201:4
204:23 221:3
232:9 233:10
235:12 238:8,9,11,
12,15 271:21,24,
25 272:4 276:23

**complaints**
114:22 265:22

**complete**
9:23 10:22,25 11:4

13:7 52:3 122:8
201:12

**completed**
69:23 199:6

**complicit**
236:10

**comply**
89:23

**complying**
51:17 84:12
120:25 121:4
122:11 141:4
145:7

**component**
39:4

**compromised**
225:14

**computer**
79:17 228:24

**conceal**
256:16

**concern**
256:6,25

**concerned**
81:18 208:21

**concerning**
252:23

**concerns**
15:14 25:12
135:18 136:4
187:3 223:25
224:10

**conclude**
106:6 115:15
116:12 177:3
277:11

**concluded**
178:23

**concludes**

222:17

**concluding**
209:21

**conclusion**
47:9 58:20 177:11
178:13 180:2,24
181:10 235:24
236:14 244:7

**conclusions**
192:7 234:16
237:5 242:23

**concrete**
128:20

**condition**
267:19,22 278:4

**conduct**
15:15 67:1 79:17
105:22 130:19
138:3

**conducted**
121:14 146:14
148:1 149:6

**conducting**
75:5 200:3

**confer**
27:24 28:2 116:6

**conference**
154:19,20 279:2

**confidentiality**
15:14

**confirm**
24:3 117:1

**confirmed**
116:25

**conflated**
243:10

**conflicts**
168:13,14,15,16
250:12



**Office Phone:** 954-712-2600
**Email:** info@ucrinc.com
**Website:** ucrinc.com

confused
173:20

conjunction
80:11

connection
65:21 70:9 74:22
88:18 138:11
190:11 204:22
274:21

connections
94:25

consider
22:5 37:23 113:2,5
114:16 203:19
233:23 258:14
261:7 271:16

considerably
50:22

consideration
203:22 206:13

considered
20:4 113:7,11
176:7 206:2,12
207:20 220:23

consistent
54:7

consolidated
24:23

consolidating
213:18

constant
47:1 172:8

constantly
171:8 172:2 204:4

consult
138:11

consultant
26:18 230:9
256:18 258:9

consultants
26:19,21 91:5
99:16

consultation
74:23

consulting
7:15 27:2,13,15,19
68:12 88:2 121:13,
19 122:2,9 154:3
239:2 255:22

contact
67:22 139:18
140:5

contacted
40:6 254:10

contacts
47:19

contained
165:25 188:8
222:22 237:6
241:10,20 247:13

contains
98:22 121:21
275:21

contemplating
30:1,21 31:13

contend
133:25

contention
104:3

contents
10:19

context
119:22 163:6
207:7 213:3

continue
61:9 89:14 233:1

continued
34:9 134:12

continues
46:14

continuing
216:11

contract
90:3 240:10
256:19 273:19

contractor
78:21 237:17
238:4,21 239:11,
16

contracts
27:5

contractual
188:5 224:6
272:16

contradict
167:14 186:24

contradicts
272:3

control
28:21,25 52:6
54:16 64:6,15
211:4

controlled
64:1,2

controller
251:9,13

controls
64:12 80:12 88:9
187:24

conversation
18:3,7 28:10 156:3
194:8 275:14

conversations
16:20 17:14,25
18:5,7 19:5 41:4
48:14 66:7 74:15
107:24 108:14
111:10 155:1

175:21

COO
41:20 169:8 198:8,
25 200:22 212:19

coordinated
212:13

copied
51:23 84:5 93:6,7,
11 156:21 157:2

copies
97:2 117:22 118:7,
10,14,16 120:17
127:24 128:3
142:3 159:12,23
160:1,4 197:14
245:4 246:6,9,13

copies/archives
121:20

copy
83:13 87:10 93:10
94:2,8,10 96:11,
13,24 112:3
116:16 117:5
119:1 120:5
121:18 123:2,9,17
124:14,20 125:14,
18 126:2,3,7
127:4,9,12 128:1
143:19 156:6,18,
22 157:5,8 159:6
160:3 183:23
195:17,19 196:17
197:8 279:17

corporate
25:16 129:12

correct
13:8,12 14:10 15:4
18:21 20:8 23:2
26:16,22 29:21
39:21 41:22,25
42:2 45:5,23 46:8
51:15 64:15 65:20

Office Phone: 954-712-2600
Email: info@ucrinc.com
Website: ucrinc.com

777 PARTNERS LLC and SUTTONPARK CAPITAL LLC vs LEADENHALL CAPITAL
Shapiro, Mark on 03/05/2025

71:13 73:5,6 74:4,
10,12 77:4 82:22,
24 85:11 88:23
92:21 96:8,16 98:4
100:21 102:2
104:2 105:3 117:7
118:9 122:22
126:13,16 127:4
141:10 143:11
144:25 145:1
150:12,24,25
152:14 155:7,11
159:16 160:23
161:11 164:1,16
165:22,23 166:20
168:23,24 169:3,4
171:5,10 177:21,
22 180:12 181:1
185:14,15 186:19,
20 188:6,7,9,22,23
189:1 190:4,5,7,
16,17 193:4
194:10 199:1
200:5,6 205:18
206:16,17 207:17,
18,20,21,23,24
208:3 209:17,21
210:8,9,12,13
212:24 217:21
218:2 219:6
221:18 224:2,3,7,
8,13,17 225:1,2,4
227:9,15,16,19,22,
25 229:4,11 233:8
236:23,24 238:12,
13 240:6 242:7
245:23,24 246:4
247:10,11 248:1
250:10 251:16
252:20,21 257:3
258:20,21 259:12,
18,19 261:20
262:22 263:6,12
266:6 273:2,4,8,9,
12,20 275:9,11,15

**correction**
224:21

**correctly**
158:14 159:25
167:8

**correspondence**
73:11

**cost**
61:18 131:12
132:11 169:25
172:10 216:9
230:13 248:2
264:9

**costs**
48:6 61:19 129:15
169:19 247:24
248:5

**could**
9:10 36:21 38:8
44:25 49:19 53:25
80:12 87:24 93:14,
15 97:11,13,14,15,
16 100:15 102:12,
13 103:1 104:4,5
113:3 114:5 117:1
128:13 129:1,14
130:21 131:20
133:6 135:15
145:21 148:17
149:1 155:14
157:23 160:6
166:25 167:24
168:6 180:21
188:11 192:2
197:11 202:22
211:13 214:12,14
226:5,7 228:9,18,
19,20,21 229:15,
18 231:1 232:14
249:14 250:24
251:9 255:21
264:9,10,12
270:19 274:22
278:20

**couldn't**
96:22 113:23
204:11 215:4,22
218:25 251:20

**counsel**
11:12,13,19 13:19
16:20 17:13,16,20
18:2 19:9,11,14,24
25:15 41:5,14
57:1,2,4,5 59:16
62:7 64:24 65:3,4,
22,25 66:12,13
71:23,24,25 73:20,
21 74:8,11,20,21,
23 75:6,7,15 88:1
107:24 108:2
116:7 130:6 138:2,
13,16 144:20
146:13 147:11
152:23 153:23
169:12 173:6
174:21 175:13,21
176:4,10,14,19,24
177:7 178:3,18
184:4 277:13

**counsel's**
174:22,24

**counseling**
13:21

**counterpart-**
27:9

**counterparts**
43:15

**counterparty**
27:7,9

**couple**
156:1,3 189:22
215:23

**course**
28:19 108:23
112:10,25 208:15
249:11 276:21,22

**court**
8:8,17 9:17 21:16
31:9 38:5 69:9
107:16 121:13
142:20 143:1
167:16 178:9
182:5 196:21
207:17 240:20
253:1,4 270:9
279:13,16,19

**covered**
34:11 118:17
125:11 126:18,24
274:15 276:17

**CPA**
21:5

**create**
23:14,20

**created**
23:9,19 122:16,17
124:22,25 125:20

**credential**
192:24

**credentials**
70:8,14,17 73:2
100:6,10,16
135:16,20,25
136:7,11 190:3,8,
23 191:12,13,22
192:8,11,14,18
199:23 202:18
203:3,6 224:10,15
243:3 258:8,12,19
259:18 261:19

**credible**
58:7

**Credigy**
95:19

**credit**
234:20

**creditors**

UNIVERSAL
COURT REPORTING

Office Phone: 954-712-2600
Email: info@ucrinc.com
Website: ucrinc.com

777 PARTNERS LLC and SUTTONPARK CAPITAL LLC vs LEADENHALL CAPITAL
Shapiro, Mark on 03/05/2025

38:3,20 59:16 62:8
95:9,14

**criminal**
251:24 252:6,13,
14

**critical**
34:10,12,18 55:8

**CRO**
21:17 22:12 37:1,
13

**Cronin**
251:8

**CROS**
41:20

**Cross**
32:11

**CROSS-**
**EXAMINATION**
9:8 153:25

**Crowd**
201:23

**Crowdstrike**
91:4 136:2 201:23
202:1,4,7,10,18
203:3,6 258:5,14,
17,19 260:3

**CRS**
33:5

**CSG**
31:15

**current**
97:7 146:11
199:13 216:5
231:20,21 266:7,8

**currently**
32:24 34:5 35:13
44:8,13,14 45:10
138:21

**custodial**
10:15

**cut**
40:2 48:6 61:3,4

**cyber**
91:24 135:19
162:9 198:10,14,
19,22 199:23,25
202:15,16 204:1,5,
9,13,17 261:7

**D**

**damage**
88:10 131:13
133:2,5 216:21
266:12

**damaged**
133:18

**damages**
130:18,21 131:11,
21,25 132:18
134:20 174:4,8,9,
11 216:5,9,10,13
247:20

**data**
12:10 20:14 57:25
67:9 80:13 90:18
91:3,8 94:25 95:8
97:14 99:18,21
115:7,10,13
121:10,15 133:21,
25 138:17 139:1
157:11 159:6,12
160:4,5 164:11
186:12 187:5,24
188:5,8,14 189:4,
15,21 190:3
191:11 192:9,17
199:18 200:9,25
202:16 204:9,22
205:12,16,18
216:24 217:4,12
218:11 221:21
222:3,13,21,24
223:6,9,12,13

224:6 241:7 242:2,
6 245:23 247:10
248:19,22,25
249:9 250:3,13,16
257:22 258:3
263:14,22 264:24
273:14

**database**
94:3,9,12 118:8,10
121:21 123:2
124:14,20 125:15,
19 127:10 142:4
156:18 157:6,10
188:16,21,25
189:6,9,12 224:13
249:5,6

**databases**
93:6 116:23

**date**
7:6 25:4 42:21
107:14 120:6
122:17 124:5
158:23 159:10,11
201:19 205:12
221:15 257:6
259:23

**dated**
118:16 119:6,7
121:3 221:2 222:8
256:23 257:8

**dates**
97:3,4 118:11
158:14 260:2
262:2

**David**
7:2,23 8:10 9:12
18:9 72:2 182:2,15

**Davis**
7:19 71:8,14,16
77:2,22 78:15,19,
25 84:8,9,15 85:4,
14,16,22 86:6,13,
17 90:8,20 94:16,

20 96:9,24 98:19,
25 99:8,10 100:3,
4,25 101:7 103:9,
14,22 104:4,8
105:14 113:6
115:9 116:15
117:23 118:14
119:20 122:2
129:3 134:25
136:1,7 142:13,22
143:8 145:17,25
146:6,17 148:22
152:13 153:23
154:14 187:12
189:20,24 190:10
191:13 192:7,13
193:15 201:6
203:6 205:22
206:9 224:1
226:16 227:1
236:11,18 237:14,
15,16,23,25 238:4,
21 239:8,10,15,20
240:3,9,13 241:2,
4,24 243:1 244:6,
23 253:12,19,25
254:10,13 255:11,
17,25 256:6 258:7,
24 259:10,17,21
260:6,19,23 262:6,
11 263:5

**Davis's**
73:3 77:6 92:6
105:22 115:16
135:2,4 136:11
141:9,20 142:10,
17 143:5 148:14
150:8 191:22
192:18 193:10
203:3 236:10
237:13 239:3
240:9 243:3
244:25 252:23
256:17 258:18
259:18 261:19

**UNIVERSAL**
**COURT REPORTING**

Office Phone: 954-712-2600
Email: info@ucrinc.com
Website: ucrinc.com

274:18

**day**
37:17 53:9 56:10,
18

**day-to-day**
36:1,3 89:18
210:24

**days**
150:22 156:1,3
257:8

**deactivated**
203:7,9,11,14,16,
19

**deadlines**
172:3,4

**deal**
30:21 31:19 214:5

**dealing**
237:25 248:1

**dealings**
98:9

**deals**
28:6 33:12

**dealt**
204:7 214:7

**debt**
23:24 24:2,4,8
33:18 36:17

**December**
42:23 201:6,18,22,
25 202:7 257:2,5,
15,20,23 262:25
263:2

**decide**
42:6 107:15

**decided**
91:12 108:24
152:25 185:10

**deciding**

29:19

**decision**
29:22,24 30:2
34:23 35:23 37:16
71:20 72:4,7,15
79:16,20 80:2
107:13,25 108:11,
16,19 116:19
127:13,23,25
152:24 169:10,22,
23 185:10,13,18
189:11 190:15
217:18 258:2,11
259:13 273:17
277:11

**decisions**
27:25 30:9,14
34:23,25 35:2,3,21
37:5 47:2,6,24
52:11 137:6
186:16 230:19

**declaration**
34:7 39:14 40:3
51:11 87:5 164:24
165:8,9,14,23
166:1,23 167:4,14
168:3 195:18
206:15 207:5
208:1,13,19,24
209:8,14,15,20,22
213:1 238:25
240:20 275:21
276:1,12

**declarations**
165:18 206:19,23
208:10,13,16
209:11

**decline**
25:9

**declined**
211:25

**Deed**
31:19,20,23,24

**defend**
133:22 134:1

**defendant**
106:20 114:11
115:4,6 116:20

**defendants**
7:22 8:6

**defendants'**
180:15

**defenses**
180:18 183:17

**definitely**
53:1 102:25 110:4,
14 203:22 234:12
236:12 251:12

**definitive**
222:13

**definitively**
221:22

**delay**
194:7 195:3
239:25 271:9

**delayed**
79:6

**Delegate**
29:5

**delete**
138:23

**deleted**
246:23

**deletion**
67:9

**demonstrate**
148:13

**demonstrates**
237:12

**demonstrating**
142:16 143:4

**denial**
145:15

**denied**
147:8,19,21

**deny**
145:14

**department**
24:18 67:20
204:20 253:17

**departure**
77:6 265:11

**depend**
256:10

**depending**
10:19,20 56:6 60:3
150:15

**depends**
55:23 139:16
249:19 262:13

**deponent**
14:14

**deposed**
9:13 17:6 86:11

**deposition**
7:1,8 10:2 12:15
16:14 17:2,10
18:12 19:2,12,20
20:1 83:19 87:6
135:24 155:10,13
167:12 170:24
182:4,19 184:2,5,
15 193:18,21
208:12 220:17
232:25 242:21
274:12 277:10,22
279:25

**derailing**
151:2 153:11

**Derousse**
72:3



**Office Phone:** 954-712-2600
**Email:** info@ucrinc.com
**Website:** ucrinc.com

777 PARTNERS LLC and SUTTONPARK CAPITAL LLC vs LEADENHALL CAPITAL
Shapiro, Mark on 03/05/2025

**describe**
21:12 30:5 78:9

**described**
95:24

**destroyed**
63:6

**detail**
95:12 145:15
155:17 156:7
164:4

**details**
120:9 194:11,14
252:2,5

**detect**
130:25 131:7,9

**determination**
56:5 58:24 60:8
169:14 272:21

**determine**
57:19 58:14 59:6
60:24 134:6
169:13 218:20
222:18 225:18
227:11 234:5
263:21 265:15

**determined**
68:23 133:3 134:5

**determining**
60:10 89:14

**developed**
53:3

**device**
117:23 122:2

**didn't**
27:23 37:18 46:6
48:24 67:5 72:7,
16,20,23,24 81:20
91:5 92:20 101:12
108:10,11,12
114:16,17 117:2
120:21 127:16

136:3 137:25
138:5 148:24
151:6,12,18 155:5
183:24 187:11,13
189:5 193:20
210:18,21 221:5
238:25 256:4
258:11 259:2,6
260:18 265:14

**differ**
54:15 60:3

**difference**
268:18,19

**differences**
30:5 249:23

**different**
22:17 23:23 24:4
28:14 29:10 37:7,
13 54:16,17,20
56:9 59:17 76:22
95:9 144:12
166:17 204:1
222:1 232:5 245:9
255:23

**difficult**
22:22 59:20
171:24 192:1,22

**difficulties**
250:15

**digest**
185:2

**digital**
195:25 197:8

**digits**
170:13

**direct**
18:11 19:1,4 47:5
74:23 91:16
107:22 108:12
122:10 140:9,10
141:3 145:5 191:6

212:16,22 261:18

**directed**
105:22 106:7
107:10 108:4
129:3 142:10,17
143:5 226:16
263:25 264:3

**direction**
75:5,7

**directly**
67:20 69:3 91:1,20
93:12 102:21
211:13

**director**
239:17

**directors**
59:23

**disabled**
196:24

**disagree**
162:4 190:19,21
242:24,25 248:14
260:9 263:10

**disagreed**
208:21 242:17

**disbursements**
46:21

**disclose**
13:18 17:24 18:2
105:10

**disclosed**
18:20 125:23
126:7

**disclosures**
126:14

**discounted**
44:3

**discover**
156:11 163:3

**discoverable**
229:4

**discovered**
124:20 125:2
156:7,8 163:2
262:2

**discovery**
117:13,22 136:16,
20,21,22,23
212:12 228:12
229:23 231:17
276:21

**discrepancies**
249:9

**discuss**
17:1,11 19:1,20
28:18 29:24 30:16,
17 49:23 75:20,24
76:6

**discussed**
12:13 17:18 47:20,
23 48:5,12 79:3
105:18,21 111:19,
22 129:11 142:8
145:9 152:23
153:5,7 176:10,14,
24 177:7 178:18
237:9 248:18

**discussing**
13:4 31:13 32:3
116:11 128:10

**discussion**
14:22 32:24 48:20,
22 49:4,7 50:16
76:5 106:24 107:2,
5,8 108:10 117:14
279:12

**discussions**
19:8 31:4 48:9
50:7 66:25 67:6
107:6,7,8 108:6
110:25 111:4,12,

**UNIVERSAL**
**COURT REPORTING**

**Office Phone:** 954-712-2600
**Email:** info@ucrinc.com
**Website:** ucrinc.com

777 PARTNERS LLC and SUTTONPARK CAPITAL LLC vs LEADENHALL CAPITAL
Shapiro, Mark on 03/05/2025

14 176:4 249:3
251:17 252:22

**disgruntled**
86:13 206:8

**dismiss**
183:20,23

**dispert**
213:19

**dispute**
53:13 78:9,13,14

**disputes**
53:12 77:9 165:4

**distinct**
101:2

**distinction**
244:18

**distract**
153:2

**distress**
54:10

**distressed**
21:15 53:21 54:3

**district**
10:9 165:21
232:13

**divergence**
250:2

**diverse**
22:19

**doctor**
213:12

**document**
11:7,8 13:4 14:5
25:7,14 39:22
51:9,16 83:7,8,15
87:1,8,22 89:7
121:1 128:19
140:21 143:24
144:8,22 147:2

157:16 167:1,10
179:5 180:22,25
181:2,8,9 183:8,
11,16 207:16
227:24

**documentation**
163:9

**documents**
10:15,25 11:22,23
12:9 13:7,16 15:3,
16 20:21 51:19
64:23 69:1 117:3,
9,12 118:2,3
138:20 139:22
156:14 157:13
163:1,4,5,24
164:6,7,8 183:24
184:1,5,6,19 185:3
197:16 212:3,7,9,
10,12 220:19,22
228:20,23 229:2,9,
11 230:15 277:6,
14,16

**doesn't**
17:17 28:8 41:12
65:3 106:3 120:19
123:14 223:9

**DOJ**
58:11,17,18 67:23
98:17

**dollar**
270:19

**dollars**
32:20 33:9,10
169:24 268:12

**don't**
11:20 15:25 16:7,
11 17:9,15 20:23
23:7 24:23 25:3,10
26:13 27:8,21
28:21,23,25 30:11
36:6,10 39:15
40:14,25 41:10

42:10 43:18 47:8,9
49:21 50:17 51:2
52:24 58:3,21,23
59:8 64:6,22 65:24
66:3,8,17,20 67:7,
11 70:18 75:18
77:19 78:1,2,6,17,
23 79:2,7,13 80:22
81:1,16,20,23
82:19 83:13 84:20
85:25 86:16,20
90:10,24 91:11
93:1,17,19 94:8,25
95:15 97:8,13,14,
20,21 99:7,9,10,12
101:14,16,18,19
102:9,16,19,23
104:10,22 105:1,6
106:23,25 107:3,
14 108:7 109:25
110:12 111:9,13,
15,16,18,21,24
113:9 114:3
117:18 118:4,11
123:6 124:2,9,17,
21,24 125:16,25
128:7 129:7 130:9
132:20,22 133:1,2,
4,6 134:3,4 135:14
136:13 137:13
138:8,9,15 139:2,7
141:12 151:11
152:21 153:7,13,
16,18 154:13,23
155:2,8,10,15
156:12 157:3
158:21 160:2,17
162:15 163:6
164:4,13,15 167:9,
13 170:6,12,13,17,
18 171:14 176:2,
19,21,23 177:6
178:2,16,21 179:3,
11,12 185:5,8
186:9,15,24 189:3,
5,6,25 190:1,11

191:4,7 192:2,20,
23 194:23,24,25
195:22 196:16,25
197:3,5,13,22
198:15 199:15
201:7,17 202:19,
23 203:12 205:1,
14,24 206:3,6,14,
25 207:6 209:1,7,
9,15 214:21 215:7,
8,11,12 216:1,9,21
217:2,4,5,8 218:3,
5 220:4 224:18
225:9 226:4 227:5
228:13,15,17
229:13,14 230:3,
20 232:14,22
233:12,21,22
234:24 235:3,7
237:8,18 238:3,10
239:24 240:1,2,11
243:6 245:18
246:7,14 247:6
249:12 250:17
251:5 252:15
253:16,17 254:20,
23 255:15,24
256:3,14 257:10,
13,17 259:23
260:2,21 262:1,7,
12,15 263:3,22
265:17 266:15,18,
25 268:6,14
270:12,15 271:13,
22 273:6,13,25
274:14 276:7
277:1 278:8

**done**
12:12 22:2 24:6
54:1,21 56:9,25
60:15,19,20 63:15
64:10 65:1,2 66:9
67:4,9 75:15 81:25
82:5,6 92:11,17
93:5 109:2 139:3

**UNIVERSAL**
**COURT REPORTING**

**Office Phone:** 954-712-2600
**Email:** info@ucrinc.com
**Website:** ucrinc.com

777 PARTNERS LLC and SUTTONPARK CAPITAL LLC vs LEADENHALL CAPITAL
Shapiro, Mark on 03/05/2025

149:22 160:7
165:18 216:19
226:9 227:10
232:7,17 235:1
244:5 248:8,13
253:19 254:13
256:7 259:7
264:20,22 268:24
269:13

**double**
45:2 60:25

**doubt**
85:21,24 86:14
199:5,11 202:21,
23 203:10 217:6
240:15 255:25

**down**
36:9,11 55:23 95:4
122:24 132:15
153:11 169:24

**download**
184:20

**dozen**
54:2

**dozens**
98:5 215:10

**draft**
107:10 108:5,13
109:22,24

**drafted**
109:19

**dramatic**
269:7

**dramatically**
36:7 50:18 269:6

**drawing**
31:11 46:24

**drinking**
34:15

**driven**

255:20

**drives**
115:13

**due**
18:20 36:19 172:3
222:21

**duly**
8:11

**Durden**
239:4 256:19

**during**
10:1 116:7 156:2
161:16 162:10
170:4 191:21
204:24 216:24
217:12 218:12,21
221:22 222:3,24
232:25 249:11
257:23 266:11

**duties**
38:1,3 52:4 53:1
63:4 164:23
166:16 168:12
169:5 198:7 230:8

**duty**
63:20 198:13,19
229:18 230:3
231:6,8

---

## E

**e-mail**
15:22,23,24 16:1,
12 20:18 83:17,24,
25 84:3,5 85:3
86:2,18 87:2,25
88:13,19,22,24,25
89:12,13,16,22
90:15 104:16,21
128:18 137:2
225:23 227:7
229:3,10,14

237:21,22 260:13

**e-mails**
11:4 16:6,17 20:7,
11,12,15 66:7,10,
19 70:3 73:11
84:13 93:7,8,9
94:19,21 97:23
98:22,24 99:3
105:19 142:4,5
184:7 226:2,17,25
227:2 228:4
259:24 260:15

**each**
23:22 24:21 56:9
214:16 231:2
232:10 233:15
271:4

**earlier**
44:10 46:6 73:1
77:1 79:3 83:11
98:12 116:23
117:1 118:15,17
127:19 128:9
141:7 142:8 148:6
150:5 155:5
165:14 169:6
174:7 198:7 200:2
213:7 223:23
276:17 277:5,22
278:3,14,25

**earliest**
83:25

**early**
50:7 116:24 173:8
184:10

**earth**
94:15

**easier**
196:1

**easily**
250:17

**Eastern**
184:14

**easy**
181:14 214:14

**effect**
139:6 254:19

**effective**
210:2 240:5

**efficient**
37:19

**effort**
47:1 243:2

**efforts**
136:16 231:19,20
246:21

**either**
30:21 31:7 32:5
33:17 39:5 44:4
60:24 73:11
104:11 118:3
126:4 136:2 172:3
178:7 182:15
189:7 199:20
238:1 250:24

**electronically**
196:11 197:16

**else**
17:4 19:16 41:3
79:20 95:21
109:24 110:7
115:2 138:16
151:9 152:3
161:18 191:18
194:20 197:2
211:4 212:21
246:18 274:1
277:23 279:7

**emphatic**
267:6

**employed**
26:20 75:12



**UNIVERSAL**
**COURT REPORTING**

**Office Phone:** 954-712-2600
**Email:** info@ucrinc.com
**Website:** ucrinc.com

151:20

**employee**
20:4 78:8,20
112:21,24 191:17
230:19 237:17
238:4,22 239:11,
15,18 253:20
254:1

**employees**
26:21,22 36:5 38:4
44:17,21 56:14
82:15 85:8 146:12
152:17 206:8
223:25 231:21
252:20 266:5,7,8

**employer**
78:7

**employment**
77:17 78:2 244:8
254:2,15 255:13

**encouraged**
142:17 143:5

**end**
42:21 50:21 64:5
80:17 86:8 119:3
120:23 121:1
216:15

**ended**
12:12 28:7 50:3

**ending**
87:4 88:12

**enforcement**
204:25 252:23

**enforcements**
170:5

**engage**
99:22

**engaged**
11:24 43:12 57:6
69:18 77:3 79:14
99:22 101:7

**engagement**
36:25 37:1,8,15
39:4,9,13,18,23,24
40:5 42:13,16,17
43:1,8,11 44:16,23
45:9 46:20 52:13
74:8 81:17 91:21

**engagements**
55:8 164:25

**engages**
8:15

**enhance**
50:22

**enough**
231:17 244:20

**ensued**
14:22 279:12

**enterprise**
65:12 95:11

**entire**
75:14 98:20

**entirety**
96:10

**entities**
10:3 23:15 52:20,
21 53:13 63:1
65:16 98:9 210:8,
12 211:21,23
254:24

**entitled**
65:3 78:8,10
80:10,14 88:8
101:9 186:13
187:9,25 189:21
190:3 192:9 224:5
234:8,9 266:2
267:5,7 272:22

**entity**
27:9 36:12 42:12
45:15 94:23
213:19 254:25

**entrepreneur**
54:14

**entry**
252:23,24 253:2

**equal**
22:5

**equally**
97:19 140:8

**equanimity**
274:11

**equity**
24:1 29:3 32:4
38:20 54:14

**Eric**
74:7 91:19 92:14
110:10 112:7
117:11,13,14,16
123:23 125:16
131:7 146:14
148:1,25 149:3
152:19 157:4,6
158:2,6,8,18,21
160:18 161:16,25
162:8 191:3,5
205:23 216:18
217:7 222:17
263:18 265:4,5

**Eric's**
135:1

**especially**
213:3

**essential**
200:17

**essentially**
12:4 48:24 52:13,
15 92:18 101:6
116:25 130:24
131:9 202:14
247:23 272:25

**establish**
24:8

**established**
16:6

**estimate**
44:25 129:14
131:20 132:5
215:6

**estimates**
45:7 235:3,4

**estimating**
44:18

**et**
7:9

**et al**
7:10

**Europe**
32:18

**evaluating**
208:5,6

**events**
120:10 266:11

**every**
37:17 53:9 55:6
56:18 90:4 209:9,
10 232:4 233:13
269:21

**everybody**
38:21 39:1 40:15
80:3,18 99:18,19
115:2 187:2,22
188:3 189:23
212:20 271:4
279:11

**everyone**
74:20 152:3

**everything**
52:1 91:21 99:15
232:14 261:15
267:18

**Everything's**
102:17

**UNIVERSAL**
**COURT REPORTING**

Office Phone: 954-712-2600
Email: info@ucrinc.com
Website: ucrinc.com

777 PARTNERS LLC and SUTTONPARK CAPITAL LLC vs LEADENHALL CAPITAL
Shapiro, Mark on 03/05/2025

**evidence**
93:19 103:8,12,21
104:6,7,12,20,23
105:4,11 113:9,15
129:6,8 141:8,16,
17,18 142:1,2,11,
16 143:4 148:4,21
152:20,21,22,23
158:19 160:14
161:8 176:6,17
189:19 190:2,23
191:9,20 192:6
193:9,13 208:6
216:23 217:11
222:2,13 228:22
237:11 241:11,21,
22 249:15 250:2
253:10 258:15
260:22 261:18
264:18 274:17,19,
20

**Evidently**
128:6

**evil**
198:16

**exact**
107:14 113:15,18
215:4,13 234:24
235:3 259:23
260:2 262:2
278:21

**exactly**
40:9 52:18 64:10
93:2 134:17
149:14 260:16
261:12,13 262:18
263:21

**examination**
56:8

**examinations**
67:4

**examined**
8:11

**except**
99:19

**exception**
151:20

**exchange**
117:2,8,12 164:11

**exchanged**
117:21

**excuse**
19:8 27:1 83:16
87:5 122:5 204:8

**executive**
105:7 203:25

**exercise**
47:11 53:6 56:6,12
57:17 169:18
209:4 211:4
220:23 259:8

**exercised**
29:2 64:7,23

**exercising**
61:24 171:7 177:1
217:19

**exhibit**
51:2,4,5,9 83:2,3,
7,14 86:23,24
87:5,11 118:22,23
119:1 122:7,10
140:13,14 143:13,
14,17 145:3
165:14 166:24
196:17 197:6
198:1 208:2
219:24,25 220:17
276:4

