UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LEADENHALL CAPITAL PARTNERS LLP and LEADENHALL LIFE INSURANCE LINKED INVESTMENTS FUND PLC,<br><br>Plaintiffs,<br><br>vs.<br><br>JOSH WANDER, STEVEN PASKO, KENNETH KING, 777 PARTNERS LLC, 600 PARTNERS LLC, SPLCSS III LLC, SIGNAL SML 4 LLC, INSURETY AGENCY SERVICES LLC, DORCHESTER RECEIVABLES II LLC, SUTTONPARK CAPITAL LLC, SIGNAL MEDICAL RECEIVABLES LLC, INSURETY CAPITAL LLC, SUTTONPARK SERVICING LLC, and ADVANTAGE CAPITAL HOLDINGS LLC,<br><br>Defendants. | Civil Action No. 1:24-cv-03453<br><br>[PROPOSED] STIPULATION AND ORDER GOVERNING THE PROTOCOL FOR DISCOVERY OF ELECTRONICALLY STORED INFORMATION |

Plaintiffs Leadenhall Capital Partners LLP and Leadenhall Life Insurance Linked Investment Fund PLC (collectively "Plaintiffs"), and Defendants 777 Partners LLC, 600 Partners LLC, SPLCSS III LLC, Signal SML 4 LLC, Insurety Agency Services LLC, Dorchester Receivables II LLC, SuttonPark Capital LLC, Signal Medical Receivables LLC, Insurety Capital LLC, and SuttonPark Servicing LLC (collectively, the "777 Entity Defendants"), Josh Wander, Steven Pasko, Advantage Capital Holdings LLC ("A-CAP"), and Kenneth King (together with A-CAP, the "A-CAP Defendants") (collectively, the "Parties"), hereby stipulate and agree to the following Protocol for Discovery of Electronically Stored Information (the "Protocol").

1. **PURPOSE**

This Protocol is intended to govern the discovery of electronically stored information ("ESI") in this case as a supplement to the Federal Rules of Civil Procedure, this Court's Local Rules, and any other applicable orders and rules (the "Applicable Rules"). The Parties each reserve the right to seek exceptions, amendments, or modifications to this Order from the Court for good cause shown.

2. **COOPERATION**

Although this Protocol does not address the scope of the Parties' productions, the Parties shall meet and confer regarding custodial and non-custodial sources of potentially discoverable documents, including the production of databases and/or other structured data. The Parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter, including in implementing this Protocol.

3. **MEET-AND-CONFER**

The Parties will meet and confer to discuss and attempt to reach an agreement on the appropriate scope for the production of ESI. The Parties will discuss options for ensuring an efficient discovery process, such as use of search terms, technology assisted review and/or artificial intelligence, relevant date ranges, custodians that may have potentially discoverable information, any obstacles to accessing and producing ESI, and the timing of productions. To the extent any Party believes that ESI or other documents relevant to this action have been destroyed or otherwise not preserved, that Party shall promptly disclose the reason for and extent of the lack of preservation to the opposing Parties.

4. **ESI SEARCH**

   a. The Parties will discuss and attempt to reach an agreement on search methodologies to facilitate the production of responsive ESI, including the selection of search

terms and other limiters (*e.g.*, date ranges, email domains, and/or metadata fields). Agreement on a search methodology does not relieve a Party of its obligations under the Federal Rules to conduct a reasonable search and produce all relevant and responsive documents of which it is aware. This discussion may include, as necessary, identifying custodians, custodial and non-custodial sources of documents, date ranges, file types, or any other proposed method.

  b. If the producing Party objects to a search term or other limiter proposed by the requesting Party as overly broad or burdensome, the Party objecting shall disclose the basis for its objection and shall provide the hit count of documents (including the hit count of unique documents) hit by the search term or edit proposed by the requesting Party.

  c. If the Parties are unable to resolve disputes over search terms and/or appropriate benchmarks through the meet and confer process, the Parties will submit the dispute to the Court in accordance with the Applicable Rules.

