# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LEADENHALL CAPITAL PARTNERS LLP and LEADENHALL LIFE INSURANCE LINKED INVESTMENTS FUND PLC,<br><br>               Plaintiffs,<br><br>     v.<br><br>JOSH WANDER, STEVEN PASKO, KENNETH KING, 777 PARTNERS LLC, 600 PARTNERS LLC, SPLCSS III LLC, SIGNAL SSML 4 LLC, INSURETY AGENCY SERVICES LLC, DORCHESTER RECEIVABLES II LLC, SUTTONPARK CAPITAL LLC, SIGNAL MEDICAL RECEIVABLES LLC, INSURETY CAPITAL LLC, SUTTONPARK SERVICING LLC, and ADVANTAGE CAPITAL HOLDINGS LLC,<br><br>               Defendants. | Civil Action No. 1:24-cv-03453 |

## ADVANTAGE CAPITAL HOLDINGS LLC AND KENNETH KING'S MEMORANDUM OF LAW IN OPPOSITION TO LEADENHALL'S MOTION FOR CONTEMPT

CADWALADER, WICKERSHAM & TAFT LLP
200 Liberty Street
New York, New York 10281
(212) 504-6000

*Counsel for Defendants Advantage Capital Holdings LLC and Kenneth King*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................... i

TABLE OF ABBREVIATIONS .............................................................................. iii

PRELIMINARY STATEMENT ............................................................................... 1

FACTUAL BACKGROUND ................................................................................... 4

    A.    The TRO and PI ............................................................................... 4

        1.    Key Terms ........................................................................... 4

        2.    A-CAP's Interest In and Efforts to Modify the PI ............. 5

    B.    A-CAP Informs Leadenhall and the Court of the Contemplated
        Everton Transaction (and More) in October 2024 ......................... 5

    C.    A-CAP Informs Leadenhall of the Contemplated TAMI
        Transaction in June 2024. .............................................................. 8

    D.    Leadenhall Misleads the Court and the Public About
        Proceedings in South Carolina and Utah. ................................... 11

    E.    Nothing Leadenhall Cites from the Florida Action, to
        Which A-CAP Was Not a Party, Is Probative ............................. 13

ARGUMENT ......................................................................................................... 14

    I.    THE DECEMBER 2024 EVERTON TRANSACTION IS NOT
        CONTEMPTIBLE. .................................................................................. 14

        A.    The Everton Transaction Comports With the PI. ...................... 14

            1.    The Everton Transaction involved no enjoined party. .... 14

            2.    The Everton Transaction involved no restrained assets. 15

            3.    The Everton Transaction did not dissipate the
                value of any asset. ............................................................ 16

        B.    A-CAP Has Complied With the PI Diligently and Transparently.
            .................................................................................................. 17

    II.    THE JULY 2024 TAMI TRANSACTION IS NOT CONTEMPTIBLE. 18

        A.    The Transaction Comports With the PI:  By Its Terms, It Cannot
            Dissipate the Value of an Enjoined Party's Assets. ................... 18

        B.    A-CAP Has Complied With the PI Diligently and Transparently.
            .................................................................................................. 21

    III.    NO SANCTION IS APPROPRIATE. ................................................... 22

CONCLUSION ..................................................................................................... 23

# TABLE OF AUTHORITIES

**Cases**

*In re Gravel,*
    6 F.4th 503 (2d Cir. 2021) ................................................................................................ 14

*Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.,*
    527 U.S. 308 (1999) .......................................................................................................... 5

*Gucci Am., Inc. v. Weixing Li,*
    768 F.3d 122 (2d Cir. 2014) .......................................................................................... 22

*Havens v. James,*
    76 F.4th 103 (2d Cir. 2023) ........................................................................................... 15

*King v. Allied Vision, Ltd.*
    65 F.3d 1051 (2d Cir. 1995) ........................................................................................... 14

*In re Kwok,*
    2025 WL 783645 (2d Cir. Mar. 12, 2025) ..................................................................... 14

*Latino Officers Ass'n City of New York, Inc. v. City of New York,*
    558 F.3d 159 (2d Cir. 2009) ........................................................................................... 14

*Leadsinger, Inc. v. Cole,*
    2006 WL 2266312 (S.D.N.Y. Aug. 4, 2006) ................................................................. 22

*Lowry v. OppenheimerFunds, Inc.,*
    2022 WL 976823 (S.D.N.Y. Mar. 31, 2022) ................................................................. 20

