# KING & SPALDING

King & Spalding LLP
1185 Avenue of the Americas
New York, NY 10036-4003
Tel: +1 212 556 2100
Fax: +1 212 556 2222
www.kslaw.com

Leigh M. Nathanson
Direct Dial: +1 212 790 5359
Direct Fax: +1 212 556 2222
lnathanson@kslaw.com

*Handwritten annotation:* Request to file with redactions is granted. To the extent the parties cannot agree on the appropriate redactions, the matter is referred to the Magistrate Judge for resolution. So ordered. /s/ JGKoeltl 5/28/25 USDJ

May 27, 2025

The Honorable John G. Koeltl
United States District Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Courtroom 14A
New York, NY 10007-1312

Re: *Leadenhall Capital Partners LLP et al v. Wander et al*, 24-cv-03453-JGK

Dear Judge Koeltl:

I write on behalf of Plaintiffs Leadenhall Capital Partners LLP and Leadenhall Life Insurance Linked Investments Fund PLC (together, "Leadenhall") in accordance with § VII.A.2 of Your Honor's Individual Practices to respectfully request approval to file with redactions materials in connection with Leadenhall's Reply in Support of its Motion for Contempt Against the Guarantors, A-CAP, and Kenneth King (the "Reply").[1]

The Reply cites to and discusses exhibits previously attached to the May 1, 2025 Declaration of Leigh M. Nathanson ("First Nathanson Declaration"), ECF No. 282-1, and to a new exhibit attached to the May 27, 2025 Declaration of Leigh M. Nathanson ("Second Nathanson Declaration"). Leadenhall met and conferred with counsel for A-CAP on May 27, 2025 to discuss which information in Leadenhall's Reply should be sealed. As a result of that discussion, and pursuant to the Court's Order on A-CAP's May 5, 2025 letter-motion to seal portions of Leadenhall's opening submission (ECF Nos. 288, 291), Leadenhall has provisionally redacted certain information in its Reply. All of the redactions in Leadenhall's Reply were made at A-CAP's request, consistent with the position A-CAP set forth in its May 5, 2025 letter-motion to seal. Leadenhall has notified Defendants that, within three days, they must file a letter explaining the need to seal or redact this information.

While Leadenhall is complying with the Court's Order granting ACAP's letter motion to seal, Leadenhall does not agree with A-CAP's approach to sealing in light of this Court's Individual Rules and case law in this circuit. This Court's Individual Rules state that, "[t]o be approved, any

---

[1] Capitalized terms have the same meaning as set forth in Leadenhall's accompanying Memorandum of Law.

redaction or sealing of a court filing must be narrowly tailored to serve whatever purpose justifies the redaction or sealing and must be otherwise consistent with the presumption in favor of public access to judicial documents." Koeltl, J. Individual Rules § VII.2 (citing *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110 (2d Cir. 2006)). Accordingly, documents may be sealed only "if specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Id.* at 120. As the party seeking to seal documents filed in support of a motion for contempt, A-CAP bears the burden of demonstrating that legitimate, "countervailing factors" outweigh the public's "presumption of access." *In re New York City Policing During Summer 2020 Demonstrations*, 635 F. Supp. 3d 247, 253-54 (S.D.N.Y. 2022). Leadenhall does not believe A-CAP can carry that burden here given the expansive nature of their sealing requests.

For example, A-CAP has sought to seal the entire transcripts, and any descriptions, of the depositions of 777 Partners witnesses taken in another litigation[2] that were not designated confidential by any party to that litigation (*e.g.*, ECF Nos. 282-19, 282-25, Exs. S and Y to Leadenhall's Motion to Compel). The Court in the Florida Action expressed doubt that "such information must truly be filed under seal," *see, e.g.*, Florida Action, ECF No. 177, and the parties agreed to and did file portions of both transcripts on the public docket in the Florida Action. *See id.*, ECF Nos. 197-1 and 197-52.[3] During the parties' May 27 meet-and-confer, Leadenhall expressed its position that information not marked confidential in the Florida Action should not be sealed here, nor has 7777 Partners—the party whose witnesses' testimony is at issue—sought to seal that testimony or any references to it in Leadenhall's reply.

