# KING & SPALDING

King & Spalding LLP
1185 Avenue of the Americas
New York, NY 10036-4003
Tel: +1 212 556 2100
Fax: +1 212 556 2222
www.kslaw.com

Leigh M. Nathanson
Direct Dial: +1 212 790 5359
Direct Fax: +1 212 556 2222
lnathanson@kslaw.com

June 11, 2025

The Honorable John G. Koeltl, U.S.D.J.
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Courtroom 14A
New York, NY 10007-1312

Re: *Leadenhall Capital Partners LLP et al v. Wander et al*, 24-cv-03453-JGK

Dear Judge Koeltl:

Plaintiffs Leadenhall Capital Partners LLP and Leadenhall Life Insurance Linked Investments Fund PLC (together, "Leadenhall") respectfully submit this letter to provide new information in further support of Leadenhall's motion for contempt, ECF Nos. 280, 281.[1]

Leadenhall seeks a finding of contempt against the 777 Entity Defendants, A-CAP, and Kenneth King based in part on a transaction—A-CAP's appropriation of a loan owned by an asset of 600 Partners, Nutmeg, in exchange for a write-down of debt owed by Nutmeg—that Defendants concede affected the equity value of Nutmeg. *See* ECF No. 281; *see also* ECF No. 282-8 194:25-195:3 ("Q: Would you agree with me that the equity value of Nutmeg would be affected by a debt write-down concerning a $200 million loan? A: Yes."). The night before Leadenhall filed its reply in support of its motion, A-CAP's counsel informed Leadenhall "as a courtesy" that it intended to foreclose upon and sell "[a]ll equity interests in Nutmeg Acquisition, LLC" owned by 600 Partners on June 6, 2025. Ex. BB; ECF No. 322-1. The Guarantors did not even attempt to provide notice of the foreclosure attempt as required by the PI, reflecting the fact that the Guarantors are now fully controlled by A-CAP. ECF Nos. 282-7, 282-16.

In response to A-CAP's notice, Leadenhall requested information bearing on whether the foreclosure would provide 600 Partners with fair value for the equity value of Nutmeg— specifically, Leadenhall asked the Guarantors and A-CAP for the current equity value of Nutmeg and the amount by which A-CAP intended to reduce the indebtedness secured by the equity value of Nutmeg as a result of the foreclosure sale. Ex. CC (June 4, 2025 Ltr. from L. Nathanson to J. Watkins & J. McCarthy). A-CAP refused to provide that information, including its valuation of the equity value of Nutmeg. Instead, on the day the auction was scheduled to take

---

[1] Capitalized terms have the same meaning as set forth in the Memorandum of Law In Support of Leadenhall's Motion for Contempt. ECF No. 281.

Hon. John G. Koeltl, U.S.D.J.
June 11, 2025

place, A-CAP informed Leadenhall that "no bids materialized" other than a bid submitted by ACM Delegate, A-CAP's affiliate, and so "there will be no live auction." Ex. DD (June 6, 2025 Ltr. from J. Watkins to L. Nathanson).

      A-CAP took the position that "nothing about this public disposition under the UCC violates the preliminary injunction" and declined to disclose either A-CAP's or 600 Partners' valuation of Nutmeg's equity or the amount of ACM Delegate's bid, preventing Leadenhall and the Court from comparing the value versus the proposed purchase price to assess whether 600 Partners received fair value for Nutmeg's equity. *Id.* Whether or not ACM Delegate's bid comported with the UCC is irrelevant to whether it comports with the PI—*i.e.*, whether A-CAP took an asset for less than fair value and thereby "dissipate[d] the value of their assets, including by transferring assets to any Defendant." ECF No. 146 (provision D). Absent any other bids and a live auction, and with no response from the Guarantors or A-CAP even purporting to assert that this transaction was for fair value, it is more than reasonable to presume that a dissipation did occur and that the Guarantors, A-CAP, and King have committed an additional violation of the PI.

      Respectfully submitted,

*/s/ Leigh M. Nathanson*
Leigh M. Nathanson