*Smith, Gambrell & Russell, LLP*
*1301 Avenue of the Americas*
*15th Floor*
*New York, New York  10019*
*Tel: 212-907-9700*
*www.sgrlaw.com*



*John G. McCarthy*
*Direct Tel: 212-907-9703*
*Direct Fax: 212-907-9803*
*JMCCARTHY@sgrlaw.com*

June 16, 2025

**VIA ECF**

Honorable John G. Koeltl
United States District Judge
500 Pearl Street
New York, New York 10007

Re:     *Leadenhall Capital Partners LLP v. Wander*, 24 Civ. 3453 (JGK)(BCM)

Dear Judge Koeltl:

      We are the attorneys for the 777 Entity Defendants, a subset of which are enjoined parties pursuant to the Court's Preliminary Injunction.  We write on behalf of one of the enjoined entities, Defendant 600 Partners LLC ("600 Partners"), to respond to the letter from Plaintiffs Leadenhall Capital Partners LLP and Leadenhall Life Insurance Linked Investments Fund PLC (collectively "Leadenhall") dated June 11, 2025 (ECF No. 326) ("Plaintiffs' Letter").  That letter is not only baseless, but is also hypocritical:  as explained below, Leadenhall only last month attempted to "strip" Borrowers' assets at issue in this case—which Leadenhall itself alleges are valued at over $180 million—for only $3, in purported foreclosure sales (which the Guarantors and affected Borrowers are presently challenging in a separate state-court action).

      Plaintiffs' Letter incorrectly accuses 600 Partners[1] of failing to fulfill an obligation to provide notice of the planned public disposition imposed by the Preliminary Injunction.  The Preliminary Injunction "requires the Borrowers and Guarantors to provide notice to Leadenhall, ING Capital LLC, National Founders LP, Haymarket Insurance Company, and ACM Delegate LLC of any attempt by any Defendant to foreclose on, repossess, or exercise remedial actions against the assets of the Borrowers and Guarantors …."  (ECF No. 146 at 2-3.)  Prior to the receipt of Mr. Watkins's May 26, 2025 email with the Notice of Disposition of Collateral (the "Notice"), 600 Partners was unaware that ACM Delegate LLC intended to dispose of the equity

---

[1] Last week's public disposition did not involve the assets of any other 777 Entity Defendant.  Moreover, Plaintiffs do not claim, because they cannot, that any other 777 Entity Defendant was involved in any way in the public disposition of 600 Partners' equity interest in Nutmeg Acquisition LLC.  Accordingly, the references to "Guarantors" in Plaintiffs' Letter are incorrect and this letter focuses on 600 Partners.

Honorable John G. Koeltl
June 16, 2025
Page 2

of Nutmeg Acquisition LLC ("Nutmeg").  As Exhibit BB to Plaintiffs' Letter demonstrates, four of the six entities to which 600 Partners arguably was required to provide notice were aware of the planned action by virtue of either (a) their receipt of the Notice at the same time as 600 Partners or (b) affiliation with its provider. (ECF No. 326-1.)  The Notice came from Intervenor ACM Delegate LLC, so it was obviously aware of the proposed public disposition.  As Mr. Watkins also represents Intervenor Haymarket Insurance Company in this action, it also had notice.  The email with the Notice was also addressed to Leigh Nathanson and Brian Donovan, two of Leadenhall's attorneys in this case, so Leadenhall became aware of the proposed disposition in the same manner as 600 Partners.  That Leadenhall was on notice was confirmed on May 27, 2025, when Ms. Nathanson sent a reply-all email asking "Smith Gambrell and/or B. Riley" how 600 Partners intended to react to the notice.  Finally, as to Intervenors ING Capital LLC and National Founders LP, I provided their attorneys with a copy of the notice shortly after I first saw it.  (A copy of my email to them is submitted herewith as Exhibit A.)  Thus, assuming *arguendo* that it was required to provide notice pursuant to the Preliminary Injunction, 600 Partners diligently complied in a reasonable manner by making sure all notice parties were aware of the proposed action within a reasonable amount of time after ACM Delegate announced its intentions.

