# EXHIBIT A

# CADWALADER

Cadwalader, Wickersham & Taft LLP
200 Liberty Street, New York, NY 10281
Tel +1 212 504 6000  Fax +1 212 504 6666
www.cadwalader.com

August 19, 2025

**VIA ECF**

The Hon. Barbara Moses
Daniel Patrick Moynihan Courthouse
United States Courthouse
500 Pearl St
New York, New York 10007

Re:   *Leadenhall Capital Partners LLP v. Wander et al.*, No. 1:24-cv-03453-JGK-BCM

Dear Judge Moses:

We write on behalf of A-CAP and Mr. King to address factual allegations raised for the first time in reply, ECF 340. Leadenhall presents these allegations, regarding B. Riley and ACM Delegate, as the lynchpin of its position, asserting it has met its burden "because . . . Gettman is the only A-CAP custodian holding a business role with ACM Delegate." ECF 340 at 5; *see generally id.* at 4-5 & n.2.

On each issue, Leadenhall conflates (a) its accusations about A-CAP's post-complaint exercise of UCC remedies (through ACM Delegate) and (b) what it alleges in its claims for relief. Leadenhall brings no claim targeting those remedies. Its claims are instead about an alleged fraud allegedly perpetrated by Mr. Wander and his deputies in June 2021 and before—*before Ms. Gettman joined A-CAP in September 2021*; to which *Leadenhall* was tipped off in September 2022; and of which, Leadenhall alleges on information and belief, A-CAP "must have" become "aware" only by March or April 2023. *See, e.g.*, ECF 187 ¶¶ 3, 208-209, 212; *see also* ECF 340 at 4 (describing the 2021 fraud as the "crux of this case").[1]

*First*, Leadenhall's new assertion about B. Riley does not make Ms. Gettman a proper custodian. Leadenhall has never before alleged—not in the complaint, and, in violation of Individual Practice 2.b, not in any meet and confer—that Ms. Gettman "install[ed] restructuring professionals from B. Riley to manage 777" in May 2024. ECF 340 at 4 (citing ECF 282-7 at 3–

---

[1] Most newly asserted "facts" come from Leadenhall's arguments about the Court's preliminary injunction (itself the subject of an interlocutory appeal). *See, e.g.*, ECF 281, 304, 320. The lone cite to the operative complaint is misleading. While paragraphs 134 and 243 allege that ACM Delegate LLC is A-CAP's collateral agent and holds all-asset liens, they do *not* assert that Ms. Gettman serves "as manager (a non-legal role) of ACM Delegate." ECF 340 at 4; *see also* ECF 187 ¶¶ 134, 243.

**Jonathan M. Watkins**  Tel +1 212 504-6229   Fax +1 212 504-6666   jonathan.watkins@cwt.com

The Hon. Barbara Moses
August 19, 2025

4); *see* ECF 187 ¶ 194(k) (alleging that *Mr. King* is responsible for the installation of B. Riley). Nor does the assertion advance Leadenhall's position.  The assertion is unripe (for lack of conferring) and untimely (made only in reply); B. Riley taking control of 777 in 2024, after this lawsuit was filed, has nothing to do with "knowledge and participation," ECF 340 at 4, in an alleged fraud from 2021 and before; and, in any case, Leadenhall does not (and cannot) show that Ms. Gettman has *unique* documents regarding the appointment of B. Riley.  Any such documents will be in the files of (i) B. Riley, (ii) 777, and (iii) Mr. King.

*Second*, Leadenhall's new claim that Ms. Gettman was "essential to facilitating" A-CAP's alleged control over 777 because she is the authorized signatory for (and "manager"[2] of) A-CAP's collateral agent, ACM Delegate, is also misleading, untimely, and irrelevant.  Every assertion involving ACM Delegate postdates this lawsuit, and thus has nothing to do with the alleged fraud from June 2021 and before.  *See* ECF 340 at 4 (citing two documents signed by Ms. Gettman, from June and December 2024).

Furthermore, ACM Delegate is a collateral agent.[3]  ECF 187 ¶¶ 134, 243.  It has no "business"; it takes administrative and enforcement actions directed by its principal and sole member, A-CAP.  Ms. Gettman thus has no "business role"; she signs legal documents as directed by A-CAP and its principal—agreed custodian Mr. King.  Here, the two documents cited by Leadenhall merely effect ACM Delegate's unchallenged rights—rights disclosed long ago in public UCC filings.  And Leadenhall fails to explain how those documents suggest the existence of others that are relevant and unique to Ms. Gettman's files.  *Cf. Jones v. Varsity Brands, LLC*, 2021 WL 5889984, at *4 (W.D. Tenn. Dec. 13, 2021) (holding a "signature on one agreement" does not "establish the likelihood that [a custodian] would possess non-duplicative or responsive documents"); *Blackrock Allocation Target Shares: Series S Portfolio v. Bank of New York Mellon*, 2018 WL 2215510, at *12–13 (S.D.N.Y. May 15, 2018) (denying motion for lack of a particularized showing of relevance).  Any document concerning ACM Delegate's exercise of rights over 777 will be in the files of one or more of B. Riley, 777, and Mr. King.

*Finally*, while Leadenhall, for the first time, seems to fault A-CAP for "not producing a single document," ECF 340 at 1, 5 & n.4, no party, including Leadenhall, has yet produced custodial documents.  Leadenhall and A-CAP remain engaged in good faith search-term and custodian negotiations; custodial review and production comes next.

---

[2] The "manager" term reflects the nomenclature of LLC law; it is not descriptive of Ms. Gettman's role.

[3] Collateral agents "hold[] the collateral on behalf of the lenders . . . as security for performance of the borrower's obligations under the loan agreement.  The borrower grants a security interest in the collateral to the collateral agent on behalf of the lenders, and the collateral agent, as secured party under the UCC, takes all necessary administrative and enforcement actions with respect to the collateral on behalf of the lenders."  Collateral Agent, Prac. Law Glossary (2025).

The Hon. Barbara Moses
August 19, 2025

  More to the point, Leadenhall relies on the lack of documents to explain its now-confessed *inability to "assess A-CAP's uniqueness defense." Id*. at 5 (emphasis added).  No matter the reason, that admission is dispositive:  Leadenhall bears the burden of establishing unique relevance.

  For that reason, together with those above and in A-CAP's opposition letter, Leadenhall fails to show that Ms. Gettman is likely to possess unique and relevant documents.[4]

              Respectfully submitted,

              */s/ Jonathan M. Watkins*

              Jonathan M. Watkins

cc: All Counsel of Record via ECF

---

[4] Despite its assertion to the contrary, Leadenhall has not shifted the burden.  It has not shown "discrete categories of unique, non-privileged documents that Gettman is likely to possess." ECF 340 at 5.  Nor is A-CAP's assertion of burden "[g]eneral and conclusory." *Id.*  Ms. Gettman is A-CAP's Chief Legal Officer.

Page 3