# KING & SPALDING

King & Spalding LLP
1290 Avenue of the Americas
New York, NY 10104
Tel: +1 212 556 2100
Fax: +1 212 556 2222
www.kslaw.com

Leigh M. Nathanson
Direct Dial: +1 212 790 5359
lnathanson@kslaw.com

October 17, 2025

**VIA ECF**

The Honorable Barbara Moses
United States Magistrate Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Courtroom 20A
New York, NY 10007-1312

      Re:    *Leadenhall Capital Partners LLP et al. v. Wander et al.*, No. 1:24-cv-3453-JGK

Dear Judge Moses,

      We represent Plaintiffs Leadenhall Capital Partners and Leadenhall Life Insurance Linked Investments Fund PLC ("Leadenhall") in the above-captioned action. On July 3, 2025, Leadenhall served a subpoena for documents on Nicholas Bennett, a former Senior Manager in Defendant 777 Partners' Capital Markets group and former employee of Defendant SuttonPark Capital LLC. *See* **Exhibit A**. Bennett never lodged any formal objections to the subpoena, nor did he move to quash; his only response was a short email raising inchoate objections.

      The subpoena's date of compliance was July 22, 2025. Nearly three months later, Leadenhall has not received any documents from Bennett, who has taken the unsupported positions that he is not required to respond because (1) he is no longer employed by 777 Partners and (2) he has invoked the Fifth Amendment's privilege against self-incrimination. Even if these positions were construed as formal objections, they are insufficient to excuse his noncompliance with the subpoena. Because Bennett is not represented by counsel, Leadenhall has attempted to work with him far beyond the subpoena's return date to facilitate his production of documents. Leadenhall has received no good-faith cooperation from Bennett in return. Accordingly, Leadenhall respectfully seeks to compel Bennett's compliance with the subpoena pursuant to Rules 37 and 45 of the Federal Rules of Civil Procedure.[1]

## I.    Legal Standard

      "[A] valid subpoena is a legal instrument, non-compliance with which can constitute contempt of court." *Daval Steel Prods. v. M/V Fakredine*, 951 F.2d 1357, 1364 (2d Cir. 1991). Rule

---

[1] This Court's Individual Practices on Discovery Motions instruct that the moving party must first attempt to meet and confer in good faith and "real time" before requesting a discovery conference with the Court. *See* Individual Practices § 2.b. As explained below, Leadenhall has attempted to confer with Mr. Bennett, but he has largely been non-responsive and has declined to speak with Leadenhall's counsel by phone.

45 permits the serving party to "move the court for the district where compliance is required for an order compelling production."[2] Fed. R. Civ. P. 45(d)(2)(B)(i). "Absent an improperly issued subpoena or an 'adequate excuse' by the non-party, failure to comply with a subpoena made under Rule 45 may be deemed a contempt of the court from which the subpoena issued." *Freund v. Weinstein*, 2009 WL 4065585, at *1 (E.D.N.Y. Nov. 23, 2009). "Facts demonstrating that the non-party 'has not responded to [subsequent] efforts to procure compliance' weigh in favor of enforcing a subpoena." *Gonzalez v. Speedway*, 2024 WL 1075328, at *1 (S.D.N.Y. Mar. 12, 2024).

## II. Bennett Possesses Relevant Documents.

The information Leadenhall seeks from Bennett is "relevant and material to the allegations and claims at issue" here. *Mizrahi v. Equifax Info. Servs., LLC*, 345 F.R.D. 392, 396 (E.D.N.Y. 2024); *see also Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (relevance under Rule 26(b)(1) is broadly construed "to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue" in the case); *Gov't Emps. Ins. Co. v. Dinesh Verma Med., P.C.*, 2023 WL 1967575, at *4 (E.D.N.Y. Feb. 10, 2023) (non-party subpoenas for documents related to plaintiffs' "claims against defendants, which were premised upon [d]efendants' alleged engagement in a scheme which defrauded [p]laintiffs," were relevant and proportional to the needs of a fraud case).

