

King & Spalding LLP
1290 Avenue of the Americas
New York, New York 10104

**Leigh M. Nathanson**
Partner
T: 212-790-5359
lnathanson@kslaw.com

October 23, 2025

**VIA ECF**

Hon. John G. Koeltl
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007

Re: *Leadenhall Capital Partners LLP et al. v. Wander et al.*, 24-cv-03453-JGK

Dear Judge Koeltl,

We write on behalf of Plaintiffs Leadenhall Capital Partners LLP and Leadenhall Life Insurance Linked Investments Fund PLC (together, "Leadenhall") to update the Court on recent developments bearing on Defendants' motions to dismiss the Corrected Amended Complaint ("CAC"). *See* ECF Nos. 203, 209, 211, 214.

**A. Criminal and Civil Enforcement Actions Filed Against Defendants Echo Leadenhall's Allegations That Defendants Conspired to Defraud Leadenhall by Falsely Representing That Leadenhall's Loan Was Fully Secured.**

In October 2025, the Department of Justice brought criminal proceedings against Defendant Josh Wander, former Managing Partner of 777 Partners LLC, and reached a plea agreement with 777 Partners' former CFO, Damien Alfalla. *United States v. Joshua Wander*, 25-CR-473 (S.D.N.Y., filed Oct. 16, 2025); *United States v. Damien Alfalla*, 25-CR-468 (S.D.N.Y., filed Oct. 14, 2025). At the *Wander* initial conference, the government stated that "it is possible the government will bring additional charges in this case, both against the defendant and against other individuals." 25-CR-473, Oct. 21, 2025 Hr'g Tr. 5:18–20. The SEC initiated enforcement proceedings against Defendants Wander, Steven Pasko, 777 Partners, and 600 Partners LLC, along with Alfalla. *Sec. & Exch. Comm'n v. Wander, et al.*, 25-CV-8565 (S.D.N.Y., filed Oct. 16, 2025). The criminal proceedings and SEC enforcement action corroborate the pattern of wire fraud and conspiracy alleged against Defendants and reaffirm that Leadenhall's claims are plausibly pled.

*United States v. Wander* charges Wander with directing a multi-year scheme "to defraud lenders and investors in 777 Partners LLC" by making "false and misleading representations and fabricat[ing] financial documents to inflate 777 Partners' financial performance, to exaggerate its assets, and to conceal the firm's unsanctioned use of loans and investments." Wander Indict. ¶ 1. The indictment charges four counts: conspiracy to commit wire fraud; wire fraud; conspiracy to commit securities fraud; and securities fraud. *Id.* ¶¶ 27–36. The indictment describes Wander's pledging "more than $350 million in assets as collateral to private lenders, knowing that 777 Partners either did not own the collateral or had already pledged the collateral to other lenders," and Wander's collection of over $100 million from investors by selling "preferred equity in 777

October 23, 2025
Page 2

Partners based on misrepresentations regarding the financial condition of the business." *Id.* ¶ 1. The indictment alleges that "Wander defrauded the firm's lenders and investors out of nearly $500 million." *Id.* Leadenhall believes it is referenced as "Lender-1" in the indictment.

*United States v. Alfalla* alleges that, from 2021 through 2024, Alfalla engaged in schemes to defraud lenders and investors by making false and misleading statements about the financial condition and collateral of 777 Partners. Alfalla Indict. ¶¶ 1–2. Alfalla pled guilty to all counts: conspiracy to commit wire fraud, wire fraud, conspiracy to commit securities fraud, and securities fraud.

*SEC v. Wander, et al.* alleges that Wander, Pasko, Alfalla, 777 Partners, and 600 Partners raised approximately $237 million through materially false statements about profitability, dividend capacity, and financial health while concealing, through false reports, a severe liquidity crisis tied to the misuse and $300 million overdraw of a key credit facility from which it diverted collateral and cash. The complaint asserts four causes of action for violations of the Securities Act and the Securities Exchange Act. Leadenhall believes it is referenced as "Lender A" in the complaint.

The three actions corroborate Leadenhall's allegations in the CAC as follows:

**Personal Jurisdiction.** Wander and Pasko argue that this Court lacks jurisdiction over them despite consenting to jurisdiction in multiple contracts and maintaining numerous suit-related contacts with New York. The DOJ and SEC actions echo Leadenhall's allegations of Wander's and Pasko's New York-based wrongful acts and assert jurisdiction over Defendants in this District.

**RICO Enterprise.** Leadenhall alleges an association-in-fact enterprise comprising the 777 Entity Defendants, A-CAP, Wander, Pasko, and Kenneth King. Leadenhall alleges that the enterprise had a common fraudulent purpose; the members had employment, contract, and control/agency relationships with one another; and the enterprise engaged in a clear, regular, and longstanding practice of racketeering activity going back to at least 2020. CAC ¶¶ 99–162, 163–74, 230–42, 244, 247-309. Likewise, the SEC pleads that Wander and Pasko managed 777 Partners and 600 Partners "as a unified business" and directed misuse of a core credit facility and concealment of the overdraw between 2021 and 2024. *See* SEC Compl. ¶¶ 1, 3–4. The Wander indictment likewise alleges orchestration of false collateral reporting and fabricated documents through subordinates, consistent with Plaintiffs' allegations. Wander Indict. ¶¶ 12–18.

