

King & Spalding LLP
1290 Avenue of the Americas
New York, New York 10104

**Leigh M. Nathanson**
Partner
T: 212-790-5359
lnathanson@kslaw.com

October 30, 2025

**VIA ECF**

Hon. Barbara C. Moses
United States Magistrate Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007

   Re: *Leadenhall Capital Partners LLP et al. v. Wander et al.*, 24-cv-03453-JGK-BCM
     Response to Oct. 27, 2025 Letter from 777

Dear Judge Moses,

   The 777 Entity Defendants ("777")—and SuttonPark Capital LLC ("SuttonPark") in particular—seek to vet the production of a *third party* pursuant to a valid subpoena, to which they did not object, seeking documents concededly responsive to this case. Despite having no obligation to do so, Leadenhall conferred with 777's counsel to allow SuttonPark the opportunity to preserve its privilege. Because Leadenhall knew that the subpoena recipient, Fred Love, previously served as SuttonPark's President *and* General Counsel, Leadenhall affirmatively disclosed that Love had produced a drive that contained emails pertaining to SuttonPark. Leadenhall presented two proposals: (1) 777 could review the documents for privilege (and Leadenhall would not access the drive until that review was complete) or (2) Leadenhall would perform a privilege review at its own cost, using a team of independent lawyers walled off from the litigation. 777 chose option (1), but now wants to do more—to substitute its own view of *responsiveness* for that of the producing party. This is the latest episode in a nearly year-long effort by 777 to stonewall discovery in this action. 777's request to conduct a "relevance review" of a third party's production in response to a valid subpoena has no basis in the law and should be denied.

   **A. Love Produced Documents Pursuant to a Valid, Unchallenged Subpoena.**

   On June 23, 2025, Leadenhall issued Love a document subpoena with a return date of July 18. Leadenhall provided notice of the subpoena to all parties; 777 did not object to the subpoena or move to quash. Nor did 777 tell Leadenhall that Love was not supposed to possess any SuttonPark documents, as they now contend. *See* ECF 365 at 1.[1] Leadenhall initially served the subpoena on Love's former counsel, who advised that they did not represent Love in connection with the subpoena and that Love would accept service by email. When Leadenhall emailed the subpoena to Love, he confirmed that he accepted service and was not represented by counsel with

---

[1] After his formal employment with SuttonPark ended in May 2024, Love remained engaged as a consultant for SuttonPark for several months.

October 30, 2025
Page 2

respect to the subpoena (as Leadenhall told 777 on September 8, 2025).  *See* Ex. A, 6/26/25 F. Love email.

Love subsequently told Leadenhall's counsel that he planned to respond to the subpoena by producing a hard drive containing relevant emails.  On August 13, 2025, Love delivered the drive to Leadenhall's counsel in New York.

### B. **Leadenhall Had—and Has—No Reason to Believe Love Wrongfully Obtained the Documents, Which 777 Has an Independent Obligation to Produce.**

777 concedes that Leadenhall's subpoena was valid, properly issued, and sought relevant information from a relevant witness.  And 777 does not (and cannot) assert that Leadenhall directed Love to obtain documents improperly from his former employer.  Rather, 777 makes two baseless insinuations about Leadenhall's conduct.  First, attempting to create an appearance of impropriety, 777 tries to connect Love to Noah Davis, another former employee, who 777 accused of "illicitly download[ing]" thousands of files at Leadenhall's behest.  ECF 365 at 2.  These baseless allegations were the subject of a retaliatory lawsuit 777 brought against Leadenhall in Florida.  But 777 dismissed its claims against Leadenhall with prejudice when discovery failed to bear them out and is thus estopped by *res judicata* from continuing to defame Leadenhall with allegations of data theft.  Second, 777 implies that Leadenhall should have advised Love regarding privilege or his ethical obligations to his former clients.  *Id.*  But Leadenhall's counsel do not represent Love, who is an attorney charged with understanding his obligations to his former clients, if any.  In any case, Leadenhall *did* advise both Love and 777 that it would refrain from reviewing the documents to allow 777 and SuttonPark to identify anything purportedly privileged.

