# Morvillo Abramowitz Grand Iason & Anello P.C.

ELKAN ABRAMOWITZ
RICHARD F. ALBERT
ROBERT J. ANELLO*
KATHLEEN E. CASSIDY
BENJAMIN S. FISCHER
CATHERINE M. FOTI
CHRISTOPHER B. HARWOOD
LAWRENCE IASON
BRIAN A. JACOBS
TELEMACHUS P. KASULIS
KAREN R. KING
THOMAS A. McKAY
ROBERT M. RADICK*
JONATHAN S. SACK**
EDWARD M. SPIRO
JEREMY H. TEMKIN
RICHARD D. WEINBERG
LISA ZORNBERG

565 FIFTH AVENUE
NEW YORK, NEW YORK 10017
(212) 856-9600
FAX: (212) 856-9494

www.maglaw.com
―――
WRITER'S CONTACT INFORMATION

charwood@maglaw.com
(212) 880-9547

COUNSEL
JOSHUA BUSSEN
PIPPA HYDE***
KEFIRA WILDERMAN
―――
RETIRED/PARTNER EMERITUS
PAUL R. GRAND
―――
ROBERT G. MORVILLO
1938-2011
MICHAEL C. SILBERBERG
1940-2002
JOHN J. TIGUE, JR.
1939-2009

*ALSO ADMITTED IN WASHINGTON, D.C.
**ALSO ADMITTED IN CONNECTICUT
***ALSO ADMITTED IN ENGLAND AND WALES

November 3, 2025

**By ECF**

The Honorable Barbara Moses
United States Magistrate Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Courtroom 20A
New York, NY 10007-1312

    Re: *Leadenhall Capital Partners LLP et al. v. Wander et al.*, No. 1:24-cv-3453-JGK

Dear Judge Moses:

    I represent one of the individual Defendants in the above matter, Steven Pasko, and write respectfully in connection with third-party subpoenas that Plaintiffs served on four banks between October 3, 2025 and October 22, 2025: JPMorgan Chase, Wells Fargo, Goldman Sachs and M&T Bank (the "Subpoenas"). The Subpoenas and riders are attached as **Exhibits A-D**. Each Subpoena contains multiple document requests, one of which seeks records concerning Mr. Pasko (the "Pasko Request").[1] I write respectfully to request a pre-motion conference for Mr. Pasko's anticipated motion to quash the Pasko Request in each of the four Subpoenas because:

- discovery is stayed against Mr. Pasko (Dkt. 252);

- even if discovery were not stayed against Mr. Pasko, the Pasko Request would be improper because (i) the Pasko Request overbroadly seeks every record each of the banks may possess relating to Mr. Pasko, regardless of whether such records have anything to

---

[1] Although we do not understand Mr. Pasko to have accounts at all four banks, he maintained accounts with at least one. Because Plaintiffs appear intent on continuing blanketly to issue subpoenas to banks with requests directed at Mr. Pasko (regardless of whether Mr. Pasko maintained accounts there), we seek to quash all four Pasko Requests and to obtain an order preventing Plaintiffs from serving additional subpoenas with requests directed at Mr. Pasko while discovery in this matter is stayed as to him (as it has been since November 2024).

do with Plaintiffs' claims, and thus calls for the production of irrelevant personal financial information, and (ii) to the extent the banks possess a subset of conceivably relevant information regarding Mr. Pasko, absent the discovery stay as to Mr. Pasko, Plaintiffs would be required to seek such information from Mr. Pasko directly (rather than serving overbroad discovery requests for all his personal financial records on non-party banks), and

- because the Pasko Request calls for the banks to produce discovery that Plaintiffs presumptively should—but because of the stay cannot—seek directly from Mr. Pasko, the Pasko Request constitutes an improper end-run around the stay.

