# Exhibit E

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LEADENHALL CAPITAL PARTNERS LLP and LEADENHALL LIFE INSURANCE LINKED INVESTMENTS FUND PLC,<br><br>Plaintiffs,<br><br>vs.<br><br>JOSH WANDER, STEVEN PASKO, KENNETH KING, 777 PARTNERS LLC, 600 PARTNERS LLC, SPLCSS III LLC, SIGNAL SML 4 LLC, INSURETY AGENCY SERVICES LLC, DORCHESTER RECEIVABLES II LLC, SUTTONPARK CAPITAL LLC, SIGNAL MEDICAL RECEIVABLES LLC, INSURETY CAPITAL LLC, SUTTONPARK SERVICING LLC, and ADVANTAGE CAPITAL HOLDINGS LLC,<br><br>Defendants. | Civil Action No. 1:24-cv-03453 |

**PLAINTIFFS LEADENHALL CAPITAL PARTNERS LLP AND LEADENHALL LIFE INSURANCE LINKED INVESTMENT FUND PLC'S FIRST REQUESTS FOR PRODUCTION OF DOCUMENTS**

Pursuant to Federal Rules of Civil Procedure ("Federal Rules") 26 and 34, Plaintiffs Leadenhall Capital Partners LLP and Leadenhall Life Insurance Linked Investments Fund PLC (together, "Leadenhall") request that Defendants Josh Wander, Steven Pasko, Kenneth King, 777 Partners LLC, 600 Partners LLC, SPLCSS III LLC, Signal SML 4 LLC, Insurety Agency Services LLC, Dorchester Receivables II LLC, Signal Medical Receivables LLC, Insurety Capital LLC, SuttonPark Capital LLC, and SuttonPark Servicing LLC (as defined in Schedule A attached hereto, the "777 Entity Defendants"), and Advantage Capital Holdings LLC ("A-CAP") (together, "Defendants"), produce the Documents, Communications, and things described herein for discovery and inspection, in accordance with the Instructions and Definitions set forth in Schedule

A attached hereto, at the offices of Leadenhall's attorneys King & Spalding LLP, 1185 Avenue of the Americas, New York, New York, 10036, on or before October 28, 2024.

## DOCUMENTS REQUESTED

1. All Documents and Communications concerning the 777 Entity Defendants' acquisition, transfer, or allocation of Receivables, including between and among the Guarantors, Sellers, Borrowers, and Servicers, and the 777 Entity Defendants' pledging or purported pledging of Receivables to creditors or credit facilities to which any 777 Entity Defendant or affiliate was and/or is a party, or otherwise as security for debt.

2. All Documents and Communications concerning the 777 Entity Defendants' preparation of any Document or Communication, including but not limited to Monthly Reports and Compliance Reports and/or any information or output of any computer program or database such as MP Fin, that purports to show the 777 Entity Defendants' ownership, allocation, or pledging of Receivables.

3. All Documents and Communications concerning the negotiation of the LSA from before the LSA was entered into on May 7, 2021, including the 777 Entity Defendants' evaluation of the terms of the LSA, decision to enter into the LSA, and representations made to Leadenhall during the negotiation of the LSA.

4. All Documents and Communications concerning the use, disposition, or intended disposition of any funds the 777 Entity Defendants received from any Lender pursuant to the LSA, including but not limited to purchasing interests in professional football clubs.

5. All Documents and Communications concerning representations by You or any of the Defendants to Leadenhall concerning the LSA, including without limitation representations concerning the 777 Entity Defendants' ability to repay any debt or other obligations under the

LSA, any Receivables that secured or purported to secure any debt under the LSA at any time, and Your or any of the Defendants' financial condition (including but not limited to bank statements or purported bank statements and other documentation furnished by You to Leadenhall).

6. All Documents and Communications concerning meetings, telephone calls, and written correspondence between You or the other Defendants and Leadenhall, including but not limited to requests for information from Leadenhall to You or any other Defendant(s).

7. All Documents and Communications concerning site visits by Leadenhall to the 777 Entity Defendants' offices.

8. All Documents and Communications concerning the MP Fin system's use in connection with Leadenhall's Collateral and/or credit facility, including but not limited to those concerning any assertion that Receivables were Double-Pledged because of purported technical problems, difficulties, or complications with the MP Fin system.

