*Smith, Gambrell & Russell, LLP*
*1301 Avenue of the Americas*
*15th Floor*
*New York, New York  10019*
*Tel: 212-907-9700*
*www.sgrlaw.com*



*John G. McCarthy*
*Direct Tel: 212-907-9703*
*Direct Fax: 212-907-9803*
*JMCCARTHY@sgrlaw.com*

November 7, 2025

**VIA ECF**

Honorable Barbara C. Moses
United States Magistrate Judge
500 Pearl Street
New York, New York 10007

Re:   *Leadenhall Capital Partners LLP, et ano. v. Wander, et al.*, 24 Civ. 3453 (JGK)(BCM)
       PST File from Frederick Love's Mailbox

Dear Judge Moses:

We submit this reply letter in further support of the letter motion (Dkt. 365) filed by SuttonPark Capital, LLC ("SPC"), one of the 777 Entity Defendants[1] whom we represent, concerning the PST File copied from Frederick Love's SPC laptop onto the Drive.

We must begin by correcting some misstatements contained in Plaintiffs' letter (Dkt. 375).  It is untrue that SPC ever chose Plaintiffs' proposed option 1.  Plaintiffs provided a truncated copy of the email exchange between counsel on the topic.  (*See* Dkt. 375-2.)  Enclosed herewith as Exhibit A are the omitted portion of the email string showing what SPC agreed to do, which was to take the "baby step" of determining the contents of the Drive first and then conferring further with Plaintiffs.[2]  (Ex. A at 2-3.)  SPC has consistently rejected the

---

[1] We need to inform this Court about a mistake concerning Defendant 777 Capital Partners LLC ("777 Partners") contained in the indictment of Josh Wander that we understand derived from some inaccurate news reports.  777 Partners, a Delaware limited liability company, has not collapsed and was not declared bankrupt by the High Court of London.  Rather, one of its subsidiaries in England named 777 Partners UK Ltd. was declared bankrupt as part of a court-ordered winding-up process.  The UK entity was never operational.  Some reporters were apparently confused by the similar names.  We believe that the Court referenced that incorrect allegation during Tuesday's conference.  (*See* Dkt. 386, Tr. at 13:14-24.)  As we are sure the Court understands, if 777 Partners had been declared bankrupt we would have fulfilled our obligation to file a suggestion of bankruptcy in this case.

[2] The subsequent exchange reflects that a meet and confer session also occurred on September 15, 2025, which we failed to mention in the letter motion.  (Ex. A at 2-3.)

SGR/81288862.3

Honorable Barbara C. Moses
November 7, 2025
Page 2

assertion that its review would be limited to privilege. Also, SPC is not conducting a "relevance review", it has always been SPC's position that it would review for privilege and also provide Plaintiffs with non-privileged documents that are <u>responsive</u> to its subpoena, in other words just that material its subpoena sought from Mr. Love. Additionally, Plaintiffs mislead this Court about Noah Davis's conduct discussed in SPC's letter motion. The claims that were settled in the Florida case involved his illegal incursion into the 777 Entity Defendants' computer system. The conduct discussed in the letter motion was a different incident during which Mr. Davis illegally downloaded hundreds of thousands of SPC's records that were stored on an FTP site maintained by Vervent, a company that was acting as back-up servicer for some of SPC's portfolios, beginning the day after he met with two officers of Plaintiffs. At the time, Mr. Davis was Director of IT for Saiph Consulting, a firm that was working for Plaintiffs. Mr. Davis's conduct with respect to SPC's files in Vervent's possession was uncovered during discovery and any potential claims arising therefrom are not subject to *res judicata*.

Some of the statements in Plaintiffs' letter are directly contradicted by what Mr. Love, through his attorney, communicated to us. For example, Mr. Love represented to us through his attorney that (i) the Drive was provided to him by Noah Davis, (ii) he (Mr. Love) was not sure if it was accessible as he was unable to access the Drive's contents and (iii) he did not review or compile the data on the Drive. Those representations contradict Plaintiffs' claim that Mr. Love determined "that the materials on the drive are relevant." (Dkt. 375 at 4.)

On Tuesday, we made the first rolling production from the PST File. We produced to all parties to this action 704 documents from the PST File out of a universe of 3,337 reviewed. An additional 42 documents have been identified as responsive but privileged. We are working on a privilege log to provide to Plaintiffs consistent with the applicable rules.

Finally, Mr. Love has provided us with the entirety of the e-mail chain that was attached to Plaintiffs' letter as Exhibit B. The entire chain is enclosed herewith as Exhibit B. That chain indicates that Mr. Love met with Plaintiffs' counsel twice in New York. He apparently informed Brian Donovan about the Drive during the first meeting on July 16, 2025. Mr. Donovan emailed Mr. Love on August 11, 2025, "to move forward with collecting the hard drive of materials that you referenced during our conversation …." On August 14, 2025, Mr. Love delivered the Drive and what we have reason to believe was his company laptop to King & Spalding ("K&S") in New York.[3] Finally, after we inquired of Mr. Love's attorneys about the Drive, Mr. Love wrote Plaintiffs' counsel "[j]ust wondering what's up and how they [Smith

---

[3] The 777 Entity Defendants first learned about the possibility that Mr. Love provided his company laptop to Plaintiffs' counsel yesterday. During the meet and confer process, K&S declined to provide the 777 Entity Defendants with copies of its communications with Mr. Love in order to address a discrepancy between what Mr. Love's attorney told us and what K&S claimed. The 777 Entity Defendants are still investigating this issue and reserve all of their rights with respect thereto.

