**STUMPHAUZER KOLAYA NADLER & SLOMAN** PLLC

November 7, 2025

**VIA ECF**

The Honorable Barbara Moses
United States Magistrate Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Courtroom 20A
New York, NY 10007-1312

> Re:    *Leadenhall Capital Partners LLP et al. v. Wander et al., No. 1:24-cv-3453-JGK, Nicholas Bennett Civil Subpoena*

Dear Judge Moses,

On behalf of non-party Nicholas Bennett ("Bennett"), we write in opposition to Plaintiffs', Leadenhall Capital Partners, LLP, Leadenhall Life Insurance, and Linked Investments Fund, PLC, (collectively, "Plaintiffs") October 17, 2025, letter motion ("Motion") to compel Bennett's compliance with the subpoena Plaintiff served on July 3, 2025 (the "Subpoena").

## I.    INTRODUCTION

On March 24, 2025, Plaintiffs' counsel deposed Bennett in a related case in Miami, Florida (the "Related Case").[1] Bennett, flanked by undersigned counsel, invoked his Fifth Amendment rights for approximately five hours and on that ground refused to answer most of Plaintiffs' counsel's questions. Four months later, Plaintiffs' counsel emailed undersigned counsel to serve the Subpoena. Hearing no response, instead of serving Bennett via process server, Plaintiff *directly* contacted Bennett to serve the Subpoena. Bennett also did not respond and was ultimately served at his place of work in Connecticut.

Since then, Bennett has been subjected to repeated harassment by Plaintiffs' counsel in connection with the Subpoena. During a subsequent period where he was unrepresented by counsel, Bennett clearly responded in writing that he was still invoking his Fifth Amendment right

---

[1] King and Spalding LLP represented the Leadenhall Capital Partners LLP in that action, styled *777 Partners LLC and SuttonPark Capital LLC v. Leadenhall Capital Partners LLP*, *et. al*., Case No. 24-81143-CIV-DMM. Brian Donovan of King and Spalding led that deposition and is involved in the instant litigation.

against self-incrimination, and in any event objected to the subpoena's requests as overly broad, unduly burdensome. *See* Email dated July 29, 2025 (Dkt. No. 357-3 at 11–12). Plaintiffs nevertheless persisted. Over several months, Plaintiffs' counsel sent over a dozen emails, called Bennett numerous times, left voicemails, and issued threats.

Bennett now, through criminal counsel, formally submits this response in opposition to the subpoena, asserting the bases for objection that Bennett provided via email on July 29, 2025.

This Court should deny the Motion on numerous grounds. ***First***, Bennett has invoked his Fifth Amendment privilege against self-incrimination and is thus protected from responding. In 2024, a Grand Jury in the Southern District of New York subpoenaed Bennett in connection with an ongoing investigation into 777 Partners and its principals. Last month, a Grand Jury in the Southern District of New York charged Joshua Wander, the co-founder of 777 Partners, with conspiracy to commit wire fraud, wire fraud, conspiracy to commit securities fraud, and securities fraud. The former CFO of 777 Partners, Damien Alfalla, previously pled guilty to an Information in connection with his participation in the fraud scheme at 777 Partners. *See* Press Release, FBI N.Y. Field Office, *Founder and CFO of Investment Firm 777 Partners Charged With $500 Million Fraud Scheme* (Oct. 16, 2025), https://www.fbi.gov/contact-us/field-offices/newyork/news/founder-and-cfo-of-investment-firm-777-partners-charged-with-500-million-fraud-scheme. Bennett thus has a credible and well-founded fear that ***any*** materials he provides relating to 777 Partners—and, indeed, the act of producing any such materials—might tend to incriminate him. Plaintiffs broad and accusatory requests further compound this fear, as compliance would require testimonial acts by Bennett—such as whether certain materials exist, are in his possession, and relate to alleged misconduct. Under these circumstances, Bennett's invocation of his Fifth Amendment privilege is both appropriate and necessary.

***Second***, Bennett is no longer employed by 777 Partners, having left the company in early 2025. After leaving, he returned his company-issued computer, lost access to his company email account, and kept no physical files from his 777 Partners tenure. The only device still in his possession that ***might*** contain ***limited*** responsive information is his personal cell phone—which 777 Partners has already imaged and is subject to party discovery in this case. Accordingly, Plaintiffs either already possess, or can readily obtain through party discovery, any materials they seek without infringing on Bennett's Fifth Amendment right against self-incrimination.

