

**BENJAMIN B. WATSON**
(404) 407-5251
bwatson@cgc-law.com
Attorney at Law

November 10, 2025

<u>VIA ECF</u>

Hon. Barbara Moses
United States Magistrate Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007

> **Re: *Leadenhall Capital Partners LLP et al v. Wander et al*, 24-cv-03453-JGK**
> **Response to Nov. 3 and Nov. 4, 2025 Letters from Steven Pasko and 777**

Dear Judge Moses,

Plaintiffs Leadenhall Capital Partners and Leadenhall Life Insurance Linked Investments Fund PLC (together, "Leadenhall") oppose Pasko's and the 777 Entity Defendants' ("777") anticipated motions to quash the third-party subpoenas directed to JPMorgan Chase, Wells Fargo, Goldman Sachs, and M&T Bank. The subpoenas are proper because (1) the requested records are probative of core issues in this case and cannot be obtained from other sources, (2) Defendants' generic privacy interests do not outweigh the probativeness of the discovery sought, and (3) the Protective Order's confidentiality provisions can address any legitimate privacy concerns. The Court should reject Defendants' latest attempt to stymie discovery in this case.

### <u>Background</u>

In November 2024, Judge Koeltl issued an Order granting in part and denying in part Defendants' motion for a stay of discovery pending resolution of Defendants' motions to dismiss. ECF 252. The Court stayed only (1) depositions and (2) document discovery as to Wander and Pasko. ECF 252. Defendants have sought to delay discovery at every turn, stating just last week at a court conference that "[w]e're at the beginning of the case." ECF 386. Defendants' dilatory conduct prompted Leadenhall to seek evidence from third parties; in the last six months, Leadenhall has served 21 third-party subpoenas. Until now, Pasko has not objected to any of these subpoenas (many of which seek documents relating to him); 777 has objected to only one (on privilege grounds).

The subpoenas at issue—served on JPMorgan Chase, Wells Fargo, Goldman Sachs, and M&T Bank—seek "[a]ll bank statements, account histories, transaction histories, or other financial

records associated with" certain defendants.[1]  Now, over a month after Leadenhall began issuing subpoenas to these banks, Pasko and 777 seek to quash them—777 also seeks "expedited relief" despite waiting until the night before the first subpoena responses were due to object.

Pasko and 777's arguments rest on untenable readings of this Court's prior discovery rulings.  Pasko contends that the Court's decision to stay *his* discovery obligations as a party also prohibits Leadenhall from seeking (from non-parties) documents *about* him. ECF 382 at 1-3. There is no legal support for that contention.  It also makes no sense given that Pasko is one of the key individuals whose custodial documents 777 has already agreed to collect and produce (without objection from Pasko).  Meanwhile, 777 contends that both "Judge Koeltl's partial discovery stay" and "Your Honor's order [at ECF 316] limit[] discovery at this stage to ***party document discovery***." ECF 384 at 1 (emphasis added).  That position is irreconcilable with the Court's holding at the November 4 conference (the same day 777 filed the instant letter) that "Judge Koeltl stayed deposition discovery" only.  ECF 386, Nov. 4 Hr'g Tr. at 10:22-23.

In addition to asserting that Judge Koeltl's partial stay of discovery precludes these subpoenas, Defendants make the following arguments: Pasko argues (1) that his privacy interest in the bank records outweighs the probative value of those records, (2) the bank records must be collected from him rather than the banks, and (3) because discovery is stayed as to him, the subpoenas represent an end-run around the stay. 777 argues that the subpoenas are overbroad, disproportionate, and call for production of irrelevant private information. Leadenhall addresses each in turn.

## Legal Standard

Federal Rule of Civil Procedure 45(a) allows a party to issue a subpoena to any person "command[ing]" them to "produce designated documents." A court may quash or modify a subpoena that "requires disclosure of privileged or other protected matter, if no exception or waiver applies." Fed. R. Civ. P. 45(d)(3)(A)(iii).  Generally, only recipients of a subpoena have standing to challenge it; non-recipients have standing only if they claim "a privilege, privacy or proprietary interest in the documents sought." *City of Almaty, Kazakhstan v. Ablyazov*, 2020 WL 1130670, at *1 (S.D.N.Y. Mar. 9, 2020).  If the movant has standing, "the next inquiry requires weighing the relevance or probative value of the documents being sought against the privacy interests … asserted." *Refco Grp. Ltd., LLC v. Cantor Fitzgerald, L.P.*, 2014 WL 5420225, at *6 (S.D.N.Y. Oct. 24, 2014).  While the "burden of demonstrating relevance is on the party seeking discovery," "general and conclusory objections as to relevance, overbreadth, or burden are insufficient to exclude discovery of requested information."  *Id*.  "Once the party seeking production of the materials meets its burden of showing relevance sufficient to justify discovery, the burden shifts to the movant to show why discovery should not be had."  *Id.*  "Thus, the burden of persuasion in a motion to quash a subpoena … is borne by the movant."  *Id.*

