

King & Spalding LLP
1290 Avenue of the Americas
New York, NY 10104
Tel: +1 212 556 2100
Fax: +1 212 556 2222
www.kslaw.com

**Leigh M. Nathanson**
Direct Dial: +1 212 790 5359
lnathanson@kslaw.com

November 14, 2025

**VIA ECF**

Hon. Barbara Moses
United States Magistrate Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007

Re: ***Leadenhall Capital Partners LLP et al v. Wander et al**, 24-cv-03453-JGK*

Dear Judge Moses,

777 Partners' foot soldier Nicholas Bennett relies on a blanket invocation of the Fifth Amendment privilege against self-incrimination to refuse to produce a single document in response to Leadenhall's validly issued third-party subpoena. ECF 392 at 4-7; ECF 187 ¶ 204. The Court should reject this argument. The Fifth Amendment's "act of production" doctrine does not apply where the existence of the requested documents is a foregone conclusion such that the act of producing those documents is not itself incriminating. The conclusion is foregone here. Leadenhall already has in its possession evidence of false statements about its collateral, including monthly Compliance Reports that 777 Partners itself amended to remove fictitiously pledged and double-pledged assets, ECF 58 ¶ 10; bank statements forged using Microsoft Paint, ECF 187 ¶ 16; *United States v. Joshua Wander*, 25-CR-473 (S.D.N.Y., filed Oct. 16, 2025) ¶ 17; computer system notes stating that assets were double-pledged, *id.* ¶¶ 156-57; diligence documents from third parties showing that 777 Partners pledged assets to Leadenhall that it never actually purchased, *id.* ¶¶ 151-53; and sworn deposition testimony from a former assistant controller that 777 Partners "stole the $350 million" from Leadenhall, *see 777 Partners LLC v. Leadenhall Cap. Partners LLP*, No. 24-81143 (S.D. Fla.), Ex. A Deposition Transcript of Karen Gorde ("Gorde Tr." 120:9-10). It also has evidence that Bennett carried out these acts, which he does not dispute in opposition. *Id.* at 122:21-25 (Q. "Who are all of the people at 777 Partners who knowingly issued false compliance reports to Leadenhall?" […] A. "It would be Alex Adnani and Nick Bennett who actually prepared the reports."). And Bennett's own opposition confirms that at all times he reported to and took direction from Josh Wander. ECF 392 at 3. Leadenhall now seeks production of those directives and communications from the principals of 777 Partners to the foot soldier Bennett, the existence of which is a foregone conclusion.

Bennett's other arguments in opposition deserve short shrift. To start, Bennett's "fail[ure] to serve any objections to the subpoena, as [he] must do within 14 days of service . . . constitutes a waiver of such objections." *Reid v. Dan Yant, Inc.*, 2018 WL 11453540, at \*2 (E.D.N.Y. Jan. 19, 2018) (citation omitted). And his claim that Leadenhall has engaged in "harassment" is false and turns the record on its head. Leadenhall sought to engage with Bennett for months beyond the subpoena's July return date; Bennett ignored these efforts or actively misled Leadenhall about whether he had counsel, forcing Leadenhall to follow up repeatedly to seek compliance with its valid subpoena.

Bennett's overbreadth objection is also a red herring. Leadenhall tried to meet and confer with Bennett's counsel prior to filing this reply to discuss the scope of the subpoena requests. However, Bennett's counsel refused to even get on the phone—whether to discuss a narrowing of the requests or otherwise—and was crystal clear that Bennett will not produce "***any*** materials" relating to 777 Partners. Ex. B (emphasis in original). In refusing to even confer with Leadenhall, Bennett's counsel confirmed that any overbreadth "objection" has nothing to do with the scope of the requests but with the subpoena itself. Even if the Fifth Amendment's act of production applied to any of the requests, Bennett bears the burden to assert this claim on a "document-by-document" basis. *U.S. v. Cianciulli*, 2001 WL 1097919, at \*3 (S.D.N.Y. Sept. 19, 2001); *see also Cadlerock Joint Venture, L.P. v. MacPherson*, 2011 WL 1795312, at \*2 (S.D.N.Y. May 4, 2011) (holding that Fifth Amendment privilege to production of documents "cannot be validly claimed on a blanket basis"). He plainly fails to do so here.

