**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

LEADENHALL CAPITAL PARTNERS LLP,
LEADENHALL LIFE INSURANCE
LINKED INVESTMENTS FUND PLC,

Plaintiffs,

vs.

JOSH WANDER, STEVEN PASKO,
KENNETH KING, 777 PARTNERS LLC,
600 PARTNERS LLC, SPLCSS III LLC,
SIGNAL SML 4 LLC, INSURETY AGENCY
SERVICES LLC, DORCHESTER
RECEIVABLES II LLC, SUTTONPARK
CAPITAL LLC, SIGNAL MEDICAL
RECEIVABLES LLC, INSURETY CAPITAL
LLC, SUTTONPARK SERVICING LLC,
ADVANTAGE CAPITAL HOLDINGS LLC,

Defendants.

Civil Action No. 1:24-cv-03453-JGK-BSM

**RESPONSE IN OPPOSITION TO SUTTONPARK'S PARTIAL OBJECTION TO**
**MAGISTRATE JUDGE MOSES' ORDER DATED DECEMBER 3, 2025**

## <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ................................................................................................................. 1

FACTUAL BACKGROUND ............................................................................................... 2

    A.   Leadenhall Issues a Valid, Unchallenged Non-Party Subpoena to Fred Love. ........... 2

    B.   Leadenhall Offers 777 the Opportunity to Perform a Privilege Review. ................... 4

    C.   Judge Moses Finds No Basis for 777's Accusations Against Leadenhall's Counsel and Rejects 777's Request to Withhold Love's Non-Privileged Documents. ............. 5

    D.   777 Continues to Delay the Love Privilege Review to Prevent Leadenhall from Reviewing Non-Privileged Documents. ..................................................................... 6

LEGAL STANDARD ......................................................................................................... 7

ARGUMENT ...................................................................................................................... 8

    I.   Judge Moses Correctly Ruled That 777 Has No "Right to Respond in Love's Place" as to Which Documents Are Responsive. ..................................................................... 8

    II.   Judge Moses' Refusal to Deny Leadenhall Discovery Absent Evidence of Affirmative Misconduct Followed Applicable Law. .............................................................. 9

    III.   Judge Moses Correctly Concluded There Was No Misconduct By Leadenhall or Its Counsel... ..................................................................................................................... 12

    IV.   777 Has No Basis For Conducting a Responsiveness Review of a Third-Party Production... .................................................................................................................. 16

CONCLUSION ................................................................................................................... 17

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*BlackRock Allocation Target Shares: Series S Portfolio v. Wells Fargo Bank,
Nat'l Ass'n,*
2017 WL 3610511 (S.D.N.Y. Aug. 21, 2017) ..........................................................................7

*City of Almaty, Kazakhstan v. Ablyazov,*
2020 WL 1130670 (S.D.N.Y. Mar. 9, 2020) ....................................................................13, 16

*Estevez v. Comm'r of Soc. Sec.,*
2022 WL 4008235 (S.D.N.Y. Sept. 2, 2022) ..........................................................................7

*In re Grand Jury Subpoena Duces Tecum,*
731 F.2d 1032 (2d Cir. 1984)..................................................................................................14

*Herrera v. The Clipper Group, L.P.,*
1998 WL 229499 (S.D.N.Y. May 6, 1998) ........................................................................5, 11

*Jacobs v. Connecticut Cmty. Tech. Colleges,*
258 F.R.D. 192 (D. Conn. 2009)..............................................................................................16

*Lipin v. Bender,*
193 A.D.2d 424 (1st Dep't 1993) ............................................................................................11

*McDay v. Eckert,*
2023 WL 12118651 (W.D.N.Y. Aug. 9, 2023) ......................................................................16

*Nike, Inc. v. Wu,*
349 F. Supp. 3d 346 (S.D.N.Y. 2018)........................................................................................8

*Peterson v. Katonah Lewisboro Sch. Dist.,*
2014 WL 3891253 (S.D.N.Y. June 27, 2014) ........................................................................10

*Pure Power Boot Camp v. Warrior Fitness Boot Camp,*
587 F. Supp. 2d 548 (S.D.N.Y. 2008)..................................................................................5, 11

*Sound Around, Inc. v. Friedman,*
2025 WL 33505 (S.D.N.Y. Jan. 3, 2025) ................................................................................16

*Thai Lao Lignite (Thailand) Co., Ltd. v. Gov't of Lao People's Democratic
Republic,*
924 F. Supp. 2d 508 (S.D.N.Y. 2013)........................................................................................7

*Thomas E. Hoar, Inc v. Sara Lee Corp.,*
900 F. 2d 522 (2d Cir. 1990)......................................................................................................7

*United States v. Shyne*,
    2007 WL 1075035 (S.D.N.Y. Apr. 5, 2007)..........................................................................12

