# EXHIBIT L

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

SIGNAL SML 4 LLC, SPLCSS III LLC,  
DORCHESTER RECEIVABLES II LLC,  
777 PARTNERS LLC, and 600 PARTNERS LLC,   :     Index No. 652929/2025

      :

                 Plaintiffs,

      :    Mot. Seq. # 001

        - against -

      :

LEADENHALL LIFE INSURANCE LINKED  
INVESTMENTS FUND PLC,      :

                 Defendant.    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

Smith, Gambrell & Russell, LLP  
1301 Avenue of the Americas, 15th Floor  
New York, New York 10019  
Tel: (212) 907-9700  
Fax: (212) 907-9800  
*Attorneys for Plaintiffs*

SGR/80332494.3

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ ii

PRELIMINARY STATEMENT ..................................................................................... 1

STATEMENT OF FACTS .............................................................................................. 2

ARGUMENT ................................................................................................................... 3

POINT I      PLAINTIFFS ARE ENTITLED TO A PRELIMINARY INJUNCTION PROHIBITING DEFENDANT FROM CONDUCTING THE SCHEDULED FORECLOSURE SALES AND DIRECTING DEFENDANT TO COMPLY WITH ITS OBLIGATIONS UNDER ARTICLE 9 OF THE U.C.C ..................................................................... 3

     A.      Plaintiffs Are Likely To Succeed On The Merits That Defendant's Proposed UCC Sales Are Not Commercially Reasonable .......................... 3

         1.      The sales are short-noticed, non-public, and structured to suppress bidding and minimize recovery ......................................... 6

         2.      The notices omit material information about the sale process and deny Borrowers the statutory opportunity to redeem ................... 8

     B.      Plaintiffs Will Suffer Irreparable Harm Absent An Injunction ................. 10

     C.      The Balancing of Equities Tips In Favor Of Plaintiffs ............................. 11

POINT II      PLAINTIFFS ARE ENTITLED TO A TEMPORARY RESTRAINING ORDER ........................................................................ 12

CONCLUSION ............................................................................................................. 12

Case 1:24-cv-03453-JGK-BCM    Document 485-12    Filed 03/06/26    Page 4 of 20

## TABLE OF AUTHORITIES

**Cases**

*5 W. 120th Realty Corp. v. Cont. Capital Group, LLC.*
2005 WL 2741954 (Sup. Ct. Oct. 24, 2005) ................................................................ 4

*Aetna Ins. Co. v. Capasso*
75 N.Y.2d 860 (1990) ................................................................................................... 3

*Akos Realty Corp. v. Vandemark*
157 A.D.2d 632 (1st Dep't 1990) ................................................................................ 4

*Anchev v. 335 West 38th Street Co-op. Corp.*
29 Misc. 3d 1223(A) (Sup. Ct. N.Y. Cty. 2010) ...................................................... 6, 7

*Atlas MF Mezzanine Borrower, LLC v. Macquarie Tex. Loan Holder LLC*
174 A.D.3d 150 (1st Dep't 2019) .............................................................................. 10

*Bingham v. Struve*
184 A.D.2d 85 (1st Dep't 1992) .................................................................................. 4

*Cent. Budget Corp. v. Garrett*
48 A.D.2d 825 (2d Dep't 1975) ............................................................................. 4, 11

*D2 Mark LLC v. OREI VI Invs., LLC*
2020 WL 343295 (Sup. Ct. N.Y. Cty. June 23, 2020) ...................................... 5, 6, 8, 10

*Dougherty v. 425 Dev. Assocs.*
93 A.D.2d 438 (1st Dep't 1983) .................................................................................. 5

*Dupree v. Scottsdale Ins. Co.*
96 A.D.3d 546 (1st Dep't 2012) .................................................................................. 3

*First Bank & Tr. Co. of Ithaca v. Mitchell*
123 Misc. 2d 386 (Sup. Ct. Tompkins Cty. 1984) ....................................................... 7

*Four Times Square Assocs. v. Cigna Invs.*
306 A.D.2d 4 (1st Dep't 2003) .................................................................................... 4

