

**FOLEY & LARDNER LLP**

90 PARK AVE
37TH FLOOR
NEW YORK, NY 10016-1314
212.682.7474 TEL
212.687.2329 FAX
FOLEY.COM

March 24, 2026

**Via ECF**

The Honorable John G. Koeltl, United States District Judge
United States District Court
Southern District of New York
500 Pearl St., Courtroom 14A
New York, NY 10007

      Re:    *Leadenhall Capital Partners LLP et al. v. Wander, et al.*,
              1:24-cv-03453-JGK

Dear Judge Koeltl:

We write on behalf of Advantage Capital Holdings LLC ("A-CAP") and Kenneth King (together, the "A-CAP Defendants") in connection with the above-captioned matter. On March 23, 2026, the U.S. Court of Appeals for the Second Circuit ("Second Circuit") vacated the portion of this Court's preliminary injunction order restraining the A-CAP Defendants' assets.[1] *Leadenhall Capital Partners LLP v. Advantage Capital Holdings, LLC*, Case Nos. 24-2647, 24-2867, Dkt. No. 96.1 (2d Cir. Mar. 23, 2026) (ECF No. 497, the "Order"). In so doing, the Second Circuit made certain findings that the A-CAP Defendants believe will be helpful in the Court's consideration of the pending Motion to Dismiss (ECF No. 214, the "Motion"). In light of the Order, the A-CAP Defendants respectfully seek leave to file a supplemental memorandum, not to exceed 10 pages, in further support of their pending Motion. The A-CAP Defendants further request that if the Court permits supplemental briefing, Plaintiffs be allowed to file an additional response brief of up to 10 pages.

Supplemental briefing following a relevant appellate decision is commonplace in New York federal courts. *See, e.g.*, *Nolan v. W. Reg'l Off Track Betting Corp.*, 2024 WL 4555115, at *4 (W.D.N.Y. Oct. 23, 2024) (District Court requested supplemental briefing after Second Circuit reversed ruling granting motion to dismiss on statute of limitations grounds); *Aquila v. Fleetwood, R.V., Inc.*, 2014 WL 1379648, at *1 (E.D.N.Y. Mar. 27, 2014) (District Court invited supplemental briefing on a Fed. R. Civ. P. 12(b)(3) motion to dismiss after issuance of Supreme Court opinion clarifying the proper analysis to be applied to such a motion). This is especially true where, as

---

[1] The Second Circuit also vacated the preliminary injunction with respect to the assets of 777 Partners LLC and 600 Partners LLC (collectively, the "777 Defendants") as guarantors of the Borrowers' (as that term is used in the Order, SPLCSS III LLC, Dorchester Receivables II LLC, Insurety Agency Services LLC, and Signal SML 4 LLC) loans with Plaintiffs Leadenhall Capital Partners LLP and Leadenhall Life Insurance Linked Investment Funds PLC (collectively, "Plaintiffs").

AUSTIN | BOSTON | BRUSSELS | CHICAGO | DALLAS | DENVER | DETROIT | HOUSTON | JACKSONVILLE | LOS ANGELES
MADISON | MEXICO CITY | MIAMI | MILWAUKEE | NEW YORK | ORLANDO | RALEIGH | SACRAMENTO | SALT LAKE CITY
SAN DIEGO | SAN FRANCISCO | SILICON VALLEY | TALLAHASSEE | TAMPA | TOKYO | WASHINGTON, D.C.

# FOLEY

**FOLEY & LARDNER LLP**

March 24, 2026
Page 2

here, the Court stayed consideration of the Motion until the Second Circuit issued its opinion in order to take advantage of the appellate court's guidance.

Indeed, the Order, issued after full briefing on the Motion, bears directly on several arguments advanced in the Motion. The Second Circuit's opinion squarely addresses the legal nature of Plaintiffs' claims and the scope of Plaintiffs' rights, if any, in the assets of the A-CAP Defendants, whose assets this Court restrained at Plaintiffs' request.

As foundation for its opinion, the Second Circuit engaged in careful interpretation of the Supreme Court precedent *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308 (1999). That case held that in an action for money damages, before judgment an unsecured creditor—i.e., a creditor that has not claimed a lien or equitable interest in the assets at issue—has no rights at law or in equity in the property of the debtor. *See id.* at 330.

Applying *Grupo Mexicano* to the facts, the Second Circuit found that Plaintiffs failed to establish they possessed either "a lien or equitable interest on [the A-CAP Defendants'] assets"; that the A-CAP Defendants "did not pledge any assets themselves"; and that Plaintiffs were therefore not secured creditors as to the A-CAP Defendants. *See* ECF No. 497 at 4, 17. The Appellate Court also held that the contract claims against the A-CAP Defendants sought only "monetary damages in the form of the Accelerated Debt plus interest," that is, "equitable assistance in the collection of a legal debt," which *Grupo Mexicano* forbids through a federal preliminary injunction. *See id.* at 23-24. On these grounds, the Second Circuit found that Plaintiffs were unlikely to succeed on the merits of their contract claims against the A-CAP Defendants or the 777 Defendants. *See id.* at 15.

As noted, these holdings materially affect the analysis of the claims Plaintiffs continue to press against A-CAP and Mr. King. If permitted, the A-CAP Defendants would address the following points in a supplemental memorandum of law.

