# KING & SPALDING

King & Spalding LLP
1185 Avenue of the Americas
New York, NY 10036-4003
Tel:  +1 212 556 2100
Fax:  +1 212 556 2222
www.kslaw.com

Leigh M. Nathanson
Direct Dial:  +1 212 790 5359
Direct Fax:  +1 212 556 2222
lnathanson@kslaw.com

May 22, 2026

**VIA ECF**

The Honorable Barbara Moses
United States Magistrate Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Courtroom 14A
New York, NY 10007-1312

Re:  *Leadenhall Capital Partners LLP et al. v. Wander et al.*, 24-cv-03453-JGK

We represent Plaintiffs Leadenhall Capital Partners and Leadenhall Life Insurance Linked Investments Fund PLC (collectively, "Leadenhall") and jointly submit this letter with counsel for third-party receivable servicer Funding4Doctors, LLC ("F4D") to provide a status update on the parties' efforts to resolve or narrow the issues raised in Leadenhall's motion to compel F4D's production of documents in response to a subpoena served on May 21, 2025 (the "Motion to Compel").

The parties have agreed on the scope of documents that F4D will produce in response to the subpoena.  Specifically, the parties agree that F4D will (1) formally produce the records associated with the F4D Receivables that Leadenhall identified on August 20, 2025; and (2) produce the following documents responsive to the remaining Subpoena requests: (a) bank records for the custodial accounts where the F4D Receivables are currently deposited; (b) supplemental records for any F4D Receivables that are impaired or "fraudulent," including correspondence, unpaid and/or denied claims, and litigation records associated with those receivables; and (c) information substantiating F4D's withholding of cash flows from Signal and/or Leadenhall on the basis of a 2023 dispute with Signal and/or F4D's retention of unspecified fees and expenses.

However, the parties have been unable to reach agreement on the timeline for production and which party should bear the costs of production.  In its Motion to Compel filed on April 15, 2026, Leadenhall asked that the Court compel F4D to produce the requested materials within 30 days.  On April 22, after reviewing F4D's response to the Motion to Compel, Leadenhall offered F4D additional time to make the productions, proposing a completion date of June 5, 2026.  Leadenhall requested that one category of documents (category 2(a) above, bank records for the custodial accounts where the F4D Receivables are currently deposited) be produced by May 22; these documents should take a few minutes to download from F4D's online banking website, and F4D's counsel confirmed that there is only one relevant account.  F4D did not provide

1

a response to Leadenhall's proposal until after this Court scheduled a conference on the Motion to Compel. On a May 18 meet-and-confer call, F4D informed Leadenhall that one member of the F4D team was dealing with complications from a planned knee surgery and that counsel had an ill family member for whom he has ongoing caretaking responsibilities. In light of these issues, F4D proposed a production deadline of June 21 for the bank records and July 20 for the remaining production, with efforts to make rolling productions. On May 20, Leadenhall stated that it would agree to a production deadline of May 29 for the bank records and July 13, 2026 for the rest of the production. On May 20, F4D responded with a proposed deadline of July 23, 2026 and made its production contingent on Leadenhall's pre-agreement to pay what F4D estimates to be $150,000 to $400,000 in production costs.

**Leadenhall's Position**

As described in greater detail in Leadenhall's Motion to Compel, F4D's response to the subpoena is eleven months overdue. *See* ECF No. 508 (Ltr. Mot. to Compel) at 1. While Leadenhall wishes to accommodate the personal issues affecting F4D and its counsel, those issues do not explain nearly a year of delay in production since the subpoena was first issued. With respect to the bank statements—which are critical to documenting where the money associated with Leadenhall's collateral went under F4D's servicing—any employee of F4D or Mintz & Gold should be able to log into a bank website and download historical statements for a single account by May 29. The remainder of the records requested are non-custodial records (*e.g.*, files and documents associated with the receivables) that F4D, as servicer of those receivables, is contractually required to maintain. For example, ███████████████████████████████ ████████████████████████████████████████████████████████████████████ ███████████, **Exhibit A** (Purchase and Assignment Agreement) at 777(DEF-NY)_0098012-013, █ ████████████████████ ████████████████, *id.* at 777(DEF-NY)_0098016.

