King&
Spalding

King & Spalding LLP
1290 Avenue of the Americas
New York, New York 10104

**Leigh M. Nathanson**
Partner
T:  212-790-5359
lnathanson@kslaw.com

July 13, 2026

<u>**VIA ECF**</u>

Hon. Barbara Moses
United States Magistrate Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007

Re:  *Leadenhall Capital Partners LLP et al v. Wander et al*, 24-cv-03453-JGK

Dear Judge Moses,

We represent Plaintiffs Leadenhall Capital Partners and Leadenhall Life Insurance Linked Investments Fund PLC (collectively, "Leadenhall") in the above-captioned matter. We write in reply to Funding4Doctors, LLC ("F4D")'s July 9, 2026 opposition (ECF No. 571, or the "Opposition") to Leadenhall's letter motion regarding F4D's July 2, 2026 production (ECF No. 569). F4D's Opposition again provides after-the-fact excuses for why it continues to withhold records for bank accounts that held or hold cash associated with the F4D Receivables pledged as collateral to Leadenhall. Whether F4D's continued omissions are deliberate or inadvertent is irrelevant; whatever the reason, F4D's refusal to disclose the full picture is a violation of its discovery obligations and this Court's order.

*The DACA Account.*  Pursuant to its June 26 agreement with Leadenhall, F4D agreed to produce records for the accounts listed in Leadenhall's June 18 Letter to the Court, to the extent they are in F4D's possession, custody, or control and to identify the payees associated with any accounts F4D claims are not F4D accounts.  ECF No. 562 at 1. F4D will not produce records for the account ending in *5683[1] on the basis that it is a DACA account, but F4D has not established that the records for this account are not in its possession, custody, or control.  F4D's Opposition discloses, for the first time, that the lender controlling the *funds* in the DACA account is Proof Capital (a fact its Opposition falsely contends was previously disclosed).[2] ECF No. 571 at 1-2. But neither the Opposition nor the Marchant declaration establishes that the DACA Account is not held by F4D. To the contrary, the Marchant declaration explains that the *5683 account is "a

---

[1] F4D's Opposition refers to the account as ending in *5183, rather than *5683. ECF No. 571 at 1. Leadenhall believes this is a typographical error and assumes that F4D is referring to the same *5683 account at issue in Leadenhall's July 6 letter.

[2] Mr. Marchant's declaration identifies Proof Capital only as the payee associated with the account ending in *5705. F4D did not identify Proof Capital in relation to the DACA Account in any of the parties' prior meet-and-confer calls, in its June 24 opposition (ECF No. 560), in the sworn declaration it produced on July 2, or during the parties' July 6 meet-and-confer.

deposit account that is subject to a contractual control agreement among the depository bank, the account holder, and a secured party … to perfect a lender's security interest in deposit accounts and to provide the secured party, not the counterparty, with control over the account upon occurrence of specified events." Marchant Decl. ¶ 7. The Opposition has now identified Proof Capital as the secured lender, meaning F4D is the account holder.

F4D's representations regarding its ability to access records for the *5683 account are similarly evasive. Mr. Marchant's declaration states that F4D "has limited visibility into activity within the account" and "does not control the account and cannot freely access or direct the funds maintained therein." *See* Ex. A, Marchant Declaration. But the declaration says nothing about whether F4D has custody over, or the ability to obtain, account statements. The Opposition slices hairs even thinner, asserting that F4D "has no authority or ability to obtain account records *unilaterally*" and "lacks the practical or legal *authority* to produce" the records—again sidestepping the question of custody or control. ECF No. 571 at 2-3 (emphases added). As the DACA account holder, F4D would have the ability to request or access account statements through the mechanisms established by that agreement.

As a last-ditch effort to avoid production, F4D makes a belated relevance objection, arguing that Leadenhall has not "traced" Signal/777 funds into the DACA Account. ECF No. 571 at 1-2. Leadenhall has already agreed to stand down on this request upon a sworn statement from F4D representing that no Leadenhall funds were ever transferred into the *5683 account—but F4D has declined to make that representation. The flow of funds between the various accounts into which F4D deposited money associated with Leadenhall's receivables is information within F4D's possession, not Leadenhall's. F4D's refusal to affirmatively state that no Leadenhall funds entered the account, while simultaneously resisting production of records that would answer the question, is telling. F4D has already agreed to produce "bank records for the custodial accounts where the F4D Receivables are currently deposited," which this Court's May 27 Order endorsed. ECF No. 544. F4D should, at a minimum, be required to state under oath whether Leadenhall funds were transferred into the Proof Capital account or, if it cannot, to produce the records.

***Accounts Holding Funds from the CD Account.*** F4D agreed to produce account statements for the Chase CD Account into which F4D deposited $6 million of the proceeds from Leadenhall's Receivables, failed to do so by the agreed deadline, and then revealed only after Leadenhall raised the deficiency that statements for the account do not "exist[] because the certificate of deposit had matured." Opp. at 3. As it turned out, some records *did* exist—specifically, ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ██████████████████████████████████████████ The document shows ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████

F4D's begrudging production of records showing that the money is no longer in the CD Account led to the more alarming revelation that F4D no longer has possession of the $6 million in cashflows from Leadenhall's Receivables that were previously held in the CD Account. During Leadenhall's meet-and-confer discussions with F4D, F4D's counsel represented that the money

2

was "invested"—without Leadenhall's knowledge or consent—and referred Leadenhall to the Marchant declaration but would not identify the relevant paragraphs. Leadenhall presumes that the relevant portion is Mr. Marchant's statement that around "May 2025, F4D invested certain funds, including those attributable to collections associated with the Signal/777 deployed capital, through an arrangement with Amvest Financial Group (the 'F4D-Amvest Investment')." Marchant Decl. ¶ 9. The Marchant Declaration further states that although "F4D has information concerning the performance of the F4D – Amvest Investment, it does not control or have access to accounts associated with the F4D – Amvest Investment." *See* Marchant Decl. ¶ 10. F4D's potential conversion of over $6 million of money being held for Leadenhall—and its apparent attempt to hide that conversion through artful parsing of this Court's order compelling production—underscores the need for judicial intervention here.

The Court's May 27, 2026 Order required F4D to produce "bank records for the custodial accounts where the F4D Receivables are currently deposited." ECF No. 544 at 1. If Leadenhall's funds were moved from the CD Account into an investment account, the records from that account—which F4D should have every right to request, if it does not already have them—are responsive to Leadenhall's subpoena and should be produced. F4D's continued evasion of its obligation to produce records for all accounts holding Leadenhall funds, revealed only through Leadenhall's own review of belatedly produced records, further underscores that F4D will not comply absent an express order of the Court—forcing Leadenhall to incur the expense of continued enforcement, which F4D should reimburse.

Respectfully submitted,

*/s/ Leigh M. Nathanson*
Leigh M. Nathanson

**Certificate of Service**

In addition to filing the foregoing letter via the Court's ECF system, which will automatically provide notice to all counsel of record, I certify that on July 13, 2026, I caused a true and correct copy of this letter to be served on F4D. Service on F4D was accomplished by email (on F4D's counsel) and first-class mail at 7916 Evolutions Way, Suite 200 Trinity, Florida 34655.

*/s/ Leigh M. Nathanson*
Leigh M. Nathanson

3
