**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

LEADENHALL CAPITAL PARTNERS LLP and LEADENHALL LIFE INSURANCE LINKED INVESTMENTS FUND PLC,

Plaintiffs,

vs.

JOSH WANDER, STEVEN PASKO, KENNETH KING, 777 PARTNERS LLC, 600 PARTNERS LLC, SPLCSS III LLC, SIGNAL SML 4 LLC, INSURETY AGENCY SERVICES LLC, DORCHESTER RECEIVABLES II LLC, SUTTONPARK CAPITAL LLC, SIGNAL MEDICAL RECEIVABLES LLC, INSURETY CAPITAL LLC, SUTTONPARK SERVICING LLC, SIGNAL SERVICING LLC, INSURETY SERVICING LLC, and ADVANTAGE CAPITAL HOLDINGS LLC,

Defendants.

Civil Action No. 1:24-cv-03453-JGK

**PLAINTIFFS' OPPOSITION TO DEFENDANTS ADVANTAGE CAPITAL HOLDINGS LLC AND KENNETH KING'S MOTION TO STAY PROCEEDINGS**

# TABLE OF CONTENTS


PRELIMINARY STATEMENT....1

STATEMENT OF FACTS....3

A. LEADENHALL SUES A-CAP AND ITS CO-CONSPIRATORS AS JOINT TORTFEASORS, EACH WITH INDEPENDENT LIABILITY....3

B. AFTER ANOTHER CREDITOR TRIES TO FORCE 777 PARTNERS INTO BANKRUPTCY, A-CAP ORCHESTRATES A 777 CHAPTER 11 FILING PROPOSING TO PROVIDE DIP FINANCING IN EXCHANGE FOR RELEASES AND FINDINGS CLEANSING A-CAP'S PREPETITION CONDUCT....4

LEGAL STANDARD....6

ARGUMENT....8

I. THE STAY THAT A-CAP SEEKS WOULD UNDERMINE THE BANKRUPTCY CODE....8

II. A-CAP FAILS TO MEET ITS BURDEN TO SHOW THAT A DISCRETIONARY STAY IS WARRANTED....10

A. Leadenhall Has a Strong Interest in Proceeding Expeditiously in, and Will Be Prejudiced by Further Delay of, this Litigation....11

B. A-CAP Would Suffer No Undue Burden From Proceeding in This Litigation....16

C. The Interests of the Court Weigh Against a Stay....18

D. The Interests of Non-Parties Weigh Against a Stay....20

E. The Public Interest Weighs Against a Stay....21

CONCLUSION....21

CERTIFICATION OF COMPLIANCE....23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re: 777 Partners LLC*,
Case No. 1:26-bk-19312 (S.D. Fla. Aug. 24, 2026) ....................5

*In re Adelphia Commc'ns Corp.*,
361 B.R. 337 (S.D.N.Y. 2007)....................21

*Am. S.S. Owners Mut. Prot. and Indem. Ass'n v. Lafarge N. Am. Inc.*,
474 F. Supp. 2d 474 (S.D.N.Y. 2007)....................7

*Applestein v. Kleinhendler*,
2021 WL 493424 (E.D.N.Y. Feb. 10, 2021)....................14, 19, 20

*Berkley Custom Ins. Managers v. York Risk Servs. Grp., Inc.*,
2020 WL 359941 (S.D.N.Y. Jan. 22, 2020) ....................19

*CAE Indus. Ltd. v. Aerospace Holdings Co.*,
116 B.R. 31 (S.D.N.Y. 1990)....................14, 20

*Carroll v. Trump*,
687 F. Supp. 3d 394 (S.D.N.Y. 2023)....................21

*Consol. Edison Co. of N.Y. v. United States*, 30 F. Supp. 2d 385 (S.D.N.Y. 1998) ....................7, 19

*In re Durr Mech. Constr., Inc.*,
604 B.R. 131 (Bankr. S.D.N.Y. 2019)....................7

*Exp.-Imp. Bank of U.S. v. Hi-Films S.A. de C.V.*,
No. 09 CIV 3573 PGG, 2010 WL 3743826 (S.D.N.Y. Sept. 24, 2010)....................7, 11

*Futch v. Starboard With Cheese, LLC*, 830 F. Supp. 3d 736 (S.D. Ill. 2025) ....................17, 20

*Garcia v. Hatchet Works Corp.*,
659 B.R. 626 (E.D.N.Y. 2024) ....................8

*In re Genger*,
No. 19-13895 (JLG), 2025 WL 1727497 (Bankr. S.D.N.Y. June 20, 2025)....................8

*GOJO Indus., Inc. v. Innovative Biodefense, Inc.*,
407 F. Supp. 3d 356 (S.D.N.Y. 2019)....................19, 21

*Gray v. Hirsch*,
230 B.R. 239 (S.D.N.Y. 1999)....................9

*Hong v. Mommy's Jamaican Mkt. Corp.*,
No. 20-cv-9612 (LJL), 2023 WL 3568807 (S.D.N.Y. May 18, 2023)....................17

*In re Ionosphere Clubs Inc.*, 124 B.R. 635 (S.D.N.Y. 1991)....................18

*Kaplan v. Lebanese Canadian Bank, SAL*,
2022 WL 2541081 (S.D.N.Y. July 7, 2022)....................13

*Kirschner v. J.P. Morgan Chase Bank, N.A.*,
2020 WL 230183 (S.D.N.Y. Jan. 15, 2020)....................13

*Landis v. North American Co.*,
299 U.S. 248 (1936)....................8

*Lasala v. Needham & Co.*, 399 F. Supp. 2d 421 (S.D.N.Y. 2005)....................11

*Luppino v. York*,
562 B.R. 894 (W.D. Tex. 2016)....................9

*McDonald v. Piedmont Aviation*,
625 F. Supp. 762 (S.D.N.Y. 1986)....................7

*Motorola, Inc. v. Abeckaser*, 2009 WL 816343 (E.D.N.Y. Mar. 26, 2009)....................19

*In re Pirraglia*,
2026 WL 1683573 (Bankr. S.D.N.Y. June 10, 2026)....................21

*Plaintiff Funding Holding, LLC v. Blue Ocean Partners LLC*,
No. 22 CIV. 4094 (KPF), 2023 WL 3506142 (S.D.N.Y. Apr. 18, 2023)....................17, 18

*Queenie, Ltd. v. Nygard Int'l*,
321 F.3d 282 (2d Cir. 2003)....................8

