# Exhibit A

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| In Re: | ) | **Case No. 26-90190-elm-11** |
| | ) | *Jointly Administered* |
| SIGNAL NATIONAL, LLC, | ) | |
| et al., | ) | Fort Worth, Texas |
| | ) | August 11, 2026 |
| Debtors. | ) | 2:30 p.m. Docket |
| | ) | |
| | ) | FIRST DAY HEARINGS |
| ______________________________ | ) | |

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE EDWARD L. MORRIS,
UNITED STATES BANKRUPTCY JUDGE.

APPEARANCES:

| | |
|---|---|
| For the Debtors: | Jason S. Brookner<br>Amber M. Carson<br>Emily Shanks<br>Blake M. Bryan<br>Daniel B. Howry<br>GRAY REED<br>1845 Woodall Rodgers Freeway,<br>Suite 1300<br>Dallas, TX 75201<br>(469) 320-6132 |
| For ING Capital, LLC: | Jamie Huffman<br>MORGAN, LEWIS & BOCKIUS, LLP<br>1717 Main Street, Suite 3200<br>Dallas, TX 75201<br>(214) 466-4000 |
| For ING Capital, LLC: | Matthew C. Ziegler<br>Stephan E. Hornung<br>Michael H. Carpenter<br>Michael Morgan<br>MORGAN, LEWIS & BOCKIUS, LLP<br>2222 Market Street<br>Philadelphia, PA 19103-3007<br>(215) 963-5000 |
| For Dacian Master Fund, LP: | Frasher Murphy<br>HAYNES AND BOONE, LLP<br>2801 N. Harwood Street, Suite 2300<br>Dallas, TX 75201<br>(214) 651-5246 |

APPEARANCES, cont'd.:

| | |
|---|---|
| For Dacian Master Fund, LP: | Kaitlin R. Walsh<br>Dormie Yu Heng Ko<br>MINTZ LEVIN COHN FERRIS GLOVSKY POPEO, P.C.<br>919 Third Avenue<br>New York, NY 10022<br>(212) 692-6770 |
| For Leadenhall Capital Partners, LLP: | Roger G. Schwartz<br>Craig Stanfield<br>Charles M. Persons<br>Geoffrey M. King<br>PAUL HASTINGS, LLP<br>200 Park Avenue<br>New York, NY 10166<br>(212) 318-6000 |
| For Leadenhall Capital Partners, LLP: | Paul R. Genender<br>Romi Geller-Block<br>PAUL HASTINGS, LLP<br>2001 Ross Avenue, Suite 2700<br>Dallas, TX 75201<br>(972) 936-7470 |
| For Leadenhall Capital Partners, LLP: | Jordan W. Leu<br>Leigh Nathanson<br>Thad Wilson<br>Peter Starr<br>Brian Donovan<br>KING & SPALDING, LLP<br>2601 Olive Street, 23rd Floor<br>Dallas, TX 75201<br>(214) 764-4419 |
| For DASIR 2, LLC: | Daniel Geoghan<br>COLE SCHOTZ P.C.<br>1325 Avenue of the Americas, 19th Floor<br>New York, NY 10019<br>(201) 489-3000 |
| For the U.S. Trustee: | Lisa Lambert<br>Shara Cornell<br>OFFICE OF THE UNITED STATES TRUSTEE<br>1100 Commerce Street, Room 976<br>Dallas, TX 75202<br>(214) 767-8967 |

APPEARANCES, cont'd.:

| | |
|---|---|
| For National Founders, LP: | Matthew A. Clemente<br>SIDLEY AUSTIN, LLP<br>One South Dearborn<br>Chicago, IL 60603<br>(312) 853-7539 |
| For Vida Longevity Fund, LP, et al.: | Andrew K. Glenn<br>Kurt A. Mayr<br>Naznen Rahman<br>GLENN AGRE BERGMAN & FUENTES, LLP<br>1185 Avenue of the Americas, 22nd Floor<br>New York, NY 10036<br>(212) 970-1601 |
| For Vida Longevity Fund, LP, et al.: | Mark C. Taylor<br>KANE RUSSELL COLEMAN LOGAN, P.C.<br>401 Congress Avenue, Suite 2100<br>Austin, TX 78701<br>(512) 487-6560 |
| For Haymarket Insurance Company, et al.: | Mark C. Moore<br>Nora J. McGuffey<br>F. Phillip Hosp<br>FOLEY & LARDNER, LLP<br>321 North Clark Street, Suite 3000<br>Chicago, IL 60654<br>(312) 832-4700 |
| For Haymarket Insurance Company, et al.: | Andrew A. Howell<br>FOLEY & LARDNER, LLP<br>2021 McKinney Avenue, Suite 1600<br>Dallas, TX 75201<br>(214) 999-4538 |
| For Infosys Limited: | Kevin M. Capuzzi<br>BENESCH FRIEDLANDER COPLAN & ARONOFF, LLP<br>1313 North Market Street, Suite 1201<br>Wilmington, DE 19801<br>(302) 442-7063 |
| Recorded by: | Shelley Warren<br>UNITED STATES BANKRUPTCY COURT<br>501 W. 10th Street<br>Fort Worth, TX 76102<br>(817) 333-6005 |

Transcribed by: Kathy Rehling
311 Paradise Cove
Shady Shores, TX 76208
(972) 786-3063

Proceedings recorded by electronic sound recording; transcript produced by transcription service.

behalf of the United States Trustee.

