# Exhibit 1

Jason S. Brookner (TX Bar No. 24033684)
Amber M. Carson (TX Bar No. 24075610)
Blake M. Bryan (TX Bar No. 24140152)
**GRAY REED**
1845 Woodall Rodgers Fwy
Suite 1300
Dallas, Texas 75201
Telephone: (214) 954-4135
Facsimile: (214) 953-1332
Email: jbrookner@grayreed.com
acarson@grayreed.com
bbryan@grayreed.com

*Proposed Counsel to the Debtors*
*and Debtors in Possession*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| SIGNAL NATIONAL LLC, *et al.*,[1] | § | Case No. 26-90190 (ELM) |
| Debtors. | § | (Jointly Administered) |

**NOTICE OF SELECTION OF DIP LENDER**

**PLEASE TAKE NOTICE** that, following a competitive bidding process and after consultation with the Official Committee of Unsecured Creditors (the "Committee"), the Debtors have selected the DIP financing proposal submitted by Leadenhall Capital Partners LLP, as reflected in the *Summary of Principal Terms and Conditions* attached hereto as **Exhibit A** (the "Leadenhall Proposal"). The Committee supports the Debtors' selection of the Leadenhall Proposal.

[1] A complete list of each of the Debtors in these chapter 11 cases and the last four digits of their tax identification numbers may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/SignalNational. The Debtors' address for service in these chapter 11 cases is 3500 Maple Ave, Suite 420, Dallas, Texas 75219.

**PLEASE TAKE FURTHER NOTICE** that attached hereto as **Exhibit B** is the form of proposed final DIP order (the "Final Order").

**PLEASE TAKE FURTHER NOTICE** that attached hereto as **Exhibit C** is a comparison, showing changes made from the *Interim Order (I) Authorizing the Debtors to Obtain Postpetition Financing and Use Cash Collateral, (II) Granting Liens and Providing Claims with Superpriority Administrative Status, and (III) Granting Related Relief* [Docket No. 161] to the Final Order.

**PLEASE TAKE FURTHER NOTICE** that, as previously set forth in the *Notice of Reset Hearing* [Docket No. 185] (the "Hearing Notice"), the deadline to object to entry of the Final Order is September 21, 2026.

**PLEASE TAKE FURTHER NOTICE** that, as previously set forth in the Hearing Notice, the hearing to approve the Leadenhall Proposal and entry of the Final Order will take place on September 28, 2006 at 9:30 a.m. Central time before the Honorable E. Lee Morris, United States Bankruptcy Judge, in the U.S. Bankruptcy Court for the Northern District of Texas, Fort Worth Division, 501 W. 10th Street, Fort Worth, Texas 76102.

[*Remainder of page intentionally left blank*]

Respectfully submitted this 11th day of September, 2026.

**GRAY REED**

By: */s/ Jason S. Brookner*

Jason S. Brookner
Texas Bar No. 24033684
Amber M. Carson
Texas Bar No. 24075610
Blake M. Bryan
Texas Bar No. 24140152
1845 Woodall Rodgers Fwy, Suite 1300
Dallas, Texas 75201
Telephone: (214) 954-4135
Facsimile: (214) 953-1332
Email: jbrookner@grayreed.com
acarson@grayreed.com
bbryan@grayreed.com

*Proposed Counsel to the Debtors and Debtors in Possession*

**<u>Certificate of Service</u>**

I certify that on September 11, 2026, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Northern District of Texas, as well as via email on counsel to the Committee, Leadenhall, and A-CAP. Additionally, the Debtors' claims and noticing agent will be directed to serve the foregoing document as set forth in a forthcoming affidavit.

*/s/ Jason S. Brookner*
Jason S. Brookner

# <u>Exhibit A</u>

## Leadenhall Proposal

<u>Signal National LLC, *et al*[1]</u>
Bankruptcy Case No. 26-90190 (Jointly Administered)

**Summary of Principal Terms and Conditions**
**$10,000,000 Senior Secured Debtor in Possession Credit Facility**
**and $3,000,000 Senior Litigation Trust Wind Down Facility**

The following summary of principal terms and conditions (this "***DIP Term Sheet***") outlines the indicative economic and other terms of a proposed debtor-in-possession financing and a wind down financing for Signal National LLC ("***Signal***"), and its affiliated debtors and debtors-in-possesstion in the Chapter 11 Cases (as defined herein) (collectively, the ***"Debtors"***). Capitalized terms not otherwise defined herein shall have the meaning ascribed to such term in the (a) *Debtors' Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Utilize Cash Collateral, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Granting Adequate Protection, (IV) Modifying The Automatic Stay, (V) Scheduling A Final Hearing, And (VI) Granting Related Relief* [Docket No. 12] (the "***DIP Motion***") and (b) Chapter 11 plan term sheet annexed hereto as **Exhibit A** (the "***Plan Term Sheet***").

| Term | General Description |
|---|---|
| <u>General Structure:</u> | The Borrowers will obtain up to $10,000,000 in term loans (the "***DIP Loans***"), with such term loans to be funded in multiple draws during the Chapter 11 Cases to, among other things, repay in full the obligations outstanding under the Interim DIP Order and fund the operating expenses of these Chapter 11 Cases in accordance with the Approved Budget (as defined below) in all respects.<br><br>On the Effective Date of the Plan, as set forth in the Plan Term Sheet, the Liquidating Trust shall issue Liquidating Trust Loans in an amount equal to the DIP Obligations, and the DIP Lenders shall exchange the DIP Obligations for an equivalent amount of such Liquidating Trust Loans, and the DIP Obligations shall, upon exchange, be deemed canceled, terminated and no longer outstanding and any DIP Superpriority Claims shall be waived.<br><br>In addition, and as set forth in the Plan Term Sheet, on the Effective Date, (i) any remaining DIP Cash Collateral shall be transferred to the Liquidating Trust, (ii) any remaining unused availability under the DIP Commitment shall be available to the Liquidating Trust, and (iii) the DIP Lenders agree to provide up to $3,000,000 in additional term loans (the "***Wind-Down Loans***") |

[1] The Debtors in the chapter 11 cases jointly administered at Case No. 26-90190 (collectively, the "***Chapter 11 Cases***" are Signal National LLC, 600 Partners LLC, 777 Asset Management LLC, 777 Partners LLC, Daedalus I LLC, Employee Funding of America, LLC, F3EA Capital LLC, F3EA Holdings LLC, F3EA Servicing LLC, Ironman Capital LLC, Lex Capital Holdings LLC, Lumiere Acquisitions Company LLC, Lumiere Financing LLC, Phoenicia LLC, Signal AHF Medical Receivables HoldCo LLC, Signal LF Portfolio Holdco LLC, Signal MLH Medical Receivables HoldCo LLC, Signal Servicing LLC, Singer Asset Finance Company, LLC, SuttonPark Capital LLC, SuttonPark Servicing LLC, Tactical Marketing Partners LLC, Thresher Acquisition LLC.

| Term | General Description |
|---|---|
| | to the Liquidating Trust, at the option of the Liquidating Trustee, to be funded in part on the Effective Date of the Plan and thereafter in accordance with the Wind-Down Budget in each case in accordance with the terms of the Liquidating Trust Credit Documents. |
| Borrowers: | The Debtors and each Affiliate of the Debtors that subsequently becomes a debtor in the Chapter 11 Cases shall be deemed a Borrower under the DIP Documents. |
| Guarantors: | As set forth in the DIP Credit Agreement. |
| DIP Agent: | Leadenhall Capital Partners LLP (or its designee) will act as sole and exclusive administrative agent (in such capacity, the "***DIP Agent***") for the lenders under the DIP Facility (the "***DIP Lenders***") and will perform the duties customarily associated with such role. |
| DIP Facility: | A senior secured debtor-in-possession credit facility (the "***DIP Facility***") consisting of up to $10,000,000 in DIP Loans, in accordance with the applicable DIP Documents. The DIP Facility shall be authorized pursuant to, among other things, Sections 364(c) and (d) of the Bankruptcy Code. |
| Final Order: | Upon the entry of a final Bankruptcy Court order, in form and substance satisfactory to the DIP Agent, authorizing and approving the DIP Facility (the "***Final Order***"), the Borrowers shall be entitled to borrow all amounts available under the DIP Facility, subject to the terms and express conditions contained herein (including, without limitation, satisfaction (or waiver) of the conditions precedent to borrowing set forth herein and in the DIP Loan Documents) and as set forth in the DIP Budget, and as may otherwise be limited by the Final Order.<br><br>The Final Order shall be in form and substance acceptable to the DIP Agent, provided that such Final Order shall contain the following terms and conditions:<br><br>1. The Final Order shall contain a Carve-Out, substantially consistent with the terms set forth in the Interim Order, and as further set forth herein.<br>2. The Final Order shall not require any stipulations by the Debtors related to the (a) scope, perfection or validity of any liens and security interests granted by the Debtors prior to the Petition Date, or (b) amount, validity or nature of any obligations owed by the Debtors as of the Petition Date, all of which shall remain subject to challenge by interested parties.<br>3. The Challenge Period, as defined in the DIP Motion, shall be eliminated in its entirety.<br>4. The Final Order shall provide for customary findings for DIP lenders, including good faith findings for the DIP Lenders pursuant to Section |

| Term | General Description |
|---|---|
| | 364(e), solely with respect to the DIP Facility, but not with respect to any pre-petition conduct or the post-petition use of any prepetition cash collateral or prepetition collateral.<br>5. The Final Order shall not include a finding of "no control".<br>6. Proceeds of the DIP Loans shall be made available to, among other things, investigate and commence adversary proceedings or other litigation against any party, including the DIP Agent and DIP Lenders.<br>7. The Final Order shall not contain any indemnification of the DIP Agent or the DIP Lenders for costs or other losses. |
| <u>No Releases:</u> | The DIP Documentation shall not include any releases by the Debtors of any claims, causes of action or avoidance actions concerning the prepetition or post-petition actions, conduct or transactions of any party. The DIP Lenders represent that neither they nor any of their affiliates have received any prepetition releases from the Debtors or their affiliates that would limit the value or scope of any such claims, causes of action or avoidance actions, and the Final Order shall contain an express rescission of any prepetition releases in favor of the DIP Lenders. |
| <u>Use of DIP Loans:</u> | The DIP Loans may be used to investigate any and all liens, claims and causes of action, including investigation and review of any and all prepetition releases granted by the Debtors, including with respect to that certain Priming Superpriority Debtor-in-Possession Credit Agreement dated June 9, 2026, and to pursue and prosecute any such claims and causes of action against any and all parties as appropriate, including without limitation, the DIP Agent, the DIP Lenders and any prepetition lender or creditor of the Debtors. |
| <u>Maturity Date</u>: | 180 days after the Petition Date and otherwise provided in the DIP Credit Agreement; provided, however, that the date that a chapter 11 trustee or an examiner with expanded powers is appointed shall not be a Maturity Date. |
| <u>Closing Date</u>: | The date of the entry of the Final Order and satisfaction of the conditions precedent to Borrowing (the "***Closing Date***"). |
| <u>Purpose</u>: | Subject to the terms and express conditions herein (including, without limitation, satisfaction of the express conditions precedent to borrowing set forth herein), the proceeds of the DIP Loans shall be available on or after the Closing Date and shall be used to (a) repay in full all outstanding obligations owing under the Interim DIP Order and (b) to fund the administration of the Debtors' Chapter 11 Cases by the Debtors in accordance in all material respects with the applicable DIP Budget (defined below) and DIP Loan Documents. |

| Term | General Description |
|---|---|
| DIP Budget: | The DIP Agent shall have received a 13-week cash flow forecast detailing cash receipts and cash disbursements on a weekly basis for such period, or such other forecast and reporting as agreed by the Debtors and the DIP Agent, in form and substance acceptable to the DIP Agent (together with any updates in accordance with the terms hereof, the "***DIP Budget***"). The DIP Budget is subject to update and modification on terms to be mutually agreed between the Debtors and the DIP Agent, which shall include the right of the Borrowers to submit updates from time to time subject to the approval of the DIP Agent. Any updated DIP Budget submitted after the initial DIP Budget shall not supersede and replace the initial DIP Budget until the updated DIP Budget is approved in writing by the DIP Lenders (the "***Approved Budget***").<br><br>The Borrowers shall be permitted to make borrowings consistent in all material respects with the DIP Budget, subject to the other terms set forth herein.<br><br>For the avoidance of doubt, the DIP Budget shall not include amounts for payment of DIP Lender or DIP Agent professional fees and expenses. |
| Permitted Variances | The Debtors shall comply with the DIP Budget, subject to the following "***Permitted Variances***"):<br><br>1. The Debtors shall not permit payments for any Measuring Period (as defined below) to exceed one hundred twenty percent (120%) of the respective amounts, measured on an aggregate basis, as set forth for such Measuring Period in the Approved Budget for such Measuring Period (the "***Variance***"); *provided, however,* that professional fees and expenses shall not be subject to the Variance.<br><br>2. The Permitted Variances shall be measured and tested every other week based on a rolling four-week period (the "***Measuring Period***"); provided, however, that the first Measuring Period shall be for the period from entry of the Final Order to the Friday of the second full calendar week ended thereafter. On Wednesday of each week, the Debtors shall provide to the DIP Lenders an updated thirteen-week forecasted budget and a variance report comparing the actual receipts and disbursements other immediately preceding week to the receipts and disbursements forecasted in the then Approved Budget for such week. |
| Cash Collateral: | Borrowings under the DIP Facility shall constitute "cash collateral" (as such term is defined in Section 363(a) of the Bankruptcy Code) of the DIP Lenders (the "***DIP Cash Collateral***"). The DIP Cash Collateral shall be held in a segregated deposit account acceptable to the DIP Agent. The DIP Cash Collateral shall not be commingled with cash collateral of any prepetition secured party whether in the segregated deposit account or otherwise. |
| Events of Default: | As set forth in the Final Order and the DIP Credit Agreement provided the following shall not be Events of Default under the DIP Loans: |

| Term | General Description |
|---|---|
| | 1. Appointment of a Chapter 11 trustee or an examiner with expanded powers.<br><br>2. The Debtors take any action to, or fail to take all reasonable actions necessary, to oppose any action by any other Person to: (a) impair any of the material rights and remedies of the Agent and the DIP Lenders under the DIP Loan Documents, (b) avoid, subordinate, disallow, or require disgorgement by the Agent and the DIP Lenders of any amount received in respect of the DIP Obligations, or (c) challenge the rights, liens or claims of the Pre-Petition Lenders (or any of their Affiliates) related to the Pre-Petition Indebtedness and/or the Pre-Petition Collateral;<br><br>3. The Bankruptcy Court orders the Debtors to pay or the Debtors make any material Pre-Petition Payment which is not permitted under the Budget;<br><br>4. The loss, revocation, or termination of any license, permit, lease, or agreement necessary or material to the Debtors' businesses, or the cessation of any part of the Debtors' businesses; or<br><br>5. Any uninsured judgments as to any Post-Petition obligation shall be rendered against the Debtors and the enforcement thereof shall not be stayed (by operation of law, the rules or orders of a court with jurisdiction over the matter or by consent of the party litigants), or there shall be rendered against the Debtors a nonmonetary judgment with respect to a Post-Petition event. |
| <u>SuttonPark</u>: | Consistent with the DIP Credit Agreement, cash receipts and disbursements of SuttonPark Capital LLC, SuttonPark Servicing LLC, and its Subsidiaries, which are not otherwise captured in the DIP Budget may be used to fund operations of SuttonPark Capital LLC and SuttonPark Servicing LLC in the ordinary course of their businesses, provided that, for the avoidance of doubt, nothing herein shall modify, alter or impair the rights and priorities of any creditors with respect to any claims, rights or obligations owed to such creditors in connection with the cash receipts and disbursements of SuttonPark Capital LLC and SuttonPark Servicing LLC and its Subsidiaries. |
| <u>Interest Rates</u>: | Interest Rate on DIP Loans shall be 0.00% per annum;<br><br>Default Interest Rate: 0.00% |
| <u>Fees:</u> | None. |
| <u>Priority/Security:</u> | Any and all obligations arising under or in connection with the DIP Facility (which shall exclude, for the avoidance of doubt, fees, costs and expenses of the DIP Agent and the DIP Lenders (including fees, costs and expenses of DIP |



4933-8753-9663

| Term | General Description |
| --- | --- |
| | Agent and DIP Lender counsel) (collectively, the "***DIP Obligations***")), in each case, shall, subject only to the Carve Out, at all times:<br><br>(i) pursuant to Bankruptcy Code Section 364(c)(1), be entitled to joint and several superpriority administrative expense claim status in the Chapter 11 Cases, and except as otherwise provided herein shall have priority over all other costs and expenses of administration of any kind, including those specified in, or ordered pursuant to, sections 105, 326, 328, 330, 331, 503(b), 506(c) (and subject to the entry of the DIP Order, all rights to charge the DIP Collateral under section 506(c) shall be waived), 507(a), 507(b), 546(c), 726, 1113 or 1114 or any other provision of the Bankruptcy Code or otherwise and be payable from all assets and property of the Loan Parties, subject only to the Carve-Out (the "***DIP Superpriority Claims***"); and<br><br>(ii) pursuant to Bankruptcy Code Sections 364(c)(2) and (c)(3), be secured by automatically perfected liens and security interests (the "***DIP Liens***") in the following priorities:<br><br>1. First-priority, fully perfected, continuing DIP Liens upon all of the Debtors' right, title and interest in, to, and under all DIP Collateral that is not encumbered by a validly perfected, enforceable, and non-avoidable security interest or lien as of the Petition Date or otherwise rendered unencumbered thereafter (as a result of avoidance, subordination, or otherwise) by the Bankruptcy Court or another court of competent jurisdiction, which shall include the proceeds, in any and all form and amount paid or payable under or in connection therewith of (1) all claims and causes of action of the Debtors, excluding the Avoidance Actions (defined as "Causes of Action" in the Interim Order) (the "***Causes of Action Proceeds***") and (2) claims and causes of action assertable by the estate under chapter 5 of the Bankruptcy Code and any other avoidance actions under the Bankruptcy Code, whether now existing or hereafter acquired or arising and whether pursuant to federal law or applicable state law (collectively, "***Avoidance Actions Proceeds***") but, for the avoidance of doubt, shall not include Causes of Action or Avoidance Actions themselves (collectively, the "***Unencumbered Property***").<br><br>2. A junior priority, fully-perfected, continuing DIP Lien on all property of the Debtors that is subject to one or more valid, perfected and non-avoidable security interests or liens (other than the liens granted hereunder) at any time.<br><br>in each case, including any proceeds and products thereof, in whatever form received, subject to the Carve-Out (collectively, the "***DIP Collateral***"). |

| Term | General Description |
|---|---|
| | Notwithstanding anything to the contrary herein or in the DIP Loan Documents, "DIP Collateral" shall not include the proceeds of any claims, counterclaims, demands, defenses, offsets, debts, accounts, contracts, liabilities, actions and causes of action of any kind, nature or description, whether matured or unmatured, known or unknown, asserted or unasserted, foreseen or unforeseen, accrued or unaccrued, suspected or unsuspected, liquidated or unliquidated, pending or threatened, arising in law or equity, upon contract or tort or under any state or federal law or otherwise, that the Debtors, their estates, affiliates, or subsidiaries may have against the DIP Agent or DIP Lenders, or their affiliates, including, without limitation, claims and defenses relating to servicing fees that may be owed by the DIP Lenders, the DIP Lenders' pre-petition asset foreclosures, or upon the bond posted in connection with the litigation styled *Leadenhall Capital Partners LLP v. Wander, et al.*, 24 Civ. 3453 (JGK)(BCM), ECF No. 1 (S.D.N.Y.) or *Signal SML 4 LLC, et al. v. Leadenhall Life Insurance Linked Investments Fund PLC*, Index No. 652929/2025 (NY Cnty Supreme Ct), or any proceeds thereof.<br><br>All the above-described pledges, security interests and mortgages shall be (a) created on terms, and pursuant to documentation reasonably satisfactory to the DIP Agent and the Borrowers and (b) perfected upon entry of the Final Order, without the need to file or record financing statements, intellectual property filings, mortgages, notices of lien or similar documents or instruments; provided that the DIP Agent shall be permitted to make any or all such filings. |
| Documentation Principles: | Funding pursuant to this DIP Term Sheet is subject to finalization of definitive documentation with respect to the DIP Facility (the "***Financing Documentation***"), which shall be in form and substance acceptable to the Debtors and DIP Agent, consistent with similar debtor in possession secured financing facilities.<br><br>All orders in the Chapter 11 Cases approving or authorizing the DIP Facility or relating to cash management and all motions relating there shall be in form and substance reasonably acceptable to the DIP Agent. |
| Carve Out: | Substantially similar to the terms of the Interim Order, in form and substance acceptable to the DIP Agent. The "Carve-Out" for a Chapter 7 Trustee shall be in an amount not to exceed $100,000. The Post-Carve-Out-Trigger Notice Cap shall be in the amount not to exceed $250,000.<br><br>DIP Lenders will support budget item(s) for (a) a line-item in the Approved Budget to be used by the Committee (or other estate fiduciary) in an amount not less than $1,000,000 to pursue an independent investigation and prosecution of all Causes of Action, including those under chapter 5 of the Bankruptcy Code, and (b) independent counsel for the independent director (if appropriate in her discretion). |
| Adequate Protection: | Creditors with valid, perfected, non-avoidable liens and security interests in the Debtors' property shall be entitled to adequate protection in an amount |



4933-8753-9663

| Term | General Description |
|---|---|
| | equal to the diminution of value in their respective collateral, consisting of the following:<br><br>1. Adequate protection replacement liens on their respective collateral, senior in priority to the relevant DIP Liens.<br>2. Adequate protection priority administrative expense claims under section 507(b) of the Bankruptcy Code, which shall have priority in payment over any and all administrative expense claims except for the DIP Superpriority Claims.<br><br>For the avoidance of doubt, the final DIP Order shall not require any adequate protection on account of pre-petition liens or claims of the DIP Lenders, provided, that nothing in the Final DIP Order shall waive Leadenhall's right to seek adequate protection at a later date to the extent it is discovered that proceeds of Leadenhall's collateral with respect to non-Debtors is in the possession of the Debtors' estates. |
| <u>Milestones:</u> | The Debtors shall achieve the following milestones (the "***Milestones***") by the dates set forth below (or such later date as may be agreed to by the DIP Agent (defined in a manner consistent with such defined term in the Prepetition Credit Agreement)):[2]<br><br>1. By not later than November 21, 2026, the Debtors shall file the (a) Plan and associated Disclosure Statement (the "***Disclosure Statement***"), consistent with the Plan Term Sheet and (b) motion to approve the Disclosure Statement and the form and process of solicitation of the votes on the Plan (the "***Solicitation Motion***") each in form and substance satisfactory to the Debtors, the DIP Agent, and the Committee;<br><br>2. By not later than January 22, 2027, the Court shall have entered the Confirmation Order in form and substance satisfactory to the Debtors, the DIP Agent, and the Committee;<br><br>3. By not later than February 5, 2027, all conditions precedent to the effectiveness of the Plan shall have been satisfied and the Plan shall have become effective (the "***Effective Date***"); and<br><br>4. The Parties shall support confirmation of the Plan. The DIP Agent and DIP Lenders shall vote all claims and interests held by such parties in support of confirmation of the Plan. |
| <u>Plan Treatment</u>: | As set forth in the Plan Term Sheet. The Plan Term Sheet is intended to serve as a proposed framework for the Plan and Disclosure Statement; the definitive terms of the Plan and Disclosure Statement remain subject to negotiation and documentation satisfactory to the Debtors, Committee and DIP Agent. |

2 NTD: In light of prior conversations, this term sheet does not impose a fixed deadline for filing the Subsequent Debtors provided that such filings occur in time to facilitate the ultimate confirmation and effective date milestones.

| Term | General Description |
|---|---|
| Credit Bid: | The DIP Agent and DIP Lenders shall have the right to credit bid all of their respective DIP claims, respectively, in any sale of the Debtors' assets pursuant to Section 363(k) of the Bankruptcy Code, consistent with the terms proposed in the Interim DIP Order. |
| Governance: | The Debtors' management, governance and decision-making shall, subject to Bankruptcy Court order, at all times continue to be exercised by the current independent director and management of the Debtors and any change to the current management or the independent director of the Debtors shall be subject to Bankruptcy Court Order and the consent of the DIP Agent and the Committee. |
| Governing Law and Forum: | New York. |
| Counsel to the DIP Agent: | Paul Hastings LLP.<br>King & Spalding LLP |

**<u>EXHIBIT A TO DIP TERM SHEET</u>**

<u>Signal National LLC, *et al*[1]</u>
Bankruptcy Case No. 26-90190 (Jointly Administered)

**Chapter 11 Plan Term Sheet**

**THIS CHAPTER 11 PLAN TERM SHEET ("*PLAN TERM SHEET*") SUMMARIZES THE MATERIAL TERMS AND CONDITIONS OF A PROPOSED CHAPTER 11 PLAN OF LIQUIDATION (THE "*PLAN*") BY AND AMONG THE DEBTORS, THE DIP SECURED PARTIES AND THE COMMITTEE[2] (COLLECTIVELY, THE "*PARTIES*"). THE SETTLEMENT IS SUBJECT TO DEFINITIVE DOCUMENTATION REASONABLY ACCEPTABLE TO THE PARTIES, AND COURT APPROVAL.**

**THIS TERM SHEET IS NOT AN OFFER OR A SOLICITATION WITH RESPECT TO ANY SECURITIES OF THE DEBTORS, NOR IS IT A SOLICITATION OF THE ACCEPTANCE OR REJECTION OF A PLAN FOR PURPOSES OF SECTIONS 1125 AND 1126 OF THE BANKRUPTCY CODE. ANY SUCH OFFER OR SOLICITATION SHALL COMPLY WITH ALL APPLICABLE SECURITIES LAWS AND/OR PROVISIONS OF THE BANKRUPTCY CODE. THIS TERM SHEET AND THE TRANSACTIONS DESCRIBED HEREIN ARE SUBJECT IN ALL RESPECTS TO, AMONG OTHER THINGS, NEGOTIATION, EXECUTION AND DELIVERY OF DEFINITIVE DOCUMENTATION AND SATISFACTION OR WAIVER OF THE CONDITIONS PRECEDENT SET FORTH HEREIN AND THEREIN.**

**THIS TERM SHEET IS THE "PLAN TERM SHEET" REFERENCED IN THE $10,000,000 SENIOR SECURED DEBTOR IN POSSESSION CREDIT FACILITY (THE "*DIP TERM SHEET*" AND THE DIP LOANS EXTENDED THEREUNDER, THE "*DIP FACILITY*") TO WHICH THIS PLAN TERM SHEET IS ATTACHED.** [3]

---

1 The Debtors in the chapter 11 cases jointly administered at Case No. 26-90190 (collectively, the "***Chapter 11 Cases***") are Signal National LLC, 600 Partners LLC, 777 Asset Management LLC, 777 Partners LLC, Daedalus I LLC, Employee Funding of America, LLC, F3EA Capital LLC, F3EA Holdings LLC, F3EA Servicing LLC, Ironman Capital LLC, Lex Capital Holdings LLC, Lumiere Acquisitions Company LLC, Lumiere Financing LLC, Phoenicia LLC, Signal AHF Medical Receivables HoldCo LLC, Signal LF Portfolio Holdco LLC, Signal MLH Medical Receivables HoldCo LLC, Signal Servicing LLC, Singer Asset Finance Company, LLC, SuttonPark Capital LLC, SuttonPark Servicing LLC, Tactical Marketing Partners LLC, Thresher Acquisition LLC.

