USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: ________________
DATE FILED: 10/22/26

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LEADENHALL CAPITAL PARTNERS LLP, et al.,

Plaintiffs,

-against-

JOSH WANDER, et al.,

Defendants.

24-CV-3453 (JGK) (BCM)

**ORDER**

**BARBARA MOSES, United States Magistrate Judge.**

On July 6, 2026, plaintiffs Leadenhall Capital Partners LLP and Leadenhall Life Insurance Linked Investments Fund PLC (collectively, Leadenhall) filed their third letter-motion (Pl. Mot.) (Dkt. 569) to compel non-party Funding4Doctors, LLC (F4D) to produce documents in response to a subpoena *duces tecum* (the Subpoena) (Dkt 509-1) that Leadenhall served on F4D on May 21, 2025. On July 9, 2026, F4D filed a responding letter-brief (F4D Resp.) (Dkt. 571), and, on July 13, 2026, Leadenhall filed a reply letter-brief (Pl. Reply) (Dkt. 573, 574),[1] with exhibits. For the reasons that follow, Leadenhall's motion will be granted in part.

## Background

F4D is a medical receivables company that "services certain receivables at issue in this case, which were owned and pledged to Leadenhall as collateral by Defendants Signal Medical Receivables LLC and Signal SML 4 LLC" (the Signal Defendants). 4/15/26 Mot. (Dkts. 508, 509) at 1. The Subpoena "seeks information about those receivables' value, chain of title, servicing, and associated cash flows." *Id*. On April 15, 2026, plaintiffs filed their first letter-motion to compel F4D to produce documents in response to the Subpoena. *Id*. On May 26, 2026, Leadenhall and F4D appeared for a discovery conference, after which this Court issued an order (the 5/27/26

[1] Due to confidentiality concerns, some of the motion papers and other filings relevant to the dispute now before the Court were originally filed in two versions: in redacted form, on the public docket, and in unredacted form, under seal.

Order) (Dkt. 544) granting in part Leadenhall's motion to compel. The 5/27/26 Order required F4D to produce, among other things, "bank records for the custodial accounts where the F4D Receivables are currently deposited." *Id*. at 1.

On June 18, 2026, plaintiffs filed their second letter-motion to compel, alleging "non-compliance with [the Subpoena] and this Court's May 27, 2026 Order[.]" 6/18/26 Mot. (Dkts. 554, 558) at 1. Then, on June 26, 2026, Leadenhall submitted a letter informing the Court that it had "reached an agreement" with F4D resolving the pending issues, and asking the Court to "defer" action on its June 18 letter-motion "at this time." 6/26/26 Letter (Dkt. 562) at 1. As relevant here, F4D agreed to produce certain records by July 2, 2026, including:

- "All bank records for the CD Account"; and
- "A sworn statement (i) identifying F4D's bank accounts where the F4D receivables have been or are currently deposited and (ii) with respect to the accounts ending in *1185, *7319, *7690, *2702, *2596, *5705, and *5683 and any other third-party accounts to which money from the Leadenhall custodial account was transferred, identifying the payee associated with each account."

6/26/26 Letter at 1.[2] That same day, the Court so-ordered the agreement and directed Leadenhall to "advise the Court" no later than July 6, 2026 as to "whether it continues to seek judicial intervention" with regard to F4D's compliance. 6/26/26 Order (Dkt. 563) at 2.

**<u>The Current Dispute</u>**

Plaintiffs now assert that F4D failed to comply with the 6/26/26 Order, in that it: (1) failed to produce "any records for the CD Account" on July 2, 2026, Pl. Mot. at 1, and thereafter produced only a "one-page summary" of that account, with "no metadata and no indicia of being an official

[2] Plaintiffs' June 18, 2026 letter-motion identified the CD Account as a certificate of deposit savings account at JPMorgan Chase, ending in *6712, held in F4D's name and functioning as an "Outflow Account" into which F4D directed certain collections from "Leadenhall's F4D Receivables." 6/18/26 Mot. at 2. According to plaintiffs, the *1185, *7319, *7690, *2702, *2596, *5705, and *5683 accounts are also Outflow Accounts, all of which "appear to be JPMorgan Chase accounts." *Id*. at 2 n.3.

Chase Bank document," Pl. Reply at 2; and (2) failed to produce any banking records for the account ending in *5683, "contrary to the parties' agreement that F4D would produce all records within its possession, custody, or control for bank accounts that held funds related to the F4D Receivables." Pl Mot. at 2. Leadenhall seeks an order compelling F4D to produce these documents. *Id*. at 2. It also seeks records for each account into which funds from the CD Account were moved, *id*., and reimbursement of its attorneys' fees "incurred in enforcing the Subpoena," citing Fed. R. Civ. P. 45(d)(1). *Id*.

