**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

LEADENHALL CAPITAL PARTNERS LLP, LEADENHALL LIFE INSURANCE LINKED INVESTMENTS FUND PLC,

Plaintiffs,

v.

JOSH WANDER, STEVEN PASKO, KENNETH KING, 777 PARTNERS LLC, 600 PARTNERS LLC, SPLCSS III LLC, SIGNAL SML 4 LLC, INSURETY AGENCY SERVICES LLC, DORCHESTER RECEIVABLES II LLC, SUTTONPARK CAPITAL LLC, SIGNAL MEDICAL RECEIVABLES LLC, INSURETY CAPITAL LLC, SUTTONPARK SERVICING LLC, ADVANTAGE CAPITAL HOLDINGS LLC,

Defendants.

Civil Action No. 1:24-cv-03453-JGK

**RULE 26(f) REPORT AND PROPOSED SCHEDULING ORDER**

Pursuant to Federal Rule of Civil Procedure 26(f), the Individual Practices of the Honorable John G. Koeltl, and the Court's Order entered October 21, 2026 (ECF No. 637), Plaintiffs Leadenhall Capital Partners LLP and Leadenhall Life Insurance Linked Investments Fund PLC (together, "Leadenhall" or "Plaintiffs"), and Advantage Capital Holdings LLC ("A-CAP"), Kenneth King, Josh Wander, and Steven Pasko (collectively, the "Non-Stayed Defendants" and together with Plaintiffs, the "Parties")[1] jointly submit this revised Rule 26(f) Report, which amends

[1] The 777 Entity Defendants are not parties to this Report: the Debtor 777 Entity Defendants are subject to the automatic stay under 11 U.S.C. § 362 pursuant to the bankruptcy action titled *In re Signal National LLC*, Case No. 26-90190 (Bankr. N.D. Tex.), and the Non-Debtor 777 Entity Defendants are subject to the agreed temporary stay entered August 13, 2026 (ECF No. 589), which Leadenhall and the Non-Debtor 777 Entity Defendants have agreed remains in effect (ECF No. 609). The term "Parties" herein therefore refers only to the non-stayed parties.

the discovery schedule set forth in the parties' prior Joint Rule 26(f) Report, entered on August 20, 2024. ECF No. 175. The Parties note that the discovery schedule proposed herein may need to be modified or extended to account for developments in the bankruptcy action involving the Debtor 777 Entity Defendants titled *In re Signal National LLC*, Case No. 26-90190 (Bankr. N.D. Tex.) (the "Bankruptcy"). To the extent discovery of materials in the possession of but not already produced by the 777 Entity Defendants is necessary but not possible due to the stay, the Parties will confer in good faith to modify this schedule to permit such discovery once the stay is lifted or to take appropriate action in the Bankruptcy to modify or lift the stay as necessary.[2] The Non-Stayed Defendants reserve all rights to seek relief concerning the automatic stay in this Court and in the Bankruptcy Court.[3]

Where the Parties' positions diverge, each side's position is separately stated.

## I. Changes to Timing, Form, or Requirements for Rule 26(a) Disclosures

The Parties do not seek any changes to the timing, form, or requirements for initial disclosures under Rule 26(a). Pursuant to the Court's original August 20, 2024 Scheduling Order, initial disclosures were due within fourteen (14) days of entry of that Order. ECF No. 175 at 2. The Parties exchanged initial disclosures on September 3, 2024. The Parties' proposed deadline for any supplemental initial disclosures is included in the schedule proposed in Section V.

## II. Subjects on Which Discovery May Be Needed

[2] On October 9, 2026, A-CAP moved the Bankruptcy Court to lift the stay to seek limited discovery from and about the Debtor 777 Entity Defendants. *See* Motion, *In re Signal National LLC*, Case No. 26-90190 (Bankr. N.D. Tex.) (Doc. No. 367). The Bankruptcy Court denied this motion without prejudice on November 4, 2026.

[3] Specifically, Mr. Pasko intends to seek a declaration in the Bankruptcy that the automatic stay bars Leadenhall's prosecution of this action against him and an injunction barring Leadenhall from pursuing this action as to him during the course of the Bankruptcy. Mr. Wander intends to seek a similar declaration in the Bankruptcy. A-CAP also intends to seek similar relief.