**exhibits**
83:20 196:5
197:13

**exist**
60:24 106:3 114:5
249:2

**existence**
114:8 127:9

**existing**
59:18,19,24

**exists**
114:4,9 127:13
142:16 143:4

**exited**
12:20

**expect**
8:1 218:13

**expectation**
218:9

**expedited**
14:6

**expensive**
48:17

**experience**
250:23 270:2

**experienced**
204:1

**experiencing**
270:19

**expert**
70:25 74:8 95:10
96:22 131:18,21
134:8,10 204:24
242:13 247:24

**expertise**
21:13

**experts**
131:12

**expire**
42:22

**explain**
36:21 145:15
158:8

**explains**
121:12

**explanation**
48:24

**explore**
63:20

**exposure**
172:13,16,18,23,
25 173:3,4 174:6,
12 175:4 214:18

**expressed**
80:14 186:6

**extent**
16:19 17:13 62:1
65:25 74:21 75:4
160:12 161:22
176:16 204:3
258:11 259:7
276:12

**external**
22:6 71:23 180:25

**externally**
22:4

**extracted**
12:10 133:22,25

**extremely**
269:11,14

---

**F**

**face**
214:18

**facilitated**
191:22

**facilities**
234:20

**fact**
11:6 68:21,24
85:16 93:5,6,7
141:8 146:5 158:3
159:5,23 176:17
193:15 217:14

**UNIVERSAL**
**COURT REPORTING**

**Office Phone:** 954-712-2600
**Email:** info@ucrinc.com
**Website:** ucrinc.com

**factor**
95:6 101:25
102:10,14,17,18
113:24 153:5

**factors**
109:12,14 113:12
116:11 128:10
129:5 142:5 146:7

**facts**
57:22 70:23,24
71:1,2 72:8,17,19,
23,25 73:2,4
109:10 110:11,15
128:16,18 145:18
146:10,19,23
147:3 149:10,12,
13,16 176:23
177:1,5,7,10
178:2,3,7,12,17,
20,21,22 179:2,9,
13,17,18,19
180:11,23 181:9
183:4 186:2
203:21 217:23
249:22 262:13

**factual**
106:5,6 115:15
128:14 129:2
176:6 186:7 241:1
265:10,15

**factually**
155:11

**failed**
78:7

**fair**
200:16 206:20
215:14 244:19,21

**fairly**
11:25 164:9 213:8

**fairness**
171:3 209:16
219:8 238:24

**factor**
272:13 277:3

**faith**
258:23 259:1,9
273:16

**familiar**
154:5 170:25
213:2 219:2
227:21,24 234:16
236:4 247:12,15
249:8 278:4

**Family**
62:19 63:3

**far**
64:24 199:25
247:20 264:7

**Fargo**
59:5

**favorable**
85:5 267:10

**fear**
186:12

**fearful**
99:19

**February**
119:15,16,18
256:23

**federal**
67:13 107:16
279:22

**feedback**
108:16 109:3

**feeding**
33:25

**feel**
38:11 105:10
268:4

**fees**
129:14 131:4
132:1,8,11,17
247:24

**felt**
78:8,10 259:8

**ferreting**
60:2

**Feuer**
7:17,18 12:17,20,
23

**few**
31:5 32:20 50:23
84:13 161:16,23
164:10 172:5
192:24 215:18
255:23

**FFI**
32:5 48:2

**fiduciaries**
63:18

**fiduciary**
37:24 38:1,3 63:4
105:8 169:5,11
198:6,13 203:17

**figure**
52:18 55:1 64:9
91:13 92:14
214:11 258:13
260:16 278:9

**figured**
60:13

**file**
93:11 97:7 107:9,
25 108:19,25
122:15,21 152:25
157:20 158:19,23
159:1,6 160:15
161:8 162:19
163:7,8,10,20
186:4 193:23
194:10,16,21
196:23 197:2
209:9 269:7 270:7
275:11 276:16,25

**filed**
32:5 62:8 71:3,4,6
72:9,17,25 73:9
112:3 140:2
150:14,17 166:4,5
183:19,20 195:18
207:10 208:24
221:13 238:12,16
269:17

**files**
10:15,16,21 12:5
16:17 93:4,9 94:21
95:2 102:3 114:4
121:18,20 122:1,8
123:3 159:12
164:12 188:19
223:21 224:12
225:23 245:22,25
246:1,23 275:21
277:5

**filing**
107:15 109:10
110:16 117:6
127:15 186:16,17
209:10 221:3
260:8,24 269:23
270:9

**filings**
207:15

**fill**
49:22

**filling**
200:14

**film**
22:21 32:4

**final**
12:6 122:5,6
277:11

**finance**
22:18,21 32:4
45:25 46:1

**Office Phone:** 954-712-2600
**Email:** info@ucrinc.com
**Website:** ucrinc.com

finances
165:1

financial
21:15,17 31:8 53:3
57:25 121:22
250:18 267:23
268:3

find
27:23 60:17 91:7
134:17 155:2
163:21 164:5
199:17 205:3,5
213:10 246:15
251:6 255:16
264:9,10,12
267:15 278:12,21

finding
92:19 255:19

findings
66:1,4,6 74:1

fine
38:13 61:5 179:15
195:8 243:22,23

finished
191:25 192:2
261:17

fire
34:16

firing
37:5

firm
40:11,17,18 41:17,
21,22 56:16 57:8
129:23

firms
44:1 57:14,16

first
7:18 8:11 15:2,15
24:10 33:25 52:12
68:11 88:17 89:6
90:19 92:24 93:2

101:13,18 106:25
119:24 144:16,19,
24 195:4 212:2
214:4,7 259:20

fiscal
24:15,16

five
215:11

fix
84:23 131:8
197:12

Flair
33:4

flippant
40:25

Florida
20:13 129:18
136:25 155:14
165:21,24 190:12

flow
37:2 53:4 213:8

flows
46:22 49:5 52:13
54:11 231:21

focus
62:6 211:9 213:23
214:4

focused
214:14

focusing
213:8

folks
16:21 19:21 24:4
35:12,24 38:14
47:12 55:3 112:9
134:7 140:16
152:9

follow
8:22 54:5

follow-up
164:2

followed
262:3

following
43:4 86:1 146:10
150:18,21 253:20
254:1

follows
8:12

football
22:20 28:21,22,25
29:3,6,7

forbearance
271:2

forecast
53:4 55:1

forecasts
37:3 46:18 49:5
53:7 165:1

foreclose
31:14

foreclosure
32:9,13,15

foregoing
146:9

forensic
56:6,12,16,17
57:16 91:12,24
131:12 134:12
146:14 147:25
152:19 157:11
158:18 160:14
161:7 190:22
193:9 216:23
217:10 222:13
237:11 241:11,21
242:6

forensics
56:13 264:12,19,
22

forget
29:4 44:4 47:18

forgot
185:22

form
15:17 25:19 30:12
36:15 69:17 70:11
72:10 78:22 97:17
102:20 103:15
104:9 112:16
114:1 123:5,11,19
124:6 127:5,17,20
128:23 130:12
132:21 134:22
135:12,21 136:12
139:20 141:11,24
147:1,10,20 148:9,
15 149:8,20
151:23 153:12
156:4,19 157:22
158:10 159:4,20
160:16 162:13,20
169:9 174:20
175:5,10,19
178:15 179:24,25
181:15 183:9
184:23 185:4
188:10,17 189:2,
13 191:1,15,24
192:19 198:11
199:9 202:2
214:20 217:1
218:23 221:23
222:15 225:16
228:14 229:5,12,
20 231:11 235:17,
22 239:12 240:16,
23 241:6,16 242:1
244:9 245:5
248:15 249:18
250:4 254:3 256:2
262:23 263:17
268:10 269:3,15
270:25 271:17
273:22 275:24


UNIVERSAL
COURT REPORTING

Office Phone: 954-712-2600
Email: info@ucrinc.com
Website: ucrinc.com

777 PARTNERS LLC and SUTTONPARK CAPITAL LLC vs LEADENHALL CAPITAL
Shapiro, Mark on 03/05/2025

**formal**
66:9 254:15
255:13

**formalized**
54:6

**formally**
88:1

**formats**
245:9

**former**
56:21 59:12 67:3
85:7 98:1 100:10
150:10 206:8
252:20

**forming**
176:7 178:13

**forth**
59:4 88:4 259:24
260:15

**forward**
69:21,22 169:15
185:11

**found**
58:6 94:14 116:21,
22,24 117:14,23
118:5 124:1,2,4,8,
13 125:7 156:13,
14,17,20,25
157:10 162:22,23
203:18 240:13

**four**
55:18 110:4
202:20

**fraud**
55:14,20 56:23
57:13,20 58:6,14
59:4,11 60:3,6,8,
16 61:16 62:9
63:14,20 67:2,4
103:5,8,12,20,21,
25 104:6,7,12,20,

23 105:4,11 106:4
150:23 153:9
158:15 226:3,5,7,
10 230:9,20 231:6,
7,8 232:8 233:7,
13,14,19,24 234:5

**free**
268:4

**frequently**
41:8 141:25 209:7

**fresh**
55:24

**Friday**
14:1,7,8,9 43:3
150:17

**friends**
149:22

**from**
10:15 11:11 14:14
16:22 19:18 22:25
23:21 34:15 35:15
40:13 41:14 43:24
44:19 47:12,16
49:14,16 50:22
51:23 52:2 54:8,21
61:12 66:15 67:23
70:24 71:8 73:4
75:11 79:21,23
80:13 81:11 83:18
84:3,13 86:2 87:2,
3 88:1,13 89:13
90:15,23,25 92:16
93:1 101:4 108:20
109:3,16 111:3,11,
13,23 112:14
115:16 118:3,5
122:1 126:3,4,9,
11,15 127:4,8,11
128:4,5,7 129:13
136:23 145:17,25
146:6,10,17
149:13,17 153:2
156:14 157:1

158:2,20 163:1,4,
5,17 164:9 176:18
182:4 184:19
189:20 191:10,13
194:10,16 201:6,
10 202:11 206:13
228:23 229:9
230:10 241:3
242:3 246:13,23
256:17 259:10,14
262:3 265:11
269:14 270:17
272:3 273:18
275:7 277:13
278:22

**front**
182:23 192:22
219:4

**fulfill**
198:19

**full**
9:11

**fully**
33:13

**function**
251:14

**functioning**
21:22 199:14

**functions**
254:11

**fund**
46:14 214:12

**funded**
46:13 61:21

**funding**
30:22 31:16 46:10,
12,17 47:22 48:6,7
63:13 129:9,13
214:11

**funds**
58:24 129:11,12

133:9,11,17

**funnel**
204:19

**further**
121:25 153:21
187:20 249:17
259:11 263:15
277:21 279:5

**future**
29:23 232:4

**G**

**gain**
129:3 136:11
226:17

**Gambrell**
7:24 11:14,15 12:6
15:15 19:21 57:7,
9,11,15 65:5
71:23,25 74:9
107:10 108:4,7,12
109:19 137:3

**gap**
23:11

**gather**
93:18

**Gatmaitan**
88:13,25

**gave**
77:22 85:19
144:20 216:13
266:25 275:14

**geared**
101:8

**general**
17:5 33:23 73:21
162:21 248:20
259:14

**generally**

**UNIVERSAL**
**COURT REPORTING**

**Office Phone:** 954-712-2600
**Email:** info@ucrinc.com
**Website:** ucrinc.com

777 PARTNERS LLC and SUTTONPARK CAPITAL LLC vs LEADENHALL CAPITAL
Shapiro, Mark on 03/05/2025

188:15 207:3
250:8

generate
84:15

generating
46:4

get
10:13 24:3 28:15
31:7 42:25 49:17
54:25 56:11 70:22
97:22 101:3 104:5
164:5,7 173:6
179:6 193:6
197:11 210:21
213:17,20 214:14
226:15 231:23
267:8 273:11
277:5 278:24
279:2

get-go
54:22

gets
94:5

getting
23:24 43:12 46:9

Gettman
48:21 66:18

Gittleman
47:17 48:13

give
9:23 79:17 80:7
84:22 125:13
181:9 183:5,7
195:25 202:12
207:6 215:7
219:12 220:1
266:25 268:4,6,8,
14 278:9

given
28:19 29:10,19,23
51:8 53:4 58:16

77:7 83:6 86:18
95:7 100:23 149:7
224:10 226:9,10
266:24 277:12

gives
30:3 89:22

giving
86:6

Glass
37:8,14 210:2,7,
16,18

go
9:21 14:19 15:19
17:23 30:23 33:6,
20 42:15 53:10
55:23 84:11 87:12
91:13 93:25 94:2
109:6 120:23
143:2 155:3 167:3,
15 169:14 173:3
178:8 185:11
195:1 197:10,20
219:13 220:2
230:3 232:9
233:12,14 240:13
255:19,23 274:3

GO7
33:6 63:1

goes
146:19 217:22
249:1 250:24

going
8:18,19 9:3 12:18
13:17 14:20 16:9
17:12,23 18:13
19:3 27:21 30:18
34:3,16 48:9 50:16
52:15,19 54:12
57:12 61:25 62:3
68:5 69:16 74:18
75:23,24 76:5,15,
22 84:16,19 87:14
91:6,7,19,22 92:13

93:8 94:6,7,14
99:16,17 101:8
107:18,22 108:19
111:5 113:10
114:21,22 115:23
132:15 133:20
134:6 149:25
155:9,13 159:19
161:14 162:1
166:25 167:19
178:6,8,9,10
182:3,4,14,23
186:12 187:18
188:2 195:1,4,11
196:11 197:10,15,
23 211:1 218:6
219:11 220:2,7
227:18 229:22,23
230:1,5,14,20,22
231:1,14,17,18
232:11,13 243:18,
24 245:17 258:10
259:24 261:13
264:9 267:8,22
270:8 274:4,12
276:5,7 277:7,10
279:9

goings
139:23 211:21,22

Goldstein
40:7,19

gone
8:17 60:13 139:12

good
7:17,20 28:11,14
30:19,23 47:7 55:5
133:9,10,15,16
209:6 231:23
237:1,6 243:21
258:23 259:1,9
266:20,22 273:16

gotten
34:13

government
67:15,18

governs
90:3

granted
90:8,12

granting
85:7 89:23 90:16

Great
195:8

greater
22:2 214:18,22
215:21

ground
9:21 150:20

grounds
177:25

group
33:3 71:20 110:25
151:11 185:13,16,
18 186:24 196:24
239:4 256:19

growing
131:3 216:14
247:22

guess
125:13 130:7
207:7 268:8
271:15 278:24

Gunster
129:24 130:1,2,5

guy
88:14

guys
94:17 196:23
197:11


**UNIVERSAL**
**COURT REPORTING**

**Office Phone:** 954-712-2600
**Email:** info@ucrinc.com
**Website:** ucrinc.com

777 PARTNERS LLC and SUTTONPARK CAPITAL LLC vs LEADENHALL CAPITAL
Shapiro, Mark on 03/05/2025

## H

**had**
10:17 12:1 16:19,
20 18:7,8 19:7
24:12 32:6 37:17
41:4 46:6 48:2,16,
19 49:15 50:1,6,15
58:14,21 65:25
67:22 71:5 77:16
80:23,25 90:2,6
91:3,12 92:14 94:8
98:2,5 99:10
100:11,19 108:15,
17 110:14 114:13,
15 116:8 118:6
125:18 129:5
131:3 137:18,20,
23 138:1,15 148:3
149:1,3 150:11
154:19 161:7
168:2 179:9
184:18 185:16
187:10,11 188:4
190:18 199:6
210:24 218:10
219:15 220:3
223:25 224:7
230:10 234:25
237:12,21 244:22
248:13,21 249:3
251:17 253:10
255:17 256:6
257:15 258:23
259:1,10 261:18
263:13 266:16
277:4

**hadn't**
132:16 203:18

**Hal**
154:2 181:16
195:6 196:9,17
197:7 219:19

**half**
21:2 22:13 56:16
60:11 270:19

**hand**
12:6

**handful**
36:4

**handing**
91:23 196:4

**handle**
24:1 30:19

**handles**
112:23

**handling**
91:23 92:10

**handy**
83:20 195:18

**happen**
95:1 160:6 201:11
230:24 263:20

**happened**
59:6,8 60:9,14,17
64:10 92:15,19
117:12 230:21
231:8,18 258:13
259:5 260:17
261:12,14,15
262:18 263:21
272:22

**happening**
45:1 230:12,16

**happens**
94:22,23 246:1

**harassing**
181:16,18,20,21,
23 182:3,9,11,18

**harassment**
183:1

**hard**
115:13 276:7

**Harold**
7:14

**has**
11:7 23:9,22,25
24:7,21 28:4,12,20
30:8,19,23 36:12
39:25 42:20 45:19,
20 46:13 55:20
56:23 57:20 59:22
63:22 64:16,24
67:4 98:13 115:16
125:17,23 126:6,7
151:1 158:18
160:25 161:4
170:3 173:5
174:21 175:3
180:16 186:6
193:12 194:20
200:8,11 201:11
204:21 205:7
211:11,25 212:22
230:10 231:3
233:5,6,18 236:19
247:4 248:8
254:13 255:11
265:9 268:24
269:6,17,24 273:6
274:1,11,15
276:11,19 277:23
279:24

**hasn't**
8:15,17

**Hastings**
41:5

**have**
8:14 10:17 11:19
15:5,14,24 18:8
20:23 21:7,10
23:6,9,13,19,20,21
24:1,3,5,6,23 25:1,
12,17 28:5,6,10
29:10 33:6 34:13,
25 35:2,16,20,24
36:13 37:19 39:17

42:15 43:4,11,13,
16 45:17,22 46:17,
20 47:5,7,9,12,16,
20,23,25 48:12
49:8,21 50:8 52:2,
19 53:1,22,24
55:13 56:16 58:3,4
60:5,15,18 61:14
62:8,16,18,19
63:20,22,23 64:8,
17,18 65:9,10
66:1,4,22,25 67:3,
22,24 68:13,18,23,
24 70:1,3 71:15,
16,22 72:2,24
73:16,17 74:7,23
75:25 76:4 77:14
79:8,10 80:16,20
82:5 83:13,20
85:21,24 86:13
88:6,9 89:10 90:4
91:5,7 92:1,3,17
94:6,16,18,19,20
95:14 97:5,9 98:8
103:1 105:18,20,
21 106:5,13,14,16
107:12 108:6
109:13 110:1,3,4,
13 111:19,21,22,
24 112:4,6 113:3
115:15 116:6
117:2 123:23
125:14,16 128:15
129:2,7,15,22,25
130:15,18 132:2,
14,17 133:15,19,
23 134:7,17
135:14,15,18
136:3,15,19,22
138:1,8 139:12
140:2,21,24 141:7,
18 142:11,18
143:6,10,19,20
144:5,11,17
146:15 147:4,8,12,
18 148:24 149:1,


UNIVERSAL
COURT REPORTING

Office Phone: 954-712-2600
Email: info@ucrinc.com
Website: ucrinc.com

777 PARTNERS LLC and SUTTONPARK CAPITAL LLC vs LEADENHALL CAPITAL
Shapiro, Mark on 03/05/2025

23 150:15,18
153:1,10,23
154:11,13,14,16,
21,24 155:9,12,14
156:23 157:16,18
158:21 160:17,20,
21 161:1 162:4,9
163:9 165:18
168:2 169:6,11,12,
21 170:12 171:4,8
172:2,4,11,12,22
174:17,18 176:5,8,
19,21,23 177:4,6
178:2,9,10,12,17,
20,21,25 179:13
182:24 183:23
184:18 187:23
189:7,16,19 190:2,
18,20 193:7,17
194:11,15,18
195:17,22 196:3,5,
22,23 197:12,13
198:25 199:5,10
200:9 202:18,21,
23 203:6,10,21,24
204:7,11,13 205:4,
16 207:22,23
208:10,16 209:3
211:7 213:20
216:11 217:6,25
218:9 219:14
220:13,21 221:1,
10 222:6 224:23
225:11,12,14,18
226:9 227:11
228:17 229:17,25
230:3 232:7,9,17
233:9,16,17,21
236:22 237:9
239:1,2,5,9 240:8,
15,21 241:1,15,21,
24 242:12,25
243:4,7 244:22
246:12 248:4,10,
14,18 249:14,21,
22 251:18,19,22

252:12 253:8,14,
18,19,24,25 255:5,
25 256:3,8,12,15,
20,22 257:1,14,18
260:9,12,14 262:9,
12,15,17 263:3,18,
20,25 264:3,8,13,
17,21 265:2,12,15
266:20,22,24
269:1,8,21 270:1
276:5,8,15 277:14,
16,21,24 279:4,8

**haven't**
8:16 24:16 25:3
27:14 49:24 60:8,
13 61:16 63:9
64:24,25 65:2
81:17 103:19
106:12 135:24
155:11 178:22
193:11,16 199:15
227:10 237:2,8
251:17 261:1,3,5
263:22 267:12
274:19 275:25
276:17

**having**
8:11 14:15 64:4
128:8 160:2 187:4
194:5 195:3 207:8
227:17 237:22
259:11,14 263:13
273:7,18

**he**
17:17 26:8,12,13,
18 28:12,15,20
30:3,19 41:6 42:11
48:24,25 61:6 63:6
65:25 71:10 77:9,
11,22,25 78:4,10,
18 84:22 85:7,13,
18,19 86:12,13,18,
20 88:16 89:22
90:10 92:8,15,22
96:11 97:2 98:2

100:4,6,10,11,15,
16,19 104:24
105:21,24,25
106:2,5 107:3,6
113:8 115:12
120:10 121:17,25
125:18,21 126:1,3
131:18 135:3,5,7,
10,25 136:3 148:3
149:1,3 150:13,19,
23 151:6 152:1
154:20 155:9,14,
15 156:7,8,11,13,
17,20,25 157:7,8
161:7,9 162:3,22,
23 163:2,3,4,7
164:7 177:11,13,
15,16 180:2 186:1,
9,10,14,15,18
187:6 190:3
191:17 192:10,11,
12,16,23 194:11
196:17 199:2,3,6
211:1,12,13,15,17
218:8,9,10,15,19,
20,25 219:19
225:17 230:18
236:1 237:18,20,
21 239:16,18
242:20 243:3
255:22 256:4,9,20
257:11 258:8,9
259:1 263:19
266:16,19

**he'd**
89:19 266:1

**he's**
28:11 30:25 48:6
63:2 73:20 76:5
84:4,8 86:5 90:15
125:17 135:2,4
156:22 175:23
178:5 180:4,6
187:18 210:19
211:11 218:6

230:18,19 265:21
266:2,3

**head**
198:21

**Health**
58:11

**hear**
28:13 38:13 41:3
68:11 109:16
221:5 251:20

**heard**
33:6 62:16,19
68:21,24 77:10
90:24 170:23
182:22 199:15
250:14 265:21

**hearing**
14:6,16 64:4
108:20 195:4
227:17

**help**
11:24 57:6 234:5
254:10

**helped**
43:10

**her**
48:20 70:19
102:19 104:24
106:12,14 112:14
190:8 200:10

**here**
7:15 11:17 32:22
39:2 53:10 56:3
65:2 84:15 85:22
88:22 89:13 90:12
106:4 107:17
121:17 154:22
155:6,21,24
165:20 166:19
168:22 170:2
172:9 174:17
179:3 190:1

**Office Phone:** 954-712-2600
**Email:** info@ucrinc.com
**Website:** ucrinc.com

777 PARTNERS LLC and SUTTONPARK CAPITAL LLC vs LEADENHALL CAPITAL
Shapiro, Mark on 03/05/2025

192:21 193:7
196:8 197:6
200:24 205:15
216:3 218:17
223:15 227:5
228:6 230:23
231:3 237:5 238:3
242:5 246:11
247:8 252:17
255:24 262:9
264:16 266:20
267:9,21 268:4
271:19 273:25
274:13

**hesitated**
166:12

**hey**
14:13 56:2 88:8

**hid**
256:20

**high**
36:22 48:19,25
202:11,12

**higher**
44:22 131:1 132:9

**highest**
171:22

**highly**
121:21

**hilt**
213:16

**him**
19:4 28:3,15,23
29:25 30:17 49:25
70:5 76:7 85:19
88:6 124:10
142:24 155:1,9,18
156:1,12,23
161:10 162:3,5,7
176:11 180:1
181:18,21,24
182:18,23 193:24

210:19 218:1,13
232:18,21 235:24
256:9 263:22,25

**himself**
177:17 237:18,20,
24

**hire**
68:20

**hired**
40:4 42:7 59:13
73:12 129:22
130:2 152:19
218:8 256:9

**hiring**
37:5 50:3 131:8
132:19

**his**
28:13,15,20 30:2
77:17,22 84:8
91:20 92:9 97:23
98:22 100:10
105:19 117:19
119:3 121:25
135:23,24 136:7
161:9 163:22
176:11 177:18
190:2 191:13,20
192:7 193:13,18,
20 199:7 209:15,
17,18 217:25
218:1,6,7,15
220:15 223:15
236:20 239:17
240:4,20 242:21
244:7 253:20
254:1,11,15
255:13 256:18
257:8,12 263:19
265:25 275:25

**historical**
28:5 77:16

**historically**
250:14

**history**
28:11 187:10,11,
13,16

**hit**
8:21,22

**hold**
17:15 34:4 139:5,
6,10,12 227:22
228:3

**Holdco**
34:4

**Holdings**
102:22 103:1

**holds**
137:7 139:3

**home**
38:14

**hop**
8:25 12:14

**hope**
153:1,4

**hopefully**
11:4 39:7 52:21,22
151:17

**hoping**
64:7

**horse**
48:2

**hose**
34:16

**host**
160:6

**hourly**
44:1 132:11

**hours**
19:24,25 44:6,9,
19,22 45:2

**houses**
94:23 95:8,11

**Howard**
17:8 35:25 60:25
61:6 66:11 79:22
80:8 82:3 84:14,18
87:3 88:4,7 89:8,
10,21 90:13,25
99:19 112:8
151:17,20 152:10
161:21 163:16
185:20 187:21
188:2 200:14
224:8 234:3 235:1
238:2 248:20
249:4 278:23

**hundred**
32:20

**hundreds**
25:18,20,23

**hurt**
270:8

---

**I**

**I'D**
27:22 35:20 86:22
104:10 130:15
134:7 147:11
181:2 232:9 233:9
249:22 256:8
263:18 264:8

**I'LL**
10:2 28:10 33:1
38:12 44:15 56:15,
17 80:8 83:10
86:12 141:3
156:12 178:16
183:12 279:21

**I'M**
10:6,8 11:17
12:10,11,17 13:17
14:7,15 15:10
17:5,12,13 18:13,
16 19:3 21:14,21

**UNIVERSAL**
**COURT REPORTING**

**Office Phone:** 954-712-2600
**Email:** info@ucrinc.com
**Website:** ucrinc.com

777 PARTNERS LLC and SUTTONPARK CAPITAL LLC vs LEADENHALL CAPITAL
Shapiro, Mark on 03/05/2025

22:6,12 31:8,9,11
32:15 38:9,11,13
44:4,8,9,18 47:19
51:25 60:18 61:12
62:12,14 64:4
69:16,22 70:4
73:22 74:18 76:8,
9,22 82:11 83:21
86:8 90:25 92:8
93:17,18,24 95:10
96:22 97:3,13,22
103:23 107:18,22
108:1,5,22 109:7
110:2,6 111:5
112:6 115:13
120:11 121:7
123:21 125:1
126:22 128:8,22
137:22,23 138:23
139:11 140:1,4
141:6 142:11
144:2 147:17,21
148:5,23 149:3,14
152:1,2 154:2,6,8,
10 155:9,13
159:19,20 162:14
163:1 165:20
166:23 167:5,7,8,
12 170:5,24
172:12,22 173:20,
23 174:22,24,25
175:11,12,20
176:1,11 177:4,5,6
178:6 179:2,7,21
180:3 181:8,18,19,
23 182:2,11,18,20
183:12 191:2,25
192:1,21 195:1,3,4
196:10 197:10
201:2,13 204:18
205:10,11,19
206:21 208:17
210:1 211:10,15,
16 212:8 213:2
216:14,15 217:3
218:4 221:5 226:7

227:17,18 232:11,
19,21 233:3,16,17
235:13,19 236:4
239:25 242:9,19
244:10 245:17
247:14,18 249:12
250:5 251:20
252:1,4 253:1,13
261:2,3,6 263:7
264:19 267:20,25
269:22,23 270:10,
11,24 271:1,3,5
272:18 274:12
275:10 276:5
277:4,7,10,12
278:16

**I'VE**
21:4 68:21,25
69:25 70:4 83:21
123:21 135:1
138:23 161:15
170:23 176:13,24
177:7 178:1,2,17,
18 204:3 225:9
250:14 265:21

**Ian**
8:1 17:3 18:5,7
35:1,23 37:8,11
40:6,8 42:10 43:16
62:7 66:11 71:22
107:12 109:1
110:1 112:5 130:7
140:7 151:15
152:8 168:11
185:21

**Ian's**
211:10

**ID**
225:4

**idea**
28:15 71:18,21
106:19,22,23,25
187:7 195:9
228:17 264:21

266:20,22

**identification**
51:6 83:4 86:25
118:24 140:15
143:15 198:2

**identified**
40:17 95:5 122:8
124:17 150:7
152:18 153:6
161:9 175:2
189:19,25 192:16
193:13 203:1
216:25 225:4
236:20 241:11
242:7 249:11

**identifies**
193:9 221:18

**identify**
23:6 41:23 55:2
87:24 96:18 98:24
101:20 102:3
105:13 106:6
113:23 119:5
120:4 121:14
129:1 130:10
145:16,24 146:4,5
149:16 151:13
192:16 205:21
221:21 261:8
262:6

**III**
7:14

**immediate**
214:13

**impacted**
269:17,20,21
271:7

**impacting**
133:22 134:1

**impacts**
127:22

**impaired**
269:6

**implicated**
153:9

**importance**
158:8,11

**important**
38:15 116:19
157:21 158:5,6,7
159:9,10,23 160:8
166:19 171:11,15,
17,18,19 172:1
200:17 217:14,18,
24 267:15

**importantly**
33:9

**impression**
125:10 197:14
266:4

**improper**
268:24

**improperly**
146:17

**in**
7:9 8:3,8 9:17 10:9
11:15,19 12:9
15:21 16:18 17:5,
16 18:19 20:13
21:16 22:17,24,25
24:10,11,13 25:7,
13 26:2,8,23,24
27:2 29:1 31:6,7
32:4,8,9,11,14,17,
20,24 33:3,25
34:2,3,7,8,15,22
35:13,21 36:8,22,
24 37:7,10 38:11,
17,18,19 39:14,25
40:7,11,21 41:1,4
42:3,23 43:7,11,13
45:8 46:2 47:2,6,
25 48:21 49:2,4,5,