**5.** **ESI PRODUCTION**

  a. The Parties agree that attending to issues relating to form of production at the outset of discovery facilitates the efficient and cost-effective conduct of discovery. The proposed technical specifications set forth herein incorporate the directive of Fed. R. Civ. P. 34(b)(2)(E)(iii) and provide that a Party need not produce ESI in more than one form, unless otherwise agreed.

  b. The Parties agree to produce responsive materials as .tiff images delivered in an electronic folder with appropriate load files with Optical Character Recognition ("OCR") or extracted text files in an accompanying folder, named by the beginning Bates number of the corresponding document, which shall be zero-padded with no blank spaces. The images shall also be Bates-numbered accordingly, and each shall have a unique file name matching the Bates numbers of the page. All documents shall be produced so as to preserve any parent-child

relationships that existed in their native format. For all documents being produced in imaged format, the Parties agree to produce Standard black and white, 8 ½ x 11 inch page size, Group IV, single page .tiffs at a minimum of 300 x 300 dpi resolution, except for documents requiring a different resolution or page size. Documents originating in or containing color where the color is necessary to interpret the document shall be provided in either color TIFF or .JPG format. Upon the opposing Party's reasonable request identifying a specific document(s) by Bates number, a Party will re-produce in color any document produced in black and white or state any objections within fourteen days of such request, after which the Parties shall meet and confer and (if necessary) submit their dispute to the court. The filename of documents produced in native format shall be the beginning Bates production number. The load file provided with the data will include a .dat file for metadata and an .opt file for mapping the .tiff images to the text files, both using standard field delimiters. The load files shall not contain the Full Text field, and shall account for every .tiff image in each production. Materials that cannot be fully rendered as .tiff files, including but not necessarily limited to spreadsheets (e.g., .xls, .xlsx, .csv) and media files (e.g., .mp3, .wav, .mpg, .avi, .mov) will be produced in native format with unique Bates numbers, .tiff slip sheets identifying the materials as having been produced solely in native format, and the metadata agreed upon below. Upon the opposing Party's reasonable request identifying a specific document(s) by Bates number, a Party will re-produce in native form any document produced in image form or state any objections within fourteen days of such request, after which the Parties shall meet and confer and (if necessary) submit their dispute to the court. The Parties agree that redacted documents will be provided in image form only with OCR or extracted text files for any non-redacted content in such documents, and that no corresponding native file will be provided (regardless of file type).

  c. The text of files collected and reviewed in electronic form shall be extracted at the document-level directly from the native file. The text file shall be named after the beginning Bates number of the document. For those electronic files which do not have embedded text (such as certain .PDF files and image formats), the file shall be imaged and OCR'd, and the subsequent OCR text files shall be delivered in a manner consistent with the above.

  d. Electronic documents and data that are electronically searchable shall be produced in a form that does not remove or degrade this feature.

  e. If any part of an email or its attachments is responsive, the entire family of documents will be produced, except as to any emails or attachments that may be withheld, in whole or in part, on the basis of privilege. Bates numbering of a parent document and any attachments shall be sequential such that a parent document has the lowest value Bates number when compared to its attachment(s). The Parties will provide family/attachment Bates ranges for all productions.

  f. To the extent a response to a non-objectionable discovery request requires production of discoverable information contained in a database, the Parties shall meet and confer to discuss the most appropriate and cost-effective production format.

  g. Absent undue burden, a producing Party shall, when scanning paper documents, avoid merging distinct documents into a single record, and avoid splitting single documents into multiple records (i.e., paper documents should be logically unitized). If there are any handwritten notes, or any other markings, or any attachment, on or to a document, it shall not be considered a duplicate. Any document that contains an alteration, marking on, or addition or attachment to the original document shall be treated as a distinct version, and shall be produced as such. These alterations include, but are not limited to, handwritten notes, electronic notes/tabs,

edits, highlighting, or redlining. If such markings/alterations are made in color, the documents must be produced in color as originally intended in the ordinary course of business.

   h. Photographs shall be produced as color images of the same size and/or resolution as the original photograph, or as close to the original resolution as is practicable.

   i. Common system and program files as defined by the National Software Reference Library of the National Institute of Standards & Technology (which is commonly used by e-discovery vendors to exclude system and program files from document review and production) need not be processed, reviewed or produced.

   j. All ESI produced by a Party in the action shall be normalized to Coordinated Universal Time (UTC) or to a consistent time zone that is disclosed to the Parties.