*Optima Media Grp. Ltd. v. Bloomberg L.P.,*
    2021 WL 1941878 (S.D.N.Y. May 14, 2021) ................................................................ 20

*Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Techs.*, Inc.,
    369 F.3d 645 (2d Cir. 2004) ........................................................................................... 22

*In re Sharp Int'l Corp.,*
    403 F.3d 43 (2d Cir. 2005) ....................................................................................... 3, 18

*Taggart v. Lorenzen,*
    587 U.S. 554 (2019) ....................................................................................................... 15

## TABLE OF ABBREVIATIONS

| Abbreviation | Definition |
|---|---|
| "6/7/24 Tr." | Transcript of hearing held on June 7, 2024 (ECF 128) |
| "7/8/24 Tr." | Transcript of hearing held on July 8, 2024 (ECF 148) |
| "10/2/24 Tr." | Transcript of hearing held on October 2, 2024 (ECF 201) |
| "10/24/24 Tr." | Transcript of hearing held on October 24, 2024 (ECF 238 for public version; sealed portion not on docket). |
| "600 Partners" | 600 Partners LLC |
| "777 Br." | Contemporaneous Opposition filed by 777 Defendants |
| "777 Defendants" | Josh Wander, Steven Pasko, Borrowers, and Guarantors |
| "777 Partners" or "777" | 777 Partners LLC |
| "A-CAP" | Advantage Capital Holdings, LLC and Kenneth King |
| "ACM Delegate" | ACM Delegate LLC |
| "Atlantic Coast" | Atlantic Coast Life Insurance Company |
| "B. Riley" | B. Riley Advisory Services |
| "Borrowers" | SPLCSS III LLC, Dorchester Receivables II LLC, Insurety Agency Services LLC, Signal SML 4 LLC |
| "Everton" | The Everton Football Club Company, Ltd. |
| "Florida Action" | Case captioned *777 Partners LLC, et al. v. Leadenhall Capital Partners LLP, et al.,* No. 24-81143-CIV-DMM (S.D. Fla.) |
| "Guarantors" | 600 Partners and 777 Partners |
| "Haymarket" | Haymarket Insurance Company |
| "Jazz Re" | Jazz Reinsurance Company |
| "Leadenhall" | Leadenhall Capital Partners LLP and Leadenhall Life Insurance Linked Investments Fund PLC |
| "LH Br." | Leadenhall's Memorandum of Law in Support of its Motion for Contempt (ECF 281) |
| "Moody's" | Moody's Ratings |
| "Nutmeg" | Nutmeg Acquisition LLC |
| "PI" | Preliminary Injunction entered on July 8, 2024 (ECF 146) |

| Abbreviation | Definition |
|---|---|
| "RMF" | Rights and Media Funding Limited |
| "RMF Facility" | Multi-tranche loan facility between RMF and Everton |
| "Senior Capital Holdings" | Senior Capital Holdings LLC |
| "Sentinel" | Sentinel Security Life Insurance Company |
| "Southern Atlantic" | Southern Atlantic Re, Inc. |
| "Stout" | Stout Risius Ross, LLC |
| "TAMI" | Trans Atlantic Lifetime Mortgages Ltd. |
| "TAMI SPA" | July 8, 2024 Share Sale And Purchase Agreement |
| "TFG" | The Friedkin Group |
| "TRO" | Temporary Restraining Order entered on June 7, 2024 (ECF 114) |

## PRELIMINARY STATEMENT

The transactions targeted by Leadenhall closed long ago, and only after thorough treatment with the best of disinfectants—Leadenhall was educated about the transactions months before closing, and the Everton transaction was even brought before the Court. Even with ample time, Leadenhall made no attempt to block the transactions—because neither violates the PI.

Leadenhall's belated accusation of contempt is inert even on its face. It does not allege what the PI forbids: that an enjoined party dissipated the value of its assets outside the normal course. Instead, Leadenhall protests that it and 777 lack certain information about the Everton transaction, and that 777 should have received all its consideration on the TAMI transaction right away. Neither gripe implicates the PI, much less justifies accusing a litigation opponent of contempt.

On Everton, Leadenhall claims contempt because it has not been informed, and 777 has not calculated, how ███████████████████████████████████ ███████████████████████████████████████████████████. LH Br. at 16; *see also id.* at 5.[1] But the PI compels no such thing. Indeed, Leadenhall (unsuccessfully) asked the Court to compel the same calculation last October, *see*, *e.g.*, ECF 227 at 6–7; the request was not an allegation of a PI violation then[2] and is

---

[1] ███████████████████████████████████████████████████████████████.