As for the regulatory proceedings in South Carolina and Utah, Leadenhall notes that despite A-CAP's representation that the South Carolina proceedings are sealed, the order Leadenhall filed (ECF 282-14, Ex. N to the First Nathanson Declaration), is available publicly at the following address: https://www.ncdoi.gov/documents/regulatory-actions/sc-doi-order-amending-confidential-supervision/open. To state the obvious, documents that are already publicly available are not entitled to protection. *See, e.g.*, *Grossberg v. Fox Corp.*, No. 23-CV-2368 (JMF), 2023 WL 2612262, at *1 (S.D.N.Y. Mar. 23, 2023) (noting that "courts routinely deny sealing requests where, as here, the information to be sealed is already publicly available").

Leadenhall takes no position as to whether the Utah court's retroactive sealing of formerly public court documents in that action justifies sealing here. But Leadenhall notes that all of the documents it filed relating to the Utah (and South Carolina) proceedings were publicly available for weeks—which is how Leadenhall obtained them. Leadenhall believes that ACAP's requested

---

[2] *777 Partners LLC, et al. v. Leadenhall Capital Partners LLP, et al.*, No. 24-cv-81143 (S.D. Fla.), hereinafter, the "Florida Action."

[3] 777 Partners did designate the transcript of Mark Shapiro's 30(b)(6) deposition as confidential in the Florida Action, but (1) 777 Partners did not move to seal that document here (A-CAP did), and (2) portions of that transcript are filed on the public docket in the Florida Action, too. *See* Florida Action, ECF No. 197-31.

redactions to this information are overbroad because that information (1) was public for an extended period, (2) has been reported on extensively in the press, and (3) concerns matters of legitimate interest to the public—namely, the sufficiency of A-CAP's insurance affiliates' reserves and ability to continue operating. *See Gulino v. Bd. of Educ. of City Sch. Dist. of City of New York*, 2003 WL 1878235, at *2 (S.D.N.Y. April 11, 2003) (refusing to seal documents that were "clearly of interest to the public"). Underscoring the public's legitimate interest, there are numerous press reports on these subjects. For example, a December 2024 article from Insurance Newsnet details the Utah Insurance Commissioner's order "barring [A-CAP's insurance company affiliates] from writing new business in the state," which emphasized the companies' "negative capital," causing them to "us[e] funds from new premiums and/or liquidating investments other than the impaired investments to pay their obligations as they become due." John Hilton, "Utah issues order for A-Cap insurers to stop doing business due to reserving concerns," *available at* https://insurancenewsnet.com/innarticle/a-cap-insurers-ordered-to-stop-doing-business-in-utah-due-to-reserving-concerns. *See also* Yana Keller, "Utah Insurance Commissioner seeks rehabilitation for A-Cap affiliates amid insolvency allegations," *available at* https://beinsure.com/news/utah-rehabilitation-for-a-cap-affiliates/ (reporting that A-CAP's investments in 777 Partners "have underperformed, requiring ongoing funding to prevent defaults and mask losses" and that "Kenneth King eventually took control of [777 Partners]"); John Hilton, "Utah regulators ask court to place Sentinel Security Life into rehab," *available at* https://insurancenewsnet.com/innarticle/utah-regulators-ask-court-to-place-sentinel-security-life-into-rehab (noting that South Carolina's Department of Insurance was also "unwilling to continue to permit the insurers to incur new liabilities . . . when all companies' [risk-based capital] are at a mandatory control level and each of the insurers exhibits negative surplus."). A-CAP's insistence on concealing from the public any harmful information about its business or its representations in parallel proceedings is not consistent with the standards for sealing and would permit A-CAP to continue making inconsistent representations to different parties and courts.

With respect to non-confidential email exchanges between the parties regarding the TAMI transaction, *see, e.g.,* ECF No. 282-1, Ex. A to the First Nathanson Declaration, Leadenhall agrees to redact economic terms that may be competitively sensitive to A-CAP, but Defendants have provided no justification for sealing the entirety of these exchanges. And finally, as to the Nutmeg Agreement and Acknowledgement, ECF No. 282-10, Ex. J to the First Nathanson Declaration, Leadenhall takes no position but notes that A-CAP did not designate that document as confidential when it was sent to Leadenhall and believes that narrow redactions would suffice to avoid publicization of any commercially sensitive transaction terms.

Based on the positions A-CAP has taken in the parties' discussions, Leadenhall would like an opportunity to reply to any points Defendants raise in connection with this letter.

Respectfully submitted,

*/s/ Leigh M. Nathanson*
Leigh M. Nathanson