Last year, this Court, in declining to adopt a report and recommendation of a finding of civil contempt, observed:

> "A party may be held in civil contempt for failure to comply with a court order if: (1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner." *Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.*, 396 F.3d 645, 655 (2d Cir. 2004). Civil contempt is a "potent weapon" that courts should not use "where there is a fair ground of doubt as to the wrongfulness of the defendant's conduct." *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir. 1995); *see also In re Att'y Gen. of U.S.*, 596 F.2d 58, 65 (2d Cir. 1979) ("[T]he court must not lightly invoke its contempt power.").

*Garmashov v. U.S. Parachute Ass'n, Inc.*, No. 21 Civ. 4917 (JGK)(OTW), 2024 WL 4135879, at *2 (S.D.N.Y. Sept. 10, 2024) (footnotes omitted).  Leadenhall did not even attempt to meet this standard before imposing on the Court's time and the defendants' resources to respond to its missive.

The letter is devoid of an explanation, let alone any facts, as to how 600 Partners allegedly violated the Preliminary Injunction by taking action to dissipate the value of its assets.  (ECF No. 146 at 2 (prohibiting 600 Partners "from taking any action to dissipate the value of [its] assets, including by transferring assets to any Defendant").)  The only allegation about 600 Partners is that it did not respond to Leadenhall's pre-auction request for information.  600 Partners was under no obligation to respond to the request and any response would have stated

Honorable John G. Koeltl
June 16, 2025
Page 3

that 600 Partners did not possess sufficient information to intelligently answer either question at that time.

Finally, 600 Partners believes that it is hypocritical for Leadenhall to claim that 600 Partners somehow dissipated the value of its assets with respect to Nutmeg when last month Leadenhall conducted a purported auction of all of the assets of three Borrowers -- SPLCSS III LLC, Dorchester Receivables II LLC and Signal SML 4 LLC -- and credit bid three dollars. Leadenhall made no attempt to bid fair value for the assets, which will require further litigation as to the commercial reasonableness of its actions. (A copy of the transcript from the auction sales is attached hereto as Exhibit B.) The Corrected Amended Complaint alleges that the collateral of those entities was worth at least as follows:

| Borrower | Amount | As of | Cite |
| --- | --- | --- | --- |
| SPLCSS III, LLC | $64,076,152 | March 2023 | ECF No. 187, ¶ 146 |
| Dorchester Receivables II LLC | $42,455,474 | March 2023 | ECF No. 187, ¶ 148 |
| Signal SML 4 LLC[2] | $73,790,592 | Nov. 2023 | ECF No. 187-10 |
| TOTAL | $180,502,218 | | |

Last year, before it filed the Corrected Amended Complaint, Leadenhall received the results of the audit conducted by Saiph Consulting of the "Receivables in the SPLCSS III LLC and Dorchester Receivables II LLC credit facilities." (A copy of the Saiph Report as filed by Leadenhall in the Florida litigation is attached hereto as Exhibit C.) As the report explains, Saiph "obtain[ed] all digital records pertaining to each Receivable … from the borrowers and servicer SuttonPark Capital." (Ex. C at 2.) Obviously, if the Saiph Report showed that the assets of those entities were worth less than the borrowing bases from the revised March 2023 reports Leadenhall would have alleged that in the Corrected Amended Complaint.

600 Partners did not violate the Preliminary Injunction and this Court should reject the frivolous assertion in Plaintiffs' Letter.

Respectfully yours,

John G. McCarthy

Enclosures
cc:   All counsel of record (via ECF only)

---

[2] Leadenhall has not alleged any deficiency on the part of Signal SML 4 LLC, meaning its assets were worth at least $73.79 Million, the principal amount of its borrowings.

SGR/80441351.2