Bennett was the 777 Partners "foot soldier" perpetrating the years-long fraud at the heart of this case. *See* ECF 187 ¶¶ 100–01, 113, 153, 158. While employed by 777 Partners, Bennett was Defendant Josh Wander's principal deputy in allocating assets to Leadenhall (via 777 Partners' internal computer system, MP Fin) that were already pledged to other lenders or did not exist at all. *Id.* ¶¶ 113, 153, 155–56. Bennett himself then prepared the monthly false Compliance Reports delivered to Leadenhall that form the basis for the pattern of wire fraud alleged against Defendants, including Reports that falsely stated that 777 Partners owned "free and clear" hundreds of millions of dollars' worth of pledged assets. *See id.* ¶¶ 100–01, 115, 120, 156. Additionally, at Mr. Wander's direction, Bennett pledged to Leadenhall assets that 777 Partners never acquired—they were owned by JG Wentworth—as collateral for 777's lenders and then moved funds around to create the appearance of cash flows where none existed. *Id.* ¶¶ 153, 154, 158.[3] Additionally, in a criminal indictment filed against Josh Wander by the Department of Justice on October 14, 2025, Leadenhall understands that Bennett is the "analyst" referenced who altered bank statements sent to Leadenhall using Microsoft Paint. **Exhibit D**; ECF No. 187 ¶¶ 163–74.

Bennett's knowledge also extends to A-CAP's control over 777 Partners and A-CAP's substantial assistance in 777's fraud. *See, e.g.*, *id.* ¶ 397. After Leadenhall was tipped off about a shortfall in its collateral, A-CAP reassigned Bennett to report directly to A-CAP's COO and physically relocated an A-CAP employee into Bennett's office. *Id.* ¶¶ 202–03. For these reasons, Bennett's documents are relevant and will help uncover the full scope of Defendants' fraud.[4]

---

[2] Although Mr. Bennett's subpoena was addressed to his former address in Miami, Leadenhall has since learned that Mr. Bennett resides in Stamford, CT, which is within 100 miles of New York, NY, the place of compliance specified in the subpoena.

[3] The court in the related (and now-dismissed) action filed by 777 Partners in the Southern District of Florida already held that Mr. Bennett possessed relevant knowledge and compelled his deposition. *See 777 Partners LLC, et al. v. Leadenhall Capital Partners, et al.*, No. 24-cv-81143 (S.D. Fla.), ECF 117 at 7. At that deposition, Mr. Bennett invoked the Fifth Amendment and refused to answer any questions. *See* **Exhibit B**.

[4] As Leadenhall informed Mr. Bennett via email (*see* **Exhibit C** at 9), Leadenhall possesses documents showing that Mr. Bennett regularly communicated about matters responsive to Leadenhall's requests on his personal devices.

Leadenhall's subpoena for Bennett's documents is proportional the needs of this case. *See Bizelia v. Clinton Towers Mgmt.*, 2024 WL 4729769, at *3 (S.D.N.Y. Oct. 9, 2024) (discovery from non-party who "handled [key] documents and information" fell "well within the proportionality requirement").

### III. Bennett's Refusal to Engage Weighs in Favor of Granting this Motion.

Bennett has failed to comply with Leadenhall's subpoena despite Leadenhall's sustained efforts to secure his response. This delay weighs heavily in favor of enforcing the subpoena. *See Gonzalez*, 2024 WL 1075328, at *1 (compelling compliance where non-party had "not responded to ... efforts to procure compliance").

On July 3, 2025, Leadenhall sent Bennett a subpoena for documents, which he accepted by email.[5] Leadenhall heard nothing for nearly a month until July 29, when he replied by asserting (without elaboration) that (1) Leadenhall's requests were "over-broad and unduly burdensome," (2) "777's documents and communications are no longer in my possession or control in the ordinary course of business," and (3) "[t]o the extent I am in possession or control of any responsive documents, I invoke my Fifth Amendment privilege and … decline to respond[.]" *See* **Exhibit C** at 11. Leadenhall replied the same day, asking whether Bennett was represented by counsel and if he would discuss the subpoena by phone. *See id.* at 10. Bennett did not respond. On August 5, Leadenhall followed up again to (1) convey its position that the Fifth Amendment privilege must be asserted on a document-by-document basis—rather than as a blanket objection—and (2) ask Bennett whether he was refusing to search for responsive documents. *See id.* at 9–10. Again, Bennett failed to reply. When Leadenhall followed up again on August 19, Bennett replied, stating that he had been ill and needed "a day or two to confer with counsel." *See id.* at 8. Finally, on September 3, Bennett asked that all inquiries be directed to his purported counsel. *See id.* at 7.