**Predicate Acts of Racketeering Activity.** Leadenhall alleges that Defendants submitted 60+ fraudulent communications falsely representing collateral as "free and clear," together with forged bank statements, resulting in the theft of over $600 million. CAC ¶¶ 99–162, 311. The SEC complaint alleges false reporting to investors, concealment of a liquidity crisis tied to credit-facility misuse, and diversion of collateral. *See* SEC Compl. ¶¶ 3–4, 97–102. And the Wander indictment charges wire fraud based on similar transmissions of false reports and fabricated records. Wander Indict. ¶¶ 29–30.

**Each 777 Defendant's Participation.** Leadenhall alleges each Defendant's "conduct or participation" in the enterprise, including Wander's role, along with King, as the principal architect of the fraud and Pasko's role as the signatory of false compliance reports and the scheme's primary cash beneficiary. *See, e.g.*, CAC ¶¶ 30–36, 61–64, 100–01, 152–62, 252–76. The SEC alleges

October 23, 2025
Page 3

that Wander directed the misuse of credit facilities and fabricated documents, Pasko signed false reports even though he knew or should have known that they were misleading, and both personally received diverted investor funds. *See* SEC Compl. ¶¶ 3–4, 44, 68; Wander Indict. ¶¶ 29–30.

***Continuity.*** Leadenhall alleges both closed-ended continuity—a multi-year scheme with regular repetition—and open-ended continuity—Defendants' "regular way" of doing business and ongoing threat to victims. *See* CAC ¶¶ 99–174, 257–76. The SEC and DOJ pleadings describe years-long schemes, repeated transmissions, and sustained concealment of facility overdraws and collateral deficiencies—confirming a pattern that is both substantial in duration and capable of repetition. *See* SEC Compl. ¶¶ 3–4; *see generally* Wander Indict; Alfalla Indict.

***Proximate cause and injury.*** Leadenhall alleges injury directly caused by the racketeering scheme that induced Leadenhall's reasonable reliance on Defendants' fraudulent statements. *See* CAC ¶¶ 321, 367–71. Similarly, the SEC alleges investor harm from concealed facility misuse and overdraw, and the indictment alleges substantial lender and investor losses through false collateral and financial reporting. *See* SEC Compl. ¶¶ 2–4; *see generally* Wander Indict; Alfalla Indict.

***RICO Conspiracy.*** Leadenhall alleges that Defendants engaged in a RICO conspiracy by agreeing to join a racketeering scheme. CAC ¶¶ 99–218, 230–42, 257–303. Based on essentially the same facts alleged by Leadenhall, the DOJ charged Wander with conspiracy to commit wire fraud based on his agreement with "others known and unknown" "to engage in a scheme to obtain and maintain borrowed funds from various lenders by means of false and misleading statements about the financial condition and available collateral of 777 Partners LLC." Wander Indict. ¶ 28. As the SEC complaint and indictment underscore, Wander did not act alone.

### B. Leadenhall's Exercise of Contractual Remedies to Take Control of Its Little Remaining Collateral Moots Defendants' Standing and Ripeness Challenges.

In their motions to dismiss, Defendants argue that Leadenhall lacked standing to pursue RICO claims because it had not foreclosed on what little collateral remained. *E.g.*, ECF No. 205 at 11–12. The law does not make foreclosure a prerequisite to bringing RICO claims; it requires only that a plaintiff ascertain "clear and definite" damages—which Leadenhall did when it exercised its acceleration remedy and Defendants failed to repay the accelerated debt. ECF No. 248 at 49–50. In an April 23, 2025 letter, the 777 Entity Defendants informed the Court that Leadenhall had noticed foreclosure of certain of its collateral, arguing that the notices "constitute[d] tacit admissions that foreclosure remedies are available to them." ECF No. 277 at 3. As Leadenhall noted in response, its acceleration of the debt made foreclosure irrelevant to the RICO analysis. ECF No. 298 at 1. Regardless of its merits, Defendants' standing challenge is now moot because, on May 15, 2025, Leadenhall foreclosed on the remaining collateral,[1] exhausting its contractual remedies as to whatever collateral Defendants did not double-pledge or fabricate. 777 sought a TRO to enjoin the foreclosure, which was denied. *Signal SML 4 LLC, et al. v. Leadenhall Life Ins. Linked Invs. Fund PLC*, No. 652929/2025 (N.Y. Sup. Ct.), Doc. No. 15.

---

[1] The foreclosure involved receivables held by three of the four Borrower Defendants. Leadenhall had previously exercised other remedies with respect to collateral held by the fourth Borrower Defendant, Insurety, through the appointment of an independent director with 777's consent after 777's managers informed Leadenhall that it could no longer fund the servicing of the collateral, as it was required to do under the LSA.

October 23, 2025
Page 4

                                                Respectfully submitted,

                                                */s/ Leigh M. Nathanson*

                                                Leigh M. Nathanson

Cc: All counsel of record (via ECF)