Given that communications concerning "the performance by the attorney of non-legal functions are not protected," 777 does not dispute that Love possessed relevant, non-privileged documents in his capacity as President of SuttonPark.  *In re Omnicom Grp., Inc. Sec. Litig.*, 233 F.R.D. 400, 404 (S.D.N.Y. 2006).  Further, 777 has (1) affirmatively identified Love as someone with knowledge relevant to this action in response to Leadenhall's First Interrogatories and (2) agreed to make him a document custodian for discovery in this action.  Indeed, if 777 were fulfilling its discovery obligations in this case, it would have *already* produced Love's documents.

777 also insinuates impropriety by pointing to Love's disclosure of information to Leadenhall in early 2024, which forms the basis of certain allegations in Leadenhall's Complaint.  *See* ECF 365 at 1 (stating that Love "was the unnamed employee" who "made certain disclosures to Leadenhall about activities that supposedly occurred at [SuttonPark]").  The "activities" in question are instances of forgery in furtherance of 777's fraud.  *See, e.g.*, ECF 187 ¶ 16 (alleging that an employee "disclosed to Leadenhall that …Wander-affiliated borrowers had submitted forged financial statements to Leadenhall").  There was nothing improper about Leadenhall's receipt of that information—which on its face had nothing to do with legal advice and involved a crime or fraud, meaning privilege does not attach.  The DOJ's October 14, 2025, indictment of Defendant Josh Wander both underscores the implication of this information in a crime or fraud and indicates that the same or similar information may have also been disclosed to the government, waiving any privilege.  *See, e.g.*, *id.* ¶ 163 (777 "photoshopped financial statements"); Dkt. 357-4 (*U.S. v. Wander* Indictment) ¶ 17 (Wander directed a financial analyst to "digitally alter existing

2

bank accounts"); Oct. 21, 2025 Hr'g Tr. 4:17–5:14 (government explaining at initial conference that it obtained over 600,000 documents, including from 777).[2]

Leadenhall does not know how Love obtained the documents or whether his retention of them implicated any SuttonPark policy. Love had an obligation to produce responsive documents within his control, and he did so. Fed. R. Civ. P. 45(a)(1)(A)(iii). 777's accusation that Love violated corporate policy does not require Leadenhall to return discoverable documents received in response to a subpoena. Where "the party receiving the evidence was not involved in any wrongful conduct in securing it, and where the evidence itself is not privileged, there is no basis for requiring the return of the information obtained or prohibiting its use." *Madanes v. Madanes*, 186 F.R.D. 279, 292 (S.D.N.Y. 1999). This rule makes good sense; otherwise, "the passive recipient of non-privileged material would be deprived of information to which she would otherwise be entitled through the discovery process." *Id.* Similarly, courts reject efforts to "thwart discovery" by preventing a former executive from producing documents belonging to his former employer. *In re Flag Telecom Holdings, Ltd. Securities Litig.*, 236 F.R.D. 177, 181 (S.D.N.Y. 2006).

### C. Leadenhall Took Affirmative Steps to Protect 777's Privilege—Including Offering to Pay for a Privilege Review—and Provided the Original Drive to 777.

Leadenhall took steps to enable 777 to protect any privilege it might claim over Love's documents. On August 28, 2025, soon after receiving the hard drive, Leadenhall contacted 777's counsel to inform them of the production and discuss potential privilege issues. Leadenhall proposed two options: (1) 777's counsel could perform a privilege review (and prepare a privilege log) before Leadenhall reviewed the documents, *or* (2) a "taint team" of attorneys at King & Spalding would be walled off from this matter to review the documents and provide a privilege log to all parties at Leadenhall's own expense. After weeks of delay, 777 chose to perform the privilege review itself and requested the original or a forensic copy of the drive to investigate how Love obtained the documents.

777's claim that Leadenhall has "wrongfully convert[ed]" the drive is disingenuous. ECF 365 at 3. On September 18, Leadenhall provided a forensic copy of the drive to 777's counsel as requested. On October 5, 777 asked for the original hard drive as well. On October 16, Leadenhall agreed to provide the original hard drive by same-day messenger to 777's counsel's office and asked for a contact with whom to arrange delivery. 777 neglected to provide a contact until October 28, after which Leadenhall promptly delivered the drive, which is now in 777's counsel's possession. Moreover, although 777 agreed to produce non-privileged documents that it deemed responsive to the subpoena while this dispute is pending, 777 has not yet produced them.