### A.   Discovery Has Been Stayed as to Mr. Pasko

Plaintiffs have asserted fraud claims against the Defendants—Mr. Pasko, Joshua Wander, and various entities with which Messrs. Pasko and Wander were associated (the "Entity Defendants")—based on allegations that Defendants made misrepresentations to Plaintiffs about certain assets that were pledged as collateral under a loan agreement that Plaintiffs entered with the Entity Defendants. With respect to Mr. Pasko, Plaintiffs allege only that in his capacity as a corporate signatory, he signed a handful of documents that contained misrepresentations about the collateral. As demonstrated in Mr. Pasko's pending motion to dismiss, however, Plaintiffs have not alleged facts sufficient to support a fraud claim against Mr. Pasko. Significantly, Plaintiffs do not allege that when Mr. Pasko signed the documents, he knew about the alleged misrepresentations. Notably, since Mr. Pasko filed his motion to dismiss, (i) the Department of Justice has brought criminal charges against Mr. Wander and the Entity Defendants' former CFO (Damien Alfalla), *but not Mr. Pasko*, and (ii) although the SEC has initiated enforcement proceedings against all three, Mr. Wander and Mr. Alfalla are charged with scienter-based fraud offenses, whereas Mr. Pasko is the *sole* defendant charged only with offenses that permit liability on *a negligence basis*. *See United States v. Joshua Wander*, 25-CR-473 (S.D.N.Y., filed Oct. 14, 2025); *United States v. Damien Alfalla*, 25-CR-468 (S.D.N.Y., filed Oct. 14, 2025); *Sec. & Exch. Comm'n v. Wander, et al.*, 25-CV-8565 (S.D.N.Y., filed Oct. 16, 2025).

Based on Plaintiffs' failure to plead sufficiently its fraud-based claims against Mr. Pasko, Mr. Pasko moved to dismiss them for failure to state a claim, and (like Mr. Wander), he also moved to dismiss for lack of personal jurisdiction. Based on those motions to dismiss, the Court previously stayed discovery against Messrs. Pasko and Wander while allowing discovery to proceed against the Entity Defendants, stating that Messrs. Pasko and Wander:

> "may have defenses based on lack of personal jurisdiction and this Court must determine whether it has jurisdiction over Wander and Pasko before litigation proceeds against them in this Court. The Requests for Production addressed to Wander and Pasko are the same 47 Requests for Production made to the other defendants and are not directed to the issues of personal jurisdiction that should be decided first. Moreover, Wander and Pasko are unlikely to have the extensive documents that the other defendants may have, and document production could be conducted more expeditiously after their motions to dismiss are decided.

2

>Accordingly, document production should proceed against all parties except for Wander and Pasko."

Dkt. 252 at 4-5 (the "Discovery Stay").

Contrary to the stay, the Pasko Request in each of the Subpoenas seeks "[a]ll bank statements, account histories, transaction histories, or other financial records associated with the individual Steven Pasko from January 2020 to present." *See* Exhibits A-D at 5. Because the Pasko Request essentially forces "document production [to] proceed against" Mr. Pasko, Dkt. 252 at 5, the Pasko Request constitutes an improper end-run around the stay and should be quashed. This letter follows meet and confers I held with counsel for Plaintiffs (Leigh Nathanson, Brian Donovan, and Peter Starr) on October 10 and October 27, 2025, totaling roughly 30 minutes (with additional follow-up emails). Though Plaintiffs concede Mr. Pasko has standing to challenge the Subpoenas to protect his privacy interests, Plaintiffs have refused to withdraw the Pasko Request, instead suggesting that Mr. Pasko produce any relevant records himself. That Plaintiffs' proposed solution is for Mr. Pasko to agree to produce records confirms that the Pasko Request improperly circumvents the stay.

### B.     The Pasko Request Should Be Quashed

The Pasko Request should be quashed because (i) it seeks an overbroad set of Mr. Pasko's personal financial records that, under settled law, Mr. Pasko's privacy interest in such records precludes Plaintiffs from obtaining, and (ii) to the extent a subset of the information sought by the Pasko Request is relevant to Plaintiffs' claims, under equally settled law, Plaintiffs presumptively should—but because of the Discovery Stay cannot—seek such information directly from Mr. Pasko rather than serving an overbroad discovery request on third-party banks.

As an initial matter, Mr. Pasko has standing to challenge the Pasko Request. "[C]ourts in this Circuit have found that individuals whose banking records are subpoenaed have a privacy interest in their personal financial affairs that gives them standing to move to quash a subpoena served on a non-party financial institution." *Fecteau v. City of Mount Vernon*, 2025 WL 2391410, at *3 (S.D.N.Y. Aug. 15, 2025) (quoting *Silverstone Holding Grp., LLC v. Zhongtie Dacheng (Zhuhai) Inv. Mgmt. Co., Ltd.*, 650 F. Supp. 3d 199, 202 (S.D.N.Y. 2023)) (internal alterations omitted). Courts have crafted this exception to the general rule that a party cannot challenge a third-party subpoena because "it is well-established" that parties have "a real interest" in the privacy of their own financial records. *Silverstone*, 650 F. Supp. 3d at 202 (internal quotation marks omitted).