9. All Documents and Communications concerning any asset-by-asset review undertaken by Defendants, including the "reconciliation" efforts referenced in Paragraph 129 of the Complaint, to ensure that Receivables were properly pledged or allocated to third-party lenders (*i.e.*, pledged or allocated to third-party lenders in accordance with contractual requirements or representations), including but not limited to the addition and population of the "Lender Identifier" field in any Compliance Reports and Monthly Reports.

10. All Documents and Communications concerning any efforts or purported efforts to resolve any shortfall in Leadenhall's Collateral, including but not limited to the "replacement deals" referenced in Paragraph 125 of the Complaint and Defendants' purported intention to "solve the gap" as referenced in Paragraph 133 of the Complaint.

11. All Documents and Communications concerning the calculation of the Collateral shortfall related to the LSA, including but not limited to the calculation of said shortfall at approximately $100 million as referenced in Paragraph 132 of the Complaint.

12. All Documents and Communications concerning A-CAP and/or Kenneth King's involvement or purported involvement in negotiations and restructuring discussions between the 777 Entity Defendants and Leadenhall from September 19, 2022, to the present, including but not limited to A-CAP's offer to Leadenhall of a fourth-priority lien on the assets of any or all of the 777 Entity Defendants.

13. All Documents and Communications concerning the February 21, 2024 agreement between the 777 Entity Defendants and Leadenhall described in Paragraph 214 of the Complaint, including any payments in connection therewith.

14. All Documents and Communications concerning the negotiation of, and all drafts of, the potential forbearance agreement discussed by the 777 Entity Defendants and Leadenhall described in Paragraph 178 of the Complaint.

15. All Documents and Communications concerning the financial impact of Leadenhall's debt investment in the 777 Entity Defendants—including but not limited to the financial impact of Leadenhall's discovery of the Double-Pledging and resulting inquiry and exercise of remedies—on Your or any of the Defendants' other business interests and investments.

16. All Documents and Communications concerning the downgrades of 777 Re's credit rating and/or A-CAP's credit rating by AM Best in 2024.

17. Documents sufficient to show the date, amount, and purpose of all payments between A-CAP and 777 Re.

18. All Documents and Communications concerning the insurance liabilities ceded by A-CAP and A-CAP's affiliates to 777 Re, including documents sufficient to show the amount of such insurance liabilities and the announcement in February 2024 by Kenneth King that A-CAP would recapture insurance liabilities ceded to 777 Re.

19. All Documents and Communications related to any formal or informal agreements between any of the 777 Entity Defendants, on the one hand, and A-CAP and/or Kenneth King, on the other hand.

20. Documents sufficient to show the amount, nature, terms of, and assets securing any 777 Debt Investments.

21. Documents sufficient to show the assets involved in, value of, and terms of all transactions in which any assets that had secured the 777 Debt Investments were the subject of any remedy exercise (including liquidation) by Kenneth King and/or A-CAP, on Kenneth King and/or A-CAP's behalf, or for Kenneth King and/or A-CAP.

22. Documents sufficient to show Kenneth King and/or A-CAP's present plan, strategy, or intention with respect to exercising any remedies (including liquidation) with respect to any further collateral securing the 777 Debt Investments, including the collateral to be liquidated and the anticipated value and terms of any such transaction.

23. All Documents and Communications concerning Kenneth King and/or A-CAP's exercise of control or decision-making authority over the 777 Entity Defendants' operations, including but not limited to the integration of the 777 Entity Defendants' operations with the operations of A-CAP, and the use or sharing of office space.

24. Documents sufficient to show every occasion on which a meeting of the directors, officers, managers, partners, or members of any of the Guarantors, Sellers, Borrowers, or Servicers occurred, and the minutes and attendees of every such meeting.

25. Documents sufficient to show every occasion on which any of the Guarantors, Sellers, Borrowers, or Servicers held an election for any director, officer, manager, or partner position.

26. Documents sufficient to Identify the legal and beneficial Owners of all membership interests in A-CAP, any A-CAP affiliate, and/or Kenneth King and the Guarantors, Sellers, Borrowers, or Servicers at all times, including all changes in ownership, and, to the extent Your Owners are not natural persons or corporations, the owners of all of Your Owners, and their place of domicile or, in the case of a corporation, the state where they are incorporated and where they have their principal place of business.