Gambrell] even know about that", referring to "the hard drive I provided to you." Rather than sending an email response, Leigh Nathanson suggested a call to answer his questions.

**Both Love and K&S Had Ethical Obligation with Respect to the Drive and PST File**

Love is subject to the Florida Rules of Professional Conduct. Rule 4-1.6 provides that "A lawyer must not reveal information relating to a client's representation except as stated in subdivisions (b), (c), and (d), unless the client gives informed consent." None of the exceptions is applicable here. The Comments to this rule provides that "[a] fundamental principle in the client-lawyer relationship is that, in the absence of the client's informed consent, the lawyer must not reveal information relating to the representation." The Comments also explain that "[t]he principle of confidentiality is given effect in 2 related bodies of law, the attorney-client privilege (which includes the work product doctrine) in the law of evidence and the rule of confidentiality established in professional ethics." As also explained in the Comments, a lawyer is required "to act competently to safeguard information relating to the representation of a client against unauthorized access by third parties and against inadvertent or unauthorized disclosure by the lawyer …." Finally, the Comments explain that "[t]he duty of confidentiality continues after the client-lawyer relationship has terminated." The New York State Bar Association's Committee on Professional Ethics has advised attorneys who receive a subpoena for documents that contain information learned in the course of representing a client that they must (1) communicate with the current or former client whose information is requested, (2) seek the client's consent to provide the requested information, and (3) if consent is not received, assert reasonable and non-frivolous objections to the subpoena and provide only the information not subject to such objections. NYSBA Eth. Op. 2022-1 (2022). By providing the Drive containing the PST File to K&S, attorneys representing a party adverse to his former client SPC, Mr. Love violated his ethical obligations to SPC.

The email exchange with Mr. Love makes clear that New York ethical rules apply to the conduct of K&S. New York's Rule of Professional Conduct 8.4 provides that "[a] lawyer or law firm shall not (a) violate or attempt to violate the Rules of Professional Conduct, **knowingly assist or induce another to do so**, or do so through the acts of another …." (Emphasis added.) Also, while a lawyer may have *ex parte* contact with the opposing party's former employees, "[c]ounsel must still conform to all applicable ethical standards when conducting such interviews." *Muriel Siebert & Co. v. Intuit Inc.*, 8 N.Y.3d 506, 512, 868 N.E.2d 208, 210, 536 N.Y.S.2d 527, 530 (2007); *see also* New York Rule of Professional Conduct Rule 4.2(a), Comment 7 ("In communicating with a current or former constituent of an organization, a lawyer must not use methods of obtaining evidence that violate the legal rights of the organization."). The Court of Appeals explained that "the right to conduct *ex parte* interviews is [not] a license for adversary counsel to elicit privileged or confidential information from an opponent's former employee." *Muriel Siebert & Co.*, 8 N.Y.3d at 512, 868 N.E.2d at 210, 536 N.Y.S.2d at 530. That court declined to disqualify Intuit's attorneys because they adhered to the guidance of ABA Formal Opinion 91-359. *Id*. (attorneys properly directed former employee "to avoid disclosing privileged or confidential information" and "not to

answer any questions that would lead to the disclosure of such information"); see ABA Comm. on Ethics and Prof. Responsibility, Formal Op. 91–359 [1991] [adversary counsel may interview former employees of an opponent but must not induce former employees to disclose privileged communications]. Thus, Plaintiffs' assertion that K&S had no obligation to allow SPC to conduct a privilege review of the contents of the Drive is contrary to the ethical obligations of its attorneys. Rather, additional steps should have been taken to ensure that they were not eliciting either privileged or confidential information from Mr. Love, SPC's former president and general counsel, knowing his role would have involved such protected information.

As noted above, client confidential information in the possession of its attorney can be disclosed if the client consents. SPC did not object to the subpoena and thereby, at most, impliedly consented to Mr. Love providing <u>responsive</u> non-privileged material in his possession to Plaintiffs. SPC did not thereby consent to Mr. Love giving non-responsive, non-privileged material to Plaintiffs. SPC has consistently agreed to honor its decision not to move to quash Plaintiffs' subpoena to Mr. Love and allow Plaintiffs (and the other parties to this action) access to responsive documents that are not privileged.

Plaintiffs are not entitled to anything in the PST File other than emails that are responsive to the subpoena to Mr. Love and a privilege log. They have failed to offer any basis to support their contention that they are entitled to access non-responsive, non-privileged documents simply because their lawyers encouraged Mr. Love to turn over the Drive in violation of his and their ethical obligations. SPC respectfully requests that the Court order K&S and Plaintiffs to destroy any copy of the PST File in their possession and file a declaration confirming such destruction with 14 days of such order and to order that SPC need only produce to all parties responsive non-privileged documents and a privilege log.

Respectfully yours,

John G. McCarthy

Enclosures

cc:    Counsel of record (via ECF)

SGR/81288862.3