***Third***, for those reasons and others detailed below, the Subpoena requests are overly broad, vexatious, and unduly burdensome.

## II.     BACKGROUND

Bennett was employed by 777 Partners from June 2017 through April 2025. During his tenure, he held a series of roles across several of 777 Partners' portfolio companies, ultimately serving as a member of the firm's Investment Team. Throughout his employment, Bennett ultimately reported to the firm's principals, Joshua Wander and Steven Pasko.

In February 2024, Bennett received a subpoena from a federal grand jury sitting in the Southern District of New York (the "SDNY Grand Jury"). Bennett cooperated with the Government in connection with that subpoena.

In March 2025, Bennett was deposed in the Related Matter (*777 Partners LLC and SuttonPark Capital LLC v. Leadenhall Capital Partners LLP*, *et. al.*) pursuant to a third-party civil subpoena (the "Civil Subpoena"). The Civil Subpoena also sought, among other things, documents concerning 777 Partners' financial records and any false reports or information provided to financial institutions. The deposition lasted approximately five hours. On the advice of counsel, Bennett invoked his rights under the Fifth Amendment in response to a substantial majority of the questions posed.

Several months later, in July 2024, and in connection with the Related Matter, 777 Partners undertook a forensic imaging and preservation of Bennett's company-issued computer and of his cell phone, which served as both his personal and work device. The process was handled by or at the direction of 777 Partners' counsel.

Following his departure from 777 Partners in April 2025, Bennett returned his company-issued computer and other devices but is still in possession of his personal cell phone. Consistent with company policy, he was not permitted to retain or remove any business records or other proprietary materials belonging to 777 Partners.

Subsequently, Wander—one of the senior executives to whom Bennett reported—was indicted by the same SDNY Grand Jury that had previously issued the subpoena to Bennett.  *See United States v. Wander*, No. 25-cr-00473 (S.D.N.Y. Oct. 14, 2025), Dkt. No. 1 (hereinafter "Wander Indictment"); *see also* Press Release, FBI N.Y. Field Office, *Founder and CFO of Investment Firm 777 Partners Charged With $500 Million Fraud Scheme* (Oct. 16, 2025), https://www.fbi.gov/contact-us/field-offices/newyork/news/founder-and-cfo-of-investment-firm-777-partners-charged-with-500-million-fraud-scheme.

### III.    ARGUMENT

### A. <u>The Fifth Amendment's act-of-production doctrine shields Bennett from responding to the Subpoena</u>

Under the Fifth Amendment, no person "shall be compelled to be a witness against himself." U.S. Const. Amend. V. This Constitutional right "can be asserted in any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory[.]" *Kastigar v. United States*, 406 U.S. 441, 444 (1972) (collecting cases). "To qualify for the Fifth Amendment privilege, a communication must be testimonial, incriminating, and compelled." *Hiibel v. Sixth Judicial Dist. Court of Nev., Humboldt Cnty.*, 542 U.S. 177, 189 (2004) (citing *United States v. Hubbell,* 530 U.S. 27, 34–38 (2000)).

The Supreme Court has made "clear that the act of producing documents in response to a subpoena may have a compelled testimonial aspect." *Hubbell*, 530 U.S. at 36. As such, the "act of production" doctrine extends the privilege beyond testimony to the compelled production of documents "even if the documents' contents are not protected by the privilege, when the witness's simple act of producing the documents could be used against the witness—for example, in those cases when the simple fact that the witness possessed the documents would be incriminating." *In re Grand Jury Subpoena Dated February 2, 2012*, 741 F.3d 339, 343 (2d Cir. 2013); *Hubbell,* 530 U.S. at 36 ("We have held that 'the act of production' itself may implicitly communicate 'statements of fact.' By producing documents in compliance with a subpoena, the witness would admit that the papers existed, were in his possession or control, and were authentic.") (internal quotation omitted); *United States v. Fox,* 721 F.2d 32, 38 (2d Cir.1983) (the forced collection of documents could "result in compelled testimonial communication" violative of the Fifth Amendment).