---

[1] The subpoenas to Wells Fargo and JPMorgan Chase were issued on October 3, and the subpoenas to Goldman Sachs and M&T Bank were issued on October 21 and October 22, respectively.  Responses to the Wells Fargo and JPMorgan Chase subpoenas were due November 5, and responses to the Goldman Sachs and M&T Bank subpoenas are due November 21 and November 24, respectively.  Plaintiffs granted JPMorgan an extension to respond until November 14.

## Argument

I.  **Pasko**

   A.  **The Subpoenas Should Not Be Quashed Because They Seek Highly Probative Information, Outweighing Any Generic Privacy Interest Pasko Asserts.**

   While Pasko has standing to challenge the subpoenas only insofar as they request his bank records, he cannot show that they should be quashed. The subpoenas seek plainly probative information, and Pasko asserts nothing more than the generic privacy interest that any individual has in personal bank records. Where subpoenaed financial records have significant probative value, courts routinely reject motions to quash based on similarly conclusory claims of privacy. *See, e.g.*, *Refco*, 2014 WL 5420225 at *8 (holding that relevance of the documents outweighed any general privacy interest because "[m]ovants have failed to identify any specific harm that they will suffer as a result of production, other than having to produce information in which they have a privacy interest to plaintiff").

   Leadenhall's complaint alleges that Defendants—including Pasko—engaged in a fraudulent scheme and RICO conspiracy to obtain funding from Leadenhall and then misused those funds for their personal enrichment, both through high-risk investments and direct self-dealing. Leadenhall also alleges that Defendants, including Pasko, used their companies to feign legitimacy when, in reality, they disregarded corporate formalities and commingled personal and business assets. Defendants' bank records—including Pasko's—are relevant and probative of core issues including but not limited to how Defendants (1) used Leadenhall's money; (2) were personally enriched, and (3) commingled their own money with that of their companies and their companies' investors. For example, to prove its RICO claims, Leadenhall is entitled to records, including bank records, evidencing Pasko's "participation in the conduct" of the RICO enterprise, and the "use of income … derived" from the racketeering activity. *Conopco, Inc. v. Wein*, 2007 WL 2119507, at *3 (S.D.N.Y. July 23, 2007) (denying motion to quash subpoena of bank records where plaintiff alleged RICO claims).

   Pasko attempts to downplay the allegations of his involvement, contending that he is accused only of, "in his capacity as a corporate signatory," signing "a handful of [false] documents." ECF 382 at 2. But Leadenhall alleges far more, including that Pasko, the co-founder and former Managing Partner of 777 Partners and 600 Partners, used those entities as alter egos; that 600 Partners was a shell entity controlled by Pasko to conceal and funnel money within the fraudulent enterprise; that Pasko was the primary cash beneficiary of the fraudulent scheme to the tune of at least $170 million paid to him personally; that Pasko signed false monthly reports and borrowing requests upon which the pattern of alleged wire fraud is based; that Pasko signed the form allowing 777 to pledge assets to both Leadenhall and another lender; and blocked Leadenhall from auditing its collateral. ECF 187, Corr. Am. Complaint ("Compl.") ¶¶ 43, 55, 89, 61-64, 120-21, 193, 248, 405.[2] Because Pasko was the primary cash beneficiary of the scheme, *see id.* ¶ 405

---

[2] Pasko emphasizes that the Securities Act count against him in the SEC enforcement action permits liability on a negligence basis. ECF 382 at 2. But this is not unique to Pasko—all of the Securities Act counts allege that defendants "knowingly, recklessly, or negligently" engaged in fraud. *Sec. & Exch. Comm'n v. Wander, et al.*, 25-CV-8565 (S.D.N.Y., filed Oct. 16, 2025), ECF 1 ¶¶ 92, 95, 101. Regardless, the fact that the statute creates liability for