I.    **The Fifth Amendment's act of production doctrine does not apply where the existence of the requested documents is a foregone conclusion.**

Bennett far overstates the scope of the Fifth Amendment privilege in the context of subpoenaed documents. The privilege does not attach to "documents voluntarily prepared prior to the issuance of a summons" because such documents are "not compelled testimony." *United States v. Fridman*, 974 F.3d 163, 174 (2d Cir. 2020). Put differently, there is "no Fifth Amendment protection for the *contents* of [such] records." *Id.* (emphasis in original). The Supreme Court has carved out "a narrow privilege against the *act* of production" under certain circumstances. *Id.* (discussing *Fisher v. United States*, 425 U.S. 391, 410-11 (1976)). But a respondent may assert this specific "act of production" privilege only when "production would implicitly authenticate the documents," *In re Grand Jury Subpoena Duces Tecum Dated Oct. 29, 1992*, 1 F.3d 87, 93 (2d Cir. 1993) (citation omitted), or otherwise require the respondent "to make extensive use of 'the contents of his own mind' in identifying" responsive documents and therefore contribute to "a link in the chain" of his own prosecution. *United States v. Hubbell*, 530 U.S. 27, 42-43 (2000).

But the privilege does not attach where "[t]he existence and location of the papers are a foregone conclusion" because, under such circumstances, the respondent "adds little or nothing . . . . by conceding that he in fact has the papers." *Fridman,* 974 F.3d at 174 (quoting *Fisher,* 425 U.S. at 411). When the "communicative elements"—"(1) the existence of the documents, (2) the [respondent]'s possession or control of the documents and (3) the authenticity of the documents"— are a foregone conclusion, the act of production does not violate an individual's Fifth Amendment rights. *Id.* at 174-75 (citing *United States v. Greenfield*, 831 F.3d 106, 115 (2d Cir. 2016)). Furthermore, a movant "is not required to have actual knowledge of the existence and location of each and every responsive document." *Id.* Rather, "reasonable particularity" will suffice. *Hubbell*, 530 U.S. at 30. Leadenhall has more than enough evidence to make this showing.

II.    **The existence of documents concerning Bennett's knowledge of and role in 777's fictitious and double-pledging is a foregone conclusion based on ample evidence, including the parties' own admissions.**

Leadenhall's subpoena seeks information about 777's years-long pattern of fraud perpetrated on Leadenhall by fictitiously and double-pledging assets to Leadenhall. *See generally* ECF 357-1. Bennett had boots on the ground in facilitating this fraud—he was the "foot soldier" who, as he concedes in his opposition, reported directly to 777 Partners' principals. ECF 392 at 3. As such, it is a foregone conclusion that documents concerning Bennett's knowledge of the database that 777 used to document its ownership, allocation, and pledging of receivables (MP Fin) (ECF 357-1 ¶¶ 2, 4); monthly Compliance Reports (*id.* ¶ 2); bank statements (*id.* ¶ 3); and financial statements (*id.*) already exist. Bennett does not risk incriminating himself by producing information that is already known; to the extent he is concerned about resurfacing his role in the fraud, that is a consequence of his own actions, not of Leadenhall's subpoena.

The evidence of that fraud (and Bennett's role in it) is already overwhelming. *First*, Leadenhall has Compliance Reports that 777 voluntarily "amended" and re-issued to Leadenhall to remove from the reports assets that were fictitiously pledged or double-pledged. ECF 58 ¶ 10. The former assistant controller of 777 Partners SuttonPark Capital, Karen Gorde, confirmed under oath that Bennett was responsible for issuing these reports to Leadenhall, including the amended reports that omitted the fictitiously pledged and double-pledged assets. *See* Ex. A, Gorde Tr. 122:21-25 (Q. "Who are all of the people at 777 Partners who knowingly issued false compliance reports to Leadenhall?" […] A: "It would be Alex Adnani and Nick Bennett who actually prepared the reports"); *id.* 123:19-23 (Q. "Did Nick Bennett know that the monthly compliance reports issued to Leadenhall contain[ed] false statements? . . . A. "Yes."); *id.* 143:6-9 (Q. "[T]hose orders were from Josh Wander and Steven Pasko, right?" . . . A. "Correct."). It is therefore a foregone conclusion that documents concerning Bennett's preparation of these reports exist.