*Universitas Educ., LLC v. Nova Grp., Inc.*,
    2013 WL 57892 (S.D.N.Y. Jan. 4, 2013) ......................................................................13, 16

*Winfield v. City of N.Y.*,
    2017 WL 5054727 (S.D.N.Y. Nov. 2, 2017)..........................................................................7

**Statutes**

28 U.S.C. § 636(b)(1)(A)..........................................................................................................7

**Other Authorities**

Fed. R. Civ. P. 11(b)(3)............................................................................................................15

Fed. R. Civ. P. 37......................................................................................................................7

Fed. R. Civ. P. 45......................................................................................................................2

Fed. R. Civ. P. 72(a) ........................................................................................................*passim*

Fed. R. Civ. P. 72(b)..................................................................................................................7

New York Rules of Professional Conduct Rule 8.5 ............................................................14, 15

**<u>INTRODUCTION</u>**

The 777 Entity Defendants ("777") offer no legal or factual basis for this Court to reverse Magistrate Judge Moses' well-reasoned ruling that 777 may not prevent Leadenhall from reviewing non-privileged documents produced by a third party in response to a valid, unchallenged subpoena.  In June 2025, Leadenhall issued a subpoena to non-party Fred Love, the former President and General Counsel of 777 Entity Defendant SuttonPark Capital LLC ("SuttonPark"). Neither Love nor any of the 777 Entity Defendants objected to the subpoena.  Given that Love held a hybrid business-legal role at SuttonPark, Leadenhall gave 777's counsel the opportunity to review Love's responsive production for privilege before Leadenhall reviewed its contents.  777 has dragged its feet on that privilege review since September 2025 while it fights to withhold far more than privileged documents; 777 seeks to gatekeep Love's production to withhold approximately 80% of what he produced on the ground that *777* believes it to be "non-responsive" to the subpoena, even if the information is relevant to Leadenhall's claims.  Knowing a party has no legal right to audit a third party's production, 777 advances the same frivolous accusation that Judge Moses rejected: that Leadenhall should be denied access to evidence because its counsel "knowingly assisted and encouraged" Love to violate his ethical obligations.  Of course, that is not what happened.  As Judge Moses correctly held, "simply serving a subpoena on [an] ex-employee who happens to be a lawyer . . . [a]nd then, before looking at the subpoena return[,] . . . hand[ing] it over to [777] to review for privilege [is] not misconduct."  Dec. 3, 2025 Hr'g Tr. 34:16-21.  777 can point to no facts that Judge Moses overlooked in reaching this conclusion.

Despite acknowledging that the imposition of discovery sanctions is committed to a magistrate judge's discretion—meaning Judge Moses was well within her authority to deny 777's request—777 argues that Judge Moses' ruling was "contrary to law."  But when Judge Moses asked

777's counsel for authority supporting its farfetched position, 777 came up empty: "I haven't found a case that's exactly on point." Dec. 3, 2025 Hr'g Tr. 19:15-25, 26:15-27:3. The only purported legal error 777 asserts now is the (insulting) contention that Judge Moses decided against 777 because she mistakenly thought she was *bound* to do so by a line of district court cases (many cited by 777 itself) requiring evidence of affirmative misconduct. Of course, Judge Moses did not mistake district court precedent for controlling authority. Rather, she appropriately exercised her discretion to follow that precedent in the absence of *any* authority—controlling or otherwise—to the contrary. Because 777 offers no authority—*not a single case*—that conflicts with Judge Moses' ruling, it does not even attempt to meet Rule 72(a)'s standard for overturning her order.

Judge Moses did not misapply or fail to follow binding precedent. She committed no error. And she rightly rejected 777's inappropriate attempt to accuse Leadenhall or its counsel of ethical misconduct. The Court should overrule 777's objection and affirm Judge Moses' order.

## FACTUAL BACKGROUND

### A. Leadenhall Issues a Valid, Unchallenged Non-Party Subpoena to Fred Love.

Until his departure in May 2024, Fred Love held dual business and legal roles as President and General Counsel of SuttonPark, which sits at the center of the fraud alleged by Leadenhall in the Complaint (ECF 187). At the direction of the individual defendants in this case, SuttonPark pledged at least $185 million in assets to Leadenhall which neither it nor 777 actually owned, Compl. ¶¶ 151-58; routinely transmitted false monthly reports to Leadenhall, *id.* ¶¶ 100-01, 208-10; and "topped up" accounts to give the false appearance to Leadenhall that the accounts were tied to assets pledged exclusively to Leadenhall, *id.* ¶¶ 154-56.