*Gen. Electric Credit Corp. v. Durante Bros. & Sons, Inc.*
79 A.D.2d 509 (1st Dep't 1980) ............................................................................... 5, 7

*Gramercy Co. v. Benenson*
223 A.D.2d 497 (1st Dep't 1996) ........................................................................... 4, 10

*LBO Cap. Corp. v. Home & City Sav. Bank*
1992 WL 209310 (N.D.N.Y. Aug. 18, 1992) .............................................................. 5

ii

*Long Is. Tr. Co. v Williams*
   133 Misc. 2d 746, 507 N.Y.S.2d 993 (Civ. Ct. 1986) ..................................................8

*Long Is. Tr. Co. v Williams*
   142 Misc 2d 4 (App Term 1988) ..................................................9

*Ma v. Lien*
   198 A.D.2d 186 (1st Dep't 1993) .................................................. 11

*Masjid Usman, Inc. v. Beech 140, LLC*
   68 A.D.3d 942 (2d Dep't 2009) .................................................. 4

*Matter of Excello Press, Inc.*
   890 F.2d 896 (7th Cir. 1989) (applying New York law) .................................................. 5

*Merchants Bank of New York v. Gold Lane Corp.*
   28 A.D.3d 266 (1st Dep't 2006) .................................................. 11

*Parkmed Co. v. Pro-Life Counselling, Inc.*
   91 A.D.2d 551 (1st Dep't 1982) .................................................. 4

*Silva v. Silva*
   27 Misc. 3d 526, (Sup. Ct. Nassau Co. 2010) .................................................. 12

*Sirius Satellite Radio, Inc. v. Chinatown Apts., Inc.*
   303 A.D.2d 261 (1st Dep't 2003) .................................................. 10

*Vornado PS, L.L.C. v. Primestone Inv. Partners, L.P.*
   821 A.2d 296 (Del. Ch. 2002) .................................................. 8

*WC Braker Portfolio LLC v. ATX Braker, LLC*
   Index No. 651792/2022, at 3 (Sup. Ct. N.Y. Co. Apr. 19, 2022) (Masley, J.) .................................................. 9

**Statutes**

Article 9 of the UCC .................................................. *passim*

U.C.C. § 9-610 .................................................. 6, 8, 10

U.C.C. § 9-610(b) .................................................. 4, 5

U.C.C. § 9-611 .................................................. 6

U.C.C. § 9-611(b) .................................................. 9

U.C.C. § 9-611(c)(2) .................................................. 9

U.C.C. § 9-613 .................................................. 6

iii

Case 1:24-cv-03453-JGK-BCM    Document 485-12    Filed 03/06/26    Page 6 of 20

U.C.C. § 9-623 ................................................................................................ 8, 9

U.C.C. § 9-625 ................................................................................................... 3

U.C.C. § 9-625(a) ......................................................................................... 1, 3, 10

U.C.C. § 9-627(b) ............................................................................................ 4, 5

**Rules**

CPLR 6301 ..................................................................................................... 1, 3

CPLR 6311 ...................................................................................................... 1

Case 1:24-cv-03453-JGK-BCM Document 485-12 Filed 03/06/26 Page 7 of 20

Plaintiffs Signal SML 4 LLC ("Signal"), SPLCSS III LLC ("SPLCSS"), Dorchester Receivables II LLC ("Dorchester" and together with Signal, and SPLCSS, "Borrowers"), 777 Partners LLC, and 600 Partners LLC (collectively, "Plaintiffs") respectfully submit this memorandum of law in support of their motion for an Order, pursuant to N.Y. U.C.C. § 9-625(a) and/or CPLR 6301 and 6311, preliminarily enjoining and restraining Defendant Leadenhall Life Insurance Linked Investments Fund PLC ("Leadenhall" or "Defendant") and all persons acting on its behalf from conducting the U.C.C. foreclosure sales presently scheduled for May 15, 2025 (the "UCC Sales"), or on any other date, and from selling, assigning, or otherwise disposing of the collateral by any means, including private sale.