***First***, the Second Circuit's Order confirms that Plaintiffs have no present legal or equitable interest in A-CAP's assets and no secured status as to the A-CAP Defendants. *See id.* at 15-18. That bears directly on Plaintiffs' repeated effort throughout the Amended Complaint to treat guarantor-level assets as if they were already Plaintiffs' property or to suggest A-CAP somehow interfered with rights Plaintiffs already possessed in those assets.

Plaintiffs' claims depend on collapsing the distinction between Borrower collateral and the assets of the 777 Defendants that were allegedly subject to liens by A-CAP. The Second Circuit has now rejected that premise. The appellate court maintained the distinction between Borrower assets and guarantor assets, noting correctly that "Guarantors do not hold any of the pledged collateral that [Plaintiffs] could foreclose on" and that "Guarantors did not pledge any assets themselves." *See id.* at 17. With respect to the alleged obligation for the A-CAP Defendants to provide and perfect additional collateral, the Second Circuit held that Plaintiffs cannot "assert that [they] ha[ve] a current legal right to, or interest in, Guarantors' assets." *See id.* at 17-18. In the



absence of any contractual language pledging the A-CAP Defendants' assets as additional collateral, Plaintiffs hold no lien against those assets. *See id.*

Those holdings reinforce the A-CAP Defendants' argument that Plaintiffs cannot plausibly impose borrower or guarantor contractual liabilities without pointing to some contractual language to support such an obligation, which Plaintiffs have not done. *See* Memorandum of Law in Support of Motion to Dismiss the Amended Complaint (ECF No. 215) at 36-37. The Order also forecloses Plaintiffs' contention the A-CAP Defendants' "control," "funding," or participation in restructuring discussions, or the existence of A-CAP's own secured-lender rights, are sufficient to confer contractual liabilities on the A-CAP Defendants.

***Second***, the opinion further supports the A-CAP Defendants' argument that Plaintiffs' fraud-based claims are unripe or pretextual. *See* ECF No. 215 at 14-15. The Second Circuit described this case as one in which Plaintiffs "sued debtor Defendants for breach of contract to collect on their debt," exercised their option to accelerate, and rather than pursue their contractual rights "instead sought to collect the Accelerated Debt via a lawsuit." *See* ECF No. 497 at 3, 6-8. This characterization of the action comports with the A-CAP Defendants' contention that Plaintiffs' alleged injury is merely the unresolved inability to collect on debt and collateral rights defined by contract rather than an independent and presently fixed RICO or fraud injury attributable to the A-CAP Defendants. *See* ECF No. 215 at 14-17; Reply Memorandum of Law in Support of Motion to Dismiss the Amended Complaint (ECF No. 263) at 8-10.

Further, the Second Circuit's recognition that Plaintiffs conceded their "allegations of fraud" were "not the basis for the injunction," should counsel this Court to scrutinize carefully Plaintiffs' effort to use expansive fraud and RICO theories to pursue relief against the A-CAP Defendants. *See* ECF No. 497 at 7 n.3. While the Second Circuit did not adjudicate the merits of any claim, the Order confirms that this dispute is at bottom a contract-based claim for payment of debt, not a demonstrated entitlement to recover specific property or equitable relief from the A-CAP Defendants. This is significant in determining whether the Amended Complaint plausibly states claims sounding in RICO, aiding and abetting fraud, unjust enrichment, or other non-contract theories against these defendants. *See* ECF No. 215 at 17-31; ECF No. 263 at 8-15.

***Third***, the opinion is also relevant to Plaintiffs' attempts to challenge A-CAP's conduct as wrongful merely because A-CAP asserted secured-lender rights in assets Plaintiffs also wished to reach. The Second Circuit expressly noted A-CAP's position that it "claims 'a perfected, first-priority security interest in substantially all of Guarantors' now-frozen assets,'" and held that Plaintiffs have no lien or equitable interest in those assets. *See* ECF No. 497 at 9 n.4. Although the merits of the priority issues remain to be determined, the Second Circuit's ruling bolsters the A-CAP Defendants' position that their alleged conduct was merely the ordinary conduct of a senior secured lender protecting its collateral and negotiating from that position, rather than actionable misconduct giving rise to contract, tort, or RICO liability. *See* ECF No. 215 at 18-19, 22-23; ECF No. 263 at 14-15.

**FOLEY**

FOLEY & LARDNER LLP

*Finally*, the Second Circuit's rejection of affirmance on an attachment theory further confirms that if Plaintiffs seek prejudgment restraints against assets in which they lack any contractual lien or equitable interest, they must satisfy a distinct state-law mechanism and the required factual predicates for it. *See* ECF No. 497 at 25-26. That, too, bears on the legal sufficiency of Plaintiffs' existing theories against A-CAP and Mr. King, which repeatedly assume rights the Second Circuit has now held Plaintiffs do not possess.

In order to more fully address these points, the A-CAP Defendants seek leave only to file a short supplemental memorandum explaining the import of the Order on the issues already presented in the pending Motion, rather than to raise wholly new arguments. Because the Court previously deferred decision on the dismissal motions pending the appeal, and because discovery was likewise stayed awaiting the Second Circuit's ruling, targeted supplemental briefing now would promote efficiency and assist the Court in resolving the Motion on a complete and current legal record.

Accordingly, A-CAP and Mr. King respectfully request leave to file a supplemental memorandum of no more than 10 pages within ten (10) days of the Court's order, with Plaintiffs to have ten (10) days thereafter to file any response of no more than 10 pages.

We thank the Court for its attention to this matter.

Respectfully submitted,

*/s/ Phara A. Guberman*
Phara A. Guberman