In light of this preexisting obligation, F4D has no basis to claim that it would incur undue costs in responding to Leadenhall's subpoena—indeed, the fact that F4D has forced *Leadenhall* to incur the costs of issuing and enforcing a subpoena to obtain documents to which it is contractually entitled militates against any reimbursement. Leadenhall is not seeking an ESI collection or search that would require F4D to engage a third-party document vendor or undertake a significant attorney document review. To the extent F4D needs to recreate records that it should have been keeping in the normal course, the cost of that exercise is not Leadenhall's to bear. Indeed, in the one year since Leadenhall foreclosed on its portion of the F4D Receivables, F4D has withheld almost $300,000 in unspecified fees and expenses, amounting to over 50% of the money collected on those receivables for that time period. F4D cannot credibly purport to retain hundreds of thousands of dollars in fees to "service" the collateral—███████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████

---

[1] ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ██████████████████ **Exhibit A** at 777(DEF-NY)_0098008.

███████████████████████████████████████ **Exhibit A** at 777(DEF-NY)_0098012—and then seek to charge Leadenhall again to have its attorneys do the work for which F4D has already paid itself out of Leadenhall's collections.

As Leadenhall stated in its Motion to Compel, once F4D's production is complete, Leadenhall will entertain any reasonable proposal for reimbursement of undue costs. F4D's current proposal is not reasonable.

**F4D's Position**

F4D has gone well beyond what Rule 45 requires of a non-party. As described in F4D's opposition letter (ECF 510), F4D has given Leadenhall virtually unfettered access to F4D's internal database via a live ShareFile repository. The ShareFile repository includes agreements, receivable data, payment records, and underlying source documentation. Leadenhall reviewed and used these materials to formulate follow-up requests. It did so both before and after service of the subpoena and continued that process into 2026 without objection.

The purpose of that review was twofold. First, after multiple conversations with Leadenhall principals, F4D sought to assure Leadenhall that supporting documents for the F4D portfolio were well maintained. Second, given the magnitude of information contained in the files (estimated at one terabyte of electronically stored information), F4D thought it prudent to allow Leadenhall an opportunity to use its access to narrow the scope of discovery by identifying which underlying documents were truly necessary. Instead, Leadenhall made a blunderbuss request for "all documents in the Sharefile." F4D's good faith cooperation has now become the basis for an extraordinarily burdensome demand. To the extent the court orders a formal production, F4D merely requests that the Court allocate the resulting costs in advance, including by requiring Leadenhall to bear at least enough of the expense to lighten F4D's remaining burden.

The projected cost of that production is significant by any measure: current estimates range from approximately $150,000 to more than $400,000. Those costs are driven by the size of the data set, vendor processing and hosting, preservation of metadata and chain-of-custody information, and review/redaction necessary to protect sensitive non-party financial information. These costs do not arise from ordinary recordkeeping. They arise from Leadenhall's insistence on a formal, litigation-style production of materials to which it has already had broad access.

Rule 45(d)(2)(B)(ii) requires protection of third-parties where compliance with discovery obligations imposes significant expense.[2] Here, there can be no dispute that the expense is significant. F4D therefore requests that, before such production proceeds, the Court direct the

---

[2] *See, e.g., In re Novartis & Par Antitrust Litig.*, 18 Civ. 4361  (AKH) 2020 WL 3317203, *6 (S.D.N.Y. June 18, 2020) (granting motion to compel but requiring plaintiffs to pay the non-party's reasonable expenses and attorneys' fees going forward); *In re Namenda Direct Purchaser Antitrust Litig.*, 15 Civ. 7488 (CM)(JCF) 2017 WL 3822883, *10 (S.D.N.Y. Aug. 30, 2017) (requiring requesting parties to pay non-party's reasonable attorneys' fees and expenses incurred in subpoena compliance); *Koopmann v. Robert Bosch LLC*, 18-CV-4065 (JMF) 2018 WL 9917679 (S.D.N.Y. May 25, 2018) (requiring petitioners to bear half of non-party's compliance costs up to $30,000).