*Rankine v. Levi Strauss & Co.*,
674 F. Supp. 3d 57 (S.D.N.Y. 2023)....................8

*Rauch Indus., Inc. v. Heart Artist LLC*,
No. 25 CIV. 7950 (JHR) (GS), 2026 WL 2350005 (S.D.N.Y. Aug. 12, 2026)....................9

*Ritchie Capital Management, L.L.C. v. Jeffries*,
849 F. Supp. 2d 881 (D. Minn. 2012)....................20

*Schweitzer v. Nevels*,
2026 WL 625090 (E.D. Pa. Mar. 5, 2026)....................14, 15, 20

*In re Signal National LLC*,
No. 26-90190 (ELM) (Bankr. N.D. Tex. Aug. 9, 2026) ................................................ *passim*

*Stih v. Rockaway Farmers Mkt., Inc.*,
656 B.R. 308 (E.D.N.Y. 2024) ...........................................................................................17

*Teachers Ins. & Annuity Ass'n of Am. v. Butler*,
803 F.2d 61 (2d Cir. 1986)..........................................................................................8, 9, 10

*Tenas-Reynard v. Palermo Taxi Inc.*,
2016 WL 1276451 (S.D.N.Y. Mar. 30, 2016) .......................................................................9

*In re Tronox Inc.*,
855 F.3d 84 (2d Cir. 2017).....................................................................................................16

*Uto v. Job Site Servs., Inc.*,
444 B.R. 222 (E.D.N.Y. 2011) ...............................................................................................8

*Wedgeworth v. Fibreboard Corp.*, 706 F.2d 541 (5th Cir. 1983)..................................................9

*ZCap Equity Fund v. LuxUrban Hotels Inc.*,
2025 WL 2939255 (S.D.N.Y. Oct. 16, 2025)...................................................................11, 21

**Statutes**

11 U.S.C. § 362(a) .................................................................................................................7, 8

**PRELIMINARY STATEMENT**[1]

Based on the voluntary Chapter 11 petitions filed by four of its unaffiliated co-defendants in *In re Signal National LLC*, No. 26-90190 (ELM) (Bankr. N.D. Tex. Aug. 9, 2026) (the "Bankruptcy Cases"), A-CAP asks this Court to exercise its discretion to impose a stay that would circumvent the Bankruptcy Code, which provides the protection of a limited automatic stay of litigation against debtors in bankruptcy in order to preserve their assets for the benefit of their creditors. But that discretion is not unbounded. The Bankruptcy Code permits debtors to seek to extend the automatic stay to other parties in certain "unusual circumstances" not present here—not, as courts in this district have repeatedly held, to unaffiliated joint tortfeasors with independent liability to the plaintiff. The debtors here—Defendants 777 Partners, 600 Partners, SuttonPark Capital, and SuttonPark Servicing—sought to extend the stay to their affiliated non-debtor co-defendants because the debtors were guarantors of those parties' obligations to Leadenhall such that a judgment against them would be akin to a judgment against the debtors. Leadenhall stipulated to that relief because it was supported by the law, and the debtors agreed that their motion should accordingly be denied as moot. The debtors did not seek to extend the stay to any other defendants because continued litigation against those parties—A-CAP, King, Wander, and Pasko—does not implicate the assets of the debtor estates.

A-CAP's motion acknowledges that it has no legal entitlement to a stay of this litigation, which has progressed for over two years—including, without issue, while discovery against

[1] Defendants Advantage Capital Holdings LLC and Kenneth King are referred to herein collectively as "A-CAP." Plaintiffs Leadenhall Capital Partners LLP and Leadenhall Life Insurance Linked Investments Fund PLC are referred to as "Leadenhall."

some defendants has been stayed pending resolution of motions to dismiss. There is no dispute that Leadenhall alleges that A-CAP is independently liable to Leadenhall for its participation in a fraudulent scheme and for its own tortious acts, including perpetuating the scheme through its operational control of 777, taking over the preparation and submission of fraudulent Compliance Reports to Leadenhall, blocking Leadenhall's contractual right to audit its collateral, and making false representations during restructuring negotiations to conceal the fraud. Leadenhall's independent claims against A-CAP as a joint tortfeasor and co-conspirator will not be resolved in the Bankruptcy Cases. This Court can adjudicate Leadenhall's claims against A-CAP while claims against certain co-defendants are stayed—and will likely have to, as the debtors have made clear that the bankruptcy will end in 777's liquidation, not reorganization. Thus, the "temporary" stay A-CAP seeks would serve only to buy A-CAP more delay of this case while it seeks relief in the Bankruptcy Court—where it has offered the debtors financing predicated on findings that it acted in good faith and did not control the 777 Entity Defendants and conditions that would make it impossible for the debtors to pursue recoveries from A-CAP for the benefit of creditors—in an effort to avoid liability altogether.

A-CAP cannot credibly argue that any of the relevant factors justifies a discretionary stay here. The prejudice to Leadenhall from further delay is significant—Defendants' fraud caused Leadenhall losses of more than $600 million, which grow each day. Meanwhile, critical witnesses' memories will fade, former employees will scatter, and evidence will become harder to secure. Leadenhall will be further prejudiced by A-CAP's attempt to delay developing a record in this case that would undermine the favorable findings it seeks in the Bankruptcy Court. While A-CAP seeks to frame its request modestly, the six-month stay would be effectively open-ended if predicated on events in the Bankruptcy Cases—the debtors' own First Day Declaration

contemplates a "second wave" of chapter 11 filings by more 777 affiliates—and A-CAP makes no commitment that it will not seek successive extensions. By contrast, A-CAP faces no burden: the bankruptcy neither obviates nor affects A-CAP's independent discovery obligations; the 777 Defendants have already produced 129,456 documents; third-party discovery remains available; and nearly all 777 witnesses are former employees because the businesses no longer operate. The interests of the Court, non-parties, and the public all weigh against granting non-debtors accused of RICO violations and fraud the windfall of delay purchased through its co-conspirators' bankruptcy, which A-CAP seeks to control.

The Court should deny A-CAP's motion, decide the non-stayed defendants' pending motions to dismiss, and allow the case to proceed.