Your Honor, the United States Trustee did not have an opportunity to file an objection to the DIP in this case, but the United States Trustee does have many reservations with respect to the DIP. And with your indulgence, Your Honor, I would like to introduce some of our arguments in this case.

THE COURT: Sure.

MS. CORNELL: Courts typically allow debtors to enter into secured postpetition financing as long as the debtor's reasonable business judgment -- so long as the agreement does not contain terms that leverage the bankruptcy process and that the agreement does not inure to the benefit of a party in interest rather than to the estate as a whole.

In this case, the Debtors are receiving, in the interim period, very little proceeds, but are rewarding, through the interim order, vast, broad relief to the DIP Lenders. I think it's very important that we remember that today we're here for the interim order. Not the final order, but the interim order. And the relief sought by an interim order is interim and it is limited. And the relief sought by this order is neither of those things. And the United States Trustee has expressed that to the Debtor and has actually given them a list of things that need to be changed in the DIP order so that the interim order is indeed an interim order that preserves the rights of creditors in this case, in particular

the Creditors' Committee, who has not yet been appointed.

We all understand that the Debtor worked hard to get this case on file in the wake of the involuntary in Florida, and that we are still awaiting another wave of Debtors. So there is a lot of information to learn in this case, a lot of creditors to learn about.

With that being said, in the interim period, the Debtor is only seeking proceeds of approximately $550,000, but is willing to provide a one-to-three roll-up on those funds. And in addition, in exchange, it's providing broad releases to the DIP on a final basis within the interim order. We are also limiting the challenge period for a UCC to only 30 days. We're limiting a challenge period for a potential trustee to 10 days from an appointment. We are limiting dollar amounts to investigate. We are putting limits on the use of proceeds. We are putting limits on so many things.

We're going so far as to provide findings regarding the good-faith nature of these Lenders, all on an interim basis for the purposes of receiving $550,000. I think that when you compare what the Debtors are receiving versus what the Debtors are giving on an interim basis, that it really does cause the need to pause in this case and better understand what the Debtors are seeking to get out of this DIP and who is the ultimate beneficiary of this DIP.

The other Objectors have said it correctly. The DIP

Lenders have been in control for quite some time. They want a DIP that allows them to continue that control. And we see that in the truncated schedule found in the default provisions in the DIP, which are staggering, to say the least. We're looking at a requirement to have a plan on file in the very near future, almost before we have the next wave of Debtors filed. And if that's not done, we're looking at a default.

We're looking at the requirement that a plan is confirmed within 130 days from the petition date. We still don't even have the additional Debtors filed. We don't even know where the venue of this case is going to be. There are so many outstanding questions in this case that, on an interim basis, we need to limit the relief provided to these DIP Lenders to the utmost.

And I think that perhaps it can be done if we limit a lot of the relief to or subject to a final order. And I certainly do not think that a roll-up of $550,000 is beneficial to this estate, when we're talking about a Debtor that appears to have an excess of $10 million in its bank accounts at filing. I think we need more information about what benefit the Debtors and the Debtors' estates are receiving in exchange.

And that's really where the United States Trustee sees this DIP, Your Honor. I'm happy to answer any questions at this time. I'm not quite sure if we'll need to cross-examine Mr. Shapiro ourselves, but we certainly have many reservations

in the wake of Leadenhall's lawsuit?
A I would have preferred to stay out of Court even further. Bankruptcy is very expensive. I think -- I know your client disagrees. We've had this discussion before. But I think, being out of court, we were able to get to a certain point where we were able to maximize value as much as we could. But at some point in time, this was going to have to wind down in the bankruptcy, and this was as -- well, the involuntary sped it up, but this is where we are today.
Q Okay. Well, I'd like to, if you don't mind, just walk through what's happened between two years ago, when you were retained, and now, when this filing has finally come to pass. During that time, various subsidiaries of the Debtor entities, and some of the Debtor entities themselves, have transferred assets to affiliates of A-CAP, which I think we've all been referring to as A-CAP. It's Advantage Capital Holdings, LLC. Are you aware of that?
A Not all assets, but some.
Q Some assets? And GlassRatner, and you in particular, oversaw a number of those transactions. Correct?
A Correct.
Q And some of the asset sales that have taken place over the past couple of years were in partial satisfaction of hundreds of millions of dollars of debt that are allegedly owed by the Debtors or their affiliates to A-CAP and its affiliates.

A The Independent Director, Anna Phillips.
Q Who hired Ms. Phillips?
A The company did. Her agreement is with 777 Partners. 777 -- basically, the TopCos. That's who her agreement is with.
Q Can you be more specific with who hired Ms. Phillips? Was it yourself? Was it a board member? Who hired Ms. Phillips?
A I believe I -- I think I might have been the one who executed the agreement.
Q Prior to offering employment to Ms. Phillips, did you need to receive authority or direction from any of the Proposed DIP Lenders?
A ACM Delegate is -- had the proxy over -- we did -- no. We did not need any approval from anybody to appoint Anna as Director.
Q You may not have needed authority, but did you receive authority from the Proposed DIP Lenders?
A I think we told them --
MR. BROOKNER: Objection.
THE WITNESS: -- who we were --
MR. BROOKNER: Sorry.
THE WITNESS: I think we told them --
THE COURT: So hang on. Hang on. State the basis --