2 "***Committee***" shall mean the committee of unsecured creditors, when appointed by the Office of the United States Trustee.

3 Each capitalized term that is not defined herein shall have the meaning ascribed to such term in the DIP Term Sheet and DIP Motion (as defined in the Final DIP Term Sheet).

| Term | General Description |
|---|---|
| Certain Defined Terms | • "***Administrative Expense Claim***" means any Claim (other than any DIP Claim) for costs and expenses of administration of the Chapter 11 Cases Allowed under Bankruptcy Code sections 503(b), 507(a)(2), 507(b), or, if applicable, 1114(e)(2), including, but not limited to: (a) any actual and necessary costs and expenses incurred on or after the Petition Date of preserving the Estates and operating the businesses of the Debtors (including, but not limited to, wages, salaries, commissions for services); (b) compensation for legal, financial, advisory, accounting, and other services and reimbursement of expenses allowed by the Court under Bankruptcy Code sections 328, 330, 331, 363, or 503(b) to the extent incurred on or before the Effective Date; (c) all U.S. Trustee Fees; and (d) any Claims that have been designated "Administrative Claims" by final order of the Court.<br>• "***Avoidance Actions***" shall mean any and all actual or potential Causes of Action of the Estates under Bankruptcy Code sections 105(a), 502(d), 510, 542 through 551, and 553, or any similar federal, state, or common law causes of action.<br>• "***Causes of Action***" shall mean any and all claims, actions, Avoidance Actions, causes of action, choses in action, suits, debts, obligations, dues, damages, defenses, judgments, third-party claims, counterclaims, cross claims, liens, indemnities, guaranties, and franchises whether arising before, on, or after the Petition Date, that are or may be pending or existing on, prior to or after the Effective Date against any entity, based on lender liability, joint liability veil piercing or alter-ego theories of liability, contribution, indemnification, or based in law, contract, tort, equity, or pursuant to any other theory of law including, but not limited to, under the Bankruptcy Code, whether direct, indirect, known or unknown, derivative, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, choate or inchoate, suspected or unsuspected. assertable directly or derivatively, or otherwise and whether asserted or unasserted as of the date of entry of the Confirmation Order, and including any unknown Causes of Action. Causes of Action also include: (a) any rights of setoff, counterclaim, or recoupment and any claims under contracts or for breaches of duties imposed by law or in equity; (b) the right to object to or otherwise contest Claims or interests and any claims objections; and (c) any claims or defenses, including fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code.<br>• "***Claim***" shall mean a claim against the Debtors, as such term is defined in Bankruptcy Code section 101(5).<br>• "***Effective Date***" means the first business day after the entry of the order confirming the Plan (the "***Confirmation Order***") on which (i) no stay of the Confirmation Order is in effect and (ii) all conditions precedent to effectiveness of the Plan have been satisfied or waived |



4913-3266-4015

| Term | General Description |
|---|---|
| | or (b) such other date as may be mutually agreed to between the Debtors and the requisite DIP Lenders.<br>• "***Estates***" shall mean the Debtors' estates created by Bankruptcy Code section 541 upon the commencement of the Chapter 11 Cases on the Petition Date.<br>• "***General Unsecured Claims***" means any unsecured Claim, other than an Administrative Expense Claim, a DIP Claim, a Priority Non-Tax Claim, a Priority Tax Claim, a Subordinated Claim, or an Intercompany Claim, including, without limitation, claims on account of rejection damages.<br>• "***Intercompany Claims***" means, collectively, any and all Claims against a Debtor held by another Debtor.<br>• "***Intercompany Interests***" means all shares of stock, units, options, warrants, rights and other instruments evidencing an ownership interest in any of the entities collectively constituting the Debtors existing prior to the Effective Date (whether fixed or contingent, matured or unmatured, disputed or undisputed), including any right, contractual, legal, equitable, or otherwise, to acquire any of the foregoing, in each case only to the extent held by any of the entities collectively constituting the Debtors.<br>• "***Liquidating Trust Units***" means the non-transferable interests in the Liquidating Trust issued to Liquidating Trust beneficiaries pursuant to the Plan, including the GUC Trust Interests.<br>• "***Liquidating Trust Beneficiaries***" means the holders of Liquidating Trust Units.<br>• "***Liquidating Trust Distribution Proceeds***" means all Cash and other proceeds realizable from the Liquidating Trust Assets after payment of, and reserving for, any applicable Liquidating Trust expenses in accordance with the Liquidating Trust Agreement.<br>• ***"Priority Non-Tax Claim"*** means any Claim, other than a DIP Claim, an Administrative Expense Claim, a Priority Tax Claim, entitled to priority in payment as specified in section 507(a) of the Bankruptcy Code.<br>• ***"Priority Tax Claim"*** means any Claim of a "government unit" as defined in section 101(27) of the Bankruptcy Code that is entitled to priority pursuant to section 507(a)(8) of the Bankruptcy Code.<br>• ***"Subordinated Claim"*** means any prepetition Claim that is subject to subordination pursuant to sections 510(b)-(c) of the Bankruptcy Code. |
| **General** | • The Parties agree to the terms of this Plan Term Sheet as set forth herein, which shall be (a) memorialized in the Debtors' Chapter 11 Plan of Liquidation of Signal National LLC and its Debtor affiliates (as the same may be further amended, supplemented and otherwise modified prior to |



4913-3266-4015

| Term | General Description |
|---|---|
| | confirmation with the consent of the Parties, the "***Plan***"), plan supplement which shall include the definitive documents implementing the terms of the Chapter 11 Plan (the "***Plan Supplement***"), the trust agreement memorializing the terms set forth herein (the "***Liquidating Trust Agreement***"), confirmation order entered by the Court after proper notice and a hearing (the "***Confirmation Order***") and/or other definitive documentation reasonably acceptable to the Parties, and (b) subject to the Court's approval of the DIP Facility, and entry of the Confirmation Order and the effectiveness of the Plan.<br><br>• Additional plan terms to be discussed and agreed upon by the Parties. Nothing in this Term Sheet prejudges substantive consolidation issues. |
| **Case Milestones** | The Milestones, as set forth in the DIP Term Sheet, shall be timely met. |
| **Plan Treatment of Administrative Expense Claims, Priority Tax Claims, and Priority Non-Tax Claims** | On the Effective Date, each holder of an allowed Administrative Expense Claim and/or Priority Tax Claim shall receive, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, such holder's Administrative Expense Claim and/or Priority Tax Claim (a) cash equal to the unpaid portion of such allowed claim, (b) treatment as is consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code, or (c) such other treatment as may be agreed by the holder of such allowed claim, the Debtors and the DIP Lenders |
| **Plan Treatment of Priority Non-Tax Claims** | On the Effective Date or as soon as practicable thereafter, in full and final satisfaction, compromise, settlement, release, and discharge of each holder of an allowed Priority Non-Tax Claim, except to the extent that a Holder of an allowed Priority Non-Tax Claim agrees to a lesser treatment, shall receive either: (i) cash in an amount equal to such allowed Claim; or (ii) such other treatment that will render such allowed Priority Non-Tax Claim unimpaired pursuant to section 1124 of the Bankruptcy Code |
| **Plan Treatment of DIP Claims** | Holders of DIP Claims secured by the Debtors' assets shall receive their *pro rata* share of Liquidating Trust Loans in an aggregate principal amount equal to the outstanding DIP Loans, in accordance with the distribution priorities set forth in the Waterfall Recovery; <u>provided</u>, that the DIP Superpriority Claims shall be irrevocably waived. |
| **Plan Treatment of Prepetition Secured Claims** | Holders of valid, perfected allowed secured claims in the Debtors' assets shall receive Liquidating Trust Units entitling the holder to the proceeds of their Collateral in accordance with lien priorities as determined by applicable non-bankruptcy laws. Following the liquidation of the collateral securing a Prepetition Secured Claim, any remaining unpaid portion of such Claim shall constitute a General Unsecured Claim and the holders of such claims will receive Liquidating Trust Units entitling such holders to their *pro rata* share of the Liquidating Trust Proceeds, in accordance with the distribution priorities set forth in the Waterfall Recovery. |
| **Plan Treatment of General** | Holders of allowed General Unsecured Claims shall receive Liquidating Trust Units entitling the holder to its *pro rata* share of the Liquidating Trust |



4913-3266-4015

Case 24-90345-1-GK-DBC Document Filed 09/15/26 Page 19 of 124

| Term | General Description |
|---|---|
| **Unsecured Claims** | Proceeds, in accordance with the distribution priorities set forth in the Waterfall Recovery. |
| **Plan Treatment of Subordinated Claims** | In full and final satisfaction, compromise, settlement, release, and discharge of each Subordinated Claim, on the Effective Date, each Holder of a Subordinated Claim shall receive no distribution or recovery on account of its Subordinated Claim unless and until Holders of General Unsecured Claims are paid in full. |
| **Plan Treatment of Equity Interests in 777 Partners LLC and 600 Partners LLC** | In full and final satisfaction, compromise, settlement, release, and discharge, all of the equity interests in 777 Partners LLC and 600 Partners LLC shall be cancelled, released, and extinguished, and will be of no further force or effect, and holders shall not receive or retain any property or distributions under this Plan on account of such equity interests unless and until Holders of Subordinated Claims are paid in full and Holders General Unsecured Claims receive post-petition interest on account of their Claims. |
| **Retained Causes of Action** | • "***Retained Causes of Action***" means collectively, all of the Debtors' and the estates' claims and Causes of Action, including any Avoidance Actions, that are not waived, released, compromised, or settled pursuant to the Plan, or a final order of the Court, including in the Final DIP Order, including:<br>o all claims and proceeds of Avoidance Actions held by the Debtors against any party;<br>o all rights and claims of any of the Debtors under any D&O policies and the proceeds thereof; and<br>o all other claims and Causes of Action, including any commercial tort claims, held by any of the Debtors against any party or otherwise pending as of the Effective Date.<br>The Court shall retain non-exclusive jurisdiction over all Retained Causes of Action. |
| **Liquidating Trust Formation** | • The Plan shall provide for the formation of a liquidating trust (the "***Liquidating Trust***") that shall be vested with the following assets, to the extent that the same are not waived, released, compromised, or settled pursuant to the Plan or a final order of the Court, including in the Final DIP Order (collectively, the "***Liquidating Trust Assets***"):<br>(a) all property of the Debtors and their estates; and<br>(b) all Retained Causes of Action. |
| **Liquidating Trust Purpose** | • The Liquidating Trust shall be established for the sole purpose of liquidating and distributing the Liquidating Trust Assets, in accordance with Treasury Regulation section 301.7701-4(d) and as a "grantor trust" for U.S. federal income tax purposes, pursuant to sections 671 through 679 of the Internal Revenue Code, with no objective to continue or engage in the conduct of a trade or business except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Liquidating Trust, and without effect to its status as a "liquidating trust" |

| Term | General Description |
|---|---|
| | for U.S. federal income tax purposes. The Liquidating Trust shall be governed by the Plan and the Liquidating Trust Agreement. The Liquidating Trust Agreement shall contain provisions customary to trust agreements utilized in comparable circumstances, including any and all provisions necessary to ensure the continued treatment of the Liquidating Trust as a grantor trust and the Liquidating Trust Beneficiaries as the grantors and owners thereof for U.S. federal income tax purposes. The Liquidating Trust Agreement, which shall be in form and substance acceptable to the DIP Agent, may provide powers, duties, and authorities in addition to those explicitly stated herein, but only to the extent that such powers, duties, and authorities are for the primary purpose of receiving all net Liquidating Trust Assets and distributing any such assets pursuant to the Plan.<br>• The Liquidating Trustee shall be the exclusive trustee of the Liquidating Trust Assets for purposes of 31 U.S.C. § 3713(b), as well as the sole representative of the estates appointed pursuant to section 1123(b)(3) of the Bankruptcy Code and shall have all powers, authority, and responsibilities specified in the Plan and Liquidating Trust Agreement, including, without limitation, the powers of a trustee under sections 704 and 1106 of the Bankruptcy Code.<br>• Subject to the Trust Oversight Board (as defined below), the Liquidating Trust shall have sole authority to investigate, prosecute, settle, or abandon the Retained Causes of Action. The Liquidating Trust shall consult with and obtain the consent of the Trust Oversight Board with respect to any decision to abandon a Retained Cause of Action. In pursuing any claim, right, or Retained Cause of Action, the Liquidating Trust shall be entitled to the tolling provisions provided under section 108 of the Bankruptcy Code and shall succeed to the Debtors' rights with respect to the time periods in which a Retained Cause of Action may be brought under the Bankruptcy Code. |
| **Liquidating Trust Governance** | • The Liquidating Trust shall be governed by a Liquidating Trust Agreement which shall be consistent with the terms of the Plan and in form and substance acceptable to the DIP Lenders and Committee.<br>• The liquidating trustee (the "***Liquidating Trustee***") shall be an individual selected by the Committee and the DIP Lenders.<br>• The Liquidating Trustee shall be overseen and managed by a trust oversight board (the "***Trust Oversight Board***"), initially consisting of three (3) members (the "***TOB Members***") who shall be selected as follows: the DIP Lenders shall select one (1) TOB Member, the Committee shall select one (1) TOB Member, and the DIP Lenders and Committee shall jointly select the third TOB Member who shall be independent of both the DIP Lenders and Committee members. The number of TOB Members may be increased or decreased in a manner to be set forth in the Liquidating Trust Agreement. Any actions taken by the Trust Oversight Board shall be subject to a majority vote of the TOB |



4913-3266-4015

| Term | General Description |
|---|---|
| | Members, with the Liquidating Trustee to serve as a tie-breaker if necessary.<br>• Subject to the Trust Oversight Board, the Liquidating Trustee shall have exclusive authority to (a) reconcile administrative, priority, and general unsecured claims, (b) prosecute and resolve all Retained Causes of Action assigned to the Liquidating Trust, (c) monetize all Liquidating Trust Assets, and (d) wind-down and dissolve the Debtor entities.<br>• The Liquidating Trustee shall perform the day-to-day activities implementing the Liquidating Trust. The Trust Oversight Board shall have the responsibility to oversee the administration of the Liquidating Trust and the activities of the Liquidating Trustee, as set forth in the Liquidating Trust Agreement filed with the Plan Supplement.<br>• The Liquidating Trustee shall seek approval for material decisions and actions from the Trust Oversight Board, including (a) any change to the compensation for the Liquidating Trustee (b) the settlement of Retained Causes of Actions; (c) replacement of any professionals engaged by the Liquidating Trust or the modification of the terms of any engagement of any professional retained by the Liquidating Trust as of the Effective Date; and (d) seeking and obtaining any Additional Liquidating Trust Funding; in all cases of (a)-(d) subject to thresholds to be set forth in the Liquidation Trust Agreement.<br>• The Liquidating Trust Agreement shall not be amended without the prior written consent of the Trust Oversight Board.<br>• Distributions from the Liquidating Trust shall be made no less than annually and to the extent possible, more frequently than annually, in accordance with the waterfall recoveries (as set forth in this Plan Term Sheet). Annual and other distributions shall be made in an amount equal to 100% of proceeds in excess of the amounts needed to make the payments for projected expenses of the Liquidating Trust.<br>• The Liquidating Trustee shall submit a written quarterly update on March 31st, June 30th, September 30th and December 31st of each year to the TOB Members including, in respect of each such quarterly period: (a) all cash collections, (b) all cash disbursements, (c) all compensation paid to the Liquidating Trustee, (d) all accrued fees and expenses of the professionals engaged by the Liquidating Trustee and (e) status updates for prosecution of the Retained Causes of Actions. The Liquidating Trustee shall also submit an updated Wind Down Budget (together with the quarterly reporting) for approval by the Trust Oversight Board. The DIP Lenders shall be entitled to periodic updates on prosecution of the Retained Causes of Action from the Litigation Trustee. |
| **Liquidating Trust Funding** | • On the Effective Date, the DIP Lenders and Liquidating Trust shall enter into a credit agreement (the "***Liquidating Trust Credit Agreement***", and together with all related and ancillary documentation, the "***Liquidating Trust Credit Documents")*** pursuant to which (i) the DIP Lenders shall exchange their respective then-outstanding or committed but unborrowed DIP Loans for loans in an equal amount issued by the Liquidating Trust (the "***Exchanged Liquidating Trust Loans***"), and (ii) the DIP Lenders |



4913-3266-4015

| Term | General Description |
|---|---|
| | shall commit to provide additional new money term loans in an aggregate amount of up to $3.00 million (the "***New Money Liquidating Trust Loans***", and, together with the Exchanged Liquidating Trust Loans, the "***Liquidating Trust Loans***"). The fees and expenses of the lenders under the Liquidating Trust Credit Agreement (each, in its capacity as the holder of the Liquidating Trust Loans, the "***Liquidating Trust Lender***") incurred after the Effective Date shall, to the extent not reimbursed from the Liquidating Trust Assets, constitute Liquidating Trust Loans. Other terms of the Liquidating Trust Credit Documents shall be acceptable to the Committee and DIP Lenders.<br>• The Liquidating Trust Loans shall mature on the earliest of (i) the date that is five (5) years following the Effective Date, (ii) the date of dissolution of the Liquidating Trust in accordance with the terms of the Liquidating Trust Agreement, and (iii) the date on which all Liquidating Trust Assets have been fully liquidated, resolved, settled, or otherwise disposed of and all net proceeds thereof have been distributed in accordance with the waterfall set forth herein.<br>• On the Effective Date, (i) all DIP Cash Collateral and the right to draw any unused portion of the DIP Commitment shall be transferred to and vested in the Liquidating Trust, and (ii) such unused DIP Commitment shall remain available to the Liquidating Trust as Liquidating Trust Loans to fund the administration of the Liquidating Trust and the wind-down of the Debtors' estates, in each case in accordance with the Plan, the Liquidating Trust Agreement, the Liquidating Trust Credit Documents and the Wind-Down Budget.<br>• At the discretion of the Liquidating Trustee (with approval of the Trust Oversight Board), on or after the Effective Date, $[•][4] of the New Money Liquidating Trust Loans shall be funded and deposited into a segregated deposit account the ("***Wind-Down Account***") for use in accordance with the Wind-Down Budget (as defined below). If funded, the New Money Liquidating Trust Loans shall be a line item in the Wind-Down Budget and used to fund the prosecution and monetization of the Liquidating Trust Assets, including the initial costs of the Liquidating Trustee, or otherwise in accordance with the Wind-Down Budget. Any amounts included in a Plan reserve for any contingent, disputed administrative expense and priority claims or payment of wind-down costs and expenses shall be vested in the Liquidating Trust on the Effective Date. The liquidating trust expenses shall be paid from the Wind-Down Account and the monetization of the Liquidating Trust Assets in accordance with the Wind Down Budget.<br>• The New Money Liquidating Trust Loans and the Exchanged Liquidating Trust Loans, which represent funded DIP exposure rolled over from the Chapter 11 Cases, shall bear interest and have other economic terms at |

[4] NTD: Amount of draws under the Liquidating Trust Credit Agreement to be determined based on the terms of the Liquidating Trust Credit Agreement and the Wind Down Budget.

| Term | General Description |
|---|---|
| | market rates with the applicable economics for each tranche to be agreed by the Parties and set forth in the Liquidating Trust Credit Documents.<br>• At the discretion of the Liquidating Trustee (with the approval of the Trust Oversight Board), the Liquidating Trust may obtain additional funding (the "***Additional Liquidating Trust Funding***") on terms and conditions agreed with the Liquidating Trust Lender as necessary.<br>• Prior to the Effective Date, the Debtors shall deliver a 13-week budget forecast (the "***Wind Down Budget***"), in form and substance acceptable to the Parties, that is funded by the Wind-Down DIP Draw and the monetization of the Liquidating Trust Assets and provides, to the extent practicable given the state of knowledge at the time, the projected uses for the prosecution of the Retained Causes of Action, reconciliation of claims, winding down and dissolution of the Debtors and implementation of the terms of the Plan. After the Effective Date, the initial Wind Down Budget (and any approved Wind Down Budget thereafter) shall not be superseded except with the prior written approval of the Trust Oversight Board and the Liquidating Trust Lenders, and upon such approval the superseding Wind Down Budget shall govern. The Liquidating Trustee shall submit an updated 13-week Wind-Down Budget quarterly with the other quarterly reporting hereunder and may submit an interim proposed Wind Down Budget for the Trust Oversight Board to consider if the Liquidating Trustee deems appropriate to address any unforeseen expenses.<br>• The Liquidating Trustee shall only make operating disbursements in accordance with the Wind-Down Budget. |
| **Waterfall Recovery: Allocation of Liquidating Trust Interests** | • The Plan and the Liquidating Trust Agreement shall provide that the net distributable proceeds of the Liquidating Trust Assets shall be distributed to the holders of the Liquidating Trust Interests in accordance with the following "***Waterfall Recovery***":<br>○ *Tranche 1*:<br>▪ *First*, to the extent any Liquidating Trust Assets are subject to valid, perfected prepetition liens, such Litigation Trust Assets (or the proceeds thereof) shall be distributed to such secured claim holder until such secured claim is paid in full or the collateral is otherwise fully liquidated, with such remaining deficiency claim subject to treatment for general unsecured claims below, provided, that, the distributions on account of any Claims or Liens that the Liquidating Trust is, at the time of distribution, challenging or objecting to or intends to challenge or object to, shall be escrowed until a final order has been entered adjudicating such challenge or objection;<br>▪ *Second*, repayment in full of (i) any Additional Liquidating Trust Funding and (ii) the Liquidating Trust Loans with the relative priority and terms and conditions of repayment of (i) and (ii) to be agreed by the Parties in connection with the |

| Term | General Description |
|---|---|
| | Liquidating Trust incurring the Additional Liquidating Trust Funding and the Liquidating Trust Loans as applicable; ;<br>o *Tranche 2*: Following payment in full of the Additional Liquidating Trust Funding and the Liquidating Trust Loans as set forth in *Tranche 1*, the distributable proceeds of the Litigation Trust Assets shall be distributed as follows:<br>▪ pro rata to the holders of allowed General Unsecured Claims (such interests, the "***GUC Trust Interests***"); <u>provided</u>, <u>that</u>, the distributions on account of any Claims that the Liquidating Trust is, at the time of distribution, challenging or objecting to or intends to challenge or object to, shall be escrowed until a final order has been entered adjudicating such challenge or objection; provided, further, that any proceeds of the Retained Causes of Actions recovered by the Liquidating Trust from any holder of GUC Trust Interests, or affiliate thereof, shall not, if disallowed or otherwise equitably subordinated or recharacterized (by order of the Court or settlement), be distributable to such holder and shall instead be distributed pro rata to the other holders of GUC Trust Interests.<br>• The Liquidating Trust Interests received by the Liquidating Trust Beneficiaries under the Plan shall be in full and complete satisfaction, compromise, settlement and release of their respective general unsecured claims and deficiency claims, as applicable, against the Debtors.<br>• For the avoidance of doubt, the General Unsecured Claim held by the Liquidating Trust Lender or its affiliates against Debtor 777 Partners LLC pursuant to its guarantee (the "***777 Guaranty Obligations***") of the Loan and Security Agreement, dated as of May 7, 2021, by and among the Liquidating Trust Lender, as the Administrative Agent, Leadenhall Life Insurance Linked Investments Fund PLC, as the initial Collateral Agent, and the other parties party thereto (the "***LCP Loan Agreement***", and the obligations thereunder, the "***LCP Loan Obligations***") shall be reduced, dollar for dollar, on account of any repayments received from the collateral securing such LCP Loan Obligations that was foreclosed on prepetition. The foregoing may be memorialized in a stipulation filed with the Court prior to Plan confirmation or included in the Plan at confirmation.<br>• Subject to the Trust Oversight Board's review and approval, the Liquidating Trustee shall exercise reasonable discretion with respect to the amount and timing of distributions of proceeds of monetized Liquidating Trust Assets to Liquidating Trust Beneficiaries. |
| **Plan Releases / Exculpations** | • The Plan shall not provide releases by the Debtors or their estates of any and all claims or Causes of Action and Avoidance Actions against any (a) other Debtor or affiliate of any Debtor, (b) holder of equity or other |



4913-3266-4015

| Term | General Description |
|---|---|
| | interest, directly or indirectly of any Debtor, or (c) creditor of any Debtor whether secured, unsecured, liquidated, unliquidated, contingent or otherwise.<br>• The Plan shall provide customary exculpation provisions as agreed by the Debtors, the Committee and the DIP Lenders. |
| **Conditions Precedent to Plan Effectiveness** | Each of the following is a condition precedent to the occurrence of the Effective Date:<br>• the Plan and all Plan Supplement Documents (including the Liquidating Trust Agreement) are in forms acceptable to the DIP Agent and the Committee;<br>• the Confirmation Order, in a form acceptable to the DIP Agent and the Committee, shall have become a final order in full force and effect;<br>• the Debtors have sufficient funds to discharge all Claims that are required to be paid on the Effective Date;<br>• no stay of the Confirmation Order is then in effect;<br>• all actions, documents, and agreements necessary to implement this Plan, including, without limitation, all actions, documents, and agreements necessary to implement any transactions contemplated under this Plan, shall have been effectuated or executed;<br>• the Wind-Down DIP Draw shall have been funded into the Wind-Down Account;<br>• the schedule of Retained Causes of Action shall be in form and substance acceptable to the DIP Lenders and Committee;<br>• no Event of Default under the DIP Facility shall have occurred and be continuing; and<br>• the Liquidating Trust Agreement and Liquidating Trust Credit Documents shall each be executed in form and substance reasonably acceptable to the DIP Agent, Committee and the Liquidating Trustee shall have been selected. |
| **Confirmation Requirements** | • The terms and conditions of this Term Sheet relating to the Plan are expressly subject to section 1123, 1125, 1126, 1128, and 1129 of the Bankruptcy Code and confirmation of the Plan by the Court.<br>• The Plan and Confirmation Order shall incorporate the terms and conditions of this Term Sheet and shall otherwise be reasonably acceptable to the Parties. |

**<u>Exhibit B</u>**

**Form of Final DIP Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| SIGNAL NATIONAL LLC, *et al.*,[1] | § | Case No. 26-90190 (ELM) |
| | § | |
| Debtors. | § | (Jointly Administered) |
| | § | |

**FINAL ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION FINANCING AND USE DIP CASH COLLATERAL, (II) GRANTING LIENS AND PROVIDING CLAIMS WITH SUPERPRIOTY ADMINISTRATIVE STATUS, AND (III) GRANTING RELATED RELIEF**

Upon the motion of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for Debtors' Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Utilize Cash Collateral, (II) Granting Liens And Superpriority Administrative Expense Claims, (III) Granting Adequate

[1] A complete list of each of the Debtors in these chapter 11 cases and the last four digits of their tax identification numbers may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/SignalNational. The Debtors' address for service in these chapter 11 cases is 3500 Maple Ave, Suite 420, Dallas, Texas 75219.