With regard to the CD Account, F4D concedes that "collections associated with receivables purchased or funded through the Signal/777 program were deposited into three accounts maintained by F4D," including the CD Account. Marchant Decl. (Dkt. 573-1, 574-1) ¶ 3. However, F4D states, its document collection efforts "revealed that no periodic account statements existed" for the CD Account, "because the certificate of deposit had matured," F4D Resp. at 3, and therefore it produced the only "available account record" to Leadenhall on July 6, 2026. *Id*. F4D does not state when the CD Account matured. The "available account record," attached to Leadenhall's reply letter as Exhibit B (Dkts. 573-1, 574-1) (CD Account Record), is a one-page summary of activity in the CD Account from 01/01/2025 through 04/27/2026, printed on "Funding4Doctors, LLC" letterhead. CD Account Record at 1. The summary shows that the balance in the CD Account was over $6 million on May 6, 2025, but that all of the funds in that account were transferred to other (unidentified) accounts over the next nine months. The last $779,689.19 in the CD Account was transferred out, to an account identified only as "Chase Teak Capital," on January 7, 2026 (long after Leadenhall served the Subpoena on F4D). *Id*.

With regard to the *5683 account (which F4D refers to, somewhat confusingly, as "the Proof Capital account ending in *5183," F4D Resp. at 1),[3] F4D argues that Leadenhall's motion "fails at the threshold because it has never established that any Signal/777 Funds were transferred into the Proof Capital account." *Id*. According to F4D, unless Leadenhall can "trac[e] Signal/777 funds into" the Proof Capital account, it "has not established the factual predicate necessary to seek discovery concerning that account." *Id*. at 2. F4D further asserts that the Proof Capital account is a "Deposit Account Control Agreement ('DACA') account" that "F4D does not control." Marchant Decl. ¶¶ 7-8; *see also* F4D Resp. at 2 (F4D "does not control the account, cannot unilaterally access or direct the funds maintained therein, and has no authority or ability to obtain account records unilaterally.").

In its reply letter, Leadenhall argues that this Court's prior orders require F4D to produce records for the CD Account and the *5683 account, expresses skepticism concerning F4D's asserted inability to access the requested records for those accounts, and repeats its request for records of the account or accounts into which funds from the CD Account were moved. Pl. Reply at 1-3.[4]

## **Legal Standards**

A party seeking to compel production pursuant to Fed. R. Civ. P. 45(d)(2)(B) "'must demonstrate that the information sought is relevant and material to the allegations and claims at issue in the proceedings.'" *Cuomo v. New York State Assembly Judiciary Comm.*, 683 F. Supp. 3d

[3] In context, it appears that the reference to "*5183" was a typographical error, and that F4D was actually discussing the same *5683 account at issue on the present motion. *See* Pl. Reply at 1 n.1.

[4] Signal Medical Receivables LLC filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on September 10, 2026, and is now subject to the automatic bankruptcy stay pursuant to 11 U.S.C. § 362. *See* Dkt. 610. Signal SML 4 LLC, as a "Non-Debtor 777 Entity Defendant," is subject to an agreed-upon temporary stay in this action. *See id*. However, neither of the Signal Defendants has moved to stay discovery against non-party F4D.

258, 267 (E.D.N.Y. 2023) (quoting *Gov't Emps. Ins. v. Dinesh Verma Med., P.C.*, 2023 WL 2771638, at *1 (E.D.N.Y. Apr. 3, 2023)). "Relevance is assessed under the familiar standard set forth in Rule 26(b)(1)." *Oasis Med., Inc. v. I-Med Pharma USA Inc.*, 2023 WL 6301728, at *8 (S.D.N.Y. Sept. 1, 2023).

If a non-party fails to comply with an order directing it to produce documents in response to a subpoena, the party attempting to enforce the subpoena may seek contempt sanctions pursuant to Fed. R. Civ. P. 45(g).[5] Rule 45(g) "is silent on what type of sanctions are authorized." *In re Dunne*, 2018 WL 4654698, at *8 (D. Conn. Sept. 27, 2018); *accord Concepts NREC, LLC v. Qiu*, 2024 WL 2137762, at *13 (D. Vt. Mar. 22, 2024), *adopted,* 2024 WL 2506407 (D. Vt. May 24, 2024). Many district courts in our Circuit have held that attorneys' fees may be awarded as a civil contempt sanction under Rule 45(g), *see*, *e.g*., *Concepts NREC,* 2024 WL 2137762, at *16; *In re Dunne*, 2018 WL 4654698, at *8 (collecting cases), but only upon "a finding of bad faith." *Universitas Educ., LLC v. Benistar*, 2021 WL 8202406, at *10 (D. Conn. Dec. 22, 2021), *adopted,* 2022 WL 860411 (D. Conn. Mar. 22, 2022); *see also In re Dunne*, 2018 WL 4654698, at *8 (remanding "for further factual findings on whether Dunne acted in bad faith" before awarding fees as a contempt sanction under Rule 45(g)).