The Parties anticipate seeking discovery on the following subjects but expressly reserve the right to seek discovery on additional relevant subjects and to oppose any party's requests for discovery on any topic.

Plaintiffs' Statement:

Plaintiffs anticipate seeking discovery on the following subjects, and expressly reserve the right to seek discovery on additional relevant subjects:

a. Assets pledged, procured, and/or held as security by the 777 Entity Defendants to other parties, including the processes and systems used in such pledging, procuring, or holding of assets;

b. Statements, representations, and reports made by Defendants concerning assets procured, held, and/or pledged as collateral to other parties, including Leadenhall, including the monthly Compliance Reports;

c. Formal, informal, written, or oral agreements, arrangements, or understandings by and between Defendants, including those memorializing A-CAP's purported rights, liens, and claims as to any assets or businesses affiliated with the 777 Entity Defendants;

d. Sales, transfers, assignments, foreclosures, and/or exercises of remedies with respect to assets by and between Defendants;

e. The financial condition and capitalization of Defendants, including Defendants' assets, liabilities, receivables, debt, equity, and cash flows;

f. Funding agreements and arrangements among the Defendants, including any funding made by any of the Defendants on behalf of, or for the benefit of assets owned by, other Defendants;

g. Corporate governance, voting, and decision-making of the Defendants, including any changes in the corporate governance of the 777 Entity Defendants and the retention of B. Riley;

h. The marketing, sale, liquidation, or other monetization of any assets in which any of the Defendants possess, or purport to possess, any ownership interest;

i. The use, transfer, and disposition of loan proceeds, collateral, and other assets of the Defendants, including transactions subject to the preliminary injunction;

j. Restructuring negotiations related to Leadenhall; and

k. Any defenses which may be asserted by the Defendants, including but not limited to defenses concerning lack of jurisdiction and/or Defendants' knowledge or intent as to the alleged falsity of statements to Leadenhall.

<u>Defendants A-CAP and Mr. King's Statement:</u>

The A-CAP Defendants anticipate seeking discovery on the following subjects, and expressly reserve the right to seek discovery on additional relevant subjects:

a. The factual bases for the allegations and claims against A-CAP and King, including allegations pleaded on information and belief, allegations attributed to anonymous or unnamed sources, and any evidence Leadenhall contends supports those allegations and claims;

b. Leadenhall's agreements with the 777 Entity Defendants, including the alleged loan agreements, guaranties, amendments, side agreements, waivers, forbearances, and related negotiations, drafts, and communications;

c. Leadenhall's alleged security interests, if any, in assets of each of the 777 Entity Defendants, including attachment, perfection, priority, control, UCC filings, intercreditor issues, and efforts, if any, to perfect such interests;

d. Assets pledged, procured, held, or purportedly available as collateral for Leadenhall's facility; the composition, value, eligibility, reporting, and monitoring of such collateral; and the process and systems by which such assets were tracked, reported, pledged, procured, held, substituted, or released;

e. The existence, scope, priority, and Leadenhall's knowledge of liens, claims, or interests held by A-CAP, A-CAP affiliates, or other parties in any assets, receivables, entities, or businesses affiliated with the 777 Entity Defendants;

f. Leadenhall's underwriting, diligence, risk assessment, and approval process in connection with its relationship with 777 Partners and related entities, including information received, access to information, diligence concerning collateral, expected revenues or returns, and Leadenhall's knowledge from 2016 onward, including pre-LSA knowledge;

g. Leadenhall's efforts, if any, to monitor its loans to the 777 Entity Defendants and the collateral securing those loans, including borrowing-base, collateral, and compliance reporting; communications with the 777 Entity Defendants, A-CAP, and third parties; and Leadenhall's internal analyses, notes, recordings, and board materials;

h. The timing, manner, and circumstances of Leadenhall's discovery of any alleged collateral deficiency or shortfall, including any internal investigation,

communications with third parties, and the factual basis for Leadenhall's contention that any shortfall existed and when it arose;

i. The cause of any alleged collateral shortfall or other purported harm to Leadenhall, including the impact of interest rate fluctuations, market conditions, valuation issues, collections performance, credit performance, alleged double-pledging, later-arising liens, enforcement events, or other factors;