UNIVERSAL
COURT REPORTING

Office Phone: 954-712-2600
Email: info@ucrinc.com
Website: ucrinc.com

777 PARTNERS LLC and SUTTONPARK CAPITAL LLC vs LEADENHALL CAPITAL
Shapiro, Mark on 03/05/2025

24 50:2,11,21
51:11 52:6,11,16,
24 53:20 55:3,19,
24 56:1,7,9,16,18
57:10 58:10,11
59:2,7,10,13,18,
22,24,25 60:1,10
61:23 62:5,7,15
63:10 65:1,2,4,8,
15,21,22 67:5,9
68:20,25 69:1,2,6,
11,15 70:9,25
71:10,18 72:5,16
73:5,9,15,23 74:8,
15,22 75:13 78:16
79:4,15,20 80:1,
11,12,19 83:10,11
84:1 85:3,13,16
86:11,18 87:4
88:3,12,16,17,22
89:12,15,19,21
91:20,21 92:1,11
94:3,9,13,17,18,
20,25 95:1,23
96:19,25 97:5,14
98:13,25 99:3,16,
17 100:8 101:10,
25 102:15,23
103:5,12,20,21,25
104:3,5,6,8,10,12,
20,23 105:4,14,18
106:20 107:1,5,6,
16 108:11,21
109:2,4,10,12,14,
18 110:3,8,16,17,
22,24 111:4,9,11,
14 112:10,22,25
113:8 114:4 115:3,
5,14 117:11,12,16,
21 118:17 120:4,
19,21 121:12
125:11,24 126:8,
10,12,18,24 128:6,
10,16 129:7,15,17,
23 130:11,19,21,
22,25 131:16

133:21,23 134:1,
19,21 135:1,8,23
136:2,15,16,19,22,
24,25 137:2,5,6,
14,16 138:11
139:10,13,21
140:25 141:8
142:6,9,23 145:15
146:5 147:17,24
149:2 150:5,14,23
151:2 153:9,10
154:4,19,25 155:1,
13,14,17 157:6,13
158:3,15,24 159:1,
7,8 160:7 161:9,
15,18 162:2 163:1,
5,24 164:4,8,23,25
165:3,8,9,11,18,
21,24 166:4,8
167:12,14 168:3,6,
16 169:8,20 170:8,
23 171:3,25
172:11,16,18,24
173:2,4,8,25
174:5,10 175:4,8,
18 176:7 177:1
178:12,13,23
179:6,19,20,23
180:11 182:19,23
184:1,5,14,21
185:10,13 186:3,8,
15 187:9,14,24
188:24 189:6,8,25
190:2,9,15 191:20
192:6,22 193:3,6,
13,19 195:2,18
196:24 197:2,7
199:8 200:10,14
201:3,4,11,22
203:1,19,24
204:22,23 205:6,
18 206:15,19
207:9 208:2,10,17,
19,20,24 209:4,10,
16,21 210:9,11
211:24 212:5,25

213:3 214:7,18
215:1 216:6,25
217:13,14,25
218:6,15,18 219:4,
8 220:23,24 221:2,
3 222:16 226:1,3,
17,24 227:3,6,13
228:5,11 229:2,4,
13,18,24 230:16,
21 231:8,15,16,20
232:3,13 233:19,
24 235:9,11
236:10,17,18,20
237:6,12,23 238:8,
20,24 239:1 240:6,
19 241:4,10,14,15,
20,23,24 242:14,
16,21 245:9,23
246:12,22 247:20
248:10,20,22
249:4,5,6,7,9
250:1,15,18,23
251:13 252:22
253:16 254:15,24,
25 257:8,19 258:8
259:8,9,13,15
261:7 262:16
263:19 265:22
266:12,19,20
267:22 268:25
269:10,17 270:5,
21 271:8,21 272:4,
13 274:13,17
275:14,17 276:20,
22 277:3,7,18

**in-depth**
18:6

**Inactive**
21:6

**inception**
272:25

**incident**
257:8

**incidents**
162:10

**include**
174:3,7 206:22

**included**
217:25 249:5

**including**
40:15 53:13 228:4
252:19 255:18

**incorrect**
242:9

**inculpating**
148:4

**incurred**
129:15 132:17

**incursion**
201:19,20 222:14
257:16,20,24
259:16 261:21,22

**incursions**
204:23 216:24
217:13 218:12,22
221:22 222:3
241:14 242:7
261:20,25 262:3

**indeed**
133:20,21

**indefinite**
228:3

**independent**
36:24 37:21,23
38:16,24 58:19,20,
25 59:23,25 78:20
105:7 132:18
176:5 177:2
237:17 238:21

**indicate**
146:24

**indicates**
135:13

**UNIVERSAL**
**COURT REPORTING**

**Office Phone:** 954-712-2600
**Email:** info@ucrinc.com
**Website:** ucrinc.com

**indicating**
117:22

**Indirectly**
67:21

**individual**
23:22 265:21

**individuals**
74:3 151:19 174:1
205:17

**induced**
142:17 143:5

**industries**
22:17,19 54:15,20

**industry**
22:16

**inference**
146:15,20 147:4

**inform**
127:13 169:7
276:13

**informally**
66:7

**information**
50:19 57:13 61:12
74:22 80:10 88:9
90:2 93:22 96:19
101:1,8,20 102:6
103:2,13 104:5
105:13 106:3,16
108:16 113:16,18,
19,24,25 114:3,4,9
117:21 121:22
123:23 125:6,11,
14,16,17 126:4
127:3,8 128:3
141:9,19 142:12,
21 143:7 145:16,
18,24 146:5,12,16,
25 147:5 148:13,
21 149:1,2,3
162:17,18 179:9

187:25 188:22
190:14,25 194:21
203:20 208:20
209:6 216:20
217:22,24 218:10,
15,19,21 221:2
225:10,13 226:1,5,
6,18 227:6 228:9
237:5 238:20
240:14 241:1,2,10,
13,20 242:10,11
246:16 249:25
251:15 253:15,18,
24 255:16,19
256:15 258:1
260:8 261:9,11
262:16,18,20
264:6 265:2,10
266:2 269:1
270:18 272:17
273:8,11 275:13,
16 276:15,18,20
277:2,6

**informed**
146:13 266:5

**ING**
62:11

**initial**
42:22 119:2,5
120:5,9 203:2
204:18 219:19
221:12,16 259:4

**initially**
131:5

**initiated**
118:9

**injunction**
208:25

**input**
30:2 72:4 108:17
109:2 110:14
147:14

**inquire**
229:18

**inquiry**
187:20

**inside**
74:11 100:19

**insight**
251:15

**insolvent**
36:14

**inspection**
88:18

**installed**
37:9

**instance**
48:1 56:23 65:4
137:7 165:3

**instances**
24:13

**instant**
53:13 216:3

**instructed**
138:25 257:11

**instructing**
177:9,20 178:5
232:18

**insurance**
48:15,16,17,21,25
49:3,6 255:1,8,9,
10

**integrated**
102:25

**integrity**
199:18 200:25
247:16 248:19

**intended**
207:16

**interest**
47:25 94:17,18,20

111:6 151:2
153:10

**interested**
50:2

**interfere**
9:23

**interference**
252:24

**interim**
21:21 22:11
164:20

**interject**
183:18

**internal**
66:13 71:23
121:14

**internally**
22:3

**internet**
204:4

**interrogatories**
137:15 144:14,16,
17,24 276:24

**interrogatory**
138:12 145:6,8,13,
22 146:4 147:25
149:7

**interrupt**
220:4

**interrupted**
233:3

**interview**
42:11 56:14,21

**interviewing**
41:19

**interviews**
42:6,8

**intimately**
210:11



**Office Phone:** 954-712-2600
**Email:** info@ucrinc.com
**Website:** ucrinc.com

777 PARTNERS LLC and SUTTONPARK CAPITAL LLC vs LEADENHALL CAPITAL
Shapiro, Mark on 03/05/2025

**into**
10:13 18:18 22:10,
19 29:18 40:3 44:6
54:3 55:11 63:25
67:2,9,13 77:7
84:8 102:25
108:17 110:14
113:2,5 139:6
146:19 155:3,13
197:12 203:22
217:22 230:24
231:16 232:2,7
234:4 249:1
251:15 252:23,24
253:2,12

**introduce**
196:16 197:15

**introduced**
83:19 219:21

**intrusion**
20:14 91:3,8 115:7
120:10 160:7
192:15 201:6
237:13 240:14
253:11 256:25
257:5 258:6,20,25
259:2 262:22,24
263:5 264:16

**intrusions**
90:20 91:17 92:6,
12,20 100:3,4,7,9
106:7 110:21
113:3 115:17
116:13 128:11,15
131:13 141:10,23
142:18 143:6
148:7,14,22 150:8
160:13,15 161:9
190:9 191:11
192:24 193:10,14
199:7 200:5 201:4,
9 202:15 203:1
221:19 225:21
236:10,19 241:4,

23 259:3 260:7,24
262:6 274:19

**investigate**
60:15 62:6 73:8,23
91:17 94:7 114:17
131:14 134:16
203:23 230:3,8
231:8 263:13

**investigated**
60:5 61:16 63:9,22
64:17 73:7,24,25
230:5 233:17
249:16 264:17

**investigating**
22:25 67:18
247:25

**investigation**
58:25 60:11 61:11,
25 62:4 63:13,15,
24,25 64:13 65:7,
8,22,23 66:2 67:2,
8 73:13 74:17
75:5,14,15 77:7
91:24 92:11,13
98:16 112:10,25
121:14 138:3,7
146:13,14 148:1
149:6 152:20
161:15,16,19,24
162:3,7 199:7
200:4 201:3
205:20,24 216:11
222:17 223:11
227:10 231:15
232:2,7,17 233:6,
19,24 234:4,11
249:1,7 253:9
258:13 261:8,13,
17 262:1,19
263:20 264:4,7

**investigations**
61:20,21,23 64:2
67:12 163:14,17
201:12 230:13,24

231:2 251:25
252:7,14 253:9

**investigative**
201:16 234:13
263:15

**investigatively**
60:21,22

**investors**
269:19

**invoice**
45:9

**invoices**
45:12

**invoked**
177:16

**involve**
54:4 252:8

**involved**
42:3,25 43:7,13
47:2 48:21 49:2
65:22,25 79:15,20
80:1 83:10 91:20
102:22 107:1,5,6
108:21 111:4,11,
14,15 112:20
115:5 131:16
136:15,19,22
137:5,6,14,16
152:12 161:15,17,
18 162:2 185:13
186:15 205:18
210:11 225:22
227:13 252:22
257:19 272:13,15

**involvement**
127:15 137:17
210:14,25 237:12
241:14,23 256:17
273:12,16

**involves**
62:24 247:23

**involving**
53:12 98:13 233:8
251:25 265:10

**IP**
261:19

**isn't**
48:10 96:9 168:6
201:19 213:18
223:11,19,21

**issue**
80:6,16 104:13
118:13 128:8
157:17,19 175:12
182:25 185:12
210:8,12 211:21
240:22 241:4
244:19 249:20,21
251:4 272:9

**issued**
70:9 73:3 117:23
122:2 139:8

**issues**
28:2 34:10,11,12
54:11 108:20
247:15 251:15
254:10 260:14

**It'd**
249:21

**it'll**
56:9

**it's**
8:23 11:4 13:1
18:14 22:6,7 24:17
26:16 28:14 31:7
32:15,19,20 36:6
38:13 39:5 41:1
42:14 44:4 46:5,
20,23 47:1,7 48:7,
16,17 54:6,13,14
55:18 56:7,13,15
59:17 61:11,18
63:7 65:12,14 80:8

**Office Phone:** 954-712-2600
**Email:** info@ucrinc.com
**Website:** ucrinc.com

777 PARTNERS LLC and SUTTONPARK CAPITAL LLC vs LEADENHALL CAPITAL
Shapiro, Mark on 03/05/2025

81:11 87:4,25
94:3,12 95:11,16
96:17 98:16,23
99:15,16 100:8
101:2,5 102:14,16,
17 104:13 108:16
109:12 113:14
114:8 115:5,14
119:18 120:19
121:1 123:16
128:6 129:12,20
130:17 133:16,18
134:4 135:23
140:7 144:12
155:22 157:19
158:6,7 160:3,8
164:24 166:10
168:5,6,17 169:11,
23 170:12,13
171:14,15,24
172:4 173:7 174:9
178:11 180:19
181:14 195:25
196:10,13 198:4
200:19 202:14
207:6,16,19,22
211:12 212:12
213:8,19 214:1,2,3
215:8,10,11 218:7
219:4,19,22,24
224:18,19 226:7,
19 230:1,2,4,12,16
234:10 236:12
244:13 249:20
250:16 255:8,10
262:21,25 263:10
264:9,14 266:20,
25 267:17 268:13,
19,20 269:4,5,11,
20,21,22 270:6,8,
10 271:6,10,18,19
272:1,5,6,7 276:6,
7

**item**
49:5

**items**
73:6 147:24

**its**
42:14 44:12 79:17
150:14 166:4
188:5 224:6

**itself**
101:12 108:12
147:3 248:23
269:6 271:24

---

**J**

---

**January**
119:7 121:3
219:20 220:15
222:8 257:9

**JC**
73:18 77:16 80:5
85:11 88:4 187:1
199:2

**JC's**
85:23

**Jen**
93:7,8 94:20
102:21 104:18

**Jill**
47:17 48:12,15
66:18

**Jim**
17:8,9 35:25 60:25
61:6 65:24 66:11
67:3 79:22 80:8,15
82:3 87:3 88:4,7
89:7,8,18 90:25
91:18 99:19 112:8
151:17 152:10
161:21 163:16
185:20 187:21
188:2 200:14
224:8 234:3 235:1
238:1 248:20

249:3 265:17
267:1,6 278:23

**Jim's**
36:1 67:3

**job**
171:12,18,19
254:11

**John**
19:17 72:2 88:13

**joining**
8:2

**joint**
48:3

**Jon**
66:13 73:17 74:14
77:15 80:3 110:2
112:5 151:16
161:22 185:21,24
186:25

**Josh**
26:1,14 27:6 28:4,
10,17 30:25 41:6
80:4 151:16
185:19 186:1,19
187:1 209:22
251:25 252:8,11,
17

**juandicide**
56:1

**judge**
182:22

**judgment**
55:25 169:12,18
171:8 177:2 209:4
217:19 220:24
224:5 259:9

**July**
87:3 88:22 89:1

**June**
29:1 68:17,18
83:18 88:19

122:16

**just**
8:1,13 9:22 10:1
13:5,17 14:8 16:5,
7 17:5,12,15 18:13
26:6 28:10 32:6
33:1 34:18 36:21
37:16,18 38:8,13
41:10 44:18 45:7
51:1 54:21 55:10
56:2 57:10 62:10
68:25 73:22 74:3,
18 75:16 79:13
84:8 87:21 94:24
95:4 96:6,15 106:8
107:22 109:7,14,
16 112:4 113:23
116:8,25 119:5,11
120:9 124:20
125:1 129:18
135:1,15 137:2
138:16 144:20
145:5,9 147:17
149:2,22 151:8
152:18 155:1
157:13 159:5,11,
24 160:3 161:17
162:1,6,21 163:4,8
164:15 167:5,16
170:13 171:4
173:17 176:25
177:5,13,19
180:10 181:4,21,
22,25 183:18
185:17 187:17
188:2,21 189:5
191:7 192:2
194:15 197:3,5
202:23 205:11
207:10 210:23
211:16 213:17
215:11,12 216:21
217:7 219:4,13
220:3 223:5,8
225:8 228:18

**Office Phone:** 954-712-2600
**Email:** info@ucrinc.com
**Website:** ucrinc.com

777 PARTNERS LLC and SUTTONPARK CAPITAL LLC vs LEADENHALL CAPITAL
Shapiro, Mark on 03/05/2025

229:14 230:1
232:11 233:17
237:4 243:16
244:19 245:17
250:8 262:15
266:1 271:22
272:2 274:13,16
275:10 277:10,24

**Justice**
67:21

**K**

**keep**
34:18 38:8,12 51:2
133:12 182:24
216:12,16 225:18
246:9 257:12

**keeps**
246:5

**Keith**
92:16

**Kenneth**
111:19 154:16,18

**Kenny**
47:17 48:4,5

**kept**
91:21 188:15

**Kevin**
251:8

**key**
55:2

**kind**
60:11 80:20
100:13 120:24
198:15 201:8
210:24 226:9
254:4 255:9 259:4
267:18

**King**
7:21 8:5 47:17,21,

24 48:23 111:20
154:16,18,21,24
155:6

**knew**
14:4,7 27:22
100:15,25 116:23
118:17 179:8
185:10 210:25
239:21 258:5
259:5 261:12,21
262:14

**know**
10:24 17:5 23:7
24:2 25:3 26:13
27:21 28:22 29:25
30:6 32:6 34:16
36:6 39:15 40:9,14
41:10 42:9,10 44:3
46:19 47:8,9 48:1
50:2,10,23 52:1,14
53:8 58:2,3 59:8,
14 61:19,20 64:22
65:7,11,24 66:3,8,
17,20 67:8,11
69:18,21,24 70:6,
8,16,18 71:8 72:8,
16,19,23,25 75:18
77:5 78:15,19,23,
25 79:5,13,14
80:22,24 81:16,20,
22 82:19 84:19,20,
24 85:1,10 86:17
90:24 91:5 93:17,
18,19 94:8,25
95:11,15 97:8,13,
14,20,21 99:7,10
100:6,9 102:9,16,
19 103:19,20
104:11,22 105:1,6
106:23,25 107:14
108:7 109:25
110:12 113:9,25
114:3 118:4,11,14
120:17,21 123:22
124:2,3,8,17,21,24

125:21 127:16
128:7,17 130:9
131:7,8 132:20,22
133:1,3,4,6 134:3,
4,25 135:5,8
136:3,4,13 137:12
138:5,9 139:2,7
141:5 148:3,25
153:18 155:15
157:6 158:21
160:2,17 163:6
164:4,13 167:1,9,
17 168:17 169:21
170:6,14,18
171:14 172:18
179:3,7,11,12,14
184:16 186:9
187:10,12 189:3,5,
6 190:11 191:4,7
192:20,23 193:8,
12 194:23,24,25
198:12 199:15
201:7,15,17
202:10,17,23
203:5 204:5,12,25
205:1,6,10,11,14
206:1,3,4,6,7,11,
14 209:8 211:11
212:19 213:13
214:1,2 215:10,11,
12 216:8,9,10,14,
21 217:5,6,8,18
219:15 220:3
227:5 228:13,15
229:13,15,23,25
230:2,12 231:2
232:14 233:13
234:10,24,25
235:3 236:25
237:4,8,16 238:3,
10 239:19,24
240:1,2,11 242:20,
22 243:7 244:19,
25 245:3,8,19
246:5,8,11,14,16,
21,25 247:4,6

248:6 249:6,12,22
251:5 252:15
253:16,17 254:9,
13,20,23 255:11,
15 256:9 257:7,10,
11,13,22 258:11
259:2,4,6,23
260:2,12,21 262:1,
7,19 263:21,22
264:8 265:19
267:1,2,7,9 268:12
271:8 272:7
273:13 274:1,11
278:8,20 279:18,
21

**knowledge**
28:5 37:17 67:19
77:16 100:19
104:21 112:2
115:9 118:7 166:2
204:21 208:4
210:15 211:25

**knowledgeable**
163:13 266:23

**knows**
160:7

**Kosinski**
7:16 69:24 70:2,18
84:7 90:16 94:16
154:4,12 173:18
187:4,11 190:2
193:10 224:1
233:23 234:7
236:9,17 237:12
240:19 241:9
253:10 256:16
257:15 265:11,14,
16,19,23 266:17
274:18

**Kosinski's**
208:23 234:2,14,
17 236:22,25
237:6 238:25
241:14 242:13

**UNIVERSAL**
**COURT REPORTING**

Office Phone: 954-712-2600
Email: info@ucrinc.com
Website: ucrinc.com

777 PARTNERS LLC and SUTTONPARK CAPITAL LLC vs LEADENHALL CAPITAL
Shapiro, Mark on 03/05/2025

275:20

**L**

**lack**
178:14,24 183:6
207:9 222:12
273:14

**lacked**
179:8,16

**lacks**
181:10

**language**
167:5,6

**laptop**
101:25 102:4,9,19
104:24 106:17
196:1 228:10

**laptops**
58:12

**large**
172:5 268:20

**largely**
169:24

**largest**
213:23,24

**last**
10:17 14:8,9 16:24
32:7 33:7 36:16
42:23 43:12 47:18
51:14 101:19
120:24 129:19
130:23 132:4
137:4 155:19,23
178:6 185:24
201:19 210:19
244:25 253:2
262:22,24 263:5,7
264:15 277:7

**late**
68:18 240:6

244:13

**lately**
25:3

**later**
55:23 116:21
214:5 257:9 260:1

**latter**
211:22

**Lauren**
70:6,18 190:6
191:16 192:7,10,
13

**law**
40:11,17,18 41:16,
17,22 44:1 129:22
170:5 204:25
252:23

**lawsuit**
71:19 72:5,16
111:19,22 117:6
118:9 129:10
130:11 133:8
153:1 173:4 186:8
235:25 236:9
254:25 260:9,25
270:21 276:21,22

**lawsuits**
62:9 98:13 168:21
170:4,9,15

**lawyer**
111:3 180:6

**lawyers**
184:18

**layman's**
202:11,13

**le**
234:1

**lead**
110:16

**Leadenhall**

7:10,22 8:6 10:2,3,
9 20:14 25:6 32:13
35:11 40:23 41:11
49:21 50:11,14
53:5 61:24,25
62:10 64:1,6,12
68:13,19 69:1,7,12
70:10 71:6,18
72:5,16 79:3
80:10,25 81:8
82:2,23 89:4 92:7,
9,21,23,25 93:24
94:5,13 95:17
96:7,16,21 97:6,10
98:10,14 99:4,14
101:7 102:11,18
103:2,5,25 104:4
105:14,22 106:6,
20 107:9,16
109:11 113:16,19
114:14 115:4,6,16
116:12,20 118:4
126:4 127:4,8
128:11,15 129:3
136:23 141:8,19
142:10,12,17
143:4 145:16,17,
24 146:5,15,24
148:4,8,13,21,24
150:7,14 151:5,7,
9,12,14 153:10,22
154:25 158:13,14
169:2 171:25
172:6 173:9
180:15 187:9,25
188:4,14,22
189:12 192:9
193:14 209:12
214:19,23 224:5,
12 226:16 227:3
228:11 229:9
231:16 233:5,8
234:9,21 241:19
242:3,6 249:7
253:10 256:13
257:19 259:21

260:5,23 262:11
263:4 266:3,12
267:2,4,23 268:9,
11,24 272:21
273:7,10,18
274:18 279:1

**Leadenhall's**
81:11 82:12,16
96:20 99:16
114:10 127:14
140:17 144:24
151:21 172:25
173:16,25 188:25
226:2,24 232:8
241:22 267:11
268:7 272:16
278:5

**learn**
34:19 66:6 70:23
75:11 90:19,23
126:2 156:2 257:4
261:25

**learned**
66:4 70:24 73:4
110:21 117:4,9
126:3 145:18
158:1 176:16,18
276:20

**least**
64:24 95:16
262:21 273:5

**leave**
201:5

**leaving**
201:18 263:2

**led**
113:12 114:10
116:11

**left**
77:2 85:4,8,14,22
136:8 243:2 256:9
278:7,18

**UNIVERSAL**
**COURT REPORTING**

Office Phone: 954-712-2600
Email: info@ucrinc.com
Website: ucrinc.com

legacy
20:4 223:25 266:4,
7,8

legal
21:10 47:8 89:24
108:18 129:14
130:14,15 139:11,
13 177:4 180:2
204:20 205:6
207:11 212:11,13,
14,17,22 235:24
236:4,18 253:16

legally
187:9 236:4

legitimate
174:15 176:2

Leigh
7:20

lender
35:12 46:13,14,15,
23 49:7 170:16

lenders
24:2 46:21 54:12
55:10 90:4 165:2
170:19

lending
32:10 90:4

Leonard
7:17,18

less
30:8 129:19
211:11,12 215:10
268:13

lesser
16:19 161:21

let's
16:24 51:1 56:3
75:19,21,22 93:25
94:2 95:3 104:19
118:21 120:23
143:13 149:21

173:20 197:20,21
201:5 209:19
243:12 258:12
274:3

letter
42:16 43:11 81:17

letting
79:24 80:19
186:11

level
34:4 36:22 202:11,
12

levels
14:14 23:25 24:2,
4,8

leveraged
213:16

levered
33:13

liabilities
33:10 213:2,6,23,
24 215:20 270:4

liability
235:10

Licamora
35:25 61:1,7 66:12
161:22 199:21
200:7 234:3
248:21 251:8
278:24

Licamora's
199:22

lien
31:10

liens
31:8

life
23:3 69:13 113:2
231:3 255:10

light
203:20

likely
57:12,16 102:15
251:8

limit
160:3 193:7

limited
96:6 188:21
224:11

line
15:2,16 49:5 83:18

lines
22:24

link
92:6,20 128:15
148:7

linked
93:13 99:14
128:10,12

linking
193:9 274:17

links
148:24 193:14
242:6

liquidate
29:19

liquidations
214:13

list
52:3,25 84:15,18
123:3,16 275:21
276:11

listed
74:21 109:14
129:7 142:5
149:10 163:5
164:23 166:17
179:19 225:14
249:4

listen
169:12

listing
122:8

lists
51:18 146:7,19
147:3

litigation
10:8 20:13 25:13
31:7,16 38:22
39:3,6,7 41:1
52:23 56:17 57:21
93:14,16,20,23
101:6 114:21
115:5 125:24
128:13 129:16,17
132:16 133:13,20
137:6 138:22
139:3,4,6,9,12,15,
19 140:2,6,9,10
151:2 153:2,11
154:4,22,25 155:6,
14,20,24 156:16
157:21 158:4
159:2,7 165:4,19,
20,24 166:20
167:7,11 168:4,10,
12,13,14,17,18
169:2,8,20 170:2
171:1,5,21,25
172:9,11,17,18,24
175:1,3,9 177:3
185:11 206:16,19,
21,22 208:6,16
209:5 211:14,19,
24 212:4,7 213:16
214:15,17,19,22,
25 215:1,20 216:3,
6 217:21 220:24
221:13 226:3,18
227:3,8,14,21
228:6,11 229:4,22
230:2,4,14 231:16,
25 232:13 233:8,
20,25 236:17


**UNIVERSAL**
**COURT REPORTING**

**Office Phone:** 954-712-2600
**Email:** info@ucrinc.com
**Website:** ucrinc.com

241:5,15,25
244:16 246:22
247:2 266:13
267:3 268:25
269:6,8 270:3
275:18

**litigations**
35:15 169:19

**litigator**
270:10

**little**
14:15 23:25 37:7,
13 50:20 56:1
59:19 61:11
164:15 173:8
193:6 194:7 205:9
239:25 244:13
267:15

**live**
106:24

**living**
56:19

**LLC**
7:9,16 154:3

**LLP**
7:10 8:6

**loan**
267:4

**loans**
65:19 96:1,6 98:9

**Local**
129:25

**located**
162:23,25

**location**
190:10

**Lockwood**
59:3

**log**
195:2

**Logee**
102:21 105:18
106:10 142:4

**Logee's**
93:7,8 94:21
101:25 102:4,9
104:18,24 106:17

**logically**
273:5

**login**
190:23 191:21
192:13

**logins**
189:23

**long**
19:23 228:5
239:19 245:3
246:5,8 270:16
271:7,14 272:12,
15 273:13 274:12

**long-time**
53:4

**longer**
230:19 243:3

**look**
20:12 27:21 35:20
37:1 38:17 39:1
42:16 52:25 57:22
60:9 63:19 113:2,5
130:15 153:17
179:4,15 180:21
181:2,7 183:11
196:1,17 197:12
209:7,9,18,19
219:12,14,15
220:2,4,5 222:6
229:21,25 231:20
232:9 233:10
251:3 255:21
266:2 270:22,24
276:4

**looked**
25:3 36:16 64:22,
24 93:4 163:7
208:14 209:8,15
241:11 264:23
267:1

**looking**
31:18 33:19 37:3
38:25 53:7 93:3
103:2 106:2
128:22 157:11
166:22,23 167:5,6
168:5 179:8
186:12 187:7
193:2 216:12,17
218:24 219:7
225:8,18 266:1
276:6

**loop**
91:21

**losing**
46:5

**loss**
267:23 268:3
270:19

**losses**
34:1,2

**lost**
270:5

**lot**
22:22 24:4 25:13
34:16,17 52:15
54:17 56:13,15,25
95:1 106:24
112:23 133:24
161:14 168:16,18,
19 170:13 172:8
206:18,19 214:9,
10 227:14 229:22,
23 231:14 269:24
270:1 271:8 276:8

**lottery**

23:1,3,6

**love**
68:2

**lunch**
115:25 116:9

---

**M**

**M&t**
84:22 85:1

**made**
14:5 26:8 40:14
52:11 58:24 60:8
64:24 73:8,15,23
75:13 93:23 96:24
100:3,4 107:13,15
108:10 184:13,16
189:11 205:1,2,4
208:2 222:19
230:9 232:8 233:5,
19 236:11 245:23
246:22 247:1
258:2,7,12 272:20

**magnitude**
268:17

**mail**
229:14

**mailbox**
98:20 99:3,14

**mails**
66:16

**maintain**
26:9 123:17
198:14 245:8

**maintained**
26:15

**major**
263:14

**make**
10:14 28:8 35:1


**UNIVERSAL**
**COURT REPORTING**

**Office Phone:** 954-712-2600
**Email:** info@ucrinc.com
**Website:** ucrinc.com

777 PARTNERS LLC and SUTTONPARK CAPITAL LLC vs LEADENHALL CAPITAL
Shapiro, Mark on 03/05/2025

38:25 46:7 48:15
55:24 58:19 72:7,
15 97:2 100:7
108:10,11,15,19
110:11 165:23
167:7,13 169:14
185:17 186:23
187:20 230:11,16
231:7 244:17
274:16

**maker**
217:19

**makers**
35:23

**makes**
37:12 47:3 169:14

**making**
27:25 29:22 34:22,
23 35:21 37:4 56:5
108:15 110:14
118:14 127:23,25
159:12,23 160:1,3,
4 190:15 207:14
231:22

**MALT**
62:19 63:3

**manage**
39:7 46:19 52:14
61:19 95:25
168:12 209:5
267:3

**managed**
53:2 55:13 63:5
227:13

**management**
22:10 55:15,21
56:21 58:6 59:11,
12,15,18,19,21,23,
24 62:16,17
198:14 211:5

**manager**
29:5,6 37:11,19
59:25 112:17,18
175:1 203:17
210:7,16 217:18
230:18 270:2

**managers**
35:1 37:9,12 131:2
210:3

**managing**
26:2 98:1 146:11
150:10 164:25
166:20 168:10
169:8 170:10
171:22 172:11
175:3 220:24
227:14 270:3

**mandates**
267:3

**manually**
197:6

**many**
9:15,16,19,20
25:16 36:6 38:18
44:6,11 53:23,25
55:17 58:24 67:4
70:8 94:25 95:9,14
143:20 149:13
151:7 170:9
202:17,24 206:25
215:3 222:23

**March**
7:3,6 210:3

**mark**
7:2,9 8:10 9:12
51:1 83:1 86:22
87:3 118:21
140:12 143:13
151:15 165:13
196:7 197:5

**marked**
51:5 83:3,7 86:24

118:23 140:14
143:14 196:10,12,
13,14 198:1 208:1
220:16

**market**
50:4

**marketed**
50:5

**Mastercard**
32:12

**material**
218:15 235:4

**materials**
222:2 276:10,11

**Matt**
31:17

**matter**
7:9 11:16,19
15:11,13 16:18,19,
21 25:13 47:6
51:12 129:23
132:12 155:20
165:9,10,11
172:20 173:10,22,
23,24,25 178:14
193:19 210:23
231:3 232:5
242:14 247:20