   k. The Parties will endeavor to deduplicate ESI. Documents will be deduplicated as against the entire population for all custodians and deduplicated custodians. The Parties may also de-duplicate emails that are fully contained, both email and attachments, in more inclusive copies of the same email thread. The Parties will use industry standard eDiscovery software like Relativity or similar software to identify exact duplicate emails (based on MD5 or SHA-1 hash values at the parent document level). The Parties will retain all deduplicated documents for the duration of the action or as agreed and may make reasonable requests for production of deduplicated documents for particular custodians, or lesser-included emails and threads, by identifying the applicable Bates numbers in writing. Upon the opposing Party's reasonable request identifying a specific document(s) by Bates number, a Party shall, within fourteen days of such request, produce such deduplicated documents or lesser-included emails and threads, or state any objections, after which the Parties shall meet and confer and (if necessary) submit their dispute to the court.

l.  The Parties agree that the production of documents shall be done on a rolling basis. The purpose of rolling productions is to ensure that the receiving Parties able to review documents over the course of discovery and is not overburdened with large document productions at the end of discovery.

m.  The producing Party will produce responsive materials by encrypted electronic file transfer or, only upon a reasonable request based on a showing that producing responsive materials by electronic file transfer would be unduly burdensome, by other readily accessible computer or electronic media. The producing Party will encrypt all production media prior to transferring the productions. Password and access information for the produced media will be sent via email to the opposing Party prior to shipment or transfer.

n.  The Parties agree to produce information with the following metadata fields where such information is available. The Parties agree not to modify or otherwise alter metadata for files originating in electronic form unless the Party making such a modification or alteration has a good faith basis to believe it is necessary to protect an applicable privilege, and that any such modified or altered metadata fields will be described on a privilege log as agreed by the Parties.

| Field Name | Description |
|---|---|
| BegBates | Beginning Bates number of the email, application file or paper document |
| EndBates | Ending Bates number of the email, application file or paper document |
| BegAttach | Bates number of first page of parent |
| EndAttach | Bates number of last page of last attachment |
| All Custodians | All custodians whose files contained a particular document that was produced or eliminated through de-duplication |
| From | Sender of the email |
| To | Recipients of the email |
| CC | CCs of the email |
| Bcc | BCCs of the email |
| Sent Date Time | Email sent date and time (MM/DD/YYYY HH:MM) |

| | |
|---|---|
| Received Date Time | Email received date and time (MM/DD/YYYY HH:MM) |
| File Created Date Time | Date and time on when the application file was created |
| File Last Modified Date Time | Date and time on when the application file was last modified |
| File Size | Size of document in bytes |
| Page Count | Number of pages in a document |
| Email Subject | Subject line of the email |
| File Name | Filename of the application file |
| File Extension | Document file extension (e.g. XLS, DOC, PPT) |
| File Type | Identifies whether the file is an e-mail, attachment to e-mail, calendar item, note, task, or loose document |
| Hash Value (MD5) | Unique hash value of the email or application file |
| Author | Author |
| Last Modified By | Name of user who last saved a file |
| Native File Path | For documents produced in native format |
| Text File Path | For documents produced with OCR or extracted text files |
| Attachment Names (or Parent ID and Child ID, as separate fields) | Names of attachments embedded in an email |
| Message ID | Message number created by e-mail application |
| Conversation Index | E-mail thread identifier created by email system |
| Redacted | For identifying documents that contain redactions |
| Confidential | For identifying documents designated as "Confidential" or "Highly Confidential under the Confidentiality Stipulation and Protective Order |

## 6. CONFIDENTIALITY

The Parties' Confidentiality Stipulation and Protective Order agreed to by the Parties and approved by the Court governs the treatment of information warranting confidential treatment.

## 7. PRIVILEGE LOGS

Within a reasonable time of production, each Party will provide a log of all documents withheld or redacted on the basis of attorney-client privilege, work-product protection, or any other valid form of privilege, immunity, or protection against production ("privilege log"). The privilege log will include these standard fields: author/sender/from; recipients/to; subject; file name; cc; bcc; date and time; privilege type; and a description sufficient to identify the subject matter of the

document and the basis for the privilege assertion. With respect to the SUBJECT OR FILENAME fields, the producing Party may substitute a description of the communication where the content of these fields may reveal privileged information but must indicate that the fields have been revised.

    a.    The privilege log fields for email strings will contain the information from the latest-in-time email in the email string.

Documents between a Party and counsel of record for that Party in this case containing privileged and/or work product material relating to this lawsuit, and any internal communications within counsel of record's law firm do not need to be logged.