[2] As the Court observed, *see* 10/24/24 Tr. 11:8–14, Leadenhall's response submission (complete with the same requested calculation) did not allege that the transaction would violate the PI. *See* ECF 227. Instead, it "ask[ed] for more information" about the transaction—"discovery," 10/24/24 Tr. at 9:23–25—including the calculation at the heart of its motion for contempt. *See id.* at 11:8–14; *see generally* ECF 227.

not now. In any case, as Leadenhall acknowledged at argument, ▋▋▋▋▋▋▋▋

▋▋▋▋▋ ▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋

▋▋▋▋▋▋▋▋▋▋▋. 10/24/24 Tr. 24:6–9; *id.* at 24:9–25:15.

In fact, Leadenhall long ago abandoned its request for the information over which it now claims contempt. It narrowed its request to one thing: ▋▋▋▋▋

▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋. Ex. 3 at

1. With that information, Leadenhall assertedly had "no interest in stopping or delaying the transaction," *id.* at 6–7. A-CAP was characteristically forthcoming. It provided precisely the documentation requested—and even offered Leadenhall the opportunity to review a draft in advance. Leadenhall made no effort to impede the December 2024 closing, and for good reason: the transaction does not dissipate the value of any asset of an enjoined party (▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋

▋▋▋▋), and Leadenhall still does not (and has never) asserted to the contrary.

As for TAMI, Leadenhall claims contempt while eliding the transaction's terms—including those that ▋▋▋▋▋▋▋▋▋▋▋▋▋▋

▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋

▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋

▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋

▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋

▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋

▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋

[REDACTED]

[REDACTED]. Leadenhall's complaints about the structure of the transaction simply do not implicate the PI or otherwise warrant judicial intervention.

Because the possibility of any PI violation can be dispensed with summarily, so too can the exceptional accusation of contempt.

Indeed, Leadenhall's contempt accusations appear to be makeweight, and its conduct egregious. While Leadenhall's unfounded and gratuitous accusations about A-CAP may have, by now, become background noise,[4] its contempt submission breaks new ground: Leadenhall misleads the Court and the public about the "findings" of regulators and related rulings of other tribunals. It does so knowingly. And in so doing, it filed *sealed* documents on this Court's public docket—including *rulings that have been reversed, stayed, or permanently enjoined*, and which have been sealed to prevent the further undue harm to A-CAP and "financial loss to the public," *see infra* p. 12, that is caused by their disclosure.

---

[3] Debt reduction is fair value consideration. *See In re Sharp Int'l Corp.*, 403 F.3d 43, 54 (2d Cir. 2005).

[4] A-CAP has offered its genuinely held view on Leadenhall's motives. *See, e.g.*, 10/24/24 Tr. at 19:16–20; ECF 169 at 3.

## FACTUAL BACKGROUND

### A.    The TRO and PI

1.    *Key Terms*

Sections C and D of the PI "prohibit[]" Borrowers and Guarantors from, "other than in the normal and ordinary course of business":

> (C) [in some cases] the expenditure or dissipation by the Borrowers and Guarantors of any cash or cash equivalents received from any sale or transaction up to the full amount of the Accelerated Debt; [and]

> (D) [] the Borrowers and Guarantors from taking any action to dissipate the value of their assets, including by transferring assets to any Defendant[.]

ECF 146 §§ (C), (D); *see* ECF 114 (the June 7 TRO with the same).

Despite Leadenhall seeking as much, "the Court did not enjoin A-CAP" or any affiliate of Guarantors or Borrowers. 10/2/24 Tr. at 45:22–25; *see also* 6/7/24 Tr. at 28:9–13 (noting injunction "does not include A-CAP"). To effect the departure from Leadenhall's request, the Court struck proposed footnotes that would have enjoined "any and all affiliates" and expanded the restraint to all Defendants and their affiliates. *Compare* ECF 56 at 2 n.1 & 3 n.2 *with* ECF 146 at 1; *see also* 6/7/24 Tr. at 31:15–16.

Under the PI, transactions for "fair market value" are "in the normal and ordinary course of business," and thus outside the PI's scope. 6/7/24 Tr. at 62:16–17; *see also id.* at 27:19–28:8, 28:21–29:3, 32:24–33:25, 62:20–63:3.