After numerous attempts to get in touch with Jeff Sloman, the counsel Bennett identified,[6] Mr. Sloman informed Leadenhall on September 16 that his firm does not represent Bennett in connection with the subpoena. *See id.* at 4. Leadenhall immediately relayed this to Bennett and made one final offer to confer; otherwise, Leadenhall explained that it would proceed on the assumption that Bennett was standing on his blanket Fifth Amendment objection. *See id.* at 4. Bennett did not respond, so on October 8, Leadenhall informed him of its intent to file this motion. *See id.* at 3. On October 10, Bennett responded, claiming he would review the subpoena again to "determine what [he is] able to assist with." *Id.* Leadenhall promptly engaged and asked for assurances that Bennett would comply with the subpoena; Bennett did not respond. *See id.* at 3. On October 14, Leadenhall again warned Bennett that if he did not begin providing documents, it would file this motion. *See id.* at 2. This time, Bennett asked to schedule a call. *See id.* at 2. Leadenhall attempted to schedule a call, but Bennett again went silent. *See id.* at 1. On October 16, Leadenhall called Bennett's cell phone, left a voicemail, and sent a follow-up email. Leadenhall received no response. *See id.*

Bennett's ongoing non-compliance leaves Leadenhall with no alternative but to seek this Court's assistance in enforcing the subpoena. *See, e.g.*, *Freund*, 2009 WL 4065585, at *1 (enforcing valid non-party subpoena where party seeking enforcement made multiple attempts to

---

[5] The subpoena is valid and was properly served on Mr. Bennett because it was "issued from this Court and [] signed by [Leadenhall's] counsel." *Mizrahi*, 345 F.R.D. at 396.
[6] Mr. Sloman represented Mr. Bennett in connection with his deposition in the related Florida case.

secure compliance and non-party did not proffer reasons to excuse non-compliance); *Gov't Emps. Ins. Co.*, 2023 WL 1967575, at *5 (same).

### IV. Bennett's Privilege Objection Is Contrary to Law.

Bennett has offered no adequate excuse for his non-compliance. *Jalayer v. Stigliano*, 2016 WL 5477600, at *2 (E.D.N.Y. Sept. 29, 2016) ("[A] non-party who knowingly fails to comply with a duly issued and served subpoena … and who provides no justification for his [] failure to appear may be found in contempt."). First, his boilerplate objection that Leadenhall's requests are "overbroad" and "unduly burdensome" does not relieve him of his duty to respond. *See Certain Underwriters at Lloyd's v. Nat'l R.R. Passenger Corp.*, 2016 WL 6902140, at *7 (E.D.N.Y. Nov. 23, 2016). Second, Bennett's attempt to invoke the Fifth Amendment right against self-incrimination fails because "an individual cannot avoid compliance with a subpoena merely by asserting that the documents sought contain incriminating writing." *Prudential Sec. Inc. v. Brigianos*, 233 A.D.2d 18, 21 (1st Dep't 1997). As the Supreme Court has explained, "the Fifth Amendment privilege against self-incrimination generally does not apply to incriminating documents; instead, it applies only to '*testimonial communication* that is incriminating.'" *U.S. v. Clark*, 574 F. Supp. 2d 262, 266 (D. Conn. 2008) (quoting *Fisher v. U.S.*, 425 U.S. 391, 408 (1976)) (emphasis original). The Fifth Amendment applies only where the "*act of production* itself was (1) compelled, (2) testimonial, and (3) incriminating, in that compliance was the equivalent of forced testimony as to the existence, unlawful possession, and/or authenticity of the documents[.]" *U.S. v. Gendreau*, 2014 WL 464754, at *2 (S.D.N.Y. Jan. 22, 2014) (emphasis original).

Even if the Fifth Amendment provided a proper objection here, it may not be asserted on a blanket basis—but must instead be raised as to each specific document at issue. *See U.S. v. Cianciulli*, 2001 WL 1097919, at *3 (S.D.N.Y. Sept. 19, 2001) (a party "asserting the Fifth Amendment may not rely on a blanket claim of privilege, but must assert his [] claim in the context of specific questions and on a document-by-document basis").

\*\*\*

Because Bennett (i) is in possession of responsive documents, (ii) has not moved to quash or asserted valid objections, and (iii) has failed to comply well beyond the date specified in the subpoena (and despite repeated attempts to engage with him), Leadenhall respectfully requests that this Court enforce Leadenhall's subpoena and require Bennett to produce all responsive, non-privileged documents in his possession.

Respectfully submitted,

*/s/ Leigh M. Nathanson*

Leigh M. Nathanson

*Counsel for Plaintiffs*