---

[2] 777 has demanded that Leadenhall turn over its attorneys' communications with Love but has not provided any authority that would support such a request. To the extent the Court would like to review these communications *in camera*, Leadenhall will gladly provide them.

### D. There Is No Legal Basis for a Party to Substitute Its Own Responsiveness Criteria to Censor a Third-Party Production—and 777's Narrow View of What Is Relevant Will Prevent Leadenhall from Obtaining Discovery to Which It Is Entitled.

777 has failed to demonstrate that it is entitled (or even has standing) to challenge the breadth of Leadenhall's subpoena and/or to prevent Leadenhall from reviewing documents Love produced in response to the subpoena other than on privilege grounds.

To begin, any challenge to the subpoena is waived. 777 never objected to or moved to quash the Love subpoena, and the time to do so has expired. *McDay v. Eckert*, 2023 WL 12118651, at *3 (W.D.N.Y. Aug. 9, 2023). Additionally, absent a showing of a "privilege, privacy, or proprietary interest in the documents sought," *City of Almaty Kazakhstan v. Ablyazov*, 2020 WL 1130670, at *1 (S.D.N.Y. Mar. 9, 2020), "a party does not have standing to [challenge] a subpoena served on a third party. Rather, only the person … *to whom the subpoena is directed* has standing.". *Jacobs v. Connecticut Cmty. Tech. Colleges*, 258 F.R.D. 192, 194-95 (D. Conn. 2009) (emphasis added). A party may not challenge subpoenas issued to non-parties "on grounds of relevancy or undue burden." *Universitas Educ., LLC v. Nova Grp., Inc.*, 2013 WL 57892, at *5 (S.D.N.Y. Jan. 4, 2013). Yet throughout the parties' negotiations, 777 has made clear that its objection is that "most of the material on the drive is neither responsive nor discoverable," Ex. B, 9/12/25 J. McCarthy email, and has insisted on substituting its own responsiveness review for Love's determination that the materials on the drive are relevant. Finally, there is no basis for 777 to preclude Leadenhall from reviewing already-produced documents that it deems "confidential" or "sensitive"—particularly since 777 may invoke the protective order to designate documents as highly confidential.

None of the cases cited by 777 address these shortcomings. *See* ECF 365 at 3. Instead, 777's cases concern parties that personally and deliberately engaged in wrongful conduct to procure documents outside the ordinary discovery process. *See Lipin v. Bender*, 193 A.D.2d 424, 425-28 (1st Dept. 1993) (plaintiff surreptitiously removed and copied defense counsel's work product and refused to return the documents); *Herrera v. The Clipper Group, L.P.*, 1998 WL 229499 at *1-*3 (S.D.N.Y. May 6, 1998) (plaintiff secretly copied thousands of pages from her employer's files, lied about it, and disclosed them in public filings); *Pure Power Boot Camp v. Warrior Fitness Boot Camp*, 587 F. Supp. 2d 548, 568-73 (S.D.N.Y. 2008) (employer hacked into former employee's personal webmail accounts and used the fruits to litigate its claims). Here, Leadenhall did not procure anything by stealth; it received documents produced by a non-party in response to a lawfully issued subpoena that 777 was aware of but to which it failed to object.

Leadenhall has concerns that 777's "relevance review" will result in 777 improperly withholding responsive non-privileged documents. During the parties' negotiations over search terms to be applied to 777's own documents, 777 refused to take a position as to whether a document containing the words "collateral" and "fraud" would be responsive if it didn't contain the words "Leadenhall" or "LCP"—despite these words being central to this case, which alleges that 777 fraudulently pledged collateral to both Leadenhall and other lenders. *See* ECF 370 at 3. 777's inappropriately narrow view of what documents are relevant should not prevent Leadenhall from obtaining the discovery from Love to which it is entitled.

October 30, 2025
Page 5

                                         Respectfully submitted,

                                         */s/ Leigh M. Nathanson*

                                         Leigh M. Nathanson

Cc: All counsel of record (via ECF)