Courts routinely quash subpoenas when, as here, a subpoena on its face seeks an overbroad set of private information that will have "zero probative value." *See id.* at 204; *see, e.g., Fecteau*, 2025 WL 2391410, at *4-5; *State Farm Mut. Auto. Ins. Co. v. Khait*, 2023 WL 6541583, at *3 (E.D.N.Y. Sept. 26, 2023) (quashing subpoena where only "a very limited number of the bank records [sought] may be relevant to Plaintiffs' claims" concerning "a scheme to defraud [Plaintiff]"); *Lively v. Wayfarer Studios LLC*, 2025 WL 662896, at *1-3 (S.D.N.Y. Feb. 28, 2025) (quashing subpoenas to T-Mobile for "the phone numbers for anyone with whom the [Defendants]' and other individuals communicated, regardless of whether such

3

communication was related to the claims and defenses in this case"); *Gilead Sciences, Inc. v. Khaim*, 755 F. Supp. 3d 285, 289, 297 (E.D.N.Y. 2024) (granting motion to quash where subpoena would require the production of "scores of data not relevant to any aspect of [plaintiff's] suit").

Mr. Pasko's privacy interest in his personal financial records significantly outweighs any conceivable relevance that a subset of the records sought might have. Because the Pasko Request seeks all banking records, regardless of whether the underlying transactions have anything to do with Plaintiffs' claims, the Pasko Request necessarily encompasses wholly personal financial transactions that have no bearing on Plaintiffs' claims. To the extent the banks possess arguably relevant records regarding Mr. Pasko's transactions with the Entity Defendants, Plaintiffs do not need overbroad discovery of Mr. Pasko's personal bank records to obtain such information, as the information would be covered by whatever documents the banks produce pertaining to the Entity Defendants' bank accounts.

Moreover, to the extent any additional subset of conceivably relevant information exists that the banks may possess regarding Mr. Pasko, absent the Discovery Stay, Plaintiffs could seek—and, indeed, would be required to seek—such information directly from Mr. Pasko. Plaintiffs sought to do precisely that prior to the Discovery Stay when they served their First Requests for Production of Documents to Mr. Pasko, dated September 28, 2024, (attached hereto as **Exhibit E** (the "Pasko RFPs")), which gave rise to Mr. Pasko's successful stay motion. In those Pasko RFPs, Plaintiffs sought "[d]ocuments sufficient to show the date, amount, and purpose of . . . any payments between or among any of the 777 Entity Defendants, A-CAP, Kenneth King, Josh Wander, Steven Pasko, and any member of their respective families." *See* Exhibit E at 8. Because "subpoenas under Rule 45 are clearly not meant to provide an end-run around the regular discovery process under Rules 26 and 34," the Pasko Request should be quashed because, to the extent conceivably relevant, it seeks (i) "precisely the same documents as demanded in [Plaintiffs'] First Request for the Production of Documents," and (ii) documents that, to the extent properly sought, should be sought directly from Mr. Pasko. *See Burns v. Bank of Am.*, 2007 WL 1589437, at *14 (S.D.N.Y. June 4, 2007); *see also Reynolds v. City of Rochester*, 2025 WL 1108191, at *6 (W.D.N.Y. Apr. 15, 2025) (quashing subpoena where it "appear[ed] to be 'an end-run around the regular discovery process'").

Moreover, because the Pasko Request (to the extent it seeks relevant and non-duplicative information as to Mr. Pasko) calls for the banks to produce discovery that Plaintiffs presumptively should—but because of the Discovery Stay cannot—seek directly from Mr. Pasko, the Pasko Request constitutes an improper end-run around the stay. Plaintiffs may not seek to "obtain[] from a non-party what a court precluded it from obtaining from its adversary." *Shelvin v. Phoenix Life Ins. Co.*, 2012 WL 13034075, at *2 (D.N.J. May 24, 2012). As a result of the Discovery Stay, that is precisely what the Pasko Request seeks to do: obtain from the banks what the Discovery Stay prohibits Plaintiffs from obtaining from Mr. Pasko. Allowing Plaintiffs to pursue the Pasko Request at this juncture would "render the stay meaningless." *See Sommer v. Aronow*, 1996 WL 399820, at *5 (S.D.N.Y. July 16, 1996). That Mr. Pasko can (and

4

now must) lodge a proper objection to the Pasko Request confirms that it is an end-run around the Discovery Stay.

The Pasko Request thus appropriately is quashed, and Plaintiffs should be ordered not to include a comparable Pasko Request in any subpoenas they may send to additional banks during the pendency of the Discovery Stay.

I thank the Court for its consideration of this matter.

Respectfully submitted,

*/s/ Christopher B. Harwood*
Christopher B. Harwood

MORVILLO ABRAMOWITZ GRAND
IASON & ANELLO P.C.

*Attorneys for Defendant Steven Pasko*