27. Documents sufficient to show the organizational and business structure of You and Your predecessors, successors, parents, subsidiaries, departments, divisions, joint ventures, partnerships, and other affiliates (including without limitation any organization or entity that You individually, partially, or jointly manage, dominate, fund, or control) that were in any way involved with or affected by the LSA with Leadenhall.

28. All Documents and Communications concerning the use by Josh Wander, Steven Pasko, or Kenneth King or any member of their families, or by A-CAP or any employee of A-CAP, of any of the 777 Entity Defendants' property or assets in whole or in part for any purpose other than the performance of their duties as an employee of one of the Guarantors, Sellers, Borrowers, or Servicers.

29. Documents sufficient to show the date, amount, and purpose of any payments by 777 Entity Defendants for or on behalf of A-CAP, Kenneth King, Josh Wander, Steven Pasko, and any member of their families, or vice versa, including payments to third parties, as well as any payments between or among any of the 777 Entity Defendants, A-CAP, Kenneth King, Josh Wander, Steven Pasko, and any member of their respective families.

30. Documents sufficient to show all contracts or agreements between You and A-CAP, Kenneth King, Josh Wander, Steven Pasko, and any member of their families to pay or guarantee a debt or other obligation.

31. Documents sufficient to show Your audited and unaudited financial results, including income statements, cash flow, and balance sheet, on a quarterly basis.

32. Documents sufficient to show each instance on which the 777 Entity Defendants' audited and unaudited financial results, including income statements, cash flow, and balance sheet, on at least a quarterly basis, were disseminated to anyone other than the 777 Entity Defendants.

33. All Documents and Communications concerning all protective advances made by the 777 Entity Defendants or on their behalf by anyone, including but not limited to any of the Defendants, as well as any other protective advances made by A-CAP or any A-CAP affiliate for or on behalf of any of the Defendants, including payments to third parties.

34. All Documents and Communications concerning the loan, credit, or debt provided by A-CAP to JARM Capital LLC as referenced in Paragraph 221 of the Complaint, including any amendments to the loan, credit, or debt agreement and any modification, adjustment, or transfer of the lien or security interest collateralizing any funds provided pursuant to the loan, credit, or debt agreement to any Defendant or third party.

35. All Documents and Communications concerning the transaction described in Paragraph 244 of the Complaint.

36. Documents sufficient to show Your contracts, agreements, understandings, and general relationship with B. Riley, including but not limited all covenants, promises, and representations made by You to B. Riley or by B. Riley to You and amounts, dates of payment, and any reimbursement or indemnification You received for all payments made to B. Riley, by You or on Your behalf.

37. All Communications that were sent or received by, or copied or blind-copied to, B. Riley prior to the execution of the contract or agreement pursuant to which "the Guarantors retained professionals from B. Riley Advisory Services," as stated in the Guarantors' letter dated May 17, 2024 (ECF No. 74).

38. All Communications that were sent or received by, or copied or blind-copied to, B. Riley that were also sent or received by, or copied or blind-copied to, Defendants Josh Wander, Steven Pasko, Kenneth King, or any officer, director, employee, partner, member, affiliate, or agent of A-CAP.

39. Documents sufficient to show all roles, responsibilities, powers, and authorities held at all times during the Request Period by Josh Wander, Steven Pasko, Mollie Wander, Kenneth King, and any officer, director, employee, partner, member, affiliate, or agent of A-CAP, with respect to the management or control of the Guarantors, Borrowers, Servicers, or Sellers.

40. All Documents and Communications concerning any 777 Entity Defendant's eviction from any office space or the decision of any 777 Entity Defendant to cease occupying any office space under threat of eviction.

41. Documents and communications sufficient to show the address of all office spaces owned, leased, and/or occupied by any 777 Entity Defendant during the Request Period.

42. All Documents identified in Your responses to any interrogatories served in the Action.

43. All Documents received by You from any party or non-party in connection with discovery in the action, whether produced voluntarily or pursuant to a subpoena or other legal process.

44. All Documents and Communications, to the extent not requested above, that You intend to rely upon, introduce into evidence, or otherwise use at any hearing, deposition, or trial in the Action.