Whether the act of production communicates an incriminatory statement, and is thus protected, depends on the "facts and circumstances of particular cases." *United States v. Fridman*, 974 F.3d 163, 174 (2d Cir. 2020) (quoting *Fisher v. United States,* 425 U.S. 391, 410–411 (1976). But the privilege "must be accorded liberal construction in favor of the right it was intended to secure*." Hoffman v. United States,* 341 U.S. 479, 486 (1951) (citation omitted).

Here, Bennett's act of producing the subpoenaed materials would be testimonial, incriminating, and compelled, and is therefore protected under the Fifth Amendment. *See Hiibel,* 542 U.S. at 189 (citation omitted). In responding to a subpoena that Bennett opposes, the production would necessarily be "compelled." Bennett addresses the remaining two factors in turn.

4

1.   Testimonial

Compulsory compliance with a subpoena for documents is testimonial and violates Fifth Amendment protections when it requires the "respondent to make extensive use of 'the contents of his own mind' in identifying the . . . documents responsive to the requests in the subpoena." *Hubbell,* 530 U.S. at 43 (quoting *Curcio v. United States,* 354 U.S. 118, 128 (1957)). The Supreme Court has explained that a broad subpoena served on a witness triggers the act-of-production privilege because it effectively compels the respondent's testimony. *Sec. & Exch. Comm'n v. Forster*, 147 F. Supp. 3d 223, 228 (S.D.N.Y. 2015) (quoting *Hubbell,* 530 U.S. at 41–42. Indeed, "It is precisely this sort of fishing expedition that the Fifth Amendment was designed to prevent." *Fox*, 721 F.2d at 37–38).

Where the subpoena seeks expansive categories of materials rather than particular documents it can describe with reasonable specificity, the breadth of the request itself indicates that compliance would be testimonial. *Cf. SEC v. Forster*, 147 F. Supp. 3d 223, 228–29 (S.D.N.Y. 2015) (holding that a subpoena seeking broad categories of documents "concerning" multiple entities was testimonial in nature because compliance would require the respondent to use his own knowledge and discretion to identify responsive materials); *Grand Jury Subpoena Dated Apr. 23, 1981*, 1 F.3d 87, 93 (2d Cir. 1993) (concluding the act-of-production doctrine applied where the government had not "demonstrate[d] with reasonable particularity that it knows of the existence and location of" the demanded documents).

Here, Plaintiffs seek "all Documents and Communications concerning" eight categories of materials, each directly related to the criminal case currently pending against Wander and, presumably, former 777 Partners CFO, Alfalla. *See generally* Wander Indictment . Each Request is framed so that the mere act of responding carries independent testimonial implications, suggesting that Bennett had awareness of, or involvement in, the allegedly criminal acts of Wander and other individuals working at 777 Partners. For example, Request No. 6 seeks "[a]ll Documents and Communications concerning any false statements or misrepresentations made by 777 Partners or SuttonPark Capital to lenders or any other party." Motion ¶ 6 (Dkt. No. 357-1). Such facially broad requests require Bennett to determine where materials are located and which of them "concern" a particular matter. In making those determinations—and in producing any responsive documents to inquiries that plainly implicate him in criminal conduct, as evidenced by the ongoing prosecution of Wander and other 777 Partners principals—Bennett would, in effect, serve as a witness against himself, and would contribute "to the sum total of the Government's information" against him were he investigated or charged. *See In re Katz,* 623 F.2d 122 (2d Cir. 1980) (citation omitted).

Compliance would thus, itself, be testimonial, requiring Bennett to "make extensive use of the contents of his own mind" to identify responsive documents. *See Hubbell*, 530 U.S. at 43. And, in doing so, Bennett would implicitly communicate that certain documents and communications

5

exist, are in his possession, and are authentic. *See id.* (Fifth Amendment protects an individual "from being compelled to answer questions designed to elicit information about the existence of sources of potentially incriminating evidence."); *In re Hyde*, 235 B.R. 539, 546 (S.D.N.Y. 1999) *aff'd*, 205 F.3d 1323 (2d Cir. 2000)) ("Because Hyde's production of the documents would implicitly authenticate them, the act of production privilege applies."). If Plaintiffs truly seek only responsive records, there are alternative means to obtain them that do not infringe upon Bennett's Constitutional rights. Plaintiffs already has access to an image of Bennett's phone, and can, on their own, determine whether they believe any files contained therein are responsive to their Requests. Plaintiffs' continued insistence that Bennett ***personally*** produce the materials suggests that what they truly seek is the testimonial value of that productive act—namely, Bennett's implicit authentication of the documents through his production. Bennett's right to refuse that act is unequivocally protected by the Fifth Amendment.