(alleging that Pasko cashed out his stake in 777 Partners for $170 million), and has in the past taken control of 777 Partners subsidiaries to shield them from creditors, *see id.* ¶ 309(d), his personal financial records are, at minimum, relevant to this litigation. *See Condit v. Dunne*, 225 F.R.D. 100, 105 (S.D.N.Y. 2004) ("[R]elevance, for purposes of discovery, is an extremely broad concept."); *United States v. Kelley*, 305 F. App'x 705, 707 (2d Cir. 2009) ("The district court did not abuse its discretion by admitting the bank records," where "[t]hey were probative of" false statements, disbursements of funds, and the defendant's knowledge).[3]  The fact that Pasko is previewing a *scienter* defense makes discovery of his knowledge and participation—including through the pecuniary benefits he reaped from the scheme—even *more* relevant.

On the other side of the ledger, Pasko asserts, without elaboration, that he has "a privacy interest in his personal financial records," and that the subpoenas seek "wholly personal financial transactions." ECF 382 at 4.  But challenging a non-party subpoena requires more than "a conclusory assertion that the subpoenas seek documents that are private, confidential, and commercially sensitive." *Refco Grp. Ltd.*, 2014 WL 5420225 at *4.  A movant must establish that "disclosure will result in a clearly defined, specific and serious injury"—for example, the disclosure of information that might enrich a competitor.  *U.S. Commodity Futures Trading Comm'n v. Parnon Energy Inc.*, 2013 WL 5882921, at *2 (S.D.N.Y. Oct. 25, 2013).  Pasko's unsupported claims of privacy are "too generic" a reason to quash the subpoena—"much less the 'clear and defined' injury necessary." *In re Subpoenas Served on Lloyds Banking Grp. PLC*, 2021 WL 3037388, at *5 (S.D.N.Y. July 19, 2021) (refusing to quash where movant failed to say "what sensitive information might be revealed" or identify "specific harms"); *United States Reg'l Econ. Dev. Auth., LLC v. Matthews*, 2018 WL 2172713, at *9 (D. Conn. May 10, 2018) (similar).  Moreover, any potential harm that might stem from disclosure of sensitive information is "eliminated by [the] protective order." *Refco Grp. Ltd.*, 2014 WL 5420225 at *8; *In re Application of FB Foods, Inc.*, 2005 WL 2875366, at *1 (S.D.N.Y. Nov. 2, 2005) (similar).

Pasko relies only on cases where the privacy interest easily won out because the courts determined that the records sought had *no* probative value.  *See, e.g., Fecteau v. City of Mount Vernon*, 2025 WL 2391410, at *5 (S.D.N.Y. Aug. 15, 2025) (personal loan records of public officials had "limited, if any, probative value" in civil rights case); *Silverstone Holding Grp., LLC v. Zhongtie Dacheng (Zhuhai) Inv. Mgmt. Co., Ltd.*, 650 F. Supp. 3d 199, 204 (S.D.N.Y. 2023) (bank records had "zero probative value"); *State Farm Mut. Auto. Ins. Co. v. Khait*, 2023 WL 6541583, at *3 (E.D.N.Y. Sept. 26, 2023) (similar, request for nine years of bank records was overbroad where there were only three suspicious transactions during one year).  That is not the case here.  Because the requested documents are plainly relevant and Pasko has not articulated any particularized privacy interest or harm that will arise from disclosure, there is no basis to quash the subpoena.

---

negligence does not mean the SEC does not allege Pasko's knowledge (it does). The SEC alleges that "Pasko knew or should have known of the overdraw," *see id.* § II.E, and that Wander wrongfully diverted $8 million to Pasko's personal account, *id.* ¶ 8.

[3]  Pasko has argued that Leadenhall can seek bank records pertaining only to his "transactions with the Entity Defendants." ECF 382 at 4.  That is insufficient.  Leadenhall alleges that Wander and Pasko disregarded corporate formalities, comingled funds, and misappropriated Leadenhall's loans.  For these reasons, Leadenhall requires visibility on both ends so that it can trace the flow of funds from the borrower entities, to 777 Partners and 600 Partners, and then to individual beneficiaries like Pasko—including through other parties or entities like Defendants' personal holding vehicles—in whatever permutations those transactions took.