*Second*, Leadenhall is already in possession of bank statements that a former 777 Partners employee admitted to Leadenhall were forged. ECF 187 ¶ 16. In addition to Gorde's sworn testimony that Bennett knew about—and assisted in—777's false reporting, Josh Wander's recent indictment further confirms as much. According to the indictment, these bank statements were "digitally altered" using "Microsoft Paint" by "Analyst 1" at Wander's direction. *United States v. Joshua Wander*, 25-CR-473 (S.D.N.Y., filed Oct. 16, 2025) ¶ 17. "Analyst 1" appears to refer to Bennett, confirming that it is a foregone conclusion that communications exist wherein Wander directed Bennett to manipulate the bank statements. Indeed, those documents may already have been produced given Bennett's admission that he cooperated with the government in connection with a grand jury subpoena related to the very conduct at issue here.

*Third*, although 777 has failed to produce a single custodial document, third-party discovery has yielded proof that, in 2021, 777 used due diligence obtained in negotiations to purchase assets from a structured settlement provider called JG Wentworth to pledge those assets to Leadenhall before 777 had even purchased them. ECF 187 ¶¶ 151-55. Bennett knew this because, before 777 acquired the JG Wentworth portfolio, Wander directed Bennett to list JG Wentworth's assets as collateral for Leadenhall. *Id.* ¶ 153. Again, the existence of communications documenting Wander's directives to Bennett is a foregone conclusion.

In addition to the existence of the documents, there is no question as to Bennett's control over them or the authenticity thereof. By arguing that 777 forensically imaged his phone and

company computer "in connection with the instant lawsuit[] and Plaintiffs should have access to those communications," Bennett confirms that 777 already has the relevant documents, which plainly exist. ECF 392 at 8. It is no defense that Leadenhall could obtain these documents from 777 because "[t]he foregone conclusion exception does not include an exhaustion requirement." *Knopf v. Esposito*, 517 F. Supp. 3d 187, 191 (S.D.N.Y. 2021).

The upshot is that nothing about the act of production will violate Bennett's Fifth Amendment rights because it is a foregone conclusion that specific documents evincing Wander's various directives already exist, are within Bennett's possession (*i.e.*, his phone), and can be authenticated through the testimony of third-parties (as seen in the Florida action) and by "comparison to other related documents." *Fridman*, 974 F.3d at 175 (citation omitted). The subpoena requests are simply not the type of broad fishing expeditions that courts have found likely to require testimonial productions. Bennett's cited authority is not to the contrary—he relies upon cases in which the government took a shot in the dark with searching subpoena requests. For example, in *Hubbell*, the Supreme Court held that the act of production privilege applied where a grand jury subpoena requested broad swaths of information unrelated to the at-issue plea agreement, which the government ultimately used to charge the respondent with additional tax and fraud crimes. 530 U.S. at 41-42.[1] Leadenhall's subpoena does nothing of the sort. Its requests are designed to elicit only information relevant to the fraud and contract claims alleged in this civil suit.

Because the Fifth Amendment's act of production doctrine does not apply, and Bennett has otherwise failed to timely assert valid objections, Leadenhall respectfully requests that this Court enforce Leadenhall's subpoena and order Bennett to produce all responsive, non-privileged documents in his possession.

Respectfully submitted,

*/s/ Leigh M. Nathanson*
Leigh M. Nathanson

cc: All counsel of record (via ECF)

---

[1] Bennett's remaining cases are likewise readily distinguishable. *See, e.g.*, *In re Katz*, 623 F.2d 122, 123 (2d Cir. 1980) ("[T]he Government *obviously* does not know the identity of these corporations or [the party's] relationship to them." (emphasis added)). He also purports to cite to *Grand Jury Subpoena Dated Apr. 23, 1981*, 1 F.3d 87, 93 (2d Cir. 1993)—however, the case name and reporter cite do not match up. The reporter citation is to a case called *In re Grand Jury Subpoena Duces Tecum Dated Oct. 29, 1992*, in which the court held that the act-of-production doctrine did *not* apply. If Bennett meant to cite *Grand Jury Subpoena Dated Apr. 23, 1981* that case is also inapposite because that case does not involve the act-of-production doctrine's application. 657 F.2d 5 (2d Cir. 1981).