On June 23, 2025, in accordance with Federal Rule of Civil Procedure 45, Leadenhall provided notice to opposing counsel that it would serve a subpoena on Love. ECF 375-2 at 16. No party or third party has ever objected to the subpoena or any of the document requests contained

therein.  Leadenhall emailed attorneys who previously represented Love in a separate action to determine whether they would be representing Love in connection with the subpoena; after those attorneys confirmed that they did not represent him, *see* Ex. A, Leadenhall sent the subpoena to Love's personal email account, *see* ECF 375-1.  In that email, which was the first time Leadenhall's counsel had ever communicated with Love, Leadenhall's counsel asked Love to confirm whether he was represented by counsel and whether he would accept service of the subpoena by email.  Love promptly confirmed that he would represent himself and accept service.  *Id.*  The subpoena contained eight requests for documents concerning assets pledged to Leadenhall, the falsification of bank records and other statements, and the relationship between 777 and its co-defendant in this action, Advantage Capital Holdings, LLC ("A-CAP").

After serving the subpoena, Leadenhall began customary discussions with Love to determine whether he possessed responsive documents.  Those discussions are reflected in a single email chain.  ECF 390-2.  As reflected in the chain, in June and July 2025, counsel discussed with Love on two occasions—once over the phone and, because Love was coincidentally traveling to New York, once in person—whether Love had documents responsive to the subpoena.  During those discussions, Love indicated that he possessed a "hard drive" of emails from his time at SuttonPark potentially responsive to the subpoena.  Leadenhall followed up over email to facilitate production of the hard drive Love had referenced.  *Id.* ("We'd like to move forward with collecting the hard drive of materials that you referenced during our conversation…..").  Leadenhall expressly told Love that it was not interested in receiving any privileged communications.  *Id.* ("We're of course not interested in privileged communications—and the Protective Order in the action contains a clawback provision for any inadvertently produced privileged materials.").  In August 2025, Love delivered the hard drive to King & Spalding's New York offices.  *Id.*

**B.  Leadenhall Offers 777 the Opportunity to Perform a Privilege Review.**

Recognizing that Love's hard drive might potentially contain privileged information given Love's dual business and legal roles, Leadenhall did not review the materials on the hard drive upon receipt.  Instead, on August 28, 2025, Leadenhall contacted counsel for 777 to advise that Love had produced the hard drive and propose two options for 777 to protect its privileged information: (1) 777's counsel could perform a privilege review (and prepare a privilege log) of the materials on the drive before Leadenhall reviewed the documents, or (2) a "taint team" of attorneys at King & Spalding (walled off from this matter) would review the documents and provide a privilege log to all parties at Leadenhall's expense.  ECF 390-1 at 12-13.

On September 15, 2025 (after repeated follow-up emails from Leadenhall to expedite review of the hard drive), 777 elected to perform the privilege review.  *Id.* at 2-3.  Leadenhall promptly provided 777 with a copy of the hard drive—and at 777's request, Leadenhall provided the original hard drive to 777 as well, while retaining a copy.  In early October 2025, 777's counsel stated that they had analyzed the materials on the drive and discerned that it contained approximately 10,000 documents.  ECF 395-2 at 6-7.  For the first time, however, 777 stated that it was planning to conduct not only a privilege review but a "responsiveness" review as well, *i.e.*, 777's counsel would use their own judgment to determine whether the materials produced by Love in response to the subpoena were in fact responsive to the subpoena.  *Id.* at 7 ("Accordingly, by way of compromise, the 777 Entity Defendants are willing to produce all responsive, non-privileged emails…").  When Leadenhall objected to the "responsiveness" review on the basis that 777 had no right to screen *non-privileged* documents produced by a third-party subpoena recipient for relevance or responsiveness, 777 upped the ante and began referring to the drive as "purloined property" that Leadenhall's counsel had "converted."  *Id.* at 4 ("The PST file provided

to Leadenhall by Fred Love and its contents constitute purloined property of SuttonPark Capital

LLC (SPC).... K&S has converted SPC's property.").

### C. Judge Moses Finds No Basis for 777's Accusations Against Leadenhall's Counsel and Rejects 777's Request to Withhold Love's Non-Privileged Documents.

In October 2025, 777 filed a letter motion requesting that Judge Moses permit it to perform

a responsiveness review of Love's subpoena response and withhold documents 777 deemed non-

responsive.  ECF 365, 390.  777 amplified its rhetoric in the filing, accusing Leadenhall's counsel

for the first time of "knowingly assist[ing] or induc[ing]" Love to violate the Florida Rules of

Professional Conduct by requesting and receiving the hard drive from Love.  ECF 390 at 3.  In the

letter motion, 777 relied on the same cases on which it relies in this Rule 72(a) objection—all of

which concern parties deliberately engaged in wrongful conduct to procure documents outside the

ordinary discovery process.  *See, e.g.*, *Herrera v. The Clipper Group, L.P.*, 1998 WL 229499 at *1–

*3 (S.D.N.Y. May 6, 1998) (plaintiff secretly copied thousands of pages from her employer's files,

lied about it, and disclosed them in public filings); *Pure Power Boot Camp v. Warrior Fitness Boot

Camp*, 587 F. Supp. 2d 548, 568-73 (S.D.N.Y. 2008) (employer hacked into former employee's

personal webmail accounts and used the fruits to litigate its claims).