## PRELIMINARY STATEMENT

This case seeks to prevent Leadenhall from executing a foreclosure sale that violates the most fundamental safeguards of Article 9 of the Uniform Commercial Code. The Borrowers' collateral includes hundreds of receivables tied to structured settlements, annuities, lottery payments, and medical liens, valued in the hundreds of millions of dollars, is scheduled to be sold at a hastily arranged, nonpublic, and commercially unreasonable auction on May 15, 2025.

Leadenhall's UCC Sales fail every material requirement of commercial reasonableness: they provide only 14 days' notice, omit any usable description of the collateral, are not advertised, are scheduled to occur in a private law firm office in a building with no floor listed, and are structured to allow Defendant alone to determine who may bid, impose undisclosed sale terms, and cancel or postpone the sale at will. These practices exclude not only the public but also each Borrower itself, denying statutory rights to redeem, participate, or ensure that their assets are sold at fair value. And unlike fungible goods, the collateral consists of highly specialized, illiquid receivables requiring bespoke valuation and tailored marketing efforts.

SGR/80332494.3

Case 1:24-cv-03453-JGK-BCM    Document 485-12    Filed 03/06/26    Page 8 of 20

The risk of self-dealing and price suppression under these opaque sale conditions is not hypothetical, it is deliberate and built into the process. Absent immediate judicial intervention, Plaintiffs will suffer irreparable harm. Once the collateral is transferred at a distressed price, there will be no practical way to unwind the transaction or recover its value. In contrast, a limited injunction merely preserves the status quo and imposes no prejudice on Defendant, which remains secured and retains the right to proceed with a lawful, commercially reasonable sale at a later time. The collateral continues to produce income to Leadenhall, and Leadenhall's lien remains intact by virtue of the federal injunction against Borrowers.

The law does not permit secured creditors to weaponize Article 9 procedures to strip debtors and guarantors of valuable collateral through shadow auctions conducted in private. Plaintiffs respectfully request a temporary restraining order and preliminary injunction prohibiting Leadenhall from proceeding with the sale as noticed, and directing that any future sale comply with the requirements of law.

## STATEMENT OF FACTS

The Court is respectfully referred to the Verified Complaint, filed May 14, 2025 (the "Complaint"), as well as the accompanying affirmation of David A. Pellegrino ("Pellegrino Aff.") for a complete recitation of the salient facts and/or background, all of which are specifically incorporated by reference herein.

2

SGR/80332494.3

## ARGUMENT

### POINT I

### PLAINTIFFS ARE ENTITLED TO A PRELIMINARY INJUNCTION PROHIBITING DEFENDANT FROM CONDUCTING THE SCHEDULED FORECLOSURE SALES AND DIRECTING DEFENDANT TO COMPLY WITH ITS OBLIGATIONS UNDER ARTICLE 9 OF THE U.C.C.

Plaintiffs are entitled to a temporary restraining order and preliminary injunction to protect them from the harm that will result if Defendant continues with its planned commercially unreasonable foreclosure. A preliminary injunction may be granted when a movant has shown: (1) a likelihood of ultimate success on the merits; (2) the prospect of irreparable injury if the provisional relief is withheld; and (3) a balance of the equities tipping in the moving party's favor. *See Aetna Ins. Co. v. Capasso,* 75 N.Y.2d 860, 862 (1990). Similarly, a temporary restraining order should be granted "where it appears that immediate and irreparable injury, loss or damage will result unless the defendant is restrained before the hearing can be had." CPLR 6301; *see Dupree v. Scottsdale Ins. Co.*, 96 A.D.3d 546 (1st Dep't 2012) (holding that temporary restraining order was proper where plaintiff would suffer "a direct, immediate and irreparable injury" that "would deprive" plaintiff "of the benefit bargained for"). Moreover, New York U.C.C. § 9-625 explicitly authorizes injunctive relief to prevent a secured lender from foreclosing on property in a commercially unreasonable manner. N.Y. U.C.C. § 9-625(a) (allowing the court to "order or restrain collection, enforcement, or disposition of collateral"). Because Defendant's proposed foreclosure sales are commercially unreasonable and Plaintiffs satisfy all of the requirements for injunctive relief, this court should enter a temporary restraining order and preliminary injunction barring the sale as noticed.