3

parties to agree on a cost-allocation protocol. Alternatively, absent agreement, enter an order requiring Leadenhall to bear at least enough of the resulting expense to protect F4D from significant non-party compliance costs. If Leadenhall would prefer to take possession of the Sharefile documents, preserve metadata and chain-of-custody information, Bates stamp them, and produce them at a lower cost to Leadenhall, F4D is open to considering such a process.

Leadenhall's argument that F4D's alleged contractual obligation to "maintain" records effectively waives any cost-sharing obligation is unpersuasive. There is a stark difference between maintaining records in-house and producing documents in litigation. F4D has already dedicated hundreds of man-hours to organizing and maintaining documents for Leadenhall's review on Sharefile without seeking reimbursement from Leadenhall. Producing documents in litigation is a distinct endeavor, requiring attorney and vendor fees and other costs that no records-maintenance obligation was ever intended to address. Further, Leadenhall provides no statutory authority or case law to support the proposition that a records-maintenance obligation obviates a fee-sharing charge by a third party.

Regarding timing, F4D has proposed a schedule by which production is complete by July 23, 2026. That schedule reflects the actual work required to convert a live, dynamic repository into a formal production. That work includes collecting and organizing materials, reviewing them for responsiveness, and redacting sensitive financial information relating to non-parties. Leadenhall's suggestion that the production can be completed by simply "downloading" bank records conflates access with compliance. Access has never been the problem. The issue is producing a compliant set of documents from files that contain sensitive financial information. As Leadenhall is aware, this financial information includes banking records, including commingled financial data from adverse parties, such as ACAP, that F4D is contractually obligated to protect. Producing that information in a manner consistent with its obligations takes time, and two months is a reasonable amount of time to complete the assignment.

Finally, Leadenhall's characterization of the parties' agreement on the scope of production is not entirely accurate. F4D agreed to a targeted production of defined categories: receivable files already identified and reviewed, information sufficient to substantiate where receivables are held, supplemental materials for impaired receivables to the extent within its custody or control, and discrete documents relating to the Signal/777 dispute. Leadenhall rewrites those commitments as categorical obligations to produce all bank records, broad classes of receivables-related materials, and any information that could "substantiate" disputed issues.

F4D agreed to provide sufficient financial information; Leadenhall demands entire account records. F4D limited supplemental materials to what it actually possesses; Leadenhall assumes F4D holds all correspondence, claims, and litigation files. F4D agreed to produce discrete dispute-related documents; Leadenhall recasts that as an obligation to assemble a litigation record. Only the receivable files category aligns, and even there, F4D agreed to formally produce materials Leadenhall has already reviewed. In all other respects, Leadenhall's paraphrase expands a proportional, document-based production into an open-ended demand for wholesale re-production. If the court orders production of documents, F4D requests that production be limited to F4D's proposed scope.

4

F4D remains willing to proceed promptly. F4D respectfully requests that the Court (i) adopt a realistic schedule with rolling production, and (ii) direct the parties to agree in advance on cost allocation for any formal production beyond the access already provided, including third-party vendor costs and reasonable review expenses.

We appreciate the court's consideration of F4D's position and will work with the court to commit to a discovery plan that proceeds efficiently without imposing unwarranted burden on a non-party.

Respectfully submitted,

*/s/ Leigh M. Nathanson*
Leigh M. Nathanson

### Certificate of Service

In addition to filing the foregoing letter via the Court's ECF system, which will automatically provide notice to all counsel of record, I certify that on May 22, 2026, I caused a true and correct copy of this letter motion and accompanying exhibits to be served on F4D. Service on F4D was accomplished by email (on F4D's counsel) and first-class mail at 7916 Evolutions Way, Suite 200, Trinity, Florida 34655.

*/s/ Leigh M. Nathanson*
Leigh M. Nathanson