## STATEMENT OF FACTS

### A. LEADENHALL SUES A-CAP AND ITS CO-CONSPIRATORS AS JOINT TORTFEASORS, EACH WITH INDEPENDENT LIABILITY.

This action arises from a fraudulent scheme perpetrated on Leadenhall by a group of defendants who conspired to lie about the collateral purportedly securing a $600+ million credit facility. The defendants include two corporate families: (1) the 777 Entity Defendants, a group of limited liability companies (including several bankruptcy-remote special purpose vehicles) owned by parent companies 777 Partners LLC and 600 Partners LLC and those parent companies' sole owners and former managers, Josh Wander and Steven Pasko; and, (2) A-CAP and Kenneth King, the 777 Entity Defendants' senior lender and its principal, who facilitated and helped conceal the scheme. ECF No. 187 ("Corr. Am. Compl.") ¶¶ 5, 49, 51, 69.

Leadenhall asserts RICO, fraud, and contract claims against these defendants as joint tortfeasors who conspired to induce Leadenhall to lend money by falsifying the existence of, and/or Leadenhall's security interest in, the receivables pledged to it. *See generally id*. Although

A-CAP and the 777 Defendants were co-conspirators in this effort, A-CAP's liability rests on its own conduct—it is not merely derivative of the 777 Defendants' acts. Both A-CAP and King are independently liable for the breaches and torts they committed.

The Amended Complaint alleges that A-CAP was the "puppeteer" to 777 Partners' "marionette," where nothing happened at 777 without A-CAP's approval. *Id.* ¶ 199. A-CAP created a Steering Committee to oversee every 777 Partners transaction and decision, with A-CAP's CEO, King, at its head. *Id.* ¶ 201. In March 2023, A-CAP directed its management to move into 777's offices and take over operations; its personnel displaced the 777 employees responsible for allocating collateral and preparing Compliance Reports, and A-CAP thereafter took over the preparation and submission of fraudulent Compliance Reports to Leadenhall. *Id.* ¶¶ 202-10. A-CAP blocked Leadenhall's contractual right to audit its collateral, directed 777 Partners' payroll and payment decisions in a manner designed to keep the enterprise operating without alerting creditors, and "did not express even a hint of surprise or concern" when Leadenhall informed A-CAP of the fraud. *Id.* ¶¶ 205–06, 212, 214, 216-18. A-CAP then used its control to strip assets from 777 and waste money on "protective advances" that helped cover up the fraud and preserve A-CAP's own position. *Id.* ¶¶ 219–29, 287-96. During restructuring negotiations, A-CAP made false representations to Leadenhall to perpetuate the scheme and induce Leadenhall to forbear from exercising its rights. *Id.* ¶ 397(e). Those acts independently support A-CAP's liability as a joint tortfeasor and co-conspirator.

### B. AFTER ANOTHER CREDITOR TRIES TO FORCE 777 PARTNERS INTO BANKRUPTCY, A-CAP ORCHESTRATES A 777 CHAPTER 11 FILING PROPOSING TO PROVIDE DIP FINANCING IN EXCHANGE FOR RELEASES AND FINDINGS CLEANSING A-CAP'S PREPETITION CONDUCT.

On July 16, 2026, Vida Longevity Fund LP, Vida Insurance Credit Opportunity Fund II, LP, and Vida Insurance Credit Opportunity Fund III, LP filed an involuntary Chapter 7 petition

against 777 Partners in the Southern District of Florida.[2] On July 17, 2026, 777 Partners filed a suggestion of bankruptcy notifying this Court and the parties of the application of the automatic stay to 777 Partners. ECF No. 575. On July 24, 2026, 777 Partners filed an emergency motion to extend the automatic stay to the other 777 Entity Defendants on the basis that 777 Partners was a guarantor of those parties' obligations to Leadenhall; 777 Partners did not seek a stay as to Defendants A-CAP, King, Wander, or Pasko. ECF No. 578. The Court deferred briefing on 777 Partners' motion until after the August 11, 2026 response date for the Chapter 7 petition. ECF No. 585. On August 9, 2026, 777 Partners, 600 Partners, SuttonPark Capital, and SuttonPark Servicing (the "Debtors"), along with certain other affiliates that are not parties to this case, filed voluntary Chapter 11 petitions in the Northern District of Texas, commencing the jointly administered cases styled *In re Signal National LLC*, No. 26-90190 (ELM) (Bankr. N.D. Tex. Aug. 9, 2026); ECF No. 594-3, Declaration of Mark Shapiro in Support of Chapter 11 Petitions and First Day Motions ("Shapiro Decl.") ¶ 7; ECF No. 587. That bankruptcy filing automatically stayed this action as to the Debtors. On August 13, 2026, Leadenhall and the Debtors stipulated to a stay of the remaining non-debtor 777 Entity Defendants and to the denial of 777 Partners' emergency motion as moot. The stipulation, which the Court ordered on August 13, 2026, requires joint status reports every 45 days and expressly provides that the stay does not apply to any other defendants. ECF No. 589.

[2] The Chapter 7 case was later transferred to the Northern District of Texas after certain 777 entities filed voluntary Chapter 11 proceedings. *See* Order Granting Motion to Transfer Venue, *In re: 777 Partners LLC*, Case No. 1:26-bk-19312 (S.D. Fla. Aug. 24, 2026).

Concurrent with their Chapter 11 petition, the Debtors moved in the Bankruptcy Court for approval of A-CAP and its affiliates, which have billions of dollars of exposure to the Debtors' estates,[3] to fund the Chapter 11 process—with serious strings attached. In exchange for a proposed $6.25 million in Debtor-in-Possession ("DIP") financing (for a business that has no plans to continue operating), A-CAP and its affiliates sought: releases of all claims against them by the Debtor estates (which, based on the assets they have obtained from 777 over the past several years, may be worth billions of dollars[4]); the court's blessing of pre-petition releases given to A-CAP by the Debtors; and findings that A-CAP acted at arm's length and in good faith in its transactions with 777. *In re Signal National LLC*, No. 26-90190 (ELM) (Bankr. N.D. Tex. Aug. 9, 2026), ECF No. 11 ("DIP Credit Agreement") § 3.2(a)(iii). While A-CAP has agreed to water down some of these conditions in the face of objections from other creditors, including Leadenhall (and in the face of an alternative financial proposal from Leadenhall without the strings), the terms of the proposed DIP are still being litigated, with A-CAP seeking significant control over the bankruptcy process. *Id.* at § 8.1(o); Declaration of Leigh Nathanson in Support of Plaintiff's Opposition, Ex. A ("Aug. 11, 2026 Bankruptcy Hr'g Tr.") at 59:25–60:7.