Protection, (IV) Modifying the Automatic Stay, (V) Scheduling a Final Hearing, And (VI) Granting Related Relief [ECF No. 12] (the "Motion")[2] pursuant to sections 105, 361, 362, 363(b), 363(c)(2), 363(m), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 364(e), 503, 506(c), and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code"), rules 2002, 4001, 6003, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), rules 2002-1, 4001-1(a), 4001-1(b), 5005-1, and 9013-1 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the Northern District of Texas (the "Local Rules") and Section D of the Procedures for Complex Cases in the Northern District of Texas (together with the Local Rules, the "Bankruptcy Local Rules"), seeking, among other things:

(a) entry of this final order (this "Final Order"):

i. authorizing the Debtors to borrow post-petition financing on a senior secured and junior secured basis (the "DIP Credit Facility") from the DIP Lenders pursuant to that certain Debtor-in-Possession Credit Agreement dated as of September [•], 2026 between the Debtors, the DIP Agent, and the DIP Lenders party thereto from time to time attached hereto as **Exhibit 2** (as may be amended, restated, supplemented, or otherwise modified from time to time, the "DIP Credit Agreement") and the related DIP Loan Documents (as further defined and described in the DIP Credit Agreement) with an aggregate principal amount of up to $10,000,000 in term loans (the "DIP Loans") to fund the expenses of these Chapter 11 Cases;

ii. authorizing and directing the Debtors to use the proceeds of the DIP Credit Facility, which proceeds shall be deposited into a segregated account and constitute "cash collateral" (as such term is defined in Section 363(a) of the Bankruptcy Code) of the DIP Lenders (the "DIP Cash Collateral") as expressly provided in the DIP Loan Documents and in accordance with the Approved Budget, including to repay in cash in full, all "DIP Obligations" as such term is defined in the Interim DIP Order[3] (the "Interim DIP Obligations");

[2] Capitalized terms used but not yet defined herein shall have the meanings ascribed to them later in this Final Order, in the Motion, or in the DIP Credit Agreement, as applicable.

[3] "Interim DIP Order" means the Interim Order (I) Authorizing the Debtors to Obtain Postpetition Financing and Use Cash Collateral, (II) Granting Liens and Providing Claims with Superpriority Administrative Status, and (III) Granting Related Relief [ECF 161].

iii. granting valid, enforceable, non-avoidable, and automatically fully perfected DIP Liens on, and security interests in (1) on a senior first lien basis, all Unencumbered DIP Collateral and (2) on a junior basis, all property of the Debtors that is subject to a valid, perfected prepetition lien on or security interest pursuant to Sections 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code, in each case subject to the Carve-Out and with the relative priorities set forth in this Final Order;

iv. granting allowed superpriority administrative claims to the DIP Lenders pursuant to Section 364(c)(1) of the Bankruptcy Code payable from and having recourse to all assets of the Debtors;

v. waiving (a) the Debtors' right to surcharge the DIP Collateral pursuant to Section 506(c) of the Bankruptcy Code and (b) the equitable doctrine of marshalling and other similar doctrines;

vi. modifying the automatic stay of Bankruptcy Code Section 362 (the "Automatic Stay") to the extent necessary to implement and effectuate the relief requested in the Motion and the terms and provisions of the DIP Loan Documents and this Final Order;

vii. waiving any applicable stay (including under Bankruptcy Rule 6004) with respect to the effectiveness and enforceability of this Final Order;

viii. finding the DIP Lenders to be "good faith" lenders pursuant to Section 364(e) of the Bankruptcy Code and granting all protections afforded therein; and

ix. authorizing the Debtors, consistent with the terms of the Interim DIP Order, to cause any of their respective direct or indirect subsidiaries that files a Chapter 11 Case as a Subsequent Debtor (as defined in the Interim DIP Order) to promptly execute and deliver to the Agent and the DIP Lenders hereunder a "Guarantor Joinder" after which such Subsequent Debtor (a) shall be deemed an "Additional Guarantor" thereunder with the same force and effect as if originally named a Guarantor under the DIP Credit Agreement and (b) shall be authorized to perform all obligations of a Guarantor under the DIP Credit Agreement and the other DIP Loan Documents to which Guarantors are parties and to acknowledge and agree that it is bound as a Guarantor thereunder as if it had been an original signatory thereto.

(b) entry of this Final Order; and

(c) such other and further relief as is just and proper.

Case 26-90034-mxm11 Doc 229 Filed 09/15/26 Entered 09/15/26 ... Page 30 of 124

The Court having considered the final relief requested in the Motion, the exhibits attached thereto, the *Declaration of Mark Shapiro* in support of the Motion [Docket No. 13](the "Shapiro Declaration"), the available DIP Loan Documents and the evidence submitted and arguments made at the Final Hearing held on September 28, 2026; and due and sufficient notice of the Final Hearing having been given in accordance with Bankruptcy Rules 2002, 4001(b), (c) and (d) and all applicable Bankruptcy Local Rules; and the Final Hearing having been held and concluded; and all objections, if any, to the final relief requested in the Motion having been withdrawn, resolved or overruled by the Court; and it appearing that approval of the final relief requested in the Motion is fair and reasonable and in the best interests of the Debtors and their Estates, and is essential for the continued operation of the Debtors' businesses and the preservation of the value of the Debtors' assets; and it appearing that the Debtors' entry into the DIP Loan Documents is a sound and prudent exercise of the Debtors' business judgment; and after due deliberation and consideration, and good and sufficient cause appearing therefor,

**THE COURT MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**[4]

A. *Petition Date*. On August 9, 2026 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, commencing the above-captioned cases (collectively, these "Chapter 11 Cases") with the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division (the "Court"). The Chapter 11 Cases are being jointly administered. The Debtors are operating as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On August 21, 2026, the United States Trustee for the

[4] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding by Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent that any of the following conclusions of law constitute findings of fact, they are adopted as such.

Northern District of Texas (the "U.S. Trustee") appointed an official committee of unsecured creditors (a "Creditors' Committee") in these Chapter 11 Cases pursuant to Section 1102 of the Bankruptcy Code.

B. *Jurisdiction and Venue*. This Court has jurisdiction over these Chapter 11 Cases and the Motion pursuant to 28 U.S.C. § 1334. Consideration of the Motion constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The Court may enter a final order approving the relief sought in the Motion consistent with Article III of the United States Constitution. Venue for the Chapter 11 Cases and proceedings on the Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

*C. Findings Regarding DIP Credit Facility and the Use of DIP Cash Collateral.*

(a) *Request for Post-Petition Financing and Use of DIP Cash Collateral.* The Debtors seek authority to enter into and perform under the DIP Loan Documents. The DIP Lenders shall have no obligation to make loans or advances except pursuant to the terms and conditions set forth herein and in the other DIP Loan Documents and no obligation to waive any conditions required thereunder. The Debtors also seek authority to use DIP Cash Collateral on the terms described herein, and in accordance with the Approved Budget, which shall be subject to Permitted Variances (as defined below) to repay the Interim DIP Obligations, administer their Chapter 11 Cases and fund their operations.

(b) *Need for Post-Petition Financing and Use of DIP Cash Collateral.* The Debtors do not have sufficient liquidity, including DIP Cash Collateral, to administer their Estates and to implement a process to consummate a chapter 11 plan in these Chapter 11 Cases without the financing requested in the Motion. The Debtors' ability to pay their employees, pay certain fees and expenses as set forth herein, to preserve valuable claims and causes of action for the benefit

of the Debtors' Estates and creditors, to implement and consummate a chapter 11 plan in these Chapter 11 Cases, and to otherwise fund their wind-down operations is essential to the Debtors' efforts to maximize and preserve the value of their respective Estates for the benefit of all creditors of the Estates. The ability of the Debtors to obtain sufficient liquidity through the proposed DIP Credit Facility with the DIP Lenders to use DIP Cash Collateral as set forth in this Final Order and the DIP Loan Documents is vital to the preservation and maintenance of the Debtors' estates and ability to maximize value for all stakeholders. Accordingly, the Debtors have an immediate need to obtain the DIP Loans (on the terms herein) and to use DIP Cash Collateral to, among other things, permit the orderly wind down of their business and preserve and maximize the value of the Debtors' Estates in order to maximize value for all creditors of the Estates.

(c) *No Credit Available on More Favorable Terms.* As set forth in the Shapiro Declaration and as demonstrated at the Final Hearing, given their current financial condition, financing arrangements, and capital structure, the Debtors have been unable to procure the necessary financing from sources other than the DIP Lenders on terms more favorable than those set forth in the DIP Loan Documents. The Debtors have been unable to reasonably obtain adequate unsecured credit allowable under Bankruptcy Code Section 503(b)(1) as an administrative expense. The Debtors have also been unable to obtain secured credit from other sources with superior terms to the DIP Loan Documents: (a) having priority over that of administrative expenses of the kind specified in Bankruptcy Code Sections 503(b), 507(a), and 507(b); (b) secured only by a lien on property of the Debtors and their Estates that is not otherwise subject to a lien; or (c) secured solely by a junior lien on property of the Debtors and their Estates that is subject to a lien. Financing on a post-petition basis is not otherwise available without granting to the DIP Lenders: (x) automatically perfected security interests in and liens on (each as provided herein) all of the



4903-3245-7167

Debtors' existing and after-acquired assets with the priorities set forth herein; (y) superpriority claims and liens; and (z) the other protections to the extent set forth in this Final Order. After considering all reasonable alternatives, the Debtors have concluded, in the exercise of their sound and reasonable business judgment, that the DIP Credit Facility, including, without limitation, the DIP Loans, represents the best financing available to them at this time and is inherently fair to the estates.

(d) *Use of Proceeds of the DIP Credit Facility.* As a condition to entry into the DIP Loan Documents, the extensions of credit under the DIP Credit Facility and the authorization to use DIP Cash Collateral, the DIP Lenders require, and the Debtors have agreed, that proceeds of the DIP Credit Facility and DIP Cash Collateral shall be used in accordance with the terms of this Final Order, the DIP Loan Documents, and the Approved Budget, which shall be subject to Permitted Variances. Proceeds of the DIP Loans shall be made available to, among other things, (i) provide working capital and for general corporate purposes of the Debtors during the Chapter 11 Cases; (ii) pay the fees, costs and expenses of the estate professionals retained in the Chapter 11 Cases as set forth in the Approved Budget and approved by the Bankruptcy Court; (iii) make all permitted payments of costs of administration of the Chapter 11 Cases; (iv) repay in full in cash upon, entry of this Final Order, all outstanding Interim DIP Obligations and (v) pay such pre-petition expenses solely as consented to by each of the DIP Lenders and approved by the Bankruptcy Court. Based upon the record presented to this Court by the Debtors, (a) the Debtors have prepared and delivered the budget attached hereto as **Exhibit 1** (such budget and any subsequent approved budget shall constitute without duplication, the "Approved Budget"), (b) the Approved Budget was prepared by the Debtors, with the assistance of their professional advisors and management, as well as review and approval of the DIP Lenders, and (c) the Approved Budget



4903-3245-7167

(as the same may be amended or extended solely as provided for herein) sets forth, among other things, the projected cash receipts and disbursements for the periods covered thereby. The Debtors believe in good faith that the Approved Budget, subject to the Permitted Variances, is achievable and will allow the Debtors to operate in chapter 11 during the term of the Approved Budget. The DIP Lenders are relying upon the Debtors' compliance with the Approved Budget, subject to the Permitted Variances, in determining to consent to the use of DIP Cash Collateral solely as contemplated in this Final Order and to enter into (or as the case may be, consent to) the DIP Credit Facility as provided for in this Final Order and the DIP Loan Documents.

(e) *The DIP Credit Facility Terms and Conditions are Fair and Reasonable; Good Faith Pursuant to Section 364(e).* Based on the Motion, the Shapiro Declaration, and the record presented to the Court at the Final Hearing, the terms and conditions of the DIP Credit Facility pursuant to the DIP Loan Documents and the use of the DIP Collateral (defined below), including the DIP Cash Collateral, pursuant to this Final Order are fair, reasonable, and the best available to the Debtors under the circumstances, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, are supported by reasonably equivalent value and consideration, and were entered into at arm's-length, under no duress, and without undue influence, negligence, or violation of public policy or law. Use of DIP Cash Collateral and any credit to be extended as set forth in the DIP Loan Documents shall be deemed to have been so allowed, advanced, made, used, or extended in good faith, and for valid business purposes and uses, within the meaning of Bankruptcy Code Section 364(e), and the DIP Lenders are therefore entitled to the protections and benefits of Bankruptcy Code Section 364(e) and this Final Order.

(f) *Bankruptcy Code Section 506(c).* On account of (a) the agreement of the DIP Lenders to subordinate their liens and claims (including, but not limited to, superpriority

claims) to the Carve-Out; and (b) the Approved Budget covering the administrative costs projected by the Debtors, the DIP Lenders, the Debtors and their estates waive all rights under (x) the provisions of Bankruptcy Code section 506(c), and (y) the equitable doctrine of "marshaling" or any similar doctrine solely with respect to the DIP Collateral provided hereunder to secure repayment of the DIP Obligations;

i. *Good and Sufficient Cause Shown.* Good and sufficient cause has been shown for entry of this Final Order. The ability of the Debtors to obtain sufficient liquidity under the DIP Loan Documents is vital to the Debtors' Estates and creditors. The relief requested in the Motion is necessary, essential, and appropriate, and is in the best interest of and will benefit the Debtors, their creditors, and their Estates, as its implementation will, among other things, provide the Debtors with the necessary liquidity to (a) preserve and maximize the value of the Debtors' Estates for the benefit of all the Debtors' creditors, and (b) maximize and stabilize the value of the Debtors' assets. The terms of the DIP Credit Facility are fair and reasonable, reflect each Debtor's exercise of its business judgment, and are supported by reasonably equivalent value and fair consideration.

ii. *Notice.* Notice of the Final Hearing and the relief requested in the Motion has been provided by the Debtors as indicated in the Motion. Under the circumstances, the notice given by the Debtors of the Motion, the relief requested therein, and the Final Hearing is appropriate notice thereof and complies with Bankruptcy Rules 4001(b) and (c) and the Local Rules, and no further notice of the relief granted herein is necessary or required.

Based upon the foregoing findings and conclusions, the Motion, and the record before this Court with respect to the Motion, and after due consideration and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1. *Motion Granted*. The final relief sought in the Motion is granted, the DIP Credit Facility is authorized and approved, and the use of DIP Cash Collateral is authorized, in each case on an final basis and as set forth herein and subject to the terms and conditions set forth in this Final Order and the other DIP Loan Documents. All objections and reservations of rights with respect to entry of this Final Order to the extent not withdrawn, waived, settled or resolved are hereby denied and overruled on the merits. This Final Order shall become effective immediately upon its entry.

2. *Authorization of the DIP Credit Facility and the DIP Loan Documents*.

(a) The Debtors are hereby expressly authorized and empowered to immediately borrow or guaranty, as applicable, and obtain, on a joint and several basis, DIP Loans under the DIP Credit Facility, and the Debtors (on a joint and several basis) are hereby authorized and empowered to (i) incur all other indebtedness and obligations owing to the DIP Lenders on the terms and subject to the conditions and limitations set forth in the DIP Loan Documents and this Final Order, up to the maximum aggregate amount of $10,000,000, subject to the Approved Budget (with any Permitted Variances) from the entry of this Final Order through and including the Maturity Date and the terms of the DIP Loan Documents and (ii) repay in full in cash all outstanding Interim DIP Obligations with the proceeds of the DIP Credit Facility.

(b) Upon entry of this Final Order, in furtherance of the foregoing and without further approval of this Court, the Debtors are hereby authorized and empowered to execute, deliver, enter into and, as applicable, perform all of their obligations under the DIP Loan Documents. The Debtors are hereby authorized to borrow money as permitted by the DIP Loan Documents, which shall be used for all limited purposes permitted hereunder and under the DIP

Loan Documents (and subject to and in accordance with the Approved Budget). Upon entry of this Final Order, in furtherance of the foregoing and without further approval of this Court, the Debtors are hereby authorized and empowered, and the automatic stay imposed by Bankruptcy Code Section 362 is hereby lifted to the extent necessary, to: (i) enter into, execute, deliver, perform, and comply with all of the terms, conditions, and covenants of the DIP Loan Documents; (ii) execute and deliver all certificates, reports, statements, and other agreements and documents required or contemplated by the DIP Loan Documents (including, without limitation, documents required for the Debtors' performance of their obligations under the DIP Loan Documents and the creation and perfection of liens granted or contemplated therein); and (iii) incur all obligations under the DIP Loan Documents in accordance herewith and perform all other undertakings and acts required or contemplated by the DIP Loan Documents.

(c) The advances under the DIP Credit Facility and the use of DIP Cash Collateral shall be used in each case solely in a manner consistent with the terms and conditions of the DIP Loan Documents and this Final Order and, in all respects, in accordance with and as may be limited by the Approved Budget (subject to any variances thereto permitted under the terms and conditions of the DIP Credit Agreement), solely as follows (in each case solely as provided for in the Approved Budget):

(i) for repayment in full in cash of the Interim DIP Obligations upon entry of this Final Order;

(ii) for general operating and working capital purposes, for the payment of fees, expenses, and costs incurred in connection with these Chapter 11 Cases, including the investigation of liens and claims, and other proper corporate purposes of the Debtors not otherwise prohibited by the terms hereof for working capital, and other lawful corporate purposes of the Debtors; and

(iii) for making other payments as expressly provided in this Final Order and the Approved Budget (including the Carve-Out, for the

Case 24-90153-1 GK-BC 229 Document 101 Filed 09/15/26 Page 38 of 124

payment of the Debtors' and Creditors' Committees' Professional Fees, solely as set forth in the Approved Budget).

3. *DIP Obligations*. All obligations under the DIP Loan Documents shall constitute legal, valid, binding and non-avoidable obligations of the Debtors (the "DIP Obligations"), enforceable against each Debtor and its respective Estate in accordance with the terms of this Final Order and the other DIP Loan Documents, and any successors thereto, including any trustee appointed in the Chapter 11 Cases, or in any case under Chapter 7 of the Bankruptcy Code upon the conversion of any of the Chapter 11 Cases, or in any other proceedings superseding or related to any of the foregoing (collectively, the "Successor Cases"). The DIP Obligations shall include all loans and any other indebtedness or obligations, contingent or absolute, which may now or from time to time be owing by any of the Debtors to any of the DIP Lenders, in such capacities, in each case under, or secured by, the DIP Loan Documents (including this Final Order), including all principal, interest, and other amounts under the DIP Loan Documents and this Final Order. The Debtors shall be jointly and severally liable for the DIP Obligations. Except as permitted hereby, no obligation, payment, transfer or grant of security hereunder or under the other DIP Loan Documents to the DIP Lenders shall be stayed, restrained, voidable, avoidable or recoverable, under the Bankruptcy Code or under any applicable law (including, without limitation, under any of Sections 502(d), 544 and 547 to 550 of the Bankruptcy Code or under any applicable state Uniform Voidable Transactions Act, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or common law), or subject to any defense, avoidance, reduction, setoff, recoupment, offset, recharacterization, subordination (whether equitable, contractual or otherwise), disallowance, impairment, claim, counterclaim, cross-claim or any other challenge under the Bankruptcy Code or any applicable law or regulation by any person or Entity.

Case 26-90034-lmt11 Doc 229 Filed 09/10/26 Entered 09/10/26 Page 39 of 124

4. *Payment.* The Debtors are hereby authorized to pay, in accordance with this Final Order, the principal, interest, and other amounts described above and in the DIP Loan Documents as such amounts, to the extent applicable, become due without need to obtain further Court approval, and the Debtors shall be jointly and severally obligated to pay all such amounts, and satisfy all such obligations, which in each case shall constitute DIP Obligations hereunder and under the applicable DIP Loan Documents.

5. *Amendment of DIP Loan Documents.* The Debtors and the DIP Lenders are hereby authorized to approve and implement, in accordance with the terms of the DIP Loan Documents, any modification of the DIP Loan Documents; *provided*, *however*, that any material modification or amendment to the DIP Loan Documents shall be subject to providing notice of such material modification or amendment to counsel to the U.S. Trustee, and the Creditors' Committee, each of which shall have five (5) business days from the date of such notice within which to object in writing to such modification or amendment unless the parties receiving notice agree in writing to a shorter period. If no timely objection is filed with the Court within such five (5) day notice period to the proposed material modification or amendment to the DIP Loan Documents, then such modification or amendment shall become effective upon the expiration of the aforementioned notice period. If a timely objection is filed, the Court shall resolve such objection prior to such modification or amendment becoming effective.

6. *Conditions Precedent.* The DIP Lenders shall have no obligation to make any loan or advance under the DIP Credit Agreement unless the conditions precedent to such loan or extension of credit under the DIP Credit Agreement have been satisfied in full or waived in accordance with the DIP Credit Agreement. The Debtors shall have no ability to use DIP Cash Collateral unless the Debtors are in compliance with all obligations under the DIP Loan

Documents and this Final Order (including, without limitation, that no Event of Default has occurred).

7. *Approved Budget Maintenance.*

(a) *Amendments to Approved Budget*. The Approved Budget and any supplemental Approved Budget may be modified, amended and updated from time to time in accordance with the DIP Credit Agreement, and, once approved in writing by the DIP Agent pursuant to the DIP Credit Agreement, shall supersede and replace the then-Approved Budget. If any revised budget is not approved in writing by the DIP Agent pursuant to the DIP Credit Agreement, the then-existing Approved Budget shall remain in full force and effect. A copy of any updated Approved Budget shall be filed with the Court within one (1) business day after it has been approved in writing by the DIP Agent. The DIP Lenders agree to support and approve budget item(s) for (a) a line-item in the Approved Budget to be used by the Committee (or other estate fiduciary) in an amount not less than $1,000,000 to pursue an independent investigation and prosecution of all Causes of Action and Avoidance Actions, and (b) independent counsel for the independent director (if appropriate in her discretion).

(b) *Permitted Variances*. The Debtors shall comply with the Approved Budget (subject to the Permitted Variances provided in the next immediate sentence), and shall not make any payments, or incur any obligations or liabilities, that are not projected and provided for in the Approved Budget. The Debtors shall not permit actual disbursements for any Measuring Period (as defined below) to exceed one hundred and twenty percent (120%) of the aggregate disbursements forecasted in the Approved Budget for such Measurement Period (the "Permitted Variances"); *provided, however,* that professional fees and expenses shall be excluded from any calculation of Permitted Variances. On Wednesday of every other week, beginning with the

Wednesday of the second full week ended after the entry of this Final Order, the Debtors shall provide the DIP Lenders with an updated 13-week forecast (in substantially the same form as the Approved Budget) and a variance report (the "Variance Report") comparing the actual disbursements of the trailing four (4) week period ending the prior Friday (the "Measuring Period") to the disbursements forecasted under the Approved Budget for such Measuring Period; provided, that, the first Measurement Period shall be tested against the trailing two (2) week period and each Measurement Period thereafter shall be tested on a trailing four (4) week period.

(c) *Reporting Obligations*. The Debtors shall comply with all reporting requirements set forth in the DIP Loan Documents, including, without limitation, providing the Bi-Weekly Budget Reports (as defined in the DIP Credit Agreement) which shall include the Variance Report.

8. *Bankruptcy Milestones.* The following shall constitute "Bankruptcy Milestones" as defined in the DIP Credit Agreement, in each case measured from the Petition Date for the Initial Debtors, and the Debtors shall strictly comply with same unless extended in writing by the Agent (acting at the direction of the Required Lenders):

> (a) on or before November 21, 2026, Debtors shall file (i) consistent with the terms of the Plan Term Sheet (which, as annexed hereto as **Exhibit 3**, shall serve as a framework for the Plan and shall be subject to amendments and modifications acceptable to the Debtors, the Committee and the DIP Agent), a joint chapter 11 plan (the "Plan") and associated Disclosure Statement (the "Disclosure Statement"), and (b) motion to approve the Disclosure Statement and the form and process of solicitation of the votes on the Plan (the "Solicitation Motion"), each in form and substance satisfactory to the DIP Agent, the Debtors and the Committee;
>
> (b) on or before January 22, 2027, the Court shall have entered an order, in form and substance acceptable to the DIP Agent, the Debtors and the Committee confirming the Plan; and
>
> (c) by not later than February 5, 2027, all conditions precedent to the effectiveness of the Plan shall have been satisfied and the Plan shall have become effective (the "Effective Date").

Failure to timely satisfy any Bankruptcy Milestone, unless waived in writing by the DIP Agent, shall constitute an Event of Default under this Final Order and under the DIP Loan Documents.

9. *DIP Liens and Superpriority Claims.*

(a) *DIP Lien Grant.* To secure the prompt payment and performance of any and all DIP Obligations of the Debtors to the DIP Lenders of whatever kind, nature, or description, absolute or contingent, now existing or hereafter arising, the DIP Agent for the benefit of the DIP Lenders shall have and is hereby granted, subject solely to the Carve-Out, effective as of and from the Petition Date, valid, binding, enforceable, continuing, non-avoidable and automatically perfected security interests and liens (such security interests and liens collectively, "DIP Liens") securing any and all portions of the DIP Loans as follows:

> (i) senior first-priority DIP Liens on all assets of the Debtors that were not subject to valid, perfected, and non-avoidable Liens as of the Closing Date (the "Unencumbered DIP Collateral"), which shall include the following::
>
> > (a) the proceeds, in any and all form and amount paid or payable under or in connection therewith, without limitation, of any and all claims, damages, remedies, causes of action, reimbursement Claims, contribution Claims, recoupment rights, debts, judgments, demands, rights, actions, controversies, proceedings, agreements, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, commercial tort claims, counterclaims and cross claims, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, Disputed or undisputed, secured or unsecured, assertable, asserted or unasserted, direct or indirect, choate or inchoate, reduced to judgment or otherwise, directly or derivatively, matured or unmatured, suspected or unsuspected, in contract, tort, law, equity, or otherwise pursuant to any theory of Law or otherwise, and shall include, for the avoidance of doubt: (i) all rights of setoff, counterclaim, or recoupment and Claims under contracts or for breaches of duties imposed by law or in equity; (ii) any Claim based on, or relating to, or in any manner arising from, in whole or in part, tort, breach of contract, breach of fiduciary duty, violation of state or federal Law or breach of any duty imposed by Law or in equity (the "Causes of Action"); and



4903-3245-7167

Case 24-cv-03453-JGK-BCM Document 1-1 Filed 09/15/26 Page 43 of 124

(b) the proceeds, in any and all form and amount paid or payable under or in connection therewith, without limitation, of the Debtors' claims and causes of action under sections 502(d), 544, 545, 547, 548 and 550 of the Bankruptcy Code, or any other avoidance actions under the Bankruptcy Code (the "Avoidance Actions") and the proceeds of all Avoidance Actions; and

(c) any assets of the Debtors that were only unencumbered by Liens securing the Interim DIP Obligations; and

(ii) junior DIP Liens on all other assets of the Debtors subject to valid, properly perfected, and non-avoidable Liens or security interests existing as of the Petition Date (all of the foregoing, together with the Unencumbered DIP Collateral, the "DIP Collateral").