**The CD Account**

F4D must produce all "bank records for the CD Account" in its possession, custody, or control, as this Court directed it to do, in clear and unmistakable language, almost four months

---

[5] By its terms, subsection (g) authorizes the court to impose contempt sanctions if a subpoena recipient "fails without adequate excuse to obey the subpoena or an order related to it." Fed. R. Civ. P. 45(g). However, "courts in the Second Circuit have often held that before imposing sanctions under Rule 45(e) for failure to comply with an attorney-issued subpoena, a court should first issue an order compelling compliance with the subpoena." *In re Application of the Kingdom of Morocco*, 2009 WL 1059786, at *2 (S.D.N.Y. Apr. 16, 2009); *accord Plaza Motors of Brooklyn, Inc. v. Rivera*, 2021 WL 4356011, at *3 (E.D.N.Y. Sept. 24, 2021); *Brentlor, Ltd. v. Schoenbach*, 2018 WL 5619951, at *3 (S.D.N.Y. Jan. 9, 2018) (collecting cases).

ago. 6/26/26 Order at 1. The fact that the account "matured" at some point after the Subpoena was served, *see* F4D Resp. at 3, does not justify F4D's failure to produce the associated bank records for the relevant time period, which is October 2022 to the present. *See* 5/27/26 Order at 1.

Nor is the Court persuaded that no responsive records "exist," as suggested by F4D's (unsworn) responding letter.[6] F4D's CEO, Robert D. Marchant, attests under oath that the CD Account was its own account. *See* Marchant Decl. ¶¶ 1, 3. Consequently, even if F4D did not retain paper or electronic copies of the bank records for that account, they are within F4D's "control," as that term is used in the discovery rules, because F4D can obtain them from Chase. *See Tiffany (NJ) LLC v. Qi Andrew*, 276 F.R.D. 143, 147 (S.D.N.Y. 2011) ("[F]or the purposes of a Rule 45 subpoena, a document is within a witness's 'possession, custody, or control' if the witness has the practical ability to obtain the document.") (citation omitted), *aff'd sub nom. Tiffany (NJ) LLC v. Andrew*, 2011 WL 11562419 (S.D.N.Y. Nov. 14, 2011); *Chevron Corp. v. Salazar*, 275 F.R.D. 437, 447 (S.D.N.Y. 2011) ("'Control' is construed broadly to encompass documents that the respondent has the legal right, authority, or practical ability to obtain . . . upon demand.") (internal quotation marks and citation omitted), *objections overruled,* 2011 WL 13243797 (S.D.N.Y. Aug. 16, 2011).

Since F4D has both the legal right and the "practical ability" to obtain copies of its own recent banking records, it is obligated to do so, and to produce the resulting records for the CD Account, as previously ordered by this Court. *See Mirlis v. Greer*, 80 F.4th 377, 382 (2d Cir. 2023) (affirming entry of default judgment against Greer, whose "lack of *physical* possession of certain bank records" did not "excuse her noncompliance with the court's order" to produce those records,

---

[6] In that letter, F4D states carefully that it "determin[ed]" that no "periodic statements" existed for the CD Account ending *6712. F4D Resp. at 1. It does *not* state that no "bank records" of any kind existed for the CD Account.

and who "failed to establish that she had neither access to, nor the practical ability to obtain, the financial documents Mirlis sought").

However, the Court declines to compel F4D to produce the records for the account or accounts into which the funds from the CD Account were "invested." Pl. Reply at 2-3. Although these documents may be relevant to Leadenhall's claims in this action, they are outside of the scope of the 6/26/26 Order, and appear to be outside of the scope of the Subpoena as well. The Subpoena generally demanded production of all "[d]ocuments concerning collections and/or cash flows associated with each receivable" belonging to Signal Medical Receivables LLC, but, with respect to banking records, specified that F4D was to produce "bank account statements for any collection accounts associate[d] with the receivables." Subpoena Ex. A, ¶ 1(e). According to Leadenhall, the CD Account was an "Outflow Account" rather than a "collection account." *See* 6/18/26 Mot. at 2 (describing the CD Account as "one of the Outflow Accounts"). Consequently, the account(s) into which funds travelled after being held in the CD Account are even further attenuated from the "collection accounts" that are the focus of the Subpoena.