j. Leadenhall's communications with the 777 Entity Defendants, A-CAP, A-CAP affiliates, and third parties concerning the facility, collateral, liens, receivables, guaranties, reporting, defaults, remedies, and any alleged misstatements, including notes, recordings, and communications with 777 Re Ltd. and Credigy;

k. Leadenhall's relationship with 777 Re Ltd., including Leadenhall's communications with 777 Re, Leadenhall's board role or representation, governance-related communications, and May 2023 board materials or related materials concerning amounts allegedly owed to 777 Re;

l. Leadenhall's continued funding, waiver, forbearance, or other course of dealing after learning of alleged collateral deficiencies or other adverse information;

m. Leadenhall's exercise of remedies, including its 2025 foreclosures, credit bids, acquisitions of collateral, valuations used in connection with such actions, and collections, recoveries, monetization, or other proceeds realized from collateral acquired or controlled by Leadenhall or its affiliates;

n. The calculation of Leadenhall's claimed damages, including principal, interest, fees, costs, alleged collateral shortfall, recoveries, offsets, mitigation, valuation

methodologies, and the basis for any amount asserted in this action or in the Chapter 11 cases;

o. Leadenhall's claim or claims in the Chapter 11 cases, including the nature, amount, priority, supporting calculations, treatment sought, and any positions taken there that overlap with or bear on the claims or damages asserted here;

p. Leadenhall's role as DIP lender, plan sponsor, creditor, trust beneficiary, trust participant, or otherwise in the Chapter 11 cases and any liquidating trust, including any acquisition, assignment, control, release, settlement, or prosecution of estate causes of action that overlap with, duplicate, offset, affect, or relate to the claims asserted in this action; and

q. Any defenses, rebuttals, or responses Leadenhall contends apply to the A-CAP Defendants' positions concerning causation, reliance, materiality, scienter, damages, mitigation, lien priority, collateral value, or responsibility for any alleged loss.

<u>Defendant Steven Pasko's Statement:</u>

Mr. Pasko anticipates seeking discovery on the following subjects, and expressly reserves the right to seek discovery on additional relevant subjects:

a. The alleged bases or purported support for the allegations and claims against or related to Mr. Pasko in Leadenhall's Complaint;

b. Communications between Leadenhall and Mr. Pasko;

c. Communications involving Leadenhall concerning the agreements cited in the Complaint;

d. Communications involving Leadenhall concerning the purported representations or other statements made to Leadenhall as alleged in the Complaint;

e. Leadenhall's internal documents and communications concerning the subject matter of Leadenhall's allegations and claims (including without limitation, the collateral referenced in the Complaint);

f. Leadenhall's communications with third parties concerning the subject matter of Leadenhall's allegations and claims (including without limitation, Leadenhall's alleged communications with Credigy);

g. Leadenhall's underwriting, diligence, risk assessment, and approval process in connection with its relationship with 777 Partners and related entities, including information received, access to information, diligence concerning collateral, expected revenues or returns, and Leadenhall's knowledge from 2016 onward, including pre-LSA knowledge;

h. Leadenhall's efforts, if any, to monitor its loans to the 777 Entity Defendants and the collateral securing those loans, including borrowing-base, collateral, and compliance reporting; communications with the 777 Entity Defendants, A-CAP, and third parties; and Leadenhall's internal analyses, notes, recordings, and board materials;

i. The timing, manner, and circumstances of Leadenhall's discovery of any alleged collateral deficiency or shortfall, including any internal investigation, communications with third parties, and the factual basis for Leadenhall's contention that any shortfall existed and when it arose;

j. The cause of any alleged collateral shortfall or other purported harm to Leadenhall, including the impact of interest rate fluctuations, market conditions, valuation issues, collections performance, credit performance, alleged double-pledging, later-arising liens, enforcement events, or other factors;

k. Leadenhall's continued funding, waiver, forbearance, or other course of dealing after learning of alleged collateral deficiencies or other adverse information; and

l. Leadenhall's purported damages, including Leadenhall's internal documents and communications relevant to its purported damages.