**matters**
168:19 211:14
232:3

**matured**
211:11

**Max**
119:20 134:25
135:15 136:7,10
201:6

**Max's**
135:16

**maximizing**
231:24

**may**
13:25 24:11 26:3
33:6 34:15 42:19
43:2 50:8 63:23
64:17,18 68:18
70:3 92:17 114:5
122:22 135:14
142:1,18 143:6,10
146:15 147:4
149:21,23 150:17
155:9 162:15
163:16 166:22
170:17 179:6
188:19 193:6
195:2 197:12
209:24 210:5
214:7 223:14
226:6 230:1,25
232:3 233:21
239:1 252:13
261:9 266:24
272:22 273:8
277:9

**maybe**
19:24 45:2 48:24
103:24 112:8
123:22 129:21
153:17 168:17
172:5 197:11
205:9 206:25
223:14 225:10
253:16

**Mazur**
74:7 91:14,16,23
92:6,10,20 110:10
112:7 117:11,14
119:2,19 121:12
125:16 128:5
131:7,16 146:14
148:1,3,25 149:6,
17 152:19 155:24
156:3,25 157:9
158:2,18 160:22,
25 161:4,7 162:4,
18 163:12,20

**UNIVERSAL**
**COURT REPORTING**

**Office Phone:** 954-712-2600
**Email:** info@ucrinc.com
**Website:** ucrinc.com

777 PARTNERS LLC and SUTTONPARK CAPITAL LLC vs LEADENHALL CAPITAL
Shapiro, Mark on 03/05/2025

190:14 191:10
192:16 193:12,18
194:17,18,22
200:3 201:10
205:23 216:23
217:25 218:3,5,8
222:5,7 225:12
236:19 241:2
242:7,17 257:7
275:13

**Mazur's**
92:1 117:16
118:18,21 119:2
120:5 126:18,24
127:1 148:7,12,20
149:5,13 160:20
190:19,22 192:6
193:2,8 203:2
209:14 216:25
217:13 218:18
219:12 220:14
221:12,15 241:10,
20 256:21

**MCAG**
32:9,11

**Mccarthy**
19:17 72:3

**Mcclintock**
40:7,19

**me**
17:7 19:8 23:8
27:1 37:19 43:20
56:15 61:5,12 62:7
73:6 81:2 82:4
83:16 87:5,10
91:18 121:10
122:5 124:24
125:13,18 126:3,
20 129:1 140:7
141:5 143:19
148:23 151:25
153:19 157:4
158:7 161:17
162:3 163:17

167:1 178:20,22
179:16 180:10
181:6,9 182:2
183:5,7,25 192:22
195:19,21 197:1
199:3,4 200:20
202:12,22 203:8
204:8 212:20
213:4 219:15
220:1,3 223:1,5
224:8,17 226:8,11,
22 229:1 232:1
233:1,11,14 234:1
244:19 245:17
248:24 250:11
261:18 263:9,10
268:8 270:1 271:5,
10 272:3 273:6
275:6,12

**mean**
11:1 14:4 17:17
20:20 22:8 23:5,
11,16 33:23 50:20
57:10 59:13 64:13
73:10 75:16 76:1
90:15 91:18 94:17,
24 97:20 109:13,
15 113:7 120:19
133:19 136:25
137:20,22 141:17
155:8,10 160:1,11
168:15 169:17,24
172:14,15,19
173:2 180:17
184:9 189:22
191:3 198:15
209:6 211:19
213:11 233:11,14
242:9 245:19
248:24 249:12
260:15 262:5
267:17 268:9,16
269:4,7 270:1

**meaning**
98:22 122:22

125:3

**means**
84:24 172:19
213:6

**meant**
152:9 224:21

**measure**
102:16 130:21

**mediation**
279:1

**medical**
23:3 31:8,10 213:3

**meet**
20:3 71:14 154:18

**meeting**
17:16 204:16

**meetings**
19:25

**member**
36:1

**members**
223:24

**memorialized**
66:2

**Mendoza**
73:18 77:16,21
80:5 85:4,11,16,22
88:5 187:1 199:2

**mention**
8:1 77:21

**mentioned**
25:6 29:9 42:17
49:13 62:25 74:3
85:10 88:6 92:8,22
97:23 105:17
109:17 120:6
147:24 160:13
186:10 200:7
275:6

**merit**
174:19 176:8
177:4 178:14,24
179:16 181:11
183:6

**merits**
175:7,18

**mess**
38:22

**met**
19:11 69:25
154:11,14,16

**method**
197:17

**mic**
194:5

**microphone**
14:14

**mics**
14:18

**mid**
210:9,10 259:25

**middle**
84:14 88:3

**might**
43:4 68:18 150:15
155:12 193:2
196:7 211:8 226:1,
2 229:17 241:21
243:6 245:10
253:19,25 267:15
276:13

**Mike**
17:6

**million**
33:8,10 46:18
48:17 49:6 173:1,
12,14 174:2,6,10,
15 215:1,12,15,17,
20,24,25 235:6
268:12,21 270:5



**Office Phone:** 954-712-2600
**Email:** info@ucrinc.com
**Website:** ucrinc.com

278:14,17

**mind**
76:20 195:6

**mine**
8:19 28:14

**minimize**
46:21

**minimum**
146:10

**minute**
179:6

**minutes**
243:16

**misrepresent**
151:18 157:4

**misrepresentations**
270:6

**missed**
49:13 253:1

**misspoke**
72:24

**mistrust**
38:23 54:11

**misunderstanding**
123:21

**mix**
157:3 266:19

**mixed**
31:7 46:5 148:16

**MLH**
31:5,6

**Mm-hmm**
32:2 33:2,14 34:6,
21 54:9 57:18
89:17 96:2 104:17
115:8 256:11

**modifications**
223:12,15 246:25

**modified**
122:16 222:20
223:21,22 225:19

**Mollie**
66:13 73:17 74:13,
14 77:15 80:4
110:2 112:6,14
151:16 161:23
185:19 186:25

**moment**
36:14 201:5

**Monday**
19:22

**monetary**
130:22

**monetizations**
214:13

**monetize**
31:3 33:15 165:6

**monetized**
36:13

**monetizing**
30:1

**money**
27:16,17 46:9,24,
25 133:24 214:10
230:13

**monies**
172:3

**monitor**
132:14

**monitoring**
171:4 198:22
202:14

**month**
44:9,19,20 45:8,11
129:21

**months**
52:8 155:22 194:1
262:21 263:10,13
264:15 271:3
272:10

**more**
30:7,25 33:9 34:17
36:17 37:17,18
44:8,10 45:2
50:18,19 56:6
61:22 91:18 95:16
102:15 116:23
117:6 118:11,16
129:20 136:17
149:1 156:7 163:6,
13,16 171:4
173:13 174:2
194:11 210:24
211:1,8,10,14,15,
17 215:1 223:16
235:6 239:23
243:15,20 245:11
248:21 249:22
251:3,6 262:5,18,
19,20 263:20
267:16 268:19
270:5 277:24

**Morlan**
7:14 12:14,20,23
14:13 61:3 64:3
83:13 87:1,10
119:21 145:2
153:24 154:1,2
156:10,24 157:24
158:17 159:13,21
160:19 162:16,24
165:13,16,17
168:1 169:16
174:23 175:6,14,
16,25 176:11,15
177:9,15,19,23
178:19 179:25
180:3,5,7 181:5,
13,17,23 182:2,7,
11,14,18,22 183:2,

3,14,21 184:25
185:6 188:12,20
189:10,18 191:8,
19 192:4,25 195:1,
8,16,24 196:10,15,
18,20,23 197:1,4,
9,20 198:5,17
199:12 202:5
208:8,9 214:24
217:9 219:1,23,25
220:12 221:25
222:25 225:20
226:13,14 228:16
229:7,16 230:6
232:6,16,20,22
233:2 235:18,21
236:3,7 239:14
240:18,25 241:8,
18 242:4 243:12,
15,20 244:4,11
245:6,12,13,16
248:17 249:24
250:7 253:3,7
254:5 256:5 263:1,
24 268:15 269:12,
25 271:11,20
273:24 274:9
276:2 277:20
279:20,21

**morning**
7:17,20 184:7,8,
10,11,14,22 277:7

**morphed**
50:19

**mortgages**
23:4

**most**
16:11 32:8 33:23
34:1,2 39:13 45:19
48:4,8,14 52:10
55:22 56:10 97:7
164:6 171:15,18
175:2 251:8
266:14

**UNIVERSAL**
**COURT REPORTING**

Office Phone: 954-712-2600
Email: info@ucrinc.com
Website: ucrinc.com

777 PARTNERS LLC and SUTTONPARK CAPITAL LLC vs LEADENHALL CAPITAL
Shapiro, Mark on 03/05/2025

**mostly**
18:5 28:20 47:22
57:12 92:9

**motion**
183:20,22 208:24

**Move**
175:14

**movie**
22:21 32:4

**MP**
161:8

**MPFIN**
65:8,11 67:10
83:18 90:18 93:6,
11 94:3,9 95:5,8,
10,23 96:10,15,19,
22,25 105:2,4
116:16 117:5,22
118:8,10,14 120:5,
17 121:21 123:2,
13,18 124:14
125:15 127:4
156:6,18 157:1,6,
10,20 158:3,19,23
159:1 160:14
162:19 163:10,20
188:9,16,21,24
194:9,16,21
199:14,19 200:17
201:1 223:21
224:12 245:4,12,
19,23 246:6,9,13
247:10,13,17
248:19 249:4,10
250:3,13,15 251:1,
3 258:3 275:7
276:16,25

**much**
27:19 28:16 30:7,
25 44:25 55:10
88:7,10 91:9
113:14 131:20
132:4 152:20

**169:21 173:5**
201:7 242:21
264:9 278:7,18

**must**
72:24 110:13

**Mutual**
69:8,13 80:21
81:4,7,18,21 82:1
88:1,14 89:3 90:2,
9 95:17 113:2
114:13,17,22,23,
25

**Mutual's**
81:10,15 82:7,9,17

**my**
11:3 15:23 16:17
39:14 40:10 44:3
47:19 48:14,24
51:11 55:12 96:11,
17 97:25 98:23
120:8 123:20,24
125:10 131:10
144:9 145:23
146:3 147:11
149:4 153:3 154:2,
5 155:1 156:13
157:4,15 158:13
166:2,10 168:9
173:17 175:17,21
176:4,25 177:7,21,
25 178:3,18 180:8
182:19 183:1
189:14 192:12,15
198:14 203:4
205:8,19 208:4,13
213:7 224:14
228:8 231:12
232:16 233:4
236:13 237:3,4
238:17 243:9
264:20 269:4
271:15 273:21,23
275:19 277:21

**myself**
35:1 37:11 66:12
71:22 79:21 80:8
88:4 107:12 109:1
110:1 112:5 152:8
168:11 184:17
188:3

---

**N**

**name**
9:11 29:5 32:19
33:6 47:18 71:18
72:5,15 106:19
116:20 122:15,21
135:16 154:2
170:23 185:24
215:19,22 254:25

**named**
102:23 114:10
115:4,6

**names**
7:12

**naming**
114:11

**Nathanson**
7:20,21 61:5

**National**
255:2,3,4,12,18
256:1,7,12

**naturally**
139:3

**nature**
81:3 137:17

**near**
32:8,15,24

**necessarily**
171:18 230:23
274:14

**necessary**
198:16 201:14

277:9

**need**
8:20 12:14 30:22
34:13 38:23 46:1,
24,25 84:22 89:23
142:24 167:3
169:18 194:16
201:16 216:16,18
223:16 243:16,20
244:17 245:10
250:21 261:9
262:16,20 264:7,
20,22,23,24 275:2

**needed**
13:15 62:1 84:21
214:8,11 263:15

**needs**
54:21 201:11
243:15 250:22

**negative**
78:4

**negotiating**
43:7 271:2

**negotiation**
271:8

**negotiations**
272:9

**network**
115:11

**neutral**
33:25

**never**
16:5,8 49:11 59:6
69:25 217:4

**new**
10:8,9 16:19 34:8
41:10 45:24 46:2
51:12 59:15,22
93:14,15,20,22
94:3 103:5 104:1,5
105:15 113:16,19

**UNIVERSAL**
**COURT REPORTING**

Office Phone: 954-712-2600
Email: info@ucrinc.com
Website: ucrinc.com

777 PARTNERS LLC and SUTTONPARK CAPITAL LLC vs LEADENHALL CAPITAL
Shapiro, Mark on 03/05/2025

128:13 129:18
133:21,23 134:2
139:13 150:14,23
151:2,21 153:2,10,
11 154:19,25
165:10,11,13
168:3 169:1
171:25 172:11,20,
24 173:10,21,23,
24,25 175:8
178:14,23,25
179:5,20,23
214:19,22 225:10
226:3,18 227:3,7
228:11 229:4
233:7,20,25
235:11 266:12
268:25 275:6
276:25

**next**
84:11 85:3 122:24
150:15 263:23

**nice**
116:9

**Nicole**
8:13

**night**
10:17 14:7 210:19
277:7

**no**
15:20 17:21 18:1,
6,16 19:7,10,19
20:5,17 21:9,11
24:24 26:16 28:1,
23 32:11 35:18
36:10 42:21,24
45:16 47:4 49:10,
12 58:16 60:4,7
62:18 63:11 64:20
67:3 69:5 71:7,17
75:21,23 77:10
78:11 79:2,10
84:25 85:2,25
89:12 93:21 95:7,

22 100:23 102:5
105:16,20 106:12,
15,18,21 108:1,14
113:4 114:19,21,
22 115:18 116:21
117:18 120:19
123:2,10,14 124:5,
21 127:1,3,8,16
135:9 137:8,13
141:7,12,17
144:17 146:23
148:3 149:1,3,18
150:16 153:13,21
154:15 157:12
161:6,12 162:6
163:11 166:15
167:5 173:19
177:13,15 178:1,3
180:3,9 181:14
182:12 183:11,19
184:3 185:5 186:5
187:21 189:25
190:20,22 196:25
199:11 201:2
202:3,19 203:12
206:25 209:13
210:17,19,22
211:6 212:1
214:23 215:7
216:23 217:6
223:8,18 225:17
226:4 227:12
228:25 230:18,19
231:7,8 233:16
237:10,18 238:6
239:5 240:17
241:7,17 242:8,9,
10,11,25 243:3
244:24 245:2
250:6 251:20
252:10,15 254:8,
12,20,23 255:6
256:20 257:17
260:7 261:1,3
262:24 264:2,5
265:1,12,17 266:1

275:4,12 276:18
277:1 278:10
279:5

**Noah**
7:18 83:18 84:8
94:16,20 104:4
118:14 122:2
129:3 135:4,15
136:1 154:14
160:11 187:12
189:20,24 190:10
192:13 193:10
205:22,25 206:2,5,
9 227:1 239:3
244:6,23 252:23
253:12 258:7,18
259:5,10,17,21

**nobody**
212:21 273:5

**non-merits**
175:8

**Noncounsel**
18:4

**none**
20:24 187:10,17

**nonlawyer**
17:18

**nonlawyers**
75:12 153:6

**nonresponsive**
175:15

**normal**
16:10

**normally**
21:24 198:21

**North**
81:14

**northeast**
190:12

**Northwest**

81:6

**Northwestern**
69:8,13 80:21
81:4,9,15,18,21
82:1,7,9,17 88:1,
14 89:2 90:1,6,9
95:17 113:2
114:13,17,22,23,
24

**not**
9:25 10:16,17
12:10,11 13:7,18
14:7 15:10 17:8,
14,19,21 18:24
19:4 20:22 22:7
24:6,12 25:10
26:16,20,21 29:2
30:3 32:6,14,15,16
42:8 44:20 46:25
48:10 51:25 54:6
55:24,25 56:10
60:10 62:6,18
64:19 67:24 68:19
69:22 70:4,7 71:7,
15 74:19,20,24
75:17 78:18 80:17
82:5,6,11,17,19
83:22 85:5 88:9
90:25 92:8,23
93:18 94:11 95:10
96:6,15,22 97:3,
15,19 98:13 99:2,5
102:15 103:23
104:11 105:20
106:11,13 107:4,8,
9,23 108:1,19
110:2,6 111:15
112:6 114:5,9,20
115:13,18 116:8
117:5 120:17,19
123:16 124:5
126:20 127:13
128:6,16,21
129:18 135:14
137:23 138:23

**UNIVERSAL**
**COURT REPORTING**

Office Phone: 954-712-2600
Email: info@ucrinc.com
Website: ucrinc.com

777 PARTNERS LLC and SUTTONPARK CAPITAL LLC vs LEADENHALL CAPITAL
Shapiro, Mark on 03/05/2025

139:2,11 142:1
147:12 148:5,7
149:3,14 152:1
153:15,18 155:12
156:22 157:18
160:13 161:13,17
162:14 164:11
168:5 169:15
170:13,24,25
171:2,18 172:5,15
173:17 174:18,22,
24 175:11,23
176:8 177:4,6,10,
20 178:4,5,20
180:3,6,9 181:18,
23 182:11,14,20
183:1,24 186:4,5,
16 188:21 190:20
191:2,25 192:1,9,
12,21,22 196:10,
13,14 199:10,16,
25 201:2,13 202:7
203:5,20 204:3,18
205:10,12,15
206:11,21 208:22
211:25 212:8
215:10 216:14,15
217:3 219:4
221:24 223:12,20
224:23 225:12,19
226:7 227:6,18
228:11 229:2
230:12,16,23,25
231:10,12,15
232:3,4,18,19,25
233:5,16 234:2,15,
18 236:4,13,14,15,
22 238:21,23
239:5,9 240:9
241:3,17 242:5,19,
22 244:10 245:15
246:10,20,24
247:3,8,14,18
248:16 249:3
250:5,8,17 251:19,
22 252:2,5,8,18,25

253:6,13 254:8,12,
17 255:6,15 257:7,
21,25 261:3,6
262:10 263:7
264:16,19 265:1,
12,15,16 266:2,17,
20 269:22 270:10
272:20 273:7
274:24 275:1,12
276:5 277:4,9,10,
14,17

**note**
13:5 83:10

**notes**
20:23

**nothing**
18:19 20:20
176:13 188:24
204:6 248:12
277:21 279:8

**notice**
11:25 88:18 258:5

**notification**
184:21 201:23
202:1,4 204:8
258:15 260:3,5,12

**notifications**
204:22 205:1,3,12,
16

**notified**
13:15,20 50:10,14
260:1,21,23

**notify**
259:20,25 260:19
262:10

**now**
24:20 26:17 28:22
30:6 37:11 41:5
44:8 45:20 49:20
57:15 63:25 64:22
68:9 76:19 102:5,8
114:25 115:18

120:11 122:10
125:19 131:1
132:2,8 133:5
142:11 159:24
166:14 171:22
172:7 173:9,19
179:7,11 181:8
183:7 192:21
195:15 203:25
211:10 214:18
215:23 218:25
219:5 231:3,19
232:2,3 233:12
238:13 262:13
268:7 274:1,8
275:1 276:6
277:18,23 278:8,
12

**nowadays**
198:16

**number**
44:21 51:3 54:25
62:3 83:16 87:4
121:9 129:19
131:3 141:3
142:23 145:3,6,9,
13,14,22 146:4
147:8,18,25
165:15 196:20
215:5,8,13,16
216:13 219:22
222:22 225:4
268:13,14,20
278:8,21

**numbers**
234:24 279:1,2

**Nutmeg**
29:3,6

—————————

**O**

—————————

**o'clock**
184:14,21 277:7

**O'NEIL-DUNNE**
63:2

**O'REILLY**
66:13 73:17,19
74:14 77:15 80:3
110:2 112:5
151:15 152:1
161:22 185:19
186:25 266:15,16

**O'TAHERI**
112:8

**O-B-R-A**
62:17

**O.C.G.A.**
279:23

**object**
18:13 19:3 69:16
82:8 107:18 111:5
159:19 198:11
232:12

**objected**
82:12,15

**objection**
15:17 18:17 25:19
30:12 36:15 70:11
72:10,18 74:18
78:22 97:17
102:20 103:15
104:9 112:16
114:1 123:5,11,19
124:6,7 127:5,17,
20 128:23 130:12
132:21 134:11,22
135:12,21 136:12
137:9 139:20
141:11,21,24
146:9 147:1,10,20
148:9,15 149:8,20
151:23 153:12
156:4,19 157:22
158:10 159:4
160:16 162:12,20
169:9 174:20

**UNIVERSAL COURT REPORTING**

**Office Phone:** 954-712-2600
**Email:** info@ucrinc.com
**Website:** ucrinc.com

777 PARTNERS LLC and SUTTONPARK CAPITAL LLC vs LEADENHALL CAPITAL
Shapiro, Mark on 03/05/2025

175:5,10,19
178:15 179:4,20,
22,24,25 180:11
181:12,15 183:9
184:23 185:4
188:10,17 189:2,
13 191:1,15,24
192:19 199:9
202:2 214:20
217:1 218:23
221:23 222:15
225:16 228:14
229:5,12,20
231:11 232:23,24
235:17,21 239:12
240:16,23 241:6,
16 242:1 244:9
245:5,6 248:15
249:18 250:4
254:3 256:2
262:23 263:17
268:10 269:3,15
270:25 271:17
273:22 275:24

**objections**
82:21 144:24
181:18 182:19,21
183:1 224:4
265:23

**obligations**
105:8 204:8,16
205:11 227:25

**Obra**
62:16,17 170:22,
24 171:1

**obtain**
190:24

**obtained**
105:14 116:16
141:9,19 142:13,
22 143:8 146:10,
17 148:14,21
216:24 217:4,12
218:12,19,21

221:22 222:3,14
223:7,9,13 228:23
257:23

**obvious**
41:2

**obviously**
44:9 135:22
187:13

**occasion**
190:18

**occur**
133:6

**occurred**
57:20 58:15 257:1

**occurrence**
46:24

**occurring**
89:3

**off**
8:25 9:3 11:6
12:16,18 14:19,20,
22 24:20 37:10,14
61:3,4 64:5 68:4,5
76:15 87:12,14
109:14 115:2,22,
23 135:25 149:25
167:3,15,19
189:17 195:1,2,11
197:8,20,23 201:8
219:13 220:2,6,7
243:18,24 268:16
274:3,4 279:9,12

**office**
84:8 197:11 253:3,
12

**officer**
21:22,23 22:3,7
58:5 164:17,20,22,
25 166:17 170:4
171:12 175:1
207:5 209:23

213:5

**offices**
43:3 58:12

**oh**
49:24 90:24 125:1
144:9 155:13
173:17 184:12
196:6 197:20
198:20 215:7
221:8 224:20

**okay**
7:4 9:6,10,17 10:1,
5,12 11:8,15
12:16,25 13:3,24
14:8,23 16:13
18:4,11,24 19:18
20:3,6,11,23 21:4,
7,19,24 22:14
23:19 24:7,25 25:5
26:7,17 27:4,24
30:16 31:4,25 34:7
35:8 36:21 38:1,15
39:12 40:1,4 41:9,
13,15,16,23 42:3,
9,12,17 44:2,11,21
45:6 48:12 51:8
52:6 53:18 56:14
59:10 60:5,12
62:22 63:12 64:16
65:6,17,21 66:10,
25 67:8,12,22,25
68:5,8,11,23 69:3,
24 73:7 75:9 76:7,
14,15,18,24 77:21
78:7,15,18 79:8,
15,23 82:7,20,25
83:6 85:3,10,13,21
86:11,21 87:20,24
88:16 89:2,6 90:1,
17 91:16 95:23
96:1,5,18 97:5,22
98:1,12,19,24
99:2,10,13 101:3,
15,20 102:3,6,13
103:25 104:19,23

105:2,7,13,17
106:9,16 107:1,13,
15,21 109:4,8,19
110:16,24 111:8,
17,25 112:2,25
114:8,16 115:19,
23 116:1,4,6 117:4
118:20 119:1,25
121:4,9,12 122:14
124:11,18 129:9
130:8,17 131:11,
24 132:7 134:6,19
137:5 138:14
139:9 141:15,18
143:12 144:7,18,
23 145:13,21
146:2,3 147:7,21
148:12 149:16,19
150:5,20,22
151:13 152:3,7,25
153:20 154:21
155:4,16 156:11
157:16 158:8,22
159:14,18 160:20,
22,25 161:18
162:1,9 163:22
165:16 166:16,24
167:15,18,22
168:6,25 170:19,
25 171:21 173:2,
25 174:6,10,17
175:14 176:3,5,16,
25 177:8,19,24
179:6 180:10,23
181:3 182:6 183:2,
15 184:4,12 185:1,
22 186:1,6,21
188:8,24 190:1,13,
18,21 191:20
193:6,12,25 194:7,
20 195:11,14
196:15,18 198:3
199:22 200:2,7,13,
16,21,24 201:18
202:6,10,12,25
203:10 204:7,15,

**UNIVERSAL**
**COURT REPORTING**

Office Phone: 954-712-2600
Email: info@ucrinc.com
Website: ucrinc.com

777 PARTNERS LLC and SUTTONPARK CAPITAL LLC vs LEADENHALL CAPITAL
Shapiro, Mark on 03/05/2025

21 205:8,15 206:1,
11,18,24 207:3,13,
19,25 208:5,15,23
209:2,11,19 210:6,
10,21 211:18,24
212:16,21 213:22
214:6 215:3,6,9,
14,17,19 216:16
218:17 219:2,7,11,
23,25 220:7,19,22
221:1,15,21
222:12 223:1,5,10,
14,16,19,23
224:20 225:3
228:2 232:20
236:8,13 238:7,19,
24 240:8 242:5,12,
16,20 243:10,18
244:2,22 245:3,22,
25 246:8,11,18,21,
25 247:8,23 248:4,
12,24 249:8,13,25
250:11,20 251:1,6,
12 252:6 253:8
255:3,7,11,24
256:6,25 257:4,7
258:22 259:16
260:22 261:23
262:16 263:2,9,13
264:14 265:2,13,
22 266:10 267:9
268:23 270:11,14
271:12 272:8,12,
25 273:5,15 275:2,
5,10,13,16 276:3,
19 277:3,19 278:3,
20 279:3,9

**old**
59:14 129:21
131:2 135:19
258:18 269:22

**on**
7:4,15,18,21,24
8:6,14,24 9:6
10:19,20 11:17,25

12:25 14:6,23
15:9,10,11,13
16:6,8,21 17:7,15
19:5,22 22:11 24:1
26:12 28:2,12,13,
15,20,24 29:10
30:2,8,18,19
31:14,15 32:24
34:13,16 37:10
41:7 43:14,15,17,
18,19 44:10,15
49:16 50:7 52:16,
20 53:9 54:12
55:23 56:6,20 57:6
58:6,21 59:11
60:3,8 61:1 62:1,6
64:7 66:16,18
68:8,14 70:3,4
72:4 73:11 74:2,16
75:3,22 76:6,9,18
77:12 78:25 79:8
80:6 83:18,21
84:1,5 85:5 86:1,
14 87:17 88:12,19
90:5 91:6,7,13,21,
22 92:9,17 94:6,7,
14,15,22 95:10,12
96:22 102:4,9,19
103:9 106:17
107:19 108:5,6,14,
16 110:7 111:5,9,
10 114:21,22
116:1,21,24 117:1,
23 121:9 123:6,16
132:14,15 133:20
134:15 137:3,22
138:7,8 139:14,16,
24 140:16 147:14
149:22 150:2,16,
17,20 154:22
155:21,24 159:9
161:14 162:5
163:16 165:21
167:6,22 168:22
170:2 173:9,18
174:4 175:1,11

176:3,4 177:25
179:3,10,11,13,17
180:11 182:22
186:7 190:10,14
194:16,18 195:14
196:1,20 197:11,
18 198:3 200:11
201:25 207:17
209:21,24 211:1,
13,14,15,17,21,22
213:8,21,23 214:4,
14 216:4 217:19
218:1 220:10
222:2,7 223:2,5
224:4 225:3,14
227:18 228:3,6,9,
17 229:22,23
230:14,20,21,23
231:14,17,23
232:2,12,13,14
234:10 235:1,2
238:20 239:9
240:21 242:2
244:2 249:20
256:23 257:1
258:4,6,9,10
259:16,24 261:13,
24 262:1,12,13,15,
17,18 263:8
264:11,23 268:6
270:6 272:9,22
274:7,21 277:11,
12

**once**
145:23 220:3
261:12

**one**
16:8 22:24 23:19,
20 25:7 27:6,12
31:5,11,12 32:7,
12,14,21 33:1,7
37:12 38:19 39:19
50:15 54:25 56:10
57:16 58:21 59:3
62:3 77:10,20

81:17 83:1 84:13
89:15,22 95:16
97:7 128:8 131:11
143:21 144:5,11,
19 147:24 150:6
151:7 152:2
159:14 166:18
168:11,21,22,25
170:22 172:1
175:2 178:6
185:12 188:1
189:11 190:9
191:16 192:2
195:22,25 196:3
201:22,24,25
202:3,4,7 212:8
214:2 219:18,19
225:21 228:21
233:15 239:21
245:25 249:5
251:9 254:21,23
258:24 261:21,22
263:2,7 267:2
277:24

**Onedrive**
93:9 104:18

**ones**
32:22,23 61:2,10
80:17 82:5 88:7
118:17 149:14,15
172:7 189:24
200:3 205:23
208:14 265:24

**ongoing**
53:6 222:18 223:8,
11 231:7

**online**
7:13 8:4

**only**
36:4 47:10 59:1
82:20 152:9 155:1
184:16,18 191:16
201:25 205:14
208:14 224:18,19,

**UNIVERSAL**
**COURT REPORTING**

**Office Phone:** 954-712-2600
**Email:** info@ucrinc.com
**Website:** ucrinc.com

777 PARTNERS LLC and SUTTONPARK CAPITAL LLC vs LEADENHALL CAPITAL
Shapiro, Mark on 03/05/2025

21 231:5

onto
55:25

open
9:17

operability
247:16

operate
28:7 34:20

operating
21:22 34:25 36:1
37:4 53:2 164:17,
20,22 166:17
171:12 174:25
209:23 213:5
250:17,22

operation
213:9

operations
25:23 33:21 49:18
200:11,18 210:11
211:15

operative
24:19 25:1

operator
30:8,25 36:25

opine
26:12 230:21

opinion
28:12 30:8 49:1
79:8,10 176:7
262:15,17 266:18
269:4

opinions
28:13,20 190:19

opportunity
116:6 168:2
193:17 220:13
222:6 242:12

opposed
23:24 24:1 37:19
44:16 170:8
191:12 207:10
248:22

opposition
208:24

options
204:8

order
121:13 201:12
226:17 245:9
262:17

ordering
279:13,17,20

orders
268:17

org
23:21 35:20

original
119:14 120:1
158:12,14 260:13
265:18

originally
37:8

originate
45:24 46:2

other
16:7 21:7 34:12
35:12 41:9 43:17,
18 45:14 46:12,19,
23 53:12,21 59:23
62:6,9 81:24,25
82:1 92:11 95:25
96:5,19 97:2,3
98:9,13 100:2
118:7,10 125:23
126:8,9,11 127:24
128:3 129:5,7
131:24 132:13
135:2 142:5