**8.    MISCELLANEOUS**

    a.    The Parties agree to meet and confer in good faith regarding the scope of instant message and text message collection to be done, if any. In the event that the Parties cannot reach agreement as to instant message or text message collection, the Parties will promptly submit their dispute to the Court.

    b.    The Parties will discuss and attempt to reach agreement on a fact discovery schedule containing interim deadlines concerning the production of documents, including deadlines for the Parties to agree on search terms and custodians, begin rolling productions, and substantially complete productions of documents.

    c.    A Party that issues a non-Party subpoena ("Issuing Party") shall include a copy of this ESI Protocol with the subpoena and state that the Parties to the litigation have requested that third Parties produce documents in accordance with the specifications set forth herein. The Issuing Party shall produce all documents obtained pursuant to a non-Party subpoena to the opposing Party. Nothing in this ESI Protocol is intended or may be interpreted to narrow, expand, or otherwise affect the rights of the Parties or third Parties to object to a subpoena.

      d.      This Protocol is intended primarily to address the format of document productions. Nothing in this Protocol is intended to affect the rights of any Party to object to any requests or demand for production. Nothing in this Protocol shall constitute, or operate as, a waiver of any rights of any Party to object to, or to avoid, discovery or production, in whole or in part, under any applicable law, rule, or order.

      e.      The Parties shall make good faith efforts to comply with and resolve any differences concerning compliance with this Protocol. If a producing Party, notwithstanding their good faith efforts, cannot comply with a material aspect of this Protocol or if compliance with such material aspect would be unreasonable, such Party shall inform the receiving Party in writing as to why compliance with the Protocol is burdensome, unreasonable, or not proportionate to the needs of the case as soon as reasonably practicable for the parties to confer further on any alternative methods of production that complies with the standards set forth in Fed. R. Civ. P. 26. No Party may seek relief from the Court concerning compliance with this Protocol unless it has first conferred with the other Party.

      f.      The Parties agree that execution of this Protocol by Defendants Josh Wander and Steven Pasko does not constitute a waiver of any personal jurisdiction defense, or alter or otherwise affect the Court's Order dated November 26, 2024, staying discovery against Defendants Josh Wander and Steven Pasko.

Dated: May 7, 2025
       New York, New York                      **KING AND SPALDING LLP**

                                                  */s/ Leigh M. Nathanson*
                                                  Craig Carpenito
                                                  Leigh M. Nathanson

Brian Donovan
1185 Avenue of the Americas,
34th Floor
New York, NY 10036
Tel. (212) 556-2100
ccarpenito@kslaw.com
lnathanson@kslaw.com
bdonovan@kslaw.com

*Attorneys for Plaintiffs Leadenhall Capital Partners LLP and Leadenhall Life Insurance Linked Investment Fund PLC*

**CADWALADER, WICKERSHAM & TAFT LLP**

/s/ Jonathan M. Watkins
Jonathan M. Watkins
Michael E. Petrella
Matthew M. Karlan
Mark A. Singer
200 Liberty Street
New York, NY 10382
Tel. (212) 504-6000
Jonathan.Watkins@cwt.com
Michael.Petrella@cwt.com
Matthew.Karlan@cwt.com
Mark.Singer@cwt.com

*Attorneys for Defendants Advantage Capital Holdings LLC and Kenneth King*

**SMITH, GAMBRELL & RUSSELL LLP**

/s/ John G. McCarthy
John G. McCarthy
David A. Pellegrino
Katie L. Schwartz
Ryan J. Solfaro
Smith, Gambrell & Russell LLP
1301 Avenue of the Americas, 21st Floor
New York, NY 10019
Tel. (212) 907-9700
jmcarthy@sgrlaw.com
dpellegrino@sgrlaw.com

11

*Attorneys for the 777 Entity Defendants*

**QUINN EMANUEL URQUHART & SULLIVAN LLP**

/s/ Alex Rossmiller
Alex Rossmiller
295 5th Avenue
New York, NY 10016
Tel. 212-849-7000
alexrossmiller@quinnemanuel.com

Jordan Estes
200 Park Avenue
New York, NY 10166
Tel. 212-351-4000
Fax: 212-351-4035
jestes@gibsondunn.com

*Attorneys for Defendant Josh Wander*

**MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P.C.**

/s/ Christopher B. Harwood
Christopher B. Harwood

565 Fifth Avenue
New York, NY 10017
Tel. (212) 856-9600
Fax (212) 856-9494
charwood@maglaw.com

*Attorney for Defendant Steven Pasko*

SO ORDERED:
_____
U.S.D.J.
5/8/25

12