4

### 2.    *A-CAP's Interest In and Efforts to Modify the PI*

A-CAP (through affiliates) holds senior liens on Guarantor's assets. ECF 87 ¶ 7. Two affiliates intervened shortly before the PI hearing, asserted that the TRO was chilling contemplated transactions, 7/8/24 Tr. at 23:22–24:2, and proposed modifications (as did 777) that the Court said "made a lot of sense," and appeared "reasonable," *id.* at 7:19–22, 8:5–7. Ultimately, however, the Court declined to make the proposed revisions, converted the TRO into the PI, and assured Defendants that, "if there is a transaction out there that can be justified, all you have to do is to *bring the transaction to the light of day.*" *Id.* at 24:7–13.[5]

A-CAP's opinion on the applicability of *Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308 (1999), differs from the Court's, and it has, in good faith, moved to modify the PI and appealed for that reason. Even so, it has always recognized that the order must be obeyed while it stands.

### B.    A-CAP Informs Leadenhall and the Court of the Contemplated Everton Transaction (and More) in October 2024.



---

[5] Throughout, emphasis in quotations is added.



*Id.* Having agreed to the transaction conditionally, on September 30, A-CAP informed Leadenhall of the contemplated deal, Ex. 1 at 4–5, thus bringing it "to the light of day," 7/8/24 Tr. at 24:7–13.

After Leadenhall rejected every iteration of a proposed NDA, Ex. 2,

---

[6] Patrick Boyland, *Everton takeover confirmed by The Friedkin Group*, The Athletic (Dec. 19, 2024), https://www.nytimes.com/athletic/5991928/2024/12/19/everton-takeover-complete-friedkin/.



**C.    A-CAP Informs Leadenhall of the Contemplated TAMI Transaction in June 2024.**







**D.    Leadenhall Misleads the Court and the Public About Proceedings in South Carolina and Utah.**

Leadenhall's representations about proceedings in South Carolina and Utah have nothing to do with the PI. It relies on orders issued long after the Everton and TAMI transactions, and its characterizations of those orders is deceitful. As has been widely reported—including, no doubt, to Leadenhall—the orders invoked by Leadenhall have been reversed, stayed, or enjoined.

In South Carolina, a "scathing opinion"[7] issued by Chief ALJ, Judge Anderson on February 13, 2025, Ex. 4, ruled that the December 11 Order quoted by Leadenhall was "***unsupported by the facts and contrary to the law***." *Id.* at 2, 22. With the benefit of a full evidentiary hearing, Judge Anderson found that A-CAP had "taken

---

[7] John Hilton, *SC judge rules Atlantic Coast can stay in business; rips regulators*, Ins. News Net (Feb. 13, 2025), https://insurancenewsnet.com/innarticle/sc-judge-rules-atlantic-coast-can-stayin-business-rips-regulators.

steps in *good faith* to reduce its exposure to 777," had properly "exercised its rights as a lender in an effort to take control of 777 assets," but was not "affiliated with," and had not "t[aken] control of" 777. *Id.* at 11 & n.20. Chief Judge Anderson found Mr. King's testimony "*highly credible and convincing.*" *Id.* at 11 n.20.

Chief Judge Anderson also enjoined the December 11 Order—and the references to it filed by Leadenhall on this Court's Docket, ECF 282-14—because its disclosure had "tarnished [Atlantic Coast and Southern Atlantic's] credibility in the market, resulting in a loss of employees, and damaged relations with [their] brokerage distribution," and caused "financial loss to the public." *Id.* at 15.[8]

In the wake of Chief Judge Anderson's ruling, Utah's Insurance Commissioner



The Utah Insurance Commissioner is not represented by the Attorney General in that matter; he retained private counsel. *Id.* ██████████████████████████████

██████████████, he agreed to pause the pending litigation and participate in a mediation.[9]

---

[8] ████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████.

[9] *See Sentinel Security Life Insurance, Haymarket Insurance, and Jazz Reinsurance Companies*, Utah Ins. Dep't (Apr. 30, 2025), https://insurance.utah.gov/sentinel-security-haymarket-jazz-reinsurance/.

All filings in the Utah proceedings are classified as private, and each docket entry is prominently marked "**** PRIVATE ****." *See* ECF 288 at 1. That includes every Utah filing on which Leadenhall relies—and filed publicly—on this Court's docket. Leadenhall has made multiple attempts to obtain records from the proceedings in Utah, without success. Ex. 6.