45. All Documents and Communications, including all information in any form, provided to, prepared for, reviewed by, or relied upon by any consulting or testifying expert in the evaluation of Your defenses and/or the formation of the expert's opinions.

46. Documents sufficient to show Your document maintenance, retention or destruction policies, procedures, and practices, including, but not limited to: (i) policies related to the retention, destruction, or management of electronically stored information, data, hard copy files, audio files/recordings, emails, Instant Messages, phone records, and cellular phone records, (ii) Documents concerning any departure or variance from Your policies, procedures, and practices, (iii) Documents relating to the frequency of backup or archiving, all software and hardware used to perform such backups or archiving, and all media onto which data is backed up or archived, (iv) all document retention hold notices sent that relate in any way to this Action, and (v) each of Your employees responsible for maintaining any documents or database(s), including electronically

9

stored information, data, hard copy files, audio files/recordings, emails, Instant Messages, phone records, and cellular phone records.

47. For each database You used to produce data, Documents, or other things in response to Requests Nos. 1 through 46, as well as any other database that You use to store information about collateral pledged or allocated to creditors:

    a. Documents sufficient to show the reports and the reporting capabilities of each database – whether pre-configured or configured on an ad-hoc basis, and whether created on a regular or ad-hoc basis.

        i. Exemplars of each type of report generated in the ordinary course of business from each database through an automated task or process, and the frequency with which such Reports are generated (e.g., daily, weekly, monthly, quarterly, or annually).

        ii. Exemplars of all tables and/or files in each database.

        iii. Exemplars of all fields for the tables and/or files identified in the immediately preceding request, and the descriptions and/or definitions for these fields.

    b. Any business requirement(s), functional requirements, mapping information, data dictionaries, instruction manuals, or similar Documents that describe any keys that link databases, the flow of data, each data element, or field that exists on each database, and Documents sufficient to Identify the persons who created the Documents and the end users of the Documents.

   c. Data workflows, including the identity and description of where each data element or field is stored, physically and virtually, in what format it is stored, the backup procedures in place, how each Data element moves and is used throughout the database, and if such data elements are related to other Databases.

Dated: New York, New York
   September 28, 2024

              KING AND SPALDING LLP

              */s/ Leigh Nathanson*
              Leigh M. Nathanson
              Craig Carpenito
              Brian Donovan
              Michael Taintor
              1185 Avenue of the Americas
              New York, NY 10036
              (212) 790-5359
              lnathanson@kslaw.com
              ccarpenito@kslaw.com
              bdonovan@kslaw.com
              mtaintor@kslaw.com

              *Attorneys for Plaintiffs Leadenhall Capital Partners LLP and Leadenhall Life Insurance Linked Investments Fund PLC*

## SCHEDULE A

## **INSTRUCTIONS**

1.  Each Request should be responded to in accordance with the instructions herein and all applicable federal and local rules.

2.  Each Request is to be read, construed, and responded to separately and independently without reference to, or being limited by, any other Request.

3.  These instructions and definitions should be construed to require an answer based upon the knowledge of, and information available to, the responding party as well as its agents and representatives.

4.  The Requests are continuing in nature so as to require supplemental answers to be served in a timely manner if further or different information is obtained with respect to any Document Request.

5.  Each Request includes all documents that are within Your possession, custody, or control, including all documents held by Your employees or representatives that exist either in hard-copy files, whether centrally or individually maintained, or in electronic form, whether maintained on Your servers, cloud services, or individually maintained on company-owned or employee-owned personal computers, laptop computers, tablets, mobile phones, or other computing devices of all individuals in whose files You search for responsive documents.

6.  Each document should be produced with all of its attachments, appendices, schedules, and exhibits.

7.  To the extent responsive documents or data are maintained in an electronic format, including but not limited to on a disk, tape, or other magnetic or machine-readable format, please

produce the electronic version along with manual and all other documents sufficient to operate, display, read, and interpret the programs, documents, or data.

8. If there are no Documents responsive to a particular Request in Your possession, custody, or control, provide a written response so stating.