For these reasons, the Court should conclude that enforcement of the Subpoena would result in compelled, testimonial communication.

2. <u>Incriminating</u>

Answers that may "furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime" are covered by the Fifth Amendment's protections. *Hoffman,* 341 U.S. at 486; *United States v. Greenfield*, 831 F.3d 106, 114 (2d Cir. 2016). "To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result." *Id*. at 486–87.

The Subpoena requests here force an incriminating response, particularly in light of the context in which they are asked. For instance, Plaintiff seeks "[a]ll Documents and Communications concerning any forging or falsification by 777 Partners or SuttonPark Capital of financial statements or bank statements." (Dkt. No. 357-1 ¶ 4). Under any circumstances, responding to such a request would be testimonial insofar as knowledge or possession of these kinds of documents and communications alone could be grounds for an independent criminal investigation. More so here, where there is an ongoing criminal prosecution charging the respondent's former employer with conspiracy to commit wire fraud based, in part, on the alleged fabrication of financial documents used to inflate 777 Partners' performance. *See* Indictment (Dkt. No. 357-4 ¶ 1). Moreover, Plaintiffs' Motion itself accuses Bennett of being the "analyst" identified in the Indictment who altered bank statements sent to Leadenhall using Microsoft Paint. Motion at 2 (Dkt. No. 357). Any act by Bennett to produce the requested documents would place him directly at the center of an ongoing criminal investigation and prosecution, as both his possession of, and efforts to identify, responsive materials would run the risk of incriminating him.

6

Plaintiffs' argument that Bennett cannot invoke the privilege on a so-called "blanket basis" misconstrues the nature of the act-of-production privilege. *See Forster*, 147 F. Supp. 3d at 228 ("[A] document-by-document analysis by Forster would not be useful to determining whether Forster has validly asserted the act-of-production privilege."). Plaintiffs are correct that, ***in general***, a respondent's "blanket assertion" of the Fifth Amendment privilege is insufficient for the privilege to apply because courts must conduct a "particularized inquiry" to determine whether a respondent's Fifth Amendment assertion is "founded on a reasonable fear of prosecution." *See SEC v. Pence*, 323 F.R.D. 179, 188 (S.D.N.Y. 2017) (quoting *United States v. Bowe*, 698 F.2d 560, 566 (2d Cir. 1983)). However, as this Court explained in *Forster*, such an analysis is misplaced because the act-of-production privilege "does not focus on the content of the individual documents," which were not compelled, "but [on] the act of producing them," which itself may be testimonial and incriminating. *See Forster*, 147 F. Supp. 3d at 229. The actual content of the documents is, therefore, irrelevant to determining whether their compelled production would violate the Fifth Amendment. *Id.* "[T]he court cannot consider the contents of specific documents in determining the applicability of the act of production privilege," nor can it "require any offer of proof that the documents are, in fact, incriminating, because that would defeat the purpose of the privilege." *Id.* at 228–29 (cleaned up).

Moreover, this Court's assessment of whether a respondent must explain the potentially incriminatory nature of a response should be tempered by how apparent that incriminatory nature is on its face. *See United States v. Edgerton*, 734 F.2d 913, 919 (2d Cir. 1984) ("If the court determines that the incriminatory nature is not readily apparent, the witness then must endeavor to explain how his answer will be incriminatory"). In other words, the more self-evident the risk of incrimination, the less detail the court should require to sustain the privilege.[2] *See id.* (explaining that "[t]his burden forces a witness to come dangerously close to doing that which he is trying to avoid."). Indeed, "once the [respondent] has invoked the privilege, the Court is required to take at face value the [respondent's] assertions that the documents are incriminating." *Pence*, 323 F.R.D. at 188 (quoting *In re Hyde*, 235 B.R. at 544). Here, where the Government has already investigated and initiated related prosecutions, and Plaintiffs' Motion even accuses Bennett of having committed a federal crime, any response would tend to incriminate Bennett. The danger of Bennett responding is thus "readily apparent from the implications of the question asked or the circumstances surrounding the inquiry." *See Estate of Fisher*, 905 F.2d at 649.