### B. Leadenhall Has Offered—but Is Not Required—to Seek the Bank Records from Pasko, but Pasko Has Refused.

Leadenhall acknowledges that discovery is stayed as to Pasko. But all that means is that Leadenhall cannot seek discovery *from* Pasko. The Court did not rule that Leadenhall cannot seek—or that non-parties cannot produce—documents *relating* to Pasko. Such a ruling would be nonsensical given Pasko's central role in the fraud. Pasko also seeks to tie Leadenhall's hands, first arguing that "absent the Discovery Stay," Leadenhall "would be required to seek [these records] directly from Mr. Pasko." ECF 382 at 4. But he also insists that Leadenhall cannot seek the records from him "because of the Discovery Stay." *Id.* From these questionable premises, Pasko concludes that the subpoenas represent an "improper end-run around the stay." *Id.* That is wrong.

First, only the recipient of a subpoena (here, the banks) can make a burden objection. *Malibu Media, LLC v. Doe No. 4*, 2012 WL 5987854, at *2 (S.D.N.Y. Nov. 30, 2012) ("Even where a party has standing to quash a subpoena based on privilege or a personal right, he or she lacks standing to object on the basis of undue burden." (internal citation omitted)). Even if the objection were properly asserted, bank records are bank property—so seeking these records from the bank is proper. *See, e.g.*, *SEC v. First Sec. Bank of Utah*, 447 F.2d 166, 167 (10th Cir. 1971) ("The deposit and disbursement of money in a commercial checking account are . . . the property of the bank[.]"). Moreover, Pasko has not confirmed that he even possesses the documents Leadenhall subpoenaed.

Second, Leadenhall's subpoenas do not represent an end-run around the discovery stay because Leadenhall did not seek the same information through its initial Requests for Production ("RFPs"). ECF 282 at 4. Leadenhall's RFPs sought documents showing the amount and purpose of any payments between Defendants whereas the subpoenas seek Pasko's bank statements, account histories, and transaction histories. *Id.*; *see also* ECF 382-1, 382-2, 382-3, and 382-4. Nor is this a case—like those Pasko cites—in which Leadenhall issued duplicative subpoenas or contravened a court order. *Burns v. Bank of Am.*, 2007 WL 1589437, at *14 (S.D.N.Y. June 4, 2007) (non-party subpoena was duplicative where it sought the same documents previously included in RFP which defendant already satisfied); *Reynolds v. City of Rochester*, 2025 WL 1108191, at *6 (W.D.N.Y. Apr. 15, 2025) (nonparty subpoena to employer quashed where plaintiff likely had the documents at issue and subpoenaing employer "should be used only as a last resort"); *Shevlin v. Phoenix Life Ins. Co.*, 2012 WL 13034075, at *2 (D.N.J. May 24, 2012) (court previously ruled that documents outside of specific time period were not relevant, and party could not circumvent that determination by subpoenaing nonparty).

Indeed, Leadenhall sought to *avoid* motion practice by proposing that Pasko could produce any relevant records himself, with an agreement that doing so would not result in a waiver of the discovery stay. Leadenhall did not make that proposal to "circumvent" the stay; instead, Leadenhall offered Pasko the opportunity to review these purportedly sensitive financial documents for responsiveness to address his asserted privacy concern. That Pasko rejected this proposal confirms that he wants to have it both ways—to require Leadenhall to seek documents from him and then refuse to produce them. Pasko's motion should be rejected.

## II.    777 Entity Defendants

777's arguments are even weaker.  Not only has the Court already rejected 777's claim that non-party discovery is stayed, *see* ECF 386, Nov. 4 Hr'g Tr. at 10:22-24 (noting that "Judge Koeltl stayed deposition discovery" but "[w]e are doing document discovery"), but it is also belied by the parties' conduct.  If 777 believed in good faith that non-party discovery were stayed, it would presumably have raised that issue in response to one of the 20+ non-party subpoenas Leadenhall has already served.

In apparent recognition that 777's so-called "corporate privacy interests" are not the same as individuals' privacy interests, 777 summarily challenges the subpoenas as overbroad, disproportionate, and calling for the production of irrelevant information.  777 lacks both standing and any substantive basis to object to third-party subpoenas on these grounds.  *Refco Grp. Ltd.*, 2014 WL 5420225, at *5 (quoting *US Bank Nat'l Ass'n v. PHL Variable Ins. Co.*, 2012 WL 5395249 at *3 (S.D.N.Y. Nov. 5, 2012)) ("general and conclusory objections as to relevance, overbreadth, or burden are insufficient to exclude discovery of requested information").  For the reasons discussed *supra*, the 777's bank records are highly relevant to trace the flow of funds fraudulently obtained from Leadenhall; the proceeds of Defendants' scheme; and the individual defendants' use of the corporate form to further and conceal their scheme.