On December 3, 2025, Judge Moses held a hearing at which she denied 777's request,

which she found unsupported by any legal authority.  Dec. 3, 2025 Hr'g Tr. at 19:17-24 (THE

COURT: "I don't actually see any instances where the courts have granted the relief that the 777

entities request here, which is, essentially, the right to respond in Mr. Love's place with respect to

whatever is on that hard drive and to review it now, not just for the attorney-client privilege items,

which is ongoing, as I understand it, but also for relevance....").  Judge Moses observed that 777

had identified no misconduct by Leadenhall's counsel in "simply serving a subpoena on the ex-

employee who happens to be a lawyer" and then affirmatively providing 777 the chance to review

those documents for privilege. *Id.* at 34:16-21; *see also id.* at 34:21-22 (THE COURT: "That's not misconduct[.]"). In reaching this conclusion, Judge Moses considered and rejected the notion that 777's (unsubstantiated) accusation that Love improperly retained his SuttonPark emails can somehow be imputed to Leadenhall—as 777's counsel acknowledged. *See id.* at 33:20–34:2 (THE COURT: "[T]here are a ton of cases in which a third party . . . turned over to an opposing party things he shouldn't have taken. And in virtually all of those cases, the answer is, okay, sue him, not the lawyers who subpoenaed him, right?" MR. MCCARTHY: "Correct.").

### D. 777 Continues to Delay the Love Privilege Review to Prevent Leadenhall from Reviewing Non-Privileged Documents.

To date, of the 10,000 documents contained on Love's hard drive, 777 has produced approximately 1,900 documents that it deems both non-privileged and responsive, withholding more than 80% of the documents Love produced. 777 has represented that only approximately 40 documents are privileged, though it has failed to produce a privilege log. Ex. B. 777 has further represented that it has manually reviewed only approximately 5,800 of the 10,000 documents on the drive and used "technology-assisted predictive coding" on the rest. *Id.* 777 has declined to provide any information at all as to how it (or its predictive coding) determines whether a document is responsive, including by refusing to provide a random sample of the more than 80% of documents they have screened as "non-responsive."

777's conduct follows a pattern and practice of fighting the disclosure of evidence at every turn. Discovery in this matter commenced in November 2024, and to date, 777 has produced only approximately 18,000 documents (and has clawed back certain of those documents). In the last six months alone, 777 has refused and been compelled to apply reasonable search terms to its custodial documents (Nov. 4, 2025 Hr'g Tr. at 54:14-20); refused and been compelled to answer requests for admission served by Leadenhall seeking discovery about which assets were double-

pledged or fictitiously pledged to Leadenhall (*id.* at 16:23-17:10); and unsuccessfully moved to quash subpoenas to banks seeking records of 777 financial transactions (Dec. 3, 2025 Hr'g Tr. at 17:23-18:1). This Rule 72(a) objection is the latest attempt by 777 to try to deny Leadenhall access to evidence to prove its case.

## LEGAL STANDARD

A magistrate judge's pretrial order regarding a non-dispositive matter must be affirmed absent a showing "that the magistrate judge's order is clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a), (b); *see also, e.g.*, *Thomas E. Hoar, Inc v. Sara Lee Corp.*, 900 F. 2d 522, 527-28 (2d Cir. 1990) (rejecting argument that magistrate's award of Rule 37 monetary sanctions should have been given *de novo* review). Under this standard, "magistrate judges are afforded broad discretion," and "reversal is appropriate only if their discretion is abused." *Winfield v. City of N.Y.*, 2017 WL 5054727, at *2 (S.D.N.Y. Nov. 2, 2017) (quotation marks and alterations omitted). "Rule 72 is not a vehicle for the relitigation of arguments rejected by [a magistrate judge] in her non-dispositive discovery order." *BlackRock Allocation Target Shares: Series S Portfolio v. Wells Fargo Bank, Nat'l Ass'n*, 2017 WL 3610511, at *13 (S.D.N.Y. Aug. 21, 2017).

To meet this "highly deferential standard," the party objecting to the magistrate's order bears a "heavy burden." *Thai Lao Lignite (Thailand) Co., Ltd. v. Gov't of Lao People's Democratic Republic*, 924 F. Supp. 2d 508, 511–12 (S.D.N.Y. 2013) (citations omitted). For an order to be deemed clearly erroneous, it must leave the court "with the definite and firm conviction that a mistake has been committed." *Estevez v. Comm'r of Soc. Sec.*, 2022 WL 4008235, at *2 (S.D.N.Y. Sept. 2, 2022). To be contrary to law, the order must "fail[] to apply or misappl[y] relevant statutes,

case law or rules of procedure." *Nike, Inc. v. Wu*, 349 F. Supp. 3d 346, 353 (S.D.N.Y. 2018). 777

fails to make either showing here.