3

SGR/80332494.3

**A.      Plaintiffs Are Likely To Succeed On The Merits That Defendant's Proposed UCC Sales Are Not Commercially Reasonable**

A movant establishes a likelihood of success on the merits, by making a prima facie showing of a right to relief on the merits. *Akos Realty Corp. v. Vandemark,* 157 A.D.2d 632, 634 (1st Dep't 1990). The movant is not required to demonstrate "a certainty of success." *Bingham v. Struve,* 184 A.D.2d 85, 88-89 (1st Dep't 1992); *Parkmed Co. v. Pro-Life Counselling, Inc.,* 91 A.D.2d 551, 552 (1st Dep't 1982). The moving party establishes a likelihood of success through credible claims and arguments, regardless of whether the opposing party disputes the facts. *Four Times Square Assocs. v. Cigna Invs.,* 306 A.D.2d 4, 5 (1st Dep't 2003). In cases like this, where "[d]enial of injunctive relief would render the final judgment ineffectual, . . . the degree of proof required to establish the element of likelihood of success on the merits should be accordingly reduced" and "the equities lie in favor of preserving the status quo." *Gramercy Co. v. Benenson,* 223 A.D.2d 497, 498 (1st Dep't 1996) (internal quotation marks omitted); *Masjid Usman, Inc. v. Beech 140, LLC,* 68 A.D.3d 942, 943 (2d Dep't 2009); *5 W. 120th Realty Corp.,* 2005 WL 2741954, at *3-4 (Sup. Ct. Oct. 24, 2005).

Under the UCC, every proposed sale must be a "good faith attempt to dispose of the collateral to the parties' mutual best advantage." *Cent. Budget Corp. v. Garrett,* 48 A.D.2d 825, 825 (2d Dep't 1975). (internal quotations omitted). It is not enough that the sale benefits the creditor. *See id.* Under Article 9 of the UCC, "[e]very aspect of a disposition of collateral, including the method, manner, time, place, and other terms, must be commercially reasonable." N.Y. U.C.C. § 9-610(b). As relevant here, Section 9-627(b) provides that a "disposition of collateral is made in a commercially reasonable manner if the disposition is made. . . in conformity with reasonable commercial practices among dealers in the type of property that was the subject of the disposition." N.Y. U.C.C. § 9-627(b). In other words, the sale must follow commercially reasonable procedures.

SGR/80332494.3

*See D2 Mark LLC v. OREI VI Invs., LLC, 2020 NY Slip Op. 32057[U], at *10 (Sup. Ct. N.Y. Co. June 23, 2020).*

Whether a sale is commercially reasonable is a fact-intensive inquiry that depends upon the nature of the collateral being sold and the practices of the particular industry. N.Y. U.C.C. § 9-627(b); *D2 Mark LLC,* 2020 NY Slip Op. 32057[U], at *8-9. "Whether a sale was commercially unreasonable is, like other questions about 'reasonableness', a fact-intensive inquiry; no magic set of procedures will immunize a sale from scrutiny." *Matter of Excello Press, Inc.,* 890 F.2d 896, 905 (7th Cir. 1989) (applying New York law). Courts consider "accepted business practice as a guide to what is most likely to protect both debtor and creditor." *Dougherty v. 425 Dev. Assocs.,* 93 A.D.2d 438, 446 (1st Dep't 1983). "[C]loser scrutiny" is warranted where, as here, "the possibilities for self-dealing are substantial." *LBO Cap. Corp. v. Home & City Sav. Bank,* 1992 WL 209310, at *7 (N.D.N.Y. Aug. 18, 1992). It is well-settled that the creditor bears the burden of establishing that it is conducting a UCC sale in a commercially reasonable manner. *See, e.g., Gen. Electric Credit Corp. v. Durante Bros. & Sons, Inc.,* 79 A.D.2d 509, 510 (1st Dep't 1980). This burden must be met with respect to "*[e]very aspect* of a disposition of collateral, including the method, manner, time, place, and other terms." N.Y. U.C.C. § 9-610(b) (emphasis added).