## LEGAL STANDARD

Under Section 362(a)(1) of the Bankruptcy Code, the filing of a bankruptcy petition automatically stays "the commencement or continuation" of any "action or proceeding against the debtor that was or could have been commenced before the commencement of the case under

[3] *See* Shapiro Decl. at ¶¶ 33-40 (listing A-CAP Holdco Facility with approximately $1,259,454,011.76 in outstanding principal and interest as of June 30, 2026 and A-CAP Unsecured Facility carrying principal balance of $25,037,805.82).

[4] *See* Shapiro Decl. Ex. B (listing 9 asset dispositions from 777 affiliates to A-CAP affiliates).

this title, or to recover a claim against the debtor that arose before the commencement of the case under this title." 11 U.S.C. § 362(a)(1). "As a rule, the automatic stay under 11 U.S.C. § 362(a) does not apply to non-debtors"—such as A-CAP. *In re Durr Mech. Constr., Inc.*, 604 B.R. 131, 136 (Bankr. S.D.N.Y. 2019).

As an end-run around this rule, A-CAP asks the Court to invoke its "discretionary authority" to stay this action for six months. *See* ECF No. 593, A-CAP Mem. of Law In Support of Mot. to Stay Proceedings ("A-CAP Br.") at 9. "Courts are generally reluctant to stay proceedings because they are concerned with vindicating the plaintiff's right to proceed with its case." *Exp.-Imp. Bank of U.S. v. Hi-Films S.A. de C.V.*, No. 09 CIV 3573 PGG, 2010 WL 3743826, at *12 (S.D.N.Y. Sept. 24, 2010); *see also McDonald v. Piedmont Aviation*, 625 F. Supp. 762, 767 (S.D.N.Y. 1986) (rather than grant discretionary stays, courts prefer to "uphold[] [the] plaintiff's right to chart the course of his own litigation and to prosecute his claims in the manner of his choice"). In considering a motion for a discretionary stay, courts generally consider: "(1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendants; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest." *Exp.-Imp. Bank*, 2010 WL 3743826, at *12. "These factors are to be balanced, with the principal objective being the avoidance of unfair prejudice." *Am. S.S. Owners Mut. Prot. and Indem. Ass'n v. Lafarge N. Am. Inc.*, 474 F. Supp. 2d 474, 482 (S.D.N.Y. 2007) (citing *Consol. Edison Co. of N.Y. v. United States*, 30 F. Supp. 2d 385, 389 (S.D.N.Y. 1998)). The party moving for a stay "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else." *Landis v. North American Co.*, 299 U.S. 248, 255

(1936); *see also Rankine v. Levi Strauss & Co.*, 674 F. Supp. 3d 57, 68 (S.D.N.Y. 2023). As discussed below, A-CAP does not seriously address this standard.

## ARGUMENT

### I. THE STAY THAT A-CAP SEEKS WOULD UNDERMINE THE BANKRUPTCY CODE.

A-CAP's motion for a stay is based solely on the voluntary Chapter 11 bankruptcy proceeding filed by four of A-CAP's co-defendants, which bankruptcy A-CAP orchestrated and facilitated. *See* A-CAP Br. 1-2. The law is well developed on when a non-debtor co-defendant may take advantage of the automatic bankruptcy stay—and this is not such a circumstance. "It is well-established that stays pursuant to § 362(a) are limited to debtors and do not encompass non-bankrupt co-defendants." *Teachers Ins. & Annuity Ass'n of Am. v. Butler*, 803 F.2d 61, 65 (2d Cir. 1986); *see also In re Genger*, No. 19-13895 (JLG), 2025 WL 1727497, at *9 (Bankr. S.D.N.Y. June 20, 2025) ("[T]he stay of litigation does not protect nondebtor parties who may be subjected to litigation for transactions or events involving the debtor.") (quoting 3 Collier on Bankruptcy ¶ 362.03 (16th ed. 2021)); *Garcia v. Hatchet Works Corp.*, 659 B.R. 626, 631 (E.D.N.Y. 2024) ("It is well-established that automatic stays under § 362(a) are limited to debtors and do not automatically encompass non-bankrupt third-part[ies][.]"). The Second Circuit recognizes a narrow exception under which the stay may extend to non-debtors where "a claim against the non-debtor will have an immediate adverse economic consequence for the debtor's estate." *Queenie, Ltd. v. Nygard Int'l,* 321 F.3d 282, 287–88 (2d Cir. 2003); *see also Uto v. Job Site Servs., Inc.*, 444 B.R. 222, 224 (E.D.N.Y. 2011) ("[T]he automatic stay can be extended to non-debtors, but only where there exist unusual circumstances … which would require something more than the mere fact that one of the parties to the lawsuit has filed … bankruptcy.") (internal citations omitted; alteration in original). "Limited or theoretical risk" of

adverse impact on the debtor estates is "insufficient," and thus, "in the absence of evidence which demonstrates any impact upon the debtor's reorganization effort, the stay cannot be extended to a solvent co-defendant." *Gray v. Hirsch*, 230 B.R. 239, 244 (S.D.N.Y. 1999) (internal citations, quotation marks, and alterations omitted).

Where, as here, "a [debtor's] codefendant is independently liable—as, for example, where the debtor and another are joint tort feasors … the protection afforded a debtor under the automatic stay would clearly not extend to such non-debtor." *Tenas-Reynard v. Palermo Taxi Inc.*, 2016 WL 1276451, at *4 (S.D.N.Y. Mar. 30, 2016). Neither A-CAP nor the debtors contend that Leadenhall's prosecution of claims against A-CAP would adversely impact the bankruptcy estate, nor does A-CAP dispute that its liability to Leadenhall is independent of the Debtors'. *See Rauch Indus., Inc. v. Heart Artist LLC*, No. 25 CIV. 7950 (JHR) (GS), 2026 WL 2350005, at *2 (S.D.N.Y. Aug. 12, 2026) ("Courts have frequently declined to extend the automatic stay where the debtor fails to attempt to" show that the absence of a stay would "have an immediate adverse economic impact on" the debtor.) (collecting cases). Consistent with these limitations, the Debtors have not sought a stay extension from the Bankruptcy Court, nor does A-CAP dispute that it would not be entitled to such relief here.