Notwithstanding anything to the contrary herein or in the DIP Loan Documents, "Unencumbered DIP Collateral" shall not include any claims, counterclaims, demands, defenses, offsets, debts, accounts, contracts, liabilities, actions and causes of action of any kind, nature or description, whether matured or unmatured, known or unknown, asserted or unasserted, foreseen or unforeseen, accrued or unaccrued, suspected or unsuspected, liquidated or unliquidated, pending or threatened, arising in law or equity, upon contract or tort or under any state or federal law or otherwise, that the Debtors, their estates, affiliates, or subsidiaries may have against the DIP Agent or DIP Lenders, including, without limitation, claims and defenses relating to servicing fees that may be owed by the DIP Lenders, the DIP Lenders' pre-petition asset foreclosures, or upon the bond posted in connection with the litigation styled *Leadenhall Capital Partners LLP v. Wander, et al.*, 24 Civ. 3453 (JGK)(BCM), ECF No. 1 (S.D.N.Y.) or *Signal SML 4 LLC, et al. v. Leadenhall Life Insurance Linked Investments Fund PLC*, Index No. 652929/2025 (NY Cnty Supreme Ct), or any proceeds thereof.

(b) The DIP Liens shall be: (i) pursuant to section 364(c)(2) of the Bankruptcy Code, valid, binding, enforceable, non-avoidable, and automatically perfected first-priority security interests in and liens on all Unencumbered DIP Collateral and (ii) pursuant to section 364(c)(3) of the Bankruptcy Code, valid, binding, enforceable, non-avoidable, and automatically perfected junior liens on all other DIP Collateral, subject only to valid, properly perfected, and non-avoidable Liens in existence on the Petition Date, in each case subject and subordinate only to the Carve-Out.

Case 24-90345 Doc 229 Filed 09/15/26 Page 44 of 124

(c) *Post-Petition Lien Perfection*. This Final Order shall be sufficient and conclusive evidence of the priority, perfection, and validity of the post-petition liens and security interests granted herein, effective as of the Petition Date, without any further act and without regard to any other federal, state, or local requirements or law requiring notice, filing, registration, recording, or possession of the DIP Collateral, or other act to validate or perfect such security interest or lien, including, without limitation, control agreements with any financial institution(s) holding any deposit account of the Debtors (a "Perfection Act"). Notwithstanding the foregoing, if the DIP Lenders elect for any reason to file, record, or otherwise effectuate any Perfection Act, each of the DIP Lenders are authorized to perform such Perfection Act, and the Debtors are authorized to perform such Perfection Acts to the extent necessary or required by the DIP Lenders, which act or acts shall be deemed to have been accomplished as of the Petition Date notwithstanding the date and time actually accomplished, and in such event, the subject filing or recording office is authorized to accept, file, or record any document in regard to such act in accordance with applicable law. The DIP Lenders may choose, or may choose to direct the Debtors, to file, record, or present a certified copy of this Final Order in the same manner as a Perfection Act, which shall be tantamount to a Perfection Act, and, in such event, the subject filing or recording office is authorized to accept, file, or record such certified copy of this Final Order in accordance with applicable law. Should the DIP Lenders so choose and attempt to file, record, or perform a Perfection Act, no defect or failure in connection with such attempt shall in any way limit, waive, or alter the validity, enforceability, attachment, priority, or perfection of the DIP Liens granted herein by virtue of the entry of this Final Order.

(d) Notwithstanding any provision to the contrary in this Final Order, the Motion, or the DIP Credit Agreement, the DIP Collateral and the DIP Cash Collateral (and any

Case 24-90345-11 GK-BCM Document 1016-1 Filed 09/15/26 Page 45 of 124

DIP Liens, security interests, or superpriority administrative expense claims granted to the DIP Lenders) shall explicitly exclude the Disputed Property,[5] pending further order of this Court or a final, non-appealable adjudication determining the estates' interest in such property. Nothing contained in this Final Order, the Motion, or the DIP Credit Facility shall operate as an adjudication, waiver, release, impairment, or priming of DASIR 2 LLC's ("DASIR 2") rights, claims, or defenses regarding the Disputed Property, if any. DASIR 2's right to assert that the Disputed Property (and any identifiable proceeds traceable thereto) is subject to a constructive trust, resulting trust, or other equitable ownership interest, and therefore excluded from property of the Debtors' estates pursuant to 11 U.S.C. § 541(d), is fully preserved. Until such time as a final, non-appealable order is entered by a court of competent jurisdiction determining the ownership of the Disputed Property, the Debtors shall use reasonable best efforts to cause their non-Debtor subsidiaries and affiliates, as applicable, to segregate and hold any Disputed Property in their possession in a separate depository account. The Debtors shall not use, sell, lease, or encumber the Disputed Property or its traceable proceeds to fund operations, pay DIP professional fees, or satisfy any prepetition or postpetition obligations without the express written consent of DASIR 2 or further order of this Court.

10. *Superpriority Administrative Expense Claims.* For the DIP Obligations, whether now existing or hereafter arising pursuant to this Final Order, the applicable DIP Loan Documents, or otherwise, subject only to the Carve-Out, the DIP Lenders are granted an allowed superpriority administrative expense claim in the Debtors' Estates pursuant to section 364(c)(1) of the Bankruptcy Code, having priority in right of payment over any and all other obligations, liabilities,

[5] "Disputed Property" shall mean proceeds derived from those Purchased Receivables (as defined in the Sale Agreement dated as of May 7, 2021, between Signal Medical Receivables LLC, as Seller, and Signal SML 4 LLC, as Purchaser) that were subject to the May 15, 2025, foreclosure auction by Leadenhall Life Insurance Linked Investment Fund Plc and assigned to DASIR 2, LLC in connection therewith.

and indebtedness of any of such Debtors, whether now in existence or hereafter incurred by any of such Debtors, of every kind or nature, including any and all unsecured claims, administrative expenses, adequate protection claims, priority claims or any other claims of the kind specified in, or ordered pursuant to, the Bankruptcy Code, including without limitation, *inter alia*, Bankruptcy Code sections 105, 326, 328, 330, 331, 503(b), 507, 364(c)(1), 546(c), 726, or 1114 and, upon entry of a Final Order, sections 506(c) and 552(b) (the "DIP Superpriority Claims").

11. *Protections of Rights of the DIP Agent and DIP Lenders.* Unless the DIP Agent and the DIP Lenders shall have provided their prior written consent, there shall not be entered in the Chapter 11 Case or any Successor Case any order or other relief (including any order confirming a plan of reorganization or liquidation) that authorizes (i) the obtaining of credit or the incurring of indebtedness secured by a lien on any DIP Collateral or entitled to administrative priority status senior to or *pari passu* with the DIP Liens or the DIP Superpriority Claims, other than the Carve-Out, unless the DIP Obligations are simultaneously paid or discharged in full, or (ii) the use of DIP Cash Collateral for any purpose not permitted under the DIP Loan Documents and this Final Order.

12. *Proceeds of Subsequent Financing.* If the Debtors, any trustee, or any examiner or responsible officer subsequently appointed in the Chapter 11 Cases or any Successor Cases obtains credit or incurs debt pursuant to sections 364(b), 364(c), or 364(d) of the Bankruptcy Code other than the credit or debt provided pursuant to this Final Order at any time prior to the repayment in full of all DIP Obligations, then all cash proceeds derived from such credit or debt shall immediately be turned over to the DIP Lenders in such amount that will indefeasibly pay in full all such DIP Obligations.



4903-3245-7167

13. *Disposition of DIP Collateral.* Except as otherwise provided herein or in the DIP Loan Documents, the Debtors shall not sell, transfer, lease, encumber, or otherwise dispose of any DIP Collateral outside the ordinary course of business without the prior written consent of the DIP Agent or further order of the Court, until the DIP Obligations are paid in full in cash or otherwise discharged.

14. *Maintenance of DIP Collateral; Cash Management.* Unless otherwise consented to by the DIP Agent, until the DIP Obligations are paid in full in cash and all DIP Commitments are terminated, the Debtors shall maintain (a) the cash management system in effect as of the Petition Date, as modified by this Final Order and the DIP Credit Agreement, any other order of this Court, or as otherwise agreed by the DIP Agent and (b) a segregated deposit account holding only the proceeds of the DIP Loans which shall not be commingled with any other cash of the Debtors.

15. *DIP Cash Collateral/SuttonPark Cash Collateral*. Subject to the terms and conditions of this Final Order, pursuant to Bankruptcy Code section 363, the Debtors are authorized to use DIP Cash Collateral solely in accordance with the DIP Credit Agreement and as may be limited by the Approved Budget (subject to the Permitted Variances). Consistent with the DIP Credit Agreement, cash receipts and disbursements of SuttonPark Capital LLC, SuttonPark Servicing LLC, and its Subsidiaries, which are not otherwise captured in the DIP Budget may be used to fund operations of SuttonPark Capital LLC and SuttonPark Servicing LLC in the ordinary course of their businesses, provided that, for the avoidance of doubt, nothing herein shall modify, alter or impair the rights and priorities of any creditors with respect to any claims, rights or obligations owed to such creditors in connection with the cash receipts and disbursements of SuttonPark Capital LLC and SuttonPark Servicing LLC and its Subsidiaries.

Case 24-90345-1GK-BCW Document 1021 Filed 09/15/26 Page 48 of 124

16. *Pre-Petition Lenders' Adequate Protection.* As adequate protection for the interests of those parties holding valid, perfected, non-avoidable liens and security interests in the Debtors' property (the "Pre-Petition Lenders") the Pre-Petition Lenders are being provided with adequate protection as set forth below:

(a) *Adequate Protection Liens*. Solely to the extent of any diminution in value of their respective interests in their applicable collateral (the "Pre-Petition Collateral," and such diminution in value, the "Diminution in Value") pursuant to sections 361 and 363(c) of the Bankruptcy Code as of the Petition Date), the Debtors shall grant the Pre-Petition Lenders valid and perfected replacement security interests in, and liens on, their respective Pre-Petition Collateral (the "Adequate Protection Liens"), which security interests and liens shall be subject to and subordinate in all respects to the Carve-Out. The Adequate Protection Liens shall be enforceable against the Debtors, their Estates and any successors thereto, including without limitation, any trustee or other Estate representative appointed or elected in the Chapter 11 Cases or any Successor Cases. Subject solely to the Carve-Out, the Adequate Protection Liens (A) shall not be made subject to or *pari passu* with any lien or security interest by any order heretofore or hereafter entered in these Chapter 11 Cases (unless with the consent of the Pre-Petition Lenders); and (B) shall be senior to the DIP Liens solely with respect to their respective Pre-Petition Collateral. In the event that the Pre-Petition Liens of such Pre-Petition Lender are avoided or subordinated by the Bankruptcy Court or a court of competent jurisdiction (including pursuant to sections 510, 547 or 548 of the Bankruptcy Code) such Adequate Protection Liens shall be deemed null and void retroactively to the date of this Final Order.

(b) *Adequate Protection Claims*. As further adequate protection, to the extent that the Adequate Protection Liens do not adequately protect the Diminution in Value of the Pre-

Petition Lenders' interests in their respective Pre-Petition Collateral, the Pre-Petition Lenders are hereby granted, to the extent of such Diminution in Value an allowed superpriority administrative expense claim (the "<u>Adequate Protection Claim</u>," and together with the Adequate Protection Liens, the "<u>Adequate Protection</u>") in these Chapter 11 Cases or any Successor Cases against the Debtors' Estates under sections 503 and 507(b) of the Bankruptcy Code. The Adequate Protection Claims shall have priority over all other administrative expense claims, priority claims, and unsecured claims against the Debtors or their Estates, which are now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses and priority or other claims of the kinds specified in or ordered pursuant to Sections 105, 326, 328, 330, 331, 364, 365, 503(a), 503(b), 506(c) (upon entry of a Final Order), 507(a), 507(b), 546(c), 546(d), 726, 1113, and 1114 of the Bankruptcy Code, subject only to (i) the DIP Superpriority Claims, and (ii) the Carve-Out. In the event that the Adequate Protection Liens are avoided or subordinated by the Bankruptcy Court or a court of competent jurisdiction (including pursuant to sections 510, 547 or 548 of the Bankruptcy Code), then the Adequate Protection Claim shall be deemed null and void retroactively to the date of this Final Order.

(c) Nothing herein shall waive the DIP Agent's, DIP Lenders' or their respective affiliates' rights to seek adequate protection in these Chapter 11 Cases to the extent that such parties believe that proceeds of collateral secured by liens at the Debtors' non-debtor affiliates are in the possession of the Debtors' estates.

17. *Application of Payments and Proceeds.* All payments required to be made under the DIP Credit Facility and/or proceeds collected with respect to the DIP Collateral shall be applied in the manner set forth in the DIP Loan Documents.



4903-3245-7167

18. *Cash Collateral of the Prepetition Lenders.* Nothing in this Order authorizes the Debtors to use the cash collateral (as such term is defined in Section 363 of the Bankruptcy Code) of any Pre-Petition Lender.

19. *Right to Credit Bid.* The DIP Agent and the DIP Lenders shall be entitled to "credit bid" all or any portion of the DIP Obligations under Section 363(k) of the Bankruptcy Code.

20. *Carve-Out.* The DIP Liens granted to the DIP Lenders, the DIP Superpriority Claims provided to the DIP Lenders, and any and all other liens or claims securing the DIP Obligations, and all other liens or claims granted by this Final Order shall be subject and subordinate in all respects to the right of payment, funding, and priority of the Carve-Out, to the extent provided herein:

(a) *Carve-Out.* The "Carve-Out" means the sum of: (i) all fees required to be paid to the clerk of the Court and to the Office of the U.S. Trustee under 28 U.S.C. § 1930(a) plus interest at the statutory rate, without regard to the notice set forth in clause (iv) below, and which shall not be subject to any budget (collectively, "Clerk and U.S. Trustee Fees"); (ii) in the event of a conversion of the Chapter 11 Cases to cases under Chapter 7 of the Bankruptcy Code, all reasonable and documented fees and expenses incurred by a trustee under section 726(b) of the Bankruptcy Code, in an aggregate amount not to exceed $100,000 without regard to the notice set forth in clause (iv) below; (iii) to the extent allowed at any time, whether by interim or final compensation order or any other order of the Court, all unpaid fees and expenses (the "Allowed Professional Fees") incurred by persons or firms retained by the Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code (collectively, the "Debtors' Professionals") or retained by any statutory committee appointed in the Chapter 11 Cases pursuant to section 1103 of the Bankruptcy Code (the "Committee Professionals," and together with the Debtors' Professionals,

the "<u>Professional Persons</u>") at any time before or on the day of delivery by the DIP Agent, acting at the direction of the DIP Lenders, of a Carve-Out Trigger Notice (defined below), whether allowed by the Court prior to or after delivery of a Carve-Out Trigger Notice, but solely up to and to the extent such fees and expenses are unpaid and within the amounts set forth in the Approved Budget (including any Permitted Variance therefor) (the "<u>Pre-Trigger Carve-Out</u>"); and (iv) Allowed Professional Fees incurred after delivery by the DIP Lenders of a Carve-Out Trigger Notice, in an aggregate amount not to exceed $250,000 (the amount set forth in this clause (iv) being the "<u>Post-Carve-Out Trigger Notice Cap</u>"). For purposes of the foregoing, "<u>Carve-Out Trigger Notice</u>" means a written notice delivered by email (or other electronic means) by the DIP Agent to the Debtors, Debtors' counsel, the U.S. Trustee, and lead counsel to a Creditors' Committee, if any, stating that the Post Carve-Out Notice Cap has been invoked, which notice may be delivered only following the occurrence and during the continuation of an Event of Default. In no way shall the Approved Budget, the Carve Out, the Post-Carve-Out Trigger Notice Cap, or any of the foregoing be construed as a cap or limitation on the amount of Allowed Professional Fees that Professional Persons may seek to be paid by the Debtors in these Chapter 11 Cases from funds other than the DIP Facility and DIP Cash Collateral.

(b) *Carve-Out Payment of Allowed Professional Fees Prior to the EOD Notice Date*. Any payment or reimbursement made prior to the occurrence of the EOD Notice Date (as defined herein) in respect of any Allowed Professional Fees shall not reduce the Carve-Out. For the avoidance of doubt and notwithstanding anything to the contrary herein, the Carve-Out shall be senior to all liens and claims securing the DIP Obligations, any adequate protection liens and superpriority claims, any and all other liens or claims securing the DIP Obligations, and all other liens or claims granted by this Final Order. Further, without limiting the foregoing, the Pre-Trigger

Carve-Out amount shall be limited to amounts for each Professional Person as set forth in the Approved Budget.

(c) *Carve Out Reserve.* Prior to the delivery of the Carve-Out Trigger Notice, on a weekly basis, the Debtors may, in their discretion, cause to be funded from the DIP Facility or DIP Cash Collateral into a segregated account (the "Funded Reserve Account") held for the benefit of Professional Persons an amount equal to the aggregate amount of the estimated accrued fees of Professional Persons, based on the amounts set forth in the Approved Budget remaining unpaid as of the Friday of the preceding week (and not previously funded to the Funded Reserve Account). Promptly after the delivery of the Carve-Out Trigger Notice, the Debtors shall fund from the DIP Facility or DIP Cash Collateral into the Funded Reserve Account an amount equal to the obligations set forth in clauses (a)(i) through (a)(iii) of the definition of Pre-Trigger Carve Out set forth above (the "Pre-Carve-Out Trigger Notice Amounts") and the Post-Carve-Out Trigger Notice Cap (collectively, the "Carve Out Reserves"). After the delivery of a Carve-Out Trigger Notice as required herein, any payment or reimbursement made on or in respect of any Allowed Professional Fees (excluding any incurred and unpaid professional fees and expenses of the DIP Agent payable pursuant to the Interim Order or this Final Order) in an aggregate amount not in excess of the amounts accrued or paid for each such Professional as set forth in the Approved Budget, shall permanently reduce the Carve Out on a dollar-for-dollar basis. Notwithstanding anything to the contrary in this Final Order, following delivery of a Carve-Out Trigger Notice, the DIP Agent shall not sweep or foreclose on cash of the Debtors until the Carve Out Reserves have been fully funded, but shall have a security interest in any residual interest in the Carve Out Reserves after payment and full funding of all Carve Out amounts, which such amounts shall be transferred to the Debtors' segregated account holding DIP Cash Collateral and thereafter

constitute DIP Cash Collateral.. Further, notwithstanding anything to the contrary in this Final Order, (a) the failure of the Carve Out Reserves to satisfy in full the Allowed Professional Fees shall not affect the priority of the Carve Out, and (b) the Carve Out Reserves shall serve as a limitation only on the amount of Allowed Professional Fees that may be paid from such Carve Out Reserves, and in no way shall the Approved Budget, the Carve Out, the Post-Carve-Out Trigger Notice Cap, the Carve Out Reserves or any of the foregoing be construed as a cap or limitation on the amount of Allowed Professional Fees that Professional Persons may seek to be paid by the Debtors in these Chapter 11 Cases from funds other than the DIP Facility and DIP Cash Collateral.

(d) *No Direct Obligation to Pay Allowed Professional Fees*. None of the DIP Agent or the DIP Lenders shall be responsible for the payment or reimbursement of any fees or disbursements of any Professional Person or any fees or expenses of the U.S. Trustee or Clerk of the Court incurred in connection with the Cases or any Successor Cases under any chapter of the Bankruptcy Code. Nothing in this Final Order or otherwise shall be construed to (a) obligate the DIP Agent or the DIP Lenders, in any way, to pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement, (b) impair the ability of any party to object to any of the fees, expenses, reimbursement or compensation of any professionals, or (c) alter the requirement of a Professional Person to file and serve fee applications or otherwise comply with the Bankruptcy Code, Bankruptcy Rules or Local Bankruptcy Rules of this Court relating to payment of fees and reimbursement of expenses of Professional Persons, or with any interim compensation order or retention order entered by this Court.

(e) *Payment of Carve-Out On or After the EOD Notice Date*. Any payment or reimbursement made on or after the occurrence of the EOD Notice Date in respect of any Allowed Professional Fees shall permanently reduce the Carve-Out on a dollar-for-dollar basis. Any payment of the Carve-Out shall be added to, and made a part of, the DIP Obligations secured by the DIP Collateral and shall be otherwise entitled to the protections granted under this Final Order, the DIP Loan Documents, the Bankruptcy Code, and applicable law. Payment of any amounts on account of the Carve-Out, whether by or on behalf of the DIP Lenders, shall not and shall not be deemed to, reduce the DIP Obligations, and shall not, and shall not be deemed to, subordinate any of the DIP Lenders' liens and security interests in the DIP Collateral or the DIP Superpriority Claims to any junior pre- or post-petition lien, interest, or claim in favor of any other party.

21. *Events of Default.* Each of the following shall constitute an "Event of Default" under this Final Order:

(a) The occurrence of any Event of Default as defined under the DIP Credit Agreement; and

(b) in addition to the Events of Default set forth in the DIP Loan Documents, each of the following shall also constitute an Event of Default under this Final Order: (i) the occurrence of the Maturity Date under the DIP Credit Agreement; (ii) failure by the Debtors to comply with any of the Bankruptcy Milestones set forth above, (iii) the granting of relief from the automatic stay to any creditor or party-in-interest other than the DIP Lenders, without the DIP Agent's consent, to permit foreclosure (or the granting of a deed in lieu of foreclosure or the like) on any material assets of the Debtors; (iv) any superpriority administrative expense claim or lien that is *pari passu* with or senior to the claims, charges or liens of the DIP Lenders pursuant to this Final Order shall have arisen or be authorized or allowed; (v) any of the DIP Loan Documents

shall cease to be valid or effective; (vi) the Debtors shall fail to comply in any material respect with this Final Order; (vii) the DIP Liens shall cease to be valid, perfected, and enforceable; and (ix) the Debtors (A) pursue the sale of any of the DIP Collateral or file a motion seeking approval of bidding procedures for such DIP Collateral or (B) file a chapter 11 plan or disclosure statement other than the Plan and Disclosure Statement, in each case without the DIP Lenders' prior written consent;, in each case subject to any applicable notice and cure periods set forth in the DIP Credit Agreement.

22. *Rights and Remedies Upon Event of Default/Relief from Stay.*

(a) Upon the occurrence of and during the continuance of an Event of Default that has not been cured or waived as set forth in paragraph 22(b): (i) the DIP Lenders shall no longer have any obligation to make any DIP Loans (or otherwise extend credit) under the DIP Credit Facility; (ii) all amounts outstanding under the DIP Loan Documents shall, at the option of the DIP Lenders, be accelerated and become immediately due and payable; (iii) the DIP Lenders shall be entitled to immediately terminate the Debtors' right to use DIP Cash Collateral; *provided*, *however*, that the Debtors shall have the right to use DIP Cash Collateral solely to fund the Carve-Out and pay expenses critical to the administration of the Debtors' Estates in accordance with the Approved Budget, subject to any Permitted Variances; (iv) the Debtors shall be bound by all post-default restrictions, prohibitions, and other terms as provided in this Final Order, the DIP Credit Agreement and the other DIP Loan Documents; and (v) the DIP Lenders shall be entitled to charge the default rate of interest under the DIP Credit Agreement.

(b) The DIP Lenders shall provide not less than seven (7) business days' advance written notice of the occurrence of any Event of Default (such period the "Remedies Notice Period"), which notice may be by electronic mail (the "EOD Notice," and the date on

which the EOD Notice is delivered, the "EOD Notice Date"), to counsel to the Debtors, the Creditors' Committee, and the U.S. Trustee, and file the EOD Notice on the docket for the Chapter 11 Cases. Following service of an EOD Notice, upon request of a party in interest, the Court may hold a hearing prior to the expiration of the Remedies Notice Period. If, notwithstanding the foregoing, a hearing cannot be scheduled prior to the expiration of the Remedies Notice Period, the Remedies Notice Period shall be deemed automatically extended until such time as the matter can be heard by the Court. Nothing herein shall prevent or preclude the Debtors from seeking appropriate relief from the Court including, but not limited to, a determination that no Event of Default has occurred.

(c) Subject to paragraph 22(b), upon the occurrence of and during the continuance of an Event of Default, the DIP Agent, acting at the direction of the DIP Lenders, shall be entitled to take any other action and exercise all other rights and remedies provided in this Final Order, the DIP Loan Documents, or applicable law.

(d) Additionally, upon the occurrence and during the continuance of an Event of Default, expiration of the Remedies Notice Period, and the exercise by the DIP Agent, acting at the direction of the DIP Lenders, of its rights and remedies under this Final Order or the DIP Loan Documents, the Debtors shall cooperate with the DIP Lenders in the exercise of such rights and remedies.

(e) The rights and remedies of the DIP Lenders specified herein are cumulative and not exclusive of any rights or remedies that the DIP Lenders may have under the DIP Loan Documents or otherwise and may be exercised in whole or in part in any order. With respect to the exercise of such rights and remedies, the fourteen-day stay provisions of Bankruptcy Rules 6004(h) and 4001(a)(3) are hereby waived.

(f) *Relief from Stay*. For the purpose of exercising rights, options and remedies set forth in this Paragraph 22 or otherwise provided for under the DIP Loan Documents, and subject to paragraph 22(b) (including expiration of the Remedies Notice Period), unless otherwise ordered by the Court, the DIP Lenders shall be automatically and completely relieved from the effect of any stay under Section 362 of the Bankruptcy Code, and any other restriction on the enforcement of their liens upon and security interests in the DIP Collateral or any other rights granted to them, or any of them, pursuant to the terms and conditions of the DIP Loan Documents or this Final Order.

23. *Good Faith Under Section 364(e)*. Based on the findings set forth herein and the record made at the Final Hearing, and in accordance with Section 364(e) of the Bankruptcy Code, solely with respect to the DIP Facility and post-petition use of DIP Cash Collateral pursuant to this Final Order, the DIP Agent and the DIP Lenders, and each of their respective counsel, advisors, and consultants, are each entitled to the benefit of, and are hereby granted, a finding of "good faith" under Section 364(e) of the Bankruptcy Code, and, if any provision of this Final Order is hereafter modified, amended, vacated, or stayed by a subsequent order of this or any other court, the DIP Agent and the DIP Lenders (and their respective counsel, advisors, and consultants) are entitled to all protections afforded under Section 364(e), and any such modification, amendment, vacatur, or stay shall not affect the validity or enforceability of any advances previously made, or any lien, claim, priority, or other protection authorized or created hereunder prior to the effective date of such modification, amendment, vacatur, or stay, provided this Final Order was not stayed pending appeal at the time such advances were made or such liens, claims, or priorities were authorized or created.

24. *Limitations on Use of DIP Proceeds, DIP Cash Collateral, and Carve-Out.* No proceeds of the DIP Credit Facility, the DIP Collateral, the Carve-Out, or any DIP Cash Collateral may be used by the Debtors or any other party-in-interest to (a) take any action prohibited by the Bankruptcy Code or this Final Order; (b) make any payments in connection with the Adequate Protection; or (c) use funds in any manner except as set forth in the Approved Budget.