**The *5683 Account**

Leadenhall has not shown that it is entitled to the bank records it seeks for the DACA account ending in *5683. Leadenhall argues that F4D is required to "produce records" for this account "[p]ursuant to its June 26 agreement with Leadenhall." Pl. Reply at 1. In fact, the June 26 agreement (and order) did not require F4D to produce bank records for the *5683 account. Rather, it required F4D to produce "[a] sworn statement (i) identifying F4D's bank accounts where the F4D receivables have been or are currently deposited and (ii) with respect to the accounts ending in . . . *5683" (among other accounts), "identifying the payee associated with each account." 6/26/26 Order at 1. Consequently, F4D's failure to produce bank records for the *5683 account did not violate the 6/26/26 Order.

Nor has Leadenhall shown that the Subpoena itself requires production of bank records for the *5683 account. Pl. Mot. at 2. As noted above, the Subpoena demanded production of "bank account statements for any collection accounts associate[d] with the receivables." Subpoena Ex. A, ¶ 1(e). The *5683 account, like the CD Account, was an "'outflow' account" rather than a collections account. Pl. Mot. at 2; *see also* 6/18/26 Mot. at 2. Leadenhall has thus failed to establish that either the 6/26/26 Order or the Subpoena requires F4D to produce bank records for the *5683 account.

Once again, the Court acknowledges that the documents sought may be relevant to Leadenhall's claims. F4D concedes that funds were transferred into the *5683 account from "F4D's Valley National operating account ending in *8113," F4D Resp. at 2, and that the Valley National account was among the F4D accounts "into which Signal/777-related collections were deposited." Marchant Decl. ¶ 4. However, absent a prior court order or subpoena clearly requiring production of the subject documents, relevance alone is an insufficient predicate for the relief that Leadenhall seeks. *See Kate Spade LLC v. Vinci Brands LLC*, 2025 WL 2211679, at *4 (S.D.N.Y. May 1, 2025) (contempt sanctions under Rule 45(g) are warranted only where the underlying subpoena or order is "clear and unambiguous" and "the proof of noncompliance is clear and convincing") (quoting *Nimkoff Rosenfeld & Schechter, LLP v. RKO Props., Ltd.*, 2014 WL 1201905, at *4 (S.D.N.Y. Mar. 24, 2014)), *adopted,* 2025 WL 2208857 (S.D.N.Y. Aug. 4, 2025). On the present record, therefore, the Court is unable to order the relief sought by Leadenhall with respect to the *5683 account.

**Fees**

Rule 45(d)(1), which Leadenhall cites in its moving letter as the basis for its request for an award of attorneys' fees, *see* Pl. Mot. at 2, does not authorize such an award to the party issuing the subpoena. *See* Fed. R. Civ. P. 45(d)(1) (authorizing an award to "a person *subject* to a

subpoena" if the party issuing the subpoena, or its attorney, failed to take reasonable steps to avoid imposing undue burden or expense on the person subject to the subpoena) (emphasis added). Likewise, Rule 37(b)(2)(c), which governs fee-shifting in connection with motions made to enforce party discovery obligations, "does not apply to a motion to compel compliance with a subpoena pursuant to Fed. R. Civ. P. 45." *Brentlor*, 2018 WL 5619951, at *3 (quoting *Jalayer v. Stigliano*, 2016 WL 5477600, at *3 (E.D.N.Y. Sept. 29, 2016)).

As noted above, Rule 45(g) permits a court to impose contempt sanctions – including, in appropriate cases, an award of attorneys' fees – against a non-party who "fails without adequate excuse" to obey a subpoena-related order. Fed. R. Civ. P. 45(g). However, Leadenhall has not sought contempt sanctions under Rule 45(g). Nor has it demonstrated that F4D "acted in bad faith," *In re Dunne*, 2018 WL 4654698, at *8, in failing (thus far) to produce bank records for the CD Account. Consequently, no fees will be awarded.

## Conclusion

For these reasons, Leadenhall's third motion to compel and for sanctions is GRANTED IN PART. If by **November 5, 2026**, F4D has not produced all bank records for the CD Account in its possession, custody, or control, including records that are maintained by Chase but that F4D has "the legal right, authority, or practical ability to obtain . . . upon demand," *Chevron Corp.* 275 F.R.D. at 447, Leadenhall may apply for contempt sanctions pursuant to Rule 45(g). All relief not specifically granted herein is DENIED.

The Clerk of Court is respectfully directed to close the motions at Dkts. 554, 558, and 569.

Dated: New York, New York
October 22, 2026

**SO ORDERED.**

**BARBARA MOSES**
**United States Magistrate Judge**