<u>Defendant Josh Wander's Statement:</u>

Mr. Wander anticipates seeking discovery on the following subjects, and expressly reserves the right to seek discovery on additional relevant subjects:

a. The purported bases for the Complaint's claims and allegations concerning Mr. Wander;

b. Communications between Leadenhall and Mr. Wander, including the recorded calls referenced in the Complaint;

c. Communications reflecting Mr. Wander's permission to record phone calls;

d. Internal communications among Leadenhall employees involving the collateral, including credit memos and due diligence materials;

e. Communications and documents reflecting Leadenhall's investigation following the anonymous tip;

f. Communications between Leadenhall and Credigy;

g. Internal communications among Leadenhall employees involving the negotiations between Leadenhall and 777 Partners in 2023 and early 2024; and

h. Internal communications among Leadenhall employees reflecting the revenues Leadenhall expected from the relationship with 777 Partners.

## III. Issues Concerning Disclosure, Discovery, or Preservation of Electronically Stored Information, and Claims of Privilege or Protection

The Parties agree that discovery of electronically stored information ("ESI") is and shall continue to be governed by the Stipulation and Order Governing the Protocol for Discovery of Electronically Stored Information negotiated and agreed to by all parties and submitted to the Court on May 7, 2025 (ECF No. 294). ESI shall be produced in the form or forms set forth in that protocol.

The confidentiality of discovery materials is and shall continue to be governed by the Confidentiality Stipulation and Protective Order (ECF No. 296), as modified (ECF No. 625). Privilege logging is also addressed in the Parties' ESI protocol (ECF No. 294). The Parties agree that, pursuant to the Protective Order as modified (ECF No. 625), no Party will use discovery material in any criminal or bankruptcy proceedings except as the Protective Order allows.

## IV. Changes to Discovery Limitations

The Parties do not currently seek modification to the default discovery limitations, but reserve the right to seek such modifications from the Court in the future.

## V. Proposed Scheduling Order

**Leadenhall's Proposal:** Leadenhall proposes a case schedule consistent with the Parties' prior Rule 26(f) Report, ECF No. 175, which provided that the Parties would complete fact discovery nine months after the Court's decision on a motion to dismiss (*i.e.*, by June 2027). There is no cause for phased discovery here.

**Non-Stayed Defendants' Proposal:** The Non-Stayed Defendants propose a phased discovery schedule: Phase I is initially focused on party document production on agreed search

parameters. Depositions and requests for admission would ordinarily begin in Phase II, after substantial completion of party document production; however, the Non-Stayed Defendants reserve the right to seek limited earlier depositions or targeted written discovery for good cause, including where needed to preserve testimony, address scheduling constraints, or account for developments in the bankruptcy proceedings, foreign process, or related actions. Third-party discovery may proceed during and after Phase I to the extent reasonably necessary to avoid prejudice, preserve evidence, or account for third-party response times, confidentiality issues, or foreign process.

| **Event** | **Plaintiffs' Proposed Deadline** | **Non-Stayed Defendants' Proposed Deadline** |
|---|---|---|
| Supplemental Rule 26(a)(1) disclosures (if any) | January 15, 2027 | April 9, 2027 |
| Substantial completion of document productions | February 28, 2027 | May 24, 2027 (End of Phase I, start of Phase II) |
| Last day to serve discovery requests | 30 days before the close of fact discovery | 30 days before the close of fact discovery |
| Close of fact discovery | July 1, 2027 | September 23, 2027 |
| Expert reports on claims and/or issues on which a party bears the burden of proof | August 3, 2027 | October 26, 2027 |
| Responsive expert reports | September 1, 2027 | November 24, 2027 |
| Close of expert discovery | September 21, 2027 | December 17, 2027 |
| Completion of all discovery | September 21, 2027 | December 17, 2027 |
| Motions for summary judgment (Fed. R. Civ. P. 56; Local Civil Rules 7.1 and 56.1) | October 21, 2027 | January 13, 2028 |
| Oppositions to motions for summary judgment | November 23, 2027 | February 11, 2028 |
| Replies in support of motions for summary judgment | December 10, 2027 | February 28, 2028 |

| Event | Plaintiffs' Proposed Deadline | Non-Stayed Defendants' Proposed Deadline |
|---|---|---|
| Final pretrial conference | On or before January 20, 2028 | On or before April 10, 2028, subject to the timing of the Court's decision on any Motion for Summary Judgment |
| Jury trial | February 14, 2028 | May 8, 2028, subject to the timing of the Court's decision on any Motion for Summary Judgment |