158:22,25 159:22
161:17 162:9
164:25 170:3,5,15,
19 172:1 176:9,13,
23 177:6,7 178:2,
3,17,21 183:10
184:18 187:8
189:20,22,24
193:15 194:14,15
197:13,16 201:9,
21 205:1,21,25
206:1,4,7 207:11
208:10,16 210:14,
15,17 211:3
214:25 215:3,19,
24 216:10,12
231:8 232:23
237:22,23 241:7,9,
19,22 242:10,11
250:19 251:10
252:11,17,18
259:3 261:10,25
262:2,6 264:22
265:13 271:4
274:20 275:5
276:15,18,19,22
277:1

others
36:12 41:19 46:5
62:12,13,14 72:6
73:24,25 97:1
100:25 169:3
186:14,18,21
189:8 211:9
213:14

otherwise
10:4 80:14 101:9
186:13 223:13
247:25

our
19:5 23:24 26:9
33:18 35:24 36:25
37:7,13 39:1,4,6
41:10 48:15 53:1
54:25 56:16 80:8

92:16 132:3
133:22 139:11,13
150:17 152:24
164:23 168:11
174:21,22 179:4
180:14 189:14
199:21 211:12
213:21 222:17
226:19 227:1,4
230:11,15,25
231:19 259:13,14
267:2 268:13
271:25 278:24

ourselves
33:17 213:12

out
21:16 22:17 27:23
38:18,21 39:1
41:2,11,18 49:6
50:23 52:18 55:1
56:3,7 60:2,13,17
62:14 63:19 64:9
91:7,13 92:14,19
94:13,14 99:20
100:9 113:13
116:24 117:15
129:12 133:4
134:17 143:21
156:14 163:21
171:25 189:4
199:17 203:1,18
205:3,5,13,17
206:5,13 210:24
213:10 214:11
216:13 229:15
231:18 240:13
246:15 250:1
251:6 255:16
257:12 258:13
260:16 267:15
270:9 278:12,21,
22

out-of-pocket
216:9


UNIVERSAL
COURT REPORTING

Office Phone: 954-712-2600
Email: info@ucrinc.com
Website: ucrinc.com

777 PARTNERS LLC and SUTTONPARK CAPITAL LLC vs LEADENHALL CAPITAL
Shapiro, Mark on 03/05/2025

outcome
173:7 235:24

outlays
49:9

output
14:14

outside
19:9 49:21 57:2,3
59:16 74:5,8
115:10 132:19
216:8

outstanding
39:3 53:12

over
9:21 12:6,14 29:2
48:15 61:25 89:19
125:7,22 151:21
164:9 195:19
199:3,21 200:15
206:24 207:8
211:5 213:16
214:3 215:24,25
264:24 268:21
278:14,17

overall
50:17

overlapped
114:15

overlapping
89:3

overly
268:24 270:7
271:16,22,25
272:1,6

overrode
187:22 188:3

overruled
99:20 224:4

overseeing
25:23 177:2
217:19

oversight
98:2 198:25 200:9,
11

owe
38:2

owed
27:15,17

own
15:21 28:9 38:1,21
81:12 100:10
264:18 269:4,9,18
270:8

owner
29:3 59:5 102:22

owners
38:3 54:12 55:9

ownerships
23:23

owning
22:19

owns
35:19

———————

P

———————

P.A.
7:18

p.m.
279:25

packages
58:3

page
84:1,11,14 86:1
88:12 89:7 121:9
223:1,3,4,6,10,19
225:3,8,14

pages
120:24

paid
27:13,14,15,19

44:1 45:18,19
78:16 129:12,13
255:22

paper
188:19 196:17
197:14

paragraph
51:16,18 53:10
88:17 122:5,6
146:8 209:25
212:25

paraphrase
191:7

part
39:2 42:8,11 45:21
52:12 58:6 59:11
63:24 65:8 84:5,20
99:21 101:5,6
156:15 166:16
170:1 171:7,11,14,
17,19 197:6,21
198:13 205:20
213:22,24 224:9
230:2,4 236:16
237:18,20,24
258:19 275:22
276:11

participate
32:14 67:5

participated
185:10

particular
20:15 43:1 47:23
96:25 98:25 139:1
165:3 175:12
207:5 209:5 211:8
222:14 223:21
225:13 228:6
244:19

particularly
166:18 230:8

parties
27:4 35:15 38:24
126:8,10,11 174:1
207:20 261:10

partner
42:14 98:2 150:10

partners
7:9,10,25 10:7
15:24 16:2 21:20
23:10 25:17 26:2,
10,15 27:10 34:23
35:6,16 36:23,25
43:25 63:14 64:18
70:9 71:9 77:2
79:9 81:25 82:8
85:13 98:5,13
100:10 135:6
140:2 151:20
152:13 153:8

Partners'
22:15 82:15
100:20 135:18

party
33:8 125:23 271:4

party's
209:2

Pasko
26:2,9,15 30:4,10
40:13,24 80:4
94:17 97:23 98:1
99:11 105:17,18,
21 107:5 142:4
150:6,10 151:1,8
187:2 209:22
230:21 252:3,9,12,
18

Pasko's
30:6 34:9 93:7
94:18 98:20 99:3,
8,14 104:16,20
106:19 151:4,6
225:23 226:1,17,
25 227:2,7 228:4,

UNIVERSAL
COURT REPORTING

Office Phone: 954-712-2600
Email: info@ucrinc.com
Website: ucrinc.com

777 PARTNERS LLC and SUTTONPARK CAPITAL LLC vs LEADENHALL CAPITAL
Shapiro, Mark on 03/05/2025

10,23 229:3,9,14

**passed**
125:6

**past**
30:14 125:22
164:10 230:22,24
231:9 232:2

**paste**
40:3

**pasted**
51:23

**patience**
274:11

**Paul**
7:16 41:5 69:24,25
70:18 84:7 88:6
90:16 94:16 154:3,
11 160:12 186:11
187:4,7,11 193:9
263:4 266:17,20

**Paul's**
209:8

**pause**
132:23 266:24,25

**pay**
46:9 78:7 129:12

**payees**
84:15,19

**paying**
36:19

**payment**
15:12 78:9,14

**payout**
15:12

**payroll**
33:23 34:3 41:7
46:7 77:8 78:12
255:23

**pays**

45:12,13,20

**Pellegrino**
7:23 8:4,13,20,23
13:6,8,17,25 14:15
15:17 17:12,19
18:1,11,13,21,23
19:1,3,15 25:19
30:12 36:15 68:3
69:16 70:11 72:2,
10,18 74:18 75:1,
4,8,19,23 76:3,10,
12,20,24 78:22
97:17 102:20
103:15 104:9
107:18,22 111:5
112:16 114:1
119:9,10,14,18,22,
25 121:7 123:5,11,
19 124:6,9 126:6,
9,13,16,20 127:5,
17,20 128:23
130:12 132:21,23
134:11,22 135:12,
21 136:12 137:9
139:20 141:11,21,
24 142:24 143:2,
19,22 144:2,6,8,11
147:1,10,20 148:9,
15 149:8,20
151:23 153:12
156:4,19 157:22
158:10 159:4,19
160:16 162:12,20
169:9 174:20
175:5,10,19,23
176:9 177:12,13,
18,22 178:15
179:24 180:1,4,6
181:12,15,20,25
182:6,9,13,16,20,
25 183:9 184:23
185:4 188:10,17
189:2,13 191:1,15,
24 192:19 195:6,
10 196:13 198:11

199:9 202:2
214:20 217:1
218:23 221:23
222:15 225:16
228:14 229:5,12,
20 231:11 232:11,
19,21 235:17,23
236:6 239:12
240:16,23 241:6,
16 242:1 243:14,
17 244:9 245:5,7,
15 248:15 249:18
250:4 254:3 256:2
262:23 263:17
268:10 269:3,15
270:25 271:17
273:22 275:24
279:8,16,18

**pending**
57:21 87:20
165:21 251:24
252:13 277:11,12

**people**
23:6 30:20 38:24
45:3,4 55:5 56:18
77:8 106:24,25
110:25 131:8
132:3,13 161:15,
17,23,24 185:14
202:17 206:12
231:1 266:10,21

**per**
11:2 44:18 267:4

**Perceived**
28:22

**percent**
45:2 54:7

**percentage**
22:2

**perfectly**
195:8

**perform**

69:19 214:8
263:25 265:20,25

**performance**
77:21 78:4 85:19
245:1

**performed**
69:7,11,12 203:2
213:1 233:6 241:4
255:12,17 259:17

**performing**
254:11

**perhaps**
92:25

**period**
34:19 52:11 69:14,
15 110:24 151:21

**Periodically**
47:15

**permissions**
197:4

**perpetrated**
55:21

**person**
8:3 42:12 48:10
125:17 140:5
150:6 189:20
198:23 200:1

**personal**
205:17 207:7,8,14

**personally**
11:3 42:25 73:22
137:23 161:10
198:20 244:22

**personnel**
55:2 70:16 247:25

**personnel's**
132:12

**persons**
151:13

**UNIVERSAL**
**COURT REPORTING**

Office Phone: 954-712-2600
Email: info@ucrinc.com
Website: ucrinc.com

777 PARTNERS LLC and SUTTONPARK CAPITAL LLC vs LEADENHALL CAPITAL
Shapiro, Mark on 03/05/2025

perspective
49:17 201:10
202:11,13 269:14

perusing
51:10,20 52:2
53:14 83:9,12
84:2,6,10,17 85:6,
9 86:4,7,10 87:9
88:15,20 89:1,9,25
90:14 120:7,11
121:6,11,16,24
122:4,23,25
140:19,23 142:14
143:18,25 145:10,
20 146:1 149:9
166:21 167:2
195:21 196:19
209:24 210:5
221:17 225:7,19

Peter
8:5 12:14 87:1,10

phase
52:17

Phoenicia
62:25

phone
70:5 128:18 137:3

phonetic
17:6 47:17 56:2
70:6 92:16 246:2

physical
240:14 253:11

picture
164:21

piece
176:17

pieces
175:2 176:6

place
80:12 128:21
139:10 187:24

228:5 231:23
254:19,20 276:14

places
264:23

plaintiff
170:11

plaintiffs
7:24 10:6 79:16
98:19 120:17
129:9,15,22
130:10,18 140:2,3
146:9,11 170:6,22

plaintiffs'
90:9 104:3 135:11
140:17 144:4,23
146:18

plan
52:19 64:21

planning
31:3

plausible
97:19

play
268:4

playbook
54:4,6

plays
55:11

pleading
102:24

pleadings
16:18 68:25 70:25
73:5 209:7

please
7:11 8:8 9:10 61:9
64:3 87:11,24
120:12 140:13
143:2,13 145:21
155:2 167:1
181:22,25 232:25

pledged
60:25

plus
248:2

point
8:2 16:23 56:8
61:1,7,19 62:15
86:15 108:15
139:1,14 142:18
143:6,10 200:12
203:14,16 208:17
211:17 222:23
229:24 231:15
239:21 246:20
251:18 254:22
258:7,10,22 259:4,
12,15 260:20
261:22 262:8
263:16 264:2

points
52:1 102:11,18
113:15 136:1

police
253:9

policies
48:15,17 49:3
247:1,5,9

policy
48:22

politics
55:9

pool
33:23

portfolio
22:16 24:21 29:11
30:19,20,24 31:2,
18 33:24 34:1
35:11 49:16 52:17
81:7 96:20 98:3,6,
8 213:19 249:2
254:14,18 255:18
267:20,22 269:9,

18 270:8 278:5

portfolios
46:3 95:13 269:18

portion
104:24 191:5

portions
83:21 96:15

posed
142:9

position
18:18,22 22:7,10
38:21 55:20 76:8
80:6,9,10 81:1
82:4 89:19 104:11
112:14 130:17,18
187:22 226:8,11,
16,19,23 227:1,4
236:15,17 271:25
272:2

positions
40:13 151:18

possessed
142:19 143:7

possession
246:12 267:11

possibilities
173:7

possibility
76:13 92:24 101:2,
13 113:13

possible
55:2 236:12,15

possibly
160:2 161:23
228:9 264:12

potential
32:3 41:20 48:4
75:24 91:8 121:15
164:11 169:20
172:12,23 174:3

UNIVERSAL
COURT REPORTING

Office Phone: 954-712-2600
Email: info@ucrinc.com
Website: ucrinc.com

175:4 205:21
206:12 216:12
221:19 227:14
235:10 239:9
252:19 257:5
260:19 262:6
269:19

**potentially**
49:19 50:3 67:21
73:18 111:6 160:5
216:5 228:18
246:22 270:5

**practice**
16:10

**practices**
135:19 227:25

**preceded**
23:8

**preexisting**
57:3

**preface**
44:15

**prefer**
196:2

**preliminary**
12:5 107:8 208:25

**prepare**
16:13,16 19:12
46:18 232:24

**prepared**
23:22

**presence**
19:9

**present**
7:11 17:13,16 18:2
111:14

**presented**
278:25

**preservation**
139:22 227:25

228:15 230:15

**preserve**
139:1

**preserved**
138:21,24

**press**
26:8,13

**pressed**
179:11

**pretty**
24:17 28:16 30:19
88:7 91:9 112:1
132:4 212:18
213:12 257:6
258:15 267:20
269:7

**prevent**
80:13 202:15
246:22 259:10,13

**preventing**
273:18

**previous**
88:18 247:15

**primarily**
21:14 79:22
161:24

**primary**
47:19 92:13,15
139:18 140:5

**principal**
63:2 230:10

**principals**
169:2

**prior**
24:15 43:12 61:23
67:10 77:22 89:12
108:15 118:7
166:4 210:10
221:2,12 260:24
272:19 273:8,11,

15

**priorities**
61:18 62:5 171:8,
17

**prioritizing**
231:13

**priority**
62:3 171:22

**private**
54:13,14

**privilege**
18:17,20 19:5
75:2,20,24 76:5,8,
13 177:17,25
232:12

**privileged**
175:22 177:12
178:4,5 228:20,23
229:2,11

**pro-**
156:14

**probably**
17:6 22:12,13 24:3
28:13 43:11 44:8,
18 47:8 48:23 50:6
54:2 91:18 109:18
112:7 129:20
132:9 134:12
161:21 189:7
204:19 207:2,11
211:14,15 215:16
235:2 246:17,20
249:22 260:1
261:14 268:19,22
271:2 273:25

**problem**
84:23 203:16
214:2 250:20
260:13

**problems**
194:5 199:13,18

200:25 214:4,5,6

**Procedure**
279:23

**proceed**
219:17

**proceedings**
12:21,24 251:25
252:1,5,7,14

**process**
35:14 36:8 42:11
115:3 184:20
213:25 277:18

**produce**
12:1 13:13,16 39:9
184:1,4

**produced**
10:16 39:15 125:9
156:15 157:14
163:24 164:8
184:6 275:17
277:14,17

**product**
75:2 76:9 107:19
111:6 232:12

**production**
10:20,21,24 13:4,6
14:5 121:19 137:2
184:13,16

**professional**
21:7 177:2 182:1
213:4

**professionals**
42:1 44:11 52:22

**programs**
100:15

**progress**
153:2

**project**
62:6



**Office Phone:** 954-712-2600
**Email:** info@ucrinc.com
**Website:** ucrinc.com

777 PARTNERS LLC and SUTTONPARK CAPITAL LLC vs LEADENHALL CAPITAL
Shapiro, Mark on 03/05/2025

**projections**
53:3

**prompted**
81:22

**proper**
24:3

**properly**
147:8 233:9
265:25

**property**
142:21 143:7

**proposal**
50:8

**proprietary**
95:24

**prospective**
28:18

**protect**
187:24

**protection**
202:15

**prove**
226:7

**proved**
218:11

**proven**
235:14

**provide**
25:5,9 147:14
148:20 190:14
206:22 207:4
218:10,13 222:2
251:14

**provided**
25:10,11 70:15,17
72:4 74:22 88:19
117:20 126:4
164:12 190:23
204:21 206:15,18
224:11 225:13

**234:20 253:25**
265:9

**providing**
21:20 25:12 224:1

**Province**
49:20

**provisions**
90:7

**proxies**
47:11

**proxy**
29:2 61:24 64:7
94:24

**public**
54:13 269:8,16

**pull**
38:20 46:20
258:12

**pulled**
52:1

**purchased**
60:24

**purchasers**
269:20

**purchasing**
50:3

**purely**
210:23

**purported**
161:8

**purpose**
15:9 33:16 38:17
81:9,14 207:3
212:5,6 232:23
238:14

**purposes**
138:21 172:10
208:12 212:3
220:17 224:2

**228:5 244:12**
247:2 258:4

**pursuant**
121:13 224:6
279:22

**pursue**
133:15,23

**pursuing**
133:8,12

**push**
38:20 46:20

**pushed**
80:15,18

**put**
31:18 37:10 43:10
50:20 55:1 59:24
80:12 104:4
109:12 130:23
131:1,14 132:14
201:8 218:15
231:19

**putting**
43:13 49:5 76:8
218:6 231:19

---

**Q**

**qualifications**
199:23

**question**
8:14 15:6 21:25
27:22 41:8 43:22
47:7 75:11 76:21,
23 82:13 87:20
103:23 113:8
120:13 124:16
134:9 142:9
145:23 146:3
148:17,25 149:4
161:10 164:2
167:25 168:7,9
171:24 175:17

**176:25 177:10,14,**
16,21,25 178:1,10
180:8 181:6,14
190:6 192:1,3,12,
15 205:8 226:20
227:11 232:17
233:4 236:13
237:3,4 238:20
252:3 271:6,10,15
272:18,19

**questioned**
41:6 265:25

**questioning**
164:6

**questions**
10:14 28:6 148:17
149:23 153:21
161:1,5 162:21
163:19 277:8,25
279:5

**quick**
9:1 55:2 149:21
243:12 273:24

**quit**
86:13

**quite**
161:23 172:5
192:24

**quote**
191:6 218:25

---

**R**

**rack**
44:3

**raid**
58:17,18

**raided**
58:12

**raise**
33:17,20 52:21

**UNIVERSAL**
**COURT REPORTING**

Office Phone: 954-712-2600
Email: info@ucrinc.com
Website: ucrinc.com

777 PARTNERS LLC and SUTTONPARK CAPITAL LLC vs LEADENHALL CAPITAL
Shapiro, Mark on 03/05/2025

**raised**
92:24 93:2 101:13,
14,16,18 181:21
182:13

**ramp**
61:23

**ran**
100:16

**range**
268:5,6

**ranging**
44:19

**rate**
44:2,3

**rather**
65:7

**Ratner**
8:2 11:23 17:3,11
18:12 19:2,8 35:1
37:8 40:6 41:18
43:16 66:12 71:22
107:12 110:1
112:5 130:7 140:7,
10 151:15 152:8
154:2,7,8 163:15,
17 168:11 183:4
185:21,22 210:1,2
211:3,7 212:23

**Ratner's**
273:17

**Re**
61:23 62:4 63:25
64:7,16

**re-**
179:19

**re-asking**
76:21

**re-call**
10:19

**reach**

58:20

**reached**
41:18

**read**
40:25 92:1 109:14
121:13,17 135:1
142:24 145:21
160:20 167:16
222:17 224:12,18,
19,21 236:22
237:2,8 238:25
275:25

**read/write**
224:18

**reading**
167:8 218:18

**ready**
167:17

**real**
9:1 18:6 173:8,20
181:14

**really**
18:6 37:16 79:13
121:1 128:16
155:11 198:21
213:18 214:14
215:8 229:8
232:22 249:19
256:10 260:15
262:13 273:6

**realtime**
8:22

**reason**
77:9,11 85:21,24
86:14 128:20
162:4 166:13
199:5,10 202:21,
23 203:10 210:15,
17 217:6 229:8
240:15 242:25
244:17 248:14
252:12 255:25

256:3,20 257:14,
18 259:10 260:9
263:3 266:16
270:11

**reasonable**
185:1 270:17,20

**reasonably**
146:12

**reasons**
89:22 207:11

**recall**
16:22 20:15 27:8
32:23 43:18 62:15
66:23,24 78:1,6
100:8 107:3
110:18 111:9,13,
15 138:8 153:7
164:4 170:7 194:8
218:18 238:13,23
239:22 262:7
275:1

**recapture**
64:10

**receipt**
184:20

**receivable**
95:12

**receivables**
22:25 23:3 31:8,10
35:11 65:17 95:25
96:5

**receive**
11:11 270:18

**received**
11:8 41:14 66:21,
22 121:17 141:8,
19 142:12,18
143:6,10 145:17,
24 146:6,16,24
147:4 148:13,21
276:10

**receiver**
21:18

**recent**
48:14 116:23
137:2

**recently**
36:2 117:3,6
118:12,16 124:21
125:2 164:9
211:25 275:17
276:10

**recess**
9:5 12:22 68:7
76:17 87:16
115:25 150:1
167:21 195:13
197:25 220:9
244:1 274:6

**recite**
11:6 204:11

**recognize**
51:9 83:8 87:8,21
143:24

**recollection**
20:9 120:16 123:8,
20,24 193:3 219:8,
16 220:14 275:3

**recon-**
213:4

**reconcile**
250:18

**reconciliation**
249:21 251:2

**reconciling**
250:15 251:10

**record**
7:5 9:1,3,7,11
10:14 12:16,18
13:1 14:19,20,22
60:23 68:4,6,9
75:22 76:6,9,16,19

**UNIVERSAL**
**COURT REPORTING**

**Office Phone:** 954-712-2600
**Email:** info@ucrinc.com
**Website:** ucrinc.com

777 PARTNERS LLC and SUTTONPARK CAPITAL LLC vs LEADENHALL CAPITAL
Shapiro, Mark on 03/05/2025

87:13,14,17
115:22,24 116:2
119:5 149:25
150:2 167:3,15,19,
23 193:3 195:1,12,
15 197:18,21,23
198:4 219:13
220:3,6,8,10 225:4
243:19,24 244:3
274:3,4,7 279:10,
12

**records**
24:9,11 60:23
64:9,14,15 65:8
77:8 146:11
222:19,20,22,23
225:3,13 249:10
250:21 251:2,4

**recoverable**
134:21 216:6

**recovered**
121:10 122:1

**RECROSS-
EXAMINATION**
278:1

**reduced**
36:7

**redundant**
168:17

**refer**
10:2,7 23:17 152:9
166:25 186:22

**reference**
156:20 157:1,10,
21 158:25 163:8
167:9 180:25
183:7 194:9 257:8
275:8

**referenced**
157:7 163:20
217:13

**references**
157:5 158:2

**referencing**
158:20 183:10

**referral**
40:10

**referred**
48:23 74:5

**referring**
10:3,6,8 34:12
84:18 99:24 118:1
125:10 139:4
165:7,8,9,20 169:1
183:16 186:19
211:20 223:12

**refers**
120:10 124:14
145:8

**reflected**
276:22

**reflects**
241:13

**refresh**
20:9 120:16 123:8
193:3 219:8,16
220:14 275:3

**refuse**
178:7,8

**refused**
161:4 177:15
179:10

**refusing**
177:24

**regard**
46:2 113:9 226:23
250:23

**regarding**
73:2 107:24 188:5,
14 205:17 253:18,
24

**regardless**
159:9,11

**Regularly**
47:14

**regulations**
54:17

**reimbursed**
45:14

**relate**
99:3 252:7

**related**
15:12 16:17 63:5
233:24

**relates**
139:23 158:12
198:9 241:3
244:15

**relating**
119:16 172:20

**relation**
139:21 142:9

**relationship**
30:24 81:4 99:8
114:25 239:8

**relevance**
97:6,9

**relevant**
93:22 96:15,20
113:16,19 151:21
163:14 176:18
226:17 227:7
228:10 229:2
246:23 264:18

**relied**
178:12 179:13

**relief**
182:4

**relies**
177:11

**rely**
177:1 194:16,18
207:17 222:2
274:21

**relying**
179:3,21 180:11
183:13 190:14
242:2

**remained**
112:20

**remediate**
130:25 131:9,12,
14 248:3,5,9,13

**remediated**
136:5

**remediation**
131:22 248:2,5

**remember**
25:10 78:1,3 91:11
93:2 101:14,16,18
102:23 107:3
125:4 158:13
213:7 259:23
266:18

**remnant**
216:21

**remotely**
140:16

**renewed**
42:20

**rep**
199:21

**repeat**
148:17 157:23
167:25 168:6
181:6 188:11
192:3

**repeated**
238:7

**replaced**

Office Phone: 954-712-2600
Email: info@ucrinc.com
Website: ucrinc.com

777 PARTNERS LLC and SUTTONPARK CAPITAL LLC vs LEADENHALL CAPITAL
Shapiro, Mark on 03/05/2025

59:22 210:7,16

**report**
61:12 66:9 70:25
92:1,9 100:8
115:14 117:17,19
118:18,21 119:3,4,
6,16,19 120:5,9,
18,20,23 121:3
122:7 125:12
128:5,6 131:18
135:1,13 148:7,12,
20,24 149:2,5,14
191:6,21 192:6
193:2,8 199:4
204:13 212:14
216:25 217:13,25
218:6,7,15,18,25
219:2,7,12,20
220:15,16 221:2,
12,16,18,21 222:1,
7 223:17 225:6
234:14,17 236:20,
23,25 237:2,6,8,9
241:2,10,20
242:14,17,24
256:22,23 257:8,
12 263:19

**report's**
192:22

**reported**
74:1 85:16 199:2
204:25 205:7

**reporter**
8:8,17 31:9 38:5
69:9 142:20 143:1
167:17 196:21
253:1,4 279:13,16,
19

**reporting**
199:2 204:18
212:20

**reports**
119:11,13 126:19,

25 127:2 160:20
161:9 189:25
193:13 203:2
204:23 209:17,18
218:9 231:6 242:3

**represent**
7:12 10:4 11:15,17
86:12 129:23
167:13 173:18
240:12 260:4
276:9

**representations**
277:13

**represented**
13:6 161:20
200:20 203:8
237:18,20,23

**representing**
154:3

**request**
40:14 75:15 88:2,
16,17 140:17
141:3 144:14
145:8,14 147:7,15,
18

**requested**
40:12

**requesting**
86:18

**requests**
25:7,14 89:11,15,
20 136:23 141:1

**require**
130:8

**required**
14:5 204:9 205:2

**requirements**
89:24

**requiring**
28:7

**reserv-**
80:15

**reservations**
80:15

**reserve**
10:18 277:8

**reserved**
279:24

**resign**
40:13,15,24
112:14 150:11
230:10

**resignation**
73:3 77:17,23
239:17 240:4
253:21

**resigned**
26:2 71:8,10 77:2,
10,11 112:18
150:13,19 152:13
230:18

**resolution**
39:8

**resolve**
39:2,6 53:12 165:4
168:13,19,22
169:1 270:9 272:9

**resolved**
230:22

**resource**
161:2

**respect**
28:19 29:23 34:10
82:7 135:11,19
157:20 159:1
167:10 168:10
169:7 187:4 190:6,
15 198:6,19
199:23 201:9
204:9,17 207:25
217:20 223:10

224:16 231:6
233:7 234:20
236:19 241:9,19
242:23 247:9
250:12 251:1,2
252:3 254:11
256:18,21 257:19

**respond**
91:10

**responded**
178:1

**responding**
136:19,23 137:14,
22,23 138:12
140:25 147:14

**responds**
89:21

**response**
58:16 89:16 92:12
95:7 100:23
137:18 138:5,9
145:21 146:4
147:25 149:7
180:13,14,15

**responses**
138:4 140:17
144:4,23 147:15
180:20 276:24

**responsibilities**
98:2 164:22 171:4
198:9 203:17
204:12

**responsibility**
35:2 198:25 200:8
207:8 230:11,15

**responsible**
25:22 37:2 166:20
204:16 211:8
212:8,10 251:10
258:24 259:2
260:24 261:20

**UNIVERSAL**
**COURT REPORTING**

**Office Phone:** 954-712-2600
**Email:** info@ucrinc.com
**Website:** ucrinc.com

777 PARTNERS LLC and SUTTONPARK CAPITAL LLC vs LEADENHALL CAPITAL
Shapiro, Mark on 03/05/2025

**rest**
191:23 269:10

**restate**
153:19 234:1

**restroom**
243:16

**restructuring**
21:23 22:3 37:3
38:16 40:22 41:24
42:7 53:7 57:14
58:4 164:24 213:4
230:8

**result**
130:19 267:22

**results**
53:2 267:13

**retailers**
204:4

**retain**
15:8 29:20 57:2
68:14 69:2 79:4
91:12

**retained**
11:21 15:2 26:5,6,
7 40:20 41:16
42:13 53:11 59:19
71:11 79:25 91:19
112:15 191:13
209:22 234:7

**retainer**
15:9,10 130:8

**retains**
60:3 245:3

**retention**
82:9,16,17 130:5
247:1,5,9

**retire**
210:18

**retired**
36:2

**returned**
12:23 121:18

**reveal**
17:14 74:19
107:23

**revealed**
253:9

**revenue**
54:16

**reverse**
23:3

**review**
10:18 11:22 12:4,
5,7 15:2,16 20:11
57:21 77:22 78:2,5
85:19 90:5 109:22
110:3 138:1 166:3
167:4 168:3 188:5
208:23 209:11,14,
16 224:6 234:14
238:17 242:13
245:1

**reviewed**
16:17,18 20:6,16,
19 21:4 65:9
106:16 109:24
112:2 142:19
143:7 146:16
147:5 163:9 166:7
208:10,12,16,17
238:11 256:22

**reviewing**
208:19 209:2
220:14 238:14

**revoke**
243:2

**RICO**
174:5,14,18 175:8,
18 177:3 178:13
180:21,24 181:10
183:6

**rid**
33:17

**right**
8:18 10:18 15:22
20:7,25 21:1 26:3
28:22 29:13 47:8,
10 50:25 51:14
52:7 53:16,21
55:25 57:14 62:10
63:12 64:22 66:21
69:13 71:12 75:25
76:10 77:3 84:1,4,
5 85:8,14,17 87:12
88:14,21 89:24
91:24 94:4 95:6,9,
17 96:7 97:20
98:3,10,14,20 99:6
100:18 101:10
102:1,5,8 103:6
104:1 105:2,8
108:13 110:22
114:14 116:10,13
121:15 122:16,19,
23,24 125:19
127:10,15 129:23
132:17 133:5
138:17 143:10
144:11 145:2,11,
19 146:21 148:1,8
150:8,11,16
151:22 152:15
164:19 171:9,22
172:7 173:9 174:5
177:18 179:7
181:8 182:24
183:7 185:18
188:5,16 192:21
197:9 208:3
212:22,23 214:17
215:23 217:15
218:25 219:4,5
220:1 224:25
225:23 226:3
230:14 231:19
232:2,3 233:12

238:13 243:5
245:14,20 246:3
256:9 262:13
266:13,24 268:7,8
269:22 272:13,23
273:3,17,24 274:1
275:1 276:6 277:3,
8,18,20 278:8,12