### E.    Nothing Leadenhall Cites from the Florida Action, to Which A-CAP Was Not a Party, Is Probative.

A-CAP was not a party to the Florida litigation, a case in which 777 alleged Leadenhall orchestrated computer crimes to try to bolster an Amended Complaint in this case. Nothing that Leadenhall cites from that case is probative here. *Cf.* LH Br. at 8, 11 (asserting that the testimony "confirmed" facts regarding the transactions).

It is, however, concerning that the circumstantial evidence suggests Leadenhall's involvement with the intrusion, *see* 777 Br., and that Leadenhall apparently now maintains that it has "made no secret" of using the "information uncovered" by the alleged computer crimes to prepare its Amended Complaint here, *id.*



, ECF 282-20; 282-21, ECF 282-21 at 31:14–24, 32:22–23.

. By resorting to such a tactic reveals only that, despite mining

all the fruits of the data theft, Leadenhall still lacks evidence implicating Mr. King or A-CAP.

## ARGUMENT

Contempt "is a potent weapon to which courts should not resort where there is a fair ground of doubt as to the wrongfulness of the defendant's conduct." *In re Kwok*, 2025 WL 783645, at *2 (2d Cir. Mar. 12, 2025). A court's contempt power is thus "narrowly circumscribed." *In re Gravel*, 6 F.4th 503, 511 (2d Cir. 2021).

A party moving for civil contempt sanctions must prove, by clear and convincing evidence, that "(1) the order the [nonmovant] failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the [nonmovant] has not diligently attempted to comply in a reasonable manner." *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir. 1995); *see Latino Officers Ass'n City of New York, Inc. v. City of New York*, 558 F.3d 159, 164 (2d Cir. 2009).

Leadenhall cannot satisfy its heavy burden. Indeed, it cannot even identify an asset whose value was dissipated.

## I.   THE DECEMBER 2024 EVERTON TRANSACTION IS NOT CONTEMPTIBLE.

### A.   The Everton Transaction Comports With the PI.

1.   *The Everton Transaction involved no enjoined party.*

No enjoined party was involved in the Everton transaction—███████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████.

While A-CAP is a party to the transaction, "[o]nly the borrowers and guarantors were enjoined by the TRO – the Court did not enjoin A-CAP," 10/2/24 Tr. at 45:22–25; *see generally* ECF 146. Nor can Leadenhall's unfounded[10] allegations of control expand the PI or effect contempt-by-stealth. *See Taggart v. Lorenzen*, 587 U.S. 554, 561 (2019) (holding that parties must have "'explicit notice'" of what they must do or refrain from doing "before being held in civil contempt").

And far from working in active concert or participation with an enjoined party, ███████████████████████████████████████████████████ ECF 219 at 2 n.3, 8; ECF 220 ¶ 17; *cf. Havens v. James*, 76 F.4th 103, 113 (2d Cir. 2023) ("Only when the nonparty acts to benefit or to assist the enjoined party can it be said that the nonparty" is in active concert or participation with the enjoined parties).

> 2. *The Everton Transaction involved no restrained assets.*

No right or asset of any enjoined party was a subject of the Everton transaction. *See generally* ECF 220-1; ECF 219 at 7–8. ███████████████████████████

---

[10] It is not true that "state regulators have found an affiliation relationship." LH Br. at 19. Chief Judge Anderson ruled the opposite: A-CAP is not "affiliated with," and has not "t[aken] control of" 777. *Id.* at 11 & n.20. ████████████████████████ ███████████████████████████████. ECF 282-7 at 3 ("The appointments of B. Riley professionals have been extended indefinitely and those appointments cannot be terminated without B. Riley's consent.").

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, LH Br.

at 20, 22.[11]

> 3.    *The Everton Transaction did not dissipate the value of any asset.*

The Everton transaction did not "dissipate the value," ECF 146 at 2, of any

asset. Not even Leadenhall—despite moving for contempt—asserts to the contrary.

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮ ▮▮▮ ▮ ▮ ▮▮▮▮▮ ▮▮▮ ▮▮▮ ▮▮▮ ▮▮ ▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ LH Br. 16–17.[12]

Indeed. It is elementary that when debt (a liability) is reduced, equity value

(assets minus liabilities) ***increases***.[13] Thus, as Leadenhall has conceded, ▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮. 10/24/24 Tr. 24:6–9, 24:9–25:15.