9. Documents should be produced either (a) as they are kept in the usual course of business, complete with the original file folders, binders, or other containers in which they are stored (or legible copies of the labels from those folders, binders, or containers), and should be stapled, clipped, or otherwise unitized as they are kept in the usual course of business, or (b) organized according to the request or requests to which they are responsive. If You elect the latter mode of production, each document or set of documents from a particular file, binder, or other container should be accompanied by a legible copy of the label from that container or some other reliable indicator of the file from which it was taken, and documents should be stapled, clipped, or otherwise unitized as they are kept in the usual course of business.

10. If a claim of privilege is asserted with respect to any Request, in whole or in part, or You refuse to answer any Request on any other ground, specify the exact basis for Your claim that such Request need not be answered with sufficient specificity to permit the Court to determine the validity of Your objection or position. In the event You serve a proper and timely objection to a portion of a Request, please respond to all portions of the Request that do not fall within the ambit of Your objection. For example, if You object to a Request on the ground that it is too broad insofar as it covers time periods that You contend are not relevant to this litigation, You should answer as to all time periods that You contend are relevant.

11. In answering these Requests, if You claim an ambiguity in interpreting a Request, or any definition or instruction, that claim shall not be used as a basis for refusing to respond, but

there shall be set forth as a part of the response the language deemed to be ambiguous and the interpretation chosen or used in responding to the Request.

12. If more than one copy of a responsive document exists, produce each copy that includes (a) any notations or markings not on other copies, including handwritten notations or routing or filing instructions; and/or (b) attachments not included as part of other copies.

13. In the event that any requested document has been destroyed, lost, discarded, or is otherwise not capable of being produced at the time that documents are produced pursuant to these Requests; Identify any such document; Identify the person who previously or currently has possession, control, or custody of the document; indicate the request(s) to which such document is responsive; and set forth the circumstances under which the document was destroyed or discarded or an explanation of why the document is not capable of being produced.

14. Unless otherwise defined herein, all words and phrases used in these Requests are to be given their plain, customary, and usual meaning.

15. All uses of the conjunctive include the disjunctive (and vice versa). All words in the singular include the plural (and vice versa). All uses of the word "all" include "any" (and vice versa). All uses of the word "each" include "every" (and vice versa). The use of a verb in any tense encompasses the use of the verb in all tenses. The use of the feminine, masculine, or neuter genders shall include all genders.

16. Unless otherwise indicated, each Request seeks documents and/or communications concerning the period from May 7, 2021, to the present (the "Request Period").

17. Where a claim of privilege is asserted in objecting to any Request or sub-part thereof, and any Document is withheld on the basis of such assertion, (i) You shall Identify the nature of the privilege (including work product) that is being claimed; and (ii) the following

4

information shall be provided in the objection, unless divulgence of such information would cause disclosure of the allegedly privileged information: (1) the type of Document; (2) the author of the Document; (3) any addressee of the Document, including, where not apparent, the relationship of the author and addressee to each other; (4) the general subject matter of the Document; (5) the date of the Document; (6) the identity of any enclosure(s) or attachment(s); and (7) such other information as is sufficient to Identify the Document in a manner that will enable Leadenhall and the Court to assess the applicability of the privilege claimed, in accordance with Federal Rule of Civil Procedure 26 and Local Rule 26.2.

18. Leadenhall reserves the right to serve supplemental Requests.

## **DEFINITIONS**

Unless otherwise defined, all words and phrases used herein shall be accorded their usual meaning and shall be interpreted in their common, ordinary sense. Should You not understand the meaning of any term, it is requested that You immediately seek clarification through the undersigned. As used in these Requests, the words set forth below shall be defined as follows:

1. Capitalized terms not defined herein shall bear the meanings given in Article I of the LSA.

2. "777 Debt Investments" shall mean any equity and debt investments in the 777 Entity Defendants or their assets made by A-CAP and/or Kenneth King, on A-CAP and/or Kenneth King's behalf, or for A-CAP's and/or Kenneth King's benefit.

3. "777 Entity Defendants" shall mean 777 Partners LLC, 600 Partners LLC, SPLCSS III LLC, Signal SML 4 LLC, Insurety Agency Services LLC, Dorchester Receivables II LLC, Signal Medical Receivables LLC, Insurety Capital LLC, SuttonPark Capital LLC, and SuttonPark Servicing LLC.