Accordingly, Bennett's invocation of the Fifth Amendment privilege shields him from any compulsion to comply with the Subpoena, as the act of production itself would be both testimonial and incriminating. For this reason alone, the Court should deny the Motion.

---

[2] Should the Court require further details regarding the specific nature of the potential danger of incrimination, Bennett respectfully requests leave to submit a more substantive explanation in an *ex-parte* supplemental letter to the Court.

**B. The Subpoena is overly broad and unduly burdensome.**

Bennett's Fifth Amendment rights aside, the Subpoena is overly broad, vexatious, and unduly burdensome. As a non-party with limited stake in the claims at issue, Bennett should not be compelled to undertake an intrusive, duplicative, and constitutionally fraught search to satisfy Plaintiffs' overly broad and ill-defined demands. This is especially true where, as here, Plaintiffs likely *already possess all the information sought*.

Federal Rule of Civil Procedure 26(b)(2) specifically provides that a court may limit disclosure if "the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(2). In performing such a balance, courts have considered the fact that discovery is being sought from a non-party, which weighs against permitting discovery. *See Katz v. Batavia Marine & Sporting Supplies, Inc.*, 984 F.2d 422, 424 (Fed. Cir. 1993) ("Discovery of persons not party to the litigation is contemplated by the Rules. Although Rule 26(b) applies equally to discovery of nonparties, the fact of nonparty status may be considered by the court in weighing the burdens imposed in the circumstances.") (collecting cases).

Rule 45(c)(2)(B)(ii) mandates that courts protect third parties from onerous discovery requests. In this Circuit, courts have held non-party status to be a "significant" factor in determining whether discovery is unduly burdensome. *Solarex Corp. v. Arco Solar, Inc.*, 121 F.R.D. 163, 179 (E.D.N.Y. 1988) ("Of significance, ... in balancing the competing hardships, is the Society's status as a non-party to this litigation. Under the authorities, this factor is significant in 'determining whether compliance [with a discovery demand] would constitute an undue burden.'") (citations omitted).

Here, the Subpoena is precisely the kind of overbroad, vexatious, and burdensome demand that Rule 45 is intended to protect non-parties against. Requiring Bennett to search years of data on his personal device and determine which materials "concern" the alleged criminal conduct is an overbroad and unduly burdensome. For example, Bennett would likely have to comb through thousands of messages to adequately respond. Indeed, the Requests seek "[a]ll Documents and Communications" regarding eight different categories of information. The overbroad Requests are not limited to communications with certain persons, are not limited to specifically defined documents, but rather require that Bennett expend tremendous time and effort to interpret the Subpoena and properly respond.

Moreover, Plaintiffs already possess the very materials they purport to seek: 777 Partners forensically imaged Bennett's phone and former computer in connection with the instant lawsuit, and Plaintiffs should have access to those communications. Plaintiffs have failed to demonstrate why they need the requested documents and communications from Bennett. Bennett is no longer employed by 777 Partners and is not named in this lawsuit. As Bennett informed Plaintiffs, he was

not permitted to take company records with him. To the extent the Subpoena seeks documents that exist and are relevant, they are obtainable through party discovery requests. The relevance of any documents Bennett may have is therefore limited, particularly when compared to the records in 777 Partners' possession or those of the named defendants.

Plaintiffs' pursuit of such materials from Bennett appears less designed to gather relevant and responsive documents, and more so aimed at compelling testimonial evidence about Bennett's knowledge and involvement in any criminal activities.

For the foregoing reasons, this Court should deny the Motion.

Respectfully submitted

*/s/ Michael B. Nadler*
Michael B. Nadler, Esq.
Jeffrey Sloman, Esq.
Francis D. Murray, Esq.

*Counsel for Nicholas Bennett*