The breadth of the requests is justified here.  While the subpoenas request all "bank statements, account histories, transaction histories, or other financial records associated with" 777 Partners, 600 Partners, and SuttonPark Capital, *see e.g.*, ECF No. 382-1, the documents sought in the subpoenas are tied to specific accounts—identified by account numbers where possible—implicating the flow of funds associated with Leadenhall's credit facility (*e.g.*, collection accounts or operating accounts); alleged instances of wire fraud and/or forgery; receipt of fraud proceeds; or all of the above.  Leadenhall cannot pinpoint each and every fraudulent bank record with specificity at this juncture—particularly given the paucity of 777's productions to date.  But Leadenhall makes well-pled allegations that 777 falsified bank records, which have now been corroborated by the Department of Justice's indictment of Josh Wander.  *See* Compl. ¶ 163 ("In early 2024, a 777 insider told Leadenhall that 777 Partners and the Borrowers had photoshopped financial statements submitted to Leadenhall."); *United States v. Joshua Wander*, 25-CR-473 (S.D.N.Y., filed Oct. 16, 2025), ECF 2 ¶ 17 (alleging that Wander "directed one of the financial analysts to digitally alter existing bank accounts records for 777 Partners and that the "analyst did as instructed, using the program Microsoft Paint to alter the files").  Leadenhall is entitled to the production of legitimate bank statements so that it may compare them to the potentially altered bank statements previously provided by 777.  Moreover, Leadenhall has alleged that the funds it loaned to 777, as well as the receivables (and proceeds from said receivables) that were supposed to secure those loans, were intermingled, used to fund vanity projects, and were transferred around a complex corporate structure.  *See, e.g.,* Compl. ¶ 193.  Given the complexity and scope of the fraud at issue, Leadenhall's subpoenas are proportionate and highly relevant to central issues in this case.[4]

777 ignores the specific allegations of fraud that directly implicate 777's bank records.  Indeed, they rely on a line of cases in which the subpoena information had little to no relevance or

---

[4] Leadenhall will also work with the subpoena recipients to negotiate the scope of the requests as necessary depending on the breadth of records in those third parties' possession.

where the subpoenas were issued for the purpose of harassment. *Morelli v. Alters*, 2020 WL 6508858, at *1-6 (S.D.N.Y Nov. 5, 2020) (quashing bank subpoenas "issued for the purposes of harassment" between former partners in a domestic dispute); *MG Freesites Ltd. v. Scorpcast, LLC*, 2023 WL 2822272, at *4 (S.D.N.Y. Apr. 7, 2023) (quashing requests for information regarding "third parties interacting with Mastercard" that would not "generate documents relevant to the alleged patent infringement or the relevance to any damages issues"). Even 777's cases recognize that where, as here, personal financial information is *relevant* to the claims in a case, such records are the proper subject of a bank subpoena. *Sound Around, Inc. v. Friedman*, 2025 WL 33505, at *6 (S.D.N.Y. Jan. 3, 2025).

Nor does 777 raise any substantial privacy concerns that would outweigh the probative value of the evidence sought. Instead, they assert only a generic privacy interest in "sensitive items." ECF 384 at 4. To the extent 777 is concerned about the disclosure of sensitive financial records, it, like Pasko, has rights under the Protective Order to make confidentiality designations. *See Sound Around*, 2025 WL 33505, at *6 (noting that any sensitive information produced pursuant to the subpoenas "may be produced subject to the terms of the Protective Order" to avoid concerns about the disclosure of such information); *FB Foods*, 2005 WL 2875366, at *1 (concluding that even if there was a privacy interest, the documents at issue were protected by a confidentiality agreement); *Refco Grp. Ltd.*, 2014 WL 5420225, at *8 (any potential harm from the production of financial documents is "eliminated by a protective order"). The Protective Order allows parties to designate documents (including those produced by nonparties) as "Highly Confidential," which results in Attorneys' Eyes Only protection. ECF 296 ¶ 6(c).

\* \* \*

The Court should deny Defendants' anticipated motions to quash.

Respectfully submitted,

*/s/ Benjamin B. Watson*
Benjamin B. Watson

Cc: All counsel of record (via ECF)