## ARGUMENT

## I.   JUDGE MOSES CORRECTLY RULED THAT 777 HAS NO "RIGHT TO RESPOND IN LOVE'S PLACE" AS TO WHICH DOCUMENTS ARE RESPONSIVE.

Judge Moses followed the process set forth in this Court's Local Rules to make well-

reasoned findings based on a well-developed record. Not only did she consider full letter briefing,

consisting of four letter-briefs, concerning Leadenhall's subpoena to Love (ECF 365, 375, 390,

and 395), but she also held a hearing to test both sides' positions. At that hearing, Judge Moses

correctly observed that 777 failed to identify a single case "where the courts have granted the relief

that the 777 entities request here, which is, essentially, the right to respond in Mr. Love's place

with respect to whatever is on that hard drive." Dec. 3, 2025 Hr'g Tr. at 19:15-25. Nor did 777

present any authority supporting its view that Leadenhall's "counsel had an obligation not … to

accept the hard drive." *See id.* at 26:15-27:3 (THE COURT: "[D]o you have a case that says

anything like that?" MR. MCCARTHY: "I haven't found a case that's exactly on point.").

After considering the parties' authorities and arguments, Judge Moses denied the relief

requested by 777, correctly concluding that 777 had provided no reason to depart from the

"ordinary rubric" governing third-party discovery—*i.e.*, 777 may withhold documents for

privilege, but "nobody gets to complain" about "over-breadth, the possibility of receiving more

than you asked for because the third party didn't want . . . to sort through" voluminous documents.

*Id.* at 20:15-25. Judge Moses also correctly declined to impose a novel obligation on Leadenhall

to ensure that a subpoenaed witness does *not* produce any non-responsive documents, as opposed

to giving 777 "the right to review for privilege," which Leadenhall and its "counsel have done." *Id.* at 37:2-13.

Despite the lack of authority for 777 to conduct any responsiveness review, 777 has done so anyway, culling the vast majority of the documents (more than 80%) out of Love's production in contravention of Judge Moses' order.  777 is fighting tooth and nail—to the point of doubling down on frivolous allegations of ethical misconduct against Leadenhall's counsel and appealing Judge Moses' order to this Court—to keep 80% of Love's documents out of the case.  These efforts (and 777's refusal to produce a random sample of what it considers "non-responsive") utterly belie the notion that these documents are irrelevant to Leadenhall's claims; they are also the latest instance of 777 obstructing discovery at every turn, forcing Leadenhall to obtain what evidence it can from third parties.  Judge Moses properly ruled that the law does not permit 777 to step into the shoes of those third parties to screen evidence out of the case.

## II.    JUDGE MOSES' REFUSAL TO DENY LEADENHALL DISCOVERY ABSENT EVIDENCE OF AFFIRMATIVE MISCONDUCT FOLLOWED APPLICABLE LAW.

777's only attempt to identify a legal error in Judge Moses' ruling is the contention that Judge Moses' order was "contrary to law" "[t]o the extent [she] believed that a few district court cases … constitute binding caselaw requiring proof of affirmative misconduct by the party seeking the wrongfully-obtained materials in discovery."  Obj. at 10.  This argument fails for several reasons.

*First*, nothing in Judge Moses' Order suggests that she construed those district court decisions as "binding" authority—indeed, no federal district court decision is binding on this Court.  The portion of the hearing transcript on which 777 relies reflects only Judge Moses' observation that "the case law dealing with document productions by third parties … does not go

your way in the absence … of misconduct by the party seeking the discovery." *See id.* (citing Dec. 3, 2025 Hr'g Tr. at 25:10-14.).

*Second*, 777 does not and cannot argue that Judge Moses should have reached a different result regardless of whether she was bound, or simply persuaded, by these cases because 777 cites no binding authority requiring a contrary result. To show that a ruling was "contrary to law" under Rule 72(a), 777 bears the "heavy burden" of demonstrating that Judge Moses' legal conclusions "run counter to controlling authority." *Peterson v. Katonah Lewisboro Sch. Dist.*, 2014 WL 3891253, at *1 (S.D.N.Y. June 27, 2014) (citation omitted). But 777 has identified no "controlling authority" preventing a party from reviewing non-privileged materials produced in response to a valid subpoena based on (1) another party's subjective view of responsiveness or (2) another party's contention that the third party should not have had the documents he produced, absent some affirmative misconduct by the party serving the subpoena. In other words, 777 has not cited *any* binding authority that conflicts with Judge Moses' ruling—either before Judge Moses or before this Court now.