Here, the collateral at issue in the UCC Sales includes structured settlement receivables, lottery receivables, annuities, and medical lien receivables. Complaint at ¶ 41. These are illiquid financial instruments that do not trade on public markets. *Id.* They are not readily understood or valued by generalist investors. *Id.* Their valuation depends on factors such as payment stream duration, obligor creditworthiness, court approval histories, servicing arrangements, and statutory enforceability. *Id.* These features make them distinct from conventional assets like inventory or accounts receivable. *Id.* Marketing such assets requires specialized expertise and customized sale

5

SGR/80332494.3

procedures. *Id.* Standard practice involves engaging experienced brokers or investment bankers to identify institutional buyers and facilitate diligence and risk-adjusted pricing. *Id.* Leadenhall did not take any of these steps. *Id.*

### 1. The sales are short-noticed, non-public, and structured to suppress bidding and minimize recovery

Leadenhall's foreclosure notices (the "Notices") fail to meet the baseline requirements for a commercially reasonable disposition of collateral under U.C.C. §§ 9-610, 9-611, and 9-613. The sales: (i) provide only 14 days' notice (Complaint at ¶ 38, Exs. 1-3); (ii) describe the collateral only by vague reference to the loan agreements, without any breakdown or valuation (*Id.,* ¶ 39, Exs. 1-3); (iii) are set to occur at a private law firm office that is not open to the public and for which the notice provides no floor, suite number, or access instructions (*Id.* ¶ 50, Exs. 1-3); and (iv) were not publicly advertised in any newspaper or trade publication (*Id.,* ¶ 49, Exs. 1-3). These are not "public sales" in any meaningful sense, and no reasonable third-party bidder could locate, evaluate, or meaningfully participate in them. Courts routinely deem such sales commercially unreasonable and invalid under Article 9. *See D2 Mark LLC v. OREI VI Invs., LLC,* 2020 NY Slip Op. 32057[U], at *10 (Sup. Ct. N.Y. Cty. Jan. 21, 2020).* Leadenhall has made it very difficult, if not impossible, for a potential bidder to conduct standard due diligence. It is impossible to even evaluate what documents or information Leadenhall is willing to make available to potential bidders. This was clearly done with the intent to keep competitive bidding to a minimum (or to curtail it altogether).

The Notices are further defective in how they structure the bidding process itself. "[C]ommercial reasonableness may also be gauged by examining the public notice of the sale." *Anchev v. 335 West 38th Street Co-op. Corp.,* 29 Misc. 3d 1223(A), *4 (Sup. Ct. N.Y. Cty. 2010).* Yet the Notices: (i) do not identify any public location where bidders may appear and bid

SGR/80332494.3

(Complaint at ¶ 50, Exs. 1-3); (ii) reserve to Leadenhall the right to impose undisclosed bidding procedures at any time (*Id.,* ¶ 50, Exs. 1-3); (iii) allow Leadenhall to approve or reject any potential bidder in its sole discretion—enabling selective exclusion and self-dealing via credit bidding at any price (*Id.,* ¶ 50, Exs. 1-3); and (iv) permit Leadenhall to postpone, continue, or cancel the UCC Sales at any time and for any reason (*Id.,* ¶ 47, Exs. 1-3). These opaque, one-sided terms are purposefully difficult to meet, subject to unilateral modification without notice, and, at a minimum, "raise a red flag as to commercial reasonableness." Anchev, 29 Misc. 3d 1223(A), at *4.

New York law imposes an affirmative duty on secured creditors to publicize public sales in a manner reasonably calculated to reach the relevant market. *See Gen. Elec. Credit Corp. v. Durante Bros. & Sons*, 433 N.Y.S.2d 574, 576 (1st Dep't 1980); *First Bank & Tr. Co. of Ithaca v. Mitchell*, 123 Misc. 2d 386, 394–95 (Sup. Ct. Tompkins Cty. 1984). From Plaintiffs' knowledge, the only communication concerning the UCC Sales is the Notices themselves. There has been no broader dissemination, no advertisement in any publication, no outreach to industry participants, and no engagement of any experienced broker.