Granting a stay based on a co-defendant's bankruptcy where the Bankruptcy Code would clearly preclude such relief would exceed the limits of the Court's discretion. *Teachers Ins.*, 803 F.2d at 65; s*ee also Luppino v. York*, 562 B.R. 894, 898 (W.D. Tex. 2016) ("[T]he district court may [ ] grant a discretionary stay of the action against non-bankrupt parties, though this discretion is limited.") (citing *Wedgeworth v. Fibreboard Corp.*, 706 F.2d 541, 544–45 (5th Cir. 1983)). A-CAP relies heavily on the Court's July 27 observation that it would be "odd" to stay the 777 Entity Defendants while proceeding against the remaining defendants—citing that

language no fewer than five times in its brief. A-CAP Br. at 1, 3-4, 9. But that is not the standard for a discretionary stay. And this is indeed an odd situation: a senior lender alleged to have conspired with the borrower (1) orchestrates the borrower's bankruptcy and (2) uses the bankruptcy to seek a stay of claims against it. As the Second Circuit has held in analyzing the bounds of a bankruptcy court's analogous "jurisdiction to issue a stay with respect to non-bankrupt co-defendants, it is clear that any such jurisdiction cannot extend to efforts made in bad faith by non-bankrupt co-defendants in order to escape from the liability imposed by an adverse district court judgment." *Teachers Ins.*, 803 F.2d at 65–66. That is precisely what A-CAP seeks here—to use a bankruptcy process it controls to preempt this Court's adjudication of preexisting, direct claims against it.

## II. A-CAP FAILS TO MEET ITS BURDEN TO SHOW THAT A DISCRETIONARY STAY IS WARRANTED.

A-CAP's contention that "The Chapter 11 Cases Have Fundamentally Changed the Procedural Posture of This Action," A-CAP Br. 9, is disingenuous. A-CAP and the debtors have represented to the Bankruptcy Court that the Chapter 11 filing was the culmination of a two-year planned winddown starting in May 2024 when this litigation was filed. Shapiro Decl. ¶¶ 11–12, 53–55, 69. Both the 777 Entity Defendants and A-CAP knew this was coming; only Leadenhall did not. A-CAP orchestrated the very circumstances it now seeks to exploit to avoid defending the claims against it. If A-CAP truly believed it would be unfair or impossible for the Court to "adjudicate claims [against A-CAP] that depend overwhelmingly on conduct at 777, using a partial factual record, without the participation of the entities and individuals Leadenhall alleges were the primary actors," A-CAP Br. 9, it could have: (1) stopped funding the 777 business when this lawsuit was filed and initiated a Chapter 11 proceeding then or (2) pursued any necessary discovery from the 777 Entity Defendants over the past two years since discovery began.

Indeed, A-CAP has exercised formal control of the 777 Entity Defendants by proxy since at least December 2024, Aug. 11, 2026 Bankruptcy Hr'g Tr. at 114:7–16, which presumably gives A-CAP access to any information it may need to defend against Leadenhall's claims. The fact that the claims against A-CAP have proceeded apace despite the partial stay that has already been in place as to Defendants Wander and Pasko only illustrates that pursuing claims against some parties while others are stayed, where circumstances require it, is both necessary and practicable.

As such, and as discussed more fully below, even if this Court were inclined to extend the stay beyond what the Bankruptcy Code permits, none of the factors courts consider in assessing the propriety of a discretionary stay weighs in favor of a stay here.

### A. Leadenhall Has a Strong Interest in Proceeding Expeditiously in, and Will Be Prejudiced by Further Delay of, this Litigation.

A stay should not be granted if a plaintiff's "interests in proceeding expeditiously outweigh the burden on the[] defendants." *ZCap Equity Fund v. LuxUrban Hotels Inc*., 2025 WL 2939255, at *2 n. 2 (S.D.N.Y. Oct. 16, 2025). "Courts generally give weight to a plaintiff's strong interest in proceeding with its litigation." *Exp.-Imp. Bank*, 2010 WL 3743826, at *12 (citing *Lasala v. Needham & Co.*, 399 F. Supp. 2d 421, 428 (S.D.N.Y. 2005)).

Each day that Leadenhall is delayed in prosecuting this action prejudices Leadenhall, as its monetary damages grow. Leadenhall has already waited over 20 months for the pending motions to dismiss to resolve, which was deferred pending A-CAP's appeal of this Court's injunction to protect Leadenhall from the irreparable harm posed by the 777 Entity Defendants' dissipation of assets to A-CAP. ECF No. 146; ECF No. 200. As the debtors have readily admitted in the bankruptcy proceedings, consistent with their prior representations to this Court, the 777 Entity Defendants have no means to repay Leadenhall—in significant part due to A-CAP's appropriating those defendants' assets for its own benefit since the filing of this litigation.

ECF 101-1 at 5:24-25 (noting that Leadenhall has "hundreds of millions of dollars at risk," while Defendants were unable to "put up $5 million"); ECF 128 at 56:13-25 (finding that Borrowers and Guarantors "would be unable to satisfy a substantial damage award and intend to frustrate any judgment on the merits by making an award uncollectible"); ECF 148 at 5:24–25 (finding that preliminary injunction was necessary to prevent asset stripping); Aug. 11, 2026 Bankruptcy Hr'g Tr. at 69:10–70:9 (Shapiro confirming that "various subsidiaries of the Debtor entities, and some of the Debtor entities themselves, have transferred assets to affiliates of A-CAP" and that these were "in partial satisfaction of hundreds of millions of dollars of debt that are allegedly owed by the Debtors or their affiliates to A-CAP and its affiliates"); Shapiro Decl. ¶ 65. A further discretionary stay to protect A-CAP would compound that prejudice.

A-CAP's contention that Leadenhall would suffer no prejudice from a temporary stay because "Leadenhall's claims against A-CAP and King cannot be efficiently adjudicated in isolation" is meritless. A-CAP Br. at 10. First, it ignores the reality that Leadenhall *will* have to litigate its claims against A-CAP without the debtor defendants, which have stated that they plan to liquidate and will not emerge from bankruptcy. Shapiro Decl. ¶¶ 68, 74–75. A-CAP and the debtors planned this filing as the culmination of a two-year winddown of the 777 Entity Defendants, and A-CAP has had two years to collect discovery from those parties pre-bankruptcy—indeed, they have produced over 100,000 documents to date. A-CAP attempts to preempt the fact that "the stay would indefinitely shield A-CAP and King from liability" by asking for only six months, A-CAP Br. 10, but six months is not a meaningful endpoint because the debtors have made clear that they will not emerge from bankruptcy to defend this case. The debtors' own First Day Declaration contemplates a multi-year liquidating-trust process for estate assets and a second wave of affiliate Chapter 11 filings. Shapiro Decl. ¶¶ 14–15, 28–29, 68, 74–

75. And because the stay A-CAP requests is not tethered to the automatic stay—because the Bankruptcy Code does not allow it—A-CAP will undoubtedly seek additional discretionary extensions on the same basis it advances now, *i.e.*, litigation stemming from the Bankruptcy Cases.