25. *Additional Guarantors*. The Debtors shall be and are hereby authorized to cause any of their direct or indirect subsidiaries that files a Chapter 11 Case as a Subsequent Debtor to promptly execute and deliver to the Agent and the DIP Lenders a "Guarantor Joinder" substantially in the form and substance that is mutually agreeable to the DIP Lenders and the Debtors, after which such Subsequent Debtor shall be deemed an additional guarantor with the same force and effect as if originally named a Guarantor under the DIP Loan Documents. Without limiting the generality of the foregoing, any Subsequent Debtor who shall become an Additional Guarantor shall be, and is hereby authorized and directed to perform all obligations of, a Guarantor under the DIP Loan Documents to which Guarantors are parties and to acknowledge and agree that it is bound as a Guarantor thereunder as if it had been an original signatory thereto.

26. *Limits on Lender Liability.* Nothing in this Final Order or the DIP Loan Documents shall be construed to impose liability on the DIP Agent or any DIP Lender for claims arising from the Debtors' post-petition business operations, liquidation, or the administration of the Chapter 11 Cases. None of the Agent or the DIP Lenders shall, solely by reason of having made the DIP Loans or consented to the use of DIP Cash Collateral, be deemed in control of the Debtors' operations or a "responsible person" or "owner or operator" for purposes of any environmental or similar law.

27. *No Release of Claims*. Nothing herein shall release, waive or otherwise impair any claims or Causes of Action, whether present or contingent, that the Debtors may hold against the

DIP Agent, the DIP Lenders, or their affiliates concerning any prepetition or post-petition actions, conduct or transactions (a "Release"). The DIP Agent and DIP Lenders represent that, to their knowledge, none of the DIP Agent, DIP Lenders or their non-debtor affiliates received a Release prior to the Petition Date, provided however that the DIP Agent and DIP Lenders, on behalf of themselves and their respective affiliates, hereby rescind any such Release to the extent provided by the Debtors or the Debtors' non-debtor affiliates.

28. *Waiver of Section 506(c) Claims; No Marshaling*. No costs or expenses of administration that have been or may be incurred in the Chapter 11 Cases or Successor Cases at any time shall be charged against any of the DIP Lenders, their respective claims, or the DIP Collateral, pursuant to Bankruptcy Code Section 506(c) without the prior written consent of the DIP Lenders (and no such consent shall be implied from any other action, inaction or acquiescence by the DIP Lenders). In no event shall the DIP Lenders be subject to the equitable doctrine of "marshaling" or any similar equitable doctrine with respect to the DIP Collateral.

29. *No Modification or Stay of this Final Order*. Based upon the record presented to the Court by the Debtors, notwithstanding (a) any stay, modification, amendment, supplement, vacatur, revocation, or reversal of this Final Order, the DIP Loan Documents or any term hereunder or thereunder, (b) the failure to obtain a Final Order pursuant to Bankruptcy Rule 4001(c)(2), or (c) the dismissal or conversion of one or more of the Chapter 11 Cases, the DIP Lenders shall retain and be entitled to all of the rights, remedies, privileges, and benefits in favor of the DIP Lenders pursuant to Section 364(e) of the Bankruptcy Code, this Final Order, and the DIP Loan Documents as of the date any event referred to in clauses (a), (b) or (c) shall have occurred.

30. *Power to Waive Rights; Duties to Third Parties.* The DIP Lenders shall have the right, in their sole discretions, to waive any of the terms, rights, and remedies provided or acknowledged in this Final Order or the DIP Credit Agreement ("Lender Rights") and shall have no obligation or duty to any other party with respect to the exercise or enforcement, or failure to exercise or enforce, any Lender Rights. Any waiver of any Lender Rights shall apply solely to the Lender Right so waived and shall not be or constitute a continuing waiver. Any delay in or failure to exercise or enforce any Lender Right shall neither constitute a waiver of such Lender Right, nor cause or enable any other party to rely upon or in any way seek to assert as a defense to any obligation owed by the Debtors to the DIP Lenders.

31. *No Waiver by Failure to Seek Relief.* No delay or failure on the part of the DIP Agent or any DIP Lenders to seek relief or exercise any right or remedy under this Final Order or the DIP Loan Documents shall constitute a waiver of such right or remedy. No amendment, modification, suspension, or waiver of any right or remedy shall be effective unless in writing and signed by the party against whom it is sought to be enforced, and no consent required of the DIP Agent or any DIP Lender shall be implied from inaction or acquiescence.

32. *Reservation of Rights*. The terms, conditions, and provisions of this Final Order are in addition, and without prejudice, to the rights of the DIP Lenders to pursue any and all rights and remedies under the Bankruptcy Code, the DIP Loan Documents, or any other applicable agreement or law, including, without limitation, to seek relief from the automatic stay, to seek an injunction, to oppose any request for use of DIP Cash Collateral, or the proceeds of the DIP Credit Facility (other than as permitted under this Final Order and the DIP Credit Agreement) or the granting of any interest in the DIP Collateral (other than as contemplated herein or permitted under the DIP Loan Documents), to object to any sale of assets, and to object to applications for either

Case 26-90453-GKD BCW Document 10 Filed 09/15/26 Page 61 of 124

or both allowance and payment of compensation of Professionals or other parties seeking compensation or reimbursement from the Estates.

33. *Modification of the Automatic Stay.* The automatic stay under Section 362(a) of the Bankruptcy Code is hereby modified as necessary to effectuate all of the terms and provisions of this Final Order and the DIP Loan Documents, including, without limitation, the application of collections, authorization to make payments, granting of liens, and perfection of liens.

34. *Binding Effect.*

(a) The provisions of this Final Order, the DIP Loan Documents, the DIP Superpriority Claims, DIP Liens, the DIP Obligations and any and all rights, remedies, privileges, and benefits in favor of the DIP Agent and the DIP Lenders, provided or acknowledged in this Final Order, and any actions taken pursuant thereto, shall be effective immediately upon entry of this Final Order pursuant to Bankruptcy Rules 6004(g) and 7062, shall continue in full force and effect, and shall survive entry of any such other order entered in these Chapter 11 Cases , including, without limitation, any order that may be entered confirming any plan of reorganization, converting one or more of the Chapter 11 Cases to any other Chapter under the Bankruptcy Code, or dismissing one or more of the Chapter 11 Cases.

(b) Any order dismissing one or more of the Chapter 11 Cases under Section 1112 of the Bankruptcy Code or otherwise shall be deemed to provide (in accordance with Sections 105 and 349 of the Bankruptcy Code) that (i) the DIP Lenders' liens on, and security interests in, the DIP Collateral shall continue in full force and effect notwithstanding such dismissal until the DIP Obligations owed to such parties, respectively, are indefeasibly paid and satisfied in full, and (ii) this Court shall retain jurisdiction, to the extent permissible under

applicable law, notwithstanding such dismissal, for the purposes of enforcing the DIP Superpriority Claims and the DIP Liens.

(c) This Final Order shall be binding upon the Debtors, their Estates, all parties-in-interest in the Chapter 11 Cases, and their respective successors and assigns, including any trustee or other fiduciary appointed in the Chapter 11 Cases or any Successor Cases of any Debtors, and shall inure to the benefit of the DIP Agent, the DIP Lenders, the Debtors, and their respective successors and assigns.

35. *Proofs of Claim*. Notwithstanding the entry of an order establishing a bar date in any of these Chapter 11 Cases, or the conversion of these Chapter 11 Cases to a case under Chapter 7 of the Bankruptcy Code, the DIP Lenders shall not be required to file proofs of claim in any of the Chapter 11 Cases or Successor Cases with respect to, as applicable, any of the DIP Obligations, DIP Liens, DIP Superpriority Claims, or any other claims or liens granted hereunder or created by this Final Order. The DIP Lenders are hereby authorized and entitled, in each's respective sole and absolute discretion, but in no event are required, to file (and amend and/or supplement, as each sees fit) proofs of claim in each of the Chapter 11 Cases on behalf of the DIP Lender in respect of the applicable DIP Obligations. Any proof of claim so filed shall be deemed to be in addition to, and not in lieu of, any other proof of claim that may be filed by any of the DIP Lenders.

36. *Waiver of Bankruptcy Rule 6003(b), 6004(a), and 6004(h)*. The 21-day provision of Bankruptcy Rule 6003(b), the notice requirements of Bankruptcy Rule 6004(a), and the 14-day stay of 6004(h) are hereby waived.

37. *Order Controls*. In the event of a conflict between (a) the terms and provisions of the DIP Loan Documents and (b) the terms and provisions of this Final Order, then in each case the terms and provisions of this Final Order shall govern.

38. *Discharge Waiver.* The DIP Obligations, the DIP Superpriority Claims, and the DIP Liens shall not be discharged by entry of an order confirming a plan of reorganization, notwithstanding Section 1141(d) of the Bankruptcy Code, unless such obligations have been indefeasibly paid in full in cash or otherwise discharged with the consent of the DIP Lenders on or before the effective date of such plan.

39. *Survival.* The provisions of this Final Order shall survive entry of any order confirming a plan of reorganization, converting any Chapter 11 Case to a case under Chapter 7, dismissing any Chapter 11 Case, or by which the Court abstains from hearing any Chapter 11 Case, and the DIP Liens, DIP Superpriority Claims, and other protections granted hereunder shall continue in full force until the DIP Obligations have been indefeasibly paid in full in cash and all DIP Commitments are terminated. The provisions of this Final Order concerning indemnification shall survive termination of the DIP Loan Documents and repayment of the DIP Obligations.

40. *Retention of Jurisdiction.* The Court retains jurisdiction to resolve any dispute arising from or related to the interpretation or enforcement of this Final Order and the DIP Loan Documents.

41. *Calculation of Dates.* All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

42. *No Third Party Rights.* Except as explicitly provided for herein, this Final Order does not create any rights for the benefit of any third party, creditor, equity holder, or any direct, indirect, or incidental beneficiary.

# # # END OF ORDER # # #

Submitted by:
Jason S. Brookner (TX Bar No. 24033684)
Amber M. Carson (TX Bar No. 24075610)
Blake M. Bryan (TX Bar No. 24140152)
**GRAY REED**
1845 Woodall Rodgers Fwy, Suite 1300
Dallas, TX 75201
Telephone: (214) 954-4135
Facsimile: (214) 953-1332
Email: jbrookner@grayreed.com
acarson@grayreed.com
bbryan@grayreed.com

*Proposed Counsel to the Debtors
and Debtors in Possession*

**<u>Exhibit 1</u>**

**Approved Budget**

**[to come]**

**<u>Exhibit 2</u>**

**DIP Credit Agreement**

**[to come]**

**<u>Exhibit 3</u>**

**Plan Term Sheet**

**Exhibit C**

**Comparison to Interim DIP Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| SIGNAL NATIONAL LLC, *et al.*,[1] | § | Case No. 26-90190 (ELM) |
| Debtors. | § | (Jointly Administered) |

**~~INTERIM~~<u>FINAL</u> ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION FINANCING AND USE <u>DIP</u> CASH COLLATERAL, (II) GRANTING LIENS AND PROVIDING CLAIMS WITH ~~SUPERPRIORITY~~ <u>SUPERPRIOTY</u> ADMINISTRATIVE STATUS, AND (III) GRANTING RELATED RELIEF**

[1] A complete list of each of the Debtors in these chapter 11 cases and the last four digits of their tax identification numbers may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/SignalNational. The Debtors' address for service in these chapter 11 cases is 3500 Maple Ave, Suite 420, Dallas, Texas 75219.

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for Debtors' Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Utilize Cash Collateral, (II) Granting Liens And Superpriority Administrative Expense Claims, (III) Granting Adequate Protection, (IV) Modifying the Automatic Stay, (V) Scheduling a Final Hearing, And (VI) Granting Related Relief [ECF No. 12] (the "Motion")[2] pursuant to sections 105, 361, 362, 363(b), 363(c)(2), 363(m), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 364(e), 503, 506(c), and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code"), rules 2002, 4001, 6003, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), rules 2002-1, 4001-1(a), 4001-1(b), 5005-1, and 9013-1 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the Northern District of Texas (the "Local Rules") and Section D of the Procedures for Complex Cases in the Northern District of Texas (together with the Local Rules, the "Bankruptcy Local Rules"), seeking, among other things:

(a) entry of this interimfinal order (this "InterimFinal Order"):

i. authorizing the use of the Cash Collateral (as defined below) of AAV2024 LLC, Advantage Capital Holdings LLC, Dacian Master Fund LP, Haymarket Insurance Company, and National Founders, LP (collectively, the "DIP Lenders," and in their capacity as pre-petition lenders, the "Pre-Petition Lenders"), in their roles as prepetition lenders, in accordance with the terms and conditions set forth herein solely in accordance with the Approved Budget;

ii. authorizing the Debtors to grant adequate protection to entities holding perfected liens and security interests in the Debtors' assets (collectively, the "Pre-Petition Secured Parties"), including the Pre-Petition Lenders,

[2] Capitalized terms used but not yet defined herein shall have the meanings ascribed to them later in this Interim Order.

[2] Capitalized terms used but not yet defined herein shall have the meanings ascribed to them later in this Final Order, in the Motion, or in the DIP Credit Agreement, as applicable.

with respect to any post-petition diminution in value of their interests in their pre-petition collateral arising from, among other things, the Debtors' sale, use, or lease of such collateral (including the Cash Collateral);

i. iii. authorizing the Initial Debtors to borrow, and the Subsequent Debtors to guaranty, post-petition financing on a super-priority, senior secured and, upon entry of the Final Order, on a priming junior secured basis (the "DIP Credit Facility") from the DIP Lenders pursuant to that certain Summary of Principal Terms and Conditions, dated August 18, 2026,Debtor-in-Possession Credit Agreement dated as of September [•], 2026 between the Debtors, the DIP Agent, and the DIP Lenders party thereto from time to time attached hereto as **Exhibit 2** (as may be amended, restated, supplemented, or otherwise modified from time to time, the "DIP Term SheetCredit Agreement") and the related DIP Loan Documents[3]as follows: (as further defined and described in the DIP Credit Agreement) with an aggregate principal amount of up to $10,000,000 in term loans (the "DIP Loans") to fund the expenses of these Chapter 11 Cases;

a. ***DIP Loans***. The DIP Loans shall consist of a new-money line of credit in an aggregate principal amount of up to $8,600,000.00;

b. ***Interim Facility***. From the date of this Interim Order until the date a Final Order is entered (the "Interim Period"), the maximum amount to be drawn shall be limited to $600,000, subject to compliance with the terms, conditions, and covenants described in this Interim Order and the Approved Budget;

ii. iv. authorizing and directing the Debtors to use the proceeds of the DIP Credit Facility, which proceeds shall be deposited into a segregated account and constitute "cash collateral" (as such term is defined in Section 363(a) of the Bankruptcy Code) of the DIP Lenders (the "DIP Cash Collateral") as expressly provided in the DIP Loan Documents and solely in accordance with the Approved Budget, including to repay in cash in full, all "DIP Obligations" as such term is defined in the Interim DIP Order[3] (the "Interim DIP Obligations");

iii. v. granting valid, enforceable, non-avoidable, and automatically fully perfected DIP Liens on, and security interests in, all of the Debtors' property (collectively, the "Debtor Assets"), including, subject to Final

[3] For purposes of this Interim Order, the "DIP Loan Documents" shall include the DIP Term Sheet and this Interim Order. For the avoidance of doubt, the "DIP Loan Documents" shall not include any prepetition agreements with the Pre-Petition Lenders, and such term specifically excludes the Priming Superpriority Debtor-in-Possession Credit Agreement, dated as of June 9, 2026, by and among 777 Partners LLC, 600 Partners LLC, and Signal National LLC as borrowers and the guarantors party thereto, and the Pre-Petition Lenders.

[3] "Interim DIP Order" means the Interim Order (I) Authorizing the Debtors to Obtain Postpetition Financing and Use Cash Collateral, (II) Granting Liens and Providing Claims with Superpriority Administrative Status, and (III) Granting Related Relief [ECF 161].

~~Order, priming liens on certain of the~~ (1) on a senior first lien basis, all Unencumbered DIP Collateral and ~~liens on the proceeds of DIP Causes of Action~~(2) on a junior basis, all property of the Debtors that is subject to a valid, perfected prepetition lien on or security interest pursuant to Sections 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code, in each case subject to the Carve-Out and with the relative priorities set forth in this ~~Interim~~Final Order;

iv. ~~vi.~~ granting allowed superpriority administrative claims to the DIP Lenders pursuant to Section 364(c)(1) of the Bankruptcy Code payable from and having recourse to all assets of the Debtors;

v. ~~vii. subject to approval pursuant to the entry of the Final Order, approving such relief,~~ waiving (a) the Debtors' right to surcharge the ~~Pre-Petition Collateral and the~~ DIP Collateral pursuant to Section 506(c) of the Bankruptcy Code~~,~~ and (b) the equitable doctrine of marshalling and other similar doctrines~~, and (c) any right of the Debtors under the "equities of the case" exception under Section 552(b) of the Bankruptcy Code~~;

vi. ~~viii.~~ modifying the automatic stay of Bankruptcy Code Section 362 (the "Automatic Stay") to the extent necessary to implement and effectuate the relief requested in the Motion and the terms and provisions of the DIP Loan Documents~~, including~~ and this ~~Interim~~Final Order;

vii. ~~ix.~~ waiving any applicable stay (including under Bankruptcy Rule 6004) with respect to the effectiveness and enforceability of ~~the Interim~~this Final Order;

viii. ~~x.~~ finding the DIP Lenders to be "good faith" lenders pursuant to Section 364(e) of the Bankruptcy Code~~, solely with respect to the DIP Facility and post-petition use of the Pre-Petition Collateral,~~ and granting all protections afforded therein; and

ix. ~~xi.~~ authorizing the Debtors~~ that filed chapter 11 petitions on August 9, 2026 (collectively, the "Initial Debtors") to~~, consistent with the terms of the Interim DIP Order, to cause any of their respective direct or indirect subsidiaries that files a Chapter 11 Case ~~(collectively, the "~~as a Subsequent ~~Debtors"~~Debtor (as defined in the Interim DIP Order) to promptly execute and deliver to ~~ACM Delegate LLC (~~the ~~"~~Agent~~")~~ and the DIP Lenders hereunder a "Guarantor Joinder" after which such Subsequent Debtor (a) shall be deemed an ~~additional guarantor hereunder~~"Additional Guarantor" thereunder with the same force and effect as if originally named a ~~guarantor hereunder; and~~Guarantor under the DIP Credit Agreement and (b) shall be authorized to perform all obligations of a Guarantor under the DIP Credit Agreement and the other DIP Loan Documents to which Guarantors are parties and to acknowledge

and agree that it is bound as a Guarantor thereunder as if it had been an original signatory thereto.

xii. scheduling a final hearing (the "Final Hearing") on the Motion to consider entry of a further order (the "Final Order") on the Motion, approving the relief requested on a final basis, and, in connection therewith, giving and prescribing the manner of notice of the Final Hearing on the Motion;

(b) entry of thethis Final Order; and

(c) such other and further relief as is just and proper.

The Court having considered the interimfinal relief requested in the Motion, the exhibits attached thereto, the *Declaration of Mark Shapiro* in *Support of Debtors' Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Use Cash Collateral, (II) Granting Liens and Providing Claims With Superpriority Administrative Status, and (III) Granting Related Relief* (the "DIPsupport of the Motion [Docket No. 13](the "Shapiro Declaration"), the available DIP Loan Documents and the evidence submitted and arguments made at the InterimFinal Hearing held on August 11 and 19September 28, 2026; and due and sufficient notice of the InterimFinal Hearing having been given in accordance with Bankruptcy Rules 2002, 4001(b), (c) and (d) and all applicable Bankruptcy Local Rules; and the InterimFinal Hearing having been held and concluded; and all objections, if any, to the interimfinal relief requested in the Motion having been withdrawn, resolved or overruled by the Court; and it appearing that approval of the interimfinal relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their Estates pending the Final Hearing, otherwise is fair and reasonable and in the best interests of the Debtors and their Estates, and is essential for the continued operation of the Debtors' businesses and the preservation of the value of the Debtors' assets; and it appearing that the Debtors' entry into the DIP Term SheetLoan Documents is a sound and prudent exercise of the

Debtors' business judgment; and after due deliberation and consideration, and good and sufficient cause appearing therefor,

**THE COURT MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**[4]

A. *Petition Date*. On August 9, 2026 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, commencing the above-captioned cases (collectively, these "Chapter 11 Cases") with the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division (the "Court"). The Chapter 11 Cases are being jointly administered. The Debtors are operating as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. ~~As of the date hereof~~ On August 21, 2026, the United States Trustee for the Northern District of Texas (the "U.S. Trustee") ~~has not~~ appointed an official committee of unsecured creditors (a "Creditors' Committee") in these Chapter 11 Cases pursuant to Section 1102 of the Bankruptcy Code.

B. *Jurisdiction and Venue*. This Court has jurisdiction over these Chapter 11 Cases and the Motion pursuant to 28 U.S.C. § 1334. Consideration of the Motion constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The Court may enter a final order approving the relief sought in the Motion consistent with Article III of the United States Constitution. Venue for the Chapter 11 Cases and proceedings on the Motion is ~~permissible~~proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

~~C. [*Reserved*].~~

[4] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding by Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent that any of the following conclusions of law constitute findings of fact, they are adopted as such.

~~*D. Findings Regarding the Pre-Petition Lenders' Consent to Priming.*~~

~~i. The Pre-Petition Lenders have consented to the adequate protection and, upon entry of the Final Order, the priming of their respective Pre-Petition Liens, as provided for in this Interim Order; *provided, however,* that the consent of the Pre-Petition Lenders to the priming of their respective Pre-Petition Liens is expressly conditioned upon the entry of the Final Order and the use of certain Pre-Petition Collateral (including Cash Collateral), and the sufficiency of the respective adequate protection provided for herein are expressly conditioned upon the entry of this Interim Order and such consents shall not be deemed to extend to any other replacement financing or debtor in possession financing other than the DIP Credit Facility; *provided*, *further*, that such consent shall be of no force and effect in the event the Final Order is not entered (or is entered and subsequently reversed, modified, vacated, or stayed).~~

~~ii. The Pre-Petition Lenders have no objection to the DIP Credit Facility and the use of Cash Collateral solely on the terms and conditions set forth in this Interim Order. Nothing in this Interim Order, including, without limitation, any of the provisions herein with respect to adequate protection, shall constitute, or be deemed to constitute, a finding that the interests of the Pre-Petition Lenders are or will be adequately protected with respect to any non-consensual use of the assets on which the Debtors have granted security interests in or liens on for the benefit of the Pre-Petition Lenders (collectively, the "Pre-Petition Collateral"), including any Cash proceeds of the Pre-Petition Collateral, and each Pre-Petition Lender expressly reserves the right to seek adequate protection of its interests in its sole discretion.~~

*C.* ~~*E.*~~ *Findings Regarding DIP Credit Facility and the Use of DIP Cash Collateral.*

(a) *Request for Post-Petition Financing and Use of DIP Cash Collateral.* The Debtors seek authority to enter into and perform under the DIP ~~Credit Facility~~Loan Documents.



~~4923-0818-5289~~4903-3245-7167

The DIP Lenders shall have no obligation to make loans or advances except pursuant to the terms and conditions set forth herein and in the other DIP Loan Documents and no obligation to waive any conditions required thereunder. The Debtors also seek authority to use DIP Cash Collateral on the terms described herein, and in accordance with the Approved Budget, which shall be subject to Permitted Variances (as defined below)~~,~~ to repay the Interim DIP Obligations, administer their Chapter 11 Cases and fund their operations.

~~(b) *Priming of the Pre-Petition Liens.* The Debtors assert that the priming of the Pre-Petition Liens on the Pre-Petition Collateral under Bankruptcy Code Section 364(d), as provided herein and in consideration of the Pre-Petition Lenders' agreement to the priming liens, adequate protection and Carve-Out, as further described below, will enable the Debtors to obtain the DIP Credit Facility and to continue to operate their businesses for the benefit of their Estates and creditors. The Pre-Petition Lenders are entitled to receive adequate protection as set forth in this Interim Order pursuant to Bankruptcy Code Sections 361, 363, and 364 for any diminution in value of their interests in the Pre-Petition Collateral (including Cash Collateral).~~

(b) ~~(c)~~ *Need for Post-Petition Financing and Use of DIP Cash Collateral.* The Debtors do not have sufficient liquidity, including DIP Cash Collateral, to ~~operate their business in the ordinary course or~~administer their Estates and to implement a process to consummate a chapter 11 plan in these Chapter 11 Cases without the financing requested in the Motion. The Debtors' ability to ~~maintain business relationships with vendors, suppliers, and customers, to~~ pay their employees, pay certain fees and expenses as set forth herein, to preserve valuable claims and causes of action for the benefit of the Debtors' Estates and creditors, to implement and consummate a chapter 11 plan in these Chapter 11 Cases, and to otherwise fund their wind-down operations is essential to the Debtors' ~~continued viability as the Debtors~~



~~4923-0818-5289~~4903-3245-7167

~~seek~~efforts to maximize and preserve the value of their respective Estates for the benefit of all creditors of the Estates. The ability of the Debtors to obtain sufficient ~~working capital and~~ liquidity through the proposed DIP Credit Facility with the DIP Lenders ~~and~~ to use DIP Cash Collateral as set forth in this ~~Interim~~Final Order and the DIP ~~Term Sheet~~Loan Documents is vital to the preservation and maintenance of the ~~going concern value of the Debtors and the~~ Debtors' estates and ability to maximize value for all stakeholders~~. If the Debtors do not obtain authorization to borrow under the DIP Loan Documents, they, and their Estates, will suffer immediate and irreparable harm~~. Accordingly, the Debtors have an immediate need to obtain the DIP Loans (on the terms herein) and to use DIP Cash Collateral to, among other things, permit the orderly ~~continuation of the operation~~wind down of their business~~, minimize the disruption of their business operations,~~ and preserve and maximize the value of the Debtors' Estates in order to maximize value for all creditors of the Estates.

(c) ~~(d)~~ *No Credit Available on More Favorable Terms.* As set forth in the ~~DIP~~Shapiro Declaration and as demonstrated at the ~~Interim~~Final Hearing, given their current financial condition, financing arrangements, and capital structure, ~~during the competitive bid process run by~~ the Debtors ~~with the assistance of their professionals, the Debtors were not presented with a proposal for~~have been unable to procure the necessary financing from sources other than the DIP Lenders on terms more favorable than those set forth in the DIP Loan Documents. The Debtors have been unable to reasonably obtain adequate unsecured credit allowable under Bankruptcy Code Section 503(b)(1) as an administrative expense. The Debtors have also been unable to obtain ~~sufficient~~ secured credit from other sources ~~solely~~with superior terms to the DIP Loan Documents: (a) having priority over that of administrative expenses of the kind specified in Bankruptcy Code Sections 503(b), 507(a), and 507(b); (b) secured only by a

lien on property of the Debtors and their Estates that is not otherwise subject to a lien; or (c) secured solely by a junior lien on property of the Debtors and their Estates that is subject to a lien. Financing ~~by the DIP Lenders~~ on a post-petition basis ~~during the interim period~~ is not otherwise available without granting to the DIP Lenders: (x) automatically perfected security interests in and liens on ~~the post-petition collateral authorized under this Interim Order~~(each as provided herein) all of the Debtors' existing and after-acquired assets with the priorities set forth herein; (y) superpriority claims and liens; and (z) the other protections to the extent set forth in this ~~Interim~~Final Order. After considering all reasonable alternatives, the Debtors have concluded, in the exercise of their sound and reasonable business judgment, that the DIP Credit Facility, including, without limitation, the DIP Loans, represents the best financing available to them at this time~~,~~ and~~, for interim approval purposes,~~ is inherently fair to the estates.