The Parties agree that, should bankruptcy proceedings proceed longer than currently anticipated, no Party will oppose a reasonable extension of these deadlines to allow time to take additional discovery from the stayed parties once the stay is lifted.

a. **Discovery**. Discovery applications shall be made to Magistrate Judge Moses in accordance with Local Civil Rule 37.2 and her Individual Practices. Any request to modify the dates in this Scheduling Order shall be made by letter-motion filed on ECF, after consultation with all affected parties and in advance of the deadline affected, in accordance with Judge Moses's Individual Practices §§ 1(b) and 2(a).

b. **Dispositive Motions.** Any motion for summary judgment will require a pre-motion conference in accordance with Judge Koeltl's Individual Practices § III.B.

c. **Pretrial Order and Motions in Limine.** The joint pretrial order, together with any motions in limine, requests to charge, and proposed voir dire, shall be submitted in accordance with this Scheduling Order, or as otherwise directed by the Court, and shall conform to the Court's Individual Practices.

d. **Trial.** All Parties have demanded a jury trial. A trial length estimate will be provided with the joint pretrial order.

e. **Reservation of Rights.** Nothing in this Report waives any party's objections, privileges, or defenses, including the right to seek a protective order under Rule 26(c).

## VI. Settlement and Magistrate Judge

On June 14, 2024, the case was referred to Magistrate Judge Moses for a settlement conference, which took place on July 10, 2024. The Parties will notify the Court if they believe additional settlement conferences would be useful.

Dated: November 12, 2026
New York, New York

KING & SPALDING LLP

/s/ Leigh M. Nathanson
Leigh M. Nathanson
Craig Carpenito
Brian Donovan
Mateo de la Torre
1290 Avenue of the Americas,
14th Floor
New York, NY 10104
(212) 556-2100
lnathanson@kslaw.com
ccarpenito@kslaw.com
bdonovan@kslaw.com
mdelatorre@kslaw.com

Peter Starr
1180 Peachtree Street NE, Suite 1600
Atlanta, GA 30309
(404) 572-2767
pstarr@kslaw.com

*Attorneys for Plaintiffs Leadenhall Capital Partners LLP and Leadenhall Life Insurance Linked Investments Fund PLC*

FOLEY & LARDNER LLP

/s/ Phara Guberman
Phara Guberman
Foley & Lardner LLP
90 Park Avenue, 35th Floor
New York, NY 10016-1315
(212) 338-3514
phara.guberman@foley.com

David Jordan
Foley & Lardner LLP
95 South State Street, Suite 2500
Salt Lake City, UT 84111
(801) 401-8919
djordan@foley.com

F. Philip Hosp
Foley & Lardner LLP
555 S. Flower St., Suite 3300
Los Angeles, CA 90071
(213) 972-4556
phosp@foley.com

*Attorneys for Defendants Advantage Capital Holdings LLC and Kenneth King*

GIBSON, DUNN & CRUTCHER LLP

*/s/ Jordan Estes*
Jordan Estes
200 Park Avenue
New York, NY 10166-0193
(212) 351-3906
jestes@gibsondunn.com

*Attorney for Defendant Josh Wander*

QUINN EMANUEL URQUHART & SULLIVAN LLP

*/s/ Alex Rossmiller*
Alex Rossmiller
Katherine Schroeder
295 Fifth Avenue
New York, NY 10016
(212) 849-7000
alexrossmiller@quinnemanuel.com
katherineschroeder@quinnemanuel.com

*Attorneys for Defendant Josh Wander*

MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P.C.

*/s/ Christopher B. Harwood*
Christopher B. Harwood
565 Fifth Avenue
New York, NY 10017
(212) 856-9600
charwood@maglaw.com

*Attorney for Defendant Steven Pasko*

SO ORDERED.

Dated: New York, New York
_____________, 2026

______________________________
Hon. John G. Koeltl
United States District Judge