**rights**
47:5 64:23 90:2,5

**Riley**
10:21 11:21,25
12:8,10 13:7 15:1,
11,22 16:1,22 17:1
20:25 21:13 26:5,7
35:24 36:22,24
40:4 42:13 44:11,
17 47:3 50:10
53:11 57:2 59:12
71:11 79:21
112:15 125:3
132:12,13 139:10,
14,19,22,23 140:6
150:20 152:10,12,
16 163:13,18
164:15 187:11
199:21 213:1
247:25 273:7
277:13,16

**Riley's**
37:21 39:2 46:10
47:5 53:16

**risk**
52:14 169:21
173:6,9 259:22
260:6,19

**risky**
85:8

**road**
55:23

**robust**
262:19

**Office Phone:** 954-712-2600
**Email:** info@ucrinc.com
**Website:** ucrinc.com

**rocks**
264:24

**Roger**
41:5

**Rohr**
242:25

**Rohr's**
242:13,16,24

**role**
12:3,4 21:12 26:17
30:6 39:6 40:22
49:22 164:14
167:10 168:9
169:7,8 198:7,14
200:9,10,11
203:25 226:24
241:23 256:18

**roles**
22:7 26:9,15 37:13

**Ron**
37:8,10,20

**room**
14:17 18:19 38:11

**row**
122:14,15,24

**rule**
113:12 279:22

**ruled**
206:5,13

**rules**
9:21 279:22

**run**
25:14 28:14 30:9,
13,20 67:3 137:24
230:23

**running**
36:3 45:10 61:2,7
65:24 89:18
139:14 165:5
231:4

**Russell**
7:24

---

**S**

**sad**
213:12

**safe**
235:8

**safeguard**
224:9

**said**
16:25 18:19 19:11
20:6 26:9,12,13
37:21 61:6 72:23
73:4 78:14 91:6
92:22 98:5 108:4
109:1 111:1
113:23 114:2,6
118:6 125:1,4
127:24 128:11
131:5 141:13,16,
25 148:6 149:1,2,3
151:6,7,9 155:4,5,
9,13,14,15 159:22
160:9 163:4 179:8,
9,11 185:12,17,18
190:13 191:3,5
194:15 199:11
216:7 217:3,5,8
218:5,25 224:23
234:1 236:1
238:24 243:1
245:12 247:19
258:18 266:14,16
267:12 272:8
277:5 278:14,20

**Saiph**
7:15 20:14 68:12,
14,20 69:2,4,6,7,
11,12 70:9,16 73:3
78:20 79:1,4,9,13,
17,24 80:7,13,20,
24 82:9,16,18 88:2

99:25 100:1,2,5,25
101:7 117:20,23
118:4 121:13,18
122:1,8 125:9
126:5,15 127:11
153:23 154:3
156:15 157:14
160:11,12 163:2,5,
25 164:9 173:18
174:12 186:11
187:4 188:1
189:20 190:24
191:12,17 193:14
224:1,11 227:1
237:14,16,17,19,
20,21,22,24 238:5,
22 239:3,8 240:10,
13 253:10 256:16,
19 257:14 258:10
259:13,20 260:5,
19,23 262:11
265:18,23 274:17,
18 275:17

**Saiph's**
242:13 258:3

**sale**
32:3,5,19 48:4
58:23

**sales**
46:11 129:13
214:13

**same**
12:17 30:4 35:4
54:18 69:15 72:18
73:16 77:14
114:13 118:13
122:24 144:8
150:13,16 190:6
252:3,4

**saw**
110:12 129:19
157:7,8 205:25
210:19 275:11

**say**
17:23 19:24 22:5
30:13 41:7 44:15
47:10 54:7,23
55:12 56:2 64:12
69:9 72:13,20 78:4
80:8 82:3,4 89:7
99:23 103:11
105:24 120:20
127:6 132:8
135:23 140:7
144:14 151:6
153:18 155:12
160:11 165:19
168:14 169:17,23
171:11 172:6
174:12 178:16
184:8 186:18
192:10 194:24
200:16 206:20
207:7 209:25
211:18 212:25
218:19 223:9
226:19,22 234:12
235:8,19 237:15
240:1 244:13,14
245:19 248:24
251:20 253:22
260:18 266:25
269:10 271:13

**saying**
38:25 76:9 85:23
89:13 109:7 117:4
156:17 162:6
163:1 176:22
191:4 217:7 226:7
258:9 261:16
263:19 265:14
266:20 269:22,23
271:4,5 278:17

**says**
41:11 53:11 84:7,
14,22 85:4,7,22
86:5 88:16,17
121:17,25 122:6,



Office Phone: 954-712-2600
Email: info@ucrinc.com
Website: ucrinc.com

15 142:15,23
145:13,14 146:8,
20 147:3 223:6,8,
11 225:17 271:21,
22,25

**scanned**
197:7

**scenario**
57:10

**scheduling**
18:6

**Schwartz**
41:5

**scope**
39:13,14,17,22,25
40:2 43:8 51:19,23
52:2 53:15 67:1
91:20 131:13,14
218:1 249:11
267:5

**screen**
149:22

**scripts**
100:14

**search**
11:2,3,5,7,8 20:13
41:21

**searchs**
244:5

**SEC**
67:21,23

**second**
37:11 49:1 87:13
121:2 128:8
132:24 143:21
166:12 173:21
195:2 219:18
274:13 275:2

**secondhand**
61:11

**seconds**
272:3

**section**
121:9

**securing**
65:19 96:1,6

**security**
135:19 162:10
189:16 198:10,15,
19,22 199:24,25
204:2,9,14,17
259:22 260:6,19
261:8,9 263:14
267:4

**see**
51:18 53:11 54:7,
17 56:3 84:9,16
85:5 86:3,6 121:23
122:3,14 123:6
140:1 189:15
195:5 208:20
239:6 244:6
255:22

**seeing**
120:11 216:12
259:24

**seek**
182:4 190:24
226:16 229:9

**seemingly**
266:21

**Seems**
197:1

**seen**
64:25 68:25 81:17
83:21 110:13
123:22 128:19
135:24 140:21
156:22 157:16
193:11,16 220:19
225:9 239:2
250:18 261:1,3,5

267:12

**seg-**
53:6

**segments**
53:6

**self-sufficient**
212:18

**sell**
48:8,9

**selling**
58:22

**send**
87:10 219:11,14

**senior**
36:1 46:13,14,21,
23 49:7 73:20

**sense**
28:9 38:25 169:14
211:20

**sensitive**
121:21

**sent**
88:25 205:13,17

**sentence**
86:8 122:6

**separate**
11:19 24:21 81:11
108:7 109:5,7
234:11

**separately**
76:7 201:7

**separation**
254:1,15 255:13

**September**
21:2 26:23,24
37:10 93:11 94:2,
5,9,10,11,12 96:25
110:17,20 116:16,
24 117:5 118:12

119:6 120:22
123:3,9,18 124:15,
19 125:14,19
127:3,9,12 128:1
156:6,18 157:1,20
158:2,15,19
159:10 162:19
166:4 193:23
210:9,10 220:15
221:2,17 276:16

**sequentially**
51:3

**serious**
223:25 268:16

**seriously**
182:8

**serve**
89:11 209:23

**served**
53:20 58:4

**server**
16:6

**servers**
58:13

**serviced**
35:10

**servicer**
81:6

**services**
21:19 27:13,15,20
39:25 40:2 43:9

**servicing**
35:14 36:11

**set**
42:22 144:16
171:8

**sets**
62:5 70:8

**setting**
64:16 171:17



**UNIVERSAL**
**COURT REPORTING**

Office Phone: 954-712-2600
Email: info@ucrinc.com
Website: ucrinc.com

**settle**
155:2

**settlement**
31:21 35:10 45:25
52:23 133:14
154:19,20

**settlements**
23:1,2 270:12

**settling**
231:24

**several**
166:17 223:24

**SGR**
129:25

**shapiro**
7:2,9 8:10 9:10,12
10:19 13:3 16:13
51:2,4,5,8,9 68:11
76:2,13 77:1 83:1,
3,6,7 86:22,24
87:3,8,21 116:4
118:22,23 119:1
120:4 126:23
128:9 140:13,14,
22 143:14,17,24
150:5 151:15
154:6,10,11 168:2
177:24 183:23
195:17 198:1,6
208:1 220:13
245:10 274:10
278:3

**Shapiro's**
10:16

**share**
186:1 195:19
261:11 276:7

**shared**
35:17 118:3 260:8
261:10

**sharing**

196:23

**Shawn**
73:18 77:19 80:4
81:1 83:19 88:4
89:12,13 90:25
92:16 110:10
112:7,8 117:10
123:22 135:22
151:17 155:19
161:21,25 162:14
163:12 185:20
187:1 189:7
198:23 205:23
208:13 216:18
217:7 238:1
246:17 248:10,11,
12 255:21 265:4,5

**Shawn's**
89:16

**she**
48:18,23 66:18
94:22 102:24
103:1 112:17,18,
20,23 200:8,9,11

**she's**
102:24 112:21,23
151:16 199:25
200:1,14

**sheet**
24:19,25 25:2 46:1
123:6

**sheets**
24:22

**Shelly**
72:3

**Shield**
32:12

**short**
13:11 268:12

**short-term**
11:25

**shortfall**
60:10 81:19 234:6
267:19 278:18,19,
25

**shortfalls**
234:19,23 235:9

**shortly**
260:2

**should**
17:24 63:15 75:17
89:14 134:23
136:4 147:8,12,18
187:23 189:16
207:19 224:23
249:16 270:16
271:14

**shouldn't**
41:7 88:5 153:17
189:15

**shouldn't've**
127:21

**show**
172:4

**showed**
43:2,3 217:11
258:6

**Shutts**
7:15

**sic**
157:20 162:19
183:4 185:20
210:3

**sick**
210:21

**side**
43:17,18 57:6
74:2,16 79:21
163:18 201:5,8

**signature**
279:24

**signed**
42:18 137:18

**significance**
158:25 159:14

**significant**
52:10 133:20
158:3 175:2
276:20

**SILAC**
31:14 48:3

**similar**
22:7 37:1 44:1
49:20 53:20 54:19,
20 81:7 90:6
203:24 215:16

**similarly**
222:12

**simply**
131:25

**since**
65:1,2 254:14
255:12 262:21
263:11

**Singerman**
57:15

**single**
20:18 170:13

**sir**
64:3 109:6 231:9

**sister**
151:17

**sit**
174:17 179:3
190:1 192:21
200:24 205:15
218:17 227:5
237:4 238:3 242:5
246:11 247:8
252:17 255:24
262:9 264:16
267:9,21


**UNIVERSAL**
**COURT REPORTING**

**Office Phone:** 954-712-2600
**Email:** info@ucrinc.com
**Website:** ucrinc.com

**situation**
59:20 213:18

**situations**
21:16 38:19 59:10,
13 60:1

**slow**
143:2 153:1

**slowing**
153:11

**small**
15:11,13 32:20,22
214:2

**smaller**
172:2 214:5

**Smith**
7:23 11:14,15 12:6
15:15 19:21 57:7,
8,11,15 65:5
71:23,25 74:9
107:10 108:4,7,9,
12 109:19 137:3

**software**
57:25 58:2

**sold**
33:7 46:25 48:1,10
63:1,6

**some**
8:2 16:21 19:22
20:6 24:12 28:2
31:7 33:8 46:11
48:8 49:16 50:7
52:20,22 54:11
56:8 61:19 62:6
70:24 73:4 74:5,15
88:3 92:17 99:5
100:11 107:6
108:15 116:11
117:2,11,13
119:22 131:17
142:18 143:6,10
146:16 147:5
149:23 155:22

157:13 158:23
163:24 166:13
167:3 179:13
184:6,7 194:5
197:13,16 203:19
208:17 209:3
213:15,16 223:16
225:3,10 226:5
229:24 231:25
234:13,25 240:5,
21 244:17 248:7
249:15 255:25
256:7 259:24
260:14 261:18
266:24

**some-odd**
268:12

**somebody**
191:18 207:8
208:5 243:15
251:13 261:19
265:14

**somehow**
236:9

**someone**
56:20 93:8 136:10
150:7 205:6 226:6
253:16

**something**
8:14,21 27:14
32:19 45:6 62:2
78:2 94:6,14 110:7
128:19,21 129:20
138:1 144:12
195:5 207:17,19,
22 217:17 228:18,
20 230:1 249:16
254:19 259:5
267:14 268:24
269:1 275:6,7

**something's**
56:2

**sometimes**
16:6 21:16,17,18
28:8 29:10 30:21
38:22,23 49:7
56:15 59:17,21
214:1 250:16

**somewhere**
32:18 43:5 68:17
90:21 194:9

**son**
135:2,4

**soon**
240:13

**sorry**
23:12 31:9 38:9
44:20 49:8 61:9
62:12 69:9 109:6
118:15 125:1
126:22 134:10
137:10 144:2
154:10 159:20
172:12 173:20
210:1 218:4 221:5
227:17 233:3
235:19 239:25
251:20 253:1
261:2 267:25
272:18 278:16

**sort**
54:11 200:14
211:7 254:6

**sorts**
30:9 187:7

**sought**
79:3

**sound**
96:3 195:5

**sounds**
61:5 104:13 171:3
266:23

**source**

41:9 46:10 92:15

**sources**
93:22

**south**
190:12

**southern**
10:9 165:21
232:13

**Spalding**
7:21 8:5

**speak**
18:12 64:3 73:14
76:12 77:12 81:20
106:10 153:17,18
156:12 193:18
217:3 218:3,5

**speaking**
47:19 181:18
182:19,20 207:4
232:23

**speaks**
147:2 271:24

**special**
97:6,9 194:21
200:8

**specialized**
57:24

**specialty**
22:18 46:1

**specific**
50:18 98:24 102:3,
6 113:24 124:5
128:20 136:17
157:6 176:6
191:11 193:9
207:25 211:19
245:11 269:1

**specifically**
15:8 72:1 90:24
91:11 92:8 94:13
99:17 109:25



**Office Phone:** 954-712-2600
**Email:** info@ucrinc.com
**Website:** ucrinc.com

777 PARTNERS LLC and SUTTONPARK CAPITAL LLC vs LEADENHALL CAPITAL
Shapiro, Mark on 03/05/2025

150:6 172:19
217:11 223:6
229:11 248:13
258:18

**specificity**
145:16

**specifics**
81:16 138:8 155:3
247:7 250:6,9

**specify**
10:4

**spectacular**
20:20

**speculating**
205:14

**speed**
163:16

**spell**
185:23

**spending**
211:15,16

**spends**
211:12,14

**spent**
48:5 134:15
213:21

**spoke**
42:10 73:10,11
85:11 117:10
138:13 155:18,19,
23 156:1 193:23

**spoken**
47:16 106:12,14
138:9 154:21,24
155:11 160:22

**sports**
22:22

**sprawling**
213:9

**spring**
78:16

**stability**
247:16

**stabilize**
46:7 52:13

**stabilized**
45:20

**staff**
12:2

**staffed**
24:18

**stage**
173:8

**stake**
133:24 215:1

**stakeholders**
38:2,6,18 63:19
203:18 217:20

**standard**
100:16 261:7

**stands**
49:6

**Star**
32:19

**Starr**
8:3,5,19,22 9:2,9
10:13,23 12:16
13:2,5,9,22 14:2,
19,25 15:6,7,18
17:15,21,22 18:10,
16,22,24,25 19:6
21:25 22:1 25:21
29:16,17 30:15
31:22 36:20 38:7
42:4,5 43:22,23
51:1,7 61:6,8
64:11 67:16,17
68:1,4,10 69:10,20
70:12 72:11,21
75:3,7,9,10,21

76:1,4,11,14,20,
22,25 78:24 82:13,
14 83:1,5,15,23
86:22 87:2,7,12,19
97:18 101:22,23
103:4,17 104:14
107:20 108:1,3
111:7 112:12,13,
19 114:7 115:20
116:3 118:21,25
119:9,12,16,20,24
120:1,3,13,15
121:8 123:7,12,25
124:7,11,12 126:6,
11,15,17,21 127:7,
18 128:2,25 130:3,
4,13 133:7 134:14,
24 135:17 136:6,
14 137:11 138:18,
19 139:25 140:12,
16,20 141:14,22
142:7 143:9,13,16,
20,23 144:3,5,7,9,
13 145:3,4 147:6,
13,23 148:11,18
149:11,21 150:4
151:24 153:14,21
165:15 181:4
183:18 195:22
196:4,6,14,16
197:3,5,18 219:18,
24 236:1 243:22
277:24 278:2
279:4,11,15

**Stars**
32:18

**start**
16:24 52:20 121:2
204:19 276:14

**started**
8:15,16 22:17
50:23 93:3

**starting**
7:12 61:22,23

184:20

**starts**
83:25 87:25

**state**
7:11 9:10 67:13
178:7

**stated**
159:24 160:1
174:7 191:10,21

**statement**
26:8,11 34:9 183:5
190:22 191:10
207:14 209:3

**statements**
165:25 208:2

**States**
8:24

**stating**
84:4 236:16

**status**
30:18 114:24

**stent**
34:1

**step**
22:10 269:7

**steps**
54:19,20 55:11
198:18 201:16
263:15,23

**Steve**
26:9,14,18 27:6
28:5 30:7,14,23
41:6 80:4 93:6
94:17,18 104:16,
20 151:8 187:1
209:22 225:22
226:1 227:2,6
229:13 230:20
252:3,8,12,18

**Steven**

**UNIVERSAL**
**COURT REPORTING**

**Office Phone:** 954-712-2600
**Email:** info@ucrinc.com
**Website:** ucrinc.com

777 PARTNERS LLC and SUTTONPARK CAPITAL LLC vs LEADENHALL CAPITAL
Shapiro, Mark on 03/05/2025

26:1

**stick**
197:2

**stickers**
196:8

**still**
8:24 24:13 41:7
48:7 86:8 112:21
133:3 134:4
210:11,19 214:12
216:18 240:10
261:14 268:20

**stocking**
48:2

**stolen**
216:20 223:13

**stop**
52:15 104:19
181:17 182:3,19
213:11 214:11

**strapped**
45:23,24 46:3
133:9

**stray**
265:13

**Street**
31:20,23,24

**strike**
175:14 197:21
208:8 226:13

**string**
83:22 87:25 90:15

**structure**
50:17

**structured**
22:18,25 23:2
31:20 35:9 43:24
45:25

**struggle**
89:14

**stuck**
8:24

**studio**
32:4

**studios**
22:21,22

**stuff**
187:18 274:15

**STX**
32:4

**sub-**
18:14

**subject**
83:17 146:8
155:20 235:9
252:13 276:5
277:21

**Subjection**
162:12

**subjects**
77:13

**submitted**
34:8 51:14 131:18
240:20

**subsequent**
127:1

**subsequently**
105:14

**substance**
13:19 17:14 18:15
19:4,5 74:19
107:23 176:10

**substantial**
142:15 143:3
222:22

**substantive**
19:7,8

**successful**
52:24

**successfully**
115:10

**sued**
98:13 213:15

**suffered**
130:18

**sufficient**
48:16 50:9 146:12
259:10

**suggested**
250:1

**suggesting**
270:18

**suggests**
256:16

**suing**
170:16,20

**suit**
107:9 127:15
186:16,17 214:22
269:17,23 270:7

**sum**
13:18 18:14
107:23 176:9

**summer**
69:15 79:5

**superfluous**
168:18

**supervise**
212:16

**supplement**
92:3 222:16 223:4
225:5

**supplemental**
117:16,19 119:3,7,
15 120:2 121:3
125:11 219:20
220:16 222:7
225:6

**supplied**
222:4

**support**
56:17 147:4 149:7
180:24 181:10
183:5 227:2

**supported**
33:4

**supporting**
146:15,20

**supportive**
80:9

**supports**
149:10

**supposed**
63:18 188:15

**Supposedly**
100:14

**sure**
12:10,12 14:7
15:10 32:16 48:15
51:25 62:14 68:3
69:22 70:4 90:25
92:8 97:3 103:23
110:2,6,11,14
112:1,6 114:9
115:13 119:23
120:20 139:11
149:14,24 152:1
157:25 167:7,13
174:22 185:17
186:24 188:13
191:2,25 192:5
204:18 208:17
216:15 217:3
226:21 227:18
230:12,16 231:7,
22 243:14,17
263:7 264:16,19
274:16 277:4

**surrounding**
28:21

**UNIVERSAL**
**COURT REPORTING**

Office Phone: 954-712-2600
Email: info@ucrinc.com
Website: ucrinc.com

**suspect**
8:20 206:12
258:23 262:11

**suspected**
158:15 259:21
260:6

**suspects**
205:25 206:1,4

**suspend**
277:10,22

**suspended**
258:2

**Sutton**
94:23 254:18,20,
22,24 255:2,3,4,
12,18 256:1,7,12

**Suttonpark**
7:25 10:7 25:1
35:8,9,12,16,19,22
36:3,5,8,10,12,14
45:13,20 60:6,7,16
65:6,7,13 67:2
68:15 71:5 81:5,6,
7 82:1 89:19
95:14,25 100:22
102:23 103:1
132:4 140:3
162:11 170:3,10,
16,20 171:13,23
172:13,23 187:5
198:8 199:21
200:12,15,18
202:17 204:15
206:8 210:4 211:5
214:18 217:12
228:4 234:4,5,8,21
235:9,15 237:1,7
239:16,20 240:4
243:2,4 244:7,14,
18 246:9,12
248:19 249:2
252:8,19 253:20
254:1,25 256:17

266:5,11

**Suttonpark's**
36:17 218:11
253:3,12 264:24

**swear**
8:8

**swore**
240:19

**sworn**
8:11 207:23 209:3
238:19 239:7
240:20

**system**
65:9,11,12 67:10
95:5,8,11,23 96:10
105:2,5 116:16
120:6 123:13,18
133:2,6 187:8
188:9 191:23
199:14,19 200:17
201:1 202:18
216:21 245:4
247:17 248:3,5,9,
13,19,22,25
249:20 250:13,22

**systems**
79:17 90:9 100:16,
20,22 103:9,13,20,
21 104:8,13,15
129:4 131:8,10
135:11 136:2
146:18 187:14
243:4 245:8
250:17,18 251:11
259:11,14 264:11,
18

---

**T**

---

**table**
23:10,11,12,13,14,
24 24:3 25:6,11

**tables**
23:23 25:8

**tad**
38:8

**Taft**
66:15

**Taheri**
73:18 77:18 80:5
83:20 84:4,7 86:2,
5,11 87:5,6 88:4
112:8 117:10
151:17 155:20
161:21 162:2
163:12 185:20
187:1 189:7
198:23 199:1,6,11,
19,20 200:3
201:11 216:22
222:5 225:12
228:2 238:1 241:3,
12,21 243:7
246:17,19 254:9,
11 255:21 264:3

**Taheri's**
86:14 208:13,19
243:11

**take**
18:18 29:18 38:21
54:21 61:25 64:8
68:1 75:19 115:20
128:21 149:21
151:4 182:7 195:6
198:18 203:21
209:19 220:1,5
230:13 243:12
262:5 273:24
275:2 276:4

**taken**
9:5 12:22 37:10,14
48:7 68:7 76:17
87:16 115:25
134:4,17 141:17
150:1 167:21

193:18 195:13
197:25 201:16
211:12 220:9
244:1 274:6

**taking**
22:6 28:24 175:12
198:22 203:19
268:17

**talk**
28:17,23 125:17
138:15 156:23
158:21 174:22
185:9 189:7
193:20,22 201:6
251:7,13 255:21
263:18 264:13

**talk-**
173:19

**talked**
17:9 32:13 48:4
49:24,25 50:1
77:8,19 113:21
129:5 155:5,9
156:5 161:15
169:6 178:2 185:8
191:11 213:8
263:22 274:20
276:17

**talking**
38:11 94:11,12
117:24 138:9
139:17,21,23
140:1 142:3
172:21 173:21,23
184:12 244:15
260:11 263:4
271:18 272:20

**Tammy**
49:25 50:11

**tap**
8:14

**targeted**

UNIVERSAL
COURT REPORTING

Office Phone: 954-712-2600
Email: info@ucrinc.com
Website: ucrinc.com

777 PARTNERS LLC and SUTTONPARK CAPITAL LLC vs LEADENHALL CAPITAL
Shapiro, Mark on 03/05/2025

97:24 98:20,25
102:4,7 103:10,13,
22 104:8

**targeting**
99:13,18 101:24
229:11

**targets**
252:15,19

**task**
41:23 92:18

**team**
23:9 56:21 57:20,
24 63:22 64:17
92:16 139:13
152:16 153:9
212:11,14,17,23

**tech**
63:7 128:8

**technical**
91:24 92:10 157:6
163:7 190:11
260:14

**technically**
21:21 80:22,24

**technology**
22:21 32:17 33:3
63:7 255:20

**tell**
33:1 74:17 77:25
91:2 96:22 120:8
125:19,21 126:1
156:13,21 163:6
182:2 183:12
187:15 202:22
211:13 213:3
215:4 223:1,5
245:17 248:24
250:11 271:13

**telling**
88:8

**ten**
120:10 202:22
215:11 216:24
221:19

**tend**
213:23

**tends**
49:22

**tenure**
162:10 273:1

**Teresa**
35:25 36:2 60:25
61:1,7 66:12 82:4
161:22 199:20
234:3 248:20
251:8 278:23

**term**
10:6 32:8,24
190:12 207:9
236:4,18

**terminated**
26:22 48:10 136:9

**terms**
11:2,3,5,7,9 43:8
50:13 62:5 85:5
128:16 130:21,22
157:7 173:2 201:3
209:4 248:20
265:22 274:17

**testified**
8:12 9:17 13:10
15:1 77:1 86:12
93:21 96:24 98:12
116:15 141:7
148:3 173:11
186:23 198:7
199:6 200:2 210:6
223:23 225:25
226:4 228:2
229:24 240:5
242:20 243:6
248:12 263:3

278:3,16

**testify**
17:17 46:6 127:19
176:19 179:17
274:23

**testifying**
159:15 235:2

**testimony**
9:24 18:8 86:14
150:6 157:19
158:1 209:3 213:7
231:5,9,12,13
258:23 263:15
264:20

**testing**
18:16,17

**than**
28:14 30:25 34:17
36:17 37:13 44:10
62:9 81:2 82:1,4
89:19 91:18 95:16
96:19 98:9 100:2
102:15 118:12
123:23 125:18
129:5 144:12
149:2 157:8
158:22 163:6,14,
17 171:4 173:13
174:2 176:9,13,23
177:7 178:2,17
187:8 189:20,24
193:15 194:11,15
201:21 205:25
206:2,4 210:14
211:1,3,9,17
214:19,22 215:1,
10 232:23 235:2,6
237:22 239:23
241:9,19 243:20
252:11,17 253:15
262:5 265:3,13
268:13,19 275:5
276:19,22

**thank**
8:7 38:10 68:3
116:5 119:25
143:22 180:5
183:2,15 185:7
195:10 224:20
227:20 253:4
274:10 279:4,6,8

**Thanks**
251:23 279:11

**that**
8:1 9:22 10:3,14,
20 11:7,11,21,25
12:12 13:6,10,15,
24 15:1,9 16:4
17:16 18:19 19:11
20:6,7,12,14,16
21:1,25 23:4,5,7,
21 24:19 25:5,6,11
26:1,5,10,14 28:9
29:5,9,13,15,16,
20,24 30:2,22
31:2,11,17 32:5,7,
12,14,15,19,20,23
33:7,12,16,20
34:7,9,11,19 35:10
36:4,12 37:8,21
38:15,24,25 39:9,
23 40:11,12,14,17
41:3,4,10,14,17
42:18,22 43:12,13,
14,15,22 44:10
45:20 46:2,6,10,16
47:3,8,10 48:2,4,
16,20,24 49:19,22
50:9,20 51:9,14,
18,23 52:11,16,23,
24 53:9,11,15
54:1,4,20 55:11,
19,22 56:5,8,18
57:5 58:2,9,14,21
59:1,3 60:1 61:1,2,
13,25 62:1,2,8,22,
24,25 63:5,14,17,
23,24,25 64:8,12,

**UNIVERSAL
COURT REPORTING**

**Office Phone:** 954-712-2600
**Email:** info@ucrinc.com
**Website:** ucrinc.com

777 PARTNERS LLC and SUTTONPARK CAPITAL LLC vs LEADENHALL CAPITAL
Shapiro, Mark on 03/05/2025

14,25 65:1,2,8,21, 22,24 66:2 67:1 68:16,19,21,24 69:1,6,8,19 70:22 71:7,11 72:7,13,15 73:4 74:7,9 75:25 77:1,19,22,25 78:8,9,12 79:3,14, 20 80:1,6,10,12 81:14,16,17 82:9, 13 83:10 84:4,7,9, 14,16,21,23,24 85:4,5,7,8,21,24 86:3,5,6,8,12,14 87:1 88:8,16,25 89:7 90:1,3,6,23 91:4,10,12,14,21, 24 92:13,24 93:5, 6,7,13,14,21 94:4, 5,23,24 95:3,6,11 96:3,9,20,24 97:9, 19 98:12,16,19,25 99:2,18,20,21 100:9,15,24,25 101:3,5,6,8,13 102:4,6,10,18 103:2,9,11,13,21 104:3,4,6,8,24 105:13,14 106:3,6, 17 107:1,5,12,13, 15 108:14,17,18, 24 109:12,14,15 110:11,14,18,24 111:25 112:4,12 113:9,12,15 114:6, 9 115:7,14,16 116:11,12,15,19, 21,22 117:4,9,12, 13,20,22 118:3,5 120:8,11,13,16,20 121:12,18,19,23, 25 122:1,3,6,7 123:8,17,24 124:17 125:1,4,6, 10,14,21 126:4 127:6,13,19,24

128:10,11,12,19, 21 129:2,11,15,20, 21,23,25 130:1,3, 7,10,18 131:1,2,6, 15,16,17,21,25 132:3,13 133:6,8, 16,20,21,22,25 134:6,9,10,19 135:14,15,25 136:2,3,4 137:16 138:7,18 139:15 140:2,12 141:7,8, 16,17,18 142:1,2, 5,8,9,12,15,16 143:4 145:24 146:4,15,17,23,24 147:4,12,22 148:3, 5,6,13,21,23,25 149:3,6,10 150:13 151:1,4,7,9,14 152:2,25 153:1,3, 5,6,7,8,13,19 154:22 155:5,6,7, 12,20,23,24 156:8, 14,15,17,21,25 157:5,9,13,19,23 158:1,5,19,23 159:5,7,16,22,23, 24 160:6 161:10, 20 162:3,5 163:1, 5,7,19 164:3,8,12, 16,19 165:12,15, 20 166:1,3,7,8,13 167:4,7,16 168:21, 22,25 169:3,6 170:2,4,20,23 171:9,16,17,22 172:2,4,20 173:18 174:6,7,8,12,14 175:3,4,12,18 176:3,6,7,16,17, 18,19,20,22 177:3, 10,11,12,21 178:13 179:5,6,9, 11,13,16,17 180:10,11,12,20,