Leadenhall also gripes that 777 has not compared ▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[11] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

[12] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

[13] Jason Fernando, *Equity: Meaning, How It Works, and How to Calculate It* (Mar. 25, 2025), Investopedia, https://www.investopedia.com/terms/e/equity.asp ("Equity is equal to total assets minus its total liabilities.").

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

██████████████████████████ ████████

███████████████████████████████████

████████████████████

### B.    A-CAP Has Complied With the PI Diligently and Transparently.

A-CAP fully disclosed the details of the Everton transaction to Leadenhall and the Court months before the transaction closed. *See, e.g.*, ECF 219; *cf.* 6/7/24 Tr. at 64:2–4 ("simply talk to the plaintiffs"); 7/8/24 Tr. (bring transactions "to the light of day"); 7/8/24 Tr. at 24:7–13, *id.* at 25:2–6 ("bring it to the Court").

Over the next two months, ██████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████ *Id.* at 1–

3; *see* ECF 282-10.

## II.    THE JULY 2024 TAMI TRANSACTION IS NOT CONTEMPTIBLE.

### A.    The Transaction Comports With the PI:  By Its Terms, It Cannot Dissipate the Value of an Enjoined Party's Assets.

---

[14] *See also* 6/7/24 Tr. at 28:3–8 (explaining that the PI blocks no sale of assets "for fair value," only transactions that "strip" assets for "less than fair value"); *id.* at 28:21–29:3, 32:24–33:25, 62:20–63:3.





---

[15] As against A-CAP, this testimony is hearsay subject to no exception or exclusion.



**B.    A-CAP Has Complied With the PI Diligently and Transparently.**

A-CAP informed Leadenhall of the contemplated transaction on a June 11, 2024 phone call between counsel, Watkins Decl. ¶ 3. ████████████████████████████████
███ ████ ████ ███████ ███████ ████ ███ ██ ███. ECF 282-1.

---

[16] Leadenhall's reliance on ████████████████████████████████████
████████████████████████████████. 7/8/24 Tr. at 15:15–25.
████████████████████████████. ECF 282-2 at 2, 3.

███████████████████████████████████████████████

███████████████████████████████████████████████

███████ .

## III.    NO SANCTION IS APPROPRIATE.

Because there is no contempt, no sanction is warranted. Leadenhall's requested sanction does, however, highlight the impropriety of its motion. Leadenhall's asks to be paid (i) $25,000 per day from July 8, 2024 *until "the Guarantors receive full payment* for TAMI," and (ii) $25,000 per day from December 18, 2024 *until "the Guarantors assess* the extent to which the *equity value* of Nutmeg changed" from the Everton transaction. LH Br. at 23. ███████████████████

███████████████████████████████████████████ are proper subjects of a motion for contempt.

We note, moreover, that Leadenhall's request to receive those sums—$11 million (and counting)—flouts the law. Sanctions are properly payable to the claimant—so-called "compensatory sanctions"—only when it proves that it has suffered *actual damages. Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Techs.*, Inc., 369 F.3d 645, 658 (2d Cir. 2004).[17] Leadenhall, however, has made no showing of harm—nor could it.

---

[17] "It is basic law that a civil contempt sanction must only be compensatory or coercive, and *may not be punitive." Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 144 (2d Cir. 2014). And coercive sanctions "should be made payable to the court." *Leadsinger, Inc. v. Cole*, 2006 WL 2266312, at *21 (S.D.N.Y. Aug. 4, 2006).

## **CONCLUSION**

A-CAP respectfully requests that the Court deny Leadenhall's motion and grant any other relief deemed by the Court to be appropriate.

Dated: New York, New York
May 16, 2025

CADWALADER, WICKERSHAM & TAFT LLP

By: /s/ *Jonathan M. Watkins*
Jonathan M. Watkins
Michael E. Petrella
Matthew M. Karlan
200 Liberty Street
New York, NY 10281
Telephone: (212) 504-6000
Fax: (212) 504-6666
jonathan.watkins@cwt.com
michael.petrella@cwt.com
matthew.karlan@cwt.com

*Counsel for Advantage Capital Holdings
LLC and Kenneth King*

**CERTIFICATION OF COMPLIANCE**

I hereby certify under Section III.D of Judge Koeltl's individual practices that

this memorandum contains 6,282 words, exclusive of the caption, table of contents,

table of authorities, and this certification.

By: /s/ *Jonathan M. Watkins*
Jonathan M. Watkins