5

4. "A-CAP" shall mean Advantage Capital Holdings LLC and, as applicable, its officers, directors, employees, partners, corporate parent, subsidiaries, or affiliates.

5. "Action" shall mean the above-captioned action, currently pending in the United States District Court for the Southern District of New York.

6. "B. Riley" shall mean B. Riley Advisory Services, an affiliate of B. Riley Financial Group, Inc., as referred to in the Guarantors' letter to the Court dated May 17, 2024 (ECF No. 74).

7. "Borrowers" shall mean, collectively, SPLCSS III LLC, Dorchester Receivables II LLC, Signal SML 4 LLC, and Insurety Agency Services LLC, and each of their respective officers, directors, employees, partners, corporate parent, subsidiaries, or affiliates.

8. "Communication" shall mean the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

9. "Complaint" shall mean Leadenhall's Amended Complaint filed in this action on September 6, 2024 (ECF No. 187).

10. "Defendants," "You," or "Your" shall mean, collectively, Defendants Josh Wander, Steven Pasko, Kenneth King, 777 Partners LLC, 600 Partners LLC, SPLCSS III LLC, Signal SML 4 LLC, Insurety Agency Services LLC, Dorchester Receivables II LLC, Signal Medical Receivables LLC, Insurety Capital LLC, SuttonPark Capital LLC, SuttonPark Servicing LLC, and Advantage Capital Holdings LLC and each Defendant's present or former officers, directors, employees, partners, corporate parents, subsidiaries or affiliates.

11. "Document" is synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A). A draft or non-identical copy is a separate document within the meaning of this term.

12. "Double-Pledged" or "Double-Pledging" shall refer to the same collateral that has been pledged as security to both Leadenhall and another lender.

13. "Guarantors" shall mean, collectively, 777 Partners LLC and 600 Partners LLC, and each of their respective officers, directors, employees, partners, corporate parent, subsidiaries, or affiliates.

14. "Identify" (with respect to persons) means to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment.

15. "Identify" (with respect to documents) means to give, to the extent known, the (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s), addressee(s) and recipient(s).

16. "Leadenhall" shall mean Plaintiffs Leadenhall Capital Partners LLP and Leadenhall Life Insurance Linked Investments Funds PLC and, as applicable, their respective officers, directors, employees, partners, corporate parent, subsidiaries, or affiliates.

17. "Lenders" shall mean the Persons identified on Schedule IV of the LSA, or their Eligible Assignees as that term is defined in the LSA.

18. "LSA" shall mean the Loan and Security Agreement dated May 7, 2021, between the Borrowers, Sellers, Servicers, Guarantors, Leadenhall, and the Lenders.

19. "Monthly Reports" and "Compliance Reports" shall mean the reports prepared by the Related Servicer, as that term is defined in the LSA, containing the information listed in Annex A of the LSA and the information that Leadenhall may reasonably request from time to time, as required by the LSA and referenced in Paragraphs 62 and 63 of the Complaint.

20. "Person" means any natural person or any legal entity, including, without limitation, any business or governmental entity or association.

21. "Sellers" shall mean, collectively, SuttonPark Capital LLC, Signal Medical Receivables LLC, and Insurety Capital LLC, and each of their respective officers, directors, employees, partners, corporate parent, subsidiaries, or affiliates.

22. "Servicers" shall mean SuttonPark Servicing LLC, Signal Servicing LLC, and Insurety Servicing LLC, and each of their respective officers, directors, employees, partners, corporate parent, subsidiaries, or affiliates.

23. "Receivable" or "Receivables" shall mean any asset that could under any circumstances meet the definition of "Receivable" in the LSA including any of Schedules VIII, IX, X, and XI.

24. "Refer," "relate," "reflect," "regard," "concern," "relevant to," or "in connection" shall be construed to bring within the scope of the request all Documents that comprise, evidence, constitute, describe, explicitly or implicitly refer to, were reviewed in conjunction with, or were generated as a result of the subject matter of the request, including, but not limited to, all Documents that reflect, memorialize, discuss, evaluate, consider, review, or report the subject matter of the request.

25. "Your Owners" shall mean the legal and beneficial owners of all membership interests in A-CAP and the Guarantors, Sellers, Borrowers, or Servicers at all times, including all changes in ownership.