Tellingly, 777 has also been unable to come up with any *persuasive* authority supporting its position. When Judge Moses asked counsel for 777 to "tell me what cases get you the result you're looking for here," 777's counsel conceded they had found none. Dec. 3, 2025 Hr'g Tr. at 21:1-7 (counsel for 777 stating that this case is "different from all the cases—***and we looked; we couldn't find any***—[because] Mr. Love was our attorney" (emphasis added)). 777's Rule 72(a) objection likewise fails to identify any supporting authority. Instead, 777 cites a handful of cases that stand for the unremarkable proposition that "courts have inherent authority to consider and assess the conduct of parties in the context of discovery" and to "determine the nature of scope [*sic*] of any remedy using [their] inherent authority an[d] discretion"—which Judge Moses did.

Obj. at 9-10. Leadenhall does not dispute that courts have discretion to impose sanctions for discovery violations, but 777 cites no authority contradicting Judge Moses' ruling that no such violation occurred here.

   *Third*, Judge Moses correctly articulated and applied the law: courts have been willing to forbid the use of information produced in discovery *only* where a party personally and deliberately engaged in affirmative misconduct to procure that information. The few cases cited by 777 in which courts imposed sanctions involve precisely the sort of misconduct that Judge Moses found was *not* present here. *See* Obj. at 9 (citing *Herrera*, 1998 WL 229499, at *1-*3, in which the plaintiff secretly copied thousands of pages from her employer's files, lied about it, and disclosed them in public filings, and *Pure Power*, 587 F. Supp. 2d at 568-73, where an employer hacked into its former employee's personal webmail accounts and used the fruits to litigate its claims);[1] *see also Lipin v. Bender*, 193 A.D.2d 424, 425-28 (1st Dep't 1993) (plaintiff surreptitiously removed and copied defense counsel's work product and refused to return the documents). Judge Moses committed no legal error in concluding that courts have generally "quashed subpoenas or precluded the use of the fruits of subpoenas" only where there was evidence of "affirmative misconduct," including "[d]ishonesty" such as "secret subpoenas that weren't even served on the party whose privilege and other rights were implicated." Dec. 3, 2025 Hr'g Tr. at 20:2-14.

   In short, Judge Moses was right to follow persuasive authority from this district holding that the relief 777 requested—preventing Leadenhall from reviewing documents produced in response to a valid, unchallenged subpoena—is unavailable except in extraordinary circumstances

---

[1] These are the same cases 777 filed in its original letter-brief and that Judge Moses considered before issuing the Order. *See* ECF 365 at 3.

of party misconduct.  And Judge Moses correctly declined to impose a novel obligation on Leadenhall to refuse to accept a third-party production that could be considered overbroad—because there is *no* authority supporting such an obligation.

### III.    JUDGE MOSES CORRECTLY CONCLUDED THERE WAS NO MISCONDUCT BY LEADENHALL OR ITS COUNSEL.

777's alternative argument is that, even if affirmative misconduct was "legally required," Judge Moses committed clear error by ignoring the "multiple layers of misconduct in connection with the subpoena to Love."  Obj. at 10–12.  Judge Moses did not err.  After confirming expressly with 777's counsel that she understood the duty 777 is claiming Leadenhall breached, she rightly disagreed.

As an initial matter, this is not the first time 777 has accused Leadenhall and its counsel of ethical misconduct in bad faith on the same baseless theory—that Leadenhall was somehow in cahoots with 777's former employees to steal evidence of 777's fraud.  Indeed, this was the basis of the retaliatory litigation 777 brought against Leadenhall in Florida and then dismissed with prejudice and thereby barred by the doctrine of *res judicata*.  Accusing a litigation adversary's lawyer of "misconduct is a serious charge that should not be undertaken lightly."  *United States v. Shyne*, 2007 WL 1075035, at *17 (S.D.N.Y. Apr. 5, 2007) (quoting Ass'n of the Bar of the City of N.Y. Comm. on Prof'l & Judicial Ethics Formal Op. 1990-3, at 1).  And it is "patently improper for a lawyer to make a report of misconduct" without "a reasonable basis for doing so or solely to gain a tactical advantage in a matter."  *Id.*  By impugning the integrity of Leadenhall's counsel, 777 has exceeded the bounds of fair play and zealous advocacy.  As it did before Judge Moses, Leadenhall again reserves its right to seek appropriate sanctions against 777 and its counsel.