The portfolios at issue here consist of hundreds of individual receivables, including structured cash flow interests in lottery receivables, annuities, structured settlements, and medical lien receivables and healthcare receivables. Complaint at ¶¶ 19, 41. These are complex assets with distinct legal, regulatory, and risk profiles that must be individually underwritten to assess value. *Id.* at ¶ 41. Yet Leadenhall proposes to dispose of three entire portfolios in undifferentiated bulk, with no segmentation by asset class, risk tier, or performance history. *Id.,* ¶ 23, Exs. 1-3. This structure deters sophisticated bidding, suppresses price, and fails the requirement that secured parties act in a commercially reasonable manner.

Sales of comparable complexity and magnitude are routinely marketed through financial dailies like the *New York Times* or *Chicago Tribune*, and often require the involvement of a professional intermediary to attract qualified buyers and encourage competitive bidding. *See*, e.g., *Vornado PS, L.L.C. v. Primestone Inv. Partners, L.P.*, 821 A.2d 296, 316 (Del. Ch. 2002). Plaintiffs are unaware of any such broker or banker being retained here. Complaint at ¶ 41. Taken together, the absence of public notice, the discretionary and exclusionary procedures, and the lack of market outreach show that the auction process is not designed to generate fair value—it is designed to chill bidding, suppress price, and limit scrutiny.

### 2. The notices omit material information about the sale process and deny Borrowers the statutory opportunity to redeem

The scheduled UCC Sales are not just procedurally flawed, they are affirmatively structured to exclude Plaintiffs and suppress competitive bidding. Based on the generic Notices provided, it is evident that access to the auction requires undisclosed pre-clearance steps, including vague "qualified bidder" criteria and private coordination through counsel, none of which is accessible to the public. Complaint at ¶ 45, Exs. 1-3. Plaintiffs have not been informed of any process for attending or participating in the sale and have received no information about how to qualify, access, or bid. *Id.* at ¶ 51. These barriers effectively prevent Borrowers from exercising their statutory rights under U.C.C. § 9-623 (right of redemption) and § 9-610 (commercial reasonableness), and render the sale process opaque by design.

Courts have consistently held that exclusionary procedures of this kind are per se commercially unreasonable. In *D2 Mark LLC v. OREI VI Invs., LLC*, 2020 WL 343295, at *5 (Sup. Ct. N.Y. Cty. Jan. 21, 2020), the court held that a debtor's exclusion from participating in a foreclosure auction was, standing alone, unreasonable. As the court explained in *Long Island Tr. Co. v. Williams*, the U.C.C.'s protections are designed to "give the debtor an opportunity to protect

8

SGR/80332494.3

Case 1:24-cv-03453-JGK-BCM    Document 485-12    Filed 03/06/26    Page 15 of 20

his interest in the collateral by exercising any right of redemption or by bidding at the sale, to challenge any aspect of the disposition before it is made, or to interest potential purchasers in the sale, all to the end that the merchandise not be sacrificed by sale at less than the true value." 133 Misc. 2d 746, 507 N.Y.S.2d 993 (Civ. Ct. 1986), *aff'd sub nom. Long Island Tr. Co. v. Williams,* 142 Misc. 2d 4, 539 N.Y.S.2d 612 (App. Term 1988). Leadenhall's opaque and exclusionary process defeats all of these purposes and violates the core of Article 9.