A-CAP's fearmongering about "fragmenting" this case elides the fact that the 777 Entity Defendants had already effectively ceased operations prior to the Chapter 11 petition. As such, the stay of claims against those entities will not meaningfully change the *status quo*. Based on A-CAP's and the debtors' representations to the Bankruptcy Court, the 777 Entity Defendants had already been defending this action with a skeleton crew of only fifteen remaining employees at 777 Partners. *See* Shapiro Decl. ¶¶ 30–31. Most employees with relevant knowledge departed well before the bankruptcy and remain subject to third-party discovery regardless of the stay. Further delay therefore poses a real risk of compromising evidence, as witnesses' memories fade. *See Kaplan v. Lebanese Canadian Bank, SAL*, 2022 WL 2541081, at *1 (S.D.N.Y. July 7, 2022) (denying stay where "[a]s more time passes, the higher the risk that witnesses will become unavailable and memories will fade"); *Kirschner v. J.P. Morgan Chase Bank*, *N.A*., 2020 WL 230183, at *3 (S.D.N.Y. Jan. 15, 2020) (denying stay given "risk of witnesses' memories further fading with time").

A-CAP's cited authority highlights the dispositive distinctions between this case and those in which a stay was appropriate. All of A-CAP's cases involve circumstances where the debtor and non-debtor shared a unity of interests—the "unusual circumstances" under which the Bankruptcy Code permits extension of the automatic stay—unlike A-CAP's position as an independent joint tortfeasor of the debtor Defendants. For example, in *Schweitzer v. Nevels*, 2026 WL 625090 (E.D. Pa. Mar. 5, 2026), the court entered a discretionary stay of claims against

the chairman, CEO, and largest shareholder of a bankrupt investment advisory firm based on "alleg[ations] that [he] was the alter ego of [the debtor] and thereby personally liable for *[the debtor's]* allegedly wrongful conduct." *Id.* at *1 (emphasis added). In other words, the predicate for the stay was that the claims against the officer's liability were *derivative*—not independent—of the debtor's liability. *Id.* at *3 ("Plaintiffs' claims against TSG … are identical to what Plaintiffs allege against Nevels."). Here, by contrast, A-CAP is an alleged co-conspirator and joint tortfeasor of 777 with liability independent of the debtors'—not an alter ego with derivative liability. Another key distinction upon which the *Schweitzer* court relied was "the advanced posture of TSG's bankruptcy matter, which ha[d] been pending for almost four years" when the stay was requested. *Id.* at *4. Here, Leadenhall has invested significant resources in prosecuting its claims against A-CAP for over two years *before* the bankruptcy proceeding. A-CAP cannot avoid the consequences of its own decision to keep the debtors out of bankruptcy while fighting Leadenhall—including filing three retaliatory lawsuits between A-CAP and the debtors—by appealing to the Court's discretion now.

Courts routinely deny discretionary stays in situations like this, when the non-debtor seeking a stay is an alleged co-conspirator of the debtor. *See, e.g.*, *CAE Indus. Ltd. v. Aerospace Holdings Co.*, 116 B.R. 31, 32 (S.D.N.Y. 1990) (denying stay as to a non-debtor, joint tortfeasor to avoid "giving an unwarranted immunity from suit to solvent co-defendants") (collecting cases); *Applestein v. Kleinhendler*, 2021 WL 493424, at *4 (E.D.N.Y. Feb. 10, 2021) (denying stay given "non-overlapping liability questions" against non-debtor defendants). These decisions confirm that alleged participation in a common scheme does not transform independently actionable claims against a non-debtor into claims that must await the debtor's bankruptcy.

In another contrast to *Schweitzer*, there is no prospect here that "the bankruptcy proceeding could narrow or resolve dispositive issues" such that "allowing the district-court case to proceed risk[s] duplicative litigation and inconsistent judgments." A-CAP Br. 10. All eight of the purportedly "overlapping issues" A-CAP claims the Bankruptcy Cases will resolve, A-CAP Br. 5-7, involve the nature and extent of Leadenhall's independent claims against the *estates*—not Leadenhall's claims against *A-CAP*. Underscoring this point, all but one of the eight issues bears on damages—and specifically the size of the discrepancy between the amount of collateral Leadenhall recovered (through foreclosure) and the amount of collateral it was supposed to have (*see* issues 1, 3–8) as it relates to a potential damages offset for the debtors. As this Court found in issuing the TRO, 777's liability for defaulting on its loans is not disputed: "the defendants do not dispute any of Leadenhall's allegations of breaches by the defendants." ECF No. 128, Jun. 7, 2024 Hr'g Tr. 54:25-55:1. The amount by which the debtors might offset the claims against *them* have no bearing on A-CAP's independent liability to Leadenhall and the damages it caused—and in any case, this Court is highly unlikely to be adjudicating damages offsets at all within the next six months. The final "overlapping issue"—whether Leadenhall's claim against 777 Partners and 600 Partners is a secured or unsecured claim—is irrelevant to Leadenhall's claims against A-CAP, as to which Leadenhall has never claimed a security interest.

Only this Court may make liability and damages determinations on Leadenhall's direct claims against A-CAP, over which the bankruptcy court lacks jurisdiction. A future litigation trustee may bring *different* claims against A-CAP for losses to the *debtors*—either derivative claims common to all 777 creditors or the debtors' direct claims against A-CAP—but those claims (which do not yet exist) will be independent of Leadenhall's litigation. *See In re Tronox Inc.*, 855 F.3d 84, 99 (2d Cir. 2017) (If creditors "have a claim for injury that is particularized as

to them, they are exclusively entitled to pursue that claim, and the bankruptcy trustee is precluded from doing so.") (internal citations, quotation marks, and ellipses omitted). A-CAP should not be awarded an immediate stay based on speculation about what the bankruptcy court might be asked to resolve in the future when there is no dispute that the bankruptcy court *cannot* adjudicate Leadenhall's claims against A-CAP.