(d) ~~(e)~~ *Use of Proceeds of the DIP Credit Facility.* As a condition to entry into the DIP Loan Documents, the extensions of credit under the DIP Credit Facility and the authorization to use DIP Cash Collateral, the DIP Lenders ~~and the Pre-Petition Lenders~~ require, and the Debtors have agreed, that proceeds of the DIP Credit Facility and DIP Cash Collateral shall be used in accordance with the terms of this ~~Interim~~Final Order~~ and~~, the DIP Loan Documents, and the Approved Budget, which shall be subject to Permitted Variances~~, solely to~~. Proceeds of the DIP Loans shall be made available to, among other things, (i) provide working capital and for general corporate purposes of the Debtors during the Chapter 11 Cases; (ii) pay the fees, costs and expenses of the estate professionals retained in the Chapter 11 Cases as set forth in the Approved Budget and approved by the Bankruptcy Court; (iii) make all permitted payments of costs of administration of the Chapter 11 Cases; ~~and~~ (iv) repay in full in cash upon, entry of this Final Order, all outstanding Interim DIP Obligations and (v) pay such pre-petition

expenses solely as consented to by each of the DIP Lenders and approved by the Bankruptcy Court. Based upon the record presented to this Court by the Debtors, (a) the Debtors have prepared and delivered the budget attached hereto as **Exhibit 1** (such budget and any subsequent approved budget shall constitute without duplication, the "Approved Budget"), (b) the Approved Budget was prepared by the Debtors, with the assistance of their professional advisors and management, as well as review and approval of the DIP Lenders, and (c) the Approved Budget (as the same may be amended or extended solely as provided for herein) sets forth, among other things, the projected cash receipts and disbursements for the periods covered thereby. The Debtors believe in good faith that the Approved Budget, subject to the Permitted Variances, is achievable and will allow the Debtors to operate in chapter 11 during the term of the Approved Budget. The DIP Lenders are relying upon the Debtors' compliance with the Approved Budget, subject to the Permitted Variances, in determining to consent to the use of DIP Cash Collateral solely as contemplated in this ~~Interim~~Final Order and to enter into (or as the case may be, consent to) the DIP Credit Facility as provided for in this ~~Interim~~Final Order and the DIP Loan Documents.

(e) ~~(f)~~ *The DIP Credit Facility Terms and Conditions are Fair and Reasonable; Good Faith Pursuant to Section 364(e)*. Based on the Motion, the ~~DIP~~Shapiro Declaration, and the record presented to the Court at the ~~Interim~~Final Hearing, the terms and conditions of the DIP Credit Facility pursuant to the DIP Loan Documents and the use of the DIP Collateral ~~and the Pre-Petition Collateral~~(defined below), including the DIP Cash Collateral, pursuant to this ~~Interim~~Final Order are fair, reasonable, and the best available to the Debtors under the circumstances, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, are supported by reasonably equivalent value and consideration, and



~~4923-0818-5289~~4903-3245-7167

were entered into at arm's-length, under no duress, and without undue influence, negligence, or violation of public policy or law. Use of DIP Cash Collateral and any credit to be extended as set forth in the DIP Loan Documents shall be deemed to have been so allowed, advanced, made, used, or extended in good faith, and for valid business purposes and uses, within the meaning of Bankruptcy Code Section 364(e), and the DIP Lenders are therefore entitled to the protections and benefits of Bankruptcy Code Section 364(e) and this ~~Interim~~Final Order.

~~(g) [*Reserved*].~~

(f) ~~(h)~~ *Bankruptcy Code* ~~*Sections 506(c) and 552(b)*. The Debtors have agreed that, subject to approval pursuant to the entry of a final order, in light~~*Section 506(c)*. On account of (a) the agreement of the DIP Lenders ~~and the Pre-Petition Lenders~~ to subordinate their liens and claims (including, but not limited to, superpriority claims)~~, as applicable,~~ to the Carve-Out; and (b) the ~~Pre-Petition Lenders' agreement to consent to the use of Cash Collateral; and (c) the~~ Approved Budget covering the administrative costs projected by the Debtors, the DIP Lenders, ~~with respect to the DIP Collateral, and the Pre-Petition Lenders, with respect to the Pre-Petition Collateral, as applicable, are entitled to a waiver of~~the Debtors and their estates waive all rights under (x) the provisions of Bankruptcy Code section 506(c), and (y) ~~any "equities of the case" claims under Bankruptcy Code section 552(b), and (z)~~ the equitable doctrine of "marshaling" or any similar doctrine~~.~~ solely with respect to the DIP Collateral provided hereunder to secure repayment of the DIP Obligations;

~~(i) *Adequate Protection*. The Pre-Petition Secured Parties are entitled, pursuant to Bankruptcy Code Sections 361, 362, 363, and 364, to receive adequate protection against any diminution in value of their respective interests in the Pre-Petition Collateral (including Cash Collateral), to the extent set forth in Paragraph 17 of this Interim Order.~~



~~4923-0818-5289~~4903-3245-7167

~~(j) *Good Faith Pursuant to Section 364(e)*. The terms and conditions of the DIP Loan Documents, including this Interim Order, and the provision of the DIP Credit Facility and the post-petition use of Cash Collateral and Pre-Petition Collateral pursuant to this Interim Order were negotiated in good faith and at arm's length among the Debtors, the Agent, and the DIP Lenders with the assistance and counsel of their respective advisors. Credit to be extended under the DIP Credit Facility pursuant to this Interim Order shall be deemed to have been allowed, made, or extended in good faith by the DIP Lenders within the meaning of Section 364(e) of the Bankruptcy Code.~~

~~(k) *No Control*. The Court finds on an interim basis only, based upon the existing evidence before the Court, and for reasons stated on the record which are incorporated herein, and subject to reconsideration at a final hearing, that in making the decision to finance the Debtors' continued business operations through the DIP Credit Facility, to permit the Debtors to use Cash Collateral for the limited purposes set forth herein, and in approving the Approved Budget, the DIP Lenders, as applicable, did not control the Debtors or their properties or operations, or serve as control persons or insiders of the Debtors by virtue of any of the actions taken with respect to, in connection with, related to or arising from the DIP Loan Documents.~~

i. *Good and Sufficient Cause Shown.* Good and sufficient cause has been shown for entry of this ~~Interim~~Final Order. The ability of the Debtors to obtain sufficient ~~working capital and~~ liquidity under the DIP Loan Documents is vital to the Debtors' Estates and creditors. The relief requested in the Motion is necessary, essential, and appropriate, and is in the best interest of and will benefit the Debtors, their creditors, and their Estates, as its implementation will, among other things, provide the Debtors with the necessary liquidity to (a) ~~minimize disruption to the Debtors' business and ongoing operations, (b)~~ preserve and maximize

the value of the Debtors' Estates for the benefit of all the Debtors' creditors, and (~~c~~b) maximize and stabilize the value of the Debtors' assets~~ and avoid immediate and irreparable harm to the Debtors, their creditors, their business, their employees, and their assets. Absent the immediate grant by this Court of the interim relief sought by the Motion, the Debtors will be immediately and irreparably harmed pending the Final Hearing~~. The terms of the DIP Credit Facility are fair and reasonable, reflect each Debtor's exercise of its business judgment, and are supported by reasonably equivalent value and fair consideration.

~~ii. *Final Hearing*. At the Final Hearing, the Debtors will seek final approval of the proposed DIP Credit Facility and use of Cash Collateral pursuant to the Final Order, which shall be subject to the terms and conditions of the DIP Loan Documents. Notice of the Final Hearing and the Final Order shall be provided in accordance with this Interim Order, and no further notice, except as provided by this Interim Order, shall be required.~~

ii. ~~iii.~~ *Notice*. Notice of the ~~Interim~~Final Hearing and the ~~emergency~~ relief requested in the Motion has been provided by the Debtors as indicated in the Motion. Under the circumstances, the notice given by the Debtors of the Motion, the relief requested therein, and the ~~Interim~~Final Hearing is appropriate notice thereof and complies with Bankruptcy Rules 4001(b) and (c) and the Local Rules, and no further notice of the relief granted herein is necessary or required.

Based upon the foregoing findings and conclusions, the Motion, and the record before this Court with respect to the Motion, and after due consideration and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1. *Motion Granted*. The ~~interim~~final relief sought in the Motion is granted, the DIP Credit Facility is authorized and approved, and the use of DIP Cash Collateral is authorized, in each case on an ~~interim~~final basis and as set forth herein and subject to the terms and conditions set forth in this ~~Interim~~Final Order and the other DIP Loan Documents. All objections and reservations of rights with respect to entry of this ~~Interim~~Final Order to the extent not withdrawn, waived, settled or resolved are hereby denied and overruled on the merits. This ~~Interim~~Final Order shall become effective immediately upon its entry.

2. *Authorization of the DIP Credit Facility and the DIP Loan Documents*.

(a) The Debtors are hereby expressly authorized and empowered to immediately borrow~~,~~ or guaranty, as applicable, and obtain, on a joint and several basis, DIP Loans under the DIP Credit Facility, and the Debtors (on a joint and several basis) are hereby authorized and empowered to (i) incur all other indebtedness and obligations owing to the DIP Lenders on the terms and subject to the conditions and limitations set forth in the DIP Loan Documents and this ~~Interim~~Final Order, up to the maximum aggregate amount of $~~600,000~~10,000,000, subject to the Approved Budget (with any Permitted Variances) from the entry of this ~~Interim~~Final Order through and including the ~~earliest to occur of (i) entry of the Final Order (with respect to all Debtors), or (ii) February 22, 2027 (the "Maturity Date").~~Maturity Date and the terms of the DIP Loan Documents and (ii) repay in full in cash all outstanding Interim DIP Obligations with the proceeds of the DIP Credit Facility.

(b) Upon entry of this ~~Interim~~Final Order, in furtherance of the foregoing and without further approval of this Court, the Debtors are hereby authorized and empowered to execute, deliver, enter into and, as applicable, perform all of their obligations ~~hereunder~~under the DIP Loan Documents. The Debtors are hereby authorized to borrow money as ~~provided~~

~~herein~~permitted by the DIP Loan Documents, which shall be used for all limited purposes permitted hereunder and under the DIP ~~Term Sheet~~Loan Documents (and subject to and in accordance with the Approved Budget). Upon entry of this ~~Interim~~Final Order, in furtherance of the foregoing and without further approval of this Court, the Debtors are hereby authorized and empowered, and the automatic stay imposed by Bankruptcy Code Section 362 is hereby lifted to the extent necessary, to: (i) enter into, execute, deliver, perform, and comply with all of the terms, conditions, and covenants ~~set forth herein~~of the DIP Loan Documents; (ii) execute and deliver all certificates, reports, statements, and other agreements and documents required or contemplated by ~~this Interim Order~~the DIP Loan Documents (including, without limitation, documents required for the Debtors' performance of their obligations under the DIP ~~Credit Facility~~Loan Documents and the creation and perfection of liens granted or contemplated therein); and (iii) incur all obligations ~~hereunder~~under the DIP Loan Documents in accordance herewith and perform all other undertakings and acts required or contemplated by ~~this Interim Order~~the DIP Loan Documents.

~~(c) [*Reserved*].~~

(c) ~~(d)~~ The advances under the DIP Credit Facility and the use of DIP Cash Collateral shall be used in each case solely in a manner consistent with the terms and conditions of the DIP ~~Term Sheet~~Loan Documents and this ~~Interim~~Final Order and, in all respects, in accordance with and as may be limited by the Approved Budget (subject to ~~the Permitted Variances~~any variances thereto permitted under the terms and conditions of the DIP Credit Agreement), solely as follows (in each case solely as provided for in the Approved Budget):

~~(i) [*Reserved*];~~

(i) for repayment in full in cash of the Interim DIP Obligations upon entry of this Final Order;

(ii) for general operating and working capital purposes, for the payment of fees, expenses, and costs incurred in connection with ~~the~~these Chapter 11 Cases, including the investigation of liens and claims, and other proper corporate purposes of the Debtors not otherwise prohibited by the terms hereof for working capital, and other lawful corporate purposes of the Debtors; and

(iii) for making other payments as expressly provided in this ~~Interim~~Final Order and the Approved Budget (including the Carve-Out~~, which will only be available upon entry of the Final Order~~, for the payment of the Debtors' and Creditors' Committees' Professional Fees, solely as set forth in the Approved Budget).

3. *DIP Obligations.* ~~The~~All obligations under the DIP Loan Documents shall constitute legal, valid, binding and non-avoidable obligations of the Debtors (the "DIP Obligations"), enforceable against each Debtor and its respective ~~estate~~Estate in accordance with the terms of this ~~Interim~~Final Order and the other DIP Loan Documents, and any successors thereto, including any trustee appointed in the Chapter 11 Cases, or in any case under Chapter 7 of the Bankruptcy Code upon the conversion of any of the Chapter 11 Cases, or in any other proceedings superseding or related to any of the foregoing (collectively, the "Successor Cases"). The DIP Obligations shall include all loans and any other indebtedness or obligations, contingent or absolute, which may now or from time to time be owing by any of the Debtors to any of the DIP Lenders, in such capacities, in each case~~,~~ under, or secured by, the DIP Loan Documents (including this ~~Interim~~Final Order), including all principal, interest, and other amounts under the DIP Loan Documents ~~(including~~and this ~~Interim~~Final Order~~)~~. The Debtors shall be jointly and severally liable for the DIP Obligations. Except as permitted hereby, no obligation, payment, transfer or grant of security hereunder or under the other DIP Loan

Documents to the DIP Lenders ~~(including their Representatives)~~ shall be stayed, restrained, voidable, avoidable or recoverable, under the Bankruptcy Code or under any applicable law (including, without limitation, under any of Sections 502(d), 544 and 547 to 550 of the Bankruptcy Code or under any applicable state Uniform Voidable Transactions Act, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or common law), or subject to any defense, avoidance, reduction, setoff, recoupment, offset, recharacterization, subordination (whether equitable, contractual or otherwise), disallowance, impairment, claim, counterclaim, cross-claim or any other challenge under the Bankruptcy Code or any applicable law or regulation by any person or Entity. ~~Notwithstanding anything to the contrary in this Interim Order or the DIP Loan Documents, the provisions of this paragraph shall not apply to any pre-petition loans or advances by the Pre-Petition Lenders.~~

4. ~~*Interest*. The rates of interest to be charged for the DIP Loans under the DIP Credit Facility shall be the rates set forth in the DIP Term Sheet and shall be calculated in the manner and payable at the times set forth therein~~*Payment*. The Debtors are hereby authorized to pay, in accordance with this ~~Interim~~Final Order, the principal, interest, and other amounts described above and in the DIP Loan Documents as such amounts, to the extent ~~possible~~applicable, become due without need to obtain further Court approval, and the Debtors shall be jointly and severally obligated to pay all such amounts, and satisfy all such obligations, which in each case shall constitute DIP Obligations hereunder and under the applicable DIP Loan Documents.

5. *Amendment of DIP Loan Documents*. The Debtors and the DIP Lenders are hereby authorized to approve and implement, in accordance with the terms of the DIP Loan Documents, any modification of the DIP Loan Documents; *provided*, *however*, that any material

modification or amendment to the DIP Loan Documents shall be subject to providing notice of such material modification or amendment to counsel to the ~~DIP Lenders, the~~ U.S. Trustee, and ~~any~~ the Creditors' Committee, each of which shall have five (5) business days from the date of such notice within which to object in writing to such modification or amendment unless the parties receiving notice agree in writing to a shorter period. If no timely objection is filed with the Court within such five (5) day notice period to the proposed material modification or amendment to the DIP Loan Documents, then such modification or amendment shall become effective upon the expiration of the aforementioned notice period. If a timely objection is filed, the Court shall resolve such objection prior to such modification or amendment becoming effective.

6. *Conditions Precedent.* The DIP Lenders shall have no obligation to make any loan or advance under the DIP ~~Loan Documents~~Credit Agreement unless the conditions precedent to such loan or extension of credit under the DIP ~~Loan Documents~~Credit Agreement have been satisfied in full or waived in accordance with the DIP ~~Loan Documents~~Credit Agreement. The Debtors shall have no ability to use DIP Cash Collateral unless the Debtors are in compliance with all obligations under the DIP Loan Documents and this ~~Interim~~Final Order (including, without limitation, that no Event of Default has occurred).

7. *Approved Budget Maintenance.*

(a) *Amendments to Approved Budget.* The Approved Budget and any supplemental Approved Budget may be modified, amended and updated from time to time in accordance with ~~this Interim Order~~the DIP Credit Agreement, and, once approved in writing by the DIP Agent ~~(acting at the direction of~~pursuant to the DIP ~~Lenders)~~Credit Agreement, shall ~~supplement~~supersede and replace the then-Approved Budget. If any revised budget is not

approved in writing by the DIP Agent pursuant to this Interim Orderthe DIP Credit Agreement, the then-existing Approved Budget shall remain in full force and effect. A copy of any updated Approved Budget shall be filed with the Court within one (1) business day after it has been approved in writing by the DIP Agent (acting at the direction of the. The DIP Lenders in accordance with the terms of the DIP Loan Documents). agree to support and approve budget item(s) for (a) a line-item in the Approved Budget to be used by the Committee (or other estate fiduciary) in an amount not less than $1,000,000 to pursue an independent investigation and prosecution of all Causes of Action and Avoidance Actions, and (b) independent counsel for the independent director (if appropriate in her discretion).

(b) *Permitted Variances*. The Debtors shall comply with the Approved Budget (subject to the Permitted Variances provided in the next immediate sentence), and shall not make any payments, or incur any obligations or liabilities, that are not projected and provided for in the Approved Budget. The Debtors shall not permit paymentsactual disbursements for any Measuring Period (as defined below) to exceed one hundred and twenty percent (120%) of the respective amounts, measured on an aggregate basis, as set forth for such Measuring Period; *provided* that the Debtors shall not permit expenditures for estate professional fees to exceed one hundred ten percent (110%) of the amount allocated for such expenditures in the Approved Budget for such Measuring Period (but notwithstanding anything to the contrary set forth in this Interim Order or the DIP Term Sheet, the Debtors may incur estate professional fees and expenses that exceed the amount in the Approved Budget and any favorable variance from a Measuring Period may be used to pay professional fees and expenses incurred in a different Measuring Period). These variances (the "Permitted Variances") shall be measured and tested every other week based on a rolling four-week period (the "Measuring

~~Period")~~aggregate disbursements forecasted in the Approved Budget for such Measurement Period (the "Permitted Variances"); *provided, however,* that professional fees and expenses shall be excluded from any calculation of Permitted Variances. On Wednesday of every other week, beginning with the Wednesday of the second full week ended after the entry of this Final Order, the Debtors shall provide the DIP Lenders with an updated 13-week forecast (in substantially the same form as the Approved Budget) and a variance report (the "Variance Report") comparing the actual disbursements of the trailing four (4) week period ending the prior Friday (the "Measuring Period") to the disbursements forecasted under the Approved Budget for such Measuring Period; provided, ~~*however*,~~ that, the first ~~Measuring~~Measurement Period shall be ~~for the period from the Petition Date to the date that is approximately two weeks~~tested against the trailing two (2) week period and each Measurement Period thereafter shall be tested on a trailing four (4) week period.

(c) *Reporting Obligations*. The Debtors shall comply with all reporting requirements set forth in the DIP Loan Documents, including, without limitation, providing the Bi-Weekly Budget Reports (as defined in the DIP Credit Agreement) which shall include the Variance Report.

~~8. [*Reserved*].~~

8. ~~9.~~ *Bankruptcy Milestones.* The following shall constitute "Bankruptcy Milestones" as defined in the DIP ~~Term Sheet~~Credit Agreement, in each case measured from the Petition Date for the Initial Debtors, and the Debtors shall strictly comply with same unless extended in writing by the Agent (acting at the direction of the Required Lenders):



~~4923-0818-5289~~4903-3245-7167

~~(a) On or before the date that is thirty-five (35) days following entry of the Interim DIP Order, the Debtors shall have obtained entry of the Final Order in form and substance acceptable to the DIP Lenders in all respects.~~

(a) ~~(b) On~~on or before November ~~6~~21, 2026, ~~the~~ Debtors shall ~~have filed in the Court a Chapter~~file (i) consistent with the terms of the Plan Term Sheet (which, as annexed hereto as **Exhibit 3**, shall serve as a framework for the Plan and shall be subject to amendments and modifications acceptable to the Debtors, the Committee and the DIP Agent), a joint chapter 11 plan (the "Plan") and associated Disclosure Statement (the "Disclosure Statement") ~~along with a motion seeking, among other things, approval of~~, and (b) motion to approve the Disclosure Statement and ~~approval~~the form and process of solicitation ~~procedures and to set a hearing for confirmation of~~of the votes on the Plan~~, all in a~~ (the "Solicitation Motion"), each in form and substance ~~acceptable~~satisfactory to the DIP ~~Lenders.~~Agent, the Debtors and the Committee;

(b) ~~(c) On~~on or before January ~~18~~22, 2027, the ~~Bankruptcy~~ Court shall have entered an order, in form and substance acceptable to the DIP Agent, the Debtors and the Committee confirming the Plan ~~in form and substance acceptable to the DIP Lenders.~~; and

~~(d) On or before the date that is fourteen (14) days after entry of the Confirmation Order, the Plan shall have become effective.~~

(c) by not later than February 5, 2027, all conditions precedent to the effectiveness of the Plan shall have been satisfied and the Plan shall have become effective (the "Effective Date").

Failure to timely satisfy any Bankruptcy Milestone, unless waived in writing by the DIP Agent ~~(acting at the direction of the DIP Lenders)~~, shall constitute an Event of Default under this ~~Interim~~Final Order and under the DIP Loan Documents.

9. ~~10.~~ *DIP Liens and Superpriority Claims.*

(a) *DIP Lien Grant.* To secure the prompt payment and performance of any and all DIP Obligations of the Debtors to the DIP Lenders of whatever kind, nature, or description, absolute or contingent, now existing or hereafter arising, the DIP Agent for the benefit of the DIP Lenders shall have and ~~are~~is hereby granted, subject solely to the Carve-Out, effective as of and from the Petition Date, valid, binding, enforceable, continuing, non-avoidable

and automatically perfected security interests and liens (such security interests and liens collectively, "DIP Liens") securing any and all portions of the DIP Loans as follows:

(i) senior first-priority DIP Liens on ~~Debtor Assets~~all assets of the Debtors that were not subject to valid, perfected, and non-avoidable Liens as of the ~~Petition~~Closing Date (the "Unencumbered DIP Collateral"), which shall include~~, only if authorized pursuant to a Final Order, the proceeds of~~ the following::

(a) ~~any~~the proceeds, in any and all form and amount paid or payable under or in connection therewith, without limitation, of any and all claims, damages, remedies, causes of action, reimbursement Claims, contribution Claims, recoupment rights, debts, judgments, demands, rights, actions, controversies, proceedings, agreements, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, commercial tort claims, counterclaims and cross claims, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, Disputed or undisputed, secured or unsecured, assertable, asserted or unasserted, direct or indirect, choate or inchoate, reduced to judgment or otherwise, directly or derivatively, matured or unmatured, suspected or unsuspected, in contract, tort, ~~Law~~law, equity, or otherwise pursuant to any theory of Law or otherwise, and shall include, for the avoidance of doubt: (~~I~~i) all rights of setoff, counterclaim, or recoupment and Claims under contracts or for breaches of duties imposed by ~~Law~~law or in equity; ~~and~~ (~~II~~ii) any Claim based on, or relating to, or in any manner arising from, in whole or in part, tort, breach of contract, breach of fiduciary duty, violation of state or federal Law or breach of any duty imposed by Law or in equity (the "Causes of Action"); and

(b) the proceeds, in any and all form and amount paid or payable under or in connection therewith, without limitation, of the Debtors' claims and causes of action under sections 502(d), 544, 545, 547, 548 and 550 of the Bankruptcy Code, or any other avoidance actions under the Bankruptcy Code (the "~~Chapter 5 DIP Collateral," and together with the Causes of Action, the "DIP Causes of Action");~~[5]~~and~~ Avoidance Actions") and the proceeds of all Avoidance Actions; and

(c) any assets of the Debtors that were only unencumbered by Liens securing the Interim DIP Obligations; and

(ii) junior DIP Liens on all other assets of the Debtors subject to valid, properly perfected, and non-avoidable Liens or security interests existing as of the

[5] ~~For the avoidance of doubt, the liens securing the DIP Causes of Action shall not exceed the DIP Obligations.~~



~~4923-0818-5289~~4903-3245-7167

Case 1:24-cv-03453-JGK-BCM Document 1-1 Filed 09/15/26 Page 92 of 124

Petition Date (all of the foregoing, together with the Unencumbered DIP Collateral, the "DIP Collateral").

Notwithstanding anything to the contrary herein or in the DIP Loan Documents, "Unencumbered DIP Collateral" shall not include any claims, counterclaims, demands, defenses, offsets, debts, accounts, contracts, liabilities, actions and causes of action of any kind, nature or description, whether matured or unmatured, known or unknown, asserted or unasserted, foreseen or unforeseen, accrued or unaccrued, suspected or unsuspected, liquidated or unliquidated, pending or threatened, arising in law or equity, upon contract or tort or under any state or federal law or otherwise, that the Debtors, their estates, affiliates, or subsidiaries may have against the DIP Agent or DIP Lenders, including, without limitation, claims and defenses relating to servicing fees that may be owed by the DIP Lenders, the DIP Lenders' pre-petition asset foreclosures, or upon the bond posted in connection with the litigation styled *Leadenhall Capital Partners LLP v. Wander, et al.*, 24 Civ. 3453 (JGK)(BCM), ECF No. 1 (S.D.N.Y.) or *Signal SML 4 LLC, et al. v. Leadenhall Life Insurance Linked Investments Fund PLC*, Index No. 652929/2025 (NY Cnty Supreme Ct), or any proceeds thereof.

~~Subject to approval pursuant to entry of the Final Order, each DIP Lender shall individually receive first priority priming DIP Liens (the "Priming Liens") to secure an amount equal to such DIP Lender's ratable portion of the then-outstanding DIP Loans, with such Priming Liens attaching solely to the Pre-Petition Collateral of such DIP Lender in which such DIP Lender held a first priority security interest as of the Petition Date (the "Existing First-Priority DIP Collateral") in its capacity as a Pre-Petition Lender.~~

(b) The DIP Liens shall be: (i) pursuant to section 364(c)(2) of the Bankruptcy Code, valid, binding, enforceable, non-avoidable, and automatically perfected first-priority security interests in and liens on all Unencumbered DIP Collateral~~;~~ and (ii) pursuant to section 364(c)(3) of the Bankruptcy Code, valid, binding, enforceable, non-avoidable, and automatically perfected junior liens on all other DIP Collateral, subject only to valid, properly perfected, and non-avoidable Liens in existence on the Petition Date~~; and (iii) subject to approval in a Final Order, pursuant to section 364(d)(1) of the Bankruptcy Code with respect to the Priming Liens, valid, binding, enforceable, non-avoidable, and automatically perfected senior priming security interests in and liens on each applicable DIP Lenders' Existing First-Priority DIP Collateral~~, in each case subject and subordinate only to the Carve-Out.