21,22,24 181:1,7, 9,10 182:7 183:5, 6,16,18,23 184:13, 17,19,24 185:12, 13,16,23 186:10, 12,14 187:6,7,22, 23,24 188:1,4,6,8, 11,15,16,25 189:3, 4,8,12,15,17,19,21 190:2,3,4,7,10,13, 15,16,22,23 191:3, 4,6,10,11,13,18, 21,22 192:2,3,7, 10,15,23 193:3,6, 13,15,25 194:8,9, 10,13,15,17,19,20, 21 195:5,7,18 197:6,10,12,13,15, 21 198:7,18,19,22, 23 199:1,6,7 200:3,5,8,12,16, 17,20 201:7,8,10, 11,24,25 202:4,6, 20,21 203:1,8,20 204:1,6,8 205:5, 16,18 206:16,19, 25 207:12,16,17, 19,22,23 208:1,2, 3,8,20,21,24 209:2,17,22 210:1, 6,15 211:8 212:2, 21,23,24 213:1,14, 15,24 214:7,14 216:2,3,5,20,23 217:6,7,11,14,17, 24,25 218:2,9,10, 11,12,13,18,19 219:14 220:2,4,22 221:18,22 222:2,3, 7,12 223:3,6,11, 13,24,25 224:5,7, 10,14,17,20 225:4, 8,9,11,13,21,23,25 226:1,2,3,4,5,6,8, 10,11,13,15,16,19, 20 227:1,7,11,19

228:3,6,8,10,22 229:1,2,3,17 230:1,12,16 231:5, 9,17,22 232:8,15, 21 233:5,6,8,9,11 234:12 235:2,8,11, 14 236:3,4,9,10, 11,13,14,17,19 237:3,11,12,25 238:1,7,20,23 239:7,8 240:3,5, 12,15,19,21 241:3, 13,15,21 242:6,7, 17,19,22,24 243:1, 3,4,6,8 244:5,17 245:8,22 246:1,15, 21 247:19,20,23 248:2,10,12,14 249:6,9,10,15,16 250:1,17,18,21,23 251:3,7,10,15 252:1,7,8,12,20 253:10,13,15,19, 22,25 254:19,20, 23 255:19,25 256:4,15,16,22,25 257:4,6,8,12,13, 14,18,22 258:2,6, 7,10,14,18,22,23, 24 259:1,2,4,9,12, 14,16,17,21 260:4, 6,7,8,10,12,15,19, 20,21,22,23 261:8, 9,15,16,18,21,22 262:3,11,12,15,17 263:2,3,6,10,15, 19,20 264:15,16, 20,23,24,25 265:3 266:1,2,4,6,10,11, 13,16,22,24 267:7, 10,15,21 268:14, 19,23,25 269:1,13, 16 270:6,18 271:1, 3,21,23 272:8,9, 20,21,22 273:10, 11,14,15,18,20



**UNIVERSAL COURT REPORTING**

Office Phone: 954-712-2600
Email: info@ucrinc.com
Website: ucrinc.com

777 PARTNERS LLC and SUTTONPARK CAPITAL LLC vs LEADENHALL CAPITAL
Shapiro, Mark on 03/05/2025

274:15,16,19,21,
22 275:1,6,10,11,
13,16,17,20,21,23
276:9,12,13,15,16,
17,19,20 277:5,8,
9,11,13,15,16,20
278:4,8,13,17,19,
21

**that's**
13:8 14:17 16:9,
10,22 17:7,21
18:14,19,22,24
22:8 28:16 31:20
34:2 37:12 39:20
40:8,10 43:5 45:17
53:6 56:6,10,11,25
59:19 61:13 76:7
80:5 84:22 85:23
88:13 91:9 93:17,
23 94:14 97:22,25
101:10 102:10
113:16,24 114:10
115:3 117:24
118:1,5 123:24
125:7,11 126:13
128:18 129:7
131:10 132:4
133:3 134:1
141:13 142:2,23
144:10 157:15
162:6 163:13
164:6 165:21
166:18 167:14
170:1 171:11
172:1 173:13,17
177:12,18,22
178:4 179:15,20
180:5,19 184:16
185:1,11 190:5
191:4 193:23
195:8 197:17
198:15,21 200:19,
21 201:22 203:4
205:19 207:12
213:12,21 215:14

216:15 219:20,25
223:15 227:4
228:5,21 230:1,22
231:10,12 236:3
238:7 243:9
244:16 245:15
248:22 250:20
257:1 264:20
267:14 268:4
269:13 271:25
273:21,23 275:19
276:3 277:18
278:18

**Thatcher**
17:6

**their**
7:12 12:4 22:24
25:7 26:15 27:13,
15,19 29:2 31:14
34:13,14 35:10
36:17,19 38:21
40:9,13 41:23
47:11 49:15,16,17
50:8 58:12 61:24
64:7,23 74:1,17
81:12,22 88:2
151:18 170:10,16
173:6,11,13 174:3,
4 205:17 207:9
224:11 227:2
234:10 246:12
264:18 269:9,18
273:19

**them**
11:6 14:16 22:6
24:12 40:15,20
41:2,11 46:22
59:21 66:21,22
77:3 80:16,19
88:8,10 108:20
109:17,18 128:4
129:23 137:19,21,
24 153:18 166:18
184:20 187:14
188:2 193:15

208:17 217:3
228:12 235:1
260:21 264:13
266:14

**themselves**
12:11

**then**
12:5 34:15,17
49:13 52:21 60:15
74:5,8 83:16 85:3
89:21 93:10 119:3,
15 123:22 131:1,
24 132:2,10
133:23 136:10
146:7,19 150:18
158:6 159:22
174:12 177:20
179:10,14 188:1
189:15 196:10
204:19 208:13
214:5 219:8,15,17
229:8 231:5,18
232:22 263:8
264:15 273:25

**theoretically**
184:18

**theory**
229:10

**there**
9:25 13:10 14:4,18
17:25 18:1 24:10,
19 27:1,2,3 28:2
30:4 31:2 32:8,17,
19,22 33:25 34:8,
12,16 35:24,25
37:17 39:15 42:6,
17 43:6 45:1 51:21
52:15 54:4,10,19,
20 55:5,11,14
57:13,14 58:24
59:3,4,6,9,10,18
62:12,14 63:3,13
70:14 78:1 88:3
89:13,22 92:3 97:3

99:16 103:23
104:7,12,19,20,23
105:4 108:18
110:6,7,24,25
112:7 113:10
117:2 118:2,3,10
121:5,12,20
122:12,14 123:2,4,
9,17,20,24 124:9
125:6 127:8,22,23,
24 132:15,18
133:4,21,24,25
136:1 139:9,12
141:5,6 146:23
148:17 151:11
157:5 158:24
160:7,15 162:9
163:12 166:12,13
168:6,15 170:15,
17,19 172:1,7
174:5 178:3
180:20 181:9
183:4,6 184:7
186:19 187:12
188:18 189:4,22
190:22 191:5,20
192:6 194:9,14,20
197:2,16 199:16,
17 201:10 202:20,
22,24 204:12
206:7,10 208:3,20
210:15 211:10,16
213:13 214:12,17,
25 215:25 216:9,
13,20,23 217:3,10
222:1,4 223:24
224:23 226:1,4,6,
7,10 228:17,22
229:1,8,15,18
233:18,21 234:13,
19 237:23 239:1
241:12,17,22
242:16,23 243:2
244:6 246:18
248:6 249:14,15
250:2 252:1,11

UNIVERSAL
COURT REPORTING

Office Phone: 954-712-2600
Email: info@ucrinc.com
Website: ucrinc.com

777 PARTNERS LLC and SUTTONPARK CAPITAL LLC vs LEADENHALL CAPITAL
Shapiro, Mark on 03/05/2025

253:14 254:18,24
259:3 260:13,14
261:12 265:24
271:9 273:14
274:19,20 276:10,
15,19

**there's**
9:22 11:6 25:13
27:6 31:4,17 36:4
38:20,22 39:22
42:21 54:10,11
56:2 57:15 59:23
60:10 63:19 66:8,9
84:13 86:2 88:9,13
91:8 94:6,24 95:1
100:14 103:12,20
109:17 113:14
114:21,22 119:2,
14 121:9 133:2,5,
19,20,23 141:17
148:16 153:16
160:5,13 161:14,
16 168:16,18
169:19,20 172:7,8
174:5 183:19
188:24 189:15
192:24 194:7
195:3 204:13
207:11 212:11,21
214:21,25 215:23
216:7,8,12,19
225:3,10 226:6
227:6 228:3
229:22,23 230:13,
14,20 231:7,14,17
233:13 239:25
242:10,11 244:17
245:7,8 249:4
250:15 255:1
263:19 264:19
268:23 277:1

**therefore**
151:1

**these**
28:5,6 31:7 33:12,

15 38:19 45:22
48:7 52:1,20,23
53:8 89:11,20
93:21 95:2 106:7
118:15 119:10
122:1 128:3,11
132:17 140:25
144:23 149:13
207:15 214:9
217:13 220:19,22
222:19 223:20
230:4 232:2 260:7
266:21

**they**
7:12 11:17,24
15:9,10,13 22:5,
17,18 24:18 26:20,
22 27:13,14,17,19
28:7 30:22 32:14
33:4,5 35:25 36:2,
18 41:2,19,21
45:14,17 46:9
47:5,7,9,25 48:18
49:8,19,21 50:1,
12,15 58:1 61:2,
10,12,14 63:5
64:15 65:1,3,10
69:18 73:23,25
74:16,22 75:4 77:9
79:11,14 80:13,14,
22 81:12 82:12,19
88:10 90:10 91:2,
5,6 92:17,18 93:5,
15 94:6,8,10,14,
18,19,20 99:20,22,
23 101:9 105:25
106:2,3 110:12,13
111:15,16 115:7
118:4,11,19 130:8
135:14 136:4,9
147:4 153:19
159:5,23 160:9,10,
11 170:7 172:7
175:23 186:12
187:6,10,13,15

188:1,25 189:4,15,
21 190:9 203:13,
16,18 205:24
208:6 212:15
217:3 225:15,18
226:19 229:10
230:13,24 235:6
238:12,15 243:7
246:1 247:6 259:6
260:1 262:2 264:8,
9,10,12 265:12,14
266:10 268:16
269:11,17 270:16
271:1,14 273:17

**they'd**
65:1

**they'll**
30:22,23

**they're**
24:13 26:19 27:15
28:13 29:6 30:21
36:19 40:21 41:22
44:16 59:20 61:1
88:8 94:17 115:1
129:13 138:24
144:8 159:8,12
172:8 174:10,11
176:2 212:18,19
217:10 266:8
267:7,8 268:9,11
269:22,23

**they've**
25:8 27:14 45:24
46:3 64:23 203:8,
11 217:5,8 225:19
269:5,13

**thin**
24:17

**thing**
16:25 23:4 44:7
83:22 122:24
228:21 272:14
273:17

**things**
20:14 23:4 30:22
33:18 37:6 48:11
49:19 50:9 52:18
53:8,12 54:15
55:23 90:5 131:2
143:21 160:6
166:18 187:8
204:5,13 210:24
214:16 231:14
246:1 249:6

**think**
17:9 20:18 23:25
24:10 27:11 32:22,
23 36:10,11 40:7,
23 41:1 43:2,5
44:6 48:18 50:15,
17,21 52:12,16,24
53:3 55:18 56:1
58:18,21,23 59:1
63:2,20 74:14
77:19 79:11 80:5
87:20 90:22 92:16,
22 93:1,24 94:3,7,
10 95:21 97:7
102:10 104:10
106:4 112:4,18
114:5 117:12,18,
19 124:9 130:23
133:8,16 134:3
135:10,22 141:25
142:8 147:2,7
148:16 150:16
151:11,12 153:16
155:8 159:9,10,11
161:20 164:23
165:15 169:10
170:7 173:7
176:19 180:23
184:7 185:1,18
186:9 187:2
188:18 189:6,23
190:9,13 192:2
194:18 195:22
196:25 197:22

**UNIVERSAL**
**COURT REPORTING**

Office Phone: 954-712-2600
Email: info@ucrinc.com
Website: ucrinc.com

777 PARTNERS LLC and SUTTONPARK CAPITAL LLC vs LEADENHALL CAPITAL
Shapiro, Mark on 03/05/2025

198:13 201:21
205:8 206:25
207:6 209:2,8,15
211:2 213:11
215:23 216:1,2,7,
11,18 218:14
219:7 222:17
224:18,19 225:21
226:4,5,6 228:18
229:6,17,19,21
230:3 232:16
233:3,9 234:2
236:1 239:1,13
243:6 244:17
247:19 249:16
255:10 259:13
260:13 261:11,12,
17 264:6,9,10
266:14 267:12,14,
21 268:13 270:4,
10 271:21,22
273:6 275:5
278:25

**thinking**
41:10 116:25
117:1 127:14
152:2

**thinks**
268:9,11

**thinly**
24:17

**third**
33:8 35:15 256:21,
22

**third-party**
50:4

**this**
7:8 11:16,19 12:9
13:7 16:8,18,22
18:12 25:13 27:22
28:8 37:12 38:18,
19 40:5 41:16
42:13 43:1 44:4,7

45:9 46:25 47:6
48:10 50:16 51:1,
11,16 52:3,23,25
53:8 55:8 57:10
62:15 64:19 65:4
69:1 70:25 71:5,18
72:5,8,16 73:5,9,
15,23 74:8 83:1,8,
11,19,22,24 84:5
85:11 86:9,11,18,
22 87:2,4,8,11,21
88:6,8,16,17,22
89:7,15,23 92:1,25
104:3,4 106:20
108:25 111:19,22
112:3 113:1
114:18 117:21
118:22 119:24
120:16,18,23
121:1 122:7 123:3,
6,16 125:11,23,24
126:2,6,7,8,18,24
127:12 129:9,15,
17,23 130:11
132:12,16 133:8
134:21 136:16,24,
25 137:2 138:21
139:10,14,18
140:1,6,16,21
142:15 143:13,17,
24 144:1 145:2,3,
8,13 148:23 149:7
151:8,10,12,14,25
153:1,22 154:4
155:2 156:15
157:10,13,19,21
158:3 159:1
160:14,23 161:1,5
162:18 163:10,14
165:3,8,18,19
166:4 169:22
170:23 173:8
177:2 178:9
182:23 184:6,8,10,
15 185:11,17
186:3,8 187:23

190:16 193:19
194:15 195:18
199:8 200:10
203:14,16 204:3,6
206:15 207:25
208:5,11,12,15
209:5,21 211:11,
17,19,24 212:3,7
213:18 217:14,20
220:17,24 221:3,
10 222:23 223:19,
20 225:14 226:12
231:14,25 236:9,
17 238:20 241:4,
15,24 242:14
244:13,16 245:17
246:20,22 247:2,
20 248:1 249:1
251:18 254:25
255:5 262:8
263:14,16 264:2,
18 266:22 267:7
269:24 274:11
275:17 276:21,25
277:10,21

**thoroughly**
264:17

**those**
7:13 10:18 12:6
14:18 20:9 21:19
25:23 27:4 28:22
29:6 30:20,24
32:23 33:11,18
34:2,11,18 37:5
42:8 45:7,12 47:18
48:8,11 50:4,6
52:20 54:15 55:12
57:16 61:20,21
63:10,20 64:25
66:6,10,16,19 67:5
70:23,24 71:1,2
73:4 74:2,15 77:12
83:20 93:11 96:6
97:4,5 98:8 111:4,
11 112:8 114:4

118:17 130:21
134:20 138:1,4
149:12 151:19
164:12 169:7
170:22 176:7
179:14,18 184:19
185:2 189:24
191:21 201:12
203:5 204:16
206:12 208:14
214:16 215:18
218:12,22 224:4,
10 229:3 231:2
234:23 235:13
242:3 245:25
246:1 249:3
251:11,17 276:10,
11

**though**
101:17 224:9

**thought**
50:8 105:22 106:2
115:12 128:5
137:25 144:10
173:21 175:20,21
187:6 196:11

**thousand**
32:20

**thread**
83:11,17

**three**
55:12,18 73:16
77:14 109:17
119:10,13 132:10

**threshold**
215:12

**through**
11:3 25:14 30:23
39:5 40:10,11
46:11 50:6 64:25
66:7 91:4,13 92:14
110:10 117:9,10
129:11 134:10

**UNIVERSAL**
**COURT REPORTING**

Office Phone: 954-712-2600
Email: info@ucrinc.com
Website: ucrinc.com

777 PARTNERS LLC and SUTTONPARK CAPITAL LLC vs LEADENHALL CAPITAL
Shapiro, Mark on 03/05/2025

137:24 141:9,19
148:22 204:20
208:15 212:13
233:12,15 276:21

**throughout**
187:8

**Thursday**
14:4,6,7,9

**thwarting**
272:16

**tied**
191:12

**time**
7:7 12:19 13:7,11
14:21,24 16:11
22:13 34:19 36:16
45:19 48:5 52:11
56:10 59:1 62:15
64:19 68:6,9,22
69:14,15 76:16,19
87:15,18 93:2
115:24 116:2
117:5 120:17
127:15,23 149:25
150:3 151:21
152:25 153:22
155:19,22,23
166:7 167:4,20,23
170:4 178:6
184:14,19 185:2
186:4 187:12
191:13 193:7
195:12,15 197:24
208:18 211:12,14,
15,17 212:2
213:21 223:16
229:24 230:13
231:15 236:6
240:5 243:19,25
244:3 258:2,8
259:15 270:17,18,
20 274:5,8 276:8
277:21 279:4,10

**timeframe**
94:4

**timeframes**
93:13 128:12

**timeline**
14:6 262:7

**times**
9:15,16,19,20 16:7
19:17 38:18 46:12
50:24 53:23 55:17,
22 56:13,15,25
59:23 161:16

**timing**
13:21 92:9,22 95:2
113:21 114:3,8,14
158:12,23 159:15
249:21 256:8
262:14

**Timothy**
63:1

**tip**
94:5 158:14

**title**
164:18

**titled**
121:10

**today**
9:21 20:21 34:17,
22 128:9 141:7
148:6 150:5
154:22 155:6,21,
25 168:22 170:3
174:18 179:3
184:2,5 190:1
200:24 205:15
218:17 227:5
230:3,12,17,21,23
231:14 232:4
235:3 237:5 238:3
242:5 246:11
247:8 252:17
255:24 262:9

263:11 264:16
267:9,21 274:11,
20,25 275:6
276:25

**today's**
7:6 10:1 16:14
17:1 19:2,12,20
20:1

**together**
31:19 43:10,13
50:21 55:1 70:4
130:24

**told**
125:18 126:3
156:25 157:4
162:3 178:17,20,
22 179:16 180:10
201:11 202:20
261:17 272:3
276:24

**Tomorrow**
154:6

**took**
50:20 58:12 80:9
96:11,13 151:6
187:22 214:10

**tool**
202:14,15

**top**
55:12 89:22
122:14,15 134:15

**total**
39:19 170:12,14
216:4,5

**totally**
81:11 178:11

**toward**
119:3 120:12

**towards**
33:19 101:8

**tracking**
65:14,15

**trade**
33:6

**traditional**
37:1,13 80:11
186:13 267:5

**traditionally**
214:3

**trailing**
64:4

**training**
21:10

**transaction**
49:25 50:11,13,21

**transcript**
197:7 279:14,20

**transfer**
115:10,13 118:2

**transition**
35:13,14 115:1

**transitioning**
36:11 115:2

**transmitted**
246:2

**treble**
174:4,8,9,11

**tremendously**
269:18 271:7

**triage**
213:1,3,5 214:8

**triaging**
213:9,22 270:3

**tribal**
32:10

**tried**
20:12 60:22 68:19

**UNIVERSAL**
**COURT REPORTING**

**Office Phone:** 954-712-2600
**Email:** info@ucrinc.com
**Website:** ucrinc.com

777 PARTNERS LLC and SUTTONPARK CAPITAL LLC vs LEADENHALL CAPITAL
Shapiro, Mark on 03/05/2025

**trigger**
202:7 262:4

**triggered**
201:22,25 202:4
258:6

**trouble**
14:15 64:4 187:19
195:3 227:17

**true**
11:21 30:4 35:4
36:4 96:9 166:1,9,
11 207:23 208:3

**trust**
38:24 55:7 62:19
63:3 265:14
266:17

**trusted**
187:18

**trustee**
21:18 59:7,8

**trustworthy**
265:16

**try**
38:8,12 46:21
55:1,20,24 64:9
195:4 197:9
198:14 245:17
258:13 267:3
270:9 272:9
274:12

**trying**
31:18 38:21 46:19
49:17 52:18 53:19
55:6 60:9 61:14,19
97:22 108:22
135:11 165:4,6
168:12,19,21,25
173:6 192:1,21
213:10,11,17
214:10 220:5
231:23 260:16
270:11

**turn**
14:13 51:16
120:12

**turnaround**
13:11

**turned**
135:25 264:24

**turning**
65:6 216:2

**turns**
99:20

**two**
33:18 34:18 35:1,
24 54:2 57:14
70:14 73:6 108:8
109:5,7 119:11,24
132:10 203:2
223:14 277:24

**tying**
160:14 161:8
222:13

**Tyler**
239:3 256:18

**type**
56:17 90:6 203:25
251:13 254:6

**types**
22:22 33:11 37:5
38:19 48:11

**typical**
28:9 45:8 164:24

**typically**
28:1,23 54:4,5
57:5,8 59:12 60:4
250:21

_____

**U**

**ultimate**
34:23 35:2 211:4

262:20

**ultimately**
12:5 25:22,25
35:23 36:13 37:9
55:22 58:23 93:10,
17 113:9 133:14
169:21 187:21
199:3 204:16
211:1 212:19
218:8 230:22
231:24 262:20

**unable**
218:20

**unanimous**
266:21

**unauthorized**
129:3 141:9,23
160:6 190:25
192:17

**unaware**
126:14 205:19
249:12 260:5

**unclear**
205:9 222:23

**uncovered**
158:18 241:22
249:9

**under**
20:13 33:6 49:17
75:5,7 90:2 98:16
197:14 240:10
256:19 273:19

**under-**
166:10

**underlying**
113:1 186:7

**understand**
23:16 26:1 48:18
61:13 70:14 71:10
100:11 103:23
108:22 117:25

124:16 128:22
137:19,20,25
139:2 156:7
159:25 162:22
164:14 165:19
166:8,19 172:15
180:8 181:7
184:17,24 185:2
189:8 193:1
194:13 218:2
232:22 240:3
245:10,18,22
256:8 261:16
267:18 272:19,21
273:21 274:16
277:12

**understanding**
22:14 41:17 49:18
55:9 62:22 70:22
73:2 96:11,17
97:25 98:23
108:20 120:9
121:25 124:10
131:10 156:13
157:4,9,15 198:9
200:21 201:24
202:6,25 203:4
205:19 207:4
224:14 228:7,8
230:7 238:17
239:10 240:8,21
243:8,9 244:16
264:15 271:23
273:23 275:19
277:15

**Understood**
10:11 14:11

**unfavorable**
267:11

**unhappy**
85:8,22

**United**
8:24

**Office Phone:** 954-712-2600
**Email:** info@ucrinc.com
**Website:** ucrinc.com

777 PARTNERS LLC and SUTTONPARK CAPITAL LLC vs LEADENHALL CAPITAL
Shapiro, Mark on 03/05/2025

**unless**
10:4 229:10
243:15 277:23

**unreasonable**
271:5

**unsure**
166:13

**until**
10:16 117:2
126:14 152:13
240:4 260:8
263:11

**unusual**
250:17

**Uown**
50:1,3,7

**up**
12:1,12 14:13
20:13 25:4 28:7
31:7 32:7,13 38:8,
12 43:2,3 46:17
50:3 61:13,23 64:3
74:1 80:17 84:13
85:3 104:4 106:25
110:16 117:13
132:5 133:24
148:16 163:16
172:4 178:11
199:4 235:1 240:4
270:11 273:25
274:12

**update**
258:17

**updated**
279:2

**upfront**
186:15

**uploading**
160:5

**upon**
177:1,11 178:12

179:21 183:13

**upset**
203:13

**us**
10:16 38:24 57:6,
14 59:25 87:24
110:4 185:2
187:10 231:1
266:25 276:24

**usability**
199:18 201:1

**use**
10:6 16:1,11 55:7
57:3,5,24 104:5
133:9,10,16 188:1,
2 192:18 214:9
236:6,18 243:16

**used**
15:21 34:3 95:24
100:6,10 105:14
189:23 190:8,15,
24 192:7,10
258:19

**useful**
104:6 226:2
228:10,18

**user**
189:22

**using**
135:15 136:10
190:2 191:21
192:13 203:2
259:17 261:19

**Utah**
58:10

**V**

**vacuum**
108:11

**validate**
60:22 61:14

**validity**
248:21,25

**value**
28:12,13,16,22
29:10,18 30:8
50:22 63:6 209:3
231:23,24 269:6,
17

**values**
36:18 49:19 269:9

**varies**
234:25

**various**
23:14 35:15 52:17
53:5 58:3 65:16
93:9 95:12 245:8

**vary**
66:11

**vector**
260:7

**vectors**
205:21

**vendors**
38:4

**venture**
48:3

**verbal**
58:16 95:7 100:23

**verified**
110:8

**verify**
27:12 138:4
152:17

**version**
96:25 158:3

**versus**
7:10 22:12 131:22

190:12

**Vervent**
246:2,5

**via**
192:18

**Videoconference**
7:1

**VIDEOGRAPHER**
7:4 8:7,25 9:3,6
12:18,25 14:17,20,
23 68:5,8 76:15,18
87:14,17 115:23
116:1 149:24
150:2 167:19,22
195:11,14 196:25
197:23 198:3
220:7,10 243:18,
24 244:2 274:4,7
279:7,9

**videotaped**
7:1,8

**view**
97:5 101:25
102:15 109:4,10
128:10 134:19
135:10 147:17
174:17,21 175:7,
17 176:1,18
189:21 207:12
262:9,12

**viewed**
38:23

**views**
29:10 159:1
174:22,24,25
176:11 186:2,7

**virtue**
228:12

**Visa**
32:12

**UNIVERSAL**
**COURT REPORTING**

**Office Phone:** 954-712-2600
**Email:** info@ucrinc.com
**Website:** ucrinc.com

**vocal**
186:15

**voice**
181:21 182:13

**volume**
222:21

**vulnerability**
261:9

## W

**W-A-L-D-E-R**
185:23

**wait**
142:20 173:19
270:16,17 271:14
272:2

**waiving**
146:8

**Walder**
66:14 73:17 74:14
77:15 80:4 110:2
112:6 151:16
161:22 185:19,21
186:25

**Walder's**
185:24

**walk**
269:19,20

**walked**
84:8

**walking**
18:18

**wall**
189:17

**Wander**
26:1,8,14 27:24
28:18 29:9,24 34:9
40:13,24 66:13
73:17 74:13 77:15

80:4 107:1 110:3
112:6,14 151:16
161:23 185:19
186:1,6,19 187:1
209:22 251:25
252:8,12,18

**Wander's**
26:17 30:6 151:16
187:3

**want**
8:1,25 10:14 40:25
51:2 68:1 75:1
76:4,6,11 93:12
109:16 113:25
115:20 128:14,16
133:12 145:5
155:10 156:12
157:3 160:3
164:14,15 167:7,
13 173:17 179:14
183:11 185:8,9,17
186:23 187:14
188:1 189:5
195:19 196:7
207:6 215:7 217:2
218:3,5 233:11,14
251:12 261:11
267:15 268:6,14
271:13 274:10,14,
16

**wanted**
13:5 40:15,23
41:2,11 48:18,25
50:2 68:13 80:9
156:6 199:17
205:3 246:16
251:6 255:16

**warn**
13:17 17:12 74:19

**warning**
17:13 202:8
232:21

**warranted**

107:17 109:10

**warrants**
49:7

**wasn't**
42:22 50:8 59:8
68:21 77:10 91:19
99:21 127:22
128:1 133:10
151:8 152:12
153:3 190:3 237:3,
25 261:17 266:22
275:11

**watch**
56:3 230:25

**watching**
38:14

**way**
14:18 30:5 33:13
39:10 131:15
148:23 151:25
155:2 197:19
200:20 210:23
237:23 244:12
257:19

**ways**
250:25

**we**
7:4 10:13,17 11:1
12:1 13:3 14:13,19
16:7,11 23:13,21
24:1,2,4,6,9,10,16
25:10 26:6 28:7,21
30:17 31:4,13
32:3,13 33:1,7,11,
25 34:15,16,17,19
35:1,13,24 36:10,
17 38:2,23 39:15
40:9 44:3 46:17,
18,20,22,24 48:6,
16,19 49:25 50:1,
3,5,12,15,18,19,21
51:2 52:16 53:1,19
54:7,17 55:24

56:1,3,16 57:5,12,
22 58:3,11,21,22,
23 59:5 60:8,13
61:22 62:2,3 63:20
64:6,7,8,24,25
70:3 72:19,24 79:3
80:9,12,17 83:1
84:22 87:12 88:5,
9,18 91:3,6,7,11,
12 92:14 93:3
106:4 108:10,15
109:12 113:7,9,21
114:5 115:7,20
116:8,10,22,24,25
117:1,2 118:9
120:21 124:19,20,
23 125:1,3,7
126:13 127:16,23,
25 128:9 129:11
130:23 131:3
132:5,13,20,22
133:1,2,3,4,6,11,
15,23 134:4,17
140:11,12,13
142:3,8 145:9
149:10 150:17
152:19,23 154:19
155:2,11 156:5
165:13 167:3
168:13,20 170:8
172:4 178:25
184:19 185:8
187:11,22,23
192:20 193:6,7,20
194:16 195:6
196:5,7,16,20
197:3,4,5,10,13,
15,18,22 201:6,8
211:16 213:8,11,
21 214:11,12,14
216:9,11 220:4
225:8 226:15
229:25 230:1,3
231:19,22 232:1,3
233:3,11 234:12,
25 236:6 242:5


**UNIVERSAL**
**COURT REPORTING**

**Office Phone:** 954-712-2600
**Email:** info@ucrinc.com
**Website:** ucrinc.com

777 PARTNERS LLC and SUTTONPARK CAPITAL LLC vs LEADENHALL CAPITAL
Shapiro, Mark on 03/05/2025

243:21 258:5,10
259:1,2,4,5
260:12,14,16,21
261:11,12,13,21
262:14,20 267:1
268:17 269:21
271:9 274:19
276:7,16,17 277:4,
5 278:25 279:2

**we'd**
24:3

**we'll**
61:21 133:15
167:15 197:9
219:13,17

**we're**
9:6 12:25 14:23
16:5 30:1 31:13
32:24 33:12,18
35:13 36:11 37:2
38:17,25 44:1
45:10 52:16,19
53:5,9 56:5 59:22
60:9 61:19,22 62:1
63:18 68:8 75:23
76:18 87:17 94:11,
12 108:18 116:1
117:24 138:9
150:2 154:22
155:6,21,24 165:3,
5,20 167:6,22
168:19,22 169:1
170:2,6 173:19
178:8,9 182:3,4,
14,23 188:1 194:5
195:14 198:3
216:3 220:2 228:6
230:23 231:3,13,
15,19,22 232:3,4
242:2 244:2,15
263:4 271:18
272:20 274:7