Leadenhall issued a subpoena to and then communicated with a third party to facilitate the production of responsive documents.  No party challenged the subpoena or informed Leadenhall

that Love possessed purportedly stolen files. Leadenhall acted in good faith by affirmatively refraining from reviewing the production and providing 777 the opportunity to preserve its privilege. Leadenhall even offered to perform a privilege review at its own cost, using a team of independent lawyers walled from this litigation. ECF 390-1 at 12-13. The only ethical obligation that 777 claims *Leadenhall's counsel* had involves privilege—which is not at issue in this motion. As Judge Moses correctly noted, Leadenhall "probably" had an "obligation … not to accept privileged materials from Mr. Love without giving the privilege holder, namely the 777 entities, the right to review for privilege." Dec. 3, 2025 Hr'g Tr. at 37:7-13. Leadenhall discharged that obligation by refraining from reviewing the documents until 777 could conduct a privilege review. And as numerous cases confirm, 777 has standing to object to a subpoena only on the basis of privilege or privacy interests. *See City of Almaty, Kazakhstan v. Ablyazov*, 2020 WL 1130670, at *1 (S.D.N.Y. Mar. 9, 2020); *Universitas Educ., LLC v. Nova Grp., Inc.*, 2013 WL 57892, at *5 (S.D.N.Y. Jan. 4, 2013). 777 implicitly concedes this point, noting that the Federal Rules require the "return/sequestration of materials ***after a privilege claim***," Obj. at 9 (emphasis added), but not after a claim that a production was merely overbroad.

Because it has no rebuttal to Judge Moses' conclusion that Leadenhall satisfied *its* ethical duty with regard to the Love production, 777 devotes much of its argument to *Love's* ethical obligations and seeks to impute Love's conduct to Leadenhall. Obj. at 10-11. But as Judge Moses correctly found (and 777 conceded), any ethical failing on Love's part gives rise (at most) to a dispute between Love and 777—it does not provide a basis to bar Leadenhall from reviewing and using non-privileged documents. *See* Dec. 3, 2025 Hr'g Tr. at 33:20-34:2 (THE COURT: "[T]here are a ton of cases in which a third party … turned over to an opposing party things he shouldn't have taken. And in virtually all of those cases, the answer is, okay, sue him, not the lawyers who

subpoenaed him, right?" MR. MCCARTHY: "Correct."). 777's reliance on the fact that Love in 2024 disclosed 777's forgery of bank records to a businessperson at Leadenhall is also misplaced. Setting aside that this relates to Love's ethical obligations, not Leadenhall's, Love's disclosure of *forgery* could not have violated his ethical obligations because communications involving crime or fraud are not afforded legal privilege. *See In re Grand Jury Subpoena Duces Tecum*, 731 F.2d 1032, 1038 (2d Cir. 1984).[2]

As to Leadenhall, 777 argues that Leadenhall's counsel "knowingly assisted or induced another" lawyer to commit a violation of Rule 8.5 of the New York Rules of Professional Conduct. The facts flatly contradict this derogatory claim. As 777 concedes, Leadenhall advised Love that it had no interest in privileged communications, Obj. at 7, and then provided 777 with the opportunity to conduct a privilege review before reviewing anything. These facts do not support the specious claim that Leadenhall "induced" Love to violate SuttonPark's privilege. To this day, Leadenhall has not reviewed any of Love's documents *other than* those that 777 has affirmatively produced because 777 will not identify which 40 documents on the drive it contends are privileged.

---

[2] 777 declined to even address the applicability of the crime-fraud exception before Judge Moses, nor do they dispute that Love's communications specifically implicate fraud. Indeed, Love has been sued in his personal capacity by at least one other 777 creditor in connection with misrepresentations concerning the existence of collateral similar to what Leadenhall alleges here. The allegations in that suit, currently pending in Florida state court, have been sustained through the motion to dismiss phase. Order Denying Motion to Dismiss Amended Complaint, *ING Capital LLC v. 777 Partners LLC et al.*, 2025-001552-CA-01 (Fla. Miami-Dade Cnty. Ct. Dec. 31, 2025), Dkt. 97.

777 also points to benign interactions between Leadenhall's counsel and Love in an ill-fated effort to draw an inference that Leadenhall encouraged Love to violate his ethical responsibilities. For example, 777 emphasizes that Leadenhall's counsel and Love exchanged emails referring to one another on a first-name-basis, Obj. at 6 ("Hi Fred," "speak with Brian"), apparently because they believe such emails show an inappropriate level of "familiarity," *id.* It is absurd to argue that this standard email etiquette could possibly indicate misconduct. 777 also suggests that Love's disclosure of information regarding 777's forgery in 2024 should have alerted Leadenhall that Love was willing to "disclose[] confidential information without authorization," and so Leadenhall "should have exercised the utmost care and caution" when seeking information from Love. Obj. at 12. But as discussed above, Love's 2024 disclosure (1) was unprompted; (2) did not involve any lawyer or outside counsel for Leadenhall; and (3) fits within the crime-fraud exception to the attorney-client privilege. And Leadenhall *did* exercise care and caution. Even under 777's recounting, Love told Leadenhall that he "left SuttonPark over a year ago and d[id] not have access to any files or emails," Obj. at 6, and Leadenhall told Love that it was "not interested in privileged communications," *id*. at 7. These facts do not support an inference that Leadenhall induced Love to steal privileged documents.