If any further confirmation of commercial unreasonableness were needed, it lies in the lack of any detail provided to Plaintiffs. The notices do not advise Plaintiffs of their redemption rights under U.C.C. § 9-623, disclose how the auction will be conducted, state whether bids will be accepted on individual assets, or explain what constitutes a qualified bidder. Complaint at ¶¶ 41, 45, Exs. 1-3. The collateral is defined only by reference to the loan agreements and includes "all assets" of each borrower, with no breakdown, description, or valuation. Such opacity inhibits fair market participation and raises a strong inference of price suppression and self-dealing. *Id.* Additionally, Leadenhall failed to send notice to the addresses and recipients required under Section 10.02 of the Loan and Security Agreement. Complaint at ¶ 32, Ex. 4 at 10.02 and Schedule III. The notices were not directed to the email addresses listed in Schedule III. *Id.*, ¶ 32, Exs. 1-3. Although the notices were received at Plaintiffs' current office address, they were not delivered there until May 5, just nine days before the scheduled sale. *Id.* at ¶ 31. This alone renders the notices defective under both the contract and U.C.C. § 9-611(b). Defendant also failed to send notice to secondary obligors 777 Partners LLC and 600 Partners LLC, in violation of U.C.C. § 9-611(c)(2). *Id.* at ¶ 35.

"It is presumptively unreasonable to preclude a borrower from participating in a UCC sale." *WC Braker Portfolio, LLC v. ATX Braker*, LLC, Index No. 651792/2022, at 3 (Sup. Ct. N.Y.

9

SGR/80332494.3

Case 1:24-cv-03453-JGK-BCM     Document 485-12     Filed 03/06/26     Page 16 of 20

Co. Apr. 19, 2022) (Masley, J.), citing D2 Mark LLC, 2020 WL 3432950, at *10 ("plaintiff was, until June 8, 2020, precluded from participating in the auction [scheduled for June 24, 2020], which is per se unreasonable"); *see also Atlas MF Mezzanine Borrower, LLC v. Macquarie Tex. Loan Holder LLC*, 174 A.D.3d 150, 164–65 (1st Dep't 2019) (affirming U.C.C. § 9-610 claim where complaint alleged borrower was deprived of its right to bid). For these reasons, Plaintiffs have demonstrated a likelihood of success on the merits in support of a temporary restraining order and preliminary injunction.

**B.     Plaintiffs Will Suffer Irreparable Harm Absent An Injunction**

It is well-settled that preliminary injunctive relief is warranted where the failure to issue such relief will tend to render an ultimate judgment on the merits ineffective to remedy the likely harm. *See, e.g., Gramercy Co. v. Benenson,* 223 A.D.2d 497, 498, (1st Dep't 1996) (injunction warranted where "[d]enial of injunctive relief would render the final judgment ineffectual"). Irreparable harm exists where money damages or other ultimate relief would be ineffective to cure the harm caused by denial of the requested preliminary injunction. *See Sirius Satellite Radio, Inc. v. Chinatown Apts., Inc.,* 303 A.D.2d 261, 261 (1st Dep't 2003). Once a sale occurs, it cannot be easily "unwound" by the debtor, even if a court were to find that the transfer was done in bad faith. *See*, *e.g.*, *Atlas MF Mezzanine Borrower, LLC v Macquarie Texas Loan Holder LLC,* 174 AD3d 150, 163 (1st Dept 2019). This is particularly true here, where the collateral consists of hundreds of fragmented and illiquid receivables, which, once transferred through a bulk U.C.C. sale, would be impractical to recover or reconstitute. Complaint at ¶ 52. The right to seek injunctive relief under N.Y. U.C.C. § 9-625(a) underscores that the harm from a noncompliant enforcement or sale, such as the loss of control over unique collateral or a sale at a distressed price, is not readily compensable by damages and therefore constitutes irreparable harm. For these reasons, Plaintiffs

10

SGR/80332494.3

have satisfied the irreparable harm requirement for a temporary restraining order and a preliminary injunction.

## C.  The Balancing Of Equities Tips In Favor Of Plaintiffs

Balancing the equities requires looking to the "relative prejudice to each party accruing from a grant or a denial of the requested relief." *Ma v. Lien,* 198 A.D.2d 186, 186-87 (1st Dep't 1993). "[M]arked discrepancies between the disposal and sale prices signal a need for closer scrutiny, especially where, as here, the possibilities for self-dealing are substantial." *Central Budget Corp. v. Garrett*, 48 A.D.2d 825, 826 (2d Dep't 1975); *Merchants Bank of New York v. Gold Lane Corp.*, 28 A.D.3d 266 (1st Dep't 2006) (affirming denial of summary judgment in action to recover deficiency judgment where debtor's submission of evidence that actual cost of collateral (jewelry) was significantly higher than market value computed by creditor's appraisal raised triable issue of fact as to commercial reasonableness of the collateral's sale).