If A-CAP's participation in "the same alleged scheme involving the stayed defendants," A-CAP Br. 10, were enough to warrant a discretionary stay, every joint tortfeasor would have an incentive to do exactly what the debtors and A-CAP did here: transfer all assets to one co-conspirator, have the other declare bankruptcy, and use the stay to bring preexisting litigation against the solvent entity to a halt.

**B. A-CAP Would Suffer No Undue Burden From Proceeding in This Litigation.**

A-CAP identifies no burden it would face in the absence of a stay. It argues only that proceeding with discovery "would create an asymmetric and fragmented discovery process" because other "entity defendants are stayed" and "Wander is effectively unavailable." A-CAP Br. at 5, 11. The contention that "[t]his action is now stayed as to every defendant other than A-CAP and King," *id*. at 2, is false. *Discovery* is stayed as to Wander and Pasko, but only pending their motions to dismiss.[5] *See* ECF 252. Nor is there any chance that the Debtors are going to emerge from bankruptcy and resume participation in this case—so a stay of claims against A-CAP will not obviate the challenge of prosecuting claims against them with the 777 Entity Defendants as non-parties. More importantly, A-CAP fails to explain how the fact that certain

[5] Nor does Wander's purported "unavailability" support the relief A-CAP seeks. Wander's criminal trial is set for October 19, 2026. If anything, the imminent resolution of the criminal case underscores that a stay would accomplish nothing beyond additional delay.

parties are stayed amounts to any burden on *A-CAP*. If anything, those issues burden *Leadenhall*, which bears the burden of proof and has nonetheless prosecuted its case against A-CAP expeditiously. A-CAP has already produced 26,795 documents and responded to five interrogatories. Proceeding with discovery now—as A-CAP is currently obligated to do—would impose no added *burden* on A-CAP without a stay.

To the extent that "Leadenhall's claims against A-CAP and King are predicated on the acts or omission of the debtor-entity defendants," A-CAP Br. 12, Leadenhall and A-CAP are on equal footing in terms of discovery. And the parties are not without evidence from 777 Partners, which has already produced 129,456 documents and responded to six interrogatories and two requests for admission. As noted above, A-CAP knew the Chapter 11 filing was coming and had over two years to propound any discovery requests on the 777 Entity Defendants. Third-party discovery remains available for any stayed parties and their former principals or executives. *See Stih v. Rockaway Farmers Mkt., Inc.*, 656 B.R. 308, 313 (E.D.N.Y. 2024); *Hong v. Mommy's Jamaican Mkt. Corp.*, No. 20-cv-9612 (LJL), 2023 WL 3568807, at *2 (S.D.N.Y. May 18, 2023). Leadenhall has already served Rule 45 subpoenas on over forty nonparties. Just as a plaintiff may sue some but not all members of a conspiracy, the fact that this case is stayed as to certain of A-CAP's co-defendants presents no unfair prejudice to A-CAP.

A-CAP's reliance on *Plaintiff Funding Holding, LLC v. Blue Ocean Partners LLC*, No. 22 CIV. 4094 (KPF), 2023 WL 3506142 (S.D.N.Y. Apr. 18, 2023) is misplaced for much the same reason that all of its cited authority is off-point—the claims at issue there did not differentiate between debtor and non-debtor defendants. *Id.* at *2 (granting discretionary stay as to non-debtor where plaintiff "hardly [sought] to differentiate between both parties, one of whom is a debtor and one of whom is not."). Conversely, Leadenhall's claims clearly distinguish

between the 777 Entity Defendants' fraud on Leadenhall and A-CAP's independent conduct furthering that fraud. Leadenhall's RICO and fraud claims against the 777 Entity Defendants concern perpetrating the fraudulent collateral scheme—creating fictitious receivables, double-pledging collateral, forging bank statements, and diverting proceeds. Corr. Am. Compl. ¶¶ 2, 8–12, 119–44, 151–74. By contrast, the claims against A-CAP concern A-CAP's distinct role as a purported lender that seized control of 777's operations through the Steering Committee, took over preparation of fraudulent Compliance Reports, blocked Leadenhall's collateral audits, stripped assets, and made false representations during restructuring negotiations. *Id.* ¶¶ 199–229, 287–96, 397(e). These are not identical or derivative claims against different parties; they involve fundamentally different conduct, knowledge, and bases for liability.

A-CAP's reliance on *Futch v. Starboard With Cheese, LLC* is similarly unpersuasive, as the claims at issue there did not differentiate between debtor and non-debtor defendants *and* asserted that the non-debtor was liable for the debtor's conduct through indemnification. *See* 830 F. Supp. 3d 736, 742 (S.D. Ill. 2025). A-CAP's reliance on *In re Ionosphere Clubs Inc.* is even further afield. There, the district court affirmed an injunction barring suits against a debtor's non-debtor codefendants based on the bankruptcy court's finding, consistent with the Bankruptcy Code, that the lawsuits "could adversely affect the *debtor's estate*[.]" 124 B.R. 635, 641-42 (S.D.N.Y. 1991) (emphasis added). This case holds that a stay is appropriate where there is burden to the *debtor*—not where the solvent non-debtor seeks to avoid the "burden" of defending its own claims. Accordingly, A-CAP has made no showing that it would suffer any undue burden in the absence of a stay.

**C. The Interests of the Court Weigh Against a Stay.**

"[A] court's interest is usually best served by discouraging motions to stay…. Courts have an interest in managing their cases and efficiently resolving litigation." *GOJO Indus., Inc.*

*v. Innovative Biodefense, Inc.*, 407 F. Supp. 3d 356, 364 (S.D.N.Y. 2019) (citing *Motorola, Inc. v. Abeckaser*, 2009 WL 816343, at *3 (E.D.N.Y. Mar. 26, 2009)). There is no reason to diverge here. Because A-CAP's liability in this action, and fact discovery regarding A-CAP's liability, will not impact the bankruptcy estate, there is no risk of duplicative litigation here. *See Applestein*, 2021 WL 493424, at *4 (denying stay where it would not "promote judicial economy" "[b]ecause there are non-overlapping liability questions"); *Berkley Custom Ins. Managers v. York Risk Servs. Grp., Inc.*, 2020 WL 359941, at *2 (S.D.N.Y. Jan. 22, 2020) (denying stay where the parallel litigation cannot be "an adequate vehicle for the complete resolution of the issues between the parties" (citing *Consol. Edison Co. of N.Y.*, 30 F. Supp. 2d at 389).