(c) *Post-Petition Lien Perfection*. This ~~Interim~~Final Order shall be sufficient and conclusive evidence of the priority, perfection, and validity of the post-petition liens and security interests granted herein, effective as of the Petition Date, without any further act and without regard to any other federal, state, or local requirements or law requiring notice, filing, registration, recording, or possession of the DIP Collateral, or other act to validate or perfect such security interest or lien, including, without limitation, control agreements with any financial institution(s) holding any deposit account of the Debtors (a "Perfection Act"). Notwithstanding the foregoing, if the DIP Lenders ~~or the Pre-Petition Lenders~~ elect for any reason to file, record, or otherwise effectuate any Perfection Act, each of the DIP Lenders ~~and the Pre-Petition Lenders, as applicable, is~~are authorized to perform such Perfection Act, and the Debtors are authorized to perform such Perfection Acts to the extent necessary or required by the DIP Lenders~~ or Pre-Petition Lenders~~, which act or acts shall be deemed to have been accomplished as of the Petition Date notwithstanding the date and time actually accomplished, and in such event, the subject filing or recording office is authorized to accept, file, or record any document in regard to such act in accordance with applicable law. The DIP Lenders ~~and/or the Pre-Petition Lenders~~ may choose, or may choose to direct the Debtors, to file, record, or present a certified copy of this ~~Interim~~Final Order in the same manner as a Perfection Act, which shall be tantamount to a Perfection Act, and, in such event, the subject filing or recording office is authorized to accept, file, or record such certified copy of this ~~Interim~~Final Order in accordance with applicable law. Should the DIP ~~Lenders and/or the Pre-Petition~~ Lenders so choose and attempt to file, record, or perform a Perfection Act, no defect or failure in connection with such attempt shall in any way limit, waive, or alter the validity, enforceability, attachment,

priority, or perfection of the DIP Liens ~~or the Adequate Protection Liens~~ granted herein by virtue of the entry of this ~~Interim~~Final Order.

(d) Notwithstanding any provision to the contrary in this ~~Interim~~Final Order, the Motion, or the DIP ~~Term Sheet~~Credit Agreement, the DIP Collateral and the DIP Cash Collateral (and any DIP Liens, security interests, or superpriority administrative expense claims~~, or replacement liens~~ granted to the DIP Lenders ~~or Pre-Petition Lenders herein~~) shall explicitly exclude the Disputed Property,[~~6~~5] pending further order of this Court or a final, non-appealable adjudication determining the estates' interest in such property. Nothing contained in this ~~Interim~~Final Order, the Motion, or the DIP Credit Facility shall operate as an adjudication, waiver, release, impairment, or priming of DASIR 2 LLC's ("DASIR 2") rights, claims, or defenses regarding the Disputed Property, if any. DASIR 2's right to assert that the Disputed Property (and any identifiable proceeds traceable thereto) is subject to a constructive trust, resulting trust, or other equitable ownership interest, and therefore excluded from property of the Debtors' estates pursuant to 11 U.S.C. § 541(d), is fully preserved. Until such time as a final, non-appealable order is entered by a court of competent jurisdiction determining the ownership of the Disputed Property, the Debtors shall use reasonable best efforts to cause their non-Debtor subsidiaries and affiliates, as applicable, to segregate and hold any Disputed Property in their possession in a separate depository account. The Debtors shall not use, sell, lease, or encumber the Disputed Property or its traceable proceeds to fund operations, pay DIP professional fees, or

[~~6~~5] "Disputed Property" shall mean proceeds derived from those Purchased Receivables (as defined in the Sale Agreement dated as of May 7, 2021, between Signal Medical Receivables LLC, as Seller, and Signal SML 4 LLC, as Purchaser) that were subject to the May 15, 2025, foreclosure auction by Leadenhall Life Insurance Linked Investment Fund Plc and assigned to DASIR 2, LLC in connection therewith.

satisfy any prepetition or postpetition obligations without the express written consent of DASIR 2 or further order of this Court.

10. ~~11.~~ *Superpriority Administrative Expense Claims*. For the ~~applicable~~ DIP Obligations, whether now existing or hereafter arising pursuant to this ~~Interim~~Final Order, the applicable DIP Loan Documents, or otherwise, subject only to the Carve-Out, the DIP Lenders are granted an allowed superpriority administrative expense claim in the Debtors' Estates pursuant to section 364(c)(1) of the Bankruptcy Code, having priority in right of payment over any and all other obligations, liabilities, and indebtedness of any of such Debtors, whether now in existence or hereafter incurred by any of such Debtors, of every kind or nature, including any and all unsecured claims, administrative expenses, adequate protection claims, priority claims or any other claims of the kind specified in, or ordered pursuant to, the Bankruptcy Code, including without limitation, *inter alia*, Bankruptcy Code sections 105, 326, 328, 330, 331, 503(b), 507, 364(c)(1), 546(c), 726, or 1114 and, upon entry of a Final Order, sections 506(c) and 552(b) (the "DIP Superpriority Claims").

11. ~~12.~~ *Protections of Rights of the DIP Agent and DIP Lenders*. Unless the ~~Required~~DIP Agent and the DIP Lenders shall have provided their prior written consent, there shall not be entered in the Chapter 11 ~~Cases~~Case or any Successor ~~Cases~~Case any order or other relief (including any order confirming a plan of reorganization or liquidation) that authorizes (i) the obtaining of credit or the incurring of indebtedness secured by a lien on any DIP Collateral or entitled to administrative priority status senior to or *pari passu* with the DIP Liens or the DIP Superpriority Claims, other than the Carve-Out, unless the DIP Obligations are simultaneously paid or discharged in full, or (ii) the use of DIP Cash Collateral for any purpose not permitted



~~4923-0818-5289~~4903-3245-7167

under the DIP Loan Documents and this ~~Interim Order, in each case unless the Required Lenders otherwise agree in writing~~Final Order.

12. ~~13.~~ *Proceeds of Subsequent Financing.* If the Debtors, any trustee, or any examiner or responsible officer subsequently appointed in the Chapter 11 Cases or any Successor Cases obtains credit or incurs debt pursuant to sections 364(b), 364(c), or 364(d) of the Bankruptcy Code ~~in violation of the DIP Loan Documents or this Interim Order,~~other than the credit or debt provided pursuant to this Final Order at any time prior to the repayment in full of all DIP Obligations, then all cash proceeds derived ~~therefrom~~from such credit or debt shall immediately be ~~applied in accordance with this Interim Order, the DIP Loan Documents, and the DIP Loan Intercreditor Agreement~~turned over to the DIP Lenders in such amount that will indefeasibly pay in full all such DIP Obligations.

13. ~~14.~~ *Disposition of DIP Collateral.* Except as otherwise provided herein or in the DIP Loan Documents, the Debtors shall not sell, transfer, lease, encumber, or otherwise dispose of any DIP Collateral outside the ordinary course of business without the prior written consent of the ~~Required Lenders~~DIP Agent or further order of the Court, until the DIP Obligations are paid in full in cash or otherwise discharged.

14. ~~15.~~ *Maintenance of DIP Collateral; Cash Management.* Unless otherwise consented to by the DIP Agent ~~at the direction of the Required Lenders~~, until the DIP Obligations are paid in full in cash and all DIP Commitments are terminated, the Debtors shall maintain (a) ~~insure the Pre-Petition Collateral as required under the applicable Pre-Petition Loan Documents and the DIP Collateral as required under the DIP Loan Documents and (b) maintain~~ the cash management system in effect as of the Petition Date, as modified by this ~~Interim~~Final Order and the DIP Credit Agreement, any other order of this Court, or as otherwise agreed by

the DIP Agent ~~at the direction of the Required Lenders~~and (b) a segregated deposit account holding only the proceeds of the DIP Loans which shall not be commingled with any other cash of the Debtors.

~~16. *Cash Collateral*. Subject to the terms and conditions of this Interim Order, pursuant to Bankruptcy Code section 363(c)(2), the Debtors are authorized to use Cash Collateral solely in accordance with the DIP Loan Documents and as may be limited by the Approved Budget (subject to the Permitted Variances). Absent entry of the Final Order by the Court, the Debtors shall no longer be authorized to use Cash Collateral at the expiration of the Interim Period without the prior written approval of the DIP Lenders.~~

15. *DIP Cash Collateral/SuttonPark Cash Collateral*. Subject to the terms and conditions of this Final Order, pursuant to Bankruptcy Code section 363, the Debtors are authorized to use DIP Cash Collateral solely in accordance with the DIP Credit Agreement and as may be limited by the Approved Budget (subject to the Permitted Variances). Consistent with the DIP Credit Agreement, cash receipts and disbursements of SuttonPark Capital LLC, SuttonPark Servicing LLC, and its Subsidiaries, which are not otherwise captured in the DIP Budget may be used to fund operations of SuttonPark Capital LLC and SuttonPark Servicing LLC in the ordinary course of their businesses, provided that, for the avoidance of doubt, nothing herein shall modify, alter or impair the rights and priorities of any creditors with respect to any claims, rights or obligations owed to such creditors in connection with the cash receipts and disbursements of SuttonPark Capital LLC and SuttonPark Servicing LLC and its Subsidiaries.



~~4923-0818-5289~~4903-3245-7167

16. ~~17.~~ *Pre-Petition Lenders' Adequate Protection.* As adequate protection for the interests of ~~the Pre-Petition Secured Parties~~those parties holding valid, perfected, non-avoidable liens and security interests in the Debtors' property~~, including Cash Collateral,~~ (the "Pre-Petition Lenders") the Pre-Petition ~~Secured Parties~~Lenders are being provided with adequate protection ~~(the "Adequate Protection Obligations")~~ as set forth below:

(a) *Adequate Protection Liens*. Solely to the extent of any diminution in value ~~("Diminution in Value")~~ of their respective interests in their applicable collateral~~,~~ (the "Pre-Petition Collateral," and such diminution in value, the "Diminution in Value") pursuant to sections 361 and 363(c) of the Bankruptcy Code as of the Petition Date), the Debtors shall grant the Pre-Petition ~~Secured Parties~~Lenders valid and perfected replacement security interests in, and liens on, their respective ~~pre-petition collateral~~Pre-Petition Collateral (the "Adequate Protection Liens"), which security interests and liens shall be subject to and subordinate in all respects to the Carve-Out~~. The Adequate Protection Liens shall be deemed to be valid, binding, enforceable and fully perfected as of the applicable petition date for the applicable Debtor, and not subject to subordination or avoidance for any cause or purpose in these Chapter 11 Cases~~. The Adequate Protection Liens shall be enforceable against the Debtors, their Estates and any successors thereto, including without limitation, any trustee or other Estate representative appointed or elected in the Chapter 11 Cases or any Successor Cases. Subject solely to the Carve-Out, the Adequate Protection Liens (A) shall not be made subject to or *pari passu* with any lien or security interest by any ~~court Order~~order heretofore or hereafter entered in these Chapter 11 Cases (unless with the consent of the Pre-Petition Lenders); and (B) ~~upon entry of a Final Order, shall not be subject to section 506(c)~~shall be senior to the DIP Liens solely with respect to their respective Pre-Petition Collateral. In the event that the Pre-Petition Liens of such

Pre-Petition Lender are avoided or subordinated by the Bankruptcy Court or a court of competent jurisdiction (including pursuant to sections 510, 547 or 548 of the Bankruptcy Code~~; (C) shall not be subject to sections 510, 549, or 550 of the Bankruptcy Code; and (D) no lien or interest avoided and preserved for the benefit of any Estate pursuant to section 551 of the Bankruptcy Code shall be made *pari passu* with or senior to the~~) such Adequate Protection Liens~~. For the avoidance of doubt, to the extent all or any portion of the prepetition liens of any Pre-Petition Secured Party are avoided or subordinated, the Adequate Protection Liens granted herein with respect thereto shall be deemed to have no force or effect.~~ shall be deemed null and void retroactively to the date of this Final Order.

(b) *Adequate Protection Claims*. As further adequate protection, to the extent that the Adequate Protection Liens do not adequately protect the Diminution in Value of the Pre-Petition ~~Secured Parties~~Lenders' interests in their respective ~~collateral~~Pre-Petition Collateral, the Pre-Petition ~~Secured Parties~~Lenders are hereby granted, to the extent of such Diminution in Value ~~(including on a dollar-for-dollar basis of the Cash Collateral used in accordance with the Approved Budget),~~ an allowed superpriority administrative expense claim (the "Adequate Protection Claim," and together with the Adequate Protection Liens, the "Adequate Protection") in these Chapter 11 Cases or any Successor Cases against the Debtors' Estates under sections 503 and 507(b) of the Bankruptcy Code. The Adequate Protection Claims shall have priority over all other administrative expense claims, priority claims, and unsecured claims against the Debtors or their Estates, which are now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses and priority or other claims of the kinds specified in or ordered pursuant to Sections 105, 326, 328, 330, 331, 364, 365, 503(a), 503(b), 506(c) (upon entry of a Final Order), 507(a), 507(b),

546(c), 546(d), 726, 1113, and 1114 of the Bankruptcy Code, subject only to (i) the DIP Superpriority Claims, and (ii) the Carve-Out. ~~For the avoidance of doubt, to the extent all or any portion of the prepetition liens of any Pre-Petition Secured Party~~In the event that the Adequate Protection Liens are avoided or subordinated~~,~~ by the Bankruptcy Court or a court of competent jurisdiction (including pursuant to sections 510, 547 or 548 of the Bankruptcy Code), then the Adequate Protection ~~Claims granted herein with respect thereto~~Claim shall be deemed ~~to have no force or effect~~null and void retroactively to the date of this Final Order.

~~18. *Reservation of Individual Lender Rights in Pre-Petition Collateral*. Notwithstanding anything to the contrary in this Interim Order, each DIP Lender's interest in its respective Pre-Petition Collateral (including, in the case of Dacian, the Dacian Pre-Petition Collateral, and, in the case of National Founders, the National Founders Collateral) in which such DIP Lender or its Affiliate holds a first-priority security interest in its capacity as a Pre-Petition Lender shall remain with such DIP Lender (or its applicable affiliate), and neither the Agent nor any other DIP Lenders shall have any authority to release, dispose of, or take any action with respect to such Pre-Petition Collateral without the prior written consent of the DIP Lender (or Affiliate) holding such first-priority security interest. Nothing in this Paragraph shall limit or expand the DIP Liens, Adequate Protection Liens, or Priming Liens granted herein.~~

(c) Nothing herein shall waive the DIP Agent's, DIP Lenders' or their respective affiliates' rights to seek adequate protection in these Chapter 11 Cases to the extent that such parties believe that proceeds of collateral secured by liens at the Debtors' non-debtor affiliates are in the possession of the Debtors' estates.

17. ~~19.~~ *Application of Payments and Proceeds*. All payments required to be made under the DIP Credit Facility and/or proceeds collected with respect to the ~~Pre-Petition~~

~~Collateral and/or the~~ DIP Collateral shall be applied in the manner set forth in the DIP Loan Documents ~~applicable thereto~~.

18. *Cash Collateral of the Prepetition Lenders.* Nothing in this Order authorizes the Debtors to use the cash collateral (as such term is defined in Section 363 of the Bankruptcy Code) of any Pre-Petition Lender.

19. *Right to Credit Bid.* The DIP Agent and the DIP Lenders shall be entitled to "credit bid" all or any portion of the DIP Obligations under Section 363(k) of the Bankruptcy Code.

~~20. *Escrow of Disputed Multi-Lender Collateral Proceeds.* To the extent the Debtors generate proceeds from a sale or other disposition of Debtor Assets that are subject to the Liens of more than one DIP Lender (including due to such Debtor Assets constituting Existing First Priority DIP Collateral) and the affected DIP Lenders are unable to stipulate to the amount payable to each of them, the full amount of such proceeds shall be escrowed by the Agent until further order of this Court or stipulation among such DIP Lenders.~~

~~21. *Right to Credit Bid.* Pursuant to Section 363(k) of the Bankruptcy Code, (a) the Agent (on behalf of the DIP Lenders) and/or (b) the Pre-Petition Lenders and/or their Affiliates (each in their individual capacities) are each permitted in all respects to, as the case may be, credit bid against the assets of the Debtors' Estates, subject to a successful Challenge asserted in accordance with Paragraph 28 (Challenges) below, up to the outstanding aggregate amount of each of their respective Pre-Petition Obligations and DIP Obligations in respect of any such sale (the "Credit Bid"), the form of which, including any proposed asset purchase agreement and~~



~~4923-0818-5289~~4903-3245-7167

~~related sale order, is reasonably acceptable to the Pre-Petition Lenders and/or the DIP Lenders (as applicable).~~

20. ~~22.~~ *Carve-Out.* The DIP Liens granted to the DIP Lenders, the DIP Superpriority Claims provided to the DIP Lenders, ~~the Adequate Protection Liens, the Adequate Protection Claims,~~and any and all other liens or claims securing the DIP Obligations, and all other liens or claims granted by this ~~Interim~~Final Order shall be subject and subordinate in all respects ~~only~~ to the right of payment, funding, and priority of the Carve-Out, to the extent provided herein:

(a) *Carve-Out.* The "Carve-Out" means the sum of: (i) all fees required to be paid to the clerk of the Court and to the Office of the U.S. Trustee under 28 U.S.C. § 1930(a) plus interest at the statutory rate, without regard to the notice set forth in clause (iv) below, and which shall not be subject to any budget (collectively, "Clerk and U.S. Trustee Fees"); (ii) in the event of a conversion of the Chapter 11 Cases to cases under Chapter 7 of the Bankruptcy Code, all reasonable and documented fees and expenses incurred by a trustee under section 726(b) of the Bankruptcy Code, in an aggregate amount not to exceed $100,000 without regard to the notice set forth in clause (iv) below; (iii) to the extent allowed at any time, whether by interim or final compensation order or any other order of the Court, all unpaid fees and expenses (the "Allowed Professional Fees") incurred by persons or firms retained by the Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code (collectively, the "Debtors' Professionals") or retained by any statutory committee appointed in the Chapter 11 Cases pursuant to section 1103 of the Bankruptcy Code (the "Committee Professionals," and together with the Debtors' Professionals, the "Professional Persons") at any time before or on the day of delivery by the DIP Agent, acting at the direction of the DIP Lenders, of a Carve-Out Trigger Notice (defined below), whether allowed by the Court prior to or after delivery of a Carve-Out Trigger Notice,

but solely up to and to the extent such fees and expenses are unpaid and within the amounts set forth in the Approved Budget (including any Permitted Variance therefor) (the "Pre-Trigger Carve-Out"); and (iv) Allowed Professional Fees incurred after delivery by the DIP ~~Lender~~Lenders of a Carve-Out Trigger Notice, in an aggregate amount not to exceed $250,000 (the amount set forth in this clause (iv) being the "Post-Carve-Out Trigger Notice Cap"). For purposes of the foregoing, "Carve-Out Trigger Notice" means a written notice delivered by email (or other electronic means) by the DIP Agent~~, acting at the direction of the DIP Lenders,~~ to the Debtors, Debtors' counsel, the U.S. Trustee, and lead counsel to a Creditors' Committee, if any, stating that the ~~Post-Carve-Out~~Post Carve-Out Notice Cap has been invoked, which notice may be delivered only following the occurrence and during the continuation of an Event of Default. In no way shall the Approved Budget, the Carve Out, the Post-Carve-Out Trigger Notice Cap, or any of the foregoing be construed as a cap or limitation on the amount of Allowed Professional Fees that Professional Persons may seek to be paid by the Debtors in these Chapter 11 Cases from funds other than the DIP Facility and DIP Cash Collateral.

(b) *Carve-Out Payment of Allowed Professional Fees Prior to the EOD Notice Date*. Any payment or reimbursement made prior to the occurrence of the EOD Notice Date (as defined herein) in respect of any Allowed Professional Fees shall not reduce the Carve-Out. For the avoidance of doubt and notwithstanding anything to the contrary herein, the Carve-Out shall be senior to all liens and claims securing the DIP Obligations, any adequate protection liens~~,~~ and superpriority claims, any and all other liens or claims securing the DIP Obligations~~ or the Pre-Petition Obligations~~, and all other liens or claims granted by this ~~Interim~~Final Order. Further, without limiting the foregoing, the Pre-Trigger Carve-Out amount shall be limited to amounts for each Professional Person as set forth in the Approved Budget.

(c) *Carve Out Reserve.* Prior to the delivery of the Carve-Out Trigger Notice, on a weekly basis, the Debtors may, in their discretion, cause to be funded from the DIP Facility or DIP Cash Collateral into a segregated account (the "Funded Reserve Account") held for the benefit of Professional Persons an amount equal to the aggregate amount of the estimated accrued fees of Professional Persons, based on the amounts set forth in the Approved Budget remaining unpaid as of the Friday of the preceding week (and not previously funded to the Funded Reserve Account). Promptly after the delivery of the Carve-Out Trigger Notice, the Debtors shall fund from the DIP Facility or DIP Cash Collateral into the Funded Reserve Account an amount equal to the obligations set forth in clauses (a)(i) through (a)(iii) of the definition of Pre-Trigger Carve Out set forth above (the "Pre-Carve-Out Trigger Notice Amounts") and the Post-Carve-Out Trigger Notice Cap (collectively, the "Carve Out Reserves"). After the delivery of a Carve-Out Trigger Notice as required herein, any payment or reimbursement made on or in respect of any Allowed Professional Fees (excluding any incurred and unpaid professional fees and expenses of the DIP Agent payable pursuant to the Interim Order or this Final Order) in an aggregate amount not in excess of the amounts accrued or paid for each such Professional as set forth in the Approved Budget, shall permanently reduce the Carve Out on a dollar-for-dollar basis. Notwithstanding anything to the contrary in this Final Order, following delivery of a Carve-Out Trigger Notice, the DIP Agent shall not sweep or foreclose on cash of the Debtors until the Carve Out Reserves have been fully funded, but shall have a security interest in any residual interest in the Carve Out Reserves after payment and full funding of all Carve Out amounts, which such amounts shall be transferred to the Debtors' segregated account holding DIP Cash Collateral and thereafter constitute DIP Cash Collateral.. Further, notwithstanding anything to the contrary in this Final Order, (a) the failure of the Carve

Out Reserves to satisfy in full the Allowed Professional Fees shall not affect the priority of the Carve Out, and (b) the Carve Out Reserves shall serve as a limitation only on the amount of Allowed Professional Fees that may be paid from such Carve Out Reserves, and in no way shall the Approved Budget, the Carve Out, the Post-Carve-Out Trigger Notice Cap, the Carve Out Reserves or any of the foregoing be construed as a cap or limitation on the amount of Allowed Professional Fees that Professional Persons may seek to be paid by the Debtors in these Chapter 11 Cases from funds other than the DIP Facility and DIP Cash Collateral.

(d) ~~(c)~~ *No Direct Obligation to Pay Allowed Professional Fees*. None of the DIP Agent~~,~~ or the DIP ~~Lenders, or Pre-Petition~~ Lenders shall be responsible for the payment or reimbursement of any fees or disbursements of any Professional Person or any fees or expenses of the U.S. Trustee or Clerk of the Court incurred in connection with the Cases or any Successor Cases under any chapter of the Bankruptcy Code. Nothing in ~~the~~this Final Order or otherwise shall be construed to (a) obligate the DIP ~~Lenders~~Agent or the ~~Pre-Petition~~ DIP Lenders, in any way, to pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement, (b) impair the ability of any party to object to any of the fees, expenses, reimbursement or compensation of any professionals, or (c) alter the requirement of a Professional Person to file and serve fee applications or otherwise comply with the Bankruptcy Code, Bankruptcy Rules or Local Bankruptcy Rules of this Court relating to payment of fees and reimbursement of expenses of Professional Persons, or with any interim compensation order or retention order entered by this Court. ~~In no way shall the Approved Budget, the Carve-Out, the Post-Carve Out Trigger Notice Cap, or any of the foregoing be construed as a cap or limitation on the amount of~~

~~Allowed Professional Fees that Professional Persons may seek to be paid by the Debtors in these Chapter 11 Cases from funds other than the DIP Facility and Cash Collateral.~~

(e) ~~(d)~~ *Payment of Carve-Out On or After the EOD Notice Date*. Any payment or reimbursement made on or after the occurrence of the EOD Notice Date in respect of any Allowed Professional Fees shall permanently reduce the Carve-Out on a dollar-for-dollar basis. Any payment of the Carve-Out shall be added to, and made a part of, the DIP Obligations secured by the DIP Collateral and shall be otherwise entitled to the protections granted under ~~the~~this Final Order, the DIP Loan Documents, the Bankruptcy Code, and applicable law. Payment of any amounts on account of the Carve-Out, whether by or on behalf of the DIP Lenders, shall not and shall not be deemed to, reduce the DIP Obligations, and shall not, and shall not be deemed to, subordinate any of the DIP Lenders' liens and security interests in the DIP Collateral or the DIP Superpriority Claims to any junior pre- or post-petition lien, interest, or claim in favor of any other party.

21. ~~23.~~ *Events of Default*. Each of the following shall constitute an "Event of Default" under this ~~Interim~~Final Order:

(a) ~~the~~The occurrence of ~~the Maturity Date~~any Event of Default as defined under the DIP Credit Agreement; and

~~(b) failure by the Debtors to comply with any of the Bankruptcy Milestones set forth above;~~

(b) ~~(c)~~ in addition to the Events of Default set forth in the DIP Loan Documents, each of the following shall also constitute an Event of Default under this Final Order: (i) the occurrence of the Maturity Date under the DIP Credit Agreement; (ii) failure by the Debtors to comply with any of the Bankruptcy Milestones set forth above, (iii) the granting of relief from the automatic stay to any creditor or party-in-interest other than the DIP Lenders~~ or the Pre-Petition Lenders~~, without the DIP ~~Lenders'~~Agent's consent, ~~(i)~~ to permit foreclosure (or the granting of a deed in lieu of foreclosure or the like) on any material assets of the Debtors~~, or (ii) to~~



~~4923-0818-5289~~4903-3245-7167

permit other actions that would have a material adverse effect on the Debtors or their Estates;

(d) ; (iv) any superpriority administrative expense claim or lien that is *pari passu* with or senior to the claims, charges or liens of the DIP Lenders pursuant to this InterimFinal Order shall have arisen or be authorized or allowed; (v) any of the DIP Loan Documents shall cease to be valid or effective; (vi) the Debtors shall fail to comply in any material respect with this Final Order; (vii) the DIP Liens shall cease to be valid, perfected, and enforceable; and (ix) the Debtors (A) pursue the sale of any of the DIP Collateral or file a motion seeking approval of bidding procedures for such DIP Collateral or (B) file a chapter 11 plan or disclosure statement other than the Plan and Disclosure Statement, in each case without the DIP Lenders' prior written consent;, in each case subject to any applicable notice and cure periods set forth in the DIP Credit Agreement.