**we've**
16:5 34:1 41:4

48:1 52:24 53:2,3
60:7,20,22 64:22
65:1,2 141:25
208:1 220:16
250:18

**weary**
86:5,9

**Wednesday**
43:4

**week**
14:1,3 32:7 33:7
43:4,12 44:19,20
46:25 125:22
150:15,16,18,21
194:1,2,3,6 260:1
262:5

**weekend**
137:4 150:13

**weekly**
46:23

**weeks**
164:10

**Welcome**
116:4

**Wells**
59:5 84:16,19

**went**
11:3 59:7 69:21,22
91:13 99:20
110:10 139:11
190:2 262:1
266:19 272:9

**were**
10:16 11:5,24
13:3,15 15:9,10,
11,13 16:21 17:23,
25 18:5 23:21
24:10,11,12,18
25:5 26:6,22 33:25
34:15 37:9 41:6,
19,21 42:3,6 43:7,

14 46:4,5,9,11
48:19 50:15,19,21
52:16 55:14 57:12
58:6,22 59:4,5
61:7,10,22 62:2,3
63:1,4,13 64:7
65:3 69:18 70:9,
14,16 71:1 73:12,
23,25 75:4 77:3
79:14,15 80:17
81:12 88:7 92:18
93:4,5,6,7 97:23
99:5,22 102:4
103:13 104:15
105:11 106:2
109:14 110:9,11,
15,24,25 111:15,
16 113:7 115:7
116:10,25 117:1,
22 118:3,10,11,17,
19 121:18 122:1
125:10 126:13
127:23,24,25
128:9,11 132:3
136:1,7,9 138:25
142:3 149:14
151:20 156:14,15
163:19 164:8,12
170:7,8 173:21
179:16 184:6,7,19
185:12 186:12,14,
19 187:3 189:11,
14,22 190:8,24
191:12 197:15
199:17 200:3
202:20,22 203:2
205:1,13,23 206:2,
5,12 208:5,14,20
210:1,2,10 214:6,
12,15 222:19,20,
23 223:21,24
224:10 225:8,14
228:23 229:2,10
234:3,12 237:6
238:12,15 239:6,7
240:12 244:5

246:21 247:1
248:6 249:6,9,10,
15 252:22 258:19
259:3 260:1,4,14,
16 266:10,14
267:1,6 270:4
271:1 272:12,15
273:17 275:22
278:17

**weren't**
58:24 71:2 77:9
80:13 101:9 137:5,
6,14 149:15
186:13 189:21
203:13,16 261:13

**what**
11:5 12:3 16:9,16
17:11,17,23 22:8,
14 23:11,16 26:12,
13,17 28:4,16
29:25 30:9,16 31:9
33:16 35:8 36:17,
22 37:12 38:5,25
40:18 45:8 46:10
47:20 48:12,19
49:19,20,23 52:10,
18,19 54:7,17,21,
24 55:19 58:2
59:6,8,13 60:8,14,
15,17,18 61:13
64:10 65:11,25
66:18 68:24 69:14
74:16 75:3,11,16
76:5,9,11 77:25
78:3,14,25 79:13
80:6,20,22,24
81:7,9,14,16,22
84:18,22,24 85:1,
23 87:1 90:12
91:2,5,9,13 92:11,
14,19 93:3,4,23
95:1 96:18 100:13
102:9,19 104:15
105:18,24 107:15
108:5,22 109:10

**UNIVERSAL**
**COURT REPORTING**

Office Phone: 954-712-2600
Email: info@ucrinc.com
Website: ucrinc.com

777 PARTNERS LLC and SUTTONPARK CAPITAL LLC vs LEADENHALL CAPITAL
Shapiro, Mark on 03/05/2025

112:22 113:12,18,
25 114:10,24
116:25 117:1,8,24
118:1,11,13 119:9,
12 120:9,10 121:7
123:21 124:7,10
126:1 128:22
131:5 133:1 134:4,
17,25 135:1,8,10
136:17 137:17,20
138:5 139:16
140:4,12 141:13,
18 142:23 144:10
145:16 152:16
153:19 155:15
156:2,13 157:4,7
158:1 159:24
160:7 162:17,22
163:19 164:21
166:22 167:6,10
168:5,9,15 169:1,
17 171:21 172:15,
18 173:2 174:4
175:1,7,17 176:3,
10,11,13,22,23
177:1,7,10 178:2,
12,17,18 179:2,7,
14,18,21,22
180:19 183:12
185:9 186:1 187:3,
8,15 191:3,4
192:23 193:22
194:15 196:20
198:18 199:11,22
201:13,22 202:10
205:1,3,6,10
210:25 212:5
213:5,21 214:6,11,
12 215:15,17
216:4,16 217:8
218:1,6,20,25
221:15 222:18
223:1,18 226:23
227:21 228:9,17
229:18 230:21
231:13,17 232:16

234:1,3,6,7,8,9,23
235:3 238:14
241:1 245:19
248:4,8,24 249:23
250:11,14 253:2,5
254:4 255:4,7,9
256:9 258:1,9,13
259:3,6,7 260:11,
15,16 261:12,14,
16 262:14,16,18
263:21,23 264:6,8,
10,11,12,21
266:19 267:1,7
268:2 269:11,13
270:20,21 272:3,
18 274:2 276:9,22,
24 278:24

**what's**
30:18 37:7 44:2
62:22 81:3 89:15
91:7 94:7,9 97:14
132:14 133:4
149:5 179:19,25
189:6,8 198:8
200:10 207:3,10
227:18 229:13
230:7 232:12
235:21 245:6
247:12 250:23
270:17,20 272:4

**whatever**
90:2 93:12 104:24
196:2

**when**
10:2,7 13:15,23
17:25 19:20 22:10
23:16 24:9,10
29:19 33:15,25
42:18,25 48:9 54:3
55:19 56:11 57:19
58:9 59:20 64:10,
12 68:11,13,16
71:8 85:14 86:13
89:21 90:19 93:3,5
94:14 99:23

106:14 107:13
112:15 118:9
120:21 124:3,8,13,
17,21,22,24
125:20,21 127:25
128:9 132:4 139:6,
7 141:5 142:8
145:17 155:4,19,
23 160:9,11 162:2,
6 163:23 164:5,7
165:7,19 167:17
168:14 169:17,23
172:15 179:10
184:8 185:10
186:4,6,9,16,18
193:23 204:13
211:18 212:2,25
213:9 214:7
219:15 223:10
230:9 237:15
239:16 243:1
244:13,14 248:24
250:20 257:4
259:6,20,24,25
260:1,21 261:25
262:2 276:5
278:16 279:1

**where**
33:20 37:2 50:16,
22 53:11 55:10,13
58:5 59:10 62:3
70:22,23 73:1
101:3 111:14
117:14 118:4,5
120:4 124:1,2
125:7 128:3,7
158:19 162:22,23,
25 170:5,10,15
180:2 200:14
203:25 213:10
214:15,25 215:20
223:5 231:18
264:10

**wherever**
168:13,19

**whether**
10:21,24 16:9 22:6
29:19 30:3 47:7
50:10 54:12,13,14
55:20,25 56:7,23
57:20 60:10,24
62:5 65:7 67:8
68:23 69:21 78:15,
19 79:8,16 80:7
82:4 86:17 87:21
99:10 104:12
105:21 107:9
108:17 110:8
113:2,5 114:4,9,
16,17 123:9
127:12 128:18
133:5 135:5 140:4
142:10,11 147:11,
17 156:22 157:7
163:7 169:14
170:6,7 174:18
186:4 192:12
193:8,12 201:15
203:5 205:12
206:4,11 216:10
218:20 222:19
223:20 225:18
227:6 231:8
236:13,14,15,25
237:5,16 238:4,21
239:9,10 240:9
241:3 242:20
246:12 247:4
249:2,20 254:9,13
255:11,17 257:11
262:10 264:17
265:15,19 267:10
272:6

**which**
11:13 19:14 20:11
21:19 24:4,6 26:8
27:8,9,12 28:2,21
29:3 31:6,11,16
32:9 33:22 34:13
42:12 63:25 67:15,

Office Phone: 954-712-2600
Email: info@ucrinc.com
Website: ucrinc.com

777 PARTNERS LLC and SUTTONPARK CAPITAL LLC vs LEADENHALL CAPITAL
Shapiro, Mark on 03/05/2025

18 70:16 71:4,25
80:14 82:5 86:1
88:24 94:22 97:2
99:21 100:6
102:24 107:7
108:24 110:17
116:24 121:21
124:20 129:6
130:25 132:2
136:21 138:9
145:9 149:5,12,14,
15,16 152:21
153:9 172:7,19
192:9 214:18
220:16 233:16
237:23 265:17
275:7

**while**
48:7 49:24 50:20
167:15 179:10
195:7 219:14
220:5

**who**
16:21 17:1 20:3
23:6 24:2 27:4
30:20 34:5 35:19
40:8,14,20 42:6,9,
10 43:14,18 45:12
47:16,18 49:15
55:2,3,6,7 56:18
59:12,24 60:3,14,
17 61:2 62:5 65:4
66:10 73:12,14,19
74:7 77:12,15,16
79:20 80:1,18 88:7
89:14 90:23,24
92:24 93:2,5 99:23
100:3 101:7,12,14,
16 106:25 107:10
108:24 109:24
110:5,8 112:2
124:23 130:5
137:12 138:8
139:14 150:7,10
151:7,9,12,14

154:1 160:7,9
161:18 162:2
186:21 188:3
189:11 191:16
199:2,19 204:4,15
205:10,11,24
212:10 230:10
231:1 246:15
247:25 251:7
252:15 253:14
256:9 259:3,6
265:2,24 278:20,
21

**who'd**
198:21

**who's**
17:6 27:7 34:22
35:21 41:5 55:25
139:18 199:21
251:9

**whole**
83:22 96:11,13
134:20 160:5
223:19 277:5

**whom**
7:12 11:11 38:1
186:21

**whose**
71:21 106:22,23
173:15

**why**
16:4 24:5,7 28:25
37:14 38:15 40:23
41:6 48:6,9,10,19,
21,25 49:2 50:8
60:14 61:16 63:17
77:11 79:5 93:23
94:15,18,19,20
99:13 102:18
106:1 113:8
114:20 118:14
127:19 133:16
151:4 153:15

161:13 162:6
178:22 196:16
197:3,5 207:4
257:7 265:17

**Wickersham**
66:15

**will**
7:8,11 8:8 9:22
10:18 36:25 55:9
56:9 118:22 120:8
143:17 145:23
182:25 230:24
267:17 272:5
273:24 276:9
277:22

**wind**
36:10

**winding**
36:8

**winnings**
23:1,3

**wins**
214:14

**with**
7:12,14 9:23 11:8
13:19,21 16:2,6,
20,24 17:2,7,11,
18,19 18:5,7,8,9
19:2,7,8,11,17,20,
24 20:3,21,23 24:4
27:6,24 28:3,10,
17,18,19 29:22,24
30:16,17,24 31:14
34:10 35:4 41:4
43:1,14 45:25
46:16,20,22 47:12,
16,19,21,24 48:5,
12,14,20 49:18,23
50:7 52:19,21
54:11 55:7 56:1,25
57:1 59:24 62:3,7
65:21 67:22 69:3
70:1,5,10 71:16

73:12 74:20,22,23
76:1,2,7,12 77:8,
12 80:11 81:20
82:7 83:15,17 84:3
85:11 87:25 88:18
89:3,14,23 92:18
98:9 99:8,11
102:22 105:7,18,
21 106:10,12,14,
25 107:24 108:2,6
109:2 111:10,19,
22 114:21,23
115:5 116:7
117:10,14 121:10
131:3 132:5
135:11,19 137:3,
24 138:2,11,12,13,
15 145:16 147:21
151:19 152:23
153:13 154:5,21,
24 155:1,18,23
156:1,3 157:19
159:1,7 160:22
162:4 165:2,4
167:7,10 168:10
169:7 170:25
172:20 173:5
175:21 176:4,10,
14,24 177:7 178:3,
18 181:17 183:22,
24 184:20 185:11,
13 187:3,11 190:6,
15,19,21 193:18,
24 194:5 195:5,19
198:6,19 199:14,
18,23 200:25
201:9 203:17
204:7,9,17,19,22
207:25 208:21
213:2 214:5,7,19,
22 216:19,22
217:20 218:10,13
219:2 223:10,16
224:7,16 226:23
227:21,24 229:1
230:20 231:6

777 PARTNERS LLC and SUTTONPARK CAPITAL LLC vs LEADENHALL CAPITAL
Shapiro, Mark on 03/05/2025

233:7 234:16,19
236:4,18 237:9,25
240:10 241:9,19
242:17,23,24,25
243:10 244:6,23
247:9,12,15,16
248:1,14,18,20,21
249:3,8 250:12
251:1,2 252:3,22
253:11 254:2,10,
24 255:5,13
256:13,17,18,19,
21 257:15,19
258:8 260:10
261:10 263:9,10
265:9 270:11
273:19 274:18
277:4,20 278:4,23

**withdraw**
15:6 21:25 29:16
43:22 82:13
112:12 120:13
130:3 138:18

**withdrawn**
42:4 67:16 101:22

**within**
53:15 90:18
121:19 140:5
150:22 165:25
188:9,16 223:21
224:12 247:13

**without**
101:1 108:20
146:8 167:9 179:7
180:25 181:8
183:7,10 218:24
222:21 270:9

**witness**
8:9 13:20,24 14:1
17:24 18:4 25:20
30:13 31:10 36:16
38:6 61:4 64:6
68:2 69:18 72:19
74:25 75:17 78:23

83:21 102:21
103:16 104:10
112:17 114:2
123:6,20 127:6,21
128:24 131:22
132:22,25 134:12,
23 135:13,22
136:13 137:10
139:21 140:19
141:12,25 142:21
143:3 144:10
147:2,11,21
148:10,16 149:9
153:13 156:5,20
157:23 158:11
159:5 160:17
162:14,21 167:24
169:10 174:21
175:11,20 176:13
177:9,20 178:16
182:3,10,12
183:10 184:24
185:5 188:11,18
189:3,14 191:2,16,
25 192:20 196:3,5,
19,22 198:12
199:10 202:3
214:21 217:2
218:24 219:22
221:24 222:16
225:17 228:15
229:6,13,21
231:12 239:13
240:17,24 241:7,
17 242:2 243:23
244:10 248:16
249:19 250:5
253:6 254:4 256:3
262:24 263:18
268:11 269:4,16
271:1,18 273:23
275:25 279:6,24

**witnesses**
209:12 232:24

**won**
23:6

**won't**
9:21 113:10
120:20

**word**
151:4,6 213:2
253:2

**worded**
39:5

**wording**
223:15

**words**
157:3 168:18

**wordsmithing**
271:19

**work**
15:21 16:2 21:14,
15 22:2 23:5 39:5,
17,23 46:16,22
51:24 52:2,21
53:16 55:7 56:17
69:3 75:2 76:9
88:6 92:17 107:19
111:6 131:22
132:3 134:8,10,13
197:8 218:1 223:8
232:12 234:13
254:14 255:12,17,
25 256:7 264:1
278:23

**worked**
49:16 85:13 135:5
193:15 204:3
210:24 239:20

**working**
15:11,13 16:21
17:7 24:20 40:21
43:14,19 44:9,12,
15,16 53:9 57:14
78:25 83:18 94:22
100:5 165:2 173:5

200:15 237:14,15
240:4 266:3,11

**works**
17:21 18:24
152:10 195:5

**worksheets**
234:25

**world**
22:20

**worried**
38:13

**worse**
165:5

**worth**
49:20 52:18

**would**
9:22 18:8 19:24
20:3 21:12 22:5
23:23 27:10,11
28:9 30:7 34:13
37:23,25 40:9
42:6,15 43:11,12,
16 45:8 46:22 47:8
52:2 53:15 54:23
55:12 56:20 57:5,
8,16 59:12,25
63:14 64:8 66:11,
22 67:3 68:2,13
71:22 72:2 73:16
74:7,9 76:12,20
77:14 78:9,12
79:16 81:1 82:3
89:2,20 94:7,10,
15,16,18,19,20
96:20 99:2 104:6
105:10 107:12
108:6 110:1,3,4,17
112:4,6,9 113:8
120:12 129:25
130:1,7 132:8
134:10 138:1,8
139:12 140:7
146:23 148:12,20

**Office Phone:** 954-712-2600
**Email:** info@ucrinc.com
**Website:** ucrinc.com

777 PARTNERS LLC and SUTTONPARK CAPITAL LLC vs LEADENHALL CAPITAL
Shapiro, Mark on 03/05/2025

149:4,6 150:18
151:1,4 152:1,5
153:1,8,10 157:6,8
159:6 161:20
171:11,16 174:12,
15 179:4,13,17
181:6 185:21
187:7 190:21
193:25 194:11
196:2 198:12
199:3,4,5,10,19
200:16 202:20
203:13,15,19,20,
22 204:15,18
205:4,6,10,11,14
206:19 207:4
208:6 209:3,25
215:18 216:22
217:14,17,24,25
218:10,14,15
219:8 222:2,4
227:7 228:10
229:1,3,6 233:23
234:11 235:8,14
236:1 237:25
238:1 239:8,13
240:15,20 243:3
246:15,17,18
248:10,14,16
249:3,23 251:7,12
253:14 255:19,20,
23 256:6,10
258:14 260:9
261:7,8 262:10,16
263:7,9,20,23
264:7,11,22 265:2
269:10 270:21
271:15 276:12
278:20,21,23,25

**would've**
20:12 48:3 63:24
139:3

**wouldn't**
30:13 103:16,19
132:17 133:11

135:23 155:17
189:1 198:13,20
202:22 218:12
229:8 240:17
248:6 258:15

**Wow**
171:24

**wrap**
273:25 274:12

**write**
101:12 224:23,24

**writing**
27:2 88:1

**wrong**
55:25 123:21
138:1 144:5,20
269:23

**wrongfully**
142:22 143:8

---

---

**Y**

**y'all**
68:1

**yeah**
8:4 13:23 22:9
24:16 30:13 33:9
38:9 58:23 66:20
72:14 88:11 92:5
112:17 119:22
126:22 129:19,25
132:15,25 134:18
136:18 138:23
139:4 140:1
143:20 144:6
148:19 152:11
154:9 165:15
182:25 188:11
191:2 194:4 196:6
201:21 217:2
218:24 224:22
234:12 236:3

253:23 265:6

**year**
24:12 42:23 51:14
52:7

**years**
21:1,3 239:23
271:3

**Yep**
55:4 121:24
122:20

**yes**
9:2,14,18 11:10,24
13:14 16:3 19:13
20:2,10 23:13,18
25:25 26:4,6,25
27:18 29:12,14
30:1 32:25 35:5,7
37:22 40:8 44:14,
24 47:13 50:12
51:11,13,20,22
52:5,8,9 53:14,17,
22,24 54:23 55:16
56:22,25 57:22
58:1,8 60:18
62:11,21 63:16
65:12,18 66:5,22
67:14 72:6 75:8
76:3 77:24 81:13
84:2,6,10,17 85:9,
15,20 86:4,7,10
88:15,20 89:1,5,9,
25 91:15,25 95:18,
20 96:4,14 97:1,25
98:7,11,15,18,21
100:11 101:11
103:7 105:9,12,23
109:21,23 110:11,
23 111:2 113:11
114:12,15 116:14,
18 119:10,21
122:4,13 123:1
124:17 125:5
128:24 129:18
130:1,9,20 131:17,

19 134:13 135:7,
22 136:3 137:1,16
138:6,24 140:24
141:2 143:1 145:3,
10,12,20 146:22
147:16 148:2
150:9 151:3,16
152:9 153:24
154:17 159:17
160:24 161:3
162:1 166:2,6,11
167:12 168:8
170:1,21 171:6,10,
20 172:22 173:13
174:5,15 180:19
181:14 185:25
188:19 189:14
192:10 193:5
194:11 198:24
199:4 200:20,23
205:19 206:22
208:4 209:18,24
215:2 217:16,22,
23 218:16 219:3,
10 220:21,25
221:7,9,11,14,20
222:16 223:22
224:8,15 225:6,7,
24 227:20,23
228:1 234:22
235:5,16,19,20
236:21 240:7,24
242:15 243:9
248:3 249:19
250:10 256:24
257:3 258:16
263:8 265:7,8
266:7,9 267:24
268:1 270:10
271:10 272:5,11,
24 273:13 275:19
278:6,15 279:15,
19

**yesterday**
19:22 20:19

---

**Office Phone:** 954-712-2600
**Email:** info@ucrinc.com
**Website:** ucrinc.com

777 PARTNERS LLC and SUTTONPARK CAPITAL LLC vs LEADENHALL CAPITAL
Shapiro, Mark on 03/05/2025

**yet**
24:17 48:10
102:10 251:17

**York**
10:8,10 16:19 34:8
41:10 51:12 93:14,
15,20,22 94:3
103:5 104:1,5
105:15 113:16,19
128:13 129:18
133:21,23 134:2
139:13 150:14,23
151:2,22 153:2,10,
11 154:19,25
165:10,11,13
168:3 169:1
171:25 172:11,20,
24 173:10,21,23,
24,25 175:8
178:14,23,25
179:5,20,23
214:19,22 226:3,
18 227:3,8 228:11
229:4 233:7,20,25
235:11 266:12
268:25

**you**
8:7,13,16,25 9:10
10:24 11:8,11,15,
19 13:10,15,17,25
15:1,5,8,14,21,24
16:1,13,16,25
17:1,5,11,13,23,25
18:2,11,17 19:1,7,
11,20 20:3,6,11,
15,16,18,21,23
21:7,10,12,19,24
22:10 23:9,11,16,
19 24:23 25:1,5,6,
9,12,22 27:24
28:2,18,22,25
29:9,18,23 30:2,5,
6,9,16 33:1,6,15,
16,20 34:7,8,11,13
36:8,21 37:21,23

38:1,8,10,13 39:9,
17 40:23 41:3
42:3,9,17,25 43:7,
14 44:6,25 46:6,19
47:12,16,20,23,25
48:9,12 49:13,23
50:1,10 51:9,14,
16,18 52:14,25
53:8,10,25 54:3,4,
20,24 55:6,7,9,13,
19,20 56:11,14,20
57:2,3,20,24 58:2,
4,14,19 59:1,14
60:3,5,15,18,19
61:9,16,18,20
62:12,16,19 63:9,
14,22 64:3,4,12,
13,16,21 65:7,11
66:4,6,21,23,25
67:5,8,12,15,22
68:3,11,23,24
69:3,21,24 70:1,6,
8,13,16,22,23
71:1,8,14,16 72:4,
7,12,13,15,16
73:1,3,4,6,7,8,14,
22 74:3,5,17,19,
20,23 75:11 76:1,
6,11,20 77:1,2,5,
12,25 78:9,15,19,
25 79:5,8,11,15
80:24 81:22,24
83:7,10,20 84:9,
11,16,19,24 85:1,
5,10,21,24 86:3,6,
12,13,17 87:8,10,
21,24 88:19 89:2,
7,10 90:19,23
91:2,10,16 92:1
93:12,18,21,23
95:5,21 96:3,18,
23,24 97:20,23
98:5,12,24 99:2,7,
10,23 100:2,6,9,24
101:3,15,17,20,24
102:3,9,10,19

103:8,11,12,18
104:7 105:10,11,
13,17,18,21
106:10,12,14,16
107:15,21,23
108:4,5,7,13,15,22
109:5,7,13,16,22
110:18,21,25
111:8,15,19,22,25
113:1,5,12,23
114:16,17 115:15,
20 116:5,6,11,15
117:4,9,20 118:6,
14,17 119:25
120:4,8,12 121:5,
10,23 122:3,10,12,
14 123:15,17,22
124:3,7,10,16
125:1,4,10,13,14,
19,21 126:1,20
127:19 128:11,15,
16,17,22 129:1,2,
14 130:10,21
131:5,7,8,20
132:2,16,17 133:3,
4,8,12,16,19,25
134:6,25 135:5,8,
10,18 136:4,15,17,
19,22,25 137:5,12,
14,20 138:3,7,11,
25 139:15,21,22
140:4,9,21,25
141:3,7,18 142:1,
11,24 143:19,22,
24 144:5,11 145:5,
14,18,21,23
146:23 147:7,14
148:3,6,17,25
149:16,23 150:6
151:1,4,13 152:5,
18,21,25 153:1,6,8
154:5,8,11,14,16,
18,21,24 155:4,5,
14,15,19,23 156:2,
13,17,21,25
157:16,23 158:1,9

159:22,24,25
160:2,9,13,20
161:1,7 162:4,18
163:6,9,15,19,21
164:2,4,5 165:7,8,
9,18,19 166:3,7,8,
12,17,25 167:3,9,
16,24 168:2,6,14,
15,17 169:6,11,12,
17,18,21,23,24
170:9 171:3,8,11,
16 172:11,12,14,
15,19,22 173:2,3,
11,21,24 174:7,14,
17 176:5,16,18,19
177:1,9,11,20,24
178:5,6,7,8,11,12,
17,20,22,25 179:2,
3,6,7,8,9,10,11,12,
13,14,16,17 180:5,
8,10,17,23 181:6,
8,9,20 182:2,9,16,
22,23 183:2,5,7,
12,15,17,22,23
184:1,8,17 185:1,
7,9,10,12,16,18
186:6,18,19,21
187:10,15,20
188:11 189:11,15,
19 190:1,13,14,18,
21 191:9,11,25
192:2 193:8,12,17,
22 194:8,15,24
195:6,10,17,19,22,
25 196:1,2,3,7,23
197:7,11 198:7,12,
18,25 199:5,13,17,
19 200:2,7,24
201:7,11,15
202:10,12,17,20,
21,22 203:5,10,13,
18,19,20,24,25
204:5,7,12,13
205:3,4,15,20
206:1,4,7,11,21
207:4,22 208:2,10,

**UNIVERSAL**
**COURT REPORTING**

**Office Phone:** 954-712-2600
**Email:** info@ucrinc.com
**Website:** ucrinc.com

777 PARTNERS LLC and SUTTONPARK CAPITAL LLC vs LEADENHALL CAPITAL
Shapiro, Mark on 03/05/2025

16,20,21,23 209:2,
4,8,11,14,16,23
210:1,6,10,15,24
211:3,7,8,11,13,
18,19 212:2,14,16,
18,23,25 213:7,13,
20,23 214:1,2,7
215:4,6,7,10,11,
19,22 216:8,10,14,
16,22 217:6,18
218:1,8,9,10,12,
13,17 219:5,7,9,
12,14 220:1,4,13
221:1,5,6,8,10
222:2,6 223:1,5,
16,23 224:4,20
225:11,25 226:9,
11,19,22 227:5,10,
11,17,20 228:17,
18 229:1,17,23,25
230:2,12 231:2
232:7,16,17,18
233:11,14,23
234:10,14,16,25
235:13,19 236:10,
16,22,25 237:4,9,
11,15,16 238:3,11,
19,24,25 239:2,6,
19 240:1,3,5,8,12,
15 241:1 242:9,12,
20,24 243:1 244:5,
17,22,25 245:3,8,
10,18,19,22 246:5,
8,11,15,16,18,21,
25 247:4,8,12,15,
19 248:14,18,24
249:6,8,16,25
250:8,11 251:6,7,
12,17,18,20,21,24
252:6,11,12,17,22
253:4,15,18,22,24
254:9,13 255:11,
16,19,24 256:6,9,
15,22 257:4,7,11,
14,18,22 258:1,14,
15,23 259:4,8,9,

17,20,21 260:4,9,
12,18,20,22,23
261:5,7,8,17,18,25
262:9,16,19 263:3,
9,21,25 264:3,6,
16,21 265:3,9,14,
19 266:5,24 267:1,
2,7,9,14,15,21
268:12 269:1
270:1,4,18,20,21
271:5,8,9,16
272:3,7,8,12,13,
15,20 273:10,18
274:10,21,22
275:2,5,11,14,16,
20,22 276:5,9,12,
15,24 277:3,4
278:3,9,14,16,17,
20,21 279:4,6,8,
13,16,18,20,21

**you'd**
156:22 158:21
160:17 181:7
189:6 194:18
214:4 248:10
264:13

**you'll**
219:13 244:19
272:2 276:4

**you're**
21:5 24:20 29:22
31:3 34:11 55:3,19
57:19 59:18 62:8
64:4 68:19 82:20
84:5 100:19 105:7
114:9 117:4 118:1
139:16,17 141:5
150:16 158:20
159:15 164:16,25
165:1 166:13,19,
22,25 167:17
168:21,25 169:11
170:25 171:22
172:21 175:3
176:22 178:10

179:2 180:1,11
181:16,21 182:13
183:16 184:12
187:18 191:4
195:7 205:15
207:14 213:9,17
219:2 220:5 223:2
225:22 227:21,24
230:14 231:13
232:1 233:5
235:23 241:13
242:5,17 247:8,20
252:18 258:9
261:16 264:16
274:22 278:4

**you've**
9:13,17 20:25
40:17 44:6 51:8
52:6,11 53:20 54:1
83:6 128:19
132:23 134:15
141:17 160:22
170:4 172:16
175:1,4 176:7,10
178:23 179:11,13
190:13,15 206:15,
18 219:15 220:3,
19,22 227:13
276:20

**your**
9:11,23 10:15,25
11:22 13:4 15:21
16:1,2,10 18:17,22
20:9 21:4,12 22:2,
14 23:9 40:15
41:17 43:15,20,24
44:2 45:8,18
51:18,19 52:4
54:16 56:20 57:20,
24 59:2 60:2 62:22
63:22 64:17 67:19
71:18 73:1 76:1,8,
21 80:6 97:5
101:25 102:15
104:21 109:4,10

112:2,10,25 115:9
116:7,19 120:16
123:8 127:13,14
128:10 130:17,18
134:1,19 135:10
137:17 138:17,20
144:20 145:15
147:17 148:25
150:5 156:2 157:9,
19 158:1 159:1
161:4 162:10
164:14,21 165:7,9
166:16 167:10
168:3,9 169:5,7,8,
12 171:7,12,17,19
172:10 174:24,25
175:7,17 176:1,18
177:1 178:1,13
179:25 180:24
181:10,20 183:1,5
184:2,4,5 185:7
190:15 193:3
195:4,17 196:1
197:11 198:7,8,9
200:21 201:4,10,
24 202:6,12,25
204:21,23,24
205:8,20 207:4
209:4,19 210:14
211:25 212:25
213:17,20 216:4
219:8,16 220:14,
23 224:5 226:8,23
228:7 229:10
230:7 231:5,9
232:24 233:4
235:21 236:8,14,
16 239:10 240:21
243:8 245:6
247:21 250:23
253:5,8 258:9,22
259:8,11 263:14
264:14 267:2
268:2,8 269:14
270:8 271:23
272:2,25 273:12,

**UNIVERSAL
COURT REPORTING**

Office Phone: 954-712-2600
Email: info@ucrinc.com
Website: ucrinc.com

777 PARTNERS LLC and SUTTONPARK CAPITAL LLC vs LEADENHALL CAPITAL
Shapiro, Mark on 03/05/2025

15,16 274:10,21
275:3 276:23
277:15 279:4

**yours**
8:17 144:14
243:10

**yourself**
37:23 69:4 79:15
276:13

---

**Z**

---

**zoom**
195:20 197:17
252:24



**Office Phone:** 954-712-2600
**Email:** info@ucrinc.com
**Website:** ucrinc.com