Finally, 777 erroneously states that in addition to the drive, Love produced to Leadenhall his SuttonPark laptop. *Id.* at 7. Leadenhall has already explained (in its sur-reply on this issue) that it never received a laptop from Love. ECF 395-1 at 3. Nor did Leadenhall request or discuss receipt of this laptop. Nor did 777's counsel ever inquire whether Love delivered a laptop to Leadenhall's counsel before representing to Judge Moses in its reply brief that he had. *Id.* Leadenhall's counsel has represented in court filings that the only production Leadenhall received from Love was the hard drive at issue, which Leadenhall promptly brought to 777's counsel's

attention. *Id.* 777's decision to double down on this spurious accusation in its briefing—while carefully stating not that Leadenhall in fact received the laptop, but only that Leadenhall was "happy to receive" the laptop—is in dereliction of SPC's counsel's duty to conduct a reasonable inquiry to determine that its factual contentions have evidentiary support. *See* Fed. R. Civ. P. 11(b)(3). 777's tactics only underscore the lengths it will go to avoid discovery into Leadenhall's claims, trying to silence its victims and former employees alike.

## IV. 777 HAS NO BASIS FOR CONDUCTING A RESPONSIVENESS REVIEW OF A THIRD-PARTY PRODUCTION.

For the reasons set forth above, 777 cannot show that Judge Moses' decision was contrary to law or clearly erroneous. That is reason enough to overrule the objection. But there are other, independent reasons to reject 777's argument that Leadenhall should be foreclosed from reviewing the non-privileged subpoenaed documents. First, 777 waived any objection to the production by failing to timely object to or move to quash the subpoena. *McDay v. Eckert*, 2023 WL 12118651, at *4 (W.D.N.Y. Aug. 9, 2023). Second, absent a showing of a "privilege, privacy, or proprietary interest in the documents sought," *Ablyazov*, 2020 WL 1130670, at *1 (citation omitted), "a party does not have standing to [challenge] a subpoena served on a third party. Rather, only the person … to whom the subpoena is directed has standing." *Jacobs v. Connecticut Cmty. Tech. Colleges,* 258 F.R.D. 192, 194-95 (D. Conn. 2009). A party may not challenge subpoenas issued to non-parties "on the grounds of relevancy or undue burden." *Universitas Educ., LLC v. Nova Grp., Inc.*, 2013 WL 57892, at *5 (S.D.N.Y. Jan. 4, 2013).

In light of the foregoing authorities, 777 lacks any basis to challenge the responsiveness of the subpoenaed materials (and conduct its own responsiveness review of them). And the only interests 777 may permissibly assert—privilege or "privacy"—can be or have already been addressed. Any privilege concerns have been cured because Leadenhall allowed 777 to conduct a

privilege review.  And to the extent 777 is asserting privacy or proprietary interests in the documents—which is not something it has asserted—it can protect those interests by making confidentiality designations under the protective order.  *See Sound Around, Inc. v. Friedman*, 2025 WL 33505, at *6 (S.D.N.Y. Jan. 3, 2025) (noting that any sensitive information produced pursuant to the subpoenas "may be produced subject to the terms of the Protective Order" to avoid concerns about the disclosure of such information).  777 has possessed Love's hard drive for months.  But it has failed to identify a single document that is (1) not privileged, (2) not responsive, but (3) so commercially sensitive that it cannot be produced under the auspices of the confidentiality protections in the protective order.

## **CONCLUSION**

For the foregoing reasons, the Court should overrule SuttonPark's Rule 72(a) objection and affirm Judge Moses' Order.


Dated: January 8, 2026
      New York, New York

                       KING AND SPALDING LLP

                       */s/ Leigh M. Nathanson*
                       Leigh M. Nathanson
                       Craig Carpenito
                       Brian Donovan
                       1290 Avenue of the Americas
                       New York, NY 10104
                       (212) 556-2100
                       lnathanson@kslaw.com
                       ccarpenito@kslaw.com
                       bdonovan@kslaw.com

                       Peter Starr
                       1180 Peachtree Street NE, Suite 1600
                       Atlanta, GA 30309
                       404-572-2767

pstarr@kslaw.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF COMPLIANCE

I hereby state that the foregoing Memorandum of Law was prepared on a computer using Microsoft Word. Pursuant to the word count system in Microsoft Word, the total number of words in the Memorandum of Law, excluding the caption, table of contents, table of authorities, signature block, and this certification is 5,488. The foregoing Memorandum of Law complies with the formatting rules set forth in the § III.D of the Court's Individual Practices.

Dated: January 8, 2026
      New York, New York

                        KING AND SPALDING LLP

                        */s/ Leigh M. Nathanson*
                        Leigh M. Nathanson
                        *Attorney for Plaintiffs*