There is virtually no risk that Defendant would be prejudiced by entry of a preliminary injunction. Defendant, as the secured party and collateral agent, unilaterally controls the foreclosure process, has identified no time-sensitive risk to the value of its security interest. Indeed, Borrowers are already subject to a federal court preliminary injunction as to their disposition of the collateral. Borrowers are enjoined from transferring or disposing of these same assets, so any harm from a short delay is purely hypothetical. Complaint at ¶ 25. A brief injunction merely pauses a sale that Defendant itself retains unilateral authority to cancel or delay, and that it has structured without public notice, proper valuation, or market outreach. Defendant remains secured and can proceed with a commercially reasonable sale if done lawfully, and its lien position on income-producing collateral is preserved. A brief injunction merely delays enforcement while preventing a distressed sale that could undervalue the assets and increase any deficiency.

11

SGR/80332494.3

Plaintiffs, by contrast, would be severely prejudiced and irreparably harmed by denying injunctive relief. As mentioned, there is a great risk of self-dealing and conflict of interest on the part of Defendant. If Defendant purchases the collateral at a commercially unreasonable UCC sale, it would deprive Plaintiffs of hundreds of highly specialized and illiquid receivables through a closed and opaque process, foreclose any ability to redeem or bid, and prevent effective post-sale remedy, especially where Defendant retains sole discretion to approve bidders, structure terms, and credit bid its own debt without market testing. For these reasons, the balance of equities tips in Plaintiffs' favor and supports entry of a temporary restraining order and preliminary injunction. Plaintiffs satisfy all of the requirements for injunctive relief, this court should enter a temporary restraining order and preliminary injunction barring the sale as noticed.

## POINT II
### PLAINTIFFS ARE ENTITLED TO A TEMPORARY RESTRAINING ORDER

The standards for issuing a temporary restraining order are the same as those governing the grant of a preliminary injunction. *See, e.g., Silva v. Silva*, 27 Misc. 3d 526, 530-31, (Sup. Ct. Nassau Co. 2010). As detailed above, Defendant's UCC Sale is commercially unreasonable. Therefore, while deciding Plaintiffs' pending motion for a preliminary injunction, the Court should enter a temporary restraining order to prohibit Defendant from wrongfully carrying out a commercially unreasonable foreclosure sale in violation of Article 9 of the New York U.C.C and directing Defendant to provide the requested documents and information.

### CONCLUSION

For all the foregoing reasons, it is respectfully requested that the motion be granted in all respects and that the Court grant such additional and further relief as it deems just and proper.

12

SGR/80332494.3

Case 1:24-cv-03453-JGK-BCM    Document 485-12    Filed 03/06/26    Page 19 of 20

Dated:  New York, New York
        May 14, 2025

SMITH, GAMBRELL & RUSSELL, LLP

By: */s/ David A. Pellegrino*
     John G. McCarthy
     David A. Pellegrino

*Attorneys for the Plaintiffs*

1301 Avenue of the Americas, 15th Floor
New York, New York 10019
Tel: (212) 907-9700
jmccarthy@sgrlaw.com
dpellegrino@sgrlaw.com

13

SGR/80332494.3

Case 1:24-cv-03453-JGK-BCM    Document 485-12    Filed 03/06/26    Page 20 of 20

## COMMERCIAL DIVISION RULE 17 CERTIFICATION

Pursuant to Rule 17 of the Commercial Division of the Supreme Court, (N.Y.Ct.R. 202.70), I hereby certify that this Memorandum is 3,726 words in length, excluding the caption, table of contents, table of authorities, and signature block. This word count was prepared using the Word application.

Dated: New York, New York
       May 14, 2025

By: */s/ David A. Pellegrino*
David A. Pellegrino

14

SGR/80332494.3