A-CAP claims that the issues to be resolved in the bankruptcy proceeding, "including what Leadenhall is actually owed, what credit it must receive for collateral it foreclosed upon, and what claims, defenses, or offsets the estates may have against Leadenhall … may narrow, resolve, or materially reshape the claims asserted here[.]" A-CAP Br. 12. As discussed *supra*, none of the eight issues A-CAP identifies bears on discovery and further proceedings *as to A-CAP* on Leadenhall's direct claims against it in this case. Accordingly, a stay as to A-CAP would merely delay this Court's adjudication of liability and damages issues *as to A-CAP* over which the Bankruptcy Court lacks jurisdiction.

Once again, A-CAP cites cases where—unlike the distinct theories that Leadenhall asserts against A-CAP—the claims against debtors and non-debtors were derivative or "identical." *Schweitzer*, 2026 WL 625090, at *3 (cited at A-CAP Br. 10, 12); *see also Futch*, 830 F. Supp. 3d at 742 (cited at A-CAP Br. 12-14). Moreover, *Ritchie Capital Management, L.L.C. v. Jeffries*, 849 F. Supp. 2d 881 (D. Minn. 2012), is a case about abstention, not a discretionary stay.

There, an investor loaned to companies that later filed for bankruptcy after their owner was revealed to have been operating a Ponzi scheme, and the investor filed a proof of claim against one of the bankrupt companies, which was later contested. *Id.* at 885-86. The investor then separately sued executives of the bankrupt company. *Id.* at 887. No party sought a stay in *Jeffries*—instead, the court dismissed the later complaint on abstention grounds, holding that "the litigation is duplicative because [the investor] is litigating the same issue … at the same time in two federal courts." *Id.* at 888. The only forum in which Leadenhall is prosecuting its claims against A-CAP is this one.

The bankruptcy process will determine what the estates owe Leadenhall, not what A-CAP owes Leadenhall. It therefore presents no preclusion or duplication problem as to the separate claims here. *See Applestein*, 2021 WL 493424, at *4; *CAE Indus. Ltd.*, 116 B.R. at 32. A-CAP's own briefing proves the point. The issues it identifies as purportedly "overlapping" with this litigation—valuation, commercial reasonableness, and deficiency credits for foreclosed collateral—concern damages mitigation and claim calculation against the estates. They do not bear on A-CAP's liability, and any damages offset issues will not arise within six months. Accordingly, A-CAP has not shown that a stay would further the Court's interests here.

**D. The Interests of Non-Parties Weigh Against a Stay.**

A-CAP identifies no non-parties' interests that would be served by staying this action. Instead, A-CAP vaguely references "rulings or factual findings … that could bear on issues being litigated in the Bankruptcy Cases by parties not before this Court." A-CAP Br. 13. But again, a ruling by this Court as to A-CAP, which is not a debtor, would not impact the bankruptcy estate—indeed, the debtors stipulated to a stay expressly excluding A-CAP. *See* ECF No. 589. A-CAP identifies no interest in a stay aside from its own. The only non-parties it identifies with a concrete stake are the interim DIP lenders—which include A-CAP and its affiliates.

**E. The Public Interest Weighs Against a Stay.**

The public interest strongly favors allowing a plaintiff to proceed expeditiously in its chosen forum. *ZCap Equity Fund*, 2025 WL 2939255, at *2 n.2; *Carroll v. Trump*, 687 F. Supp. 3d 394, 403 (S.D.N.Y. 2023); *see also GOJO Indus., Inc.*, 407 F. Supp. 3d at 361–62. Here, the public interest is particularly strong because Leadenhall alleges RICO violations and a massive fraud causing over $600 million in losses that resulted in criminal prosecution. The public interest favors prompt adjudication of A-CAP's role.

A-CAP cites cases finding that the public interest favors protecting *the bankruptcy estate* through a stay—but A-CAP has made no showing that Leadenhall's claims against A-CAP threaten the bankruptcy estate. Again, the cases that A-CAP cites are distinguishable on this basis—the public interest at issue was preserving the *debtors'* assets, not shielding a solvent non-debtor from defending a preexisting litigation. *See In re Adelphia Commc'ns Corp.*, 361 B.R. 337, 342 (S.D.N.Y. 2007) (granting stay pending appeal of bankruptcy court's confirmation of a chapter 11 plan); *In re Pirraglia*, 2026 WL 1683573, at *7 (Bankr. S.D.N.Y. June 10, 2026) (bankruptcy court granting limited extension of automatic stay to bank account of non-debtor corporation owned by debtor).

The public interest disfavors allowing a non-debtor accused of RICO violations and fraud to purchase delay through its alleged co-conspirators' bankruptcy. It favors prompt adjudication in the forum where these claims are pending—especially where the criminal indictment A-CAP invokes describes the same double-pledging of collateral and false collateral reporting at the heart of Leadenhall's claims.

**CONCLUSION**

For the foregoing reasons, Leadenhall respectfully requests that the Court deny A-CAP's motion to stay the proceedings.

Dated: New York, New York
August 31, 2026

KING AND SPALDING LLP

*/s/ Leigh M. Nathanson*

Leigh M. Nathanson
Brian Donovan
Mateo de la Torre
1290 Avenue of the Americas
New York, NY 10104
(212) 556-2100
lnathanson@kslaw.com
bdonovan@kslaw.com
mdelatorre@kslaw.com

Peter Starr
1180 Peachtree St NE
Atlanta, GA 30309
(404)-572-4600
pstarr@kslaw.com

Zoe Beiner (*pro hac vice*)
1700 Pennsylvania Ave NW
Washington, D.C. 20006
(202)-737-0500
zbeiner@kslaw.com

*Attorneys for Plaintiffs*

**CERTIFICATION OF COMPLIANCE**

I hereby state that the foregoing Memorandum of Law was prepared on a computer using Microsoft Word. Pursuant to the word count system in Microsoft Word, the total number of words in the Memorandum of Law, excluding the caption, table of contents, table of authorities, signature block, and this certification is 6,857. The foregoing Memorandum of Law complies with the formatting rules set forth in § II.D of the Court's Individual Practices.

Dated: New York, New York
August 31, 2026

KING AND SPALDING LLP

*/s/ Leigh M. Nathanson*
Leigh M. Nathanson
*Attorney for Plaintiffs*