(e) the Debtors shall make any payment (whether by way of adequate protection or otherwise) of principal or interest or otherwise on account of any pre-petition indebtedness or payables, other than payments authorized by this Court;

(f) any of the DIP Loan Documents shall cease to be valid or effective or shall be contested by any of the Debtors;

(g) the Debtors shall fail to comply in any material respect with this Interim Order or the Final Order;

(h) the Debtors shall assert in any pleading that the guaranties contained in the DIP Loan Documents are not valid and binding;

(i) other than by virtue of a repayment in full of the outstanding DIP Obligations, the DIP Liens shall cease to be valid, perfected, and enforceable;

(j) the Debtors pursue the sale of any of the DIP Collateral or the Pre-Petition Collateral without the DIP Lenders' or Pre-Petition Lenders', as applicable, written consent to process and bidding procedures related thereto; and

(k) the entry of an order in any Chapter 11 Case avoiding or requiring repayment of any portion of the payments made on account of the DIP Obligations, in each case subject to any applicable notice and cure periods set forth in the DIP Loan Documents.

22. 24. *Rights and Remedies Upon Event of Default/Relief from Stay.*

(a) Upon the occurrence of and during the continuance of an Event of Default that has not ~~be~~been cured or waived as set forth in paragraph ~~24(b)~~22(b): (i) the DIP Lenders shall no longer have any obligation to make any DIP Loans (or otherwise extend credit) under the DIP Credit Facility; (ii) all amounts outstanding under the DIP Loan Documents shall, at the option of the DIP Lenders, be accelerated and become immediately due and payable; (iii) the DIP Lenders ~~and the Pre-Petition Lenders~~ shall be entitled to immediately terminate the Debtors' right to use DIP Cash Collateral; *provided*, *however*, that the Debtors shall have the right to use DIP Cash Collateral solely to fund the Carve-Out and pay expenses critical to the administration of the Debtors' Estates in accordance with the Approved Budget, subject to any Permitted Variances; (iv) the Debtors shall be bound by all post-default restrictions, prohibitions, and other terms as provided in this ~~Interim~~Final Order, the DIP Credit Agreement and the other DIP Loan Documents; and (v) the DIP Lenders shall be entitled to charge the default rate of interest under the DIP ~~Term Sheet~~Credit Agreement.

(b) The DIP Lenders shall provide not less than seven (7) business days' advance written notice of the occurrence of any Event of Default (such period the "Remedies Notice Period"), which notice may be by electronic mail (the "EOD Notice," and the date on which the EOD Notice is delivered, the "EOD Notice Date"), to counsel to the Debtors, the Creditors' Committee, ~~if any,~~ and the U.S. Trustee, and file the EOD Notice on the docket for the Chapter 11 Cases. Following service of an EOD Notice, upon request of a party in interest, the Court may hold a hearing prior to the expiration of the Remedies Notice Period. If, notwithstanding the foregoing, a hearing cannot be scheduled prior to the expiration of the Remedies Notice Period, the Remedies Notice Period shall be deemed automatically extended until such time as the matter can be heard by the Court. Nothing herein shall prevent or preclude



~~4923-0818-5289~~4903-3245-7167

the Debtors from seeking appropriate relief from the Court including, but not limited to, a determination that no Event of Default has occurred.

(c) Subject to paragraph ~~24(b)~~22(b), upon the occurrence of and during the continuance of an Event of Default~~ and the expiration of the Remedies Notice Period, the~~, the DIP Agent, acting at the direction of the DIP Lenders, shall be entitled to take any other action and exercise all other rights and remedies provided in this ~~Interim~~Final Order, the DIP Loan Documents, or applicable law~~ in relation to the financing authorized herein~~.

(d) Additionally, upon the occurrence and during the continuance of an Event of Default, expiration of the Remedies Notice Period, and the exercise by the DIP Agent, acting at the direction of the DIP Lenders, of its rights and remedies under this ~~Interim~~Final Order or the DIP Loan Documents, the Debtors shall cooperate with the DIP Lenders in the exercise of such rights and remedies~~ and assist the DIP Lenders in effecting any sale or other disposition of the DIP Collateral required by the DIP Lenders, including any sale of DIP Collateral pursuant to Section 363 of the Bankruptcy Code or assumption and assignment of DIP Collateral consisting of contracts and leases pursuant to Section 365 of the Bankruptcy Code, in each case, upon such terms that are acceptable to the DIP Lenders.~~.

(e) The rights and remedies of the DIP Lenders ~~and Pre-Petition Lenders~~ specified herein are cumulative and not exclusive of any rights or remedies that the DIP Lenders ~~and/or Pre-Petition Lenders~~ may have under the DIP Loan Documents ~~or Pre-Petition Loan Documents, as applicable,~~ or otherwise and may be exercised in whole or in part in any order. With respect to the exercise of such rights and remedies, the fourteen-day stay provisions of Bankruptcy Rules 6004(h) and 4001(a)(3) are hereby waived.

(f) *Relief from Stay*. For the purpose of exercising rights, options and remedies set forth in this Paragraph ~~24~~22 or otherwise provided for under the DIP Loan Documents, ~~upon~~and subject to paragraph 22(b) (including expiration of the Remedies Notice Period~~, and subject to paragraph 24(b~~), unless otherwise ordered by the Court, the DIP Lenders shall be automatically and completely relieved from the effect of any stay under Section 362 of the Bankruptcy Code, and any other restriction on the enforcement of their liens upon and security interests in the DIP Collateral or any other rights granted to them, or any of them, pursuant to the terms and conditions of the DIP Loan Documents~~, the Pre-Petition Loan Documents,~~ or this ~~Interim~~Final Order.

~~25. [*Reserved*].~~

23. ~~26.~~ *Good Faith Under Section 364(e)*. Based on the findings set forth herein and the record made at the ~~Interim~~Final Hearing, and in accordance with Section 364(e) of the Bankruptcy Code, ~~the~~solely with respect to the DIP Facility and post-petition use of DIP Cash Collateral pursuant to this Final Order, the DIP Agent~~,~~ and the DIP Lenders, and each of their respective counsel, advisors, and consultants, are each entitled to the benefit of, and are hereby granted, a finding of "good faith" under Section 364(e) of the Bankruptcy Code~~ solely with respect to the DIP Facility and post-petition use of Cash Collateral and Pre-Petition Collateral pursuant to this Interim Order~~, and, if any provision of this ~~Interim~~Final Order is hereafter modified, amended, vacated, or stayed by a subsequent order of this or any other court, the DIP Agent and the DIP Lenders (and their respective counsel, advisors, and consultants) are entitled to all protections afforded under Section 364(e), and any such modification, amendment, vacatur, or stay shall not affect the validity or enforceability of any advances previously made, or

any lien, claim, priority, or other protection authorized or created hereunder prior to the effective date of such modification, amendment, vacatur, or stay, provided this ~~Interim~~Final Order was not stayed pending appeal at the time such advances were made or such liens, claims, or priorities were authorized or created.

24. ~~27.~~ *Limitations on Use of DIP Proceeds, DIP Cash Collateral, and Carve-Out.* No proceeds of the DIP Credit Facility, the DIP Collateral, the ~~Pre-Petition Collateral, the~~ Carve-Out, or any DIP Cash Collateral may be used by the Debtors or any other party-in-interest to (a) take any action prohibited by the Bankruptcy Code or this ~~Interim~~Final Order; (b) make any payments in connection with the Adequate Protection; or (c) use funds in any manner except as set forth in the Approved Budget~~; (c) directly or indirectly finance any litigation that could be adverse to the interests of the Pre-Petition Lenders, the Agent, or the DIP Lenders, or any other action that would result in an Event of Default under the DIP Credit Facility; or (d) fund any distribution under a Chapter 11 plan that does not provide for the indefeasible payment in full in cash of the DIP Obligations, unless otherwise agreed in writing by the Required Lenders; *provided*, *however*, that the DIP Collateral, or the Pre-Petition Collateral, including Cash Collateral, in the aggregate, may be used by an estate fiduciary, including a Creditors' Committee, if any, or a Chapter 7 trustee or a Chapter 11 trustee, if any, to (a) investigate any and all claims and causes of action, including those under chapter 5 of the Bankruptcy Code, in an amount to be determined by the Debtors (in consultation with the Creditors' Committee, if appointed); and/or (b) for independent counsel for the independent manager (if appropriate in her discretion).~~.

~~28. *Challenges.* Any party in-interest with proper standing by order of the Court may file an adversary proceeding as required under the Bankruptcy Rules (x) challenging the~~



~~4923-0818-5289~~4903-3245-7167

amount, validity, enforceability, priority, perfection, or extent of the Pre-Petition Obligations, the Pre-Petition Liens of the Pre-Petition Lenders on the Pre-Petition Collateral securing the Pre-Petition Obligations or (y) otherwise asserting any other claims, counterclaims, causes of action, objections, contests, or defenses against the Pre-Petition Lenders on behalf of the Debtors' Estates ((x) and (y) collectively, referred to herein as "Challenges") in connection with the matters related to the Pre-Petition Loan Documents, the Pre-Petition Obligations, the Pre-Petition Liens, or the Pre-Petition Collateral. Nothing in this Interim Order vests or confers on any person, including, without limitation, any Creditors' Committee, standing or authority to pursue any cause of action belonging to the Debtors or their Estates, and a separate order of the Court conferring such standing on any Creditors' Committee or other party-in-interest shall be a prerequisite for the prosecution of a Challenge by any such Creditors' Committee or such other party-in-interest.

29. [*Reserved*].

25. 30. *Additional Guarantors*. The Debtors shall be and are hereby authorized to cause any of their direct or indirect subsidiaries that files a Chapter 11 Case as a Subsequent Debtor to promptly execute and deliver to the Agent and the DIP Lenders a "Guarantor Joinder" substantially in the form and substance that is mutually agreeable to the DIP Lenders and the Debtors, after which such Subsequent Debtor shall be deemed an additional guarantor with the same force and effect as if originally named a Guarantor under the DIP Loan Documents. Without limiting the generality of the foregoing, any Subsequent Debtor who shall become an Additional Guarantor shall be, and is hereby authorized and directed to perform all obligations of, a Guarantor under the DIP Loan Documents to which Guarantors are parties and to

acknowledge and agree that it is bound as a Guarantor thereunder as if it had been an original signatory thereto.

26. ~~31.~~ *Limits on Lender Liability*. Nothing in this ~~Interim~~Final Order or the DIP Loan Documents shall be construed to impose liability on the DIP Agent or any DIP ~~Lenders~~Lender for claims arising from the Debtors' post-petition business operations, liquidation, or the administration of the Chapter 11 Cases. None of the Agent or the DIP Lenders shall, solely by reason of having made the DIP Loans or consented to the use of DIP Cash Collateral, be deemed in control of the Debtors' operations or a "responsible person" or "owner or operator" for purposes of any environmental or similar law.

27. *No Release of Claims*. Nothing herein shall release, waive or otherwise impair any claims or Causes of Action, whether present or contingent, that the Debtors may hold against the DIP Agent, the DIP Lenders, or their affiliates concerning any prepetition or post-petition actions, conduct or transactions (a "Release"). The DIP Agent and DIP Lenders represent that, to their knowledge, none of the DIP Agent, DIP Lenders or their non-debtor affiliates received a Release prior to the Petition Date, provided however that the DIP Agent and DIP Lenders, on behalf of themselves and their respective affiliates, hereby rescind any such Release to the extent provided by the Debtors or the Debtors' non-debtor affiliates.

28. ~~32.~~ *Waiver of Section 506(c) Claims ~~& 552(b) Equities~~; No Marshaling*. ~~Subject to approval upon entry of a Final Order, no~~No costs or expenses of administration that have been or may be incurred in the Chapter 11 Cases or Successor Cases at any time shall be charged against any of the ~~Pre-Petition Lenders or the~~ DIP Lenders, their respective claims, or the DIP Collateral ~~or Pre-Petition Collateral, as applicable~~, pursuant to Bankruptcy Code Section 506(c) without the prior written consent of the DIP Lenders (and no such consent shall be



~~4923-0818-5289~~4903-3245-7167

implied from any other action, inaction or acquiescence by the DIP Lenders~~ or the Pre-Petition Lenders). Upon entry of the Final Order, the Pre-Petition Lenders and DIP Lenders shall each be entitled to all of the rights and benefits of Section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under Section 552(b) of the Bankruptcy Code shall not apply to the Pre-Petition Lenders and DIP Lenders with respect to proceeds, products, offspring, or profits of any of the Pre-Petition Collateral or DIP Collateral, as applicable~~). In no event shall the DIP Lenders ~~or the Pre-Petition Lenders~~ be subject to the equitable doctrine of "marshaling" or any similar equitable doctrine with respect to the ~~Pre-Petition Collateral or the~~ DIP Collateral~~ upon entry of the Final Order~~.

~~33. [*Reserved*].~~

29. ~~34.~~ *No Modification or Stay of this ~~Interim~~Final Order.* Based upon the record presented to the Court by the Debtors, notwithstanding (a) any stay, modification, amendment, supplement, vacatur, revocation, or reversal of this ~~Interim~~Final Order, the DIP Loan Documents or any term hereunder or thereunder, (b) the failure to obtain a Final Order pursuant to Bankruptcy Rule ~~400l~~4001(c)(2), or (c) the dismissal or conversion of one or more of the Chapter 11 Cases, the DIP Lenders shall retain and be entitled to all of the rights, remedies, privileges, and benefits in favor of the DIP Lenders pursuant to Section 364(e) of the Bankruptcy Code, this ~~Interim~~Final Order, and the DIP Loan Documents as of the date any event referred to in clauses (a), (b) or (c) shall have occurred.

30. ~~35.~~ *Power to Waive Rights; Duties to Third Parties.* The ~~Pre-Petition Lenders and the~~ DIP Lenders shall have the right, in their ~~respective~~ sole discretions, to waive any of the terms, rights, and remedies provided or acknowledged in this ~~Interim~~Final Order~~, the~~



~~4923-0818-5289~~4903-3245-7167

~~pre-petition loan agreements,~~ or the DIP ~~Loan Documents~~Credit Agreement ("Lender Rights") ~~with respect to each of them, as applicable,~~ and shall have no obligation or duty to any other party with respect to the exercise or enforcement, or failure to exercise or enforce, any Lender ~~Right~~Rights. Any waiver ~~by any of them~~ of any Lender ~~Right~~Rights shall apply solely to ~~such party and to~~ the Lender Right so waived and shall not be or constitute a continuing waiver~~, except that any waiver by the Pre-Petition Lenders or the DIP Lenders shall bind the Pre-Petition Lenders or DIP Lenders, as applicable, in accordance with the pre-petition loan documents or DIP Loan Documents.~~. Any delay in or failure to exercise or enforce any Lender Right shall neither constitute a waiver of such Lender Right, nor cause or enable any other party to rely upon or in any way seek to assert as a defense to any obligation owed by the Debtors to the ~~Pre-Petition Lenders or the~~ DIP Lenders. ~~For the avoidance of doubt, such discretion with respect to the DIP Lenders shall be governed by the terms of the DIP Loan Documents.~~

31. ~~36.~~ *No Waiver by Failure to Seek Relief.* No delay or failure on the part of the DIP Agent or any DIP Lenders to seek relief or exercise any right or remedy under this ~~Interim~~Final Order or the DIP Loan Documents shall constitute a waiver of such right or remedy. No amendment, modification, suspension, or waiver of any right or remedy shall be effective unless in writing and signed by the party against whom it is sought to be enforced, and no consent required of the DIP Agent or any DIP ~~Lenders~~Lender shall be implied from inaction or acquiescence.

~~37. *Indemnification.* The Agent and the DIP Lenders shall be indemnified as, and to the extent, provided in the DIP Loan Documents with respect to the financing and use of Cash Collateral authorized herein.~~



~~4923-0818-5289~~4903-3245-7167

32. ~~38.~~ *Reservation of Rights*. The terms, conditions, and provisions of this ~~Interim~~Final Order are in addition, and without prejudice, to the rights of the ~~Pre-Petition Lenders or the~~ DIP Lenders~~, as applicable,~~ to pursue any and all rights and remedies under the Bankruptcy Code, the DIP Loan Documents, ~~the pre-petition loan documents,~~ or any other applicable agreement or law, including, without limitation, ~~rights to seek either or both adequate protection and additional or different adequate protection,~~ to seek relief from the automatic stay, to seek an injunction, to oppose any request for use of DIP Cash ~~Collateral, other Pre-Petition~~ Collateral, or the proceeds of the DIP Credit Facility (other than as permitted under this ~~Interim~~Final Order and the DIP ~~Term Sheet~~Credit Agreement) or the granting of any interest in the DIP Collateral (other than as contemplated herein or permitted under the DIP Loan Documents), to object to any sale of assets, and to object to applications for either or both allowance and payment of compensation of Professionals or other parties seeking compensation or reimbursement from the Estates.

33. ~~39.~~ *Modification of the Automatic Stay.* The automatic stay under Section 362(a) of the Bankruptcy Code is hereby modified as necessary to effectuate all of the terms and provisions of this ~~Interim~~Final Order and the DIP Loan Documents, including, without limitation, the application of collections, authorization to make payments, granting of liens, and perfection of liens.

34. ~~40.~~ *Binding Effect.*

(a) The provisions of this ~~Interim~~Final Order, the DIP Loan Documents, the DIP Superpriority Claims, DIP Liens, ~~Adequate Protection Liens, Adequate Protection Claims,~~ the DIP Obligations and any and all rights, remedies, privileges, and benefits in favor of the DIP ~~Lenders and the Pre-Petition Secured Parties~~Agent and the DIP Lenders, provided or

acknowledged in this ~~Interim~~Final Order, and any actions taken pursuant thereto, shall be effective immediately upon entry of this ~~Interim~~Final Order pursuant to Bankruptcy Rules 6004(g) and 7062, shall continue in full force and effect, and shall survive entry of any such other ~~Order, other than the Final Order~~order entered in these Chapter 11 Cases , including, without limitation, any order that may be entered confirming any plan of reorganization, converting one or more of the Chapter 11 Cases to any other Chapter under the Bankruptcy Code, or dismissing one or more of the Chapter 11 Cases.

(b) ~~Subject to a successful Challenge as set forth in Paragraph 28, above, any~~Any order dismissing one or more of the Chapter 11 Cases under Section 1112 of the Bankruptcy Code or otherwise shall be deemed to provide (in accordance with Sections 105 and 349 of the Bankruptcy Code) that (i) the DIP Lenders' ~~and the Pre-Petition Lenders' respective,~~ liens on, and security interests in, the DIP Collateral shall continue in full force and effect notwithstanding such dismissal until the DIP Obligations ~~and Adequate Protection Obligations, as applicable,~~ owed to such parties, respectively, are indefeasibly paid and satisfied in full, and (ii) this Court shall retain jurisdiction, to the extent permissible under applicable law, notwithstanding such dismissal, for the purposes of enforcing the DIP Superpriority Claims~~,~~ and the DIP Liens~~, Adequate Protection Liens, and Adequate Protection Claims of the Pre-Petition Lenders and DIP Lenders, as applicable~~.

~~(c) In the event this Court modifies any of the provisions of this Interim Order or the DIP Loan Documents following a Final Hearing, this Interim Order shall remain in full force and effect, except as expressly amended or modified at such Final Hearing.~~

(c) ~~(d)~~ This ~~Interim~~Final Order shall be binding upon the Debtors, their Estates, all parties-in-interest in the Chapter 11 Cases, and their respective successors and

Case 24-90103-11 Document Filed Page 118 of 124

assigns, including any trustee or other fiduciary appointed in the Chapter 11 Cases or any Successor Cases of any Debtors, and shall inure to the benefit of the ~~Pre-Petition Lenders~~DIP Agent, the DIP Lenders, the Debtors, and their respective successors and assigns~~, subject to the rights of any party-in-interest or trustee under Paragraph 28 above~~.

35. ~~41.~~ *Proofs of Claim*. Notwithstanding the entry of an order establishing a bar date in any of these Chapter 11 Cases, or the conversion of these Chapter 11 Cases to a case under Chapter 7 of the Bankruptcy Code, ~~neither the Pre-Petition Lenders nor~~ the DIP Lenders shall not be required to file proofs of claim in any of the Chapter 11 Cases or Successor Cases with respect to, as applicable, any of ~~Pre-Petition Obligations, Adequate Protection Obligations, Adequate Protection Liens, DIP~~the DIP Obligations, DIP Liens, DIP Superpriority Claims, or any other claims or liens granted hereunder or created by this ~~Interim~~Final Order. The ~~Pre-Petition Lenders and the~~ DIP Lenders are hereby authorized and entitled, in each's respective sole and absolute discretion, but in no event are required, to file (and amend and/or supplement, as each sees fit) proofs of claim in each of the Chapter 11 Cases on behalf of the ~~Pre-Petition Lenders in respect of the Pre-Petition Obligations or on behalf of the~~ DIP ~~Lenders~~Lender in respect of the applicable DIP Obligations~~, as applicable~~. Any proof of claim so filed shall be deemed to be in addition to, and not in lieu of, any other proof of claim that may be filed by any of the ~~Pre-Petition Lenders or~~ DIP Lenders.

~~42. *Proceeds of Subsequent Financing*. If the Debtors, any trustee, or any other estate representative subsequently appointed in the Chapter 11 Cases shall obtain credit or incur debt other than the credit or debt provided pursuant to this Interim Order at any time prior to the repayment in full of all DIP Obligations, then all cash proceeds derived from such credit or debt~~

Case 24-90453-11 GKBCM Document 601-1 Filed 09/11/26 Page 119 of 124

~~shall immediately be turned over to the DIP Lenders in such amount that will indefeasibly pay in full all such DIP Obligations.~~

36. ~~43.~~ *Waiver of Bankruptcy Rule 6003(b), 6004(a), and 6004(h).* The 21-day provision of Bankruptcy Rule 6003(b), the notice requirements of Bankruptcy Rule 6004(a), and the 14-day stay of 6004(h) are hereby waived.

37. ~~44.~~ *Order Controls.* In the event of a conflict between (a) the terms and provisions of the DIP Loan Documents ~~or any pre-petition loan documents, as applicable,~~ and (b) the terms and provisions of this ~~Interim~~Final Order, then in each case the terms and provisions of this ~~Interim~~Final Order shall govern.

38. ~~45.~~ *Discharge Waiver.* The DIP Obligations, the DIP Superpriority Claims, and the DIP Liens shall not be discharged by entry of an order confirming a plan of reorganization, notwithstanding Section 1141(d) of the Bankruptcy Code, unless such obligations have been indefeasibly paid in full in cash or otherwise discharged with the consent of the DIP Lenders on or before the effective date of such plan.

39. ~~46.~~ *Survival.* The provisions of this ~~Interim~~Final Order shall survive entry of any order confirming a plan of reorganization, converting any Chapter 11 Case to a case under Chapter 7, dismissing any Chapter 11 Case, or by which the Court abstains from hearing any Chapter 11 Case, and the DIP Liens, DIP Superpriority Claims, and other protections granted hereunder shall continue in full force until the DIP Obligations have been indefeasibly paid in full in cash and all DIP Commitments are terminated. The provisions of this ~~Interim~~Final Order concerning indemnification shall survive termination of the DIP Loan Documents and repayment of the DIP Obligations.

Case 24-90193-45311 GKBCM Document 10/21 Filed 09/15/26 Page 120 of 124

40. ~~47.~~ *Retention of Jurisdiction.* The Court retains jurisdiction to resolve any dispute arising from or related to the interpretation or enforcement of this ~~Interim~~Final Order and the DIP Loan Documents.

41. ~~48.~~ *Calculation of Dates.* All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

42. ~~49.~~ *No Third Party Rights.* Except as explicitly provided for herein, this ~~Interim~~Final Order does not create any rights for the benefit of any third party, creditor, equity holder, or any direct, indirect, or incidental beneficiary.

~~50. The Final Hearing on the Motion pursuant to Bankruptcy Rule 4001(c)(2) is scheduled for September 8, 2026, at 9:30 a.m. (prevailing Central Time) before this Court. The Debtors shall promptly serve a copy of this Interim Order to the following parties:~~

~~a. the Office of the U.S. Trustee;~~
~~b. the U.S. Attorney's Office for the Northern District of Texas;~~
~~c. counsel to the DIP Lenders;~~
~~d. counsel to the Pre-Petition Lenders;~~
~~e. the Debtors' known secured creditors;~~
~~f. those creditors holding the thirty (30) largest unsecured claims against the Debtors' Estates;~~
~~g. all governmental agencies having a regulatory or statutory interest in these cases;~~
~~h. financial institutions where the Debtors hold bank accounts;~~
~~i. parties that have requested notice pursuant to Bankruptcy Rule 2002; and~~
~~j. any other parties included on the Master Service List.~~

~~51. Any party in interest objecting to the relief sought at the Final Hearing shall serve and file written objections, which objections shall be served upon (a) proposed counsel for the Debtors, Gray Reed, 1845 Woodall Rodgers Fwy, Ste 1300, Dallas, TX 75201, Attn: Jason S. Brookner (jbrookner@grayreed.com) and Amber M. Carson (acarson@grayreed.com); (b) counsel for AAV2024, ACM Delegate LLC, Advantage Capital Holdings LLC, and Haymarket Insurance Company, Foley & Lardner LLP, 2021 McKinney Ave., Suite 1600,~~

Dallas, Texas 75201, Attn: Mark C. Moore (mmoore@foley.com) and Nora J. McGuffey (nora.mcguffey@foley.com); (c) counsel for Dacian, Haynes and Boone, LLP, 2801 N. Harwood St., Suite 2300, Dallas TX 75201, Attn: J. Frasher Murphy (frasher.murphy@haynesboone.com) and Rafael P. Saplala (rafael.saplala@haynesboone.com), and Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C., 919 Third Avenue, New York, New York 10022, Attn: Frank Earley (FJEarley@mintz.com), Kaitlin Walsh (KRWalsh@mintz.com), and Dormie Ko (DKo@mintz.com); (d) counsel to National Founders LP, Sidley Austin, One South Dearborn, Chicago, IL 60603, Attn: Matthew A. Clemente (mclemente@sidley.com), Mark Werner (mwerner@sidley.com), 2323 Cedar Springs, Suite 2600, Dallas, TX 75201, Attn: Parker G. Embry (parker.embry@sidley.com); and (e) the Acting Assistant U.S. Trustee, Elizabeth A. Young (elizabeth.a.young@usdoj.gov); and shall be filed with the Clerk of the United States Bankruptcy Court for the Northern District of Texas, by no later than September [2], 2026 at [5:00 p.m.] (prevailing Central Time).

# # # END OF ORDER # # #

Submitted by:
Jason S. Brookner (TX Bar No. 24033684)
Amber M. Carson (TX Bar No. 24075610)
Blake M. Bryan (TX Bar No. 24140152)
**GRAY REED**
1845 Woodall Rodgers Fwy, Suite 1300
Dallas, TX 75201
Telephone: (214) 954-4135
Facsimile: (214) 953-1332
Email: jbrookner@grayreed.com
acarson@grayreed.com
bbryan@grayreed.com

*Proposed Counsel to the Debtors*
*and Debtors in Possession*

Case 26-90103-elm11 Doc 229 Document 101-1 Filed 09/11/26 Page 122 of 124

**Exhibit 1**

**Approved Budget**

**[to come]**

**Exhibit 2**

**DIP Credit Agreement**

**[to come]**

# Exhibit 3

## Plan Term Sheet